**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

IN RE:  Winstar Communications, Inc., et al.
_____

| | | |
|---|---|---|
| Lucent Technologies Inc., | : | |
| | : | |
| Appellant, | : | |
| | : | Civil Action No.:  06-147 |
| v. | : | |
| | : | |
| Christine C. Shubert, Chapter 7 Trustee, | : | |
| | : | Bankruptcy Case No.:  01-1430 |
| Appellee. | : | |

**DECLARATION OF DAVID R. KING IN CONNECTION WITH THE APPELLEE
CHAPTER 7 TRUSTEE'S MOTION TO STRIKE ITEMS FROM LUCENT
TECHNOLOGIES INC.'S DESIGNATION OF RECORD ON APPEAL AND ISSUES
FROM LUCENT TECHNOLOGIES INC.'S STATEMENT OF ISSUES ON APPEAL**

DAVID R. KING, ESQ., declares as follows under penalty of perjury:

1.      I am a member of the bar of the States of New York and New Jersey and a member of Herrick, Feinstein LLP, special counsel to Christine C. Shubert (the "Trustee"), Chapter 7 Trustee for the estates of Winstar Communications, Inc., and Winstar Wireless, Inc., plaintiff in the above captioned adversary proceeding.  I have been admitted *pro hac vice* to appear in this case on the Trustee's behalf.  I submit this Declaration in connection with the Trustee's motion for the entry of an order striking certain items listed on the Statement of Issues on Appeal (the "Issues Designation") of Lucent Technologies Inc. ( Lucent ) filed on January 19, 2006 (Docket No. 2) as well as Lucent s Amended Designation of Items to Be Included in the Record on Appeal (the "Record Designation") on March 1, 2006 (Docket No. 6).

2.      Attached hereto as **Exhibit A** is a copy of Lucent's Notice of Appeal dated January 9, 2006 (Docket No. 1).

3.      Attached hereto as **Exhibit B** is a copy of the Bankruptcy Court's Memorandum of Decision Including Findings of Fact and Conclusions of Law with Respect to Counts VII, X,

and XI of the Second Amended Complaint and Counts 5 and 6 of the Second Amended Answer and Counterclaims dated December 21, 2005 (Adv. Proc. Docket No. 369).

4.      Attached hereto as **Exhibit C** is a copy of the Issues Designation dated January 19, 2006 (Docket No. 2).

5.      Attached hereto as **Exhibit D** is a copy of the Stipulation annexing the amended Record Designation, dated March 1, 2006 (Docket No. 3).

6.      The Trustee has objected to the inclusion of issues 13, 14, and 15 in the Issues Designation, because the issues stem from rulings of the District Court, and therefore cannot be included in this appeal, but are instead reserved for appeal to the Court of Appeals for the Third Circuit.  The Trustee sought relief before the Bankruptcy Court for Lucent's inclusion of these issues in the Issues Designation.  The District Court decisions on these issues were designated by the Trustee as a part of the record and are attached to the Trustee's "Appellee Designation of Contents for Inclusion in Record of Appeal," a copy of which is attached hereto as **Exhibit E.** (Docket No. 5).

7.      In the Trustee's reply brief on the motion before the Bankruptcy Court, the Trustee offered to stipulate that issues 13, 14, and 15 were properly preserved for appeal to the Third Circuit, and asked Lucent to withdraw them from consideration before the District Court. (Adv. Proc. Docket No. 392). A copy of the Trustee's reply brief below is attached hereto as **Exhibit F**.

8.      Shortly after filing the reply brief, I spoke with Craig Goldblatt, Esq., counsel for Lucent on this appeal.  During the conversation, I asked Mr. Goldblatt whether Lucent was willing to withdraw the issues from the District Court appeal, based on the Trustee's stipulation. Mr. Goldblatt responded that Lucent could not accept the Trustee's stipulation, but that Lucent

would "probably" not reargue the issues if District Court Judge Joseph Farnan (who entered the previous rulings) was appointed to hear this appeal, but would consider raising the issues in this Court if a different District Court judge was assigned to this appeal, depending, among other things, on whether the "law of the case" doctrine might be applicable.

9.      By Order dated February 15, 2006, the Bankruptcy Court granted the motion in part and denied the motion in part without prejudice, instructing the Trustee to raise with this Court the matters which are the subject of the instant motion if the Trustee wished them resolved.  (Adv. Proc. Docket No. 394).  Attached hereto as **Exhibit G** is the Bankruptcy Court s Order dated February 16, 2006.

10.      I declare that the statements contained herein are true and correct to the best of my knowledge and the documents attached hereto are each true and correct copies of the documents they purport to be.  I also declare that to the extent any of the statements contained herein are not true and correct, I am subject to penalty.


                                     _____/s/ David R. King_____
                                     DAVID R. KING

Dated: March 9, 2006
         New York, NY

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| **In re:** | **Chapter 7** |
| **WINSTAR COMMUNICATIONS, INC.,** **ET AL.,** | **Case No. 01-1430 (JBR)** |
| *Debtors*. | |
| **CHRISTINE C. SCHUBERT, CHAPTER 7** **TRUSTEE,** | **Adversary Proceeding** **No. 01-1063 (JBR)** |
| *Plaintiff,* | |
| *v.* | |
| **LUCENT TECHNOLOGIES, INC.,** | |
| *Defendant.* | |

## NOTICE OF APPEAL

Notice is hereby given pursuant to Fed. R. Bankr. P. 8001 that Lucent Technologies, Inc.,

defendant in the above-captioned adversary proceeding, appeals to the United States District

Court for the District of Delaware from the final judgment entered in this action on December

28, 2005 [Docket No. (373)].

The names of all parties to the order appealed from and the names, addresses and

telephone numbers of their respective attorneys are:

| | |
|---|---|
| **Christine C. Schubert, Chapter 7** **Trustee**, *Plaintiff* | Stephen M. Rathkopf David R. King Herrick, Feinstein LLP 210 Carnegie Center Princeton, NJ 08540 (609) 520-9095 |
| | Sheldon Rennie Fox Rothschild, LLP Mellon Bank Center, Suite 1400 Wilmington, DE 19801 (302) 662-4202 |

RLF1-2966889-1

**Lucent Technologies, Inc.,**
   *Defendant*

Craig Goldblatt
Danielle Spinelli
Wilmer Cutler Pickering Hale and Dorr, LLP
2445 M Street, NW
Washington, DC 20037
(202) 663-6000

Philip D. Anker
James H. Millar
Wilmer Cutler Pickering Hale and Dorr, LLP
399 Park Avenue
New York, NY 10022
(212) 230-8800

Paul C. Saunders
Daniel Slifkin
Michael A. Paskin
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

Daniel J. DeFranceschi (DE Bar No. 3272)
Paul N. Heath (DE Bar No. 3704)
Rebecca L. Booth (DE Bar No. 4031)
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700

2

Respectfully submitted,

Dated:  January 9, 2006            RICHARDS, LAYTON & FINGER, P.A.
        Wilmington, Delaware

                                  ___/s/ *Paul N. Heath*_____
                                  Daniel J. DeFranceschi (DE Bar No. 3272)
                                  Paul N. Heath (DE Bar No. 3704)
                                  Rebecca L. Booth (DE Bar No. 4031)
                                  One Rodney Square
                                  P.O. Box 551
                                  Wilmington, DE  19899
                                  (302) 651-7700

                                  WILMER CUTLER PICKERING HALE AND
                                      DORR, LLP
                                  Craig Goldblatt
                                  Danielle Spinelli
                                  Michelle Bock
                                  2445 M Street, NW
                                  Washington, DC 20037
                                  (202) 663-6000

                                  Philip D. Anker
                                  James H. Millar
                                  399 Park Avenue
                                  New York, NY  10022
                                  (212) 230-8800

                                  CRAVATH, SWAINE & MOORE LLP
                                  Paul C. Saunders
                                  Daniel Slifkin
                                  Michael A. Paskin
                                  Worldwide Plaza
                                  825 Eighth Avenue
                                  New York, NY  10019
                                  (212) 474-1000

                                  *Counsel for Appellant Lucent Technologies, Inc.*

RLF1-2966889-1

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | Case No. 01-1430(JBR) |
| WINSTAR COMMUNICATIONS, INC. | ) | |
| *et al.* | ) | |
| Debtors | ) | |

| | | |
|---|---|---|
| CHRISTINE C. SHUBERT, | ) | |
| CHAPTER 7 TRUSTEE | ) | |
| Plaintiff | ) | Adversary Proceeding |
| v. | ) | No. 01-1063 (JBR) |
| LUCENT TECHNOLOGIES INC. | ) | |
| Defendant | ) | |

**MEMORANDUM OF DECISION INCLUDING FINDINGS OF FACT AND
CONCLUSIONS OF LAW WITH RESPECT TO COUNTS VII, X, AND XI OF THE
SECOND AMENDED COMPLAINT AND COUNTS 5 AND 6 OF THE SECOND
AMENDED ANSWER AND COUNTERCLAIMS**

This matter came before the Court for trial on Counts VII (breach of subcontract),[1] X

(preference), and XI (equitable subordination) of the Second Amended Complaint[2] and

one count of fraud (Count 5) and one count of negligent misrepresentation (Count 6) of the

---

[1] The parties agree that the alleged breach is a breach of the Agreement for
Network Build-out Services (the "Subcontract") and not a breach of any funding obligation
under the credit facilities.  *See* Joint Pretrial Memorandum [Adversary Proceeding Docket
(hereinafter "Docket") # 292] at Exhibit 12.

[2] On May 29 and August 7, 2003, the Bankruptcy Court, on Lucent's motion, entered
orders dismissing Count IX (breach of covenant of good faith and fair dealing), precluding
the Trustee from recovering consequential or punitive damages on any of her claims, and
prohibiting the Trustee from obtaining any affirmative monetary recovery on her equitable
subordination claim [Docket ## 85, 103].  The Trustee, with Lucent's assent, voluntarily
dismissed Counts I through VI and Count VIII [Docket #207].

Second Amended Answer and Counterclaims.[3]  As set forth in greater detail below, the

Court finds that these matters are core proceedings in which the Court may enter final

orders, or with respect to Lucent's counterclaims, even if they are related to non-core

proceedings, Lucent has consented to the entry of final orders.

In reaching its determinations, the Court considered the entire 21 days of testimony

given by 39 witnesses, considered the demeanor and credibility of the 13 witnesses who

testified in person[4] and, to the extent possible the demeanor and credibility of the 16

---

[3]Count 2 of the Second Amended Answer and Counterclaims is a count for setoff pursuant to 11 U.S.C. § 553.  The parties have stipulated that in the event the Trustee is awarded judgment against the Defendant under the Subcontract, the Defendant is entitled to a total setoff of $6.3 million. (Stipulation By and Between The Trustee and Lucent Technologies Inc. Concerning Lucent's Counterclaim for Setoff at ¶ 1 [Docket #337]). Counterclaim 3 is a claim for fraud and counterclaim 4 is one for negligent misrepresentation. Both are based on Winstar's alleged representations to Lucent during Lucent's "due diligence" investigation in November and December 2000. Neither of these counterclaims were raised by Lucent in the Joint Pretrial Memorandum as required by paragraph 7(H) and (I) of the Court's Pretrial Order of January 26, 2005 [Docket # 275] ("The parties are ordered to file ... a Joint Pretrial Memorandum approved by all counsel and unrepresented parties, which shall set forth the following: ... (H) The issues of fact which remain to be litigated (evidence at trial shall be limited to these issues); (I) The issues of law to be determined....") and thus are deemed waived. Had they not been waived, the credible evidence supports a finding that Lucent did not carry its burden of proof as it had sufficient knowledge of the financial condition of Winstar during the relevant period that it could not have reasonably relied upon any allegedly misleading information. Lucent's surviving counterclaims for fraud and negligent misrepresentation relate to the breach of the so-called CAPEX covenant.

[4]The witnesses who testified at trial were Paul Pocalyko, Stephen Scherf, Martina Hunt-Majean, Mark Wilson, Reginald Kipke, Kevin Collins, Christopher Stark, Michael Keefe, Elizabeth Perricone (some of Perricone's testimony also came in via portions of deposition testimony read at trial), Gregory Garrett, Henry Schacht (some of Schacht's testimony also came in via videotaped deposition testimony played at trial), Vernon Ternll, and John Solomon.

2

witnesses whose videotaped testimony was introduced,[5] considered the credibility of the witnesses whose testimony was read into the record, reviewed the over 1400 exhibits (including many duplicates) totaling many thousands of pages admitted in evidence, heard arguments of counsel, and reviewed the various pre- and post-trial pleadings submitted in support of each party's position.  The following decision constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052, and as set forth below, to the extent that the district court concludes that this Court may only enter proposed finding and rulings pursuant to Fed. R. Bank. P. 9033 with respect to some or all of the counts or counterclaims, the following constitutes the Court's proposed findings and rulings with respect to such counts or counterclaims.

## EXPLANATION OF CITATIONS

The parties have stipulated to certain facts as most recently set forth in the Revised Joint Stipulation of Uncontested Facts (the "Revised Joint Stipulation"), attached as Exhibit A to the Renumbered Joint Stipulation of Uncontested Facts [Docket #331].

Citations to trial exhibits introduced by the Plaintiff are cited as "PX #"; Defendant's trial exhibits are cited as "DX #."  In many instances the parties introduced the same

---

[5]The witnesses whose testimony was admitted via videotaped depositions were Nathan Kantor, Lisa Hicks, William Zlotnick, Jill Diroma, Frederic Rubin, David Ackerman, Richard McGinn (some of McGinn's testimony also came in via portions of deposition testimony read at trial), William Rouhana, Michael Montemarano, Deborah Hopkins, Gary Simpson, William Fullerton, Richard Uhl, Kevin Monaco (some of Monaco's testimony also came in via portions of deposition testimony read at trial), Gary Goldman, and Kevin Howell.  As noted above some of Schacht's testimony was introduced on videotape; the Court also had the opportunity to observe this witness when he testified in person later during the trial.

document or portions of the same document. The Court generally has cited to duplicate documents by only one exhibit number. Citations to specific pages within a multiple-page exhibit are cited by exhibit number and Bates number or by page number if the exhibit does not contain Bates numbers.

Citations to testimony in the trial transcripts (which include only testimony from witnesses who were physically present in court and deposition testimony read into the record) identify the witness, followed by the designation "Depo" in instances where the deposition testimony was read into the record, and "Tr." along with reference to the transcript volume, the page and, where needed, line numbers. The trial transcripts appear on the docket at numbers 322-326, 338, and 351-356.

Citations to transcripts of videotaped deposition testimony (which was played during trial but not transcribed as part of the trial transcript) contain the designation "Video" and identify the witness; if necessary, whether the testimony is designated as "Direct, "Cross" or "Redirect,"[5] the page and line numbers of the transcribed deposition testimony. The transcripts of the videotaped depositions or portions thereof that were introduced at trial were admitted as exhibits and are listed in the Stipulated Joint Trial Exhibits [Docket #

_____

[5]In many instances non-consecutive portions of videotaped testimony were introduced. In designating the corresponding transcripts, the parties, for some but not all of these witnesses, renumbered the pages sequentially and kept the reference to the original volume and page. In some instances while the renumbered pages introduced as a witness' direct testimony begin with page 1, so do the first pages of the witness' cross examination and redirect testimony. The Court will refer to the renumbered page designation as "direct," "cross" or "redirect" when necessary and omit reference to the original volume and page numbers unless such additional citation is necessary to avoid confusion.

4

335].

## JURISDICTION

1. In order to understand the Court's conclusions with respect to its jurisdiction to enter final orders,[7] it is necessary to explore Lucent's objection to this Court's entry of a final order. On April 18, 2001 (the "Petition Date") Wireless Communications, Inc. ("Winstar") and Winstar Wireless, Inc. ("Wireless" and collectively with Winstar, the "Debtors") filed voluntary petitions for reorganization pursuant to Chapter 11 of the United States Bankruptcy Code. (Revised Joint Stipulation, ¶ 3). In January 2002 the cases were converted to Chapter 7 and shortly thereafter Christine C. Shubert (the "Trustee") was appointed as the Chapter 7 trustee. (Id., ¶¶ 3 and 4).

2. This adversary proceeding was commenced by the Debtors on the Petition Date. In July 2002 the Trustee stepped in as the Plaintiff and soon thereafter filed her Second Amended Complaint and Jury Demand ("Second Amended Complaint") [Docket #69], the operative complaint in this case. As the caption of the Second Amended Complaint suggests, the Trustee requested a jury trial on all actions that could be tried to a jury. In the Second Amended Answer and Counterclaim of Defendant Lucent Technologies Inc. ("Lucent") to the Second Amended Complaint ("Second Amended

---

[7]Whether the Court treats its order as final under Fed. R. Bankr. P. 7052 or proposes findings and rulings to the district court under Fed. R. Bank. P. 9033 will affect the way in which the parties respond to the orders issued contemporaneously herewith. Moreover "a proceeding's core or non-core nature is crucial in bankruptcy cases because it defines both the extent of the Bankruptcy Court's jurisdiction, and the standard by which the District Court reviews its factual findings." *Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999). *Compare* Fed. R. Bankr. P. 9033(d) *with* Fed. R. Civ. P. 8013.

Answer"), dated March 24, 2004 [Docket #156], Lucent also demanded a jury trial "on all issues properly triable thereby." Subsequently the Trustee withdrew her request for a jury trial.[8] The Trustee alleged that these proceedings are core; Lucent disagreed except with respect to the preference action. (Second Amended Complaint at ¶ 3; Second Amended Answer at ¶ 3).

     3. In June 2004 Lucent sought discretionary withdrawal of the reference pursuant to 28 U.S.C. § 157(d) in the district court and a waiver of Local Bankruptcy Court Rule 5011-1 as it did not file a contemporaneous motion asking the Bankruptcy Court to determine whether these matters were core or non-core [Docket # 208].[9] In July 2004 Lucent filed a memorandum in support of its withdrawal motion [Docket # 237] and urged withdrawal of the reference on the grounds that Lucent was entitled to a jury trial on the Trustee's preference and breach of contract claims and on its own fraud and negligent misrepresentation counterclaims. The Bankruptcy Court then stayed its proceedings pending the district court's determination of the withdrawal motion.

     4. In November 2004 the district court entered its Memorandum Opinion and Order [District Court Docket ## 11 and 12] denying the withdrawal motion. Specifically the

---

[8]The district court concluded that the Trustee had the right to withdraw her jury demand without Lucent's consent. Memorandum Opinion, dated November 16, 2004, at 7 entered in *Shubert v. Lucent Technologies, Inc.*, United States District Court for the District of Delaware Civil Action 04-928 [District Court Docket # 8].

[9]Contemporaneously with the filing of the withdrawal motion, Lucent filed a Motion for Summary Judgment [Docket # 210] seeking judgment from the Bankruptcy court on all three remaining counts. The motion is silent with respect to any objection to the entry of final orders.

6

district court concluded that Lucent had waived its right to a jury trial by the filing of its

proofs of claim and that Lucent did not meet the standards for a permissive withdrawal of

the reference for "cause" under *In re Pruitt*, 910 F.2d 1160, 1168 (3d Cir. 1990).

5. From before the filing of the withdrawal motion, through the conclusion of the

Trustee's case-in-chief in this Court when Lucent then unsuccessfully sought judgment on

partial findings pursuant to Fed. R. Bank. P. 7052, until after submission of all the

evidence, and indeed, submission of each party's proposed findings of fact and

conclusions of law in this adversary proceeding,[10] Lucent **did not** raise the issue that the

Bankruptcy Court lacked jurisdiction to enter final judgment. In fact the record is clear:

Lucent sought a final order in its favor on several occasions from this Court.[11]

6. On the evening of June 9, 2005, Lucent filed a letter, dated June 8, 2005 [Docket

#343], "remind[ing] the Court that Lucent has not consented to the Court's jurisdiction to

---

[10]The last day on which evidence was submitted was May 11, 2005. Both parties
rested at that time. Lucent electronically filed its proposed findings of fact and conclusions
of law on June 6, 2005 at 11:32 p.m. Closing arguments, which of course are not
evidence, occurred on June 13, 2005.

[11]Lucent sought summary judgment on Trustee's preference and breach of contract
claims as well as its own claims for fraud and negligent misrepresentation in June 2004.
There is nothing in the pleadings to suggest Lucent was asking the Court to provide
proposed findings and conclusions to the district court. In the Pretrial Memorandum, the
parties were unable to agree as to the legal issues to be decided so each party set forth
its position. Nowhere in Lucent's detailed 12 page statement of the legal issues, or
indeed anywhere else in the Pretrial Memorandum, does Lucent allege the Court lacked
jurisdiction to enter final orders. At the conclusion of the Trustee's case in chief, Lucent
orally and in writing sought judgment pursuant to Fed. R. Bank. P. 7052 and again did not
raise an objection to this Court's entering a final order. Similarly Lucent's proposed
findings and conclusions do not suggest that there is an ongoing dispute as to whether
these proceedings fall outside the core jurisdiction of the Court.

7

issue final orders or judgments with respect to non-core proceedings in this matter." In the letter Lucent identified the Trustee's breach of the subcontract claim and Lucent's fraud and negligent misrepresentation counterclaims as non-core. Although the June 8, 2005 letter cites to Lucent's Second Amended Answer and Counterclaims to Second Amended Complaint in support of its position that it has not consented to the entry of final orders by this Court, its failure to mention the withdrawal motion or the district court's ruling is striking and perhaps intentionally deceptive.[12]

7. At closing argument Lucent maintained that the district court's decision did not address the core/non-core issue but only whether Lucent was entitled to a jury trial. Although the district court plainly concluded that the matters on which Lucent claimed a jury trial were triable only in equity, the district court concluded that Lucent's filing of its proofs of claim triggered the claims allowance process.[13] The "allowance or disallowance of

---

[12]The Court views the statement in the same June 8, 2005 letter that "[t]his court has never decided whether these claims are core or non-core" as another example of counsel's attempt to mislead this Court. The statement, although technically correct, was occasioned by Lucent's own behavior. As the district court noted, one of the grounds for denying the withdrawal motion was Lucent's failure to follow Local Bankruptcy Rule 5011-1 which required that Lucent file a motion seeking a determination by the Bankruptcy Court as to whether these counts and counterclaims were core or not. Moreover, as discussed herein, whether this Court views the claim and counterclaims as core or non-core is largely irrelevant because, contrary to Lucent's argument, the district court has definitively spoken on this issue when it found that the claims and counterclaims were part of the claims allowance process and when it refused to find, as Lucent had urged, that the claims and counterclaims were independent of the proofs of claim.

[13]"[T]he Court finds that the Trustee's subsequent preference action is now part of the claims allowance process, and is triable only in equity." Memorandum Opinion at 6-7. "The Court is not persuaded by Lucent's argument that the determination of its proofs of claim does not depend on the outcome of the Trustee's Subcontract Claim. The Court finds that the Trustee's Subcontract Claim may affect the ordering of creditors or the equitable distribution of the res of the estate and, thus, are now part of the claims

8

claims against the estate" is one of the specifically enumerated types of actions which fall within the express definition of a core proceeding. 11 U.S.C. § 157(b)(2)(B).

8. Following the district court's decision, Lucent filed a motion seeking certification of the district court's order pursuant to 28 U.S.C. § 1292. That motion was pending in the district court when this case was being tried before the Court. Subsequently the district court denied the motion.[14] The district court stated that this Court "has not determined whether this matter is a core or non-core proceeding." (Memorandum Order [District Court Docket #21] at p.3).

9. The Court, however, interprets the district court's earlier findings that the claims and counterclaims fall within the claims allowance process to necessitate a finding that these actions are core pursuant to 28 U.S.C. § 157(b)(2)(B). While fully cognizant of this Court's role in following the findings and conclusions of the district court with respect to jurisdiction in this case, lest Lucent continue to espouse the position that whether these proceedings fall within the core jurisdiction of the Bankruptcy Court remains an open issue,

_____

allowance process, triable only in equity." *Id.* at 7-8. "The Court finds that Lucent's Fraud and Negligent Misrepresentation counterclaims involve a decision regarding distribution of the bankruptcy estate and, thus, are now part of the claims allowance process, triable only in equity." *Id.* at 8.

[14]Throughout the course of this case and indeed, after closing arguments, the parties sent a flurry of letters to the Court. Many of them were little more than recitations of the squabbling between the parties regarding alleged misstatements of facts. Ultimately the Court issued an order cautioning the parties that it would not tolerate such behavior [Docket # 350]. Given the district court's Memorandum Order, however, the Court would have expected the parties to file some type of notice advising this court of the district court's decision. Neither parties, however, informed the Court of the district court's decision and order. The Court only discovered the Memorandum Order when it checked the district court docket as it was about to issue these findings and rulings.

this Court seeks to be clear: even if the district court did not intend its use of the phrase "claims allowance process" to be read as synonymous with the language of section 157(b)(2)(B), the Court's independent examination of its own jurisdiction would lead to the same conclusion, namely, the counts decided herein are core pursuant to 28 U.S.C. § 157(b)(2)(B). Although the counterclaims for fraud and misrepresentation could be classified as non-core related to actions, Lucent has given its implicit consent to the entry of final orders on those counterclaims. The rationale for these findings is set forth below.

10. As set forth in greater detail below, in 1998 Lucent and Winstar entered into a Credit Agreement (the "First Credit Agreement") (DX 96) whereby Lucent was the primary secured lender to Winstar, and a Supply Agreement (PX 123) whereby Lucent was to provide Winstar with a turnkey buildout of its global communications network. Because Lucent was unable or unwilling to perform the buildout, it subcontracted services to Wireless under the Network Agreement for Buildout Services (the "Subcontract") (DX 177). The expectation was that Lucent would, in time, assume all of its obligations under the Supply Agreement. Accordingly, the Supply Agreement contemplated that Lucent would "develop a transition plan with Winstar's input, review and potential approval" scheduling Lucent's assumption of the various aspects of the buildout. (PX 123 at Schedule A ¶3.3(a); see also PX 123 at ¶6.1 and ¶6.5). Although all obligations under the First Credit Agreement were fully paid in 2000, the First Credit Agreement was replaced by a Second Credit Agreement (DX 29). The anticipated Transition Plan never came to

fruition[15] and thus the parties continued to operate under the Supply Agreement and Subcontract.

11. In October 2001 Lucent filed a proof of claim (the "Proof of Claim") (PX 340) which, on its face, states Lucent held a secured claim (and to the extent not secured, an unsecured claim) in "[a]n amount not less than $138,957,218.90" for "goods sold," "money loaned," and "other." In the "Summary of Supporting Documentation" attached as Tab A.2 to the Proof of Claim, Lucent described the documents which support its claim as the "Supply Agreement ..., any amendments thereto and *any and all related documents, agreements and statements of work.*" (Emphasis added). The Subcontract is certainly an agreement related to the Supply Agreement; it is the means by which Lucent was to fulfill its obligation to perform the network buildout. In addition, although the parties do not define a "statement of work," its plain meaning suggests it is nothing more than a description or list of work performed. The March 2001 "spreadsheet,"[16] against which Lucent refused to pay, is a breakdown of the services performed. (PX 245). Thus this spreadsheet appears to qualify as a statement of work. Whether Lucent may have breached the Subcontract by refusing to pay the March 2001 spreadsheet has a direct

[15]The Supply Agreement defines the Transition Plan as "the plan specified in Schedule A regarding Lucent's time periods to begin providing certain of the Services as specified in the plan." (PX 123 ¶1.1(qq)). Schedule A, titled "Statement of Work," describes Lucent's anticipated role in designing, building, and managing the network. Exhibit A-4 is titled "Initial Transition Plan." The Initial Transition Plan is not the "Transition Plan" which the parties agree never came to be.

[16]The Court uses the term "spreadsheet" because this is a term used by the parties to describe this document. What the document is or should be deemed to be is the matter of some discussion, *infra*.

bearing upon whether Lucent may recover under its Proof of Claim and if so, in what amount. Therefore the breach of the Subcontract claim falls within the core jurisdiction of the Court. 28 U.S.C. § 157 (b)(2)(B). *Southeastern Sprinkler Co., Inc. v. Meyertech Corp. (In re Meyertech Corp.)*, 831 F.2d 410, 418 (3d Cir.1987)(creditor's filing a proof of claim on a pre-petition breach of contract action created an action in bankruptcy court that "[b]y its very nature [ ] fits directly under the more specific definition of a core proceeding under § 157(b)(2)(B) ...."). *See also S.G. Phillips Constructors, Inc. v. City of Burlington, Vermont (In re S.G. Phillips Constructors, Inc.)*, 45 F.3d 702 (2d Cir.1995)(filing a proof of claim converts a pre-petition state law claim into a core proceeding); *In re NDEP Corp.*, 203 B.R. 905, 910 (D. Del. 1996).

    12. The Court is cognizant of the fact the Proof of Claim was filed after the original complaint in this matter. That fact is insufficient to render the above case distinguishable and the breach of contract claim non-core. Although older cases often cite what has been describes as "a firmly established rule that subject matter jurisdiction is tested as of the time of the filing of the complaint," *Rosa v. Resolution Trust Corporation*, 938 F.2d 383, 392 n. 12 (3d Cir.), *cert. denied* 502 U.S. 981, 1128 S. Ct. 582, 116 L.Ed.2d 608 (1991), the Third Circuit has recognized that the rule is not to be applied blindly.

> The principle that jurisdiction is determined at the outset of the action is simply insufficient to support the continuing applicability of [12 U.S.C.] § 1441a(l)(1) to this case. One basic difficulty with this argument is that the letter and spirit of the rule apply most clearly to diversity cases. The Supreme Court set out the rule in the diversity context. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 286, 290-92, 58 S.Ct. 586, 590, 591-92, 82 L.Ed. 845 (1938). In addition, the

Court crafted the rule for the removal of actions from state
court, which involves a more lenient standard not relevant here.
Id. Most importantly, the policies behind removal and the risks
of manipulative behavior played a significant role in the Court's
decision. St. Paul focused primarily on the monetary threshold
for federal jurisdiction, observing that the time of filing rule
prevented plaintiffs from subsequently amending their
complaint to plead a lesser amount and avoid removal. Id. at
294, 58 S.Ct. at 592-93. Similar concerns applied to changes
of parties that would potentially destroy diversity of citizenship.
Id. at 294-95, 58 S.Ct. at 592-93. From the outset, the
underlying concern of the time of filing rule was the risk that
parties would deploy procedural tactics to manipulate federal
jurisdiction.

The rule that jurisdiction is assessed at the time of the filing of
the complaint has been applied only rarely to federal question
cases. Moreover, in these rare cases, the rule has often been
applied axiomatically, without extensive discussion or analysis.
*See Rosa v. Resolution Trust Corp.*, 938 F.2d 383, 392 n. 12
(3d Cir.), *cert. denied*, 502 U.S. 981, 112 S.Ct. 582, 116
L.Ed.2d 608 (1991); see also *F. Alderete General
Contractors, Inc. v. United States*, 715 F.2d 1476, 1480
(Fed.Cir.1983) (observing in government contracts action that
"the decision below is at variance with the long-standing rule in
the Federal courts that jurisdiction is determined at the time
the suit is filed and, after vesting, cannot be ousted by
subsequent events, including action by the parties"). Even in
the federal question context, however, the focus of the time of
filing rule has been on preventing manipulation of jurisdiction
when a claim is removed. As we observed in *Westmoreland
Hospital Ass'n v. Blue Cross of Western Pa.*, "a subsequent
amendment to the complaint after removal designed to
eliminate the federal claim will not defeat federal jurisdiction."
605 F.2d 119, 123 (3d Cir.1979) (emphasis added), *cert.
denied*, 444 U.S. 1077, 100 S.Ct. 1025, 62 L.Ed.2d 759
(1980). Along with the obvious goal of judicial efficiency, we
perceive the risk of strategic behavior as the primary rationale
behind the time of filing rule.

Manipulation of jurisdiction is simply not at issue in this case.
There is no suggestion of manipulation, nor would the facts
support it. The jurisdiction-destroying transfer of assets

between the RTC and New Rock was an arms length transaction independent of the jurisdictional issue. Without the possibility of manipulative behavior, the primary policy behind the time of filing rule is not implicated.

Our rejection of an absolute time of filing requirement breaks no new ground. Courts that have considered the rule more fully have not hesitated to abandon it where appropriate. In *Boelens v. Redman Homes, Inc.*, 759 F.2d 504 (5th Cir.1985), the Fifth Circuit discussed the policies behind the time of filing rule and held that in a federal question case, where the plaintiff's amended complaint omitted federal counts included in the original complaint on which jurisdiction could be based, the court would look to the amended complaint and decline jurisdiction. Id. at 508. The Fifth Circuit interpreted this rule as consistent with the general principle that the amended complaint "supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading." Id. at 508.

We were equally quick to reject the time of filing rule in *Lovell Mfg. v. Export-Import Bank*, 843 F.2d 725 (3d Cir.1988):

> *Lovell* ... cites several older Third Circuit cases for the proposition that our determination of jurisdiction should be based solely on the basis of the pleadings, and not on subsequent events.... We are uncertain that these cases stand for the broad proposition for which *Lovell* cites them. However, regardless of what they once might have stood for, and regardless of the merit of these principles elsewhere, plainly they do not reflect recent Third Circuit jurisprudence. As *Lovell* itself concedes, later cases clearly hold that once all federal claims have been dropped from a case, the case simply does not belong in federal court.

Id. at 734 (citations omitted). We concluded by observing "that to the extent a black-letter rule ever existed, precluding a court from relying on post-removal events ..., the Supreme Court clearly did not feel bound by it in *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)."

14

> *Id.* at 735. Although the time of filing rule certainly retains a
> large measure of persuasive efficacy, we read *Lovell* as a
> clear rejection of any iron-clad time of filing requirement. *Cf.*
> *Carr v. American Red Cross*, 17 F.3d 671, 683-84 (3d
> Cir.1994) (federal jurisdiction arising from the involvement of
> the American Red Cross in a case will cease on the dismissal
> of the Red Cross from the case).

*New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492,

1503-04 (3d Cir. 1996).

13. In this case the operative complaint, the Second Amended Complaint, was

filed after the filing of Lucent's Proof of Claim. Moreover, this case does not involve the

issue of destroying jurisdiction by subsequent events nor is there any suggestion that the

Trustee attempted to manipulate jurisdiction.

14. In its Second Amended Answer, Lucent admitted that the preference action is a

core matter but disputed that all other counts were core. (Second Amended Answer at ¶

3). This denial would include the count for equitable subordination. "Equitable

subordination is unquestionably a "core" proceeding pursuant to section 157(b)(2)." *In re*

*M. Paolella & Sons, Inc.*, 161 B.R. 107, 116 (E.D.Pa. 1993), *aff'd* 37 F.3d 1487 (3d Cir.

1994). It is an action "affecting the liquidation of the assets of the estate or the adjustment

of the debtor-creditor or the equity security holder relationship...." *See also In re Insilco*

*Technologies, Inc.*, 330 B.R. 512, 520 (Bankr. D.Del. 2005).

15. Similarly Lucent's fraud and negligence counterclaims arise from Winstar's

alleged conduct in connection with the Second Credit Agreement. This is also an

15

agreement related to the Supply Agreement.[17]  It provided the means by which Winstar

was to obtain financing to pay for goods and services under the Supply Agreement,

including those services subcontracted to Wireless under the Subcontract, and thus

Winstar's conduct in connection with its draws under the Second Credit Agreement is

within the ambit of the Proof of Claim.  Moreover, the Second Credit Agreement gave

Lucent the right to conduct the due diligence about which it now complains.  The

counterclaims are now part of the claims allowance process and within the core jurisdiction

of this Court.  28 U.S.C. § 157(b)(2)(B).

    16.  Finally, even if these matters were non-core, Lucent has waived its objection to

this Court's entry of final orders by its conduct.  *Abramowitz v. Palmer*, 999 F.2d 1274,

1280 (8th Cir.1993); *In re G.S.F. Corp.*, 938 F.2d 1467, 1476 (1st Cir.1991); *In re*

*Daniels-Head & Associates*, 819 F.2d 914, 918-19 (9th Cir.1987).[18]  Not only has Lucent

---

[17]Section 11.3(a) of the Supply Agreement expressly provides:

> Lucent shall provide WinStar financing in accordance with the
> Credit Agreement and otherwise in accordance with the terms
> of this Agreement.

[18]Although Fed. R. Bankr. P. 7012(b) provides that in non-core matters, "final orders
and judgments shall not be entered on the bankruptcy judge's order except by *express*
consent of the parties," the substantial weight of authority holds that consent may be
implied.  10 Collier on Bankruptcy ¶ 7012.11 at 7012-25 n. 3 (Bender 2003).  Moreover
courts have found expressions of consent based upon a party's actions such as filing a
complaint.  *Id.*  In its counterclaims contained in the Second Amended Answer, Lucent pled
only that counterclaims one and two were core.  The pleading is silent with respect to any
mention of whether the remaining counterclaims are core or not.  But in pleading, Lucent
requested that judgment be entered in its favor on all counterclaims which should properly
be viewed as Lucent's express consent to this Court's jurisdiction to enter final orders.

16

narrowed what counts and counterclaims it believes fall outside the core jurisdiction of the

Bankruptcy Court,[19] Lucent repeatedly sought judgment in its favor without noting that the

Court could only recommend findings and conclusions to the district court.[20]

*Baldwin-United Corp. v. Thompson (In re Baldwin-United Corp.)*, 48 B.R. 49, 54 (Bankr.

S.D. Ohio 1985) (consent may be implied from failure to object or from any act indicating a

willingness to have the bankruptcy court determine a claim). Similarly in the Joint Pretrial

Memorandum [Docket # 292] Lucent did not raise the core or non-core nature of the

claims and counterclaims as one of the legal issues to be determined. Finally Lucent has

asserted a setoff claim against the estate which it acknowledges is a core matter. *In re*

*Iridium Operating LLC*, 285 B.R. 822, 832 (S.D.N.Y. 2002). The parties agree Lucent's

---

[19] In its closing argument Lucent argued that the Court could not enter a final order only with respect to the breach of the Subcontract claim (Tr. 22-50) and thus the Court finds Lucent waived its objection to the entry of final orders with respect to its counterclaims.

[20] During closing argument Lucent's attorney conceded, in response to questioning by the Court, that he had not raised the issue of core versus non-core jurisdiction with the Court directly but had informed the Court during the summary judgment arguments that Lucent had sought certification of the district court's order. At the summary judgment argument, counsel's sole discussion of any challenge to this Court's jurisdiction was as follows:

> Mr. Saunders: Your Honor, I should point out, unless Your Honor already knows this, that we have asked Judge Farnum to certify, under Section 1292(b), the jury trial issue.

Transcript of December 14, 2004 Hearing [Docket #274] at 20-21. Moreover the argument that this statement put the Court on notice that the core/non-core dichotomy was at issue in the district court is wholly inconsistent with Lucent's argument that the district court focused only on the jury trial issue and did not address the core/non-core issue.

17

setoff claim be set off against any monetary award on the breach of the Subcontract claim. The Court believes this is further evidence of Lucent's waiver.

17. For all of the foregoing reasons, the Court concludes these are all core matters under 28 U.S.C. § 157 and, to the extent not core matters, Lucent has consented to entry of final orders by this Court. Under the Standing Order of Reference, the Court will enter final judgment.

## OVERVIEW OF FACTS AND THE PARTIES' CLAIMS

18. At its essence this case is simply a tale of two companies -one large, one small- which entered into what each expected to be a mutually beneficial relationship to build a wireless communications network and deliver services to customers via that network. What became apparent as the evidence unfolded was that what began as a "strategic partnership" to benefit both parties quickly degenerated into a relationship in which the much larger company bullied and threatened the smaller into taking actions that were designed to benefit the larger at the expense of the smaller. Along the way some executives of each company demonstrated their incompetence and arrogance, and in some instances, now find themselves targets of criminal investigations. The Court notes that there was poor communications not only between the two companies but among each companies' employees. In fact, when Lucent replaced some of its upper level management in the fall of 2000 in response to an internal and SEC investigations, the new executives issued directives regarding the Winstar-Lucent relationship without having even

18

read the operative agreements.  Officers and executives often saw the relationship

unfolding from different perspectives such that, if the Court were so inclined to view each

witness' testimony in isolation, it could find support for virtually any fact.  Yet taking all the

*credible* evidence as a whole, it is clear that Lucent used Winstar to inflate Lucent's own

revenues, especially in the third and fourth quarters of 2000 when Lucent was "feeling a lot

of pressure on revenue."  (Hayes, Depo, Tr.13-38).  Although Winstar benefitted from

some of its dealings with Lucent and its own actions were, at times, no less questionable

than Lucent's, the facts point to one conclusion: Lucent extracted what it needed to prop up

its own revenue from Winstar in the form of purchases by Winstar of unneeded equipment

and manipulated the timing of a refinancing notice that would have put the world on notice

that Winstar was in dire financial straits until Lucent could take some more.  Lucent used

its position as Winstar's lender to ensure Winstar's cooperation by repeated threats to

stop both the funding of Winstar's draw requests and the payment of Wireless's invoices

for services already performed.

**Summary of the Trustee's Claims**

19. Although the parties tried this case for 21 trial days, surprisingly most of the

critical facts surrounding the relationship of the Debtors and the Defendant are not

disputed.  The parties could have and should have saved their own and this Court's

resources by agreeing to many more underlying facts which really are not disputed.

20. Prior to their bankruptcies, Winstar, a Delaware corporation, was a local and

long distance telecommunications carrier and engaged in the buildout of a global

broadband telecommunications network to service its customers.  (DX 701 at 8).  Its stock

19

was publically traded. (DX 701; PX 460). Wireless, Winstar's wholly-owned subsidiary, was also a Delaware corporation engaged in the design and construction of Winstar's network. (Revised Joint Stipulation ¶¶ 1 and 2).

21.  Starting at the customer's end, Winstar would build facilities within the customer's building, known as a "B site," to connect the customer to Winstar's voice and data network via a radio and antenna located on the roof of the customer's building. Radios and antennae were also located on the roof of a Winstar's traffic collection point known as a "hub." Signals were sent between the B site and hub via the radios and antennae. (DX 699 at page 9, line 15 through page 10, line 38).[21]

22.  The hubs, in turn, collected the signal traffic and distributed it to a high capacity facility known as a "central office." Typically signals were transmitted between hubs and central offices via fiber cables, either owned by Winstar or leased from an incumbent telephone company. (Id.).

23.  The central offices had data and voice switching equipment which would connect transmissions from the central office either into other local or long-distance telephone companies or into Winstar's own national fiber network which provided long-haul capacity for Winstar's voice and data services. (Id.).

---

[21]DX 699 is a transcript of the testimony of David Ackerman, Winstar's former group executive/executive vice president for corporate strategy and business planning, given under oath on October 11, 2001 as part of the investigation by the Securities and Exchange Commission ("SEC") styled In the Matter of Lucent Technologies, Inc., file no. HO-9128 (the "SEC Action"). The transcript of the Ackerman videotaped deposition to which DX 699 is an exhibit was admitted as Joint Trial Exhibit 6.

20

24. Winstar's long-haul network typically was made of fiber supplied by non-Lucent vendors and ran along routes that connected one city to another. (Kipke, Tr. 18-190). Optical equipment that amplified and transmitted the signals were generally located at each end of and at certain intervals along the fiber. (Kipke, Tr. 17-72-73).

25. Lucent, is also a Delaware corporation, whose stock is publically-traded on the New York stock exchange (DX 739 at ¶ 12). It designs and delivers telecommunications systems, services, and products, including software. (Revised Joint Stipulation ¶ 5). It was, at the relevant times, much larger in size and resources than the Debtors. (Ackerman, Video-Direct, p.17, line 18-p. 18, line 5).

26. In the late nineties, telecommunications companies were "hot" companies, and on the grow. Winstar, like many others, desired to increase the size and reach of its network and joined forces with Lucent to help accomplish the expansion. Prior to that time, Winstar and Lucent had an arms'-length vendor-creditor relationship whereby Lucent sold goods to Winstar. (Ackerman, Video-Direct at p. 4, line 12). That relationship changed in October 1998 when the two entered into what they both describe as a "strategic partnership." (Ackerman, Video-Direct at pp. 3-4). The "strategic partnership"[22] was created through a series of agreements, three of which figure prominently in this litigation.

27. In October 1998, after three weeks of "lockdown" negotiations, Lucent and Winstar entered into two related agreements: the First Credit Agreement and the Supply

---

[22]The "strategic partnership" was not actually a partnership, a fact Lucent spent considerable time emphasizing. The parties used the term simply to connote their intent to work closely and collaboratively. See October 22, 1998 Joint Press Release (PX 331).

Agreement. (Id.).  Under the First Credit Agreement, dated October 21, 1998, Lucent

became the primary secured lender to Winstar and provided a $2 billion line of credit

(although only $500 million could be borrowed at any one time) to be used for the purchase

of certain products and services in exchange for a lien in virtually all of Winstar's assets.

Wireless was not a borrower, guarantor, or otherwise a signatory to the First Credit

Agreement. (Revised Joint Stipulation ¶¶ 13 and 14).  When the parties entered into the

First and subsequently Second Credit Agreements, Lucent expected that the loans were

be repaid either by borrowing from other lenders or by raising equity.  (Hayes, Depo,

Tr.13-36).

     28.  Under the Supply Agreement Lucent agreed to provide and finance (under the

First Credit Agreement which was later supplanted by the Second Credit Agreement) the

purchase of products and services. (Revised Joint Stipulation ¶6).  Lucent was to provide

equipment of a quality described as "Best of Breed" and, in instances where it could not

provide Best of Breed equipment, it was obligated to finance Winstar's purchase of such

equipment from other vendors.[23]  (Ackerman, Video-Direct at pp.81-82; PX 123 at ¶ 11.3

and Schedule H thereto).

---

[23]The Supply Agreement provides that 65% of the equipment and services
purchased during the first year of the contract would be purchased from Lucent.  The
percentage increased to 70% thereafter.  (PX 123 at ¶ 11.3(b)(1)).  The Supply
Agreement also permits Lucent to surcharge Winstar if Lucent funds the purchase of
goods and services from other vendors beyond the applicable percentages.  There was no
evidence to suggest that Lucent ever surcharged Winstar despite the fact that the parties
agree Lucent funded substantially more non-Lucent purchases than percentages set forth
in the Supply Agreement.

29. To assure that the content of the Winstar network was primarily equipment manufactured and/or sold by Lucent, to develop and enhance its reputation for providing these type of buildout services in a "hot" telecommunications world, and ultimately to enhance its revenue production, Lucent wanted to build Winstar's entire global network, including all supporting infrastructures, on a completely turnkey basis. Consequently the Supply Agreement provided that Lucent would build and deliver a turnkey operation to Winstar. As with its obligations to finance Best of Breed equipment even if supplied by third parties, if Lucent itself was unable to perform the services needed to comply with buildout obligations, it was obligated to finance the payment of those services provided by others who would develop the turnkey system. (PX 123, section 11.3(c).

30. When the parties entered the Supply Agreement, they both recognized that Lucent did not have all the core competencies necessary to perform the buildout. Therefore the Supply Agreement provided that Lucent would prepare a transition agreement that included a schedule of its assumption of various aspects of the buildout as broadly outlined in the Supply Agreement. (PX 123 at Schedule A, § 3.3). No transition agreement was executed and it quickly became apparent that Lucent either could not or would not take over the building of the turnkey network as promptly as anticipated. (Kantor, Video-Cross at pp. 46-48).[24] In March 1999 Lucent and Wireless entered into the Subcontract, effective January 4, 1999, whereby Wireless agreed to act as Lucent's subcontractor and build the network at least until such time as Lucent was willing and able

---

. [24]The transcript of Kantor's videotaped deposition testimony is Joint Trial Exhibit 1.

23

to assume that role. (Revised Joint Stipulation ¶ 7). Wireless would perform the services, many or most of which were the types of service it had already been performing directly for Winstar, as Lucent's subcontractor and then bill Lucent.[25] Lucent, in turn, would bill Winstar which would pay Lucent by drawing down under the First Credit Agreement or, after May 2000, the Second Credit Agreement. In essence Lucent loaned Winstar the money to pay Lucent for building the network; Lucent then paid the money over to Wireless. The paperwork, especially the purchase orders, were exchanged after the work was completed. It is Lucent's refusal to pay for services for the month of March 2001 that gives rise to the Count Seven, the breach of the Subcontract claim.

31. As Winstar grew and required additional financing to feed its insatiable appetite for cash to grow its business, it sought bank financing and in May 2000 arranged for a consortium of bank lenders, with Bank of New York as the administrative and collateral agent, to provide a $1.15 billion revolving credit and term loan (the "Bank Facility") for part of its working capital needs. WCI Capital Corp ("WCI Capital"), one of Winstar's subsidiaries, was the borrower; Winstar and certain other of its subsidiaries were guarantors.

32. The First Credit Agreement, pursuant to which Winstar had borrowed approximately $1.2 billion, was paid off with a portion of the proceeds of the Bank Facility

---

[25]Lucent attempted to portray this arrangement as a scheme perpetrated and controlled by Winstar to enhance its own financials through questionable accounting practices. The Court disagrees. While there is evidence to suggest that this arrangement gave Winstar the means to capitalize many of its network buildout expenses, most of these expenses could be capitalized even without flowing them through Lucent. (Harris, Depo, Tr. 11 at 47).

24

and other funds raised by Winstar. Lucent released its lien in Winstar's assets. (Revised Stipulation ¶ 8).

33. Winstar also had raised money in the public debt and equity markets over the years. (DX 701 at 26 and 48).

34. As Winstar was growing and building out a global telecommunications network, it was purchasing millions of dollars of equipment from Lucent. Lucent desired to keep its good customer relationship with Winstar and thus in May 2000, simultaneously with the execution of the Bank Facility and repayment of the $1.2 million owed under the First Credit Agreement, the parties entered into the Second Credit Agreement whereby Winstar received from Lucent a $2 billion line of credit with the ability to borrow up to $1 billion at any one time. WVF-I LLC ("WVF-I"), a newly formed subsidiary of Winstar was the actual borrower;[26] Winstar and WCI Capital, the borrower under the Bank Facility, were the guarantors. (DX 38). Among other things, the Second Credit Agreement permitted WVF-I to purchase both Lucent and non-Lucent equipment and in exchange WVF-I granted Lucent a security interest ahead of the Bank Facility only in the equipment Lucent financed . Lucent also took a security interest in WVF-I's "general intangibles" and "proceeds." The Second Credit Agreement also contained certain financial covenants, including a covenant

---

[26]The Second Credit Agreement contemplated the future formation of other Winstar subsidiaries to act as borrowers under the Agreement. Subsequently WVF-LU2 LLC ("WVF-LU2") was formed and was also a borrower under the Second Credit Agreement. It also acquired equipment with funds borrowed under the Second Credit Agreement and gave Lucent a security interest in that equipment. WVF-LU2 is the entity that requested the March 30, 2001 borrowing in the amount of $62,050,743.00. (DX 668). The parties, however, refer to the request as Winstar's request and throughout the conduct of this case did not draw distinctions as to which Winstar entity actually made the funding request.

that Winstar not permit its total Cash Capital Expenditures ("CAPEX") to exceed $1.3

billion in "any year prior to and including 2001";[27] and entitled Lucent to serve a "refinance

notice" on Winstar if the outstanding loans exceeded $500,000,000. It also provided that

any increases in the Bank senior loan arrangement would be used to repay Lucent. It is a

partial repayment made to Lucent pursuant to the Second Credit Agreement, using funds

from the so-called Siemans Transaction, that gives rise to Count 10, the preference claim.

35.  Winstar repeatedly and knowingly helped Lucent by making massive, last

minute, allegedly unneeded purchases that were arranged by Lucent as the ends of

quarters approached.  These end of quarter deals enabled Lucent to report more revenue

---

[27]The Second Credit Agreement contained other financial covenants including the
obligation that Winstar give Lucent Winstar's financial information signed by an officer who
was to certify that the financial statements were kept according to generally accepted
accounting principles and that Winstar was in compliance with the Credit Agreements.
Moreover each draw request under the Credit Agreements was considered an
independent certification that Winstar was in compliance with the covenants. At trial
Lucent sought to introduce evidence regarding breaches of these covenants but because
Lucent did not raise these issues in the Joint Pretrial Memorandum, the Court refused the
introduction of such evidence.  Lucent did make an offer of proof that it did not consider it
its responsibility to verify the certified draw requests.  Even if the evidence of these
breaches was properly before the Court and even assuming that Winstar, in fact, breached
these additional covenants, the outcome would be no different.  As discussed *infra*, Lucent
cannot divert its own independent knowledge of Winstar's true financial condition, including
its complicity in trying to help Winstar meet the CAPEX requirement, by hiding behind
Winstar's alleged breaches.

In addition the Second Credit Agreement also contained express covenants
dealing with foreign collateral, EBITDA, and transaction fees.  Again because Lucent did
not raise these issues in the Pretrial Memorandum, the Court refused to consider evidence
of these alleged breaches.  But again, given Lucent's knowledge of the state of Winstar's
affairs, it cannot feign that it was somehow deceived.

and appear more profitable in its quarterly public reports than it really was.[28]  In fact the dollar amount of Winstar's purchases of Lucent equipment in end of quarter sales was on average eight times as high as the dollar amount of Winstar purchases of Lucent equipment in months in which a quarter did not end. Lucent used these end of quarter deals to close its own revenue gaps.

36.  In addition to the end of quarter deals, Winstar helped Lucent record revenue through alleged accounting schemes such as improper bill and hold deals,[29] whereby Winstar would pay for goods that it did not need, often were not identified with any kind of particularity, and frequently never even left the Lucent warehouse.  The Trustee alleges that the Software Pool Agreement, dated September 29, 2000 (PX 323), whereby Winstar was to pay Lucent $135 million, in four equal payments of $33.75 million to be made in January, March, June, and August 2001, for software it did not need, did not use, and had a fair market value of substantially less than the contract price was another in a series of sham transactions that were designed to do little more than inflate Lucent's revenue.[30]

---

[28]As discussed in greater detail below, the distortion of Lucent's financial picture lead to an SEC investigation that resulted in the commencement of a lawsuit for alleged violations of various securities laws against Lucent, several of its former employees, and three former employees of Winstar.

[29]Bill and hold sales are transactions in which a party sells goods to another party but, at the purchaser's request, stores the goods in the seller's facility for shipment at a later date.

[30]Winstar could not use funding from the Second Credit Agreement to pay for its purchases under the  Software Pool Agreement.  (PX 323 at ¶ 6 "Winstar agrees that it will maintain sufficient cash on hand to meet the above-described payment obligations at the respective Invoice Dates independent of any financing arrangements in place between Lucent and Winstar.")

37.  The actions of Lucent in allegedly forcing Winstar to enter into transactions

such as the end of quarter purchases, bill and hold deals and the Software Pool

Agreement, as well as Lucent's alleged delay in negotiating a transition agreement during

the later part of 2000 in order to gain leverage over Winstar and its alleged delay in issuing

the refinancing notice in order to improve its position viz a vie other creditors, give rise to

Count 11, the claim of equitable subordination.[31]

**Summary of Lucent's Counterclaims**

38.  One of the covenants of the Second Credit Agreement required Winstar's

CAPEX to not exceed $1.3 billion in any year prior to and including 2001.  It is Winstar's

alleged CAPEX in excess of the $1.3 billion limitation, its behavior to bring its CAPEX into

compliance, its failure to undertake inquiry regarding its CAPEX,  and its certification in

each borrowing request that all covenants have been or would be met by the time of the

borrowing that give rise to both Lucent's counterclaim for fraud, Counterclaim 5, and its

counterclaim for negligent misrepresentation, Counterclaim 6.

**COUNT VII: BREACH OF THE SUBCONTRACT**

---

[31] In Count XI of her Second Amended Complaint, the Trustee alleges that the
Siemans loan is the transaction which give rise to her request for equitable subordination
and seeks return of the Siemans loan proceeds and subordination of Lucent's claim.  At
trial the evidence of Lucent's alleged impermissible conduct was much broader and
therefore, to the extent necessary, the Second Amended Complaint is deemed amended
to conform to the evidence as such amendment in no way prejudiced Lucent's rights.  *See*
Fed. R. Civ. P. 15(b), made applicable by Fed. R. Bankr. P. 7015(b); *see generally* 6A
Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d §§ 1491,1493 (1990 &
Supp. 2003).  In fact the parties themselves agreed at the end of the trial that their
pleadings should be deemed amended to conform to the evidence (which would not
include any of the offers of proof) as long as neither party added any new claims,
counterclaims, or defenses.  *See* Tr. 21-135-140.

28

39. The Trustee contends in Count Seven of the Second Amended Complaint that Lucent breached the Subcontract between Wireless and Lucent, thereby causing Wireless $62,050,742.00 in damages. Lucent responds that it was not required to perform under Subcontract because there was no "task order" for the work performed.

**The Subcontract and Task Orders, Purchase Orders, Invoices and Spreadsheets**

40. The Subcontract expressly provides:

> 1.1. Services. Contractor agrees to perform for Lucent the tasks, responsibilities and services described on the attached task specific schedule(s) (individually a "Task Order") (the "Services"). The parties may enter into future Task Orders, to which the parties agree, from time to time, with each Task Order to be consecutively numbered and attached hereto. Services shall be provided in accordance with the provisions of this Agreement and the applicable Task Order and shall be on either a firm, fixed price or time and materials basis as specified in the applicable Task Order executed by both parties.

> 1.2. Task Order. Unless otherwise agreed by the parties in writing, each Task Order will include the following information: (i) a description of the Services to be performed; (ii) the targeted commencement and completion dates of the Services; (iii) a list of deliverables to be provided by Contractor (the "Deliverables") and targeted delivery dates; (iv) methods of compensation to be provided to the Contractor (e.g., time and materials, firm fixed price or otherwise) and other appropriate pricing terms such as hourly rates; and (v) other information the parties agree to include.

41. Even though the Subcontract called for Winstar to submit task orders to Lucent prior to Wireless's provision of services, the parties ignored this requirement and between January 1999 and October 2000, Lucent paid Wireless approximately $325 million for

29

services performed under the Subcontract, most, if not all, without a prior written task

order. In fact the parties agree that after the first quarter of 1999 they never exchanged a

single task order (Revised Joint Stipulation ¶ 20).[32]   Nathan Kantor, Winstar's President

and Chief Operating Officer when the relevant agreements, including the Subcontract were

negotiated and approved, testified that it was his understanding that Lucent and Winstar

agreed that the invoices would function as the equivalent of the task orders.  (Kantor,

Video at 356-57).  "The contract was administered by using the invoices and a Lucent

---

[32]The task order for that first quarter, dated January 4, 1999, was not actually
executed until March 1999 when the parties also executed the Subcontract (Wilson, Tr. 16,
105-06) and this document, which the Defendant describes as the only task order
executed, is actually a letter, dated January 4, 1999, from Lucent's Vice President of
Emerging Services to a Winstar employee that reads as follows:

> Pursuant to our recently executed *Agreement for Network
> Build-out Services*, please accept this letter as my
> authorization for the subcontracting of Network Services from
> Winstar Wireless, Inc.
>
> The following is a list of services, which Lucent will subcontract
> to Winstar for an amount not to exceed $25 M for the period
> January 1, 1999 through March 31, 1999 [:]
> •       Switch Site Planning & Construction
> •       Hub Site Planning & Construction
> •       Broadband Riser Engineering
> •       Inside Wire engineering
> •       Network Integration (CO & Hubs)
> •       Network Integration (B Sites)
> •       Site Surveys
> •       Site Acquisition
> Thank you in advance for your support.

(First page, bearing Bates Stamp WC0019778, of DX 117).  Even this "task order" is
devoid of the details that Lucent argues must be present for a writing to comply with the
Section 1.2 of the Subcontract and be considered a "task order."

purchase order to reflect these task orders and the work that was performed by Winstar to

Lucent and agreed to by Lucent and those invoices were paid for several years." (Kantor,

Video at 361-62).

42. Yet if the letter dated January 4, 1999 is a task order, the parties quickly

dispensed with the task order process, opting instead to exchange less formal

documentation, including purchase orders, invoices and spreadsheets summarizing

Wireless' charges. Generally Winstar sent a purchase order to Lucent which, in turn, sent

a purchase order to Wireless. Wireless performed the services and then sent Lucent an

invoice, with or without an accompanying spreadsheet showing the breakdown of services

or goods. Lucent then invoiced Winstar in the same amount as Lucent was billed by

Wireless. Then, as described above, Winstar would draw down under the applicable

Credit Agreement, use the draw to pay Lucent which would then pay its obligation to

Wireless. In fact, Richard Uhl, Winstar's former Chief Financial Officer provided credible

testimony about how payments were sought and obtained, as well as the underlying reason

for dispensing with formal task orders.

> Well, Lucent, the original agreement required that Lucent issue
> purchase orders. Early on it was discovered that Lucent was
> unable or not capable of defining what should go into the
> purchase order. So the practice evolved, in fact, was present
> when I became CFO in the fall of '99 that inasmuch as Lucent
> could not produce the details of the purchase order, Winstar
> Wireless would as its subcontractor to Lucent issue an invoice
> which Lucent would then cover with a purchase order and that
> was the sequence. That was the sequence present and
> existing when I assumed responsibility for Chief financial
> Officer's position in the fall of 1999.

31

(Uhl, Video-direct at 11).[33]

43. Shortly after entering the Supply Agreement, Lucent began to balk at the arrangement and as early as June 1999, Lucent threatened to pull the plug. Shortly after entering the Subcontract, Lucent determined very quickly that the pass-through payment arrangement "yielded no material benefit for Lucent, and in fact cost [Lucent] considerable resources to process, track and manage." (DX 163; *see also* Wilson, Tr. 16-30). Lucent could not recognize revenue on the pass-through transaction because it did not have sufficient control over the services being performed by Winstar's employees to allow revenue recognition under the accounting rules. (PX 388 at LW 00303141; DX 523; *see also* DX 155 at 2WC 0016320.) Lucent was also concerned that financing any additional services would hamper its ability to sell Winstar's loans because the banks it consulted with concerning such financing were "very negative on the inclusion of these incremental services." (DX 149 at WC 0118574; *see* Wilson, Tr. 16-28-29; DX 155; *see also* DX 137.). And Lucent was attempting to sell the Winstar loan as it was among the largest loan Lucent had financed. (Hayes, Depo, Tr. 13-33). Consequently in early June 1999, even though Lucent was still unwilling or unable to build the turnkey operation as required under the Subcontract, it informed Winstar that it would not pass through any additional services because it was "concerned about having to severely discount the paper to sell it." (DX 154.)

---

[33]The transcript of Uhl's videotaped deposition testimony is Joint Trial Exhibit 13.

44. Quickly discussion escalated to the chief executive level and ultimately Lucent agreed to continue the arrangement and it did so up until March 2001 when Lucent refused to pay for the previously rendered services ostensibly because there was no task order.

45. Lucent ultimately agreed to finance Wireless-performed services and facilitate the favorable accounting treatment that Winstar desired by passing through the 2Q1999 services. (Wilson, Tr. 16-54.) Lucent only did so as an accommodation to Winstar, which claimed that ending the pass-through would have negative financial repercussions and which promised to negotiate a true turnkey approach to services that would allow Lucent to recognize revenue on such services in the future. "[T]here was a large pressure from Winstar to go ahead and [pass through services because Winstar] felt like it would have implications on their earnings report since they were capitalizing these services last quarter, and had it not happened this quarter it would reflect badly on their announcement." (*Id.*) Therefore, Lucent agreed to pass through Wireless-performed services in 2Q1999 "with the agreement from Winstar that [Winstar and Lucent] would pursue a business arrangement structure around a turnkey approach to the projects and network implementation that would then, again, well define the tasks for each company to perform, orders up front from Winstar to Lucent, Lucent then going through those task lists and ordering back from Winstar what we could not perform." (*Id.*; *see also* DX 164.)

46. On September 8, 2000 Winstar issued a purchase order, WVF 1-00000002958 (*See also* DX 390 and 391 referencing Lucent's position with respect to the September 8th invoice) that in line item number 1, sought payment of $65,509,331.00. But

33

by this time Lucent was not inclined to increase the Winstar loan. In fact, Lucent was seeking to rid itself of some or all of this debt. At about this time Lucent was seeking to sell the Winstar loan. In mid-September 2000 Deborah Hopkins (Lucent's CFO), Rich McGinn (Lucent's President and CEO), Fred Rubin (Lucent's Treasurer and Senior Vice President), Richard Uhl (Winstar's CFO), and William Rouhana (Winstar's CEO) met with senior officers of the Bank of New York at a luncheon meeting at the Water Club. One of the goals of the meeting was to get the Bank of New York to buy the Winstar debt. The deal was not consummated as the financial market collapsed on the same day as the meeting. (Uhl, Video 282-83).

    47. On September 21, 2000 Deborah Harris and William Plunkett of Lucent had a conversation with David Ackerman and Richard Uhl of Winstar and informed them that Lucent would not pay the $65,509,331. The next day Deborah Harris followed up the conversation with an email and a letter (PX-15) which reads in part:

> At the signing of the supply agreement certain services in support of the Winstar network deployment were described as potentially being performed by Lucent Technologies. The actual assumption of these services was contingent upon the development and successful execution of a transition plan for services that Lucent and Winstar agreed were Lucent competencies and could be successfully executed by Lucent.
>
>            ***
>
> There is a category of services which, to date, Winstar continues to provide for itself...
>
> We have been pursuing ways to take on these services in a manner agreeable to all parties, but have not been able to reach consensus. Consequently, we believe it is not

appropriate for Lucent to accept Purchase Orders for these services. Specifically, we must reluctantly reject line item # 1 of the Purchase Order for $65,509,331.00, WVF 1-00000002958 issued by Winstar on September 8, 2000. Lucent stands ready to negotiate an arrangement under which Lucent becomes responsible for some or all of these services, whether via outsourcing or some other method. We suggest that Lucent and Winstar each designate an empowered team to move ahead with these negotiations with the goal of completing by October 1, 2000. If you agree with this suggestion, we are ready to start immediately beginning with a kickoff meeting next week.

48. At the time of the Harris letter, Lucent, however, had still not developed the core competencies needed for it to assume the buildout by itself. The suggestion that Lucent was ready and willing to perform the buildout and would do so but for the failure of the parties to agree to a transition plan was nothing more than an attempt to create a pretext for denying further draws under the Second Credit Agreement so that Lucent could renegotiate the terms of the "strategic partnership" for its benefit.

49. In fact, Lucent's demands for a financial concession had already begun by the time of the Harris' letter as had its pressure on Winstar to help Lucent make its end of quarter numbers as reflected in a September 18, 2000 email sent on Harris' behalf.

Nina and Bill:

I have tried to do a very brief summary of all the "good, bad and ugly" on this account. Bottom line is that to do an EOQ [end of quarter] deal, we need Nate to provide direction to Ackerman and Uhl that this will take place. They are vehement that they are out of money and do not want to spend money on product that they can not immediately utilize. The deals of the past are haunting us...there is $87M in their warehouses. But much of this is also due to problems with Williams.

We have a restructured proposals that categorizes what they need now through to long term. Definitely the majority of the money we are asking for is not for immediate use. It also includes pricing for the B's and Hubs which is 2 tiered, and time sensitive. Depending on how fast we can implement and identify cost reductions thru [sic] the breakthru [sic] items, could cause our BGP to hover around 30% or below.

What I need are 2 things:

**1. A call to Nate Kantor getting agreement to move forward on an EOQ deal.** Our meeting with Dave Ackerman is first thing Tuesday morning, so this would need to happen today. We believe they already will be spending around $46M with us, so we are asking for another $50-60M. (I am trying to get the total number in the $110-115M range).

2. Agreement that we can discuss at 5:15 today, on the aggressiveness of the proposal.... (PX 86)(emphasis in the original).

50. The same email transmission further supports a finding that Lucent was not only pressuring Winstar to do deals that were designed to benefit Lucent at Winstar's expense but conspiring to ensure that the lucrative to Lucent end of quarter deals got done.

Following are the "headlines" for the Winstar account:

***

- Winstar Services: We pass through around $67M/Q of WinstarServices. We have been told to stop this practice. We will be communicating our position to Winstar the week of 9/18, including options of what portions of these services we can do . **We may want to delay this move for a quarter based on this EOQ deal.**

***

- Previous EOQ Deals: ...

  - Winstar does have major inventory as a consequence of these deals.

36

> \- Credits provided in all the previous EOQ deals
> are now hitting in 4Q2000 results.... (PX 86)
> (emphasis added).

51. Aversano placed the call to Kantor and, despite Winstar's financial condition, the deal was done. (Aversano, Video Tr. at 8). As Kantor subsequently wrote to Aversano, "Great to talk to you and we will help whenever possible." (PX 157). Kantor then instructed Ackerman to make the Lucent deal, which ultimately turned into a deal for $212 million in end of quarter purchases, happen. (PX 56).

52. Yet as David Ackerman wrote to Kantor in a September 18, 2000 e-mail, in view of Winstar's CAPEX Issues, complying with Kantor's instructions to provide substantial revenue to Lucent would not be possible unless Ackerman got "creative:"

> I just spoke with [Lucent employee Bill] Plunkett. He informed me that you and Nina [Aversano] had met (dinner?) and you agreed to help them get to the number they need this quarter ... something around $110M, of which we've already spent about $45M. There is not much I can give them that we really need, but there are some creative things I can do that can get us close to their number without being totally stupid.
>
> * * *
>
> Thus; we are working to cut another $70 [Million] in addition to the $117 [Million] [to meet capex covenants]. This means stopping ANY and ALL incremental spends for ANYTHING capex immediately, and letting capitalized contractors go . . .
>
> * * *
>
> How much capital CAN I REALLY SPEND THIS YEAR, and how much do I do to give Lucent what they need for 3Q?

> If the answer is; both give Lucent the business, AND reduce the
> cap spend to $1B even I will need to institute some very severe
> measures immediately.

(PX-127) (Emphasis in original).

53. After receiving a copy of the September 22, 2000 email and letter, Nate
Kantor, Winstar's President and COO, sent the following email to Nina Aversano,
President of Lucent's North America group (PX-16):

> I am very surprised and disappointed with this-we've only
> discussed it a million times. This doesn't sit well with me and
> will have a major impact on our ability to help you this quarter.
>
> You've got to get this fixed.

54. On September 25, 2000 James Cocito, Lucent's chief operating officer of its
North America Region, sent Frank Manzi an email suggesting that Lucent consider the
possibility of "'a one more time' strategy." (PX 88). As Cochito noted in his email,
"[Kantor] has indicated there will be no deal for the QTR unless this gets fixed. Impact
about 60M or more. Also, I will know as of this morning whether they are going to play with
the AR as well."

55. On September 27, 2000 Nina Aversano, President of Lucent's North America
Region sent Richard Uhl, Winstar's CFO,[34] a letter (PX 17)[35] that purported to modify the
terms under which the two companies did business and containing the conditions under
which Lucent would pay the September 8, 2000 Purchase Order.

---

[34]The letter is addressed to Uhl but contains the salutation "Dear Nate."

[35]The same document is also a Defendant's exhibit (DX 424).

38

This is to inform you that Lucent will accept your purchase order WVF 1-0000002958 [sic] conditioned upon Winstar's agreeing to the following terms and conditions. If you agree, kindly sign in the space provided below and return to me. Immediately. Nate, this is a great opportunity for us to move our relationship forward to what we envisioned-a seamless partnership where the many resources of Lucent can be utilized to help achieve Winstar's business plan. I hope you agree with me that we should seize the moment.

It would appear that there has been a great deal of confusion between us regarding which services and to what extent services would be provided by Lucent to Winstar under our Supply Agreement dated October 21, 1998. Pursuant TO Schedule A of that contract the parties intended a transition plan for Lucent to take over services that at that time Winstar was providing to itself. This was a broad plan possibly leading to a full outsourcing of all Winstar required services to Lucent. Since the signing of that contract there have been a number of attempts to formalize this broad services relationship. The last such attempt was undertaken this past June when the parties entered into two addenda- the Hub and B-Site Addendum [PX-18] and the Optical Network Addendum [PX-19]. These addenda did not include the full range of services contemplated in the Supply Contract.

I'm sure you would agree that the fault for the failure to execute on our original concept lies with both Winstar and Lucent. Happily it appears we both favor the same result-a broad services relationship. We need to finalize that result as soon as possible so that our contractual relationship matches our mutual intent. We propose that commencing Monday morning October 2nd, or as soon thereafter as is reasonably possible, out two teams meet at your offices to finalize a broad services agreement. This would be a lock-up session to finalize a full service agreement no later than two weeks thereafter. Consistent with the principles already established in our two addenda referenced above, Lucent would have complete control of the work covered by the scope of work the parties mutually define in this new agreement. Lucent may either perform the work itself by acquiring expertise and personnel from Winstar, or subcontract some or all of it to third parties (including Winstar). Consistent with this model, commencing

October 1, 2000, Winstar would perform this work only upon prior receipt of a mutually acceptable written purchase order from Lucent (and not at its sole initiative). Should this process not be followed, Lucent would not be able to accept purchase orders or invoices for any Winstar performed services that are outside the scope of work defined in this agreement.

Further, until this new service agreement is in place, Lucent will not be able to accept purchase orders or invoices for services performed by Winstar after September 30, 2000 that are either outside the scope of the two addenda referenced above or that fall within the scope of the new, as yet unexecuted, service agreement. Prior to Winstar performing any work that might rightfully fall within either of the two existing addenda referenced above, Lucent would need to issue mutually acceptable written purchase orders. Should this process not be followed, Lucent would not be able to accept purchase orders or invoices for any Winstar performed services presumably on Lucent's behalf.

I look forward to your prompt reply, and the further growth of our relationship consistent with our shared vision....

56. Uhl signed the letter thereby acknowledging his assent and returned the same to Lucent. Uhl did not understand this letter to terminate the original agreement in the event the parties were unable to enter into a new agreement. (Uhl Video-direct at pp.16, 18, and 19). Kantor understood that Lucent's financial people were demanding a letter because they needed to book revenue. (Kantor Video-direct at 180-81).

57. In addition to Uhl's signing the letter, Lucent extracted another and even more substantial financial concession from Winstar when, on September 29, 2000 the parties executed the Software Pool Agreement (PX 323). Under the Software Pool Agreement Winstar purchased $135 million of unneeded software. The transaction was simply a sham, however. It's purpose was to inflate Lucent's end of quarter revenues. To that end,

40

the Software Pool Agreement was successful: it alone accounted for 26% of Lucent's profits that quarter.  (DX 739 at ¶ 60).

58.  The end of quarter deals for the third quarter of 2000 committed Winstar to make approximately $212 million in purchases and forced Winstar out of compliance with the CAPEX covenant and over the $500 million refinancing threshold.  (Ackerman Video at 605-08 and 666-69; PX 43; PX 57; PX 78; PX 107; PX 148).[36]

59.  Lucent's initial software proposal was for a much smaller amount — $25 million — but in less than nine days, with Kantor's promise to Lucent that Winstar would help "wherever possible," the pool expanded approximately five-fold to the $135 million figure. (PX-57; PX-323, Zlotnick Video-direct at 157).  This increase occurred without the numerous internal studies or any of the other planning documentation that Mr. Pocalyko testified were typical.  (DX-702; Pocalyko Tr.3-41-42).  As Lucent's Deborah Harris advised on September 22, 2000, "I know the overall Software request will be a surprise and that is an area where a conversation will be of (PX-52). benefit."

60.  As part of this software pool transaction, the parties also agreed that Lucent's list pricing for the software, rather than Winstar's contractually-reduced pricing, would be used to further boost Lucent's revenue.  (PX-53; PX-349).  As Winstar executive William Zlotnick

---

[36]Lucent was well aware of the CAPEX problem.  Lucent proposed the Software Pool Agreement, which called for all payments to be deferred until 2001, as a way to commit funds to Lucent without further increasing Winstar's capital expenditures.  (Zlotnick Video-direct at 156; the transcript of Zlotnick's testimony is Joint Trial Exhibit 3).

testified, the software deal was ultimately priced "at whatever Lucent needed for its revenue." (Zlotnick Video direct at 160-61; PX-79; see also PX-57). Of the $135 million of software, less than $20 million was of value to Winstar. (Zlotnick Video-direct at 169-71). In fact, in post-deal documentation Lucent took the position that Winstar was only entitled to select $20 million of software — and would have to pay extra if it wanted more — despite Winstar's obligation to pay $135 million in cash in 2001. (PX-54). Lucent later recanted this position.

61.    To enable Winstar to make the required cash payment for the software, the companies agreed to enter into contracts for credits postdated after September 29, 2000 and payable in the fourth quarter of 2000 (*i.e.*, before Winstar was obligated to actually make the software payments to Lucent). (PX-54; PX-57; PX-186 at internal tab 2; PX-324; PX-462 at 37; Rubin 2003 152:15 — 154:11).

62.    On behalf of Winstar, Ackerman signed the post-dated credit agreements, enabling Lucent to book almost the entire amount of the software deal as revenue in Lucent's final fiscal quarter of 2000 (September 30, 2000). (PX-167; DX-739). Thus, Lucent funded Winstar's purchase of the unnecessary software in advance, to obtain Lucent's September 2000 revenue and profit infusion.

63.    Shortly thereafter Rouhana, Winstar's Chairman and CEO, informed Schacht, one of Lucent's directors and who, as of October 23, 2000, resumed his previous position as CEO of Lucent, about the financial improprieties between the companies. Lucent retained its outside counsel to investigate its accounting procedures. The investigation resulted in Lucent's reversal of the revenue recognition from the Software Pool Agreement

42

and a shake-up of the company's accounting staff. (Schacht, Tr. 21 at 33-35).

64. The Securities and Exchange Commission ("SEC") also conducted an investigation that ultimately lead to the SEC's filing a civil complaint against Lucent, certain key Lucent employees, including Deborah Harris, who as Vice President of Sales assumed responsibilities for the Winstar account in August 2000, and Plunkett, a member of Lucent's management team overseeing the Winstar account, and former Winstar employee, David Ackerman, a "Group Executive" responsible for the build out of Winstar's network. A criminal investigation is still ongoing. When deposed as part of the SEC, both Harris and Plunkett refused to answer citing their right against self-incrimination under the Fifth Amendment to the United States Constitution.     65. Lucent in fact terminated Mr. Plunkett for his involvement in postdating documents related to the software deal. (Schacht Tr. 21-35). It did nothing, however, to terminate or otherwise punish fellow Winstar Sales Team members Deborah Harris, Vanessa Petrini or David Rigotti, all of whom remained active on the Winstar account into 2001, and who were clearly culpable in the scheme to fraudulently post-date the deal documents. (See PX-73; PX-66). Thus, while Mr. Plunkett became the scapegoat, the transaction remained in place, and the other Lucent participants remained active on the core Winstar sales team. (Schacht, TR. 21-29:3-21, 21-33:13-17, 21-35:7-14).

66. Soon after sending her September 27, 2000 letter Aversano was relieved of her duties at Lucent and formally left Lucent in December 2000. (Aversano Depo, Tr. 8-22-24.). When she left, the parties had not executed a transition agreement nor had they resolved the ongoing problem of payment of the pass-through requests.

43

67. During this same time period Lucent was experiencing its own revenue crisis and was attempting to reduce its exposure on loans it was financing. (PX184). By at least mid October 2000 it drafted, but did not send, a refinancing notice as Winstar's outstanding borrowing exceeded the $500 million trigger. (Hayes, Depo, Tr. 13-40; PX 185 ("Per the email below, we are planning to issue a Refinancing Notice to Winstar next week."). Lucent was well aware of the impact sending such a notice could have. By email dated November 2, 2000, Paul Hayes, Lucent's Director of Syndication and whose job was created in late 1999 or early 2000 specifically to manage the process of removing loans from Lucent's books, circulated a memorandum from Beth Perricone addressing the implications of sending a refinancing notice to Winstar. (Hayes, Depo, Tr. 13-31; PX 187). That memorandum provides in part:

> Paul and I have studied the implications for Winstar and
> Lucent of issuing a refinance notice....
>
> ***
>
> IV. Implications of Issuing a Refinance Notice:
>
> Option 1-Issue a written 105 day refinance notice for all or a
> portion of the Lucent Loan
>
> Pros:
>
> - Puts pressure on Winstar to seek alternative sources of
>   capital (i.e. existing Bank Syndicate, Bondholders,
>   Equity Sponsors, and Vendors);
> - Forces parties to the table to deal with funding shortfall
>   issues;
> - Provides ability for Lucent to re-negotiate certain
>   provisions, e.g. content requirements, limit non-Lucent
>   content financing, eliminate Winstar pre-approval for
>   Lucent loan sales, improve collateral position (i.e. pari
>   passu with Bank Syndicate);

- Repayment by Winstar results in fresh $1B of Lucent financing available for Winstar;
- Lucent can always rescind or modify the refinancing notice

Cons:

- Winstar is likely to immediately file 8-K to disclose material adverse event, disclosing the amount of the financing;
- Disclosure may result in details of Lucent's financing becoming public;
- Market rumors may further disrupt capital markets and deter new investors;
- Existing Winstar securities could suffer price deterioration, further impacting market appetite and further depressing price of Lucent Loans;
- Potential Rating Agency Implication for Lucent and Winstar;
- Potential increased cash flow requirement for Winstar, which would result at end of Refinance Period (90-105 days). If winstar does not refinance, rate on Lucent Loan increases by 2% (i.e. a potential $13.8 M in additional interest cost annually on current &690 M of Lucent Loans). If Lucent chooses to convert its notes at the end of the Refinance Period, the Conversion Notes (a defined legal term) could carry a cash payment coupon as high as approx. 21% based on Winstar's current bond prices (i.e. a potential $62 M of additional interest cost annually on current $690 M of Lucent Loans)

Option 2-Meet with Winstar immediately and advise verbally of pending notice

Pros:

- Provides opportunity to negotiate right to sell up to $300 M of Lucent Loans today if Lucent desires;
- Advise of refinance amount of 100% of Lucent Loans then negotiate a lesser amount if Lucent desires;
- Flush out any strategic options currently under consideration by winstar;
- Extract other amendments (i.e. collateral, voting, assignments, etc.) and any additional economic concessions (i.e. rate, fees, warrants)
- Limit public disclosure and market impacts

45

Cons:

- Time is of the essence
- 105 days required for refinance
- Rumors still may permeate the marketplace

**V.  Conclusions:**

- Lucent's ultimate negotiating position may be driven by our own perception of Winstar as a "going concern";
- If we believe they are a survivor than our primary concern might be limiting a loss of Lucent profits, i.e., discounting Lucent paper;
- To make the most informed Lucent decision we need better clarity from marketplace on capacity for Winstar debt/equity to make a more informed decision; A confidential discussion may begin immediately on this;
- Alternatively, do we perceive Winstar as completely locked out of the capital markets and absent a strategic investor?  Should we be concerned about capital perservation and the impact to Lucent's balance sheet and credit rating?
- Ultimately our decision should be driven by where we think this is going.  In our judgment, if the capital market disruption is temporary, i.e., 3-6 months longer, than [sic] Winstar is likely to survive.

68.  By November 7, 2000 Lucent had apparently decided to delay issuing the refinancing notice when Beth Perricone again wrote in an email:

As you will see below there was a meeting of the minds at Winstar yesterday.  Late last nite [sic] Bill Quinn and I spoke briefly to Peter for the outcomes of that meeting.  Peter described 3 capital events about to occur:

- Bank group to provide for new term loan of $200M to be supported via guaranty of Siemans.  The proceeds of this loan are to paydown [sic] Lucent   Apparently Winstar will enter into long term supply agreement w/Winstar [sic] in exchange for their guaranty.  Not sure how they will pay for Siemans gear if that facility is used to repay us??

- Winstar to enter into new $275M capital lease w/Cisco

46

- Winstar to inject new $25M of equity (term sheet to follow to Lucent)

This would bring our current exposure of $690M down to $490M or below the trigger amount. I am not clear from Peter whether we will issue refinance notice now, sounds like we are waiting.

Peter want complete due diligence done at Winstar so Quinn, Keller and I are coming up w/ a list today....(PX 188).

69.  On November 10, 2000 Perricone sent yet another email in which she again recommended that due diligence of Winstar be undertaken to evaluate the impact of a refinancing notice prior to send such a notice. (PX 189). Lucent was clearly worried that the issuance of the refinancing notice would have dire consequences for Winstar. (Hayes, Depo, Tr 13-45). Nevertheless Hayes assuredly wrote in a November 16, 2000 email to Hunt-Majean, "Sending the refinancing will not send Winstar into a financial 'tailspin,' and I will stake my bonus from this past year on it."[37]  (PX 191).

70.  In November 2000 Lucent commenced its due diligence of winstar's financial condition. As a result of the due diligence, Perricone recommended that Lucent lower Winstar's "Asset Quality Rating" or "ARQ" from 6 to 7.[38]  (Perricone, Depo, Tr. 3-115).

71.  Lucent replaced some of its key management in the fall of 2000 but it continued along a tumultuous path with employees in the sales and finance department continuing to have different goals and objectives. Although Lucent's upper management wanted to

---

[37]Hayes testified that the comment about staking his bonus on his opinion that the refinancing notice would not send Winstar into a tailspin was intended as a joke as Lucent did not offer bonuses. (Hayes, Depo, Tr, 13-89).

[38]The ARQ rated Lucent's borrowers on a scale of 1 to 10. The higher the rating, the higher the inherent risk of non-payment. (Perricone, Depo., Tr. 13-115).

extricate the company from the business of lending to its customers, or at least from

Winstar, the pressure to have Winstar continue purchasing and building out the network

continued.  Indeed when Winstar did not behave as Lucent wanted, Lucent simply shut

down any discussion of a transition agreement.  Lucent continued to control Winstar

throughout the course of their relationship, including in December 2000.  Although their

may have been periods when Lucent's control was less apparent or even relaxed, and

indeed there were times when Winstar was able to extract concessions from Lucent, the

fact remains that these parties were not dealing at arms length.  For example, the bill and

hold transactions were done at the request of Lucent (PX 462 at Exhibit N);[39] purchase

orders are vague-often describing as "miscellaneous" a purchase of several million dollars

(See, e.g., PX 462 at Exhibit H and I); the inflation of the Software Pool Agreement from

$31 million to $135 million over the course of a 9 day period (PX 462 at Exhibit P).[40]

There were also excessive end of quarter deals, unneeded equipment paid for by Winstar

but sitting in Lucent's facilities, duplicate charges, and difficultly, to say the least, in getting

---

[39]PX 462 is the Report of Paul Pocalyko who was retained as an expert by Winstar to render an opinion as to whether the transactions were arm's-length and if Lucent exerted undue influence and control.  Lucent sought to exclude Pocalyko's testimony under *Daubert v. Merrell Dow Pharm*, Inc., 509 U.S. 579 (1993).  Assuming for the sake of argument that *Daubert* is applicable in a bench trial, the Court denied the motion.  (Tr. of March 16, 2005 hearing at 34-41) [Docket 322].  Although the Court continues to believe its initial ruling is correct, it has used Pocalyko's report only as a convenient vehicle to refer to relevant documents.  The Court has not relied upon Pocalyko's opinions in reaching its decision.

[40]The Software Pool Agreement prices the equipment at "list" price rather than the reduced price that the Supply Agreement provides.

48

credits correctly to Winstar's accounts.[41]  Winstar was and remained Lucent's captive

purchaser of unneeded and sometimes unidentified goods to permit Lucent to inflate its

own revenue.

72.  By letter dated December 28, 2000 and addressed to Michael Montemarano,

Lucent's Vice President of Finance of Worldwide Sales and Marketing, (DX 558), Winstar

---

[41]Although the parties disputed these allegations, after weighing the credible
evidence, including the documents appended to and compiled as part of the Pocalyko
Report, the Court finds that the Plaintiff has proved that Lucent essentially dumped
excessive amount of unneeded equipment on Winstar in order to inflate Lucent's own
revenues.  For example, excluding the $135 million paid to Lucent under the Software Pool
Agreement (which itself is another indication of the sham transactions Lucent devised to
inflate its own revenues), Winstar made an aggregate of approximately $706,000,000 in
purchases from Lucent in calendar years 1999 and 2000.  During this period the amount of
Lucent equipment paid for by Winstar but sitting in Winstar's or Lucent's warehouses
continued to increase so that by March 31, 2001 there was, on an adjusted cost basis,
approximately $327 million in those warehouses.  Of that $327 million in equipment, the
overwhelming majority, indeed about $256 million was paid Lucent equipment while $71
million was non-Lucent merchandise.  And needless to say, the valuation of the Lucent
equipment at $256 million on an adjusted cost basis is less than that actual amount paid to
Lucent by Winstar for that equipment.

Moreover closer examination of the facts relating to the warehoused equipment
purchased from Lucent reveals that of the approximately $256,000,000 (on a cost adjusted
basis) of Lucent equipment in Winstar inventory in warehouses as of March 31, 2001,
approximately $74 million of the $256 million of Lucent equipment could be specifically
traced as to the original date that Winstar purchased such equipment from Lucent. Of that
$74 million of Lucent equipment, approximately $36 million (on a cost adjusted basis) of
that equipment was purchased by Winstar in a December 31, 1999, end of quarter bill and
hold sale and remained in a Lucent warehouse undeployed for 15 months as of March 31,
2001. In fact once Winstar paid for Lucent equipment, it was not unusual for some of that
merchandise to sit in a warehouse for more than a year.

49

sent Lucent a request to borrow $62,324,930.00.[42]  Accompanying the letter was a one

page "analysis" captioned:

Winstar Telecommunications, Inc.
Lucent Billing for Capital Labor
Q1 2001 Estimate

The chart lists the departments which provided the services under three general headings:

"Winstar Systems Group," "Winstar For Buildings," and "Winstar Network Services."  Each

general heading is followed by a specific list of what appear to be the various departments

which rendered services, along with the total of "internal," "external," and "Lucent billable"

labor costs incurred by each department for the months of October, November, and

December (for which month the figures are estimates) of 2000.

   73.  On the evening of December 27, 2000 Montemarano sent an email (included as

part of PX 199) to several Lucent employees, including Ben Verwaayen, Lucent's Vice

Chairmen; and Hopkins, Lucent's CFO, which reads in part as follows:

> Based on a call today from winstar [sic] chairmen, president
> and CFO we took the following position as articulated by Ben.
> We could "allow" winstar [sic] to use the credit facility to fund
> their services for this quarter.  We would not engage in any
> billing/po's between the companies, but they could and do
> intend to draw down the facility for about 65M [sic].  This is
> money out the door for us.
> We agreed that the 35m [sic] credit granted in 4qtr can be used
> as a reduction to their outstanding credit facility.  It would not be
> dispersed as cash to them, but we [sic] go against the credit
> facility as "repayment."
> They also indicated they had presented a draw down last week
> of 32M [sic], Ben asked them to reconsider this given the
> extremely low lucent [sic] content.

---

[42]The letter requests that the funds be wired to WCI Capital Corp.

50

> I will work this tomorrow with their CFO and plan to ensure they
> adequately document cash draws. In addition, Ben asked the
> CT [customer team][43] to set up a meeting with winstar to get the
> relationship to a new level where both companies benefit.

74. The next morning Lucent's CFO sent the following reply via email (also part of

PX 199):

> WE HAVE ALREADY SAID no TO THE SERVICES
> FUNDING.

75. A few hours later, Verwaayen emailed (also part of PX 199) the following:

> Well, after a read out from the lawyers and after reviewing the
> options with everybody on our pre call yesterday, Winstar can
> draw down upon the credit facility, including services.
> We did push back on credits (no cash, but off setting a/r's) and
> the 30 million request that came in Friday.
> We really had not the option of denying their rights here.
> In reality, we can make their lives miserable for a couple of
> days, but they have an open line and that is what we have to
> change.
> So what we did, after all agreed in our pre call is to create a
> basis for a fundamental resetting of this relationship.
> We will create from both sides a wishlist how to recreate our
> legal platform working together and renegotiate on those
> issues.
> I think we all understand how much better we are and how to
> get out of this situation going forward.
> We want to make this a profitable account with clear rules of
> engagement.

76. But as suggested in the December 29, 2000 email Ben Verwaayen sent, Lucent

had used its influence over Winstar to set the stage for the new negotiations.

> Now we have positioned ourselves for a major overhaul of our
> relationship with Winstar, I think we should involve our partners
> in treasury and Legal in preparing a model for our negotiations

---

[43]Hayes, Depo, Tr. 13-63.

on Jan 9 or 10.... (PX 261).

77. On the evening of January 5, 2001, Elizabeth Perricone (who was not copied on the above series of emails) sent an email (PX 119) which reads in part:

> Financing of Services on 12/29/00:
> Given our agreement to finance services on 12/29/00, legal
> feels it would be prudent to send Winstar a letter confirming this
> was a borrowing under the Credit Agreement as an
> accomodation [sic], and we reserve the right not to make loans
> for any such purpose in the future.

78. On March 27, 2001 Winstar faxed to Lucent a notice of Winstar's request to borrow $62,050,743.00 effective March 30, 2001. (DX 668). The draw request is on Winstar letterhead and is captioned "Notice of Request for Borrowing." The Notice states that the request is given "[p]ursuant to Section 2.03 of the Credit Agreement" and contains a certification "that all conditions for borrowing set forth in Section 4.03 the [sic] Credit Agreement have been satisfied or will be satisfied as of the date hereof and as of the date the borrowing is made." The Notice also indicates that the entire amount requested is to be paid to the "Borrower" for non-Lucent equipment.

79. On April 2, 2001 Winstar sent Lucent a second fax that contained the back-up detail to the Notice of Request for Borrowing (included as part of DX 668). The cover sheet contains the following note: "Please add this to the draw request as an attachment. Although this is not usually provided, this is the detail behind the services number." The detail attached is a one page chart that is captioned:

Winstar Telecommunications, Inc.
Lucent Billing for Capital Labor
Q1 2001 Estimate

52

The chart is virtually identical to the one attached to the fourth quarter 2000 request except that this request is for the months of January, February, and March (for which the figures are estimates) of 2001. The total of all of these costs is approximately $62,050,742.[44]

80. Lucent refused to pay citing the lack of a task order. The lack of a task order was simply a ruse, however. Lucent had not required task orders in the past and, although Aversano's September 27, 2000 letter purported to set new parameters for payment, Aversano's letter extorted Winstar's assent to the reset terms by threatening nonpayment. Even Lucent's own executives testified that the documentation submitted by Winstar created a "commercially binding relationship" for the relevant time periods: "[a]t September 30th [2000], we clearly were in a relationship that was commercially binding because there were purchase orders and invoices between the companies where we subcontracted with them." (Montemarano, Video-direct at 10-11; see also Montemarano, Video-direct 68:8 — 69:24; Simpson, Video-direct at 18- 54).[45]

81. Although, beginning as early as the communications surrounding the invoice for the second quarter of 1999, Lucent warned Winstar that it would pay for Wireless' services "one last time" without a task order, there were too many "one last times" for that warning to be effective. (See Aversano's letter of September 27, 2000; December 27, 2000 call

---

[44]This figure was calculated by the Court; the numbers listed on the line called "Grand Total" are unreadable on the exhibit. Some of the numbers throughout the exhibit are difficult to read but the total appears to be within $1 of the amount requested in the Notice of Request for Borrowing.

[45]The transcript of Montemarano's deposition testimony is Joint Trial Exhibit 9; the transcript of Simpson's testimony is Joint Trial Exhibit 11.

53

between Lucent and Winstar) (Wilson, Tr. 16-110-11). Moreover, privately Lucent

employees agreed that Lucent was obligated to pay for these services. As is discussed in

greater detail below, Lucent was using the threat of non-payment to get Winstar to

renegotiate their various agreements to get a better deal. On repeated occasions, Lucent

advised Winstar that it was paying for Wireless' services under the Subcontract "one more

time" or "one last time" but always paying each invoice until March 2001 when Lucent was

again trying to turn up the heat to get a better deal from Winstar. (Wilson, Tr. 16-110-11).

82. The requirement that there be "task orders" as contemplated by the Subcontract

was modified by the course of conduct between the parties.

83. Lucent argues that this course of conduct between the parties is irrelevant

because the Subcontract contains a "no oral modification" clause. Although such clauses

are generally enforceable under New York law, there are two exceptions: (1) where an oral

modification is supported by full performance, or by partial performance unequivocally

referable to the oral modification, *Rose v. Spa Realty Associates*, 42 N.Y.2d 338, 343, 397

N.Y.S.2d 922, 926 (N.Y. 1977), and (2) where a party has relied upon an oral modification

through conduct which is incompatible with the express terms of the contract, equitable

estoppel will prevent the other party from attempting subsequent strict reliance on the

written terms. *Id.*, 42 N.Y. at 344, 397 N.Y.S.2d at 927. 84. "Under New York law, oral

directions to perform extra work, or the general course of conduct between the parties, may

modify or eliminate contract provisions requiring written authorization or notice of claims."

*Barsotti's, Inc. v. Consolidated Edison Co. of New York, Inc.*, 254 A.D.2d 211, 212, 680

N.Y.S.2d 88, 89 (1998) (internal quotations and citations omitted). When the contract has

not been fully performed, "the party seeking relief from the written terms of the contract must introduce evidence of conduct on the part of other parties or reliance on his own part which is "unequivocally referable" to the oral modification and incompatible with the contract's written terms. *Rose,* 42 N.Y.2d at 341, 344, 366 N.E.2d at 1281, 1283, 397 N.Y.S.2d at 924, 927. "Because the doctrine of part performance is based upon the equitable principle that it would be a fraud to allow one party, insisting on the Statute [of Frauds], to escape performance after permitting the other party, acting in reliance, to substantially perform, the acts of part performance must have been those of the party insisting on the contract, not those of the party insisting on the Statute of Frauds." *Messner Vetere Berger McNamee Schmetterer Euro RSCG Inc. v. Aegis Group PLC,* 93 N.Y.2d 229, 237, 711 N.E.2d 953, 958, 689 N.Y.S.2d 674, 679-80 (1999).

85. In this case the parties' behavior resulted in a modification to the Subcontract. There can be no question that Wireless' performance was undertaken pursuant to the Subcontract. Based upon Lucent's past practices, neither Wireless nor Winstar was unreasonable in relying upon Lucent's practice of funding and paying for services upon presentation of an invoice and spreadsheet and neither was unreasonable in expecting this practice to continue. Moreover, it is not credible that almost two years after the pattern had been established that Lucent would insist upon compliance with the letter of the Subcontract, particularly when Lucent has used this tactic in the past to try to pressure Winstar and when Lucent itself was dragging its heels on negotiating the long-awaited transition agreement. In fact, after Lucent forced Uhl, under threat of non-payment of the

55

Winstar's September 8, 2000 invoice in the amount of $65,509,331, to sign Aversano's September 27, 2000 letter (PX 88) purportedly resetting the terms and conditions of the Subcontract, Lucent ignored the reset terms the very next quarter.   Therefore based on the parties' behavior, the Subcontract was modified to provide for payment of purchase orders, invoices, etc. after the Wireless performed the work and thus Lucent's refusal to pay the March 2001 invoice was in breach of the Subcontract.

86.  The Trustee is awarded damages in the amount of $62,050,742.00, the amount of the March 2001 invoice which Lucent was obligated to, but did not, pay.  Pursuant to the law of this case, no consequential or punitive damages are awarded in connection with the breach. (*See* Docket #85 and #103).  Moreover the parties have agreed that, if the event that the Trustee should be awarded damages pursuant to this Count, Lucent would be entitled to an offset of $6.3 million.  Therefore the damage award is reduced to $55,750,742.00.

**COUNT X: PREFERENCE**

87.  Section 547(b) of the Bankruptcy Code, 11 U.S.C. § 547(b), provides in relevant part as follows:

> Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property--
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

56

(3) made while the debtor was insolvent;

(4) made—

   ***

   (B) between ninety days and one year before the date of filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if--

   (A) the case were a case under chapter 7 of this title;

   (B) the transfer had not been made; and

   (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

88. The burden of proving each of these elements by a preponderance of the evidence is on the chapter 7 Trustee.  11 U.S.C. § 547(g).  *Official Committee of Unsecured Creditors v. Conceria Sabrina*, 195 B.R. 602, 612  (Bankr. M.D.Pa. 1996).

89. In November 2000, with Lucent and Winstar still in negotiations on a transition agreement, Winstar informed Lucent that Siemans agreed to join the Bank Facility and lend Winstar an additional $200 million.

90. Prior to the closing of the Siemans loan, Winstar sought Lucent's permission  to keep all, or failing that, $100 million of the loan and pay the other $100 to Lucent even though the Second Credit Agreement called for 100% of the proceeds of any increase in the Bank Facility to be paid to Lucent.  Lucent refused and responded with a letter dated November 7, 2000 "consent letter" that was merely a list of demands.  Those demands

included the following:

A. First, Lucent demanded that Winstar draw all of the funds down as soon as they were available and pay them to Lucent, rather than allowing Winstar to determine whether and when it would tap the facility.

B. Second, Lucent demanded that Winstar agree to prepare a written paydown schedule for the remainder of the sums it owed Lucent under the Second Credit Agreement — even though Winstar was not obligated even to begin repaying the sums until 2005 — and insisted that Winstar help Lucent sell off the other outstanding Winstar borrowings.

C. Third, Lucent required that Winstar cooperate in Lucent's performing a due diligence review of Winstar.

91. When Winstar did not immediately agree to Lucent's demands, Lucent put the transition agreement negotiations on hold. Lucent's communications to Winstar were clear and carried the single message: agree to Lucent's demands or there would be no transition agreement.

92. When Winstar still did not acquiesce, Lucent played its ultimate trump card: give Lucent all of the Siemans proceeds or there would be no further draws under the Second Credit Agreement. Lucent, of course, could not withhold funding without breaching the Second Credit Facility. Lucent's threat was one more ploy to control Winstar.

93. Faced with the economic pressure, Winstar agreed to turn over the Siemans

58

proceeds and on December 7, 2000 closed on a $200 million increase to its syndicated loan with Bank of New York.

94. On the same day Winstar paid, by wire transfer, Lucent $188,180,000 to reduce Winstar's outstanding loan with Lucent. This transfer represented the net loan proceeds of $194 million minus $5,820,000 refund of an up-front fee Winstar had paid Lucent at the time of the borrowing under the Second credit Agreement.

95. Lucent disputes that a transfer of Winstar's interest in property was made, that Winstar was insolvent at the time of the Transfer, and that Lucent was an insider of Winstar at the time of the Transfer.

### Transfer of the Debtor's Interest

96. Lucent waived the argument that there was not a transfer of Winstar's interest when it agreed to the following stipulated fact set forth in paragraph 6 of the Additions to Stipulated Facts, filed in open court on March 21, 2005:

> Section 547(b)(1) of the United States Bankruptcy Code has been satisfied with respect to the Trustee's claim that the transfer to Lucent of a portion of the Siemens loan proceeds constituted a voidable preference.

97. Subsequently, after the Trustee had rested, Lucent argued its motion for partial findings under Fed. R. Civ. P. 52(c), incorporated by reference into Fed. R. Bankr. P. 7052, and asserted for the first time that the Trustee had not sustained her burden of proving that section 547(b)(1) had been satisfied. (Tr. 17-7). Having stipulated that this element has been satisfied, Lucent is not free to take back the stipulation after the Plaintiff concluded her case. But lest Lucent argue that the stipulated fact which, to the Court, is clear on its face is

59

somehow ambiguous or means something other than what is says, the Court finds that even without the stipulation, there is more than ample evidence that a transfer of Winstar's interest in property occurred when it paid over a portion of the Siemens proceeds to Lucent. As Judge Fitzgerald recently stated in *In re AmeriServe Food Distribution, Inc.*

> Section 547(b) requires, inter alia, that the property transferred by the debtor be an "interest of the debtor in property." The Supreme Court has interpreted this to be "property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." *Begier v. IRS*, 496 U.S. 53, 58, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990). In determining whether a transfer was "an interest of the debtor in property," courts apply the "diminution of estate doctrine," under which a transfer of an interest of the debtor occurs when a transfer "diminish[es] directly or indirectly the fund to which creditors of the same class can legally resort for the payment of their debts, to such an extent that it is impossible for other creditors of the same class to obtain as great a percentage as the favored one." *In re Superior Stamp & Coin Co. Inc.*, 223 F.3d 1004, 1007 (9th Cir.2000), quoting 4 Collier on Bankruptcy, ¶ 547.03, at 547-26 (15th ed.1993).

*AFD Funds v. Transmed Foods, Inc. (In re AmeriServe Food Distribution, Inc.)*, 315 B.R. 24, 29 (Bankr. D. Del. 2005).

98. But for the payment over to Lucent that Debtor would have had the use of those funds. That the failure to pay Lucent upon completion of the refinancing with Siemens might have given rise to a claim by Lucent for breach of contract does not nullify the fact that a transfer of the Debtor's interest was made.

99. Lucent further attempts to couch this argument as one of "substitution," that is, Siemens was substituted for Lucent on that portion of the loan it made. This argument is factually incorrect. By Lucent's own admission, its collateral pool was different from that

60

given the Siemens. The Siemens transaction was not simply the substitution of one lender for another. Viewed another way what Lucent is really arguing is, as the Trustee correctly notes, the so-called "earmarking doctrine." Under this theory Lucent argues that Winstar had no ability to divert a vast majority of the Siemens proceeds away from Lucent. Thus, Lucent asserts Winstar had no interest in the proceeds and was somehow simply a conduit through which the money flowed. But the facts here are distinguishable from those cases in which debtors validly assign proceeds before they are acquired. Here there was no assignment, just a simple promise to pay. That contractual obligation, without more, is insufficient to convert this into an assignment. *Compare In re Computer Engr'ng Assocs., Inc.*, 337 F.3d 38 (1st Cir. 2003) (valid assignment of contract proceeds meant that debtor had no interest in proceeds as they accrued); *In re RISCmanagement, Inc.*, 304 B.R. 566 (Bankr. D. Mass. 2004) (valid assignment of contract proceeds would deprive debtor of any interest in that property, but mere agreement to pay creditor out of contract proceeds would not). Moreover there is nothing in the record evidencing an agreement between Siemans and the Debtors that the proceeds of the Siemans transaction be used to pay Lucent. *See Reigle v. S.S. Mahajan (In re Kumar Bavishi & Associates)*, 906 F.2d 942, 944 (3d Cir. 1990) (affirming preference where "record does not reflect the existence of an agreement between [new creditor] and the debtor that the funds be used to pay a specified antecedent debt"); *In re Bohlen Enters., Ltd.*, 859 F.2d 561, 566 (8th Cir. 1988); *Howdeshell of Fort Myers v. Dunham-Bush, Inc. (In re Howdeshell of Fort Myers, Inc.)*, 55 B.R. 470, 474-75 (Bankr. M.D. Fla. 1985) (rejecting earmarking where debtor decided who to pay, and third

61

party did not "condition" loan on payment to defendant).

100. Finally, earmarking is an affirmative defense. Lucent did not raise it in its Answer or in the Joint Pretrial Memorandum. Thus, even if Lucent had not previously waived the issue in the Additional Stipulated Facts, and even if it had proved facts that bring the Siemens proceeds under the doctrine of earmarking, it waived the defense when it failed to plead it as an affirmative defense.

*Insolvency*

101. Under the Bankruptcy Code

> "insolvent" means— (A) with reference to an entity other than a partnership and a municipality, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of—
>
> (I) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and
>
> (ii) property that may be exempted from property of the estate under section 522 of this title ....

11 U.S.C. § 101 (32).

102. This test of insolvency, the so-called "balance sheet" insolvency, compares the "fair value" of all of the debtor's assets with the face or "stated" value of its liabilities on the relevant date. It is different from equity tests that focus on a debtor's current ability to pay debts as they become due. Moreover, although labeled as the "balance sheet" test, as Judge Walrath noted "this may be a misnomer because the Balance sheet Test is based upon a fair valuation and not based on Generally Accepted Accounting Principles ('GAAP'),

which are used to prepare a typical balance sheet." *Lids Corp. v. Marathon Investment Partners, L.P. (In re Lids Corp.)*, 281 B.R. 535, 540 (Bankr. D. Del. 2002). "[A]lthough GAAP is relevant in [a] section 547 solvency analysis, it is not determinative." *Id.* at 542. "Whether a company is insolvent under the Bankruptcy Code is considered a mixed question of law and fact." *In re Trans World Airlines, Inc.*, 134 F.3d 188, 193 (3d Cir. 1998).

*Fair Valuation*

103. There are three standard approaches to determine the fair value of assets: the market approach, the income approach and the asset approach. (Scherf, Tr. 12-12-13 and 23-24). Although experts generally consider each of these approaches (Scherf, Tr 12-13), not all of the approaches are appropriate or helpful in determining the proper measure of valuation. Indeed valuation, although employing broad principles of economics, is as much an art as it is a science. Each approach may yield a different result and which approach offers the best or better framework is a determination made in light of the facts of a case. Nevertheless there are some basic tenets that guide courts in evaluation valuation evidence.

104. Fair valuation is generally interpreted as fair market value, that is the amount a hypothetical willing buyer would pay to a willing seller, rather than a distressed or liquidation value. *Travelers Int'l AG v. Trans World Airlines, Inc. (In re Trans World Airlines, Inc.)*, 134 F.3d 188, 194 (3d Cir. 1998), *cert. denied*, 523 U.S. 1138, 118 S.Ct. 1843, 140 L.Ed.2d 1093 (1998).

63

105. "[A] fair valuation of assets contemplates a conversion of assets into cash during a reasonable period of time." *Id.* Although the determination of what is a reasonable period of time depends upon the facts of each case, a "reasonable time should be an estimate of the time that a typical creditor would find optimal: not so short a period that the value of the goods is substantially impaired via a forced sale, but not so long a time that a typical creditor would receive less satisfaction of its claim, as a result of the time value of money and typical business needs, by waiting for the possibility of a higher price." *Id.* at 195. Thus the Court must decide whether "fair value" under the facts of this case means that the Debtor's assets at the time of the transfer must be valued as a going concern or on some other basis, such as a liquidation sale. The answer depends on whether a liquidation in bankruptcy was "clearly imminent on the date of the challenged transfer...." *Id.* at 193. *Vadnais Lumber Supply, Inc. v. Byrne (In re Vadnais Lumber Supply, Inc.)*, 100 B.R. 127, 131 (Bankr. D. Mass.1989)("The proper standard of valuation to be applied in determining solvency in a bankruptcy proceeding is the value of the business as a going concern, not the liquidation value of its assets less its liabilities.... Liquidation value is appropriate, however, if at the time in question the business is so close to shutting its doors that a going concern standard is unrealistic...."). Moreover "going concern" value may not be an appropriate test in an unstable market. *In re Art Shirt, Ltd.*, 93 B.R. 333 (E.D. Pa. 1988).

106. As Lucent's insolvency expert noted in his report:

> During the 1999-2000 period telecom stocks exhibited a great deal of volatility. According to Merrill Lynch, during the period from January 1, 1999 to early March 2000 an average stock within the emerging broadband group appreciated 63% year to

64

date, then these stocks declined an average of 87% by the end
of 2000.

(DX 701 at 11).

107. The traditional method of determining going concern value is by capitalizing

net profit." *Vadnais Lumber Supply*, 100 B.R. at 131.

108. The Trustee and Lucent each rely upon the testimony of their respective

insolvency experts and not unexpectedly those experts reached vastly different conclusions.

The Trustee's expert, Scherf, concluded that Winstar was insolvent on December 7, 2000,

the date of the transfer; Collins, Lucent's expert, concluded the Debtor was solvent on that

date.

109. Stephen J. Scherf, the Trustee's expert, is a Certified Public Accountant and a

Certified Valuation Analyst. He is a principal in Parente Rudulph, LLC and is well qualified

to render an expert opinion in the area of insolvency. Lucent does not dispute his

qualifications as an expert in this matter. Scherf's report was admitted into evidence as PX

460.

110. Lucent relied upon the expert opinion of Kevin Collins, a managing director of

Houlihan Lokey Howard & Zukin and in charge of the valuation practice of the firm's New

York City office. He is also well qualified to render an expert opinion in the area of

insolvency and the Trustee does not dispute his qualifications as an expert in this matter.

His report was admitted into evidence as DX 701.[46]

---

[46]Both experts have substantial experience testifying as experts. Both have had
courts accept their opinions as correct; both have had their opinions criticized. Because
the Court must determine solvency in light of the unique facts of *this* case, criticism by

65

111. In this case the Trustee's expert considered all three approaches (Scherf, Tr. 12-24-25), while Lucent's expert did not consider the asset approach (Collins, Tr. 18-16).

The Market Approach

112. The market approach measures the subject company's assets and those of similarly situate companies.

113. Collins testified that "there was a large and active trading market for Winstar...." (Collins, Tr. 18-16). He opined that the market approach or an income approach would be the appropriate tests for valuation. Because the market approach considered the value only on the basis that the purchaser could only acquire a minority ownership interest via stock purchases, he then adjusted the value upward to include the increase in value that could be attributed to buying a controlling, or indeed entire, interest in the Debtors. Based upon his analysis, he opined that Winstar was solvent on the Transfer date.

114. Scherf rejected the stock market valuation of Winstar and he was correct to do so. The stock market value artificially overvalued the Debtor. For one thing market investors did not know that Lucent was holding back on issuing its refinancing notice. Lucent, but not the average investor, knew that Winstar's true financial picture was much bleaker than the Debtors' publicized financials would indicate. Moreover, as even Collins acknowledged, the market was unstable. [cite] It was simply too unstable to be an adequate indicator of valuation.

---

another court of the methodology chosen by either expert in a different factual context has limited value.

66

115. Moreover, as part of his market approach, Collins, blending a market approach with principles upon which the income approach is based, examined sales of companies or controlling interest in companies that were not comparable to Winstar in performing a guideline company approach and comparable transaction methodology.

The Asset Approach

116. Scherf and Collins both utilized an asset approach to value Winstar. This approach looks at categories of assets and determines the fair market value of those assets or categories of assets based on what it would cost to replace or reconstruct the assets, that is, their replacement cost. (Scherf, Tr. 12-24 and PX 460 at 6). This approach generally begins with a company's balance sheet but substitutes the fair market value of assets and liabilities in place of the book value.

117. The date of the transfer, in this case December 7, 2000, is the relevant date for solvency. The Debtors, however, did not have financial statements as of that date, and, even if they had, financial statements prepared according to GAAP, although relevant, are not controlling. The Debtor did, however, have internally prepared financial statements for December 1, 2000 and December 31, 2000. Thus one approach to determining solvency as of December 7, 2000 is to begin with the financial statements of December 31, 2002 and apply a technique commonly referred to as retrojection. "[T]he United States Court of Appeals for the First Circuit has expressly approved the technique of retrojection, whereby a trustee may meet his burden of proof on the issue of insolvency by showing that the debtor was insolvent at a reasonable time subsequent to the alleged transfer, accompanied by proof that the debtor's financial situation did not change materially during the intervening

67

period." *In re Industrial Commercial Elec., Inc. V. Babineau ( In re Industrial Commercial Elec., Inc.),* 2004 WL 1354530, *7 (Bankr. D. Mass.) (citations omitted). There is no reason to believe that this technique, employed by both parties' experts, would not be expressly approved by the Third Circuit as well. "That rule [retrojection] provides that when a debtor was insolvent on the first known date and insolvent on the last relevant date, and the trustee demonstrates 'the absence of any substantial or radical changes in the assets or liabilities of the bankrupt between the retrojection dates,' *id.,* the debtor is deemed to have been insolvent at all intermediate times. *Foley v. Briden (In re Arrowhead Gardens, Inc.),* 32 B.R. 296, 300 (Bankr. D. Mass.1983)." *Murphy v. Nunes (In re Terrific Seafoods, Inc.),* 197 B.R. 724, 731 (Bankr. D. Mass. 1996).

118. There were no contemporaneously prepared audited financials for the year ended December 31, 2000. Winstar's unaudited financials for that time showed Winstar had a positive net worth *on a book value basis.* (PX 460 at 10). Book value is not the same as fair value.[47] If Winstar's net worth is evaluated on an income basis, it had a negative value.

---

[47]In fact one indication of how poorly Winstar's book value reflected that actual market value of its assets is the optronics inventory. Because Winstar had purchased unneeded equipment from Lucent, including optronics equipment, when Winstar's financial condition was deteriorating in the fall of 2000, it made plans to institute some measures to improve its financial condition. *See* PX 68. One of those measures included selling off excess equipment, including the optronics equipment. (Kantor Video-direct at 479). But the only offer Winstar received for its excess optronics equipment came from Lucent, and it was at a reduced price. *See* PX 22 (Uhl's 12/14/00 email to Frank Jules, Fred Rubin and Nate Kantor: "Guys[,] Carole Spurrier and Debbie Harris called at 4:30 to inform as follows:...5. They have found no buyer for the Optronics. Their internal remarketing group offered to buy it at $.30 on the $1.00. (I said no thanks).").

119. Scherf identified four subsequent events he believed had to be accounted for in order to apply the asset approach: (1) the recognition and recording of a $1.8 billion impairment charge for the three months ended December 31, 2000 by Grant Thorton, LLP, the Debtors' independent auditors; (2) the sale of substantially all of the Debtors' assets and nor of their liabilities to IDT for $42.5 million on December 19, 2001;[48] (3) the valuation prepared for IDT in connection with the allocation of the purchase price; and (4) the administrative insolvency of the Debtors' estates, a factor which he ultimately determined did not provide evidence of solvency or insolvency on the Transfer Date. (Scherf, Tr. 12-25).

120. The impairment charge was based on projections that were prepared for a presentation on December 11, 2000. The impairment charge was clearly knowable on December 7, 2000. (Scherf, Tr. 12-33).

121. In February 2001 Monaco sent an email documenting Winstar's cash flow problems.-Monaco's email in Feb 2001 re: "Depending on the time of checks clearing, we will have difficulty getting to the end of March when we anticipate a brief reprieve by receiving $60mm from Lucent for services, etc." (PX 284). By March 30, 2001 Uhl recognized Winstar's need to file bankruptcy. (Uhl Video-direct at 242-43).

122. Valuations were prepared for IDT in connection with the December 19, 2001 sale by Deloitte & Touche, which valued just the tangible assets at $328 million, and Empire Valuation, after reviewing the work of Deloitte & Touche, determined that the tangible and

---

[48]The purchase price was paid as follows: $30 million in cash and $12.5 million in IDT Class B stock. (Scherf 12-34; PX 460 at 10).

69

intangible assets were worth $630 million.

123.  Based upon his analysis, Scherf opined that Winstar was insolvent by approximately $1.6 billion on the Transfer Date.  The Court agrees.

124.  Lucent criticizes any reliance upon the actual sale price ultimately paid for Winstar's assets during its bankruptcy.  It argues this number represents a distress sale and a price significantly less than Winstar's value on December 7, 2000.  The sale price, although not the only or even the primary fact upon which Scherf's valuation is based, is relevant.  Contrary to Lucent's characterization of the sale of Winstar's assets, the sale was not an auction but rather as a going concern.  *See, e.g.,* Order Authorizing Sale [of substantially all assets to IDT], dated December 19, 2001 at M (entry of sale order necessary to provide uninterrupted service to Debtors' customers) [Docket # 1627]; Master/Final Execution Copy of Asset Purchase Agreement [Docket # 1629].

The Income Approach

125.  The income approach estimates the value of a company based on its earnings capacity.  (PX 460 at 7).  There are two commonly used methods to conduct income approach valuation.  The first, capitalized debt free method also called capitalization of earnings, is based on a company's debt free net cash flow for one year or some other discreet period.  Winstar never had any debt free cash flow.  In fact Winstar, which began its operations in 1996, lost $83 million in that year.  The losses steadily increased and by 2000 the loss had grown to $870 million.  Thus application of this method mandates a finding of insolvency.

126.  Under the second method, the discounted cash flow method, future earnings

70

are projected and then discounted to present value, adjusted to reflect the risk that such earnings will not materialize. (PX 460 at 8). Winstar in fact had prepared projections for a ten (10) year period, until 2009. Because of Winstar's historical performance and the instability of the telecommunications industry, Scherf concluded the Winstar was insolvent using this method. His conclusion is correct. Those projections were speculative at best. They included growth rates significantly in excess of what was projected to be reasonable growth in the telecommunications industry. Moreover, while Winstar generally had been able to meet its revenue projections-although the ten year projections through 2009 relied heavily upon equity infusion which may or may not materialize in an unstable market, historically it understated its expenses. Finally the balance sheet for December 31, 2000 in actuality differed significantly for what Winstar had projected.

127. Collins ignored the deficiencies inherent in Winstar's projections; instead he accepted them at face value and thus his reliance on them produced a flawed result. Further he used a discounted rate of 16% to reflect the risk to investors at a time when Winstar's debt yield was in the range of 25-30%.

128. But Lucent argues that Scherf ignored contemporaneous cash flow data and future projections (which would be used to perform a valuation based on the discounted cash flow method) when performing a valuation based on the income approach and instead relied upon the capitalized debt free net cash flow method. Lucent is incorrect. The capitalized debt free net cash flow method is supported by valuation treatises and has been adopted by courts. Moreover, Scherf did not ignore the discounted cash flow method but rather rejected its use in this case given the unreliability of Winstar's future projections. The

71

discounted cash flow methodology is simply an unacceptable method to be used in this case.

### Amount of Liabilities

129. Absent some unusual circumstances not applicable here, the insolvency test anticipates that liabilities will be valued at their face value. *In re Trans World Airlines, Inc.*, 134 F.3d 188, 197 (3d Cir. 1998).

130. Scherf values those liabilities at $4.8 billion as of December 7, 2000 (Tr. 12-14-15, PX 460); Collins did not value them as of that date. (Tr.18-118). In fact Collins testified that he was unable to value the liabilities as of December 7, 2000. (Tr. 18-119). He valued the liabilities as of December 31, 2000 at $4.321 billion. (Tr. 18-118).

131. Based upon the valuation of the assets and liabilities, Winstar was insolvent on December 7, 2000, the date of the Transfer.

### *Insider Status*

132. Because the Transfer occurred during the period greater than 90 days before the Petition date but less than one year prior to the bankruptcies, the Trustee may only recover on her preference claim if she proves that Lucent was an insider at the time of the Transfer.

133. With respect to a corporation, an insider includes a "person in control of the debtor." 11 U.S.C. § 101 (31).

134. Some courts have defined control as the creditor dominating the debtor. *In re A. Tarricone, Inc.*, 286 B.R. 256, 265 (Bankr. S.D.N.Y. 2002). Others "have used terminology such as having a 'stranglehold' over the debtor, having 'complete

72

domination' of the debtor, rendering the debtor a 'mere instrumentality or alter ego' of the lender or 'powerless to act independently.'" *Badger Freightways, Inc. v. Continental Ill. Nat'l Bank & Trust Co. Of Chicago (In re Badger Freightways, Inc.)*, 106 B.R. 971, 981-82 (Bankr. N.D. Ill. 1989)(internal citations omitted).

135. Both Lucent and the Trustee correctly note that whether a party is or was "in control" of a debtor requires a case by case determination. "The legislative history of § 101(31) indicates that the term applies to 'one who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arms length with the debtor.'" *Official Committee of Unsecured Creditors v. Austin financial services, Inc. (In re KDI Holdings, Inc.)*, 277 B.R. 493, 511 (Bankr. S.D.N.Y. 1999) (quoting S.Rep. No. 989, 95th Cong., 1st Sess. 25 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5810, 6269) (legislative history 11 U.S.C. § 101(31)) (other citations omitted). "The true test of 'insider' status is whether one's dealings with the debtor cannot accurately be characterized as arm's-length. *In re Craig Systems Corporation*, 244 B.R. 529, 539 (Bankr. D. Mass.2000). The emphasis is on the nature of the relationship between debtor and the other person, especially on whether their relationship gave the other person the power or influence to have a debt owed to it repaid." *In re Demko*, 264 B.R. at 408.

136. In determining whether a creditor, and particularly a bank, has the requisite level of control to be an insider, the courts examine whether the creditor had more ability to assert control than the other creditors, whether the creditor made management decisions for the debtor, directed work performance, and directed payment of the debtor's expenses. *ABC Elec. Serv. Inc. v. Rondout Elec., Inc., (In re ABC Elec. Serv. Inc.)*, 190 B.R. 672 (Bankr.M.D.Fla.1995). *There must be day-to-day control, rather than some monitoring or exertion of influence regarding financial transactions in which the creditor has a*

73

*direct stake.*

*In re Armstrong*, 231 B.R. 746, 749-50 (Bankr. E.D.Ark. 1999).

137. That does not mean, however, as Lucent asserts that Lucent must have used its control to obtain the transfer although whether the transfer in question was done under pressure from Lucent is one fact to be considered in making the determination of control. *Walsh v. Dutil (In re Demko)*, 264 B.R. 404, 408 (Bankr. W.D.Pa. 2001). Neither the Bankruptcy Code nor the case law, however, require the use of the insider's status as an insider to force the preferential payment to be made. The elements of a preference are set forth in Section 547(b) which requires, among other things, that the transfer have been made "between ninety days and one year before the date of filing of the petition, if such creditor at the time of such transfer was an insider...." 11 U.S.C. § 547(b)(4)(B). There is nothing in the language that requires the causal connection between the control and the preferential transfer that Lucent claims is needed.

138. In this case the facts indicate that Lucent controlled many of Winstar's decisions relating to the buildout of the network. Lucent forced the "purchase" of its goods well before the equipment was needed and in many instances under the Software Pool Agreement, never needed at all. Lucent treated Winstar as a captive buyer for Lucent's goods. These purchases, especially those under the Software Pool Agreement were just a means for Lucent to inflate its own revenue.

139. Lucent argues, however, that Winstar is complicit in its scheme to inflate revenues. For example when Lucent required Winstar employees to sign false bill and hold letters needed for Lucent to book revenue, they did so even though Winstar knew that

74

Lucent used the process to deceive its auditors. That Winstar was a participant in Lucent's

scheme does not prove that Winstar was not under Lucent control. In fact, Lucent's ability to

involve Winstar's employees in Lucent duplicity is further evidence of Lucent's control.

140. Two former Lucent employees, Deborah Harris and William Plunkett refused to

answer deposition questions beyond providing their names and addresses and instead

asserted their right against self incrimination.[49] "The Fifth Amendment does not forbid

adverse inferences against parties to civil actions when they refuse to testify in response to

probative evidence offered against them." *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96

S.Ct. 1551, 47 L.Ed.2d 810 (1976). This Court may and chooses to draw negative adverse

inferences from their testimony. Both were employees of Lucent when the relevant actions

occurred.[50] Although neither is a party to this lawsuit, a fact which Lucent emphasizes to

---

[49]Prior to trial the Trustee sought a ruling that the Court could draw an adverse
interest from Harris' and Plunkett's silence while Lucent disputed that their testimony was
relevant and otherwise corroborated. It also argued that the questions posed to these two
individuals were too specific thus rendering the examinations unfair. The Court granted the
Trustee's motion but noted that it would revisit the issue after hearing the evidence upon
Lucent's request. *See* Transcript of March 16, 2005 hearing [docket # 322] at 59-62.
Having revisited the issue, the Court concludes that its initial ruling was correct for the
reasons set forth herein.

[50]There is no dispute that Harris and Plunkett were employed by Lucent during the
time when the events at issue in the specific questions which the Court finds that they
would have answered adversely had they answered the questions honestly. Ms. Harris
answered questions during her 2001 deposition and at the time testified she was
employed by Lucent as the Vice President of Sales for the Winstar account beginning in
August 2000. (Harris, Depo, Tr. 11-34). She also testified that William Plunkett the Vice
President of Emerging Markets and was a member of Lucent's management team
responsible for the Winstar account. (*Id.*). Mr. Plunkett was placed on administrative leave
by Lucent in late November 2000 and was terminated shortly thereafter. (Wilson, Tr. 16-
11). His termination was a direct result of his involvement in postdating documents relating
to the Software Pool Agreement. (Schacht, Tr. 21 at 35). Both Harris and Plunkett

75

show that neither "cared whether Lucent succeeds in this litigation," their non-party status does not render admitting their testimony impermissible given the facts of this case. Nor does the fact that neither was employed by Lucent when their testimony was taken. *Red.* Both Harris and Plunkett were parties to the SEC's action (PX 739); both were employed by Lucent during the relevant time frame and the questions they refused to answer related directly to their actions as Lucent employees during this period.

141. Before an adverse inference may be drawn from a party's refusal to testify in a civil case, there must be independent corroborative evidence to support the negative inference beyond the invocation of the privilege. *See Baxter*, 425 U.S. at 318, 96 S.Ct. at 1558. ("the Fifth Amendment does not forbid adverse inferences against parties ... when they refuse to testify in response to probative evidence offered against them "); "[L]iability should not be imposed based solely upon the adverse inference." *United States v. Private Sanitation Industry Ass'n*, 899 F. Supp. 974, 982 (E.D.N.Y.1994), aff'd 47 F.3d 1158 (2d Cir.), *cert. denied sub. nom.*, *Ferrante v. United States*, 516 U.S. 806, 116 S.Ct. 50, 133 L.Ed.2d 15 (1995).

142. During his deposition Mr. Plunkett was asked a series of questions relating to end of quarter deals, sham bill and hold transactions, the Software Poll Agreement. He asserted his Fifth Amendment privilege in response to each question but had he responded truthfully, his testimony would have added to the substantial evidence against Lucent and indeed would have been devastating to his former employer. Examples of the questions

---

reported to Nina Aversano.

76

asked of this witness are set forth below.

Q: Isn't it a fact that in 1999 and 2000 you participated in transactions between Lucent and Winstar at the end of each quarter form December 31st, 1999 through September 30th, wherein Winstar purchased substantial quantities of equipment, software, and/or services from Lucent Technologies?

A: "On advice of counsel I respectfully decline to answer on the ground that my answer may incriminate or tend to incriminate me." (Hereinafter referred to as "Fifth Amendment Response").

Q: Isn't it a fact that in December 1999 Winstar purchased over $96 million worth of goods and services from Lucent?

A: Fifth Amendment Response

Q: Isn't it a fact that this transaction was referred to as an end of quarter deal?

A: Fifth Amendment Response

Q: Isn't it a fact that certain of the equipment purchased by Winstar in the December 1999 end of quarter deal was not delivered to Winstar but was held by Lucent even through the purchase price was paid by Winstar?

A: Fifth Amendment Response

And isn't it a fact that in connection with the end of quarter deal and in order to be certain that Lucent could book the revenue

77

Lucent prepared letters which it gave to winstar which it asked

Winstar to sign?

A: Fifth Amendment Response

Q: Isn't it a fact that Winstar did, in fact, sign the letters provided

by Lucent with respect tot he December 1999 end of quarter

deal?

A: Fifth Amendment Response

Q: And isn't it, in fact, correct that these letters were not true and

correct in all respects?

A: Fifth Amendment Response

Q: Isn't it a fact that these letters falsely stated dates by which

Lucent would install the purchased equipment?

A: Fifth Amendment Response

Q: And isn't it a fact the Winstar did not need the equipment

purchased through these letters immediately but was buying the

equipment earlier to provide Lucent with additional revenue?

A: Fifth Amendment Response

Q: And isn't it a fact that the letters also stated falsely that

Winstar lacked the warehouse space to store equipment?

A: Fifth Amendment Response

Q: Isn't it a fact that some of the equipment purchased by

Winstar in the December 1999 end of quarter deal included

78

Optronics equipment?

A: Fifth Amendment Response

Q: And isn't it a fact that when your employment with Lucent

terminated in November of 2000 this equipment remained in

Lucent's warehouses?

A: Fifth Amendment Response

(Plunkett, Deposition transcript at p.11, line 25 to p.14, line 23).

143. He was then asked virtually identical questions with respect to March 2000,

June 2000 purchases, and September 2000 end of quarter purchases and again asserted

his Fifth Amendment privilege. (*Id.* at p.15, Line 9 to p. 20, line 25, p. 22, line 8 to p.24, line

4). Similarly when questioned about the Software Pool Agreement, Plunkett refused to

answer. Had he answered truthfully his testimony would support the finding that the

agreement was a sham transaction; it was nothing more than a device to inflate Lucent's

revenues. (*Id.* at p. 24, line 5 to p. 26, line 18).[51]

144. Independent evidence shows that Plunkett was involved in the June 2000 end

of quarter deal. *See, e.g.,* PX 360 (Ackerman's June 23, 2000 email to Kantor) ("He

[Plunkett] wants us to agree to another $53M in purchases for 2Q (that includes $17M of

accelerated pay as you grow $$ for 5ESS's"). Independent evidence also proves he was

involved in the September 2000 end of quarter deal and the Software Pool Agreement.

---

[51]Although there is conflicting testimony about the actual value of the goods Winstar
was committed to purchases under the Software Pool Agreement, evidence of the value is
that it totaled somewhere between $20 and $40 million, significantly less than the $135
million Winstar was to pay.

*See e.g.,* PX 125 (Plunkett's September 29, 2000 letter to Ackerman: "Winstar Agrees [sic] to purchase from Lucent the following ... $18,852,500 5ESS PAYG") and PX 127 (Ackerman's September 18, 2000 email to Kantor: "I just spoke with Bill [Plunkett]. He informed me that you and Nina had met (dinner?) And you agreed to help them get to the number they need this quarter...something around $110M, of which we have already spent about $45M. There is not much I can give them that we really need, but there are some creative things I can do that can get us close to their number without being totally stupid.").

145.  Harris was asked virtually the same questions and also invoked her Fifth Amendment privilege.  She, like Plunkett, was involved in the transactions about which she was questioned and the Court finds that had she answered truthfully, her testimony would also have been adverse to Lucent.  Had Plunkett and Harris answered truthfully about the nature of the relationship between the two companies, they would have acknowledged Lucent's control over Winstar and lack of arms' length relationship between them.  *Rad Services v. Aetna Cas. & Surety Co.,* 808 F.2d 271, 280-81 (3d Cir. 1986), *quoting Baxter v. Palmigiano,* 425 U.S. 308, 318 (1976).  *See also Baxter,* 425 U.S. 308; *Libutti v. U.S.,* 107 F.3d 110 (2d Cir. 1997); *Federal Deposit Ins. Corp. v. Fidelity & Deposit Co. of Maryland,* 45 F.3d 969 (5th Cir. 1995); *Davis v. The Mut. Life Ins. Co. of New York,* 6 F.3d 367 (6th Cir. 1993), *cert. denied,* 510 U.S. 1193 (1994); *Brink's Inc. v. The City of New York,* 717 F.2d 700 (2d Cir. 1983).

146.  Lucent was an insider of Winstar's on December 7, 2000, the date of the Transfer.

147. Consequently all of the elements of a preference have been satisfied. The payment of the Siemans proceeds was a preference.

148. Lucent argues, however, that even if the Transfer was preferential the Trustee may not recover because Lucent gave subsequent new value to Winstar when it continued to loan under the Second Credit Agreement. Although the amount that it claims it gave in new value is an ever-changing figure in this case, the inability of Lucent to fix the amount is irrelevant as it is not entitled to the benefit of the new value defense.

149. Lucent bears the burden of establishing new value. 11 U.S.C. § 547(g) (the creditor ... against whom recovery or avoidance is sought has the burden of proving the non-avoidability of a transfer under subsection (c) of this section); *Phoenix Restaurant Group, Inc. v. Ajilon Professional Staffing LLC (In re Phoenix Restaurant Group, Inc.),* 317 B.R. 491, 494 (Bankr. M.D. Tenn. 2004).

150. Lucent's new value defense fails for two reasons. First, to the extent Lucent provided any equipment or software to Winstar after December 7, 2000, it did so on a secured basis, as is evidenced by the Security Agreements dated May 9, 2000, and December 22, 2000, (DX-32; DX-33) and as admitted by Lucent in its October 11, 2001, secured proof of claim (PX-340) and the escrow fund stipulations. (PX-506; PX-507; PX-508). Second, even if the additional value were provided on an unsecured basis, Lucent has failed to show that it was provided <u>after</u> the receipt by Lucent of the preferential transfer.

151. It is well settled that to support a new value affirmative defense, section 547(c)(4)(A) requires a creditor to establish that, after receiving a preferential payment, the creditor advanced "new value" to the debtor "not secured by an otherwise unavoidable

81

security interest." *New York City Shoes, Inc. v. Bentley Int'l, Inc. (In re New York City Shoes, Inc.)*, 880 F.2d 679, 680 (3d Cir. 1989). Lucent provided only secured value: all Lucent equipment and software sold to Winstar was sold subject to two separate security agreements dated May 9, 2000, and December 22, 2000. (DX-32, DX-33); Lucent's proof of claim (PX-340) alleges a secured claim although it provides no evidence of the value of its collateral; the Trustee and Lucent have entered into three stipulations (PX-506, PX-507, and PX-508) which recognize the validity of Lucent's security interests and provide for distribution to Lucent of the proceeds of the sale of Winstar assets that were subject to Lucent's lien (subject to judgment on the Trustee's equitable subordination claim).

152. For the foregoing reasons the Trustee is awarded judgment in the amount of $188,180,000.

## COUNT XI: EQUITABLE SUBORDINATION

153. The Bankruptcy Code invests the Court with authority to subordinate all or part of a claim "under the principles of equitable subordination...." 11 U.S.C. § 510(c). Courts considering equitable subordination follow the *Mobile Steel* test: (1) the claimant must have engaged in some type of inequitable conduct; (2) the misconduct must have resulted in injury to the creditors of the debtor or conferred an unfair advantage on the claimant; and (3) equitable subordination of the claim must not be inconsistent with the Bankruptcy Code. *In re Mobile Steel Co.*, 563 F.2d 692, 700 (5th Cir. 1977). *See also Merrimac Paper Co. v. Harrison (In re Merrimac Paper Co.)*, 420 F.3d 53, 58 (1st Cir. 2005); *Citicorp Venture Capital, Ltd. v. Committee of Creditors Holding Unsecured Claims*, 160 F.3d 982, 986

82

(3d Cir. 1998).

154. When the creditor is an insider, the proof required to prove equitable subordination is not demanding. In such cases, a bankruptcy trustee need only show "material evidence" of unfair conduct. *In re N&D Properties, Inc.*, 799 F.2d 726, 731 (11th Cir. 1986); *see also In re Epic Capital Corp., et. al.*, 290 B.R. 514, 524 (Bankr. D. Del. 2003), *aff'd*, 307 B.R. 767 (D. Del. 2004).

155. "For non-insider claimants, egregious conduct must be established to justify equitable subordination...." *In re Mid-American Waste Systems, Inc.*, 284 B.R. 53, 70 (Bankr. D.Del. 2002) (internal citations omitted). "[The degree of non-insider misconduct] has been variously described as 'very substantial' misconduct involving 'moral turpitude or some breach of duty or some misrepresentation whereby other creditors were deceived to their damage' or as gross misconduct amounting to fraud, overreaching or spoliation." *In re M. Paolella & Sons, Inc.*, 161 B.R. 107, 119 (Bankr. E.D. Pa. 1993), citing *In re Osborne*, 42 B.R. 988, 996 (W.D. Wis.1984).

156. Nevertheless the test is the same; only the standard of proof required differs. *Mid-American Waste Systems*, 284 B.R. at 70 (internal citations omitted).

**Inequitable Conduct**

157. There are three generally recognized categories of misconduct which may constitute inequitable conduct for insiders: (1) fraud, illegality, and breach of fiduciary duties; (2) undercapitalization; or (3) claimant's use of the debtor as a mere instrumentality or alter ego." *Id.*

83

158. The same facts underlying the finding that Lucent was an insider of Winstar warrant a finding that Lucent engaged in inequitable conduct by using Winstar as a mere instrumentality to inflate Lucent's own revenues.

159. Yet whether Lucent is an insider or not does not affect the outcome of the Court's conclusion that the first prong of the *Mobile Steel* test is satisfied: the facts in this case warrant equitably subordinating Lucent's claim because it was egregious. Lucent repeatedly threatened Winstar with nonpayment after Wireless performed significant services under the subcontract, all in an effort to extract more and more from Winstar, Lucent's captive purchaser. Ultimately, when Lucent's new management regime determined that a refinancing notice, the equivalent of a financial death knell for Winstar, had to be sent, Lucent deliberately held up the refinancing notice to ensure that the Siemans refinancing occurred and new equity was infused into the dying Winstar.

**Harm to Winstar's creditors**

160. Lucent's conduct resulted in substantial damages to Winstar and ultimately Winstar's creditors, including, apart from the preferential payment itself, the interest paid by Winstar to Lucent on unnecessary Lucent equipment and services purchased by Winstar to generate revenue for Lucent, storage costs, and insurance costs. Winstar sustained additional damages in that the approximate $244 million (on a cost adjusted basis) of Lucent equipment in inventory in warehouses on March 31, 2001 was sold in December 2001 for approximately a penny on the dollar compared to its December 7, 2000, balance sheet stated value.

161. In addition Winstar received $270 million in equity financing on December 7,

84

2000 through the issuance of Series H Preferred Stock. The funding came primarily from Welch Carson Anderson & Stowe and Credit Suisse First Boston Private Equity. (DX 701 at 26 and 48).

162. The Debtors and their creditors were harmed by Lucent's deliberate delay in sending the refinancing notice. Lucent intentionally waited until it had received the proceeds of the Siemans refinancing before allowing the public to learn what it already knew: Winstar was in significant financial distress and indeed, as set forth above, was insolvent. Lucent reaped a substantial benefit but at the expense of the Debtors' other creditors.

### Consistent with the Bankruptcy Code

163. Subordinating Lucent's claims is not inconsistent with the Bankruptcy Code.

164. Consequently Lucent's claim will be subordinated under section 510(c) of the Bankruptcy Code to the claims of *all* creditors, including all unsecured claims which includes the deficiency claim of Siemans, if any, and to the interests of those entities who infused the $270 million of equity in Winstar on December 7, 2000. The lien of Lucent is preserved for the benefit of the estate and is transferred to the Trustee in her representative capacity.

## LUCENT'S COUNTERCLAIMS

165. Lucent seeks damages from Winstar's estate on the basis of fraud and negligent misrepresentation arising from Winstar's representation implicit in at least four borrowing representations from and after January 18, 2001 that it was in compliance with

the CAPEX covenant.

166. "Under Delaware law, express choice of law provisions in contracts are generally given effect." *Harper v. Delaware Valley Broadcasters, Inc.*, 743 F. Supp. 1076 (D.Del. 1990).

167. Lucent must establish each of the following elements: (1) a material misrepresentation or omission of fact; (2) made with knowledge of its falsity; (3) with an intent to defraud; (4) reasonable reliance on the representation; and (5) resulting damages. *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997); *see also Dallas Aero., Inc. v. CIS Air Corp.*, 352 F.3d 775, 784-85 (2d Cir. 2003). Each must be proved by clear and convincing evidence. *Dallas Aero., Inc. v. CIS Air Corp.*, 352 F.3d 775, 784-85 (2d Cir. 2003).

168. Lucent has not proved that Winstar breached the CAPEX covenant and if it did so, it did so knowingly. Winstar's employees testified that they believed that the company was in compliance with the CAPEX covenant in the first quarter of 2001. To the extent that Winstar was not in compliance with the CAPEX covenant, this "breach" is harmless. Lucent was well aware of Winstar's financial status and some of its employees were even involved in attempting to help Winstar lower its CAPEX in order to comply with the covenant.

169. Lucent has not demonstrated, and given the level of its knowledge and involvement cannot demonstrate, that it reasonably relied upon Winstar's representations. Lucent itself knew of Winstar's deteriorating financial condition in November and December

86

2000. Lucent was prepared to issue the refinancing notice as soon as it got the Siemans proceeds. For it now to argue it was duped by the Debtor is disingenuous.

170. To establish a claim of negligent misrepresentation, the claimant must prove by a preponderance of the evidence: (1) carelessness in imparting words; (2) upon which others were expected to rely; (3) and upon which others acted or failed to act; (4) to their damage; and (5) the declarant must express the words directly to one to whom it is bound by some relation or owes a special duty of care (which must involve a "closer degree of trust" than that of an ordinary buyer and seller). *Dallas Aero, Inc.*, 352 F.2d at 788; *see also Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000). It must also demonstrate that its reliance on Winstar's purportedly false statements was "reasonable." *Morrissey v. GMC*, 21 Fed. Appx. 70, 73 (2d Cir. 2001).    171. As set above, Lucent has not met its burden. It cannot ignore its own knowledge and feign surprise to learn the CAPEX covenant was breached when it was deeply immersed in the financial transactions of Winstar. Therefore judgment will enter for Winstar with respect to Lucent's counterclaims.

87

**CONCLUSION**

For the foregoing reasons, the Court finds that judgment should enter for the Plaintiff on all counts and counterclaims as set forth above.

A separate order of judgment for the Plaintiff will enter.

Dated: December 21, 2005

Joel B. Rosenthal
United States Bankruptcy Judge

88

ach-jbr.TIF

# EXHIBIT C

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| WINSTAR COMMUNICATIONS, INC.,<br>ET AL., | Case No. 01-1430 (JBR) |
| *Debtors.* | |
| CHRISTINE C. SCHUBERT, CHAPTER 7<br>TRUSTEE, | Adversary Proceeding<br>No. 01-1063 (JBR) |
| *Plaintiff,* | |
| *v.* | |
| LUCENT TECHNOLOGIES, INC., | |
| *Defendant.* | |

## APPELLANT'S STATEMENT OF ISSUES ON APPEAL

Pursuant to Federal Rule of Bankruptcy Procedure 8006, Appellant Lucent Technologies,

Inc. ("Lucent") hereby provides a statement of its issues on appeal with respect to Lucent's

appeal to the United States District Court for the District of Delaware from the final judgment

entered in this action on December 28, 2005 (Docket No. 373).[1]

1.    With respect to Count X, did the bankruptcy court err by concluding that Winstar
      Communications, Inc. ("Winstar") transferred an interest of the debtor in property and
      that the "earmarking doctrine" was inapplicable?

2.    With respect to Count X, did the bankruptcy court err by concluding that Lucent was an
      "insider" of Winstar as of December 7, 2000?

3.    Did the bankruptcy court err by drawing the negative inferences it drew from certain
      persons' respective refusals to answer questions on the ground, as permitted by the Fifth
      Amendment to the United State Constitution, that the answer may tend to incriminate him
      or her?

---

[1] Terms not otherwise defined herein shall have the meaning as set forth in the bankruptcy court's Memorandum of
Decision Including Findings of Fact and Conclusions of Law With Respect To Counts VII, X, and XI of the Second
Amended Complaint and Counts 5 and 6 of the Second Amended Answer and Counterclaims (Docket No 369)

4.    With respect to Count X, did the bankruptcy court err by concluding that Winstar was insolvent as of December 7, 2000?

5.    With respect to Count X, did the bankruptcy court err by concluding that Lucent was not entitled to the "new value" affirmative defense pursuant to 11 U.S.C. § 547(c)(4)?

6.    With respect to Count VII, did the bankruptcy court err by concluding that Lucent breached a contract with Winstar Wireless, Inc. ("Wireless")?

7.    With respect to Count VII, did the bankruptcy court err by concluding that Wireless suffered damages from a breach of contract by Lucent?

8.    With respect to Count XI, did the bankruptcy court err by subordinating pursuant to 11 U.S.C. § 510(c) Lucent's claims to (i) the claims of all other creditors and (ii) certain interests of those entities that infused $270 million of equity in Winstar on December 7, 2000?

9.    Did the bankruptcy court err by denying Lucent's negligent misrepresentation counterclaim?

10.    Did the bankruptcy court err by denying Lucent's fraud counterclaim?

11.    Did the bankruptcy court err in concluding that all matters before the court were "core" matters pursuant to 28 U.S.C. § 157 and, to the extent not core matters, Lucent had consented to entry of final orders by the bankruptcy court?

12.    Did the bankruptcy court err in refusing to permit Lucent to offer evidence of Winstar's breaches of express covenants in the Second Credit Agreement dealing with foreign collateral, EBITDA, and transaction fees?

13.    Was it error to permit the Trustee to withdraw her jury demand without Lucent's consent?

14.    Was it error to refuse to withdraw the reference with respect to this adversary proceeding?

15.    Was it error to deny Lucent a right to a jury trial on any and all counts and counterclaims?

[Remainder of page intentionally left blank.]

2

Dated: January 19, 2006
        Wilmington, Delaware

Respectfully submitted,

RICHARDS, LAYTON & FINGER, P.A.

_____
Daniel J. DeFranceschi (DE Bar No. 3272)
Paul N. Heath (DE Bar No. 3704)
One Rodney Square
P.O. Box 551
Wilmington, DE  19899
(302) 651-7700

                -and-

WILMER CUTLER PICKERING HALE AND
    DORR LLP
Craig Goldblatt
Danielle Spinelli
2445 M Street, NW
Washington, DC 20037
(202) 663-6000

Philip D. Anker
James H. Millar
399 Park Avenue
New York, NY  10022
(212) 230-8800

CRAVATH, SWAINE & MOORE LLP
Paul C. Saunders
Daniel Slifkin
Michael A. Paskin
Worldwide Plaza
825 Eighth Avenue
New York, NY  10019
(212) 474-1000

*Counsel for Appellant Lucent Technologies, Inc*

3

# EXHIBIT D

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| WINSTAR COMMUNICATIONS, INC., et al., | Case No. 01-01430 |
| Debtors. | (Jointly Administered) |
| CHRISTINE C. SHUBERT, CHAPTER 7 TRUSTEE OF WINSTAR COMMUNICATIONS, INC. AND WINSTAR WIRELESS, INC., | |
| Plaintiff, | Adv. Pro. No. 01-01063 (JBR) |
| v. | |
| LUCENT TECHNOLOGIES INC., | |
| Defendant. | |

## STIPULATION BY AND BETWEEN THE TRUSTEE AND LUCENT TECHNOLOGIES INC. CONCERNING LUCENT'S RECORD DESIGNATIONS

WHEREAS, Lucent Technologies Inc. ("Lucent") filed its Appellant's Designation of Items To Be Included In The Record On Appeal (the "Record Designation") on January 19, 2006; and

WHEREAS, Christine C. Shubert, chapter 7 Trustee of Winstar Communications, Inc. and Winstar Wireless, Inc. (the "Trustee"), objected to, among other things, Lucent's inclusion in the Record Designation of trial exhibits designated by the parties that were not admitted in evidence at trial; and

HF 3188802v 1 #11689/0001 02/17/2006
RLF1-2986514-1

WHEREAS, Lucent responded by offering to agree to delete those trial exhibits that were neither offered to the Court (specifically encompassing those forming part of an offer of proof) nor admitted by the Court; and

WHEREAS, given each of the Parties' positions with regard to the trial exhibits, the Court ruled that the Parties are to agree on a list of trial exhibits to be included in the record on appeal.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and between the Parties that Lucent's Record Designation is hereby amended, pursuant to the Court's order dated February 16, 2006, and restated as reflected on exhibit A, which is entitled "Appellant's Amended Designation of Items To Be Included In The Record On Appeal."

Dated:   March _1_, 2006
         Wilmington, Delaware

Sheldon K. Rennie (DE Bar No. 3772)       # 3821-6
FOX ROTHSCHILD, LLP
Mellon Bank Center, Suite 1400
919 North Market Street
Wilmington, DE 19801-3046
(302) 622-4202

-and-

Stephen M. Rathkopf
David R. King
HERRICK, FEINSTEIN LLP
104 Carnegie Center
Princeton, NJ 08540
(609) 520-9095

*Attorneys for the Trustee*

Daniel J. DeFranceschi (DE Bar No. 2732)       (#3704)
Paul N. Heath (DE Bar No. 3704)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700

-and-

Craig Goldblatt
Michelle Bock
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2445 M. Street, N.W.
Washington, D.C. 20037
(202) 663-6000

-and-

HF 3188802\ 1 #11689/0001 02/17/2006
USI DOCS 5531630v5

Philip D. Anker
James H. Millar
WILMER CUTLER PICKERING
    HALE AND DORR LLP
399 Park Avenue
New York, NY 10022
(212) 230-8800

-and-

Paul C. Saunders
Daniel Slifkin
Michael A. Paskin
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

*Attorneys for Defendant*
*Lucent Technologies Inc.*

-3-

# EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL

**Winstar v. Lucent**
**Adversary Proceeding #01-01063-JBR**

| Tab | Date | Adv. Docket No. | Description of Item |
|---|---|---|---|
| 1 | 04/18/2001 | 1 | COMPLAINT for Injunctive Relief [Filed by Karen C. Bifferato, Atty./PLAINTIFF] |
| 2 | 04/18/2001 | 2 | MOTION for Preliminary Injunction [Filed by Karen C. Bifferato, Atty./PLAINTIFF] Re: Item # 1 |
| 3 | 04/18/2001 | 3 | MEMORANDUM of Law in Support of Motion for Preliminary Injunction [Filed by Karen C. Bifferato, Atty./PLAINTIFF] Re: Item # 2, [ID |
| 4 | 04/18/2001 | 4 | AFFIDAVIT of David W. Ackerman , [ID] |
| 5 | 04/18/2001 | 5 | AFFIDAVIT of Richard J. Uhl , [ID] |
| 6 | 04/23/2001 | 6 | EXHIBITS to Affidavit of David W. Ackerman Re: Item # 4 |
| 7 | 04/30/2001 | 7 | STIPULATION AND ORDER [PROPOSED] Regarding Pre-Hearing Schedule [Filed by Karen C. Bifferato, Atty./PLAINTIFF and Paul N. Heath, Atty./DEFENDANT] |
| 8 | 05/02/2001 | 8 | MOTION for Admission Pro Hac Vice of Werner L. Polak [Filed by Henry E. Gallagher, Jr., Atty./PLAINTIFF] |
| 9 | 05/02/2001 | 9 | MOTION for Admission Pro Hac Vice of Sandra Y. Nishikawa [Filed by Henry E. Gallagher, Atty./PLAINTIFF] |
| 10 | 05/02/2001 | 10 | MOTION for Admission Pro Hac Vice of Roland Schroeder [Filed by Henry E. Gallagher, Atty./PLAINTIFF] |
| 11 | 05/02/2001 | 11 | SUMMONS and Notice of Pre-Trial Conference on A Date to Be Determined Re: Item # 1 |
| 12 | 05/04/2001 | 12 | ORDER Signed and Located in Original Document Regarding Pre-Hearing Schedule Re: Item # 7 |
| 13 | 05/04/2001 | 13 | COURT'S Letter Regarding Scheduling Re: Item # 12 |
| 14 | 05/04/2001 | 14 | CERTIFICATE of Service Re: Item # 11 |
| 15 | 05/07/2001 | 15 | ORDER Signed and Located in Original Document Granting Admission Pro Hac Vice of Werner L. Polak Re: Item # 8 |
| 16 | 05/07/2001 | 16 | ORDER Signed and Located in Original Document Granting Admission Pro Hac Vice of Sandra Y. Nishikawa Re: Item # 9 |
| 17 | 05/07/2001 | 17 | ORDER Signed and Located in Original Document Granting Admission Pro Hac Vice of Roland Schroeder Re: Item # 10 |
| 18 | 05/08/2001 | 18 | AFFIDAVIT of Service Re: Item # 1 through 5, and #11 |
| 19 | 05/17/2001 | 19 | NOTICE of Service Regarding Discovery [Filed by Henry E. Gallagher, Jr., Atty./PLAINTIFF] |
| 20 | 05/21/2001 | 20 | MOTION to Dismiss Certain Claims of the Complaint [Filed by Daniel J. DeFranceschi, Atty./DEFENDANT] |
| 21 | 05/21/2001 | 21 | BRIEF in Support of Motion to Dismiss Certain Claims [Filed by Daniel J. DeFranceschi, Atty./DEFENDANT] Re: Item # 20 |
| 22 | 05/21/2001 | 22 | MOTION to Stay Preliminary Injunction Proceedings Pending Adjudication of Motion to Dismiss and Plaintiff's Right to Assume Prepetition Agreements [Filed by Daniel J. DeFranceschi, Atty./DEFENDANT] Re: Item # 2 |
| 23 | 05/21/2001 | 23 | EMERGENCY Motion to Shorten Notice of Motion to Stay Preliminary Injunction Proceedings [Filed by Daniel J. DeFranceschi, Atty./DEFENDANT] Re: Item # 22 |
| 24 | 05/22/2001 | 24 | COUNSEL'S Letter Regarding Defendant's Request to Extend Pre-Hearing Schedule [Filed by Henry E. Gallagher, Jr., Atty./PLAINTIFF] |

**EXHIBIT A**

**APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
BE INCLUDED IN THE RECORD ON APPEAL**

| 25 | 05/24/2001 | 25 | MEMORANDUM of Law in Opposition to Emergency Motion to Shorten Notice and in Opposition to Motion to Stay Preliminary Injunction Proceedings [Filed by Stanley C. Macel, III, Atty./PLAINTIFF] Re: Item # 22 |
|----|-----------|----|----|
| 26 | 05/30/2001 | 26 | REPLY Brief in Support of Motion to Stay Preliminary Injunction Proceedings [Filed by Daniel J. DeFranceschi, Atty./DEFENDANT] Re: Item # 22 |
| 27 | 06/01/2001 | 27 | COUNSEL'S Letter Requesting Emergency Order Regarding Disclosure of Confidential Documents [Filed by Daniel J. DeFranceschi, Atty./DEFENDANT] |
| 28 | 06/01/2001 | 28 | COUNSEL'S Letter in Response to Letter Regarding Disclosure of Confidential Documents [Filed by Stanley C. Macel, III, Atty./PLAINTIFF] Re: Item # 27 |
| 29 | 06/04/2001 | 29 | ORDER Denying Motion to Stay Preliminary Injunction Pending Adjudication of Motion to Dismiss Re: Item # 22 |
| 30 | 06/04/2001 | 30 | ORDER Regarding Pre-Hearing Schedule Re: Item # 24 |
| 31 | 06/04/2001 | 31 | NOTICE of Service Regarding Discovery [Filed by Paul N Heath, Atty./DEFENDANT] |
| 32 | 06/04/2001 | 32 | NOTICE of Service Regarding Discovery [Filed by Paul N Heath, Atty./DEFENDANT] |
| 33 | 06/05/2001 | 33 | MEMORANDUM Order Requiring Plaintiff to Advise Defendant of Identity of Employees to Receive Confidential Information and Specific Information and/or Document to be Disclosed Prior to Disclosure Re: Item # 27 |
| 34 | 06/06/2001 | 34 | MEMORANDUM of Law in Opposition to Motion to Dismiss Certain Claims [Filed by Henry E. Gallagher, Jr., Atty./PLAINTIFF] Re: Item # 20 |
| 35 | 06/08/2001 | 35 | AFFIDAVIT of Service Re: Item # 29 |
| 36 | 06/12/2001 | 36 | MOTION To Extend Time. [Filed by Stanley C. Macel, III, Attys./PLAINTIFFS]. |
| 37 | 06/12/2001 | 37 | NOTICE of Motion Re: Item # 36 |
| 38 | 06/12/2001 | 38 | REPLY Brief In Support Of Motion To Dismiss Certain Claims. [Filed by Daniel DeFranceschi, Attys./DEFENDANT]. Re: Item # 20 |
| 39 | 07/10/2001 | 39 | LETTER Stating That Unless Instructed Otherwise, Lucent Does Not Plan To Respond To The Papers Filed by The Plaintiffs [Filed by Daniel J DeFranceschi] Re: Item # 36 |
| 40 | 07/10/2001 | 40 | REQUEST For Oral Argument Regarding Its Motion To Dismiss Certain Claims. [Filed by Daniel DeFranceschi, Attys./DEFENDANTS]. Re: Item # 20 |
| 41 | 07/10/2001 | 41 | STIPULATION And [Proposed] Protective Order [Filed by Henry E Gallagher, Jr. Attys./PLAINTIFFS And Daniel DeFranceschi, Atty./DEFENDANT]. |
| 42 | 07/10/2001 | 42 | AFFIDAVIT of Service Re: Item # 33 |
| 43 | 07/10/2001 | 43 | STIPULATION And [Proposed] Order Extending Protective Order To Documents Produced In Response To Subpoena Duces Tecum. [Filed by Werner L. Polak, Attys./PLAINTIFFS, Daniel Slifkin, Attys./DEFENDANT, Steven M. Haber, Attys./NON-PARTY GRANT THORNTON LLP]. |
| 44 | 07/19/2001 | 44 | ORDER Signed and Located in Original Document Re: Item # 41 |
| 45 | 07/19/2001 | 45 | CONSENTED to Order [Signed]. [Scheduling]. |
| 46 | 07/19/2001 | 46 | ORDER Signed and Located in Original Document Extending Protective Order Re: Item # 43 |
| 47 | 08/06/2001 | 47 | Motion to Appear pro hac vice of Olav A. Haazen, Esq Filed by Stanley C Macel, III, Esq. |
| 48 | 08/21/2001 | 48 | Order Granting Motion To Appear pro hac vice (Related Doc # 47) |
| 49 | 08/24/2001 | 49 | Motion to Compel [Motion of the Official Committee of Unsecured Creditors for an Order to Intervene in the Adversary Proceeding] Filed by Creditors Committee. |
| 50 | 09/18/2001 | 50 | Certificate of No Objection Filed by Creditors Committee (related document(s)49) |
| 51 | 09/25/2001 | 51 | Order Authorizing The Creditors Committee to Intervene in the Adversary Proceeding Signed on 9/20/2001 (related document(s)49). |

2

**EXHIBIT A**

**APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
BE INCLUDED IN THE RECORD ON APPEAL**

| | | | |
|---|---|---|---|
| 52 | 10/26/2001 | 52 | Notice of Withdrawal Letter to Judge Farnan regarding Notice of Withdrawal of Motion for Preliminary Injunction Filed by WINSTAR COMMUNICATIONS, INC. |
| 53 | 10/26/2001 | 53 | Notice of Withdrawal of Preliminary Injunction Filed by WINSTAR COMMUNICATIONS, INC. |
| 54 | 10/26/2001 | 54 | First Amended Complaint Filed by WINSTAR COMMUNICATIONS, INC. |
| 55 | 11/06/2001 | 55 | Stipulation By LUCENT TECHNOLOGIES, INC and Between Winstar Communications, et al. (plaintiffs) Filed by LUCENT TECHNOLOGIES, INC. (related document(s)54). |
| 56 | 12/05/2001 | 56 | Limited Motion to Dismiss Adversary Proceeding [Motion to Dismiss Certain Claims of Plaintiffs' First Amended Complaint] Filed by LUCENT TECHNOLOGIES, INC. |
| 57 | 12/05/2001 | 57 | Memorandum of Law in Support of Lucent's Motion to Dismiss Certain Claims of Plaintiffs' First Amended Complaint - [Re: Docket No. 56] Filed by LUCENT TECHNOLOGIES, INC. |
| 58 | 01/18/2002 | 58 | Memorandum of Law In Opposition to Motion of Lucent Technologies, Inc. to Dismiss Certain Claims of Plaintiffs' First Amended Complaint Filed by WINSTAR COMMUNICATIONS, INC. |
| 59 | 02/12/2002 | 59 | Notice of Appearance in Adversary Proceeding Filed by pro se Aspen Advisors, LLC. |
| 60 | 02/15/2002 | 60 | Brief Reply Brief in Support of Lucent's Motion to Dismiss Certain Claims of Plaintiffs' First Amended Complaint Filed by LUCENT TECHNOLOGIES, INC |
| 61 | 03/19/2002 | 61 | Notice of Filing Notice of Completion of Briefing on Defendant's Motion to Dismiss Filed by LUCENT TECHNOLOGIES, INC. |
| 62 | 06/21/2002 | 62 | Order signed on 6/19/2002 Reassigning Case To The Honorable John C Akard. |
| 63 | 06/21/2002 | 63 | Order signed on 6/20/2002 Setting PreTrial Before The Honorable Ronald Barliant On 7/12/02 @ 11:30 A.M. |
| 64 | 07/03/2002 | 64 | Notice of Appearance in Adversary Proceeding Filed by Christine Shubert. |
| 65 | 07/11/2002 | 65 | Notice of Agenda of Matters Scheduled for Hearing Filed by Christine Shubert. |
| 66 | 07/15/2002 | 66 | Proposed Scheduling Order Filed by Christine Shubert. (Rennie, Sheldon) (Entered: 07/15/2002) |
| 67 | 07/17/2002 | 67 | Notice of Withdrawal of Appearance Filed by Connolly Bove Lodge & Hutz LLP. |
| 68 | 07/30/2002 | 68 | Order signed on 7/25/2002 Recusing The Honorable John C Akard From Hearing All Matters Pertaining To This Adversary. This Adversary Is Being Transferred To The Honorable Ronald Barlaint. |
| 69 | 09/27/2002 | 69 | Amended Complaint and Jury Demand (Second) Filed by Christine Shubert. |
| 70 | 10/28/2002 | 70 | Motion to Dismiss Adversary Proceeding Motion of Lucent Technologies Inc to Dismiss Certain claims of the Second Amended Complaint Filed by LUCENT TECHNOLOGIES, INC |
| 71 | 10/28/2002 | 71 | Memorandum of Law Memorandum in Support of Lucent's Motion to Dismiss Certain Claims of the Second Amended Complaint Filed by LUCENT TECHNOLOGIES, INC. (related document(s)70). |
| 72 | 11/18/2002 | 72 | Stipulation By LUCENT TECHNOLOGIES, INC and Between Plaintiffs Filed by LUCENT TECHNOLOGIES, INC. |
| 73 | 11/26/2002 | 73 | Memorandum of Law in Opposition to Motion to Dismiss Certain Claims of the Second Amended Complaint Filed by Christine Shubert. |
| 74 | 12/17/2002 | 74 | Reply Brief in Support of Lucent's Motion to Dismiss Certain Claims of the Second Amended Complaint Filed by LUCENT TECHNOLOGIES, INC. (related document(s)73). |

3

# EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 75 | 01/02/2003 | 75 | Notice of Completion of Briefing on Defendant's Motion to Dismiss Filed by LUCENT TECHNOLOGIES, INC.. ) |
|---|---|---|---|
| 76 | 02/24/2003 | 76 | Notice of Agenda of Matters Scheduled for Hearing (Telephonic Hearing) Filed by Christine Shubert. Hearing scheduled for 3/4/2003 at 03:00 PM |
| 77 | 03/10/2003 | 77 | Certification of Counsel Regarding Scheduling Order Filed by Christine Shubert |
| 78 | 03/14/2003 | 78 | Scheduling Order. Signed on 3/13/2003 (related document(s)77) |
| 79 | 03/18/2003 | 79 | Certificate of Service Notice of Service Filed by Christine Shubert. |
| 80 | 04/22/2003 | 80 | Notice of Service of Discovery Re: Defendant's Responses and Objections to Plaintiff's First Set of Interrogatories Filed by LUCENT TECHNOLOGIES, INC. |
| 81 | 04/22/2003 | 81 | Notice of Service of Discovery Re: Defendant's Responses and Objection to Plaintiff's Second Request for Production of Documents Filed by LUCENT TECHNOLOGIES, INC |
| 82 | 05/05/2003 | 82 | Notice of Intended Ruling Concerning Defendant's Motion to Dismiss Parts of the Second Amended Complaint (related document(s)70 ). |
| 83 | 05/20/2003 | 83 | Certificate of Service of Plaintiff's Third Request for the Production of Documents, Plaintiff's Second Set of Interrogatories, Plaintiff's Responses to Defendant's First Set of Interrogatories Nos. 1-7, Plaintiff's Responses to Defendant's Second Request for the Production of Documents, Notice of Subpoenas to Deborah Harris and Nina Aversano, Notice of Deposition of Deborah Hopkins, Notice of Deposition to Michael Montemarano, Notice of Deposition of Elizabeth Perricone, and Notice of Deposition of Paul Hayes on May 16, 2003 Filed by Christine Shubert. |
| 84 | 05/29/2003 | 84 | Opinion Concerning Motion To Dismiss Second Amended Complaint(related document(s)70 |
| 85 | 05/29/2003 | 85 | Order Granting in Part, Denying in Part Motion of Lucent Technologies Inc to Dismiss Certain Claims of the Second Amended Complaint (Related Doc # 70) |
| 86 | 06/05/2003 | 86 | Stipulation and [Proposed] Order Between LUCENT TECHNOLOGIES, INC. and Christein C Shuber, Chapter 7 Trustee Filed by LUCENT TECHNOLOGIES, INC.. |
| 87 | 06/06/2003 | 87 | Order Granting Stipulation (Related Doc # 86) |
| 88 | 06/06/2003 | 88 | Affidavit/Declaration of Service of Rebecca V Childs Re: Docket No. 87 (Signed Stipulation and Proposed Order) (related document(s)87 ) Filed by LUCENT TECHNOLOGIES, INC. |
| 89 | 06/09/2003 | 89 | Motion to Reconsider the Court's May 29, 2003 Order Filed by Christine Shubert |
| 90 | 06/10/2003 | 90 | Notice of Service of Motion for Reconsideration and Memorandum of Law in Support of Motion for Reconsideration and Declaration of David King Filed by Christine Shubert. |
| 91 | 06/10/2003 | 91 | Notice of Service Filed by Christine Shubert |
| 92 | 06/18/2003 | 92 | Stipulation and Order Between Christine Shubert and Lucent Technologies, Inc. Filed by Christine Shubert. |
| 93 | 06/18/2003 | 93 | Notice of Service Re: Defendant's Responses and Objections to Plaintiff's Third Request for the Production of Documents and Defendant's Responses and Objections to Plaintiff's Second Set of Interrogatories Filed by LUCENT TECHNOLOGIES, INC. |
| 94 | 06/30/2003 | 94 | Answer to Amended Complaint Answer and Counterclaims of Defendant Lucent Technologies Inc to Second Amended Complaint (related document(s)69 )v, Counterclaim by LUCENT TECHNOLOGIES, INC against WINSTAR COMMUNICATIONS, INC. Filed by LUCENT TECHNOLOGIES, INC. |
| 95 | 06/30/2003 | 95 | Memorandum of Law in Opposition to Plaintiff's Motion For Reconsideration (related document(s)89 ) Filed by LUCENT TECHNOLOGIES, INC. |
| 96 | 07/07/2003 | 96 | Notice of Service Re: Defendant's Supplemental Responses to Plaintiff's Second Set of Interrogatories Filed by LUCENT TECHNOLOGIES, INC. |
| 97 | 07/09/2003 | 97 | Notice of Service Filed by Christine Shubert. |

4

# EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 98 | 07/09/2003 | 98 | Reply Memorandum of Law in Support of Motion for Reconsideration Filed by Christine Shubert |
|---|---|---|---|
| 99 | 07/15/2003 | 99 | Answer to Complaint with Counterclaim and Jury Demand Filed by Christine Shubert |
| 100 | 07/25/2003 | 100 | Notice of Completion of Briefing on Motion of Plaintiff for Reconsideration of the Court's May 9, 2003 Order Filed by Christine Shubert. |
| 101 | 08/04/2003 | 101 | Certification of Counsel Re. Docket Nos  84 and 85 Filed by LUCENT TECHNOLOGIES, INC. |
| 102 | 08/07/2003 | 102 | Memorandum Opinion Concerning Motion for Reconsideration  Signed on August 7, 2003 (related document(s) 85, 89). |
| 103 | 08/07/2003 | 103 | Amended Order Concerning Motion to Dismiss. Order Signed on 8/7/2003 (related document(s) 102, 89, 85. |
| 104 | 08/08/2003 | 104 | Notice of Service Re: Defendant's Responses and Objections to Plaintiff's Fourth Request for the Production of Documents Filed by LUCENT TECHNOLOGIES, INC. |
| 105 | 08/18/2003 | 105 | Amended Answer to Complaint Amended Answer and Counterclaims of Defendant Lucent Technologies Inc  to the Second Amended Complaint, Counterclaim by LUCENT TECHNOLOGIES, INC  against all plaintiffs Filed by LUCENT TECHNOLOGIES, INC. |
| 106 | 08/21/2003 | 106 | Notice of Service of Discovery Re: Defendant's Third Request for the Production of Documents, Defendant's Second Set of Interrogatories to Plaintiff Nos  8-11, Defendant's First Set of Requests for Admission, Notice of Deposition of Paul Lang, Notice of Deposition of Charles Persing and Notice of Nonparty Discovery Filed by LUCENT TECHNOLOGIES, INC |
| 107 | 08/21/2003 | 107 | Notice of Service of Discovery Re: Notice of Nonparty Discovery Filed by LUCENT TECHNOLOGIES, INC. |
| 108 | 10/09/2003 | 108 | Motion to Quash a Subpoena (s) Served by Lucent Technologies Inc  on Chase Manhattan Bank, Citigroup, The Bank of New York, Credit Suisse First Boston, CIBC, and BNY Capital Markets, Inc  and for Protective Order Filed by Christine Shubert (Attachments: # 1 Memorandum of Law# 2 Declaration of Stephen M. Rathkopf# 3 Declaration of David R. King# 4 Exhibit A to Declaration of David R. King# 5 Exhibit B to Declaration of David R. King# 6 Exhibit C to Declaration of David R. King# 7 Exhibit D to Declaration of David R. King# 8 Exhibit E to Declaration of David R. King# 9 Exhibit F to Declaration of David R. King# 10 Proposed Form of Order |
| 109 | 10/13/2003 | 109 | Affidavit/Declaration of Service of Peter Nathanial in Support of Plaintiff Christine C. Shubert's Motion to Quash Subpoenas for Protective Order (related document(s)108 ) Filed by Christine Shubert |
| 110 | 10/20/2003 | 110 | Motion for Protective Order Filed by Christine Shubert (Attachments: # 1 Memorandum of Law# 2 Declaration of David R. King# 3 Exhibit A to Declaration of David R. King# 4 Exhibit B to Declaration of David R. King# 5 Exhibit C to Declaration of David R. King# 6 Exhibit D to Declaration of David R. King# 7 Exhibit E to Declaration of David R. King# 8 Declaration of George J. Wade# 9 Proposed Form of Order |
| 111 | 10/20/2003 | 111 | Memorandum of Law in Opposition to Motion of Plaintiff Christine C  Shubert to Quash Subpoenas Served by Lucent Technologies Inc  on Chase Manhattan Bank, Citigroup, The Bank of New York, Credit Suisse First Boston, CIBC, and BNY Capital Markets, Inc. and For Protective Order Filed by LUCENT TECHNOLOGIES, INC. |
| 112 | 10/23/2003 | 112 | Notice of Service Defendant's Responses and Objections to Plaintiff's Fifth Request for Production of Documents Filed by LUCENT TECHNOLOGIES, INC. |
| 113 | 10/23/2003 | 113 | Exhibit Application of Lucent Technologies, Inc. for Oral Argument (related document(s)108 ) Filed by LUCENT TECHNOLOGIES, INC. |

5

# EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 114 | 10/23/2003 | 114 | Proposed Scheduling Order Amended Scheduling Order Re: Docket No. 78 Filed by LUCENT TECHNOLOGIES, INC. |
|---|---|---|---|
| 115 | 10/28/2003 | 115 | Order Approving Amended Scheduling Order. Order Signed on 10/28/2003 (related document(s)78 ). |
| 116 | 10/30/2003 | 116 | Stipulation Regarding Briefing Schedule Between LUCENT TECHNOLOGIES, INC. and Christine C. Shubert as Chapter 7 Trustee Filed by LUCENT TECHNOLOGIES, INC. |
| 117 | 11/03/2003 | 117 | Brief in Further Support of Motion to Quash Subpoenas Served by Lucent Technologies Inc. on Chase Manhattan Bank, Citigroup, The Bank of New York, Credit Suisse First Boston, CIBC, and BNY Capital Markets, Inc. and for Protective Order Filed by Christine Shubert |
| 118 | 11/03/2003 | 118 | Order Approving Stipulation Regarding Briefing Schedule. Order Signed on 11/3/2003 (related document(s)116 ) |
| 119 | 11/06/2003 | 119 | Memorandum of Law of Defendant Lucent Technologies Inc. in Opposition to Plaintiff Christine C. Shubert's Motion for Protective Order Filed by LUCENT TECHNOLOGIES, INC. (Attachments: # 1 Declaration of Lillian S. Grossbard# 2 Exhibit A of Declaration# 3 Exhibit B of Declaration# 4 Exhibit C of Declaration (Part I)# 5 Exhibit C of Declaration (Part II)# 6 Exhibit C of Declaration (Part III)# 7 Exhibit D of Declaration# 8 Compendium of Unreported Decisions Cited in Memorandum of Law |
| 120 | 11/11/2003 | 120 | Amended Reply /Amended Stipulation Regarding Briefing Schedule (related document(s)108 ) Filed by Christine Shubert (Rennie, Sheldon) |
| 121 | 11/12/2003 | 121 | Motion for Leave to File Reply Motion of Lucent Technologies Inc. for Leave to File Surreply in Response to Plaintiff's Reply (related document(s)111, 117, 108 ) Filed by LUCENT TECHNOLOGIES, INC. (related document(s)111, 117, 108) (Attachments: # 1 Exhibit A-Surreply# 2 Declaration of Lillian Grossbard# 3 Unreported Opinions# 4 Exhibit B-Proposed Order |
| 122 | 11/20/2003 | 122 | Reply Motion for Protective Order Plaintiff's Reply Brief in Further Support of Motion for Protective Order (related document(s)110 ) Filed by Christine Shubert (related document(s)110). |
| 123 | 11/24/2003 | 123 | Letter (related document(s)121 ) Filed by Christine Shubert |
| 124 | 11/24/2003 | 124 | Proposed Order RE: Stipulation and (Proposed) Order Extending Protective Order to Documents Produced by Non-Party Grant Thornton LLP in Response to Defendant's Subpoena in an Adversary Proceeding Dated October 10, 2003 Filed by LUCENT TECHNOLOGIES, INC. |
| 125 | 11/26/2003 | 125 | Proposed Scheduling Order SECOND AMENDED SCHEDULING ORDER Filed by LUCENT TECHNOLOGIES, INC. |
| 126 | 11/26/2003 | 126 | Order and Stipulation Extending Protective Order to Documents Produced by Non-Party Grant Thornton LLP in Response to Defendant's Subpoena in an Adversary Proceeding Dated October 10, 2003. (related document(s)124 ) |
| 127 | 12/02/2003 | 127 | Second Amended Scheduling Order Order Signed on 12/1/2003 (related document(s)125, 118 ). |
| 128 | 12/03/2003 | 128 | Notice of Service Re: Defendant's Responses and Objections to Plaintiff's Sixth Request for the Production of Documents and Defendant's Responses and Objections to Plaintiff's Third Set of Interrogatories Filed by LUCENT TECHNOLOGIES, INC. ( |
| 129 | 12/05/2003 | 129 | Notice of Hearing APPLICATION OF LUCENT TECHNOLOGIES INC FOR ORAL ARGUMENT Filed by LUCENT TECHNOLOGIES, INC.. |
| 130 | 12/17/2003 | 130 | Notice of Hearing Re: Application of Lucent Technologies Inc. for Oral Argument [Docket Nos. 113 and 129, respectively] Filed by LUCENT TECHNOLOGIES, INC. |
| 131 | 12/18/2003 | 131 | Notice of Agenda of Matters Scheduled for Hearing Filed by LUCENT TECHNOLOGIES, INC. |

6

## EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| | | | |
|---|---|---|---|
| 132 | 12/18/2003 | 132 | Notice of Service Re: Defendant's Third Set of Interrogatories to Plaintiff Nos. 12-13 Filed by LUCENT TECHNOLOGIES, INC. |
| 133 | 12/18/2003 | 133 | (WITHDRAWN 1/6/04-SEE DOCKET #135) Notice of Voluntary Dismissal NOTICE OF STIPULATION AND VOLUNTARY DISMISSAL WITH PREJUDICE OF COMPLAINT Filed by LUCENT TECHNOLOGIES, INC. |
| 134 | 12/19/2003 | 134 | Amended Notice of Agenda of Matters Scheduled for Hearing on December 30, 2003 at 9:30 a.m. Filed by LUCENT TECHNOLOGIES, INC. |
| 135 | 01/06/2004 | 135 | Notice of Withdrawal re: Notice and Stipulation of Voluntary Dismissal with Prejudice of Complaint (related document(s)133 ) Filed by LUCENT TECHNOLOGIES, INC. |
| 136 | 01/12/2004 | 136 | Memorandum Decision on Motion of Plaintiff Christine C. Shubert to Quash Subpoenas by Lucent Technologies Inc. on Chase Manhattan Bank, Citigroup, The Bank of New York, Credit Suisse First Boston, CIBC, and BNY Capital Markets, Inc. and for Protective Order (related document(s)108) - |
| 137 | 01/12/2004 | 137 | Order Quashing Subpoenas and Granting Protective Relief Order |
| 138 | 01/12/2004 | 138 | Memorandum of Decision on Plaintiff Christine C. Shubert's Motion for Protective Order |
| 139 | 01/12/2004 | 139 | Order Granting Protective Relief |
| 140 | 02/05/2004 | 140 | Notice of Service re: Defendant's Responses and Objections to Plaintiff's Seventh Request for Production of Documents Filed by LUCENT TECHNOLOGIES, INC. |
| 141 | 02/11/2004 | 141 | Motion to Strike Objections Filed by Christine Shubert (Attachments: # 1 Memorandum in support of Motion to Strike Lucent's Objection to Deposition Testimony# 2 Declaration Part 1# 3 Declaration Part 2# 4 Proposed Form of Order) |
| 142 | 02/16/2004 | 142 | Certificate of Service Filed by Christine Shubert |
| 143 | 02/23/2004 | 143 | Memorandum of Law /Memorandum of Defendant Lucent Technologies Inc. in Opposition to Plaintiff's Motion to Strike Lucent's Objection to Deposition Testimony Filed by LUCENT TECHNOLOGIES, INC. |
| 144 | 02/23/2004 | 144 | Affidavit /Declaration of Lillian S. Grossbard in Support of the Memorandum of Defendant Lucent Technologies Inc. in Opposition to Plaintiff's Motion to Strike Lucent's Objection to Deposition Testimony (related document(s)143 ) Filed by LUCENT TECHNOLOGIES, INC. |
| 145 | 03/01/2004 | 145 | Notice of Service Declaration of Service of K. Kaplan re: Notice of Nonparty Discovery Filed by LUCENT TECHNOLOGIES, INC.. |
| 146 | 03/01/2004 | 146 | Stipulation and Order Extending Briefing Schedule Between LUCENT TECHNOLOGIES, INC and Winstar Communications, Inc , et al . Filed by LUCENT TECHNOLOGIES, INC |
| 147 | 03/01/2004 | 147 | Stipulation and [Proposed] Order Extending Protective Order to Testimony Provided by Gary Goldman in Response to Defendant's Subpoena Dated February 12, 2004 and Plaintiff's Subpoena Dated February 12, 2004 As Well As To Any Other Testimony or Discovery Provided by Non-Party Grant Thornton LLP or Any of Its Personnel in Response to any Other Subsequent Subpoenas Served by the Parties in this Matter Between LUCENT TECHNOLOGIES, INC and Winstar Communications, Inc., et al.. Filed by LUCENT TECHNOLOGIES, INC. |
| 148 | 03/04/2004 | 148 | Reply Brief Plaintiff's Reply Brief in Further Support of Motion to Strike Lucent's Objection to Deposition Testimony (related document(s)141 ) Filed by Christine Shubert |
| 149 | 03/04/2004 | 149 | Certificate of Service Filed by Christine Shubert |
| 150 | 03/09/2004 | 150 | Order Approving Stipulation and Order Extending Briefing Schedule. Order Signed on 3/8/2004 (related document(s)146 ). |

7

## EXHIBIT A

### APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
### BE INCLUDED IN THE RECORD ON APPEAL

| 151 | 03/09/2004 | 151 | Order Approving Stipulation and [Proposed] Order Extending Protective Order to Testimony Provided by Gary Goldman in Response to Defendant's Subpoena Dated February 12, 2004 and Plaintiff's Subpoena Dated February 12, 2004 As Well As to Any Other Testimony or Discovery Provided by Non-Party Grant Thornton LLP or Any of Its Personnel in Response to Any Other Subsequent Subpoenas Served by the Parties in This Matter  Order Signed on 3/8/2004 (related document(s)147 ). |
|---|---|---|---|
| 152 | 03/09/2004 | 152 | Notice of Completion of Briefing on Plaintiff's Motion to Strike Lucent's Objection to Deposition Testimony Filed by Christine Shubert. |
| 153 | 03/25/2004 | 153 | Order Striking Defendant Lucent's Objection to Deposition Testimony (related document(s)141 ). |
| 154 | 03/25/2004 | 154 | Motion to Compel Motion of Defendant Lucent Technologies Inc. to Compel the Trustee to Respond in Full to Defendant's Interrogatories Nos 12 and 13 Filed by LUCENT TECHNOLOGIES, INC.  (Attachments: # 1 Memorandum in Support# 2 Declaration of Lillian S. Grossbard# 3 Exhibit 1# 4 Exhibit 2# 5 Exhibit 3# 6 Exhibit 4# 7 Exhibit 5# 8 Exhibit 6# |
| 155 | 03/26/2004 | 155 | Motion for Leave of Defendant Lucent Technologies Inc. for Leave to File a Motion to Amend Its Counterclaims Filed by LUCENT TECHNOLOGIES, INC... |
| 156 | 03/26/2004 | 156 | Amended Answer to Complaint Second Amended Answer and Counterclaims of Defendant Lucent Technologies Inc. to the Second Amended Complaint, Counterclaim by LUCENT TECHNOLOGIES, INC. against all plaintiffs Filed by LUCENT TECHNOLOGIES, INC (Attachments: # 1 Motion for Leave to Amend Its Counterclaims# 2 Declaration of L. Grossbard in Support of Motion# 3 Exhibit 1 Part 1 of 5# 4 Exhibit 1 Part 2 of 5# 5 Exhibit 1 Part 3 of 5# 6 Exhibit 1 Part 4 of 5# 7 Exhibit 1 Part 5 of 5# 8 Exhibit 2# 9 Exhibit 3# 10 Exhibit 4 Part 1 of 2# 11 Exhibit 4 Part 2 of 2# 12 Exhibit 5# 13 Exhibit 6# 14 Exhibit 7# 15 Exhibit 8# 16 Exhibit 9# 17 Exhibit 10# 18 Exhibit 11# 19 Exhibit 12# 20 Memorandum in Support of Motion) |
| 157 | 03/30/2004 | 157 | Motion for Protective Order Barring 30(b)(6) Deposition Filed by LUCENT TECHNOLOGIES, INC  (Attachments: # 1 Proposed Form of Order # 2 Memorandum -- Part 1# 3 Memorandum -- Part 2# 4 Declaration of Lillian S. Grossbard -- Part 1# (5) of Lillian S. Grossbard -- Part 2) |
| 158 | 03/31/2004 | 158 | Affidavit/Declaration of Service (related document(s)157 ) Filed by LUCENT TECHNOLOGIES, INC. |
| 159 | 03/31/2004 | 159 | Affidavit/Declaration of Service [SUPPLEMENTAL] (related document(s) 157 ) Filed by LUCENT TECHNOLOGIES, INC. |
| 160 | 03/31/2004 | 160 | Request to Change Filing Date of Motion to Compel Motion of Defendant Lucent Technologies Inc. to Compel the Trustee to Respond in Full to Defendant's Interrogatories Nos 12 and 13 to MARCH 22, 2004. Filed by LUCENT TECHNOLOGIES, INC. (related document(s)154). |
| 161 | 03/31/2004 | 161 | Notice of Service of Defendant's Responses and Objections to Plaintiff's Eighth Request for the Production of Documents and Defendant's Amended and Supplemental Responses and Objections to Plaintiff's Third Set of Interrogatories Filed by LUCENT TECHNOLOGIES, INC. |
| 162 | 04/06/2004 | 162 | Plaintiff's Memorandum of Law in Opposition To Defendant's Motion to Compel the Trustee To Respond In Full To Defendant's Interrogatory Nos 12 and 13 (related document(s)154 ) Filed by Christine C. Shubert |
| 163 | 04/06/2004 | 163 | Declaration of David R. King In Opposition to Defendant's Motion to Compel the Trustee to Respond In Full to Defendant's Interrogatory Nos 12 and 13 (related document(s)162, 154 ) Filed by Christine C. Shubert |
| 164 | 04/06/2004 | 164 | Certificate of Service (related document(s)162, 163 ) Filed by Christine C. Shubert |

8

## EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 165 | 04/07/2004 | 165 | Notice of Service Re: Defendant's Third Set of Requests for Admissions, Defendant's Fifth Request for the Production of Documents, and Defendant's Fifth Set of Interrogatories to Plaintiff No. 23 Filed by LUCENT TECHNOLOGIES, INC. ( |
|---|---|---|---|
| 166 | 04/07/2004 | 166 | Notice of Service Re: Defendant's Responses and Objections to Plaintiff's Ninth Request for the Production of Documents and Defendant's Responses and Objections to Plaintiff's First Request for Admissions Filed by LUCENT TECHNOLOGIES, INC. |
| 167 | 04/08/2004 | 167 | Letter in Response to Lucents Motion for Leave to File a Second Amended Answer and Counterclaims (related document(s)155 ) Filed by Christine C Shubert |
| 168 | 04/09/2004 | 168 | (WITHDRAWN 4/22/04 - SEE DOCKET #174) Motion for Protective Order and Related Documents Filed by LUCENT TECHNOLOGIES, INC  (Attachments: # 1 Memorandum of Law# 2 Affidavit of Kelly A  Rocco# 3 Affidavit of Paul C  Saunders with Exhibits 1 & 2# 4 Exhibit 3 to Affidavit of Paul C  Saunders# 5 Exhibit 4 to Affidavit of Paul C  Saunders# 6 Exhibits 5 through 11 to Affidavit of Paul C  Saunders# 7 Exhibit 12 to Affidavit of Paul C  Saunders# 8 Exhibit 13 to Affidavit of Paul C. Saunders |
| 169 | 04/12/2004 | 169 | Memorandum of Law in opposition to Lucents motion for a protective order barring 30(b)(6) deposition Filed by Christine C. Shubert |
| 170 | 04/12/2004 | 170 | Memorandum/Brief Declaration of David R  King in opposition to defendants motion for a protective order barring 30(b)(6) deposition (related document(s)169 ) Filed by Christine C. Shubert |
| 171 | 04/12/2004 | 171 | Reply Memorandum of Law of Defendant Lucent Technologies Inc  in Support of its Motion to Compel the Trustee to Respond in Full to Defendant's Interrogatories Nos. 12 and 13 (related document(s)162, 154 ) Filed by LUCENT TECHNOLOGIES, INC. |
| 172 | 04/15/2004 | 172 | Notice of Completion of Briefing on Defendant's Motion to Compel [Re: Docket Nos. 154, 162, 163 and 171] Filed by LUCENT TECHNOLOGIES, INC.. |
| 173 | 04/19/2004 | 173 | Memorandum of Law Reply Memorandum of Law of Defendant Lucent Technologies, Inc  in Support of its Motion for Protective Order Barring 30(b)(6) Deposition Filed by LUCENT TECHNOLOGIES, INC  (Attachments: # 1 Declaration of L  Grossbard# 2 Exhibit 10# 3 Exhibit 11# 4 Exhibit 12# 5 Exhibit 13# 6 Exhibit 14# 7 Exhibit 15 |
| 174 | 04/22/2004 | 174 | Notice of Withdrawal of Motion of Defendant Lucent Technologies, Inc  for a Protective Order Quashing the Subpoenas Issued to Paul C  Saunders, Esq , Cravath, Swaine & Moore LLP and PricewaterhouseCoopers LLP and Precluding the Trustee from Taking Further Discovery Regarding an Internal Investigation Conducted by Lucent's Outside Counsel in 2000 (related document(s)168 ) Filed by LUCENT TECHNOLOGIES, INC. |
| 175 | 04/23/2004 | 175 | Proposed Scheduling Order (THIRD AMENDED) Filed by LUCENT TECHNOLOGIES, INC. |
| 176 | 04/27/2004 | 176 | Hearing Held/Court Sign-In Sheet (related document(s)134 ) |
| 177 | 04/27/2004 | 177 | Order Denying Third Amended Scheduling Order. (related document 175). |
| 178 | 04/28/2004 | 178 | Notice of Service re: Defendant's Responses and Objections to Plaintiff's Tenth Request for the Production of Documents Filed by LUCENT TECHNOLOGIES, INC. |
| 179 | 04/28/2004 | 179 | Notice of Service re: Defendant's Additional Supplemental Response to Interrogatory No. 1 of Plaintiff's Third Set of Interrogatories Filed by LUCENT TECHNOLOGIES, INC. |
| 180 | 04/29/2004 | 180 | Certification of Counsel (related document(s)156, 155 ) Filed by LUCENT TECHNOLOGIES, INC. |
| 181 | 04/30/2004 | 181 | Order Granting Defendant Lucent Technologies Inc 's Motion for Leave to File a Motion to Amend its Counterclaims. (Related Doc # 155) |

9

# EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 182 | 04/30/2004 | 182 | Joint Motion to Reconsider [Proposed] Third Amended Scheduling Order or For Order Extending Summary Judgment Briefing Filed by LUCENT TECHNOLOGIES, INC... |
|-----|------------|-----|---|
| 183 | 04/30/2004 | 183 | Letter (related document(s)182 ) Filed by LUCENT TECHNOLOGIES, INC. |
| 184 | 05/03/2004 | 184 | Affidavit Second Supplemental Declaration of Lillian S. Grossbard in Support of Motion of Defendant Lucent Technologies Inc for Protective Order Barring 30(b)(6) Deposition Filed by LUCENT TECHNOLOGIES, INC. |
| 185 | 05/03/2004 | 185 | Letter Filed by LUCENT TECHNOLOGIES, INC. |
| 186 | 05/05/2004 | 186 | Motion for Leave Motion of Defendant Lucent Technologies Inc for Leave to File Memorandum of Law Exceeding Page Limitation Filed by LUCENT TECHNOLOGIES, INC... |
| 187 | 05/05/2004 | 187 | (WITHDRAWN 5/19/04 - SEE DOCKET #199) Motion for Leave Motion of Defendant Lucent Technologies Inc. to Take the Deposition of Michael Montemarano Filed by LUCENT TECHNOLOGIES, INC (Attachments: # 1 Memorandum in Support of Motion# 2 Declaration of Lillian S Grossbard# 3 Exhibit A# 4 Exhibit B# 5 Exhibit C# 6 Exhibit D |
| 188 | 05/07/2004 | 188 | Third Amended Scheduling Order. (related document 182). |
| 189 | 05/07/2004 | 189 | Supplemental Certification of Counsel (related document(s)156, 155 ) Filed by LUCENT TECHNOLOGIES, INC. |
| 190 | 05/07/2004 | 190 | Affidavit Declaration Of David R. King In Opposition To Defendants Motion For Leave To File Memorandum Of Law Exceeding Page Limitation Filed by Christine Shubert |
| 191 | 05/07/2004 | 191 | Affidavit/Declaration of Service of Heidi L. Brison (related document(s)188 ) Filed by LUCENT TECHNOLOGIES, INC. |
| 192 | 05/11/2004 | 192 | Order Granting Defendant Lucent Technologies Inc 's Motion for Leave to Amend its Counterclaims. (related document(s)156, 155 ) |
| 193 | 05/11/2004 | 193 | Order Authorizing Defendant Lucent Technologies Inc to File Memorandum of Law Exceeding Page Limitation. (related document(s)186 ) |
| 194 | 05/12/2004 | 194 | Reply Memorandum of Defendant Lucent Technologies Inc in Support of its Motion for Leave to Take the Deposition of Michael Montemarano Filed by LUCENT TECHNOLOGIES, INC. |
| 195 | 05/13/2004 | 195 | WITHDRAWN Notice of Hearing re: Motion of Defendant Lucent Technologies, Inc to Compel the Trustee to Respond in Full to Defendant's Interrogatories Nos. 12 and 13 (related document(s)154 ) Filed by LUCENT TECHNOLOGIES, INC |
| 196 | 05/13/2004 | 196 | Notice of Hearing re: Motion of Defendant Lucent Technologies, Inc for Protective Order Barring 30(b)(6) Deposition (related document(s)157 ) Filed by LUCENT TECHNOLOGIES, INC. |
| 197 | 05/14/2004 | 197 | Notice of Withdrawal of Notice of Hearing re: Motion of Defendant Lucent Technologies, Inc. to Compel the Trustee to Respond in Full to Defendant's Interrogatories Nos 12 and 13 (related document(s)195 ) Filed by LUCENT TECHNOLOGIES, INC. |
| 198 | 05/14/2004 | 198 | Notice of Hearing re: Motion of Defendant Lucent Technologies, Inc to Take the Deposition of Michael Montemarano (related document(s)187 ) Filed by LUCENT TECHNOLOGIES, INC. |
| 199 | 05/19/2004 | 199 | Notice of Withdrawal re: Motion of Defendant Lucent Technologies Inc to Take the Deposition of Michael Montemarano (related document(s)187 ) Filed by LUCENT TECHNOLOGIES, INC. |
| 200 | 05/19/2004 | 200 | Notice of Completion of Briefing on Defendant's Motion for Protective Order Barring 30(b)(6) Deposition Filed by LUCENT TECHNOLOGIES, INC. |
| 201 | 05/25/2004 | 201 | Order Denying Motion of Defendant Lucent Technologies Inc. For Protective Order Barring 30(b)(6) Deposition. (Related Doc # 157) |

RLF1-2986514-1

# EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 202 | 05/25/2004 | 202 | Order (CONSENT) Authorizing Plaintiff Christine C. Shubert, Chapter 7 Trustee of Winstar Communications, Inc. to File Memorandum of Law Exceeding Page Limitation. |
|---|---|---|---|
| 203 | 05/25/2004 | 203 | Order Approving Stipulation Extending Time to Respond to Counterclaim of Lucent Technologies Inc. Order Signed on 5/25/2004. |
| 204 | 05/25/2004 | 204 | Stipulation By and Between LUCENT TECHNOLOGIES, INC. and The Trustee Concerning The Admissibility of Certain Documents. |
| 205 | 05/27/2004 | 205 | Reply Answer to Complaint with Counterclaim Reply to Second Amended Counterclaims (related document(s)156 ) Filed by Christine Shubert |
| 206 | 06/09/2004 | 206 | Order Denying Motion of Lucent Technologies, Inc. to Compel the Trustee to Respond in Full to Defendant's Interrogatories Nos. 12 and 13  (Related Doc # 154) |
| 207 | 06/10/2004 | 207 | Stipulation and Proposed Order Dismissing Claims for Relief Without Prejudice Between LUCENT TECHNOLOGIES, INC and Plaintiff Christine C. Shubert, Chapter 7 Trustee of Winstar Communications, Inc.  Filed by LUCENT TECHNOLOGIES, INC. |
| 208 | 06/11/2004 | 208 | Motion for Withdrawal of Reference Motion of Defendant Lucent Technologies Inc. to Withdraw the Reference to the Bankruptcy Court. Fee Amount $150  Filed by LUCENT TECHNOLOGIES, INC.. |
| 209 | 06/11/2004 | 209 | Motion to Authorize Motion for an Order Pursuant to Section 107(b) of the Bankruptcy Code, Rule 9018 of the Federal Rules of Bankruptcy Procedure, and Local Rule 5003-1(b) Authorizing Lucent Technologies Inc. to File a Redacted Version of Certain Documents Relating to the Motion of Defendant Lucent Technologies Inc. for Summary Judgment on Counts VII, X and XI of the Second Amended Complaint and for Partial Summary Judgment on Lucent's Affirmative Defense of New Value Filed by LUCENT TECHNOLOGIES, INC. |
| 210 | 06/11/2004 | 210 | Motion For Summary Judgment Motion of Defendant Lucent Technologies Inc. for Summary Judgment on Counts VII, X and XI of the Second Amended Complaint and for Partial Summary Judgment on Lucent's Affirmative Defense of New Value Filed by LUCENT TECHNOLOGIES, INC. |
| 211 | 06/14/2004 | 211 | Receipt of filing fee for Motion for Withdrawal of Reference (A)(01-01063-JBR |
| 212 | 06/14/2004 | 212 | Memorandum of Law of Defendant Lucent Technologies Inc. in Support of Its Motion for Summary Judgment on Counts VII, X and XI of the Second Amended Complaint and for Partial Summary Judgment on Lucent's Affirmative Defense of New Value (related document(s)210 ) Filed by LUCENT TECHNOLOGIES, INC. |
| 213 | 06/14/2004 | 213 | Affidavit Declaration of Kelly A. Rocco in Support of the Motion of Defendant Lucent Technologies Inc. for Summary Judgment on Counts VII, X and XI of the Second Amended Complaint and for Partial Summary Judgment on Lucent's Affirmative Defense of New Value & Exhibits 1, 2 & 3 (related document(s)210, 212 ) Filed by LUCENT TECHNOLOGIES, INC. ( |
| 214 | 06/14/2004 | 214 | Exhibit in Support of the Motion of Defendant Lucent Technologies Inc. for Summary Judgment on Counts VII, X and XI of the Second Amended Complaint and for Partial Summary Judgment on Lucent's Affirmative Defense of New Value & Exhibits 4A-4C (related document(s)210, 212, 213 ) Filed by LUCENT TECHNOLOGIES, INC. (Attachments: # 1 Exhibit 4A Part 2 of 3# 2 Exhibit 4A Part 3 of 3# 3 Exhibit 4B Part 1 of 4# 4 Exhibit 4B Part 2 of 4# 5 Exhibit 4B Part 3 of 4# 6 Exhibit 4B Part 4 of 4# 7 Exhibit 4C Part 1 of 3# 8 Exhibit 4C Part 2 of 3# 9 Exhibit 4C Part 3 of 3) |

# EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL

| 215 | 06/14/2004 | 215 | Exhibit to Declaration of Kelly A Rocco in Support of the Motion of Defendant Lucent Technologies Inc for Summary Judgment on Counts VII, X and XI of the Second Amended Complaint and for Partial Summary Judgment on Lucent's Affirmative Defense of New Value & Exhibits 4D-5 (related document(s)210, 212, 213, 214 ) Filed by LUCENT TECHNOLOGIES, INC (Attachments: # 1 Exhibit 4D Part 2 of 3# 2 Exhibit 4D Part 3 of 3# 3 Exhibit 4E Part 1 of 3# 4 Exhibit 4E Part 2 of 3# (5) Exhibit 4E Part 3 of 3# 6 Exhibit 4F Part 1 of 2# 7 Exhibit 4F Part 2 of 2# 8 Exhibit 5 Part 1 of 2# 9 Exhibit 5 Part 2 of 2) |
|---|---|---|---|
| 216 | 06/14/2004 | 216 | Exhibit to Declaration of Kelly A Rocco in Support of the Motion of Defendant Lucent Technologies Inc for Summary Judgment on Counts VII, X and XI of the Second Amended Complaint and for Partial Summary Judgment on Lucent's Affirmative Defense of New Value & Exhibits 6-63 (related document(s)210, 212, 213, 214, 215 ) Filed by LUCENT TECHNOLOGIES, INC. (Attachments: # 1 Exhibit 18-28# 2 Exhibit 29-45# 3 Exhibit 46-48# 4 Exhibit 49-50# 5 Exhibit 51-53# 6 Exhibit 54-55# 7 Exhibit 56-58# 8 Exhibit 59-63) |
| 217 | 06/14/2004 | 217 | Affidavit of Vernon Terrell in Support of the Motion of Defendant Lucent Technologies Inc for Summary Judgment on Counts VII, X and XI of the Second Amended Complaint and for Partial Summary Judgment on Lucent's Affirmative Defense of New Value (related document(s)210, 212, 213, 214, 215, 216 ) Filed by LUCENT TECHNOLOGIES, INC (Attachments: # 1 Exhibit 1# 2 Exhibit 2# 3 Exhibit 3 Part 1 of 3# 4 Exhibit 3 Part 2 of 3# 5 Exhibit 3 Part 3 of 3 |
| 218 | 06/14/2004 | 218 | Request to Change Filing Date of Affidavit,,, Memorandum of Law,, Affidavit,,, Exhibit,,, Exhibit,,, Exhibit,, to to June 11, 2004 Filed by LUCENT TECHNOLOGIES, INC. |
| 219 | 06/15/2004 | 219 | Order Approving Stipulation Dismissing Claims for Relief Without Prejudice. (related document(s)207 ) |
| 220 | 06/15/2004 | 220 | Order Granting Lucent's Motion For an Order Authorizing Lucent Technologies Inc. To File A Redacted Version of Certain Documents Relating To The Motion of Defendant Lucent Technologies Inc For Summary Judgment on Counts VII,X and XI of The Second Amended Complaint & For Partial Summary Judgment on Lucent's Affirmative Defense on New Value (Related Doc # 209) |
| 221 | 06/15/2004 | 221 | CONFIDENTIAL - UNREDACTED DOCUMENTS - FILED UNDER SEAL: Unredacted Declaration of Kelly A. Rocco in Support of the Motion of Defendant Lucent Technologies Inc. for Summary Judgment on Counts VII, X and XI of the Second Amended Complaint and for Partial Summary Judgment on Lucent's Affirmative Defense of New Value [With Accompanying Unredacted Exhibits 1-28 and Exhibits 46-63] Re: (related document(s)220, 209 ) Filed by LUCENT TECHNOLOGIES, INC. (JSI, ) Modified on 7/1/2004 IMAGE REVISED TO REFLECT DESCRIPTION OF CONTENTS OF BOX(MAS, ) Additional attachment(s) added on 7/1/2004 |
| 222 | 06/21/2004 | 222 | Stipulation and Order Extending Briefing Schedule on Motion to Withdraw the Reference Between LUCENT TECHNOLOGIES, INC and Plaintiff Christine C Shubert, Chapter 7 Trustee of Winstar Communications, Inc , and Winstar Wireless, Inc.. Filed by LUCENT TECHNOLOGIES, INC. |
| 223 | 06/22/2004 | 223 | Notice of Service CERTIFICATE OF SERVICE re: Unredacted Exhibits 29-45 to Declaration of Kelly A Rocco in Support of the Motion of Defendant Lucent Technologies, Inc for Summary Judgment on Counts VII, X and XI of the Second Amended Complaint and for Partial Summary Judgment on Lucent's Affirmative Defense of New Value Filed by LUCENT TECHNOLOGIES, INC. |
| 224 | 06/22/2004 | 224 | Notice of Service NOTICE OF ERRATA AND FILING OF UNREDACTED EXHIBITS (related document(s)213 ) Filed by LUCENT TECHNOLOGIES, INC. |
| 225 | 06/25/2004 | 225 | Order Approving Stipulation Extending Briefing Schedule on Motion to Withdraw the Reference. (related document(s)222 ) |

12

# EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| | | | |
|---|---|---|---|
| 226 | 06/29/2004 | 226 | Motion to Strike Lucent Technologies, Inc.'s Designation of Materials as Confidential, Motion to Vacate (to the Extent Necessary) and/or Reconsider Order Granting Lucent's Motion for an Order Authorizing Lucent Technologies Inc. to File a Redacted Version of Certain Documents Relating to the Motion of Defendant Lucent Technologies Inc. for Summary Judgment on Counts VII, X and XI of the Second Amended Complaint and for Partial Summary Judgment on Lucent's Affirmative Defense on New Value Filed by Christine Shubert. (Attachments: # 1 Exhibit "A"# 2 Exhibit "B"# 3 Proposed Form of Order |
| 227 | 07/01/2004 | 227 | CONFIDENTIAL - UNREDACTED DOCUMENTS - FILED UNDER SEAL: Unredacted Exhibits 29-45 to the Unredacted Declaration of Kelly A. Rocco in Support of the Motion of Defendant Lucent Technologies Inc. for Summary Judgment on Counts VII, X and XI of the Second Amended Complaint and for Partial Summary Judgment on Lucent's Affirmative Defense of New Value filed contemporaneously with the Notice of Errata and Filing of Unredacted Exhibits filed on June 22, 2004 (related document(s)220, 209, 216 ) Filed by LUCENT TECHNOLOGIES, INC. |
| 228 | 07/09/2004 | 228 | Stipulation FURTHER STIPULATION AND ORDER EXTENDING BRIEFING SCHEDULE ON MOTION TO WITHDRAW THE REFERENCE Between Christine Shubert and LUCENT TECHNOLOGIES, INC.. (related document(s)208 ) Filed by Christine Shubert |
| 229 | 07/12/2004 | 229 | Response to Motion of Chapter 7 Trustee for Order, Inter Alia, Striking Lucent Technologies Inc.'s Designation of Materials as Confidential (related document(s)226 ) Filed by LUCENT TECHNOLOGIES, INC. |
| 230 | 07/14/2004 | 230 | Brief PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO LUCENT'S MOTION TO WITHDRAW THE REFERENCE (related document(s)208 ) Filed by Christine Shubert (Attachments: # 1 Declaration DECLARATION OF ANDREW C. GOLD IN CONNECTION WITH TRUSTEES OPPOSITION TO LUCENTS MOTION TO WITHDRAW THE REFERENCE# 2 Exhibit EXHIBIT A-C Proofs of Claims |
| 231 | 07/15/2004 | 231 | Order And Further Stipulation Extending Briefing Schedule On Motion To Withdraw The Reference. (Related Doc # 228) |
| 232 | 07/19/2004 | 232 | Notice of Service NOTICE OF FILING OF REVISED REDACTED DOCUMENTS (related document(s)229, 212, 213, 214, 215, 216, 226 ) Filed by LUCENT TECHNOLOGIES, INC. (related document(s)229, 212, 213, 214, 215, 216, 226). |
| 233 | 07/19/2004 | 233 | Exhibit to Notice of Filing of Revised Redacted Documents (related document(s)232 ) Filed by LUCENT TECHNOLOGIES, INC. (Attachments: # 1 Exhibit 1 Part 2# 2 Exhibit 1 Part 3# 3 Exhibit 2 Part 1# 4 Exhibit 2 Part 2# 5 Exhibit 2 Part 3# 6 Exhibit 3) |
| 234 | 07/19/2004 | 234 | Exhibit to Notice of Filing of Revised Redacted Documents (related document(s)232 ) Filed by LUCENT TECHNOLOGIES, INC. (Attachments: # 1 Exhibit 4 Part 2# 2 Exhibit 4 Part 3# 3 Exhibit 4 Part 4# 4 Exhibit 4 Part 5# 5 Exhibit 4 Part 6) |
| 235 | 07/19/2004 | 235 | Exhibit to Notice of Filing of Revised Redacted Documents (related document(s)232 ) Filed by LUCENT TECHNOLOGIES, INC. (Attachments: # 1 Exhibit 4 Part 8# 2 Exhibit 4 Part 9# 3 Exhibit 4 Part 10# 4 Exhibit 4 Part 11# 5 Exhibit 4 Part 12# 6 Exhibit 4 Part 13) |
| 236 | 07/19/2004 | 236 | Exhibit to Notice of Filing of Revised Redacted Documents (related document(s)232 ) Filed by LUCENT TECHNOLOGIES, INC. (Attachments: # 1 Exhibit 7-19# 2 Exhibit 20-34# 3 Exhibit 35-44# 4 Exhibit 45-50# 5 Exhibit 51-56# 6 Exhibit 57-60# 7 Exhibit 61-63) |

13

**EXHIBIT A**

**APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
BE INCLUDED IN THE RECORD ON APPEAL**

| 237 | 07/23/2004 | 237 | Memorandum of Law of Defendant Lucent Technologies Inc. in Support of its Motion to Withdrawal the Reference to the Bankruptcy Court (related document(s)208 ) Filed by LUCENT TECHNOLOGIES, INC. (Attachments: # 1 Attachment (Unreported Decisions) |
|---|---|---|---|
| 238 | 07/28/2004 | 238 | Stipulation and Order Extending Briefing Schedule on Motion to Withdraw the Reference Between LUCENT TECHNOLOGIES, INC. and Christine C. Shubert, Chapter 7 Trustee for Winstar Communications, Inc., et al. (related document(s)230 ) Filed by LUCENT TECHNOLOGIES, INC. (related document(s)230). |
| 239 | 08/02/2004 | 239 | Order Approving Further Stipulation and Order Extending Briefing Schedule on Motion to Withdraw the Reference. (related document(s)238 ) |
| 240 | 08/04/2004 | 240 | Reply Memorandum of Law of Defendant Lucent Technologies Inc. in Support of Its Motion to Withdraw the Reference to the Bankruptcy Court (related document(s)208 ) Filed by LUCENT TECHNOLOGIES, INC. (Attachments: # 1 Attachment (Unreported Cases) |
| 241 | 08/05/2004 | 241 | Notice of Hearing APPLICATION OF LUCENT TECHNOLOGIES INC. FOR ORAL ARGUMENT (related document(s)208 ) Filed by LUCENT TECHNOLOGIES, INC. |
| 242 | 08/09/2004 | 242 | Transmittal to the U.S. District Court, District of Delaware of the Motion to Withdraw the Reference (related document(s)237, 241, 222, 228, 238, 239, 240, 225, 230, 231, 208 ) |
| 243 | 08/10/2004 | 243 | Notice of Receipt of Record for Motion to Withdraw the Reference (U.S.D.C. Civil Action No. 04-928) (related document(s)242 ) Filed by U.S. District Court, District of Delaware |
| 244 | 08/10/2004 | 244 | Notice of Docketing Motion to Withdraw the Reference (U.S.D.C. Civil Action No. 04-928) |
| 245 | 08/11/2004 | 245 | Notice of Completion of Briefing Re: Docket No. 208 Filed by LUCENT TECHNOLOGIES, INC. |
| 246 | 08/13/2004 | 246 | Stipulation and Proposed Order Resolving Motion of Chapter 7 Trustee for an Order Striking Lucent Technologies Inc.'s Designation of Materials as Confidential and Related Relief Between LUCENT TECHNOLOGIES, INC. and Plaintiff Christine C. Shubert, Chapter 7 Trustee of Winstar Communications, Inc. Filed by LUCENT TECHNOLOGIES, INC. |
| 247 | 08/13/2004 | 247 | Memorandum of Law in Opposition to Lucent's Motion for Summary Judgment Filed by Christine C. Shubert |
| 248 | 08/13/2004 | 248 | Affidavit/Declaration of Service of Stephen J. Scherf in Opposition to Defendant's Motion for Summary Judgment (related document(s)247 ) Filed by Christine C. Shubert (Attachments: # 1 Declaration : Part 2# 2 Declaration : Part 3# 3 Declaration : Part 4# 4 Declaration : Part 5) |
| 249 | 08/13/2004 | 249 | Affidavit/Declaration of Service of David R. King in Opposition to Defendant's Motion for Summary Judgment (Volume 1 of 4) (related document(s)247 ) Filed by Christine C. Shubert (Attachments: # 1 Volume(s) 1 of 4: Part 2# 2 Volume(s) 1 of 4: Part 3# 3 Volume(s) 1 of 4: Part 4# 4 Volume(s) 1 of 4: Part 5# 5 Volume(s) 1 of 4: Part 6# 6 Volume(s) 1 of 4: Part 7# 7 Volume(s) 1 of 4: Part 8# 8 Volume(s) 1 of 4: Part 9# 9 Volume(s) 1 of 4: Part 10) |
| 250 | 08/13/2004 | 250 | Affidavit/Declaration of Service of David R. King in Opposition to Defendant's Motion for Summary Judgment (Volume 2 of 4) (related document(s)247 ) Filed by Christine Shubert (Attachments: # 1 Volume(s) 2 of 4: Part 2) |
| 251 | 08/13/2004 | 251 | Affidavit/Declaration of Service of David R. King in Opposition to Defendant's Motion for Summary Judgment (Volume 3 of 4) (related document(s)247 ) Filed by Christine Shubert (Attachments: # 1 Volume(s) 3 of 4: Part 2# 2 Volume(s) 3 of 4: Part 3) |

14

## EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 252 | 08/13/2004 | 252 | Affidavit/Declaration of Service of David R King in Opposition to Defendant's Motion for Summary Judgement (Volume 4 of 4) (related document(s)247 ) Filed by Christine Shubert (Attachments: # 1 Volume(s) 4 of 4: Part 2# 2 Volume(s) 4 of 4: Part 3) |
|---|---|---|---|
| 253 | 08/17/2004 | 253 | Order (Proposed) And Stipulation Resolving Motion Of Chapter 7 Trustee For An Order Striking Lucent Technologies Inc.'s Designation Of Materials As Confidential And Related Relief. (Related Doc # 246) |
| 254 | 08/18/2004 | 254 | Transmittal to the U.S. District Court, District of Delaware of Docket Entry No 245 (U.S.D.C. Civil Action No. 04-928) (related document(s)245 ) |
| 255 | 08/23/2004 | 255 | Notice of Receipt of Record of Docket Entry No. 245 (U.S D.C. Civil Action No 04-928 -JJF) (related document(s)245 ) Filed by U. S. District Court, District of Delaware |
| 256 | 09/10/2004 | 256 | Motion to Allow Motion for an Order Pursuant to Section 107(b) of the Bankruptcy Code, Rule 9018 of the Federal Rules of Bankruptcy Procedure, and Local Rule 5003-(b) Authorizing Lucent Technologies Inc to File a Redacted Version of Certain Documents Relating to the Motion of Defendant Lucent Technologies Inc. for Summary Judgment on Counts VII, X and XI of the Second Amended Complaint and for Partial Summary Judgment on Lucent's Affirmative Defense of New Value Filed by LUCENT TECHNOLOGIES, INC.. |
| 257 | 09/10/2004 | 257 | Memorandum of Law Reply Memorandum of Law of Defendant Lucent Technologies Inc in Further Support of Its Motion for Summary Judgment on Counts VII, X and XI of the Second Amended Complaint and for Partial Summary Judgment on Lucent's Affirmative Defense of New Value (related document(s)210 ) Filed by LUCENT TECHNOLOGIES, INC (Attachments: # 1 Attachment (Unreported Cases)# 2 Certificate of Service for Reply Memorandum# 3 Declaration of Iddo Harel (part 1 of 2)# 4 Declaration of Iddo Harel (part 2 of 2)# 5 Certificate of Service for Declaration of Iddo Harel# 6 Affidavit of Fred Rubin# 7 Certificate of Service for Affidavit of Fred Rubin# 8 Declaration of David R Baum |
| 258 | 09/15/2004 | 258 | Letter SUR REPLY IN RESPONSE TO LUCENTS REPLY BRIEF RE MOTION FOR SUMMARY JUDGMENT Filed by Christine Shubert (Attachments: # 1 Exhibit SUPPLEMENTAL DECLARATION OF DAVID R. KING) |
| 259 | 09/21/2004 | 259 | Notice of Completion of Briefing and Plaintiffs Request for Oral Argument on Motion of Defendant Lucent Technologies, Inc. for Summary Judgment on Counts VII, X and XI of the Second Amended Complaint and for Partial Summary Judgment on Lucents Affirmative Defense of New Value Filed by Christine C Shubert. |
| 260 | 09/21/2004 | 260 | Notice of Service NOTICE OF ERRATA (related document(s)232 ) Filed by LUCENT TECHNOLOGIES, INC. |
| 261 | 09/24/2004 | 261 | Motion for Leave Motion of Lucent Technologies Inc for Leave to File Response to Plaintiff's Sur-Reply Letter Filed by LUCENT TECHNOLOGIES, INC. (related document(s)258). |
| 262 | 09/24/2004 | 262 | Response to Plaintiff's Sur-Reply Letter (related document(s)258 ) Filed by LUCENT TECHNOLOGIES, INC |
| 263 | 09/27/2004 | 263 | Letter Response to Lucents Motion for Leave to Respond to Sur-reply (related document(s)261 ) Filed by Christine Shubert |
| 264 | 09/29/2004 | 264 | Letter Regarding Trustee's 9/27/04 Letter Requesting Oral Argument and Disposition of Lucent's Summary Judgment Motion (related document(s)263 ) Filed by LUCENT TECHNOLOGIES, INC. |
| 265 | 09/30/2004 | 265 | Letter re: oral argument Filed by Christine Shubert |
| 266 | 10/07/2004 | 266 | Order Refraining this Court from Taking and Action until the District Court Acts on Defendant's Motion to Withdraw the Reference Signed on 10/6/2004. |
| 267 | 11/03/2004 | 267 | Joint Motion to Approve Joint Motion for Court to Enter Fourth Amended Scheduling Order Filed by LUCENT TECHNOLOGIES, INC... |

15

# EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 268 | 11/18/2004 | 268 | COPY OF DISTRICT COURT Memorandum Opinion Denying the Motion of Defendant Lucent Technologies, Inc. to Withdraw the Reference (related document(s)208 ) |
|-----|------------|-----|---|
| 269 | 11/18/2004 | 269 | COPY OF DISTRICT COURT Order Denying Motion For Withdrawal Of Reference(Related Doc # 208) Order Signed on 11/16/2004. (MAS, ) |
| 270 | 11/18/2004 | 270 | Letter To The Honorable Joel B. Rosenthal re: Oral Argument and Proposed Sched. Order Filed by Christine Shubert |
| 271 | 12/06/2004 | 271 | Letter The Honorable Joel B. Rosenthal - Lucent's Motion Filed by Christine C. Shubert (Rennie, Sheldon) |
| 272 | 12/07/2004 | 272 | Notice of Agenda of Matters Scheduled for Hearing Filed by Christine C. Shubert. |
| 273 | 12/15/2004 | 273 | Order On Motion for Summary Judgment of Defendant Lucent Technologies Inc. on Counts VII, X and XI of the Second Amended Complaint and for Partial Summary Judgment on Lucent's Affirmative Defense of New Value. (related document(s)210 ) |
| 274 | 01/05/2005 | 274 | Transcript of Hearing held on December 14, 2004 before the Honorable Joel B. Rosenthal. (related document(s)272 ) |
| 275 | 01/26/2005 | 275 | PreTrial Order  Trial date set for 3/21/2005 at 09:30 AM at Alternate Meeting Site Signed on 1/26/2005. (LCN, ) |
| 276 | 02/03/2005 | 276 | ENTERED IN ERROR -- Order Reassigning Adversary Proceeding to the Honorable Donal D. Sullivan. Order Signed on 2/1/2005. (BJM) Modified on 2/7/2005 |
| 277 | 02/14/2005 | 277 | Second Pretrial Order. Signed on 2/10/2005. |
| 278 | 02/28/2005 | 278 | Motion in Limine Filed by Christine C. Shubert. (Attachments: # 1 Declaration Of David R. King in Support of Plaintiff's In Limine Motion# 2 Exhibit A To Declaration of David R. King in Support of Plaintiffs In Limine Motion# 3 Exhibit B to Declaration of D. King - Motion In Limine - W# 4 Certificate of Service of Plaintiffs In Limine Motion with attached Exhibits) |
| 279 | 02/28/2005 | 279 | Motion in Support of Lucent Technologies Inc.'s Motion In Limine No. 1: To Exclude Certain Expert Testimony of Paul W. Pocalyko Pursuant to Fed. R. Evid. 702 and Daubert v. Merrell Dow Pharms Inc. Filed by LUCENT TECHNOLOGIES, INC.; Modified on 3/1/2005 |
| 280 | 02/28/2005 | 280 | Motion in Support of Lucent Technologies Inc.'s Motion In Limine No. 2: To Exclude the Expert Testimony of Robert E. Ott Pursuant to Fed. R. Evid. 702 and Daubert v. Merrell Dow Pharms, Inc. Filed by LUCENT TECHNOLOGIES, INC.. |
| 281 | 02/28/2005 | 281 | Motion in Support of Lucent Technologies Inc.'s Motion In Limine No. 3: To Exclude Certain Expert Testimony of Stephen J. Scherf Pursuant to Fed. R. Evid 702 and Daubert v. Merrell Dow Pharms  Inc. Filed by LUCENT TECHNOLOGIES, INC.. ( Modified on 3/1/2005 ). |
| 282 | 02/28/2005 | 282 | Memorandum of Law in Support of Lucent Technologies Inc.'s Motions In Limine Nos. 1, 2 & 3: To Exclude Certain Expert Testimony of Paul W. Pocalyko, Robert E. Ott and Stephen J. Scherf Pursuant to Fed. R. Evid. 702 and Daubert v. Merrell Dow Pharms  Inc Filed by LUCENT TECHNOLOGIES, INC (Attachments: # 1 Attachment Part 1# 2 Attachment Part 2# |
| 283 | 02/28/2005 | 283 | Declaration of Gerald Ford in Support of Defendant Lucent Technologies Inc.'s Motions In Limine Nos. 1, 2 & 3: To Exclude Certain Expert Testimony of Paul W. Pocalyko, Robert E. Ott, and Stephen J. Scherf Pursuant to Fed R. Evid 702 and Daubert v. Merrell Dow Pharms  Inc. Filed by LUCENT TECHNOLOGIES, INC. (Attachments: # 1 Exhibit 1# 2 Exhibit 2-3# 3 Exhibit 4-6# 4 Exhibit 7-11# 5 Certificate of Service and Service List) |

16

# EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 284 | 02/28/2005 | 284 | Motion in Support of Defendant Lucent Technologies Inc 's Motion In Limine No. 4: To Exclude Evidence of Transactions Unrelated to the Siemens Transaction Filed by LUCENT TECHNOLOGIES, INC; Modified on 3/1/2005 |
|---|---|---|---|
| 285 | 02/28/2005 | 285 | Memorandum of Law of Defendant Lucent Technologies Inc. in Support of Its Motion In Limine No 4: To Exclude Evidence of Transactions Unrelated to the Siemens Transaction Filed by LUCENT TECHNOLOGIES, INC. |
| 286 | 02/28/2005 | 286 | Declaration of Gerald A Ford in Support of Defendant Lucent Technologies Inc 's Motion In Limine No 4: To Exclude Evidence of Transactions Unrelated to the Siemens Transaction Filed by LUCENT TECHNOLOGIES, INC (Attachments: # 1 Exhibit 1# 2 Exhibit 2# 3 Exhibit 3# 4 Exhibit 4# 5 Certificate of Service and Service List) (Booth, Rebecca) Modified on 3/1/2005 |
| 287 | 03/07/2005 | 287 | Memorandum of Law of Defendant Lucent Technologies Inc. In Opposition to Plaintiff's In Limine Motion Filed by LUCENT TECHNOLOGIES, INC. |
| 288 | 03/07/2005 | 288 | Declaration of David Roy Rigotti Filed by LUCENT TECHNOLOGIES, INC ; Modified on 3/8/2005 |
| 289 | 03/07/2005 | 289 | Declaration of Michael A. Paskin in Opposition to Plaintiff's In Limine Motion Filed by LUCENT TECHNOLOGIES, INC (Attachments: # 1 Exhibit 1# 2 Exhibit 2# 3 Exhibit 3# 4 Exhibit 4# 5 Exhibit 5# 6 Exhibit 6# 7 Exhibit 7# 8 Exhibit 8# 9 Exhibit 9# 10 Exhibit 10 |
| 290 | 03/07/2005 | 290 | Memorandum of Law in Opposition to Lucents Motion In Limine Nos 1, 2 & 3 Filed by Christine C. Shubert (Attachments: # 1 Declaration Declaration of Stephen J. Scherf |
| 291 | 03/07/2005 | 291 | Memorandum of Law in Opposition to Lucents Motion In Limine No. 4 Filed by Christine C Shubert (Attachments: # 1 Declaration of Stephen J. Scherf# 2 Declaration of David R. King Part 1# 3 Declaration of David R. King Part 2# 4 Declaration of David R. King Part 3# 5 Declaration of David R. King Part 4# 6 Declaration of David R. King Part 5# 7 Declaration of David R. King Part 6# 8 Declaration of David R. King Part 7# 9 Declaration of David R. King Part 8# 10 Declaration of David R. King Part 9# 11 Declaration of David R. King Part 10 |
| 292 | 03/07/2005 | 292 | Joint Pretrial Memorandum Filed by LUCENT TECHNOLOGIES, INC (Attachments: # 1 Exhibit 1# 2 Exhibit 2# 3 Exhibit 3# 4 Exhibit 4# 5 Exhibit 5# 6 Exhibit 6# 7 Exhibit 7# 8 Exhibit 8# 9 Exhibit 9# 10 Exhibit 10# 11 Exhibit 11# 12 Exhibit 12# 13 Exhibit 13# 14 Exhibit 14# 15 Exhibit 15; Modified on 3/11/2005 |
| 293 | 03/07/2005 | 293 | Appendix A to Joint Pretrial Memorandum (related document(s)292 ) Filed by LUCENT TECHNOLOGIES, INC (Attachments: # 1 Part 2# 2 Part 3# 3 Part 4# 4 Part 5) |
| 294 | 03/08/2005 | 294 | Order: Notice Of Non-Evidentiary Hearing  Hearing will be held on Wednesday, March 16, 2005 at 2:00PM at the Harold Donohue Federal Courthouse, 595 Main Street, Worcester, Massachusetts, Courtroom No  3  (related document(s)281, 278, 279, 280, 284 ) |
| 295 | 03/10/2005 | 295 | Plaintiff's Pre-Trial Memorandum of Law Filed by Christine C. Shubert |
| 296 | 03/10/2005 | 296 | Defendant Lucent Technologies Inc 's Trial Brief Filed by LUCENT TECHNOLOGIES, INC. |
| 297 | 03/11/2005 | 297 | Motion to Appear pro hac vice of Barry Werbin  Receipt Number 138442, Fee Amount $25. Filed by Christine C. Shubert. ( |
| 298 | 03/15/2005 | 298 | Order Granting Motion To Appear pro hac vice of (Barry Werbin, Esq ) (Related Doc # 297) |
| 299 | 03/16/2005 | 299 | Plaintiff Christine C  Shubert's Proposed Bridge Statements Filed by Christine C. Shubert |
| 300 | 03/17/2005 | 300 | Order Allowing Plaintiff's Motion in Limine. (Related Doc # 278) |

RLF1-2986514-1

# EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 301 | 03/17/2005 | 301 | Order Denying Motion in Support of Lucent Technologies Inc.'s Motion In Limine No. 1: To Exclude Certain Expert Testimony of Paul W. Pocalyko and Daubert V. Merrell Dow Pharms. Inc. (Related Doc # 279) |
| 302 | 03/17/2005 | 302 | Order Denying Motion in Support of Lucent Technologies Inc.'s Motion In Limine No. 2: To Exclude the Expert Testimony of Robert E. Ott and Daubert v. Merrell Dow Pharms, Inc. (Related Doc # 280) |
| 303 | 03/17/2005 | 303 | Order Denying Motion in Support of Lucent Technologies Inc.'s Motion In Limine No. 3: To Exclude Certain Expert Testimony of Stephen J. Scherf and Daubert v Merrell Dow Pharms. Inc. (Related Doc # 281) |
| 304 | 03/17/2005 | 304 | Order Denying Motion in Support of Defendant Lucent Technologies Inc.'s Motion In Limine No. 4: To Exclude Evidence of Transactions Unrelated to the Siemens Transaction. (Related Doc # 284) |
| 305 | 03/17/2005 | 305 | Defendant Lucent Technologies Inc.'s Bridge Statements for Deposition Testimony Filed by LUCENT TECHNOLOGIES, INC. |
| 306 | 03/18/2005 | 306 | Motion to Appear pro hac vice of Lillian S. Grossbard of Cravath, Swaine & Moore  Receipt Number 138530, Fee Amount $25  Filed by LUCENT TECHNOLOGIES, INC.. |
| 307 | 03/18/2005 | 307 | Motion to Appear pro hac vice of Michael A. Paskin of Cravath, Swaine & Moore Receipt Number 138530, Fee Amount $25  Filed by LUCENT TECHNOLOGIES, INC.. |
| 308 | 03/21/2005 | 308 | Stipulation By and Between LUCENT TECHNOLOGIES, INC and The Trustee Concerning the Admissibility of Certain Documents and Deposition Testimony. Filed by LUCENT TECHNOLOGIES, INC.. |
| 309 | 03/22/2005 | 309 | Stipulation (Joint) as to Additional Uncontested Facts Between LUCENT TECHNOLOGIES, INC. and the Trustee  Filed by LUCENT TECHNOLOGIES, INC. |
| 310 | 04/04/2005 | 310 | Order of Impoundment Granting Counsel for Each Party an Unredacted Copy of the Underseal Trial Transcript. Signed on 4/4/2005. |
| 311 | 04/06/2005 | 311 | Motion to Appear pro hac vice of Susan Swatski  Receipt Number 138750, Fee Amount $25. Filed by Christine C. Shubert. |
| 312 | 04/07/2005 | 312 | Order Granting Motion To Appear pro hac vice of (Susan Swatski, esq.)(Related Doc # 311) |
| 313 | 04/12/2005 | 313 | Notice of Filing Documents Under Seal Filed by LUCENT TECHNOLOGIES, INC. |
| 314 | 04/12/2005 | 314 | Motion to File Under Seal Motion of Defendants Lucent Technologies Inc, to File Under Seal its Motion for Reconsideration of the Court's April 4, 2005, Order of Impoundment (related document(s)313 ) Filed by LUCENT TECHNOLOGIES, INC. (related document(s)313). |
| 315 | 04/12/2005 | 315 | Renewed Motion of Lucent Technologies Inc to Exclude the Testimony of Paul Pocalyko Filed by LUCENT TECHNOLOGIES, INC  (Attachments: # 1 Attachment Memorandum in Support of Motion |
| 316 | 04/15/2005 | 316 | AMENDMENT To Order of Impoundment. (related document(s)310 ) |
| 317 | 04/15/2005 | 317 | Order Granting Defendant Lucent Technologies Inc Leave to File Under Seal its Motion for Reconsideration of the Court's April 4, 2005, Order of Impoundment (Related Doc # 314) |
| 318 | 04/15/2005 | 318 | (DOCUMENTS FILED UNDER SEAL) Motion of Defendant Lucent Technologies Inc to File Under Seal its Motion for Reconsideration of the Court's April 4, 2004, Order of Impoundment. (related document(s) 317). |
| 319 | 04/15/2005 | 319 | Certificate of Service Filed by LUCENT TECHNOLOGIES, INC. |
| 320 | 04/20/2005 | 320 | Letter to The Honorable Joel B. Rosenthal re: TIMELINE Filed by Christine C. Shubert |
| 321 | 04/20/2005 | 321 | Scheduling Order. Signed on 4/20/2005. |

18

# EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 322 | 04/20/2005 | 322 | Transcript of Motions Hearing held on March 16, 2005 before the Honorable Joel B. Rosenthal |
| 323 | 04/20/2005 | 327 | Letter In Response To Defendant's Motion for Reconsideration of the Court's April 4, 2005 Order of Impoundment (related document(s)314 ) Filed by Christine C Shubert |
| 324 | 04/20/2005 | 328 | Memorandum of Law In Opposition to Lucent's Renewed Motion To Exclude The Testimony of Paul Pocalyko (related document(s)315 ) Filed by Christine C. Shubert (Attachments: # 1 Certificate of Service of Trustee's Memorandum of Law in Opposition to Lucent's Renewed Motion to Exclude The Testimony of Paul Pocalyko) |
| 325 | 04/26/2005 | 329 | ENTERED IN ERROR (See Amended Order in lead Bk case docket #4410)Order Reassigning Adversary Proceeding To The Honorable Donal D. Sullivan. Signed on 2/1/2005. (Attachments: # 1 Exhibit A) |
| 326 | 04/26/2005 | 330 | Letter to The Honorable Joel B. Rosenthal re: Revised Timeline (related document(s)320 ) Filed by Christine C. Shubert |
| 327 | 04/26/2005 | 331 | Stipulation Renumbered Joint Stipulation Between LUCENT TECHNOLOGIES, INC. and Christine C. Shubert, Chapter 7 Trustee for Winstar Communications, Inc., et al. as to Uncontested Facts. Filed by LUCENT TECHNOLOGIES, INC.. ( |
| 328 | 04/27/2005 | 332 | Letter to The Honorable Joel B. Rosenthal re: Chronology of Events Filed by LUCENT TECHNOLOGIES, INC. |
| 329 | 05/04/2005 | 333 | Order (REVISIONS BY THE COURT) Denying Renewed Motion of Lucent Technologies Inc. to Exclude the Testimony of Paul Pocalyko. (Related Doc # 315) |
| 330 | 05/04/2005 | 334 | Order (REVISIONS BY THE COURT) Granting Motion of Defendant Lucent Technologies Inc. for Reconsideration of the Court's April 4, 2005 Order of Impoundment. (related document(s)310, 316 ) |
| 331 | 05/20/2005 | 335 | Stipulation Concerning the Submission of Joint Trial Exhibits Between LUCENT TECHNOLOGIES, INC and The Trustee. Filed by LUCENT TECHNOLOGIES, INC.. |
| 332 | 05/23/2005 | 336 | Scheduling Order (SECOND). Signed on 5/18/2005. |
| 333 | 05/23/2005 | 337 | Stipulation By and Between LUCENT TECHNOLOGIES, INC and Christine C. Shubert, Chapter 7 Trustee for Winstar Communications, Inc., et al Concerning Lucent's Counterclaim for Setoff. Filed by LUCENT TECHNOLOGIES, INC. |
| 334 | 06/06/2005 | 339 | Findings of Fact and Conclusions of Law Filed by Christine C. Shubert (Attachments: # 1 TRUSTEE'S PROPOSED CONCLUSION OF LAW# 2 Exhibit Exhibit A and B to Conclusions of Law# 3 Exhibit Exhibits C through E to Conclusions of Law - WINSTAR) |
| 335 | 06/06/2005 | 340 | Findings of Fact and Conclusions of Law (Proposed) Filed by LUCENT TECHNOLOGIES, INC. (Attachments: # 1 PART 2# 2 PART 3# 3 PART 4# 4 PART 5# 5 Unpublished Opinions PART 1# 6 Unpublished Opinions PART 2# 7 Unpublished Opinions PART 3 |
| 336 | 06/08/2005 | 341 | Letter to the Honorable Joel B. Rosenthal - Trustee's Objection to Portions of Lucent's Findings of Facts and Conclusions Filed by Christine C. Shubert |
| 337 | 06/09/2005 | 342 | Letter Filed by LUCENT TECHNOLOGIES, INC. |
| 338 | 06/09/2005 | 343 | Letter Filed by LUCENT TECHNOLOGIES, INC. |
| 339 | 06/10/2005 | 344 | Letter Filed by LUCENT TECHNOLOGIES, INC. |
| 340 | 06/10/2005 | 345 | Letter to the Honorable Joel B. Rosenthal - Lucent Has Not Consented To Court's Entry of Final Order... Filed by Christine C. Shubert |
| 341 | 06/10/2005 | 346 | Letter to the Honorable Joel B. Rosenthal - Citations to Video Deposition Testimony.. Filed by Christine C. Shubert |
| 342 | 06/10/2005 | 347 | Letter Filed by LUCENT TECHNOLOGIES, INC. |
| 343 | 06/15/2005 | 348 | Letter Filed by LUCENT TECHNOLOGIES, INC. |
| 344 | 06/15/2005 | 349 | Letter to Judge Rosenthal Filed by Christine C. Shubert |

RLF1-2986514-1

## EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 345 | 06/20/2005 | 350 | Order and Notice Regarding the Sending of Letters to the Court. |
| 346 | 08/15/2005 | 368 | Letter dated 8/8/05 from David R. King, Esq. to advise the court that mailing address has changed. Filed by Christine C. Shubert |
| 347 | 12/21/2005 | 369 | Memorandum of Decision Including Findings of Fact and Conclusions of Law With Respect to Counts VII, X, and XI of the Second Amended Complaint and Counts 5 and 6 of the Second Amended Answer and Counterclaims. Signed on 12/21/2005. (related document(s)259, 210, 209, 212, 257 ) (JMP, ) |
| 348 | 12/21/2005 | 370 | Order Regarding Memorandum of Decision Including Findings of Fact and Conclusions of Law With Respect to Counts VII, X, and XI of the Second Amended Complaint and Counts 5 and 6 of the Second Amended Answer and Counterclaims.(related document(s)369 ) |
| 349 | 12/23/2005 | 371 | Notice of Appearance and Demand for Service of Papers Filed by LUCENT TECHNOLOGIES, INC.. |
| 350 | 12/23/2005 | 372 | Motion to Appear pro hac vice of Craig T. Goldblatt of Wilmer Cutler Pickering Hale and Don LLP Receipt Number 141626, Fee Amount $25 Filed by LUCENT TECHNOLOGIES, INC.. |
| 351 | 12/28/2005 | 373 | Order Entering Judgment. (related document(s)370 ) |
| 352 | 01/03/2006 | 374 | Order Granting Motion for Admission pro hac vice of Craig T. Goldblatt (Related Doc # 372) |
| 353 | 01/03/2006 | 375 | Conditional Objection of Lucent Technologies Pursuant to Rule 9033(b) to any "Proposed" Findings of Fact and Conclusions of Law Made by the Bankruptcy Court (related document(s)369, 373 ) Filed by LUCENT TECHNOLOGIES, INC. |
| 354 | 01/06/2006 | 376 | Stipulation (Joint) Regarding Ten Day Stay of Execution of Judgment By LUCENT TECHNOLOGIES, INC , Christine C. Shubert Filed by LUCENT TECHNOLOGIES, INC., Christine C. Shubert |
| 355 | 1/09/2006 | 377 | Notice of Appeal (from final judgment entered 12/28/05). Fee Amount $255 (related document(s)373 ) Filed by LUCENT TECHNOLOGIES, INC Appellant Designation due by 1/19/2006. |

## Trial Transcripts

| Tab | Date | Adv. Docket No. | Description of Item |
|---|---|---|---|
| 356 | 04/20/2005 | 323 | Transcript of Trial (Volume 1) held on March 21, 2005 before the Honorable Joel B. Rosenthal. |
| 357 | 04/20/2005 | 324 | Transcript of Trial (Volume 2) held on March 22, 2005 before the Honorable Joel B. Rosenthal. |
| 358 | 06/01/2005 | 338 | Transcript of Trial (Volume III) held on March 23, 2005 before the Honorable Joel B. Rosenthal. |
| 359 | 04/20/2005 | 325 | Transcript of Trial (Volume 4) held on March 24, 2005 before the Honorable Joel B. Rosenthal. |
| 360 | 04/20/2005 | 326 | Transcript of Trial (Volume 5) held on March 25, 2005 before the Honorable Joel B. Rosenthal. |
| 361 | 06/29/2005 | 351 | Transcript of Trial (Volume VI) held on March 28, 2005 before the Honorable Joel B. Rosenthal. |
| 362 | 06/29/2005 | 352 | Transcript of Trial (Volume VII) held on March 29, 2005 before the Honorable Joel B. Rosenthal. |
| 363 | 06/29/2005 | 353 | Transcript of Trial (Volume VIII) held on March 30, 2005 before the Honorable Joel B. Rosenthal. |
| 364 | 06/29/2005 | 354 | Transcript of Trial (Volume IX) held on March 31, 2005 before the Honorable Joel B. Rosenthal. |

RLF1-2986514-1

EXHIBIT A

APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
BE INCLUDED IN THE RECORD ON APPEAL

| 365 | 06/29/2005 | 355 | Transcript of Trial (Volume X) held on April 1, 2005 before the Honorable Joel B Rosenthal. |
| 366 | 06/29/2005 | 356 | Transcript of Trial (Volume XI) held on April 11, 2005 before the Honorable Joel B. Rosenthal. |
| 367 | 06/29/2005 | 357 | Transcript of Trial (Volume XII) held on April 12, 2005 before the Honorable Joel B. Rosenthal. |
| 368 | 06/29/2005 | 358 | Transcript of Trial (Volume XIII) held on April 13, 2005 before the Honorable Joel B. Rosenthal. |
| 369 | 06/29/2005 | 359 | Transcript of Trial (Volume XIV) held on April 14, 2005 before the Honorable Joel B. Rosenthal. |
| 370 | 06/29/2005 | 360 | Transcript of Trial (Volume XV) held on April 15, 2005 before the Honorable Joel B. Rosenthal. |
| 371 | 06/29/2005 | 361 | Transcript of Trial (Volume XVI) held on May 2, 2005 before the Honorable Joel B. Rosenthal. |
| 372 | 06/29/2005 | 362 | Transcript of Trial (Volume XVII) held on May 3, 2005 before the Honorable Joel B. Rosenthal. |
| 373 | 06/29/2005 | 363 | Transcript of Trial (Volume XVIII) held on May 4, 2005 before the Honorable Joel B. Rosenthal. |
| 374 | 06/29/2005 | 364 | Transcript of Trial (Volume XIX) held on May 5, 2005 before the Honorable Joel B. Rosenthal. |
| 375 | 06/29/2005 | 365 | Transcript of Trial (Volume XX) held on May 10, 2005 before the Honorable Joel B. Rosenthal. |
| 376 | 06/29/2005 | 366 | Transcript of Trial (Volume XXI) held on May 11, 2005 before the Honorable Joel B. Rosenthal. |
| 377 | 06/29/2005 | 367 | Transcript of Trial (Volume XXII) held on June 13, 2005 before the Honorable Joel B. Rosenthal. |

**Proofs of Claim**

| Tab | Date | Claim No. | Description of Item |
| --- | --- | --- | --- |
| 378 | 10/15/2001 | 2012 | Lucent Technologies, Inc. Unsecured Proof of Claim in the amount of $957,388,021.50, filed in Winstar Communications, Inc. Case No.     01-01430 |
| 379 | 10/15/2001 | 2013 | Lucent Technologies, Inc. Unsecured Proof of Claim in the amount of $957,388,021.50, filed in WCI Capital Corp. Case No. 01-01431 |
| 380 | 10/15/2001 | 2014 | Lucent Technologies, Inc. Unsecured Proof of Claim in the amount of $957,388,021.50, filed in Winstar Equipment Corp. Case No. 01-01432 |
| 381 | 10/15/2001 | 2015 | Lucent Technologies, Inc. Unsecured Proof of Claim in the amount of $957,388,021.50, filed in Winstar Wireless, Inc., Case No. 01-01443 |
| 382 | 10/15/2001 | 2016 | Lucent Technologies, Inc. Unsecured Proof of Claim in the amount of $957,388,021.50, filed in Winstar Network Expansion, LLC. Case No     01-01446 |
| 383 | 10/15/2001 | 2017 | Lucent Technologies, Inc. Unsecured Proof of Claim in the amount of $957,388,021.50, filed in WVF-1 LLC Case No. 01-01452 |
| 384 | 10/15/2001 | 2018 | Lucent Technologies, Inc. Unsecured Proof of Claim in the amount of $957,388,021.50, filed in WVF-LU2, LLC Case No. 01-01453 |
| 385 | 10/15/2001 | 2019 | Lucent Technologies, Inc. Secured Proof of Claim in the amount of $799,060,307.68, filed in Winstar Communications, Inc. Case No. 01-01430 |
| 386 | 10/15/2001 | 2020 | Lucent Technologies, Inc. Secured Proof of Claim in the amount of $799,060,307.68, filed in WCI Capital Corp. Case No. 01-01431 |

RLF1-2986514-1

# EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 387 | 10/15/2001 | 2021 | Lucent Technologies, Inc. Secured Proof of Claim in the amount of $799,060,307.68, filed in Winstar Equipment, Corp. Case No. 01-01432 |
|-----|-----------|------|--------------------------------------------------------------------------------------------------------------------------------------|
| 388 | 10/15/2001 | 2022 | Lucent Technologies, Inc. Secured Proof of Claim in the amount of $799,060,307.68, filed in Winstar Wireless, Inc. Case No. 01-01442 |
| 389 | 10/15/2001 | 2023 | Lucent Technologies, Inc. Secured Proof of Claim in the amount of $799,060,307.68, filed in Winstar Network Expansion, LLC. Case No 01-01446 |
| 390 | 10/15/2001 | 2024 | Lucent Technologies, Inc Secured Proof of Claim in the amount of $799,060,307.68, filed in WVF-1 LLC. Case No. 01-01452 |
| 391 | 10/15/2001 | 2025 | Lucent Technologies, Inc Secured Proof of Claim in the amount of $799,060,307.68, filed in WVF-LU2 LLC Case No. 01-01453 |
| 392 | 10/15/2001 | 2026 | Lucent Technologies, Inc Secured Proof of Claim in the amount of $138,957,218.90, filed in Winstar Communications, Inc Case No 01-01430 |
| 393 | 10/15/2001 | 2027 | Lucent Technologies, Inc. Secured Proof of Claim in the amount of $138,957,218.90, filed in WCI Capital Corp Case No 01-01431 |
| 394 | 10/15/2001 | 2028 | Lucent Technologies, Inc Secured Proof of Claim in the amount of $138,957,218.90, filed in Winstar Equipment Corp. Case No. 01-01432 |
| 395 | 10/15/2001 | 2029 | Lucent Technologies, Inc. Secured Proof of Claim in the amount of $138,957,218.90, filed in Winstar Wireless, Inc. Case No. 01-01443 |
| 396 | 10/15/2001 | 2030 | Lucent Technologies, Inc. Secured Proof of Claim in the amount of $138,957,218.90, filed in Winstar Network Expansion, LLC. Case No 01-01446 |
| 397 | 10/15/2001 | 2031 | Lucent Technologies, Inc. Secured Proof of Claim in the amount of $138,957,218.90, filed in WVF-1 LLC. Case No. 01-01452 |
| 398 | 10/15/2001 | 2032 | Lucent Technologies, Inc. Secured Proof of Claim in the amount of $138,957,218.90, filed in WVF-LU2, LLC Case No 01-01453 |
| 399 | 10/15/2001 | 2214 | Lucent Technologies, Inc. Secured Proof of Claim in the amount of $138,957,218.90, filed in Winstar Network Expansion, LLC Case No. 01-01446 |
| 400 | 10/15/2001 | 2215 | Lucent Technologies, Inc. Secured Proof of Claim in the amount of $138,957,218.90, filed in WVF-1 LLC Case No. 01-01452 |
| 401 | 10/15/2001 | 2216 | Lucent Technologies, Inc. Secured Proof of Claim in the amount of $138,957,218.90, filed in WVF-LU2, LLC. Case No. 01-01453 |
| 402 | 10/15/2001 | 2217 | Lucent Technologies, Inc. Unsecured Proof of Claim in the amount of $957,388,021.50, filed in WVF-LU2, LLC. Case No. 01-01453 |
| 403 | 10/15/2001 | 2218 | Lucent Technologies, Inc. Secured Proof of Claim in the amount of $799,060,307.68, filed in Winstar Communications, Inc Case No 01-01430 |
| 404 | 10/15/2001 | 2219 | Lucent Technologies, Inc. Secured Proof of Claim in the amount of $799,060,307.68, filed in WCI Capital Corp. Case No. 01-01431 |
| 405 | 10/15/2001 | 2220 | Lucent Technologies, Inc. Secured Proof of Claim in the amount of $799,060,307.68, filed in Winstar Equipment Corp. Case No. 01-01432 |
| 406 | 10/15/2001 | 2221 | Lucent Technologies, Inc. Secured Proof of Claim in the amount of $799,060,307.68, filed in Winstar Wireless, Inc. Case No. 01-01443 |

**EXHIBIT A**

**APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
BE INCLUDED IN THE RECORD ON APPEAL**

| 407 | 10/15/2001 | 2222 | Lucent Technologies, Inc. Secured Proof of Claim in the amount of $799,060,307.68, filed in Winstar Network Expansion, LLC. Case No. 01-01446 |
| 408 | 10/15/2001 | 2223 | Lucent Technologies, Inc. Secured Proof of Claim in the amount of $799,060,307.68, filed in WVF-1 LLC. Case No. 01-01452 |
| 409 | 10/15/2001 | 2224 | Lucent Technologies, Inc. Secured Proof of Claim in the amount of $799,060,307.68, filed in WVF-LU2 LLC. Case No. 01-01453 |
| 410 | 10/15/2001 | 2225 | Lucent Technologies, Inc. Secured Proof of Claim in the amount of $138,957,218.90, filed in Winstar Communications, Inc. Case No. 01-01430 |
| 411 | 10/15/2001 | 2226 | Lucent Technologies, Inc. Secured Proof of Claim in the amount of $138,957,218.90, filed in WCI Capital Corp.. Case No. 01-01431 |
| 412 | 10/15/2001 | 2227 | Lucent Technologies, Inc. Secured Proof of Claim in the amount of $138,957,218.90, filed in Winstar Equipment Corp. Case No. 01-01432 |
| 413 | 10/15/2001 | 2228 | Lucent Technologies, Inc. Secured Proof of Claim in the amount of $138,957,218.90, filed in Winstar Wireless, Inc.. Case No. 01-01443 |
| 414 | 10/15/2001 | 2229 | Lucent Technologies, Inc. Unsecured Proof of Claim in the amount of $1,895,405,548.00, filed in Winstar Equipment II Corp. Case No. 01-01433 |
| 415 | 10/15/2001 | 2230 | Lucent Technologies, Inc. Unsecured Proof of Claim in the amount of $1,895,405,548.00, filed in Winstar Credit Corp. Case No. 01-01434 |
| 416 | 10/15/2001 | 2231 | Lucent Technologies, Inc. Unsecured Proof of Claim in the amount of $1,895,405,548.00, filed in Winstar Wireless Fiber Corp. Case No. 01-01435 |
| 417 | 10/15/2001 | 2232 | Lucent Technologies, Inc. Unsecured Proof of Claim in the amount of $1,895,405,548.00, filed in Winstar LMDS, LLC. Case No. 01-01436 |
| 418 | 10/15/2001 | 2233 | Lucent Technologies, Inc. Unsecured Proof of Claim in the amount of $1,895,405,548.00, filed in Winstar New Media Company, Inc. Case No. 01-01437 |
| 419 | 10/15/2001 | 2234 | Lucent Technologies, Inc. Unsecured Proof of Claim in the amount of $1,895,405,548.00, filed in At Your Office, Inc. Case No. 01-01438 |
| 420 | 10/15/2001 | 2235 | Lucent Technologies, Inc. Unsecured Proof of Claim in the amount of $1,895,405,548.00, filed in Sportsfan Radio Network, Inc. Case No. 01-01439 |
| 421 | 10/15/2001 | 2236 | Lucent Technologies, Inc. Unsecured Proof of Claim in the amount of $1,895,405,548.00, filed in Winstar Interactive Ventures I, Inc. Case No. 01-01440 |
| 422 | 10/15/2001 | 2237 | Lucent Technologies, Inc. Unsecured Proof of Claim in the amount of $1,895,405,548.00, filed in Winstar Interactive Media Sales, Inc. Case No. 01-01441 |
| 423 | 10/15/2001 | 2238 | Lucent Technologies, Inc. Unsecured Proof of Claim in the amount of $1,895,405,548.00, filed in Office.com Inc. Case No. 01-01442 |
| 424 | 10/15/2001 | 2239 | Lucent Technologies, Inc. Unsecured Proof of Claim in the amount of $1,895,405,548.00, filed in Winstar Broadband Acuisition 2000, LLC. Case No. 01-01444 |
| 425 | 10/15/2001 | 2240 | Lucent Technologies, Inc. Unsecured Proof of Claim in the amount of $1,895,405,548.00, filed in Winstar Midcom Acquisition Corp. Case No. 01-01445 |

RLF1-2986514-1

**EXHIBIT A**

**APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
BE INCLUDED IN THE RECORD ON APPEAL**

| 426 | 10/15/2001 | 2241 | Lucent Technologies, Inc. Unsecured Proof of Claim in the amount of $1, 895,405,548.00, filed in WWI License Holding, Inc. Case No. 01-01447 |
| 427 | 10/15/2001 | 2242 | Lucent Technologies, Inc. Unsecured Proof of Claim in the amount of $1, 895,405,548 00, filed in Winstar Government Solutions, LLC Case No. 01-01448 |
| 428 | 10/15/2001 | 2243 | Lucent Technologies, Inc. Unsecured Proof of Claim in the amount of $1, 895,405,548.00, filed in WVF-CSC1, LLC Case No. 01-01449 |
| 429 | 10/15/2001 | 2244 | Lucent Technologies, Inc. Unsecured Proof of Claim in the amount of $1, 895,405,548 00, filed in WVF-DL 1, LLC Case No 01-01450 |
| 430 | 10/15/2001 | 2245 | Lucent Technologies, Inc. Unsecured Proof of Claim in the amount of $1, 895,405,548 00, filed in WVF-CPQ1, LLC Case No. 01-01451 |
| 431 | 10/15/2001 | 2246 | Lucent Technologies, Inc. Unsecured Proof of Claim in the amount of $1, 895,405,548.00, filed in Winstar Wireless of Delaware, LLC Case No. 01-01454 |
| 432 | 10/15/2001 | 2247 | Lucent Technologies, Inc. Unsecured Proof of Claim in the amount of $1, 895,405,548 00, filed in Winstar Wireless of Georgia, LLC Case No 01-01455 |
| 433 | 10/15/2001 | 2248 | Lucent Technologies, Inc. Unsecured Proof of Claim in the amount of $1, 895,405,548 00, filed in Winstar Wireless of Indiana, LLC, Case No 01-01456 |
| 434 | 10/15/2001 | 2249 | Lucent Technologies, Inc. Unsecured Proof of Claim in the amount of $1, 895,405,548 00, filed in Winstar Wireless of New Jersey, LLC Case No. 01-01457 |
| 435 | 10/15/2001 | 2250 | Lucent Technologies, Inc. Unsecured Proof of Claim in the amount of $1, 895,405,548 00, filed in Winstar Wireless of New York, LLC Case No. 01-01458 |
| 436 | 10/15/2001 | 2251 | Lucent Technologies, Inc. Unsecured Proof of Claim in the amount of $1, 895,405,548.00, filed in Winstar Wireless of Pennsylvania, LLC Case No. 01-01459 |
| 437 | 10/15/2001 | 2252 | Lucent Technologies, Inc. Unsecured Proof of Claim in the amount of $1, 895,405,548 00, filed in Winstar Wireless of Virginia, LLC Case No 01-01460 |
| 438 | 10/15/2001 | 2253 | Lucent Technologies, Inc. Unsecured Proof of Claim in the amount of $1, 895,405,548 00, filed in Winstar Wireless of West Virginia, LLC Case No. 01-01461 |
| 439 | 10/15/2001 | 2254 | Lucent Technologies, Inc. Unsecured Proof of Claim in the amount of $1, 895,405,548.00, filed in Winstar International Inc. Case No. 01-01462 |
| 440 | 10/15/2001 | 2255 | Lucent Technologies, Inc. Unsecured Proof of Claim in the amount of $957,388,021 50, filed in Winstar Communications, Inc. Case No. 01-01430 |
| 441 | 10/15/2001 | 2256 | Lucent Technologies, Inc. Unsecured Proof of Claim in the amount of $957,388,021.50, filed in WCI Capital Corp. Case No. 01-01431 |
| 442 | 10/15/2001 | 2257 | Lucent Technologies, Inc. Unsecured Proof of Claim in the amount of $957,388,021.50, filed in Winstar Equipment Corp. Case No 01-01432 |
| 443 | 10/15/2001 | 2258 | Lucent Technologies, Inc. Unsecured Proof of Claim in the amount of $957,388,021.50, filed in Winstar Wireless, Inc. Case No. 01-01443 |

24

## EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 444 | 10/15/2001 | 2259 | Lucent Technologies, Inc. Unsecured Proof of Claim in the amount of $957,388,021.50, filed in Winstar Network Expansion, LLC. Case No. 01-01446 |
| 445 | 10/15/2001 | 2260 | Lucent Technologies, Inc. Unsecured Proof of Claim in the amount of $957,388,021.50, filed in WVF-I LLC. Case No. 01-01452 |
| 446 | 3/131/2003 | 4532 | Lucent Technologies, Inc. Proof of Claim in the amount of $900,000,000.00, filed in WCI Capital Corp. Case No. 01-01431 |
| 447 | 3/131/2003 | 4533 | Lucent Technologies, Inc. Proof of Claim in the amount of $900,000,000.00, filed in WVF-1 LLC Case No. 01-01452 |
| 448 | 3/131/2003 | 4534 | Lucent Technologies, Inc. Proof of Claim in the amount of $900,000,000.00, filed in WVF-1 LLC Case No. 01-01452 |
| 449 | 3/131/2003 | 4535 | Lucent Technologies, Inc. Proof of Claim in the amount of $900,000,000.00, filed in Winstar Network Expansion, LLC Case No. 01-01446 |
| 450 | 3/131/2003 | 4536 | Lucent Technologies, Inc. Proof of Claim in the amount of $900,000,000.00, filed in WVF-LU2, LLC Case No. 01-01453 |
| 451 | 3/131/2003 | 4537 | Lucent Technologies, Inc. Proof of Claim in the amount of $900,000,000.00, filed in Winstar Wireless, Inc. Case No. 01-01443 |
| 452 | 3/131/2003 | 4538 | Lucent Technologies, Inc. Proof of Claim in the amount of $900,000,000.00, filed in Winstar Communications, Inc. Case No. 01-01430 |
| 453 | 3/131/2003 | 4552 | Lucent Technologies, Inc. Proof of Claim in the amount of $900,000,000.00, filed in Winstar Communications, Inc. Case No 01-01430 |
| 454 | 3/131/2003 | 4453 | Lucent Technologies, Inc. Proof of Claim in the amount of $900,000,000.00, filed in WVF-LU2, LLC Case No. 01-01453 |
| 455 | 3/131/2003 | 4554 | Lucent Technologies, Inc. Proof of Claim in the amount of $900,000,000.00, filed in Winstar Network Expansion, LLC Case No. 01-01446 |
| 456 | 3/131/2003 | 4555 | Lucent Technologies, Inc. Proof of Claim in the amount of $900,000,000.00, filed in WVF-1 LLC Case No. 01-01452 |
| 457 | 3/131/2003 | 4556 | Lucent Technologies, Inc. Proof of Claim in the amount of $900,000,000.00, filed in WVF-1 LLC Case No. 01-01452 |
| 458 | 3/131/2003 | 4557 | Lucent Technologies, Inc. Proof of Claim in the amount of $900,000,000.00, filed in Winstar wireless, Inc. Case No. 01-01443 |
| 459 | 3/131/2003 | 4558 | Lucent Technologies, Inc. Proof of Claim in the amount of $900,000,000.00, filed in WCI Capital Corp. Case No 01-01431 |

## Joint (JX) Trial Exhibits

| Tab | Date | Exhibit No. | Description of Item |
| --- | --- | --- | --- |
| 460 | | JX 1 | Nathan Kantor Direct and Cross Testimony from videotaped depositions played at trial |
| 461 | | JX 2 | Lisa Hicks Direct and Cross Testimony from videotaped depositions played at trial |
| 462 | | JX 3 | Bill Zlotnick Direct and Cross Testimony from videotaped depositions played at trial |

25

EXHIBIT A

APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
BE INCLUDED IN THE RECORD ON APPEAL

| 463 | | JX 4 | Jill Diroma Direct, Cross and Redirect Testimony from videotaped depositions played at trial |
|---|---|---|---|
| 464 | | JX 5 | Frederic E. Rubin Direct, Cross and Redirect Testimony from videotaped depositions played at trial |
| 465 | | JX 6 | David W. Ackerman Direct, Cross and Redirect Testimony from videotaped depositions played at trial |
| 466 | | JX 7 | Richard McGinn Direct, Cross and Redirect Testimony from videotaped depositions played at trial |
| 467 | | JX 8 | William J. Rouhana Direct and Cross Testimony from videotaped depositions played at trial |
| 468 | | JX 9 | Michael Montemarano Direct and Cross Testimony from videotaped depositions played at trial |
| 469 | | JX 10 | Deborah Hopkins Direct and Cross Testimony from videotaped depositions played at trial |
| 470 | | JX 11 | Gary P. Simpson Direct and Cross Testimony from videotaped depositions played at trial |
| 471 | | JX 12 | William Fullerton Direct and Cross Testimony from videotaped depositions played at trial |
| 472 | | JX 13 | Richard J. Uhl Direct and Cross Testimony from videotaped depositions played at trial |
| 473 | | JX 14 | Henry B. Schacht Direct and Cross Testimony from videotaped depositions played at trial |
| 474 | | JX 15 | Kevin Monaco Direct and Cross Testimony from videotaped depositions played at trial |
| 475 | | JX 16 | Gary Goldman Direct and Cross Testimony from videotaped depositions played at trial |
| 476 | | JX 17 | Kevin Holwell Direct and Cross Testimony from videotaped depositions played at trial |
| 477 | | JX 18 | William Plunket Transcript of videotaped deposition played at trial |
| 478 | | JX 19 | Deborah Harris Transcript of deposition, with exhibits |

**Defendant (DX) Trial Exhibits**

| Tab | Date | Exhibit No. | Description of Item |
|---|---|---|---|
| 479 | | DX 1 | Invoices |
| 480 | 6/23/2000 | DX 2 | Notice of Request for Borrowing (Draw Request) |
| 481 | 7/24/2000 | DX 3 | Notice of Request for Borrowing (Draw Request) |
| 482 | 8/24/2000 | DX 4 | Notice of Request for Borrowing (Draw Request) |
| 483 | 9/22/2000 | DX 5 | Notice of Request for Borrowing (Draw Request) |
| 484 | 10/20/2000 | DX 6 | Notice of Request for Borrowing (Draw Request) |
| 485 | 11/30/2000 | DX 7 | Notice of Request for Borrowing (Draw Request) |
| 486 | 12/22/2000 | DX 8 | Notice of Request for Borrowing (Draw Request) |
| 487 | 12/29/2000 | DX 9 | Notice of Request for Borrowing (Draw Request) |
| 488 | 1/26/2001 | DX 10 | Notice of Request for Borrowing (Draw Request) |
| 489 | 2/23/2001 | DX 11 | Notice of Request for Borrowing (Draw Request) |
| 490 | 6/25/1999 | DX 12 | **DELETED** |
| 491 | 6/30/1999 | DX 13 | **DELETED** |
| 492 | 3/20/2000 | DX 14 | ESP Contract Revenue Backlog |

26

# EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 493 | 6/30/2000 | DX 15 | DELETED |
|---|---|---|---|
| 494 | 7/6/2000 | DX 16 | DELETED |
| 495 | 8/29/2000 | DX 17 | DELETED |
| 496 | 9/30/1999 | DX 18 | DELETED |
| 497 | 10/18/2000 | DX 19 | DELETED |
| 498 | 10/31/2000 | DX 20 | DELETED |
| 499 | 11/2/2000 | DX 21 | Letter to R. McGuire RE: Vocall |
| 500 | 12/4/2000 | DX 22 | DELETED |
| 501 | 12/21/2001 | DX 23 | DELETED |
| 502 | 12/21/2000 | DX 24 | DELETED |
| 503 | 12/21/2000 | DX 25 | DELETED |
| 504 | 1/9/2001 | DX 26 | Relationship Overview |
| 505 | 1/18/2001 | DX 27 | DELETED |
| 506 | 10/21/1998 | DX 28 | Supply Agreement By and Between Winstar Communications, Inc. and Lucent Technologies Inc. |
| 507 | 5/4/2000 | DX 29 | Credit Agreement |
| 508 | 6/23/2000 | DX 30 | Credit Agreement |
| 509 | 8/1/1999 | DX 31 | Master Service Agreement Between Lucent Technologies, Inc. and Winstar Wireless, Inc. |
| 510 | 5/9/2000 | DX 32 | Security Agreement |
| 511 | 12/22/2000 | DX 33 | Security Agreement |
| 512 | 6/20/2000 | DX 34 | Borrowing Request |
| 513 | 5/4/2000 | DX 35 | Credit Agreement |
| 514 | 12/22/2000 | DX 36 | Cash Account Security Agreement |
| 515 | 5/23/2000 | DX 37 | Equipment User Agreement |
| 516 | 5/9/2000 | DX 38 | DELETED |
| 517 | 6/23/2000 | DX 39 | B. Nedzi Letter RE: Investment Intermediary Acknowledgment |
| 518 | 6/23/2000 | DX 40 | B. Nedzi Letter RE: Disbursing Bank Acknowledgment |
| 519 | 12/22/2000 | DX 41 | B. Nedzi Letter RE: Investment Intermediary Acknowledgment |
| 520 | 12/22/2000 | DX 42 | B. Nedzi Letter RE: Disbursing Bank Acknowledgment |
| 521 | 5/9/2000 | DX 43 | Pledge Agreement |
| 522 | 10/15/2001 | DX 44 | Secured Proof of Claim - United States Bakruptcy Court District of Delaware - $138,957,218.90 |
| 523 | 10/15/2001 | DX 45 | Unsecured Proof of Claim - United States Bakruptcy Court District of Delaware - $259,648.81 |
| 524 | 10/15/2001 | DX 46 | Secured Proof of Claim - United States Bakruptcy Court District of Delaware - $799,060,307.68 |
| 525 | 3/31/2003 | DX 47 | Proof of Claim - United States Bankruptcy Court District of Delaware - $900,000,000.00 |
| 526 | 1/26/2001 | DX 48 | Notice of Request for Borrowing (Draw Request) |
| 527 | 1/29/2001 | DX 49 | M. Montemarano e-mail to P. Derrick, G. Caviness, D. Hopkins, et al re: Winstar drawdown request. |
| 528 | 2/23/2001 | DX 50 | Notice of Request for Borrowing (Draw Request). |
| 529 | 3/30/2001 | DX 51 | G. Goldman e-mail to G. Manloney, R. Uhl, K. Monaco, et al re: Credit Agreement. |
| 530 | 4/12/2001 | DX 52 | G. Goldman e-mail to R. Uhl re: Credit Agreement. |
| 531 | 3/26/2001 | DX 53 | Notes to Consolidated Financial Statements |
| 532 | 10/4/2000 | DX 54 | F. Rubin e-mail to R. Uhl re: Capital Spend- 2000 and 2001. |
| 533 | 12/11/2000 | DX 55 | D. Ackerman e-mail to J. Verding re: EO3Q Deal and Follow-ups. |
| 534 | 12/10/2000 | DX 56 | B. Zlotnick e-mail to F. Rubin re: Capex. |
| 535 | 12/21/2000 | DX 57 | D. Ackerman e-mail to B. Zlotnick re: Cup Ex. |
| 536 | 12/29/2000 | DX 58 | D. Ackerman e-mail to F. Jules, R. Uhl and N. Kantor re: 2000 Capex. |
| 537 | 1/9/2001 | DX 59 | G. Simpson e-mail to B. Zlotnick re: Lucent Optronics. |

27

# EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 538 | 1/16/2001 | DX 60 | G. Simpson e-mail to B. Zlotnick, F. Rubin, D. Huber and D. Ackerman re: Data Circuits. |
|---|---|---|---|
| 539 | 1/18/2001 | DX 61 | F. Jules e-mail to R. Uhl re Data Circuits. |
| 540 | 3/23/2001 | DX 62 | P. Cummings e-mail to G. Goldman re: Q4 2000 Financial Covenant. |
| 541 | 3/30/2001 | DX 63 | **DELETED** |
| 542 | 4/9/2001 | DX 64 | P. Cummings and C. Craig memo to R. Bambach and G. Maloney re: Annual Audit - Significant Open Items. |
| 543 | 4/12/2001 | DX 65 | G. Illiano e-mail to G. Goldman, J. Desmond, M. Cooperman and P. Cummings re: Dow Jones Newswire - In the Money, A D-Day of Sorts Approaches Winstar. |
| 544 | 2/13/2001 | DX 66 | P. Cummings memo to the files re: Meeting with Client Representatives to Discuss Issues Identified to Date. |
| 545 | 2/14/2001 | DX 67 | **DELETED** |
| 546 | 2/15/2001 | DX 68 | Audit as of and for the Year Ended December 31, 2000 - Agenda for Discussion with Bill Rouhana. |
| 547 | 2/26/2001 | DX 69 | P. Cummings e-mail to G. Goldman re: Debt Covenant Compliance. |
| 548 | 10/9/2001 | DX 70 | S. Clement e-mail to D. Ackerman re: Action Items to Manage 200 Capital Spend. |
| 549 | 10/12/2000 | DX 71 | D. Ackerman e-mail to F. Jules, R. Uhl and N. Kantor re: Change in Plan on 2000 CapEx Budget. |
| 550 | 3/30/2004 | DX 72A | Salomon Report |
| 551 | | DX 73 | D. Harris letter to R. Uhl re: finance organization |
| 552 | | DX 74 | Key Agreements reached/equipment (Presentation) |
| 553 | | DX 75 | IRS Revenue Ruling 59-60 (Collins Report document) |
| 554 | | DX 76 | **DELETED** |
| 555 | | DX 77 | 2Q Lucent (spread sheet) |
| 556 | | DX 78 | L. Rogers E-mail to J. Orlando, W. Viqueira, N. Aversano, J. Cocito RE: WinStar |
| 557 | | DX 79 | Memo- Winstar/Lucent Optical Network Long Haul Program Executive Summary |
| 558 | | DX 80 | Executive Summary |
| 559 | | DX 81 | Winstar Refinance Notice Chart |
| 560 | | DX 82 | Hub and B-site pricing element of the 9/2000 end of quarter deal |
| 561 | | DX 83 | Fiscal Q3 2000 EOQ Deal |
| 562 | | DX 84 | Lucent/Winstar End of Quarter Deals Fiscal Year 2000. |
| 563 | | DX 85 | lucent project list (spread sheet) |
| 564 | 1/26/1998 | DX 86 | Lucent Technologies delivers record-breaking optical networking capacity; five times greater than current systems AT&T is first customer to deploy |
| 565 | 10/2/1998 | DX 87 | winstar/lucent partnership concept |
| 566 | 10/3/1998 | DX 88 | N. Kantor E-Mail to N. Aversano RE: Winstar Partnership Concept |
| 567 | 10/6/1998 | DX 89 | W. Rouhana E-mail to N. Kantor RE: Lucent ideas |
| 568 | 10/2/1998 | DX 90 | Winstar/Lucent Partnership Concept |
| 569 | 10/13/1998 | DX 91 | D. Miller Memo to J. Vardell, A. Norris, L. Rogers, P. Hayes, M. Keefe RE: Credit Agreement |
| 570 | 10/19/1998 | DX 92 | Memo re: October 21, 1998 board meeting |
| 571 | 10/19/1998 | DX 93 | N. Aversano and M. Walsh letter to R. McGinn re: proposed winstar Agreement |
| 572 | 10/19/1998 | DX 94 | W. Rouhana E-Mail to N. Kantor, W. Rouhana, G. Holmes, C. Dickson RE: Updated Materials |
| 573 | 10/21/1998 | DX 95 | Minutes of a Special Meeting of the Board of Directors of Winstar Communications, Inc. |
| 574 | 4/22/2000 | DX 96 | Credit Agreement |
| 575 | 10/22/1998 | DX 97 | C. Holmes Transcript to D. Briggs re: Daniel Briggs |
| 576 | 11/17/1998 | DX 98 | C. Dickson e-mail to N. Kantor; B. Rouhana; T. Graham re: Lucent Conference Call-November 16, 1998 |

28

# EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 577 | 11/20/1998 | DX 99 | R. Haffar E-Mail to C. Bohlin RE: Network Engineering/Traffic Engineering Transition Plan |
|---|---|---|---|
| 578 | 11/24/1998 | DX 100 | notice for request for borrowing (Draw Request) |
| 579 | 12/3/1998 | DX 101 | J. Dwyer E-Mail to C. Dickson RE: Lucent Accounting Treatment |
| 580 | 12/3/1998 | DX 102 | D. Ackerman E-Mail to R. Haffar, C. Dickson, T. Graham, F. Rubin, J. Dwyer, R. Schorr, N. Kantor, T. Voreas, S. Whitney RE: Lucent Discussion |
| 581 | 12/5/1998 | DX 103 | W. Rouhana e-mail to N. Kantor re: Lucent |
| 582 | 12/14/1998 | DX 104 | R. Haffar e-mail to C. Bohlin re: lucent architecture teams |
| 583 | 12/14/1998 | DX 105 | Transition Plan for Lucent Resource Integration |
| 584 | 12/21/1998 | DX 106 | DELETED |
| 585 | 12/23/1998 | DX 107 | notice of request for borrowing (Draw Request) |
| 586 | 12/23/1998 | DX 108 | Staff Meeting Notes and Presentation |
| 587 | 12/24/1998 | DX 109 | A. Zendle E-Mail  to R. Lewine, J. Gregg RE: Lucent Transition Planning |
| 588 | 12/24/1998 | DX 110 | A. Zendle E-Mail with Attachment to R. Lewine, J. Gregg RE: Lucent Transition Planning |
| 589 | 12/29/1998 | DX 111 | N. Aversano e-mail to N. Kantor re: Winstar/Lucent Opportunity Assessment. |
| 590 | 12/23/1998 | DX 112 | notice of request for borrowing (Draw Request) |
| 591 | 12/31/1998 | DX 113 | R. Lewine e-mail to azendle@winstar com re: transition plan for Lucent resource integration |
| 592 | 12/31/1998 | DX 114 | R. Lewine e-mail to J. Burton forwarding Transition Plan for Lucent Resource Integration |
| 593 | 12/31/1998 | DX 115 | Transition Plan for Lucent Resource Integration |
| 594 | 12/31/1998 | DX 116 | Winstar Form 10-K |
| 595 | 1/4/1999 | DX 117 | M. Wilson letter to R. Haffar re: Agreement for network build-out services |
| 596 | 1/4/1999 | DX 118 | M. Wilson Letter to R. Haffar RE: additional services to WinStar |
| 597 | 1/4/1999 | DX 119 | azendle@winstar com e-mail to rhaffar@mail winstar com re: transition plan for lucent resource integration. |
| 598 | 1/5/1999 | DX 120 | DELETED |
| 599 | 1/14/1999 | DX 121 | B. Lewine e-mail to A Zendle re: transition plan for Lucent resource integration |
| 600 | 1/19/1999 | DX 122 | Partnership to build winstar's 1999 network (Presentation) |
| 601 | 1/20/1999 | DX 123 | R. Haffar E-Mail to A. Zendle RE: Lucent Transition Plan |
| 602 | 1/27/1999 | DX 124 | Partnering to Build Winstar's 1999 Network - Follow-up Discussion - Winstar Network Services - January 27, 1999 |
| 603 | 1/28/1999 | DX 125 | J. Dwyer E-Mail to B. Rouhana, N. Kantor, C. Dickson RE: Lucent Accounting - Good News! |
| 604 | 2/2/1999 | DX 126 | Proposed Winstar Architecture - Content Breakdown of 1999 Build Budget |
| 605 | 2/19/1999 | DX 127 | Notice of Request for Borrowing (Draw Request) |
| 606 | 3/1/1999 | DX 128 | C. Bohlin E-Mail to K. Earle, J. Dwyer RE: Lucent 4Q98 Teleconference |
| 607 | 3/2/1999 | DX 129 | Proposed Winstar Architecture- Content Breakdown of 1999 Build Budget (spread sheet) |
| 608 | 3/5/1999 | DX 130 | C. Naylor E-Mail to L. Rogers RE: WinStar documents |
| 609 | 3/9/1999 | DX 131 | R. Haffar E-Mail to N. Kantor RE: Update Re Your meeting with Nina |
| 610 | 3/9/1999 | DX 132 | ATM Pricing and Discount Terms for WinStar Communications, Inc. |
| 611 | 3/22/1999 | DX 133 | Notice of Request for Borrowing (Draw Request) |
| 612 | 3/23/1999 | DX 134 | R. Haffar E-mail to F. Rubin, J. Dwyer, R. Schorr RE: Update on Financing issues |
| 613 | 3/25/1999 | DX 135 | B. McGuire E-Mail to N. Kantor RE: project 100 status |
| 614 | 3/26/1999 | DX 136 | R. Haffar E-mail to F. Rubin RE: WinStar Pass Throughs-1st Draft |
| 615 | 3/26/1999 | DX 137 | P. Hayes e-mail to C. Naylor re: Winstar |
| 616 | 3/27/1999 | DX 138 | R. Haffar E-Mail to N. Kantor RE: Lucent Update, No Action Necessary |
| 617 | 3/29/1999 | DX 139 | R. Haffar Letter to M. Wilson RE: products and services |
| 618 | 3/29/1999 | DX 140 | R. Haffar Letter to M. Wilson RE: Supply Agreement |
| 619 | 3/29/1999 | DX 141 | R. Haffar e-mail to L. Hicks re: Lucent issues. |
| 620 | 3/30/1999 | DX 142 | M. Wilson letter to R. Haffar re: supply Agreement |

29

**EXHIBIT A**

**APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
BE INCLUDED IN THE RECORD ON APPEAL**

| 621 | 3/31/1999 | DX 143 | M. Wilson letter to R. Haffar re: Agreement for network build-out |
| 622 | 3/31/1999 | DX 144 | D. Ackerman e-mail to J. Everding re: Lucent PO |
| 623 | 3/31/1999 | DX 145 | addendum to the supply Agreement between winstar and lucent |
| 624 | 3/31/1999 | DX 146 | M. Wilson e-mail to R. Haffar re: Agreement for Network Build-out |
| 625 | 4/1/1999 | DX 147 | R. Haffar E-Mail to N. Kantor, N. Aversano, W. Plunkett RE: Thanks |
| 626 | 4/5/1999 | DX 148 | C. Dickson E-Mail to F. Rubin RE: Lucent PO |
| 627 | 4/9/1999 | DX 149 | C. Dickson E-Mail to N. Kantor RE: LU Financing Issues with New PO |
| 628 | 4/29/1999 | DX 150 | notice of request for borrowing (Draw Request) |
| 629 | 5/11/1999 | DX 151 | Winstar Credit Agreement |
| 630 | 6/1/1999 | DX 152 | amendment to the supply Agreement by and between winstar communications and lucent |
| 631 | 4/29/1999 | DX 153 | notice of request for borrowing (Draw Request) |
| 632 | 6/4/1999 | DX 154 | J. Dwyer E-mail to R. Haffar RE: Lucent Subcontracting Notice |
| 633 | 6/8/1999 | DX 155 | L. Rogers E-mail to F. Rubin RE: Escalation to Nina re WinStar Services Pass-Through |
| 634 | 6/21/1999 | DX 156 | F. Rubin e-mail to D. Nidowicz re: Lucent payments. |
| 635 | 6/24/1999 | DX 157 | J. Davidson E-Mail to J. Diroma RE: Winstar Services |
| 636 | 6/25/1999 | DX 158 | W. Carapezzi e-mail to L. Rogers re Winstar Update/Rouhana-McGinni Telephone Call |
| 637 | 6/28/1999 | DX 159 | DELETED |
| 638 | 6/23/1999 | DX 160 | notice of request for borrowing (Draw Request) |
| 639 | 6/29/1999 | DX 161 | notice of request for borrowing (Draw Request) |
| 640 | 7/7/1999 | DX 162 | R. Haffar E-Mail to N. Kantor RE: Follow-Up to Saturday's call |
| 641 | 7/14/1999 | DX 163 | N. Kantor e-mail to cdickson@winstar com; F. Rubin; J. Dwyer re: responses to your request. |
| 642 | 7/26/1999 | DX 164 | Summary of Lucent Meeting |
| 643 | 7/27/1999 | DX 165 | Organizing for Success: Executive Review |
| 644 | 8/3/1999 | DX 166 | Winstar/Lucent turn-key process meeting |
| 645 | 7/22/1999 | DX 167 | Notice of Request for Borrowing (Draw Request) |
| 646 | 8/5/1999 | DX 168 | M. Wilson e-mail to jdwyer@winstar com; frubin@winstar.com etc re: Turnkey order approach. |
| 647 | 8/23/1997 | DX 169 | H. Shartel E-mail to C. Dickson RE: Lucent/B-Site Cab's |
| 648 | 8/24/1999 | DX 170 | K. Castellon e-mail to T. O'Hara re: turnkey business model |
| 649 | 8/24/1999 | DX 171 | Notice of Request for Borrowing (Draw Request) |
| 650 | 9/8/1999 | DX 172 | J. Kim E-Mail to Winstar Employees RE: Executive Memo WNS Organization |
| 651 | 9/14/1999 | DX 173 | D. Ackerman e-mail to N. Kantor re: apologies |
| 652 | 9/18/1999 | DX 174 | B. Zlotnick e-mail to D. Ackerman re: critical path items - require immediate action |
| 653 | 9/21/1999 | DX 175 | Statement and Invoice totalling $37,075,925. |
| 654 | 9/22/1999 | DX 176 | B. Zlotnick E-Mail to N. Kantor RE: Williams 9/30 Date |
| 655 | 9/22/1999 | DX 177 | Notice of Request for Borrowing (Draw Request) |
| 656 | 9/24/1999 | DX 178 | S. Lidd e-mail to J. Dwyer re: Lucent and Williams flow. |
| 657 | 9/26/1999 | DX 179 | J. Dwyer E-Mail to S. Lidd, J. Dwyer, M. Viscio RE: Lucent and Williams flow |
| 658 | 9/29/1999 | DX 180 | L. Rogers E-mail to F. Rubin RE: Availability under Lucent commitment |
| 659 | 8/24/1999 | DX 181 | Notice of Request for Borrowing (Draw Request) |
| 660 | 10/12/1999 | DX 182 | D. Ackerman E-Mail to D. Huber RE: Winstar NMS Hardware Platform Quotes |
| 661 | 11/3/1999 | DX 183 | D. Ackerman E-Mail to A. Zendie RE: more thoughts about cisco |
| 662 | 11/16/1999 | DX 184 | D. Christian E-Mail to S. Lidd, F. Rubin RE: wire status |
| 663 | 11/19/1999 | DX 185 | C. Naylor Letter to D. Ackerman RE: turnkey deliverables |
| 664 | 11/22/1999 | DX 186 | N. Kantor E-mail to F. Rubin RE: LU Assistance |
| 665 | 11/22/1999 | DX 187 | D. Digirolomo e-mail to F. Manzi re: winstar yr. 2000 spend meeting |
| 666 | 11/23/1999 | DX 188 | Notice of Request for Borrowing (Draw Request) |
| 667 | 11/30/1999 | DX 189 | Notice of Request for Borrowing (Draw Request) |

RLF1-2986514-1

# EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 668 | 11/30/1999 | DX 190 | M. Dowdy e-mail to M. Epstein; T. O'Hara; K. Black re: transition plan for lucent resource integration |
|-----|-----------|--------|--------------------------------------------------|
| 669 | 12/6/1999 | DX 191 | C. Czerner e-mail to D. Ackerman re: Willams Discussions |
| 670 | 12/3/1999 | DX 192 | Notice of Request for Borrowing (Draw Request) |
| 671 | 12/7/1999 | DX 193 | C. Naylor e-mail to M. Hill, T. Crocco, B. Zlotnick, D. Huber, et al. re: Turnkey meeting on 12/09/99. |
| 672 | 12/13/1999 | DX 194 | Amendment No. 7 to the Credit Agreement |
| 673 | 12/14/1999 | DX 195 | B. Genner e-mail to L. Hicks re: Turnkey update w/o 12/06/99. |
| 674 | 12/15/1999 | DX 196 | E-mail message re: Executive Memo and Press Release - Winstar Enters into $900 Million Investment Agreement with Microsoft and Leading Investment Firms, Microsoft and Winstar Announce Agreement to Deliver Broadband Applications. |
| 675 | 12/15/1999 | DX 197 | E-mail message re: Press Release - Winstar enters into $900 Million Investment Agreement with Microsoft and Leading Investment Firms. |
| 676 | 12/17/1999 | DX 198 | L. Hicks e-mail to V. Petrini re: 4Q 99 request |
| 677 | 12/17/1999 | DX 199 | S. Howard e-mail to E. Baggerly re: 3rd party orders-Lucent |
| 678 | 12/17/1999 | DX 200 | D. Ackerman e-mail to M. Wilson re: phone system for ICI will not be deployed by Lucent |
| 679 | 12/17/1999 | DX 201 | M. Wilson e-mail to D. Ackerman re: phone system for ICI will not be deployed by Lucent |
| 680 | 12/25/1999 | DX 202 | N. Kantor e-mail to N. Aversano re: incremental order |
| 681 | 12/27/1999 | DX 203 | Notice of Request for Borrowing (Draw Request) |
| 682 | 12/27/1999 | DX 204 | Notice of Request for Borrowing (Draw Request) |
| 683 | 12/27/1999 | DX 205 | Notice of Request for Borrowing (Draw Request) |
| 684 | 12/29/1999 | DX 206 | J. Marnell E-Mail to T. O'Hara RE: Agreement Required to support the Winstar Proposal |
| 685 | 12/29/1999 | DX 207 | D. Ackerman E-Mail to R. Uhl RE: Credit |
| 686 | 12/29/1999 | DX 208 | J. Dwyer E-mail to M. Wilson, J. Dwyer, D. Ackerman |
| 687 | 12/30/1999 | DX 209 | A. Zendle Letter to C. Naylor RE: shipment of Optical networking equipment |
| 688 | 12/30/1999 | DX 210 | M. Wilson letter to D. Ackerman re: Network costs |
| 689 | 12/31/1999 | DX 211 | Winstar Form 10-K |
| 690 | 1/4/2000 | DX 212 | A. Carrone e-mail to M. Lester; A. Jerden; R. Lepore etc. re: winstar |
| 691 | 1/6/2000 | DX 213 | Lucent Technologies comments on expectations for first fiscal quarter 2000 earnings |
| 692 | 1/18/2000 | DX 214 | C. Naylor E-Mail to M. Wilson, M. Epstein, M. Dowdy, J. Quinn, A. Jerden, A. Carrone, J. Diroma RE: Winstar Services |
| 693 | 1/18/2000 | DX 215 | J. Diroma e-mail to C. Naylor; M. Wilson; M. Epstien etc.. re: winstar service |
| 694 | 1/21/2000 | DX 216 | J. Diroma e-mail to M. Deady re: Winstar Budget |
| 695 | 1/24/2000 | DX 217 | Notice of Request for Borrowing (Draw Request) |
| 696 | 1/24/2000 | DX 218 | J. Gregg e-mail to J. Gregg; R. Kipke and B. Zlotnick re: problems with LH milestones PDF file |
| 697 | 1/26/2001 | DX 219 | Notice of Request for Borrowing (Draw Request) |
| 698 | 2/6/2000 | DX 220 | J. Noda E-Mail to S. Cassady, F. Manzi RE: WinStar 4Q99 Funds Transfer PO |
| 699 | 2/7/2000 | DX 221 | J. Cocito E-Mail to F. Manzi RE: Winstar Services Deal |
| 700 | 2/8/2000 | DX 222 | D. Ackerman E-mail to A. Zendie RE: Lucent |
| 701 | 2/9/2000 | DX 223 | J. Diroma E-Mail to M. Wilson, M. Epstein, M. Dowdy, J. Quinn, A. Jerden, A. Carrone, C. Naylor RE: Winstar Services |
| 702 | 2/11/2000 | DX 224 | S. Colross e-mail to L. Rogers and W. Quinn re: winstar and my career limiting move |
| 703 | 2/14/2000 | DX 225 | C. Naylor e-mail to J. Diroma, J. Cocito and D. Rigotti re: update 2FW winstar services |
| 704 | 2/17/2000 | DX 226 | J. Dwyer e-mail to R. Uhl and F. Rubin re: lucent |
| 705 | 12/1/1998 | DX 227 | First amendment to the supply Agreement by and between winstar communications and lucent |

31

**EXHIBIT A**

**APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
BE INCLUDED IN THE RECORD ON APPEAL**

| 706 | 3/1/2000 | DX 228 | DELETED |
|---|---|---|---|
| 707 | 2/28/2000 | DX 229 | DELETED |
| 708 | 2/22/2000 | DX 230 | Notice of Request for Borrowing (Draw Request) |
| 709 | 3/2/2000 | DX 231 | V. Campbell E-mail to L. Hicks RE: Meeting 3/6, 3PM-4PM, re End-of-Qtr Reciprocal Deal |
| 710 | 3/2/2000 | DX 232 | B. Zlotinichk e-mail to D. Ackerman re: Williams fiber |
| 711 | 3/3/2000 | DX 233 | J. Bryce e-mail to A. Zendle re: history made at today at Winstar. |
| 712 | 3/8/2000 | DX 234 | A. Zendle e-mail to L. Hicks re: D. Ackerman's 03/07/00 meeting with Lucent. |
| 713 | | | INTENTIONALLY LEFT BLANK |
| 714 | 3/8/2000 | DX 235 | A. Zendie E-Mail to L. Hicks RE: Lucent |
| 715 | 3/9/2000 | DX 236 | F. Rubin Fax to M. Keefe RE: Latest Lucent term sheet draft of 3/7/00 |
| 716 | 3/9/2000 | DX 237 | J. Dwyer E-Mail to N. Kantor RE: Lucent Subcontracting |
| 717 | 3/10/2000 | DX 238 | J. Dwyer E-Mail to G. Simpson re: Lucent PO |
| 718 | 3/13/2000 | DX 239 | D. Nidowicz E-Mail to D. Christian RE: Winstar Services |
| 719 | 3/13/2000 | DX 240 | B. Pakenham E-Mail to D. Chrisitan RE: Winstar |
| 720 | 3/14/2000 | DX 241 | R. Uhl e-mail to F. Rubin re: Lucent Term Sheet Update. |
| 721 | 3/15/2000 | DX 242 | G. Simpson e-mail to J. Dwyer re: Q1 2000 Lucent PO Estimate. |
| 722 | 3/17/2000 | DX 243 | D. Danielsen e-mail to L. Hicks re: DWDM Maintenance Routes. |
| 723 | 3/20/2000 | DX 244 | J. Lusk Letter to F. Rubin RE: Vendor Financing Commitment |
| 724 | 3/20/2000 | DX 245 | B. Mcguire e-mail to J. Dwyer re: sale of license right to use. |
| 725 | 3/21/2000 | DX 246 | B. Zlotnick Letter to A. Zendie RE: FOR YOUR DECISION |
| 726 | 3/22/2000 | DX 247 | D. Ackerman E-mail to A. Zendie |
| 727 | 3/22/2000 | DX 248 | D. Ackerman e-mail to N. Kantor re: Meeting with Mark Wilson. |
| 728 | 3/24/2000 | DX 249 | N. Aversano e-mail to N. Kantor re: Agreements |
| 729 | 3/28/2000 | DX 250 | Purchase Order |
| 730 | 3/28/2000 | DX 251 | D. Ackerman E-Mail to A. Zendle RE: Additional Services Addendum |
| 731 | 3/28/2000 | DX 252 | M. Wilson E-Mail to D. Ackerman RE: Follow up to yesterday's discussion |
| 732 | 3/28/2000 | DX 253 | S. Dodd e-mail to L. Hicks re: ASM quote. |
| 733 | 3/29/2000 | DX 254 | R. Bambach E-Mail to S. Lidd RE: wamlnet warehouse |
| 734 | 3/29/2000 | DX 255 | M. Wilson Letter to D. Ackerman RE: timeline |
| 735 | 3/29/2000 | DX 256 | M. Keefe e-mail to K. Zinghini re: requested waivers |
| 736 | 3/29/2000 | DX 257 | D. Ackerman email to C. Naylor re Features Deliverables - Penalties |
| 737 | 3/30/2000 | DX 258 | J. Dwyer E-Mail to M. Wilson RE: Credit |
| 738 | 3/30/2000 | DX 259 | L. Grayson E-mail to A. Zendie RE: Updated Contractual Documentation |
| 739 | 3/30/2000 | DX 260 | F. Manzi e-mail to M. Wilson re: resale of winstar asset purchase. |
| 740 | 3/31/2000 | DX 261 | M. Wilson Fax to D. Ackerman RE: additional $3,000,000 in network costs |
| 741 | 3/27/2000 | DX 262 | Notice of Request for Borrowing (Draw Request) |
| 742 | 3/29/2000 | DX 263 | Notice of Request for Borrowing (Draw Request) |
| 743 | 3/31/2000 | DX 264 | C. Naylor E-mail to J. Vickers, K. Richardson RE: Winstar Credit Letter |
| 744 | 3/31/2000 | DX 265 | A. Zendle Letter to C. Naylor RE: Optical Network delivery |
| 745 | 3/31/2000 | DX 266 | C. Naylor E-Mail to L. Hicks RE: incremental costs for lack of end-to-end provisioning |
| 746 | 3/31/2000 | DX 267 | A. Fulton e-mail to C Levasseur, R. Conway, F. Robeson, C Williams, et al re: 2Q00 upgrade revenue from Winstar. |
| 747 | 3/31/2000 | DX 268 | M. Wilson letter to D. Ackerman re: networks costs |
| 748 | 3/31/2000 | DX 269 | L. Zapico e-mail to J Diroma re: approvals needed on another POA for a second winstar funds transfer for this 1000. |
| 749 | 3/31/2000 | DX 270 | Winstar Form 10-Q |
| 750 | 4/3/2000 | DX 271 | R. Lewine E-Mail to B. Zlotnick RE: George's Reply |
| 751 | 4/5/2000 | DX 272 | E-Mail with Attachment to N. Holcomb RE: Siemens Accelerated Proposal |
| 752 | 4/6/2000 | DX 273 | W. Fullerton e-mail to J. Diroma re: resale of winstar asset purchase |
| 753 | 4/6/2000 | DX 274 | J Quinn e-mail to J. Diroma re: rationale for lucent/winstar quarterly funds transfers for network buildout services |
| 754 | 4/11/2000 | DX 275 | D. Ackerman e-mail to A. Zendle re: Siemens Accelerated Proposal |

RLF1-2986514-1

EXHIBIT A

APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
BE INCLUDED IN THE RECORD ON APPEAL

| 755 | 4/14/2000 | DX 276 | F. Rubin E-mail to K. Zinghini, D. Nidowicz RE: Lucent |
|---|---|---|---|
| 756 | 3/29/2000 | DX 277 | Notice of Request for Borrowing (Draw Request) |
| 757 | 4/27/2000 | DX 278 | S. Colross e-mail to J. Cocito re: winstar |
| 758 | 4/27/2000 | DX 279 | Audix Message from J. Cocito to N. Aversano re: financing stumbling block. |
| 759 | 5/2/2000 | DX 280 | L. Hicks E-Mail to F. Rubin RE: Siemens meeting/questions |
| 760 | 5/2/2000 | DX 281 | K. Monaco E-Mail to S. Colross |
| 761 | 5/2/2000 | DX 282 | B. Perricone and J. Kersten memo to P. Sperling, J. Orlando and B. Viqueira re: Winstar Communication |
| 762 | 5/2/2000 | DX 283 | Winstar Outstanding New Facility WVF-1 |
| 763 | 5/4/2000 | DX 284 | revolving credit and term loan Agreement |
| 764 | 5/4/2000 | DX 285 | Winstar-WVF-1 |
| 765 | 5/9/2000 | DX 286 | F. Rubin letter to E. Perricone re: thank you note for help on transaction. |
| 766 | 5/12/2000 | DX 287 | L. Grayson E-mail to A. Zendie RE: Siemens Update |
| 767 | 5/15/2000 | DX 288 | N. Kantor e-mail to D. Ackerman RE: Siemens |
| 768 | 5/15/2000 | DX 289 | B. Rouhana and N. Kantor e-mail to Winstar Employees RE: Executive Memo Winstar Completes Strategic Refinancing |
| 769 | 5/16/2000 | DX 290 | K. Monaco E-mail to R. Uhl RE: Cisco & Siemens - Financing Update |
| 770 | 5/17/2000 | DX 291 | M. Burke letter to N. Aversano re: Friday gap closure call |
| 771 | 5/17/2000 | DX 292 | L. Rogers e-mail to S. Colross re: Winstar Financing Facility. |
| 772 | 5/18/2000 | DX 293 | K. Monaco e-mail to S. Kasera RE: Side Letter Agreement to our Supply Agreement |
| 773 | 5/22/2000 | DX 294 | S. Kasera E-mail to F. Boyer RE: Financing Structure |
| 774 | 5/23/2000 | DX 295 | L. Rogers e-mail to V. Petrini, D. Forrester, M. Epstein, T. O'Hara, et al. re: Winstar Financing - Update. |
| 775 | 5/23/2000 | DX 296 | Perfection Certificate |
| 776 | 5/24/2000 | DX 297 | M. Deady e-mail to J. Diroma re Winstar Financing update. |
| 777 | 5/30/2000 | DX 298 | D. Ackerman E-Mail to R. Uhl, N. Kantor RE: Operational Strategy |
| 778 | 6/1/2000 | DX 299 | L. Rogers e-mail to D. Hopkins attaching 05/31/00 Winstar briefing memorandum. |
| 779 | 6/1/2000 | DX 300 | A. Alfred e-mail to L. Rogers and E. Perricone re: Winstar Summary.xls |
| 780 | 6/12/2000 | DX 301 | D. Danielson e-mail to L. Hicks re: heads-up EOQ items |
| 781 | 6/13/2000 | DX 302 | E. Perricone E-mail to L. Rogers, W. Viqueira, J. Cocito RE: WFV I LLC-First Draw Down Request |
| 782 | 6/14/2000 | DX 303 | K. Monaco E-Mail to F. Rubin RE: LU Update |
| 783 | 6/14/2000 | DX 304 | D. Ackerman e-mail to L. Hicks re: Turnkey Hub/B Cost Reduction. |
| 784 | 6/14/2000 | DX 305 | J. Dwyer E-Mail to F. Rubin RE: Checks |
| 785 | 6/17/2000 | DX 306 | R. Lewine e-mail to D. Rigotti; W. Plunkett; V. Petrini ect. Re: winstar hubs and bs pricing with some clarifications |
| 786 | 6/19/2000 | DX 307 | K. Castelion e-mail to M. Wilson; K. O'Grady; W. Plunkett; F. Manzi re: Remember the IRU's |
| 787 | 6/22/2000 | DX 308 | L. Hicks e-mail to B. Genner; G. Thomas re: jeopardy on stingers for converged access network |
| 788 | 6/23/2000 | DX 309 | Notice of Request for Borrowing (Draw Request) |
| 789 | 6/23/2000 | DX 310 | F. Rubin e-mail to E. Perricone, L. Rogers and S. Colross re: Sale of Lucent's Winstar Paper. |
| 790 | 6/23/2000 | DX 311 | D. Ackerman e-mail to N. Kantor re: Lucent money |
| 791 | 6/23/2000 | DX 312 | C. Naylor e-mail to D. Harris re: b-site pricing for winstar |
| 792 | 6/23/2000 | DX 313 | parks - Lucent e-mail to W. Plunkett re: A-1 winstar EOQ deal |
| 793 | 6/23/2000 | DX 314 | C. Naylor e-mail to W. Plunkett and R. Helfrich re: A-1 Winstar EOQ Deal. |
| 794 | 6/23/2000 | DX 315 | D. Danielsen e-mail to L. Hicks re: SNC/SNMS Exper User/Operations Services SOW |
| 795 | 6/23/2000 | DX 316 | N. Kantor e-mail to D. Ackerman re: VoDSL Media Report |
| 796 | 6/26/2000 | DX 317 | D. Ackerman e-mail to N. Kantor re: end of quarter deals with lucent and winstar |

33

**EXHIBIT A**

**APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
BE INCLUDED IN THE RECORD ON APPEAL**

| 797 | 6/26/2000 | DX 318 | T. Feil e-mail to V. Heron, N. Aversano, et al. re: Material lists to support ONG end of quarter deal for Winstar. |
|-----|-----------|--------|---|
| 798 | 6/26/2000 | DX 319 | G. Hogue e-mail to L. Hicks re: SNC/SNMS Exper User/Operations Services SOW |
| 799 | 6/26/2000 | DX 320 | Winstar Form S-3 |
| 800 | 6/27/2000 | DX 321 | F. Rubin E-Mail to J. Dwyer, R. Uhl RE: Lucent Services PO |
| 801 | 6/28/2000 | DX 322 | M. Wilson Letter to D. Ackerman RE: additional $14,000,000 in network operating costs |
| 802 | 6/28/2000 | DX 323 | F. Rubin e-mail to R. Uhl re: Lucent EOQ PO's. |
| 803 | 6/28/2000 | DX 324 | L. Hicks e-mail to D. Ackerman re: EOQ Deals |
| 804 | 6/30/2000 | DX 325 | Winstar Form 10-Q |
| 805 | 6/30/2000 | DX 326 | B. Plunkett Letter to D. Ackerman RE: 14,000,000 credit |
| 806 | 10/28/1998 | DX 327 | supplemental software Agreement between winstar and lucent |
| 807 | 6/29/2000 | DX 328 | T. Feil e-mail to L. Hicks re: Product changes to Morrow inventory of wavestar 400G equipment |
| 808 | 6/30/2000 | DX 329 | B. Plunkett letter to D. Ackerman re: Lucent provision of $14,000,000 credit to Winstar. |
| 809 | 6/30/2000 | DX 330 | J. Dwyer e-mail to R. Uhl and F. Rubin re: PO for Lucent services. |
| 810 | 6/30/2000 | DX 331 | D. Rigotti e-mail to S. Linnell re: Revised 2Q00 deal. |
| 811 | 6/30/2000 | DX 332 | D. Ackerman e-mail to L. Hicks re: software pool Agreement |
| 812 | 6/30/2000 | DX 333 | V. Petrini E-mail to A. Fulton, W. Plunkett, W. Montgomery, etc RE: SOFTWARE POOL Agreement |
| 813 | 6/30/2000 | DX 334 | L. Hicks Letter to V. Petrini re: optical networking equipment |
| 814 | 6/30/2000 | DX 335 | R. Uhl E-Mail to F. Rubin RE: Lucent EOQ PO's |
| 815 | 7/4/2000 | DX 336 | N. Kantor e-mail to D. Ackerman re: winstar-cisco executive meeting update. |
| 816 | 6/30/2000 | DX 337 | B. Plunkett Letter to D. Ackerman RE: additional $14,000,000 in network operating costs |
| 817 | 7/5/2000 | DX 338 | D. Rigotti E-Mail to C. Naylor, D. Harris, W. Plunkett, W. Montgomery RE: Hyb & B Pricing |
| 818 | 7/6/2000 | DX 339 | K. Chawla e-mail to R. Uhl re: Siemens due diligence |
| 819 | 7/6/2000 | DX 340 | K. Monaco e-mail to S. Kasera re: Asset valuation data for Winstar |
| 820 | 7/6/2000 | DX 341 | K. Monaco E-mail to F. Rubin RE: Siemens due diligence |
| 821 | 7/7/2000 | DX 342 | T. Shevock e-mail to L. Person; Y. Wilder; B. Seay ect. Re: vender releations |
| 822 | 7/9/2000 | DX 343 | R. Lewine E-Mail to W. Plunkett, C. Naylor, D. Harris, B. Genner, etc. RE: URGENT B-Site Pricing |
| 823 | 7/24/2000 | DX 344 | F. Rubin E-Mail to H. Shartel RE: Budget Issues |
| 824 | 7/24/2000 | DX 345 | B. Weissenberger e-mail to L. Hicks, K. Dean, et al. re: A&E pricing. |
| 825 | 7/24/2000 | DX 346 | J. Diroma e-mail to J. Cocito, C. Naylor, E. Perricone, L. Rogers, et al. re: Winstar Services. |
| 826 | 7/24/2000 | DX 347 | Notice of Request for Borrowing (Draw Request) |
| 827 | 7/28/2000 | DX 348 | W. Plunkett E-Mail to J. Diroma RE: Private, Important |
| 828 | 7/31/2000 | DX 349 | Winstar and Oracle Enter Into Strategic Partnership |
| 829 | 7/31/2000 | DX 350 | V. Petrini E-mail to D. Huber, T. Shevock, B. Zlotnick, D. Rigotti RE: data center equipment |
| 830 | 8/2/2000 | DX 351 | J. Stephens e-mail to Winstar re: Executive Memo and Press Release Winstar Results Up Sharply |
| 831 | 8/4/2000 | DX 352 | Winstar Form S-4 |
| 832 | 8/7/2000 | DX 353 | L. Hicks e-mail to B. Zlotnick re weekly lucent converged archiectire review meeting |
| 833 | 8/15/2000 | DX 354 | D. Huber e-mail to D. Ackerman; L. Hicks etc re: product changes to the ASM inventory |
| 834 | 8/17/2000 | DX 355 | G. Garrett e-mail to N. Aversano, W. Plunkett, L. Fawcett, N. De Tura and D. Harris re: Winstar LH Jeopardy. |
| 835 | 8/21/2000 | DX 356 | G. Simpson e-mail to R. Bambach re Nate's meeting with Lucent |

34

**EXHIBIT A**

**APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
BE INCLUDED IN THE RECORD ON APPEAL**

| 836 | 8/18/2000 | DX 357 | F. Rubin e-mail to R. Uhl re: Siemens Status |
|---|---|---|---|
| 837 | 8/18/2000 | DX 358 | Winstar Major Projects/Issues Status. |
| 838 | 8/21/2000 | DX 359 | Winstar Strategy Development and Action Planning (SDAP) Workshop |
| 839 | 8/24/2000 | DX 360 | Notice of Request for Borrowing (Draw Request) |
| 840 | 8/28/2000 | DX 361 | V. Petrini e-mail to K. Richardson re: action item |
| 841 | 8/29/2000 | DX 362 | R. Helfrich E-mail to K. Hoggard, V. Petrini, J. Harris, etc. RE: Anixter 400G inventory |
| 842 | 8/29/2000 | DX 363 | D. Ackerman E-Mail to R. Uhl RE: ONG and Hubs and B's addenda and SoWs |
| 843 | 8/29/2000 | DX 364 | W. Fullerton e-mail to J. Diroma re: Resale of Winstar Asset Purchase. |
| 844 | 8/28/2000 | DX 365 | Winstar Form S-3 |
| 845 | 8/30/2000 | DX 366 | L. Hicks E-Mail to D. Ackerman RE: Lucent Strategy |
| 846 | 8/31/2000 | DX 367 | B. Zlotnick e-mail to D. Ackerman re: WLA revenue for 3Q |
| 847 | 9/1/2000 | DX 368 | D. Hopkins e-mail to W. Viquiera and K. DaSilva re: much to do |
| 848 | 9/1/2000 | DX 369 | S. Kasera E-mail to F. Rubin, K. Monaco RE: Financing Structure |
| 849 | 9/1/2000 | DX 370 | D. Harris E-Mail to L. Rogers RE: Winstar Update |
| 850 | 9/3/2000 | DX 371 | V. Petrini e-mail to L. Titteringotn re: action item |
| 851 | 9/4/2000 | DX 372 | D. Hopkins E-Mail to L. Rogers, M. Carroll, P. Derrick, N. Aversano RE: Winstar Update |
| 852 | 9/5/2000 | DX 373 | L. Rogers Memo to P. Derrick RE: WinStar Briefing Memo |
| 853 | 9/6/2000 | DX 374 | J. Cocito Letter to N. Aversano RE: security investigation |
| 854 | 9/6/2000 | DX 375 | L. Rogers e-mail to D. Hopkins, W. Viquiera, N. Aversano and P. Derrick re: Winstar Chronology. |
| 855 | 9/11/2000 | DX 376 | V. Heron E-mail to J. Cocito, D. Harris, W. Plunkett, B. Montgomery, R. Mark RE: Winstar chronology-update |
| 856 | 9/12/2000 | DX 377 | Minutes of a Meeting of the Board of Directors of Winstar Communications, Inc. |
| 857 | 9/13/2000 | DX 378 | A. Masullo e-mail to W. Plunkett; D. Harris; M. Epstien etc. re: Winstar Service Call |
| 858 | 9/14/2000 | DX 379 | S. Kasera E-mail to F. Rubin, K. Monaco RE: Indicative Term Sheet |
| 859 | 9/14/2000 | DX 380 | J. Newsom E-Mail to D. Harris, V. Petrini RE: EOQ Deal Summary |
| 860 | 9/14/2000 | DX 381 | Lucent/Winstar End of Quarter Deals Fiscal Year 2000 |
| 861 | 9/15/2000 | DX 382 | D. Rigotti E-Mail to G. Garrett RE: Winstar Services Position |
| 862 | 9/17/2000 | DX 383 | D. Huber E-Mail to D. Ackerman RE: Siemens |
| 863 | 9/17/2000 | DX 384 | G. Petitt e-mail to B. Genner and D. Parks re: Lucent Approach to Advanced IP Services Support. |
| 864 | 9/17/2000 | DX 385 | K. O'Grady e-mail to V. Petrini, D. Harris, L. Titterington, et al. re: EOQ Latest after Sunday evening call. |
| 865 | 9/18/2000 | DX 386 | F. Jules e-mail to N. Marino re: ATG |
| 866 | 9/18/2000 | DX 387 | F. Jules e-mail to N. Kantor re: Florida Long Haul |
| 867 | 9/19/2000 | DX 388 | M. Kerner e-mail to M. McFuinn, J. Diroma, N. Aversano, R. Mark, G. Garrett, F. Mazni, M. Epstein, J. Cocito RE: Materials for Winstar Call Today, 9/19/00 |
| 868 | 9/19/2000 | DX 389 | Winstar/Lucent 2000-2001 partnership deal |
| 869 | 9/22/2000 | DX 390 | D. Harris E-Mail with Attachment to D. Ackerman, R. Uhl RE: Winstar Services Purchase Order |
| 870 | 9/22/2000 | DX 391 | D. Harris e-mail to N. Kantor and F. Jules re: winstar services purchase order |
| 871 | 9/22/2000 | DX 392 | W. Rouhana e-mail to N. Kantor re: groundwork for Cisco and Siemens deals. |
| 872 | 9/22/2000 | DX 393 | A. Alfred E-mail to A. Brooks, A. Derksen, A. Fasciano, A. Jerden, etc RE: Winstar Drawdown 09/29/00 |
| 873 | 9/22/2000 | DX 394 | Notice of Request for Borrowing (Draw Request) |
| 874 | 9/22/2000 | DX 395 | Winstar/Lucent Partnership Deal |
| 875 | 9/22/2000 | DX 396 | D. Harris letter D. Ackerman letter re: supply Agreement |
| 876 | 9/22/2000 | DX 397 | D. Harris letter to D. Ackerman re: supply Agreement |
| 877 | 9/22/2000 | DX 398 | F. Manzi E-Mail to K. O'Grady RE: Update on Radios |
| 878 | 9/24/2000 | DX 399 | N. Kantor E-Mail to N. Aversano RE: Winstar Services Purchase Order |

RLF1-2986514-1

EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 879 | 9/25/2000 | DX 400 | N. Kantor E-Mail to D. Ackerman, F. Jules, R. Uhl RE: Updated Deals List |
|---|---|---|---|
| 880 | 9/25/2000 | DX 401 | D. Rigotti E-mail to D. Harris RE: Winstar Services Clarification |
| 881 | 9/25/2000 | DX 402 | J. Cocito e-mail to F. Manzi re: Winstar Services. |
| 882 | 9/25/2000 | DX 403 | A. Alfred e-mail to V. Petrini re: winstar drawdown |
| 883 | 9/25/2000 | DX 404 | G. Simpson e-mail to F. Rubin re: revised draw #4 |
| 884 | 9/25/2000 | DX 405 | N. Kantor e-mail to D. Ackerman re: Business Deal V2. |
| 885 | 9/25/2000 | DX 406 | A. Dollins e-mail to D. Harris attaching chart re: Winstar Issues/Status/Solutions. |
| 886 | 9/25/2000 | DX 407 | D. Christian E-Mail to J. Diroma RE: June Winstar billing |
| 887 | 9/27/2000 | DX 408 | N. Aversano Letter to N. Kantor and R. Uhl RE: purchase order WVF1-0000002958 |
| 888 | 9/27/2000 | DX 409 | Hubs and B's History -Winstar |
| 889 | 9/28/2000 | DX 410 | winstar/lucent 2000 partnership deal- decision matrix |
| 890 | 9/28/2000 | DX 411 | D. Harris E-Mail to W. Plunkett, B. Montgomery, J. Cocito, V. Heron RE: Lucent Credit |
| 891 | 9/28/2000 | DX 412 | G. Maloney E-Mail to N. Aversano re: Lucent Credit. |
| 892 | 9/29/2000 | DX 413 | D. Harris Letter to D. Ackerman RE: $10,000,000 credit |
| 893 | 9/29/2000 | DX 414 | **DELETED** |
| 894 | 9/29/2000 | DX 415 | **DELETED** |
| 895 | 9/29/2000 | DX 416 | D. Harris letter to D. Ackerman re: operating costs |
| 896 | 9/29/2000 | DX 417 | J. Bullen e-mail to V. petrini; adollins@lucent.com; dharrisbrown@lucent.com ect. Re: winstar/lucent enterprise integration iab |
| 897 | 9/29/2000 | DX 418 | R. Uhl Memo to D. Ackerman, F. Jules, N. Kantor, G. Maloney, F. Rubin, B. Zlotnick RE: Winstar & Lucent |
| 898 | 9/29/2000 | DX 419 | A. Fulton e-mail to J. Bullen re: A-1 S/W Services. |
| 899 | 9/29/2000 | DX 420 | B. Zlotnick letter to V. Petrini re: bill and hold for Lucent optical equipment |
| 900 | 9/29/2000 | DX 421 | Software Pool Agreement between Winstar and Lucent |
| 901 | 9/29/2000 | DX 422 | Press Release - Winstar Communications |
| 902 | 9/29/2000 | DX 423 | **DELETED** |
| 903 | 9/29/2000 | DX 424 | R. Uhl Memo to D. Ackerman, F. Jules, N. Kantor, J. Maloney, F. Rubin, B. Zlotnick RE: Winstar & Lucent |
| 904 | 9/29/2000 | DX 425 | B. Zlotnick Letter to V. Petrini RE: Bill and Hold Letter for Lucent Stinger DSLAMs and cabinets |
| 905 | 9/29/2000 | DX 426 | W. Plunkett e-mail to V. Heron re: Lucent Credit |
| 906 | 9/29/2000 | DX 427 | Software Pool Agreement Between Winstar Communications, Inc. and Lucent Technologies Inc. (Terrell Declaration Exhibit 1) |
| 907 | 9/29/2000 | DX 428 | N. Aversano E-mail to D. Harris, W. Plunkett, B. Montemarano, J. Cocito RE: Lucent Credit |
| 908 | 9/30/2000 | DX 429 | Winstar Form 10-Q (Collins Report document) |
| 909 | 10/20/2000 | DX 430 | 10 Year Equity Model (Collins Report document) |
| 910 | 10/1/2000 | DX 431 | Statement and Invoice |
| 911 | 10/2/2000 | DX 432 | D. Ackerman e-mail to N. Kantor re: winstar contractor services |
| 912 | 10/3/2000 | DX 433 | N. Kantor e-mail to D. Ackerman re: Siemens Order for '00 |
| 913 | 10/4/2000 | DX 434 | V. Petrini e-mail to D. Rigotti re: hub construction cost update |
| 914 | 10/5/2000 | DX 435 | D. Ackerman E-mail to F. Rubin RE: Lucent Contractor Services |
| 915 | 10/5/2000 | DX 436 | W. Fullerton e-mail to D. Harris; J. Diroma; A. Carrone etc. re: Winstar IRU's |
| 916 | 10/6/2000 | DX 437 | K. Dean E-Mail to B. Weissenberger RE: EOQ - No more hub of B-site change orders |
| 917 | 10/6/2000 | DX 438 | W. Plunkett letter to D. Ackerman re: development of the Enterprise Integration Laboratory. |
| 918 | 10/8/2000 | DX 439 | K. Monaco E-Mail to F. Rubin RE: Siemens Head's Up |
| 919 | 10/10/2000 | DX 440 | D. Ackerman e-mail to R. Uhl re: Siemens |
| 920 | 10/11/2000 | DX 441 | K. Chawla E-mail to N. Kantor RE: Winstar/Siemens |
| 921 | 10/14/2000 | DX 442 | D. Huber E-Mail to J. Bullen RE: Lucent Outsourcing Project |

RLF1-2986514-1

## EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 922 | 10/16/2000 | DX 443 | B. Plunkett letter to D. Ackerman re: defer billing |
|---|---|---|---|
| 923 | 10/18/2000 | DX 444 | V. Petrini e-mail to P. Perry; B. Genner ect. Re: Q1 FY2001 |
| 924 | 10/19/2000 | DX 445 | Lucent/Winstar end of quarter deal fiscal year Q42000 |
| 925 | 10/19/2000 | DX 446 | D. Nidowicz Fax to A. Alfred RE: Revised Draw Request for 10/24/00 |
| 926 | 10/20/2000 | DX 447 | F. Rubin E-Mail to N. Kantor RE: Lucent Wire on Monday |
| 927 | 10/20/2000 | DX 448 | B. Plunkett letter to D. Ackerman re: Winstar credit for optical equipment |
| 928 | 10/20/2000 | DX 449 | B. Plunkett letter to D. Ackerman re: pricing and commitments. |
| 929 | 10/20/2000 | DX 450 | E. Perricone E-mail to D. Harris, N. Aversano RE: Winstar Refinance Notice |
| 930 | 10/20/2000 | DX 451 | W. Plunkett letter to D. Ackerman re: Lucent credit of $35M to Winstar upon receipt of first order for optical equipment in CYQ42000. |
| 931 | 10/23/2000 | DX 452 | D. Huber E-Mail to L. Hicks RE: Winstar Services Meeting on Tuesday |
| 932 | 10/23/2000 | DX 453 | A. Alfred e-mail to A. Carrone; A. Derksen; A. Fasciano etc re: Winstar Drawdown |
| 933 | 10/25/2000 | DX 454 | D. Huber e-mail to N. Kantor, F. Jules, D. Ackerman RE: Cisco Summary |
| 934 | 10/26/2000 | DX 455 | B. Zlotnick E-Mail to F. Rubin RE: Lucent Meeting |
| 935 | 10/26/2000 | DX 456 | A. Dollins e-mail with attachment to D. Harris re: winstar consumer briefing |
| 936 | 10/26/2000 | DX 457 | F. Rubin E-Mail with Attachment to B. Rouhana, R. Uhl RE: Lucent Term Sheet |
| 937 | 10/26/2000 | DX 458 | J. Alfasi e-mail to E. Mullan re: Exec Review 10/26 |
| 938 | 10/27/2000 | DX 459 | N. Kantor E-Mail to F. Jules, R. Uhl RE: 2000 Capex Forecast |
| 939 | 10/27/2000 | DX 460 | DELETED |
| 940 | 10/31/2000 | DX 461 | Credit Suisse First Boston Private Equity investment Committee Presentation. |
| 941 | 11/1/2000 | DX 462 | L. Rogers E-mail to D. Harris RE: Wistar Schacht Presentation |
| 942 | 11/1/2000 | DX 463 | Winstar Final |
| 943 | 11/1/2000 | DX 464 | DELETED |
| 944 | 11/1/2000 | DX 465 | L. Rogers e-mail to M. Hund-Mejean re: Winstar |
| 945 | 11/1/2000 | DX 466 | Winstar Financing |
| 946 | 11/1/2000 | DX 467 | (Presentation) Winstar Financing |
| 947 | 11/1/2000 | DX 468 | D. Harris E-Mail to L. Rogers RE: feedback |
| 948 | 11/1/2000 | DX 469 | D. Wu e-mail to N. Kantor re: 4Q revenue from Hong Kong |
| 949 | 11/4/2000 | DX 470 | E. Perricone e-mail to F. Rubin, K. Monaco, R. Uhl, et al re: Winstar Due Diligence. |
| 950 | 11/6/2000 | DX 471 | J. Ritter E-Mail with Attachment to B. Zlotnick, L. Hicks RE: Tomorrow's Presentation |
| 951 | 11/6/2000 | DX 472 | F. Rubin letter to Siemens AG re: Winstar Communications, Inc - Term Loan C. |
| 952 | 11/6/2000 | DX 473 | Supplemental Agreement among Winstar Communications, Inc , Siemens Carrier Networks LLC. And Siemens Aktiengesellschaft. |
| 953 | 11/6/2000 | DX 474 | Supplemental Agreement among Winstar Communications, Inc., and Siemens |
| 954 | 11/7/2000 | DX 475 | M. Montemarano e-mail to P. Derrick re Winstar LWI 00073113A-00043113A |
| 955 | 11/7/2000 | DX 476 | Minutes of meeting of the board of directors of winstar communications |
| 956 | 11/7/2000 | DX 477 | E. Perricone E-Mail to M. Keefe, P. Derrick, J. Diroma, etc. RE: Winstar |
| 957 | 10/19/1998 | DX 478 | C. Dickson memorandum to W. Rouhana, N. Kantor, S. Chrust, B. Wasserman, S. Magyar, W. vanden Heuvel and J. Cash re: October 21, 1998 Board Meeting |
| 958 | 11/8/2000 | DX 479 | J. Stephens E-Mail to Winstar Employees RE: Executive Memo & Press Releases Winstar Reports Continued Strong Results, Winstar Secures Over $1 billion in Additional Financing Agreements |
| 959 | 11/8/2000 | DX 480 | Press Release: "Winstar Reports Continued Strong Results" |
| 960 | 11/8/2000 | DX 481 | F. Rubin E-mail to B. Fukuhar, D. Rogan, R. Drobny, etc RE: Winstar/Cisco Partnership |
| 961 | 11/8/2000 | DX 482 | Winstar Secures Over $1 Billion in Additional Financing Agreements: Company Funded Into 2002 (Krozsner Report document) |
| 962 | 11/10/2000 | DX 483 | D. Nidowicz E-mail to F. Rubin RE: cash issues |

37

**EXHIBIT A**

**APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
BE INCLUDED IN THE RECORD ON APPEAL**

| 963 | 11/10/2000 | DX 484 | F. Rubin letter to M. Hund-Mejean re: Winstar/Lucent Financing |
|---|---|---|---|
| 964 | 11/10/2000 | DX 485 | F. Jules E-Mail to N. Kantor RE: 2000 capex forecast |
| 965 | 11/13/2000 | DX 486 | F. Rubin letter to M. Hund-Mejean re: winstar/lucent financings |
| 966 | 11/13/2000 | DX 487 | F. Rubin letter to M. Hund-Mejean re: winstar/lucent financings |
| 967 | 11/14/2000 | DX 488 | N. Kantor e-mail to mfink@winstar.com; B. McGuire; R. Uhl etc. re: the eagle has landed |
| 968 | 11/15/2000 | DX 489 | L. Rogers e-mail to P. Derrick, M. Keefe and W. Quinn re: Winstar Letter of November 13. |
| 969 | 11/16/2000 | DX 490 | P. Hayes E-Mail to M. Hund-Mejean RE: Winstar |
| 970 | 11/16/2000 | DX 491 | L. Rogers e-mail to D. Harris, P. Derrick, R. Mark, M. Montemarano, et al. re: Fred Rubin Letter. |
| 971 | 11/16/2000 | DX 492 | V. Petrini E-Mail to D. Harris RE: Winstar Services Agreement Conference Call |
| 972 | 11/16/2000 | DX 493 | Winstar Capital Corp. Base Case Model Covenants (Collins Report document) |
| 973 | 11/18/2000 | DX 494 | B. Gennei E-mail to D. Parks et. al. RE: Data products business case |
| 974 | 11/19/2000 | DX 495 | M. Hund-Mejean e-mail to D. Harris re: winstar |
| 975 | 11/20/2000 | DX 496 | F. Jules E-mail to N. Kantor RE: 2000 projection 11-15 |
| 976 | 11/20/2000 | DX 497 | D. Ackerman E-Mail to N. Kantor RE: Lucent 2001 Proposal |
| 977 | 11/20/2000 | DX 498 | M. Hund-Mejean and D. Harris Letter to F. Rubin RE: interpretation of response and response to proposal |
| 978 | 11/20/2000 | DX 499 | J. Everding e-mail to N. Marino re: Lucent deal for 2001 |
| 979 | 11/21/2000 | DX 500 | D. Harris e-mail to C. Spurrier re: Sept 20 meeting with Nate Kantor. |
| 980 | 11/27/2000 | DX 501 | K. Monaco E-mail to R. Uhl, F. Rubin, D. Briggs RE: Summary of Bank & Lucent terms |
| 981 | 11/28/2000 | DX 502 | F. Rubin e-mail to R. Uhl re: 3% fee to Lucent |
| 982 | 11/29/2000 | DX 503 | Draft-Lucent/Winstar Relationship |
| 983 | 11/29/2000 | DX 504 | M. Hund-Mejean e-mail to J. Sasvari re: Flow Chart for Winstar. |
| 984 | 11/30/2000 | DX 505 | R. Kipke e-mail to D. Huber, B. Zlotnick, Rratchford, D. Bruster and G. Garrett re: Jeopardy on Schedule Revision. |
| 985 | 11/30/2000 | DX 506 | Notice of Request for Borrowing (Draw Request) |
| 986 | 11/30/2000 | DX 507 | M. Montemarano e-mail to C. Kelly re: immediate attention requested. Winstar services |
| 987 | 11/30/2000 | DX 508 | A. Alfred E-Mail to D. Harris, E. Perricone, L. Rogers, L. St Peter, etc. RE: Winstar |
| 988 | 12/1/2000 | DX 509 | F. Rubin E-Mail to D. Nidowicz RE: Lucent Balances |
| 989 | 12/1/2000 | DX 510 | R. Uhl e-mail to dharrisbrown@lucent.com re: Pay down of our vender financing obligation to Lucent |
| 990 | 12/1/2000 | DX 511 | D. Nidowicz E-mail to R. Uhl RE: Lucent Balances |
| 991 | 12/3/2000 | DX 512 | M. Hund-Mejean e-mail to E. Perricone re: Winstar Due Diligence Update. |
| 992 | 12/5/2000 | DX 513 | F. Rubin E-mail to R. Uhl, T. Graham, K. Zinghini RE: FW: |
| 993 | 12/5/2000 | DX 514 | Rick Uhl's Call List |
| 994 | 12/5/2000 | DX 515 | E. Perricone letter to F. Rubin re: Cisco and Compaq financings. |
| 995 | 12/6/2000 | DX 516 | Amendment No. 2 and New Lender Agreement |
| 996 | 12/6/2000 | DX 517 | Winstar 8-K (Krozsner Report document) |
| 997 | 12/6/2000 | DX 518 | K. Chawla e-mail to F. Rubin; K. Monaco; K. Zinghini re: congratulations |
| 998 | 12/1/2000 | DX 519 | A. Alfred E-Mail to A. Carrone, A. Derksen, A. Jerden, B. Moron, etc. RE: Winstar Repayment |
| 999 | 12/7/2000 | DX 520 | F. Rubin E-mail to K. Chawla, K. Zinghini RE: Congratulations |
| 1000 | 12/7/2000 | DX 521 | F. Rubin letter to E. Perricone re: Winstar's wire transfer of $188,180,000.00 to Lucent. |
| 1001 | 12/7/2000 | DX 522 | E. Perricone e-mail to F. Rubin re: Prepayment 12/7/00. |
| 1002 | 12/8/2000 | DX 523 | W. Fullerton E-mail to D. Hopkins, M. White, M. Montemarano RE: Winstar Services Revenue Recognition |
| 1003 | 12/8/2000 | DX 524 | F. Jules e-mail to J. Marco re: Opportunities with Cisco |

38

# EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 1004 | 12/8/2000 | DX 525 | K. Monaco letter to B Keller re: materials requested by E Perricone in e-mail message of 12/04/00. |
|------|-----------|--------|---|
| 1005 | 12/11/2000 | DX 526 | D. Ackerman E-Mail to J. Everding RE: Enterprise Integration Lab |
| 1006 | 12/11/2000 | DX 527 | N. Kantor E-Mail to N. Marino RE: Cisco Meeting Outline |
| 1007 | 12/11/2000 | DX 528 | M. Keefe e-mail to K. Zinghini re: Winstar Cisco Guaranty. |
| 1008 | 12/13/2000 | DX 529 | H. Shartel e-mail to F. Rubin, R. Uhl RE: AFC-Deferred Inventory |
| 1009 | 12/13/2000 | DX 530 | E. Perricone Memo to M. Hund-Mejean RE: Winstar Refinance Provisions |
| 1010 | 12/13/2000 | DX 531 | W Fullerton e-mail to M. Montemarano re: winstar services revenue recognition |
| 1011 | 12/14/2000 | DX 532 | F. Jules E-Mail to D. Ackerman RE: Lucent |
| 1012 | 12/14/2000 | DX 533 | C. Schoettle E-Mail to D. Harris RE: Winstar Broadband Radios |
| 1013 | 12/15/2000 | DX 534 | F. Rubin Letter to E. Perricone re: WVF-1 LLC |
| 1014 | 12/15/2000 | DX 535 | **DELETED** |
| 1015 | 12/15/2000 | DX 536 | D. Nidowicz E-mail to F. Rubin, R. Uhl RE: Lucent 3% |
| 1016 | 12/15/2000 | DX 537 | D. Harris E-mail to R. Uhl |
| 1017 | 12/15/2000 | DX 538 | R. Uhl e-mail to mexadakilos@winstar.com re: End of Quarter Deal |
| 1018 | 12/16/2000 | DX 539 | B. Rouhana E-Mail to N. Kantor RE: Plan C |
| 1019 | 12/18/2000 | DX 540 | M Hund-Mejean E-Mail to: E Perricone, M Keefe, R Mark, M Montemarano, C Spurrier RE: Winstar-Request for Credit Memo to reduce Lucent Loans below $500M |
| 1020 | 12/18/2000 | DX 541 | J. Diroma e-mail to R. Mark; W. Fullerton ect. Re: winstar 4Q credits owed |
| 1021 | 3/31/2000 | DX 542 | L. Hicks fax to R. Uhl re: optical equipment bill and hold letters-Lucent |
| 1022 | 12/19/2000 | DX 543 | F Rubin E-Mail with Attachment to R Uhl RE: 2000 forecast - radio movement |
| 1023 | 12/19/2000 | DX 544 | E. Perricone letter to Winstar re: Lucent Credit Facility. |
| 1024 | 12/19/2000 | DX 545 | E. Perricone letter to F. Rubin re: Lucent Credit Facility. |
| 1025 | 12/19/2000 | DX 546 | L. Hicks Fax to R. Uhl RE: Optical Equipment Bill and Hold Letters-Lucent |
| 1026 | 12/20/2000 | DX 547 | Memorandum from B. Perricone and B. Keller to D. Hopkins and B. Verwaayen re: Winstar Due Diligence. |
| 1027 | 12/21/2000 | DX 548 | F. Jules e-mail to R. Uhl re: EO3Q follow-ups |
| 1028 | 12/22/2000 | DX 549 | A. Alfred e-mail to D Harris, E Perricone, L St. Peter, et al re: Winstar $32M Draw Request. |
| 1029 | 12/27/2000 | DX 550 | D Hopkins letter e-mail to P Derrick re: 12/19/00 refinance notice and 12/22/00 drawdown request. |
| 1030 | 12/27/2000 | DX 551 | M. Dowdy e-mail to D. Harris re: Financing Summary |
| 1031 | 12/27/2000 | DX 552 | M Montemarano e-mail to C Carroll, R Mark, S Rosen, M Keefe, et al. re: Winstar $32M Draw Request. |
| 1032 | 12/27/2000 | DX 553 | E-mail re: Winstar $32M Draw Request. |
| 1033 | 12/28/2000 | DX 554 | 2000 Capex Forecast |
| 1034 | 12/28/2000 | DX 555 | B. Zlotnick e-mail to L. Hicks re: LighTrade Resell. |
| 1035 | 12/28/2000 | DX 556 | R. Uhl letter to M. Montemarano re: wire transfer |
| 1036 | 12/28/2000 | DX 557 | D Hopkins E-Mail to M. Hund-Mejean, D Harris, M Montemarano RE: winstar |
| 1037 | 12/29/2000 | DX 558 | F. Rubin E-Mail to D. Nidowicz, R. Uhl, K. Monaco RE: Lucent borrowing |
| 1038 | 12/29/2000 | DX 559 | D. Ackerman E-Mail to R Uhl, F Jules, N Kantor, B. Rouhana RE: Direct update |
| 1039 | 12/29/2000 | DX 560 | P Derrick e-mail to M Montemarano (cc: D Hopkins, B. Verwaayen, M Hund-Mejean, D. Harris, C Carroll, E. Perricone, K DaSilva and M. Gibbens re: payments to Winstar based on Agreement with Winstar chairman, president and CFO. |
| 1040 | 12/29/2000 | DX 561 | Notice of Request for Borrowing (Draw Request) |
| 1041 | 12/29/2000 | DX 562 | N. Kantor e-mail to R. Uhl re: Lucent borrowing |
| 1042 | 12/29/2000 | DX 563 | Addendum to Supply Agreement By and Between Winstar Communications, Inc. and Lucent Technologies, Inc. |

39

**EXHIBIT A**

**APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
BE INCLUDED IN THE RECORD ON APPEAL**

| | | | |
|---|---|---|---|
| 1043 | 12/29/2000 | DX 564 | C. Carroll e-mail to P. Derrick re: winstar |
| 1044 | 12/31/2000 | DX 565 | Data Telco Cost of Revenue |
| 1045 | 1/2/2001 | DX 566 | B. Rouhana e-mail to N. Kantor re: lucent |
| 1046 | 1/2/2001 | DX 567 | M. Keefe e-mail to K. Zinghini re: Winstar Compaq Guaranty. |
| 1047 | 1/3/2001 | DX 568 | D. Ackerman e-mail to F. Jules re: Direct update |
| 1048 | 1/3/2001 | DX 569 | W. Fullerton E-mail to M. Weinman, M. Alvarez, J. Diroma, etc. RE: Winstar |
| 1049 | 1/4/2001 | DX 570 | J. Diroma E-Mail to S. Evans RE: Winstar/Adelphia |
| 1050 | 1/8/2001 | DX 571 | Cisco Systems |
| 1051 | 1/8/2001 | DX 572 | A. Lucido e-mail to D. Harris; V. Petrini; K. O'Grady ect. Re: winstar profit analysis |
| 1052 | 1/9/2001 | DX 573 | D. Briggs E-Mail to M. Davis, K. Pisciotta, L. Rees, A. Rachkov |
| 1053 | 1/9/2001 | DX 574 | Lucent Technologies Presentation by Nate Kantor |
| 1054 | 1/9/2001 | DX 575 | F. Jules E-mail to N. Kantor RE: q101 capex estimate |
| 1055 | 1/9/2001 | DX 576 | D. Harris letter to R. Uhl re: charges associated with the financing Agreement |
| 1056 | 1/14/2001 | DX 577 | D Hopkins E-Mail to M White, P. Derrick, D Harris etc. RE: winstar meeting.montemarano notes |
| 1057 | 1/16/2001 | DX 578 | A Lucido E-Mail to M. Montemarano RE: Please Read Prior to your Winstar CT Meeting |
| 1058 | 1/17/2001 | DX 579 | L. Fawcett E-Mail to M. Waugh RE: WinStar Services Agreement |
| 1059 | 1/17/2001 | DX 580 | M. Montemarano Letter to R. Uhl RE: Lucent Credit Facility |
| 1060 | 1/17/2001 | DX 581 | D. Harris letter to R. Uhl re: Charges associated with the financing Agreement |
| 1061 | 1/18/2001 | DX 582 | Standard & Poor's Industry Survey re: Communications Equipment |
| 1062 | 1/19/2001 | DX 583 | D. Harris E-mail to R. Uhl RE: letter |
| 1063 | 1/22/2001 | DX 584 | D Christian E-Mail to M Montemarano RE: WinStar Statement, January 22, 2001 |
| 1064 | 1/23/2001 | DX 585 | M. Montemarano E-Mail to C. Mcgovern RE: Winstar |
| 1065 | 1/23/2001 | DX 586 | Minutes of a meeting of the board of directors of winstar communications |
| 1066 | 1/24/2001 | DX 587 | D. Harris letter to R. Uhl re: charges associated with the financing Agreement |
| 1067 | 1/26/2001 | DX 588 | R. Uhl E-Mail with Attachment to F Rubin, K Zinghini RE: Winstar surcharge information |
| 1068 | 1/29/2001 | DX 589 | D Harris E-Mail to D Ackerman, R Uhl RE: Winstar services outsourced to Lucent |
| 1069 | 1/29/2001 | DX 590 | V. Hawkins E-Mail to V. Petrini RE: SNC/SNMS Complaints |
| 1070 | 1/29/2001 | DX 591 | E Perricone E-mail with attachments to D. Hopkins, B. Verwaayen RE: Winstar Due Diligence |
| 1071 | 1/30/2001 | DX 592 | M. Montemarano Letter to R. Uhl RE: capital draw down budget |
| 1072 | 1/30/2001 | DX 593 | D Harris E-Mail to M. Montemarano, C Spurrier, B Verwaayen, N Kantor, R. Uhl, F. Jules, D. Ackerman |
| 1073 | 2/1/2001 | DX 594 | R. Uhl E-Mail to Monaco RE: Cash Forecast |
| 1074 | 2/2/2001 | DX 595 | B. Zlotnick e-mail to L. Hicks re: Lucent Converged Architecture Update. |
| 1075 | 2/5/2001 | DX 596 | R. Uhl E-Mail to N. Kantor RE: Anticipated LU Borrowings |
| 1076 | 2/5/2001 | DX 597 | R. Uhl E-Mail to M. Montemarano RE: Anticipated LU Borrowings |
| 1077 | 2/5/2001 | DX 598 | R. Uhl letter to M. Montemarano re: credit Agreements |
| 1078 | 2/6/2001 | DX 599 | M. Montemarano Letter to R. Uhl RE: Capital Expense forecast |
| 1079 | 2/6/2001 | DX 600 | R. Uhl e-mail to F. Rubin re: Anticipated LU Borrowings. |
| 1080 | 2/6/2001 | DX 601 | M Montemarano E-mail to E Perricone, J Ayre, D Harris, A Carrone, etc RE: Winstar drawdown 2/5/01 |
| 1081 | 2/6/2001 | DX 602 | M Montemarano e-mail to K Becker, P Derrick, W Quinn, et al re: papertrail of Winstar compliance. |
| 1082 | 2/6/2001 | DX 603 | C. Mcgovern e-mail to C Spurrier; B Verwaayan; D Harris re: winstar letter-2/6/01 |
| 1083 | 2/6/2001 | DX 604 | J. Diroma E-Mail to L. Baldwin RE: Winstar/Adelphia |
| 1084 | 2/6/2001 | DX 605 | Lucent Invoice #SU101858 to Winstar (Terrell Declaration Exhibit 2) |
| 1085 | 2/7/2001 | DX 606 | R. Uhl E-Mail to F. Rubin, K. Zinghini RE: Lucent |

# EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 1086 | 2/8/2001 | DX 607 | F. Jules E-mail to D. Ackerman RE: nortel |
|---|---|---|---|
| 1087 | 2/8/2001 | DX 608 | Winstar/Lucent Major Accomplishments Executive Summary |
| 1088 | 2/12/2001 | DX 609 | G. Garrett e-mail to L. Fawcett re: Jan 2001 CRD Performance. |
| 1089 | 2/13/2001 | DX 610 | C. McGovern E-Mail w/ Attachment to S. Rosen RE: Response to Winstar |
| 1090 | 2/15/2001 | DX 611 | D. Nidowicz e-mail to K. Monaco re: Lucent unused line fee |
| 1091 | 2/20/2001 | DX 612 | Memorandum from J. Desmond, G. Goldman, and P. Cummings at Grant Thornton to B Rouhana, N Kantor, T Graham, and R. Uhl re: Follow-up to Meeting with Winstar Management Held on Tuesday, February 20, 2001. |
| 1092 | 2/20/2001 | DX 613 | **DELETED** |
| 1093 | 2/21/2001 | DX 614 | W Quinn E-Mail to M. Montemarano, D Harris, G Caviness, etc RE: Winstar loan balance |
| 1094 | 2/22/2001 | DX 615 | J. Cocito e-mail to gmoloney@winstar com and frubin@winstar.com re: Lucent Loan Balances |
| 1095 | 2/23/2001 | DX 616 | M. Montemarano E-mail to G Caviness RE: action: Winstar drawdown request for February 28, 2001 |
| 1096 | 2/23/2001 | DX 617 | Notice of Request for Borrowing (Draw Request) |
| 1097 | 2/24/2001 | DX 618 | P Cummings to Winstar Communications, Inc RE: Follow-up Discussion with Bill Rouhana and Senior Management on February 23, 2001 |
| 1098 | 2/26/2001 | DX 619 | L. Kroencke E-Mail with Attachment to E. Cho RE: MSA Tracking |
| 1099 | 2/27/2001 | DX 620 | D. Nidowicz E-mail to R. Uhl RE: Lucent 3% |
| 1100 | 2/27/2001 | DX 621 | J. Baylis E-mail to D. Briggs RE: Lucent Covenants |
| 1101 | 2/27/2001 | DX 622 | Press Release re: Winstar Reports Strong Fourth Quarter Results. |
| 1102 | 2/27/2001 | DX 623 | J Stephens e-mail to winstar re: Executive memo and press release Winstar results continue sharp improvement. |
| 1103 | 3/1/2001 | DX 624 | **DELETED** |
| 1104 | 3/1/2001 | DX 625 | M. Montemarano Letter to R. Uhl RE: Lucent Credit Facility |
| 1105 | 3/1/2001 | DX 626 | F. Rubin e-mail to L. O'Brian and K. Monaco re: A/R problem escalation #6 - Winster $15M |
| 1106 | 3/2/2001 | DX 627 | K. Monaco E-mail to N. Kantor RE: Cash Fcst March 1 |
| 1107 | 3/4/2001 | DX 628 | **DELETED** |
| 1108 | 3/6/2001 | DX 629 | P. Cummings Memo to B. Rouhana, N. Kantor, R. Uhl RE: Annual Audit - Significant Open Items |
| 1109 | 3/9/2001 | DX 630 | F. Rubin E-Mail to N. Kantor, R. Uhl, T. Graham RE: Lucent Recap |
| 1110 | 3/12/2001 | DX 631 | Winstar 2001 Plan Capitalization Issues |
| 1111 | 3/12/2001 | DX 632 | **DELETED** |
| 1112 | 3/13/2001 | DX 633 | E Perricone memorandum to B Verwaayen, C Spurrier, M. Hund-Mejean, et al. re: Winstar Update. |
| 1113 | 3/14/2001 | DX 634 | F. Rubin e-mail to D. Harris re: open items for resolution |
| 1114 | 3/15/2001 | DX 635 | **DELETED** |
| 1115 | 3/16/2001 | DX 636 | **DELETED** |
| 1116 | 3/16/2001 | DX 637 | D Ackerman e-mail to N Kantor; fjules@winstar com; brouhana@winstar.com re: Vender Commitments/LD Provisions |
| 1117 | 3/17/2001 | DX 638 | D. Ackerman e-mail to N. Kantor re: Personal |
| 1118 | 3/18/2001 | DX 639 | M. Hund-mejean e-mail to B. Verwaayen and C. Spurrier re: winstar |
| 1119 | 3/19/2001 | DX 640 | **DELETED** |
| 1120 | 3/21/2001 | DX 641 | D Hopkins E-mail to M. Montemarano, D. Harris, M. Hund Mejean, etc RE: SPECIAL ATTENTION winstar meeting. 3/21/01 |
| 1121 | 3/21/2001 | DX 642 | M. Montemarano E-Mail to D. Harris, D Hopkins, M. Hund Mejean etc. |
| 1122 | 3/21/2001 | DX 643 | Memo to File from M. Montemarano |
| 1123 | 3/21/2001 | DX 644 | Lucent Invoices to Winstar (Terrell Declaration Exhibit 4) |
| 1124 | 3/23/2001 | DX 645 | Winstar Communications, Inc Condensed Statements of Operations with handwritten notes. |
| 1125 | 3/23/2001 | DX 646 | B. Zlotnick E-Mail to R. Kipke RE: 400G Inventory Exchange |
| 1126 | 3/24/2001 | DX 647 | Estimated Lucent Billing |

41

**EXHIBIT A**

**APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
BE INCLUDED IN THE RECORD ON APPEAL**

| | | | |
|---|---|---|---|
| 1127 | 3/25/2001 | DX 648 | P. Cummings E-Mail to K. Monaco, R. Bambach, G. Maloney RE: debt covenants |
| 1128 | 3/26/2001 | DX 649 | DELETED |
| 1129 | 3/26/2001 | DX 650 | D. Ackerman E-Mail to N. Kantor RE: Creative Build-out |
| 1130 | 3/22/2001 | DX 651 | Notice of request for borrowing (Draw Request) |
| 1131 | 3/27/2001 | DX 652 | D. Ackerman E-mail to R. Uhl RE: SAIC |
| 1132 | 3/28/2001 | DX 653 | M. Montemarano E-Mail to: M. Ambrus, K. Fitzgerald, E. Perricone etc. RE: Winstar |
| 1133 | 3/28/2001 | DX 654 | M. Montemarano memo to file re: March 28 meeting with W. Rouhana re Winstar liquidity |
| 1134 | 3/28/2001 | DX 655 | M. Montemarano Memo to File |
| 1135 | 3/28/2001 | DX 656 | D. Harris E-Mail to R. Cieri, S. Winn, S. LoBlondo, etc. RE: Winstar Take-or-Pay Contract LW00146958-LW00146962A |
| 1136 | 3/29/2001 | DX 657 | DELETED |
| 1137 | 3/29/2001 | DX 658 | M. Montemarano Memo to File |
| 1138 | 3/29/2001 | DX 659 | J. Diroma e-mail to W. Fullerton re: winstar services pass thru |
| 1139 | 3/29/2001 | DX 660 | H. Shartel E-Mail to R. Uhl RE: Inventory Analysis 03282001 |
| 1140 | 3/29/2001 | DX 661 | J. Diroma e-mail to W. Fullerton re: winstar services pass thru |
| 1141 | 3/29/2001 | DX 662 | Draft 12/00 financials (Collins Report document) |
| 1142 | 3/30/2001 | DX 663 | M. Keefe Letter to Winstar Communications, Inc. RE: Lucent Creditl Facility |
| 1143 | 3/30/2001 | DX 664 | DELETED |
| 1144 | 3/30/2001 | DX 665 | B. Stranzl E-mail to R. Uhl RE: Winstar |
| 1145 | 3/30/2001 | DX 666 | B. Wilson E-Mail to D. Briggs re: Draft Lehman Note. |
| 1146 | 3/30/2001 | DX 667 | M. Keefe e-mail to D. Harris; S. Rosen; R. Mark etc.. re: Winstar |
| 1147 | 3/27/2001 | DX 668 | Notice of Request for Borrowing (Draw Request) |
| 1148 | 4/2/2001 | DX 669 | G. Simpson E-mail to D. Nidowicz RE: Q1 2001 Financable Labor |
| 1149 | 4/4/2001 | DX 670 | K. Monaco e-mail to D. Nidowicz re: payments |
| 1150 | 4/5/2001 | DX 671 | M. Montemarano letter to Winstar Communications, Inc (cc: W. Rouhana) re: Lucent's suspension of shipment of products and the provision of services to Winstar due to evidence of Winstar's financial distress. |
| 1151 | 4/6/2001 | DX 672 | Lucent letter to Winstar re: Lucent Credit Facility |
| 1152 | 4/6/2001 | DX 673 | M. Montemarano letter to Winstar re: Lucent Credit Facility |
| 1153 | 4/6/2001 | DX 674 | Lucent Invoice #SU108080 to Winstar (Terrell Declaration Exhibit 3) |
| 1154 | 4/9/2001 | DX 675 | E. Perricone Letter to Winstar Communications RE: Lucent credit facility - signed by K. Zinghini, T. Graham |
| 1155 | 4/9/2001 | DX 676 | E. Perricone letter to Winstar re: Lucent Credit Facility |
| 1156 | 4/9/2001 | DX 677 | Lucent letter to Winstar re: Lucent Credit Facility |
| 1157 | 4/9/2001 | DX 678 | R. Uhl's notes |
| 1158 | 4/11/2001 | DX 679 | M. Montemarano letter to D. Ackerman re: payment assurance. |
| 1159 | 4/1/2001 | DX 680 | M. Montemarano letter to D. Ackerman re: response to Winstar April 10 letter. |
| 1160 | 4/12/2001 | DX 681 | L. Sadrian Letter to Winstar Communications, B. Rouhana RE: Obligations under Supply Agreement |
| 1161 | 4/12/2001 | DX 682 | DELETED |
| 1162 | 4/13/2001 | DX 683 | L. Sadrian letter to Winstar re: Lucent Credit Facility. |
| 1163 | 4/15/2001 | DX 684 | L. Sadrian Letter to Winstar Communcations RE: Lucent Credit Facility |
| 1164 | 4/16/2001 | DX 685 | L. Sadrian Letter to WinStar Communications, Inc. RE: Lucent Credit Facility |
| 1165 | 5/23/2000 | DX 686 | Notice of Request for Borrowing (Draw Request) |
| 1166 | 5/31/2001 | DX 687 | D. Hopkins e-mail to W. Viqueira re: Winstar |
| 1167 | 4/18/2001 | DX 688 | Senior Secured Super-Priority Debtor in Posession Revolving Credit Agreement (Krozsner Report document) |
| 1168 | 4/19/2001 | DX 689 | M. Dowdy e-mail to D. Hsu forwarding Presentation transition plan for lucent resource integration |
| 1169 | 5/6/2001 | DX 690 | Lucent billing for capita (spread sheet) |
| 1170 | 5/8/2001 | DX 691 | K. Monaco E. Mail to D. Dei RE: Credit Approval |

RLF1-2986514-1

**EXHIBIT A**

**APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
BE INCLUDED IN THE RECORD ON APPEAL**

| | | | |
|---|---|---|---|
| 1171 | 5/8/2001 | DX 692 | K. Cavanaugh E-mail to B. Rouhana RE: WSJ |
| 1172 | 7/13/2000 | DX 693 | K. Monaco E-mail to S. Kasera RE: Siemens-Answer per your request |
| 1173 | 5/8/2001 | DX 694 | K. Monaco E-mail to F Rubin RE: Management Case: Cash Receipts & Disbursements |
| 1174 | 5/8/2001 | DX 695 | N. Kantor E-mail to B. Rouhana RE: Winstar Partnership Concept |
| 1175 | 5/8/2001 | DX 696 | K. Cavanaugh E-mail to N. Kantor, R. Uhl RE: Call with Barron's |
| 1176 | 5/8/2001 | DX 697 | D. Nidowicz E-Mail to J. Diroma RE: Winstar Services |
| 1177 | 6/9/2001 | DX 698 | R. Uhl E-mail to G. Maloney RE: Lucent Services |
| 1178 | 3/3/2004 | DX 699 | Ackerman SEC Transcript |
| 1179 | 8/16/2002 | DX 700 | **DELETED** |
| 1180 | 3/30/2004 | DX 701 | Letter from K. Collins to M. Paskin enclosing Winstar Valuation Expert Report |
| 1181 | 3/30/2004 | DX 702 | Expert Report of Christopher Stark CS Hawthorn Inc. |
| 1182 | 3/30/2004 | DX 703 | **DELETED** |
| 1183 | 3/30/2004 | DX 704 | **DELETED** |
| 1184 | 3/7/2000 | DX 705 | J. Dwyer E-mail to N. Kantor RE: Lucent Status - Subcontracting Agreement |
| 1185 | 11/7/2000 | DX 706 | M. Hund-Mejean leter to R. Uhl re: Lucent Vendor Financing. |
| 1186 | 11/8/2000 | DX 707 | Delegation of Authority (Deborah Hopkins) - 11/07/00 Letter from M Hund-Mejean To R. Uhl RE: Lucent Vendor Financing |
| 1187 | 9/28/2000 | DX 708 | Partnership Deal<br>Source: D. Harris |
| 1188 | 12/4/2000 | DX 709 | M. Montemarano E-Mail to P. Derrick, M. Hund-Mejean |
| 1189 | 12/27/1999 | DX 710 | Past Due as of: 12/27/99 = $539M Top 7 |
| 1190 | 9/1/2000 | DX 711 | K. Chawla E-Mail to T. Deutsch RE: The Deal |
| 1191 | 11/3/2000 | DX 712 | Winstar and BNY Letter regarding Term Loan C |
| 1192 | 9/19/2000 | DX 713 | N. Aversano E-Mail to N. Kantor RE: Winstar/Lucent Deal |
| 1193 | 3/24/2001 | DX 714 | T. Graham invoice J. Ritter re: Invoice |
| 1194 | 3/30/1999 | DX 715 | **DELETED** |
| 1195 | 2/17/2000 | DX 716 | L. Rogers e-mail to J. Orlando; W. Viquiera; N. Aversano; J. Cocito re: Winstar |
| 1196 | 1/5/1999 | DX 717 | **DELETED** |
| 1197 | 11/6/2000 | DX 718 | Winstar letter to Siemens re: winstar - term loan c |
| 1198 | 9/1/2000 | DX 719 | F. Rubin e-mail to K. Chawla re: financing structure |
| 1199 | 4/5/2001 | DX 720 | N. Holcomb letter to A. Zendle re: Siemens proposal |
| 1200 | 11/15/2000 | DX 721 | Daniel_Csillag@lnotes5bankofny com e-mail to siddharth kasera@sfs siemens.com re: winstar capital corp amendment request |
| 1201 | 3/23/1999 | DX 722 | R. Haffar e-mail to bmcguire@wns-k7 winstar com re: Lucent Revenue Commitment Call |
| 1202 | 1/13/2000 | DX 723 | P Soltesz e-mail to A Zendle re: DSLAM architecture impacts on PMP and vice versa |
| 1203 | 5/2/2000 | DX 724 | D. Ackerman e-mail to A. Zendle re: Siemens Proposal |
| 1204 | 6/27/2000 | DX 725 | **DELETED** |
| 1205 | 10/13/2000 | DX 726 | **DELETED** |
| 1206 | 12/1/2000 | DX 727 | F. Rubin E-Mail to B. Zlotnick RE: International Cap Ex Allocation |
| 1207 | 5/8/2001 | DX 728 | **DELETED** |
| 1208 | 4/29/2001 | DX 729 | K Devany E-Mail to D Huber, M Fink, M Roberts, J Everding RE: URGENT! Contract Review Process due Friday April 27, 2001 |
| 1209 | 4/9/2001 | DX 730 | R. Uhl Letter to B. Rouhana RE: Lucent Objections |
| 1210 | 12/29/2000 | DX 731 | K. Monaco E-Mail to R. Uhl, T. Graham RE: Permitted Investments Covenant Report: Bank |
| 1211 | | DX 732 | R. Haffar Letter to M. Wilson RE: Agreement for Network Built-out Services |
| 1212 | | | INTENTIONALLY LEFT BLANK |
| 1213 | 3/20/2000 | DX 733 | C Naylor e-mail to V. Petrini, T O'Hara; M. Epstein; L Rogers re: Lucent Supply Agreement. |
| 1214 | 3/7/2001 | DX 734 | E Perricone E-Mail to P Derrick, M. Montemarano, C. Spurrier, D Harris, etc RE: Winstar Finance Discussion |

43

**EXHIBIT A**

**APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
BE INCLUDED IN THE RECORD ON APPEAL**

| 1215 | 3/12/1999 | DX 735 | W. Plunkett E-Mail to N. Aversano RE: A-1 FINAL: Nate Kantor - Briefing |
|---|---|---|---|
| 1216 | 1/4/2001 | DX 736 | E. Perricone E-Mail to D. Hopkins RE: Clarifications and Wish List-Winstar |
| 1217 | 9/7/2000 | DX 737 | L. Rogers E-Mail to D. Forrester RE: Urgent WinStar HK |
| 1218 | 5/24/2000 | DX 738 | J Cocito e-mail to W. Viqueira; N. Aversano; E. Perricone; ect. re: winstar updates |
| 1219 | 5/17/2004 | DX 739 | SEC Complaint, Jury Demand |
| 1220 | 9/1/2001 | DX 740 | F. Rubin E-Mail to S. Kasera, K. Monaco RE: Financing Structure |
| 1221 | | DX 742 | Invoice |
| 1222 | | DX 743 | INVOICE DETAIL - ER903765 (highlighted version) |
| 1223 | | DX 744 | Invoice |
| 1224 | | DX 745 | Winstar Inventory Calculation (Pocalyko Cross) |
| 1225 | | DX 746 | Invoice Services Manual |
| 1226 | 11/14/2000 | DX 747 | Email from P. Derrick to M. Hund-Mejen RE: Winstar bank line increase |
| 1227 | | DX 748 | Bates Combined into one chart (PX 306) |
| 1228 | 5/11/2005 | DX 749 | List of Exhibits to Admit |
| 1229 | | DX A | Elizabeth Perricone's Bridge Statement |
| 1230 | | DX B | Portion of Complaint, Pages 54-56 |
| 1231 | | DX E | Elizabeth Perricone Offer of Proof designations of July 24, 2001 |
| 1232 | | DX F | Richard Uhl Offer of Proof designations of July 25, 2001 |
| 1233 | | DX G | Leslie Roger Offer of Proof designatins of Aug. 8, 2001 |
| 1234 | | DX H | Kevin Monaco Offer of Proof designations of July 11, 2001 and Nov. 26, 2003 |
| 1235 | 5/4/2000 | DX I | Section of Credit Agreement among WVF-I LLC and Lucent (also DX 29) |
| 1236 | | DX K | Timothy Grahan Offer of Proof designations of July 24, 2001 |
| 1237 | 5/4/2000 | DX L | Section of Credit Agreement (also DX 29) |
| 1238 | | DX M | Gary Goldman Offer of Proof designations of Feb. 20, 2004 |
| 1239 | | DX V | Kenneth Zinghini Offer of Proof designations of July 12, 2001 |
| 1240 | 6/20/2001 | DX W | Lucent Notice of Deposition to depose representative of Winstar |
| 1241 | 3/29/2004 | DX Z | Expert Report of John I. Salomon |
| 1242 | | DX AA | List of exhibits submitted by Lucent as an Offer of Proof |

**Plaintiff (PX) Trial Exhibits**

| Tab | Date | Exhibit No. | Description of Item |
|---|---|---|---|
| 1243 | | PX 1 | Notes re: Lucent Strategic Partnership. |
| 1244 | 9/30/1998 | PX 2 | N. Aversano e-mail to N. Kantor attaching Winstar and Lucent Technologies Framework for a Strategic Partnership. |
| 1245 | 5/8/2001 | PX 3 | N. Kantor e-mail to B. Rouhana re: Winstar Partnership Concept. |
| 1246 | 5/8/2001 | PX 4 | N. Kantor e-mail to B. Rouhana re: Strategic Partnership (responding to 9/30/98 N. Aversano e-mail). |
| 1247 | 10/2/1998 | PX 5 | Bullet-point notes re: Winstar/Lucent Partnership Concept. |
| 1248 | 10/3/1998 | PX 6 | N. Kantor e-mail to N. Aversano re: Winstar Partnership Concept. |
| 1249 | 10/7/1998 | PX 7 | N. Aversano fax to R. Haffar re: Winstar/Lucent Partnership Concept. |
| 1250 | | PX 8 | Presentation re: Best of Breed and scope of partnership structure. |
| 1251 | 10/19/1998 | PX 9 | C. Dickson memo to W. Rouhana, N. Kantor, S. Chrust, et al re: October 19, 1998. |
| 1252 | 10/22/1998 | PX 10 | Press release entitled "S2 Billion Winstar/Lucent Strategic Agreement to Expand Winstar's Broadband Network." |
| 1253 | 2/18/2000 | PX 11 | Winstar - Lucent Partership Executive Review. |
| 1254 | 7/14/2000 | PX 12 | R. Uhl e-mail to N. Kantor re: Dinner meeting with Debbie Hopkins. |
| 1255 | | PX 13 | Agreement for Network Buildout Services. |

44

# EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 1256 | 5/8/2001 | PX 14 | N. Kantor e-mail to B. Rouhana re: Winstar Partnership Concept |
|---|---|---|---|
| 1257 | 9/22/2000 | PX 15 | D. Harris e-mail to N. Kantor and F Jules re: Winstar Services Purchase Order. |
| 1258 | 9/24/2000 | PX 16 | N. Kantor e-mail to N. Aversano re: Winstar Services Purchase Order. |
| 1259 | 9/29/2000 | PX 17 | R. Uhl memorandum to D. Ackerman, F. Jules, N. Kantor, J Maloney, F. Rubin and B. Zlotnick re: Winstar & Lucent. |
| 1260 | 6/16/1999 | PX 18 | Hub and B-Site Addendum to the Supply Agreement between Winstar Communications, Inc. and Lucent Technologies Inc. |
| 1261 | 7/11/2000 | PX 19 | Optical Network Addendum to the Supply Agreement between Winstar Communications, Inc. and Lucent Technologies Inc. |
| 1262 | 9/29/2000 | PX 20 | Software Pool Agreement |
| 1263 | 10/13/2000 | PX 21 | D. Ackerman e-mail to J. Everding re: Transition Proposal. |
| 1264 | 12/14/2000 | PX 22 | R. Uhl e-mail to F Jules, N Kantor and F Rubin re: call with Carole Spurrier and Debbie Harris. |
| 1265 | 12/22/2000 | PX 23 | V. Petrini e-mail w/ handwritten notes to N. Kantor re: Conference Number. |
| 1266 | | PX 24 | Winstar Broadband Services for Businesses. |
| 1267 | 1/11/2001 | PX 25 | D Ackerman e-mail to N Kantor and F Jules re: Feedback from January 9th Senior Executive Meeting with Winstar. |
| 1268 | 1/17/2001 | PX 26 | D Harris e-mail to N. Kantor, F. Jules, R Uhl and D Ackerman re: Agenda for January 17, 2001 meeting. |
| 1269 | 1/17/2001 | PX 27 | Agenda for Lucent - Winstar Meeting. |
| 1270 | 1/17/2001 | PX 28 | Lucent's Vendor Integration Plan for Winstar. |
| 1271 | 1/16/2001 | PX 29 | Winstar Global 2001 Budget Analysis (LU gets all Hubs & Bs and Metros). |
| 1272 | 1/29/2001 | PX 30 | D. Harris e-mail to D Ackerman and R. Uhl re: Winstar services outsourced to Lucent. |
| 1273 | 1/30/2001 | PX 31 | D Harris e-mail to M. Montemarano, C. Spurrier, B Verwaayen, et al re: Hubs and B-Sites Status Report. |
| 1274 | 2/8/2001 | PX 32 | D Ackerman e-mail to N. Kantor, R Uhl, F. Jules, et al. re: Proposed Agenda for Winstar/Lucent Meeting Friday 2/9/01. |
| 1275 | 2/9/2001 | PX 33 | Winstar Project Assessment Preliminary Findings Briefing. |
| 1276 | 2/9/2001 | PX 34 | Proposed Relationship Structure between Winstar - Lucent. |
| 1277 | 5/8/2001 | PX 35 | N. Kantor e-mail to F. Rubin re: open items for resolution. |
| 1278 | | PX 36 | Lucent/Winstar Strategic Partnership 2001 Opportunity. |
| 1279 | 12/15/2000 | PX 37 | M. Carney e-mail to D. Nidowicz re: Approval for SI-21952-119. |
| 1280 | 3/27/2001 | PX 38 | F. Jules e-mail to N. Kantor re: Lucent contnet for 2001. |
| 1281 | 3/30/2001 | PX 39 | M. Keefe letter to Winstar Communications, Inc. re: Lucent Credit Facility. |
| 1282 | 3/30/2001 | PX 40 | M Montemarano letter to Robert McGuire re: termination of Master Service Agreement. |
| 1283 | 3/30/2001 | PX 41 | M Keefe letter to Winstar Communications, Inc. re: Winstar Information Regarding Collateral. |
| 1284 | 11/6/2000 | PX 42 | J. Ritter e-mail to B Zlotnick and L. Hicks re; presentation on proposed addendum to supply Agreement. |
| 1285 | 11/10/2000 | PX 43 | F. Jules e-mail to J. Marco re: risks and benefits of proposed actions. |
| 1286 | 8/30/2000 | PX 44 | L. Hicks e-mail to D. Ackerman re: Lucent strategy |
| 1287 | 8/21/2000 | PX 45 | Nate/Nina Meeting - NATE'S MISSION: TO GET LUCENT TO AGREE TO ALL POINTS LISTED BELOW |
| 1288 | 9/19/2000 | PX 46 | L. Hicks e-mail to D. Ackerman re: Lucent meeting 9/19 |
| 1289 | 12/29/1999 | PX 47 | L. Hicks e-mail to C. Naylor re: EOQ Letter - Edit |
| 1290 | 12/11/2000 | PX 48 | D. Ackerman e-mail to J. Everding re: Winstar/Lucent Deal |
| 1291 | 12/11/2000 | PX 49 | D. Ackerman e-mail to J. Everding re: Winstar/Lucent deal |
| 1292 | 9/20/2000 | PX 50 | L. Hicks e-mail to R. Uhl re: Lucent EOQ deal issues |
| 1293 | 9/20/2000 | PX 51 | L. Hicks e-mail to R. Uhl re: Deal Documents |
| 1294 | 12/11/2000 | PX 52 | D. Ackerman e-mail to J. EEverding re: Business Deal V2 |
| 1295 | 12/11/2000 | PX 53 | D. Ackerman e-mail to J. Everding re: 3Q Software Pool with comments |

45

**EXHIBIT A**

**APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
BE INCLUDED IN THE RECORD ON APPEAL**

| 1296 | 12/11/2000 | PX 54 | D. Ackerman e-mail to J. Everding re: software pool notes |
|------|------------|-------|-----------------------------------------------------------|
| 1297 | 10/23/2000 | PX 55 | L. Hicks e-mail to D. Ackerman, B. Zlotnick and D. Huber re: Lucent/Winstar EOQ disconnects |
| 1298 | 2/8/2001 | PX 56 | L. Hicks fax to R. Uhl re: Lucent 3Q Recap |
| 1299 | 10/19/2000 | PX 57 | Proposals to address both overruns and new end quarter request |
| 1300 | 12/19/2000 | PX 58 | L. Hicks fax to R. Uhl re: Optical Equipment Bill and Hold Letters – Lucent |
| 1301 | 12/11/2000 | PX 59 | D. Ackerman e-mail to J. EEverding re: Lucent Q3 Services |
| 1302 | 9/22/2000 | PX 60 | D. Harris letter to D. Ackerman re: services in support of the Winstar network deployment |
| 1303 | 9/22/2000 | PX 61 | D. Harris letter to R. Uhl re: services in support of the Winstar network deployment |
| 1304 | 12/11/2000 | PX 62 | D. Ackerman e-mail to J. EEverding re: Lucent Contractor Services |
| 1305 | 7/10/2000 | PX 63 | B. Zlotnick e-mail to L. Hicks re: B-Site Pricing |
| 1306 | 11/8/2000 | PX 64 | L. Hicks memo to D. Ackerman re: Ackerman/Plunkett EOQ Issues meeting |
| 1307 | 9/20/2000 | PX 65 | B Zlotnick e-mail to F. Jules, R. Uhl, N. Kantor, F Rubin and D Ackerman re: WNSS 2000 Capital Plan - Action Items |
| 1308 | 12/15/2000 | PX 66 | R. Uhl e-mail to mexadaktilos@winstar.com re: End of Quarter Deal |
| 1309 | | PX 67 | D. Ackerman e-mail to J. Everding re: Lucent 3Q revenue deal write up |
| 1310 | 9/27/2000 | PX 68 | R. Helfrich e-mail to L. Hicks reL: Bill & Hold Letter |
| 1311 | 12/27/2000 | PX 69 | B. Zlotnick e-mail to K Monaco and F Rubin re: Lucent equipment acceptance |
| 1312 | 9/29/2000 | PX 70 | B Zlotnick letter to V Petrini re: Bill and Hold Letter for Lucent Optical Equipment. |
| 1313 | 9/29/2000 | PX 71 | B. Zlotnick letter to V Petrini re: Bill and Hold Letter for Lucent Stinger DSLAMs and cabinets. |
| 1314 | 1/18/2001 | PX 72 | DELETED |
| 1315 | 9/29/2000 | PX 73 | B. Zlotnick e-mail to F. Rubin re: Deal Parameter Documents. |
| 1316 | 9/18/2000 | PX 74 | L. Hicks e-mail to D. Ackerman and B. Zlotnick re: 9/19/00 Lucent meeting. |
| 1317 | 12/11/2000 | PX 75 | D. Ackerman e-mail to J. Everding re: EoQ Deal. |
| 1318 | 12/11/2000 | PX 76 | D. Ackerman e-mail to J. Everding re: Lucent Equipment. |
| 1319 | | PX 77 | DX 56 |
| 1320 | 10/4/2000 | PX 78 | F. Rubin e-mail to R. Uhl re: Capital Spend - 2000 and 2001. |
| 1321 | 12/15/2000 | PX 79 | R. Uhl e-mail to mexadaktilos@winstar com re: 3Q Software Pool with comments. |
| 1322 | 1/3/2001 | PX 80 | G. Simpson e-mail to F. Rubin and B. Zlotnick re: Revised Lucent Credits. |
| 1323 | 9/22/2000 | PX 81 | DELETED |
| 1324 | 9/29/2000 | PX 82 | R Uhl memo to D. Ackerman, F Jules, N Kantor, et al. re: Lucent acceptance of Winstar Service charges. |
| 1325 | 8/3/1999 | PX 83 | Notes re: Winstar/Lucent Turn-Key process meeting |
| 1326 | 8/9/2000 | PX 84 | M. Dowdy e-mail to J. Diroma re: Lucent Bill |
| 1327 | 3/21/2001 | PX 85 | M Montemarano e-mail to C. Spurrer; M Pires and D Harris re: chart that winstar sent me |
| 1328 | 9/18/2000 | PX 86 | M. Kerner e-mail to N Aversano and W. Plunkett re: Status of Winstar account |
| 1329 | 9/24/2000 | PX 87 | N. Kantor e-mail to N. Aversano re: Winstar services purchase order |
| 1330 | 9/25/2000 | PX 88 | J. Cocito e-mail to F. Manzi re: winstar services |
| 1331 | | PX 89 | Daily Progress Report Key Deals |
| 1332 | 4/13/2001 | PX 90 | D. Hsu e-mail to T. O'Hara re: subcontract Agreement |
| 1333 | 11/2/1999 | PX 91 | Notes re: Winstar Year 2000 spend meeting executive summary |
| 1334 | 3/29/2001 | PX 92 | J. Dirome e-mail to W. Plunkett re: Winstar services pass thru |
| 1335 | 12/17/1999 | PX 93 | J. Diroma e-mail to V Petrini; C Naylor; R. Helfrich re: winstar 400G Orders Call on monday 12/20/99 |
| 1336 | 12/20/1999 | PX 94 | N. Aversano e-mail to R. McGinn re: winstar |
| 1337 | 12/21/1999 | PX 95 | C. Naylor e-mail to R. Helfrich and V. Petrini re: EOQ Letter |

46

**EXHIBIT A**

**APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
BE INCLUDED IN THE RECORD ON APPEAL**

| | | | |
|---|---|---|---|
| 1338 | 12/21/1999 | PX 96 | Invoice - Winstar purchase order |
| 1339 | 9/30/2000 | PX 97 | Notes re: Lucent, SPN Q1 2000 Bill and Hold Support |
| 1340 | 8/1/2002 | PX 98 | Lucent's Responses and Objections to Plaintiffs' Third Set of Interrogatories |
| 1341 | 3/31/2000 | PX 99 | A. Zendle letter to C. Naylor re: Optical networking equipment |
| 1342 | 3/31/2000 | PX 100 | Notes re: Lucent service providers networks Critical Matters |
| 1343 | 11/27/2000 | PX 101 | M. Montemarano e-mail to J. Diroma and W. Fullerton re: fiscal 2000 follow up request |
| 1344 | 1/13/2000 | PX 102 | C. Naylor e-mail to C. Assimopoulos re: winstar confirmation letter |
| 1345 | 2/29/2000 | PX 103 | Invoice re: Winstar Purchase Order |
| 1346 | 5/24/2000 | PX 104 | E. Perricone e-mail to W. Viqueira; J. Cocito and N. Aversano re:winstar update |
| 1347 | 12/13/2000 | PX 105 | Notes re: 3Q revenue request |
| 1348 | | PX 106 | Presentation re: Lucent Revenue Recognition Policy |
| 1349 | 8/27/2000 | PX 107 | D. Harris e-mail to N. Aversano and D. Hopkins re: winstar briefing |
| 1350 | 8/18/2000 | PX 108 | M. Kerner e-mail to N. Aversano and W. Plunkett re: Status of Winsta Account |
| 1351 | 10/30/2000 | PX 109 | A. Dollins e-mail to D. Harris; V. Petrini; D. Walsh etc. re: Exec. Review and Bus. Case Approval Call |
| 1352 | 9/27/2000 | PX 110 | N. Aversano letter to R. Uhl re: purchase order |
| 1353 | 12/8/2000 | PX 111 | D. Ackerman e-mail to J. Everding re: services addendum |
| 1354 | 12/15/2000 | PX 112 | A. Brunner e-mail to V. Petrini; E. De Leon; V. Esperanza etc. re: On behalf of Susan Schnell - 12/7/2000 NAR Deal Approval Notification: Winstar, Quest, and Verizon |
| 1355 | 10/27/2000 | PX 113 | L. Fawcett e-mail to N. De Tura; T. Swift; D. Butze re: Winstar services proposal |
| 1356 | | PX 114 | Notes re: Business status: Winstar new service briefing |
| 1357 | 11/30/2000 | PX 115 | Notes re: conference call |
| 1358 | 12/3/2000 | PX 116 | D. Harris e-mail to C. Spurrier re: Winstar financial issues |
| 1359 | 11/21/2000 | PX 117 | D. Harris e-mail to C. Spurrier re: sept. 20 meeting with Nate Kantor |
| 1360 | 12/28/2000 | PX 118 | M. Montemarano e-mail to C. Mcgovern; C. Carroll re: Winstar |
| 1361 | 1/5/2001 | PX 119 | E. Perricone e-mail to P. Derrick et al re: Winstar-Clarifications and Wish List Materials for Story Board |
| 1362 | 2/2/2001 | PX 120 | B. Verwaayen e-mail to M. Montemarano; C. Spurrier; D. Harris re: Update to Winstar "strategy" |
| 1363 | 11/21/2003 | PX 121 | DELETED |
| 1364 | 4/17/2001 | PX 122 | Ackerman Affidavit |
| 1365 | 10/21/1998 | PX 123 | Supply Agreement |
| 1366 | 9/18/2000 | PX 124 | L. Hicks e-mail to D. Ackerman re: Lucent/Winstar EOQ disconnects |
| 1367 | 9/29/2000 | PX 125 | W000810/ZWC0144192 B. Plunkett letter to D. Ackerman re: purchase Agreement |
| 1368 | 2/7/2001 | PX 126 | L. Hicks fax to D. Ackerman re: Lucent 3Q Recap |
| 1369 | 12/11/2000 | PX 127 | D. Ackerman e-mail to J. Everding re: Lucent and Capex |
| 1370 | 10/20/2000 | PX 128 | B. Plunkett letter to D. Ackerman re: optical equipment. W333832/ZWC0144194 |
| 1371 | 10/6/2000 | PX 129 | B. Plunkett letter to D. Ackerman re: equipment and services. W000825/ZWC0144193 |
| 1372 | 9/29/2000 | PX 130 | D. Harris letter to D. Ackerman re: unexpected operating costs W000809/ZWC0144191 |
| 1373 | 8/20/2000 | PX 131 | L. Hicks e-mail to N. Kantor re: Lucent meeting talking points |
| 1374 | 5/2/2000 | PX 132 | D. Ackerman e-mail to A. Zendle re: Siemens Proposal |
| 1375 | 10/20/2000 | PX 133 | B. Plunkett letter to D. Ackerman re: jointly developed pricing and commitments |
| 1376 | 9/22/2000 | PX 134 | D. Harris letter to D. Ackerman re: supply Agreement |
| 1377 | 12/7/2000 | PX 135 | F. Rubin letter to B. Perricone re: wire transfer |

# EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 1378 | 11/10/2000 | PX 136 | W. Rouhana e-mail to N. Kantor re: Services Meeting on 15th |
|------|-----------|--------|------------------------------------------------------------|
| 1379 | 12/11/2000 | PX 137 | D. Ackerman e-mail to J. Everding re: Services Meeting |
| 1380 | 5/4/2000 | PX 138 | Credit Agreement |
| 1381 | 10/16/2000 | PX 139 | B. Plunkett letter to D. Ackerman re: deferred billing |
| 1382 | 12/11/2000 | PX 140 | B. Zlotnick e-mail to F. Jules and R. Fred re: Lucent and Capex |
| 1383 | 12/11/2000 | PX 141 | D. Ackerman e-mail to J. Everding re: Winstar/Lucent deal |
| 1384 | 10/23/2000 | PX 142 | D. Ackerman e-mail to L. Hicks re: Software pool notes |
| 1385 | 1/10/2000 | PX 143 | RE: Communication to staff |
| 1386 | 8/20/2000 | PX 144 | L. Hicks e-mail to N. Kantor re: Lucent meeting talking points. |
| 1387 | 3/27/2001 | PX 145 | Notice of Request for Borrowing |
| 1388 | 3/27/2001 | PX 146 | F. Jules to J. Marco re: Lucent Content for 2001. |
| 1389 | 10/27/2000 | PX 147 | N. Kantor e-mail to F. Jules and R. Uhl re: 2000 Capex forecast. |
| 1390 | 1/5/2001 | PX 148 | F. Rubin letter to R. Uhl re: LU Balance Analysis. |
| 1391 | 12/19/2000 | PX 149 | E. Perricone letter to Winstar re: Lucent Credit Facility |
| 1392 | 11/6/2000 | PX 150 | F. Rubin letter to Siemens AG re: Term Loan C. |
| 1393 | 11/13/2000 | PX 151 | F. Rubin letter to M. Hund Mejean re: Winstar/Lucent Financings. |
| 1394 | 11/20/2000 | PX 152 | M Hund Mejean and D Harris letter to F Rubin re: increase in Winstar financing. |
| 1395 | 9/18/2000 | PX 153 | M Kerner e-mail to N Aversano and W. Plunkett re: Status of Winstar account |
| 1396 | 8/31/2000 | PX 154 | D. Harris e-mail to W. Plunkett and V. Heron re: Winstar Situation |
| 1397 | | PX 155 | Winstar notes re: negative reaction |
| 1398 | 12/11/2000 | PX 156 | D. Ackerman e-mail to J. Everding re: Deal Documents |
| 1399 | 9/19/2000 | PX 157 | N. Aversano e-mail to N. Kantor re: winstar/lucent deal |
| 1400 | 9/24/2000 | PX 158 | N. Kantor e-mail to N. Aversano re: Winstar Services Purchase PX Order |
| 1401 | 9/22/2000 | PX 159 | D. Harris e-mail to N. Aversano re: Business Deal V2 |
| 1402 | 12/11/2000 | PX 160 | D. Ackerman e-mail to J. Everding re: updated deals list |
| 1403 | | PX 161 | Winstar Daily Progree Report Key Deals |
| 1404 | 9/29/2000 | PX 162 | software pool Agreement between winstar and lucent |
| 1405 | 11/28/2000 | PX 163 | R. Rawson letter to N. Aversano re: review of a revenue recognition |
| 1406 | 1/4/1999 | PX 164 | Agreement for network build-out services  WC0011532-WC0011538 & WC0019779 |
| 1407 | 10/23/2000 | PX 165 | Lucent Technologies' Board of Directors name Henry Schacht Chairman and CEO. |
| 1408 | 10/26/2000 | PX 166 | D. Hopkins message re: H. Schacht and W. Rouhana dinner meeting. |
| 1409 | 7/15/2003 | PX 167 | Lucent Technologies comments on Fortune magazine article about its SEC investigation. |
| 1410 | 9/25/2000 | PX 168 | N. Kantor e-mail to D. Ackerman, F. Jules and R. Uhl re: Updated Deals List. |
| 1411 | 9/29/2000 | PX 169 | "Lucent Vendor Relationship Rock-Solid" |
| 1412 | 4/18/2001 | PX 170 | Winstar v. Lucent Complaint (Adverserial Proceeding). |
| 1413 | 10/19/1998 | PX 171 | W. Rouhana e-mail to N. Kantor, W. Rouhana, et al. re: updated materials. |
| 1414 | 10/26/2000 | PX 172 | F. Rubin e-mail to B. Rouhana and R. Uhl re: Lucent Term Sheet. |
| 1415 | 2/5/2001 | PX 173 | R. Uhl e-mail to N. Kantor re: Anticipated LU Borrowings. |
| 1416 | 2/19/2003 | PX 174 | Patricia Russo named chairman of Lucent Technologies; Henry Schacht steps down, but will remain a member of the board. |
| 1417 | 11/5/2001 | PX 175 | Deposition testimony of Henry Schacht from Aversano v. Lucent. |
| 1418 | 9/10/2002 | PX 176 | Deposition testimony of Henry Schacht from Obtek v. Lucent. |
| 1419 | 10/29/2002 | PX 177 | Deposition testimony of Henry Schacht from Obtek v. Lucent. |
| 1420 | 11/21/2000 | PX 178 | Lucent Technologies identifies revenue issue from fourth fiscal quarter 2000. |
| 1421 | 7/7/2003 | PX 179 | Article from Fortune magazine entitled, "The Whistleblower and the CEO; In the Lucent scandal, the ex-boss will walk. The woman who accused him is now an SEC target. And guess who's paying the penalty' Owners like You." |
| 1422 | 10/22/1998 | PX 180 | $2 Billion Winstar/Lucent Strategic Agreement to Expand Winstar's Broadband Network. |

48

**EXHIBIT A**

**APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
BE INCLUDED IN THE RECORD ON APPEAL**

| 1423 | 12/14/2000 | PX 181 | J. Carter e-mail to C. Carroll, J Diroma, C. Spurrier, et al re: Winstar Agreements. |
|------|------------|--------|------|
| 1424 | 1/19/2000 | PX 182 | J. Cocito e-mail to M. Wilson, C. Naylor and J. Diroma re: Winstar Services. |
| 1425 | 1/20/2000 | PX 183 | J. Cocito e-mail to J. Diroma re: Winstar Services. |
| 1426 | 9/12/2000 | PX 184 | P. Derrick e-mail to P. Hayes and J. Fong re: Commitments Forecast |
| 1427 | 10/20/2000 | PX 185 | P. Derrick e-mail to D. Hopkins re: Winstar Refinance Notice |
| 1428 | 10/20/2000 | PX 186 | Winstar Executive Briefing |
| 1429 | 11/2/2000 | PX 187 | L W00201651 & L W00016795-L W00016797 P Hayes e-mail to P Derrick re: Winstar: Implications of Refinance Notice |
| 1430 | 11/7/2000 | PX 188 | P. Hayes e-mail to P. Derrick re: Winstar Recourse Removal |
| 1431 | 11/10/2000 | PX 189 | P Hayes e-mail to P Derrick and M Keefe, Esq re: Winstar Gameplan over next few days |
| 1432 | 12/8/2000 | PX 190 | E Perricone e-mail to M Hund-Mejean and D Hopkins re: Winstar Repayment |
| 1433 | 11/16/2000 | PX 191 | P. Hayes e-mail to M. Hund-Mejean re: Winstar |
| 1434 | 11/7/2000 | PX 192 | M. Hund-Mejean letter to R. Uhl re: Lucent Vendor Financing |
| 1435 | 6/1/2000 | PX 193 | L. Rogers e-mail to D. Hopkins re: Winstar |
| 1436 | 8/21/2000 | PX 194 | L Rogers e-mail to W Viqueira, N. Aversano, P Derrick; G Harris and D Hopkins re: Winstar |
| 1437 | 8/27/2000 | PX 195 | D. Harris e-mail to N. Aversano and D. Hopkins re: Winstar Briefing |
| 1438 | 11/10/2000 | PX 196 | W. Fullerton e-mail to M. Montemarano re: Winstar |
| 1439 | 12/12/2000 | PX 197 | C. Spurrier e-mail to D. Hopkins re: Winstar |
| 1440 | 11/30/2000 | PX 198 | C. Spurrier e-mail to D. Hopkins and B. Verwaayen re: Winstar |
| 1441 | 12/28/2000 | PX 199 | M. Montemarano e-mail to C. Mcgovern and C. Carroll re: Winstar |
| 1442 | 11/2/2000 | PX 200 | M. Hund-Mejean e-mail to D. Hopkins re: Winstar |
| 1443 | 1/29/2001 | PX 201 | E Perricone e-mail to D Hopkins and B. Verwaayen re: Winstar Due Diligence |
| 1444 | 12/6/2000 | PX 202 | D. Hopkins e-mail to C. Spurrier re: Winstar |
| 1445 | | PX 203 | P. Derrick e-mail to D. Hopkins re: follow up (response to 12/27/00 e-mail) |
| 1446 | 1/29/2001 | PX 204 | M Montemarano e-mail to P Derrick, G Caviness and D Hopkins re: Winstar |
| 1447 | 9/5/2000 | PX 205 | Email from L. Rogers to Distribution list re Winstar update |
| 1448 | 11/21/2000 | PX 206 | Lucent Technologies Audit Plan Revenue Recognition |
| 1449 | 5/26/2001 | PX 207 | Email from D. Hopkins to R. McGinn re discussion with B. Rouhana |
| 1450 | 8/20/2000 | PX 208 | D Hopkins e-mail to W Viqueira, N Aversano, P Derrick and G Harris re: Winstar |
| 1451 | 8/28/2000 | PX 209 | M. Mcguinn e-mail to B. Ball re: Winstar briefing |
| 1452 | 8/8/2000 | PX 210 | Anonymous letter to D. Hopkins re: fabricated revenue |
| 1453 | 3/29/2001 | PX 211 | J. Diroma e-mail to W. Fullerton re: Winstar Services Pass thru |
| 1454 | 6/27/2000 | PX 212 | T Loner e-mail to J Diroma re: $60M Winstar funds Transfer for this last quarter |
| 1455 | 9/30/2000 | PX 213 | PwC working paper re: Lucent-Service Provider Network |
| 1456 | 12/20/2000 | PX 214 | H. Schacht and D. Hopkins letter to PwC re: Lucent audits |
| 1457 | 10/26/2000 | PX 215 | Messages from D. Hopkins and D. Sabeh |
| 1458 | 12/14/2000 | PX 216 | J. Carter e-mail to C Carroll, J Diroma, C. Spurrier and M Hund-Mejean re: Winstar Agreements |
| 1459 | 12/28/2000 | PX 217 | D. Hopkins e-mail to M Hund-Mejean, D Harris and M. Montemarano re: Winstar |
| 1460 | 9/1/2000 | PX 218 | V. Heron e-mail to D. Harris re: Winstar Update |
| 1461 | 10/11/2000 | PX 219 | J Diroma e-mail to D. Harris, V Petrini and R Helfrich re: Winstar ONG Bill and Hold |
| 1462 | 12/7/2000 | PX 220 | M. Hund-Mejean e-mail to D. HOpkins re: Winstar Repayment |
| 1463 | 6/16/2000 | PX 221 | Presentation re: Customer Finance Strategy |

49

# EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 1464 | 8/8/2000 | PX 222 | Anonymous letter to D. Hopkins re: fabricated revenue w/ handwritten notes from C. Watson and D. Hopkins. |
|---|---|---|---|
| 1465 | 9/24/2000 | PX 223 | N. Kantor e-mail to N. Aversano re: Winstar Services Purchase Order. |
| 1466 | | DX 577 | |
| 1467 | | PX 225 | Summary General Terms and Conditions - Lucent Vendor Finance Facility to WVF-LLC. |
| 1468 | 5/2/2000 | PX 226 | E. Perricone and J. Kersten memo to P. Sperling, J. Orlando and B. Viqueira re: $2 Billion Facility for Winstar. |
| 1469 | 9/22/2000 | PX 227 | Notice of Request for Borrowing. |
| 1470 | 1/8/2001 | PX 228 | C. Spurrier e-mail to D. Harris re: disbursements to Winstar. |
| 1471 | 12/28/2000 | PX 229 | E. Perricone e-mail to P. Derrick, M. Montemarano, D. Harris, et al. re: Winstar-Financing of Services under Credit Agreement dated May 4, 2000. |
| 1472 | 11/1/2000 | PX 230 | E. Perricone e-mail to F. Izzo, L. Rogers and M. Keefe re: Winstar memo. |
| 1473 | 11/2/2000 | PX 231 | E. Perricone e-mail to P. Derrick re: Winstar Implications of Refinance Notice. |
| 1474 | 12/10/2000 | PX 232 | M. Hund-Mejean e-mail to E. Perricone re: Winstar Repayment. |
| 1475 | 1/3/2001 | PX 233 | E. Perricone e-mail to P. Derrick, M. Keefe and W. Keller re: Potential Winstar Re-negotiations. |
| 1476 | 5/4/2000 | PX 234 | Amendment No. 2 and New Lender Agreement |
| 1477 | 4/5/2000 | PX 235 | N. Holcomb e-mail to A. Zendle and P. Soltesz re: Siemens Accelerated Proposal |
| 1478 | 11/6/2000 | PX 236 | DELETED |
| 1479 | 3/23/2001 | PX 237 | Chart of 3Q 1999 Estimated Lucent Billing. |
| 1480 | 5/5/2001 | PX 238 | Chart of 4th Quarter 1999 Actual Lucent Billing. |
| 1481 | 5/6/2001 | PX 239 | Winstar Communications - Lucent Billing for Capital Labor 1Q Actual. |
| 1482 | 10/13/2000 | PX 240 | Winstar Communications - Lucent Billing for Capital Labor Q3 2000i Actual. |
| 1483 | 5/9/2001 | PX 241 | Winstar Communications - Lucent Billing for Capital Labor Q4 2000i Estimate. |
| 1484 | 12/27/2000 | PX 242 | J. Dornan e-mail to G. Simpson and M. Carney re: 4Q Lucent Labor Bill Estimate. |
| 1485 | 12/28/2000 | PX 243 | R. Uhl fax to M. Montemarano re: analysis of Winstar's 4Q 2000 Capital Labor. |
| 1486 | 4/2/2001 | PX 244 | G. Simpson e-mail to D. Nidowicz re Q1 2001 Financable Labor. |
| 1487 | 4/2/2001 | PX 245 | D. Nidowicz fax to G. Caviness re: Lucent Billing for Capital Labor Q1 2001 Estimate. |
| 1488 | 3/27/2001 | PX 246 | Notice of Request of Borrowing. |
| 1489 | 9/21/1999 | PX 247 | Statement and Invoice to Lucent for $37,075,925. |
| 1490 | 1/21/2000 | PX 248 | Statement and invoice to Lucent in the amount of $38,758,042. |
| 1491 | 5/5/2000 | PX 249 | Statement and invoice to Lucent in the amount of $55,485,175. |
| 1492 | 10/1/2000 | PX 250 | Statement and invoice to Lucent in the amount of $67,291,934. |
| 1493 | 11/29/2000 | PX 251 | P. Derrick e-mail to M. Hund-Mejean, J. Bisson, M. Montemarano, et al. re: Winstar Negotiations. |
| 1494 | 12/7/2000 | PX 252 | M. Hund-Mejean e-mail to M. Montemarano and C. spurrier re: Winstar Repayment. |
| 1495 | 10/30/2000 | PX 253 | M. Montemarano e-mail to D. Harris re: Winstar Services Proposal. |
| 1496 | 12/14/2000 | PX 254 | J. Carter e-mail to C. Carroll, J. Diroma, C. Spurrier, et al re: Winstar Agreements. |
| 1497 | 2/9/2001 | PX 255 | Winstar- Lucent Meeting Agenda |
| 1498 | 12/29/2000 | PX 256 | Notice of Request for Borrowing. |
| 1499 | 11/7/2000 | PX 257 | P. Derrick e-mail to M. Hund-Mejean re: draft Winstar Agreement. |
| 1500 | 11/13/2000 | PX 258 | M. Montemarano e-mail to G. Vashist, F. Izzo, W. Keller, et al re: Winstar Gameplan over next few days. |
| 1501 | 11/2/2000 | PX 259 | Credit Review Worksheet prepared by J. Alter for WVF-I, LLC. |

# EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL

| | | | |
|---|---|---|---|
| 1502 | 12/29/2000 | PX 260 | P. Derrick e-mail to M. Montemarano re: payments to Winstar. |
| 1503 | 12/29/2000 | PX 261 | B. Verwaayen e-mail to C. Spurrier, M. Montemarano re: Winstar Renegotiations. |
| 1504 | 1/2/2001 | PX 262 | Potential Amended Financing Parameters. |
| 1505 | 1/14/2001 | PX 263 | D. Hopkins e-mail re: M. White re: winstar meeting montemarano notes |
| 1506 | 2/12/2001 | PX 264 | R. Uhl letter to M. Montemarano (cc: C. Spurrier, D. Harris, B. Verwaayen and N. Kantor) re: Lucent's position on funding for non-Lucent performed services. |
| 1507 | 11/6/2000 | PX 265 | W. Fullerton e-mail to M. Montemarano re: winstar services |
| 1508 | 3/29/2001 | PX 266 | J. Diroma e-mail to W. Fullerton re: winstar services pass thru |
| 1509 | 1/20/2000 | PX 267 | J. Cocito e-mail to J. Diroma re: winstar services |
| 1510 | 11/7/2000 | PX 268 | C. Kelly e-mail to W. Fullerton re: Winstar Services |
| 1511 | 11/10/2000 | PX 269 | J. Diroma e-Mial to M. Montemarano re: winstar services addendum - restricted internal review and comment |
| 1512 | 11/29/2000 | PX 270 | W. Fullerton e-mail to C. Kelly and J. Diroma re: Immediate attention requested Winstar Services |
| 1513 | 12/6/2000 | PX 271 | W. Fullerton e-mail to M. Montemarano; D. Hopkins and M. White re: winstar Agreement |
| 1514 | 1/15/2001 | PX 272 | Discussion re: Winstar refinancing. |
| 1515 | 1/2/2001 | PX 273 | Notes re: Potential Amended Financing Parameters. |
| 1516 | 1/8/2001 | PX 274 | D. Harris e-mail to C. spurrier, B. Verwaayen, M. Montemarano re: Agenda for meeting with Winstar. |
| 1517 | 2/6/2001 | PX 275 | C. Mcgovern e-mail to C. Spurrier, B. Verwaayen, D. Harris attaching letter to sent to R. Uhl on 2/6/01. |
| 1518 | 2/12/2001 | PX 276 | R. Uhl letter to M. Montemarano (cc: C. Spurrier, D. Harris, B. Verwaayen and N. Kantor) re: Lucent's position on funding of non-Lucent performed services. |
| 1519 | 2/2/2001 | PX 277 | B. Verwaayen e-mail to M. Montemarano, C. Spurrier and D. Harris re: Update to Winstar 'strategy'. |
| 1520 | 3/21/2001 | PX 278 | E. Perricone e-mail to P. Derrick and M. Hund Mejean re: Winstar conversion notes. |
| 1521 | 3/21/2001 | PX 279 | M. Montemarano e-mail to D. Harris, D. Hopkins, M. Hund-Mejean, et al. re: 3/21/01 Winstar meeting. |
| 1522 | 4/17/2001 | PX 280 | Affidavit of Richard Uhl. |
| 1523 | 9/29/2000 | PX 281 | R. Uhl to D. Ackerman, F. Jules, N. Kantor, J. Maloney, F. Rubin and B. Zlotnick re: Lucent acceptance of Winstar service charges. |
| 1524 | 2/7/2001 | PX 282 | DELETED |
| 1525 | 3/30/2001 | PX 283 | DELETED |
| 1526 | 2/25/2001 | PX 284 | F. Jules e-mail to R. Uhl re: L'Obrien Cash Forecast. |
| 1527 | 11/10/2000 | PX 285 | H. Shartel e-mail to F. Rubin and R. Uhl re: Savings Recommendations. |
| 1528 | 10/20/2000 | PX 286 | H. Shartel e-mail to F. Jules re: Winstar actions. |
| 1529 | 12/29/2000 | PX 287 | DELETED |
| 1530 | 6/26/2000 | PX 288 | D. Ackerman e-mail to N. Kantor re: End of quarter deals with Lucent & Winstar |
| 1531 | 10/12/2000 | PX 289 | D. Ackerman e-mail to F. Jules and R. Uhl re: Change in Plan on 2000 CapEx Budget |
| 1532 | 8/27/2001 | PX 290 | D. Harris e-mail to N. Aversano re: winstar briefing |
| 1533 | 12/11/2000 | PX 291 | Complaint; jury demand; certification to nj rule 4:5-1 |
| 1534 | 10/20/2000 | PX 292 | E. Perricone e-mail to D. Harris re: Winstar refinance notice |
| 1535 | 9/6/2000 | PX 293 | DELETED |
| 1536 | 9/20/1999 | PX 294 | J. Quinn e-mail to J. Diroma re: winstar services |
| 1537 | 6/27/2000 | PX 295 | T. Loner e-mail to J. Diroma re: 60M winstar funds transfer for this last quarter |
| 1538 | 3/30/2000 | PX 296 | Notes re: winstar pass-thru arrangment |

51

**EXHIBIT A**

**APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
BE INCLUDED IN THE RECORD ON APPEAL**

| 1539 | 2/27/2000 | PX 297 | J. Cocito e-mail to J. Diroma re: Kanan Vocall revenue issues |
|------|-----------|--------|---------------------------------------------------------------|
| 1540 | 9/14/1999 | PX 298 | J. Diroma e-mail to A. Borthoumiaus; D. Christian etc. re: End of quarter revenue recognition |
| 1541 | 12/20/1999 | PX 299 | R. Halrich e-mail to C. Asalimopotes re: winstar 4000 orders call on Monday |
| 1542 | 3/21/2000 | PX 300 | E. Di Pietro e-mail to J. Diroma re: bill and hold |
| 1543 | 12/28/2000 | PX 301 | D. Hopkins e-mail to M. Hund-Mejean; D. Harris; M. Montemarano re: winstar |
| 1544 | 8/17/2000 | PX 302 | V. Petrini e-mail to D. Harris re: A1-Suspension of CS Services |
| 1545 | 12/14/2000 | PX 303 | R. Mark e-mail to S. Rosen; D. Hsu; A. Saiewitz etc. re: winstar Agreements |
| 1546 | 3/1/2004 | PX 304 | Response to Lucent's Objections to Plaintiff's Deposition Upon Written Questions of Deborah Harris |
| 1547 | 11/19/2000 | PX 305 | M. Hund-Mejean e-mail to D. Harris re: Winstar |
| 1548 | 12/8/2000 | PX 306 | R. Helfrich e-mail to R. Kipke and J. Diroma re: Winstar Bill and Hold IMMEDIATE ATTENTION NEEDED |
| 1549 | 12/8/2000 | PX 307 | R. Kipke e-mail to R. Helfrich and J. Diroma re: Winstar bill and Hold IMMEDIATE ATTENTION NEEDED |
| 1550 | 12/28/2000 | PX 308 | E. Perricone e-mail to P. Derrick et al re: Winstar-Financing of Services under Credit Agreement dated May 4, 2000 |
| 1551 | 1/26/2001 | PX 309 | Winstar/Lucent Meeting |
| 1552 | 12/8/2000 | PX 310 | D. Ackerman e-mail to J. EEverding re: Services Addendum |
| 1553 | 11/2/2000 | PX 311 | M. Hund-Mejean e-mail to D. Hopkins re: Winstar |
| 1554 | 12/26/2000 | PX 312 | H. Snartel e-mail to F. Rubin re: Net 90. |
| 1555 | 12/19/2000 | PX 313 | E. Perricone letter to Winstar Communications, Inc. re: Lucent Credit Facility. |
| 1556 | 9/20/1999 | PX 314 | J. Quinn e-mail to J. Diroma re: Winstar Services. |
| 1557 | 2/1/2001 | PX 315 | D. Harris e-mail to M. Montemarano and E. Perricone re: Winstar draw. |
| 1558 | 2/6/2001 | PX 316 | M. Montemarano e-mail to K. Becker and P. Derrick re: 2/5/01 approval for Winstar loan advance. |
| 1559 | 7/24/2000 | PX 317 | J. Diroma e-mail to J. Cocito, C. Naylor, E. Perricone, et al. re: Winstar Services. |
| 1560 | 11/16/2000 | PX 318 | M. Hund-Mejean e-mail to P. Hayes re: sending notice to Winstar. |
| 1561 | 6/12/1998 | PX 319 | Invoice from Winstar to Lucent in the amount of $25,000,000. |
| 1562 | 10/26/2000 | PX 320 | B. Nelson fax to D. Harris re: Lucent Product Overview from N. Kantor. |
| 1563 | 12/21/2000 | PX 321 | Lucent Technologies reports results of operational and financial review. |
| 1564 | 12/5/2000 | PX 322 | P. Derrick e-mail to M. Hund-Mejean re: Winstar due diligence. |
| 1565 | 9/29/2000 | PX 323 | Software Pool Agreement. |
| 1566 | 10/20/2000 | PX 324 | $135M Software Pool Allocations Fiscal Q42000 EoQ Deal. |
| 1567 | 11/16/2000 | PX 325 | J. Diroma e-mail to R. Moogan re: Winstar Special Services Arrangement. |
| 1568 | 10/19/2000 | PX 326 | Lucent/Winstar End of Quarter Deal Fiscal Year Q42000. |
| 1569 | 3/26/2001 | PX 327 | DELETED |
| 1570 | 12/19/2001 | PX 328 | Deloitte and Touche Valuaton Consulting Services Report |
| 1571 | 12/19/2001 | PX 329 | Empire Valuation Consultants Report |
| 1572 | 9/29/2000 | PX 330 | N. Aversano e-mail to D. Harris, W. Plunkett, and J. Cocito re: Lucent Credit. |
| 1573 | 10/22/1998 | PX 331 | $2 Billion Winstar/Lucent stratigic Agreement to expand Winstar's broadband network |
| 1574 | 10/23/2000 | PX 332 | Lucents' Board of Directors names Henry Schacht Chairman and CEO |
| 1575 | 2/27/2003 | PX 333 | Lucent Technologies reaches agree to resolve Agreement in principle with SEC staff all matters under investigation |
| 1576 | 3/17/2004 | PX 334 | Lucent Technologies to make payment as part of SEC settlement |
| 1577 | 12/19/2001 | PX 335 | IDT Corp form 8-K with schedule filed December 19, 2001 with SEC |
| 1578 | 8/28/2002 | PX 336 | IDT Corp form 8-KA with schedules filed August 28, 2002 with SEC |
| 1579 | 11/7/2000 | PX 337 | P. Derrick e-mail to M. Hund-Mejean re: drafting of Winstar Agreement. |
| 1580 | 11/2/2000 | PX 338 | J. Diroma fax to M. Montemarano re: Winstar financing issues. |
| 1581 | 11/7/2000 | PX 339 | P. Hayes e-mail to P. Derrick re: Winstar Recourse Removal. |
| 1582 | 10/4/2001 | PX 340 | Secured Proof of Claim for $138,957,218.90. |

**EXHIBIT A**

**APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
BE INCLUDED IN THE RECORD ON APPEAL**

| | | | |
|---|---|---|---|
| 1583 | 10/11/2001 | PX 341 | Unsecured Proof of Claim |
| 1584 | 10/11/2001 | PX 342 | Secured Proof of Claim. |
| 1585 | 3/28/2003 | PX 343 | Proof of Claim regarding Rejection Damages |
| 1586 | 4/2/2001 | PX 344 | Invoices NWC0004071, NWC0004076-NWC0004077, NWC0004084-NWC0004087, NWC004098, NWC0004621, NWC0004630, NWC0004766 |
| 1587 | | PX 345 | 2Q00 EOQ Deal Summary. |
| 1588 | 7/1/2000 | PX 346 | V. Petrini e-mail to W. Plunkett re: revised 3Q00 deal. |
| 1589 | 7/6/1999 | PX 347 | Lucent inovice to Winstar in the amount of $11,794,770.00. |
| 1590 | 6/26/2000 | PX 348 | C. Naylor e-mail to V. Petrini and W. Plunkett re: EoQ Deal. |
| 1591 | 9/22/2000 | PX 349 | R. Helfrich e-mail to P. Perry, A. Fulton, M. Riesa, et al. re: Software Pool. |
| 1592 | | PX 350 | Fiscal Q3 2000 EoQ Deal. |
| 1593 | | PX 351 | Lucent/Winstar End of Quarter Deals Fiscal Year 2000. |
| 1594 | 11/22/1999 | PX 352 | D. Digirolomo e-mail to F. Manzi re: Winstar Yr. 2000 Spend Meeting. |
| 1595 | 12/30/1999 | PX 353 | M. Wilson letter to D. Ackerman re: $3,000,000 Lucent credit to Winstar. |
| 1596 | 2/6/2000 | PX 354 | J. Noda e-mail to S. Cassady and F. Manzi re: Winstar 4Q99 Funds Transfer PO. |
| 1597 | 3/30/2000 | PX 355 | M. Wilson fax to D. Ackerman re: $3,000,000 Lucent credit to Winstar. |
| 1598 | 3/31/2000 | PX 356 | A. Zendle letter to C. Naylor re: shipment of optical networking equipment. |
| 1599 | 3/31/2000 | PX 357 | M. Wilson letter to D. Ackerman re: $3,000,000 Lucent credit to Winstar. |
| 1600 | 4/27/2000 | PX 358 | S. Colross e-mail to J. Cocito re: Lucent's Purchase Money debt. |
| 1601 | 5/4/2000 | PX 359 | Winstar Outstanding New Facility. |
| 1602 | 6/23/2000 | PX 360 | D. Ackerman e-mail to N. Kantor re: Lucent cash. |
| 1603 | 6/30/2000 | PX 361 | W. Plunkett letter to D. Ackerman re: $14,000,000 Lucent credit to Winstar. |
| 1604 | 6/30/2000 | PX 362 | L. Hicks e-mail to V. Petrini re: shipment of optical networking equimpment. |
| 1605 | 6/30/2000 | PX 363 | W. Plunkett letter to D. Ackerman re: $14,000,000 Lucent credit to Winstar. |
| 1606 | 9/1/2000 | PX 364 | D. Harris e-mail to L. Rogers re: Winstar Update. |
| 1607 | 9/14/2000 | PX 365 | Lucent/Winstar End of Quarter Deals Fiscal Year 2000. |
| 1608 | 9/25/2000 | PX 366 | J. Cocito e-mail to F. Manzi re: Winstar Services. |
| 1609 | 9/25/2000 | PX 367 | A. Dollins e-mail D. Harris attaching Winstar Issue Status chart. |
| 1610 | 9/28/2000 | PX 368 | **DELETED** |
| 1611 | 9/29/2000 | PX 369 | D. Harris e-mail to D. Ackerman re: $10,000,000 00 Lucent PX credit to Winstar. |
| 1612 | 9/29/2000 | PX 370 | B. Zlotnick letter to V. Petrini re: Bill and Hold Letter for Lucent Optical Equipment. |
| 1613 | 9/29/2000 | PX 371 | N. Aversano e-mail to D. Harris, W. Plunkett, J. Cocito re: Lucent Credit. |
| 1614 | 10/6/2000 | PX 372 | B. Plunkett letter to D. Ackerman re: equipment and services commitment |
| 1615 | 10/16/2000 | PX 373 | B. Plunkett letter to D. Ackerman re: deferred billing |
| 1616 | 10/20/2000 | PX 374 | B. Plunkett letter to D. Ackerman re: $35M credit |
| 1617 | 10/20/2000 | PX 375 | B. Plunkett letter to D. Ackerman re: pricing and commitments |
| 1618 | 12/7/2000 | PX 376 | E. Perricone e-mail to F. Rubin re: Prepayment 12/7/00 |
| 1619 | 12/14/2000 | PX 377 | F. Jules e-mail to D. Ackerman re: Lucent |
| 1620 | 3/29/2001 | PX 378 | **DELETED** |
| 1621 | 5/8/2001 | PX 379 | **DELETED** |
| 1622 | 9/28/2000 | PX 380 | Winstar/Lucent 2000 Partnership Deal |
| 1623 | 6/28/2000 | PX 381 | L. Hicks e-mail to D. Ackerman re: EOQ deal |
| 1624 | 10/22/1998 | PX 382 | Winstar Conference Call transcript |
| 1625 | 7/14/1999 | PX 383 | N. Kantor e-mail to C. Dickson, F. Rubin and J. Dwyer re: Response to Your Request |
| 1626 | 4/5/2001 | PX 384 | **DELETED** |
| 1627 | 4/10/2001 | PX 385 | **DELETED** |
| 1628 | 6/28/2001 | PX 386 | **DELETED** |
| 1629 | 6/29/2001 | PX 387 | **DELETED** |
| 1630 | 4/22/1999 | PX 388 | J. Dirome e-mail to W. Plunkett re: winstar services |
| 1631 | 1/4/2000 | PX 389 | A. Carrone e-mail to M. Lester; A. Jerden; R. Lepore; etc.. re: winstar |

53

**EXHIBIT A**

**APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
BE INCLUDED IN THE RECORD ON APPEAL**

| | | | |
|---|---|---|---|
| 1632 | 1/18/2000 | PX 390 | J. Diroma e-mail to C. Naylor; M. Wilson; M. Epstein etc.. re: winstar servies |
| 1633 | 1/20/2000 | PX 391 | J. Cocito e-mail to J. Diroma re: winstar services |
| 1634 | 2/14/2000 | PX 392 | C. Naylor e-mail to J. Diroma; J. Cocito and D. Rigoth re: update 2 FW winstar services |
| 1635 | 11/9/2000 | PX 393 | J. Diroma e-mail to V. Patrini; D. Rigotti and A. Fulton re: Winstar services opportunity |
| 1636 | 12/21/1999 | PX 394 | Winstar purchase order |
| 1637 | 12/30/1999 | PX 395 | A. Zardla letter to C. Naylor re: Enginering |
| 1638 | 3/28/2000 | PX 396 | C. Naylor e-mail to V. Petrini re: winstar bill and hold |
| 1639 | 12/8/2000 | PX 397 | J. Diroma e-mail to D. Rigotti re: winstar issues |
| 1640 | 1/3/2001 | PX 398 | J. Diroma e-mail to M. Weinman and K. O'Grady re: March Inventory JE for Winstar |
| 1641 | | PX 399 | Lucents plan for policy change regarding "pass through winstar services" |
| 1642 | 9/30/2000 | PX 400 | Notes re: Winstar pass-thru Agreement |
| 1643 | 12/10/1999 | PX 401 | C. Naylor e-mail to V. Petrini re: Response to your letter of this afternoon |
| 1644 | | PX 402 | DELETED |
| 1645 | 2/8/2001 | PX 403 | M. Montemarano e-mail to C. Mcgovern re: Winstar Storyboard (sent on behalf of Debbie Harris) |
| 1646 | 3/20/2001 | PX 404 | D. Harris e-mail to L. Alexander re: Equipment in Lucent Warehouse |
| 1647 | 4/12/2001 | PX 405 | E. Perricone memorandum to D. Hopkins re: Winstar |
| 1648 | 9/6/2000 | PX 406 | L. Rogers memorandum to D. Hopkins, N. Aversano and P. Derrick re: Barron's September 4, 2000 article and Reuters September 5, 2000 commentary. |
| 1649 | 11/10/2000 | PX 407 | DELETED |
| 1650 | 11/10/2000 | PX 408 | DELETED |
| 1651 | 4/9/2001 | PX 409 | DELETED |
| 1652 | 4/11/2001 | PX 410 | DELETED |
| 1653 | 10/20/1998 | PX 411 | S. Bryant e-mail to M. Gelsi re: Board Meeting Slides. |
| 1654 | 5/14/2002 | PX 412 | Deposition testimony of Richard McGinn from Aversano v. Lucent. |
| 1655 | 5/14/2002 | PX 413 | DELETED |
| 1656 | 5/4/2001 | PX 414 | DELETED |
| 1657 | 12/4/2000 | PX 415 | E. Perricone e-mail to F. Rubin, K. Monaco and R. Uhl re: Winstar Due Diligence. |
| 1658 | 12/8/2000 | PX 416 | K. Monaco letter to W. Keller enclosing materials requested by E. Perricone in her 12/4/00 e-mail message. |
| 1659 | 12/8/2000 | PX 417 | K. Monaco e-mail to F. Rubin re: Winstar due diligence questions. |
| 1660 | 10/19/2000 | PX 418 | E. Perricone e-mail to P. Derrick re: WVF-I LLC Refinancing Requirement. |
| 1661 | 12/18/2000 | PX 419 | M. Hund-Mejean e-mail to E. Perricone, M. Keefe, R. Mark et al. re: Winstar-Request for Credit Memo to reduce Lucent Loans below $500M. |
| 1662 | 12/19/2000 | PX 420 | D. Hopkins e-mail to D. Harris, C. Spurrier and M. Hund-Mejean re: Winstar refinancing notice. |
| 1663 | 12/28/2000 | PX 421 | M. Hund-Mejean e-mail to D. Harris re: Winstar Refinancing Notice. |
| 1664 | | PX 422 | Lucent/Winstar "Want" List |
| 1665 | 3/7/2001 | PX 423 | DELETED |
| 1666 | 3/16/2001 | PX 424 | DELETED |
| 1667 | 5/17/2001 | PX 425 | DELETED |
| 1668 | 1/3/2001 | PX 426 | A. Alfred e-mail to E. Perricone and K. Becker re: 2nd borrowing request from Winstar. |
| 1669 | 1/4/2001 | PX 427 | D. Harris e-mail to A. Dollins re: call to discuss Winstar services turnkey proposal. |
| 1670 | 3/21/2001 | PX 428 | Winstar/Lucent Meeting - Finance Matters. |
| 1671 | 3/28/2001 | PX 429 | DELETED |
| 1672 | 4/12/2001 | PX 430 | DELETED |
| 1673 | 7/9/2001 | PX 431 | DELETED |

EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 1719 | 11/16/2000 | PX 477 | P. Derrick e-mail to D. Harris, R. Mark, M. Montemarano, et al. re: draft letter to Fred Rubin. |
|------|-----------|--------|---------------------------------------------------------------|
| 1720 | 3/27/2001 | PX 478 | Notice of Request for Borrowing. |
| 1721 | 3/12/2004 | PX 479 | Defendant's Amended and Supplemental Responses and Objections to Plaintiff's Third Set of Interrogatories. |
| 1722 | 6/11/2004 | PX 480 | Declaration of Vernon Terrell in Support of Motion of Defendant Lucent Technologies Inc. For Summary Judgment with Accompanying Exhibits. |
| 1723 | 4/19/2004 | PX 481 | Defendant's Additional Supplemental Response to Interrogatory No. 1 of Plaintiff's Third Set of Interrogatories. |
| 1724 | 3/12/2001 | PX 482 | **DELETED** |
| 1725 | 3/7/2001 | PX 483 | **DELETED** |
| 1726 | 3/29/2000 | PX 484 | **DELETED** |
| 1727 | 3/30/2000 | PX 485 | **DELETED** |
| 1728 | 3/9/1999 | PX 486 | R. Haffar e-mail to N. Kantor re: Update re meeting with Nina Aversano. |
| 1729 | 3/27/1999 | PX 487 | R. Haffar e-mail to N. Kantor re: Lucent update: no action necessary. |
| 1730 | 7/26/2000 | PX 488 | **DELETED** |
| 1731 | 8/5/1999 | PX 489 | **DELETED** |
| 1732 | 12/17/1999 | PX 490 | D. Ackerman e-mail to M. Wilson re: Phone System for ICI will not be deployed by Lucent. |
| 1733 | 6/30/2000 | PX 491 | D. Ackerman e-mail to L. Hicks re: Software Pool Agreement. |
| 1734 | 11/16/2000 | PX 492 | **DELETED** |
| 1735 | 12/20/2000 | PX 493 | **DELETED** |
| 1736 | 3/17/2001 | PX 494 | **DELETED** |
| 1737 | 6/27/2000 | PX 495 | **DELETED** |
| 1738 | | PX 496 | DX 141 |
| 1739 | | PX 497 | **DELETED** |
| 1740 | | PX 498 | DX 328 |
| 1741 | | PX 499 | DX 354 |
| 1742 | | PX 500 | DX 442 |
| 1743 | | PX 501 | DX 575 |
| 1744 | 12/31/1999 | PX 502 | DX-211- Winstar 12/31/99 10-K |
| 1745 | 9/30/2000 | PX 503 | DX 429 - Winstar 9/30/99 10Q |
| 1746 | 12/27/2000 | PX 504 | Lucent 10-K |
| 1747 | 12/19/2001 | PX 505 | Order Authorizing Sale of Certain of Debtors' Assets Free & Clear of Liens.... |
| 1748 | 4/9/2003 | PX 506 | Stipulation and Approved Order Resolving Motion of Secured Creditor Lucent Technologiges Inc. for Relief from Automatic Stay |
| 1749 | 11/12/2003 | PX 507 | Order Approving Settlement with Lucent Technologies Inc Pursuant to Fed. R. Bankr. P. 9019 |
| 1750 | 11/4/2004 | PX 508 | Order Approving Settlement with Lucent Technologies Inc PX Pursuant to Fed. R. Bankr. P. 9019 |
| 1751 | 1/4/2001 | PX 509 | Email from D. Rigotti to V. Petrini and J. Newsom re Restructuring Structure |

*In re* **Winstar Communications, Inc. et al.**
**Bankruptcy Case #01-01430-JBR**

| Tab | Date | Bankr. Docket No. | Description of Item |
|-----|------|-------------------|---------------------|
| 1752 | 04/18/2001 | 1 | VOLUNTARY Petition Under Chapter 11 with Exhibit A, List of Creditors Holding 20 Largest Unsecured Claims, Declaration and Certificate of Resolutions |

RLF1-2986514-1

EXHIBIT A

**APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
BE INCLUDED IN THE RECORD ON APPEAL**

| 1865 | 10/10/2001 | 1156 | Monthly Operating Report for Filing Period September 28, 2001. Filed by James R. O'Donnell, VP Corporate Planning. WINSTAR COMMUNICATIONS, INC. |
|---|---|---|---|
| 1866 | 10/11/2001 | 1199 | Response /Objection To Stipulation And Agreed Order Resolving Motion Of Secured Creditor Lucent Technologies Inc. For Relief Fro Automatic Stay Or, Alternatively, Adequate Protection With Respect To Certain Investment And Disbursement Accounts (Donna L. Harris, Esq /PRE-PETITION AGENTS) (Certificate of Service Attached). Filed by WINSTAR COMMUNICATIONS, INC. (related document(s)1105). |
| 1867 | 11/07/2001 | 1291 | Motion to Allow DEBTORS' MOTION FOR ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 363(b), 363(f) AND 363(m) (i) APPROVING ASSET PURCHASE AGREEMENT, (ii) AUTHORIZING SALE OF ASSETS OF WINSTAR-ICI DIVISION FREE AND CLEAR OF LIENS, INTERESTS, CLAIMS AND ENCUMBRANCES, AND (iii) GRANTING RELATED RELIEF Filed by WINSTAR COMMUNICATIONS, INC. |
| 1868 | 11/13/2001 | 1413 | Notice of Filing of Declaration of Edward Sichler in Support of Motion of Siemens Carrier Networks LLC for Entry of Orders Granting Relief From the Automatic Stay and Deeming Contracts Rejected RE: 1313 and 1314 (FILED UNDER SEAL) Filed by Edward Sichler (JML, ) Additional attachment(s) added on 12/4/2001 |
| 1869 | 11/21/2001 | 1345 | Motion to Approve BIDDING PROCEDURES, INCLUDING BID PROTECTIONS, (ii) APPROVING THE FORM AND MANNER OF NOTICE OF (a) BID PROCEDURES HEARING (b) SALE HEARING (c) CURE AMOUNT NOTICES AND (d) ASSUMPTION NOTICES AND (iii) SCHEDULING SALE HEARING, AND (B) AUTHORIZING AND APPROVING (i) SALE OF CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES AND (ii) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES Filed by WINSTAR COMMUNICATIONS, INC. Hearing scheduled for 11/27/2001 at 12:45 PM (check with court for location). Objections due by 12/7/2001 (Attachments: # 1 Notice # 2 Exhibit A# 3 Exhibit B# 4 Exhibit C# 5 Exhibit D# 6 Exhibit E# 7 Exhibit F# 8 Proposed Form of Order # 9 Affidavit and Service List) (Morgan, Pauline) (Entered: 11/21/2001) |
| 1870 | 11/27/2001 | 1386 | Order (i) Approving Asset Purchase Agreement, (ii) Authorizing Sale of Assets of WINSTAR-ICI Division Free & Clear of Liens, Interests, Claims & Encumbrances & (iii) Granting Related Relief signed on 11/27/2001 (related document(s)1291). |
| 1871 | 11/27/2001 | 1388 | Order (i) Approving Bidding Procedures, (ii) Approving Form & Manner of Notice of (A) Bid Procedures Hearing , (B) Sale Hearing (C) Cure Amount Notices, & (D) Assumption Notices & (iii) Scheduling Sale Hearing signed on 11/27/2001 (related document(s)1345). |
| 1872 | 11/29/2001 | 1399 | Notice of Filing Exhibit A to Order Pursuant to 11 U S C Sections 363(b) and 105(a) and Fed R Bankr P 2002, 6004, 6006 and 9014 (i) Approving Bidding Procedures, (ii) Approving the Form and Manner of Notice of (A) Bid Procedures Hearing (B) Sale Hearing (C) Cure Amount Notices, and (D) Assumption Notices and (iii) Scheduling Sale Hearing (RE: Docket No. 1388) Filed by WINSTAR COMMUNICATIONS, INC. |
| 1873 | 12/04/2001 | 1426 | Motion to Allow Motion for Order Pursuant to Bankruptcy Code Sections 363(b), 363(f), 363(m) and 365(i) Approving Asset Purchase Agreement Between Winstar Wireless, Inc and Fastmetrics, LLC, (ii) Authorizing Sale of ISPNetworks Division Free and Clear of Liens, Interests, Claims and Encumbrances, (iii) Authorizing Winstar Wireless, Inc to Assume and Assign Certain Executory Contracts and Unexpired Leases and (iv) Granting Related Relief Filed by WINSTAR COMMUNICATIONS, INC. |

62

# EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 1874 | 11/21/2001 | 1574 | Monthly Operating Report for Filing Period September 30, 2001 Filed by WINSTAR COMMUNICATIONS, INC. |
|------|-----------|------|--------|
| 1875 | 12/18/2001 | 1619 | Motion to Approve the Asset Purchase Agreement, (ii) Authorizing Sale of Assets to Corporate Telecommunications Group Free and Clear of Liens, INterests, Claims and Encumbrances and (iii) Granting Related Relief Filed by WINSTAR COMMUNICATIONS, INC. |
| 1876 | 12/19/2001 | 1620 | Notice of Filing Supplement to Motion for Order Authorizing (i) Sale of Certain of the Debtors' Assets Free and Claer of Liens, Claims, Encumbrances, and Interests and (ii) Authorizing the Assumption and Assignment of Certain Executory Contracts and unexpired Leases, Seeking Additional Relief of Entry of an Order (A) Authorizing the Debtors to Enter into and Approving Management Agreement, (B) Approving Regulatory Transistion Process and (C) Granting Related Relief Filed by WINSTAR COMMUNICATIONS, INC. |
| 1877 | 12/19/2001 | 1627 | Order Authorizing (i) Sale of Certain of Debtors' Assets Free & Clear of Liens, Claims Encumbrances, & Interests, (ii) Approving Cure Amounts w/Respect to Certain Executory Contracts & Unexpired Leases, (iii) Approving Debtors' to Enter Into & Approving Management Agreement, (iv) Approving Regulatory Transition Process & (v) Granting Related Relief signed on 12/19/2001. |
| 1878 | 12/19/2001 | 1629 | Notice of Filing Master Final, Execution Copy/ASSET PURCHASE AGREEMENT Among IDT WINSTAR ACQUISITION, INC ,WINSTAR COMMUNICATION, INC & CERTAIN of its Subsidiaries Filed by WINSTAR COMMUNICATIONS, INC. (related document(s)1627). |
| 1879 | 12/20/2001 | 1652 | Notice of Filing Re-Notice to Motion for Order Pursuant to Bankruptcy Code Sections 363(b), 363(f), 363(m)(i) Approving the Asset Purchase Agreement, (ii) Authorizing Sale of Assets to Corporate Telecommunications Group Free and Clear of Liens, Interests, Claims and Encumbrances and (iii) Granting Related Relief Filed by WINSTAR COMMUNICATIONS, INC. |
| 1880 | 12/20/2001 | 1655 | Notice of Filing of Letter Regarding Sale and Auction of Assets Filed by Multnomah County Oregon Department of Support Services. |
| 1881 | 01/04/2002 | 1804 | Order Approving Asset Purchase Agreement Between Winstar Wireless, Inc & Corporate Telecommunications Group, Inc , et al (BLACKLINED COPY) (related document(s)1619). |
| 1882 | 01/04/2002 | 1805 | Order Approving Asset Purchase Agreement Between Winstar Wireless, Inc. & Corporate Telecommunictions Group, Inc , (B) Authorizing Sale of The Northwest Nexus Divison Free & Clear of Liens, Interests, Claims & Encumbrances & (C) Granting Related Relief signed on 1/4/2002 (related document(s)1619). |
| 1883 | 01/17/2002 | 1879 | Order (A) Approving Asset Purchase Agreement Between Winstar Wireless, Inc and Fastmetrics, LLC, (B) Authorizing Sale of Ispnetworks Division Free and Clear of Liens, Interests, Claims and Encumbrances, (C) Authorizing Winstar Wireless, Inc to Assume and Assign Certain Executory Contracts and Unexpired Leases and (D) Granting Related Relief (Related Doc # 1426). |
| 1884 | 01/24/2002 | 1909 | Motion to Convert Case 11 to Chapter 7 Reaffirming Terms and Conditions of Asset Sale order Dated December 19, 2001, Shortening Time for, and Approving the Manner of Notice of Meeting of Creditors Under Bankruptcy Code Section 341 and Granting Related Relief Receipt Number 57550, Fee Amount $15 Filed by WINSTAR COMMUNICATIONS, INC. |
| 1885 | 01/24/2002 | 1919 | Order signed on 1/24/2002 Converting Case To Chapter 7, Reaffirming Regulatory Transition Process Under Asset Sale Order Dated 12/19/01, Shortening Time For & Approving The Manner Of Notice Of Meeting Of Creditors Under Bankruptcy Code Section 341 & Granting Related Relief (related document(s)1909). |
| 1886 | 02/13/2002 | 1965 | Motion to Sell Free and Clear of Liens Filed by Christine Shubert. |

63

# EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| | | | |
|---|---|---|---|
| 1887 | 02/13/2002 | 1966 | Complaint For Declaratory Relief by Winstar Holdings, LLC, as successor in interest to Winstar Communications, Inc. against BNY CAPITAL RESOURCES CORPORATION. |
| 1888 | 02/15/2002 | 1979 | Motion to Sell Free and Clear of Liens and Encumbrances and for an Order Approving the Sale of Assests to Dun & Bradstreet, Inc. Filed by Christine Shubert. |
| 1889 | 02/14/2002 | 1987 | Order 1) Authorizing Trustee to Enter into Software License Agreement; 2) Authorizing and Scheduling a Public Auction; 3) Approving Break-up Fee; 4) Setting Bidding Deadline, Auction Date and Bidding Procedures, Including Deposit Requirements and Objection Deadline to Bidding Procedures; 5) Setting Hearing Date and Objection Deadline for Approval of the Sale of the Assets of the Debtors Free and Clear of Liens, Claims and Encumbrances Pursuant to 11 U.S.C. Section 363, and 6) Approving the Form of Notice of Motion for Approval of the Sale. Order signed on 2/14/2002 (related document(s)1965). |
| 1890 | 03/03/2002 | 2025 | Exhibit A - Part 1 of Asset Purchase Agreement Filed by Christine Shubert (related document(s)1979). |
| 1891 | 03/07/2002 | 2064 | Order signed on 3/7/2002 Approving Sale Of The Assets Of The Debtors Free & Clear Of Liens, Claims & Encumbrances (related document(s)1979). |
| 1892 | 03/28/2002 | 2086 | Motion to Approve the Unit Purchase Agreement and (ii) Authorizing the Sale of Certain Common Units of Winstar Holdings, LLC to DipChip, Inc. Free and Clear of Liens, Pursuant to 11 U.S.C. Section 105(a) and 363(b)(1) Filed by Christine Schubert (related document(s)2085). |
| 1893 | 04/11/2002 | 2144 | Order signed on 4/11/2002 Approving The Unit Purchase Agreement & Authorizing The Sale Of Certain Common Units Of Winstar Holdings LLC To Dipchip Inc Free & Clear Of Liens (relates to document 2086). |
| 1894 | 05/24/2002 | 2557 | Motion to Approve an Order, Pursuant to 11 U.S.C. Section 105(a) and 363 (b) Expanding the Carve-Out Under the Debtors' Post Petition Credit Agreement Filed by Christine Shubert. |
| 1895 | 06/11/2002 | 2629 | Order signed on 6/11/2002 Expanding Carve Out Under The Debtors Post-Petition Credit Agreement (related document(s)2557). |
| 1896 | 06/20/2002 | 2644 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 2/28/02 for Winstar Communications, Inc. |
| 1897 | 06/20/2002 | 2645 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 2/28/02 for Winstar Wireless, Inc. |
| 1898 | 06/20/2002 | 2646 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 2/28/02 for Winstar Interactive Media Sales |
| 1899 | 06/20/2002 | 2647 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 2/28/02 for Winstar New Media Company, Inc. |
| 1900 | 06/20/2002 | 2648 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 2/28/02 for Office.com, Inc. |
| 1901 | 06/20/2002 | 2649 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 3/31/02 for Winstar Communications, Inc. Filed by Christine Shubert (Menkowitz, Michael) (Entered: 06/20/2002) |
| 1902 | 06/20/2002 | 2650 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 3/31/02 for Winstar Wireless, Inc. |
| 1903 | 06/20/2002 | 2651 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 3/31/02 for Winstar Interactive Media Sales |
| 1904 | 06/20/2002 | 2652 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 3/31/02 for Winstar New Media Company, Inc. |
| 1905 | 06/20/2002 | 2653 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 3/31/02 for Office.com, Inc. |
| 1906 | 06/20/2002 | 2654 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 4/30/02 for Winstar Communications, Inc. |

64

**EXHIBIT A**

**APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
BE INCLUDED IN THE RECORD ON APPEAL**

| 1907 | 06/20/2002 | 2655 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 4/30/02 for Winstar Wireless, Inc. |
|------|-----------|------|---|
| 1908 | 06/20/2002 | 2656 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 4/30/02 for Winstar Interactive Media Sales |
| 1909 | 06/20/2002 | 2657 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 4/30/02 for Winstar New Media Company, Inc. |
| 1910 | 06/20/2002 | 2658 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 4/25/02 for Office.com, Inc. |
| 1911 | 07/03/2002 | 2685 | Motion to Authorize Asset Purchase Agreement Pursuant to 11 U S C 105 and Federal Rules of Bankruptcy Procedure Rule 6004 and 9014 Filed by Winstar Holdings, L.L.C. |
| 1912 | 07/22/2002 | 2734 | Order signed on 7/22/2002 Granting Motion Of Winstar Holdings LLC For Enforcement Of Order Authorizing Asset Purchase Agreement . |
| 1913 | 07/24/2002 | 2737 | Debtor-In-Possession Monthly Operating Report for Filing Period Month ending 05/31/02 for Winstar Communications, Inc. |
| 1914 | 07/24/2002 | 2739 | Debtor-In-Possession Monthly Operating Report for Filing Period Month ending 5/31/02 for Winstar Wireless, Inc. |
| 1915 | 07/24/2002 | 2740 | Debtor-In-Possession Monthly Operating Report for Filing Period Month ending 5/31/02 for Winstar New Media Company, Inc. |
| 1916 | 07/24/2002 | 2741 | Debtor-In-Possession Monthly Operating Report for Filing Period Month ending 5/31/02 for Winstar Interactive Media Sales |
| 1917 | 07/24/2002 | 2742 | Debtor-In-Possession Monthly Operating Report for Filing Period Month ending 5/31/02 for Office.com, Inc. |
| 1918 | 07/26/2002 | 2750 | Debtor-In-Possession Monthly Operating Report for Filing Period Month ending 6/30/2002 for Winstar Communications, Inc. |
| 1919 | 07/26/2002 | 2751 | Debtor-In-Possession Monthly Operating Report for Filing Period Month ending 6/30/2002 for Winstar Wireless, Inc. |
| 1920 | 07/26/2002 | 2752 | Debtor-In-Possession Monthly Operating Report for Filing Period Month ending 6/30/2002 for Winstar New Media Company, Inc. |
| 1921 | 07/26/2002 | 2753 | Debtor-In-Possession Monthly Operating Report for Filing Period Month ending 6/30/2002 for Winstar Interactive Media Sales |
| 1922 | 07/26/2002 | 2754 | Debtor-In-Possession Monthly Operating Report for Filing Period Month ending 6/30/2002 for Office.com, Inc. |
| 1923 | 07/26/2002 | 2756 | Notice of Filing of Motion and Incorporated Memorandum for Order to Implement and Enforce Provisions of Sale Order Dated December 19, 2001 Filed by Winstar Holdings, LLC. |
| 1924 | 07/26/2002 | 2757 | Exhibits (Related document(s) 2756) Filed by Winstar Holdings, LLC. |
| 1925 | 07/26/2002 | 2758 | Notice of Filing of Motion and Incorporated Memorandum for Order to Implement and Enforce Provisions of Sale Order Dated December 19, 2001 Filed by Winstar Holdings, LLC. |
| 1926 | 07/26/2002 | 2759 | Exhibits (Related document(s) 2758) Filed by Winstar Holdings, LLC. |
| 1927 | 07/31/2002 | 2771 | Supplemental Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 2/28/02 (Document #2644) for Winstar Communications, Inc. |
| 1928 | 07/31/2002 | 2772 | Supplemental Debtor-In-Possession Monthly Operating Report for Filing Period Month ending 2/28/02 (Document #2645) for Winstar Wireless, Inc. |
| 1929 | 07/31/2002 | 2773 | Supplemental Debtor-In-Possession Monthly Operating Report for Filing Period Month ending 2/28/02 (Document #2648) for Office.com, Inc. |
| 1930 | 07/31/2002 | 2774 | Supplemental Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 3/31/02 (Document #2649) for Winstar Communications, Inc. |
| 1931 | 07/31/2002 | 2775 | Supplemental Debtor-In-Possession Monthly Operating Report for Filing Period Month ending 3/31/02 (Document #2650) for Winstar Wireless, Inc. |

**EXHIBIT A**

**APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
BE INCLUDED IN THE RECORD ON APPEAL**

| 1932 | 08/01/2002 | 2776 | Supplemental Debtor-In-Possession Monthly Operating Report for Filing Period Month ending 3/31/02 (Document #2651) for Winstar Interactive Media Sales |
| 1933 | 08/01/2002 | 2777 | Supplemental Debtor-In-Possession Monthly Operating Report for Filing Period Month ending 3/31/02 (Document #2652) for Winstar New Media Company, Inc. |
| 1934 | 08/01/2002 | 2779 | Supplemental Debtor-In-Possession Monthly Operating Report for Filing Period Month ending 3/31/02 (Document #2653) for Office.com, Inc. |
| 1935 | 08/01/2002 | 2780 | Supplemental Debtor-In-Possession Monthly Operating Report for Filing Period Month ending 4/30/02 (Document #2654) for Winstar Communications, Inc. |
| 1936 | 08/01/2002 | 2781 | Supplemental Debtor-In-Possession Monthly Operating Report for Filing Period Month ending 4/30/02 (Document #2655) for Winstar Wireless, Inc. |
| 1937 | 08/01/2002 | 2782 | Supplemental Debtor-In-Possession Monthly Operating Report for Filing Period Month ending 4/30/02 (Document #2656) for Winstar Interactive Media Sales |
| 1938 | 08/01/2002 | 2783 | Supplemental Debtor-In-Possession Monthly Operating Report for Filing Period Month ending 4/30/02 (Document #2657) for Winstar New Media Company, Inc. |
| 1939 | 08/01/2002 | 2784 | Supplemental Debtor-In-Possession Monthly Operating Report for Filing Period Month ending 4/30/02 (Document #2658) for Office.com, Inc. |
| 1940 | 08/07/2002 | 2802 | Motion to Approve the Asset Purchase Agreement and (ii) Authorizing the Sale of Debtors' Office Com and At Your Office, Inc. Assets to Thomas J. Graham Free and Clear of Liens, Claims, Encumbrances and Interests Pursuant to 11 U S C Section 105(a) and 363(b)(1) Filed by Christine Shubert. |
| 1941 | 09/19/2002 | 2910 | ORDER (i) APPROVING THE ASSET PURCHASE AGREEMENT AND (ii) AUTHORIZING THE SALE OF DEBTORS' OFFICE COM AND AT YOUR OFFICE, INC. ASSETS TO THOMAS J. GRAHAM FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS-Order signed on 9/19/2002. |
| 1942 | 09/26/2002 | 2932 | Complaint by Christine Shubert against Citicapital Commercial Corporation, General Motors Acceptance Corporation ("GMAC"), and Lucent Technologies, Inc. |
| 1943 | 10/25/2002 | 2997 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 7/31/2002 for Winstar Communications, Inc. |
| 1944 | 10/25/2002 | 2998 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 7/31/2002 for Winstar Wireless, Inc. |
| 1945 | 10/25/2002 | 3000 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 7/31/2002 for Winstar New Media Company, Inc. |
| 1946 | 10/25/2002 | 3001 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 7/31/2002 for Winstar Interactive Media Sales |
| 1947 | 10/25/2002 | 3002 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 7/31/2002 for Office.com, Inc. |
| 1948 | 10/25/2002 | 3003 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 8/31/2002 for Winstar Communications, Inc. |
| 1949 | 10/25/2002 | 3004 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 8/31/2002 for Winstar Wireless, Inc. |
| 1950 | 10/25/2002 | 3005 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 8/31/2002 for Winstar New Media Company, Inc. |
| 1951 | 10/25/2002 | 3006 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 8/31/2002 for Winstar Interactive Media Sales |
| 1952 | 10/25/2002 | 3007 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 8/31/2002 for Office.com, Inc. |

# EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 1953 | 10/28/2002 | 3012 | Motion to Shorten Time of Trustee's Motion for an Order (i) Approving the Share Sale and Purchase Agreement and (ii) Authorizing the Sale of the Assets of Winstar Communications Co Ltd , Wallstreet Planner Co. Ltd., an d Wallstreet Law and Accounting Office Co. Ltd. to Chirdsak Kukiattinun Free and Clear of All Liens, Claims, Encumbrances and Interests Pursuant to 11 U S C Section 105(a) and 363(b)(1) Filed by Christine Shubert. |
|------|------------|------|---|
| 1954 | 10/28/2002 | 3013 | Motion to Approve Sale (Share) and Purchase Agreement and (ii) Authorizing the Sale of the Assets of Winstar Communications Co Ltd ,Wallstreet Planner Co. Ltd., and Wallstreet Law and Accounting Office Co Ltd  to Chirdsak Kukiattinun Free and Clear of All Liens, Claims, Encumbrances and Interests Pursuant to 11 U.S.C. Sections 105(a) and 363(b)(1) Filed by Christine Shubert. |
| 1955 | 11/06/2002 | 3038 | Order Granting Motion to Shorten Noticeof Trustee's Motion for an Order Approving the Share Sale and Purchase Agreement, Authorizing The Sale of the Assets of Winstar Communications Co LTD, Wallstreet Planner Co. LTD, and Wallstreet Law and Accounting Office Co ,LTD, to Chirdsak Kuliattinun Free and Clear of all Liens, Claims, Encumbrances and Intrests re doc #3012signed on 11/6/2002. |
| 1956 | 11/06/2002 | 3039 | Order Granting order Approving the Share Sale and Purchase Agreement and Authorizing the Sale of Debtors Winstar Communications Co LTD, Wallstreet Law and Accounting Office Co LTD, Assets to Chirdsak Kukiattinun Free and Clear of all Liens, Claims, Encumbrance and Interests. re doc #3013 |
| 1957 | 12/09/2002 | 3084 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 9/30/02 for Winstar Communications, Inc. |
| 1958 | 12/09/2002 | 3085 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 9/30/02 for Winstar Wireless, Inc. |
| 1959 | 12/09/2002 | 3086 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 9/30/02 for Winstar New Media Company, Inc. |
| 1960 | 12/09/2002 | 3087 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 9/30/02 for Winstar Interactive Media Sales |
| 1961 | 12/09/2002 | 3088 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 9/30/02 for Office.com, Inc. |
| 1962 | 12/09/2002 | 3089 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 10/31/02 for Winstar Communications, Inc. |
| 1963 | 12/09/2002 | 3090 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 10/31/02 for Winstar Wireless, Inc. |
| 1964 | 12/09/2002 | 3091 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 10/31/02 for Winstar New Media Company, Inc. |
| 1965 | 12/09/2002 | 3092 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 10/31/02 for Winstar Interactive Media Sales |
| 1966 | 12/09/2002 | 3094 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 10/31/02 for Office.com, Inc. |
| 1967 | 02/27/2003 | 3192 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 11/30/2002 for Winstar Communications, Inc. |
| 1968 | 02/27/2003 | 3193 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 11/30/2002 for Winstar Wireless, Inc. |
| 1969 | 02/27/2003 | 3194 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 11/30/2002 for Winstar New Media Company, Inc. |
| 1970 | 02/27/2003 | 3195 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 11/30/2002 for Winstar Interactive Media Sales, Inc. |
| 1971 | 02/27/2003 | 3196 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 11/30/2002 for Winstar International, Inc. |
| 1972 | 02/27/2003 | 3197 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 11/30/2002 for Office.com, Inc. |

RLF1-2986514-1

**EXHIBIT A**

**APPELLANT'S AMENDED DESIGNATION OF ITEMS TO**
**BE INCLUDED IN THE RECORD ON APPEAL**

| 1973 | 02/27/2003 | 3198 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 12/31/2002 for Winstar Communications, Inc |
| 1974 | 02/27/2003 | 3199 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 12/31/2002 for Winstar Wireless, Inc. |
| 1975 | 02/27/2003 | 3200 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 12/31/2002 for Winstar New Media Company, Inc. |
| 1976 | 02/27/2003 | 3201 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 12/31/2002 for Winstar Interactive Media Sales, Inc. |
| 1977 | 02/27/2003 | 3202 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 12/31/2002 for Winstar International, Inc. |
| 1978 | 02/27/2003 | 3203 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 12/31/2002 for Office.com, Inc. |
| 1979 | 03/21/2003 | 3229 | Motion to Compel MOTION OF LEASETEC CORPORATION, NKA KEY EQUIPMENT FINANCE, A DIVISION OF KEY CORPORATE CAPITAL INC. FOR AN ORDER DIRECTING WINSTAR COMMUNICATIONS, INC. TO COMPLY WITH THE ORDER AUTHORIZING (I) SALE OF CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTEREST, (II) APPROVING CURE AMOUNTS WITH RESPECT TO CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (III) AUTHORIZING THE DEBTORS TO ENTER INTO AND APPROVING MANAGEMENT AGREEMENT, (IV) APPROVING REGULATORY TRANSITION PROCESS AND (V) GRANTING RELATED RELIEF Filed by Leasetec Corporation, nka Key Equipment Finance, a Division of Key Corporate Capital Inc. |
| 1980 | 04/07/2003 | 3468 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 1/31/03 for Winstar Communications, Inc. |
| 1981 | 04/07/2003 | 3469 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 1/31/03 for Winstar Wireless, Inc. |
| 1982 | 04/07/2003 | 3470 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 1/31/03 for Winstar New Media Company, Inc. |
| 1983 | 04/07/2003 | 3471 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 1/31/03 for Winstar Interactive Media Sales |
| 1984 | 04/07/2003 | 3472 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 1/31/03 for Winstar Interactive Ventures, Inc. |
| 1985 | 04/07/2003 | 3473 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 1/31/03 for Winstar International, Inc. |
| 1986 | 04/07/2003 | 3474 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 1/31/03 for Office.com, Inc. |
| 1987 | 04/08/2003 | 3497 | Response to Motion of Leasetec Corporation, NKA Key Equipment Finance, a Division of Key Corporate Capital, Inc., for an Order Directing Winstar Communications, Inc. to Comply with the Order Authorizing (i) Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, (ii) Approving Cure Amounts with Respect to Certain Executory Contracts and Unexpired Leases, (iii) Authorizing the Debtors to Enter into and Approving Management Agreement, (iv) Approving Regulatory Transition Process and (v) Granting Related Relief (related document(s)3229 ) Filed by Christine Shubert |

**EXHIBIT A**

**APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
BE INCLUDED IN THE RECORD ON APPEAL**

| 1988 | 04/08/2003 | 3520 | Objection to Motion of Leasetec Corporation, NKA Key Equiptment Finance, a Division of Key Corporate Capital, Inc. for an Order Directing Winstar Communications, Inc. to Comply with the Order Authorizing (i) Sale of Certain of the Debtors' Assets Free and Clear Liens, Claims, and Encumbrances,and Interests, (ii) Approving Cure Amounts with Respect to Certain Executory Contracts and Unexpired Leases, (iii) Authorizing the Debtors to Enter Into and Approving Management Agreement, (iv) Approving Regulatory Transition Process and (v) Granting Related Relief Filed by WINSTAR COMMUNICATIONS, INC. |
|------|-----------|------|-----|
| 1989 | 04/09/2003 | 3544 | Stipulation and Agreed Order Resolving Motion of Secured Creditor Lucent Technologies, Inc. for Relief from Automatic Stay or, Alternatively, Adequate Protection with Respect to Certain Investment and Disbursement Accounts (related document(s)[373] ) Order Signed on 4/9/2003 |
| 1990 | 04/10/2003 | 3560 | Affidavit/Declaration of Service of Rebecca V Childs Re: Docket No. 3544 (related document(s)3544 ) Filed by Lucent Technologies |
| 1991 | 04/14/2003 | 3659 | Complaint by CHRISTINE C. SHUBERT, TRUSTEE against BNY Capital Resources Corporation. |
| 1992 | 04/14/2003 | 3692 | Complaint by CHRISTINE C. SHUBERT, TRUSTEE against Siemens Information & Communication Networks, Inc.. |
| 1993 | 04/14/2003 | 3693 | Complaint by CHRISTINE C. SHUBERT, TRUSTEE against Siemens Telecom Networks. |
| 1994 | 04/17/2003 | 3778 | Complaint by Christine Shubert against Lucent Technologies, Inc.. |
| 1995 | 06/27/2003 | 3832 | Complaint by CHRISTINE C. SHUBERT, TRUSTEE against Winstar Holdings, LLC f/k/a IDT Winstar Acquisition, Inc.. |
| 1996 | 07/03/2003 | 3839 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 2/28/03 for Winstar Communications, Inc. |
| 1997 | 07/03/2003 | 3840 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 2/28/03 for Winstar Interactive Media Sales |
| 1998 | 07/03/2003 | 3841 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 2/28/03 for Winstar International, Inc. |
| 1999 | 07/03/2003 | 3842 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 2/28/03 for Winstar Interactive Vestures, Inc. |
| 2000 | 07/03/2003 | 3843 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 2/28/03 for Winstar Wireless, Inc. |
| 2001 | 07/03/2003 | 3844 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 2/28/03 for Office.com, Inc. |
| 2002 | 07/03/2003 | 3845 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 3/31/03 for Winstar Communications, Inc. |
| 2003 | 07/03/2003 | 3846 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 3/31/03 for Winstar Interactive Media Sales |
| 2004 | 07/03/2003 | 3847 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 3/31/03 for Winstar International, Inc. |
| 2005 | 07/03/2003 | 3848 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 3/31/03 for Winstar Interactive Vestures, Inc. |
| 2006 | 07/03/2003 | 3849 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 3/31/03 for Winstar Wireless, Inc. |
| 2007 | 07/03/2003 | 3850 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 3/31/03 for Office.com, Inc. |
| 2008 | 08/13/2003 | 3900 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 2/28/03 for Winstar New Media Company, Inc. |
| 2009 | 08/13/2003 | 3901 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 3/31/03 for Winstar New Media Company, Inc. |

69

**EXHIBIT A**

**APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
BE INCLUDED IN THE RECORD ON APPEAL**

| 2010 | 08/13/2003 | 3902 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 4/30/03 for Winstar New Media Company, Inc. |
|------|------------|------|---|
| 2011 | 08/13/2003 | 3903 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 5/31/03 for Winstar New Media Company, Inc. |
| 2012 | 08/13/2003 | 3904 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 4/30/03 for Winstar Communications, Inc. |
| 2013 | 08/13/2003 | 3905 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 5/31/03 for Winstar Communications, Inc. |
| 2014 | 08/13/2003 | 3906 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 4/30/03 for Winstar Wireless, Inc. |
| 2015 | 08/13/2003 | 3907 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 5/31/03 for Winstar Wireless, Inc. |
| 2016 | 08/13/2003 | 3908 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 4/30/03 for Winstar Interactive Media Sales |
| 2017 | 08/13/2003 | 3909 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 5/31/03 for Winstar Interactive Media Sales |
| 2018 | 08/13/2003 | 3910 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 4/30/03 for Winstar International, Inc. |
| 2019 | 08/13/2003 | 3911 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 5/31/03 for Winstar International, Inc. |
| 2020 | 08/13/2003 | 3912 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 4/30/03 for Winstar Interactive Vestures, Inc. |
| 2021 | 08/13/2003 | 3913 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 5/31/03 for Winstar Interactive Vestures, Inc. |
| 2022 | 08/13/2003 | 3914 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 4/30/03 for Office.com, Inc. |
| 2023 | 08/13/2003 | 3915 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 5/31/03 for Office.com, Inc. |
| 2024 | 09/12/2003 | 3945 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended June 30, 2003 for Winstar Communications, Inc. |
| 2025 | 09/12/2003 | 3946 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended June 30, 2003 for Winstar New Media Company, Inc |
| 2026 | 09/12/2003 | 3947 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended June 30, 2003 for Winstar Interactive Media Sales |
| 2027 | 09/12/2003 | 3948 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended June 30, 2003 for Winstar Interactive Vestures, Inc. |
| 2028 | 09/12/2003 | 3949 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended June 30, 2003 for Winstar Wireless, Inc. |
| 2029 | 09/12/2003 | 3950 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended June 30, 2003 for Winstar International, Inc. |
| 2030 | 09/12/2003 | 3951 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended June 30, 2003 for Office.com, Inc. |
| 2031 | 09/12/2003 | 3952 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended July 31, 2003 for Winstar Communications, Inc. |
| 2032 | 09/12/2003 | 3953 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended July 31, 2003 for Winstar New Media Company, Inc |
| 2033 | 09/12/2003 | 3954 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended July 31, 2003 for Winstar Interactive Media Sales |
| 2034 | 09/12/2003 | 3955 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended July 31, 2003 for Winstar Interactive Vestures, Inc. |
| 2035 | 09/12/2003 | 3956 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended July 31, 2003 for Winstar Wireless, Inc. |

70

**EXHIBIT A**

**APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
BE INCLUDED IN THE RECORD ON APPEAL**

| 2036 | 09/12/2003 | 3957 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended July 31, 2003 for Winstar International, Inc. |
| 2037 | 09/12/2003 | 3958 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended July 31, 2003 for Office.com, Inc. |
| 2038 | 10/20/2003 | 4007 | Motion to Approve Settlement Stipulation with Lucent Technologies, Inc Pursuant to Federal Bankruptcy Rule 9019 |
| 2039 | 11/12/2003 | 4026 | Order Approving Settlement with Lucent Technologies Inc Pursuant to Fed. R. Bankr. P. 9019. Order Signed on 11/12/2003 (related document(s)4007 ). |
| 2040 | 12/10/2003 | 4070 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 8/31/03 for Winstar Communications, Inc. |
| 2041 | 12/10/2003 | 4071 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 8/31/03 for Winstar New Media Company, Inc. |
| 2042 | 12/10/2003 | 4072 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 8/31/03 for Winstar Interactive Media Sales |
| 2043 | 12/10/2003 | 4073 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 8/31/03 for Winstar International, Inc. |
| 2044 | 12/10/2003 | 4074 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 8/31/03 for Winstar Interactive Vestures, Inc. |
| 2045 | 12/10/2003 | 4075 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 8/31/03 for Winstar Wireless, Inc. |
| 2046 | 12/10/2003 | 4076 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 8/31/03 for Office.com, Inc. |
| 2047 | 01/09/2004 | 4086 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 9/30/03 for Winstar Communications, Inc. |
| 2048 | 01/09/2004 | 4087 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 9/30/03 for Winstar New Media Company, Inc |
| 2049 | 01/09/2004 | 4088 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 9/30/03 for Winstar Interactive Media Sales ) |
| 2050 | 01/09/2004 | 4089 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 9/30/03 for Winstar International, Inc. |
| 2051 | 01/09/2004 | 4090 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 9/30/03 for Winstar Interactive Vestures, Inc. |
| 2052 | 01/09/2004 | 4091 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 9/30/03 for Winstar Wireless, Inc. |
| 2053 | 01/09/2004 | 4092 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 9/30/03 for Office.com, Inc. |
| 2054 | 01/09/2004 | 4093 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 10/31/03 for Winstar Communications, Inc. |
| 2055 | 01/09/2004 | 4094 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 10/31/03 for Winstar New Media Company, Inc. |
| 2056 | 01/09/2004 | 4095 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 10/31/03 for Winstar Interactive Media Sales |
| 2057 | 01/09/2004 | 4096 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 10/31/03 for Winstar International, Inc. |
| 2058 | 01/09/2004 | 4097 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 10/31/03 for Winstar Interactive Vestures, Inc. |
| 2059 | 01/09/2004 | 4098 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 10/31/03 for Winstar Wireless, Inc. |
| 2060 | 01/09/2004 | 4099 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 10/31/03 for Office.com, Inc. |
| 2061 | 01/09/2004 | 4100 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 11/30/03 for Winstar Communications, Inc. |

RLF1-2986514-1

**EXHIBIT A**

**APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
BE INCLUDED IN THE RECORD ON APPEAL**

| | | | |
|---|---|---|---|
| 2062 | 01/09/2004 | 4101 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 11/30/03 for Winstar New Media Company, Inc. |
| 2063 | 01/09/2004 | 4102 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 11/30/03 for Winstar Interactive Media Sale |
| 2064 | 01/09/2004 | 4103 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 11/30/03 for Winstar International, Inc. |
| 2065 | 01/09/2004 | 4104 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 11/30/03 for Winstar Interactive Vestures, Inc. |
| 2066 | 01/09/2004 | 4105 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 11/30/03 for Winstar Wireless, Inc. |
| 2067 | 01/09/2004 | 4106 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 11/30/03 for Office.com, Inc. |
| 2068 | 02/03/2004 | 4123 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending December 31, 2003 for Winstar Communications, Inc. |
| 2069 | 02/03/2004 | 4124 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending December 31, 2003 for Winstar New Media Company, Inc. |
| 2070 | 02/03/2004 | 4125 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending December 31, 2003 for Winstar International, Inc. |
| 2071 | 02/03/2004 | 4126 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending December 31, 2003 for Winstar Interactive Media Sales |
| 2072 | 02/03/2004 | 4127 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending December 31, 2003 for Winstar Interactive Vestures, Inc. |
| 2073 | 02/03/2004 | 4128 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending December 31, 2003 for Winstar Wireless, Inc. |
| 2074 | 02/03/2004 | 4129 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending December 31, 2003 for Office.com, Inc. |
| 2075 | 03/10/2004 | 4139 | Certificate of No Objection (related document(s)4133 ) |
| 2076 | 03/12/2004 | 4140 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 1/31/04 for Winstar Communications, Inc |
| 2077 | 03/12/2004 | 4141 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 1/31/04 for Winstar Interactive Media Sales |
| 2078 | 03/12/2004 | 4142 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 1/31/04 for Winstar New Media Company, Inc. |
| 2079 | 03/12/2004 | 4143 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 1/31/04 for Winstar International, Inc. |
| 2080 | 03/12/2004 | 4144 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 1/31/04 for Winstar Interactive Vestures, Inc. |
| 2081 | 03/12/2004 | 4145 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 1/31/04 for Winstar Wireless, Inc  Filed by Christine Shubert (Rennie, Sheldon) (Entered: 03/12/2004) |
| 2082 | 03/12/2004 | 4146 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 1/31/04 for Office.com, Inc. |
| 2083 | 04/28/2004 | 4195 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending 2/29/04 for Winstar Communications, Inc. |
| 2084 | 04/28/2004 | 4196 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending 2/29/04 for Winstar Interactive Media Sales |
| 2085 | 04/28/2004 | 4197 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending 2-29-04 for Winstar New Media Company, Inc. |
| 2086 | 04/28/2004 | 4198 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending 2-29-04 for Winstar International, Inc. |
| 2087 | 04/28/2004 | 4199 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending 2-29-04 for Winstar Interactive Vestures, Inc. |

72

EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 2088 | 04/28/2004 | 4200 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending 2-29-04 for Winstar Wireless, Inc. |
| 2089 | 04/28/2004 | 4201 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending 2-29-04 for Office.com, Inc. |
| 2090 | 05/07/2004 | 4204 | Debtor-In-Possession Monthly Operating Report for Filing Period ending March 31, 2004 for Winstar Communications, Inc. |
| 2091 | 05/07/2004 | 4205 | Debtor-In-Possession Monthly Operating Report for Filing Period ending March 31, 2004 for Winstar Interactive Media Sales |
| 2092 | 05/07/2004 | 4206 | Debtor-In-Possession Monthly Operating Report for Filing Period ending March 31, 2004 for Winstar New Media Company, Inc. |
| 2093 | 05/07/2004 | 4207 | Debtor-In-Possession Monthly Operating Report for Filing Period ending March 31, 2004 for Winstar International, Inc. |
| 2094 | 05/07/2004 | 4208 | Debtor-In-Possession Monthly Operating Report for Filing Period ending March 31, 2004 for Winstar Interactive Vestures, Inc. |
| 2095 | 05/07/2004 | 4209 | Debtor-In-Possession Monthly Operating Report for Filing Period ending March 31, 2004 for Winstar Wireless, Inc. |
| 2096 | 05/07/2004 | 4210 | Debtor-In-Possession Monthly Operating Report for Filing Period ending March 31, 2004 for Office.com, Inc. |
| 2097 | 06/04/2004 | 4227 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending 4/30/04 for Winstar Communications, Inc. Filed by Christine Shubert (Rennie, Sheldon) (Entered: 06/04/2004) |
| 2098 | 06/04/2004 | 4228 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending 4/30/04 for Winstar Interactive Media Sales Filed by Christine Shubert (Rennie, Sheldon) (Entered: 06/04/2004) |
| 2099 | 06/04/2004 | 4229 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending 4/30/04 for Winstar New Media Company, Inc. |
| 2100 | 06/04/2004 | 4230 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending 4/30/04 for Winstar International, Inc. |
| 2101 | 06/04/2004 | 4231 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending 4/30/04 for Winstar Interactive Vestures, Inc. |
| 2102 | 06/04/2004 | 4232 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending 4/30/04 for Winstar Wireless, Inc. |
| 2103 | 06/04/2004 | 4233 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending 4/30/04 for Office.com, Inc. |
| 2104 | 07/07/2004 | 4249 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending May 31, 2004 for Winstar Communications, Inc. |
| 2105 | 07/07/2004 | 4250 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending May 31, 2004 for Winstar Interactive Media Sales |
| 2106 | 07/07/2004 | 4251 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending May 31, 2004 for Winstar New Media Company, Inc. |
| 2107 | 07/07/2004 | 4252 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending May 31, 2004 for Winstar International, Inc. |
| 2108 | 07/07/2004 | 4253 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending May 31, 2004 for Winstar Interactive Vestures, Inc. |
| 2109 | 07/07/2004 | 4254 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending May 31, 2004 for Winstar Wireless, Inc. |
| 2110 | 07/07/2004 | 4255 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending May 31, 2004 for Office.com, Inc. |
| 2111 | 08/20/2004 | 4291 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending 6/30/2004 for Winstar Communications, Inc. |
| 2112 | 08/20/2004 | 4292 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending 6/30/2004 for Winstar Interactive Media Sales |

73

## EXHIBIT A

### APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
### BE INCLUDED IN THE RECORD ON APPEAL

| | | | |
|---|---|---|---|
| 2113 | 08/20/2004 | 4293 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending 6/30/2004 for Winstar New Media Company, Inc. |
| 2114 | 08/20/2004 | 4294 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending 6/30/2004 for Winstar International, Inc. Filed by Christine Shubert (Rennie, Sheldon) (Entered: 08/20/2004) |
| 2115 | 08/20/2004 | 4295 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending 6/30/2004 for Winstar Interactive Vestures, Inc. |
| 2116 | 08/20/2004 | 4296 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending 6/30/2004 for Winstar Wireless, Inc. |
| 2117 | 08/20/2004 | 4297 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending 6/30/2004 for Office.com, Inc |
| 2118 | 09/15/2004 | 4313 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending July 31, 2004 for Winstar Communications, Inc. |
| 2119 | 09/15/2004 | 4314 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending July 31, 2004 for Winstar Interactive Media Sales |
| 2120 | 09/15/2004 | 4315 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending July 31, 2004 for Winstar New Media Company, Inc |
| 2121 | 09/15/2004 | 4316 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending July 31, 2004 for Winstar International, Inc. |
| 2122 | 09/15/2004 | 4317 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending July 31, 2004 for Winstar Interactive Vestures, Inc. |
| 2123 | 09/15/2004 | 4318 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending July 31, 2004 for Winstar Wireless, Inc. |
| 2124 | 09/15/2004 | 4319 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending July 31, 2004 for Office.com, Inc. |
| 2125 | 09/30/2004 | 4340 | Notice of Completion of Briefing Corrected Notice of Completion of Briefing Filed by Lucent Technologies. ) |
| 2126 | 10/07/2004 | 4343 | Motion to Approve Settlement Stipulation with Lucent Technologies, Inc Pursuant to Federal Bankruptcy Rule 9019 |
| 2127 | 10/25/2004 | 4345 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending August 31, 2004 for Winstar Communications, Inc. |
| 2128 | 10/25/2004 | 4346 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending August 31, 2004 for Winstar Interactive Media Sales |
| 2129 | 10/25/2004 | 4347 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending August 31, 2004 for Winstar New Media Company, Inc. |
| 2130 | 10/25/2004 | 4348 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending August 31, 2004 for Winstar International, Inc. |
| 2131 | 10/25/2004 | 4349 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending August 31, 2004 for Winstar Interactive Vestures, Inc Filed by Christine Shubert (Menkowitz, Michael) (Entered: 10/25/2004) |
| 2132 | 10/25/2004 | 4350 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending August 31, 2004 for Winstar Wireless, Inc. |
| 2133 | 10/25/2004 | 4351 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending August 31, 2004 for Office.com, Inc. |
| 2134 | 10/29/2004 | 4352 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending September 30, 2004 for Winstar Communications |
| 2135 | 10/29/2004 | 4353 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending September 30, 2004 for Winstar Interactive Media Sales |
| 2136 | 10/29/2004 | 4354 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending September 30, 2004 for Winstar New Media Company, Inc. |
| 2137 | 10/29/2004 | 4355 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending September 30, 2004 for Winstar International, Inc. |

RLF1-2986514-1

**EXHIBIT A**

**APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
BE INCLUDED IN THE RECORD ON APPEAL**

| 2138 | 10/29/2004 | 4356 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending September 30, 2004 for Winstar Interactive Vestures, Inc |
|------|-----------|------|---|
| 2139 | 10/29/2004 | 4357 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending September 30, 2004 for Winstar Wireless, Inc |
| 2140 | 10/29/2004 | 4358 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending September 30, 2004 for Office.com, Inc. |
| 2141 | 11/04/2004 | 4360 | Order Approving Settlement Stipulation with Lucent Technologies, Inc (Related Doc # 4343) |
| 2142 | 12/15/2004 | 4366 | Debtor-In-Possession Monthly Operating Report for Filing Period October, 2004 for Winstar Communications, Inc. |
| 2143 | 12/15/2004 | 4367 | Debtor-In-Possession Monthly Operating Report for Filing Period October, 2004 for Winstar New Media Company, Inc. |
| 2144 | 12/15/2004 | 4368 | Debtor-In-Possession Monthly Operating Report for Filing Period October, 2004 for Winstar Interactive Ventures, Inc. |
| 2145 | 12/15/2004 | 4369 | Debtor-In-Possession Monthly Operating Report for Filing Period October, 2004 for Winstar Interactive Media Sales |
| 2146 | 12/15/2004 | 4370 | Debtor-In-Possession Monthly Operating Report for Filing Period October, 2004 for Office.com, Inc. |
| 2147 | 12/15/2004 | 4371 | Debtor-In-Possession Monthly Operating Report for Filing Period October, 2004 for Winstar Wireless, Inc. Filed by Christine Shubert (Rennie, Sheldon) (Entered: 12/15/2004) |
| 2148 | 12/15/2004 | 4372 | Debtor-In-Possession Monthly Operating Report for Filing Period October, 2004 for Winstar International, Inc. |
| 2149 | 01/21/2005 | 4386 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending November 30, 2004 for Winstar Communications, Inc. |
| 2150 | 01/21/2005 | 4387 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending December 31, 2004 for Winstar Interactive Media Sales |
| 2151 | 01/21/2005 | 4388 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending December 31, 2004 for Winstar New Media Company, Inc. |
| 2152 | 01/21/2005 | 4389 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending December 31, 2004 for Winstar International, Inc. |
| 2153 | 01/21/2005 | 4390 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending December 31, 2004 for Winstar Interactive Vestures, Inc. |
| 2154 | 01/21/2005 | 4391 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending December 31, 2004 for Winstar Wireless, Inc. |
| 2155 | 01/21/2005 | 4392 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending December 31, 2004 for Office.com, Inc. |
| 2156 | 02/04/2005 | 4400 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending 12/31/2004 for Winstar Communications, Inc. |
| 2157 | 02/04/2005 | 4401 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending 12/31/2004 for Winstar Interactive Media Sales Filed by Christine Shubert (Rennie, Sheldon) (Entered: 02/04/2005) |
| 2158 | 02/04/2005 | 4402 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending 12/31/2004 for Winstar New Media Company, Inc. |
| 2159 | 02/04/2005 | 4403 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending 12/31/2004 for Winstar International, Inc. |
| 2160 | 02/04/2005 | 4404 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending 12/31/2004 for Winstar Interactive Vestures, Inc. |
| 2161 | 02/04/2005 | 4405 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending 12/31/2004 for Winstar Wireless, Inc. Filed by Christine Shubert (Rennie, Sheldon) (Entered: 02/04/2005) |

RLF1-2986514-1

## EXHIBIT A

### APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
### BE INCLUDED IN THE RECORD ON APPEAL

| 2162 | 02/04/2005 | 4406 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending 12/31/2004 for Office.com, Inc. |
|---|---|---|---|
| 2163 | 03/04/2005 | 4428 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending January 31, 2005 for Winstar Communications, Inc. (Part 1) Filed by Christine Shubert (Attachments: # 1 Part 2# 2 Part 3) |
| 2164 | 03/04/2005 | 4429 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending January 31, 2005 for Winstar Interactive Media Sales |
| 2165 | 03/04/2005 | 4430 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending January 31, 2005 for Winstar New Media Company, Inc. |
| 2166 | 03/04/2005 | 4431 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending January 31, 2005 for Winstar International, Inc. |
| 2167 | 03/04/2005 | 4432 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending January 31, 2005 for Winstar Interactive Vestures, Inc. |
| 2168 | 03/04/2005 | 4433 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending January 31, 2005 for Winstar Wireless, Inc. |
| 2169 | 03/04/2005 | 4434 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending January 31, 2005 for Office.com, Inc. |
| 2170 | 03/31/2005 | 4449 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending February 28, 2005 for Winstar Communications, Inc. |
| 2171 | 03/31/2005 | 4450 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending February 28, 2005 for Winstar Interactive Media Sales |
| 2172 | 03/31/2005 | 4451 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending February 28, 2005 for Winstar New Media Company, Inc |
| 2173 | 03/31/2005 | 4452 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending February 28, 2005 for Winstar International, Inc. |
| 2174 | 03/31/2005 | 4453 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending February 28, 2005 for Winstar Interactive Vestures, Inc. |
| 2175 | 03/31/2005 | 4454 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending February 28, 2005 for Winstar Wireless, Inc. |
| 2176 | 03/31/2005 | 4455 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending February 28, 2005 for Office.com, Inc Filed by Christine Shubert (Menkowitz, Michael) (Entered: 03/31/2005) |
| 2177 | 05/02/2005 | 4475 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending March 31, 2005 for Winstar Communications, Inc Filed by Christine Shubert (Menkowitz, Michael) (Entered: 05/02/2005) |
| 2178 | 05/02/2005 | 4476 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending March 31, 2005 for Winstar Interactive Media Sales Filed by Christine Shubert (Menkowitz, Michael) (Entered: 05/02/2005) |
| 2179 | 05/02/2005 | 4477 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending March 31, 2005 for Winstar New Media Company, Inc. |
| 2180 | 05/02/2005 | 4478 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending March 31, 2005 for Winstar International, Inc. |
| 2181 | 05/02/2005 | 4479 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending March 31, 2005 for Winstar Interactive Vestures, Inc. |
| 2182 | 05/02/2005 | 4480 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending March 31, 2005 for Winstar Wireless, Inc. |
| 2183 | 05/02/2005 | 4481 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending March 31, 2005 for Office.com, Inc. |
| 2184 | 06/07/2005 | 4495 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending April 30, 2005 for Winstar Communications, Inc. |
| 2185 | 06/07/2005 | 4496 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending April 30, 2005 for Winstar Interactive Media Sales |

76

**EXHIBIT A**

**APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
BE INCLUDED IN THE RECORD ON APPEAL**

| 2186 | 06/07/2005 | 4497 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending April 30, 2005 for Winstar New Media Company, Inc |
|------|------------|------|---|
| 2187 | 06/07/2005 | 4498 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending April 30, 2005 for Winstar International, Inc. |
| 2188 | 06/07/2005 | 4499 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending April 30, 2005 for Winstar Interactive Vestures, Inc. |
| 2189 | 06/07/2005 | 4500 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending April 30, 2005 for Winstar Wireless, Inc. |
| 2190 | 06/07/2005 | 4501 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending April 30, 2005 for Office.com, Inc  Filed by Christine Shubert (Menkowitz, Michael) (Entered: 06/07/2005) |
| 2191 | 08/01/2005 | 4522 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending May 31, 2005 for Winstar Communications, Inc. |
| 2192 | 08/01/2005 | 4523 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending May 31, 2005 for Winstar Interactive Media Sales |
| 2193 | 08/01/2005 | 4524 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending May 31, 2005 for Winstar New Media Company, Inc. |
| 2194 | 08/01/2005 | 4525 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending May 31, 2005 for Winstar International, Inc  Filed by Christine Shubert (Menkowitz, Michael) (Entered: 08/01/2005) |
| 2195 | 08/01/2005 | 4526 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending May 31, 2005 for Winstar Interactive Vestures, Inc. |
| 2196 | 08/01/2005 | 4527 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending May 31, 2005 for Winstar Wireless, Inc. |
| 2197 | 08/01/2005 | 4528 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending May 31, 2005 for Office.com, Inc. |
| 2198 | 08/03/2005 | 4529 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending June 30, 2005 for Winstar Communications, Inc. |
| 2199 | 08/03/2005 | 4530 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending June 30, 2005 for Winstar Interactive Media Sales |
| 2220 | 08/03/2005 | 4531 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending June 30, 2005 for Winstar New Media Company, Inc. |
| 2201 | 08/03/2005 | 4532 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending June 30, 2005 for Winstar International, Inc. |
| 2202 | 08/03/2005 | 4533 | Debtor-In-Possession Monthly Operating Report for Filing Period June 30, 2005 for Winstar Interactive Vestures, Inc. |
| 2203 | 08/03/2005 | 4534 | Debtor-In-Possession Monthly Operating Report for Filing Period June 30, 2005 for Winstar Wireless, Inc. |
| 2204 | 08/03/2005 | 4535 | Debtor-In-Possession Monthly Operating Report for Filing Period June 30, 2005 for Office.com, Inc. |
| 2205 | 04/18/2001 | 7 | AFFIDAVIT of Timothy R  Graham in Support of Chapter 11 Petitions and First Day Motions and Applications |
| 2206 | 04/18/2001 | 21 | MOTION for Order [I] Authorizing Debtors to Enter into Post-Petition Credit Agreement and Obtain Post-Petition Financing, [II] Providing Adequate Protection and Granting Liens, Security Interests and Superpriority Claims, [III] Granting Interim Relief and [IV] Scheduling a Final Hearing, [ID] INTERIM Order Signed and Located in Original Document Re: Item # 21 |
| 2207 | 05/07/2001 | 158 | RESPONSE to Objections to Motion for Order Authorizing Debtor to Obtain Post-Petition Financing |
| 2208 | 05/10/2001 | 186 | TRANSCRIPT of Hearing Held 5/8/01 at 12:38 P.M |
| 2209 | 05/14/2001 | 202 | FINAL Order Authorizing Debtors to Enter Into Post-Petition Credit Agreement and Obtain Post-Petition Financing, Providing Adequate Protection and Granting Liens, Security Interests and Superpriority Claims Re: Item # 21 |

77

EXHIBIT A

APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
BE INCLUDED IN THE RECORD ON APPEAL

| 2210 | 06/08/2001 | 334 | MOTION for Order [EMERGENCY] For Interim Amendment Order Authorizing Amendment of Post-Petition Credit Agreement [Filed by Pauline K. Morgan, Attys. |
| 2211 | 10/15/2002 | 2968 | Stipulation and Agreed Order by Winstar and General Motors Resolving Motion and Memorandum for Order to Implement and Enforce Provisions of Sale Order Dated Dec. 19, 2001 |

78

# EXHIBIT E

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                    :
In re:                                              :   Chapter 7
                                                    :
WINSTAR COMMUNICATIONS, INC., et al., :   Case No. 01-1430
                                                    :   Jointly Administered
                    Debtors.                        :
                                                    :
                                                    :
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                    :
CHRISTINE C. SHUBERT, CHAPTER 7           :
TRUSTEE,                                            :   Adversary Proceeding No. 01-1063 (JBR)
                                                    :
                                                    :
                    Plaintiff,                      :
                                                    :   **APPELLEE'S CROSS-DESIGNATION**
                                                    :   **OF ITEMS TO BE INCLUDED IN THE**
                    v.                              :   **RECORD ON APPEAL**
                                                    :
LUCENT TECHNOLOGIES INC.,                  :
                                                    :
                    Defendant.                      :
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Pursuant to Federal Rule of Bankruptcy Procedure 8006, Appellee Christine C. Shubert,

Chapter 7 Trustee of Winstar Communications, Inc. and Winstar Wireless, Inc., hereby

designates the following items for inclusion in the record. True and complete copies of the

Record items are annexed hereto as Exhibit "A".

From Shubert v. Lucent Technologies Inc., United States District Court, District of

Delaware, Civil Action No. 04-928(JJF):

| Tab | Date | District Court Docket No. | Description of Item |
|-----|------|--------------------------|---------------------|
| 2212 | 11/16/2004 | 11 | MEMORANDUM OPINION (signed by Judge Joseph J. Farnan Jr.) re: DI #12 |
| 2213 | 11/16/2004 | 12 | ORDER denying Lucent's motion to Withdraw the Reference to the Bankruptcy Court |
| 2214 | 9/8/2005 | 21 | MEMORANDUM ORDER denying [13] Motion to Certify Order for Appeal Pursuant to 28 U.S.C. 1292(b) |

Dated: Wilmington, Delaware
      January 26, 2006

**FOX, ROTHSCHILD LLP**

By:    **/s/ Sheldon K. Rennie (#3772)**
      Sheldon K. Rennie, Esq.
      Citizens Bank Center
      919 North Market Street, Suite 1300
      Wilmington, Delaware  19899-2323
      Telephone:  (302) 622-4202
      Facsimile:  (302) 656-8920

           -and-

      HERRICK, FEINSTEIN LLP
      Stephen M. Rathkopf, Esq.
      David R. King, Esq.
      2 Park Avenue
      New York, New York 10016
      Telephone:  (212) 592-1400
      Facsimile:  (212) 592-1500

2

**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

2004 NOV 16  PM 2: 45

IN RE:                                              :
                                                    : Chapter 7
WINSTAR COMMUNICATIONS, INC.,                       :
et al.,                                             : Bankruptcy Case No. 01-01430
                                                    :
            Debtors.                                :
_____                    :  _____
                                                    :
CHRISTINE C. SHUBERT, CHAPTER 7                     :
TRUSTEE OF WINSTAR COMMUNICATIONS,                  :
INC. AND WINSTAR WIRELESS, INC.,                    :
                                                    : Adversary No. 01-01063
            Plaintiff,                              :
                                                    : Civil Action No. 04-928 JJF
      v.                                            :
                                                    :
LUCENT TECHNOLOGIES, INC.,                          :
                                                    :
            Defendant.                              :

### O R D E R

At Wilmington, this ___16___ day of November 2004, for the

reasons set forth in the Memorandum Opinion issued this date,

IT IS HEREBY ORDERED that the Motion Of Defendant Lucent

Technologies, Inc. To Withdraw The Reference To The Bankruptcy

Court (D.I. 1) is **DENIED**.

UNITED STATES DISTRICT JUDGE

11/16/04

144

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

2004 NOV 16  PM 2: 45

|                                                    |   |                              |
|----------------------------------------------------|---|------------------------------|
| IN RE:                                             | : |                              |
|                                                    | : | Chapter 7                    |
| WINSTAR COMMUNICATIONS, INC.,                      | : |                              |
| et al.,                                            | : | Bankruptcy Case No. 01-01430 |
|                                                    | : |                              |
|                  Debtors.                          | : |                              |
|                                                    | : |                              |
|                                                    | : |                              |
| CHRISTINE C. SHUBERT, CHAPTER 7                    | : |                              |
| TRUSTEE OF WINSTAR COMMUNICATIONS,                 | : |                              |
| INC. AND WINSTAR WIRELESS, INC.,                   | : |                              |
|                                                    | : | Adversary No. 01-01063       |
|                  Plaintiff,                        | : |                              |
|                                                    | : | Civil Action No. 04-928 JJF  |
|         v.                                         | : |                              |
|                                                    | : |                              |
| LUCENT TECHNOLOGIES, INC.,                         | : |                              |
|                                                    | : |                              |
|                  Defendant.                        | : |                              |

Sheldon K. Rennie, Esquire of FOX, ROTHSCHILD LLP, Wilmington,
Delaware.
Of Counsel: Stephen M. Rathkopf, Esquire and David R. King,
Esquire of HERRICK, FEINSTEIN LLP, New York, New York; Richard G.
Smolev, Esquire of KAYE SCHOLER LLP, New York, New York.
Attorneys for Plaintiff.

Daniel J. DeFranceschi, Esquire; Rebecca L. Booth, Esquire, and
Jason M. Madron, Esquire of RICHARDS, LAYTON & FINGER, P.A.,
Wilmington, Delaware.
Of Counsel: Paul C. Saunders, Esquire and Daniel Slifkin, Esquire
of CRAVATH, SWAINE & MOORE LLP, New York, New York.
Attorneys for Defendant.

## MEMORANDUM OPINION

November 16, 2004
Wilmington, Delaware

Farnan, District Judge

Presently before the Court is the Motion Of Defendant Lucent Technologies, Inc. To Withdraw The Reference To The Bankruptcy Court (D.I. 1). For the reasons discussed, Lucent's motion will be denied.

### Background

On April 18, 2001, Winstar Communications, Inc. and Winstar Wireless, Inc. (collectively, "Winstar") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Winstar concurrently commenced an Adversary Proceeding alleging that Lucent Technologies, Inc. ("Lucent") breached several of the contracts between Winstar and Lucent, allegedly forcing Winstar to file its bankruptcy petition. Lucent filed several proofs of claim, asserting claims against Winstar that include secured and unsecured claims for sums alleged due under agreements between Lucent and Winstar.

In January 2002, the Court converted the bankruptcy to Chapter 7 and the bulk of Winstar's assets were subsequently liquidated. Following the conversion, Christine C. Shubert ("the Trustee") interceded to prosecute this action as Plaintiff and filed the Second Amended Complaint (A.D.I. 69).

In the Second Amended Complaint, the Trustee demanded a "trial by jury as to all issues so triable," and added Count XI, a claim seeking to equitably subordinate Lucent's claims. Two

1

other claims remain in the case—Count VII for Breach of the
Parties' Subcontracting Arrangement and Count X for Return of
Preferential Transfer.

After the Bankruptcy Court decided the Motion of Lucent
Technologies Inc. to Dismiss Certain Claims Of The Second Amended
Complaint (A.D.I. 70), Lucent made a demand for a jury trial and
asserted four counterclaims for fraud and negligent
misrepresentation. (A.D.I. 156.) Lucent asserted these
counterclaims with regard to financial information that Winstar
allegedly provided to Lucent during due diligence that Lucent
conducted in November and December 2000.

There is currently a Motion For Summary Judgment (A.D.I.
210) filed by Lucent pending in the Bankruptcy Court.

The Bankruptcy Court has not determined whether this matter
is a core or non-core proceeding.

### Parties' Contentions

By its motion, Lucent seeks to withdraw the reference of the
Adversary Proceeding from the Bankruptcy Court. Lucent contends
that "cause" for permissive withdrawal exists for several reasons
related to its alleged right to a jury trial in the district
court.

First, Lucent contends that it is entitled to a trial by
jury based on the Trustee's demand for a jury trial, which,
pursuant to Federal Rule of Civil Procedure 38, may not be

2

revoked without Lucent's consent.

Second, Lucent contends that it did not waive its right to a jury trial before the district court as to all claims when Lucent filed its proof of claim. Lucent contends that filing a proof of claim waives only the right to a jury trial in the district court as to claims that are necessarily part of the disallowance or allowance of the proof of claim. Lucent contends that Counts VII and X and Lucent's counterclaims are not necessary elements in the allowance or disallowance of Lucent's proofs of claim. Furthermore, Lucent contends that the district court should hear the Trustee's claim for equitable subordination, not triable to a jury as of right, because it arises from the same facts, transactions, and issues raised by Counts VII and X.

Third, Lucent contends that it would be more efficient for the district court to decide the pending motion for summary judgment in this action because it reviews de novo any such ruling made by the Bankruptcy Court.

Finally, Lucent argues that, because the Court need not determine whether the remaining claims in this lawsuit are core or non-core, Local Bankruptcy Court Rule 5011-1 should be waived.

In response, the Trustee contends that Lucent waived any right to a jury trial when it filed proofs of claim against the estate. The Trustee specifically contends that by filing the claims, Lucent submitted itself to the Bankruptcy Court's

3

equitable powers and conferred jurisdiction upon the Bankruptcy
Court to consider its counterclaims as a core matter. The
Trustee further contends that, should the Court determine the
matter is non-core and that Lucent has a right to a jury trial,
Lucent's motion should be denied because: 1) Lucent's jury demand
was defective; 2) Lucent's demand to withdraw the reference is
untimely; and 3) Lucent's motion to withdraw the reference is
procedurally defective because Lucent has failed to move before
the Bankruptcy Court for a core/non-core determination.

### Discussion

### I.  Legal Standard For Discretionary Withdrawal Of A Reference

Under 28 U.S.C. § 1334(b), district courts "have original
but not exclusive jurisdiction of all civil proceedings arising
under title 11, or arising in or related to cases under title
11." Pursuant to 28 U.S.C. § 157(a), each district court may
refer cases under title 11 to the Bankruptcy Court for
disposition. However, under Section 157(d), the referred
proceeding can be withdrawn from the Bankruptcy Court and
returned to the district court. Section 157(d) provides for both
mandatory withdrawal and discretionary withdrawal. In this case,
Lucent seeks withdrawal only under the standards for
discretionary withdrawal.

In providing for discretionary withdrawal, Section 157(d)
states: "The district court may withdraw, in whole or in part,

4

any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d). This Court has acknowledged that the requirement that cause be shown "creates a 'presumption that Congress intended to have bankruptcy proceedings adjudicated in bankruptcy court, unless rebutted by a contravening policy.'" Hatzel & Buehler, Inc. v. Central Hudson Gas & Elec., 106 B.R. 367, 371 (D. Del. 1989)(citations omitted).

The Court of Appeals for the Third Circuit has set forth five factors that a district court should consider in determining whether "cause" exists for discretionary withdrawal. These factors include: 1) promoting uniformity in bankruptcy administration; 2) reducing forum shopping and confusion; 3) fostering economical use of debtor/creditor resources; 4) expediting the bankruptcy process; and 5) timing of the request for withdrawal. In re Pruitt, 910 F.2d 1160, 1168 (3d Cir. 1990) (citing Holland Am. Ins. Co. v. Succession of Roy, 777 F.2d 992, 999 (5th Cir. 1985)).

Local Rules for the United States Bankruptcy Court for the District of Delaware state that the movant for withdrawal shall concurrently file with the Clerk a motion for a determination by the Bankruptcy Court with respect to whether the matter or proceeding is core or non-core. Bankr. D. Del. R. 5011-1.

5

## II. Lucent's Right To A Jury Trial

The sole reason for "cause" for permissive withdrawal that Lucent cites in its briefs is Lucent's right to a jury trial on Counts VII and X of the Trustee's Second Amended Complaint and on Lucent's counterclaims for fraud and negligent misrepresentation. The parties do not dispute that these issues may, by right, be triable by a jury.

### A.    Count X. Preferential Payment Claim

Count X seeks to recover $194 million paid by Winstar to Lucent in December 2000. The Court finds that Lucent may have been entitled to a jury trial on the issue of preferential payment had it presented no claim in the bankruptcy proceeding and awaited a federal action by the Trustee. See Schoenthal v. Irving Trust Co., 287 U.S. 92, 94-95 (1932). However, a creditor who submits a proof of claim against a bankruptcy estate has no right to a jury trial on issues raised in defense of such a claim. Billing v. Ravin, Greenberg & Zackin, P.A., 22 F.3d 1242, 1250 (3d Cir. 1994) (citing Langenkamp v. Culp, 498 U.S. 42, 45 (1990)).

The Court finds that, in view of the holdings in Billing and Langenkamp, Lucent's filing proofs of claim triggered the process of allowance and disallowance of those claims, thereby subjecting Lucent to the equity power of the Bankruptcy Court. Thus, the Court finds that the Trustee's subsequent preference action is

6

now part of the claims allowance process, and is triable only in equity. Id. For these reasons, the Court concludes that there is no right to a jury trial on the issue of the alleged preferential transfer.

Lucent contends that Langenkamp is inapplicable in these circumstances because the Trustee made a jury demand and, pursuant to Federal Rule of Civil Procedure 38, cannot withdraw that jury demand without Lucent's consent. Rule 38(d), which states that a jury demand "may not be withdrawn without the consent of the parties," ensures that one party may rely on another's jury demand. Fed. R. Civ. P. 38. However, the Court finds that because Lucent waived its right to a jury trial as to the alleged preferential transfer, its consent to the Trustee's withdrawal of her jury trial demand is not required. See Moore, Federal Practice 3d § 38.50[10][d].

B.    Count VII. Subcontract Claim

In Count VII, the Trustee alleges that Lucent breached the subcontract between Lucent and Winstar Wireless, Inc. and/or breached a legally-binding course of conduct between Lucent and Winstar. Lucent contends that whether it is found to have breached an alleged obligation to lend additional money to Winstar has no bearing on Lucent's ability to recover on its proofs of claim. The Court is not persuaded by Lucent's argument that the determination of its proofs of claim does not depend on

7

the outcome of the Trustee's Subcontract Claim. The Court finds that the Trustee's Subcontract Claim may affect the ordering of creditors or the equitable distribution of the res of the estate and, thus, is now part of the claims allowance process, triable only in equity. For this reason, the Court concludes that there is no right to a jury trial on the issue of the Subcontract Claim.

C.    Lucent's Counterclaims

Similarly, the Court is not persuaded that Lucent's Fraud and Negligent Misrepresentation Counterclaims will not affect the allowance or disallowance of Lucent's proofs of claim. The Court finds that Lucent's Fraud and Negligent Misrepresentation Counterclaims involve a decision regarding the distribution of the bankruptcy estate and, thus, are now part of the claims allowance process, triable only in equity. For this reason, the Court concludes that there is no right to a jury trial on the issue of the Fraud and Negligent Misrepresentation Counterclaims.

III. In Re Pruitt Factors For Cause

Although Lucent has not addressed the standards for "cause" for a permissive withdrawal of a reference set forth in In re Pruitt, 910 F.2d at 1168, the Court does not find that the factors as a whole support the Court's withdrawing the reference to the Bankruptcy Court for several reasons.

First, the Court finds that the timing of the request for

8

withdrawal supports the proceeding remaining in Bankruptcy Court. The Adversary Proceeding has already been in Bankruptcy Court for over two years, and the Bankruptcy Court has overseen extensive discovery and pretrial matters, and has decided a motion to dismiss filed by Lucent.

Next, the Court finds that considerations of uniformity in bankruptcy administration support the proceeding being heard in the Bankruptcy Court. The preferential payment and equitable subordination claims are purely bankruptcy-related in nature and the resolution of these claims will affect the distribution to creditors within the proceeding.

Finally, the Court finds that maintaining the proceeding in Bankruptcy Court will diminish the risk of forum shopping and will lessen confusion by fostering consistent administration of the estate.

For these reasons, the Court concludes that the Pruitt factors do not support withdrawing the reference from the Bankruptcy Court.

## IV. Local Bankruptcy Rule 5011-1

The record does not show that Lucent has filed a motion for determination by the Bankruptcy Court as to whether the matter or proceeding is core or non-core. Thus, the Court finds that Lucent did not follow Local Bankruptcy Court Rule 5011-1. For this additional reason, the Court will maintain the proceeding

9

before the Bankruptcy Court.

### Conclusion

In sum, the Court concludes that discretionary withdrawal of the instant adversary proceeding is not warranted because: 1) Lucent has waived its right to a jury trial with regard to the claims at issue; 2) the factors set forth in In re Pruitt do not support a finding of cause; and 3) Lucent has not followed Local Bankruptcy Rule 5011-1. Accordingly, the Court will deny the Motion Of Defendant Lucent Technologies, Inc. To Withdraw The Reference To The Bankruptcy Court (D.I. 1).

An appropriate Order will be entered.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

```
CHRISTINE C. SHUBERT, Chapter 7     :
Trustee of Winstar Communications, :
Inc. and Winstar Wireless, Inc.,    :
                                    :
          Plaintiff,                :
                                    : Civil Action No. 04-928 JJF
     v.                             :
                                    :
LUCENT TECHNOLOGIES, INC.,          :
                                    :
          Defendant.                :
```

### MEMORANDUM ORDER

Pending before the Court is the Motion To Certify Order For Appeal Pursuant To 28 U.S.C. § 1292(b) (D.I. 13) filed by Defendant Lucent Technologies, Inc. ("Lucent"). For the reasons set forth below, the motion will be denied.

### I.   BACKGROUND

On April 18, 2001, Winstar Communications, Inc. and Winstar Wireless, Inc. (collectively, "Winstar") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Winstar concurrently commenced an Adversary Proceeding alleging that Lucent Technologies, Inc. ("Lucent") breached several of the contracts between Winstar and Lucent, allegedly forcing Winstar to file its bankruptcy petition. Lucent filed several proofs of claim, asserting claims against Winstar that include secured and unsecured claims for sums allegedly due under agreements between Lucent and Winstar.

In January 2002, the Bankruptcy Court converted the Winstar bankruptcy proceeding from a Chapter 11 case to a Chapter 7 case,

and the bulk of Winstar's assets were subsequently liquidated.
Following the conversion, Christine C. Shubert ("the Trustee")
interceded to prosecute this action as Plaintiff and filed the
Second Amended Complaint (A.D.I. 69).

In the Second Amended Complaint, the Trustee demanded a
"trial by jury as to all issues so triable," and added Count XI,
a claim seeking to equitably subordinate Lucent's claims. Two
other claims remain in the case, Count VII for Breach of the
Parties' Subcontracting Arrangement and Count X for Return of
Preferential Transfer.

After the Bankruptcy Court decided the Motion of Lucent
Technologies Inc. to Dismiss Certain Claims Of The Second Amended
Complaint (A.D.I. 70), Lucent made a demand for a jury trial and
asserted four counterclaims for fraud and negligent
misrepresentation. (A.D.I. 156.) Lucent asserted these
counterclaims with regard to financial information that Winstar
allegedly provided to Lucent during due diligence that Lucent
conducted in November and December 2000.

On November 16, 2004, the Court entered an Order (D.I. 12)
denying Lucent's Motion To Withdraw The Reference To The
Bankruptcy Court (D.I. 1). The Court concluded that
discretionary withdrawal of the adversary proceeding was not
warranted because (1) Lucent waived its right to a jury trial
with regard to the claims at issue; (2) the factors set forth in

2

_In re Pruitt_, 910 F.2d 1160, 1168 (3d Cir. 1990), did not support a finding of cause; and (3) Lucent had not followed Local Bankruptcy Rule 5011-1. In concluding that Lucent waived its right to a jury trial, the Court found that (1) Lucent waived its right to a jury by filing proofs of claim, and (2) Lucent was not entitled to rely on the Trustee's jury demand after having waived its right to a jury.

On December 15, 2004, Judge Rosenthal denied Lucent's Motion For Summary Judgment On Counts VII, X, and XI of the Second Amended Complaint And For Partial Summary Judgment On Lucent's Affirmative Defense Of New Value (A.D.I. 210) in the Bankruptcy Court. The Bankruptcy Court has not determined whether this matter is a core or non-core proceeding.

## II. Legal Standard

Under 28 U.S.C. § 1292(b), leave to file an interlocutory appeal may be granted when the order at issue (1) involves a controlling question of law upon which there is (2) a substantial difference of opinion, and (3) when immediate appeal from the order may materially advance the ultimate termination of the litigation. The party seeking leave to file an interlocutory appeal must establish that exceptional circumstances justify a departure from the basic policy of postponing review until after the entry of final judgment. _First Am. Bank of New York v. Century Glove, Inc._, 64 B.R. 958, 961-62 (D. Del. 1986) (citing

3

Coopers & Lybrand v. Livesay, 437 U.S. 463, 475 (1978)).

### III. Discussion

By its Motion, Lucent contends that the Court's November 16 Order should be certified for appeal, because the Court's denial of Lucent's motion to withdraw the reference was based on the Court's conclusion that Lucent waived its right to a jury trial. Lucent contends that the Court's denial of its right to a jury trial would plainly constitute reversible error on appeal, if the Third Circuit determines that the Court erroneously adjudicated the waiver issue. Lucent contends that certification of the Order should be permitted to avoid infringing on Lucent's right to a jury trial.

If a question is such that an erroneous determination of it would require reversal on final appeal, it is a "controlling" question of law. See Katz v. Carte Blanche Corp., 496 F.2d 747, 755 (3d Cir. 1974). If a case is tried in a court with no jurisdiction, "certain reversal of the judgment on jurisdictional grounds" is sure to follow. Id. However, Section 1292(b) is not designed for review of factual matters. Link v. Mercedes-Benz of North America, Inc., 550 F.2d 860, 863 (3d Cir. 1976).

Reviewing the issues presented by Lucent in light of the standard for granting leave to file a motion for interlocutory appeal, the Court concludes that Lucent has not presented controlling and purely legal questions justifying interlocutory

4

review.  While the question of whether the Court properly read
Federal Rule of Civil Procedure 38(d) to permit an exception to
the consent requirement for withdrawal of a jury trial demand
when a party has previously waived its right to a jury trial
presents a legal question, that legal question is first premised
on the mixed factual and legal question concerning whether a
party has waived its right to a jury trial.  Lucent contends that
the waiver issue presents a purely legal question, because the
Court erred in failing to apply the legal analysis referenced in
Billing v. Ravin, Greenberg & Zackin, P.A., 22 F.3d 1242 (3d Cir.
1994).  Specifically, Lucent contends that the Court was required
to conduct a detailed comparison between the adversary proceeding
and the proofs of claim when determining whether those claims
should be tried in equity.

It is evident from the Court's November 16 decision that the
Court considered the Third Circuit's decision in Billing.  Thus,
the Court is not persuaded that Lucent's argument is directed to
the purely legal question of the applicable standard to be
applied to waiver questions.  Rather, in the Court's view,
Lucent's argument goes more to the manner in which the Court
applied the Billing decision to the facts of this case, a mixed
question of law and fact.  Because factual questions permeate the
waiver issue, the Court concludes that the issues raised by
Lucent are not suitable for interlocutory appeal.

5

In addition, even if the questions presented can be considered controlling legal questions, the Court concludes that Lucent has not demonstrated that a substantial ground for difference of opinion exists with regard to the determinations made by the Court and subject to the request for interlocutory appeal. The Court's decision in its November 16 Order is consistent with the decisions of other courts who have also considered the issue of waiver as it relates to the consent provision of Rule 38(d). See, e.g., In re Roman Catholic Archbishop of Portland in Oregon, 2005 WL 196477, *3 (D. Or. January 28, 2005) (citing In re Carrington Gardens Assocs., 248 B.R. 752, 767 (Bankr. E.D. Va. 2000)); Glaxo Wellcome, Inc. v. Genpharm, Inc., 1997 WL 381939, *1 (S.D.N.Y. July 9, 1997); Rosen v. Dick, 639 F.2d 82 (2d. Cir. 1980). Accordingly, the Court concludes that Lucent has not demonstrated that certification to appeal the Court's November 16 Order is warranted.

**IV.   CONCLUSION**

NOW THEREFORE, IT IS HEREBY ORDERED, this $\mathcal{8}$ day of September 2005, that the Motion To Certify Order For Appeal Pursuant To 28 U.S.C. § 1292(b) (D.I. 13) filed by Defendant Lucent Technologies, Inc. is **DENIED**.

UNITED STATES DISTRICT JUDGE

7

# EXHIBIT F

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| WINSTAR COMMUNICATIONS, INC., et al., | Case No. 01-1430 (KJC) Jointly Administered |
| Debtors. | |
| CHRISTINE C. SHUBERT, CHAPTER 7 TRUSTEE OF WINSTAR COMMUNICATIONS, INC. AND WINSTAR WIRELESS, INC., | Adv. Pro. No. 01-1063 (JBR) |
| Plaintiff, | |
| v. | |
| LUCENT TECHNOLOGIES INC., | |
| Defendant. | |

**TRUSTEE'S REPLY BRIEF IN FURTHER SUPPORT OF MOTION TO STRIKE**

Of Counsel:

  Sheldon K. Rennie, Esquire
  (DE Bar No. 3772)

On the Brief:

  Stephen M. Rathkopf, Esquire
  Andrew C. Gold, Esquire

FOX ROTHSCHILD LLP
Citizens Bank Center
919 North Market Street
Suite 1300
Wilmington, DE 19899-2323
Telephone: (302) 654-7444

HERRICK, FEINSTEIN LLP
2 Park Avenue
New York, New York 10016-9301
Telephone: (212) 592-1400
Facsimile: (212) 592-1500

*Attorneys for Plaintiff Christine C. Shubert, Chapter 7 Trustee*

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT ............................................................................................................................. 2

I.    The Bankruptcy Court Has The Authority To Rule On The Motion To Strike ................. 2

II.   Only Record Items Considered By This Court In Issuing The Order Lucent Now
      Appeals Are Properly Included In The Appellate Record .................................................. 4

III.  The Bankruptcy Court Can Limit The Issues On Appeal .................................................. 6

CONCLUSION ......................................................................................................................... 7

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Amedisys, Inc. v. JP Morgan Chase Manhattan Bank (In re Nat'l Century Fin. Enters, Inc.),* 334 B.R. 907 (Bankr. S.D. Ohio 2005) .............................................................. 2, 3, 4

*Food Distrib. Ctr. v. Food Fair, Inc. (In re Food Fair, Inc.),* 15 B.R. 569 (Bankr. S.D.N.Y. 1981) ....................................................................................................................... 3

*French Kezelis & Kominiarek, P.C. v. Carlson (In re Carlson),* 255 B.R. 22 (Bankr. N.D. Ill. 2000) ........................................................................................................................... 3

*Gen. Elec. Capital Corp. v. Dial Bus. Forms, Inc. (In re Dial Bus. Forms, Inc.),* 341 F.3d 738 (8th Cir. 2003) ................................................................................................. 2

*In re Aughenbaugh,* 125 F.2d 887 (3d Cir. 1942) ......................................................................... 5

*In re Dow Corning Corp.,* 263 B.R. 544 (Bankr. E.D. Mich. 2001) ............................................... 2

*In re Neshaminy Office Bldg. Assocs.,* 62 B.R. 798 (E.D. Pa. 1986) ............................................ 3

*In re Reid,* 107 B.R. 79 (Bankr. E.D.Va. 1989) ............................................................................. 3

*Liberty Mutual Ins. Co. v. Rotches Pork Packers, Inc.,* 969 F.2d 1384 (2d Cir. 1992) ................. 6

*Metro N. St. Bank v. The Barrick Group, Inc. (In re Barrick Group, Inc.),* 100 B.R. 152 (Bankr. D. Conn. 1989) ............................................................................................ 2, 3

*Nantucket Investors II v. Calif. Fed. Bank (In re Indian Palms Assoc., Ltd.),* 61 F.3d 197 (3d Cir. 1995) ................................................................................................................. 2, 5

*NWL Holdings, Inc. v. Eden Ctr., Inc. (In re Ames Dep't. Stores, Inc.),* 320 B.R. 518 (Bankr. S.D.N.Y. 2005) ...................................................................................................... 4

*Saco Loc. Dev. Corp. v. Armstrong Bus. Credit Corp. (In re Saco Loc. Dev. Corp.),* 13 B.R. 226 (Bankr. D. Me. 1981) ............................................................................................. 3

*WB, Ltd. v. Tobago Bay Trading Co. (In re Tobago Bay Trading Co.),* 142 B.R. 534 (Bankr. N.D. Ga. 1992) ................................................................................................... 2, 3

### <u>Rules</u>

Fed. R. App. P. 10(e)(1) ................................................................................................................. 4

Christine C. Shubert, Chapter 7 Trustee for the estates of Winstar Communications, Inc., and Winstar Wireless, Inc., respectfully submits this reply to the Opposition of Lucent Technologies Inc. to the Trustee's Motion to Strike (the "Opposition") (Adv. Proc. Docket No. 391), filed on February 6, 2006.[1]

## PRELIMINARY STATEMENT

Lucent contends that this Court lacks authority to grant the Trustee's motion to strike Lucent's designation of documents from the general bankruptcy docket that were never admitted in evidence, not relied on by Lucent below, not considered by the trial court, and not otherwise part of the adversary proceeding docket.[2]  Lucent is plainly wrong, as demonstrated in the many decisions that have already addressed this specific issue and decided it in the Trustee's favor. Lucent's position has repeatedly been rejected because it makes no sense.  The Bankruptcy Court is the only court that knows what was considered in reaching the decision to be appealed.  And as appellate courts note time and time again, in reviewing the decision of a lower court, the appellate record is limited to the evidence and other materials that the lower court considered when it issued its decision.

Lucent is also wrong in its fall-back argument -- that the hundreds of irrelevant general bankruptcy docket filings that Lucent failed to move into evidence in the adversary proceeding or otherwise raise with this Court during trial should be included in the appellate record (and considered by the appellate court for the first time) under principles of judicial notice.  As will be demonstrated below, they should not and the very authority cited by Lucent so holds.

---

[1] Terms defined in the Trustee's moving brief have their same meaning here.

[2] After this motion was made, Lucent conceded that its designation of unadmitted trial exhibits was improper, and has agreed to stipulate to the removal of all such exhibits from the record, which the Trustee accepts.

## ARGUMENT

### I.     The Bankruptcy Court Has The Authority To Rule On The Motion To Strike

In a twisted misreading of the Third Circuit's decision in *Nantucket Investors II v. Calif. Fed. Bank (In re Indian Palms Assoc., Ltd.)*, 61 F.3d 197 (3d Cir. 1995), Lucent suggests that this decision limits consideration of motions to strike to the appellate court.  While *In re Indian Palms* does involve appellate court consideration of a motion to strike, it does not hold that the bankruptcy (trial) court cannot consider such a motion, or indeed, which court should consider such a motion.[3]  There, the Appellee did not move before the bankruptcy court, but moved to strike instead before the district court.  *Id.* at 201.

As set forth in the Trustee's moving brief, the overwhelming majority of courts that have actually considered the issue agree with the Trustee's position -- that the trial court is in the best position to determine what material it relied upon in reaching its decision, and accordingly, what material should be included in the record.  *See  Amedisys, Inc. v. JP Morgan Chase Manhattan Bank (In re Nat'l Century Fin. Enters, Inc.)*, 334 B.R. 907, 912-13 (Bankr. S.D. Ohio 2005) ("A majority of the courts conclude that a bankruptcy court has the power to rule on disputes over the contents of the appellate record.") (citing *WB, Ltd. v. Tobago Bay Trading Co. (In re Tobago Bay Trading Co.),* 142 B.R. 534, 536 (Bankr. N.D. Ga. 1992) ("[F]ind[ing] that it retains jurisdiction for the limited purpose of adjudicating [a] dispute concerning the contents of the record on appeal."); *Metro N. St. Bank v. The Barrick Group, Inc. (In re Barrick Group, Inc.),* 100 B.R. 152, 154 (Bankr. D. Conn. 1989) ("[B]ankruptcy court should determine in the first

---

[3] Nor do the two out-of-circuit opinions cited by Lucent:  both courts relied on *In re Indian Palms* for the proposition that an appellate court could consider a motion to strike, not for the proposition that *only* an appellate court could consider a motion to strike.  *Gen. Elec. Capital Corp. v. Dial Bus. Forms, Inc. (In re Dial Bus. Forms, Inc.)*, 341 F.3d 738 (8th Cir. 2003); *In re Dow Corning Corp.*, 263 B.R. 544, 547 (Bankr. E.D. Mich. 2001) (*In re Dow Corning Corp.* did hold, contrary to the majority view expressed in the cases cited by the Trustee, that a bankruptcy court lacks power to determine a motion to strike, but did not cite *In re Indian Palms* as authority for its holding).

instance whether a disputed item in a designation of record on appeal played any part in its deliberations ... this court retains jurisdiction to consider and rule upon [an] objection [to the designation].") (citations omitted); *In re Neshaminy Office Bldg. Assocs.,* 62 B.R. 798, 802 (E.D. Pa. 1986) ("The Bankruptcy Court resolves disputes over the proper contents of the appellate record in the first instance.") (citation omitted); *Food Distrib. Ctr. v. Food Fair, Inc. (In re Food Fair, Inc.),* 15 B.R. 569, 572 (Bankr. S.D.N.Y. 1981) ("This Court determines that it does have jurisdiction, in the first instance, to consider the proposed modification of the record."); *Saco Loc. Dev. Corp. v. Armstrong Bus. Credit Corp. (In re Saco Loc. Dev. Corp.),* 13 B.R. 226, 229 (Bankr. D. Me. 1981) (determining "that it does have jurisdiction to correct or modify the record on appeal")).

As the court in *Nat'l Century* confirmed:

> These courts subscribing to the majority position have found that such authority (over the record on appeal) should remain with the bankruptcy court. Leaving this authority with the bankruptcy court will assist the appeal process as the bankruptcy court is in the best position to possibly strip off items improperly designated in a record on appeal. Sitting as the court of first impression, a bankruptcy court, according to the majority position, knows whether the parties placed the items in dispute before the court prior to its issuance of an appealable order. "While the filing of a notice of appeal generally divests a bankruptcy court of jurisdiction to proceed with respect to matters raised by the appeal, *actions in aid of the appeal are not beyond its authority.*" *Barrick Group,* 100 B.R. at 154 (emphasis added) (citations omitted). *See also French Kezelis & Kominiarek, P.C. v. Carlson (In re Carlson),* 255 B.R. 22, 23 (Bankr. N.D. Ill. 2000) ("Despite pendency of an appeal from the judgment here, this Court has jurisdiction to enter orders pertaining to the appeal record in aid of the appeal process.") (citations omitted); *Tobago Bay,* 142 B.R. at 535 ("Nonetheless, 'actions in aid of the appeal are not beyond its authority.'") (quoting *Barrick Group,* 100 B.R. at 154) (other citations omitted); *In re Reid,* 107 B.R. 79, 83 n. 7 (Bankr. E.D.Va. 1989) ("Generally, the timely filing of a notice of appeal divests the district court of authority to proceed further with

> respect to such matters, except in aid of the appeal.") (citation and
> internal quotation marks omitted).

*Id.* at 913.  *See also NWL Holdings, Inc. v. Eden Ctr., Inc. (In re Ames Dep't. Stores, Inc.),* 320

B.R. 518, 520-21 (Bankr. S.D.N.Y. 2005) (Content of the record on appeal should be resolved by

the bankruptcy court, "where the record was designated, and where the matter sought to be

included in the record was (or should have been) presented.").

Finally, the court in *Nat'l Century* looked to Rule 10(e) of the Federal Rules of Appellate

Procedure, "the analogue to Rule 8006", which provides that, "[i]f any difference arises about

whether the record truly discloses what occurred in the district court, the difference must be

submitted to and settled by that court and the record conformed accordingly."  Fed. R. App. P.

10(e)(1).  The *Nat'l Century* court relied upon that rule in a bankruptcy appeal:

> Thus, if any difference arises concerning the record in the district
> court, the difference shall be submitted to and settled by the district
> court, the court in which the record was made . . .  Applying
> Appellate Rule 10(e) to the present situation *also* directs this
> Court, where the original record was made, to decide this dispute
> over the record on appeal.

*Id.* at 916 (emphasis in original).

## II.    Only Record Items Considered By This Court In Issuing The Order Lucent Now Appeals Are Properly Included In The Appellate Record

Lucent also suggests that the Court should ignore Lucent's designations from the general

bankruptcy docket (as opposed to the adversary proceeding docket) because Lucent can ask the

District Court to take judicial notice of the items in dispute.[4]  Lucent ignores the well-settled rule

that the record must normally be limited to the matters considered by the bankruptcy court in

reaching its decision in an adversary proceeding and cannot include other documents in the

---

[4] We would note that the pleadings for this case are all part of the adversary proceeding docket, and there is no need to cite the general bankruptcy docket to include pleadings for this case.  (*See* Lucent's Opposition, p. 1, suggesting the contrary).

general bankruptcy docket that were not considered by the court in the adversary proceeding in entering the order being appealed.  In so arguing, Lucent ignores, among other cases cited by the Trustee, *In re Ames*, holding that "if an item was not considered by the [bankruptcy] court, it should be stricken from the record on appeal."  *Ames*, 320 B.R. at 521.

To bolster its argument, Lucent improperly relies on *In re Indian Palms*.  There, the Third Circuit carefully and expressly distinguished the inclusion of bankruptcy filings in a record for an appeal from a contested matter (as in the *Indian Palms* case) and adversary proceedings, like the present matter.  While holding that documents from the general bankruptcy docket may be part of the record for a contested matter, the Court reaffirmed its earlier holding that "a bankruptcy judge deciding an adversary proceeding, which is an independent litigation, and an appellate court reviewing that decision, cannot properly use documents filed only in the underlying bankruptcy case unless that use can be justified under the judicial notice doctrine."  *Id.* at 204 (citing *In re Aughenbaugh,* 125 F.2d 887, 889 (3d Cir. 1942)).  The Third Circuit went on to specifically highlight the very limited circumstances under which the doctrine of judicial notice might permit consideration of a document not considered by the trial court.  *Id*. at 204-205.

Here, Lucent has given this Court no basis to conclude that judicial notice might justify inclusion of the bankruptcy court filings in the record; moreover, Lucent has not even tried to explain its failure to move any of these documents in evidence (or at a bare minimum, even mention the documents) during the trial below, if it believes that they were relevant to the issues being tried.

Lucent apparently intends to use the new materials to advance new arguments.  But the Third Circuit expressly rejected this tactic in *Indian Palms*, by holding that judicial notice cannot be used as a substitute for evidence that should have been offered in the trial court.  *Id.* at 205.

Finally, a request for judicial notice must be assessed only in the context of a request to take notice of a specific item for a specific purpose. *Id. See also, Liberty Mutual Ins. Co. v. Rotches Pork Packers, Inc.,* 969 F.2d 1384, 1388 (2d Cir. 1992) (judicial notice of a court document may be taken only to establish that the document was filed, and not "for the truth of the matters asserted"). Judicial notice cannot be sought en masse, by designating hundreds of new bankruptcy record items without any explanation as to their relevance or significance. Lucent has not identified the portion of any of these items it intends to rely upon, nor described the purpose for which it seeks to use such items. As a result, Lucent's designation of these items is not only inappropriate, but unsupported as well.

### III.   The Bankruptcy Court Can Limit The Issues On Appeal

Lucent does not dispute that the Bankruptcy Court never decided issues 13, 14, and 15 of the Issues Designation. Lucent also does not dispute that the District Court has already decided issues 13, 14 and 15 twice. While Lucent now states that it included those issues for "further" appellate review (*see* Lucent's January 26, 2006 letter, attached as Exhibit A to Lucent's Opposition) -- presumably referring to an appeal to the Third Circuit -- it does not also state that it will not pursue appeal of those issues before the District Court. To attempt to resolve this issue, we hereby stipulate that we have no objection to the Court of Appeals for the Third Circuit considering such issues, and that we will not argue such issues were not properly preserved for appeal to that court if they are withdrawn from the Issues Designation. But if Lucent refuses to withdraw issues 13, 14 and 15 from the Issues Designation, our position remains firm that these issues are not the proper subject of the upcoming appeal to the District Court.

Lucent argues only that this Court lacks the power to strike any of Lucent's designated issues. There appear to be no authorities suggesting that the Bankruptcy Court either can or cannot strike issues from the Issues Designation. It is the Trustee's position that as with record

designations, the bankruptcy court is appropriately qualified to determine what issues it decided

and are therefore properly included in the Issues Designation.   Recognizing, however, that there

appears to be no case law addressing this Court's power (or lack thereof) to decide this issue, we

defer to the Court, and will argue the issue before the district court if the Court believes that to be

the more appropriate course.

<u>**CONCLUSION**</u>

For the reasons set forth above as well as those reasons set forth in the Trustee's Motion

to Strike, the Trustee respectfully requests that this Court grant the motion.


Dated: February 9, 2006
          Wilmington, Delaware

                              */s/ Sheldon K. Rennie (#3772)*
                              Sheldon K. Rennie, Esquire
                              Delaware Bar No. 3772
                              FOX ROTHSCHILD LLP
                              919 N. Market Street, Suite 1300
                              Wilmington, DE 19801-3046
                              Telephone (302) 654-7444

                              -and-

                              Stephen M. Rathkopf, Esquire
                              Andrew C. Gold, Esquire
                              HERRICK FEINSTEIN LLP
                              2 Park Avenue
                              New York, NY 10016
                              (212) 592-1400

                              *Attorneys for Christine C. Shubert, Chapter 7*
                              *Trustee*

# EXHIBIT G

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF DELAWARE

In re:

WINSTAR COMMUNICATIONS, INC.
et al.
Debtors

Chapter 7
CaseNo. 01-1430(JBR)

CHRISTINE C. SHUBERT,
CHAPTER 7 TRUSTEE
Plaintiff

v.

LUCENT TECHNOLOGIES INC.
Defendant

Adversary Proceeding
No. 01-1063 (JBR)

## ORDER ON MOTION OF CHAPTER 7 TRUSTEE TO STRIKE ITEMS FROM LUCENT TECHNOLOGIES INC.'S DESIGNATION OF RECORD ON APPEAL AND ISSUES FROM LUCENT TECHNOLOGIES INC.'S STATEMENT OF ISSUES ON APPEAL

This matter came before the Court on the Motion of Chapter 7 Trustee to Strike

Items from Lucent Technologies Inc.'s Designation of Record on Appeal and Issues

from Lucent Technologies Inc.'s Statement of Issues on Appeal ("Motion to Strike")

[docket #384] and Lucent Technologies Inc.'s Opposition to the Motion to Strike [Docket

# 392]. After review of the record, the Motion to Strike is ALLOWED in part and

DENIED in part as follows:

1. As Lucent itself acknowledges in it Opposition, exhibits that are neither

pleadings filed in the Debtors' bankruptcy or this adversary proceeding nor exhibits

admitted at trial are not properly included in the record on appeal. Therefore the Motion

to Strike, to the extent it seeks to strike exhibits that are neither pleadings nor exhibits

admitted at trial, is ALLOWED. The parties are to agree upon a final list of exhibits to

be included in the record on appeal and if they are unable to reach agreement within 14

days of the date of this Order, submit a list of disputed exhibits, along with any citations to the trial transcript relevant to resolving the issue of whether a document was or was not admitted at trial.

2. To the extent the Motion to Strike seeks to strike pleadings from the record on appeal, the Motion is DENIED without prejudice to the parties seeking additional relief from the district court which will hear the appeal. It is the district court which should decide whether it will take judicial notice any of these pleadings. Fed. R. Evid. 201(f); *Nantucket Investors II v. Calif. Fed. Bank (In re Indian Palms Assocs., Ltd.)*, 61 F.3d 197, 204 (3d Cir. 1995).

3. To the extent the Motion to Strike seeks to have this Court strike certain issues from Lucent's statement of issues on appeal, the Motion is DENIED. That determination should also be left to the district court.

4. The Trustee's request for oral argument on the Motion to Strike is DENIED.

Dated: February 15, 2006

Joel B. Rosenthal
United states Bankruptcy Judge

2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

IN RE:  Winstar Communications, Inc., et al.

_____

| | | |
|---|---|---|
| Lucent Technologies Inc., | : | |
| | : | |
| Appellant, | : | |
| | : | Civil Action No.:  06-147 |
| v. | : | |
| | : | |
| Christine C. Shubert, Chapter 7 Trustee, | : | |
| | : | Bankruptcy Case No.:  01-1430 |
| Appellee. | : | |

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 9th day of March, 2006 one (1) copy of *Declaration of David R. King in Connection with the Appellee Chapter 7 Trustee's Motion to Strike Items From Lucent Technologies Inc.'s Designation of Record on Appeal and Issues From Lucent Technologies Inc.'s Statement of Issues on Appeal* was served upon the individuals listed below in the manner specified:

**_VIA HAND DELIVERY_**
Daniel J. DeFranceschi, Esquire
Rebecca Booth, Esquire
Richards Layton & Finger, P.A.
One Rodney Square, P.O. Box 551
Wilmington, DE  19899

**_VIA HAND DELIVERY_**
Office of the United States Trustees Office
844 King Street, Suite 2313
Lockbox 35
Wilmington, DE  19801-2313

**_U.S. MAIL_**
Craig Goldblatt, Esquire
Wilmer Cutler Pickering Hale & Dorr, LLP
399 Park Avenue
New York, NY  10022

**_VIA FEDERAL EXPRESS_**
Lillian Grossbard, Esquire
Cravath Swain & Moore
825 8th Avenue, Room# 3906W
New York, NY  10019

**_VIA FEDERAL EXPRESS_**
Craig Goldblatt, Esquire
Wilmer Cutler Pickering Hale & Dorr, LLP
2445 M. Street, NW
Washington, DC  20037

   */s/ Sheldon K. Rennie (#3772)*
   Sheldon K. Rennie, Esquire