## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

IN RE: Winstar Communications, Inc., et al.

Lucent Technologies Inc.,

               Appellant,

        v.

Christine C. Shubert, Chapter 7 Trustee,

            Appellee.

:
:
:
:
:
:
:
:
:
:

Civil Action No.: 06-147

Bankruptcy Case No.: 01-1430

---

## REPLY MEMORANDUM OF LAW ON BEHALF OF CHAPTER 7 TRUSTEE IN FURTHER SUPPORT OF MOTION TO STRIKE

---

Of Counsel:

   Sheldon K. Rennie, Esquire
   (DE Bar No. 3772)

On the Brief:

   Stephen M. Rathkopf, Esquire
   David R. King, Esquire

FOX ROTHSCHILD LLP
Citizens Bank Center
919 North Market Street
Suite 1300
Wilmington, DE 19899-2323
Telephone: (302) 654-7444

HERRICK, FEINSTEIN LLP
2 Park Avenue
New York, New York 10016-9301
Telephone: (212) 592-1400
Facsimile: (212) 592-1500

*Attorneys for Plaintiff Christine C.*
*Shubert, Chapter 7 Trustee*

## TABLE OF CONTENTS

Page

TABLE OF CONTENTS ............................................................................................ i

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ............................................................................................................. 2

I.    Lucent Can Neither Appeal Nor Seek Reconsideration Of the
      District Court's Rulings ................................................................................. 2

II.   Because Lucent Has Not Shown That Judicial Notice Is Appropriate
      For Any Of The Documents In Question, The Trustee's Motion Should
      Be Granted ..................................................................................................... 5

CONCLUSION ......................................................................................................... 10

# TABLE OF AUTHORITIES

Page

**Cases**

Abrahams v. Kindred Healthcare, Inc. (In re Vencor, Inc.), 2003 U.S.Dist.Lexis
    7163 (D. Del. April 28, 2003), aff'd, 98 Fed.Appx. 93 (2004) .......................... 4

Albright v. Virtue, 273 F.3d 564 (3d Cir. 2001)................................................................ 8

Billing v. Ravin, Greenberg & Zakin, P.A., 22 F.3d 1242 (3d Cir. 1994) ...................... 3

Brewer v. N.Y. St. Dep't of Corr. Servs. (In re Value-Added Commc'ns Inc.), 224
    B.R. 354 (N.D. Tex. 1998)........................................................................................ 6, 7

Carter v. Brady, 2004 U.S. Dist. Lexis 5547 (D. Del., March 29, 2004) ...................... 3

Eisenberg Bros. Inc. v. Clear Shield Nat'l, Inc. (In re Envirodyne Indus., Inc.),
    214 B.R. 338 (N.D. Ill. 1997) .................................................................................. 6, 7

In re Aughenbaugh, 125 F.2d 887 (3d Cir. 1942)............................................................ 6

In re DaimlerChrysler AG Securities Litigation, 200 F. Supp. 2d 439 (D. Del.
    2002) ............................................................................................................................ 4

General Elec. Capital Corp. v. Dial Bus. Forms, Inc. (In re Dial Bus. Forms, Inc.),
    341 F.3d 738 (8th Cir. 2003) .................................................................................... 7

In re Neshaminy Office Bldg. Assocs., 62 B.R. 798 (E.D.Pa. 1986) .............................. 8

Langenkamp v. Culp, 498 U.S. 42 (1990) ...................................................................... 3

Lucent Technologies, Inc. v. Extreme Networks, Inc., 231 F.R.D. 453 (D. Del.
    2005) ............................................................................................................................ 3

Metro N. St. Bank v. The Barrick Group, Inc. (In re Barrick Group, Inc.), 100
    B.R. 152 (Bankr. D. Conn. 1989) ............................................................................ 6

Nantucket Investors II v. California Federal Bank (In re Indian Palms), 61 F.3d
    197 (3d Cir. 1995)........................................................................................ 5, 6, 7, 9

NWL Holdings, Inc. v. Eden Ctr., Inc. (In re Ames Dep't. Stores, Inc.), 320 B.R.
    518 (Bankr. S.D.N.Y. 2005) .................................................................................... 6

WB, Ltd. v. Tobago Bay Trading Co. (In re Tobago Bay Trading Co.), 142 B.R.
    534 (Bankr. N.D. Ga. 1992)...................................................................................... 6

                                                                              Page
**Rules**

Fed.R. Civ. P. 1 ................................................................................................ 8

Fed. R. Bankr. P. 8001 ...................................................................................... 2

Fed. R. Bankr. P. 8006 ...................................................................................... 9

D. Del. LR 7.1.5 ............................................................................................. 3, 4

Christine C. Shubert (the "Trustee"), Chapter 7 Trustee for the estates of Winstar Communications, Inc., and Winstar Wireless, Inc., respectfully submits this reply memorandum of law in further support of her motion for an order striking certain items listed on the Statement of Issues on Appeal (the "Issues Designation") of Lucent Technologies Inc. ("Lucent") (Docket No. 2), filed on January 19, 2006, and Lucent's Amended Designation of Items to Be Included in the Record on Appeal (the "Record Designation") (Docket No. 6) filed on March 1, 2006.[1]

## PRELIMINARY STATEMENT

If Lucent has its way on this motion, it will be standing appellate practice on its head. First, ignoring the Federal Rules of Bankruptcy Procedure, Lucent has designated three issues for appeal to this Court that were decided by this Court, and not by the Bankruptcy Court below. Lucent now admits that what it really seeks as regards these three issues is reconsideration by the District Court of its own decision from November 2004 -- even though Lucent has never made a motion for reconsideration. It is too late for either a motion or for reconsideration. And even if the request were timely, Lucent fails to demonstrate -- or even to assert -- that any of the required grounds for reconsideration are present. Lucent attempts to delay the striking of these three issues by arguing that the propriety of the issues for appeal should be considered only as part of the briefing of the appeal on the merits. But there is no good authority or reason for this contention -- the three issues challenged on this appeal are not properly issues for appeal and the instant motion to strike should be granted.

As to the Record Designation, here too, Lucent seeks to turn appellate practice upside down. Thus Lucent seeks to include in the record on appeal over 600 bankruptcy filings (approximately 8 boxes of documents) with no apparent connection to the trial below, even

---

[1] "Docket No." refers to the docket for this appeal, 06cv147.

though none of these documents were part of the record in the adversary proceeding or even put before the trial court. Lucent has provided no explanation for why even a single one of these 600 documents can be included in the record on appeal. Instead, Lucent ignores case law to the contrary and argues that Lucent need not justify what it has included in the record until such time as Lucent files its brief on appeal. This is supposed to be an appeal based on the evidence before the Bankruptcy Court in the trial of the adversary proceeding (here a 21 day trial), not a new trial with more than 600 documents never even presented to the trial court. A motion to strike is an appropriate (if not mandated) method to object to the content of the record on appeal. Lucent's position that a ruling on this motion must be deferred until Lucent files its brief on the merits of its appeal defies all logic and is not supported by the cases.

## ARGUMENT

**I.  Lucent Can Neither Appeal Nor Seek
Reconsideration Of The District Court's Rulings**

Lucent concedes that it is attempting to include this Court's own rulings as issues on this appeal. And it has no answer to the Trustee's assertion that an appeal *to the same court* is forbidden under the Federal Rules of Bankruptcy Procedure. See Fed. R. Bankr. P. 8001, providing for appeal from a "judgment, order or decree of a *bankruptcy judge* to a district court . . .". Indeed, the very definition of "appeal" is: "[a] proceeding undertaken to have a decision reconsidered by a *higher* authority; esp., the submission of a lower court's or agency's decision to a higher court for review and possible reversal." BLACK'S LAW DICTIONARY 105 (8th Ed. 2004) (emphasis added). As a result, Lucent now argues that by designating these District Court-determined issues for "appeal" to the District Court, it is properly asking the District Court to reconsider its own prior rulings.

2

If this is what Lucent is doing, Lucent's request for reconsideration comes way too late, and has not been properly made. While Lucent may have been entitled to seek reconsideration of the District Court's decision on these issues by motion back in November 2004 (when they were decided by the District Court), Lucent cannot seek reconsideration now. Lucent was required to move for reconsideration of the District Court's decision within ten days.[2] See D. Del. LR 7.1.5. It is palpably improper for Lucent to twist and turn the law to argue that it can seek reconsideration through the instant appeal of the Bankruptcy Court judgment rendered more than a year after the District Court decision, where Lucent is time barred from making a motion for reconsideration directly to the District Court.

Even had Lucent not missed its opportunity to seek reconsideration, it would not be entitled to it here. The District Court's rulings were correct, and Lucent has provided no recognizable basis for reconsideration.[3] Lucent identifies no changes in controlling law or newly discovered evidence that might support reconsideration; nor does Lucent claim that there was any clear error of fact or law resulting in manifest injustice in the rulings on the initial motion. Lucent Technologies, Inc. v. Extreme Networks, Inc., 231 F.R.D. 453, 455 (D. Del. 2005) (denying motion for reconsideration under D. Del. LR 7.1.5, where party presented no new

---

[2] In its moving brief, the Trustee argued that a motion for reconsideration would be time barred due to the ten day limit set forth in Fed. R. Civ. P. 59(e). That rule governs final orders and judgments. Delaware's local rules limit motions for reconsideration of interlocutory orders as well. D. Del. LR 7.1.5; see Carter v. Brady, 2004 U.S. Dist. Lexis 5547 (D. Del., March 29, 2004) (D. Del. LR 7.1.5 applies to interlocutory orders) (A copy of this decision is appended hereto as Exhibit "A"). Thus, regardless of whether the District Court's rulings are considered final or interlocutory, reconsideration would be barred as untimely.

[3] In footnote 4 of its opposing Memorandum, Lucent takes this motion as an opportunity to set forth the essence of its reargument, to wit: the Trustee's subcontract claim is not part of the allowance process and therefore was not to be tried in equity in the Bankruptcy Court. This Court already addressed this issue twice, once in its Memorandum Opinion dated November 16, 2004 and again in its Memorandum Order dated September 8, 2005, denying certification for appeal. In short, this Court correctly found that by filing Proofs of Claim, including claims related to the subcontract claim, Lucent was not entitled to a jury trial on any of the claims or counterclaims in the Adversary Proceeding pursuant to the holdings of Langenkamp v. Culp, 498 U.S. 42 (1990) and Billing v. Ravin, Greenberg & Zakin, P.A., 22 F.3d 1242 (3d Cir. 1994).

3

arguments, but merely reiterated previously considered arguments). While Lucent expresses disagreement with the result, disagreement has never been a sufficient basis to support a motion for reconsideration. In re DaimlerChrysler AG Securities Litigation, 200 F. Supp. 2d 439, 442 (D. Del. 2002) (denying motion for reconsideration under D. Del. LR 7.1.5: "reargument or reconsideration may not be used to rehash arguments which have already been briefed, considered, and decided).

Lucent argues that despite all of the foregoing, there is no procedural mechanism for striking issues designated for appeal (even if improperly designated), and that the Court should determine whether to consider the issues only in connection with the briefs filed on the merits of the appeal. But Lucent cavils with the Court. The three challenged issues in the Issues Designation are plainly not properly designated as issues on appeal. Had Lucent filed a motion for reconsideration in place of its Issues Designation as regards the three challenged issues, the Trustee would have opposed that motion, and under the applicable rules and case law, we submit that the motion would have been summarily rejected by this Court. Under these circumstances, the result should be no different when Lucent ignores the laws governing reconsideration and appeals and attempts to do indirectly what it cannot do directly.

While Lucent argues that there are no cases granting motions to strike issues improperly designated for appeal, Lucent cannot point this Court to any case that holds that a motion to strike such issues cannot be brought or if brought, cannot be granted until after merits briefing of the appeal. In fact, the District Court of Delaware has granted a motion to strike issues on at least one prior occasion. Abrahams v. Kindred Healthcare, Inc. (In re Vencor, Inc.), 2003 U.S.Dist.Lexis 7163 at *4 (D. Del. April 28, 2003) (striking 60 issues from a supplemental

designation of issues as untimely and not permitted), aff'd, 98 Fed.Appx. 93 (2004).[4]   The
relative dearth of case law addressing motions to strike issues is a reflection of the fact that most
appellants recognize what are proper issues for appeal and do not seek to "appeal" an issue to the
same (and only) court which decided it.  In Lucent's view, there would be no remedy available --
other than suffering through and opposing an illegitimate appeal -- for appellees faced with
patently inappropriate issue designations; we submit that this cannot be the case.

Finally, Lucent asserts (again) that it has designated the three challenged issues -- and
opposed this motion -- merely to preserve the three issues for appeal to the Third Circuit.  This is
simply not credible, given the Trustee's open offer to stipulate that the issues are preserved for
appeal to the Third Circuit and not waived if not briefed on this appeal.

Because Lucent has conceded that it cannot appeal the three challenged issues to this
Court, and because Lucent is not entitled to reconsideration of these issues, the Trustee's motion
to strike the improperly designated issues should be granted.

## II.    Because Lucent Has Not Shown That Judicial Notice Is Appropriate For Any Of the Documents In Question, The Trustee's Motion Should Be Granted

Lucent does not dispute that it has designated from the general bankruptcy file over 600
documents (approximately eight full boxes) never admitted in evidence in the 21 day trial of the
adversary proceeding and never even presented to or considered by Judge Rosenthal when he
rendered his decision and judgment in that trial.  Lucent also does not dispute that these
challenged documents are not properly included in the record unless Lucent can show that their
inclusion is permissible pursuant to the doctrine of judicial notice, and then only for the limited
purposes authorized under that doctrine.  Indeed, as stated in In re Indian Palms:

---

[4] Copies of the District Court and Third Circuit decisions on this case are appended hereto as Exhibit "A".

> [w]e have previously held that a bankruptcy judge deciding an
> adversary proceeding, which is an independent litigation, and an
> appellate court reviewing that decision, cannot properly use
> documents filed only in the bankruptcy case unless that use can be
> justified under the judicial notice doctrine.

Nantucket Investors II v. California Federal Bank (In re Indian Palms), 61 F.3d 197, 204 (3d Cir.

1995 (citing In re Aughenbaugh, 125 F.2d 887, 889 (3d Cir. 1942)); see also, Metro N. St. Bank

v. The Barrick Group, Inc. (In re Barrick Group, Inc.), 100 B.R. 152, 154 (Bankr. D. Conn.

1989); NWL Holdings, Inc. v. Eden Ctr., Inc. (In re Ames Dep't. Stores, Inc.), 320 B.R. 518, 522

(Bankr. S.D.N.Y. 2005); Eisenberg Bros., Inc. v. Clear Shield Nat'l, Inc. (In re Envirodyne

Indus., Inc.), 214 B.R. 338, 344-45 (N.D. Ill. 1997); WB, Ltd. v. Tobago Bay Trading Co. (In re

Tobago Bay Trading Co.), 142 B.R. 534, 536 (Bankr. N.D. Ga. 1992); Brewer v. N.Y. St. Dep't

of Corr. Servs. (In re Value-Added Commc'ns Inc.), 224 B.R. 354, 357 (N.D. Tex. 1998).

Despite these concessions and the clear controlling law, Lucent refuses to explain how or

why judicial notice will apply to any of the challenged documents and, instead, asserts that the

Court should wait until Lucent files its brief on appeal to address the question of which, if any, of

the more than 600 documents never presented by Lucent to the trial court should nevertheless be

considered by the appellate court in rendering its decision on the appeal.

Lucent's argument is balderdash, and not surprisingly, is directly in conflict with the

Third Circuit's holding in In re Indian Palms, which recognized the practice of moving to strike

documents from the record, even where judicial notice may be sought as regards the challenged

documents. 61 F.3d at 206, fn. 13. There, the Third Circuit considered whether judicial notice

supported the inclusion of documents in the record, where those documents were never admitted

in evidence during the hearing of a contested matter. Significantly, the Court reaffirmed the

principle that parties must be given an opportunity to object where judicial notice is requested.

Id. The Court then noted that a motion to strike was an appropriate means to present such an objection:

> CalFed. had an opportunity to oppose the propriety of the district court's consideration of these documents, and in fact did so, *by filing its motion to strike the documents* and by presenting argument in support of that motion before the district court.

Id. (emphasis supplied). Thus, the Third Circuit affirmed the use of judicial notice in part because the appellee had been heard on its motion to strike. For Lucent to argue here that In re Indian Palms abolished the use of motions to strike for improper record designations -- and that the Trustee must wait for merits briefing to address these issues -- flies in the face of the actual decision.

Lucent argues that the Eighth Circuit read In re Indian Palms as abolishing the practice of motions to strike because of the possibility that judicial notice might apply, based on a cursory statement in a footnote of that decision. General Elec. Capital Corp. v. Dial Bus. Forms, Inc. (In re Dial Bus. Forms, Inc.), 341 F.3d 738, 741, fn. 1 (8th Cir. 2003). Lucent's reading of In re Dial Bus. Forms, Inc. is beyond a stretch. In that case, the appellant had not included the challenged documents in the record on the first appeal, but instead annexed the documents in the appellate appendix to the Eighth Circuit, and thus an earlier motion to strike was not even possible.

Nor do any of the other cases cited by Lucent support its argument that motions to strike must be reserved until after appellant has filed its brief on appeal. For instance, in In re Envirodyne Indus., Inc., the appellee sought to strike documents that the appellant did not attempt to make a part of the record until it appended them to the reply brief on the appeal. 214 B.R. 338, 344 (N.D. Ill. 1997). Thus, again, no motion to strike could have been made before briefing the appeal. And in In re Value-Added Communications, Inc., the party seeking to strike chose to file the motion during the briefing of the appeal. 224 B.R. 354, 355 (N.D. Tex. 1998).

Accordingly, the court ruled on the appeal and the motion at the same time. There simply is no case holding that a motion to strike can only be made and determined at the same time as the briefing of the appeal on the merits.[5]

Even if the Third Circuit had not expressly recognized the right of a party to object to requests for judicial notice by a motion to strike, common sense and fairness would require such a practice. Allowing Lucent to proceed as it intends to here -- *i.e.*, designating in the record on appeal eight boxes of documents that were never placed in evidence at the trial or even considered by the trial court, and then refusing to identify any permissible reason for inclusion of these documents when challenged to do so, would render the designations under Bankruptcy Rule 8006 to be a meaningless exercise. We disagree with Lucent cavalier statement that the record is just a box (or in this case 32 boxes) sitting in the clerk's office. The record is significant because it is the sole source of materials to be considered on an appeal. See, e.g., Albright v. Virtue, 273 F.3d 564, 572 (3d Cir. 2001) (refusing to consider documents outside the record as part of appeal from the district court).

Deferring a decision as Lucent requests would require both parties to waste time and resources preparing for, bringing, and responding to arguments that will ultimately be unsupported, when the Court strikes the supporting items from the record. Obviously, such an approach not only makes no sense, but runs against the fundamental tenet of the Federal Rules of Civil Procedure -- that the rules "be construed and administered to secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1.

---

[5] Lucent also asserts that the decision in In re Neshaminy Office Bldg. Assocs., 62 B.R. 798 (E.D.Pa. 1986) supports its position. While the court in In re Neshaminy denied a motion to strike pleadings that were not contained in the record before the bankruptcy court, the case nevertheless supports the Trustee's position. In Neshaminy, the district court specifically found that it could reasonably infer that the bankruptcy court considered the disputed documents in rendering its decision. Lucent has provided no basis in its papers for this Court to find that an inference can be drawn that any of the thousands of pages of documents not submitted into evidence below were relied upon by the trial court in rendering its decision and judgment.

Lucent's tactic here is just another example of Lucent's desire for trial by ambush (something Lucent practiced, to no avail, below). Lucent wishes to hide its cards until the last possible moment ("the Trustee should simply wait until the briefing on the merits to see if, and for what purpose, Lucent attempts to use any of the documents in question"). Even worse, in a blatant abuse of Bankruptcy Rule 8006, it has apparently buried its cards -- however many it believes it has -- by designating hundreds of inappropriate items that it does not even intend to use. The parties have spent five years and millions of dollars litigating this case to a judgment. The adversary trial record is closed. That record cannot be supplemented on appeal absent a showing by Lucent that the narrow exception of judicial notice permits the appellate court to take judicial notice of a document not put in evidence at trial. See In re Indian Palms, 61 F.3d at 204. Lucent's attempt to add to the record on appeal more than 600 documents not presented to the trial court cannot, by any stretch of the imagination, fall within the narrow exception permitted by the Third Circuit and other courts.

In sum, Lucent has had several opportunities to explain why the inclusion of these eight boxes of challenged materials -- or even a single one of those documents -- in the record on appeal is appropriate. By its own choice, whether as a tactical decision or because it cannot supply a basis for judicial notice, it has failed to do so. It cannot now argue that this Court should defer a decision on the record because of a lack of "context," because Lucent itself is responsible for failing to provide that context in a situation where Lucent's attempted post-trial additions of more than 600 documents is a clear abuse of the governing law. For these reasons, the Court should strike the items attached to the Trustee's moving brief as Exhibit "A".

## CONCLUSION

For the reasons set forth above and in her moving brief, the Trustee respectfully requests that this Court grant her motion to strike issues 13, 14 and 15 from Lucent's Issue Designation, and to strike the items identified on Exhibit "A" to the Trustee's moving brief from Lucent's Record Designation.

Dated: March 30, 2006
      Wilmington, Delaware

                        **FOX ROTHSCHILD LLP**

                        */s/ Sheldon K. Rennie (#3772)*
                        Sheldon K. Rennie, Esquire
                        919 N. Market Street, Suite 1300
                        Wilmington, DE 19801-3046
                        Telephone (302) 654-7444

                        -and-

                        Stephen M. Rathkopf, Esquire
                        David R. King, Esquire
                        HERRICK FEINSTEIN LLP
                        2 Park Avenue
                        New York, NY 10016
                        (212) 592-1400
                        *Attorneys for Christine C. Shubert,*
                        *Chapter 7 Trustee*

**EXHIBIT A**

LEXSEE 2004 U.S. DIST. LEXIS 5547

**SHERMAN A. CARTER, Plaintiff, v. M. JANE BRADY, Attorney General, STANLEY TAYLOR, Commissioner, ROBERT SNYDER, Warden, and REBECCA L. MCBRIDE, Record's Supervisor, Defendants.**

Civil Action No. 99-757 JJF

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2004 U.S. Dist. LEXIS 5547

March 29, 2004, Decided

**PRIOR HISTORY:** Carter v. Brady, 2001 U.S. Dist. LEXIS 25592 (D. Del., Mar. 30, 2001)

**DISPOSITION:** [*1] Defendants' motion for reconsideration granted in part.

**COUNSEL:** Sherman A. Carter, Wilmington, Delaware. Pro Se Plaintiff.

Stuart B. Drowos, Esquire, Deputy Attorney General, STATE OF DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware. Attorney for Defendants.

**JUDGES:** JOSEPH J. FARNAN, JR., UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** JOSEPH J. FARNAN, JR.

**OPINION:**

### MEMORANDUM OPINION

Wilmington, Delaware

**Farnan, District Judge.**

Presently before the Court is Defendants' Motion For Reconsideration. (D.I. 89.) For the reasons discussed, the Court will grant in part the Motion.

### BACKGROUND

On February 11, 2004, the Court issued a Memorandum Order (the "February 11 Order") granting Plaintiff's motion in limine. (D.I. 85.) The Court based its decision on the absence of any specific opposition by Defendants to Plaintiff's motion in limine. As discussed in the February 11 Order, Defendants' opposition letter to Plaintiff's motion in limine, in large part, was a response to another of Plaintiff's [*2] motions. (D.I. 85 at 2.) Based on Defendants' apparent lack of opposition to Plaintiff's motion in limine, the Court granted Plaintiff's motion in limine as "unopposed." By their Motion, Defendants request the Court to reconsider its February 11 Order granting Plaintiff's motion in limine and to grant Defendants an extension to file dispositive motions.

### DISCUSSION

#### I. Parties' Contentions

Defendants contend that the Court should reconsider its February 11 Order granting Plaintiff's motion in limine because the Court's determination that Plaintiff's motion in limine was unopposed is contrary to the record in this case. Defendants contend that they previously set forth the basis for the defenses the Court struck in the February 11 Order in their motion to dismiss filed on March 17, 2000. Defendants contend that their prior pleadings in March of 2000, along with the Plaintiff's deposition testimony, demonstrate that Plaintiff's motion in limine should have been denied by the Court. In addition, Defendants request the Court to grant them an extension for filing dispositive motions.

In response, Plaintiff contends that the Court properly granted his motion in limine because [*3] there is no support for Defendants' defenses.

#### II. Applicable legal Principles

Defendants move the Court to reconsider its February 11 Order pursuant to Rule 60(b) of the Federal Rules of Civil Procedure and Local Rule 7.1.5. As an initial matter, the Court notes that Rule 60(b) does not apply to the Court's February 11 Order because that Order was not a final judgment or order. Fed. R. Civ. P. 60(b); see also 12 Moore's Federal Practice § 60.23 (3d ed. rev. 2003). However, because Defendants also move for re-

consideration pursuant to Local Rule 7.1.5, the Court will reach the merits of the instant motion.

"As a general rule, motions for reconsideration should be granted 'sparingly.'" Stafford v. Noramco of Delaware, Inc., 2001 WL 65738 at *1 (D. Del. Jan. 10, 2001)(quoting Karr v. Castle, 768 F. Supp. 1087, 1090 (D. Del. 1991)). The purpose of granting motions for reconsideration is to correct manifest errors of law or fact, present newly discovered evidence, or to prevent manifest injustice. Harsco Corp. v. Zlotnicky, 176 F.3d 669, 677 (3d Cir. 1999) [*4] (citing Keene Corp. v. Int'l Fid. Ins. Co., 561 F. Supp. 656, 665 (N.D.Ill.1983); North River Ins. Co. v. CIGNA Reins., 52 F.3d 1194, 1218 (3d Cir. 1995)(citations omitted). Parties should remain mindful that a motion for reconsideration is not merely an opportunity to "accomplish [the] repetition of arguments that were or should have been presented to the court previously." Karr v. Castle, 768 F. Supp. 1087, 1093 (D. Del. 1991)(citing Brambles U.S.A., Inc. v. Blocker, 735 F. Supp. 1239, 1240-41 (D. Del. 1990). However, a court should reconsider a prior decision if it overlooked facts or precedent that reasonably would have altered the result. Id. (citing Weissman v. Fruchtman, 124 F.R.D. 559, 560 (S.D.N.Y. 1989)).

**III. Decision**

With respect to the portion of Defendants' Motion requesting reconsideration of the Court's February 11 Order granting Plaintiff's motion in limine, the Court will deny the Motion. Defendants do not contend that there has been any change in the law or that they have discovered new evidence; instead, Defendants maintain that in light of their submissions in [*5] support of their motion to dismiss that they filed in March of 2000 and the Plaintiff's deposition testimony (that was not attached to Defendants' opposition to Plaintiff's motion in limine), the Court should not have concluded that Plaintiff's motion in limine was "unopposed."

The Court concludes that Defendants' arguments in support of their Motion for Reconsideration of the February 11 Order are without merit. Defendants cannot seriously have expected the Court to have searched the record in this case for one of their filings - submitted over four years ago - to formulate a rationale for denying Plaintiff's motion in limine. Additionally, although the Court is sympathetic to the heavy case load of Defendants' counsel, the Court is similarly faced with numerous proceedings and thus is prevented from undertaking in every case the type of searching review of the case record Defendants suggest the Court should have done when deciding Plaintiff's motion in limine. Defendants should have presented these arguments to the Court in their opposition to Plaintiff's motion in limine, and thus, are precluded from asserting them in the instant motion. See Karr, 768 F. Supp. at 1093. [*6]

Next, to the extent Defendants request the Court to grant them an extension of time to file dispositive motions, the Court will grant the Motion. Plaintiff does not contend that he will be unfairly prejudiced by the Court's grant of an extension, and, based on the heavy case load of Defendants' attorney, the Court will grant the request. n1

n1 Although the Court previously denied a request by Defendants for an extension to file dispositive motions (D.I. 83), Defendants' instant request is based on different grounds that the Court concludes justifies an extension. The Court previously denied Defendants an extension because the request was based on Defendants' belief that Plaintiff desired such an extension. Once the Court was notified by Plaintiff that he opposed any such extension, the Court denied Defendants' request. Contrary to their previous request, Defendants' instant request for an extension is based on Defense counsel's heavy case load.

**CONCLUSION**

For the reasons discussed, the Court will grant [*7] in part Defendants' Motion. An Order consistent with this Memorandum Opinion will be entered.

**ORDER**

At Wilmington, this 29th day of March, 2004, for the reasons discussed in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that Defendants' Motion For Reconsideration (D.I. 89), with respect to:

1) The Court's February 11, 2004, Memorandum Order granting Plaintiff's motion in limine (D.I. 85) is **DENIED;**

2) Defendants' request for an extension of time to file dispositive motions is **GRANTED.**

3) Defendants shall file and serve any dispositive motion on or before Friday, April 23, 2004. Plaintiff shall file and serve an answer brief to any dispositive motion on or before Friday, May 14, 2004. Any reply brief shall be filed and served on or before Friday, May 21, 2004.

2004 U.S. Dist. LEXIS 5547, *

4) Defendants' Motion For Leave To File Out Of Time Motion For Enlargement Of Time (D.I. 68) is **DENIED** as moot.

JOSEPH J. FARNAN, JR.

UNITED STATES DISTRICT JUDGE

LEXSEE 2003 U.S.DIST.LEXIS 7163

IN RE: VENCOR, INC, et al., Reorganized Debtors. CHARLES L. ABRAHAMS
and ELI-ANE PHILLIPS-MINKS, Appellants, v. KINDRED HEALTHCARE, INC.
f/k/a VENCOR, INC., et al., Appellees.

Chapter 11, Case Nos. 99-3199 through 99-3327 (MFW), Civil Action No. 03-4-GMS

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2003 U.S. Dist. LEXIS 7163

April 28, 2003, Decided

**SUBSEQUENT HISTORY:** Affirmed by Vencor Inc.
v. Kindred Healthcare Inc. (In re Vencor Inc.), 2004 U.S.
App. LEXIS 7662 (3d Cir. Del., Apr. 21, 2004)

**DISPOSITION:** [*1] Motion to dismiss granted.

**COUNSEL:** For Vencor Inc, DEBTOR: William H
Sudell, Jr, Eric D Schwartz, Michael Busenkell, Jason
William Harbour, Morris, Nichols, Arsht & Tunnell,
Wilmington, DE USA.

Charles L Abrahams, APPELLANT, Pro se, San Diego,
CA USA.

For Kindred Healthcare Inc, APPELLEE: William H
Sudell, Jr, Eric D Schwartz, Michael Busenkell, Jason
William Harbour, Morris, Nichols, Arsht & Tunnell,
Wilmington, DE USA.

David Buckbinder, TRUSTEE, Pro se, Wilmington, DE
USA.

**JUDGES:** Gregory M. Sleet, UNITED STATES
DISTRICT JUDGE.

**OPINIONBY:** Gregory M. Sleet

**OPINION:**

### MEMORANDUM AND ORDER

### I. INTRODUCTION

Charles L. Abrahams and Eli-Ane Phillips-Minks
(collectively, "the Appellants"), seek to vacate the order
entered by the United States Bankruptcy Court for the
District of Delaware which disallowed each of the two
proofs of claim filed in Vencor, Inc.'s ("Vencor") bank-
ruptcy proceeding. These proofs of claim each relate to,

and are based entirely upon, a qui tam action that was
filed in the United States District Court for the District of
California by the Appellants, on behalf of the United
States.

Presently before the court is Vencor's motion [*2]
to dismiss, or in the alternative, to strike the Appellants'
corrected designation of record and clarification of issues
on appeal. Vencor requests dismissal because it argues
that the Appellants are barred from collaterally attacking
both the Confirmation Order and the California District
Court's order approving the settlement and dismissing the
claims. For the following reasons, the court agrees and
will grant Vencor's motion to dismiss.

### II. BACKGROUND

#### A. The Phillips-Minks Qui Tam Action

On July 23, 1998, certain relators, including Eli-Ane
Phillips-Minks ("Phillips-Minks") filed their first
amended complaint in the United States District Court
for the Southern District of California. In their com-
plaint, they asserted claims under the False Claims Act's
qui tam provisions against Vencor and the Behavioral
HealthCare Corporation ("BHC"). The qui tam action
alleged, among other things, that Vencor knowingly
submitted false Medicare claims to the government.

On June 6, 2000, the United States notified the court
of its intent to intervene in the action as to Vencor for the
limited purpose of protecting its interests in Vencor's
Delaware bankruptcy proceedings. However, [*3] on
June 23, 2000, the United States withdrew its interven-
tion as to Vencor. On the same day, the United States
partially intervened with regard to certain claims against
the BHC defendants. The United States subsequently
continued to pursue settlement discussions with both
Vencor and BHC. In late February 2001, the United
States, Vencor, and BHC reached a final settlement

agreement. Phillips-Minks did not accede to the settlement agreement.

### B. The Debtor's Bankruptcy Proceedings

On September 13, 1999, Vencor filed its petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.

On January 6, 2000, the Appellants filed proof of claim number 5636 on behalf of Phillips-Minks in the amount of $ 500,000,000. Claim 5636 relates to allegations which were the subject of Phillips-Minks qui tam action. Also on that date, the Appellants filed proof of claim number 5637 in the amount of $ 129,000. This claim requests "pre-petition attorneys' fees incurred by Abrahams relating to his representation of Eli-Ane Phillips-Minks, as Relator, the plaintiff on behalf of the United States" in the qui tam action.

### C. Confirmation [*4]  Order

On December 14, 2000, Vencor filed its Fourth Amended Joint Plan of Reorganization of Vencor, Inc. and Affiliated Debtors Under Chapter 11 of the Bankruptcy Code ("the Plan"). Article 6.12 of the Plan sets forth the terms of Vencor's settlement of certain claims filed by or on behalf of the United States, including the qui tam actions identified in Exhibit 5 to the Plan ("the Government Settlement"). The Government Settlement provides that "the Debtors shall pay the United States $ 25.9 million" in settlement of certain claims filed by or on behalf of the United States - including the Phillips-Minks qui tam action - and that such payments "shall be made to the United States Department of Justice via electronic transfer." n1

n1 The Phillips-Minks qui tam action is the eighth case listed in Exhibit 5 to the Plan.

The Government Settlement further provides that "the United States agrees to pay 15 percent of the proceeds paid by the Debtor and Ventas Entities to resolve all claims for the Covered Conduct [*5] as to relators in the Qui Tams Actions, as listed on Exhibit 5 to the Plan, and in accordance with the allocations set forth in Schedule E ...." Plan at P 6.12(d)25. Schedule E of the Plan, entitled "Schedule of Allocation of Government Settlement" provides that $ 14,660.77 of the amount of money received by the United States from Vencor and the Ventas Entities pursuant to the Government Settlement shall be paid to Phillips-Minks.

Section 6.12(d)27 of the Plan provides that "the Debtors and Ventas Entities agree to pay the attorney's fees and expenses of relators who filed Qui Tam actions,

as listed on Exhibit 5 to the Plan, in accordance with Schedule A." Schedule A to the Plan, entitled "Schedule of Attorneys' Fees," provides that Charles Abrahams and Robert McCord shall be paid an aggregate amount of $ 15,000 in attorneys' fees in connection with the Phillips-Minks qui tam action.

The Plan provides that:

the Government Settlement as set forth in this Section 6.12, and each of the specific settlement amounts enumerated in Schedule E attached thereto, shall constitute a good faith compromise and full and final monetary settlement of the United States Claims, which compromise [*6] and settlement is in the best interests of creditors and the Debtors' estates and the Government Settlement and each enumerated settlement amount are fair, adequate and reasonable under all the circumstances. Confirmation of the Plan by the Bankruptcy Court shall constitute approval of the Government Settlement.

Plan at P 6.12(d)26.

On February 15, 2001, Abrahams filed Phillips-Minks' objection to the confirmation of Vencor's Fourth Amended Joint Plan of Reorganization. Specifically, the objection was based upon the argument "that the [Phillips-Minks] Qui Tam Action should not be a part of the government settlement with the Debtors in that the United States lacked authority to settle claims and to bind the Relator to the proposed settlement with the Debtors and Ventas entities."

The Bankruptcy Court held a confirmation hearing on March 1, 2001. Counsel for the Appellants attended the confirmation hearing and presented oral argument to the court in support of the objections. On March 19, 2001, the Bankruptcy Court confirmed the plan. In its confirmation order, the Bankruptcy Court stated that:

as of the Effective Date, the Government Settlement and the allowance [*7] and settlement of the Class 6 Claims and the payment of such claims, as set forth in the Sections 5.05 and 6.12 of the Fourth Amended Joint Plan of Reorganization of Vencor, Inc. and Affiliated Debtors Under Chapter 11 of the Bankruptcy Code ("the Plan"), is approved as a good faith compromise and settlement pursuant to Bank-

2003 U.S. Dist. LEXIS 7163, *

ruptcy Rule 9019, and the Government Settlement, including the settlement amount allocated to each of the Qui Tam Actions as enumerated in Schedule E of the Plan, is fair, adequate and reasonable under the circumstances. As to United States, et al. Ex Rel. Phillips-Minks, et al. v. Behavioral Healthcare Corp., et al. referenced on Schedule E and Exhibit 5 to the Plan, the government's settlement of this Qui Tam Action is effective only to the extent that United States has authority to compromise and settle this Qui Tam Action pursuant to the Federal [False] Claims Act ("FCA"). The District Court in that action may determine, on motion of any party to that action, whether the government had authority to settle that action.

Confirmation Order at P 10.

### D. Approval of the Qui Tam Action

On July 27, 2001, the California District Court held that [*8] "the government demonstrated 'good cause' sufficient to permit its intervention" in that case. It thus granted the United States' motion to intervene. On December 20, 2001, the California District Court found that "the United States had the authority to settle and dismiss the qui tam action as Vencor, subject to Court approval." It further found that "the settlement as to the Vencor defendants is wholly unobjectionable." In a footnote, the California District Court elaborated that:

> as to the merits of the Vencor settlement, the Court defers to, and concurs with, the Delaware bankruptcy court's determination that the settlement is fair, reasonable, and adequate. The Court has carefully reviewed the Settlement Agreement, relator Phillips-Minks' objection thereto, and all briefs, declarations, and affidavits pertaining to the Vencor settlement. As a result of this review, the Court finds that the agreement furthers rational governmental purposes and is without any indication of arbitrariness, capriciousness, bad faith, or improper motive.

Order Approving Settlement and Dismissal of Claims, n.4.

On February 27, 2002, the California District Court denied Phillips-Minks' [*9] motion to reconsider the Order Approving Settlement and Dismissal of Claims.

### E. Subsequent Bankruptcy Proceedings

On June 20, 2002, Vencor filed supplemental omnibus objections to claims filed on behalf of Abrahams requesting that Claim Numbers 5636 and 5637 be disallowed. On October 24, 2002, the Bankruptcy Court signed the Order Disallowing Certain Claims Filed on Behalf of Charles L. Abrahams and Eli-Ane Phillips-Minks. This order disallowed in full, and expunged, both claims. The Bankruptcy Court entered the Order Disallowing Proofs of Claim on October 30, 2002.

On November 8, 2002, the Appellants filed the Notice of Appeal of the Order Disallowing Proofs of Claim. On November 22, 2002, they filed their Designation of Record and Issues on Appeal. Vencor filed its Counter Designation of Record and Counter Designation of Issues on Appeal on December 2, 2002. On December 22, 2002, the Appellants filed their Corrected Designation of Record and Clarification of Issues on Appeal. This corrected designation identified sixty additional issues on appeal that had been omitted from the original designation of seven issues. The appeal was docketed in the present court on January 2, 2003.

## [*10]  III. DISCUSSION

In order to prevail on this appeal, the Appellants must demonstrate that: (1) the Bankruptcy Court erred in entering the Confirmation Order; and (2) the California District Court committed error when it held that the United States had the authority to settle the qui tam action. Thus, the Appellants implicitly seek to challenge the Bankruptcy Court's Confirmation Order. They also seek review of orders entered by the California District Court. For the following reasons, the court concludes that the Appellants are barred from bringing this appeal.

### A. Confirmation Order

Section 1144 of the Bankruptcy Code provides that, "on request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such an order if and only if such order was procured by fraud." Furthermore, "the 180 day deadline for seeking revocation of an order of confirmation is absolute and may not be extended by the court." COLLIER ON BANKRUPTCY P 1144.04 (15th ed. 2002); see also In re Vencor, Inc., 284 B.R. 79, 83 (D. Del. Bankr. 2002).

In the present case, the Bankruptcy [*11] Court entered the Confirmation Order on March 19, 2001. The Appellants did not move the Bankruptcy Court to revoke the Confirmation Order with respect to this ruling within

2003 U.S. Dist. LEXIS 7163, *

180 days of its entry. Consequently, they are barred from seeking a modification of the Confirmation Order with respect to their claims.

Moreover, even if the Appellants could overcome the procedural bar of 11 U.S.C. § 1144, they are nevertheless time-barred from appealing the Confirmation Order in the present court with respect to the treatment of their claims under that order. Federal Rule of Bankruptcy Procedure 8002 states that, "the notice of appeal shall be filed with the clerk within 10 days of the date of the entry of the judgment, order, or decree appealed from." As the Confirmation Order constituted a final order on the merits that the Bankruptcy Court was leaving to the California District Court the issue for the government's authority to settle the Phillips-Minks qui tam action, the Appellants were required to file a notice of appeal with respect to the Confirmation Order on or before March 29, 2001. *See e.g. Eastern Metals & Chem. Co. v. Maham*, 225 F.3d 330, 336 (3d Cir. 2000) [*12] (holding that "an order confirming a Chapter 11 plan is a final order "on the merits."). There can be no dispute that the Appellants failed to file this appeal on or before March 29, 2001.

**B. The California District Court's Orders**

Vencor next argues that the Appellants are barred from collaterally attacking the California District Court's Order Approving Settlement and Dismissal of Claims. For the following reasons, the court must agree.

"[A] judgment by a court of competent jurisdiction bears a presumption of regularity and is not thereafter subject to collateral attack." *Kalb v. Feuerstein*, 308 U.S. 433, 438, 84 L. Ed. 370, 60 S. Ct. 343 (1940). In the present case, upon entry of the Confirmation Order, the only remaining issue of potential dispute relating to Claims 5636 and 5637 was whether the government did, in fact, have the authority to settle the Phillips-Minks qui tam action. The Bankruptcy Court permitted the parties to raise this issue before the California District Court.

On July 27, 2001, the California District Court held that "the government demonstrated 'good cause' sufficient to permit its intervention" in that case. It thus granted the United States Government's motion [*13] to intervene. On December 20, 2001, over the objections of the Appellants, the California District Court held that "the United States had the authority to settle and dismiss this qui tam case as to Vencor, subject to Court approval," and "that settlement as to the Vencor defendants is wholly unobjectionable." Order Approving Settlement and Dismissal of Claims at 4.

On February 27, 2002, the California District Court denied Phillips-Minks' motion to reconsider its order. The Appellants concede that they have not appealed ei-

ther the original order, or the order denying reconsideration, to the United States Court of Appeals for the Ninth Circuit.

Title 28 of the United States Code Section 1291 provides that, "the court of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States ...." *See also* 28 U.S.C. § 1294 (requiring that appeals from reviewable decisions of the district courts shall be taken to the court of appeals embracing the district court's district). Accordingly, the present court does not have appellate jurisdiction to review the findings entered by the California District Court, including [*14] the finding that the government had the authority to settle the Phillips-Minks qui tam action. Thus, as the Appellants seek to have this court act in an appellate capacity over the California District Court, the appeal must be dismissed.

**C. The Corrected Designation**

On November 22, 2002, the Appellants filed their Designation of the Contents for Inclusion in the Record. Vencor filed its Counter Designations on December 2, 2002. It did not file a cross-appeal. On December 22, 2002, the Appellants then filed a Corrected Designation of Record and Clarification of Issues on Appeal.

Federal Rule of Bankruptcy Procedure 8006 permits an appellant to designate additional items to be included in the record after submitting its initial designations only in response to a cross-appeal. As Vencor did not file a cross-appeal in this matter, the Appellants have no basis for filing their Supplemental Designations.

Additionally, even if Rule 8006 permitted the Appellants to file their Supplemental Designations, they are nevertheless time-barred from doing so. An appellant must file its additional items to be included in the record, if any, "within 10 days of service of the cross appellants' [*15] statement." FED. R. BANKR. P. 8006. Thus, the Appellants would have been required to file their Supplemental Designations on or before December 12, 2002. The Appellants did not, however, file their Supplemental Designations until December 22, 2002.

Finally, the Appellants do not point to any legitimate basis for extending the time in which to designate their issues on appeal. Rather, they state that:

> Mr. Charles L. Abrahams, the attorney for Appellants is a sole practitioner and was out of the country within the [] 30 days [prior to the filing of the Supplemental Designations] for a period of 11 days. Mr. Charles L. Abrahams had a number of deadlines and his temporary secretary did

2003 U.S. Dist. LEXIS 7163, *

not follow the office procedure and failed to calendar the ten day deadline to respond to the Appellees' Designation pursuant to Rule 8006.

Motion for Leave to File Corrected Designation at 1. None of these reasons constitute excusable neglect. Accordingly, to the extent that any of the sixty newly designated issues on appeal would survive the court's rulings in Sections III A and B, *supra*, the court will strike the Appellants' Corrected Designations and Clarification of Issues [*16] on Appeal as being untimely filed.

## IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Kindred Healthcare's Motion to Dismiss (D.I. 14) is GRANTED.

Dated: April 28, 2003

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

LEXSEE 98 FED.APPX. 93

IN RE: VENCOR INC., ET AL., Debtor; CHARLES L. ABRAHAMS; ELI-ANNE
PHILLIPS-MINKS, Appellants v. KINDRED HEALTHCARE INC. f/k/a VENCOR
INC. DAVID BUCKBINER, Trustee

No. 03-2670

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

98 Fed. Appx. 93; 2004 U.S. App. LEXIS 7662

April 12, 2004, Submitted Under Third Circuit LAR 34.1(a)
April 21, 2004, Filed

**NOTICE:** [**1] RULES OF THE THIRD CIRCUIT
COURT OF APPEALS MAY LIMIT CITATION TO
UNPUBLISHED OPINIONS. PLEASE REFER TO
THE RULES OF THE UNITED STATES COURT OF
APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:** Appeal from the United States District Court for the District of Delaware. (D. C. Civil No.
03-cv-00004). District Judge: Honorable Gregory M.
Sleet. Abrahams v. Kindred Healthcare, Inc. (In re Vencor, Inc.), 2003 U.S. Dist. LEXIS 7163 (D. Del., Apr. 28,
2003)

**DISPOSITION:** Affirmed.

**COUNSEL:** For CHARLES L. ABRAHAMS, ELI-ANE PHILLIPS-MINKS, Appellants: Charles L. Abrahams, San Diego, CA.

For KINDRED HEALTHCARE fka Vencor Inc, Appellee: William H. Sudell, Jr., Morris, Nichols, Arsht &
Tunnell, Wilmington, DE. Thomas J. Moloney, Lindsee
P. Granfield, Cleary Gottlieb, New York, NY.

**JUDGES:** Before: RENDELL, COWEN and LAY *,
Circuit Judges.

\* Honorable Donald P. Lay, Senior Circuit Judge
for the Eighth Circuit, sitting by designation .

**OPINIONBY:** RENDELL

**OPINION:**

[*95] OPINION OF THE COURT

RENDELL, Circuit Judge.

Appellants Charles L. Abrahams and Eli-Ane Phillips-Minks challenge an order of the District Court granting Appellee Debtors' motion to dismiss an appeal of an
order of the Bankruptcy Court disallowing proof of
claims filed by the Appellants in a bankruptcy action.
We will affirm.

Appellant Phillips-Minks filed a *qui tam* action
[**2] against the Debtors in the District Court for the
Southern District of California ("the California court").
Subsequently, Debtors filed bankruptcy petitions in the
Bankruptcy Court for the District of Delaware. Appellants then filed proofs of claim based upon the allegations of the Phillips-Minks *qui tam* action and fees incurred by Abrahams during his representation of Phillips-Minks. As part of the Debtors' proposed Plan of Reorganization, the Debtors and the government settled a
number of *qui tam* actions, including the one filed by
Appellants. Appellants objected to the proposed Plan of
Reorganization. On March 19, 2001, the Bankruptcy
Court issued an order confirming the Plan, with the settlement of the Appellant's *qui tam* action effective to the
extent that the government had authority to settle the *qui
tam* action, noting that the California court could determine whether the government had the authority to settle
the *qui tam* action. Appellants did not appeal this order.

The government moved to intervene in the *qui tam*
action in the California court. The court allowed the government to intervene and, subsequently, found that the
government had the authority [**3] to settle the action.
Appellants did not appeal this order.

Debtors then filed a request with the Bankruptcy
Court to disallow Appellants' proofs of claim. The Bankruptcy Court issued an order disallowing the proofs of
claim, based on that court's order confirming the Plan
and the California court's order confirming the govern-

98 Fed. Appx. 93, *; 2004 U.S. App. LEXIS 7662, **

ment's authority to settle the *qui tam* action. Appellants did appeal this order, and filed a Designation of the Contents for Inclusion in the Record, pursuant to Rule 8006 of the Federal Rules of Bankruptcy Procedure. This Designation listed seven issues for appeal. Also pursuant to Rule 8006, the Appellees filed a Counter Designation in response to the Appellants' Designation, but did not file a cross appeal. Despite this, however, the Appellants filed a Corrected Designation of Record and Clarification of Issues on Appeal, which listed a total of 67 issues for appeal, seven of which had been included in the first Designation. Debtors subsequently filed a motion with the District Court to dismiss the appeal and/or strike the Corrected Designation. The Court granted the motion. Appellants now appeal from the District Court's [**4] order granting Debtors' motion to dismiss the appeal.

The Bankruptcy Court had jurisdiction to enter the order disallowing the proofs of claim pursuant to 28 U.S.C. § 157. The District Court had appellate jurisdiction pursuant to 28 U.S.C. § 158(a). We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

Appellants raise issues in relation to (1) the order of the California court, (2) the Bankruptcy Court's order confirming the Plan of Reorganization, and (3) the Corrected Designation. With respect to the order of the California court, Appellants contest (a) the court's determination that the government had the authority to settle the *qui tam* action, (b) the court's jurisdiction and impartiality, and (c) the court's "violation" of the automatic stay. However, we need not analyze this set of issues, as we do not have jurisdiction to [*96] consider either the merits of the California court's order or its jurisdiction to issue such an order. Had Appellants wished to appeal the order, the Court of Appeals for the Ninth Circuit was the proper court with which to lodge that appeal. See 28 U.S.C. § 1294 [**5] ("appeals from reviewable decisions of the district and territorial courts shall be taken to the courts of appeals ...from a district court of the United States to the court of appeals for the circuit embracing the district ...").

We reach a similar conclusion with respect to the several issues raised regarding the Bankruptcy Court's order confirming the Plan of Reorganization. Appellants contest (a) the Bankruptcy Court's application of 31 U.S.C. § 3730(c)(3), (b) the Bankruptcy Court's authority to leave the issue of the government's authority to settle the *qui tam* action to the California court, (c) the Bankruptcy Court's application of 28 U.S.C. § 157(d), and (d) the Bankruptcy Court's determination that the settlement was fair and adequate. We conclude that we do not have jurisdiction to consider issues related to the confirmation order, as Appellants failed to appeal that order. Had Appellants wished to revoke or appeal the order of confirmation, they should have taken action to

do so before the applicable deadline. See 11 U.S.C. § 1144 (2004) (providing that a court may revoke an order of confirmation [**6] if a motion is made to do so within 180 days after the date of entry of the order, "if and only if such order was procured by fraud"); Fed. R. Bankr. P. 8002 (providing that a notice of appeal must be filed with the District Court or Bankruptcy Appellate Panel "within 10 days of the date of entry of the judgment, order, or decree appealed from"). We will not allow Appellants to avoid the consequences of their failure by considering issues related to the confirmation order on appeal from an order disallowing proofs of claim.

Finally, Appellants assert that the District Court erred in granting Debtors' motion to strike the Corrected Designation. Under Federal Rule of Bankruptcy Procedure 8006, there is no provision for a "Corrected" Designation. An appellant must file a "designation of the items to be included in the record on appeal and a statement of the issues to be presented" within 10 days of filing a notice appeal of a Bankruptcy Court decision. Fed. R. Bankr. P. 8006. Within 10 days of the filing of this statement, the appellee must file a cross-designation of additional items [**7] to be included in the record, and, if the appellee wishes to cross appeal, a statement of issues. Id. If the appellee files a cross-appeal, "a cross appellee may, within 10 days of service of the cross appellant's statement, file and serve on the cross appellant a designation of additional items to be included in the record." Id. Thus, the appellant is only permitted to file an additional designation if the appellee has filed a cross appeal. Here, Appellees did not file a cross appeal, and therefore Appellants were not permitted to file the Corrected Designation of Record and Clarification of Issues on Appeal.

Furthermore, as the District Court notes, even if Appellants had been permitted by the rule to file an additional designation, they filed the Corrected Designation too late. Rule 8006 plainly states that the cross appellee must file its designation of additional items within 10 days of service of the cross appellant's statement. Appellants filed the Corrected Designation on December 22, 2002, twenty days after the Appellees filed their Counter Designation on December 2, 2002. Therefore, even if a corrected designation were permitted under Rule 8006, Appellants exceeded [**8] the time limitation for doing so. [*97] As the District Court explained, Appellants' counsel's excuses for not filing on time - that he was out of the country and that his temporary secretary did not follow office procedure - are not sufficient circumstances to justify the delay. In any event, however, the timeliness of the filing of the Corrected Designation is irrelevant, because, as discussed above, Rule 8006 only allows for a cross appellee to file an additional designation in response to a cross appeal. No cross appeal was filed here.

98 Fed. Appx. 93, *; 2004 U.S. App. LEXIS 7662, **

Accordingly, we will AFFIRM the order of the Dis-        trict Court.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

IN RE: Winstar Communications, Inc., et al.

| | | |
|---|---|---|
| Lucent Technologies Inc., | : | |
| | : | |
| Appellant, | : | |
| | : | Civil Action No.: 06-147 |
| v. | : | |
| | : | |
| Christine C. Shubert, Chapter 7 Trustee, | : | |
| | : | Bankruptcy Case No.: 01-1430 |
| Appellee. | : | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 30th day of March, 2006 one (1) copy of

***Appellee Chapter 7 Trustee's Reply Memorandum of Law in Further Support of Motion to***

***Strike*** was served upon the individuals listed below in the manner specified:

***VIA HAND DELIVERY***
Daniel J. DeFranceschi, Esquire
Richards Layton & Finger, P.A.
One Rodney Square, P.O. Box 551
Wilmington, DE 19899

***VIA FEDERAL EXPRESS***
Lillian Grossbard, Esquire
Cravath Swain & Moore
825 8th Avenue, Room# 3906W
New York, NY 10019

***VIA HAND DELIVERY***
Office of the United States Trustees Office
844 King Street, Suite 2313
Lockbox 35
Wilmington, DE 19801-2313

***VIA FEDERAL EXPRESS***
Craig Goldblatt, Esquire
Wilmer Cutler Pickering Hale & Dorr, LLP
2445 M. Street, NW
Washington, DC 20037

***U.S. MAIL***
Craig Goldblatt, Esquire
Wilmer Cutler Pickering Hale & Dorr, LLP
399 Park Avenue
New York, NY 10022

*/s/ Sheldon K. Rennie (#3772)*
Sheldon K. Rennie, Esquire