IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br>Winstar Communications, Inc , *et al* ,<br>      Debtor | Chapter 7<br><br>Bankr Case No 01-01430 (KJC) |
| Christine C Shubert,<br>Chapter 7 Trustee,<br><br>      Plaintiff-Appellee,<br><br>   v<br><br>Lucent Technologies Inc ,<br><br>      Defendant-Appellant | Civil Action No 06-147 (JJF)<br><br>Adv Proc No 01-01063 (KJC) |

## LUCENT TECHNOLOGIES INC 'S APPENDIX—VOLUME I

RICHARDS, LAYTON & FINGER, P A
Daniel J DeFranceschi (DE Bar No 2732)
Paul N Heath (DE Bar No 3704)
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700

CRAVATH, SWAINE & MOORE LLP
Paul C Saunders
Daniel Slifkin
Michael A Paskin
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

WILMER CUTLER PICKERING HALE
   AND DORR LLP
Seth P Waxman
Craig Goldblatt
Danielle Spinelli
Michelle Glassman Bock
1875 Pennsylvania Avenue, NW
Washington, D C 20006
(202) 663-6000

- and -

Philip D Anker
James H Millar
399 Park Avenue
New York, NY 10022
(212) 230-8800

Dated   May 1, 2006
Wilmington, Delaware

# LUCENT APPENDIX

| Tab | | Description | | |
|---|---|---|---|---|
| 1 | Lucent s amended designation of record on appeal | | | |
| 2 | Trustee s counter designation of record on appeal | | | |

| ROA Tab | Designation in bankruptcy court | Description of Item | | |
|---|---|---|---|---|
| 327 | Adv Docket No 331 | Renumbered Joint Stipulation Between Lucent Technologies Inc and Christine C Shubert Chapter 7 Trustee for Winstar Communications Inc et al as to Uncontested Facts | | |
| 347 | 369 | Memorandum of Decision Including Findings of Fact and Conclusions of Law With Respect to Counts VII X and XI of the Second Amended Complaint and Counts 5 and 6 of the Second Amended Answer and Counterclaims Signed on 12/21/2005 | | |
| 367 | 357 | Excerpt from Transcript of Trial (Volume XII) held on April 12 2005 before the Honorable Joel B Rosenthal (Scherf testimony) | | |
| 371 | 361 | Excerpt from Transcript of Trial (Volume XVI) held on May 2 2005 before the Honorable Joel B Rosenthal (Wilson testimony) | | |
| 374 | 364 | Excerpt from Transcript of Trial (Volume XIX) held on May 5 2005 before the Honorable Joel B Rosenthal (Keefe testimony) | | |
| 375 | 365 | Excerpt from Transcript of Trial (Volume XX) held on May 10 2005 before the Honorable Joel B Rosenthal (Perricone testimony) | | |
| 376 | 366 | Excerpt from Transcript of Trial (Volume XXI) held on May 11 2005 before the Honorable Joel B Rosenthal | | |
| | | A Schacht testimony | | |
| | | B Terrell testimony | | |
| 460 | JX 1 | Excerpt from Nathan Kantor testimony from videotaped depositions played at trial | | |
| 465 | JX 6 | Excerpt from David W Ackerman testimony from videotaped depositions played at trial | | |
| 468 | JX 9 | Excerpt from Michael Montemarano testimony from videotaped depositions played at trial | | |
| 485 | DX 7 | November 30 2000 Notice of Request for Borrowing (Draw Request) | | |
| 486 | DX 8 | December 22 2000 Notice of Request for Borrowing (Draw Request) | | |
| 487 | DX 9 | December 29 2000 Notice of Request for Borrowing (Draw Request) | | |
| 488 | DX 10 | January 26 2001 Notice of Request for Borrowing (Draw Request) | | |
| 489 | DX 11 | February 23 2001 Notice of Request for Borrowing (Draw Request) | | |
| 506 | DX 28 | Excerpt from Supply Agreement between Winstar Communications Inc and Lucent Technologies Inc | | |
| 507 | DX 29 | Second Credit Agreement (Volume II of Lucent Appendix) | | |
| 510 | DX 32 | Excerpt from Security Agreement WVF I as borrower | | |
| 524 | DX 46 | Secured Proof of Claim - United States Bankruptcy Court District of Delaware | | |
| 595 | DX 117 | Agreement for Network Build-out Services (Subcontract) and First Task Order in letter form | | |
| 603 | DX 125 | Internal Winstar email re accounting treatment | | |
| 633 | DX 155 | L Rogers mail to F Rubin re Winstar services pass through | | |

| ROA Tab | Designation in bankruptcy court | Description of Item |
|---|---|---|
| 641 | DX 163 | N  Kantor e mail forwarding Lucent email re  Winstar services pass through |
| 642 | DX 164 | Summary of July 26  1999 Lucent meeting |
| 646 | DX 168 | M  Wilson email to Winstar personnel re  turnkey order approach |
| 647 | DX 169 | Internal Winstar email  re  Lucent s role in the network build |
| 673 | DX 195 | December 1999 B  Genner email to L  Hicks re  turnkey update |
| 689 | DX 211 | Excerpt from Winstar Form 10 K |
| 692 | DX 214 | Internal Lucent email re  Winstar services |
| 753 | DX 274 | Excerpt from J  Quinn e mail to J  Diroma re  Lucent/Winstar funds transfers for network build out services |
| 763 | DX 284 | Excerpt from Bank Facility revolving credit and term loan Agreement |
| 764 | DX 285 | Winstar WVF 1 (spreadsheet summarizing draw requests from May 2000 through October 2000) |
| 774 | DX 295 | Internal Lucent email re  Winstar financing and May 2000 borrowing request |
| 779 | DX 300 | Internal Lucent email with attached spreadsheet summarizing Winstar borrowings under the First Credit Agreement |
| 869 | DX 390 | D  Harris email with attached letter to R  Uhl of September 22  2000 rejecting line item of purchase order for services |
| 903 | DX 424 | R  Uhl memo to Winstar personnel with attached letter of September 27  2000 |
| 920 | DX 441 | K  Chawla email to N  Kantor re  moving toward a formal Winstar/Siemens relationship |
| 931 | DX 452 | Internal Winstar email with forwarded Lucent correspondence re  Winstar/Lucent services relationship |
| 953 | DX 474 | Supplemental Agreement between Winstar Communications Inc  and Siemens Carrier Networks LLC |
| 965 | DX 486 | F  Rubin letter to M  Hund Mejean re  disbursement of the Siemens proceeds to Lucent |
| 970 | DX 491 | Excerpt from internal Lucent email re  disbursement of the Siemens proceeds to Lucent |
| 997 | DX 518 | K  Chawla e mail to F  Rubin re  Siemens/Winstar relationship |
| 1023 | DX 544 | December 19  2000 Refinancing Notice |
| 1039 | DX 560 | Internal Lucent email correspondence re  Winstar borrowing under the Second Credit Agreement |
| 1078 | DX 599 | February 6  2001 M  Montemarano Letter to R  Uhl re  Capital Expense Forecast |
| 1142 | DX 663 | March 30  2001 M  Keefe Letter to Winstar Communications  Inc  declining to honor Winstar draw request |
| 1147 | DX 668 | March 27  2001 Notice of Request for Borrowing (Draw Request) |
| 1165 | DX 686 | May 23  2000 Notice of Request for Borrowing (Draw Request) |
| 1166 | DX 687 | D  Hopkins e mail to W  Viqueira re  Winstar borrowing under the Second Credit Agreement |
| 1174 | DX 695 | N  Kantor E mail to B  Rouhana RE  Winstar Partnership Concept |
| 1178 | DX 699 | Excerpt from Ackerman SEC Testimony Transcript |
| 1193 | DX 714 | Winstar and Lucent purchase orders and invoices from first quarter 1999 to third quarter 2000 |
| 1200 | DX 721 | Excerpt from BONY Memo re  Amendment To Bank Facility |
| 1219 | DX 739 | Excerpt from SEC Complaint  Jury Demand |

| ROA Tab | Designation in bankruptcy court | Description of Item |
|---|---|---|
| 1428 | PX 186 | Excerpt of Winstar Executive Briefing |
| 1443 | PX 201 | Excerpt from due diligence memo with internal Lucent cover email |
| 1573 | PX 331 | Press release discussing Winstar/Lucent strategic agreement to expand Winstar s broadband network |
| 1651 | PX 409 | M Keefe letter to Winstar Communications Inc explaining Lucent decision to decline to honor Winstar draw request |
| 1722 | PX 480 | Excerpt from Declaration of Vernon Terrell (exhibits not attached) |

# TAB
# 1

## EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL

Winstar v Lucent
Adversary Proceeding #01-01063-JBR

| Tab | Date | Adv Docket No | Description of Item |
|---|---|---|---|
| 1 | 04/18/2001 | 1 | COMPLAINT for Injunctive Relief [Filed by Karen C Bifferato, Atty /PLAINTIFF] |
| 2 | 04/18/2001 | 2 | MOTION for Preliminary Injunction [Filed by Karen C Bifferato Atty/PLAINTIFF] Re Item # 1 |
| 3 | 04/18/2001 | 3 | MEMORANDUM of Law in Support of Motion for Preliminary Injunction [Filed by Karen C Bifferato Atty /PLAINTIFF] Re Item # 2, [ID |
| 4 | 04/18/2001 | 4 | AFFIDAVIT of David W Ackerman [ID] |
| 5 | 04/18/2001 | 5 | AFFIDAVIT of Richard J Uhl [ID] |
| 6 | 04/23/2001 | 6 | EXHIBITS to Affidavit of David W Ackerman Re Item # 4 |
| 7 | 04/30/2001 | 7 | STIPULATION AND ORDER [PROPOSED] Regarding Pre Hearing Schedule [Filed by Karen C Bifferato Atty /PLAINTIFF and Paul N Heath Atty/DEFENDANT] |
| 8 | 05/02/2001 | 8 | MOTION for Admission Pro Hac Vice of Werner L Polak [Filed by Henry E Gallagher, Jr , Atty/PLAINTIFF] |
| 9 | 05/02/2001 | 9 | MOTION for Admission Pro Hac Vice of Sandra Y Nishikawa [Filed by Henry E Gallagher Atty /PLAINTIFF] |
| 10 | 05/02/2001 | 10 | MOTION for Admission Pro Hac Vice of Roland Schroeder [Filed by Henry E Gallagher, Atty/PLAINTIFF] |
| 11 | 05/02/2001 | 11 | SUMMONS and Notice of Pre-Trial Conference on A Date to Be Determined Re Item # 1 |
| 12 | 05/04/2001 | 12 | ORDER Signed and Located in Original Document Regarding Pre-Hearing Schedule Re Item # 7 |
| 13 | 05/04/2001 | 13 | COURT'S Letter Regarding Scheduling Re Item # 12 |
| 14 | 05/04/2001 | 14 | CERTIFICATE of Service Re Item # 11 |
| 15 | 05/07/2001 | 15 | ORDER Signed and Located in Original Document Granting Admission Pro Hac Vice of Werner L Polak Re Item # 8 |
| 16 | 05/07/2001 | 16 | ORDER Signed and Located in Original Document Granting Admission Pro Hac Vice of Sandra Y Nishikawa Re Item # 9 |
| 17 | 05/07/2001 | 17 | ORDER Signed and Located in Original Document Granting Admission Pro Hac Vice of Roland Schroeder Re Item # 10 |
| 18 | 05/08/2001 | 18 | AFFIDAVIT of Service Re Item # 1 through 5 and #11 |
| 19 | 05/17/2001 | 19 | NOTICE of Service Regarding Discovery [Filed by Henry E Gallagher Jr , Atty /PLAINTIFF] |
| 20 | 05/21/2001 | 20 | MOTION to Dismiss Certain Claims of the Complaint [Filed by Daniel J DeFranceschi, Atty /DEFENDANT] |
| 21 | 05/21/2001 | 21 | BRIEF in Support of Motion to Dismiss Certain Claims [Filed by Daniel J DeFranceschi, Atty /DEFENDANT] Re Item # 20 |
| 22 | 05/21/2001 | 22 | MOTION to Stay Preliminary Injunction Proceedings Pending Adjudication of Motion to Dismiss and Plaintiff's Right to Assume Prepetition Agreements [Filed by Daniel J DeFranceschi, Atty /DEFENDANT] Re Item # 2 |
| 23 | 05/21/2001 | 23 | EMERGENCY Motion to Shorten Notice of Motion to Stay Preliminary Injunction Proceedings [Filed by Daniel J DeFranceschi, Atty /DEFENDANT] Re Item # 22 |
| 24 | 05/22/2001 | 24 | COUNSEL'S Letter Regarding Defendant's Request to Extend Pre Hearing Schedule [Filed by Henry E Gallagher, Jr , Atty./PLAINTIFF] |

## EXHIBIT A

### APPELLANT'S AMENDED DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL

| | | | |
|---|---|---|---|
| 25 | 05/24/2001 | 25 | MEMORANDUM of Law in Opposition to Emergency Motion to Shorten Notice and in Opposition to Motion to Stay Preliminary Injunction Proceedings [Filed by Stanley C Macel III Atty /PLAINTIFF] Re Item # 22 |
| 26 | 05/30/2001 | 26 | REPLY Brief in Support of Motion to Stay Preliminary Injunction Proceedings [Filed by Daniel J DeFranceschi Atty /DEFENDANT] Re Item # 22 |
| 27 | 06/01/2001 | 27 | COUNSEL'S Letter Requesting Emergency Order Regarding Disclosure of Confidential Documents [Filed by Daniel J DeFranceschi Atty /DEFENDANT] |
| 28 | 06/01/2001 | 28 | COUNSEL'S Letter in Response to Letter Regarding Disclosure of Confidential Documents [Filed by Stanley C Macel, III, Atty./PLAINTIFF] Re Item # 27 |
| 29 | 06/04/2001 | 29 | ORDER Denying Motion to Stay Preliminary Injunction Pending Adjudication of Motion to Dismiss Re Item # 22 |
| 30 | 06/04/2001 | 30 | ORDER Regarding Pre Hearing Schedule Re Item # 24 |
| 31 | 06/04/2001 | 31 | NOTICE of Service Regarding Discovery [Filed by Paul N Heath, Atty./DEFENDANT] |
| 32 | 06/04/2001 | 32 | NOTICE of Service Regarding Discovery [Filed by Paul N Heath, Atty./DEFENDANT] |
| 33 | 06/05/2001 | 33 | MEMORANDUM Order Requiring Plaintiff to Advise Defendant of Identity of Employees to Receive Confidential Information and Specific Information and/or Document to be Disclosed Prior to Disclosure Re Item # 27 |
| 34 | 06/06/2001 | 34 | MEMORANDUM of Law in Opposition to Motion to Dismiss Certain Claims [Filed by Henry E Gallagher Jr, Atty./PLAINTIFF] Re Item # 20 |
| 35 | 06/08/2001 | 35 | AFFIDAVIT of Service Re Item # 29 |
| 36 | 06/12/2001 | 36 | MOTION To Extend Time [Filed by Stanley C Macel III, Attys./PLAINTIFFS] |
| 37 | 06/12/2001 | 37 | NOTICE of Motion Re Item # 36 |
| 38 | 06/12/2001 | 38 | REPLY Brief In Support Of Motion To Dismiss Certain Claims [Filed by Daniel DeFranceschi, Attys./DEFENDANT] Re Item # 20 |
| 39 | 07/10/2001 | 39 | LETTER Stating That Unless Instructed Otherwise Lucent Does Not Plan To Respond To The Papers Filed by The Plaintiffs [Filed by Daniel J DeFranceschi] Re Item # 36 |
| 40 | 07/10/2001 | 40 | REQUEST For Oral Argument Regarding Its Motion To Dismiss Certain Claims [Filed by Daniel DeFranceschi Attys /DEFENDANTS] Re Item # 20 |
| 41 | 07/10/2001 | 41 | STIPULATION And [Proposed] Protective Order [Filed by Henry E Gallagher, Jr Attys /PLAINTIFFS And Daniel DeFranceschi, Atty /DEFENDANT] |
| 42 | 07/10/2001 | 42 | AFFIDAVIT of Service Re Item # 33 |
| 43 | 07/10/2001 | 43 | STIPULATION And [Proposed] Order Extending Protective Order To Documents Produced In Response to Subpoena Duces Tecum [Filed by Werner L Polak, Attys /PLAINTIFFS, Daniel Slifkin, Attys /DEFENDANT, Steven M Haber, Attys./NON-PARTY GRANT THORNTON LLP] |
| 44 | 07/19/2001 | 44 | ORDER Signed and Located in Original Document Re Item # 41 |
| 45 | 07/19/2001 | 45 | CONSENTED to Order [Signed] [Scheduling] |
| 46 | 07/19/2001 | 46 | ORDER Signed and Located in Original Document Extending Protective Order Re Item # 43 |
| 47 | 08/06/2001 | 47 | Motion to Appear pro hac vice of Olav A Haazen, Esq Filed by Stanley C Macel, III, Esq |
| 48 | 08/21/2001 | 48 | Order Granting Motion To Appear pro hac vice (Related Doc # 47) |
| 49 | 08/24/2001 | 49 | Motion to Compel [Motion of the Official Committee of Unsecured Creditors for an Order to Intervene in the Adversary Proceeding] Filed by Creditors Committee |
| 50 | 09/18/2001 | 50 | Certificate of No Objection Filed by Creditors Committee (related document(s)49) |
| 51 | 09/25/2001 | 51 | Order Authorizing The Creditors Committee to Intervene in the Adversary Proceeding Signed on 9/20/2001 (related document(s)49) |

RLF1 2986514 1

## EXHIBIT A

### APPELLANT'S AMENDED DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL

| | | | |
|---|---|---|---|
| 52 | 10/26/2001 | 52 | Notice of Withdrawal Letter to Judge Farnan regarding Notice of Withdrawal of Motion for Preliminary Injunction Filed by WINSTAR COMMUNICATIONS INC |
| 53 | 10/26/2001 | 53 | Notice of Withdrawal of Preliminary Injunction Filed by WINSTAR COMMUNICATIONS, INC |
| 54 | 10/26/2001 | 54 | First Amended Complaint Filed by WINSTAR COMMUNICATIONS, INC |
| 55 | 11/06/2001 | 55 | Stipulation By LUCENT TECHNOLOGIES INC and Between Winstar Communications et al (plaintiffs) Filed by LUCENT TECHNOLOGIES INC (related document(s)54) |
| 56 | 12/05/2001 | 56 | Limited Motion to Dismiss Adversary Proceeding [Motion to Dismiss Certain Claims of Plaintiffs' First Amended Complaint] Filed by LUCENT TECHNOLOGIES INC |
| 57 | 12/05/2001 | 57 | Memorandum of Law in Support of Lucent's Motion to Dismiss Certain Claims of Plaintiffs' First Amended Complaint  [Re Docket No 56] Filed by LUCENT TECHNOLOGIES INC |
| 58 | 01/18/2002 | 58 | Memorandum of Law In Opposition to Motion of Lucent Technologies Inc to Dismiss Certain Claims of Plaintiffs' First Amended Complaint Filed by WINSTAR COMMUNICATIONS INC |
| 59 | 02/12/2002 | 59 | Notice of Appearance in Adversary Proceeding Filed by pro se Aspen Advisors LLC |
| 60 | 02/15/2002 | 60 | Brief Reply Brief in Support of Lucent's Motion to Dismiss Certain Claims of Plaintiffs' First Amended Complaint Filed by LUCENT TECHNOLOGIES, INC |
| 61 | 03/19/2002 | 61 | Notice of Filing Notice of Completion of Briefing on Defendant's Motion to Dismiss Filed by LUCENT TECHNOLOGIES INC |
| 62 | 06/21/2002 | 62 | Order signed on 6/19/2002 Reassigning Case To The Honorable John C Akard |
| 63 | 06/21/2002 | 63 | Order signed on 6/20/2002 Setting PreTrial Before The Honorable Ronald Barliant On 7/12/02 @ 11 30 A M |
| 64 | 07/03/2002 | 64 | Notice of Appearance in Adversary Proceeding Filed by Christine Shubert |
| 65 | 07/11/2002 | 65 | Notice of Agenda of Matters Scheduled for Hearing Filed by Christine Shubert. |
| 66 | 07/15/2002 | 66 | Proposed Scheduling Order Filed by Christine Shubert (Rennie, Sheldon) (Entered 07/15/2002) |
| 67 | 07/17/2002 | 67 | Notice of Withdrawal of Appearance Filed by Connolly Bove Lodge & Hutz LLP |
| 68 | 07/30/2002 | 68 | Order signed on 7/25/2002 Recusing The Honorable John C Akard From Hearing All Matters Pertaining to This Adversary  This Adversary Is Being Transferred To The Honorable Ronald Barliant |
| 69 | 09/27/2002 | 69 | Amended Complaint and Jury Demand (Second) Filed by Christine Shubert |
| 70 | 10/28/2002 | 70 | Motion to Dismiss Adversary Proceeding of Lucent Technologies Inc to Dismiss Certain claims of the Second Amended Complaint Filed by LUCENT TECHNOLOGIES, INC |
| 71 | 10/28/2002 | 71 | Memorandum of Law Memorandum in Support of Lucent's Motion to Dismiss Certain Claims of the Second Amended Complaint Filed by LUCENT TECHNOLOGIES, INC (related document(s)70) |
| 72 | 11/18/2002 | 72 | Stipulation By LUCENT TECHNOLOGIES, INC and Between Plaintiffs Filed by LUCENT TECHNOLOGIES, INC |
| 73 | 11/26/2002 | 73 | Memorandum of Law in Opposition to Motion to Dismiss Certain Claims of the Second Amended Complaint Filed by Christine Shubert |
| 74 | 12/17/2002 | 74 | Reply Brief in Support of Lucent's Motion to Dismiss Certain Claims of the Second Amended Complaint Filed by LUCENT TECHNOLOGIES, INC (related document(s)73) |

## EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 75 | 01/02/2003 | 75 | Notice of Completion of Briefing on Defendant's Motion to Dismiss Filed by LUCENT TECHNOLOGIES INC ) |
| 76 | 02/24/2003 | 76 | Notice of Agenda of Matters Scheduled for Hearing (Telephonic Hearing) Filed by Christine Shubert  Hearing scheduled for 3/4/2003 at 03 00 PM |
| 77 | 03/10/2003 | 77 | Certification of Counsel Regarding Scheduling Order Filed by Christine Shubert |
| 78 | 03/14/2003 | 78 | Scheduling Order  Signed on 3/13/2003 (related document(s)77) |
| 79 | 03/18/2003 | 79 | Certificate of Service Notice of Service Filed by Christine Shubert |
| 80 | 04/22/2003 | 80 | Notice of Service of Discovery Re  Defendant's Responses and Objections to Plaintiff's First Set of Interrogatories Filed by LUCENT TECHNOLOGIES INC |
| 81 | 04/22/2003 | 81 | Notice of Service of Discovery Re  Defendant s Responses and Objection to Plaintiff's Second Request for Production of Documents Filed by LUCENT TECHNOLOGIES, INC |
| 82 | 05/05/2003 | 82 | Notice of Intended Ruling Concerning Defendant's Motion to Dismiss Parts of the Second Amended Complaint (related document(s)70 ) |
| 83 | 05/20/2003 | 83 | Certificate of Service of Plaintiff's Third Request for the Production of Documents, Plaintiff's Second Set of Interrogatories, Plaintiff's Responses to Defendant s First Set of Interrogatories Nos  1 7, Plaintiff's Responses to Defendant s Second Request for the Production of Documents, Notice of Subpoenas to Deborah Harris and Nina Aversano  Notice of Deposition of Deborah Hopkins  Notice of Deposition to Michael Montemarano  Notice of Deposition of Elizabeth Perricone  and Notice of Deposition of Paul Hayes on May 16  2003 Filed by Christine Shubert |
| 84 | 05/29/2003 | 84 | Opinion Concerning Motion To Dismiss Second Amended Complaint(related document(s)70) |
| 85 | 05/29/2003 | 85 | Order Granting in Part, Denying in Part Motion of Lucent Technologies Inc  to Dismiss Certain Claims of the Second Amended Complaint (Related Doc # 70) |
| 86 | 06/05/2003 | 86 | Stipulation and [Proposed] Order Between LUCENT TECHNOLOGIES, INC  and Christein C  Shuber, Chapter 7 Trustee  Filed by LUCENT TECHNOLOGIES, INC |
| 87 | 06/06/2003 | 87 | Order Granting Stipulation (Related Doc # 86) |
| 88 | 06/06/2003 | 88 | Affidavit/Declaration of Service of Rebecca V  Childs Re  Docket No  87 (Signed Stipulation and Proposed Order) (related document(s)87 ) Filed by LUCENT TECHNOLOGIES INC |
| 89 | 06/09/2003 | 89 | Motion to Reconsider the Court's May 29, 2003 Order Filed by Christine Shubert |
| 90 | 06/10/2003 | 90 | Notice of Service of Motion for Reconsideration and Memorandum of Law in Support of Motion for Reconsideration and Declaration of David King Filed by Christine Shubert |
| 91 | 06/10/2003 | 91 | Notice of Service Filed by Christine Shubert |
| 92 | 06/18/2003 | 92 | Stipulation and Order Between Christine Shubert and Lucent Technologies, Inc  Filed by Christine Shubert |
| 93 | 06/18/2003 | 93 | Notice of Service Re  Defendant s Responses and Objections to Plaintiff's Third Request for the Production of Documents and Defendant's Responses and Objections to Plaintiff's Second Set of Interrogatories Filed by LUCENT TECHNOLOGIES INC |
| 94 | 06/30/2003 | 94 | Answer to Amended Complaint Answer and Counterclaims of Defendant Lucent Technologies Inc  to Second Amended Complaint (related document(s)69 )v  Counterclaim by LUCENT TECHNOLOGIES INC against WINSTAR COMMUNICATIONS  INC Filed by LUCENT TECHNOLOGIES INC |
| 95 | 06/30/2003 | 95 | Memorandum of Law in Opposition to Plaintiff's Motion For Reconsideration (related document(s)89 ) Filed by LUCENT TECHNOLOGIES, INC |
| 96 | 07/07/2003 | 96 | Notice of Service Re  Defendant's Supplemental Responses to Plaintiff's Second Set of Interrogatories Filed by LUCENT TECHNOLOGIES, INC |
| 97 | 07/09/2003 | 97 | Notice of Service Filed by Christine Shubert |

RLF1 2986514 1

EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 98 | 07/09/2003 | 98 | Reply Memorandum of Law in Support of Motion for Reconsideration Filed by Christine Shubert |
| 99 | 07/15/2003 | 99 | Answer to Complaint with Counterclaim and Jury Demand Filed by Christine Shubert |
| 100 | 07/25/2003 | 100 | Notice of Completion of Briefing on Motion of Plaintiff for Reconsideration of the Court s May 9, 2003 Order Filed by Christine Shubert |
| 101 | 08/04/2003 | 101 | Certification of Counsel Re Docket Nos 84 and 85 Filed by LUCENT TECHNOLOGIES INC |
| 102 | 08/07/2003 | 102 | Memorandum Opinion Concerning Motion for Reconsideration Signed on August 7 2003 (related document(s) 85, 89) |
| 103 | 08/07/2003 | 103 | Amended Order Concerning Motion to Dismiss Order Signed on 8/7/2003 (related document(s) 102, 89 85 |
| 104 | 08/08/2003 | 104 | Notice of Service Re Defendant's Responses and Objections to Plaintiff's Fourth Request for the Production of Documents Filed by LUCENT TECHNOLOGIES, INC |
| 105 | 08/18/2003 | 105 | Amended Answer to Complaint Amended Answer and Counterclaims of Defendant Lucent Technologies Inc to the Second Amended Complaint, Counterclaim by LUCENT TECHNOLOGIES, INC against all plaintiffs Filed by LUCENT TECHNOLOGIES, INC |
| 106 | 08/21/2003 | 106 | Notice of Service of Discovery Re Defendant's Third Request for the Production of Documents Defendant's Second Set of Interrogatories to Plaintiff Nos 8 11 Defendant's First Set of Requests for Admission, Notice of Deposition of Paul Lang Notice of Deposition of Charles Persing and Notice of Nonparty Discovery Filed by LUCENT TECHNOLOGIES INC |
| 107 | 08/21/2003 | 107 | Notice of Service of Discovery Re Notice of Nonparty Discovery Filed by LUCENT TECHNOLOGIES, INC |
| 108 | 10/09/2003 | 108 | Motion to Quash a Subpoena (s) Served by Lucent Technologies Inc on Chase Manhattan Bank, Citigroup, The Bank of New York, Credit Suisse First Boston, CIBC, and BNY Capital Markets, Inc and for Protective Order Filed by Christine Shubert (Attachments # 1 Memorandum of Law# 2 Declaration of Stephen M Rathkopf# 3 Declaration of David R King# 4 Exhibit A to Declaration of David R King# 5 Exhibit B to Declaration of David R King# 6 Exhibit C to Declaration of David R King# 7 Exhibit D to Declaration of David R King# 8 Exhibit E to Declaration of David R King# 9 Exhibit F to Declaration of David R King# 10 Proposed Form of Order |
| 109 | 10/13/2003 | 109 | Affidavit/Declaration of Service of Peter Nathanial in Support of Plaintiff Christine C Shubert's Motion to Quash Subpoenas for Protective Order (related document(s)108 ) Filed by Christine Shubert |
| 110 | 10/20/2003 | 110 | Motion for Protective Order Filed by Christine Shubert (Attachments # 1 Memorandum of Law# 2 Declaration of David R King# 3 Exhibit A to Declaration of David R King# 4 Exhibit B to Declaration of David R King# 5 Exhibit C to Declaration of David R King# 6 Exhibit D to Declaration of David R King# 7 Exhibit E to Declaration of David R King# 8 Exhibit E to Declaration of George J Wade# 9 Proposed Form of Order |
| 111 | 10/20/2003 | 111 | Memorandum of Law in Opposition to Motion of Plaintiff Christine C Shubert to Quash Subpoenas Served by Lucent Technologies Inc on Chase Manhattan Bank, Citigroup, The Bank of New York, Credit Suisse First Boston, CIBC, and BNY Capital Markets, Inc and For Protective Order Filed by LUCENT TECHNOLOGIES, INC |
| 112 | 10/23/2003 | 112 | Notice of Service Defendant's Responses and Objections to Plaintiff's Fifth Request for Production of Documents Filed by LUCENT TECHNOLOGIES, INC |
| 113 | 10/23/2003 | 113 | Exhibit Application of Lucent Technologies, Inc for Oral Argument (related document(s)108 ) Filed by LUCENT TECHNOLOGIES, INC |

RLF1 2986514 1

EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 114 | 10/23/2003 | 114 | Proposed Scheduling Order Amended Scheduling Order Re Docket No 78 Filed by LUCENT TECHNOLOGIES INC |
|---|---|---|---|
| 115 | 10/28/2003 | 115 | Order Approving Amended Scheduling Order Order Signed on 10/28/2003 (related document(s)78 ) |
| 116 | 10/30/2003 | 116 | Stipulation Regarding Briefing Schedule Between LUCENT TECHNOLOGIES INC and Christine C Shubert as Chapter 7 Trustee Filed by LUCENT TECHNOLOGIES, INC |
| 117 | 11/03/2003 | 117 | Brief in Further Support of Motion to Quash Subpoenas Served by Lucent Technologies Inc on Chase Manhattan Bank Citigroup The Bank of New York, Credit Suisse First Boston CIBC and BNY Capital Markets, Inc and for Protective Order Filed by Christine Shubert |
| 118 | 11/03/2003 | 118 | Order Approving Stipulation Regarding Briefing Schedule Order Signed on 11/3/2003 (related document(s)116 ) |
| 119 | 11/06/2003 | 119 | Memorandum of Law of Defendant Lucent Technologies Inc in Opposition to Plaintiff Christine C Shubert s Motion for Protective Order Filed by LUCENT TECHNOLOGIES INC (Attachments # 1 Declaration of Lillian S Grossbard# 2 Exhibit A of Declaration# 3 Exhibit B of Declaration# 4 Exhibit C of Declaration (Part I)# 5 Exhibit C of Declaration (Part II)# 6 Exhibit C of Declaration (Part III)# 7 Exhibit D of Declaration# 8 Compendium of Unreported Decisions Cited in Memorandum of Law |
| 120 | 11/11/2003 | 120 | Amended Reply /Amended Stipulation Regarding Briefing Schedule (related document(s)108 ) Filed by Christine Shubert (Rennie, Sheldon) |
| 121 | 11/12/2003 | 121 | Motion for Leave to File Reply Motion of Lucent Technologies Inc for Leave to File Surreply in Response to Plaintiff's Reply (related document(s)111 117 108 ) Filed by LUCENT TECHNOLOGIES, INC (related document(s)111, 117, 108) (Attachments # 1 Exhibit A Surreply# 2 Declaration of Lillian Grossbard# 3 Unreported Opinions# 4 Exhibit B Proposed Order |
| 122 | 11/20/2003 | 122 | Reply Motion for Protective Order Plaintiff's Reply Brief in Further Support of Motion for Protective Order (related document(s)110 ) Filed by Christine Shubert (related document(s)110) |
| 123 | 11/24/2003 | 123 | Letter (related document(s)121 ) Filed by Christine Shubert |
| 124 | 11/24/2003 | 124 | Proposed Order RE Stipulation and (Proposed) Order Extending Protective Order to Documents Produced by Non Party Grant Thornton LLP in Response to Defendant s Subpoena in an Adversary Proceeding Dated October 10, 2003 Filed by LUCENT TECHNOLOGIES, INC |
| 125 | 11/26/2003 | 125 | Proposed Scheduling Order SECOND AMENDED SCHEDULING ORDER Filed by LUCENT TECHNOLOGIES, INC |
| 126 | 11/26/2003 | 126 | Order and Stipulation Extending Protective Order to Documents Produced by Non Party Grant Thornton LLP in Response to Defendant's Subpoena in an Adversary Proceeding Dated October 10 2003 (related document(s)124 ) |
| 127 | 12/02/2003 | 127 | Second Amended Scheduling Order Order Signed on 12/1/2003 (related document(s)125 118 ) |
| 128 | 12/03/2003 | 128 | Notice of Service Re Defendant's Responses and Objections to Plaintiff's Sixth Request for the Production of Documents and Defendant's Responses and Objections to Plaintiff's Third Set of Interrogatories Filed by LUCENT TECHNOLOGIES, INC ( |
| 129 | 12/05/2003 | 129 | Notice of Hearing APPLICATION OF LUCENT TECHNOLOGIES INC FOR ORAL ARGUMENT Filed by LUCENT TECHNOLOGIES, INC |
| 130 | 12/17/2003 | 130 | Notice of Hearing Re Application of Lucent Technologies Inc for Oral Argument [Docket Nos 113 and 129, respectively] Filed by LUCENT TECHNOLOGIES, INC |
| 131 | 12/18/2003 | 131 | Notice of Agenda of Matters Scheduled for Hearing Filed by LUCENT TECHNOLOGIES, INC |

RLF1 2986514 1

# EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 132 | 12/18/2003 | 132 | Notice of Service Re Defendant s Third Set of Interrogatories to Plaintiff Nos 12 13 Filed by LUCENT TECHNOLOGIES INC |
|-----|------------|-----|---|
| 133 | 12/18/2003 | 133 | (WITHDRAWN 1/6/04 SEE DOCKET #135) Notice of Voluntary Dismissal NOTICE OF STIPULATION AND VOLUNTARY DISMISSAL WITH PREJUDICE OF COMPLAINT Filed by LUCENT TECHNOLOGIES INC |
| 134 | 12/19/2003 | 134 | Amended Notice of Agenda of Matters Scheduled for Hearing on December 30 2003 at 9 30 a m Filed by LUCENT TECHNOLOGIES, INC |
| 135 | 01/06/2004 | 135 | Notice of Withdrawal re Notice and Stipulation of Voluntary Dismissal with Prejudice of Complaint (related document(s)133 ) Filed by LUCENT TECHNOLOGIES INC |
| 136 | 01/12/2004 | 136 | Memorandum Decision on Motion of Plaintiff Christine C Shubert to Quash Subpoenas by Lucent Technologies Inc on Chase Manhattan Bank Citigroup The Bank of New York Credit Suisse First Boston, CIBC, and BNY Capital Markets, Inc and for Protective Order (related document(s)108) |
| 137 | 01/12/2004 | 137 | Order Quashing Subpoenas and Granting Protective Relief Order |
| 138 | 01/12/2004 | 138 | Memorandum of Decision on Plaintiff Christine C Shubert's Motion for Protective Order |
| 139 | 01/12/2004 | 139 | Order Granting Protective Relief |
| 140 | 02/05/2004 | 140 | Notice of Service re Defendant's Responses and Objections to Plaintiff's Seventh Request for Production of Documents Filed by LUCENT TECHNOLOGIES, INC |
| 141 | 02/11/2004 | 141 | Motion to Strike Objections Filed by Christine Shubert (Attachments # 1 Memorandum in support of Motion to Strike Lucent s Objection to Deposition Testimony# 2 Declaration Part 1# 3 Declaration Part 2# 4 Proposed Form of Order) |
| 142 | 02/16/2004 | 142 | Certificate of Service Filed by Christine Shubert |
| 143 | 02/23/2004 | 143 | Memorandum of Law /Memorandum of Defendant Lucent Technologies Inc in Opposition to Plaintiff's Motion to Strike Lucent's Objection to Deposition Testimony Filed by LUCENT TECHNOLOGIES, INC |
| 144 | 02/23/2004 | 144 | Affidavit /Declaration of Lillian S Grossbard in Support of the Memorandum of Defendant Lucent Technologies Inc in Opposition to Plaintiff's Motion to Strike Lucent's Objection to Deposition Testimony (related document(s)143 ) Filed by LUCENT TECHNOLOGIES, INC |
| 145 | 03/01/2004 | 145 | Notice of Service Declaration of Service of K Kaplan re Notice of Nonparty Discovery Filed by LUCENT TECHNOLOGIES INC |
| 146 | 03/01/2004 | 146 | Stipulation and Order Extending Briefing Schedule Between LUCENT TECHNOLOGIES, INC and Winstar Communications Inc , et al Filed by LUCENT TECHNOLOGIES, INC |
| 147 | 03/01/2004 | 147 | Stipulation and [Proposed] Order Extending Protective Order to Testimony Provided by Gary Goldman in Response to Defendant's Subpoena Dated February 12 2004 and Plaintiff's Subpoena Dated February 12 2004 As Well As To Any Other Testimony or Discovery Provided by Non Party Grant Thornton L L P or Any of Its Personnel in Response to any Other Subsequent Subpoenas Served by the Parties in this Matter Between LUCENT TECHNOLOGIES, INC and Winstar Communications, Inc , et al Filed by LUCENT TECHNOLOGIES, INC |
| 148 | 03/04/2004 | 148 | Reply Brief Plaintiff's Reply Brief in Further Support of Motion to Strike Lucent's Objection to Deposition Testimony (related document(s)141 ) Filed by Christine Shubert |
| 149 | 03/04/2004 | 149 | Certificate of Service Filed by Christine Shubert |
| 150 | 03/09/2004 | 150 | Order Approving Stipulation and Order Extending Briefing Schedule Order Signed on 3/8/2004 (related document(s)146 ) |

7

# EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 151 | 03/09/2004 | 151 | Order Approving Stipulation and [Proposed] Order Extending Protective Order to Testimony Provided by Gary Goldman in Response to Defendant's Subpoena Dated February 12 2004 and Plaintiff's Subpoena Dated February 12 2004 As Well As to Any Other Testimony or Discovery Provided by Non Party Grant Thornton LLP or Any of Its Personnel in Response to Any Other Subsequent Subpoenas Served by the Parties in This Matter Order Signed on 3/8/2004 (related document(s)147) |
|---|---|---|---|
| 152 | 03/09/2004 | 152 | Notice of Completion of Briefing on Plaintiff's Motion to Strike Lucent's Objection to Deposition Testimony Filed by Christine Shubert |
| 153 | 03/25/2004 | 153 | Order Striking Defendant Lucent's Objection to Deposition Testimony (related document(s)141) |
| 154 | 03/25/2004 | 154 | Motion to Compel Motion of Defendant Lucent Technologies Inc to Compel the Trustee to Respond in Full to Defendant's Interrogatories Nos 12 and 13 Filed by LUCENT TECHNOLOGIES INC (Attachments # 1 Memorandum in Support# 2 Declaration of Lillian S Grossbard# 3 Exhibit 1# 4 Exhibit 2# 5 Exhibit 3# 6 Exhibit 4# 7 Exhibit 5# 8 Exhibit 6# |
| 155 | 03/26/2004 | 155 | Motion for Leave Motion of Defendant Lucent Technologies Inc for Leave to File a Motion to Amend Its Counterclaims Filed by LUCENT TECHNOLOGIES INC |
| 156 | 03/26/2004 | 156 | Amended Answer to Complaint Second Amended Answer and Counterclaims of Defendant Lucent Technologies Inc to the Second Amended Complaint Counterclaim by LUCENT TECHNOLOGIES, INC against all plaintiffs Filed by LUCENT TECHNOLOGIES, INC (Attachments # 1 Motion for Leave to Amend Its Counterclaims# 2 Declaration of L Grossbard in Support of Motion# 3 Exhibit 1 Part 1 of 5# 4 Exhibit 1 Part 2 of 5# 5 Exhibit 1 Part 3 of 5# 6 Exhibit 1 Part 4 of 5# 7 Exhibit 1 Part 5 of 5# 8 Exhibit 2# 9 Exhibit 3# 10 Exhibit 4 Part 1 of 2# 11 Exhibit 4 Part 2 of 2# 12 Exhibit 5# 13 Exhibit 6# 14 Exhibit 7# 15 Exhibit 8# 16 Exhibit 9# 17 Exhibit 10# 18 Exhibit 11# 19 Exhibit 12# 20 Memorandum in Support of Motion) |
| 157 | 03/30/2004 | 157 | Motion for Protective Order Barring 30(b)(6) Deposition Filed by LUCENT TECHNOLOGIES, INC (Attachments # 1 Proposed Form of Order # 2 Memorandum    Part 1# 3 Memorandum – Part 2# 4 Declaration of Lillian S Grossbard    Part 1# (5) of Lillian S Grossbard    Part 2) |
| 158 | 03/31/2004 | 158 | Affidavit/Declaration of Service (related document(s)157) Filed by LUCENT TECHNOLOGIES, INC |
| 159 | 03/31/2004 | 159 | Affidavit/Declaration of Service [SUPPLEMENTAL] (related document(s)157) Filed by LUCENT TECHNOLOGIES, INC |
| 160 | 03/31/2004 | 160 | Request to Change Filing Date of Motion to Compel Motion of Defendant Lucent Technologies Inc to Compel the Trustee to Respond in Full to Defendant's Interrogatories Nos 12 and 13 to MARCH 22, 2004 Filed by LUCENT TECHNOLOGIES INC (related document(s)154) |
| 161 | 03/31/2004 | 161 | Notice of Service of Defendant's Responses and Objections to Plaintiff's Eighth Request for the Production of Documents and Defendant's Amended and Supplemental Responses and Objections to Plaintiff's Third Set of Interrogatories Filed by LUCENT TECHNOLOGIES, INC |
| 162 | 04/06/2004 | 162 | Plaintiff's Memorandum of Law In Opposition To Defendant's Motion to Compel the Trustee To Respond In Full To Defendant's Interrogatory Nos 12 and 13 (related document(s)154) Filed by Christine C Shubert |
| 163 | 04/06/2004 | 163 | Declaration of David R King In Opposition to Defendant's Motion to Compel the Trustee to Respond In Full to Defendant's Interrogatory Nos 12 and 13 (related document(s)162, 154) Filed by Christine C Shubert |
| 164 | 04/06/2004 | 164 | Certificate of Service (related document(s)162, 163) Filed by Christine C Shubert |

8

EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 165 | 04/07/2004 | 165 | Notice of Service Re Defendant s Third Set of Requests for Admissions Defendant s Fifth Request for the Production of Documents and Defendant's Fifth Set of Interrogatories to Plaintiff No 2J Filed by LUCENT TECHNOLOGIES INC ( |
|---|---|---|---|
| 166 | 04/07/2004 | 166 | Notice of Service Re Defendant s Responses and Objections to Plaintiff's Ninth Request for the Production of Documents and Defendant s Responses and Objections to Plaintiff's First Request for Admissions Filed by LUCENT TECHNOLOGIES INC |
| 167 | 04/08/2004 | 167 | Letter in Response to Lucents Motion for Leave to File a Second Amended Answer and Counterclaims (related document(s)155 ) Filed by Christine C Shubert |
| 168 | 04/09/2004 | 168 | (WITHDRAWN 4/22/04 SEE DOCKET #174) Motion for Protective Order and Related Documents Filed by LUCENT TECHNOLOGIES INC (Attachments # 1 Memorandum of Law# 2 Affidavit of Kelly A Rocco# 3 Affidavit of Paul C Saunders with Exhibits 1 & 2# 4 Exhibit 3 to Affidavit of Paul C Saunders# 5 Exhibit 4 to Affidavit of Paul C Saunders# 6 Exhibits 5 through 11 to Affidavit of Paul C Saunders# 7 Exhibit 12 to Affidavit of Paul C Saunders# 8 Exhibit 13 to Affidavit of Paul C Saunders |
| 169 | 04/12/2004 | 169 | Memorandum of Law in opposition to Lucents motion for a protective order barring 30(b)(6) deposition Filed by Christine C Shubert |
| 170 | 04/12/2004 | 170 | Memorandum/Brief Declaration of David R King in opposition to defendants motion for a protective order barring 30(b)(6) deposition (related document(s)169 ) Filed by Christine C Shubert |
| 171 | 04/12/2004 | 171 | Reply Memorandum of Law of Defendant Lucent Technologies Inc in Support of its Motion to Compel the Trustee to Respond in Full to Defendant s Interrogatories Nos 12 and 13 (related document(s)162 154 ) Filed by LUCENT TECHNOLOGIES, INC |
| 172 | 04/15/2004 | 172 | Notice of Completion of Briefing on Defendant's Motion to Compel [Re Docket Nos 154, 162, 163 and 171] Filed by LUCENT TECHNOLOGIES, INC |
| 173 | 04/19/2004 | 173 | Memorandum of Law Reply Memorandum of Law of Defendant Lucent Technologies Inc in Support of its Motion for Protective Order Barring 30(b)(6) Deposition Filed by LUCENT TECHNOLOGIES INC (Attachments # 1 Declaration of L Grossbard# 2 Exhibit 10# 3 Exhibit 11# 4 Exhibit 12# 5 Exhibit 13# 6 Exhibit 14# 7 Exhibit 15 |
| 174 | 04/22/2004 | 174 | Notice of Withdrawal of Motion of Defendant Lucent Technologies Inc for a Protective Order Quashing the Subpoenas Issued to Paul C Saunders, Esq Cravath Swaine & Moore LLP and PricewaterhouseCoopers LLP and Precluding the Trustee from Taking Further Discovery Regarding an Internal Investigation Conducted by Lucent's Outside Counsel in 2000 (related document(s)168 ) Filed by LUCENT TECHNOLOGIES INC |
| 175 | 04/23/2004 | 175 | Proposed Scheduling Order (THIRD AMENDED) Filed by LUCENT TECHNOLOGIES, INC |
| 176 | 04/27/2004 | 176 | Hearing Held/Court Sign In Sheet (related document(s)134 ) |
| 177 | 04/27/2004 | 177 | Order Denying Third Amended Scheduling Order (related document 175) |
| 178 | 04/28/2004 | 178 | Notice of Service re Defendant's Responses and Objections to Plaintiff's Tenth Request for the Production of Documents Filed by LUCENT TECHNOLOGIES INC |
| 179 | 04/28/2004 | 179 | Notice of Service re Defendant's Additional Supplemental Response to Interrogatory No 1 of Plaintiff's Third Set of Interrogatories Filed by LUCENT TECHNOLOGIES INC |
| 180 | 04/29/2004 | 180 | Certification of Counsel (related document(s)156, 155 ) Filed by LUCENT TECHNOLOGIES, INC |
| 181 | 04/30/2004 | 181 | Order Granting Defendant Lucent Technologies Inc 's Motion for Leave to File a Motion to Amend its Counterclaims (Related Doc # 155) |

9

EXHIBIT A

**APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
BE INCLUDED IN THE RECORD ON APPEAL**

| 182 | 04/30/2004 | 182 | Joint Motion to Reconsider [Proposed] Third Amended Scheduling Order or For Order Extending Summary Judgment Briefing Filed by LUCENT TECHNOLOGIES INC |
|---|---|---|---|
| 183 | 04/30/2004 | 183 | Letter (related document(s)182 ) Filed by LUCENT TECHNOLOGIES INC |
| 184 | 05/03/2004 | 184 | Affidavit Second Supplemental Declaration of Lillian S Grossbard in Support of Motion of Defendant Lucent Technologies Inc for Protective Order Barring 30(b)(6) Deposition Filed by LUCENT TECHNOLOGIES, INC |
| 185 | 05/03/2004 | 185 | Letter Filed by LUCENT TECHNOLOGIES INC |
| 186 | 05/05/2004 | 186 | Motion for Leave Motion of Defendant Lucent Technologies Inc for Leave to File Memorandum of Law Exceeding Page Limitation Filed by LUCENT TECHNOLOGIES, INC |
| 187 | 05/05/2004 | 187 | (WITHDRAWN 5/19/04  SEE DOCKET #199) Motion for Leave Motion of Defendant Lucent Technologies Inc to Take the Deposition of Michael Montemarano Filed by LUCENT TECHNOLOGIES, INC (Attachments # 1 Memorandum in Support of Motion# 2 Declaration of Lillian S Grossbard# 3 Exhibit A# 4 Exhibit B# 5 Exhibit C# 6 Exhibit D |
| 188 | 05/07/2004 | 188 | Third Amended Scheduling Order (related document 182) |
| 189 | 05/07/2004 | 189 | Supplemental Certification of Counsel (related document(s)156  155 ) Filed by LUCENT TECHNOLOGIES INC |
| 190 | 05/07/2004 | 190 | Affidavit Declaration Of David R King In Opposition To Defendants Motion For Leave To File Memorandum Of Law Exceeding Page Limitation Filed by Christine Shubert |
| 191 | 05/07/2004 | 191 | Affidavit/Declaration of Service of Heidi L Brison (related document(s)188 ) Filed by LUCENT TECHNOLOGIES INC |
| 192 | 05/11/2004 | 192 | Order Granting Defendant Lucent Technologies Inc 's Motion for Leave to Amend its Counterclaims (related document(s)156, 155 ) |
| 193 | 05/11/2004 | 193 | Order Authorizing Defendant Lucent Technologies Inc to File Memorandum of Law Exceeding Page Limitation (related document(s)186 ) |
| 194 | 05/12/2004 | 194 | Reply Memorandum of Defendant Lucent Technologies Inc in Support of its Motion for Leave to Take the Deposition of Michael Montemarano Filed by LUCENT TECHNOLOGIES INC |
| 195 | 05/13/2004 | 195 | WITHDRAWN Notice of Hearing re Motion of Defendant Lucent Technologies Inc to Compel the Trustee to Respond in Full to Defendant s Interrogatories Nos 12 and 13 (related document(s)154 ) Filed by LUCENT TECHNOLOGIES INC |
| 196 | 05/13/2004 | 196 | Notice of Hearing re Motion of Defendant Lucent Technologies Inc for Protective Order Barring 30(b)(6) Deposition (related document(s)157 ) Filed by LUCENT TECHNOLOGIES INC |
| 197 | 05/14/2004 | 197 | Notice of Withdrawal of Notice of Hearing re Motion of Defendant Lucent Technologies, Inc to Compel the Trustee to Respond in Full to Defendant's Interrogatories Nos 12 and 13 (related document(s)195 ) Filed by LUCENT TECHNOLOGIES, INC |
| 198 | 05/14/2004 | 198 | Notice of Hearing re Motion of Defendant Lucent Technologies, Inc to Take the Deposition of Michael Montemarano (related document(s)187 ) Filed by LUCENT TECHNOLOGIES, INC |
| 199 | 05/19/2004 | 199 | Notice of Withdrawal re Motion of Defendant Lucent Technologies Inc to Take the Deposition of Michael Montemarano (related document(s)187 ) Filed by LUCENT TECHNOLOGIES, INC |
| 200 | 05/19/2004 | 200 | Notice of Completion of Briefing on Defendant's Motion for Protective Order Barring 30(b)(6) Deposition Filed by LUCENT TECHNOLOGIES, INC |
| 201 | 05/25/2004 | 201 | Order Denying Motion of Defendant Lucent Technologies Inc For Protective Order Barring 30(b)(6) Deposition (Related Doc # 157) |

10

RLF1 2986514 1

# EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL

| 202 | 05/25/2004 | 202 | Order (CONSENT) Authorizing Plaintiff Christine C Shubert Chapter 7 Trustee of Winstar Communications Inc to File Memorandum of Law Exceeding Page Limitation |
| 203 | 05/25/2004 | 203 | Order Approving Stipulation Extending Time to Respond to Counterclaim of Lucent Technologies Inc Order Signed on 5/25/2004 |
| 204 | 05/25/2004 | 204 | Stipulation By and Between LUCENT TECHNOLOGIES INC and The Trustee Concerning The Admissibility of Certain Documents |
| 205 | 05/27/2004 | 205 | Reply Answer to Complaint with Counterclaim Reply to Second Amended Counterclaims (related document(s)156 ) Filed by Christine Shubert |
| 206 | 06/09/2004 | 206 | Order Denying Motion of Lucent Technologies Inc to Compel the Trustee to Respond in Full to Defendant's Interrogatories Nos 12 and 13 (Related Doc # 154) |
| 207 | 06/10/2004 | 207 | Stipulation and Proposed Order Dismissing Claims for Relief Without Prejudice Between LUCENT TECHNOLOGIES INC and Plaintiff Christine C Shubert Chapter 7 Trustee of Winstar Communications Inc Filed by LUCENT TECHNOLOGIES INC |
| 208 | 06/11/2004 | 208 | Motion for Withdrawal of Reference Motion of Defendant Lucent Technologies Inc to Withdraw the Reference to the Bankruptcy Court Fee Amount $150 Filed by LUCENT TECHNOLOGIES INC |
| 209 | 06/11/2004 | 209 | Motion to Authorize Motion for an Order Pursuant to Section 107(b) of the Bankruptcy Code, Rule 9018 of the Federal Rules of Bankruptcy Procedure, and Local Rule 5003 1(b) Authorizing Lucent Technologies Inc to File a Redacted Version of Certain Documents Relating to the Motion of Defendant Lucent Technologies Inc for Summary Judgment on Counts VII X and XI of the Second Amended Complaint and for Partial Summary Judgment on Lucent's Affirmative Defense of New Value Filed by LUCENT TECHNOLOGIES INC |
| 210 | 06/11/2004 | 210 | Motion For Summary Judgment Motion of Defendant Lucent Technologies Inc for Summary Judgment on Counts VII, X and XI of the Second Amended Complaint and for Partial Summary Judgment on Lucent's Affirmative Defense of New Value Filed by LUCENT TECHNOLOGIES, INC |
| 211 | 06/14/2004 | 211 | Receipt of filing fee for Motion for Withdrawal of Reference (A)(01 01063-JBR |
| 212 | 06/14/2004 | 212 | Memorandum of Law of Defendant Lucent Technologies Inc in Support of Its Motion for Summary Judgment on Counts VII X and XI of the Second Amended Complaint and for Partial Summary Judgment on Lucent's Affirmative Defense of New Value (related document(s)210 ) Filed by LUCENT TECHNOLOGIES INC |
| 213 | 06/14/2004 | 213 | Affidavit Declaration of Kelly A Rocco in Support of the Motion of Defendant Lucent Technologies Inc for Summary Judgment on Counts VII, X and XI of the Second Amended Complaint and for Partial Summary Judgment on Lucent's Affirmative Defense of New Value & Exhibits 1, 2 & 3 (related document(s)210 212 ) Filed by LUCENT TECHNOLOGIES, INC |
| 214 | 06/14/2004 | 214 | Exhibit to Declaration of Kelly A Rocco in Support of the Motion of Defendant Lucent Technologies Inc for Summary Judgment on Counts VII, X and XI of the Second Amended Complaint and for Partial Summary Judgment on Lucent's Affirmative Defense of New Value & Exhibits 4A-4C (related document(s)210, 212 213 ) Filed by LUCENT TECHNOLOGIES, INC (Attachments # 1 Exhibit 4A Part 2 of 3# 2 Exhibit 4A Part 3 of 3# 3 Exhibit 4B Part 1 of 4# 4 Exhibit 4B Part 2 of 4# 5 Exhibit 4B Part 3 of 4# 6 Exhibit 4B Part 4 of 4# 7 Exhibit 4C Part 1 of 3# 8 Exhibit 4C Part 2 of 3# 9 Exhibit 4C Part 3 of 3) |

EXHIBIT A

APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
BE INCLUDED IN THE RECORD ON APPEAL

| 215 | 06/14/2004 | 215 | Exhibit to Declaration of Kelly A Rocco in Support of the Motion of Defendant Lucent Technologies Inc for Summary Judgment on Counts VII X and XI of the Second Amended Complaint and for Partial Summary Judgment on Lucent's Affirmative Defense of New Value & Exhibits 4D 5 (related document(s)210, 212 213, 214 ) Filed by LUCENT TECHNOLOGIES INC (Attachments # 1 Exhibit 4D Part 2 of 3# 2 Exhibit 4D Part 3 of 3# 3 Exhibit 4E Part 1 of 3# 4 Exhibit 4E Part 2 of 3# (5) Exhibit 4E Part 3 of 3# 6 Exhibit 4F Part 1 of 2# 7 Exhibit 4F Part 2 of 2# 8 Exhibit 5 Part 1 of 2# 9 Exhibit 5 Part 2 of 2) |
| 216 | 06/14/2004 | 216 | Exhibit to Declaration of Kelly A Rocco in Support of the Motion of Defendant Lucent Technologies Inc for Summary Judgment on Counts VII X and XI of the Second Amended Complaint and for Partial Summary Judgment on Lucent's Affirmative Defense of New Value 6 63 (related document(s)210 212, 213 214 215 ) Filed by LUCENT TECHNOLOGIES INC (Attachments # 1 Exhibit 18-28# 2 Exhibit 29-45# 3 Exhibit 46-48# 4 Exhibit 49 50# 5 Exhibit 51 53# 6 Exhibit 54 55# 7 Exhibit 56 58# 8 Exhibit 59-63) |
| 217 | 06/14/2004 | 217 | Affidavit of Vernon Terrell in Support of the Motion of Defendant Lucent Technologies Inc for Summary Judgment on Counts VII X and XI of the Second Amended Complaint and for Partial Summary Judgment on Lucent's Affirmative Defense of New Value (related document(s)210 212 213 214 215 216 ) Filed by LUCENT TECHNOLOGIES INC (Attachments # 1 Exhibit 1# 2 Exhibit 2# 3 Exhibit 3 Part 1 of 3# 4 Exhibit 3 Part 2 of 3# 5 Exhibit 3 Part 3 of 3 |
| 218 | 06/14/2004 | 218 | Request to Change Filing Date of Affidavit, Memorandum of Law, Affidavit,, Exhibit,, Exhibit  Exhibit  to to June 11, 2004  Filed by LUCENT TECHNOLOGIES INC |
| 219 | 06/15/2004 | 219 | Order Approving Stipulation Dismissing Claims for Relief Without Prejudice (related document(s)207 ) |
| 220 | 06/15/2004 | 220 | Order Granting Lucent's Motion For an Order Authorizing Lucent Technologies Inc To File A Redacted Version of Certain Documents Relating To The Motion of Defendant Lucent Technologies Inc For Summary Judgment on Counts VII,X and XI of The Second Amended Complaint & For Partial Summary Judgment on Lucent's Affirmative Defense on New Value (Related Doc # 209) |
| 221 | 06/15/2004 | 221 | CONFIDENTIAL - UNREDACTED DOCUMENTS - FILED UNDER SEAL Unredacted Declaration of Kelly A Rocco in Support of the Motion of Defendant Lucent Technologies Inc for Summary Judgment on Counts VII X and XI of the Second Amended Complaint and for Partial Summary Judgment on Lucent's Affirmative Defense of New Value [With Accompanying Unredacted Exhibits 1 28 and Exhibits 46 63] Re (related document(s)220, 209 ) Filed by LUCENT TECHNOLOGIES, INC (JSI, ) Modified on 7/1/2004 IMAGE REVISED TO REFLECT DESCRIPTION OF CONTENTS OF BOX(MAS, ) Additional attachment(s) added on 7/1/2004 |
| 222 | 06/21/2004 | 222 | Stipulation and Order Extending Briefing Schedule on Motion to Withdraw the Reference Between LUCENT TECHNOLOGIES INC and Plaintiff Christine C Shubert Chapter 7 Trustee of Winstar Communications, Inc , and Winstar Wireless Inc  Filed by LUCENT TECHNOLOGIES, INC |
| 223 | 06/22/2004 | 223 | Notice of Service CERTIFICATE OF SERVICE re  Unredacted Exhibits 29-45 to Declaration of Kelly A  Rocco in Support of the Motion of Defendant Lucent Technologies Inc for Summary Judgment on Counts VII, X and XI of the Second Amended Complaint and for Partial Summary Judgment on Lucent's Affirmative Defense of New Value Filed by LUCENT TECHNOLOGIES, INC |
| 224 | 06/22/2004 | 224 | Notice of Service NOTICE OF ERRATA AND FILING OF UNREDACTED EXHIBITS (related document(s)213 ) Filed by LUCENT TECHNOLOGIES, INC |
| 225 | 06/25/2004 | 225 | Order Approving Stipulation Extending Briefing Schedule on Motion to Withdraw the Reference  (related document(s)222 ) |

RLF1 2986514 1

EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 226 | 06/29/2004 | 226 | Motion to Strike Lucent Technologies Inc s Designation of Materials as Confidential Motion to Vacate (to the Extent Necessary) and/or Reconsider Order Granting Lucent's Motion for an Order Authorizing Lucent Technologies Inc to File a Redacted Version of Certain Documents Relating to the Motion of Defendant Lucent Technologies Inc for Summary Judgment on Counts VII, X and XI of the Second Amended Complaint and for Partial Summary Judgment on Lucent's Affirmative Defense on New Value Filed by Christine Shubert (Attachments # 1 Exhibit 'A' # 2 Exhibit 'B # 3 Proposed Form of Order |
|---|---|---|---|
| 227 | 07/01/2004 | 227 | CONFIDENTIAL  UNREDACTED DOCUMENTS  FILED UNDER SEAL Unredacted Exhibits 29-45 to the Unredacted Declaration of Kelly A  Rocco in Support of the Motion of Defendant Lucent Technologies Inc  for Summary Judgment on Counts VII  X and XI of the Second Amended Complaint and for Partial Summary Judgment on Lucent's Affirmative Defense of New Value filed contemporaneously with the Notice of Errata and Filing of Unredacted Exhibits filed on June 22  2004 (related document(s)220  209  216 ) Filed by LUCENT TECHNOLOGIES, INC |
| 228 | 07/09/2004 | 228 | Stipulation FURTHER STIPULATION AND ORDER EXTENDING BRIEFING SCHEDULE ON MOTION TO WITHDRAW THE REFERENCE Between Christine Shubert and LUCENT TECHNOLOGIES  INC  (related document(s)208 ) Filed by Christine Shubert |
| 229 | 07/12/2004 | 229 | Response to Motion of Chapter 7 Trustee for Order, Inter Alia  Striking Lucent Technologies Inc  s Designation of Materials as Confidential (related document(s)226 ) Filed by LUCENT TECHNOLOGIES  INC |
| 230 | 07/14/2004 | 230 | Brief PLAINTIFF S MEMORANDUM OF LAW IN OPPOSITION TO LUCENT'S MOTION TO WITHDRAW THE REFERENCE (related document(s)208 ) Filed by Christine Shubert (Attachments # 1 Declaration DECLARATION OF ANDREW C GOLD IN CONNECTION WITH TRUSTEES OPPOSITION TO LUCENTS MOTION TO WITHDRAW THE REFERENCE# 2 Exhibit EXHIBIT A-C Proofs of Claims |
| 231 | 07/15/2004 | 231 | Order And Further Stipulation Extending Briefing Schedule On Motion To Withdraw The Reference  (Related Doc # 228) |
| 232 | 07/19/2004 | 232 | Notice of Service NOTICE OF FILING OF REVISED REDACTED DOCUMENTS (related document(s)229  212, 211, 214  215, 216  226 ) Filed by LUCENT TECHNOLOGIES  INC (related document(s)229, 212  213  214, 215, 216  226) |
| 233 | 07/19/2004 | 233 | Exhibit to Notice of Filing of Revised Redacted Documents (related document(s)232 ) Filed by LUCENT TECHNOLOGIES, INC (Attachments # 1 Exhibit 1 Part 2# 2 Exhibit 1 Part 3# 3 Exhibit 2 Part 1# 4 Exhibit 2 Part 2# 5 Exhibit 2 Part 3# 6 Exhibit 3) |
| 234 | 07/19/2004 | 234 | Exhibit to Notice of Filing of Revised Redacted Documents (related document(s)232 ) Filed by LUCENT TECHNOLOGIES  INC (Attachments # 1 Exhibit 4 Part 2# 2 Exhibit 4 Part 3# 3 Exhibit 4 Part 4# 4 Exhibit 4 Part 5# 5 Exhibit 4 Part 6) |
| 235 | 07/19/2004 | 235 | Exhibit to Notice of Filing of Revised Redacted Documents (related document(s)232 ) Filed by LUCENT TECHNOLOGIES, INC (Attachments # 1 Exhibit 4 Part 8# 2 Exhibit 4 Part 9# 3 Exhibit 4 Part 10# 4 Exhibit 4 Part 11# 5 Exhibit 4 Part 12# 6 Exhibit 4 Part 13) |
| 236 | 07/19/2004 | 236 | Exhibit to Notice of Filing of Revised Redacted Documents (related document(s)232 ) Filed by LUCENT TECHNOLOGIES  INC (Attachments # 1 Exhibit 7 19# 2 Exhibit 20 34# 3 Exhibit 35  44# 4 Exhibit 45-50# 5 Exhibit 51-56# 6 Exhibit 57-60# 7 Exhibit 61  63) |

RLF1 2986514 1

EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 237 | 07/23/2004 | 237 | Memorandum of Law of Defendant Lucent Technologies Inc in Support of its Motion to Withdrawal the Reference to the Bankruptcy Court (related document(s)208 ) Filed by LUCENT TECHNOLOGIES INC (Attachments # 1 Attachment (Unreported Decisions) |
|---|---|---|---|
| 238 | 07/28/2004 | 238 | Stipulation and Order Extending Briefing Schedule on Motion to Withdraw the Reference Between LUCENT TECHNOLOGIES INC and Christine C Shubert, Chapter 7 Trustee for Winstar Communications Inc et al (related document(s)230 ) Filed by LUCENT TECHNOLOGIES INC (related document(s)230) |
| 239 | 08/02/2004 | 239 | Order Approving Further Stipulation and Order Extending Briefing Schedule on Motion to Withdraw the Reference (related document(s)238 ) |
| 240 | 08/04/2004 | 240 | Reply Memorandum of Law of Defendant Lucent Technologies Inc in Support of Its Motion to Withdraw the Reference to the Bankruptcy Court (related document(s)208 ) Filed by LUCENT TECHNOLOGIES INC (Attachments # 1 Attachment (Unreported Cases) |
| 241 | 08/05/2004 | 241 | Notice of Hearing APPLICATION OF LUCENT TECHNOLOGIES INC FOR ORAL ARGUMENT (related document(s)208 ) Filed by LUCENT TECHNOLOGIES INC |
| 242 | 08/09/2004 | 242 | Transmittal to the U S District Court District of Delaware of the Motion to Withdraw the Reference (related document(s)237, 241 222, 228, 238 239, 240 225 230 231, 208 ) |
| 243 | 08/10/2004 | 243 | Notice of Receipt of Record for Motion to Withdraw the Reference (U S D C Civil Action No 04-928) (related document(s)242 ) Filed by U S District Court, District of Delaware |
| 244 | 08/10/2004 | 244 | Notice of Docketing Motion to Withdraw the Reference (U S D C Civil Action No 04 928) |
| 245 | 08/11/2004 | 245 | Notice of Completion of Briefing Re Docket No 208 Filed by LUCENT TECHNOLOGIES, INC |
| 246 | 08/13/2004 | 246 | Stipulation and Proposed Order Resolving Motion of Chapter 7 Trustee for an Order Striking Lucent Technologies Inc 's Designation of Materials as Confidential and Related Relief Between LUCENT TECHNOLOGIES, INC and Plaintiff Christine C Shubert Chapter 7 Trustee of Winstar Communications Inc Filed by LUCENT TECHNOLOGIES INC |
| 247 | 08/13/2004 | 247 | Memorandum of Law in Opposition to Lucent's Motion for Summary Judgment Filed by Christine C Shubert |
| 248 | 08/13/2004 | 248 | Affidavit/Declaration of Service of Stephen J Scherf in Opposition to Defendant's Motion for Summary Judgment (related document(s)247 ) Filed by Christine C Shubert (Attachments # 1 Declaration Part 2# 2 Declaration Part 3# 3 Declaration Part 4# 4 Declaration Part 5) |
| 249 | 08/13/2004 | 249 | Affidavit/Declaration of Service of David R King in Opposition to Defendant's Motion for Summary Judgment (Volume 1 of 4) (related document(s)247 ) Filed by Christine C Shubert (Attachments # 1 Volume(s) 1 of 4 Part 2# 2 Volume(s) 1 of 4 Part 3# 3 Volume(s) 1 of 4 Part 4# 4 Volume(s) 1 of 4 Part 5# 5 Volume(s) 1 of 4 Part 6# 6 Volume(s) 1 of 4 Part 7# 7 Volume(s) 1 of 4 Part 8# 8 Volume(s) 1 of 4 Part 9# 9 Volume(s) 1 of 4 Part 10) |
| 250 | 08/13/2004 | 250 | Affidavit/Declaration of Service of David R King in Opposition to Defendant's Motion for Summary Judgment (Volume 2 of 4) (related document(s)247 ) Filed by Christine Shubert (Attachments # 1 Volume(s) 2 of 4 Part 2) |
| 251 | 08/13/2004 | 251 | Affidavit/Declaration of Service of David R King in Opposition to Defendant's Motion for Summary Judgment (Volume 3 of 4) (related document(s)247 ) Filed by Christine Shubert (Attachments # 1 Volume(s) 3 of 4 Part 2# 2 Volume(s) 3 of 4 Part 3) |

14

## EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 252 | 08/13/2004 | 252 | Affidavit/Declaration of Service of David R King in Opposition to Defendant s Motion for Summary Judgement (Volume 4 of 4) (related document(s)247 ) Filed by Christine Shubert (Attachments # 1 Volume(s) 4 of 4  Part 2# 2 Volume(s) 4 of 4  Part 3) |
|---|---|---|---|
| 253 | 08/17/2004 | 253 | Order (Proposed) And Stipulation Resolving Motion Of Chapter 7 Trustee For An Order Striking Lucent Technologies Inc's Designation Of Materials As Confidential And Related Relief  (Related Doc # 246) |
| 254 | 08/18/2004 | 254 | Transmittal to the U S  District Court, District of Delaware of Docket Entry No 245 (U S D C Civil Action No  04 928) (related document(s)245 ) |
| 255 | 08/23/2004 | 255 | Notice of Receipt of Record of Docket Entry No  245 (U S D C Civil Action No 04 928  JJF) (related document(s)245 ) Filed by U S  District Court, District of Delaware |
| 256 | 09/10/2004 | 256 | Motion to Allow Motion for an Order Pursuant to Section 107(b) of the Bankruptcy Code, Rule 9018 of the Federal Rules of Bankruptcy Procedure  and Local Rule 5003 (b) Authorizing Lucent Technologies Inc  to File a Redacted Version of Certain Documents Relating to the Motion of Defendant Lucent Technologies Inc  for Summary Judgment on Counts VII, X and XI of the Second Amended Complaint and for Partial Summary Judgment on Lucent's Affirmative Defense of New Value Filed by LUCENT TECHNOLOGIES, INC |
| 257 | 09/10/2004 | 257 | Memorandum of Law Reply Memorandum of Law of Defendant Lucent Technologies Inc  in Further Support of Its Motion for Summary Judgment on Counts VII  X and XI of the Second Amended Complaint and for Partial Summary Judgment on Lucent's Affirmative Defense of New Value (related document(s)210 ) Filed by LUCENT TECHNOLOGIES INC (Attachments # 1 Attachment (Unreported Cases)# 2 Certificate of Service for Reply Memorandum# 3 Declaration of Iddo Harel (part 1 of 2)# 4 Declaration of Iddo Harel (part 2 of 2)# 5 Certificate of Service for Declaration of Iddo Harel# 6 Affidavit of Fred Rubin# 7 Certificate of Service for Affidavit of Fred Rubin# 8 Declaration of David R Baum |
| 258 | 09/15/2004 | 258 | Letter SUR REPLY IN RESPONSE TO LUCENTS REPLY BRIEF RE MOTION FOR SUMMARY JUDGMENT Filed by Christine Shubert (Attachments # 1 Exhibit SUPPLEMENTAL DECLARATION OF DAVID R KING) |
| 259 | 09/21/2004 | 259 | Notice of Completion of Briefing and Plaintiffs Request for Oral Argument on Motion of Defendant Lucent Technologies, Inc  for Summary Judgment on Counts VII, X and XI of the Second Amended Complaint and for Partial Summary Judgment on Lucents Affirmative Defense of New Value Filed by Christine C Shubert |
| 260 | 09/21/2004 | 260 | Notice of Service NOTICE OF ERRATA (related document(s)232 ) Filed by LUCENT TECHNOLOGIES, INC |
| 261 | 09/24/2004 | 261 | Motion for Leave Motion of Lucent Technologies Inc  for Leave to File Response to Plaintiff's Sur Reply Letter Filed by LUCENT TECHNOLOGIES  INC (related document(s)258) |
| 262 | 09/24/2004 | 262 | Response to Plaintiff's Sur Reply Letter (related document(s)258 ) Filed by LUCENT TECHNOLOGIES  INC |
| 263 | 09/27/2004 | 263 | Letter Response to Lucents Motion for Leave to Respond to Sur reply (related document(s)261 ) Filed by Christine Shubert |
| 264 | 09/29/2004 | 264 | Letter Regarding Trustee's 9/27/04 Letter Requesting Oral Argument and Disposition of Lucent's Summary Judgment Motion (related document(s)263 ) Filed by LUCENT TECHNOLOGIES INC |
| 265 | 09/30/2004 | 265 | Letter re  oral argument Filed by Christine Shubert |
| 266 | 10/07/2004 | 266 | Order Refraining this Court from Taking and Action until the District Court Acts on Defendant's Motion to Withdraw the Reference Signed on 10/6/2004 |
| 267 | 11/03/2004 | 267 | Joint Motion to Approve Joint Motion for Court to Enter Fourth Amended Scheduling Order Filed by LUCENT TECHNOLOGIES, INC |

RLF1 2986514 1

EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 268 | 11/18/2004 | 268 | COPY OF DISTRICT COURT Memorandum Opinion Denying the Motion of Defendant Lucent Technologies Inc to Withdraw the Reference (related document(s)208 ) |
| 269 | 11/18/2004 | 269 | COPY OF DISTRICT COURT Order Denying Motion For Withdrawal Of Reference(Related Doc # 208) Order Signed on 11/16/2004 (MAS ) |
| 270 | 11/18/2004 | 270 | Letter To The Honorable Joel B Rosenthal re Oral Argument and Proposed Sched Order Filed by Christine Shubert |
| 271 | 12/06/2004 | 271 | Letter The Honorable Joel B Rosenthal Lucent's Motion Filed by Christine C Shubert (Rennie, Sheldon) |
| 272 | 12/07/2004 | 272 | Notice of Agenda of Matters Scheduled for Hearing Filed by Christine C Shubert |
| 273 | 12/15/2004 | 273 | Order On Motion For Summary Judgment of Defendant Lucent Technologies Inc on Counts VII X and XI of the Second Amended Complaint and for Partial Summary Judgment on Lucent's Affirmative Defense of New Value (related document(s)210 ) |
| 274 | 01/05/2005 | 274 | Transcript of Hearing held on December 14, 2004 before the Honorable Joel B Rosenthal (related document(s)272 ) |
| 275 | 01/26/2005 | 275 | PreTrial Order Trial date set for 3/21/2005 at 09 30 AM at Alternate Meeting Site Signed on 1/26/2005 (LCN, ) |
| 276 | 02/03/2005 | 276 | ENTERED IN ERROR - Order Reassigning Adversary Proceeding to the Honorable Donal D Sullivan Order Signed on 2/1/2005 (BJM) Modified on 2/7/2005 |
| 277 | 02/14/2005 | 277 | Second Pretrial Order Signed on 2/10/2005 |
| 278 | 02/28/2005 | 278 | Motion in Limine Filed by Christine C Shubert (Attachments # 1 Declaration Of David R King in Support of Plaintiffs In Limine Motion# 2 Exhibit A To Declaration of David R King in Support of Plaintiffs In Limine Motion# 3 Exhibit B to Declaration of D King - Motion In Limine - WII 4 Certificate of Service of Plaintiffs In Limine Motion with attached Exhibits) |
| 279 | 02/28/2005 | 279 | Motion in Support of Lucent Technologies Inc 's Motion In Limine No 1 To Exclude Certain Expert Testimony of Paul W Pocalyko Pursuant to Fed R Evid 702 and Daubert v Merrell Dow Pharms Inc Filed by LUCENT TECHNOLOGIES INC Modified on 3/1/2005 |
| 280 | 02/28/2005 | 280 | Motion in Support of Lucent Technologies Inc 's Motion In Limine No 2 To Exclude the Expert Testimony of Robert E Ott Pursuant to Fed R Evid 702 and Daubert v Merrell Dow Pharms Inc Filed by LUCENT TECHNOLOGIES INC |
| 281 | 02/28/2005 | 281 | Motion in Support of Lucent Technologies Inc 's Motion In Limine No 3 To Exclude Certain Expert Testimony of Stephen J Scherf Pursuant to Fed R Evid 702 and Daubert v Merrell Dow Pharms Inc Filed by LUCENT TECHNOLOGIES INC ( Modified on 3/1/2005 ) |
| 282 | 02/28/2005 | 282 | Memorandum of Law in Support of Lucent Technologies Inc 's Motions In Limine Nos 1, 2 & 3 To Exclude Certain Expert Testimony of Paul W Pocalyko, Robert E Ott and Stephen J Scherf Pursuant to Fed R Evid 702 and Daubert v Merrell Dow Pharms Inc Filed by LUCENT TECHNOLOGIES INC (Attachments # 1 Attachment Part 1# 2 Attachment Part 2# |
| 283 | 02/28/2005 | 283 | Declaration of Gerald Ford in Support of Defendant Lucent Technologies Inc 's Motions In Limine Nos 1, 2 & 3 To Exclude Certain Expert Testimony of Paul W Pocalyko, Robert E Ott and Stephen J Schlerf Pursuant to Fed R Evid 702 and Daubert v Merrell Dow Pharms Inc Filed by LUCENT TECHNOLOGIES, INC (Attachments # 1 Exhibit 1# 2 Exhibit 2 3# 3 Exhibit 4 6# 4 Exhibit 7 1)# 5 Certificate of Service and Service List) |

EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 284 | 02/28/2005 | 284 | Motion in Support of Defendant Lucent Technologies Inc 's Motion In Limine No 4 To Exclude Evidence of Transactions Unrelated to the Siemens Transaction Filed by LUCENT TECHNOLOGIES INC  Modified on 3/1/2005 |
|---|---|---|---|
| 285 | 02/28/2005 | 285 | Memorandum of Law of Defendant Lucent Technologies Inc  in Support of Its Motion In Limine No  4  To Exclude Evidence of Transactions Unrelated to the Siemens Transaction Filed by LUCENT TECHNOLOGIES  INC |
| 286 | 02/28/2005 | 286 | Declaration of Gerald A  Ford in Support of Defendant Lucent Technologies Inc's Motion In Limine No  4  To Exclude Evidence of Transactions Unrelated to the Siemens Transaction Filed by LUCENT TECHNOLOGIES, INC  (Attachments  # 1 Exhibit 1# 2 Exhibit 2# 3 Exhibit 3# 4 Exhibit 4# 5 Certificate of Service and Service List) (Booth  Rebecca) Modified on 3/1/2005 |
| 287 | 03/07/2005 | 287 | Memorandum of Law of Defendant Lucent Technologies Inc  In Opposition to Plaintiff's In Limine Motion Filed by LUCENT TECHNOLOGIES  INC |
| 288 | 03/07/2005 | 288 | Declaration of David Roy Rigotti Filed by LUCENT TECHNOLOGIES, INC  Modified on 3/8/2005 |
| 289 | 03/07/2005 | 289 | Declaration of Michael A  Paskin in Opposition to Plaintiff's In Limine Motion Filed by LUCENT TECHNOLOGIES INC  (Attachments  # 1 Exhibit 1# 2 Exhibit 2# 3 Exhibit 3# 4 Exhibit 4# 5 Exhibit 5# 6 Exhibit 6# 7 Exhibit 7# 8 Exhibit 8# 9 Exhibit 9# 10 Exhibit 10 |
| 290 | 03/07/2005 | 290 | Memorandum of Law in Opposition to Lucents Motion In Limine Nos 1, 2 & 3 Filed by Christine C  Shubert (Attachments  # 1 Declaration Declaration of Stephen J  Scherf |
| 291 | 03/07/2005 | 291 | Memorandum of Law in Opposition to Lucents Motion In Limine No  4 Filed by Christine C  Shubert (Attachments  # 1 Declaration of Stephen J  Scherf# 2 Declaration of David R  King Part 1# 3 Declaration of David R  King Part 2# 4 Declaration of David R  King Part 3# 5 Declaration of David R  King Part 4# 6 Declaration of David R  King Part 5# 7 Declaration of David R  King Part 6# 8 Declaration of David R  King Part 7# 9 Declaration of David R  King Part 8# 10 Declaration of David R  King Part 9# 11 Declaration of David R. King Part 10 |
| 292 | 03/07/2005 | 292 | Joint Pretrial Memorandum Filed by LUCENT TECHNOLOGIES, INC  (Attachments  # 1 Exhibit 1# 2 Exhibit 2# 3 Exhibit 3# 4 Exhibit 4# 5 Exhibit 5# 6 Exhibit 6# 7 Exhibit 7# 8 Exhibit 8# 9 Exhibit 9# 10 Exhibit 10# 11 Exhibit 11# 12 Exhibit 12# 13 Exhibit 13# 14 Exhibit 14# 15 Exhibit 15  Modified on 3/11/2005 |
| 293 | 03/07/2005 | 293 | Appendix A to Joint Pretrial Memorandum (related document(s)292 ) Filed by LUCENT TECHNOLOGIES INC  (Attachments  # 1 Part 2# 2 Part 3# 3 Part 4# 4 Part 5) |
| 294 | 03/08/2005 | 294 | Order Notice Of Non Evidentiary Hearing  Hearing will be held on Wednesday, March 16, 2005 at 2:00PM at the Harold Donohue Federal Courthouse  595 Main Street, Worcester, Massachusetts  Courtroom No  3  (related document(s)281  278, 279  280  284 ) |
| 295 | 03/10/2005 | 295 | Plaintiff's Pre Trial Memorandum of Law Filed by Christine C  Shubert |
| 296 | 03/10/2005 | 296 | Defendant Lucent Technologies Inc 's Trial Brief Filed by LUCENT TECHNOLOGIES, INC |
| 297 | 03/11/2005 | 297 | Motion to Appear pro hac vice of Barry Werbin  Receipt Number 138442, Fee Amount $25  Filed by Christine C  Shubert ( |
| 298 | 03/15/2005 | 298 | Order Granting Motion To Appear pro hac vice of (Barry Werbin, Esq ) (Related Doc # 297) |
| 299 | 03/16/2005 | 299 | Plaintiff Christine C  Shubert's Proposed Bridge Statements Filed by Christine C  Shubert |
| 300 | 03/17/2005 | 300 | Order Allowing Plaintiff's Motion in Limine  (Related Doc # 278) |

RLF1 2986514 1

EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 301 | 03/17/2005 | 301 | Order Denying Motion in Support of Lucent Technologies Inc's Motion In Limine No 1 To Exclude Certain Expert Testimony of Paul W Pocalyko and Daubert V Merrell Dow Pharms Inc (Related Doc # 279) |
| 302 | 03/17/2005 | 302 | Order Denying Motion in Support of Lucent Technologies Inc 's Motion In Limine No 2 To Exclude the Expert Testimony of Robert E Ott and Daubert v Merrell Dow Pharms Inc (Related Doc # 280) |
| 303 | 03/17/2005 | 303 | Order Denying Motion in Support of Lucent Technologies Inc 's Motion In Limine No 3 To Exclude Certain Expert Testimony of Stephen J Scherf and Daubert v Merrell Dow Pharms Inc (Related Doc # 281) |
| 304 | 03/17/2005 | 304 | Order Denying Motion in Support of Defendant Lucent Technologies Inc 's Motion in Limine No 4 To Exclude Evidence of Transactions Unrelated to the Siemens Transaction (Related Doc # 284) |
| 305 | 03/17/2005 | 305 | Defendant Lucent Technologies Inc 's Bridge Statements for Deposition Testimony Filed by LUCENT TECHNOLOGIES INC |
| 306 | 03/18/2005 | 306 | Motion to Appear pro hac vice of Lillian S Grossbard of Cravath Swaine & Moore Receipt Number 138530 Fee Amount $25 Filed by LUCENT TECHNOLOGIES INC |
| 307 | 03/18/2005 | 307 | Motion to Appear pro hac vice of Michael A Paskin of Cravath Swaine & Moore Receipt Number 138530 Fee Amount $25 Filed by LUCENT TECHNOLOGIES INC |
| 308 | 03/21/2005 | 308 | Stipulation By and Between LUCENT TECHNOLOGIES INC and The Trustee Concerning the Admissibility of Certain Documents and Deposition Testimony Filed by LUCENT TECHNOLOGIES, INC |
| 309 | 03/22/2005 | 309 | Stipulation (Joint) as to Additional Uncontested Facts Between LUCENT TECHNOLOGIES INC and the Trustee Filed by LUCENT TECHNOLOGIES, INC |
| 310 | 04/04/2005 | 310 | Order of Impoundment Granting Counsel for Each Party an Unredacted Copy of the Underseal Trial Transcript Signed on 4/4/2005 |
| 311 | 04/06/2005 | 311 | Motion to Appear pro hac vice of Susan Swatski Receipt Number 138750, Fee Amount $25 Filed by Christine C Shubert |
| 312 | 04/07/2005 | 312 | Order Granting Motion To Appear pro hac vice of (Susan Swatski, esq )(Related Doc # 311) |
| 313 | 04/12/2005 | 313 | Notice of Filing Documents Under Seal Filed by LUCENT TECHNOLOGIES, INC |
| 314 | 04/12/2005 | 314 | Motion to File Under Seal Motion of Defendants Lucent Technologies Inc to File Under Seal its Motion for Reconsideration of the Court's April 4 2005, Order of Impoundment (related document(s)313 ) Filed by LUCENT TECHNOLOGIES, INC (related document(s)313) |
| 315 | 04/12/2005 | 315 | Renewed Motion of Lucent Technologies Inc to Exclude the Testimony of Paul Pocalyko Filed by LUCENT TECHNOLOGIES, INC (Attachments # 1 Attachment Memorandum in Support of Motion |
| 316 | 04/15/2005 | 316 | AMENDMENT To Order of Impoundment (related document(s)310 ) |
| 317 | 04/15/2005 | 317 | Order Granting Defendant Lucent Technologies Inc Leave to File Under Seal its Motion for Reconsideration of the Court's April 4, 2005, Order of Impoundment (Related Doc # 314) |
| 318 | 04/15/2005 | 318 | (DOCUMENTS FILED UNDER SEAL) Motion of Defendant Lucent Technologies Inc to File Under Seal its Motion for Reconsideration of the Court's April 4 2004 Order of Impoundment (related document(s) 317) |
| 319 | 04/15/2005 | 319 | Certificate of Service Filed by LUCENT TECHNOLOGIES, INC |
| 320 | 04/20/2005 | 320 | Letter to The Honorable Joel B Rosenthal re TIMELINE Filed by Christine C Shubert |
| 321 | 04/20/2005 | 321 | Scheduling Order Signed on 4/20/2005 |

18

EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 322 | 04/20/2005 | 322 | Transcript of Motions Hearing held on March 16, 2005 before the Honorable Joel B Rosenthal |
|---|---|---|---|
| 323 | 04/20/2005 | 327 | Letter In Response To Defendant's Motion for Reconsideration of the Court's April 4, 2005 Order of Impoundment (related document(s)314) Filed by Christine C Shubert |
| 324 | 04/20/2005 | 328 | Memorandum of Law In Opposition to Lucent s Renewed Motion To Exclude The Testimony of Paul Pocalyko (related document(s)315) Filed by Christine C Shubert (Attachments # 1 Certificate of Service of Trustee s Memorandum of Law in Opposition to Lucent's Renewed Motion to Exclude The Testimony of Paul Pocalyko) |
| 325 | 04/26/2005 | 329 | ENTERED IN ERROR (See Amended Order in lead Bk case docket #4410)Order Reassigning Adversary Proceeding To The Honorable Donal D Sullivan Signed on 2/1/2005 (Attachments # 1 Exhibit A) |
| 326 | 04/26/2005 | 330 | Letter to The Honorable Joel B Rosenthal re Revised Timeline (related document(s)320) Filed by Christine C Shubert |
| 327 | 04/26/2005 | 331 | Stipulation Renumbered Joint Stipulation Between LUCENT TECHNOLOGIES, INC and Christine C Shubert Chapter 7 Trustee for Winstar Communications Inc , et al as to Uncontested Facts Filed by LUCENT TECHNOLOGIES INC ( |
| 328 | 04/27/2005 | 332 | Letter to The Honorable Joel B Rosenthal re Chronology of Events Filed by LUCENT TECHNOLOGIES, INC |
| 329 | 05/04/2005 | 333 | Order (REVISIONS BY THE COURT) Denying Renewed Motion of Lucent Technologies Inc to Exclude the Testimony of Paul Pocalyko (Related Doc # 315) |
| 330 | 05/04/2005 | 334 | Order (REVISIONS BY THE COURT) Granting Motion of Defendant Lucent Technologies Inc for Reconsideration of the Court s April 4, 2005 Order of Impoundment (related document(s)310, 316) |
| 331 | 05/20/2005 | 335 | Stipulation Concerning the Submission of Joint Trial Exhibits Between LUCENT TECHNOLOGIES, INC and The Trustee Filed by LUCENT TECHNOLOGIES, INC |
| 332 | 05/23/2005 | 336 | Scheduling Order (SECOND) Signed on 5/18/2005 |
| 333 | 05/23/2005 | 337 | Stipulation By and Between LUCENT TECHNOLOGIES, INC and Christine C Shubert Chapter 7 Trustee for Winstar Communications Inc , et al Concerning Lucent's Counterclaim for Setoff Filed by LUCENT TECHNOLOGIES, INC |
| 334 | 06/06/2005 | 339 | Findings of Fact and Conclusions of Law Filed by Christine C Shubert (Attachments # 1 TRUSTEE'S PROPOSED CONCLUSION OF LAW# 2 Exhibit Exhibit A and B to Conclusions of Law# 3 Exhibit Exhibits C through E to Conclusions of Law - WINSTAR) |
| 335 | 06/06/2005 | 340 | Findings of Fact and Conclusions of Law (Proposed) Filed by LUCENT TECHNOLOGIES, INC (Attachments # 1 PART 2# 2 PART 3# 3 PART 4# 4 PART 5# 5 Unpublished Opinions PART 1# 6 Unpublished Opinions PART 2# 7 Unpublished Opinions PART 3 |
| 336 | 06/08/2005 | 341 | Letter to the Honorable Joel B Rosenthal - Trustee's Objection To Portions of Lucent's Findings of Facts and Conclusions Filed by Christine C Shubert |
| 337 | 06/09/2005 | 342 | Letter Filed by LUCENT TECHNOLOGIES, INC |
| 338 | 06/09/2005 | 343 | Letter Filed by LUCENT TECHNOLOGIES, INC |
| 339 | 06/10/2005 | 344 | Letter Filed by LUCENT TECHNOLOGIES, INC |
| 340 | 06/10/2005 | 345 | Letter to the Honorable Joel B Rosenthal - Lucent Has Not Consented To Court's Entry of Final Order  Filed by Christine C Shubert |
| 341 | 06/10/2005 | 346 | Letter to the Honorable Joel B Rosenthal - Citations to Video Deposition Testimony Filed by Christine C Shubert |
| 342 | 06/10/2005 | 347 | Letter Filed by LUCENT TECHNOLOGIES, INC |
| 343 | 06/15/2005 | 348 | Letter Filed by LUCENT TECHNOLOGIES, INC |
| 344 | 06/15/2005 | 349 | Letter to Judge Rosenthal Filed by Christine C Shubert |

RLF1 2986514 1

## EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL

| 345 | 06/20/2005 | 350 | Order and Notice Regarding the Sending of Letters to the Court |
| 346 | 08/15/2005 | 368 | Letter dated 8/8/05 from David R King, Esq to advise the court that mailing address has changed Filed by Christine C Shubert |
| 347 | 12/21/2005 | 369 | Memorandum of Decision Including Findings of Fact and Conclusions of Law With Respect to Counts VII X, and XI of the Second Amended Complaint and Counts 5 and 6 of the Second Amended Answer and Counterclaims Signed on 12/21/2005 (related document(s)259 210 209 212 257 ) (JMP, ) |
| 348 | 12/21/2005 | 370 | Order Regarding Memorandum of Decision Including Findings of Fact and Conclusions of Law With Respect to Counts VII, X, and XI of the Second Amended Complaint and Counts 5 and 6 of the Second Amended Answer and Counterclaims (related document(s)369 ) |
| 349 | 12/23/2005 | 371 | Notice of Appearance and Demand for Service of Papers Filed by LUCENT TECHNOLOGIES, INC |
| 350 | 12/23/2005 | 372 | Motion to Appear pro hac vice of Craig T Goldblatt of Wilmer Cutler Pickering Hale and Dorr LLP Receipt Number 141626 Fee Amount $25 Filed by LUCENT TECHNOLOGIES, INC |
| 351 | 12/28/2005 | 373 | Order Entering Judgment (related document(s)370 ) |
| 352 | 01/03/2006 | 374 | Order Granting Motion for Admission pro hac vice of Craig T Goldblatt (Related Doc # 372) |
| 353 | 01/03/2006 | 375 | Conditional Objection of Lucent Technologies Pursuant to Rule 9033(b) to any 'Proposed" Findings of Fact and Conclusions of Law Made by the Bankruptcy Court (related document(s)369, 373 ) Filed by LUCENT TECHNOLOGIES, INC |
| 354 | 01/06/2006 | 376 | Stipulation (Joint) Regarding Ten Day Stay of Execution of Judgment By LUCENT TECHNOLOGIES INC Christine C Shubert Filed by LUCENT TECHNOLOGIES INC Christine C Shubert |
| 355 | 1/09/2006 | 377 | Notice of Appeal (from final judgment entered 12/28/05) Fee Amount $255 (related document(s)373 ) Filed by LUCENT TECHNOLOGIES, INC Appellant Designation due by 1/19/2006 |

### Trial Transcripts

| Tab | Date | Adv. Docket No | Description of Item |
| --- | --- | --- | --- |
| 356 | 04/20/2005 | 323 | Transcript of Trial (Volume 1) held on March 21, 2005 before the Honorable Joel B Rosenthal |
| 357 | 04/20/2005 | 324 | Transcript of Trial (Volume 2) held on March 22 2005 before the Honorable Joel B Rosenthal |
| 358 | 06/01/2005 | 338 | Transcript of Trial (Volume III) held on March 23 2005 before the Honorable Joel B Rosenthal |
| 359 | 04/20/2005 | 325 | Transcript of Trial (Volume 4) held on March 24, 2005 before the Honorable Joel B Rosenthal |
| 360 | 04/20/2005 | 326 | Transcript of Trial (Volume 5) held on March 25, 2005 before the Honorable Joel B Rosenthal |
| 361 | 06/29/2005 | 351 | Transcript of Trial (Volume VI) held on March 28, 2005 before the Honorable Joel B Rosenthal |
| 362 | 06/29/2005 | 352 | Transcript of Trial (Volume VII) held on March 29, 2005 before the Honorable Joel B Rosenthal |
| 363 | 06/29/2005 | 353 | Transcript of Trial (Volume VIII) held on March 30, 2005 before the Honorable Joel B Rosenthal |
| 364 | 06/29/2005 | 354 | Transcript of Trial (Volume IX) held on March 31, 2005 before the Honorable Joel B Rosenthal |

EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 365 | 06/29/2005 | 355 | Transcript of Trial (Volume X) held on April 1  2005 before the Honorable Joel B Rosenthal |
| 366 | 06/29/2005 | 356 | Transcript of Trial (Volume XI) held on April 11  2005 before the Honorable Joel B  Rosenthal |
| 367 | 06/29/2005 | 357 | Transcript of Trial (Volume XII) held on April 12, 2005 before the Honorable Joel B  Rosenthal |
| 368 | 06/29/2005 | 358 | Transcript of Trial (Volume XIII) held on April 13, 2005 before the Honorable Joel B  Rosenthal |
| 369 | 06/29/2005 | 359 | Transcript of Trial (Volume XIV) held on April 14, 2005 before the Honorable Joel B  Rosenthal |
| 370 | 06/29/2005 | 360 | Transcript of Trial (Volume XV) held on April 15  2005 before the Honorable Joel B  Rosenthal |
| 371 | 06/29/2005 | 361 | Transcript of Trial (Volume XVI) held on May 2, 2005 before the Honorable Joel B  Rosenthal |
| 372 | 06/29/2005 | 362 | Transcript of Trial (Volume XVII) held on May 3  2005 before the Honorable Joel B  Rosenthal |
| 373 | 06/29/2005 | 363 | Transcript of Trial (Volume XVIII) held on May 4  2005 before the Honorable Joel B  Rosenthal |
| 374 | 06/29/2005 | 364 | Transcript of Trial (Volume XIX) held on May 5  2005 before the Honorable Joel B  Rosenthal |
| 375 | 06/29/2005 | 365 | Transcript of Trial (Volume XX) held on May 10, 2005 before the Honorable Joel B  Rosenthal |
| 376 | 06/29/2005 | 366 | Transcript of Trial (Volume XXI) held on May 11, 2005 before the Honorable Joel B  Rosenthal |
| 377 | 06/29/2005 | 367 | Transcript of Trial (Volume XXII) held on June 13  2005 before the Honorable Joel B  Rosenthal |

**Proofs of Claim**

| Tab | Date | Claim No | Description of Item |
|-----|------|----------|---------------------|
| 378 | 10/15/2001 | 2012 | Lucent Technologies  Inc  Unsecured Proof of Claim in the amount of $957,388 021 50, filed in Winstar Communications, Inc  Case No      01 01430 |
| 379 | 10/15/2001 | 2013 | Lucent Technologies  Inc  Unsecured Proof of Claim in the amount of $957 388,021 50  filed in WCI Capital Corp  Case No  01 01431 |
| 380 | 10/15/2001 | 2014 | Lucent Technologies, Inc  Unsecured Proof of Claim in the amount of $957,388,021 50, filed in Winstar Equipment Corp  Case No  01 01432 |
| 381 | 10/15/2001 | 2015 | Lucent Technologies  Inc  Unsecured Proof of Claim in the amount of $957,388 021 50  filed in Winstar Wireless  Inc  Case No  01-01443 |
| 382 | 10/15/2001 | 2016 | Lucent Technologies  Inc  Unsecured Proof of Claim in the amount of $957,388 021 50  filed in Winstar Network Expansion, LLC  Case No        01 01446 |
| 383 | 10/15/2001 | 2017 | Lucent Technologies, Inc  Unsecured Proof of Claim in the amount of $957,388,021 50  filed in WVF 1 LLC  Case No  01 01452 |
| 384 | 10/15/2001 | 2018 | Lucent Technologies, Inc  Unsecured Proof of Claim in the amount of $957 388 021 50  filed in WVF-LU2  LLC  Case No  01 01453 |
| 385 | 10/15/2001 | 2019 | Lucent Technologies  Inc  Secured Proof of Claim in the amount of $799,060,307 68  filed in Winstar Communications, Inc  Case No  01 01430 |
| 386 | 10/15/2001 | 2020 | Lucent Technologies, Inc  Secured Proof of Claim in the amount of $799,060 307 68, filed in WCI Capital Corp  Case No  01-01431 |

## EXHIBIT A

### APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
### BE INCLUDED IN THE RECORD ON APPEAL

| 387 | 10/15/2001 | 2021 | Lucent Technologies Inc Secured Proof of Claim in the amount of $799 060 307 68 filed in Winstar Equipment, Corp Case No 01 01432 |
| 388 | 10/15/2001 | 2022 | Lucent Technologies, Inc Secured Proof of Claim in the amount of $799 060 307 68 filed in Winstar Wireless, Inc Case No 01 01442 |
| 389 | 10/15/2001 | 2023 | Lucent Technologies, Inc Secured Proof of Claim in the amount of $799 060 307 68, filed in Winstar Network Expansion LLC Case No 01 01446 |
| 390 | 10/15/2001 | 2024 | Lucent Technologies, Inc Secured Proof of Claim in the amount of $799 060 307 68, filed in WVF 1 LLC Case No 01 01452 |
| 391 | 10/15/2001 | 2025 | Lucent Technologies Inc Secured Proof of Claim in the amount of $799 060 307 68 filed in WVF LU2 LLC Case No 01 01453 |
| 392 | 10/15/2001 | 2026 | Lucent Technologies Inc Secured Proof of Claim in the amount of $138 957 218 90 filed in Winstar Communications Inc Case No 01 01430 |
| 393 | 10/15/2001 | 2027 | Lucent Technologies Inc Secured Proof of Claim in the amount of $138 957 218 90, filed in WCI Capital Corp Case No 01 01431 |
| 394 | 10/15/2001 | 2028 | Lucent Technologies Inc Secured Proof of Claim in the amount of $138 957,218 90 filed in Winstar Equipment Corp Case No 01 01432 |
| 395 | 10/15/2001 | 2029 | Lucent Technologies Inc Secured Proof of Claim in the amount of $138,957,218 90 filed in Winstar Wireless, Inc Case No 01-01443 |
| 396 | 10/15/2001 | 2030 | Lucent Technologies Inc Secured Proof of Claim in the amount of $138,957 218 90, filed in Winstar Network Expansion, LLC Case No 01-01446 |
| 397 | 10/15/2001 | 2031 | Lucent Technologies Inc Secured Proof of Claim in the amount of $138,957,218 90, filed in WVF I LLC Case No 01-01452 |
| 398 | 10/15/2001 | 2032 | Lucent Technologies, Inc Secured Proof of Claim in the amount of $138 957 218 90, filed in WVF LU2 LLC Case No 01 01453 |
| 399 | 10/15/2001 | 2214 | Lucent Technologies, Inc Secured Proof of Claim in the amount of $138 957 218 90 filed in Winstar Network Expansion, LLC Case No 01-01446 |
| 400 | 10/15/2001 | 2215 | Lucent Technologies, Inc Secured Proof of Claim in the amount of $138 957,218 90 filed in WVF I LLC Case No 01 01452 |
| 401 | 10/15/2001 | 2216 | Lucent Technologies, Inc Secured Proof of Claim in the amount of $138 957,218 90 filed in WVF LU2, LLC Case No 01-01453 |
| 402 | 10/15/2001 | 2217 | Lucent Technologies Inc Unsecured Proof of Claim in the amount of $957,388 021 50 filed in WVF LU2, LLC Case No 01 01453 |
| 403 | 10/15/2001 | 2218 | Lucent Technologies, Inc Secured Proof of Claim in the amount of $799,060,307 68 filed in Winstar Communications, Inc Case No 01 01430 |
| 404 | 10/15/2001 | 2219 | Lucent Technologies, Inc Secured Proof of Claim in the amount of $799,060,307 68, filed in WCI Capital Corp Case No 01-01431 |
| 405 | 10/15/2001 | 2220 | Lucent Technologies Inc Secured Proof of Claim in the amount of $799,060 307 68, filed in Winstar Equipment Corp Case No 01-01432 |
| 406 | 10/15/2001 | 2221 | Lucent Technologies, Inc Secured Proof of Claim in the amount of $799,060,307 68, filed in Winstar Wireless, Inc Case No 01 01443 |

RLF1 2986514 1

EXHIBIT A

APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
BE INCLUDED IN THE RECORD ON APPEAL

| 407 | 10/15/2001 | 2222 | Lucent Technologies Inc Secured Proof of Claim in the amount of $799,060 307 68 filed in Winstar Network Expansion LLC Case No 01-01446 |
| 408 | 10/15/2001 | 2223 | Lucent Technologies Inc Secured Proof of Claim in the amount of $799,060 307 68, filed in WVF 1 LLC Case No 01 01452 |
| 409 | 10/15/2001 | 2224 | Lucent Technologies, Inc Secured Proof of Claim in the amount of $799 060 307 68 filed in WVF LU2 LLC Case No 01 01453 |
| 410 | 10/15/2001 | 2225 | Lucent Technologies Inc Secured Proof of Claim in the amount of $138,957,218 90 filed in Winstar Communications, Inc Case No 01 01430 |
| 411 | 10/15/2001 | 2226 | Lucent Technologies, Inc Secured Proof of Claim in the amount of $138,957,218 90, filed in WCI Capital Corp Case No 01 01431 |
| 412 | 10/15/2001 | 2227 | Lucent Technologies Inc Secured Proof of Claim in the amount of $138,957,218 90 filed in Winstar Equipment Corp Case No 01-01432 |
| 413 | 10/15/2001 | 2228 | Lucent Technologies, Inc Secured Proof of Claim in the amount of $138,957 218 90, filed in Winstar Wireless Inc Case No 01-01443 |
| 414 | 10/15/2001 | 2229 | Lucent Technologies Inc Unsecured Proof of Claim in the amount of $1 895 405 548 00 filed in Winstar Equipment II Corp Case No 01 01433 |
| 415 | 10/15/2001 | 2230 | Lucent Technologies Inc Unsecured Proof of Claim in the amount of $1 895 405 548 00 filed in Winstar Credit Corp Case No 01-01434 |
| 416 | 10/15/2001 | 2231 | Lucent Technologies, Inc Unsecured Proof of Claim in the amount of $1 895 405 548 00 filed in Winstar Wireless Fiber Corp Case No 01-01435 |
| 417 | 10/15/2001 | 2232 | Lucent Technologies Inc Unsecured Proof of Claim in the amount of $1, 895,405 548 00, filed in Winstar LMDS LLC Case No 01-01436 |
| 418 | 10/15/2001 | 2233 | Lucent Technologies, Inc Unsecured Proof of Claim in the amount of $1, 895 405 548 00 filed in Winstar New Media Company Inc Case No 01 01437 |
| 419 | 10/15/2001 | 2234 | Lucent Technologies Inc Unsecured Proof of Claim in the amount of $1 895,405 548 00 filed in At Your Office, Inc Case No 01-01438 |
| 420 | 10/15/2001 | 2235 | Lucent Technologies Inc Unsecured Proof of Claim in the amount of $1, 895,405,548 00, filed in Sportsfan Radio Network, Inc Case No 01-01439 |
| 421 | 10/15/2001 | 2236 | Lucent Technologies, Inc Unsecured Proof of Claim in the amount of $1, 895 405 548 00 filed in Winstar Interactive Ventures 1 Inc Case No 01 01440 |
| 422 | 10/15/2001 | 2237 | Lucent Technologies, Inc Unsecured Proof of Claim in the amount of $1, 895,405,548 00 filed in Winstar Interactive Media Sales, Inc Case No 01 01441 |
| 423 | 10/15/2001 | 2238 | Lucent Technologies, Inc Unsecured Proof of Claim in the amount of $1, 895 405 548 00 filed in Office com Inc Case No 01 01442 |
| 424 | 10/15/2001 | 2239 | Lucent Technologies Inc Unsecured Proof of Claim in the amount of $1 895 405 548 00 filed in Winstar Broadband Acquisition 2000, LLC Case No 01 01444 |
| 425 | 10/15/2001 | 2240 | Lucent Technologies, Inc Unsecured Proof of Claim in the amount of $1, 895,405,548 00, filed in Winstar Midcom Acquisition Corp Case No 01-01445 |

EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 426 | 10/15/2001 | 2241 | Lucent Technologies Inc Unsecured Proof of Claim in the amount of $1 895 405,548 00, filed in WWI License Holding, Inc Case No 01 01447 |
| 427 | 10/15/2001 | 2242 | Lucent Technologies, Inc Unsecured Proof of Claim in the amount of $1, 895,405 548 00 filed in Winstar Government Solutions LLC Case No 01-01448 |
| 428 | 10/15/2001 | 2243 | Lucent Technologies, Inc Unsecured Proof of Claim in the amount of $1, 895 405 548 00 filed in WVF CSC1 LLC Case No 01 01449 |
| 429 | 10/15/2001 | 2244 | Lucent Technologies, Inc Unsecured Proof of Claim in the amount of $1, 895 405 548 00 filed in WVF DL 1 LLC Case No 01 01450 |
| 430 | 10/15/2001 | 2245 | Lucent Technologies, Inc Unsecured Proof of Claim in the amount of $1, 895 405 548 00 filed in WVF CPQ1 LLC Case No 01 01451 |
| 431 | 10/15/2001 | 2246 | Lucent Technologies, Inc Unsecured Proof of Claim in the amount of $1 895,405,548 00 filed in Winstar Wireless of Delaware, LLC Case No 01 01454 |
| 432 | 10/15/2001 | 2247 | Lucent Technologies Inc Unsecured Proof of Claim in the amount of $1 895 405 548 00 filed in Winstar Wireless of Georgia LLC Case No 01 01455 |
| 433 | 10/15/2001 | 2248 | Lucent Technologies Inc Unsecured Proof of Claim in the amount of $1, 895 405,548 00, filed in Winstar Wireless of Indiana, LLC Case No 01-01456 |
| 434 | 10/15/2001 | 2249 | Lucent Technologies Inc Unsecured Proof of Claim in the amount of $1, 895,405,548 00 filed in Winstar Wireless of New Jersey LLC Case No 01-01457 |
| 435 | 10/15/2001 | 2250 | Lucent Technologies, Inc Unsecured Proof of Claim in the amount of $1, 895,405,548 00, filed in Winstar Wireless of New York, LLC Case No 01-01458 |
| 436 | 10/15/2001 | 2251 | Lucent Technologies, Inc Unsecured Proof of Claim in the amount of $1 895 405 548 00 filed in Winstar Wireless of Pennsylvania LLC Case No 01 01459 |
| 437 | 10/15/2001 | 2252 | Lucent Technologies Inc Unsecured Proof of Claim in the amount of $1 895 405,548 00 filed in Winstar Wireless of Virginia, LLC Case No 01 01460 |
| 438 | 10/15/2001 | 2253 | Lucent Technologies, Inc Unsecured Proof of Claim in the amount of $1 895 405 548 00 filed in Winstar Wireless of West Virginia LLC Case No 01 01461 |
| 439 | 10/15/2001 | 2254 | Lucent Technologies Inc Unsecured Proof of Claim in the amount of $1, 895,405,548 00, filed in Winstar International Inc Case No 01-01462 |
| 440 | 10/15/2001 | 2255 | Lucent Technologies, Inc Unsecured Proof of Claim in the amount of $957,388 021 50 filed in Winstar Communications Inc Case No 01 01430 |
| 441 | 10/15/2001 | 2256 | Lucent Technologies, Inc Unsecured Proof of Claim in the amount of $957,388,021 50, filed in WCI Capital Corp Case No 01 01431 |
| 442 | 10/15/2001 | 2257 | Lucent Technologies, Inc Unsecured Proof of Claim in the amount of $957 388,021 50 filed in Winstar Equipment Corp Case No 01-01432 |
| 443 | 10/15/2001 | 2258 | Lucent Technologies, Inc Unsecured Proof of Claim in the amount of $957,388,021 50, filed in Winstar Wireless, Inc Case No 01-01443 |

EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 444 | 10/15/2001 | 2259 | Lucent Technologies Inc Unsecured Proof of Claim in the amount of $957 388,021 50 filed in Winstar Network Expansion, LLC Case No 01 01446 |
| 445 | 10/15/2001 | 2260 | Lucent Technologies, Inc Unsecured Proof of Claim in the amount of $957 388 021 50 filed in WVF 1 LLC Case No 01 01452 |
| 446 | 3/131/2003 | 4532 | Lucent Technologies Inc Proof of Claim in the amount of $900 000 000 00 filed in WCI Capital Corp Case No 01 01431 |
| 447 | 3/131/2003 | 4533 | Lucent Technologies Inc Proof of Claim in the amount of $900 000 000 00 filed in WVF 1 LLC Case No 01 01452 |
| 448 | 3/131/2003 | 4534 | Lucent Technologies Inc Proof of Claim in the amount of $900,000,000.00 filed in WVF 1 LLC Case No 01 01452 |
| 449 | 3/131/2003 | 4535 | Lucent Technologies Inc Proof of Claim in the amount of $900,000,000.00, filed in Winstar Network Expansion, LLC Case No 01-01446 |
| 450 | 3/131/2003 | 4536 | Lucent Technologies Inc Proof of Claim in the amount of $900,000 000 00 filed in WVF LU2, LLC Case No 01 01453 |
| 451 | 3/131/2003 | 4537 | Lucent Technologies Inc Proof of Claim in the amount of $900 000 000 00 filed in Winstar Wireless Inc Case No 01-01443 |
| 452 | 3/131/2003 | 4538 | Lucent Technologies Inc Proof of Claim in the amount of $900 000 000 00 filed in Winstar Communications Inc Case No 01 01430 |
| 453 | 3/131/2003 | 4552 | Lucent Technologies, Inc Proof of Claim in the amount of $900 000 000 00, filed in Winstar Communications, Inc Case No 01 01430 |
| 454 | 3/131/2003 | 4453 | Lucent Technologies, Inc Proof of Claim in the amount of $900 000 000 00 filed in WVF-LU2, LLC Case No 01-01453 |
| 455 | 3/131/2003 | 4554 | Lucent Technologies, Inc Proof of Claim in the amount of $900,000,000.00, filed in Winstar Network Expansion, LLC Case No 01 01446 |
| 456 | 3/131/2003 | 4555 | Lucent Technologies, Inc Proof of Claim in the amount of $900 000 000 00 filed in WVF 1 LLC Case No 01 01452 |
| 457 | 3/131/2003 | 4556 | Lucent Technologies Inc Proof of Claim in the amount of $900 000,000 00 filed in WVF-1 LLC Case No 01 01452 |
| 458 | 3/131/2003 | 4557 | Lucent Technologies, Inc Proof of Claim in the amount of $900 000 000 00, filed in Winstar wireless, Inc Case No 01 01443 |
| 459 | 3/131/2003 | 4558 | Lucent Technologies, Inc Proof of Claim in the amount of $900,000,000.00, filed in WCI Capital Corp Case No 01 01431 |

## Joint (JX) Trial Exhibits

| Tab | Date | Exhibit No | Description of Item |
|---|---|---|---|
| 460 | | JX 1 | Nathan Kantor Direct and Cross Testimony from videotaped depositions played at trial |
| 461 | | JX 2 | Lisa Hicks Direct and Cross Testimony from videotaped depositions played at trial |
| 462 | | JX 3 | Bill Zlotnick Direct and Cross Testimony from videotaped depositions played at trial |

RLF1-2986514 1

EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 463 | | JX 4 | Jill Diroma Direct  Cross and Redirect Testimony from videotaped depositions played at trial |
| 464 | | JX 5 | Frederic E  Rubin Direct  Cross and Redirect Testimony from videotaped depositions played at trial |
| 465 | | JX 6 | David W  Ackerman Direct, Cross and Redirect Testimony from videotaped depositions played at trial |
| 466 | | JX 7 | Richard McGinn Direct, Cross and Redirect Testimony from videotaped depositions played at trial |
| 467 | | JX 8 | William J  Rouhana Direct and Cross Testimony from videotaped depositions played at trial |
| 468 | | JX 9 | Michael Montemarano Direct and Cross Testimony from videotaped depositions played at trial |
| 469 | | JX 10 | Deborah Hopkins Direct and Cross Testimony from videotaped depositions played at trial |
| 470 | | JX 11 | Gary P  Simpson Direct and Cross Testimony from videotaped depositions played at trial |
| 471 | | JX 12 | William Fullerton Direct and Cross Testimony from videotaped depositions played at trial |
| 472 | | JX 13 | Richard J  Uhl Direct and Cross Testimony from videotaped depositions played at trial |
| 473 | | JX 14 | Henry B  Schacht Direct and Cross Testimony from videotaped depositions played at trial |
| 474 | | JX 15 | Kevin Monaco Direct and Cross Testimony from videotaped depositions played at trial |
| 475 | | JX 16 | Gary Goldman Direct and Cross Testimony from videotaped depositions played at trial |
| 476 | | JX 17 | Kevin Holwell Direct and Cross Testimony from videotaped depositions played at trial |
| 477 | | JX 18 | William Plunket Transcript of videotaped deposition played at trial |
| 478 | | JX 19 | Deborah Harris Transcript of deposition  with exhibits |

## Defendant (DX) Trial Exhibits

| Tab | Date | Exhibit No | Description of Item |
|---|---|---|---|
| 479 | | DX 1 | Invoices |
| 480 | 6/23/2000 | DX 2 | Notice of Request for Borrowing (Draw Request) |
| 481 | 7/24/2000 | DX 3 | Notice of Request for Borrowing (Draw Request) |
| 482 | 8/24/2000 | DX 4 | Notice of Request for Borrowing (Draw Request) |
| 483 | 9/22/2000 | DX 5 | Notice of Request for Borrowing (Draw Request) |
| 484 | 10/20/2000 | DX 6 | Notice of Request for Borrowing (Draw Request) |
| 485 | 11/30/2000 | DX 7 | Notice of Request for Borrowing (Draw Request) |
| 486 | 12/22/2000 | DX 8 | Notice of Request for Borrowing (Draw Request) |
| 487 | 12/29/2000 | DX 9 | Notice of Request for Borrowing (Draw Request) |
| 488 | 1/26/2001 | DX 10 | Notice of Request for Borrowing (Draw Request) |
| 489 | 2/23/2001 | DX 11 | Notice of Request for Borrowing (Draw Request) |
| 490 | 6/25/1999 | DX 12 | DELETED |
| 491 | 6/30/1999 | DX 13 | DELETED |
| 492 | 3/20/2000 | DX 14 | ESP Contract Revenue Backlog |

RLF1 2986514-1

# EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 493 | 6/30/2000 | DX 15 | DELETED |
|---|---|---|---|
| 494 | 7/6/2000 | DX 16 | DELETED |
| 495 | 8/29/2000 | DX 17 | DELETED |
| 496 | 9/30/1999 | DX 18 | DELETED |
| 497 | 10/18/2000 | DX 19 | DELETED |
| 498 | 10/31/2000 | DX 20 | DELETED |
| 499 | 11/2/2000 | DX 21 | Letter to R McGuire RE Vocall |
| 500 | 12/4/2000 | DX 22 | DELETED |
| 501 | 12/21/2001 | DX 23 | DELETED |
| 502 | 12/21/2000 | DX 24 | DELETED |
| 503 | 12/21/2000 | DX 25 | DELETED |
| 504 | 1/9/2001 | DX 26 | Relationship Overview |
| 505 | 1/18/2001 | DX 27 | DELETED |
| 506 | 10/21/1998 | DX 28 | Supply Agreement By and Between Winstar Communications Inc and Lucent Technologies Ii c |
| 507 | 5/4/2000 | DX 29 | Credit Agreement |
| 508 | 6/23/2000 | DX 30 | Credit Agreement |
| 509 | 8/1/1999 | DX 31 | Master Service Agreement Between Lucent Technologies Inc and Winstar Wireless Inc |
| 510 | 5/9/2000 | DX 32 | Security Agreement |
| 511 | 12/22/2000 | DX 33 | Security Agreement |
| 512 | 6/20/2000 | DX 34 | Borrowing Request |
| 513 | 5/4/2000 | DX 35 | Credit Agreement |
| 514 | 12/22/2000 | DX 36 | Cash Account Security Agreement |
| 515 | 5/23/2000 | DX 37 | Equipment User Agreement |
| 516 | 5/9/2000 | DX 38 | DELETED |
| 517 | 6/23/2000 | DX 39 | B Nedzi Letter RE Investment Intermediary Acknowledgment |
| 518 | 6/23/2000 | DX 40 | B Nedzi Letter RE Disbursing Bank Acknowledgment |
| 519 | 12/22/2000 | DX 41 | B Nedzi Letter RE Investment Intermediary Acknowledgment |
| 520 | 12/22/2000 | DX 42 | B Nedzi Letter RE Disbursing Bank Acknowledgment |
| 521 | 5/9/2000 | DX 43 | Pledge Agreement |
| 522 | 10/15/2001 | DX 44 | Secured Proof of Claim   United States Bakruptcy Court District of Delaware $138 957 218 90 |
| 523 | 10/15/2001 | DX 45 | Unsecured Proof of Claim   United States Bakruptcy Court District of Delaware - $259,648 81 |
| 524 | 10/15/2001 | DX 46 | Secured Proof of Claim   United States Bakruptcy Court District of Delaware $799 060 307 68 |
| 525 | 3/31/2003 | DX 47 | Proof of Claim - United States Bankruptcy Court District of Delaware $900,000,000 00 |
| 526 | 1/26/2001 | DX 48 | Notice of Request for Borrowing (Draw Request) |
| 527 | 1/29/2001 | DX 49 | M Montemarano e mail to P Derrick G Caviness, D Hopkins, et al re Winstar drawdown request |
| 528 | 2/23/2001 | DX 50 | Notice of Request for Borrowing (Draw Request) |
| 529 | 3/30/2001 | DX 51 | G Goldman e mail to G Manloney, R Uhl, K Monaco, et al re Credit Agreement |
| 530 | 4/12/2001 | DX 52 | G Goldman e mail to R Uhl re Credit Agreement |
| 531 | 3/26/2001 | DX 53 | Notes to Consolidated Financial Statements |
| 532 | 10/4/2000 | DX 54 | F Rubin e mail to R Uhl re Capital Spend 2000 and 2001 |
| 533 | 12/11/2000 | DX 55 | D Ackerman e mail to J Verding re EO3Q Deal and Follow ups |
| 534 | 12/10/2000 | DX 56 | B Zlotnick e mail to F Rubin re Capex |
| 535 | 12/21/2000 | DX 57 | D Ackerman e mail to B Zlotnick re Cap Ex |
| 536 | 12/29/2000 | DX 58 | D Ackerman e mail to F Jules, R Uhl and N Kantor re 2000 Capex |
| 537 | 1/9/2001 | DX 59 | O Simpson e mail to B Zlotnick re Lucent Optronics |

27

# EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 538 | 1/16/2001 | DX 60 | G Simpson e mail to B Zlotnick F Rubin D Huber and D Ackerman re Data Circuits |
|---|---|---|---|
| 539 | 1/18/2001 | DX 61 | F Jules e mail to R Uhl re Data Circuits |
| 540 | 3/23/2001 | DX 62 | P Cummings e mail to G Goldman re Q4 2000 Financial Covenant |
| 541 | 3/30/2001 | DX 63 | DELETED |
| 542 | 4/9/2001 | DX 64 | P Cummings and C Craig memo to R Bambach and G Maloney re Annual Audit - Significant Open Items |
| 543 | 4/12/2001 | DX 65 | G Illiano e mail to G Goldman J Desmond M Cooperman and P Cummings re Dow Jones Newswire In the Money, A D Day of Sorts Approaches Winstar |
| 544 | 2/13/2001 | DX 66 | P Cummings memo to the files re Meeting with Client Representatives to Discuss Issues Identified to Date |
| 545 | 2/14/2001 | DX 67 | DELETED |
| 546 | 2/15/2001 | DX 68 | Audit as of and for the Year Ended December 31 2000 Agenda for Discussion with Bill Rouhana |
| 547 | 2/26/2001 | DX 69 | P Cummings e mail to G Goldman re Debt Covenant Compliance |
| 548 | 10/9/2000 | DX 70 | S Clement e mail to D Ackerman re Action Items to Manage 200 Capital Spend |
| 549 | 10/12/2000 | DX 71 | D Ackerman e mail to F Jules R Uhl and N Kantor re Change in Plan on 2000 CapEx Budget |
| 550 | 3/30/2004 | DX 72A | Salomon Report |
| 551 | | DX 73 | D Harris letter to R Uhl re finance organization |
| 552 | | DX 74 | Key Agreements reached/equipment (Presentation) |
| 553 | | DX 75 | IRS Revenue Ruling 59 60 (Collins Report document) |
| 554 | | DX 76 | DELETED |
| 555 | | DX 77 | 2Q Lucent (spread sheet) |
| 556 | | DX 78 | L Rogers E mail to J Orlando, W Viqueira, N Aversano, J Cocito RE WinStar |
| 557 | | DX 79 | Memo- Winstar/Lucent Optical Network Long Haul Program Executive Summary |
| 558 | | DX 80 | Executive Summary |
| 559 | | DX 81 | Winstar Refinance Notice Chart |
| 560 | | DX 82 | Hub and B site pricing element of the 9/2000 end of quarter deal |
| 561 | | DX 83 | Fiscal Q3 2000 EOQ Deal |
| 562 | | DX 84 | Lucent/Winstar End of Quarter Deals Fiscal Year 2000 |
| 563 | | DX 85 | lucent project list (spread sheet) |
| 564 | 1/26/1998 | DX 86 | Lucent Technologies delivers record breaking optical networking capacity five times greater than current systems AT&T is first customer to deploy |
| 565 | 10/2/1998 | DX 87 | winstar/lucent partnership concept |
| 566 | 10/3/1998 | DX 88 | N Kantor E Mail to N Aversano RE WInstar Partnership Concept |
| 567 | 10/6/1998 | DX 89 | W Rouhana E mail to N Kantor RE Lucent ideas |
| 568 | 10/2/1998 | DX 90 | Winstar/Lucent Partnership Concept |
| 569 | 10/13/1998 | DX 91 | D Miller Memo to J Vardell A Norris L Rogers P Hayes, M Keefe RE Credit Agreement |
| 570 | 10/19/1998 | DX 92 | Memo re October 21, 1998 board meeting |
| 571 | 10/19/1998 | DX 93 | N Aversano and M Walsh letter to R McGinn re proposed winstar Agreement |
| 572 | 10/19/1998 | DX 94 | W Rouhana E-Mail to N Kantor W Rouhana, G Holmes C Dickson RE Updated Materials |
| 573 | 10/21/1998 | DX 95 | Minutes of a Special Meeting of the Board of Directors of Winstar Communications, Inc |
| 574 | 4/22/2000 | DX 96 | Credit Agreement |
| 575 | 10/22/1998 | DX 97 | C Holmes Transcript to D Briggs re Daniel Briggs |
| 576 | 11/17/1998 | DX 98 | C Dickson e mail to N Kantor, B Rouhana, T Graham re Lucent Conference Call-November 16, 1998 |

EXHIBIT A

**APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
BE INCLUDED IN THE RECORD ON APPEAL**

| 577 | 11/20/1998 | DX 99 | R Haffar E Mail to C Bohlin RE Network Engineering/Traffic Engineering Transition Plan |
|---|---|---|---|
| 578 | 11/24/1998 | DX 100 | notice for request for borrowing (Draw Request) |
| 579 | 12/3/1998 | DX 101 | J Dwyer E Mail to C Dickson RE Lucent Accounting Treatment |
| 580 | 12/3/1998 | DX 102 | D Ackerman E Mail to R Haffar C Dickson T Graham, F Rubin J Dwyer R Schorr N Kantor T Voreas S Whitney RE Lucent Discussion |
| 581 | 12/5/1998 | DX 103 | W Rouhana e mail to N Kantor re Lucent |
| 582 | 12/14/1998 | DX 104 | R Haffar e mail to C Bohlin re lucent architecture teams |
| 583 | 12/14/1998 | DX 105 | Transition Plan for Lucent Resource Integration |
| 584 | 12/21/1998 | DX 106 | DELETED |
| 585 | 12/23/1998 | DX 107 | notice of request for borrowing (Draw Request) |
| 586 | 12/23/1998 | DX 108 | Staff Meeting Notes and Presentation |
| 587 | 12/24/1998 | DX 109 | A Zendle E-Mail to R Lewine J Gregg RE Lucent Transition Planning |
| 588 | 12/24/1998 | DX 110 | A Zendle E-Mail with Attachment to R Lewine, J Gregg RE Lucent Transition Planning |
| 589 | 12/29/1998 | DX 111 | N Aversano e mail to N Kantor re Winstar/Lucent Opportunity Assessment |
| 590 | 12/23/1998 | DX 112 | notice of request for borrowing (Draw Request) |
| 591 | 12/31/1998 | DX 113 | R Lewine e mail to azendle@winstar com re transition plan for Lucent resource integration |
| 592 | 12/31/1998 | DX 114 | R Lewine e mail to J Burton forwarding Transition Plan for Lucent Resource Integration |
| 593 | 12/31/1998 | DX 115 | Transition Plan for Lucent Resource Integration |
| 594 | 12/31/1998 | DX 116 | Winstar Form 10-K |
| 595 | 1/4/1999 | DX 117 | M Wilson letter to R Haffar re Agreement for network build out services |
| 596 | 1/4/1999 | DX 118 | M Wilson Letter to R Haffar RE additional services to WinStar |
| 597 | 1/4/1999 | DX 119 | azendle@winstar com e mail to rhaffar@mail winstar com re transition plan for lucent resource integration |
| 598 | 1/5/1999 | DX 120 | DELETED |
| 599 | 1/14/1999 | DX 121 | B Lewine e-mail to A Zendle re transition plan for Lucent resource integration |
| 600 | 1/19/1999 | DX 122 | Partnership to build winstar's 1999 network (Presentation) |
| 601 | 1/20/1999 | DX 123 | R Haffar E-Mail to A Zendle RE Lucent Transition Plan |
| 602 | 1/27/1999 | DX 124 | Partnering to Build Winstar's 1999 Network Follow up Discussion Winstar Network Services January 27 1999 |
| 603 | 1/28/1999 | DX 125 | J Dwyer E Mail to B Rouhana N Kantor C Dickson RE Lucent Accounting - Good News! |
| 604 | 2/2/1999 | DX 126 | Proposed Winstar Architecture Content Breakdown of 1999 Build Budget |
| 605 | 2/19/1999 | DX 127 | Notice of Request for Borrowing (Draw Request) |
| 606 | 3/1/1999 | DX 128 | C Bohlin E Mail to K Earle J Dwyer RE Lucent 4Q98 Teleconference |
| 607 | 3/2/1999 | DX 129 | Proposed Winstar Architecture Content Breakdown of 1999 Build Budget (spread sheet) |
| 608 | 3/5/1999 | DX 130 | C Naylor E Mail to L Rogers RE WinStar documents |
| 609 | 3/9/1999 | DX 131 | R Haffar E Mail to N Kantor RE Update Re Your meeting with Nina |
| 610 | 3/9/1999 | DX 132 | ATM Pricing and Discount Terms for WinStar Communications Inc |
| 611 | 3/22/1999 | DX 133 | Notice of Request for Borrowing (Draw Request) |
| 612 | 3/23/1999 | DX 134 | R Haffar E mail to F Rubin J Dwyer, R Schorr RE Update on Financing issues |
| 613 | 3/25/1999 | DX 135 | B McGuire E Mail to N Kantor RE project 100 status |
| 614 | 3/26/1999 | DX 136 | R Haffar E-mail to F Rubin RE WinStar Pass Throughs 1st Draft |
| 615 | 3/26/1999 | DX 137 | P Hayes e mail to C Naylor re Winstar |
| 616 | 3/27/1999 | DX 138 | R Haffar E Mail to N Kantor RE Lucent Update, No Action Necessary |
| 617 | 3/29/1999 | DX 139 | R Haffar Letter to M Wilson RE products and services |
| 618 | 3/29/1999 | DX 140 | R Haffar Letter to M Wilson RE Supply Agreement |
| 619 | 3/29/1999 | DX 141 | R Haffar e mail to L Hicks re Lucent issues |
| 620 | 3/30/1999 | DX 142 | M Wilson letter to R Haffar re supply Agreement |

EXHIBIT A

APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
BE INCLUDED IN THE RECORD ON APPEAL

| 621 | 3/31/1999 | DX 143 | M Wilson letter to R Haffar re Agreement for network build out |
| 622 | 3/31/1999 | DX 144 | D Ackerman e mail to J Everding re Lucent PO |
| 623 | 3/31/1999 | DX 145 | addendum to the supply Agreement between winstar and lucent |
| 624 | 3/31/1999 | DX 146 | M Wilson e mail to R Haffar re Agreement for Network Build out |
| 625 | 4/1/1999 | DX 147 | R Haffar E Mail to N Kantor N Aversano W Plunkett RE Thanks |
| 626 | 4/5/1999 | DX 148 | C Dickson E Mail to F Rubin RE Lucent PO |
| 627 | 4/9/1999 | DX 149 | C Dickson E Mail to N Kantor RE LU Financing Issues with New PO |
| 628 | 4/29/1999 | DX 150 | notice of request for borrowing (Draw Request) |
| 629 | 5/11/1999 | DX 151 | Winstar Credit Agreement |
| 630 | 6/1/1999 | DX 152 | amendment to the supply Agreement by and between winstar communications and lucent |
| 631 | 4/29/1999 | DX 153 | notice of request for borrowing (Draw Request) |
| 632 | 6/4/1999 | DX 154 | J Dwyer E mail to R Haffar RE Lucent Subcontracting Notice |
| 633 | 6/8/1999 | DX 155 | L Rogers E mail to F Rubin RE Escalation to Nina re WinStar Services Pass Through |
| 634 | 6/21/1999 | DX 156 | F Rubin e mail to D Nidowicz re Lucent payments |
| 635 | 6/24/1999 | DX 157 | J Davidson E Mail to J Diroma RE Winstar Services |
| 636 | 6/25/1999 | DX 158 | W Carapezzi e mail to L Rogers re Winstar Update/Rouhana McGinnl Telephone Call |
| 637 | 6/28/1999 | DX 159 | DELETED |
| 638 | 6/23/1999 | DX 160 | notice of request for borrowing (Draw Request) |
| 639 | 6/29/1999 | DX 161 | notice of request for borrowing (Draw Request) |
| 640 | 7/7/1999 | DX 162 | R Haffar E Mail to N Kantor RE Follow-Up to Saturday's call |
| 641 | 7/14/1999 | DX 163 | N Kantor e mail to cdickson@winstar com F Rubin J Dwyer re responses to your request |
| 642 | 7/26/1999 | DX 164 | Summary of Lucent Meeting |
| 643 | 7/27/1999 | DX 165 | Organizing for Success Executive Review |
| 644 | 8/3/1999 | DX 166 | Winstar/Lucent turn-key process meeting |
| 645 | 7/22/1999 | DX 167 | Notice of Request for Borrowing (Draw Request) |
| 646 | 8/5/1999 | DX 168 | M Wilson e-mail to jdwyer@winstar com, frubin@winstar com etc re Turnkey order approach |
| 647 | 8/23/1997 | DX 169 | H Shartel E mail to C Dickson RE Lucent/B Site Cab's |
| 648 | 8/24/1999 | DX 170 | K Castellon e mail to T O'Hara re turnkey business model |
| 649 | 8/24/1999 | DX 171 | Notice of Request for Borrowing (Draw Request) |
| 650 | 9/8/1999 | DX 172 | J Kim E Mail to Winstar Employees RE Executive Memo WNS Organization |
| 651 | 9/14/1999 | DX 173 | D Ackerman e mail to N Kantor re apologies |
| 652 | 9/18/1999 | DX 174 | B Zlotnick e mail to D Ackerman re critical path items - require immediate action |
| 653 | 9/21/1999 | DX 175 | Statement and Invoice totalling $37,075,925 |
| 654 | 9/22/1999 | DX 176 | B Zlotnick E mail to N Kantor RE Williams 9/30 Date |
| 655 | 9/22/1999 | DX 177 | Notice of Request for Borrowing (Draw Request) |
| 656 | 9/24/1999 | DX 178 | S Lidd e mail to J Dwyer re Lucent and Williams flow |
| 657 | 9/26/1999 | DX 179 | J Dwyer E mail to S Lidd, J Dwyer, M Viscio RE Lucent and Williams flow |
| 658 | 9/29/1999 | DX 180 | L Rogers E mail to F Rubin RE Availability under Lucent commitment |
| 659 | 8/24/1999 | DX 181 | Notice of Request for Borrowing (Draw Request) |
| 660 | 10/12/1999 | DX 182 | D Ackerman E Mail to D Huber RE Winstar NMS Hardware Platform Quotes |
| 661 | 11/3/1999 | DX 183 | D Ackerman E mail to A Zendle RE more thoughts about cisco |
| 662 | 11/16/1999 | DX 184 | D Christian E Mail to S Lidd F Rubin RE wire status |
| 663 | 11/19/1999 | DX 185 | C Naylor Letter to D Ackerman RE turnkey deliverables |
| 664 | 11/22/1999 | DX 186 | N Kantor E mail to F Rubin RE LU Assistance |
| 665 | 11/22/1999 | DX 187 | D Digirolomo e-mail to F Manzi re winstar yr 2000 spend meeting |
| 666 | 11/23/1999 | DX 188 | Notice of Request for Borrowing (Draw Request) |
| 667 | 11/30/1999 | DX 189 | Notice of Request for Borrowing (Draw Request) |

RLF1 2986514 1

EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 668 | 11/30/1999 | DX 190 | M Dowdy e mail to M Epstein T O Hara K Black re transition plan for lucent resource integration |
|---|---|---|---|
| 669 | 12/6/1999 | DX 191 | C Czemer e mail to D Ackerman re Willams Discussions |
| 670 | 12/3/1999 | DX 192 | Notice of Request for Borrowing (Draw Request) |
| 671 | 12/7/1999 | DX 193 | C Naylor e mail to M Hill T Crocco B Zlotnick D Huber et al re Turnkey meeting on 12/09/99 |
| 672 | 12/13/1999 | DX 194 | Amendment No 7 to the Credit Agreement |
| 673 | 12/14/1999 | DX 195 | B Genner e mail to L Hicks re Turnkey update w/o 12/06/99 |
| 674 | 12/15/1999 | DX 196 | E mail message re Executive Memo and Press Release Winstar Enters into $900 Million Investment Agreement with Microsoft and Leading Investment Firms Microsoft and Winstar Announce Agreement to Deliver Broadband Applications |
| 675 | 12/15/1999 | DX 197 | E-mail message re Press Release - Winstar enters into $900 Million Investment Agreement with Microsoft and Leading Investment Firms |
| 676 | 12/17/1999 | DX 198 | L Hicks e mail to V Petrini re 4Q 99 request |
| 677 | 12/17/1999 | DX 199 | S Howard e mail to E Baggerly re 3rd party orders Lucent |
| 678 | 12/17/1999 | DX 200 | D Ackerman e mail to M Wilson re phone system for ICI will not be deployed by Lucent |
| 679 | 12/17/1999 | DX 201 | M Wilson e mail to D Ackerman re phone system for ICI will not be deployed by Lucent |
| 680 | 12/25/1999 | DX 202 | N Kantor e mail to N Aversano re incremental order |
| 681 | 12/27/1999 | DX 203 | Notice of Request for Borrowing (Draw Request) |
| 682 | 12/27/1999 | DX 204 | Notice of Request for Borrowing (Draw Request) |
| 683 | 12/27/1999 | DX 205 | Notice of Request for Borrowing (Draw Request) |
| 684 | 12/29/1999 | DX 206 | I Marnell E Mail to T O Hara RE Agreement Required to support the Winstar Proposal |
| 685 | 12/29/1999 | DX 207 | D Ackerman E-Mail to R Uhl RE Credit |
| 686 | 12/29/1999 | DX 208 | J Dwyer E mail to M Wilson, J Dwyer, D Ackerman |
| 687 | 12/30/1999 | DX 209 | A. Zendle Letter to C Naylor RE shipment of Optical networking equipment |
| 688 | 12/30/1999 | DX 210 | M Wilson letter to D Ackerman re Network costs |
| 689 | 12/31/1999 | DX 211 | Winstar Form 10 K |
| 690 | 1/4/2000 | DX 212 | A Carrone e mail to M Lester A Jerden R Lepore etc re winstar |
| 691 | 1/6/2000 | DX 213 | Lucent Technologies comments on expectations for first fiscal quarter 2000 earnings |
| 692 | 1/18/2000 | DX 214 | C Naylor E Mail to M Wilson M Epstein M Dowdy J Quinn A Jerden A Carrone J Diroma RE Winstar Services |
| 693 | 1/18/2000 | DX 215 | J Diroma e mail to C Naylor, M Wilson, M Epstien etc re winstar service |
| 694 | 1/21/2000 | DX 216 | J Diroma e mail to M Deady re Winstar Budget |
| 695 | 1/24/2000 | DX 217 | Notice of Request for Borrowing (Draw Request) |
| 696 | 1/24/2000 | DX 218 | J Gregg e mail to J Gregg, R Kipke and B Zlotnick re problems with LH milestones PDF file |
| 697 | 1/26/2001 | DX 219 | Notice of Request for Borrowing (Draw Request) |
| 698 | 2/6/2000 | DX 220 | J Noda E Mail to S Cassady, F Manzi RE WinStar 4Q99 Funds Transfer PO |
| 699 | 2/7/2000 | DX 221 | J Cocito E Mail to F Manzi RE Winstar Services Deal |
| 700 | 2/8/2000 | DX 222 | D Ackeman E-mail to A Zendle RE Lucent |
| 701 | 2/9/2000 | DX 223 | J Diroma E Mail to M Wilson, M Epstein, M Dowdy, J Quinn A Jerden, A Carrone C Naylor RE Winstar Services |
| 702 | 2/11/2000 | DX 224 | S Colross e-mail to L Rogers and W Quinn re winstar and my career limiting move |
| 703 | 2/14/2000 | DX 225 | C Naylor e mail to J Diroma, J Cocito and D Rigotti re update 2FW winstar services |
| 704 | 2/17/2000 | DX 226 | J Dwyer e-mail to R Uhl and F Rubin re lucent |
| 705 | 12/1/1998 | DX 227 | First amendment to the supply Agreement by and between winstar communications and lucent |

EXHIBIT A

APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
BE INCLUDED IN THE RECORD ON APPEAL

| 706 | 3/1/2000 | DX 228 | DELETED |
|---|---|---|---|
| 707 | 2/28/2000 | DX 229 | DELETED |
| 708 | 2/22/2000 | DX 230 | Notice of Request for Borrowing (Draw Request) |
| 709 | 3/2/2000 | DX 231 | V Campbell E mail to L Hicks RE Meeting 3/6 3PM-4PM re End of Qtr Reciprocal Deal |
| 710 | 3/2/2000 | DX 232 | B Zlotnichk e mail to D Ackerman re Williams fiber |
| 711 | 3/3/2000 | DX 233 | J Bryce e mail to A Zendle re history made at today at Winstar |
| 712 | 3/8/2000 | DX 234 | A Zendle e mail to L Hicks re D Ackerman's 03/07/00 meeting with Lucent |
| 713 | | | INTENTIONALLY LEFT BLANK |
| 714 | 3/8/2000 | DX 235 | A Zendle E Mail to L Hicks RE Lucent |
| 715 | 3/9/2000 | DX 236 | F Rubin Fax to M Keefe RE Latest Lucent term sheet draft of 3/7/00 |
| 716 | 3/9/2000 | DX 237 | J Dwyer E Mail to N Kantor RE Lucent Subcontracting |
| 717 | 3/10/2000 | DX 238 | J Dwyer E Mail to G Simpson re Lucent PO |
| 718 | 3/13/2000 | DX 239 | D Nidowicz E Mail to D Christian RE Winstar Services |
| 719 | 3/13/2000 | DX 240 | B Pakenham E Mail to D Christian RE Winstar |
| 720 | 3/14/2000 | DX 241 | R Uhl e mail to F Rubin re Lucent Term Sheet Update |
| 721 | 3/15/2000 | DX 242 | G Simpson e mail to J Dwyer re Q1 2000 Lucent PO Estimate |
| 722 | 3/17/2000 | DX 243 | D Danielsen e mail to L Hicks re DWDM Maintenance Routes |
| 723 | 3/20/2000 | DX 244 | J Lusk Letter to F Rubin RE Vendor Financing Commitment |
| 724 | 3/20/2000 | DX 245 | B Mcguire e mail to J Dwyer re sale of license right to use |
| 725 | 3/21/2000 | DX 246 | B Zlotnick Letter to A Zendle RE FOR YOUR DECISION |
| 726 | 3/22/2000 | DX 247 | D Ackerman E mail to A Zendle |
| 727 | 3/22/2000 | DX 248 | D Ackerman e mail to N Kantor re Meeting with Mark Wilson |
| 728 | 3/24/2000 | DX 249 | N Aversano e mail to N Kantor re Agreements |
| 729 | 3/28/2000 | DX 250 | Purchase Order |
| 730 | 3/28/2000 | DX 251 | D Ackerman E Mail to A Zendle RE Additional Services Addendum |
| 731 | 3/28/2000 | DX 252 | M Wilson E-Mail to D Ackerman RE Follow up to yesterday's discussion |
| 732 | 3/28/2000 | DX 253 | S Dodd e mail to L Hicks re ASM quote |
| 733 | 3/29/2000 | DX 254 | R Bambach E-Mail to S Lidd RE wamlnet warehouse |
| 734 | 3/29/2000 | DX 255 | M Wilson Letter to D Ackerman RE timeline |
| 735 | 3/29/2000 | DX 256 | M Keefe e mail to K Zinghini re requested waivers |
| 736 | 3/29/2000 | DX 257 | D Ackerman email to C Naylor re Features Deliverables - Penalties |
| 737 | 3/30/2000 | DX 258 | J Dwyer E Mail to M Wilson RE Credit |
| 738 | 3/30/2000 | DX 259 | L Grayson E mail to A Zendle RE Updated Contractual Documentation |
| 739 | 3/30/2000 | DX 260 | T Monzi e mail to M Wilson re resale of winstar asset purchase |
| 740 | 3/31/2000 | DX 261 | M Wilson Fax to D Ackerman RE additional $3 000 000 in network costs |
| 741 | 3/27/2000 | DX 262 | Notice of Request for Borrowing (Draw Request) |
| 742 | 3/29/2000 | DX 263 | Notice of Request for Borrowing (Draw Request) |
| 743 | 3/31/2000 | DX 264 | C Naylor E mail to J Vickers, K Richardson RE Winstar Credit Letter |
| 744 | 3/31/2000 | DX 265 | A Zendle Letter to C Naylor RE Optical Network delivery |
| 745 | 3/31/2000 | DX 266 | C Naylor E Mail to L Hicks RE incremental costs for lack of end to-end provisioning |
| 746 | 3/31/2000 | DX 267 | A Fulton e mail to C Levasseur, R Conway, F Robeson C Williams et al re 2Q00 upgrade revenue from Winstar |
| 747 | 3/31/2000 | DX 268 | M Wilson letter to D Ackerman re networks costs |
| 748 | 3/31/2000 | DX 269 | L Zapico e mail to J Diroma re approvals needed on another POA for a second winstar funds transfer for this 1000 |
| 749 | 3/31/2000 | DX 270 | Winstar Form 10 Q |
| 750 | 4/3/2000 | DX 271 | R Levine E-Mail to B Zlotnick RE George's Reply |
| 751 | 4/5/2000 | DX 272 | E Mail with Attachment to N Holcomb RE Siemens Accelerated Proposal |
| 752 | 4/6/2000 | DX 273 | W Fullerton e mail to J Diroma re resale of winstar asset purchase |
| 753 | 4/6/2000 | DX 274 | J Quinn e mail to J Diroma re rationale for lucent/winstar quarterly funds transfers for network buildout services |
| 754 | 4/11/2000 | DX 275 | D Ackerman e mail to A Zendle re Siemens Accelerated Proposal |

32

EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 755 | 4/14/2000 | DX 276 | F Rubin E mail to K Zinghini D Nidowicz RE Lucent |
|---|---|---|---|
| 756 | 3/29/2000 | DX 277 | Notice of Request for Borrowing (Draw Request) |
| 757 | 4/27/2000 | DX 278 | S Colross e-mail to J Cocito re winstar |
| 758 | 4/27/2000 | DX 279 | Audix Message from J Cocito to N Aversano re financing stumbling block |
| 759 | 5/2/2000 | DX 280 | L Hicks E Mail to F Rubin RE Siemens meeting/questions |
| 760 | 5/2/2000 | DX 281 | K Monaco E Mail to S Colross |
| 761 | 5/2/2000 | DX 282 | B Perricone and J Kerstone memo to P Sperling J Orlando and B Viqueira re Winstar Communication |
| 762 | 5/2/2000 | DX 283 | Winstar Outstanding New Facility WVF 1 |
| 763 | 5/4/2000 | DX 284 | revolving credit and term loan Agreement |
| 764 | 5/4/2000 | DX 285 | Winstar WVF 1 |
| 765 | 5/9/2000 | DX 286 | F Rubin letter to E Perricone re thank you note for help on transaction |
| 766 | 5/12/2000 | DX 287 | L Grayson E mail to A Zendie RE Siemens Update |
| 767 | 5/15/2000 | DX 288 | N Kantor E-mail to D Ackerman RE Siemens |
| 768 | 5/15/2000 | DX 289 | B Rouhana and N Kantor E mail to Winstar Employees RE Executive Memo Winstar Completes Strategic Refinancing |
| 769 | 5/16/2000 | DX 290 | K Monaco E Mail to R Uhl & Siemens Financing Update |
| 770 | 5/17/2000 | DX 291 | M Burke letter to N Aversano re Friday gap closure call |
| 771 | 5/17/2000 | DX 292 | L Rogers e-mail to S Colross re Winstar Financing Facility |
| 772 | 5/18/2000 | DX 293 | K Monaco e mail to S Kasera RE Side Letter Agreement to our Supply Agreement |
| 773 | 5/22/2000 | DX 294 | S Kasera E mail to F Boyer RE Financing Structure |
| 774 | 5/23/2000 | DX 295 | L Rogers e mail to V Petrini, D Forrester, M Epstein T O Hara, et al re Winstar Financing  Update |
| 775 | 5/23/2000 | DX 296 | Perfection Certificate |
| 776 | 5/24/2000 | DX 297 | M Deady e mail to J Diroma re Winstar Financing update |
| 777 | 5/30/2000 | DX 298 | D Ackerman E Mail to R Uhl N Kantor RE Operational Strategy |
| 778 | 6/1/2000 | DX 299 | L Rogers e-mail to D Hopkins attaching 05/31/00 Winstar briefing memorandum |
| 779 | 6/1/2000 | DX 300 | A Alfred e mail to L Rogers and E Perricone re Winstar Summary xls |
| 780 | 6/12/2000 | DX 301 | D Danielson e mail to L Hicks re mark-up EOQ items |
| 781 | 6/13/2000 | DX 302 | E Perricone E mail to L Rogers W Viqueira J Cocito RE WFV I LLC First Draw Down Request |
| 782 | 6/14/2000 | DX 303 | K Monaco E Mail to F Rubin RE LU Update |
| 783 | 6/14/2000 | DX 304 | D Ackerman e mail to L Hicks re Turnkey Hub/B Cost Reduction |
| 784 | 6/14/2000 | DX 305 | J Dwyer E Mail to F Rubin RE Checks |
| 785 | 6/17/2000 | DX 306 | R Lewine e mail to D Rigotti, W Plunkett, V Petrini ect Re winstar hubs and its pricing with some clarifications |
| 786 | 6/19/2000 | DX 307 | K Castellon e mail to M Wilson K O'Grady W Plunkett F Monzi re Remember the IRU s |
| 787 | 6/22/2000 | DX 308 | L Hicks e mail to B Genner G Thomas re jeopardy on stingers for converged access network |
| 788 | 6/23/2000 | DX 309 | Notice of Request for Borrowing (Draw Request) |
| 789 | 6/23/2000 | DX 310 | F Rubin e mail to E Perricone L Rogers and S Colross re Sale of Lucent s Winstar Paper |
| 790 | 6/23/2000 | DX 311 | D Ackerman e mail to N Kantor re Lucent money |
| 791 | 6/23/2000 | DX 312 | C Naylor e mail to D Harris re b site pricing for winstar |
| 792 | 6/23/2000 | DX 313 | parks  Lucent e mail to W Plunkett re A 1 winstar EOQ deal |
| 793 | 6/23/2000 | DX 314 | C Naylor e mail to W Plunkett and R Helfrich re A 1 Winstar EOQ Deal |
| 794 | 6/23/2000 | DX 315 | D Danielsen e mail to L Hicks re SNC/SNMS Exper User/Operations Services SOW |
| 795 | 6/23/2000 | DX 316 | N Kantor e mail to D Ackerman re VoDSL Media Report |
| 796 | 6/26/2000 | DX 317 | D Ackerman e mail to N Kantor re end of quarter deals with lucent and winstar |

33

EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 797 | 6/26/2000 | DX 318 | T Feil e mail to V Heron N Aversano et al re Material lists to support ONG end of quarter deal for Winstar |
| 798 | 6/26/2000 | DX 319 | G Hogue e mail to L Hicks re SNC/SNMS Exper User/Operations Services SOW |
| 799 | 6/26/2000 | DX 320 | Winstar Form S 3 |
| 800 | 6/27/2000 | DX 321 | F Rubin E Mail to J Dwyer R Uhl RE Lucent Services PO |
| 801 | 6/28/2000 | DX 322 | M Wilson Letter to D Ackerman RE additional $14 000 000 in network operating costs |
| 802 | 6/28/2000 | DX 323 | F Rubin e mail to R Uhl re Lucent EOQ PO s |
| 803 | 6/28/2000 | DX 324 | L Hicks e mail to D Ackerman re EOQ Deals |
| 804 | 6/30/2000 | DX 325 | Winstar Form 10 Q |
| 805 | 6/30/2000 | DX 326 | B Plunkett Letter to D Ackerman RE 14 000 000 credit |
| 806 | 10/28/1998 | DX 327 | supplemental software Agreement between winstar and lucent |
| 807 | 6/29/2000 | DX 328 | T Feil e mail to L Hicks re Product changes to Morrow inventory of wavestar 400G equipment |
| 808 | 6/30/2000 | DX 329 | B Plunkett letter to D Ackerman re Lucent provision of $14 000,000 credit to Winstar |
| 809 | 6/30/2000 | DX 330 | J Dwyer e mail to R Uhl and F Rubin re PO for Lucent services |
| 810 | 6/30/2000 | DX 331 | D Rigotti e-mail to S Linnell re Revised 2Q00 deal |
| 811 | 6/30/2000 | DX 332 | D Ackerman e mail to L Hicks re software pool Agreement |
| 812 | 6/30/2000 | DX 333 | V Petrini e mail to A Fulton W Plunkett, W Montgomery etc RE SOFTWARE POOL Agreement |
| 813 | 6/30/2000 | DX 334 | L Hicks Letter to V Petrini re optical networking equipment |
| 814 | 6/30/2000 | DX 335 | R Uhl E Mail to F Rubin RE Lucent EOQ PO s |
| 815 | 7/4/2000 | DX 336 | N Kantor e mail to D Ackerman re winstar cisco executive meeting update |
| 816 | 6/30/2000 | DX 337 | B Plunkett Letter to D Ackerman RE additional $14 000 000 in network operating costs |
| 817 | 7/5/2000 | DX 338 | D Rigotti E-Mail to C Naylor, D Harris, W Plunkett, W Montgomery RE Hyb & B Pricing |
| 818 | 7/6/2000 | DX 339 | K. Chawla e-mail to R Uhl re Siemens due diligence |
| 819 | 7/6/2000 | DX 340 | K. Monaco e-mail to S Kasera re Asset valuation data for Winstar |
| 820 | 7/6/2000 | DX 341 | K. Monaco E mail to F Rubin RE Siemens due diligence |
| 821 | 7/7/2000 | DX 342 | T Shevock e mail to L Person Y Wilder B Seay ect Re vender releations |
| 822 | 7/9/2000 | DX 343 | R Levine E Mail to W Plunkett, C Naylor D Harris, B Genner, etc RE URGENT B Site Pricing |
| 823 | 7/24/2000 | DX 344 | F Rubin e mail to H Shartel RE Budget Issues |
| 824 | 7/24/2000 | DX 345 | B Weissenberger e mail to L Hicks K Dean et al re A&E pricing |
| 825 | 7/24/2000 | DX 346 | J Diroma e mail to J Cocito, C Naylor E Perricone I Rogers, et al re Winstar Services |
| 826 | 7/24/2000 | DX 347 | Notice of Request for Borrowing (Draw Request) |
| 827 | 7/28/2000 | DX 348 | W Plunkett E Mail to J Diroma RE Private, Important |
| 828 | 7/31/2000 | DX 349 | Winstar and Oracle Enter Into Strategic Partnership |
| 829 | 7/31/2000 | DX 350 | V Petrini E mail to D Huber T Shevock, B Zlotnick, D Rigotti RE data center equipment |
| 830 | 8/2/2000 | DX 351 | J Stephens e mail to Winstar re Executive Memo and Press Release Winstar Results Up Sharply |
| 831 | 8/4/2000 | DX 352 | Winstar Form S 4 |
| 832 | 8/7/2000 | DX 353 | L Hicks e mail to B Zlotnick re weekly lucent converged architecture review meeting |
| 833 | 8/15/2000 | DX 354 | D Huber e mail to D Ackerman, L Hicks etc re product changes to the ASM inventory |
| 834 | 8/17/2000 | DX 355 | G Garrett e mail to N Aversano, W Plunkett, L Fawcett, N De Tura and D Harris re Winstar LH Jeopardy |
| 835 | 8/21/2000 | DX 356 | G Simpson e mail to R Bambach re Nate's meeting with Lucent |

EXHIBIT A

**APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
BE INCLUDED IN THE RECORD ON APPEAL**

| 836 | 8/18/2000 | DX 357 | F Rubin e mail to R Uhl re Siemens Status |
|---|---|---|---|
| 837 | 8/18/2000 | DX 358 | Winstar Major Projects/Issues Status |
| 838 | 8/21/2000 | DX 359 | Winstar Strategy Development and Action Planning (SDAP) Workshop |
| 839 | 8/24/2000 | DX 360 | Notice of Request for Borrowing (Draw Request) |
| 840 | 8/28/2000 | DX 361 | V Petrini e mail to K Richardson re action item |
| 841 | 8/29/2000 | DX 362 | R Helfrich E mail to K Hoggard, V Petrini J Harris etc RE Anixter 400G inventory |
| 842 | 8/29/2000 | DX 363 | D Ackerman E Mail to R Uhl RE ONG and Hubs and B s addenda and SoWs |
| 843 | 8/29/2000 | DX 364 | W Fullerton e mail to J Diroma re Resale of Winstar Asset Purchase |
| 844 | 8/28/2000 | DX 365 | Winstar Form S-3 |
| 845 | 8/30/2000 | DX 366 | L Hicks E Mail to D Ackerman RE Lucent Strategy |
| 846 | 8/31/2000 | DX 367 | B Zlotnick e mail to D Ackerman re WLA revenue for 3Q |
| 847 | 9/1/2000 | DX 368 | D Hopkins e mail to W Viquiera and K DaSilva re much to do |
| 848 | 9/1/2000 | DX 369 | S Kasera E mail to F Rubin K Monaco RE Financing Structure |
| 849 | 9/1/2000 | DX 370 | D Harris E Mail to L Rogers RE Winstar Update |
| 850 | 9/3/2000 | DX 371 | V Petrini e mail to L Titteringoln re action item |
| 851 | 9/4/2000 | DX 372 | D Hopkins E Mail to L Rogers M Carroll P Derrick N Aversano RE Winstar Update |
| 852 | 9/5/2000 | DX 373 | L Rogers Memo to P Derrick RE WinStar Briefing Memo |
| 853 | 9/6/2000 | DX 374 | J Cocito Letter to N Aversano RE security investigation |
| 854 | 9/6/2000 | DX 375 | L Rogers e mail to D Hopkins, W Viquiera N Aversano and P Derrick re Winstar Chronology |
| 855 | 9/11/2000 | DX 376 | V Heron E mail to J Cocito, D Harris W Plunkett, B Montgomery, R Mark RE Winstar chronology update |
| 856 | 9/12/2000 | DX 377 | Minutes of a Meeting of the Board of Directors of Winstar Communications Inc |
| 857 | 9/13/2000 | DX 378 | A Masullo e-mail to W Plunkett, D Harris, M Epstien etc re. Winstar Service Call |
| 858 | 9/14/2000 | DX 379 | S Kasera E-mail to F Rubin, K Monaco RE Indicative Term Sheet |
| 859 | 9/14/2000 | DX 380 | J Newsom E Mail to D Harris, V Petrini RE EOQ Deal Summary |
| 860 | 9/14/2000 | DX 381 | Lucent/Winstar End of Quarter Deals Fiscal Year 2000 |
| 861 | 9/15/2000 | DX 382 | D Rigotti E-Mail to G Garrett RE Winstar Services Position |
| 862 | 9/17/2000 | DX 383 | D Huber E Mail to D Ackerman RE Siemens |
| 863 | 9/17/2000 | DX 384 | Q Petitt e mail to B Genner and D Parks re Lucent Approach to Advanced IP Services Support |
| 864 | 9/17/2000 | DX 385 | K O Grady e mail to V Petrini, D Harris L Titterington et al re EOQ Latest after Sunday evening call |
| 865 | 9/18/2000 | DX 386 | F Jules e mail to N Marino re ATG |
| 866 | 9/18/2000 | DX 387 | F Jules e mail to N Kantor re Florida Long Haul |
| 867 | 9/19/2000 | DX 388 | M Kerner e mail to M McFuinn J Diroma N Aversano R Mark G Garrett, F Mazni M Epstein J Cocito RE Materials for Winstar Call Today 9/19/00 |
| 868 | 9/19/2000 | DX 389 | Winstar/Lucent 2000 2001 partnership deal |
| 869 | 9/22/2000 | DX 390 | D Harris E Mail with Attachment to D Ackerman R Uhl RE Winstar Services Purchase Order |
| 870 | 9/22/2000 | DX 391 | D Harris e mail to N Kantor and F Jules re winstar services purchase order |
| 871 | 9/22/2000 | DX 392 | W Rouhana e-mail to N Kantor re groundwork for Cisco and Siemens deals |
| 872 | 9/22/2000 | DX 393 | A Alfred E mail to A Brooks, A Derksen A Fasciano A Jerden etc RE Winstar Drawdown 09/29/00 |
| 873 | 9/22/2000 | DX 394 | Notice of Request for Borrowing (Draw Request) |
| 874 | 9/22/2000 | DX 395 | Winstar/Lucent Partnership Deal |
| 875 | 9/22/2000 | DX 396 | D Harris letter D Ackerman letter re supply Agreement |
| 876 | 9/22/2000 | DX 397 | D Harris letter to D Ackerman re supply Agreement |
| 877 | 9/22/2000 | DX 398 | F Manzi E Mail to K. O'Grady RE Update on Radios |
| 878 | 9/24/2000 | DX 399 | N Kantor E-Mail to N Aversano RE Winstar Services Purchase Order |

RLF1 2986514 1

EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL

| 879 | 9/25/2000 | DX 400 | N Kantor E Mail to D Ackerman, F Jules R Uhl RE Updated Deals List |
|---|---|---|---|
| 880 | 9/25/2000 | DX 401 | D Rigotti E mail to D Harris RE Winstar Services Clarification |
| 881 | 9/25/2000 | DX 402 | J Cocito e mail to F Manzi re Winstar Services |
| 882 | 9/25/2000 | DX 403 | A Alfred e mail to V Petrini re winstar drawdown |
| 883 | 9/25/2000 | DX 404 | G Simpson e mail to F Rubin re revised draw #4 |
| 884 | 9/25/2000 | DX 405 | N Kantor e mail to D Ackerman re Business Deal V2 |
| 885 | 9/25/2000 | DX 406 | A Dollins e mail to D Harris attaching chart re Winstar Issues/Status/Solutions |
| 886 | 9/25/2000 | DX 407 | D Christian E Mail to J Diroma RE June Winstar billing |
| 887 | 9/27/2000 | DX 408 | N Aversano Letter to N Kantor and R Uhl RE purchase order WVFI-0000002958 |
| 888 | 9/27/2000 | DX 409 | Hubs and B s History Winstar |
| 889 | 9/28/2000 | DX 410 | winstar/lucent 2000 partnership deal decision matrix |
| 890 | 9/28/2000 | DX 411 | D Harris E Mail to W Plunkett, B Montgomery, J Cocito, V Heron RE Lucent Credit |
| 891 | 9/28/2000 | DX 412 | G Maloney E Mail to N Aversano re Lucent Credit |
| 892 | 9/29/2000 | DX 413 | D Harris Letter to D Ackerman RE $10 000 000 credit |
| 893 | 9/29/2000 | DX 414 | DELETED |
| 894 | 9/29/2000 | DX 415 | DELETED |
| 895 | 9/29/2000 | DX 416 | D Harris letter to D Ackerman re operating costs |
| 896 | 9/29/2000 | DX 417 | J Bullen e mail to V petrini, adollins@lucent com dharrisbrown@lucent com ect Re winstar/lucent enterprise integration lab |
| 897 | 9/29/2000 | DX 418 | R Uhl Memo to D Ackerman, F Jules N Kantor G Maloney, F Rubin, B Zlotnick RE Winstar & Lucent |
| 898 | 9/29/2000 | DX 419 | A Fulton e mail to J Bullen re A 1 S/W Services |
| 899 | 9/29/2000 | DX 420 | B Zlotnick letter to V Petrini re bill and hold for Lucent optical equipment |
| 900 | 9/29/2000 | DX 421 | Software Pool Agreement between Winstar and Lucent |
| 901 | 9/29/2000 | DX 422 | Press Release - Winstar Communications |
| 902 | 9/29/2000 | DX 423 | DELETED |
| 903 | 9/29/2000 | DX 424 | R Uhl Memo to D Ackerman, F Jules N Kantor, J Maloney, F Rubin, B Zlotnick RE Winstar & Lucent |
| 904 | 9/29/2000 | DX 425 | B Zlotnick Letter to V Petrini RE Bill and Hold Letter for Lucent Stinger DSLAMs and cabinets |
| 905 | 9/29/2000 | DX 426 | W Plunkett e mail to V Heron re Lucent Credit |
| 906 | 9/29/2000 | DX 427 | Software Pool Agreement Between Winstar Communications, Inc and Lucent Technologies Inc (Terrell Declaration Exhibit 1) |
| 907 | 9/29/2000 | DX 428 | N Aversano E mail to D Harris W Plunkett B Montemarano J Cocito RE Lucent Credit |
| 908 | 9/30/2000 | DX 429 | Winstar Form 10 Q (Collins Report document) |
| 909 | 10/20/2000 | DX 430 | 10 Year Equity Model (Collins Report document) |
| 910 | 10/1/2000 | DX 431 | Statement and Invoice |
| 911 | 10/2/2000 | DX 432 | D Ackerman e mail to N Kantor re winstar contractor services |
| 912 | 10/3/2000 | DX 433 | N Kantor e mail to D Ackerman re Siemens Order for 00 |
| 913 | 10/4/2000 | DX 434 | V Petrini e mail to D Rigotti re hub construction cost update |
| 914 | 10/5/2000 | DX 435 | D Ackerman E-mail to F Rubin RE Lucent Contractor Services |
| 915 | 10/5/2000 | DX 436 | W Fullerton e mail to D Harris J Diroma, A Carrone etc re Winstar IRU's |
| 916 | 10/6/2000 | DX 437 | K Denn E Mail to B Weissenberger RE EOQ No more hub of B site change orders |
| 917 | 10/6/2000 | DX 438 | W Plunkett letter to D Ackerman re development of the Enterprise Integration Laboratory |
| 918 | 10/8/2000 | DX 439 | K Monaco E Mail to F Rubin RE Siemens Head's Up |
| 919 | 10/10/2000 | DX 440 | D Ackerman e mail to R Uhl re Siemens |
| 920 | 10/11/2000 | DX 441 | K Chawla E mail to N Kantor RE Winstar/Siemens |
| 921 | 10/14/2000 | DX 442 | D Huber E Mail to J Bullen RE Lucent Outsourcing Project |

EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 922 | 10/16/2000 | DX 443 | B Plunkett letter to D Ackerman re deter billing |
| 923 | 10/18/2000 | DX 444 | V Petrini e mail to P Perry B Genner ect Re Q1 FY2001 |
| 924 | 10/19/2000 | DX 445 | Lucent/Winstar end of quarter deal fiscal year Q42000 |
| 925 | 10/19/2000 | DX 446 | D Nidowicz Fax to A Alfred RE Revised Draw Request for 10/24/00 |
| 926 | 10/20/2000 | DX 447 | F Rubin E Mail to N Kantor RE Lucent Wire on Monday |
| 927 | 10/20/2000 | DX 448 | B Plunkett letter to D Ackerman re Winstar credit for optical equipment |
| 928 | 10/20/2000 | DX 449 | B Plunkett letter to D Ackerman re pricing and commitments |
| 929 | 10/20/2000 | DX 450 | E Perricone E mail to D Harris N Aversano RE Winstar Refinance Notice |
| 930 | 10/20/2000 | DX 451 | W Plunkett letter to D Ackerman re Lucent credit of $35M to Winstar upon receipt of first order for optical equipment in CYQ42000 |
| 931 | 10/23/2000 | DX 452 | D Huber E Mail to L Hicks RE Winstar Services Meeting on Tuesday |
| 932 | 10/23/2000 | DX 453 | A Alfred e mail to A Carrone A Derksen A Fasciano etc re Winstar Drawdown |
| 933 | 10/25/2000 | DX 454 | D Huber E mail to N Kantor F Jules, D Ackerman RE Cisco Summary |
| 934 | 10/26/2000 | DX 455 | B Zlotnick E Mail to F Rubin RE Lucent Meeting |
| 935 | 10/26/2000 | DX 456 | A Dollins e mail with attachment to D Harris re winstar consumer briefing |
| 936 | 10/26/2000 | DX 457 | F Rubin E Mail with Attachment to B Rouhana R Uhl RE Lucent Term Sheet |
| 937 | 10/26/2000 | DX 458 | J Alfasi e-mail to E Mullan re Exec Review 10/26 |
| 938 | 10/27/2000 | DX 459 | N Kantor E Mail to F Jules R Uhl RE 2000 Capex Forecast |
| 939 | 10/27/2000 | DX 460 | DELETED |
| 940 | 10/31/2000 | DX 461 | Credit Suisse First Boston Private Equity investment Committee Presentation |
| 941 | 11/1/2000 | DX 462 | L Rogers E mail to D Harris RE Wistar Schacht Presentation |
| 942 | 11/1/2000 | DX 463 | Winstar Final |
| 943 | 11/1/2000 | DX 464 | DELETED |
| 944 | 11/1/2000 | DX 465 | L Rogers e-mail to M Hund-Mejean re Winstar |
| 945 | 11/1/2000 | DX 466 | Winstar Financing |
| 946 | 11/1/2000 | DX 467 | (Presentation) Winstar Financing |
| 947 | 11/1/2000 | DX 468 | D Harris E Mail to L Rogers RE feedback |
| 948 | 11/1/2000 | DX 469 | D Wu e mail to N Kantor re 4Q revenue from Hong Kong |
| 949 | 11/4/2000 | DX 470 | E Perricone e-mail to F Rubin K Monaco, R Uhl et al re Winstar Due Diligence |
| 950 | 11/6/2000 | DX 471 | J Ritter E Mail with Attachment to B Zlotnick, L Hicks RE Tomorrow s Presentation |
| 951 | 11/6/2000 | DX 472 | F Rubin letter to Siemens AG re Winstar Communications Inc Term Loan C |
| 952 | 11/6/2000 | DX 473 | Supplemental Agreement among Winstar Communications, Inc , Siemens Carrier Networks LLC And Siemens Aktiengesellschaft |
| 953 | 11/6/2000 | DX 474 | Supplemental Agreement among Winstar Communications Inc and Siemens |
| 954 | 11/7/2000 | DX 475 | M Montemarano e mail to P Derrick, re Winstar LWI 00073113A-00043113A |
| 955 | 11/7/2000 | DX 476 | Minutes of meeting of the board of directors of winstar communications |
| 956 | 11/7/2000 | DX 477 | C Perricone E Mail to M Keefe P Derrick, J Diroma, etc RE Winstar |
| 957 | 10/19/1998 | DX 478 | C Dickson memorandum to W Rouhana, N Kantor, S Chrust, B Wasserman, S Magyar, W vanden Heuvel and J Cash re October 21, 1998 Board Meeting |
| 958 | 11/8/2000 | DX 479 | J Stephens E Mail to Winstar Employees RE Executive Memo & Press Releases Winstar Reports Continued Strong Results, Winstar Secures Over $1 billion in Additional Financing Agreements |
| 959 | 11/8/2000 | DX 480 | Press Release Winstar Reports Continued Strong Results |
| 960 | 11/8/2000 | DX 481 | F Rubin E mail to B Fukuhar, D Rogan, R Drobny, etc RE Winstar/Cisco Partnership |
| 961 | 11/8/2000 | DX 482 | Winstar Secures Over $1 Billion in Additional Financing Agreements Company Funded Into 2002 (Krozsner Report document) |
| 962 | 11/10/2000 | DX 483 | D Nidowicz E mail to F Rubin RE cash issues |

37

## EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 963 | 11/10/2000 | DX 484 | F Rubin letter to M Hund Mejean re Winstar/Lucent Financing |
| 964 | 11/10/2000 | DX 485 | F Jules E Mail to N Kantor RE 2000 capex forecast |
| 965 | 11/13/2000 | DX 486 | F Rubin letter to M Hund-Mejean re winstar/lucent financings |
| 966 | 11/13/2000 | DX 487 | F Rubin letter to M Hund Mejean re winstar/lucent financings |
| 967 | 11/14/2000 | DX 488 | N Kantor e mail to mfink@winstar com B McGuire R Uhl etc re the eagle has landed |
| 968 | 11/15/2000 | DX 489 | L Rogers e mail to P Derrick M Keefe and W Quinn re Winstar Letter of November 13 |
| 969 | 11/16/2000 | DX 490 | P Hayes E Mail to M Hund Mejean RE Winstar |
| 970 | 11/16/2000 | DX 491 | L Rogers e mail to D Harris, P Derrick R Mark, M Montemarano et al re Fred Rubin Letter |
| 971 | 11/16/2000 | DX 492 | V Petrini E Mail to D Harris RE Winstar Services Agreement Conference Call |
| 972 | 11/16/2000 | DX 493 | Winstar Capital Corp Base Case Model Covenants (Collins Report document) |
| 973 | 11/18/2000 | DX 494 | B Genner E mail to D Parks et al RE Data products business case |
| 974 | 11/19/2000 | DX 495 | M Hund Mejean e mail to D Harris re winstar |
| 975 | 11/20/2000 | DX 496 | F Jules E mail to N Kantor RE 2000 projection 11-15 |
| 976 | 11/20/2000 | DX 497 | D Ackerman E Mail to N Kantor RE Lucent 2001 Proposal |
| 977 | 11/20/2000 | DX 498 | M Hund Mejean and D Harris Letter to F Rubin RE interpretation of response and response to proposal |
| 978 | 11/20/2000 | DX 499 | J Everding e-mail to N Marino re Lucent deal for 2001 |
| 979 | 11/21/2000 | DX 500 | D Harris e mail to C Spurrier re Sept 20 meeting with Nate Kantor |
| 980 | 11/27/2000 | DX 501 | K Monaco E mail to R Uhl, F Rubin, D Briggs RE Summary of Bank & Lucent terms |
| 981 | 11/28/2000 | DX 502 | F Rubin e mail to R Uhl re 3% fee to Lucent |
| 982 | 11/29/2000 | DX 503 | Draft Lucent/Winstar Relationship |
| 983 | 11/29/2000 | DX 504 | M Hund-Mejean e mail to J Sasvan re Flow Chart for Winstar |
| 984 | 11/30/2000 | DX 505 | R Kipke e mail to D Huber, B Zlotnick, Rratchford, D Bruster and G Garrett re Jeopardy on Schedule Revision |
| 985 | 11/30/2000 | DX 506 | Notice of Request for Borrowing (Draw Request) |
| 986 | 11/30/2000 | DX 507 | M Montemarano e mail to C Kelly re immediate attention requested Winstar services |
| 987 | 11/30/2000 | DX 508 | A Alfred E Mail to D Harris E Perricone L Rogers, L St Peter, etc RE Winstar |
| 988 | 12/1/2000 | DX 509 | F Rubin E Mail to D Nidowicz RE Lucent Balances |
| 989 | 12/1/2000 | DX 510 | R Uhl e mail to dharrisbrown@lucent com re Pay down of our vender financing obligation to Lucent |
| 990 | 12/1/2000 | DX 511 | D Nidowicz E mail to R Uhl RE Lucent Balances |
| 991 | 12/3/2000 | DX 512 | M Hund Mejean e mail to E Perricone re Winstar Due Diligence Update |
| 992 | 12/5/2000 | DX 513 | F Rubin E mail to R Uhl T Graham K Zinghini RE TW |
| 993 | 12/5/2000 | DX 514 | Rick Uhl s Call List |
| 994 | 12/5/2000 | DX 515 | E Perricone letter to F Rubin re Cisco and Compaq financings |
| 995 | 12/6/2000 | DX 516 | Amendment No 2 and New Lender Agreement |
| 996 | 12/6/2000 | DX 517 | Winstar 8-K (Krozsner Report document) |
| 997 | 12/6/2000 | DX 518 | K Chawla e mail to F Rubin K Monaco, K Zinghini re congratulations |
| 998 | 12/1/2000 | DX 519 | A Alfred E Mail to A Carrone, A Derksen A Jerden B Moton etc RE Winstar Repayment |
| 999 | 12/7/2000 | DX 520 | F Rubin E mail to K Chawla, K Zinghini RE Congratulations |
| 1000 | 12/7/2000 | DX 521 | F Rubin letter to E Perricone re Winstar s wire transfer of $188 180 000 00 to Lucent |
| 1001 | 12/7/2000 | DX 522 | E Perricone e mail to F Rubin re Prepayment 12/7/00 |
| 1002 | 12/8/2000 | DX 523 | W Fullerton E mail to D Hopkins, M White, M Montemarano RE Winstar Services Revenue Recognition |
| 1003 | 12/8/2000 | DX 524 | F Jules e mail to J Marco re Opportunities with Cisco |

RLFI 2986514 1

EXHIBIT A

APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
BE INCLUDED IN THE RECORD ON APPEAL

| 1004 | 12/8/2000 | DX 525 | K Monaco letter to B Keller re materials requested by E Perricone in e mail message of 12/04/00 |
|------|-----------|--------|------|
| 1005 | 12/11/2000 | DX 526 | D Ackerman E Mail to J Everding RE Enterprise Integration Lab |
| 1006 | 12/11/2000 | DX 527 | N Kantor E Mail to N Marino RE Cisco Meeting Outline |
| 1007 | 12/11/2000 | DX 528 | M Keefe e mail to K Zinghini re Winstar Cisco Guaranty |
| 1008 | 12/13/2000 | DX 529 | H Shartel E mail to F Rubin R Uhl RE AFC Deferred Inventory |
| 1009 | 12/13/2000 | DX 530 | E Perricone Memo to M Hund Mejean RE Winstar Refinance Provisions |
| 1010 | 12/13/2000 | DX 531 | W Fullerton e mail to M Montemarano re winstar services revenue recognition |
| 1011 | 12/14/2000 | DX 532 | F Jules E Mail to D Ackerman RE Lucent |
| 1012 | 12/14/2000 | DX 533 | C Schoettle E Mail to D Harris RE Winstar Broadband Radios |
| 1013 | 12/15/2000 | DX 534 | F Rubin Letter to E Perricone re WVF 1 LLC |
| 1014 | 12/15/2000 | DX 535 | DELETED |
| 1015 | 12/15/2000 | DX 536 | D Nidowicz E mail to F Rubin R Uhl RE Lucent 3% |
| 1016 | 12/15/2000 | DX 537 | D Harris E mail to R Uhl |
| 1017 | 12/15/2000 | DX 538 | R Uhl e mail to mexadakilos@winstar com re End of Quarter Deal |
| 1018 | 12/16/2000 | DX 539 | B Rouhana E Mail to N Kantor Deal |
| 1019 | 12/18/2000 | DX 540 | M Hund Mejean E Mail to E Perricone M Keefe, R Mark, M Montemarano C Spurrier RE Winstar Request for Credit Memo to reduce Lucent Loans below $500M |
| 1020 | 12/18/2000 | DX 541 | J Diroma e mail to R Mark, W Fullerton ect Re winstar 4Q credits owed |
| 1021 | 3/31/2000 | DX 542 | L Hicks fax to R Uhl re optical equipment bill and hold letters Lucent |
| 1022 | 12/19/2000 | DX 543 | F Rubin E Mail with Attachment to R Uhl RE 2000 forecast radio movement |
| 1023 | 12/19/2000 | DX 544 | C Perricone letter to Winstar re Lucent Credit Facility |
| 1024 | 12/19/2000 | DX 545 | E Perricone letter to F Rubin re Lucent Credit Facility |
| 1025 | 12/19/2000 | DX 546 | L Hicks Fax to R Uhl RE Optical Equipment Bill and Hold Letters Lucent |
| 1026 | 12/20/2000 | DX 547 | Memorandum from B Perricone and B Keller to D Hopkins and B Verwaayen re Winstar Due Diligence |
| 1027 | 12/21/2000 | DX 548 | F Jules e mail to R Uhl re EO3Q follow-ups |
| 1028 | 12/22/2000 | DX 549 | A Alfred e mail to D Harris, E Perricone, L St Peter et al re Winstar $32M Draw Request |
| 1029 | 12/27/2000 | DX 550 | D Hopkins letter e mail to P Derrick re 12/19/00 refinance notice and 12/22/00 drawdown request |
| 1030 | 12/27/2000 | DX 551 | M Dowdy e-mail to D Harris re Financing Summary |
| 1031 | 12/27/2000 | DX 552 | M Montemarano e mail to C Carroll R Mark S Rosen M Keefe et al re Winstar $32M Draw Request |
| 1032 | 12/27/2000 | DX 553 | E mail re Winstar $32M Draw Request |
| 1033 | 12/28/2000 | DX 554 | 2000 Capex Forecast |
| 1034 | 12/28/2000 | DX 555 | B Zlotnick e mail to L Hicks re LighTrade Resell |
| 1035 | 12/28/2000 | DX 556 | R Uhl letter to M Montemarano re wire transfer |
| 1036 | 12/28/2000 | DX 557 | D Hopkins E Mail to M Hund-Mejean D Harris M Montemarano RE winstar |
| 1037 | 12/29/2000 | DX 558 | F Rubin E mail to D Nidowicz, R Uhl K Monaco RE Lucent borrowing |
| 1038 | 12/29/2000 | DX 559 | D Ackerman E mail to R Uhl F Jules, N Kantor, B Rouhana RE f iirect update |
| 1039 | 12/29/2000 | DX 560 | P Derrick e mail to M Montemarano (cc D Hopkins, B Verwaayen, M Hund-Mejean D Harris C Carroll E Perricone, K DaSilva and M Gibbens re payments to Winstar based on Agreement with Winstar chairman president and CFO |
| 1040 | 12/29/2000 | DX 561 | Notice of Request for Borrowing (Draw Request) |
| 1041 | 12/29/2000 | DX 562 | N Kantor e-mail to R Uhl re Lucent borrowing |
| 1042 | 12/29/2000 | DX 563 | Addendum to Supply Agreement By and Between Winstar Communications, Inc and Lucent Technologies, Inc |

**EXHIBIT A**

**APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
BE INCLUDED IN THE RECORD ON APPEAL**

| | | | |
|---|---|---|---|
| 1043 | 12/29/2000 | DX 564 | C Carroll e mail to P Derrick re winstar |
| 1044 | 12/31/2000 | DX 565 | Data Telco Cost of Revenue |
| 1045 | 1/2/2001 | DX 566 | B Rouhana e mail to N Kantor re lucent |
| 1046 | 1/2/2001 | DX 567 | M Keefe e mail to K Zinghini re Winstar Compaq Guaranty |
| 1047 | 1/3/2001 | DX 568 | D Ackerman e mail to F Jules re Lirect update |
| 1048 | 1/3/2001 | DX 569 | W Fullerton E mail to M Weinman M Alvarez, J Diroma etc RE Winstar |
| 1049 | 1/4/2001 | DX 570 | J Diroma E Mail to S Evans RE Winstar/Adelphia |
| 1050 | 1/8/2001 | DX 571 | Cisco Systems |
| 1051 | 1/8/2001 | DX 572 | A Lucido e mail to D Harris V Petrini K O Grady ect Re winstar profit analysis |
| 1052 | 1/9/2001 | DX 573 | D Briggs E Mail to M Davis K Pisciotta L Rees A Rachkov |
| 1053 | 1/9/2001 | DX 574 | Lucent Technologies Presentation by Nate Kantor |
| 1054 | 1/9/2001 | DX 575 | F Jules E mail to N Kantor RE q101 capex estimate |
| 1055 | 1/9/2001 | DX 576 | D Harris letter to R Uhl re charges associated with the financing agreement |
| 1056 | 1/14/2001 | DX 577 | D Hopkins E-Mail to M White P Derrick, D Harris etc winstar meeting montemarano notes |
| 1057 | 1/16/2001 | DX 578 | A Lucido E Mail to M Montemarano RE Please Read Prior to your Winstar CT Meeting |
| 1058 | 1/17/2001 | DX 579 | L Fawcett E Mail to M Waugh RE WinStar Services Agreement |
| 1059 | 1/17/2001 | DX 580 | M Montemarano Letter to R Uhl RE Lucent Credit Facility |
| 1060 | 1/17/2001 | DX 581 | D Harris letter to R Uhl re Charges associated with the financing Agreement |
| 1061 | 1/18/2001 | DX 582 | Standard & Poor's Industry Survey re Communications Equipment |
| 1062 | 1/19/2001 | DX 583 | D Harris E mail to R Uhl RE letter |
| 1063 | 1/22/2001 | DX 584 | D Christian E Mail to M Montemarano RE WinStar Statement January 22 2001 |
| 1064 | 1/23/2001 | DX 585 | M Montemarano E Mail to C Mcgovern RE Winstar |
| 1065 | 1/23/2001 | DX 586 | Minutes of a meeting of the board of Directors of winstar communications |
| 1066 | 1/24/2001 | DX 587 | D Harris E mail to R. Uhl re charges associated with the financing Agreement |
| 1067 | 1/26/2001 | DX 588 | R Uhl E-Mail with Attachment to F Rubin, K Zinghini RE Winstar surcharge information |
| 1068 | 1/29/2001 | DX 589 | D Harris E-Mail to D Ackerman R Uhl RE Winstar services outsourced to Lucent |
| 1069 | 1/29/2001 | DX 590 | V Hawkins E Mail to V Petrini RE SNC/SNMS Complaints |
| 1070 | 1/29/2001 | DX 591 | E Perricone e mail with attachments to D Hopkins, B Verwaayen RE Winstar Due Diligence |
| 1071 | 1/30/2001 | DX 592 | M Montemarano Letter to R Uhl RE capital draw down budget |
| 1072 | 1/30/2001 | DX 593 | D Harris E Mail to M Montemarano C Spurrier B Verwaayen N Kantor R Uhl F Jules, D Ackerman |
| 1073 | 2/1/2001 | DX 594 | R Uhl E Mail to Monaco RE Cash Forecast |
| 1074 | 2/2/2001 | DX 595 | B Zlotnick e mail to L Hicks re Lucent Converged Architecture Update |
| 1075 | 2/5/2001 | DX 596 | R Uhl E Mail to N Kantor RE Anticipated LU Borrowings |
| 1076 | 2/5/2001 | DX 597 | R Uhl E mail to M Montemarano RE Anticipated LU Borrowings |
| 1077 | 2/5/2001 | DX 598 | R Uhl letter to M Montemarano re credit Agreements |
| 1078 | 2/6/2001 | DX 599 | M Montemarano Letter to R Uhl RE Capital Expense forecast |
| 1079 | 2/6/2001 | DX 600 | R Uhl e-mail to F Rubin re Anticipated LU Borrowings |
| 1080 | 2/6/2001 | DX 601 | M Montemarano e mail to E Perricone, J Ayre D Harris, A Carrone, etc RE Winstar drawdown 2/5/01 |
| 1081 | 2/6/2001 | DX 602 | M Montemarano e mail to K Becker P Derrick, W Quinn, et al re papertrail of Winstar compliance |
| 1082 | 2/6/2001 | DX 603 | C Mcgovern e mail to C Spurrier, B Verwaayen, D Harris re winstar letter 2/6/01 |
| 1083 | 2/6/2001 | DX 604 | J Diroma E Mail to L Baldwin RE Winstar/Adelphia |
| 1084 | 2/6/2001 | DX 605 | Lucent Invoice #SU101858 to Winstar (Terrell Declaration Exhibit 2) |
| 1085 | 2/7/2001 | DX 606 | R Uhl E Mail to F Rubin, K. Zinghini RE Lucent |

EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 1086 | 2/8/2001 | DX 607 | T Jules E mail to D Ackerman RE nortel |
|---|---|---|---|
| 1087 | 2/8/2001 | DX 608 | Winstar/Lucent Major Accomplishments Executive Summary |
| 1088 | 2/12/2001 | DX 609 | G Garrett e mail to L Fawcett re Jan 2001 CRD Performance |
| 1089 | 2/13/2001 | DX 610 | C McGovern E Mail w/ Attachment to S Rosen RE Response to Winstar |
| 1090 | 2/15/2001 | DX 611 | D Nidowicz e mail to K Monaco re Lucent unused line fee |
| 1091 | 2/20/2001 | DX 612 | Memorandum from J Desmond, G Goldman, and P Cummings at Grant Thornton to B Rouhana N Kantor T Graham and R Uhl re Follow up to Meeting with Winstar Management Held on Tuesday February 20 2001 |
| 1092 | 2/20/2001 | DX 613 | DELETED |
| 1093 | 2/21/2001 | DX 614 | W Quinn E Mail to M Montemarano D Harris G Caviness etc RE Winstar loan balance |
| 1094 | 2/22/2001 | DX 615 | J Cocito e mail to gmoloney@winstar com and frubin@winstar com re Lucent Loan Balances |
| 1095 | 2/23/2001 | DX 616 | M Montemarano E-mail to G Caviness RE action Winstar drawdown request for February 28 2001 |
| 1096 | 2/23/2001 | DX 617 | Notice of Request for Borrowing (Draw Request) |
| 1097 | 2/24/2001 | DX 618 | P Cummings to Winstar Communications, Inc RE Follow up Discussion with Bill Rouhana and Senior Management on February 23 2001 |
| 1098 | 2/26/2001 | DX 619 | L Kroencke E Mail with Attachment to E Cho RE MSA Tracking |
| 1099 | 2/27/2001 | DX 620 | D Nidowicz E-mail to R Uhl RE Lucent 3% |
| 1100 | 2/27/2001 | DX 621 | J Baylis E-mail to D Briggs RE Lucent Covenants |
| 1101 | 2/27/2001 | DX 622 | Press Release re Winstar Reports Strong Fourth Quarter Results |
| 1102 | 2/27/2001 | DX 623 | J Stephens e-mail to winstar re Executive memo and press release Winstar results continue sharp improvement |
| 1103 | 3/1/2001 | DX 624 | DELETED |
| 1104 | 3/1/2001 | DX 625 | M Montemarano Letter to R Uhl RE Lucent Credit Facility |
| 1105 | 3/1/2001 | DX 626 | F Rubin e-mail to L O'Brian and K Monaco re A/R problem escalation #6 - Winstar $15M |
| 1106 | 3/2/2001 | DX 627 | K Monaco E mail to N Kantor RE Cash Feast March 1 |
| 1107 | 3/4/2001 | DX 628 | DELETED |
| 1108 | 3/6/2001 | DX 629 | P Cummings Memo to B Rouhana N Kantor, R Uhl RE Annual Audit Significant Open Items |
| 1109 | 3/9/2001 | DX 630 | T Rubin E Mail to N Kantor R Uhl T Graham RE Lucent Recap |
| 1110 | 3/12/2001 | DX 631 | Winstar 2001 Plan Capitalization Issues |
| 1111 | 3/12/2001 | DX 632 | DELETED |
| 1112 | 3/13/2001 | DX 633 | C Perricone memorandum to B Verwaayen, C Spurrier, M Hund Mejean et al re Winstar Update |
| 1113 | 3/14/2001 | DX 634 | F Rubin e mail to D Harris re open items for resolution |
| 1114 | 3/15/2001 | DX 635 | DELETED |
| 1115 | 3/16/2001 | DX 636 | DELETED |
| 1116 | 3/16/2001 | DX 637 | D Ackerman e mail to N Kantor, fjules@winstar com, brouhana@winstar com re Vendor Commitments/LD Provisions |
| 1117 | 3/17/2001 | DX 638 | D Ackerman e mail to N Kantor re Personal |
| 1118 | 3/18/2001 | DX 639 | M Hund-mejean e mail to B Verwaayen and C Spurrier re winstar |
| 1119 | 3/19/2001 | DX 640 | DELETED |
| 1120 | 3/21/2001 | DX 641 | D Hopkins E mail to M Montemarano, D Harris M Hund Mejean, etc RE SPECIAL ATTENTION winstar meeting 3/21/01 |
| 1121 | 3/21/2001 | DX 642 | M Montemarano E-Mail to D Harris, D Hopkins, M Hund Mejean etc |
| 1122 | 3/21/2001 | DX 643 | Memo to File from M Montemarano |
| 1123 | 3/21/2001 | DX 644 | Lucent Invoices to Winstar (Terrell Declaration Exhibit 4) |
| 1124 | 3/23/2001 | DX 645 | Winstar Communications, Inc Condensed Statements of Operations with handwritten notes |
| 1125 | 3/23/2001 | DX 646 | B Zlotnick E Mail to R Kipke RE 400G Inventory Exchange |
| 1126 | 3/24/2001 | DX 647 | Estimated Lucent Billing |

RLF1 2986514 1

# EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 1127 | 3/25/2001 | DX 648 | P Cummings E Mail to K Monaco R Bambach G Maloney RE debt covenants |
|------|-----------|--------|---------------------------------------------------------------------|
| 1128 | 3/26/2001 | DX 649 | DELETED |
| 1129 | 3/26/2001 | DX 650 | D Ackerman E Mail to N Kantor RE Creative Build out |
| 1130 | 3/22/2001 | DX 651 | Notice of request for borrowing (Draw Request) |
| 1131 | 3/27/2001 | DX 652 | D Ackerman E mail to R Uhl RE SAIC |
| 1132 | 3/28/2001 | DX 653 | M Montemarano E Mail to M Ambrus K Fitzgerald E Perricone etc RE Winstar |
| 1133 | 3/28/2001 | DX 654 | M Montemarano memo to file re March 28 meeting with W Rouhana re Winstar liquidity |
| 1134 | 3/28/2001 | DX 655 | M Montemarano Memo to File |
| 1135 | 3/28/2001 | DX 656 | D Harris E Mail to R Cien S Winn, S LoBlondo, etc RE Winstar Take or Pay Contract LW00146958 LW00146962A |
| 1136 | 3/29/2001 | DX 657 | DELETED |
| 1137 | 3/29/2001 | DX 658 | M Montemarano Memo to File |
| 1138 | 3/29/2001 | DX 659 | J Diroma e mail to W Fullerton re winstar services pass thru |
| 1139 | 3/29/2001 | DX 660 | H Shartel E Mail to R Uhl RE Inventory Analysis 03282001 |
| 1140 | 3/29/2001 | DX 661 | J Diroma e mail to W Fullerton re winstar services pass thru |
| 1141 | 3/29/2001 | DX 662 | Draft 12/00 financials (Collins Report document) |
| 1142 | 3/30/2001 | DX 663 | M Keefe Letter to Winstar Communications Inc RE Lucent Credit Facility |
| 1143 | 3/30/2001 | DX 664 | DELETED |
| 1144 | 3/30/2001 | DX 665 | B Stranzl E mail to R Uhl RE Winstar |
| 1145 | 3/30/2001 | DX 666 | B Wilson E Mail to D Briggs re Draft Lehman Note |
| 1146 | 3/30/2001 | DX 667 | M Keefe e mail to D Harris S Rosen R Mark etc re Winstar |
| 1147 | 3/27/2001 | DX 668 | Notice of Request for Borrowing (Draw Request) |
| 1148 | 4/2/2001 | DX 669 | G Simpson E mail to D Nidowicz RE Q1 2001 Financable Labor |
| 1149 | 4/4/2001 | DX 670 | K. Monaco e mail to D Nidowicz re payments |
| 1150 | 4/5/2001 | DX 671 | M Montemarano letter to Winstar Communications, Inc (cc W Rouhana) re Lucent's suspension of shipment of products and the provision of services to Winstar due to evidence of Winstar's financial distress |
| 1151 | 4/6/2001 | DX 672 | Lucent letter to Winstar re Lucent Credit Facility |
| 1152 | 4/6/2001 | DX 673 | M Montemarano letter to Winstar re Lucent Credit Facility |
| 1153 | 4/6/2001 | DX 674 | Lucent Invoice #ISU108080 to Winstar (Terrell Declaration Exhibit 3) |
| 1154 | 4/9/2001 | DX 675 | E Perricone Letter to Winstar Communications RE Lucent credit facility signed by K. Zinghini T Graham |
| 1155 | 4/9/2001 | DX 676 | E Perricone letter to Winstar re Lucent Credit Facility |
| 1156 | 4/9/2001 | DX 677 | Lucent letter to Winstar re Lucent Credit Facility |
| 1157 | 4/9/2001 | DX 678 | R Uhl's notes |
| 1158 | 4/11/2001 | DX 679 | M Montemarano letter to D Ackerman re payment assurance |
| 1159 | 4/1/2001 | DX 680 | M Montemarano letter to D Ackerman re response to Winstar April 10 letter |
| 1160 | 4/12/2001 | DX 681 | L Sadrian Letter to Winstar Communications, B Rouhana RE Obligations under Supply Agreement |
| 1161 | 4/12/2001 | DX 682 | DELETED |
| 1162 | 4/13/2001 | DX 683 | L Sadrian letter to Winstar re Lucent Credit Facility |
| 1163 | 4/15/2001 | DX 684 | L Sadrian Letter to Winstar Communications RE Lucent Credit Facility |
| 1164 | 4/16/2001 | DX 685 | L Sadrian Letter to WinStar Communications Inc RE Lucent Credit Facility |
| 1165 | 5/23/2000 | DX 686 | Notice of Request for Borrowing (Draw Request) |
| 1166 | 5/31/2000 | DX 687 | D Hopkins e mail to W Viqueira re Winstar |
| 1167 | 4/18/2001 | DX 688 | Senior Secured Super Priority Debtor in Posession Revolving Credit Agreement (Krozsner Report document) |
| 1168 | 4/19/2001 | DX 689 | M Dowdy e mail to D Hsu forwarding Presentation transition plan for lucent resource integration |
| 1169 | 5/6/2001 | DX 690 | Lucent billing for capita (spread sheet) |
| 1170 | 5/8/2001 | DX 691 | K. Monaco E Mail to D Dei RE Credit Approval |

EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| | | | |
|---|---|---|---|
| 1171 | 5/8/2001 | DX 692 | K  Cavanaugh E mail to B  Rouhana RE  WSJ |
| 1172 | 7/13/2000 | DX 693 | K  Monaco E mail to S  Kasera RE  Siemens Answer per your request |
| 1173 | 5/8/2001 | DX 694 | K  Monaco E mail to F  Rubin RE  Management Case  Cash Receipts & Disbursements |
| 1174 | 5/8/2001 | DX 695 | N  Kantor E mail to B  Rouhana RE  Winstar Partnership Concept |
| 1175 | 5/8/2001 | DX 696 | K  Cavanaugh E mail to N  Kantor  R  Uhl RE  Call with Barron s |
| 1176 | 5/8/2001 | DX 697 | D  Nidowicz E Mail to J  Diroma RE  Winstar Services |
| 1177 | 6/9/2001 | DX 698 | R  Uhl E mail to G  Maloney RE  Lucent Services |
| 1178 | 3/3/2004 | DX 699 | Ackerman SEC Transcript |
| 1179 | 8/16/2002 | DX 700 | DELETED |
| 1180 | 3/30/2004 | DX 701 | Letter from K  Collins to M  Paskin enclosing Winstar Valuation Expert Report |
| 1181 | 3/30/2004 | DX 702 | Expert Report of Christopher Stark CS Hawthorn Inc |
| 1182 | 3/30/2004 | DX 703 | DELETED |
| 1183 | 3/30/2004 | DX 704 | DELETED |
| 1184 | 3/7/2000 | DX 705 | J  Dwyer E mail to N  Kantor RE  Lucent Status  Subcontracting Agreement |
| 1185 | 11/7/2000 | DX 706 | M  Hund Mejean letter to R  Uhl re  Lucent Vendor Financing |
| 1186 | 11/8/2000 | DX 707 | Delegation of Authority (Deborah Hopkins)  11/07/00 Letter from M  Hund Mejean To R  Uhl RE  Lucent Vendor Financing |
| 1187 | 9/28/2000 | DX 708 | Partnership Deal Source  D  Harris |
| 1188 | 12/4/2000 | DX 709 | M  Montemarano E-Mail to P  Derrick, M  Hund Mejean |
| 1189 | 12/27/1999 | DX 710 | Past Due as of  12/27/99 = $539M Top 7 |
| 1190 | 9/1/2000 | DX 711 | K  Chawla E-Mail to T  Deutsch RE  The Deal |
| 1191 | 11/3/2000 | DX 712 | Winstar and BNY Letter regarding Term Loan C |
| 1192 | 9/19/2000 | DX 713 | N  Aversano E mail to N  Kantor RE  Winstar/Lucent Deal |
| 1193 | 3/24/2001 | DX 714 | T  Graham invoice J  Ritter re  Invoice |
| 1194 | 3/30/1999 | DX 715 | DELETED |
| 1195 | 2/17/2000 | DX 716 | L  Rogers e mail to J  Orlando, W  Viquiera  N  Aversano, J  Cocito re  Winstar |
| 1196 | 1/5/1999 | DX 717 | DELETED |
| 1197 | 11/6/2000 | DX 718 | Winstar letter to Siemens re  winstar - term loan c |
| 1198 | 9/1/2000 | DX 719 | F  Rubin e mail to K  Chawla re  financing structure |
| 1199 | 4/5/2000 | DX 720 | N  Holcomb letter to A  Zendle re  Siemens proposal |
| 1200 | 11/15/2000 | DX 721 | Daniel_Csillag@lnotes5bankofny com e mail to siddharth kasera@sfs siemens com re  winstar capital corp amendment request |
| 1201 | 3/23/1999 | DX 722 | R  Haffar e mail to bmcguire@wns k7 winstar com re  Lucent Revenue Commitment Call |
| 1202 | 1/13/2000 | DX 723 | P  Soltesz e mail to A  Zendle re  DSLAM architecture impacts on PMP and vice versa |
| 1203 | 5/2/2000 | DX 724 | D  Ackerman e mail to A  Zendle re  Siemens Proposal |
| 1204 | 6/27/2000 | DX 725 | DELETED |
| 1205 | 10/13/2000 | DX 726 | DELETED |
| 1206 | 12/1/2000 | DX 727 | F  Rubin E Mail to B  Zlotnick RE  International Cap Ex Allocation |
| 1207 | 5/8/2001 | DX 728 | DELETED |
| 1208 | 4/29/2001 | DX 729 | K  Devany E Mail to D  Huber, M  Fink, M  Roberts, J  Everding RE  URGENT!  Contract Review Process due Friday April 27, 2001 |
| 1209 | 4/9/2001 | DX 730 | R  Uhl Letter to B  Rouhana RE  Lucent Objections |
| 1210 | 12/29/2000 | DX 731 | K  Monaco E Mail to R  Uhl, T  Graham RE  Permitted Investments Covenant Report  Bank |
| 1211 | | DX 732 | R  Haffar Letter to M  Wilson RE  Agreement for Network Built out Services |
| 1212 | | | INTENTIONALLY LEFT BLANK |
| 1213 | 3/20/2000 | DX 733 | C  Naylor e mail to V  Petrini, T  O'Hara, M  Epstein, L  Rogers re  Lucent Supply Agreement |
| 1214 | 3/7/2001 | DX 734 | E  Perricone E Mail to P  Derrick, M  Montemarano, C  Spurrier, D  Harris, etc RE  Winstar Finance Discussion |

43

EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 1215 | 3/12/1999 | DX 735 | W Plunkett E Mail to N Aversano RE A 1 FINAL Nate Kantor  Briefing |
|---|---|---|---|
| 1216 | 1/4/2001 | DX 736 | E Perricone E Mail to D Hopkins RE Clarifications and Wish List Winstar |
| 1217 | 9/7/2000 | DX 737 | L Rogers E Mail to D Forrester RE Urgent WinStar HK |
| 1218 | 5/24/2000 | DX 738 | J Cocito e mail to W Viqueira N Aversano E Perricone ect re winstar updates |
| 1219 | 5/17/2004 | DX 739 | SEC Complaint Jury Demand |
| 1220 | 9/1/2001 | DX 740 | F Rubin E Mail to S Kasera K Monaco RE Financing Structure |
| 1221 | | DX 742 | Invoice |
| 1222 | | DX 743 | INVOICE DETAIL  ER903765 (highlighted version) |
| 1223 | | DX 744 | Invoice |
| 1224 | | DX 745 | Winstar Inventory Calculation (Pocalyko Cross) |
| 1225 | | DX 746 | Invoice Services Manual |
| 1226 | 11/14/2000 | DX 747 | Email from P Derrick to M Hund-Mejen RE Winstar bank line increase |
| 1227 | | DX 748 | Bates Combined into one chart (PX 306) |
| 1228 | 5/11/2005 | DX 749 | List of Exhibits to Admit |
| 1229 | | DX A | Elizabeth Perricone's Bridge Statement |
| 1230 | | DX B | Portion of Complaint, Pages 54-56 |
| 1231 | | DX E | Elizabeth Perricone Offer of Proof designations of July 24  2001 |
| 1232 | | DX F | Richard Uhl Offer of Proof designations of July 25  2001 |
| 1233 | . | DX G | Leslie Roger Offer of Proof designatins of Aug. 8  2001 |
| 1234 | | DX H | Kevin Monaco Offer of Proof designations of July 11, 2001 and Nov  26  2003 |
| 1235 | 5/4/2000 | DX I | Section of Credit Agreement among WVF 1 LLC and Lucent (also DX 29) |
| 1236 | | DX K | Timothy Grahan Offer of Proof designations of July 24, 2001 |
| 1237 | 5/4/2000 | DX L | Section of Credit Agreement  (also DX 29) |
| 1238 | | DX M | Gary Goldman Offer of Proof designations of Feb  20  2004 |
| 1239 | | DX V | Kenneth Zinghini Offer of Proof designations of July 12  2001 |
| 1240 | 6/20/2001 | DX W | Lucent Notice of Deposition to depose representative of Winstar |
| 1241 | 3/29/2004 | DX Z | Expert Report of John I  Salomon |
| 1242 | | DX AA | List of exhibits submitted by Lucent as an Offer of Proof |

## Plaintiff (PX) Trial Exhibits

| Tab | Date | Exhibit No | Description of Item |
|---|---|---|---|
| 1243 | | PX 1 | Notes re Lucent Strategic Partnership |
| 1244 | 9/30/1998 | PX 2 | N Aversano e mail to N Kantor attaching Winstar and Lucent Technologies Framework for a Strategic Partnership |
| 1245 | 5/8/2001 | PX 3 | N Kantor e mail to B Rouhana re Winstar Partnership Concept |
| 1246 | 5/8/2001 | PX 4 | N Kantor e mail to B Rouhana re Strategic Partnership (responding to 9/30/98 N Aversano e mail) |
| 1247 | 10/2/1998 | PX 5 | Bullet-point notes re Winstar/Lucent Partnership Concept |
| 1248 | 10/3/1998 | PX 6 | N Kantor e mail to N Aversano re Winstar Partnership Concept |
| 1249 | 10/7/1998 | PX 7 | N Aversano fax to R Haffar re Winstar/Lucent Partnership Concept |
| 1250 | | PX 8 | Presentation re Best of Breed and scope of partnership structure |
| 1251 | 10/19/1998 | PX 9 | C Dickson memo to W Rouhana N Kantor S Christ et al re October 19 1998 |
| 1252 | 10/22/1998 | PX 10 | Press release entitled "$2 Billion Winstar/Lucent Strategic Agreement to Expand Winstar's Broadband Network " |
| 1253 | 2/18/2000 | PX 11 | Winstar  Lucent Partership Executive Review |
| 1254 | 7/14/2000 | PX 12 | R Uhl e mail to N Kantor re Dinner meeting with Debbie Hopkins |
| 1255 | | PX 13 | Agreement for Network Buildout Services |

EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 1256 | 5/8/2001 | PX 14 | N Kantor e mail to B Rouhana re Winstar Partnership Concept |
|------|----------|-------|-------------------------------------------------------------|
| 1257 | 9/22/2000 | PX 15 | D Harris e mail to N Kantor and F Jules re Winstar Services Purchase Order |
| 1258 | 9/24/2000 | PX 16 | N Kantor e mail to N Aversano re Winstar Services Purchase Order |
| 1259 | 9/29/2000 | PX 17 | R Uhl memorandum to D Ackerman, F Jules N Kantor J Maloney F Rubin and B Zlotnick re Winstar & Lucent |
| 1260 | 6/16/1999 | PX 18 | Hub and B Site Addendum to the Supply Agreement between Winstar Communications Inc and Lucent Technologies Inc |
| 1261 | 7/11/2000 | PX 19 | Optical Network Addendum to the Supply Agreement between Winstar Communications Inc and Lucent Technologies Inc |
| 1262 | 9/29/2000 | PX 20 | Software Pool Agreement |
| 1263 | 10/13/2000 | PX 21 | D Ackerman e mail to J Everding re Transition Proposal |
| 1264 | 12/14/2000 | PX 22 | R Uhl e mail to F Jules, N Kantor and F Rubin re call with Carole Spurner and Debbie Harris |
| 1265 | 12/22/2000 | PX 23 | V Petrini e mail w/ handwritten notes to N Kantor re Conference Number |
| 1266 | | PX 24 | Winstar Broadband Services for Businesses |
| 1267 | 1/11/2001 | PX 25 | D Ackerman e mail to N Kantor and F Jules re Feedback from January 9th Senior Executive Meeting with Winstar |
| 1268 | 1/17/2001 | PX 26 | D Harris e mail to N Kantor, F Jules R Uhl and D Ackerman re Agenda for January 17, 2001 meeting |
| 1269 | 1/17/2001 | PX 27 | Agenda for Lucent - Winstar Meeting |
| 1270 | 1/17/2001 | PX 28 | Lucent's Vendor Integration Plan for Winstar |
| 1271 | 1/16/2001 | PX 29 | Winstar Global 2001 Budget Analysis (LU gets all Hubs & Bs and Metros) |
| 1272 | 1/29/2001 | PX 30 | D Harris e mail to D Ackerman and R Uhl re Winstar services outsourced to Lucent |
| 1273 | 1/30/2001 | PX 31 | D Harris e mail to M Montemarano C Spurner B Verwaayen, et al re Hubs and B Sites Status Report |
| 1274 | 2/8/2001 | PX 32 | D Ackerman e-mail to N Kantor, R Uhl, F Jules, et al re Proposed Agenda for Winstar/Lucent Meeting Friday 2/9/01 |
| 1275 | 2/9/2001 | PX 33 | Winstar Project Assessment Preliminary Findings Briefing |
| 1276 | 2/9/2001 | PX 34 | Proposed Relationship Structure between Winstar - Lucent |
| 1277 | 5/8/2001 | PX 35 | N Kantor e mail to F Rubin re open items for resolution |
| 1278 | | PX 36 | Lucent/Winstar Strategic Partnership 2001 Opportunity |
| 1279 | 12/15/2000 | PX 37 | M Carney e mail to D Nidowicz re Approval for SI 21952 119 |
| 1280 | 3/27/2001 | PX 38 | F Jules e mail to N Kantor re Lucent contract for 2001 |
| 1281 | 3/30/2001 | PX 39 | M Keefe letter to Winstar Communications Inc re Lucent Credit Facility |
| 1282 | 3/30/2001 | PX 40 | M Montemarano letter to Robert McGuire re termination of Master Service Agreement |
| 1283 | 3/30/2001 | PX 41 | M Keefe letter to Winstar Communications Inc re Winstar Information Regarding Collateral |
| 1284 | 11/6/2000 | PX 42 | J Ritter e mail to B Zlotnick and L Hicks re presentation on proposed addendum to supply Agreement |
| 1285 | 11/10/2000 | PX 43 | F Jules e mail to J Marco re risks and benefits of proposed actions |
| 1286 | 8/30/2000 | PX 44 | L Hicks e mail to D Ackerman re Lucent strategy |
| 1287 | 8/21/2000 | PX 45 | Nate/Nina Meeting NATE'S MISSION TO GET LUCENT TO AGREE TO ALL POINTS LISTED BELOW |
| 1288 | 9/19/2000 | PX 46 | L Hicks e mail to D Ackerman re Lucent meeting 9/19 |
| 1289 | 12/29/1999 | PX 47 | L Hicks e mail to C Naylor re EOQ Letter Edit |
| 1290 | 12/11/2000 | PX 48 | D Ackerman e-mail to J Everding re Winstar/Lucent Deal |
| 1291 | 12/11/2000 | PX 49 | D Ackerman e-mail to J Everding re Winstar/Lucent deal |
| 1292 | 9/20/2000 | PX 50 | L Hicks e mail to R Uhl re Lucent EOQ deal issues |
| 1293 | 9/20/2000 | PX 51 | L Hicks e-mail to R Uhl re Deal Documents |
| 1294 | 12/11/2000 | PX 52 | D Ackerman e mail to J EEverding re Business Deal V2 |
| 1295 | 12/11/2000 | PX 53 | D Ackerman e-mail to J Everding re 3Q Software Pool with comments |

**EXHIBIT A**

**APPELLANT'S AMENDED DESIGNATION OF ITEMS TO**
**BE INCLUDED IN THE RECORD ON APPEAL**

| 1296 | 12/11/2000 | PX 54 | D Ackerman e mail to J Everding re software pool notes |
|------|-----------|-------|-------------------------------------------------------|
| 1297 | 10/23/2000 | PX 55 | L Hicks e mail to D Ackerman B Zlotnick and D Huber re Lucent/Winstar EOQ disconnects |
| 1298 | 2/8/2001 | PX 56 | L Hicks fax to R Uhl re Lucent 3Q Recap |
| 1299 | 10/19/2000 | PX 57 | Proposals to address both overruns and new end quarter request |
| 1300 | 12/19/2000 | PX 58 | L Hicks fax to R Uhl re Optical Equipment Bill and Hold Letters Lucent |
| 1301 | 12/11/2000 | PX 59 | D Ackerman e mail to J EEverding re Lucent Q3 Services |
| 1302 | 9/22/2000 | PX 60 | O Harris letter to D Ackerman re services in support of the Winstar network deployment |
| 1303 | 9/22/2000 | PX 61 | D Harris letter to R Uhl re services in support of the Winstar network deployment |
| 1304 | 12/11/2000 | PX 62 | D Ackerman e mail to J EEverding re Lucent Contractor Services |
| 1305 | 7/10/2000 | PX 63 | B Zlotnick e mail to L Hicks re B Site Pricing |
| 1306 | 11/8/2000 | PX 64 | L Hicks memo to D Ackerman re Ackerman/Plunkett EOQ Issues meeting |
| 1307 | 9/20/2000 | PX 65 | B Zlotnick e mail to F Jules, R Uhl, N Kantor F Rubin and D Ackerman re WNSS 2000 Capital Plan - Action Items |
| 1308 | 12/15/2000 | PX 66 | R Uhl e mail to mexadaktilos@winstar com re End of Quarter Deal |
| 1309 | | PX 67 | D Ackerman e-mail to J Everding re Lucent 3Q revenue deal write up |
| 1310 | 9/27/2000 | PX 68 | R Helfrich e mail to L Hicks reL Bill & Hold Letter |
| 1311 | 12/27/2000 | PX 69 | B Zlotnick e mail to K Monaco and F Rubin re Lucent equipment acceptance |
| 1312 | 9/29/2000 | PX 70 | B Zlotnick letter to V Petrini re Bill and Hold Letter for Lucent Optical Equipment |
| 1313 | 9/29/2000 | PX 71 | B Zlotnick letter to V Petrini re Bill and Hold Letter for Lucent Stinger DSLAMs and cabinets |
| 1314 | 1/18/2001 | PX 72 | DELETED |
| 1315 | 9/29/2000 | PX 73 | B Zlotnick e mail to F Rubin re Deal Parameter Documents |
| 1316 | 9/18/2000 | PX 74 | L Hicks e-mail to D Ackerman and B Zlotnick re 9/19/00 Lucent meeting |
| 1317 | 12/11/2000 | PX 75 | D Ackerman e-mail to J Everding re EoQ Deal |
| 1318 | 12/11/2000 | PX 76 | D Ackerman e-mail to J Everding re Lucent Equipment |
| 1319 | | PX 77 | DX 56 |
| 1320 | 10/4/2000 | PX 78 | F Rubin e mail to R Uhl re Capital Spend 2000 and 2001 |
| 1321 | 12/15/2000 | PX 79 | R Uhl e mail to mexadaktilos@winstar com re 3Q Software Pool with comments |
| 1322 | 1/3/2001 | PX 80 | G Simpson e mail to F Rubin and B Zlotnick re Revised Lucent Credits |
| 1323 | 9/22/2000 | PX 81 | DELETED |
| 1324 | 9/29/2000 | PX 82 | R Uhl memo to D Ackerman F Jules N Kantor, et al re Lucent acceptance of Winstar Service charges |
| 1325 | 8/3/1999 | PX 83 | Notes re Winstar/Lucent Turn-Key process meeting |
| 1326 | 8/9/2000 | PX 84 | M Dowdy e mail to J Diroma re Lucent Bill |
| 1327 | 3/21/2001 | PX 85 | M Montemarano e mail to C Spurrer M Pires and D Harris re chart that winstar sent me |
| 1328 | 9/18/2000 | PX 86 | M Kerner e mail to N Aversano and W Plunkett re Status of Winstar account |
| 1329 | 9/24/2000 | PX 87 | N Kantor e-mail to N Aversano re Winstar services purchase order |
| 1330 | 9/25/2000 | PX 88 | J Cocito e mail to F Manzi re winstar services |
| 1331 | | PX 89 | Daily Progress Report Key Deals |
| 1332 | 4/13/2001 | PX 90 | D Hsu e mail to T O'Hara re subcontract Agreement |
| 1333 | 11/2/1999 | PX 91 | Notes re Winstar Year 2000 spend meeting executive summary |
| 1334 | 3/29/2001 | PX 92 | J Dirome e-mail to W Plunkett re Winstar services pass thru |
| 1335 | 12/17/1999 | PX 93 | J Diroma e-mail to V Petrini, C Naylor, R Helfrich re winstar 400G Orders Call on monday 12/20/99 |
| 1336 | 12/20/1999 | PX 94 | N Aversano e-mail to R McGinn re winstar |
| 1337 | 12/21/1999 | PX 95 | C Naylor e-mail to R Helfrich and V Petrini re EOQ Letter |

46

EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 1338 | 12/21/1999 | PX 96 | Invoice   Winstar purchase order |
|------|-----------|-------|----------------------------------|
| 1339 | 9/30/2000 | PX 97 | Notes re  Lucent  SPN Q1 2000 Bill and Hold Support |
| 1340 | 8/1/2002 | PX 98 | Lucent's Responses and Objections to Plaintiffs' Third Set of Interrogatories |
| 1341 | 3/31/2000 | PX 99 | A  Zendle letter to C  Naylor re  Optical networking equipment |
| 1342 | 3/31/2000 | PX 100 | Notes re  Lucent service providers networks Critical Matters |
| 1343 | 11/27/2000 | PX 101 | M  Montemarano e mail to J  Diroma and W  Fullerton re  fiscal 2000 follow up request |
| 1344 | 1/13/2000 | PX 102 | C  Naylor e mail to C  Assimopoulos re  winstar confirmation letter |
| 1345 | 2/29/2000 | PX 103 | Invoice re  Winstar Purchase Order |
| 1346 | 5/24/2000 | PX 104 | E  Perricone e mail to W  Viquerra  J  Cocito and N  Aversano re winstar update |
| 1347 | 12/13/2000 | PX 105 | Notes re  3Q revenue request |
| 1348 | | PX 106 | Presentation re  Lucent Revenue Recognition Policy |
| 1349 | 8/27/2000 | PX 107 | D  Harris e mail to N  Aversano and D  Hopkins re  winstar briefing |
| 1350 | 8/18/2000 | PX 108 | M  Kerner e mail to N  Aversano and W  Plunkett re  Status of Winsta Account |
| 1351 | 10/30/2000 | PX 109 | A  Dollins e mail to D  Harris  V  Petrini  D  Walsh etc  re  Exec  Review and Bus  Case Approval Call |
| 1352 | 9/27/2000 | PX 110 | N  Aversano letter to R  Uhl re  purchase order |
| 1353 | 12/8/2000 | PX 111 | D  Ackerman e mail to J  Everding re  services addendum |
| 1354 | 12/15/2000 | PX 112 | A  Brunner e mail to V  Petrini  E  De Leon, V  Esperanza etc  re  On behalf of Susan Schnell  12/7/2000 NAR Deal Approval Notification  Winstar Quest, and Verizon |
| 1355 | 10/27/2000 | PX 113 | L  Fawcett e mail to N  De Tura  T  Swift  D  Bulze re  Winstar services proposal |
| 1356 | | PX 114 | Notes re  Business status  Winstar new service briefing |
| 1357 | 11/30/2000 | PX 115 | Notes re  conference call |
| 1358 | 12/3/2000 | PX 116 | D  Harris e mail to C  Spurner re  Winstar financial issues |
| 1359 | 11/21/2000 | PX 117 | D  Harris e-mail to C  Spurner re  sept  20 meeting with Nate Kantor |
| 1360 | 12/28/2000 | PX 118 | M  Montemarano e mail to C  Mcgovern, C  Carroll re  Winstar |
| 1361 | 1/5/2001 | PX 119 | E  Perricone e mail to P  Derrick et al re  Winstar Clarifications and Wish List Materials for Story Board |
| 1362 | 2/2/2001 | PX 120 | B  Verwaayen e mail to M  Montemarano, C  Spurner  D  Harris re  Update to Winstar "strategy" |
| 1363 | 11/21/2003 | PX 121 | DELETED |
| 1364 | 4/17/2001 | PX 122 | Ackerman Affidavit |
| 1365 | 10/21/1998 | PX 123 | Supply Agreement |
| 1366 | 9/18/2000 | PX 124 | L  Hicks e mail to D  Ackerman re  Lucent/Winstar EOQ disconnects |
| 1367 | 9/29/2000 | PX 125 | W000810/ZWC0144192 B  Plunkett letter to D  Ackerman re  purchase Agreement |
| 1368 | 2/7/2001 | PX 126 | L  Hicks fax to D  Ackerman re  Lucent 3Q Recap |
| 1369 | 12/11/2000 | PX 127 | D  Ackerman e-mail to J  Everding re  Lucent and Capex |
| 1370 | 10/20/2000 | PX 128 | B  Plunkett letter to D  Ackerman re  optical equipment W333832/ZWC0144194 |
| 1371 | 10/6/2000 | PX 129 | B  Plunkett letter to D  Ackerman re  equipment and services W000825/ZWC0144193 |
| 1372 | 9/29/2000 | PX 130 | D  Harris letter to D  Ackerman re  unexpected operating costs W000809/ZWC0144191 |
| 1373 | 8/20/2000 | PX 131 | L  Hicks e mail to N  Kantor re  Lucent meeting talking points |
| 1374 | 5/2/2000 | PX 132 | D  Ackerman e mail to A  Zendle re  Siemens Proposal |
| 1375 | 10/20/2000 | PX 133 | B  Plunkett letter to D  Ackerman re  jointly developed pricing and commitments |
| 1376 | 9/22/2000 | PX 134 | D  Harris letter to D  Ackerman re  supply Agreement |
| 1377 | 12/7/2000 | PX 135 | F  Rubin letter to B  Perricone re  wire transfer |

47

EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL

| 1378 | 11/10/2000 | PX 136 | W Rouhana e mail to N Kantor re Services Meeting on 15th |
| 1379 | 12/11/2000 | PX 137 | D Ackerman e mail to J Everding re Services Meeting |
| 1380 | 5/4/2000 | PX 138 | Credit Agreement |
| 1381 | 10/16/2000 | PX 139 | B Plunkett letter to D Ackerman re deferred billing |
| 1382 | 12/11/2000 | PX 140 | B Zlotnick e mail to F Jules and R Fred re Lucent and Capex |
| 1383 | 12/11/2000 | PX 141 | D Ackerman e mail to J Everding re Winstar/Lucent deal |
| 1384 | 10/23/2000 | PX 142 | D Ackerman e mail to L Hicks re Software pool notes |
| 1385 | 1/10/2000 | PX 143 | RE Communication to staff |
| 1386 | 8/20/2000 | PX 144 | L Hicks e mail to N Kantor re Lucent meeting talking points |
| 1387 | 3/27/2001 | PX 145 | Notice of Request for Borrowing |
| 1388 | 3/27/2001 | PX 146 | F Jules to J Marco re Lucent Content for 2001 |
| 1389 | 10/27/2000 | PX 147 | N Kantor e mail to F Jules and R Uhl re 2000 Capex forecast |
| 1390 | 1/5/2001 | PX 148 | F Rubin letter to R Uhl re LU Balance Analysis |
| 1391 | 12/19/2000 | PX 149 | E Perricone letter to Winstar re Lucent Credit Facility |
| 1392 | 11/6/2000 | PX 150 | F Rubin letter to Siemens AG re Term Loan C |
| 1393 | 11/13/2000 | PX 151 | F Rubin letter to M Hund Mejean re Winstar/Lucent Financings |
| 1394 | 11/20/2000 | PX 152 | M Hund Mejean and D Harris letter to F Rubin re increase in Winstar financing |
| 1395 | 9/18/2000 | PX 153 | M Kerner e mail to N Aversano and W Plunkett re Status of Winstar account |
| 1396 | 8/31/2000 | PX 154 | D Harris e mail to W Plunkett and V Heron re Winstar Situation |
| 1397 | | PX 155 | Winstar notes re negative reaction |
| 1398 | 12/11/2000 | PX 156 | D Ackerman e-mail to J Everding re Deal Documents |
| 1399 | 9/19/2000 | PX 157 | N Aversano e mail to N Kantor re winstar/lucent deal |
| 1400 | 9/24/2000 | PX 158 | N Kantor e-mail to N Aversano re Winstar Services Purchase PX Order |
| 1401 | 9/22/2000 | PX 159 | D Harris e mail to N Aversano re Business Deal V2 |
| 1402 | 12/11/2000 | PX 160 | D Ackerman e-mail to J Everding re updated deals list |
| 1403 | | PX 161 | Winstar Daily Progree Report Key Deals |
| 1404 | 9/29/2000 | PX 162 | software pool Agreement between winstar and lucent |
| 1405 | 11/28/2000 | PX 163 | R. Rawson letter to N Aversano re review of a revenue recognition |
| 1406 | 1/4/1999 | PX 164 | Agreement for network build out services WC0011532 WC0011538 & WC0019779 |
| 1407 | 10/23/2000 | PX 165 | Lucent Technologies' Board of Directors name Henry Schacht Chairman and CEO |
| 1408 | 10/26/2000 | PX 166 | D Hopkins message re H Schacht and W Rouhana dinner meeting |
| 1409 | 7/15/2003 | PX 167 | Lucent Technologies comments on Fortune magazine article about its SEC investigation |
| 1410 | 9/25/2000 | PX 168 | N Kantor e mail to D Ackerman F Jules and R Uhl re Updated Deals List |
| 1411 | 9/29/2000 | PX 169 | " Lucent Vendor Relationship Rock Solid" |
| 1412 | 4/18/2001 | PX 170 | Winstar v Lucent Complaint (Adverserial Proceeding) |
| 1413 | 10/19/1998 | PX 171 | W Rouhana e mail to N Kantor, W Rouhana et al re updated materials |
| 1414 | 10/26/2000 | PX 172 | F Rubin e mail to B Rouhana and R Uhl re Lucent Term Sheet |
| 1415 | 2/5/2001 | PX 173 | R Uhl e mail to N Kantor re Anticipated LU Borrowings |
| 1416 | 2/19/2003 | PX 174 | Patricia Russo named chairman of Lucent Technologies, Henry Schacht steps down, but will remain a member of the board |
| 1417 | 11/5/2001 | PX 175 | Deposition testimony of Henry Schacht from Aversano v Lucent |
| 1418 | 9/10/2002 | PX 176 | Deposition testimony of Henry Schacht from Oblek v Lucent |
| 1419 | 10/29/2002 | PX 177 | Deposition testimony of Henry Schacht from Oblek v Lucent |
| 1420 | 11/21/2000 | PX 178 | Lucent Technologies identifies revenue issue from fourth fiscal quarter 2000 |
| 1421 | 7/7/2003 | PX 179 | Article from Fortune magazine entitled "The Whistleblower and the CEO, In the Lucent scandal, the ex boss will walk The woman who accused him is now an SEC target And guess who's paying the penalty' Owners like You " |
| 1422 | 10/22/1998 | PX 180 | $2 Billion Winstar/Lucent Strategic Agreement to Expand Winstar's Broadband Network. |

48

# EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 1423 | 12/14/2000 | PX 181 | J Carter e mail to C Carroll J Diroma C Spurrier et al re Winstar Agreements |
|------|-----------|--------|------|
| 1424 | 1/19/2000 | PX 182 | J Cocito e mail to M Wilson C Naylor and J Diroma re Winstar Services |
| 1425 | 1/20/2000 | PX 183 | J Cocito e mail to J Diroma re Winstar Services |
| 1426 | 9/12/2000 | PX 184 | P Derrick e mail to P Hayes and J Fong re Commitments Forecast |
| 1427 | 10/20/2000 | PX 185 | P Derrick e mail to D Hopkins re Winstar Refinance Notice |
| 1428 | 10/20/2000 | PX 186 | Winstar Executive Briefing |
| 1429 | 11/2/2000 | PX 187 | L W00201651 & L W00016795 L W00016797 P Hayes e mail to P Derrick re Winstar Implications of Refinance Notice |
| 1430 | 11/7/2000 | PX 188 | P Hayes e mail to P Derrick re Winstar Recourse Removal |
| 1431 | 11/10/2000 | PX 189 | P Hayes e mail to P Derrick, and M Keefe Esq re Winstar Gameplan over next few days |
| 1432 | 12/8/2000 | PX 190 | E Perricone e mail to M Hund Mejean and D Hopkins re Winstar Repayment |
| 1433 | 11/16/2000 | PX 191 | P Hayes e mail to M Hund Mejean re Winstar |
| 1434 | 11/7/2000 | PX 192 | M Hund-Mejean letter to R Uhl re Lucent Vendor Financing |
| 1435 | 6/1/2000 | PX 193 | L Rogers e mail to D Hopkins re Winstar |
| 1436 | 8/21/2000 | PX 194 | L Rogers e mail to W Viqueira N Aversano P Derrick G Harris and D Hopkins re Winstar |
| 1437 | 8/27/2000 | PX 195 | D Harris e mail to N Aversano and D Hopkins re Winstar Briefing |
| 1438 | 11/10/2000 | PX 196 | W Fullerton e-mail to M Montemarano re Winstar |
| 1439 | 12/12/2000 | PX 197 | C Spurrier e-mail to D Hopkins re Winstar |
| 1440 | 11/30/2000 | PX 198 | C Spurrier e-mail to D Hopkins and B Verwaayen re Winstar |
| 1441 | 12/28/2000 | PX 199 | M Montemarano e mail to C Megovern and C Carroll re Winstar |
| 1442 | 11/2/2000 | PX 200 | M Hund Mejean e mail to D Hopkins re Winstar |
| 1443 | 1/29/2001 | PX 201 | E Perricone e mail to D Hopkins and B Verwaayen re Winstar Due Diligence |
| 1444 | 12/6/2000 | PX 202 | D Hopkins e-mail to C Spurrier re Winstar |
| 1445 | | PX 203 | P Derrick e-mail to D Hopkins re follow up (response to 12/27/00 e-mail) |
| 1446 | 1/29/2001 | PX 204 | M Montemarano e mail to P Derrick, G Caviness and D Hopkins re Winstar |
| 1447 | 9//5/2000 | PX 205 | Email from L Rogers to Distribution list re Winstar update |
| 1448 | 11/21/2000 | PX 206 | Lucent Technologies Audit Plan Revenue Recognition |
| 1449 | 5/26/2001 | PX 207 | Email from D Hopkins to R McGinn re discussion with B Rouhana |
| 1450 | 8/20/2000 | PX 208 | D Hopkins e mail to W Viqueira N Aversano P Derrick and G Harris re Winstar |
| 1451 | 8/28/2000 | PX 209 | M Mcguinn e mail to B Ball re Winstar briefing |
| 1452 | 8/8/2000 | PX 210 | Anonymous letter to D Hopkins re fabricated revenue |
| 1453 | 3/29/2001 | PX 211 | J Diroma e mail to W Fullerton re Winstar Services Pass thru |
| 1454 | 6/27/2000 | PX 212 | T Loner e mail to J Diroma re $60M Winstar funds Transfer for this last quarter |
| 1455 | 9/30/2000 | PX 213 | PwC working paper re Lucent-Service Provider Network |
| 1456 | 12/20/2000 | PX 214 | H Schacht and D Hopkins letter to PwC re Lucent audits |
| 1457 | 10/26/2000 | PX 215 | Messages from D Hopkins and D Sabeh |
| 1458 | 12/14/2000 | PX 216 | J Carter e mail to C Carroll, J Diroma, C Spurrier and M Hund Mejean re Winstar Agreements |
| 1459 | 12/28/2000 | PX 217 | D Hopkins e mail to M Hund Mejean D Harris and M Montemarano re Winstar |
| 1460 | 9/1/2000 | PX 218 | V Heron e mail to D Harris re Winstar Update |
| 1461 | 10/11/2000 | PX 219 | J Diroma e mail to D Harris V Petrini and R Helfrich re Winstar ONG Bill and Hold |
| 1462 | 12/7/2000 | PX 220 | M Hund-Mejean e mail to D HOpkins re Winstar Repayment |
| 1463 | 6/16/2000 | PX 221 | Presentation re Customer Finance Strategy |

EXHIBIT A

APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
BE INCLUDED IN THE RECORD ON APPEAL

| 1464 | 8/8/2000 | PX 222 | Anonymous letter to D Hopkins re fabricated revenue w/ handwritten notes from C Watson and D Hopkins |
|------|----------|--------|---|
| 1465 | 9/24/2000 | PX 223 | N Kantor e mail to N Aversano re Winstar Services Purchase Order |
| 1466 | | PX 224 | DX 577 |
| 1467 | | PX 225 | Summary General Terms and Conditions Lucent Vendor Finance Facility to WVF LLC |
| 1468 | 5/2/2000 | PX 226 | E Perricone and J Kersten memo to P Sperling J Orlando and B Viqueira re $2 Billion Facility for Winstar |
| 1469 | 9/22/2000 | PX 227 | Notice of Request for Borrowing |
| 1470 | 1/8/2001 | PX 228 | C Spurrier e mail to D Harris re disbursements to Winstar |
| 1471 | 12/28/2000 | PX 229 | E Perricone e mail to P Derrick M Montemarano, D Harris, et al re Winstar-Financing of Services under Credit Agreement dated May 4 2000 |
| 1472 | 11/1/2000 | PX 230 | E Perricone e mail to F Izzo, L Rogers and M Keefe re Winstar memo |
| 1473 | 11/2/2000 | PX 231 | E Perricone e-mail to P Derrick re Winstar Implications of Refinance Notice |
| 1474 | 12/10/2000 | PX 232 | M Hund Mejean e mail to E Perricone re Winstar Repayment |
| 1475 | 1/3/2001 | PX 233 | E Perricone e mail to P Derrick M Keefe and W Keller re Potential Winstar Re negotiations |
| 1476 | 5/4/2000 | PX 234 | Amendment No 2 and New Lender Agreement |
| 1477 | 4/5/2000 | PX 235 | N Holcomb e mail to A Zendle and P Soltesz re Siemens Accelerated Proposal |
| 1478 | 11/6/2000 | PX 236 | DELETED |
| 1479 | 3/23/2001 | PX 237 | Chart of 3Q 1999 Estimated Lucent Billing |
| 1480 | 5/5/2001 | PX 238 | Chart of 4th Quarter 1999 Actual Lucent Billing |
| 1481 | 5/6/2001 | PX 239 | Winstar Communications Lucent Billing for Capital Labor 1Q Actual |
| 1482 | 10/13/2000 | PX 240 | Winstar Communications Lucent Billing for Capital Labor Q3 20001 Actual |
| 1483 | 5/9/2001 | PX 241 | Winstar Communications - Lucent Billing for Capital Labor Q4 20001 Estimate |
| 1484 | 12/27/2000 | PX 242 | J Dorman e mail to G Simpson and M Carney re 4Q Lucent Labor Bill Estimate |
| 1485 | 12/28/2000 | PX 243 | R Uhl fax to M Montemarano re analysis of Winstar's 4Q 2000 Capital Labor |
| 1486 | 4/2/2001 | PX 244 | G Simpson e mail to D Nidowicz re Q1 2001 Financable Labor |
| 1487 | 4/2/2001 | PX 245 | D Nidowicz fax to G Caviness re Lucent Billing for Capital Labor Q1 2001 Estimate |
| 1488 | 3/27/2001 | PX 246 | Notice of Request of Borrowing |
| 1489 | 9/21/1999 | PX 247 | Statement and Invoice to Lucent for $37,075,925 |
| 1490 | 1/21/2000 | PX 248 | Statement and invoice to Lucent in the amount of $38,758,042 |
| 1491 | 5/5/2000 | PX 249 | Statement and invoice to Lucent in the amount of $55 485 175 |
| 1492 | 10/1/2000 | PX 250 | Statement and invoice to Lucent in the amount of $67,291 934 |
| 1493 | 11/29/2000 | PX 251 | P Derrick e mail to M Hund Mejean, J Bisson M Montemarano, et al re Winstar Negotiations |
| 1494 | 12/7/2000 | PX 252 | M Hund Mejean e mail to M Montemarano and C spurrier re Winstar Repayment |
| 1495 | 10/30/2000 | PX 253 | M Montemarano e mail to D Harris re Winstar Services Proposal |
| 1496 | 12/14/2000 | PX 254 | I Carter e mail to C Carroll J Diroma C Spurrier, et al re Winstar Agreements |
| 1497 | 2/9/2001 | PX 255 | Winstar Lucent Meeting Agenda |
| 1498 | 12/29/2000 | PX 256 | Notice of Request for Borrowing |
| 1499 | 11/7/2000 | PX 257 | P Derrick e-mail to M Hund-Mejean re draft Winstar Agreement |
| 1500 | 11/13/2000 | PX 258 | M Montemarano e-mail to G Vashist, F Izzo, W Keller, et al re Winstar Gameplan over next few days |
| 1501 | 11/2/2000 | PX 259 | Credit Review Worksheet prepared by J Alter for WVF I, LLC |

EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL

| 1502 | 12/29/2000 | PX 260 | P Derrick e mail to M Montemarano re payments to Winstar |
| 1503 | 12/29/2000 | PX 261 | B Verwaayen e mail to C Spurrier M Montemarano re Winstar Renegotiations |
| 1504 | 1/2/2001 | PX 262 | Potential Amended Financing Parameters |
| 1505 | 1/14/2001 | PX 263 | D Hopkins e mail re M White re winstar meeting montemarano notes |
| 1506 | 2/12/2001 | PX 264 | R Uhl letter to M Montemarano (cc C Spurrier D Harris B Verwaayen and N Kantor) re Lucent's position on funding for non Lucent performed services |
| 1507 | 11/6/2000 | PX 265 | W Fullerton e mail to M Montemarano re winstar services |
| 1508 | 3/29/2001 | PX 266 | J Diroma e mail to W Fullerton re winstar services pass thru |
| 1509 | 1/20/2000 | PX 267 | J Cocito e mail to J Diroma re winstar services |
| 1510 | 11/7/2000 | PX 268 | C Kelly e mail to W Fullerton re Winstar Services |
| 1511 | 11/10/2000 | PX 269 | J Diroma e Mial to M Montemarano re winstar services addendum restricted internal review and comment |
| 1512 | 11/29/2000 | PX 270 | W Fullerton e mail to C Kelly and J Diroma re Immediate attention requested Winstar Services |
| 1513 | 12/6/2000 | PX 271 | W Fullerton e mail to M Montemarano D Hopkins and M White re winstar Agreement |
| 1514 | 1/15/2001 | PX 272 | Discussion re Winstar refinancing |
| 1515 | 1/2/2001 | PX 273 | Notes re Potential Amended Financing Parameters |
| 1516 | 1/8/2001 | PX 274 | D Harris e mail to C spurrier, B Verwaayen, M Montemarano re Agenda for meeting with Winstar |
| 1517 | 2/6/2001 | PX 275 | C Mcgovern e-mail to C Spurrier, B Verwaayen, D Harris attaching letter to sent to R Uhl on 2/6/01 |
| 1518 | 2/12/2001 | PX 276 | R Uhl letter to M Montemarano (cc C Spurrier, D Harris, B Verwaayen and N Kantor) re Lucent's position on funding of non Lucent performed services |
| 1519 | 2/2/2001 | PX 277 | B Verwaayen e-mail to M Montemarano, C Spurrier and D Harris re Update to Winstar 'strategy' |
| 1520 | 3/21/2001 | PX 278 | E Perricone e-mail to P Derrick and M Hund Mejean re Winstar conversion notes |
| 1521 | 3/21/2001 | PX 279 | M Montemarano e mail to D Harris D Hopkins, M Hund Mejean, et al re 3/21/01 Winstar meeting |
| 1522 | 4/17/2001 | PX 280 | Affidavit of Richard Uhl |
| 1523 | 9/29/2000 | PX 281 | R Uhl to D Ackerman F Jules N Kantor J Maloney, F Rubin and B Zlotnick re Lucent acceptance of Winstar service charges |
| 1524 | 2/7/2001 | PX 282 | DELETED |
| 1525 | 3/30/2001 | PX 283 | DELETED |
| 1526 | 2/25/2001 | PX 284 | F Jules e mail to R Uhl re L'Obrien Cash Forecast |
| 1527 | 11/10/2000 | PX 285 | H Shartel e mail to F Rubin and R Uhl re Savings Recommendations |
| 1528 | 10/20/2000 | PX 286 | H Shartel e mail to F Jules re Winstar actions |
| 1529 | 12/29/2000 | PX 287 | DELETED |
| 1530 | 6/26/2000 | PX 288 | D Ackerman e mail to N Kantor re End of quarter deals with Lucent & Winstar |
| 1531 | 10/12/2000 | PX 289 | D Ackerman e mail to F Jules and R Uhl re Change in Plan on 2000 CapEx Budget |
| 1532 | 8/27/2000 | PX 290 | D Harris e mail to N Aversano re winstar briefing |
| 1533 | 12/11/2000 | PX 291 | Complaint jury demand, certification to mj rule 4 5 1 |
| 1534 | 10/20/2000 | PX 292 | E Perricone e mail to D Harris re Winstar refinance notice |
| 1535 | 9/6/2000 | PX 293 | DELETED |
| 1536 | 9/20/1999 | PX 294 | J Quinn e-mail to J Diroma re winstar services |
| 1537 | 6/27/2000 | PX 295 | T Loner e mail to J Diroma re 60M winstar funds transfer for this last quarter |
| 1538 | 3/30/2000 | PX 296 | Notes re winstar pass thru arrangement |

EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 1539 | 2/27/2000 | PX 297 | J Cocito e mail to J Diroma re Kanan Vocall revenue issues |
|---|---|---|---|
| 1540 | 9/14/1999 | PX 298 | J Diroma e mail to A Borthoumiaus, D Christian etc re End of quarter revenue recognition |
| 1541 | 12/20/1999 | PX 299 | R Halrich e mail to C Asalimopotles re winstar 4000 orders call on Monday |
| 1542 | 3/21/2000 | PX 300 | E Di Pietro e mail to J Diroma re bill and hold |
| 1543 | 12/28/2000 | PX 301 | D Hopkins e mail to M Hund Harris M Montemarano re winstar |
| 1544 | 8/17/2000 | PX 302 | V Petrini e mail to D Harris re A1 Suspension of CS Services |
| 1545 | 12/14/2000 | PX 303 | R Mark e mail to S Rosen D Hsu A Satewitz etc re winstar Agreements |
| 1546 | 3/1/2004 | PX 304 | Response to Lucent's Objections to Plaintiff's Deposition Upon Written Questions of Deborah Harns |
| 1547 | 11/19/2000 | PX 305 | M Hund Mejean e mail to D Harris re Winstar |
| 1548 | 12/8/2000 | PX 306 | R Helfrich e mail to R Kipke and J Diroma re Winstar Bill and Hold IMMEDIATE ATTENTION NEEDED |
| 1549 | 12/8/2000 | PX 307 | R Kipke e mail to R Helfrich and J Diroma re Winstar bill and Hold IMMEDIATE ATTENTION NEEDED |
| 1550 | 12/28/2000 | PX 308 | E Perricone e mail to P Derrick et al re Winstar Financing of Services under Credit Agreement dated May 4 2000 |
| 1551 | 1/26/2001 | PX 309 | Winstar/Lucent Meeting |
| 1552 | 12/8/2000 | PX 310 | D Ackerman e mail to J EEverding re Services Addendum |
| 1553 | 11/2/2000 | PX 311 | M Hund Mejean e-mail to D Hopkins re Winstar |
| 1554 | 12/26/2000 | PX 312 | H Shartel e mail to F Rubin re Net 90 |
| 1555 | 12/19/2000 | PX 313 | E Perricone letter to Winstar Communications Inc re Lucent Credit Facility |
| 1556 | 9/20/1999 | PX 314 | J Quinn e mail to J Diroma re Winstar Services |
| 1557 | 2/1/2001 | PX 315 | D Harris e-mail to M Montemarano and E Perricone re Winstar draw |
| 1558 | 2/6/2001 | PX 316 | M Montemarano e mail to K Becker and P Derrick re 2/5/01 approval for Winstar loan advance. |
| 1559 | 7/24/2000 | PX 317 | J Diroma e mail to J Cocito C Naylor, E Perricone, et al re Winstar Services |
| 1560 | 11/16/2000 | PX 318 | M Hund Mejean e-mail to P Hayes re sending notice to Winstar |
| 1561 | 6/12/1998 | PX 319 | Invoice from Winstar to Lucent in the amount of $25 000,000 |
| 1562 | 10/26/2000 | PX 320 | B Nelson fax to D Harris re Lucent Product Overview from N Kantor |
| 1563 | 12/21/2000 | PX 321 | Lucent Technologies reports results of operational and financial review |
| 1564 | 12/5/2000 | PX 322 | P Derrick e mail to M Hund Mejean re Winstar due diligence |
| 1565 | 9/29/2000 | PX 323 | Software Pool Agreement |
| 1566 | 10/20/2000 | PX 324 | $135M Software Pool Allocations Fiscal Q42000 EoQ Deal |
| 1567 | 11/16/2000 | PX 325 | J Diroma e-mail to R Moogan re Winstar Special Services Arrangement |
| 1568 | 10/19/2000 | PX 326 | Lucent/Winstar End of Quarter Deal Fiscal Year Q42000 |
| 1569 | 3/26/2001 | PX 327 | DELETED |
| 1570 | 12/19/2001 | PX 328 | Deloitte and Touche Valuation Consulting Services Report |
| 1571 | 12/19/2001 | PX 329 | Empire Valuation Consultants Report |
| 1572 | 9/29/2000 | PX 330 | N Aversano e mail to D Harris W Plunkett, and J Cocito re Lucent Credit |
| 1573 | 10/22/1998 | PX 331 | $2 Billion Winstar/Lucent strategic Agreement to expand Winstar's broadband network |
| 1574 | 10/23/2000 | PX 332 | Lucents' Board of Directors names Henry Schacht Chairman and CEO |
| 1575 | 2/27/2003 | PX 333 | Lucent Technologies reaches agree to resolve Agreement in principle with SEC staff all matters under investigation |
| 1576 | 3/17/2004 | PX 334 | Lucent Technologies to make payment as part of SEC settlement |
| 1577 | 12/19/2001 | PX 335 | IDT Corp form 8 K with schedule filed December 19, 2001 with SEC |
| 1578 | 8/28/2002 | PX 336 | IDT Corp form 8 KA with schedules filed August 28, 2002 with SEC |
| 1579 | 11/7/2000 | PX 337 | P Derrick e mail to M Hund Mejean re drafting of Winstar Agreement |
| 1580 | 11/2/2000 | PX 338 | J Diroma fax to M Montemarano re Winstar financing issues |
| 1581 | 11/7/2000 | PX 339 | P Hayes e-mail to P Derrick re Winstar Recourse Removal |
| 1582 | 10/4/2001 | PX 340 | Secured Proof of Claim for $138,957,218 90 |

EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 1583 | 10/11/2001 | PX 341 | Unsecured Proof of Claim |
|---|---|---|---|
| 1584 | 10/11/2001 | PX 342 | Secured Proof of Claim |
| 1585 | 3/28/2003 | PX 343 | Proof of Claim regarding Rejection Damages |
| 1586 | 4/2/2001 | PX 344 | Invoices NWC0004071 NWC0004076 NWC0004077 NWC0004084 NWC0004087 NWC004098 NWC0004621 NWC0004630 NWC0004766 |
| 1587 | | PX 345 | 2Q00 EOQ Deal Summary |
| 1588 | 7/1/2000 | PX 346 | V Petrini e mail to W Plunkett re revised 3Q00 deal |
| 1589 | 7/6/1999 | PX 347 | Lucent inovice to Winstar in the amount of $11 794 770 00 |
| 1590 | 6/26/2000 | PX 348 | C Naylor e mail to V Petrini and W Plunkett re EoQ Deal |
| 1591 | 9/22/2000 | PX 349 | R Helfrich e mail to P Perry A Fulton M Riesa et al re Software Pool |
| 1592 | | PX 350 | Fiscal Q3 2000 EoQ Deal |
| 1593 | | PX 351 | Lucent/Winstar End of Quarter Deals Fiscal Year 2000 |
| 1594 | 11/22/1999 | PX 352 | D Digirolomo e mail to F Manzi re Winstar Yr 2000 Spend Meeting |
| 1595 | 12/30/1999 | PX 353 | M Wilson letter to D Ackerman re $3 000 000 Lucent credit to Winstar |
| 1596 | 2/6/2000 | PX 354 | J Noda e mail to S Cassady and F Manzi re Winstar 4Q99 Funds Transfer PO |
| 1597 | 3/30/2000 | PX 355 | M Wilson fax to D Ackerman re $3,000 000 Lucent credit to Winstar |
| 1598 | 3/31/2000 | PX 356 | A Zendle letter to C Naylor re shipment of optical networking equipment |
| 1599 | 3/31/2000 | PX 357 | M Wilson letter to D Ackerman re $3 000 000 Lucent credit to Winstar |
| 1600 | 4/27/2000 | PX 358 | S Colross e mail to J Cocito re Lucent's Purchase Money debt |
| 1601 | 5/4/2000 | PX 359 | Winstar Outstanding New Facility |
| 1602 | 6/23/2000 | PX 360 | D Ackerman e mail to N Kantor re Lucent cash |
| 1603 | 6/30/2000 | PX 361 | W Plunkett letter to D Ackerman re $14,000 000 Lucent credit to Winstar |
| 1604 | 6/30/2000 | PX 362 | L Hicks e mail to V Petrini re shipment of optical networking equimpment |
| 1605 | 6/30/2000 | PX 363 | W Plunkett letter to D Ackerman re $14,000,000 Lucent credit to Winstar |
| 1606 | 9/1/2000 | PX 364 | D Harris e-mail to L Rogers re Winstar Update |
| 1607 | 9/14/2000 | PX 365 | Lucent/Winstar End of Quarter Deals Fiscal Year 2000 |
| 1608 | 9/25/2000 | PX 366 | J Cocito e mail to F Manzi re Winstar Services |
| 1609 | 9/25/2000 | PX 367 | A. Dollins e-mail D Harris attaching Winstar Issue Status chart |
| 1610 | 9/28/2000 | PX 368 | DELETED |
| 1611 | 9/29/2000 | PX 369 | D Harris e mail to D Ackerman re $10 000 000 00 Lucent PX credit to Winstar |
| 1612 | 9/29/2000 | PX 370 | B Zlotnick letter to V Petrini re Bill and Hold Letter for Lucent Optical Equipment |
| 1613 | 9/29/2000 | PX 371 | N Aversano e mail to D Harris W Plunkett J Cocito re Lucent Credit |
| 1614 | 10/6/2000 | PX 372 | B Plunkett letter to D Ackerman re equipment and services commitment |
| 1615 | 10/16/2000 | PX 373 | B Plunkett letter to D Ackerman re deferred billing |
| 1616 | 10/20/2000 | PX 374 | B Plunkett letter to D Ackerman re $35M credit |
| 1617 | 10/20/2000 | PX 375 | B Plunkett letter to D Ackerman re pricing and commitments |
| 1618 | 12/7/2000 | PX 376 | E Perricone e mail to F Rubin re Prepayment 12/7/00 |
| 1619 | 12/14/2000 | PX 377 | F Jules e mail to D Ackerman re Lucent |
| 1620 | 3/29/2001 | PX 378 | DELETED |
| 1621 | 5/8/2001 | PX 379 | DELETED |
| 1622 | 9/28/2000 | PX 380 | Winstar/Lucent 2000 Partnership Deal |
| 1623 | 6/28/2000 | PX 381 | L Hicks e mail to D Ackerman re EOQ deal |
| 1624 | 10/22/1998 | PX 382 | Winstar Conference Call transcript |
| 1625 | 7/14/1999 | PX 383 | N Kantor e-mail to C Dickson, F Rubin and J Dwyer re Response to Your Request |
| 1626 | 4/5/2001 | PX 384 | DELETED |
| 1627 | 4/10/2001 | PX 385 | DELETED |
| 1628 | 6/28/2001 | PX 386 | DELETED |
| 1629 | 6/29/2001 | PX 387 | DELETED |
| 1630 | 4/22/1999 | PX 388 | J Dirome e mail to W Plunkett re winstar services |
| 1631 | 1/4/2000 | PX 389 | A Carrone e-mail to M Lester A Jerden R Lepore, etc re winstar |

EXHIBIT A

**APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
BE INCLUDED IN THE RECORD ON APPEAL**

| | | | |
|---|---|---|---|
| 1632 | 1/18/2000 | PX 390 | J Diroma e mail to C Naylor M Wilson M Epstein etc re winstar services |
| 1633 | 1/20/2000 | PX 391 | J Cocito e mail to J Diroma re winstar services |
| 1634 | 2/14/2000 | PX 392 | C Naylor e mail to J Diroma J Cocito and D Rigotti re update 2 FW winstar services |
| 1635 | 11/9/2000 | PX 393 | J Diroma e mail to V Patrini D Rigotti and A Fulton re Winstar services opportunity |
| 1636 | 12/21/1999 | PX 394 | Winstar purchase order |
| 1637 | 12/30/1999 | PX 395 | A Zardla letter to C Naylor re Enginering |
| 1638 | 3/28/2000 | PX 396 | C Naylor e mail to V Petrini re winstar bill and hold |
| 1639 | 12/8/2000 | PX 397 | J Diroma e mail to D Rigotti re winstar issues |
| 1640 | 1/3/2001 | PX 398 | J Diroma e mail to M Weinman and K O Grady re March Inventory JE for Winstar |
| 1641 | | PX 399 | Lucents plan for policy change regarding "pass through winstar services" |
| 1642 | 9/30/2000 | PX 400 | Notes re Winstar pass thru Agreement |
| 1643 | 12/10/1999 | PX 401 | C Naylor e mail to V Petrini re Response to your letter of this afternoon |
| 1644 | | PX 402 | DELETED |
| 1645 | 2/8/2001 | PX 403 | M Montemarano e mail to C Mcgovern re Winstar Storyboard (sent on behalf of Debbie Harns) |
| 1646 | 3/20/2001 | PX 404 | D Harris e mail to L Alexander re Equipment in Lucent Warehouse |
| 1647 | 4/12/2001 | PX 405 | E Perricone memorandum to D Hopkins re Winstar |
| 1648 | 9/6/2000 | PX 406 | L Rogers memorandum to D Hopkins N Aversano and P Derrick re Barron's September 4, 2000 article and Reuters September 5, 2000 commentary |
| 1649 | 11/10/2000 | PX 407 | DELETED |
| 1650 | 11/10/2000 | PX 408 | DELETED |
| 1651 | 4/9/2001 | PX 409 | DELETED |
| 1652 | 4/11/2001 | PX 410 | DELETED |
| 1653 | 10/20/1998 | PX 411 | S Bryant e mail to M Oclst re Board Meeting Slides |
| 1654 | 5/14/2002 | PX 412 | Deposition testimony of Richard McGinn from Aversano v Lucent |
| 1655 | 5/14/2002 | PX 413 | DELETED |
| 1656 | 5/4/2000 | PX 414 | DELETED |
| 1657 | 12/4/2000 | PX 415 | E Perricone e mail to F Rubin, K Monaco and R Uhl re Winstar Due Diligence |
| 1658 | 12/8/2000 | PX 416 | K Monaco letter to W Keller enclosing materials requested by E Perricone in her 12/4/00 e-mail message |
| 1659 | 12/8/2000 | PX 417 | K. Monaco e mail to F Rubin re Winstar due diligence questions |
| 1660 | 10/19/2000 | PX 418 | E Perricone e mail to P Derrick re WVF I LLC Refinancing Requirement |
| 1661 | 12/18/2000 | PX 419 | M Hund Mejean e mail to E Perricone, M Keefe, R Mark et al re Winstar Request for Credit Memo to reduce Lucent Loans below $500M |
| 1662 | 12/19/2000 | PX 420 | D Hopkins e mail to D Harris C Spurrier and M Hund Mejean re Winstar refinancing notice |
| 1663 | 12/28/2000 | PX 421 | M Hund Mejean e mail to D Harris re Winstar Refinancing Notice |
| 1664 | | PX 422 | Lucent/Winstar 'Want List |
| 1665 | 3/7/2001 | PX 423 | DELETED |
| 1666 | 3/16/2001 | PX 424 | DELETED |
| 1667 | 5/17/2001 | PX 425 | DELETED |
| 1668 | 1/3/2001 | PX 426 | A Alfred e-mail to E Perricone and K Becker re 2nd borrowing request from Winstar |
| 1669 | 1/4/2001 | PX 427 | D Harris e mail to A Dollins re call to discuss Winstar services turnkey proposal |
| 1670 | 3/21/2001 | PX 428 | Winstar/Lucent Meeting - Finance Matters |
| 1671 | 3/28/2001 | PX 429 | DELETED |
| 1672 | 4/12/2001 | PX 430 | DELETED |
| 1673 | 7/9/2001 | PX 431 | DELETED |

54

## EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 1674 | 2/1/2001 | PX 432 | R Uhl e mail to K Monaco re Cash Forecast |
|---|---|---|---|
| 1675 | 2/6/2001 | PX 433 | DELETED |
| 1676 | 12/29/2000 | PX 434 | Notice of Request for Borrowing |
| 1677 | 12/22/2000 | PX 435 | Notice of Request of Borrowing |
| 1678 | 12/18/2000 | PX 436 | J Carter e mail to SPN NA Vice Presidets re New Rules of the Road |
| 1679 | 10/3/2000 | PX 437 | DELETED |
| 1680 | 12/11/2000 | PX 438 | D Ackerman to J Everding re EO3Q Deal and Follow ups |
| 1681 | 5/17/2004 | PX 439 | DELETED |
| 1682 | 11/16/2000 | PX 440 | D Harns e mail to C Spurrier re Outsourcing Services |
| 1683 | 12/8/2000 | PX 441 | F Rubin letter R Uhl re Due Diligence questions |
| 1684 | 12/8/2000 | PX 442 | K Monaco letter to W Keller enclosing materials requested by E Perricone in 12/04/00 e mail |
| 1685 | 12/15/2000 | PX 443 | F Rubin letter to E Perricone re invoice number WVF1121500 for $62 600 285 09 |
| 1686 | 1/17/2001 | PX 444 | L Fawcett e mail to M Waugh re Winstar Services Agreement |
| 1687 | 3/23/2001 | PX 445 | DELETED |
| 1688 | 2/13/2001 | PX 446 | DELETED |
| 1689 | 2/20/2001 | PX 447 | DELETED |
| 1690 | 8/21/2004 | PX 448 | DELETED |
| 1691 | 2/20/2001 | PX 449 | DELETED |
| 1692 | 8/16/2002 | PX 450 | R Cheng memo to P Cummings re Review of Valuation Analysis for Winstar Communications Inc Impairment Analysis for December 31 2000 and September 30 2001 |
| 1693 | 3/28/2001 | PX 451 | DELETED |
| 1694 | 12/4/2000 | PX 452 | E Perricone e mail to F Rubin K Monaco R Uhl re Winstar Due Diligence |
| 1695 | 12/7/2000 | PX 453 | W Keller e mail to K Monaco re due diligence questions |
| 1696 | 12/8/2000 | PX 454 | K Monaco letter to W Keller enclosing materials requested by E Perricone in 12/04/00 e-mail |
| 1697 | | PX 455 | DELETED |
| 1698 | | PX 456 | DELETED |
| 1699 | 11/13/2000 | PX 457 | F Rubin letter to M Hund Mejean re Winstar/Lucent Financings |
| 1700 | 2/25/2004 | PX 458 | DELETED |
| 1701 | 2/26/2004 | PX 459 | DELETED |
| 1702 | 2/25/2004 | PX 460 | Solvency Expert Report of Stephen Scherf |
| 1703 | 2/25/2004 | PX 461 | DELETED |
| 1704 | 2/26/2004 | PX 462 | Expert Report of Paul W Pocalyko |
| 1705 | | PX 463 | DELETED |
| 1706 | 8/21/2000 | PX 464 | DELETED |
| 1707 | 1/4/2001 | PX 465 | E Perricone e mail to D Hopkins re Clarifications and Wish list Winstar |
| 1708 | 3/21/2001 | PX 466 | DELETED |
| 1709 | 3/21/2001 | PX 467 | DELETED |
| 1710 | 3/21/2001 | PX 468 | DELETED |
| 1711 | 3/20/2001 | PX 469 | DELETED |
| 1712 | 1/17/2001 | PX 470 | DELETED |
| 1713 | 11/1/2000 | PX 471 | DELETED |
| 1714 | 10/8/2000 | PX 472 | DELETED |
| 1715 | 3/19/2001 | PX 473 | DELETED |
| 1716 | 3/13/2001 | PX 474 | DELETED |
| 1717 | 8/21/2000 | PX 475 | L Rogers e mail to W Viqueira N Aversano, P Derrick et al re Winstar refinancing |
| 1718 | 9/6/2000 | PX 476 | L Rogers e mail to D Hopkins W Viqueira N Aversano, et al re Winstar Chronology |

# EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 1719 | 11/16/2000 | PX 477 | P Derrick e mail to D Harris R Mark M Montemarano et al re draft letter to Fred Rubin |
|------|-----------|--------|----------------------------------|
| 1720 | 3/27/2001 | PX 478 | Notice of Request for Borrowing |
| 1721 | 3/12/2004 | PX 479 | Defendant's Amended and Supplemental Responses and Objections to Plaintiff's Third Set of Interrogatories |
| 1722 | 6/11/2004 | PX 480 | Declaration of Vernon Terrell in Support of Motion of Defendant Lucent Technologies Inc For Summary Judgment with Accompanying Exhibits |
| 1723 | 4/19/2004 | PX 481 | Defendant's Additional Supplemental Response to Interrogatory No 1 of Plaintiff's Third Set of Interrogatories |
| 1724 | 3/12/2001 | PX 482 | DELETED |
| 1725 | 3/7/2001 | PX 483 | DELETED |
| 1726 | 3/29/2000 | PX 484 | DELETED |
| 1727 | 3/30/2000 | PX 485 | DELETED |
| 1728 | 3/9/1999 | PX 486 | R Haffar e mail to N Kantor re  Update re meeting with Nina Aversano |
| 1729 | 3/27/1999 | PX 487 | R Haffar e mail to N Kantor re  Lucent update  no action necessary |
| 1730 | 7/26/2000 | PX 488 | DELETED |
| 1731 | 8/5/1999 | PX 489 | DELETED |
| 1732 | 12/17/1999 | PX 490 | D Ackerman e mail to M Wilson re  Phone System for ICI will not be deployed by Lucent |
| 1733 | 6/30/2000 | PX 491 | D Ackerman e mail to L Hicks re  Software Pool Agreement |
| 1734 | 11/16/2000 | PX 492 | DELETED |
| 1735 | 12/20/2000 | PX 493 | DELETED |
| 1736 | 3/17/2001 | PX 494 | DELETED |
| 1737 | 6/27/2000 | PX 495 | DELETED |
| 1738 | | PX 496 | DX 141 |
| 1739 | | PX 497 | DELETED |
| 1740 | | PX 498 | DX 328 |
| 1741 | | PX 499 | DX 354 |
| 1742 | | PX 500 | DX 442 |
| 1743 | | PX 501 | DX 575 |
| 1744 | 12/31/1999 | PX 502 | DX-211  Winstar 12/31/99 10 K |
| 1745 | 9/30/2000 | PX 503 | DX 429   Winstar 9/30/99 10Q |
| 1746 | 12/27/2000 | PX 504 | Lucent 10 K |
| 1747 | 12/19/2001 | PX 505 | Order Authorizing Sale of Certain of Debtors' Assets Free & Clear of Liens |
| 1748 | 4/9/2003 | PX 506 | Stipulation and Approved Order Resolving Motion of Secured Creditor Lucent Technologies Inc  for Relief from Automatic Stay |
| 1749 | 11/12/2003 | PX 507 | Order Approving Settlement with Lucent Technologies Inc  Pursuant to Fed R Bankr P 9019 |
| 1750 | 11/4/2004 | PX 508 | Order Approving Settlement with Lucent Technologies Inc  PX Pursuant to Fed R Bankr P 9019 |
| 1751 | 1/4/2001 | PX 509 | Email from D Rigotti to V Petrini and J Newsom re Restructuring Structure |

*In re* Winstar Communications, Inc  et al
**Bankruptcy Case #01-01430-JBR**

| Tab | Date | Bankr Docket No | Description of Item |
|-----|------|-----------------|---------------------|
| 1752 | 04/18/2001 | 1 | VOLUNTARY Petition Under Chapter 11 with Exhibit A, List of Creditors Holding 20 Largest Unsecured Claims, Declaration and Certificate of Resolutions |

# EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 1753 | 05/15/2001 | 219 | MOTION for Order [i] Approving Asset Purchase Agreement Between Debtor and Sayers Group LLC [ii] Authorizing Sale of Assets Free and Clear of Liens Claims and Encumbrances, [iii] Authorizing Debtor to Assume and Assign Certain Executory Contracts and Unexpired Leases a nd [iv] Granting Related Relief |
|---|---|---|---|
| 1754 | 06/06/2001 | 329 | MOTION for Order [i] Approving Asset Purchase Agreement Between Debtor and E&J Acquisition [ii] Authorizing Sale or Assets Free and Clear of Liens Interests, Claims and Encumbrances [iii] Authorizing Debtor to Assume and Assign Certain Executory Contracts and Unexpired Leases and [iv] Granting Related Relief |
| 1755 | 06/06/2001 | 332 336 | STIPULATION to Adjourn Until Further Notice the Hearing on Motion for Relief from Stay, and Order entered on 6/8/2001 [Docket #336] |
| 1756 | 06/13/2001 | 362 | NOTICE of Additional Changes to Post Petition Credit Agreement |
| 1757 | 06/13/2001 | 363 | MOTION for Order [I] Approving Sale and Purchase Agreement Between Winstar International Inc and KDDI Corporation, [II] Authorizing Sale of Shares Free and Clear of Liens Claims Interests and Encumbrances and [III] Granting Related Relief |
| 1758 | 06/14/2001 | 371 | MOTION for Order [I] Approving Stock Purchase Agreement Between Winstar International Inc and Datco S A , [II] Authorizing Sale of Shares and Debt Interests Free and Clear of Liens Claims and Encumbrances and [III] Granting Related Relief |
| 1759 | 06/14/2001 | 373 | MOTION for Relief from Stay |
| 1760 | 06/15/2001 | 377 | INTERIM Order Authorizing Debtor to Enter into Amendment To Post Petition Credit Agreement Re Item # 334 |
| 1761 | 06/21/2001 | 423 | MONTHLY Reporting Requirements [INITIAL] For the Month Ending 05/31/01 [Part 1 of 3] |
| 1762 | 06/21/2001 | 424 | MONTHLY Reporting Requirements [INITIAL] For the Month Ending 05/31/01 [Part 2 of 3] |
| 1763 | 06/21/2001 | 425 | MONTHLY Reporting Requirements [INITIAL] For the Month Ending 05/31/01 [Part 3 of 3] |
| 1764 | 06/21/2001 | 429 | ORDER Signed Approving Asset Purchase Agreement Between Debtor and E&J Acquisition LLC [II] Authorizing Sale of Assets Free and Clear of Liens Interests Claims and Encumbrances, [III] Authorizing Debtor to Assume and Assign Certain Executory Contracts and Unexpired Leases and [IV] Granting Related Relief Re Item # 329 |
| 1765 | 06/21/2001 | 430 | ORDER Signed [I] Approving Asset Purchase Agreement Between Debtor and Sayers Group LLC, [II] Authorizing Sale of Assets Free and Clear of Liens, Claims and Encumbrances [III] Authorizing Debtor to Assume and Assign Certain Executory Contracts and Unexpired Leases an d [IV] Granting Related Relief Re Item # 219 |
| 1766 | 06/27/2001 | 485 | ORDER Signed [I] Approving Stock Purchase Agreement Between Winstar International, Inc And Datco S A , [II] Authorizing Sale of Shares Free and Clear of Liens Claims and Encumbrances and [III] Granting Related Relief Re Item # 371 |
| 1767 | 06/28/2001 | 487 | MOTION for Order Approving [I] Procedures To Sell or Otherwise To Dispose of [A] Certain Assets of Various International Non Debtor Affiliates of Winstar Communications, Inc ["WCI"] And Winstar International, Inc ["Winstar International"], And [B] Certain Assets of WCI And Winstar International Related Thereto Free And Clear Of Any Liens Claims and Encumbrances And [II] the Use of Debtors' Funds in Connection Therewith, Without Further Court Approval |
| 1768 | 06/29/2001 | 492 | ORDER Signed In Court [FINAL AMENDMENT] Authorizing Debtors In Possession To Enter Into Amendment To Post-Petition Credit Agreement Re Item # 377 |

## EXHIBIT A

### APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
### BE INCLUDED IN THE RECORD ON APPEAL

| 1769 | 06/29/2001 | 494 | MOTION for Order Approving Asset Procedures To Sell Certain Assets Free And Clear of Any Liens Claims Interests And Encumbrances Without Further Court Approval |
|------|------------|-----|---|
| 1770 | 06/29/2001 | 503 | [SECOND AMENDED] And Restated Senior Secured Super Priority Debtor In Possession Credit Agreement |
| 1771 | 07/06/2001 | 530 | MOTION for Order [i] Approving Asset Purchase Agreement Between Winstar New Media Company Inc And Winstar Interactive Media Sales, Inc As Sellers And Interep Interactive Inc As Purchaser [ii] Authorizing Sale Of Assets Free And Clear Of Liens, Claims And Encumbrance s [iii] Authorizing Winstar Inveractive Media Sales Inc To Assume And Assign Certain Executory Contracts And An Unexpired Leases And [iv] Granting Related Relief |
| 1772 | 07/09/2001 | 533 | SUMMARY of Schedules [01 1442] |
| 1773 | 07/09/2001 | 534 | SUMMARY of Schedules [01 1444] |
| 1774 | 07/09/2001 | 535 | SUMMARY of Schedules [01 1446] |
| 1775 | 07/09/2001 | 536 | SUMMARY of Schedules [01 1435] |
| 1776 | 07/09/2001 | 537 | SUMMARY of Schedules [01 1436] |
| 1777 | 07/09/2001 | 538 | SUMMARY of Schedules [01 1434] |
| 1778 | 07/09/2001 | 539 | SUMMARY of Schedules [01 1440] |
| 1779 | 07/09/2001 | 540 | SUMMARY of Schedules [01 1455] |
| 1780 | 07/09/2001 | 541 | SUMMARY of Schedules [01 1439] |
| 1781 | 07/09/2001 | 542 | SUMMARY of Schedules [01 1456] |
| 1782 | 07/09/2001 | 543 | SUMMARY of Schedules [01-1438] |
| 1783 | 07/09/2001 | 544 | SUMMARY of Schedules [01 1441] |
| 1784 | 07/09/2001 | 545 | SUMMARY of Schedules [01-1449] |
| 1785 | 07/09/2001 | 546 | SUMMARY of Schedules [01 1448] |
| 1786 | 07/09/2001 | 547 | SUMMARY of Schedules [01 1447] |
| 1787 | 07/09/2001 | 548 | SUMMARY of Schedules [01 1430] |
| 1788 | 07/09/2001 | 549 | SUMMARY of Schedules [01 1452] |
| 1789 | 07/09/2001 | 550 | SUMMARY of Schedules [01 1453] |
| 1790 | 07/09/2001 | 551 | SUMMARY of Schedules [01 1437] |
| 1791 | 07/09/2001 | 552 | SUMMARY of Schedules [01 1433] |
| 1792 | 07/09/2001 | 553 | SUMMARY of Schedules [01 1462] |
| 1793 | 07/09/2001 | 554 | SUMMARY of Schedules [01 1450] |
| 1794 | 07/09/2001 | 555 | SUMMARY of Schedules [01 1432] |
| 1795 | 07/09/2001 | 556 | SUMMARY of Schedules [01 1454] |
| 1796 | 07/09/2001 | 557 | SUMMARY of Schedules [01 1457] |
| 1797 | 07/09/2001 | 558 | SUMMARY of Schedules [01 1460] |
| 1798 | 07/09/2001 | 559 | SUMMARY of Schedules [01 1459] |
| 1799 | 07/09/2001 | 560 | SUMMARY of Schedules [01 1461] |
| 1800 | 07/09/2001 | 561 | SUMMARY of Schedules [01 1458] |
| 1801 | 07/09/2001 | 562 | SUMMARY of Schedules [01 1431] |
| 1802 | 07/09/2001 | 563 | SUMMARY of Schedules [01 1443] |
| 1803 | 07/09/2001 | 564 | STATEMENT of Financial Affairs [01 1458] |
| 1804 | 07/09/2001 | 565 | STATEMENT of Financial Affairs [01 1454] |
| 1805 | 07/09/2001 | 566 | STATEMENT of Financial Affairs [01 1433] |
| 1806 | 07/09/2001 | 567 | STATEMENT of Financial Affairs [01 1457] |
| 1807 | 07/09/2001 | 568 | STATEMENT of Financial Affairs [01 1437] |
| 1808 | 07/09/2001 | 569 | STATEMENT of Financial Affairs [01-1432] |
| 1809 | 07/09/2001 | 570 | STATEMENT of Financial Affairs [01-1460] |
| 1810 | 07/09/2001 | 571 | STATEMENT of Financial Affairs [01 1459] |

RLFI 2986514 1

EXHIBIT A

**APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
BE INCLUDED IN THE RECORD ON APPEAL**

| 1811 | 07/09/2001 | 572 | STATEMENT of Financial Affairs [01 1431] |
|---|---|---|---|
| 1812 | 07/09/2001 | 573 | STATEMENT of Financial Affairs [01 1461] |
| 1813 | 07/09/2001 | 574 | STATEMENT of Financial Affairs [01 1442] |
| 1814 | 07/09/2001 | 575 | STATEMENT of Financial Affairs [01 1444] |
| 1815 | 07/09/2001 | 576 | STATEMENT of Financial Affairs [01 1446] |
| 1816 | 07/09/2001 | 577 | STATEMENT of Financial Affairs [01 1435] |
| 1817 | 07/09/2001 | 578 | STATEMENT of Financial Affairs [01 1436] |
| 1818 | 07/09/2001 | 579 | STATEMENT of Financial Affairs [01 1434] |
| 1819 | 07/09/2001 | 580 | STATEMENT of Financial Affairs [01 1455] |
| 1820 | 07/09/2001 | 581 | STATEMENT of Financial Affairs [01-1439] |
| 1821 | 07/09/2001 | 582 | STATEMENT of Financial Affairs [01 1456] |
| 1822 | 07/09/2001 | 583 | STATEMENT of Financial Affairs [01 1438] |
| 1823 | 07/09/2001 | 584 | STATEMENT of Financial Affairs [01 1441] |
| 1824 | 07/09/2001 | 585 | STATEMENT of Financial Affairs [01 1449] |
| 1825 | 07/09/2001 | 586 | STATEMENT of Financial Affairs [01 1448] |
| 1826 | 07/09/2001 | 587 | STATEMENT of Financial Affairs [01 1447] |
| 1827 | 07/09/2001 | 588 | STATEMENT of Financial Affairs [01 1452] |
| 1828 | 07/09/2001 | 589 | STATEMENT of Financial Affairs [01 1450] |
| 1829 | 07/09/2001 | 590 | STATEMENT of Financial Affairs [01-1453] |
| 1830 | 07/09/2001 | 591 | STATEMENT of Financial Affairs [01 1451] |
| 1831 | 07/09/2001 | 592 | STATEMENT of Financial Affairs [01 1430] |
| 1832 | 07/09/2001 | 593 | STATEMENT of Financial Affairs [01 1440] |
| 1833 | 07/09/2001 | 594 | STATEMENT of Financial Affairs [01 1462] |
| 1834 | 07/09/2001 | 595 | STATEMENT of Financial Affairs [01-1443] |
| 1835 | 07/09/2001 | 596 | SUMMARY of Schedules [01-1451] |
| 1836 | 07/09/2001 | 663 | SUMMARY of Schedules [01 1445] |
| 1837 | 07/09/2001 | 664 | STATEMENT of Financial Affairs [01 1445] |
| 1838 | 07/13/2001 | 636 | STIPULATION To Adjourn Until Further Notice The Hearing On The Motion For Relief From Automatic Stay Or Alternatively, For Adequate Protection With Respect to Certain Investment And Disbursement Accounts |
| 1839 | 07/16/2001 | 640 | OBJECTION To Motion For Order Approving Procedures To Sell Certain Assets Free And Clear Of Any Liens Claims Interests And Encumbrances Without Further Court Approval |
| 1840 | 07/17/2001 | 647 | OBJECTION To Motion For Order [I] Approving Asset Purchase Agreement Between Winstar New Media Company Inc And Winstar Interactive Inc As Purchaser, [II] Authorizing Sale Of Assets Free And Clear Of Liens Claims And Encumbrances [III] Authorizing Winstar Interactive Media Sales, Inc to Assume And Assign Certain Executory Contracts And An Unexpired Lease And [IV] Granting Related Relief |
| 1841 | 07/19/2001 | 684 | ORDER Signed In Court Approving Procedures To Sell Certain Assets Free And Clear Of Any Liens Claims And Encumbrances Without Further Court Approval Re Item # 487 |
| 1842 | 07/20/2001 | 688 | ORDER Signed Approving Procedures To Sell Certain Assets Free And Clear Of Any Liens, Claims Interests And Encumbrances Without Further Court Approval Re Item # 494 |
| 1843 | 07/26/2001 | 727 | ORDER Signed [I] Approving Asset Purchase Agreement Between Winstar Interactive Media Sales, Inc And Interep Interactive, Inc , [II] Authorizing Sale Of Assets Free And Clear Of Liens, Claims And Encumbrances, [III] Authorizing Winstar Interactive Media Sales, Inc To Assume And Assign Certain Executory Contracts And Unexpired Leases And [IV] Granting Related Relief Re Item # 530 |

EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| | | | |
|---|---|---|---|
| 1844 | 07/27/2001 | 747 | Motion to Approve The Agreement And Plan Of Merger Between Winstar New Media Company Inc As Seller And Gegulus International Capital Co As Purchaser Including Break Up Fee And Expense Reimbursement Filed by Edwin J Harron Atty/DEBTOR |
| 1845 | 08/07/2001 | 780 | Motion to Approve Sale (i) Approving Asset Purchase Agreement Between Winstar New Media Company, Inc as Seller and Sycamore Venture Capital, L P and Sycamore Investors' Fund L P as Purchasers (ii) Authorizing Sale of Assets Free and Clear of Liens Claims and Encumbrances and (iii) Granting Related Relief |
| 1846 | 08/07/2001 | 781 | Motion to Approve (i) Equipment Agreement Between Winstar Wireless Inc and Voicestream PCS BTA I Corporation and (ii) Subject to Inter Alia Court Approval of Such Equipment Purchase Agreement Authorizing the Rejection of Unexpired Lease of Nonresidential Real Property Filed by WINSTAR COMMUNICATIONS, INC |
| 1847 | 08/24/2001 | 895 | Motion to Approve ASSET PURCHASE AGREEMENT BETWEEN WINSTAR WIRELESS, INC AND WORLDLEC COMMUNICATIONS CORP Filed by WINSTAR COMMUNICATIONS, INC |
| 1848 | 08/29/2001 | 918 | Motion to Approve Sale (i) Approving the Asset Purchase Agreement (ii) Authorizing Sale of Assets Free and Clear of Liens Interests Claims and Encumbrances (iii Authorizing Winstar Wireless Inc to Assume and Assign Certain Executory Contracts and Unexpired Leases and (iv) Granting Related Relief Filed by WINSTAR COMMUNICATIONS INC |
| 1849 | 08/29/2001 | 947 | Order (i) Approving Purchase Agreement Between WINSTAR NEW MEDIA COMPANY,INC & SYCAMORE VENTURE CAPITAL L P & SYCAMORE INVESTORS' FUND L P (ii) Authorizing Sale of Company Stock Free & Clear of Liens Claims & Encumbrances & (iii) Granting Related Relief Signed on 8/29/2001 (related document(s)780) |
| 1850 | 08/29/2001 | 948 | Order (I) Approving Equipment Purchase Agreement Between WINSTAR WIRELESS, INC & VOICESTREAM PCS BTA I CORPORATION & (ii) Subject to, INTER ALIA, court Approval of Such Equipment Purchase Agreement, Authorizing Rejection of Unexpired Lease of Nonresidential Real Property & Granting Related Relief Signed on 8/29/2001 (related document(s)781) |
| 1851 | 09/04/2001 | 929 | Debtor In Possession Monthly Operating Report for Filing Period 07/31/2001 Filed by WINSTAR COMMUNICATIONS INC |
| 1852 | 09/07/2001 | 954 | Motion to Approve Debtors' Motion For Order Pursuant to Bankruptcy Code Sections 363(b) 363(f), and 363(m) and Fed R Bankr P 9019 (i) Approving Purchase Agreement With Equity Broadcasting Corporation (ii) Authorizing Sale of Assets Free and Clear of Liens Interests Claims and Encumbrances (iii) Authorizing the Release Agreement and (iv) Granting Related Relief Filed by WINSTAR COMMUNICATIONS INC |
| 1853 | 09/07/2001 | 955 | Motion to Approve Debtors' Motion For Order Pursuant to Bankruptcy Code Sections 363(b) 363(f), 363(m) and 365 (i) Approving Asset Purchase Agreement Between Winstar Wireless, Inc and Worldlec Communications Corp , (ii) Authorizing Sale of Assets of Winstar ICI Division Free and Clear of Liens, Interests Claims and Encumbrances, (iii) Authorizing Winstar Wireless Inc to Assume and Assign Certain Executory Contracts and Unexpired Leases and (iv) Granting Related Relief Filed by WINSTAR COMMUNICATIONS, INC |

EXHIBIT A

APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
BE INCLUDED IN THE RECORD ON APPEAL

| 1854 | 09/07/2001 | 956 | Motion to Approve Debtors' Motion For Order Pursuant to Bankruptcy Code Sections 363(b) 363(f) 363(m) and 365 (i) Approving the Asset Purchase Agreement (ii) Authorizing Sale of Assets of Winstar-Xnet Division Free and Clear of Liens Interests Claims and Encumbrances (iii) Authorizing Winstar Wireless Inc to Assume and Assign Certain Executory Contracts and Unexpired Leases and (iv) Granting Related Relief Filed by WINSTAR COMMUNICATIONS INC |
|------|------------|-----|-----|
| 1855 | 09/19/2001 | 1006 | Order (A) Approving (i) Bidding Procedures & (ii) Asset Purchase Agreement (B) Authorizing Sale of Assets Free & Clear of Liens, Interests Claims & Encumbrances, (C) Authorizing WINSTAR WIRELESS, INC to Assume & Assign Certain Executory Contracts & Unexpired Leases & (D) Granting Related Relief Signed on 9/18/2001 (related document(s)895) |
| 1856 | 09/20/2001 | 1047 | Order (i)Approving Asset Purchase Agreement, (II) Authorizing Sale of Assets Free & Clear of Liens, Interests Claims & Encumbrances, (iii) Authorizing WINSTAR WIRELESS INC to Assume & Assign Certain Executory Contracts & Unexpired Leases & (iv) Granting Related Relief Signed on 9/20/2001 (related document(s)895) |
| 1857 | 09/20/2001 | 1048 | Order (i) Approving Purchase Agreement w/EQUITY BROADCASTING CORPORATION (ii) Authorizing Sale of Assets Free & Clear of Liens Interests Claims & Encumbrances (iii) Authorizing Release Agreement & (iv) Granting Related Relief Signed on 9/20/2001 (related document(s)954) |
| 1858 | 09/20/2001 | 1049 | Order (i) Approving Asset Purchase Agreement, (ii) Authorizing Sale of Assets of WINSTAR-XNET DIVISION Free & Clear of Liens, Interests Claims & Encumbrances (iii) Authorizing Winstar Wireless Inc to Assume & Assign Certain Executory Contracts & Unexpired Leases & (iv) Granting Related Relief Signed on 9/20/2001 (related document(s)956) |
| 1859 | 09/21/2001 | 1035 | Notice of Withdrawl of Objection of the Operating Subsidiaries of Verizon Communications Inc to Debtors' Motion for Order Approving Asset Purchase Agreement and Authorizing Sale of Assets of Winstar-ICI Division (Dkt No 1002) Filed by Verizon Communications Inc |
| 1860 | 09/24/2001 | 1055 | Order (i) Approving Asset Purchase Agreement, (ii) Authorizing Sale of Assets of WINSTAR ICI DIVISION Free & Clear of Liens Interests Claims & Encumbrances (iii) Authorizing Winstar Wireless, Inc to Assume & Assign Certain Executory Contracts & Unexpired Leases & (iv) Granting Related Relief Signed on 9/24/2001 (related document(s)955) |
| 1861 | 09/24/2001 | 1056 | AMENDED Order (A) Approving Bidding Procedures & (ii) Asset Purchase Agreement (B) Authorizing Sale of Assets Free & Clear of Liens, Interests, Claims & Encumbrances (C) Authorizing Winstar Wireless Inc to Assume & Assign Certain Executory Contracts & Unexpired Leases & (D) Granting Related Relief Signed on 9/24/2001 (related document(s)1006) |
| 1862 | 09/24/2001 | 1071 | Order (i) Approving Asset Purchase Agreement, (ii) Authorizing Sale of Assets of WINSTAR ICI DIVISION Free & Clear of Liens Interests Claims & Encumbrances, (iii) Authorizing Winstar Wireless Inc to Assume & Assign Certain Executory Contracts & Unexpired Leases & (iv) Granting Related Relief Signed on 9/24/2001 (Complete Document) (related document(s)1055) |
| 1863 | 10/04/2001 | 1105 | Stipulation By WINSTAR COMMUNICATIONS, INC and Between Lucent Technologies Inc Re Stipulation and Agreed Order Resolving Motion of Secured Creditor Lucent Technologies Inc For Relief From Automatic Stay or Alternatively Adequate Protection with Respect to Certain Investment and Disbursement Accounts Filed by WINSTAR COMMUNICATIONS, INC |
| 1864 | 10/10/2001 | 1155 | Monthly Operating Report for Filing Period August 2001 Filed by James R O'Donnell, Vice President Corporate Planning WINSTAR COMMUNICATIONS INC |

61

RLF1 2986514 1

# EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| | | | |
|---|---|---|---|
| 1865 | 10/10/2001 | 1156 | Monthly Operating Report for Filing Period September 28 2001 Filed by James R O'Donnell VP Corporate Planning WINSTAR COMMUNICATIONS INC |
| 1866 | 10/11/2001 | 1199 | Response /Objection To Stipulation And Agreed Order Resolving Motion Of Secured Creditor Lucent Technologies Inc For Relief Fro Automatic Stay Or Alternatively Adequate Protection With Respect To Certain Investment And Disbursement Accounts (Donna L Harris Esq /PRE PETITION AGENTS) (Certificate of Service Attached) Filed by WINSTAR COMMUNICATIONS INC (related document(s)1105) |
| 1867 | 11/07/2001 | 1291 | Motion to Allow DEBTORS MOTION FOR ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 363(b) 363(f) AND 363(m) (i) APPROVING ASSET PURCHASE AGREEMENT (ii) AUTHORIZING SALE OF ASSETS OF WINSTAR ICI DIVISION FREE AND CLEAR OF LIENS, INTERESTS CLAIMS AND ENCUMBRANCES AND (iii) GRANTING RELATED RELIEF Filed by WINSTAR COMMUNICATIONS, INC |
| 1868 | 11/13/2001 | 1413 | Notice of Filing of Declaration of Edward Sichler in Support of Motion of Siemens Carrier Networks LLC for Entry of Orders Granting Relief From the Automatic Stay and Deeming Contracts Rejected RE 1313 and 1314 (FILED UNDER SEAL) Filed by Edward Sichler (JML, ) Additional attachment(s) added on 12/4/2001 |
| 1869 | 11/21/2001 | 1345 | Motion to Approve BIDDING PROCEDURES INCLUDING BID PROTECTIONS (ii) APPROVING THE FORM AND MANNER OF NOTICE OF (a) BID PROCEDURES HEARING (b) SALE HEARING (c) CURE AMOUNT NOTICES AND (d) ASSUMPTION NOTICES AND (iii) SCHEDULING SALE HEARING AND (B) AUTHORIZING AND APPROVING (i) SALE OF CERTAIN OF THE DEBTORS ASSETS FREE AND CLEAR OF LIENS CLAIMS AND ENCUMBRANCES AND (ii) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES Filed by WINSTAR COMMUNICATIONS, INC Hearing scheduled for 11/27/2001 at 12 45 PM (check with court for location) Objections due by 12/7/2001 (Attachments # 1 Notice # 2 Exhibit A# 3 Exhibit B# 4 Exhibit C# 5 Exhibit D# 6 Exhibit E# 7 Exhibit F# 8 Proposed Form of Order # 9 Affidavit and Service List) (Morgan Pauline) (Entered 11/21/2001) |
| 1870 | 11/27/2001 | 1386 | Order (i) Approving Asset Purchase Agreement (ii) Authorizing Sale of Assets of WINSTAR ICI Division Free & Clear of Liens Interests Claims & Encumbrances & (iii) Granting Related Relief signed on 11/27/2001 (related document(s)1291) |
| 1871 | 11/27/2001 | 1388 | Order (i) Approving Bidding Procedures (ii) Approving Form & Manner of Notice of (A) Bid Procedures Hearing (B) Sale Hearing (C) Cure Amount Notices & (D) Assumption Notices & (iii) Scheduling Sale Hearing signed on 11/27/2001 (related document(s)1345) |
| 1872 | 11/29/2001 | 1399 | Notice of Filing Exhibit A to Order Pursuant to 11 U S C Sections 363(b) and 105(a) and Fed R Bankr P 2002, 6004, 6006 and 9014 (i) Approving Bidding Procedures, (ii) Approving the Form and Manner of Notice of (A) Bid Procedures Hearing (B) Sale Hearing (C) Cure Amount Notices, and (D) Assumption Notices and (iii) Scheduling Sale Hearing (RE Docket No 1388) Filed by WINSTAR COMMUNICATIONS, INC |
| 1873 | 12/04/2001 | 1426 | Motion to Allow Motion for Order Pursuant to Bankruptcy Code Sections 363(b), 363(f) 363(m) and 365(i) Approving Asset Purchase Agreement Between Winstar Wireless, Inc and Fastmetrics, LLC, (ii) Authorizing Sale of ISPNetworks Division Free and Clear of Liens, Interests, Claims and Encumbrances, (iii) Authorizing Winstar Wireless, Inc to Assume and Assign Certain Executory Contracts and Unexpired Leases and (iv) Granting Related Relief Filed by WINSTAR COMMUNICATIONS, INC |

EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 1874 | 11/21/2001 | 1574 | Monthly Operating Report for Filing Period September 30 2001 Filed by WINSTAR COMMUNICATIONS INC |
|------|-----------|------|----|
| 1875 | 12/18/2001 | 1619 | Motion to Approve the Asset Purchase Agreement (ii) Authorizing Sale of Assets to Corporate Telecommunications Group Free and Clear of Liens, Interests Claims and Encumbrances and (iii) Granting Related Relief Filed by WINSTAR COMMUNICATIONS INC |
| 1876 | 12/19/2001 | 1620 | Notice of Filing Supplement to Motion for Order Authorizing (i) Sale of Certain of the Debtors Assets Free and Clear of Liens Claims Encumbrances and Interests and (ii) Authorizing the Assumption and Assignment of Certain Executory Contracts and unexpired Leases Seeking Additional Relief of Entry of an Order (A) Authorizing the Debtors to Enter into and Approving Management Agreement, (B) Approving Regulatory Transition Process and (C) Granting Related Relief Filed by WINSTAR COMMUNICATIONS INC |
| 1877 | 12/19/2001 | 1627 | Order Authorizing (i) Sale of Certain of Debtors Assets Free & Clear of Liens, Claims Encumbrances & Interests, (ii) Approving Cure Amounts w/Respect to Certain Executory Contracts & Unexpired Leases, (iii) Approving Debtors to Enter Into & Approving Management Agreement (iv) Approving Regulatory Transition Process & (v) Granting Related Relief signed on 12/19/2001 |
| 1878 | 12/19/2001 | 1629 | Notice of Filing Master Final Execution Copy/ASSET PURCHASE AGREEMENT Among IDT WINSTAR ACQUISITION INC WINSTAR COMMUNICATION, INC & CERTAIN of its Subsidiaries Filed by WINSTAR COMMUNICATIONS INC (related document(s)1627) |
| 1879 | 12/20/2001 | 1652 | Notice of Filing Re Notice to Motion for Order Pursuant to Bankruptcy Code Sections 363(b) 363(f) 363(m)(i) Approving the Asset Purchase Agreement (ii) Authorizing Sale of Assets to Corporate Telecommunications Group Free and Clear of Liens, Interests Claims and Encumbrances and (iii) Granting Related Relief Filed by WINSTAR COMMUNICATIONS, INC |
| 1880 | 12/20/2001 | 1655 | Notice of Filing of Letter Regarding Sale and Auction of Assets Filed by Multnomah County Oregon Department of Support Services |
| 1881 | 01/04/2002 | 1804 | Order Approving Asset Purchase Agreement Between Winstar Wireless, Inc & Corporate Telecommunications Group Inc , et al (BLACKLINED COPY) (related document(s)1619) |
| 1882 | 01/04/2002 | 1805 | Order Approving Asset Purchase Agreement Between Winstar Wireless Inc & Corporate Telecommunications Group, Inc , (B) Authorizing Sale of The Northwest Nexus Division Free & Clear of Liens, Interests, Claims & Encumbrances & (C) Granting Related Relief signed on 1/4/2002 (related document(s)1619) |
| 1883 | 01/17/2002 | 1879 | Order (A) Approving Asset Purchase Agreement Between Winstar Wireless Inc and Fastmetrics LLC (B) Authorizing Sale of Ispnetworks Division Free and Clear of Liens Interests, Claims and Encumbrances (C) Authorizing Winstar Wireless Inc to Assume and Assign Certain Executory Contracts and Unexpired Leases and (D) Granting Related Relief (Related Doc # 1426) |
| 1884 | 01/24/2002 | 1909 | Motion to Convert Case 11 to Chapter 7 Reaffirming Terms and Conditions of Asset Sale order Dated December 19 2001, Shortening Time for, and Approving the Manner of Notice of Meeting of Creditors Under Bankruptcy Code Section 341 and Granting Related Relief Receipt Number 57550, Fee Amount $15 Filed by WINSTAR COMMUNICATIONS INC |
| 1885 | 01/24/2002 | 1919 | Order signed on 1/24/2002 Converting Case To Chapter 7, Reaffirming Regulatory Transition Process Under Asset Sale Order Dated 12/19/01 Shortening Time For & Approving The Manner Of Notice Of Meeting Of Creditors Under Bankruptcy Code Section 341 & Granting Related Relief (related document(s)1909) |
| 1886 | 02/13/2002 | 1965 | Motion to Sell Free and Clear of Liens Filed by Christine Shubert |

## EXHIBIT A

### APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
### BE INCLUDED IN THE RECORD ON APPEAL

| 1887 | 02/13/2002 | 1966 | Complaint For Declaratory Relief by Winstar Holdings LLC as successor in interest to Winstar Communications Inc against BNY CAPITAL RESOURCES CORPORATION |
| 1888 | 02/15/2002 | 1979 | Motion to Sell Free and Clear of Liens and Encumbrances and for an Order Approving the Sale of Assests to Dun & Bradstreet Inc Filed by Christine Shubert |
| 1889 | 02/14/2002 | 1987 | Order 1) Authorizing Trustee to Enter into Software License Agreement 2) Authorizing and Scheduling a Public Auction 3) Approving Break up Fee, 4) Setting Bidding Deadline Auction Date and Bidding Procedures, Including Deposit Requirements and Objection Deadline to Bidding Procedures 5) Setting Hearing Date and Objection Deadline for Approval of the Sale of the Assets of the Debtors Free and Clear of Liens, Claims and Encumbrances Pursuant to 11 U S C Section 363 and 6) Approving the Form of Notice of Motion for Approval of the Sale Order signed on 2/14/2002 (related document(s)1965) |
| 1890 | 03/03/2002 | 2025 | Exhibit A - Part 1 of Asset Purchase Agreement Filed by Christine Shubert (related document(s)1979) |
| 1891 | 03/07/2002 | 2064 | Order signed on 3/7/2002 Approving Sale Of The Assets Of The Debtors Free & Clear Of Liens Claims & Encumbrances (related document(s)1979) |
| 1892 | 03/28/2002 | 2086 | Motion to Approve the Unit Purchase Agreement and (ii) Authorizing the Sale of Certain Common Units of Winstar Holdings, LLC to DipChip Inc Free and Clear of Liens Pursuant to 11 U S C Section 105(a) and 363(b)(1) Filed by Christine Schubert (related document(s)2085) |
| 1893 | 04/11/2002 | 2144 | Order signed on 4/11/2002 Approving The Unit Purchase Agreement & Authorizing The Sale Of Certain Common Units Of Winstar Holdings LLC To Dipchip Inc Free & Clear Of Liens (relates to document 2086) |
| 1894 | 05/24/2002 | 2557 | Motion to Approve an Order, Pursuant to 11 U S C Section 105(a) and 363 (b) Expanding the Carve-Out Under the Debtors' Post Petition Credit Agreement Filed by Christine Shubert |
| 1895 | 06/11/2002 | 2629 | Order signed on 6/11/2002 Expanding Carve Out Under The Debtors Post-Petition Credit Agreement (related document(s)2557) |
| 1896 | 06/20/2002 | 2644 | Debtor In Possession Monthly Operating Report for Filing Period Month Ending 2/28/02 for Winstar Communications, Inc |
| 1897 | 06/20/2002 | 2645 | Debtor In Possession Monthly Operating Report for Filing Period Month Ending 2/28/02 for Winstar Wireless Inc |
| 1898 | 06/20/2002 | 2646 | Debtor In Possession Monthly Operating Report for Filing Period Month Ending 2/28/02 for Winstar Interactive Media Sales |
| 1899 | 06/20/2002 | 2647 | Debtor In-Possession Monthly Operating Report for Filing Period Month Ending 2/28/02 for Winstar New Media Company, Inc |
| 1900 | 06/20/2002 | 2648 | Debtor In-Possession Monthly Operating Report for Filing Period Month Ending 2/28/02 for Office com Inc |
| 1901 | 06/20/2002 | 2649 | Debtor In-Possession Monthly Operating Report for Filing Period Month Ending 3/31/02 for Winstar Communications, Inc Filed by Christine Shubert (Monkowitz, Michael) (Entered 06/20/2002) |
| 1902 | 06/20/2002 | 2650 | Debtor In Possession Monthly Operating Report for Filing Period Month Ending 3/31/02 for Winstar Wireless Inc |
| 1903 | 06/20/2002 | 2651 | Debtor In Possession Monthly Operating Report for Filing Period Month Ending 3/31/02 for Winstar Interactive Media Sales |
| 1904 | 06/20/2002 | 2652 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 3/31/02 for Winstar New Media Company, Inc |
| 1905 | 06/20/2002 | 2653 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 3/31/02 for Office com, Inc |
| 1906 | 06/20/2002 | 2654 | Debtor In-Possession Monthly Operating Report for Filing Period Month Ending 4/30/02 for Winstar Communications, Inc |

EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 1907 | 06/20/2002 | 2655 | Debtor In Possession Monthly Operating Report for Filing Period Month Ending 4/30/02 for Winstar Wireless, Inc |
| 1908 | 06/20/2002 | 2656 | Debtor In Possession Monthly Operating Report for Filing Period Month Ending 4/30/02 for Winstar Interactive Media Sales |
| 1909 | 06/20/2002 | 2657 | Debtor In Possession Monthly Operating Report for Filing Period Month Ending 4/30/02 for Winstar New Media Company, Inc |
| 1910 | 06/20/2002 | 2658 | Debtor In Possession Monthly Operating Report for Filing Period Month Ending 4/25/02 for Office com Inc |
| 1911 | 07/03/2002 | 2685 | Motion to Authorize Asset Purchase Agreement Pursuant to 11 U S C 105 and Federal Rules of Bankruptcy Procedure Rule 6004 and 9014 Filed by Winstar Holdings, L L C |
| 1912 | 07/22/2002 | 2734 | Order signed on 7/22/2002 Granting Motion Of Winstar Holdings LLC For Enforcement Of Order Authorizing Asset Purchase Agreement |
| 1913 | 07/24/2002 | 2737 | Debtor In Possession Monthly Operating Report for Filing Period Month ending 05/31/02 for Winstar Communications Inc |
| 1914 | 07/24/2002 | 2739 | Debtor In-Possession Monthly Operating Report for Filing Period Month ending 5/31/02 for Winstar Wireless Inc |
| 1915 | 07/24/2002 | 2740 | Debtor In Possession Monthly Operating Report for Filing Period Month ending 5/31/02 for Winstar New Media Company, Inc |
| 1916 | 07/24/2002 | 2741 | Debtor In Possession Monthly Operating Report for Filing Period Month ending 5/31/02 for Winstar Interactive Media Sales |
| 1917 | 07/24/2002 | 2742 | Debtor In-Possession Monthly Operating Report for Filing Period Month ending 5/31/02 for Office Inc |
| 1918 | 07/26/2002 | 2750 | Debtor In-Possession Monthly Operating Report for Filing Period Month ending 6/30/2002 for Winstar Communications Inc |
| 1919 | 07/26/2002 | 2751 | Debtor-In-Possession Monthly Operating Report for Filing Period Month ending 6/30/2002 for Winstar Wireless, Inc |
| 1920 | 07/26/2002 | 2752 | Debtor-In-Possession Monthly Operating Report for Filing Period Month ending 6/30/2002 for Winstar New Media Company, Inc |
| 1921 | 07/26/2002 | 2753 | Debtor-In-Possession Monthly Operating Report for Filing Period Month ending 6/30/2002 for Winstar Interactive Media Sales |
| 1922 | 07/26/2002 | 2754 | Debtor In Possession Monthly Operating Report for Filing Period Month ending 6/30/2002 for Office com Inc |
| 1923 | 07/26/2002 | 2756 | Notice of Filing of Motion and Incorporated Memorandum for Order to Implement and Enforce Provisions of Sale Order Dated December 19, 2001 Filed by Winstar Holdings LLC |
| 1924 | 07/26/2002 | 2757 | Exhibits (Related document(s) 2756) Filed by Winstar Holdings, LLC |
| 1925 | 07/26/2002 | 2758 | Notice of Filing of Motion and Incorporated Memorandum for Order to Implement and Enforce Provisions of Sale Order Dated December 19 2001 Filed by Winstar Holdings LLC |
| 1926 | 07/26/2002 | 2759 | Exhibits (Related document(s) 2758) Filed by Winstar Holdings, LLC |
| 1927 | 07/31/2002 | 2771 | Supplemental Debtor In Possession Monthly Operating Report for Filing Period Month Ending 2/28/02 (Document #2644) for Winstar Communications, Inc |
| 1928 | 07/31/2002 | 2772 | Supplemental Debtor-In Possession Monthly Operating Report for Filing Period Month ending 2/28/02 (Document #2645) for Winstar Wireless, Inc |
| 1929 | 07/31/2002 | 2773 | Supplemental Debtor In Possession Monthly Operating Report for Filing Period Month ending 2/28/02 (Document #2648) for Office com Inc |
| 1930 | 07/31/2002 | 2774 | Supplemental Debtor-In Possession Monthly Operating Report for Filing Period Month ending 3/31/02 (Document #2649) for Winstar Communications, Inc |
| 1931 | 07/31/2002 | 2775 | Supplemental Debtor-In Possession Monthly Operating Report for Filing Period Month ending 3/31/02 (Document #2650) for Winstar Wireless, Inc |

EXHIBIT A

APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
BE INCLUDED IN THE RECORD ON APPEAL

| 1932 | 08/01/2002 | 2776 | Supplemental Debtor In Possession Monthly Operating Report for Filing Period Month ending 3/31/02 (Document #2651) for Winstar Interactive Media Sales |
| 1933 | 08/01/2002 | 2777 | Supplemental Debtor In Possession Monthly Operating Report for Filing Period Month ending 3/31/02 (Document #2652) for Winstar New Media Company Inc |
| 1934 | 08/01/2002 | 2779 | Supplemental Debtor In Possession Monthly Operating Report for Filing Period Month ending 3/31/02 (Document #2653) for Office com Inc |
| 1935 | 08/01/2002 | 2780 | Supplemental Debtor In Possession Monthly Operating Report for Filing Period Month ending 4/30/02 (Document #2654) for Winstar Communications Inc |
| 1936 | 08/01/2002 | 2781 | Supplemental Debtor In Possession Monthly Operating Report for Filing Period Month ending 4/30/02 (Document #2655) for Winstar Wireless Inc |
| 1937 | 08/01/2002 | 2782 | Supplemental Debtor In Possession Monthly Operating Report for Filing Period Month ending 4/30/02 (Document #2656) for Winstar Interactive Media Sales |
| 1938 | 08/01/2002 | 2783 | Supplemental Debtor-In Possession Monthly Operating Report for Filing Period Month ending 4/30/02 (Document #2657) for Winstar New Media Company, Inc |
| 1939 | 08/01/2002 | 2784 | Supplemental Debtor-In-Possession Monthly Operating Report for Filing Period Month ending 4/30/02 (Document #2658) for Office com, Inc |
| 1940 | 08/07/2002 | 2802 | Motion to Approve the Asset Purchase Agreement and (ii) Authorizing the Sale of Debtors Office Com and At Your Office Inc Assets to Thomas J Graham Free and Clear of Liens Claims Encumbrances and Interests Pursuant to 11 U S C Section 105(a) and 363(b)(1) Filed by Christine Shubert |
| 1941 | 09/19/2002 | 2910 | ORDER (i) APPROVING THE ASSET PURCHASE AGREEMENT AND (ii) AUTHORIZING THE SALE OF DEBTORS OFFICE COM AND AT YOUR OFFICE, INC ASSETS TO THOMAS J GRAHAM FREE AND CLEAR OF ALL LIENS CLAIMS ENCUMBRANCES AND INTERESTS Order signed on 9/19/2002 |
| 1942 | 09/26/2002 | 2932 | Complaint by Christine Shubert against Criticapital Commercial Corporation, General Motors Acceptance Corporation ("GMAC"), and Lucent Technologies, Inc |
| 1943 | 10/25/2002 | 2997 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 7/31/2002 for Winstar Communications Inc |
| 1944 | 10/25/2002 | 2998 | Debtor In Possession Monthly Operating Report for Filing Period Month Ending 7/31/2002 for Winstar Wireless Inc |
| 1945 | 10/25/2002 | 3000 | Debtor In Possession Monthly Operating Report for Filing Period Month Ending 7/31/2002 for Winstar New Media Company Inc |
| 1946 | 10/25/2002 | 3001 | Debtor In Possession Monthly Operating Report for Filing Period Month Ending 7/31/2002 for Winstar Interactive Media Sales |
| 1947 | 10/25/2002 | 3002 | Debtor In Possession Monthly Operating Report for Filing Period Month Ending 7/31/2002 for Office com, Inc |
| 1948 | 10/25/2002 | 3003 | Debtor In Possession Monthly Operating Report for Filing Period Month Ending 8/31/2002 for Winstar Communications Inc |
| 1949 | 10/25/2002 | 3004 | Debtor In Possession Monthly Operating Report for Filing Period Month Ending 8/31/2002 for Winstar Wireless Inc |
| 1950 | 10/25/2002 | 3005 | Debtor In Possession Monthly Operating Report for Filing Period Month Ending 8/31/2002 for Winstar New Media Company, Inc |
| 1951 | 10/25/2002 | 3006 | Debtor In Possession Monthly Operating Report for Filing Period Month Ending 8/31/2002 for Winstar Interactive Media Sales |
| 1952 | 10/25/2002 | 3007 | Debtor In Possession Monthly Operating Report for Filing Period Month Ending 8/31/2002 for Office com, Inc |

RLF1 2986514 1

EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 1953 | 10/28/2002 | 3012 | Motion to Shorten Time of Trustee's Motion for an Order (i) Approving the Share Sale and Purchase Agreement and (ii) Authorizing the Sale of the Assets of Winstar Communications Co Ltd  Wallstreet Planner Co Ltd , an d Wallstreet Law and Accounting Office Co  Ltd  to Chirdsak Kukiattinun Free and Clear of All Liens  Claims  Encumbrances and Interests Pursuant to 11 U S C  Section 105(a) and 363(b)(1) Filed by Christine Shubert |
|------|-----------|------|---|
| 1954 | 10/28/2002 | 3013 | Motion to Approve Sale (Share) and Purchase Agreement and (ii) Authorizing the Sale of the Assets of Winstar Communications Co  Ltd  Wallstreet Planner Co Ltd  and Wallstreet Law and Accounting Office Co  Ltd  to Chirdsak Kukiattinun Free and Clear of All Liens, Claims, Encumbrances and Interests Pursuant to 11 U S C  Sections 105(a) and 363(b)(1) Filed by Christine Shubert |
| 1955 | 11/06/2002 | 3038 | Order Granting Motion to Shorten Noticeof Trustee's Motion for an Order Approving the Share Sale and Purchase Agreement  Authorizing The Sale of the Assets of Winstar Communications Co  LTD, Wallstreet Planner Co  LTD, and Wallstreet Law and Accounting Office Co ,LTD  to Chirdsak Kuhiattinun Free and Clear of all Liens  Claims  Encumbrances and Intrests re doc #3012signed on 11/6/2002 |
| 1956 | 11/06/2002 | 3039 | Order Granting order Approving the Share Sale and Purchase Agreement and Authorizing the Sale of Debtors Winstar Communications Co  LTD  Wallstreet Law and Accounting Office Co  LTD  Assets to Chirdsak Kukiattinun Free and Clear of all Liens  Claims  Encumbrance and Interests  re doc #3013 |
| 1957 | 12/09/2002 | 3084 | Debtor In-Possession Monthly Operating Report for Filing Period Month Ended 9/30/02 for Winstar Communications, Inc |
| 1958 | 12/09/2002 | 3085 | Debtor In-Possession Monthly Operating Report for Filing Period Month Ended 9/30/02 for Winstar Wireless, Inc |
| 1959 | 12/09/2002 | 3086 | Debtor In Possession Monthly Operating Report for Filing Period Month Ended 9/30/02 for Winstar New Media Company, Inc |
| 1960 | 12/09/2002 | 3087 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 9/30/02 for Winstar Interactive Media Sales |
| 1961 | 12/09/2002 | 3088 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 9/30/02 for Office com  Inc |
| 1962 | 12/09/2002 | 3089 | Debtor In Possession Monthly Operating Report for Filing Period Month Ended 10/31/02 for Winstar Communications, Inc |
| 1963 | 12/09/2002 | 3090 | Debtor In Possession Monthly Operating Report for Filing Period Month Ended 10/31/02 for Winstar Wireless, Inc |
| 1964 | 12/09/2002 | 3091 | Debtor In-Possession Monthly Operating Report for Filing Period Month Ended 10/31/02 for Winstar New Media Company, Inc |
| 1965 | 12/09/2002 | 3092 | Debtor In-Possession Monthly Operating Report for Filing Period Month Ended 10/31/02 for Winstar Interactive Media Sales |
| 1966 | 12/09/2002 | 3094 | Debtor In-Possession Monthly Operating Report for Filing Period Month Ended 10/31/02 for Office com, Inc |
| 1967 | 02/27/2003 | 3192 | Debtor In Possession Monthly Operating Report for Filing Period Month Ended 11/30/2002 for Winstar Communications, Inc |
| 1968 | 02/27/2003 | 3193 | Debtor In-Possession Monthly Operating Report for Filing Period Month Ended 11/30/2002 for Winstar Wireless, Inc |
| 1969 | 02/27/2003 | 3194 | Debtor In-Possession Monthly Operating Report for Filing Period Month Ended 11/30/2002 for Winstar New Media Company, Inc |
| 1970 | 02/27/2003 | 3195 | Debtor  In Possession Monthly Operating Report for Filing Period Month Ended 11/30/2002 for Winstar Interactive Media Sales, Inc |
| 1971 | 02/27/2003 | 3196 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 11/30/2002 for Winstar International, Inc |
| 1972 | 02/27/2003 | 3197 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 11/30/2002 for Office com, Inc |

67

## EXHIBIT A

### APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
### BE INCLUDED IN THE RECORD ON APPEAL

| 1973 | 02/27/2003 | 3198 | Debtor In Possession Monthly Operating Report for Filing Period Month Ended 12/31/2002 for Winstar Communications, Inc |
|---|---|---|---|
| 1974 | 02/27/2003 | 3199 | Debtor In Possession Monthly Operating Report for Filing Period Month Ended 12/31/2002 for Winstar Wireless, Inc |
| 1975 | 02/27/2003 | 3200 | Debtor In Possession Monthly Operating Report for Filing Period Month Ended 12/31/2002 for Winstar New Media Company Inc |
| 1976 | 02/27/2003 | 3201 | Debtor In Possession Monthly Operating Report for Filing Period Month Ended 12/31/2002 for Winstar Interactive Media Sales Inc |
| 1977 | 02/27/2003 | 3202 | Debtor In-Possession Monthly Operating Report for Filing Period Month Ended 12/31/2002 for Winstar International Inc |
| 1978 | 02/27/2003 | 3203 | Debtor In Possession Monthly Operating Report for Filing Period Month Ended 12/31/2002 for Office com Inc |
| 1979 | 03/21/2003 | 3229 | Motion to Compel MOTION OF LEASETEC CORPORATION, NKA KEY EQUIPMENT FINANCE A DIVISION OF KEY CORPORATE CAPITAL INC FOR AN ORDER DIRECTING WINSTAR COMMUNICATIONS, INC TO COMPLY WITH THE ORDER AUTHORIZING (I) SALE OF CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS CLAIMS, ENCUMBRANCES AND INTEREST, (II) APPROVING CURE AMOUNTS WITH RESPECT TO CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (III) AUTHORIZING THE DEBTORS TO ENTER INTO AND APPROVING MANAGEMENT AGREEMENT (IV) APPROVING REGULATORY TRANSITION PROCESS AND (V) GRANTING RELATED RELIEF Filed by Leasetec Corporation, nka Key Equipment Finance, a Division of Key Corporate Capital Inc |
| 1980 | 04/07/2003 | 3468 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 1/31/03 for Winstar Communications, Inc |
| 1981 | 04/07/2003 | 3469 | Debtor In-Possession Monthly Operating Report for Filing Period Month Ended 1/31/03 for Winstar Wireless, Inc |
| 1982 | 04/07/2003 | 3470 | Debtor In-Possession Monthly Operating Report for Filing Period Month Ended 1/31/03 for Winstar New Media Company, Inc |
| 1983 | 04/07/2003 | 3471 | Debtor In Possession Monthly Operating Report for Filing Period Month Ended 1/31/03 for Winstar Interactive Media Sales |
| 1984 | 04/07/2003 | 3472 | Debtor In Possession Monthly Operating Report for Filing Period Month Ended 1/31/03 for Winstar Interactive Vestures Inc |
| 1985 | 04/07/2003 | 3473 | Debtor-In Possession Monthly Operating Report for Filing Period Month Ended 1/31/03 for Winstar International, Inc |
| 1986 | 04/07/2003 | 3474 | Debtor In-Possession Monthly Operating Report for Filing Period Month Ended 1/31/03 for Office com Inc |
| 1987 | 04/08/2003 | 3497 | Response to Motion of Leasetec Corporation NKA Key Equipment Finance, a Division of Key Corporate Capital, Inc for an Order Directing Winstar Communications Inc to Comply with the Order Authorizing (i) Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Interests (ii) Approving Cure Amounts with Respect to Certain Executory Contracts and Unexpired Leases, (iii) Authorizing the Debtors to Enter into and Approving Management Agreement, (iv) Approving Regulatory Transition Process and (v) Granting Related Relief (related document(s)3229 ) Filed by Christine Shubert |

RLF1 2986514 1

# EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 1988 | 04/08/2003 | 3520 | Objection to Motion of Leasetec Corporation NKA Key Equipment Finance a Division of Key Corporate Capital Inc for an Order Directing Winstar Communications Inc to Comply with the Order Authorizing (i) Sale of Certain of the Debtors' Assets Free and Clear Liens, Claims and Encumbrances and Interests, (ii) Approving Cure Amounts with Respect to Certain Executory Contracts and Unexpired Leases (iii) Authorizing the Debtors to Enter Into and Approving Management Agreement (iv) Approving Regulatory Transition Process and (v) Granting Related Relief Filed by WINSTAR COMMUNICATIONS INC |
|---|---|---|---|
| 1989 | 04/09/2003 | 3544 | Stipulation and Agreed Order Resolving Motion of Secured Creditor Lucent Technologies Inc for Relief from Automatic Stay or Alternatively, Adequate Protection with Respect to Certain Investment and Disbursement Accounts (related document(s)[373] ) Order Signed on 4/9/2003 |
| 1990 | 04/10/2003 | 3560 | Affidavit/Declaration of Service of Rebecca V Childs Re Docket No 3544 (related document(s)3544 ) Filed by Lucent Technologies |
| 1991 | 04/14/2003 | 3659 | Complaint by CHRISTINE C SHUBERT TRUSTEE against BNY Capital Resources Corporation |
| 1992 | 04/14/2003 | 3692 | Complaint by CHRISTINE C SHUBERT TRUSTEE against Siemens Information & Communication Networks Inc |
| 1993 | 04/14/2003 | 3693 | Complaint by CHRISTINE C SHUBERT TRUSTEE against Siemens Telecom Networks |
| 1994 | 04/17/2003 | 3778 | Complaint by Christine Shubert against Lucent Technologies Inc |
| 1995 | 06/27/2003 | 3832 | Complaint by CHRISTINE C SHUBERT TRUSTEE against Winstar Holdings LLC f/k/a IDT Winstar Acquisition Inc |
| 1996 | 07/03/2003 | 3839 | Debtor-In Possession Monthly Operating Report for Filing Period Month Ending 2/28/03 for Winstar Communications Inc |
| 1997 | 07/03/2003 | 3840 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 2/28/03 for Winstar Interactive Media Sales |
| 1998 | 07/03/2003 | 3841 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 2/28/03 for Winstar International, Inc |
| 1999 | 07/03/2003 | 3842 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 2/28/03 for Winstar Interactive Vestures Inc |
| 2000 | 07/03/2003 | 3843 | Debtor In Possession Monthly Operating Report for Filing Period Month Ending 2/28/03 for Winstar Wireless Inc |
| 2001 | 07/03/2003 | 3844 | Debtor In Possession Monthly Operating Report for Filing Period Month Ending 2/28/03 for Office com Inc |
| 2002 | 07/03/2003 | 3845 | Debtor In Possession Monthly Operating Report for Filing Period Month Ending 3/31/03 for Winstar Communications, Inc |
| 2003 | 07/03/2003 | 3846 | Debtor-In Possession Monthly Operating Report for Filing Period Month Ending 3/31/03 for Winstar Interactive Media Sales |
| 2004 | 07/03/2003 | 3847 | Debtor In-Possession Monthly Operating Report for Filing Period Month Ending 3/31/03 for Winstar International, Inc |
| 2005 | 07/03/2003 | 3848 | Debtor-In Possession Monthly Operating Report for Filing Period Month Ending 3/31/03 for Winstar Interactive Vestures, Inc |
| 2006 | 07/03/2003 | 3849 | Debtor In Possession Monthly Operating Report for Filing Period Month Ending 3/31/03 for Winstar Wireless, Inc |
| 2007 | 07/03/2003 | 3850 | Debtor In Possession Monthly Operating Report for Filing Period Month Ending 3/31/03 for Office com, Inc |
| 2008 | 08/13/2003 | 3900 | Debtor-In Possession Monthly Operating Report for Filing Period Month Ended 2/28/03 for Winstar New Media Company, Inc |
| 2009 | 08/13/2003 | 3901 | Debtor-In Possession Monthly Operating Report for Filing Period Month Ended 3/31/03 for Winstar New Media Company, Inc |

RLF1 2986514 1

EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 2010 | 08/13/2003 | 3902 | Debtor In Possession Monthly Operating Report for Filing Period Month Ended 4/30/03 for Winstar New Media Company, Inc |
| 2011 | 08/13/2003 | 3903 | Debtor In Possession Monthly Operating Report for Filing Period Month Ended 5/31/03 for Winstar New Media Company  Inc |
| 2012 | 08/13/2003 | 3904 | Debtor In Possession Monthly Operating Report for Filing Period Month Ended 4/30/03 for Winstar Communications  Inc |
| 2013 | 08/13/2003 | 3905 | Debtor In Possession Monthly Operating Report for Filing Period Month Ended 5/31/03 for Winstar Communications  Inc |
| 2014 | 08/13/2003 | 3906 | Debtor In Possession Monthly Operating Report for Filing Period Month Ended 4/30/03 for Winstar Wireless  Inc |
| 2015 | 08/13/2003 | 3907 | Debtor In Possession Monthly Operating Report for Filing Period Month Ended 5/31/03 for Winstar Wireless, Inc |
| 2016 | 08/13/2003 | 3908 | Debtor In Possession Monthly Operating Report for Filing Period Month Ended 4/30/03 for Winstar Interactive Media Sales |
| 2017 | 08/13/2003 | 3909 | Debtor In Possession Monthly Operating Report for Filing Period Month Ended 5/31/03 for Winstar Interactive Media Sales |
| 2018 | 08/13/2003 | 3910 | Debtor In Possession Monthly Operating Report for Filing Period Month Ended 4/30/03 for Winstar International  Inc |
| 2019 | 08/13/2003 | 3911 | Debtor In Possession Monthly Operating Report for Filing Period Month Ended 5/31/03 for Winstar International, Inc |
| 2020 | 08/13/2003 | 3912 | Debtor-In Possession Monthly Operating Report for Filing Period Month Ended 4/30/03 for Winstar Interactive Vestures  Inc |
| 2021 | 08/13/2003 | 3913 | Debtor In Possession Monthly Operating Report for Filing Period Month Ended 5/31/03 for Winstar Interactive Vestures, Inc |
| 2022 | 08/13/2003 | 3914 | Debtor In Possession Monthly Operating Report for Filing Period Month Ended 4/30/03 for Office com, Inc |
| 2023 | 08/13/2003 | 3915 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended 5/31/03 for Office com, Inc |
| 2024 | 09/12/2003 | 3945 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended June 30, 2003 for Winstar Communications, Inc |
| 2025 | 09/12/2003 | 3946 | Debtor In Possession Monthly Operating Report for Filing Period Month Ended June 30  2003 for Winstar New Media Company, Inc |
| 2026 | 09/12/2003 | 3947 | Debtor In Possession Monthly Operating Report for Filing Period Month Ended June 30  2003 for Winstar Interactive Media Sales |
| 2027 | 09/12/2003 | 3948 | Debtor In Possession Monthly Operating Report for Filing Period Month Ended June 30, 2003 for Winstar Interactive Vestures  Inc |
| 2028 | 09/12/2003 | 3949 | Debtor In Possession Monthly Operating Report for Filing Period Month Ended June 30  2003 for Winstar Wireless, Inc |
| 2029 | 09/12/2003 | 3950 | Debtor In Possession Monthly Operating Report for Filing Period Month Ended June 30, 2003 for Winstar International, Inc |
| 2030 | 09/12/2003 | 3951 | Debtor In Possession Monthly Operating Report for Filing Period Month Ended June 30, 2003 for Office com, Inc |
| 2031 | 09/12/2003 | 3952 | Debtor In-Possession Monthly Operating Report for Filing Period Month Ended July 31, 2003 for Winstar Communications, Inc |
| 2032 | 09/12/2003 | 3953 | Debtor In Possession Monthly Operating Report for Filing Period Month Ended July 31, 2003 for Winstar New Media Company, Inc |
| 2033 | 09/12/2003 | 3954 | Debtor In Possession Monthly Operating Report for Filing Period Month Ended July 31, 2003 for Winstar Interactive Media Sales |
| 2034 | 09/12/2003 | 3955 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ended July 31, 2003 for Winstar Interactive Vestures, Inc |
| 2035 | 09/12/2003 | 3956 | Debtor-In Possession Monthly Operating Report for Filing Period Month Ended July 31, 2003 for Winstar Wireless, Inc |

## EXHIBIT A

### APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
### BE INCLUDED IN THE RECORD ON APPEAL

| 2036 | 09/12/2003 | 3957 | Debtor In Possession Monthly Operating Report for Filing Period Month Ended July 31 2003 for Winstar International Inc |
| 2037 | 09/12/2003 | 3958 | Debtor In Possession Monthly Operating Report for Filing Period Month Ended July 31 2003 for Office com, Inc |
| 2038 | 10/20/2003 | 4007 | Motion to Approve Settlement Stipulation with Lucent Technologies, Inc Pursuant to Federal Bankruptcy Rule 9019 |
| 2039 | 11/12/2003 | 4026 | Order Approving Settlement with Lucent Technologies Inc Pursuant to Fed R Bankr P 9019 Order Signed on 11/12/2003 (related document(s)4007 ) |
| 2040 | 12/10/2003 | 4070 | Debtor In Possession Monthly Operating Report for Filing Period Month Ending 8/31/03 for Winstar Communications |
| 2041 | 12/10/2003 | 4071 | Debtor In Possession Monthly Operating Report for Filing Period Month Ending 8/31/03 for Winstar New Media Company, Inc |
| 2042 | 12/10/2003 | 4072 | Debtor In Possession Monthly Operating Report for Filing Period Month Ending 8/31/03 for Winstar Interactive Media Sales |
| 2043 | 12/10/2003 | 4073 | Debtor In Possession Monthly Operating Report for Filing Period Month Ending 8/31/03 for Winstar International, Inc |
| 2044 | 12/10/2003 | 4074 | Debtor In Possession Monthly Operating Report for Filing Period Month Ended 8/31/03 for Winstar Interactive Ventures Inc |
| 2045 | 12/10/2003 | 4075 | Debtor In Possession Monthly Operating Report for Filing Period Month Ending 8/31/03 for Winstar Wireless Inc |
| 2046 | 12/10/2003 | 4076 | Debtor In Possession Monthly Operating Report for Filing Period Month Ending 8/31/03 for Office com, Inc |
| 2047 | 01/09/2004 | 4086 | Debtor In Possession Monthly Operating Report for Filing Period Month Ending 9/30/03 for Winstar Communications, Inc |
| 2048 | 01/09/2004 | 4087 | Debtor-In Possession Monthly Operating Report for Filing Period Month Ending 9/30/03 for Winstar New Media Company, Inc |
| 2049 | 01/09/2004 | 4088 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 9/30/03 for Winstar Interactive Media Sales ) |
| 2050 | 01/09/2004 | 4089 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 9/30/03 for Winstar International Inc |
| 2051 | 01/09/2004 | 4090 | Debtor In Possession Monthly Operating Report for Filing Period Month Ending 9/30/03 for Winstar Interactive Ventures, Inc |
| 2052 | 01/09/2004 | 4091 | Debtor In Possession Monthly Operating Report for Filing Period Month Ending 9/30/03 for Winstar Wireless Inc |
| 2053 | 01/09/2004 | 4092 | Debtor-In Possession Monthly Operating Report for Filing Period Month Ending 9/30/03 for Office com Inc |
| 2054 | 01/09/2004 | 4093 | Debtor In Possession Monthly Operating Report for Filing Period Month Ending 10/31/03 for Winstar Communications Inc |
| 2055 | 01/09/2004 | 4094 | Debtor In Possession Monthly Operating Report for Filing Period Month Ending 10/31/03 for Winstar New Media Company, Inc |
| 2056 | 01/09/2004 | 4095 | Debtor In-Possession Monthly Operating Report for Filing Period Month Ending 10/31/03 for Winstar Interactive Media Sales |
| 2057 | 01/09/2004 | 4096 | Debtor In-Possession Monthly Operating Report for Filing Period Month Ending 10/31/03 for Winstar International, Inc |
| 2058 | 01/09/2004 | 4097 | Debtor In-Possession Monthly Operating Report for Filing Period Month Ending 10/31/03 for Winstar Interactive Ventures Inc |
| 2059 | 01/09/2004 | 4098 | Debtor In-Possession Monthly Operating Report for Filing Period Month Ending 10/31/03 for Winstar Wireless Inc |
| 2060 | 01/09/2004 | 4099 | Debtor In-Possession Monthly Operating Report for Filing Period Month Ending 10/31/03 for Office com, Inc |
| 2061 | 01/09/2004 | 4100 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 11/30/03 for Winstar Communications, Inc |

RLF1 2986514 1

EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL

| 2062 | 01/09/2004 | 4101 | Debtor In Possession Monthly Operating Report for Filing Period Month Ending 11/30/03 for Winstar New Media Company, Inc |
| 2063 | 01/09/2004 | 4102 | Debtor In Possession Monthly Operating Report for Filing Period Month Ending 11/30/03 for Winstar Interactive Media Sale |
| 2064 | 01/09/2004 | 4103 | Debtor In Possession Monthly Operating Report for Filing Period Month Ending 11/30/03 for Winstar International Inc |
| 2065 | 01/09/2004 | 4104 | Debtor In Possession Monthly Operating Report for Filing Period Month Ending 11/30/03 for Winstar Interactive Ventures Inc |
| 2066 | 01/09/2004 | 4105 | Debtor In Possession Monthly Operating Report for Filing Period Month Ending 11/30/03 for Winstar Wireless Inc |
| 2067 | 01/09/2004 | 4106 | Debtor In Possession Monthly Operating Report for Filing Period Month Ending 11/30/03 for Office com Inc |
| 2068 | 02/03/2004 | 4123 | Debtor-In Possession Monthly Operating Report for Filing Period Ending December 31, 2003 for Winstar Communications, Inc |
| 2069 | 02/03/2004 | 4124 | Debtor In Possession Monthly Operating Report for Filing Period Ending December 31 2003 for Winstar New Media Company Inc |
| 2070 | 02/03/2004 | 4125 | Debtor In Possession Monthly Operating Report for Filing Period Ending December 31, 2003 for Winstar International, Inc |
| 2071 | 02/03/2004 | 4126 | Debtor In-Possession Monthly Operating Report for Filing Period Ending December 31 2003 for Winstar Interactive Media Sales |
| 2072 | 02/03/2004 | 4127 | Debtor In Possession Monthly Operating Report for Filing Period Ending December 31 2003 for Winstar Interactive Ventures Inc |
| 2073 | 02/03/2004 | 4128 | Debtor In Possession Monthly Operating Report for Filing Period Ending December 31 2003 for Winstar Wireless Inc |
| 2074 | 02/03/2004 | 4129 | Debtor In-Possession Monthly Operating Report for Filing Period Ending December 31 2003 for Office com, Inc |
| 2075 | 03/10/2004 | 4139 | Certificate of No Objection (related document(s)4133 ) |
| 2076 | 03/12/2004 | 4140 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 1/31/04 for Winstar Communications, Inc |
| 2077 | 03/12/2004 | 4141 | Debtor-In-Possession Monthly Operating Report for Filing Period Month Ending 1/31/04 for Winstar Interactive Media Sales |
| 2078 | 03/12/2004 | 4142 | Debtor In Possession Monthly Operating Report for Filing Period Month Ending 1/31/04 for Winstar New Media Company, Inc |
| 2079 | 03/12/2004 | 4143 | Debtor In Possession Monthly Operating Report for Filing Period Month Ending 1/31/04 for Winstar International Inc |
| 2080 | 03/12/2004 | 4144 | Debtor In Possession Monthly Operating Report for Filing Period Month Ending 1/31/04 for Winstar Interactive Ventures Inc |
| 2081 | 03/12/2004 | 4145 | Debtor In Possession Monthly Operating Report for Filing Period Month Ending 1/31/04 for Winstar Wireless Inc Filed by Christine Shubert (Rennie, Sheldon) (Entered 03/12/2004) |
| 2082 | 03/12/2004 | 4146 | Debtor In Possession Monthly Operating Report for Filing Period Month Ending 1/31/04 for Office com Inc |
| 2083 | 04/28/2004 | 4195 | Debtor In-Possession Monthly Operating Report for Filing Period Ending 2/29/04 for Winstar Communications, Inc |
| 2084 | 04/28/2004 | 4196 | Debtor In Possession Monthly Operating Report for Filing Period Ending 2/29/04 for Winstar Interactive Media Sales |
| 2085 | 04/28/2004 | 4197 | Debtor In Possession Monthly Operating Report for Filing Period Ending 2 29 04 for Winstar New Media Company, Inc |
| 2086 | 04/28/2004 | 4198 | Debtor In-Possession Monthly Operating Report for Filing Period Ending 2-29 04 for Winstar International, Inc |
| 2087 | 04/28/2004 | 4199 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending 2-29 04 for Winstar Interactive Ventures Inc |

RLF1 2986514 1

EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 2088 | 04/28/2004 | 4200 | Debtor In Possession Monthly Operating Report for Filing Period Ending 2 29 04 for Winstar Wireless Inc |
|---|---|---|---|
| 2089 | 04/28/2004 | 4201 | Debtor In Possession Monthly Operating Report for Filing Period Ending 2 29 04 for Office com Inc |
| 2090 | 05/07/2004 | 4204 | Debtor In Possession Monthly Operating Report for Filing Period ending March 31 2004 for Winstar Communications Inc |
| 2091 | 05/07/2004 | 4205 | Debtor In Possession Monthly Operating Report for Filing Period ending March 31, 2004 for Winstar Interactive Media Sales |
| 2092 | 05/07/2004 | 4206 | Debtor In-Possession Monthly Operating Report for Filing Period ending March 31, 2004 for Winstar New Media Company Inc |
| 2093 | 05/07/2004 | 4207 | Debtor In Possession Monthly Operating Report for Filing Period ending March 31, 2004 for Winstar International, Inc |
| 2094 | 05/07/2004 | 4208 | Debtor In Possession Monthly Operating Report for Filing Period ending March 31 2004 for Winstar Interactive Ventures, Inc |
| 2095 | 05/07/2004 | 4209 | Debtor In Possession Monthly Operating Report for Filing Period ending March 31 2004 for Winstar Wireless Inc |
| 2096 | 05/07/2004 | 4210 | Debtor In-Possession Monthly Operating Report for Filing Period ending March 31 2004 for Office com Inc |
| 2097 | 06/04/2004 | 4227 | Debtor In Possession Monthly Operating Report for Filing Period Ending 4/30/04 for Winstar Communications Inc Filed by Christine Shubert (Rennie Sheldon) (Entered 06/04/2004) |
| 2098 | 06/04/2004 | 4228 | Debtor-In Possession Monthly Operating Report for Filing Period Ending 4/30/04 for Winstar Interactive Media Sales Filed by Christine Shubert (Rennie Sheldon) (Entered 06/04/2004) |
| 2099 | 06/04/2004 | 4229 | Debtor In Possession Monthly Operating Report for Filing Period Ending 4/30/04 for Winstar New Media Company, Inc |
| 2100 | 06/04/2004 | 4230 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending 4/30/04 for Winstar International, Inc |
| 2101 | 06/04/2004 | 4231 | Debtor In-Possession Monthly Operating Report for Filing Period Ending 4/30/04 for Winstar Interactive Ventures Inc |
| 2102 | 06/04/2004 | 4232 | Debtor In Possession Monthly Operating Report for Filing Period Ending 4/30/04 for Winstar Wireless Inc |
| 2103 | 06/04/2004 | 4233 | Debtor In Possession Monthly Operating Report for Filing Period Ending 4/30/04 for Office com, Inc |
| 2104 | 07/07/2004 | 4249 | Debtor In Possession Monthly Operating Report for Filing Period Ending May 31, 2004 for Winstar Communications, Inc |
| 2105 | 07/07/2004 | 4250 | Debtor In Possession Monthly Operating Report for Filing Period Ending May 31 2004 for Winstar Interactive Media Sales |
| 2106 | 07/07/2004 | 4251 | Debtor In Possession Monthly Operating Report for Filing Period Ending May 31, 2004 for Winstar New Media Company Inc |
| 2107 | 07/07/2004 | 4252 | Debtor In Possession Monthly Operating Report for Filing Period Ending May 31, 2004 for Winstar International Inc |
| 2108 | 07/07/2004 | 4253 | Debtor In Possession Monthly Operating Report for Filing Period Ending May 31, 2004 for Winstar Interactive Ventures, Inc |
| 2109 | 07/07/2004 | 4254 | Debtor In Possession Monthly Operating Report for Filing Period Ending May 31, 2004 for Winstar Wireless Inc |
| 2110 | 07/07/2004 | 4255 | Debtor In Possession Monthly Operating Report for Filing Period Ending May 31, 2004 for Office com, Inc |
| 2111 | 08/20/2004 | 4291 | Debtor-In Possession Monthly Operating Report for Filing Period Ending 6/30/2004 for Winstar Communications, Inc |
| 2112 | 08/20/2004 | 4292 | Debtor In Possession Monthly Operating Report for Filing Period Ending 6/30/2004 for Winstar Interactive Media Sales |

73

EXHIBIT A

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 2113 | 08/20/2004 | 4293 | Debtor In Possession Monthly Operating Report for Filing Period Ending 6/30/2004 for Winstar New Media Company Inc |
|---|---|---|---|
| 2114 | 08/20/2004 | 4294 | Debtor In Possession Monthly Operating Report for Filing Period Ending 6/30/2004 for Winstar International, Inc Filed by Christine Shubert (Rennie Sheldon) (Entered 08/20/2004) |
| 2115 | 08/20/2004 | 4295 | Debtor In Possession Monthly Operating Report for Filing Period Ending 6/30/2004 for Winstar Interactive Ventures, Inc |
| 2116 | 08/20/2004 | 4296 | Debtor In Possession Monthly Operating Report for Filing Period Ending 6/30/2004 for Winstar Wireless, Inc |
| 2117 | 08/20/2004 | 4297 | Debtor In Possession Monthly Operating Report for Filing Period Ending 6/30/2004 for Office com Inc |
| 2118 | 09/15/2004 | 4313 | Debtor In Possession Monthly Operating Report for Filing Period Ending July 31, 2004 for Winstar Communications, Inc |
| 2119 | 09/15/2004 | 4314 | Debtor In Possession Monthly Operating Report for Filing Period Ending July 31 2004 for Winstar Interactive Media Sales |
| 2120 | 09/15/2004 | 4315 | Debtor In Possession Monthly Operating Report for Filing Period Ending July 31, 2004 for Winstar New Media Company, Inc |
| 2121 | 09/15/2004 | 4316 | Debtor In-Possession Monthly Operating Report for Filing Period Ending July 31, 2004 for Winstar International Inc |
| 2122 | 09/15/2004 | 4317 | Debtor In Possession Monthly Operating Report for Filing Period Ending July 31, 2004 for Winstar Interactive Ventures Inc |
| 2123 | 09/15/2004 | 4318 | Debtor In Possession Monthly Operating Report for Filing Period Ending July 31 2004 for Winstar Wireless, Inc |
| 2124 | 09/15/2004 | 4319 | Debtor In Possession Monthly Operating Report for Filing Period Ending July 31, 2004 for Office com Inc |
| 2125 | 09/30/2004 | 4340 | Notice of Completion of Briefing Corrected Notice of Completion of Briefing Filed by Lucent Technologies ) |
| 2126 | 10/07/2004 | 4343 | Motion to Approve Settlement Stipulation with Lucent Technologies, Inc Pursuant to Federal Bankruptcy Rule 9019 |
| 2127 | 10/25/2004 | 4345 | Debtor In Possession Monthly Operating Report for Filing Period Ending August 31, 2004 for Winstar Communications Inc |
| 2128 | 10/25/2004 | 4346 | Debtor In Possession Monthly Operating Report for Filing Period Ending August 31, 2004 for Winstar Interactive Media Sales |
| 2129 | 10/25/2004 | 4347 | Debtor In Possession Monthly Operating Report for Filing Period Ending August 31, 2004 for Winstar New Media Company, Inc |
| 2130 | 10/25/2004 | 4348 | Debtor In-Possession Monthly Operating Report for Filing Period Ending August 31, 2004 for Winstar International, Inc |
| 2131 | 10/25/2004 | 4349 | Debtor-In Possession Monthly Operating Report for Filing Period Ending August 31, 2004 for Winstar Interactive Ventures Inc Filed by Christine Shubert (Menkowitz, Michael) (Entered 10/25/2004) |
| 2132 | 10/25/2004 | 4350 | Debtor In Possession Monthly Operating Report for Filing Period Ending August 31, 2004 for Winstar Wireless, Inc |
| 2133 | 10/25/2004 | 4351 | Debtor In Possession Monthly Operating Report for Filing Period Ending August 31, 2004 for Office com, Inc |
| 2134 | 10/29/2004 | 4352 | Debtor In-Possession Monthly Operating Report for Filing Period Ending September 30 2004 for Winstar Communications |
| 2135 | 10/29/2004 | 4353 | Debtor In Possession Monthly Operating Report for Filing Period Ending September 30, 2004 for Winstar Interactive Media Sales |
| 2136 | 10/29/2004 | 4354 | Debtor In-Possession Monthly Operating Report for Filing Period Ending September 30, 2004 for Winstar New Media Company, Inc |
| 2137 | 10/29/2004 | 4355 | Debtor In-Possession Monthly Operating Report for Filing Period Ending September 30, 2004 for Winstar International, Inc |

RLF1 2986514 1

EXHIBIT A

**APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
BE INCLUDED IN THE RECORD ON APPEAL**

| 2138 | 10/29/2004 | 4356 | Debtor In Possession Monthly Operating Report for Filing Period Ending September 30 2004 for Winstar Interactive Ventures Inc |
|------|------------|------|---|
| 2139 | 10/29/2004 | 4357 | Debtor In Possession Monthly Operating Report for Filing Period Ending September 30 2004 for Winstar Wireless Inc |
| 2140 | 10/29/2004 | 4358 | Debtor In Possession Monthly Operating Report for Filing Period Ending September 30 2004 for Office com Inc |
| 2141 | 11/04/2004 | 4360 | Order Approving Settlement Stipulation with Lucent Technologies Inc (Related Doc # 4343) |
| 2142 | 12/15/2004 | 4366 | Debtor In Possession Monthly Operating Report for Filing Period October, 2004 for Winstar Communications Inc |
| 2143 | 12/15/2004 | 4367 | Debtor In Possession Monthly Operating Report for Filing Period October, 2004 for Winstar New Media Company, Inc |
| 2144 | 12/15/2004 | 4368 | Debtor In Possession Monthly Operating Report for Filing Period October 2004 for Winstar Interactive Ventures, Inc |
| 2145 | 12/15/2004 | 4369 | Debtor In Possession Monthly Operating Report for Filing Period October, 2004 for Winstar Interactive Media Sales |
| 2146 | 12/15/2004 | 4370 | Debtor In Possession Monthly Operating Report for Filing Period October 2004 for Office com Inc |
| 2147 | 12/15/2004 | 4371 | Debtor-In Possession Monthly Operating Report for Filing Period October 2004 for Winstar Wireless Inc Filed by Christine Shubert (Rennie Sheldon) (Entered 12/15/2004) |
| 2148 | 12/15/2004 | 4372 | Debtor In-Possession Monthly Operating Report for Filing Period October, 2004 for Winstar International Inc |
| 2149 | 01/21/2005 | 4386 | Debtor In Possession Monthly Operating Report for Filing Period Ending November 30, 2004 for Winstar Communications Inc |
| 2150 | 01/21/2005 | 4387 | Debtor-In Possession Monthly Operating Report for Filing Period Ending December 31, 2004 for Winstar Interactive Ventures Inc |
| 2151 | 01/21/2005 | 4388 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending December 31 2004 for Winstar New Media Company, Inc |
| 2152 | 01/21/2005 | 4389 | Debtor In-Possession Monthly Operating Report for Filing Period Ending December 31 2004 for Winstar International, Inc |
| 2153 | 01/21/2005 | 4390 | Debtor In Possession Monthly Operating Report for Filing Period Ending December 31 2004 for Winstar Interactive Ventures, Inc |
| 2154 | 01/21/2005 | 4391 | Debtor In Possession Monthly Operating Report for Filing Period Ending December 31 2004 for Winstar Wireless Inc |
| 2155 | 01/21/2005 | 4392 | Debtor In Possession Monthly Operating Report for Filing Period Ending December 31 2004 for Office com, Inc |
| 2156 | 02/04/2005 | 4400 | Debtor In Possession Monthly Operating Report for Filing Period Ending 12/31/2004 for Winstar Communications, Inc |
| 2157 | 02/04/2005 | 4401 | Debtor In Possession Monthly Operating Report for Filing Period Ending 12/31/2004 for Winstar Interactive Media Sales Filed by Christine Shubert (Rennie, Sheldon) (Entered 02/04/2005) |
| 2158 | 02/04/2005 | 4402 | Debtor In Possession Monthly Operating Report for Filing Period Ending 12/31/2004 for Winstar New Media Company, Inc |
| 2159 | 02/04/2005 | 4403 | Debtor-In Possession Monthly Operating Report for Filing Period Ending 12/31/2004 for Winstar International, Inc |
| 2160 | 02/04/2005 | 4404 | Debtor In Possession Monthly Operating Report for Filing Period Ending 12/31/2004 for Winstar Interactive Ventures, Inc |
| 2161 | 02/04/2005 | 4405 | Debtor In-Possession Monthly Operating Report for Filing Period Ending 12/31/2004 for Winstar Wireless, Inc Filed by Christine Shubert (Rennie, Sheldon) (Entered 02/04/2005) |

EXHIBIT A

APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
BE INCLUDED IN THE RECORD ON APPEAL

| 2162 | 02/04/2005 | 4406 | Debtor In Possession Monthly Operating Report for Filing Period Ending 12/31/2004 for Office com Inc |
| 2163 | 03/04/2005 | 4428 | Debtor In Possession Monthly Operating Report for Filing Period Ending January 31, 2005 for Winstar Communications Inc (Part 1) Filed by Christine Shubert (Attachments # 1 Part 2# 2 Part 3) |
| 2164 | 03/04/2005 | 4429 | Debtor In Possession Monthly Operating Report for Filing Period Ending January 31, 2005 for Winstar Interactive Media Sales |
| 2165 | 03/04/2005 | 4430 | Debtor In Possession Monthly Operating Report for Filing Period Ending January 31, 2005 for Winstar New Media Company, Inc |
| 2166 | 03/04/2005 | 4431 | Debtor In Possession Monthly Operating Report for Filing Period Ending January 31 2005 for Winstar International Inc |
| 2167 | 03/04/2005 | 4432 | Debtor In Possession Monthly Operating Report for Filing Period Ending January 31 2005 for Winstar Interactive Ventures Inc |
| 2168 | 03/04/2005 | 4433 | Debtor In Possession Monthly Operating Report for Filing Period Ending January 31 2005 for Winstar Wireless, Inc |
| 2169 | 03/04/2005 | 4434 | Debtor In Possession Monthly Operating Report for Filing Period Ending January 31 2005 for Office com Inc |
| 2170 | 03/31/2005 | 4449 | Debtor In Possession Monthly Operating Report for Filing Period Ending February 28 2005 for Winstar Communications, Inc |
| 2171 | 03/31/2005 | 4450 | Debtor In Possession Monthly Operating Report for Filing Period Ending February 28 2005 for Winstar Interactive Media Sales |
| 2172 | 03/31/2005 | 4451 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending February 28 2005 for Winstar New Media Company Inc |
| 2173 | 03/31/2005 | 4452 | Debtor In Possession Monthly Operating Report for Filing Period Ending February 28 2005 for Winstar International Inc |
| 2174 | 03/31/2005 | 4453 | Debtor In-Possession Monthly Operating Report for Filing Period Ending February 28, 2005 for Winstar Interactive Ventures, Inc |
| 2175 | 03/31/2005 | 4454 | Debtor In-Possession Monthly Operating Report for Filing Period Ending February 28, 2005 for Winstar Wireless Inc |
| 2176 | 03/31/2005 | 4455 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending February 28 2005 for Office com Inc Filed by Christine Shubert (Menkowitz, Michael) (Entered 03/31/2005) |
| 2177 | 05/02/2005 | 4475 | Debtor In Possession Monthly Operating Report for Filing Period Ending March 31 2005 for Winstar Communications Inc Filed by Christine Shubert (Menkowitz Michael) (Entered 05/02/2005) |
| 2178 | 05/02/2005 | 4476 | Debtor In Possession Monthly Operating Report for Filing Period Ending March 31, 2005 for Winstar Interactive Media Sales Filed by Christine Shubert (Menkowitz Michael) (Entered 05/02/2005) |
| 2179 | 05/02/2005 | 4477 | Debtor In Possession Monthly Operating Report for Filing Period Ending March 31 2005 for Winstar New Media Company, Inc |
| 2180 | 05/02/2005 | 4478 | Debtor In Possession Monthly Operating Report for Filing Period Ending March 31 2005 for Winstar International, Inc |
| 2181 | 05/02/2005 | 4479 | Debtor In-Possession Monthly Operating Report for Filing Period Ending March 31, 2005 for Winstar Interactive Ventures, Inc |
| 2182 | 05/02/2005 | 4480 | Debtor In-Possession Monthly Operating Report for Filing Period Ending March 31, 2005 for Winstar Wireless, Inc |
| 2183 | 05/02/2005 | 4481 | Debtor In Possession Monthly Operating Report for Filing Period Ending March 31, 2005 for Office com, Inc |
| 2184 | 06/07/2005 | 4495 | Debtor In-Possession Monthly Operating Report for Filing Period Ending April 30, 2005 for Winstar Communications, Inc |
| 2185 | 06/07/2005 | 4496 | Debtor In-Possession Monthly Operating Report for Filing Period Ending April 30, 2005 for Winstar Interactive Media Sales |

**EXHIBIT A**

## APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
## BE INCLUDED IN THE RECORD ON APPEAL

| 2186 | 06/07/2005 | 4497 | Debtor In Possession Monthly Operating Report for Filing Period Ending April 30, 2005 for Winstar New Media Company, Inc |
|------|------------|------|---|
| 2187 | 06/07/2005 | 4498 | Debtor In Possession Monthly Operating Report for Filing Period Ending April 30 2005 for Winstar International Inc |
| 2188 | 06/07/2005 | 4499 | Debtor In Possession Monthly Operating Report for Filing Period Ending April 30 2005 for Winstar Interactive Ventures, Inc |
| 2189 | 06/07/2005 | 4500 | Debtor In Possession Monthly Operating Report for Filing Period Ending April 30 2005 for Winstar Wireless Inc |
| 2190 | 06/07/2005 | 4501 | Debtor In Possession Monthly Operating Report for Filing Period Ending April 30 2005 for Office com Inc Filed by Christine Shubert (Menkowitz Michael) (Entered 06/07/2005) |
| 2191 | 08/01/2005 | 4522 | Debtor In-Possession Monthly Operating Report for Filing Period Ending May 31 2005 for Winstar Communications Inc |
| 2192 | 08/01/2005 | 4523 | Debtor-In Possession Monthly Operating Report for Filing Period Ending May 31, 2005 for Winstar Interactive Media Sales |
| 2193 | 08/01/2005 | 4524 | Debtor In Possession Monthly Operating Report for Filing Period Ending May 31 2005 for Winstar New Media Company Inc |
| 2194 | 08/01/2005 | 4525 | Debtor In Possession Monthly Operating Report for Filing Period Ending May 31, 2005 for Winstar International Inc Filed by Christine Shubert (Menkowitz Michael) (Entered 08/01/2005) |
| 2195 | 08/01/2005 | 4526 | Debtor In Possession Monthly Operating Report for Filing Period Ending May 31 2005 for Winstar Interactive Ventures, Inc |
| 2196 | 08/01/2005 | 4527 | Debtor-In Possession Monthly Operating Report for Filing Period Ending May 31 2005 for Winstar Wireless Inc |
| 2197 | 08/01/2005 | 4528 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending May 31, 2005 for Office com, Inc |
| 2198 | 08/03/2005 | 4529 | Debtor-In-Possession Monthly Operating Report for Filing Period Ending June 30, 2005 for Winstar Communications, Inc |
| 2199 | 08/03/2005 | 4530 | Debtor In-Possession Monthly Operating Report for Filing Period Ending June 30, 2005 for Winstar Interactive Media Sales |
| 2220 | 08/03/2005 | 4531 | Debtor In Possession Monthly Operating Report for Filing Period Ending June 30 2005 for Winstar New Media Company Inc |
| 2201 | 08/03/2005 | 4532 | Debtor In Possession Monthly Operating Report for Filing Period Ending June 30 2005 for Winstar International Inc |
| 2202 | 08/03/2005 | 4533 | Debtor In Possession Monthly Operating Report for Filing Period June 30 2005 for Winstar Interactive Ventures Inc |
| 2203 | 08/03/2005 | 4534 | Debtor In Possession Monthly Operating Report for Filing Period June 30, 2005 for Winstar Wireless, Inc |
| 2204 | 08/03/2005 | 4535 | Debtor In Possession Monthly Operating Report for Filing Period June 30 2005 for Office com Inc |
| 2205 | 04/18/2001 | 7 | AFFIDAVIT of Timothy R Graham in Support of Chapter 11 Petitions and First Day Motions and Applications |
| 2206 | 04/18/2001 | 21 | MOTION for Order [I] Authorizing Debtors to Enter into Post-Petition Credit Agreement and Obtain Post-Petition Financing, [II] Providing Adequate Protection and Granting Liens Security Interests and Superpriority Claims [III] Granting Interim Relief and [IV] Scheduling a Final Hearing, [ID] INTERIM Order Signed and Located in Original Document Re Item # 21 |
| 2207 | 05/07/2001 | 158 | RESPONSE to Objections to Motion for Order Authorizing Debtor to Obtain Post-Petition Financing |
| 2208 | 05/10/2001 | 186 | TRANSCRIPT of Hearing Held 5/8/01 at 12 38 P M |
| 2209 | 05/14/2001 | 202 | FINAL Order Authorizing Debtors to Enter Into Post Petition Credit Agreement and Obtain Post-Petition Financing, Providing Adequate Protection and Granting Liens, Security Interests and Superpriority Claims Re Item # 21 |

## EXHIBIT A

### APPELLANT'S AMENDED DESIGNATION OF ITEMS TO
### BE INCLUDED IN THE RECORD ON APPEAL

| 2210 | 06/08/2001 | 334 | MOTION for Order [EMERGENCY] For Interim Amendment Order Authorizing Amendment of Post Petition Credit Agreement [Filed by Pauline K Morgan Attys |
|------|------------|------|---|
| 2211 | 10/15/2002 | 2968 | Stipulation and Agreed Order by Winstar and General Motors Resolving Motion and Memorandum for Order to Implement and Enforce Provisions of Sale Order Dated Dec 19 2001 |

78

# TAB
# 2

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re                                          Chapter 7

WINSTAR COMMUNICATIONS  INC   et al ,          Case No  01-1430
                                               Jointly Administered
                        Debtors


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CHRISTINE C  SHUBERT, CHAPTER 7
TRUSTEE,                                        Adversary Proceeding No  01-1063 (JBR)

              Plaintiff,
                                               **APPELLEE'S CROSS-DESIGNATION
        v                                       OF ITEMS TO BE INCLUDED IN THE
                                                RECORD ON APPEAL**
LUCENT TECHNOLOGIES INC ,

              Defendant

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


Pursuant to Federal Rule of Bankruptcy Procedure 8006, Appellee Christine C  Shubert,

Chapter 7 Trustee of Winstar Communications, Inc  and Winstar Wireless, Inc , hereby

designates the following items for inclusion in the record   True and complete copies of the

Record items are annexed hereto as Exhibit "A"

From Shubert v Lucent Technologies Inc , United States District Court, District of

Delaware Civil Action No 04-928(JJF)

| Tab | Date | District Court Docket No | Description of Item |
|-----|------|--------------------------|---------------------|
| 2212 | 11/16/2004 | 11 | MEMORANDUM OPINION (signed by Judge Joseph J Farnan Jr ) re DI #12 |
| 2213 | 11/16/2004 | 12 | ORDER denying Lucent's motion to Withdraw the Reference to the Bankruptcy Court |
| 2214 | 9/8/2005 | 21 | MEMORANDUM ORDER denying [13] Motion to Certify Order for Appeal Pursuant to 28 U S C 1292(b) |

Dated  Wilmington, Delaware
     January 26, 2006

FOX, ROTHSCHILD LLP

By   */s/ Sheldon K Rennie (#3772)*
     Sheldon K Rennie, Esq
     Citizens Bank Center
     919 North Market Street, Suite 1300
     Wilmington, Delaware  19899-2323
     Telephone  (302) 622-4202
     Facsimile  (302) 656-8920

     -and-

HERRICK, FEINSTEIN LLP
Stephen M Rathkopf, Esq
David R King, Esq
2 Park Avenue
New York, New York 10016
Telephone  (212) 592-1400
Facsimile  (212) 592-1500

2

# ROA
# TAB
# 327

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>WINSTAR COMMUNICATIONS INC., et al.,<br><br>                      Debtors | Chapter 7<br>Case No. 01-01430<br>(Jointly Administered) |
| CHRISTINE C. SHUBERT CHAPTER 7<br>TRUSTEE OF WINSTAR<br>COMMUNICATIONS, INC. AND WINSTAR<br>WIRELESS INC.<br><br>                      Plaintiff<br><br>           v.<br><br>LUCENT TECHNOLOGIES INC.,<br><br>                      Defendant | Adv. Pro. No. 01-01063 (JBR) |

## RENUMBERED JOINT STIPULATION AS
## TO UNCONTESTED FACTS

Plaintiff Christine C. Shubert chapter 7 trustee of Winstar Communications Inc.

and Winstar Wireless Inc. ( the Trustee ) and defendant Lucent Technologies Inc.

HN\11 237120\ 1 110\% 3625305 (3 3) rtf

('Lucent') hereby revise and replace the Joint Stipulation of Uncontested Facts included

in the Joint Pretrial Memorandum dated March 7, 2005 and the Joint Stipulation as to

Additional Uncontested Facts dated March 21, 2005 with this Renumbered Joint

Stipulation as to Uncontested Facts in order to renumber the various uncontested facts

sequentially so as to avoid confusion when citing the uncontested facts. All of the

uncontested facts are attached hereto as Exhibit A which uncontested facts may be

received as evidence in this action.

Dated  April 25, 2005
       Wilmington, Delaware

Sheldon K Rennie (DE Bar No. 3772)
FOX ROTHSCHILD, LLP
Mellon Bank Center, Suite 1400
919 North Market Street
Wilmington, DE 19801
(302) 622-4202

-and-

Stephen M Rathkopf
David R King
HERRICK, FEINSTEIN LLP
104 Carnegie Center
Princeton, NJ 08540
(609) 520-9095

*Attorneys for the Trustee*

Daniel J DeFranceschi (DE Bar No 2732)
Rebecca L Booth (DE Bar No 4031)
RICHARDS, LAYTON & FINDER, P A
One Rodney Square
P O Box 551
Wilmington, DE 19889
(302) 651-7700

-and-

Paul C Saunders
Daniel Slifkin
Michael A Paskin
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York NY 10019
(212) 474 1000

*Attorneys for Defendant*
*Lucent Technologies Inc*

2

Revised Joint Stipulation as to Uncontested Facts

## EXHIBIT A

1      At all relevant times, Winstar Communications, Inc ('Winstar') was a Delaware corporation in the business of providing telecommunications and related services  At least until its filing of a petition in bankruptcy, Winstar was engaged in the buildout of a global telecommunications network to service its customers

2      At all relevant times Winstar Wireless Inc ( Wireless ) was a Delaware corporation and a wholly-owned subsidiary of Winstar  Among other things, Wireless was engaged in the design and construction of Winstar s network

3      Winstar and Wireless each commenced chapter 11 bankruptcy proceedings on April 18 2001  Those proceedings were each converted to chapter 7 liquidation proceedings on or about January 24 2002

4      Christine C Shubert is the chapter 7 trustee ( the Trustee") for Winstar Communications, Inc and Winstar Wireless, Inc

5      Lucent Technologies Inc ("Lucent ) is a corporation organized under the laws of Delaware and is headquartered in Murray Hill New Jersey  Lucent designs and delivers telecommunications systems services and software

6      On October 21, 1998 Lucent and Winstar entered into a Supply Agreement (the 'Supply Agreement") under which Lucent agreed to provide, and finance (pursuant to a separate Credit Agreement) the purchase of certain products and services to Winstar

7      Lucent and Wireless entered into an Agreement for Network Build Out Services (the Subcontract ) effective January 4 1999

3

8      On May 4 2000 Winstar repaid Lucent the outstanding balance under the First Credit Agreement with funds from a new loan that Winstar obtained from the Bank of New York (the "Bank Facility")

9      On May 4 2000 Winstar and Lucent entered into a new Credit Agreement (the "Second Credit Agreement") which provided for $2 billion of new Lucent financing (of which Winstar was permitted to borrow up to $1 billion at any one time) over a five-year term

10     On December 7 2000, Winstar and Siemens entered into a $200 million financing agreement that was structured as an increase to the Bank Facility ("the Siemens loan") and transferred a portion of the loan proceeds to Lucent

11     Lucent was in privity of contract with Winstar under the Second Credit Agreement

12     Section 547(b)(5) of the United States Bankruptcy Code has been satisfied with respect to the Trustee s claim that the payment to Lucent of Siemens loan proceeds constituted a voidable preference

13     On October 21 1998 Lucent and Winstar entered into a Credit Agreement (the "First Credit Agreement") that allowed Winstar under certain conditions to borrow up to $2 billion from Lucent over a term of five years (with up to $500 million available at any one time)

14     Winstar was a signatory under the First Credit Agreement, however, its wholly owned subsidiary, Wireless, was not a borrower guarantor or otherwise a signatory under the First Credit Agreement

4

15    All borrowings under the First Credit Agreement were paid off on or before the execution of the Second Credit Agreement

16    Winstar was a signatory under the Second Credit Agreement, however, its wholly owned subsidiary Wireless was not a borrower guarantor or otherwise a signatory under the Second Credit Agreement

17    On December 7 2000, Winstar wire transferred $188,180 000 00 to Lucent which represented a payment of the $194,000,000 00 net proceeds of the Siemens loan minus $5 820 000 00  The $5 820 000 00 represented a refund of an upfront fee Winstar paid to Lucent at the time of the borrowing under the Second Credit Agreement which became due to Winstar on account of the Siemens repayment

18    Section 547(b)(1) of the United States Bankruptcy Code has been satisfied with respect to the Trustee's claim that the transfer to Lucent of a portion of the Siemens loan proceeds constituted a voidable preference

19    Section 547(b)(2) of the United States Bankruptcy Code has been satisfied with respect to the Trustee s claim that the transfer to Lucent of a portion of the Siemens loan proceeds constituted a voidable preference

20    There were no task orders agreed to by Lucent and Wireless for work performed by Wireless on the Winstar network at any point after March 31, 1999 through and including March 31  2001

21    Lucent and Wireless did not agree to a written purchase order for the services performed by Wireless on the Winstar network in the quarter ending March 31, 2001

22    Lucent and Winstar did not agree to a written purchase order for the services performed by Wireless on the Winstar network in the quarter ending December 31, 2000

23    Once received  Winstar was required to transfer the proceeds of the Siemens loan to Lucent under the terms of the Second Credit Agreement

24    Between November 30  2000 and February 28  2001  Winstar drew down approximately $240 million under the Second Credit Agreement

25    Winstar submitted signed certifications with its January and February 2001 borrowing requests under the Second Credit Agreement certifying that all conditions for borrowing set forth in Section 4 03 of the Second Credit Agreement had been satisfied or would be satisfied as of the date of the borrowing request and the date that the borrowing was made

6

## CERTIFICATE OF SERVICE

I Jason M Madison hereby certify that on April 26 2005 I caused copies of the foregoing

Renumbered Joint Stipulation as to Uncontested Facts to be served upon the following

parties in the manner indicated

**Via Hand Delivery**

Sheldon K Rennie
Michael G Menkowitz
Fox, Rothschild LLP
919 North Market Street Suite 1300
Wilmington DL 19801 3046

**Via Federal Express**

Stephen M Rathkopf
David R King
Herrick Feinstein LLP
2 Park Avenue
New York NY 10016-9301

Richard G Smoley
Kaye Scholer LLP
425 Park Avenue
New York NY 10022-3598

Daniel Slifkin
Paul C Sanders
Lillian S Grossbard
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 8th Avenue
New York NY 10019

David R King
Herrick Feinstein LLP
104 Carnegie Center
Princeton, NJ 08540

Jason M Madison (No 4431)

RLF1 2866617 1

## CERTIFICATE OF SERVICE

I Jason M Madion hereby certify that on April 26 2005 I caused copies of the foregoing

Renumbered Joint Stipulation as to Uncontested Facts to be served upon the following

parties in the manner indicated

**Via Hand Delivery**

Sheldon K Rennie
Michael G Menkowitz
Fox Rothschild LLP
919 North Market Street Suite 1300
Wilmington DL 19801-3046

**Via Federal Express**

Stephen M Rathkopf
David R King
Herrick Feinstein LLP
2 Park Avenue
New York NY 10016-9301

Richard G Smoley
Kaye Scholer LLP
425 Park Avenue
New York NY 10022-3598

Daniel Slifkin
Paul C Sanders
Lillian S Grossbard
Cravath Swaine & Moore LLP
Worldwide Plaza
825 8th Avenue
New York NY 10019

David R King
Herrick Feinstein LLP
104 Carnegie Center
Princeton, NJ 08540

Jason M Madion (No 4431)

# ROA
# TAB
# 347

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

In re                                          )          Chapter 7
                                               )          Case No 01-1430(JBR)
WINSTAR COMMUNICATIONS INC                     )
        et al                                  )
        Debtors                                )
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
CHRISTINE C SHUBERT                            )
        CHAPTER 7 TRUSTEE                       )
        Plaintiff                              )          Adversary Proceeding
        v                                      )          No  01-1063 (JBR)
LUCENT TECHNOLOGIES INC                        )
        Defendant                             )
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

### MEMORANDUM OF DECISION INCLUDING FINDINGS OF FACT AND CONCLUSIONS OF LAW WITH RESPECT TO COUNTS VII, X, AND XI OF THE SECOND AMENDED COMPLAINT AND COUNTS 5 AND 6 OF THE SECOND AMENDED ANSWER AND COUNTERCLAIMS

This matter came before the Court for trial on Counts VII (breach of subcontract) [1] X

(preference) and XI (equitable subordination) of the Second Amended Complaint[2] and

one count of fraud (Count 5) and one count of negligent misrepresentation (Count 6) of the

---

[1] The parties agree that the alleged breach is a breach of the Agreement for Network Build-out Services (the  Subcontract") and not a breach of any funding obligation under the credit facilities  See Joint Pretrial Memorandum [Adversary Proceeding Docket (hereinafter  Docket ) # 292] at Exhibit 12

[2] On May 29 and August 7, 2003  the Bankruptcy Court  on Lucent's motion  entered orders dismissing Count IX (breach of covenant of good faith and fair dealing), precluding the Trustee from recovering consequential or punitive damages on any of her claims  and prohibiting the Trustee from obtaining any affirmative monetary recovery on her equitable subordination claim [Docket ## 85  103]  The Trustee  with Lucent's assent  voluntarily dismissed Counts I through VI and Count VIII [Docket #207]

Second Amended Answer and Counterclaims [3]  As set forth in greater detail below  the

Court finds that these matters are core proceedings in which the Court may enter final

orders  or with respect to Lucent s counterclaims  even if they are related to non-core

proceedings  Lucent has consented to the entry of final orders

In reaching its determinations  the Court considered the entire 21 days of testimony

given by 39 witnesses  considered the demeanor and credibility of the 13 witnesses who

testified in person[4] and  to the extent possible  the demeanor and credibility of the 16

---

"Count 2 of the Second Amended Answer and Counterclaims is a count for setoff
pursuant to 11 U S C § 553  The parties have stipulated that in the event the Trustee is
awarded judgment against the Defendant under the Subcontract, the Defendant is entitled
to a total setoff of $6 3 million  (Stipulation By and Between The Trustee and Lucent
Technologies Inc  Concerning Lucent s Counterclaim for Setoff at ¶ 1 [Docket #337])
Counterclaim 3 is a claim for fraud and counterclaim 4 is one for negligent
misrepresentation  Both are based on Winstar's alleged representations to Lucent during
Lucent's "due diligence' investigation in November and December 2000  Neither of these
counterclaims were raised by Lucent in the Joint Pretrial Memorandum as required by
paragraph 7(H) and (I) of the Court s Pretrial Order of January 26  2005 [Docket # 275]
( The parties are ordered to file    a Joint Pretrial Memorandum approved by all counsel
and unrepresented parties  which shall set forth the following    (H) The issues of fact
which remain to be litigated (evidence at trial shall be limited to these issues)  (I) The
issues of law to be determined   ") and thus are deemed waived  Had they not been
waived  the credible evidence supports a finding that Lucent did not carry its burden of
proof as it had sufficient knowledge of the financial condition of Winstar during the relevant
period that it could not have reasonably relied upon any allegedly misleading information
Lucent's surviving counterclaims for fraud and negligent misrepresentation relate to the
breach of the so called CAPEX covenant

[4]The witnesses who testified at trial were Paul Pocalyko  Stephen Scherf  Martina
Hunt-Majean, Mark Wilson  Reginald Kipke  Kevin Collins, Christopher Stark  Michael
Keefe  Elizabeth Perricone (some of Perricone s testimony also came in via portions of
deposition testimony read at trial), Gregory Garrett, Henry Schacht (some of Schacht's
testimony also came in via videotaped deposition testimony played at trial), Vernon Terrill,
and John Solomon

witnesses whose videotaped testimony was introduced [5] considered the credibility of the witnesses whose testimony was read into the record reviewed the over 1400 exhibits (including many duplicates) totaling many thousands of pages admitted in evidence heard arguments of counsel and reviewed the various pre- and post trial pleadings submitted in support of each party's position  The following decision constitutes the Court's findings of fact and conclusions of law in accordance with Fed  R  Bankr  P  7052, and as set forth below  to the extent that the district court concludes that this Court may only enter proposed finding and rulings pursuant to Fed  R  Bank  P  9033 with respect to some or all of the counts or counterclaims  the following constitutes the Court s proposed findings and rulings with respect to such counts or counterclaims

## EXPLANATION OF CITATIONS

The parties have stipulated to certain facts as most recently set forth in the Revised Joint Stipulation of Uncontested Facts (the  Revised Joint Stipulation' )  attached as Exhibit A to the Renumbered Joint Stipulation of Uncontested Facts [Docket #331]

Citations to trial exhibits introduced by the Plaintiff are cited as  PX #'  Defendant's trial exhibits are cited as  DX # "  In many instances the parties introduced the same

---

[5]The witnesses whose testimony was admitted via videotaped depositions were Nathan Kantor  Lisa Hicks  William Zlotnick, Jill Diroma  Frederic Rubin, David Ackerman  Richard McGinn (some of McGinn s testimony also came in via portions of deposition testimony read at trial)  William Rouhana, Michael Montemarano  Deborah Hopkins  Gary Simpson  William Fullerton  Richard Uhl, Kevin Monaco (some of Monaco s testimony also came in via portions of deposition testimony read at trial)  Gary Goldman, and Kevin Howell  As noted above some of Schacht's testimony was introduced on videotape, the Court also had the opportunity to observe this witness when he testified in person later during the trial

3

document or portions of the same document  The Court generally has cited to duplicate documents by only one exhibit number  Citations to specific pages within a multiple-page exhibit are cited by exhibit number and Bates number or by page number if the exhibit does not contain Bates numbers

Citations to testimony in the trial transcripts (which include only testimony from witnesses who were physically present in court and deposition testimony read into the record) identify the witness, followed by the designation  Depo  in instances where the deposition testimony was read into the record  and  Tr  along with reference to the transcript volume  the page and  where needed  line numbers  The trial transcripts appear on the docket at numbers 322-326  338  and 351-356

Citations to transcripts of videotaped deposition testimony (which was played during trial but not transcribed as part of the trial transcript) contain the designation  Video and identify the witness, if necessary, whether the testimony is designated as "Direct, 'Cross  or  Redirect  [6] the page and line numbers of the transcribed deposition testimony The transcripts of the videotaped depositions or portions thereof that were introduced at trial were admitted as exhibits and are listed in the Stipulated Joint Trial Exhibits [Docket #

[6]In many instances non-consecutive portions of videotaped testimony were introduced  In designating the corresponding transcripts  the parties, for some but not all of these witnesses  renumbered the pages sequentially and kept the reference to the original volume and page  In some instances while the renumbered pages introduced as a witness  direct testimony begin with page 1, so do the first pages of the witness  cross examination and redirect testimony  The Court will refer to the renumbered page designation as  direct "  cross  or  redirect  when necessary and omit reference to the original volume and page numbers unless such additional citation is necessary to avoid confusion

4

335]

**JURISDICTION**

1  In order to understand the Court s conclusions with respect to its jurisdiction to enter final orders [7] it is necessary to explore Lucent s objection to this Court s entry of a final order  On April 18  2001 (the "Petition Date") Wireless Communications, Inc ("Winstar") and Winstar Wireless  Inc ("Wireless" and collectively with Winstar, the 'Debtors ) filed voluntary petitions for reorganization pursuant to Chapter 11 of the United States Bankruptcy Code  (Revised Joint Stipulation ¶ 3)  In January 2002 the cases were converted to Chapter 7 and shortly thereafter Christine C  Shubert (the  Trustee') was appointed as the Chapter 7 trustee  (Id , ¶¶ 3 and 4)

2  This adversary proceeding was commenced by the Debtors on the Petition Date  In July 2002 the Trustee stepped in as the Plaintiff and soon thereafter filed her Second Amended Complaint and Jury Demand ( Second Amended Complaint') [Docket #69]  the operative complaint in this case  As the caption of the Second Amended Complaint suggests, the Trustee requested a jury trial on all actions that could be tried to a jury  In the Second Amended Answer and Counterclaim of Defendant Lucent Technologies Inc  ( Lucent ) to the Second Amended Complaint ("Second Amended

---

[7]Whether the Court treats its order as final under Fed  R  Bar kr  P  7052 or proposes findings and rulings to the district court under Fed  R  Bank  P  9033 will affect the way in which the parties respond to the orders issued contemporaneously herewith  Moreover 'a proceeding's core or non-core nature is crucial in bankruptcy cases because it defines both the extent of the Bankruptcy Court s jurisdiction  and the standard by which the District Court reviews its factual findings "  *Halper v  Halper* 164 F 3d 830, 836 (3d Cir  1999)  *Compare* Fed  R  Bankr  P  9033(d) *with* Fed  R  Civ  P  8013

Answer'), dated March 24, 2004 [Docket #156] Lucent also demanded a jury trial "on all issues properly triable thereby' Subsequently the Trustee withdrew her request for a jury trial [8] The Trustee alleged that these proceedings are core Lucent disagreed except with respect to the preference action (Second Amended Complaint at ¶ 3 Second Amended Answer at ¶ 3)

    3 In June 2004 Lucent sought discretionary withdrawal of the reference pursuant to 28 U S C § 157(d) in the district court and a waiver of Local Bankruptcy Court Rule 5011-1 as it did not file a contemporaneous motion asking the Bankruptcy Court to determine whether these matters were core or non-core [Docket # 208] [9] In July 2004 Lucent filed a memorandum in support of its withdrawal motion [Docket # 237] and urged withdrawal of the reference on the grounds that Lucent was entitled to a jury trial on the Trustee s preference and breach of contract claims and on its own fraud and negligent misrepresentation counterclaims The Bankruptcy Court then stayed its proceedings pending the district court s determination of the withdrawal motion

    4 In November 2004 the district court entered its Memorandum Opinion and Order [District Court Docket ## 11 and 12] denying the withdrawal motion Specifically the

---

[8]The district court concluded that the Trustee had the right to withdraw her jury demand without Lucent's consent Memorandum Opinion, dated November 16 2004 at 7 entered in *Shubert v Lucent Technologies Inc* United States District Court for the District of Delaware Civil Action 04-928 [District Court Docket # 8]

[9]Contemporaneously with the filing of the withdrawal motion Lucent filed a Motion for Summary Judgment [Docket # 210] seeking judgment from the Bankruptcy court on all three remaining counts The motion is silent with respect to any objection to the entry of final orders

6

district court concluded that Lucent had waived its right to a jury trial by the filing of its

proofs of claim and that Lucent did not meet the standards for a permissive withdrawal of

the reference for cause under *In re Pruitt* 910 F 2d 1160, 1168 (3d Cir 1990)

    5  From before the filing of the withdrawal motion through the conclusion of the

Trustee's case-in-chief in this Court when Lucent then unsuccessfully sought judgment on

partial findings pursuant to Fed R Bank P 7052 until after submission of all the

evidence and indeed submission of each party's proposed findings of fact and

conclusions of law in this adversary proceeding [10] Lucent **did** not raise the issue that the

Bankruptcy Court lacked jurisdiction to enter final judgment  In fact the record is clear

Lucent sought a final order in its favor on several occasions from this Court [11]

    6  On the evening of June 9 2005, Lucent filed a letter dated June 8 2005 [Docket

#343]  remind[ing] the Court that Lucent has not consented to the Court s jurisdiction to

---

[10]The last day on which evidence was submitted was May 11 2005  Both parties
rested at that time  Lucent electronically filed its proposed findings of fact and conclusions
of law on June 6, 2005 at 11 32 p m  Closing arguments which of course are not
evidence, occurred on June 13 2005

[11]Lucent sought summary judgment on Trustee's preference and breach of contract
claims as well as its own claims for fraud and negligent misrepresentation in June 2004
There is nothing in the pleadings to suggest Lucent was asking the Court to provide
proposed findings and conclusions to the district court  In the Pretrial Memorandum  the
parties were unable to agree as to the legal issues to be decided so each party set forth
its position  Nowhere in Lucent s detailed 12 page statement of the legal issues  or
indeed anywhere else in the Pretrial Memorandum  does Lucent allege the Court lacked
jurisdiction to enter final orders  At the conclusion of the Trustee s case in chief  Lucent
orally and in writing sought judgment pursuant to Fed R Bank P 7052 and again did not
raise an objection to this Court s entering a final order  Similarly Lucent s proposed
findings and conclusions do not suggest that there is an ongoing dispute as to whether
these proceedings fall outside the core jurisdiction of the Court

7

issue final orders or judgments with respect to non-core proceedings in this matter " In the letter Lucent identified the Trustee's breach of the subcontract claim and Lucent's fraud and negligent misrepresentation counterclaims as non-core Although the June 8 2005 letter cites to Lucent's Second Amended Answer and Counterclaims to Second Amended Complaint in support of its position that it has not consented to the entry of final orders by this Court its failure to mention the withdrawal motion or the district court's ruling is striking and perhaps intentionally deceptive [12]

7  At closing argument Lucent maintained that the district court s decision did not address the core/non-core issue but only whether Lucent was entitled to a jury trial Although the district court plainly concluded that the matters on which Lucent claimed a jury trial were triable only in equity, the district court concluded that Lucent s filing of its proofs of claim triggered the claims allowance process [13]  The  allowance or disallowance of

---

[12] The Court views the statement in the same June 8  2005 letter that "[t]his court has never decided whether these claims are core or non-core' as another example of counsel s attempt to mislead this Court  The statement  although technically correct, was occasioned by Lucent's own behavior  As the district court noted  one of the grounds for denying the withdrawal motion was Lucent's failure to follow Local Bankruptcy Rule 5011-1 which required that Lucent file a motion seeking a determination by the Bankruptcy Court as to whether these counts and counterclaims were core or not  Moreover  as discussed herein  whether this Court views the claim and counterclaims as core or non-core is largely irrelevant because  contrary to Lucent's argument  the district court has definitively spoken on this issue when it found that the claims and counterclaims were part of the claims allowance process and when it refused to find  as Lucent had urged  that the claims and counterclaims were independent of the proofs of claim

[13] [T]he Court finds that the Trustee s subsequent preference action  is now part of the claims allowance process  and is triable only in equity  Memorandum Opinion at 6 7  "The Court is not persuaded by Lucent s argument that the determination of its proofs of claim does not depend on the outcome of the Trustee's Subcontract Claim  The Court finds that the Trustee s Subcontract Claim may affect the ordering of creditors or the equitable distribution of the res of the estate and, thus  are now part of the claims

8

claims against the estate is one of the specifically enumerated types of actions which fall within the express definition of a core proceeding. 11 U S C § 157(b)(2)(B)

8 Following the district court's decision Lucent filed a motion seeking certification of the district court's order pursuant to 28 U S C § 1292. That motion was pending in the district court when this case was being tried before the Court. Subsequently the district court denied the motion.[14] The district court stated that this Court "has not determined whether this matter is a core or non-core proceeding." (Memorandum Order [District Court Docket #21] at p 3)

9 The Court however interprets the district court's earlier findings that the claims and counterclaims fall within the claims allowance process to necessitate a finding that these actions are core pursuant to 28 U S C § 157(b)(2)(B). While fully cognizant of this Court's role in following the findings and conclusions of the district court with respect to jurisdiction in this case, lest Lucent continue to espouse the position that whether these proceedings fall within the core jurisdiction of the Bankruptcy Court remains an open issue,

---

allowance process tnable only in equity ' Id at 7-8  'The Court finds that Lucent's Fraud and Negligent Misrepresentation counterclaims involve a decision regarding distribution of the bankruptcy estate and thus, are now part of the claims allowance process tnable only in equity " Id at 8

[14] Throughout the course of this case and indeed after closing arguments the parties sent a flurry of letters to the Court. Many of them were little more than recitations of the squabbling between the parties regarding alleged misstatements of facts. Ultimately the Court issued an order cautioning the parties that it would not tolerate such behavior [Docket # 350]. Given the district court's Memorandum Order, however the Court would have expected the parties to file some type of notice advising this court of the district court's decision. Neither parties however informed the Court of the district court's decision and order. The Court only discovered the Memorandum Order when it checked the district court docket as it was about to issue these findings and rulings

9

this Court seeks to be clear  even if the district court did not intend its use of the phrase

' claims allowance process" to be read as synonymous with the language of section

157(b)(2)(B), the Court s independent examination of its own jurisdiction would lead to the

same conclusion, namely, the counts decided herein are core pursuant to 28 U S C  §

157(b)(2)(B)  Although the counterclaims for fraud and misrepresentation could be

classified as non-core related to actions, Lucent has given its implicit consent to the entry

of final orders on those counterclaims  The rationale for these findings is set forth below

10  As set forth in greater detail below  in 1998 Lucent and Winstar entered into a

Credit Agreement (the  First Credit Agreement' ) (DX 96) whereby Lucent was the primary

secured lender to Winstar  and a Supply Agreement (PX 123) whereby Lucent was to

provide Winstar with a turnkey buildout of its global communications network

Because Lucent was unable or unwilling to perform the buildout  it subcontracted services

to Wireless under the Network Agreement for Buildout Services (the "Subcontract" ) (DX

177)  The expectation was that Lucent would  in time  assume all of its obligations under

the Supply Agreement  Accordingly  the Supply Agreement contemplated that Lucent

would "develop a transition plan with Winstar's input  review and potential approval'

scheduling Lucent s assumption of the various aspects of the buildout  (PX 12 3 at

Schedule A ¶3 3(a)  *see also* PX 123 at ¶6 1 and ¶6 5)  Although all obligations under the

First Credit Agreement were fully paid in 2000  the First Credit Agreement was replaced

by a Second Credit Agreement (DX 29)  The anticipated Transition Plan never came to

10

fruition[15] and thus the parties continued to operate under the Supply Agreement and Subcontract

     11  In October 2001 Lucent filed a proof of claim (the "Proof of Claim") (PX 340) which, on its face, states Lucent held a secured claim (and to the extent not secured  an unsecured claim) in "[a]n amount not less than $138 957,218 90" for "goods sold " "money loaned," and "other "  In the "Summary of Supporting Documentation" attached as Tab A 2 to the Proof of Claim  Lucent described the documents which support its claim as the  Supply Agreement     any amendments thereto and *any and all related documents agreements and statements of work* "  (Emphasis added)  The Subcontract is certainly an agreement related to the Supply Agreement  it is the means by which Lucent was to fulfill its obligation to perform the network buildout  In addition  although the parties do not define a "statement of work '  its plain meaning suggests it is nothing more than a description or list of work performed  The March 2001  spreadsheet,[16] against which Lucent refused to pay, is a breakdown of the services performed  (PX 245)  Thus this spreadsheet appears to qualify as a statement of work  Whether Lucent may have breached the Subcontract by refusing to pay the March 2001 spreadsheet has a direct

---

    [15]The Supply Agreement defines the Transition Plan as "the plan specified in Schedule A regarding Lucent s time periods to begin providing certain of the Services as specified in the plan   (PX 123 ¶1 1(qq))  Schedule A titled "Statement of Work ' describes Lucent s anticipated role in designing  building  and managing the network  Exhibit A-4 is titled  Initial Transition Plan   The Initial Transition Plan is not the  Transition Plan  which the parties agree never came to be

    [16]The Court uses the term  spreadsheet  because this is a term used by the parties to describe this document  What the document is or should be deemed to be is the matter of some discussion  *infra*

bearing upon whether Lucent may recover under its Proof of Claim and if so, in what amount  Therefore the breach of the Subcontract claim falls within the core jurisdiction of the Court  28 U S C § 157 (b)(2)(B)  *Southeastern Sprinkler Co , Inc  v  Meyertech Corp  (In re Meyertech Corp )*, 831 F 2d 410, 418 (3d Cir 1987)(creditor s filing a proof of claim on a pre-petition breach of contract action created an action in bankruptcy court that "[b]y its very nature [ ] fits directly under the more specific definition of a core proceeding under § 157(b)(2)(B)      )  *See also S G  Phillips Constructors  Inc  v  City of Burlington Vermont (In re S G  Phillips Constructors  Inc )*, 45 F 3d 702 (2d Cir 1995)(filing a proof of claim converts a pre-petition state law claim into a core proceeding), *In re NDEP Corp* 203 B R  905  910 (D  Del  1996)

    12  The Court is cognizant of the fact the Proof of Claim was filed after the original complaint in this matter  That fact is insufficient to render the above case distinguishable and the breach of contract claim non-core  Although older cases often cite what has been describes as  a firmly established rule that subject matter jurisdiction is tested as of the time of the filing of the complaint  ' *Rosa v  Resolution Trust Corporation*  938 F 2d 383  392 n  12 (3d Cir ), *cert  denied* 502 U S  981  1128 S  Ct  582  116 L Ed 2d 608 (1991) the Third Circuit has recognized that the rule is not to be applied blindly

> The principle that jurisdiction is determined at the outset of the action is simply insufficient to support the continuing applicability of [12 U S C ] § 1441a(l)(1) to this case  One basic difficulty with this argument is that the letter and spirit of the rule apply most clearly to diversity cases  The Supreme Court set out the rule in the diversity context  *St  Paul Mercury Indem  Co  v  Red Cab Co*  303 U S  283  286  290-92  58 S Ct  586  590, 591-92  82 L Ed  845 (1938)  In addition, the

12

Court crafted the rule for the removal of actions from state court, which involves a more lenient standard not relevant here Id Most importantly the policies behind removal and the risks of manipulative behavior played a significant role in the Court's decision St Paul focused primarily on the monetary threshold for federal jurisdiction, observing that the time of filing rule prevented plaintiffs from subsequently amending their complaint to plead a lesser amount and avoid removal Id at 294, 58 S Ct at 592-93 Similar concerns applied to changes of parties that would potentially destroy diversity of citizenship Id at 294-95 58 S Ct at 592-93 From the outset the underlying concern of the time of filing rule was the risk that parties would deploy procedural tactics to manipulate federal jurisdiction

The rule that jurisdiction is assessed at the time of the filing of the complaint has been applied only rarely to federal question cases Moreover in these rare cases the rule has often been applied axiomatically without extensive discussion or analysis *See Rosa v Resolution Trust Corp* 938 F 2d 383 392 n 12 (3d Cir) *cert denied* 502 U S 981, 112 S Ct 582 116 L Ed 2d 608 (1991) see also *F Alderete General Contractors Inc v United States* 715 F 2d 1476 1480 (Fed Cir 1983) (observing in government contracts action that "the decision below is at variance with the long-standing rule in the Federal courts that jurisdiction is determined at the time the suit is filed and after vesting cannot be ousted by subsequent events including action by the parties") Even in the federal question context, however the focus of the time of filing rule has been on preventing manipulation of jurisdiction when a claim is removed As we observed in *Westmoreland Hospital Ass n v Blue Cross of Western Pa* 'a subsequent amendment to the complaint after removal designed to eliminate the federal claim will not defeat federal jurisdiction 605 F 2d 119 123 (3d Cir 1979) (emphasis added) *cert denied* 444 U S 1077 100 S Ct 1025, 62 L Ed 2d 759 (1980) Along with the obvious goal of judicial efficiency we perceive the risk of strategic behavior as the primary rationale behind the time of filing rule

Manipulation of jurisdiction is simply not at issue in this case There is no suggestion of manipulation, nor would the facts support it The jurisdiction-destroying transfer of assets

13

between the RTC and New Rock was an arms length transaction independent of the jurisdictional issue  Without the possibility of manipulative behavior  the primary policy behind the time of filing rule is not implicated

Our rejection of an absolute time of filing requirement breaks no new ground  Courts that have considered the rule more fully have not hesitated to abandon it where appropriate  In *Boelens v  Redman Homes  Inc* , 759 F 2d 504 (5th Cir 1985), the Fifth Circuit discussed the policies behind the time of filing rule and held that in a federal question case where the plaintiff's amended complaint omitted federal counts included in the original complaint on which jurisdiction could be based  the court would look to the amended complaint and decline jurisdiction  Id  at 508  The Fifth Circuit interpreted this rule as consistent with the general principle that the amended complaint  supersedes the original and renders it of no legal effect  unless the amended complaint specifically refers to or adopts the earlier pleading " Id  at 508

We were equally quick to reject the time of filing rule in *Lovell Mfg  v Export-Import Bank*  843 F 2d 725 (3d Cir 1988)

> *Lovell*    cites several older Third Circuit cases
> for the proposition that our determination of
> jurisdiction should be based solely on the basis
> of the pleadings  and not on subsequent
> events    We are uncertain that these cases
> stand for the broad proposition for which *Lovell*
> cites them  However, regardless of what they
> once might have stood for  and regardless of the
> ment of these principles elsewhere, plainly they
> do not reflect recent Third Circuit jurisprudence
> As *Lovell* itself concedes  later cases clearly
> hold that once all federal claims have been
> dropped from a case  the case simply does not
> belong in federal court

*Id* at 734 (citations omitted)  We concluded by observing  that to the extent a black-letter rule ever existed  precluding a court from relying on post-removal events    the Supreme Court clearly did not feel bound by it in *Carnegie-Mellon Univ  v Cohill*, 484 U S  343  108 S Ct  614  98 L Ed 2d 720 (1988)

14

> *Id* at 735  Although the time of filing rule certainly retains a
> large measure of persuasive efficacy  we read *Lovell* as a
> clear rejection of any iron-clad time of filing requirement  *Cf*
> *Carr v  American Red Cross*, 17 F 3d 671  683-84 (3d
> Cir 1994) (federal jurisdiction arising from the involvement of
> the American Red Cross in a case will cease on the dismissal
> of the Red Cross from the case)

*New Rock Asset Partners  L P  v  Preferred Entity Advancements, Inc*  101 F 3d 1492

1503-04 (3d Cir  1996)

13  In this case  the operative complaint  the Second Amended Complaint  was

filed after the filing of Lucent s Proof of Claim  Moreover  this case does not involve the

issue of destroying jurisdiction by subsequent events  nor is there any suggestion that the

Trustee attempted to manipulate jurisdiction

14  In its Second Amended Answer  Lucent admitted that the preference action is a

core matter but disputed that all other counts were core  (Second Amended Answer at ¶

3)  This denial would include the count for equitable subordination  "Equitable

subordination is unquestionably a "core" proceeding pursuant to section 157(b)(2) " *In re*

*M  Paolella & Sons, Inc* , 161 B R  107, 116 (E D Pa  1993), aff'd 37 F 3d 1487 (3d Cir

1994)  It is an action "affecting the liquidation of the assets of the estate or the adjustment

of the debtor-creditor or the equity security holder relationship  " *See also In re Insilco*

*Technologies  Inc*  330 B R  512, 520 (Bankr  D Del  2005)

15  Similarly  Lucent s fraud and negligence counterclaims arise from Winstar's

alleged conduct in connection with the Second Credit Agreement  This is also an

agreement related to the Supply Agreement [17] It provided the means by which Winstar

was to obtain financing to pay for goods and services under the Supply Agreement,

including those services subcontracted to Wireless under the Subcontract, and thus

Winstar s conduct in connection with its draws under the Second Credit Agreement is

within the ambit of the Proof of Claim  Moreover, the Second Credit Agreement gave

Lucent the right to conduct the due diligence about which it now complains  The

counterclaims are now part of the claims allowance process and within the core jurisdiction

of this Court  28 U S C  § 157(b)(2)(B)

16  Finally even if these matters were non-core  Lucent has waived its objection to

this Court s entry of final orders by its conduct  *Abramowitz v  Palmer* 999 F 2d 1274

1280 (8th Cir 1993) *In re G S F  Corp*  938 F 2d 1467  1476 (1st Cir 1991)  *In re*

*Daniels-Head & Associates*  819 F 2d 914  918-19 (9th Cir 1987) [18]  Not only has Lucent

---

[17]Section 11 3(a) of the Supply Agreement expressly provides

> Lucent shall provide WinStar financing in accordance with the
> Credit Agreement and otherwise in accordance with the terms
> of this Agreement

[18]Although Fed  R  Bankr  P  7012(b) provides that in non-core matters, 'final orders
and judgments shall not be entered on the bankruptcy judge's order except by *express*
consent of the parties " the substantial weight of authority holds that consent may be
implied  10 Collier on Bankruptcy ¶ 7012 11 at 7012 25 n  3 (Bender 2003)  Moreover
courts have 'ound expressions of consent based upon a party s actions such as filing a
complaint  *Id*  In its counterclaims contained in the Second Amended Answer  Lucent pled
only that counterclaims one and two were core  The pleading is silent with respect to any
mention of whether the remaining counterclaims are core or not  But in pleading, Lucent
requested that judgment be entered in its favor on all counterclaims which should properly
be viewed as Lucent s express consent to this Court s jurisdiction to enter final orders

narrowed what counts and counterclaims it believes fall outside the core jurisdiction of the

Bankruptcy Court,[19] Lucent repeatedly sought judgment in its favor without noting that the

Court could only recommend findings and conclusions to the district court [20]

*Baldwin-United Corp v Thompson (In re Baldwin-United Corp ),* 48 B R 49, 54 (Bankr

S D Ohio 1985) (consent may be implied from failure to object or from any act indicating a

willingness to have the bankruptcy court determine a claim) Similarly in the Joint Pretrial

Memorandum [Docket # 292] Lucent did not raise the core or non core nature of the

claims and counterclaims as one of the legal issues to be determined Finally Lucent has

asserted a setoff claim against the estate which it acknowledges is a core matter *In re*

*Iridium Operating LLC,* 285 B R 822 832 (S D N Y 2002) The parties agree Lucent's

---

[19] In its closing argument Lucent argued that the Court could not enter a final order only with respect to the breach of the Subcontract claim (Tr 22-50) and thus the Court finds Lucent waived its objection to the entry of final orders with respect to its counterclaims

[20] During closing argument Lucent's attorney conceded in response to questioning by the Court, that he had not raised the issue of core versus non-core jurisdiction with the Court directly but had informed the Court during the summary judgment arguments that Lucent had sought certification of the district court's order At the summary judgment argument, counsel's sole discussion of any challenge to this Court's jurisdiction was as follows

> Mr Saunders Your Honor I should point out, unless Your
> Honor already knows this that we have asked Judge I amum
> to certify under Section 1292(b) the jury trial issue

Transcript of December 14 2004 Hearing [Docket #274] at 20-21 Moreover the argument that this statement put the Court on notice that the core/non-core dichotomy was at issue in the district court is wholly inconsistent with Lucent s argument that the district court focused only on the jury trial issue and did not address the core/non-core issue

17

setoff claim be set off against any monetary award on the breach of the Subcontract claim
The Court believes this is further evidence of Lucent s waiver

17  For all of the foregoing reasons, the Court concludes these are all core matters
under 28 U S C § 157 and, to the extent not core matters, Lucent has consented to entry of
final orders by this Court   Under the Standing Order of Reference  the Court will enter final
judgment

## OVERVIEW OF FACTS AND THE PARTIES' CLAIMS

18  At its essence this case is simply a tale of two companies -one large  one
small  which entered into what each expected to be a mutually beneficial relationship to
build a wireless communications network and deliver services to customers via that
network  What became apparent as the evidence unfolded was that what began as a
'strategic partnership" to benefit both parties quickly degenerated into a relationship in
which the much larger company bullied and threatened the smaller into taking actions that
were designed to benefit the larger at the expense of the smaller  Along the way some
executives of each company demonstrated their incompetence and arrogance, and in
some instances, now find themselves targets of criminal investigations  The Court notes
that there was poor communications not only between the two companies but among each
companies employees  In fact when Lucent replaced some of its upper level
management in the fall of 2000 in response to an internal and SEC investigations  the new
executives issued directives regarding the Winstar-Lucent relationship without having even

read the operative agreements   Officers and executives often saw the relationship
unfolding from different perspectives such that, if the Court were so inclined to view each
witness testimony in isolation, it could find support for virtually any fact   Yet taking all the
*credible* evidence as a whole, it is clear that Lucent used Winstar to inflate Lucent's own
revenues  especially in the third and fourth quarters of 2000 when Lucent was  feeling a lot
of pressure on revenue   (Hayes  Depo  Tr 13-38)   Although Winstar benefitted from
some of its dealings with Lucent and its own actions were  at times  no less questionable
than Lucent s  the facts point to one conclusion  Lucent extracted what it needed to prop up
its own revenue from Winstar in the form of purchases by Winstar of unneeded equipment
and manipulated the timing of a refinancing notice that would have put the world on notice
that Winstar was in dire financial straits until Lucent could take some more   Lucent used
its position as Winstar's lender to ensure Winstar s cooperation  by repeated threats to
stop both the funding of Winstar's draw requests and the payment of Wireless s invoices
for services already performed

**Summary of the Trustee's Claims**

19   Although the parties tried this case for 21 trial days  surprisingly most of the
critical facts surrounding the relationship of the Debtors and the Defendant are not
disputed   The parties could have and should have saved their own and this Court s
resources by agreeing to many more underlying facts which really are not disputed

20   Prior to their bankruptcies  Winstar  a Delaware corporation, was a local and
long distance telecommunications carrier and engaged in the buildout of a global
broadband telecommunications network to service its customers   (DX 701 at 8)   Its stock

19

was publically traded  (DX 701, PX 460)  Wireless, Winstar's wholly-owned subsidiary was also a Delaware corporation engaged in the design and construction of Winstar's network  (Revised Joint Stipulation ¶¶ 1 and 2)

21  Starting at the customer s end  Winstar would build facilities within the customer's building, known as a "B site," to connect the customer to Winstar's voice and data network via a radio and antenna located on the roof of the customer's building Radios and antennae were also located on the roof of a Winstar s traffic collection point known as a  hub   Signals were sent between the B site and hub via the radios and antennae  (DX 699 at page 9  line 15 through page 10  line 38) [21]

22  The hubs, in turn  collected the signal traffic and distributed it to a high capacity facility known as a "central office   Typically signals were transmitted between hubs and central offices via fiber cables  either owned by Winstar or leased from an incumbent telephone company  (Id )

23  The central offices had data and voice switching equipment which would connect transmissions from the central office either into other local or long-distance telephone companies or into Winstar's own national fiber network which provided long-haul capacity for Winstar's voice and data services  (Id )

---

[21] DX 699 is a transcript of the testimony of David Ackerman  Winstar's former group executive/executive vice president for corporate strategy and business planning given under oath on October 11, 2001 as part of the investigation by the Securities and Exchange Commission ("SEC") styled *In the Matter of Lucent Technologies  Inc*  file no HO-9128 (the 'SEC Action")  The transcript of the Ackerman videotaped deposition to which DX 699 is an exhibit was admitted as Joint Trial Exhibit 6

24  Winstar's long-haul network typically was made of fiber supplied by non-Lucent vendors and ran along routes that connected one city to another  (Kipke, Tr 18-190) Optical equipment that amplified and transmitted the signals were generally located at each end of and at certain intervals along the fiber  (Kipke, Tr 17-72-73)

25  Lucent is also a Delaware corporation whose stock is publically-traded on the New York stock exchange (DX 739 at ¶ 12)  It designs and delivers telecommunications systems services and products including software  (Revised Joint Stipulation ¶ 5)  It was at the relevant times  much larger in size and resources than the Debtors (Ackerman Video-Direct, p 17 line 18 p 18 line 5)

26  In the late nineties telecommunications companies were  hot companies and on the grow  Winstar like many others  desired to increase the size and reach of its network and joined forces with Lucent to help accomplish the expansion  Prior to that time Winstar and Lucent had an arms'-length vendor-creditor relationship whereby Lucent sold goods to Winstar  (Ackerman Video-Direct at p 4 line 12)  That relationship changed in October 1998 when the two entered into what they both describe as a  strategic partnership "  (Ackerman Video-Direct at pp 3-4)  The "strategic partnership"[22] was created through a series of agreements, three of which figure prominently in this litigation

27  In October 1998, after three weeks of "lockdown" negotiations, Lucent and Winstar entered into two related agreements  the First Credit Agreement and the Supply

---

[22]The 'strategic partnership" was not actually a partnership  a fact Lucent spent considerable time emphasizing  The parties used the term simply to connote their intent to work closely and collaboratively  See October 22  1998 Joint Press Release (PX 331)

Agreement (*Id*)  Under the First Credit Agreement, dated October 21  1998  Lucent became the primary secured lender to Winstar and provided a $2 billion line of credit (although only $500 million could be borrowed at any one time) to be used for the purchase of certain products and services in exchange for a lien in virtually all of Winstar's assets Wireless was not a borrower, guarantor  or otherwise a signatory to the First Credit Agreement  (Revised Joint Stipulation ¶¶ 13 and 14)  When the parties entered into the First and subsequently Second Credit Agreements  Lucent expected that the loans were be repaid either by borrowing from other lenders or by raising equity  (Hayes  Depo Tr 13 36)

28  Under the Supply Agreement Lucent agreed to provide and finance (under the First Credit Agreement which was later supplanted by the Second Credit Agreement) the purchase of products and services  (Revised Joint Stipulation ¶6)  Lucent was to provide equipment of a quality described as "Best of Breed" and  in instances where it could not provide Best of Breed equipment, it was obligated to finance Winstar's purchase of such equipment from other vendors [23]  (Ackerman  Video-Direct at pp 81-82  PX 123 at ¶ 11 3 and Schedule H thereto)

---

[23] The Supply Agreement provides that 65% of the equipment and services purchased during the first year of the contract would be purchased from Lucent  The percentage increased to 70% thereafter  (PX 123 at ¶ 11 3(b)(1))  The Supply Agreement also permits Lucent to surcharge Winstar if Lucent funds the purchase of goods and services from other vendors beyond the applicable percentages  There was no evidence to suggest that Lucent ever surcharged Winstar despite the fact that the parties agree Lucent funded substantially more non-Lucent purchases than percentages set forth in the Supply Agreement

29   To assure that the content of the Winstar network was primarily equipment manufactured and/or sold by Lucent  to develop and enhance its reputation for providing these type of buildout services in a "hot" telecommunications world, and ultimately to enhance its revenue production  Lucent wanted to build Winstar s entire global network including all supporting infrastructures, on a completely turnkey basis   Consequently the Supply Agreement provided that Lucent would build and deliver a turnkey operation to Winstar  As with its obligations to finance Best of Breed equipment even if supplied by third parties, if Lucent itself was unable to perform the services needed to comply with buildout obligations  it was obligated to finance the payment of those services provided by others who would develop the turnkey system   (PX 123  section 11 3(c)

30   When the parties entered the Supply Agreement  they both recognized that Lucent did not have all the core competencies necessary to perform the buildout  Therefore the Supply Agreement provided that Lucent would prepare a transition agreement that included a schedule of its assumption of various aspects of the buildout as broadly outlined in the Supply Agreement   (PX 123 at Schedule A, § 3 3)   No transition agreement was executed and it quickly became apparent that Lucent either could not or would not take over the building of the turnkey network as promptly as anticipated   (Kantor Video Cross at pp  46-48) [24] In March 1999 Lucent and Wireless entered into the Subcontract, effective January 4, 1999, whereby Wireless agreed to act as Lucent s subcontractor and build the network at least until such time as Lucent was willing and able

---

[24]The transcript of Kantor s videotaped deposition testimony is Joint Trial Exhibit 1

23

to assume that role (Revised Joint Stipulation ¶ 7) Wireless would perform the services, many or most of which were the types of service it had already been performing directly for Winstar, as Lucent s subcontractor and then bill Lucent [25] Lucent in turn, would bill Winstar which would pay Lucent by drawing down under the First Credit Agreement or after May 2000, the Second Credit Agreement In essence Lucent loaned Winstar the money to pay Lucent for building the network, Lucent then paid the money over to Wireless The paperwork especially the purchase orders were exchanged after the work was completed It is Lucent s refusal to pay for services for the month of March 2001 that gives nse to the Count Seven the breach of the Subcontract claim

31 As Winstar grew and required additional financing to feed its insatiable appetite for cash to grow its business it sought bank financing and in May 2000 arranged for a consortium of bank lenders with Bank of New York as the administrative and collateral agent to provide a $1 15 billion revolving credit and term loan (the Bank Facility ) for part of its working capital needs WCI Capital Corp ("WCI Capital ) one of Winstar's subsidiaries, was the borrower Winstar and certain other of its subsidiaries were guarantors

32 The First Credit Agreement pursuant to which Winstar had borrowed approximately $1 2 billion, was paid off with a portion of the proceeds of the Bank Facility

---

[25]Lucent attempted to portray this arrangement as a scheme perpetrated and controlled by Winstar to enhance its own financials through questionable accounting practices The Court disagrees While there is evidence to suggest that this arrangement gave Winstar the means to capitalize many of its network buildout expenses most of these expenses could be capitalized even without flowing them through Lucent (Harris, Depo Tr 11 at 47)

24

and other funds raised by Winstar  Lucent released its lien in Winstar's assets  (Revised

Stipulation ¶ 8)

33  Winstar also had raised money in the public debt and equity markets over the

years  (DX 701 at 26 and 48)

34  As Winstar was growing and building out a global telecommunications network

it was purchasing millions of dollars of equipment from Lucent  Lucent desired to keep its

good customer relationship with Winstar and thus in May 2000  simultaneously with the

execution of the Bank Facility and repayment of the $1 2 million owed under the First

Credit Agreement  the parties entered into the Second Credit Agreement whereby Winstar

received from Lucent a $2 billion line of credit with the ability to borrow up to $1 billion at

any one time  WVF-I LLC ("WVF-I")  a newly formed subsidiary of Winstar was the actual

borrower.[26]  Winstar and WCI Capital  the borrower under the Bank Facility  were the

guarantors  (DX 38)  Among other things, the Second Credit Agreement permitted WVF-I

to purchase both Lucent and non-Lucent equipment and in exchange WVF-I granted

Lucent a security interest ahead of the Bank Facility only in the equipment Lucent financed

 Lucent also took a security interest in WVF-I's "general intangibles  and  proceeds '  The

Second Credit Agreement also contained certain financial covenants, including a covenant

---

[26]The Second Credit Agreement contemplated the future formation of other Winstar subsidiaries to act as borrowers under the Agreement  Subsequently WVF-LU2 LLC ('WVF LU2") was formed and was also a borrower under the Second Credit Agreement It also acquired equipment with funds borrowed under the Second Credit Agreement and gave Lucent a security interest in that equipment  WVF-LU2 is the entity that requested the March 30  2001 borrowing in the amount of $62 050 743 00  (DX 668)  The parties however  refer to the request as Winstar's request and throughout the conduct of this case did not draw distinctions as to which Winstar entity actually made the funding request

that Winstar not permit its total Cash Capital Expenditures ( CAPEX") to exceed $1 3 billion in "any year prior to and including 2001",[27] and entitled Lucent to serve a 'refinance notice" on Winstar if the outstanding loans exceeded $500 000,000  It also provided that any increases in the Bank senior loan arrangement would be used to repay Lucent  It is a partial repayment made to Lucent pursuant to the Second Credit Agreement  using funds from the so-called Siemans Transaction, that gives rise to Count 10  the preference claim

35  Winstar repeatedly and knowingly helped Lucent by making massive  last minute  allegedly unneeded purchases that were arranged by Lucent as the ends of quarters approached  These end of quarter deals enabled Lucent to report more revenue

---

[27] The Second Credit Agreement contained other financial covenants including the obligation that Winstar give Lucent Winstar s financial information signed by an officer who was to certify that the financial statements were kept according to generally accepted accounting principles and that Winstar was in compliance with the Credit Agreements  Moreover each draw request under the Credit Agreements was considered an independent certification that Winstar was in compliance with the covenants  At trial Lucent sought to introduce evidence regarding breaches of these covenants but because Lucent did not raise these issues in the Joint Pretrial Memorandum, the Court refused the introduction of such evidence  Lucent did make an offer of proof that it did not consider it its responsibility to verify the certified draw requests  Even if the evidence of these breaches was properly before the Court and even assuming that Winstar, in fact, breached these additional covenants, the outcome would be no different  As discussed *infra*, Lucent cannot divert its own independent knowledge of Winstar's true financial condition  including its complicity in trying to help Winstar meet the CAPEX requirement, by hiding behind Winstar s alleged breaches

In addition the Second Credit Agreement also contained express covenants dealing with foreign collateral  EBITDA  and transaction fees  Again because Lucent did not raise these issues in the Pretrial Memorandum  the Court refused to consider evidence of these alleged breaches  But again  given Lucent s knowledge of the state of Winstar s affairs, it cannot feign that it was somehow deceived

26

and appear more profitable in its quarterly public reports than it really was [28]  In fact the dollar amount of Winstar's purchases of Lucent equipment in end of quarter sales was on average eight times as high as the dollar amount of Winstar purchases of Lucent equipment in months in which a quarter did not end  Lucent used these end of quarter deals to close its own revenue gaps

36  In addition to the end of quarter deals, Winstar helped Lucent record revenue through alleged accounting schemes such as improper bill and hold deals [9] whereby Winstar would pay for goods that it did not need  often were not identified with any kind of particularity  and frequently never even left the Lucent warehouse  The Trustee alleges that the Software Pool Agreement  dated September 29  2000 (PX 323), whereby Winstar was to pay Lucent $135 million  in four equal payments of $33 75 million to be made in January  March  June  and August 2001  for software it did not need  did not use, and had a fair market value of substantially less than the contract price was another in a series of sham transactions that were designed to do little more than inflate Lucent's revenue [30]

---

[28]As discussed in greater detail below, the distortion of Lucent's financial picture lead to an SEC investigation that resulted in the commencement of a lawsuit for alleged violations of various securities laws against Lucent  several of its former employees  and three former employees of Winstar

[29]Bill and hold sales are transactions in which a party sells goods to another party but  at the purchaser's request  stores the goods in the seller's facility for shipment at a later date

[30]Winstar could not use funding from the Second Credit Agreement to pay for its purchases under the Software Pool Agreement  (PX 323 at ¶ 6 "Winstar agrees that it will maintain sufficient cash on hand to meet the above-described payment obligations at the respective Invoice Dates independent of any financing arrangements in place between Lucent and Winstar )

27

37  The actions of Lucent in allegedly forcing Winstar to enter into transactions such as the end of quarter purchases  bill and hold deals and the Software Pool Agreement  as well as Lucent's alleged delay in negotiating a transition agreement during the later part of 2000 in order to gain leverage over Winstar and its alleged delay in issuing the refinancing notice in order to improve its position viz a vie other creditors  give rise to Count 11, the claim of equitable subordination [31]

Summary of Lucent's Counterclaims

38  One of the covenants of the Second Credit Agreement required Winstars CAPEX to not exceed $1 3 billion in any year prior to and including 2001  It is Winstar's alleged CAPEX in excess of the $1 3 billion limitation  its behavior to bring its CAPEX into compliance  its failure to undertake inquiry regarding its CAPEX  and its certification in each borrowing request that all covenants have been or would be met by the time of the borrowing that give rise to both Lucent's counterclaim for fraud  Counterclaim 5  and its counterclaim for negligent misrepresentation, Counterclaim 6

**COUNT VII  BREACH OF THE SUBCONTRACT**

---

[31] In Count XI of her Second Amended Complaint  the Trustee alleges that the Siemans loan is the transaction which give rise to her request for equitable subordination and seeks return of the Siemans loan proceeds and subordination of Lucent s claim  At trial the evidence of Lucent's alleged impermissible conduct was much broader and therefore, to the extent necessary  the Second Amended Complaint is deemed amended to conform to the evidence as such amendment in no way prejudiced Lucent s rights  See Fed R Civ P 15(b)  made applicable by Fed R Bankr P 7015(b)  see generally 6A Wright  Miller & Kane, Federal Practice and Procedure  Civil 2d §§ 1491,1493 (1990 & Supp 2003)  In fact the parties themselves agreed at the end of the trial that their pleadings should be deemed amended to conform to the evidence (which would not include any of the offers of proof) as long as neither party added any new claims counterclaims  or defenses  See Tr  21 135-140

28

39   The Trustee contends in Count Seven of the Second Amended Complaint that
Lucent breached the Subcontract between Wireless and Lucent  thereby causing Wireless
$62 050 742 00 in damages   Lucent responds that it was not required to perform under
Subcontract because there was no "task order" for the work performed

**The Subcontract and Task Orders, Purchase Orders, Invoices and Spreadsheets**

40   The Subcontract expressly provides

> 1 1   Services   Contractor agrees to perform for Lucent the
> tasks  responsibilities and services described on the attached
> task specific schedule(s) (individually a  Task Order ) (the
>  Services )   The parties may enter into future Task Orders  to
> which the parties agree  from time to time, with each Task
> Order to be consecutively numbered and attached hereto
> Services shall be provided in accordance with the provisions
> of this Agreement and the applicable Task Order and shall be
> on either a firm, fixed price or time and materials basis as
> specified in the applicable Task Order executed by both
> parties
>
> 1 2   Task Order   Unless otherwise agreed by the parties in
> writing  each Task Order will include the following information
> (i) a description of the Services to be performed  (ii) the
> targeted commencement and completion dates of the
> Services  (iii) a list of deliverables to be provided by
> Contractor (the  Deliverables ) and targeted delivery dates  (iv)
> methods of compensation to be provided to the Contractor
> (e g  time and materials  firm fixed price or otherwise) and
> other appropriate pricing terms such as hourly rates  and (v)
> other information the parties agree to include

41   Even though the Subcontract called for Winstar to submit task orders to Lucent
prior to Wireless's provision of services  the parties ignored this requirement and between
January 1999 and October 2000, Lucent paid Wireless approximately $325 million for

29

services performed under the Subcontract most if not all without a prior written task order In fact the parties agree that after the first quarter of 1999 they never exchanged a single task order (Revised Joint Stipulation ¶ 20) [32] Nathan Kantor Winstar's President and Chief Operating Officer when the relevant agreements including the Subcontract were negotiated and approved testified that it was his understanding that Lucent and Winstar agreed that the invoices would function as the equivalent of the task orders (Kantor Video at 356 57) 'The contract was administered by using the invoices and a Lucent

---

[32]The task order for that first quarter dated January 4 1999 was not actually executed until March 1999 when the parties also executed the Subcontract (Wilson Tr 16 105-06) and this document which the Defendant describes as the only task order executed is actually a letter dated January 4 1999 from Lucent s Vice President of Emerging Services to a Winstar employee that reads as follows

> Pursuant to our recently executed Agreement for Network Build-out Services please accept this letter as my authorization for the subcontracting of Network Services from Winstar Wireless Inc
>
> The following is a list of services which Lucent will subcontract to Winstar for an amount not to exceed $25 M for the period January 1, 1999 through March 31 1999 [ ]
> - Switch Site Planning & Construction
> - Hub Site Planning & Construction
> - Broadband Riser Engineering
> - Inside Wire engineering
> - Network Integration (CO & Hubs)
> - Network Integration (B Sites)
> - Site Surveys
>   Site Acquisition
>
> Thank you in advance for your support

(First page, bearing Bates Stamp WC0019778, of DX 117) Even this 'task order is devoid of the details that Lucent argues must be present for a writing to comply with the Section 1 2 of the Subcontract and be considered a task order "

30

purchase order to reflect these task orders and the work that was performed by Winstar to Lucent and agreed to by Lucent and those invoices were paid for several years    (Kantor Video at 361-62)

42  Yet if the letter dated January 4  1999 is a task order  the parties quickly dispensed with the task order process, opting instead to exchange less formal documentation  including purchase orders  invoices and spreadsheets summarizing Wireless  charges  Generally Winstar sent a pu chase order to Lucent which  in turn  sent a purchase order to Wireless  Wireless performed the services and then sent Lucent an invoice  with or without an accompanying spreadsheet showing the breakdown of services or goods  Lucent then invoiced Winstar in the same amount as Lucent was billed by Wireless  Then  as described above  Winstar would draw down under the applicable Credit Agreement  use the draw to pay Lucent which would then pay its obligation to Wireless  In fact  Richard Uhl  Winstar's former Chief Financial Officer provided credible testimony about how payments were sought and obtained  as well as the underlying reason for dispensing with formal task orders

> Well  Lucent  the original agreement required that Lucent issue
> purchase orders  Early on it was discovered that Lucent was
> unable or not capable of defining what should go into the
> purchase order  So the practice evolved  in fact  was present
> when I became CFO in the fall of  99 that inasmuch as Lucent
> could not produce the details of the purchase order  Winstar
> Wireless would as its subcontractor to Lucent issue an invoice
> which Lucent would then cover with a purchase order and that
> was the sequence  That was the sequence present and
> existing when I assumed responsibility for Chief financial
> Officer's position in the fall of 1999

31

(Uhl, Video-direct at 11) [33]

43  Shortly after entering the Supply Agreement  Lucent began to balk at the arrangement and as early as June 1999  Lucent threatened to pull the plug  Shortly after entering the Subcontract,  Lucent determined very quickly that the pass through payment arrangement "yielded no material benefit for Lucent  and in fact cost [Lucent] considerable resources to process  track and manage "  (DX 163  see also Wilson, Tr  16-30)  Lucent could not recognize revenue on the pass through transaction because it did not have sufficient control over the services being performed by Winstar's employees to allow revenue recognition under the accounting rules  (PX 388 at LW 00303141, DX 523  see also DX 155 at 2WC 0016320 )  Lucent was also concerned that financing any additional services would hamper its ability to sell Winstar's loans because the banks it consulted with concerning such financing were 'very negative on the inclusion of these incremental services "  (DX 149 at WC 0118574  see Wilson  Tr  16-28-29  DX 155  see also DX 137 )  And Lucent was attempting to sell the Winstar loan as it was among the largest loan Lucent had financed  (Hayes  Depo, Tr  13-33)  Consequently in early June 1999, even though Lucent was still unwilling or unable to build the turnkey operation as required under the Subcontract, it informed Winstar that it would not pass through any additional services because it was "concerned about having to severely discount the paper to sell it '  (DX 154 )

---

[33]The transcript of Uhl's videotaped deposition testimony is Joint Trial Exhibit 13

32

44  Quickly discussion escalated to the chief executive level and ultimately Lucent agreed to continue the arrangement and it did so up until March 2001 when Lucent refused to pay for the previously rendered services ostensibly because there was no task order

45  Lucent ultimately agreed to finance Wireless-performed services and facilitate the favorable accounting treatment that Winstar desired by passing through the 2Q1999 services  (Wilson Tr 16-54 )  Lucent only did so as an accommodation to Winstar  which claimed that ending the pass-through would have negative financial repercussions and which promised to negotiate a true turnkey approach to services that would allow Lucent to recognize revenue on such services in the future    [T]here was a large pressure from Winstar to go ahead and [pass through services because Winstar] felt like it would have implications on their earnings report since they were capitalizing these services last quarter, and had it not happened this quarter it would reflect badly on their announcement "  (Id )  Therefore, Lucent agreed to pass through Wireless-performed services in 2Q1999  with the agreement from Winstar that [Winstar and Lucent] would pursue a business arrangement structure around a turnkey approach to the projects and network implementation that would then  again  well define the tasks for each company to perform, orders up front from Winstar to Lucent, Lucent then going through those task lists and ordering back from Winstar what we could not perform    (Id , see also DX 164 )

46  On September 8  2000 Winstar issued a purchase order  WVF 1 00000002958 (See also DX 390 and 391 referencing Lucent s position with respect to the September 8th invoice) that in line item number 1  sought payment of $65 509 331 00  But

33

by this time Lucent was not inclined to increase the Winstar loan  In fact  Lucent was

seeking to rid itself of some or all of this debt  At about this time Lucent was seeking to

sell the Winstar loan  In mid-September 2000 Deborah Hopkins (Lucent's CFO), Rich

McGinn (Lucent's President and CEO)  Fred Rubin (Lucent's Treasurer and Senior Vice

President), Richard Uhl (Winstar's CFO), and William Rouhana (Winstar's CEO) met with

senior officers of the Bank of New York at a luncheon meeting at the Water Club  One of

the goals of the meeting was to get the Bank of New York to buy the Winstar debt  The

deal was not consummated as the financial market collapsed on the same day as the

meeting  (Uhl  Video 282-83)

47  On September 21  2000 Deborah Harris and William Plunkett of Lucent had a

conversation with David Ackerman and Richard Uhl of Winstar and informed them that

Lucent would not pay the $65 509 331  The next day Deborah Harris followed up the

conversation with an email and a letter (PX-15) which reads in part

> At the signing of the supply agreement certain services in
> support of the Winstar network deployment were described as
> potentially being performed by Lucent Technologies  The
> actual assumption of these services was contingent upon the
> development and successful execution of a transition plan for
> services that Lucent and Winstar agreed were Lucent
> competencies and could be successfully executed by Lucent
>
> ***
>
> There is a category of services which  to date  Winstar
> continues to provide for itself
>
> We have been pursuing ways to take on these services in a
> manner agreeable to all parties, but have not been able to
> reach consensus  Consequently, we believe it is not

34

> appropriate for Lucent to accept Purchase Orders for these
> services  Specifically  we must reluctantly reject line item # 1
> of the Purchase Order for $65,509 331 00, WVF 1-
> 00000002958 issued by Winstar on September 8, 2000
> Lucent stands ready to negotiate an arrangement under which
> Lucent becomes responsible for some or all of these services
> whether via outsourcing or some other method  We suggest
> that Lucent and Winstar each designate an empowered team
> to move ahead with these negotiations with the goal of
> completing by October 1  2000  If you agree with this
> suggestion  we are ready to start immediately beginning with a
> kickoff meeting next week

48  At the time of the Harris letter  Lucent  however  had still not developed the core

competencies needed for it to assume the buildout by itself  The suggestion that Lucent

was ready and willing to perform the buildout and would do so but for the failure of the

parties to agree to a transition plan was nothing more than an attempt to create a pretext

for denying further draws under the Second Credit Agreement so that Lucent could

renegotiate the terms of the  strategic partnership  for its benefit

49  In fact  Lucent's demands for a financial concession had already begun by the

time of the Harris' letter as had its pressure on Winstar to help Lucent make its end of

quarter numbers as reflected in a September 18  2000 email sent on Harris  behalf

> Nina and Bill
>
> I have tried to do a very brief summary of all the  good, bad
> and ugly  on this account  Bottom line is that to do an EOQ
> [end of quarter] deal  we need Nate to provide direction to
> Ackerman and Uhl that this will take place  They are vehement
> that they are out of money and do not want to spend money on
> product that they can not immediately utilize  The deals of the
> past are haunting us  there is $87M in their warehouses  But
> much of this is also due to problems with Williams

We have a restructured proposals that categorizes what they need now through to long term   Definitely the majority of the money we are asking for is not for immediate use   It also includes pricing for the B's and Hubs which is 2 tiered  and time sensitive   Depending on how fast we can implement and identify cost reductions thru [sic] the breakthru [sic] items could cause our BGP to hover around 30% or below

What I need are 2 things

**1 A call to Nate Kantor getting agreement to move forward on an EOQ deal**  Our meeting with Dave Ackerman is first thing Tuesday morning  so this would need to happen today   We believe they already will be spending around $46M with us  so we are asking for another $50-60M   (I am trying to get the total number in the $110-115M range)

2  Agreement that we can discuss at 5 15 today  on the aggressiveness of the proposal    (PX 86)(emphasis in the original)

50   The same email transmission further supports a finding that Lucent was not only

pressuring Winstar to do deals that were designed to benefit Lucent at Winstar's expense

but conspiring to ensure that the lucrative to Lucent end of quarter deals got done

Following are the  headlines" for the Winstar account

                    •••

- Winstar Services  We pass through around $67M/Q of WinstarServices  We have been told to stop this practice   We will be communicating our position to Winstar the week of 9/18  including options of what portions of these services we can do   **We may want to delay this move for a quarter based on this EOQ deal**

                    ‡‡‡

- Previous EOQ Deals

     Winstar does have major inventory as a consequence of these deals

36

> - Credits provided in all the previous EOQ deals
> are now hitting in 4Q2000 results    (PX 86)
> (emphasis added)

51  Aversano placed the call to Kantor and despite Winstar's financial condition,
the deal was done  (Aversano  Video Tr at 8)  As Kantor subsequently wrote to
Aversano  "Great to talk to you and we will help whenever possible "  (PX 157)  Kantor
then instructed Ackerman to make the Lucent deal, which ultimately turned into a deal for
$212 million in end of quarter purchases  happen  (PX 56)

52  Yet as David Ackerman wrote to Kantor in a September 18, 2000 e-mail, in
view of Winstar's CAPEX issues  complying with Kantor's instructions to provide
substantial revenue to Lucent would not be possible unless Ackerman got creative

> I just spoke with [Lucent employee Bill] Plunkett  He informed me
> that you and Nina [Aversano] had met (dinner?) and you agreed
> to help them get to the number they need this quarter
> something around $110M  of which we ve already spent about
> $45M  There is not much I can give them that we really need  but
> there are some creative things I can do that can get us close to
> their number without being totally stupid
>
> * * *
>
> Thus  we are working to cut another $70 [Million] in addition to
> the $117 [Million] [to meet capex covenants]  This  means
> stopping ANY and ALL incremental spends for ANYTHING capex
> immediately  and letting capitalized contractors go
>
> * * *
>
> How much capital CAN I REALLY SPEND THIS YEAR  and how
> much do I do to give Lucent what they need for 3Q?

> If the answer is, both give Lucent the business AND reduce the
> cap spend to $1B even I will need to institute some very severe
> measures immediately

(PX-127) (Emphasis in original)

53  After receiving a copy of the September 22, 2000 email and letter, Nate

Kantor, Winstar's President and COO, sent the following email to Nina Aversano,

President of Lucent s North America group (PX-16)

> I am very surprised and disappointed with this we've only
> discussed it a million times This doesn t sit well with me and
> will have a major impact on our ability to help you this quarter
>
> You've got to get this fixed

54  On September 25 2000 James Cocito  Lucent s chief operating officer of its

North America Region  sent Frank Manzi an email suggesting that Lucent consider the

possibility of " a one more time  strategy   (PX 88)  As Cochito noted in his email

'[Kantor] has indicated there will be no deal for the QTR unless this gets fixed  Impact

about 60M or more  Also, I will know as of this morning whether they are going to play with

the AR as well

55  On September 27, 2000 Nina Aversano  President of Lucent's North America

Region sent Richard Uhl, Winstar's CFO,[34] a letter (PX 17)[35] that purported to modify the

terms under which the two companies did business and containing the conditions under

which Lucent would pay the September 8, 2000 Purchase Order

---

[34]The letter is addressed to Uhl but contains the salutation "Dear Nate "

[35]The same document is also a Defendant s exhibit (DX 424)

38

This is to inform you that Lucent will accept your purchase order WVF 1-0000002958 [sic] conditioned upon Winstar s agreeing to the following terms and conditions  If you agree, kindly sign in the space provided below and return to me Immediately  Nate, this is a great opportunity for us to move our relationship forward to what we envisioned-a seamless partnership where the many resources of Lucent can be utilized to help achieve Winstar's business plan  I hope you agree with me that we should seize the moment

It would appear that there has been a great deal of confusion between us regarding which services and to what extent services would be provided by Lucent to Winstar under our Supply Agreement dated October 21  1998  Pursuant TO Schedule A of that contract the parties intended a transition plan for Lucent to take over services that at that time Winstar was providing to itself  This was a broad plan possibly leading to a full outsourcing of all Winstar required services to Lucent Since the signing of that contract there have been a number of attempts to formalize this broad services relationship  The last such attempt was undertaken this past June when the parties entered into two addenda  the Hub and B-Site Addendum [PX 18] and the Optical Network Addendum [PX-19]  These addenda did not include the full range of services contemplated in the Supply Contract

I'm sure you would agree that the fault for the failure to execute on our original concept lies with both Winstar and lucent Happily it appears we both favor the same result-a broad services relationship  We need to finalize that result as soon as possible so that our contractual relationship matches our mutual intent  We propose that commencing Monday morning October 2nd, or as soon thereafter as is reasonably possible out two teams meet at your offices to finalize a broad services agreement  This would be a lock-up session to finalize a full service agreement no later than two weeks thereafter Consistent with the principles already established in our two addenda referenced above  Lucent would have complete control of the work covered by the scope of work the parties mutually define in this new agreement  Lucent may either perform the work itself by acquiring expertise and personnel from Winstar  or subcontract some or all of it to third parties (including Winstar)  Consistent with this model, commencing

39

October 1 2000 Winstar would perform this work only upon
prior receipt of a mutually acceptable written purchase order
from Lucent (and not at its sole initiative)   Should this process
not be followed  Lucent would not be able to accept purchase
orders or invoices for any Winstar performed services that are
outside the scope of work defined in this agreement

Further, until this new service agreement is in place, Lucent will
not be able to accept purchase orders or invoices for services
performed by Winstar after September 30, 2000 that are
either outside the scope of the two addenda referenced above
or that fall within the scope of the new  as yet unexecuted
service agreement   Prior to Winstar performing any work that
might rightfully fall within either of the two existing addenda
referenced above  Lucent would need to issue mutually
acceptable written purchase orders   Should this process not
be followed, Lucent would not be able to accept purchase
orders or invoices for any Winstar performed services
presumably on Lucent s behalf

I look forward to your prompt reply, and the further growth of
our relationship consistent with our shared vision

56   Uhl signed the letter thereby acknowledging his assent and returned the same

to Lucent   Uhl did not understand this letter to terminate the original agreement in the event

the parties were unable to enter into a new agreement   (Uhl Video-direct at pp 16  18  and

19)  Kantor understood that Lucent's financial people were demanding a letter because

they needed to book revenue  (Kantor Video-direct at 180-81)

57  In addition to Uhl's signing the letter, Lucent extracted another and even more

substantial financial concession from Winstar when  on September 29 2000 the parties

executed the Software Pool Agreement (PX 323)   Under the Software Pool Agreement

Winstar purchased $135 million of unneeded software   The transaction was simply a

sham  however   It's purpose was to inflate Lucent's end of quarter revenues   To that end

40

the Software Pool Agreement was successful it alone accounted for 26% of Lucent's profits that quarter (DX 739 at ¶ 60)

58 The end of quarter deals for the third quarter of 2000 committed Winstar to make approximately $212 million in purchases and forced Winstar out of compliance with the CAPEX covenant and over the $500 million refinancing threshold (Ackerman Video at 605-08 and 666-69 PX 43 PX 57 PX 78 PX 107 PX 148) [38]

59 Lucent s initial software proposal was for a much smaller amount — $25 million — but in less than nine days, with Kantor's promise to Lucent that Winstar would help wherever possible the pool expanded approximately five fold to the $135 million figure (PX 57, PX 323, Zlotnick Video-direct at 157) This increase occurred without the numerous internal studies or any of the other planning documentation that Mr Pocalyko testified were typical (DX-702, Pocalyko Tr 3-41-42) As Lucent's Deborah Harns advised on September 22, 2000 I know the overall Software request will be a surprise and that is an area where a conversation will be of (PX-52) benefit "

60 As part of this software pool transaction the parties also agreed that Lucent s list pricing for the software rather than Winstar s contractually-reduced pricing -would be used to further boost Lucent's revenue (PX-53 PX 349) As Winstar executive William Zlotnick

---

[38] Lucent was well aware of the CAPEX problem Lucent proposed the Software Pool Agreement, which called for all payments to be deferred until 2001, as a way to commit funds to Lucent without further increasing Winstar s capital expenditures (Zlotnick Video-direct at 156 the transcript of Zlotnick's testimony is Joint Trial Exhibit 3)

41

testified, the software deal was ultimately priced "at whatever Lucent needed for its revenue" (Zlotnick Video direct at 160 61, PX-79 see also PX-57) Of the $135 million of software less than $20 million was of value to Winstar (Zlotnick Video-direct at 169-71) In fact in post-deal documentation Lucent took the position that Winstar was only entitled to select $20 million of software — and would have to pay extra if it wanted more — despite Winstar's obligation to pay $135 million in cash in 2001 (PX-54) Lucent later recanted this position

61   To enable Winstar to make the required cash payment for the software, the companies agreed to enter into contracts for credits postdated after September 29, 2000 and payable in the fourth quarter of 2000 (i e before Winstar was obligated to actually make the software payments to Lucent) (PX-54 PX 57 PX-186 at internal tab 2 PX 324 PX-462 at 37 Rubin 2003 152 15 — 154 11)

62   On behalf of Winstar, Ackerman signed the post dated credit agreements, enabling Lucent to book almost the entire amount of the software deal as revenue in Lucent's final fiscal quarter of 2000 (September 30 2000) (PX-167 DX-739) Thus Lucent funded Winstars purchase of the unnecessary software in advance, to obtain Lucent's September 2000 revenue and profit infusion

63   Shortly thereafter Rouhana, Winstar's Chairman and CEO, informed Schacht, one of Lucent's directors and who as of October 23 2000 resumed his previous position as CEO of Lucent about the financial improprieties between the companies Lucent retained its outside counsel to investigate its accounting procedures The investigation resulted in Lucents reversal of the revenue recognition from the Software Pool Agreement

42

and a shake-up of the company s accounting staff  (Schacht, Tr  21 at 33-35)

64   The Securities and Exchange Commission ("SEC") also conducted an investigation that ultimately lead to the SEC s filing a civil complaint against Lucent  certain key Lucent employees, including Deborah Harris  who  as Vice President of Sales assumed responsibilities for the Winstar account in August 2000  and Plunkett, a member of Lucent s management team overseeing the Winstar account  and former Winstar employee  David Ackerman  a  Group Executive  responsible for the build out of Winstar s network  A criminal investigation is still ongoing  When deposed as part of the SEC  both Harris and Plunkett refused to answer citing their right against self incrimination under the Fifth Amendment to the United States Constitution        65   Lucent in fact terminated Mr Plunkett for his involvement in postdating documents related to the software deal (Schacht Tr  21-35)  It did nothing  however, to terminate or otherwise punish fellow Winstar Sales Team members Deborah Harris  Vanessa Petrini or David Rigotti  all of whom remained active on the Winstar account into 2001  and who were clearly culpable in the scheme to fraudulently post-date the deal documents  (See PX-73  PX-66)  Thus while Mr  Plunkett became the scapegoat  the transaction remained in place  and the other Lucent participants remained active on the core Winstar sales team  (Schacht, TR  21-29 3 21, 21-33 13-17, 21-35 7-14)

66   Soon after sending her September 27  2000 letter  Aversano was relieved of her duties at Lucent and formally left Lucent in December 2000  (Aversano Depo  Tr  8 22-24 )  When she left  the parties had not executed a transition agreement nor had they resolved the ongoing problem of payment of the pass-through requests

43

67  During this same time period Lucent was experiencing its own revenue crisis and was attempting to reduce its exposure on loans it was financing  (PX184)    By at least mid October 2000 it drafted  but did not send  a refinancing notice as Winstar's outstanding borrowing exceeded the $500 million trigger  (Hayes Depo, Tr 13-40  PX 185 ("Per the email below  we are planning to issue a Refinancing Notice to Winstar next week ")  Lucent was well aware of the impact sending such a notice could have  By email dated November 2  2000  Paul Hayes  Lucent s Director of Syndication and whose job was created in late 1999 or early 2000 specifically to manage the process of removing loans from Lucent's books  circulated a memorandum from Beth Perricone addressing the implications of sending a refinancing notice to Winstar  (Hayes Depo  Tr 13-31  PX 187) That memorandum provides in part

> Paul and I have studied the implications for Winstar and Lucent of issuing a refinance notice
>
> ▪▪▪
>
> IV  Implications of Issuing a Refinance Notice
>
> Option 1-Issue a written 105 day refinance notice for all or a portion of the Lucent Loan
>
> Pros
>
> • Puts pressure on Winstar to seek alternative sources of capital (i e  existing Bank Syndicate, Bondholders, Equity Sponsors  and Vendors)
>   Forces parties to the table to deal with funding shortfall issues
>   Provides ability for Lucent to re negotiate certain provisions  e g  content requirements  limit non-Lucent content financing, eliminate Winstar pre-approval for Lucent loan sales  improve collateral position (i e  pari passu with Bank Syndicate)

44

Repayment by Winstar results in fresh $1B of Lucent
financing available for Winstar

- Lucent can always rescind or modify the refinancing
notice

Cons

- Winstar is likely to immediately file 8-K to disclose material adverse
event, disclosing the amount of the financing,
- Disclosure may result in details of Lucent's financing becoming
public
- Market rumors may further disrupt capital markets and deter new
investors
- Existing Winstar securities could suffer price deterioration further
impacting market appetite and further depressing price of Lucent
Loans
- Potential Rating Agency implication for Lucent and Winstar
- Potential increased cash flow requirement for Winstar, which would
result at end of Refinance Period (90-105 days)  If winstar does not
refinance, rate on Lucent Loan increases by 2% (i e  a potential $13 8
M in additional interest cost annually on current &690 M of Lucent
Loans)  If Lucent chooses to convert its notes at the end of the
Refinance Period, the Conversion Notes (a defined legal term) could
carry a cash payment coupon as high as approx  21% based on
Winstar's current bond prices (i e  a potential $62 M of additional
interest cost annually on current $690 M of Lucent Loans)

Option 2-Meet with Winstar immediately and advise verbally of
pending notice

Pros

- Provides opportunity to negotiate right to sell up to $300 M of Lucent
Loans today if Lucent desires
- Advise of refinance amount of 100% of Lucent Loans then negotiate
a lesser amount if Lucent desires
- Flush out any strategic options currently under consideration by
winstar
Extract other amendments (i e  collateral voting  assignments  etc )
and any additional economic concessions (i e  rate  fees  warrants)
- Limit public disclosure and market impacts

45

Cons

- Time is of the essence
- 105 days required for refinance
  Rumors still may permeate the marketplace

V Conclusions.

- Lucent's ultimate negotiating position may be driven by our own perception of Winstar as a "going concern,
- If we believe they are a survivor than our primary concern might be limiting a loss of Lucent profits i e  discounting Lucent paper,
- To make the most informed Lucent decision we need better clarity from marketplace on capacity for Winstar debt/equity to make a more informed decision  A confidential discussion may begin immediately on this
- Alternatively, do we perceive Winstar as completely locked out of the capital markets and absent a strategic investor?  Should we be concerned about capital perservation and the impact to Lucent s balance sheet and credit rating?
- Ultimately our decision should be driven by where we think this is going  In our judgment  if the capital market disruption is temporary i e , 3-6 months longer  than [sic] Winstar is likely to survive

68  By November 7, 2000 Lucent had apparently decided to delay issuing the

refinancing notice when Beth Perricone again wrote in an email

As you will see below there was a meeting of the minds at Winstar yesterday  Late last nite [sic] Bill Quinn and I spoke briefly to Peter for the outcomes of that meeting  Peter described 3 capital events about to occur

- Bank group to provide for new term loan of $200M to be supported via guaranty of Siemans  The proceeds of this loan are to paydown [sic] Lucent  Apparently Winstar will enter into long term supply agreement w/Winstar [sic] in exchange for their guaranty  Not sure how they will pay for Siemans gear if that facility is used to repay us??

Winstar to enter into new $275M capital lease w/Cisco

46

- Winstar to inject new $25M of equity (term sheet to follow to Lucent)

This would bring our current exposure of $690M down to $490M or below the trigger amount   I am not clear from Peter whether we will issue refinance notice now, sounds like we are waiting

Peter want complete due diligence done at Winstar so Quinn, Keller and I are coming up w/ a list today   (PX 188)

69   On November 10, 2000 Perricone sent yet another email in which she again recommended that due diligence of Winstar be undertaken to evaluate the impact of a refinancing notice prior to send such a notice   (PX 189)   Lucent was clearly worried that the issuance of the refinancing notice would have dire consequences for Winstar   (Hayes Depo Tr 13-45)   Nevertheless Hayes assuredly wrote in a November 16  2000 email to Hunt Majean   'Sending the refinancing will not send Winstar into a financial  tailspin  and I will stake my bonus from this past year on it  [37]  (PX 191)

70   In November 2000 Lucent commenced its due diligence of winstar's financial condition   As a result of the due diligence  Perricone recommended that Lucent lower Winstar's "Asset Quality Rating  or "ARQ" from 6 to 7 [38]  (Perricone  Depo  Tr 3-115)

71   Lucent replaced some of its key management in the fall of 2000 but it continued along a tumultuous path with employees in the sales and finance department continuing to have different goals and objectives   Although Lucent's upper management wanted to

---

[37]Hayes testified that the comment about staking his bonus on his opinion that the refinancing notice would not send Winstar into a tailspin was intended as a joke as Lucent did not offer bonuses  (Hayes  Depo  Tr  13-89)

[38]The ARQ rated Lucent's borrowers on a scale of 1 to 10   The higher the rating, the higher the inherent risk of non payment  (Perricone  Depo  Tr  13-115)

47

extricate the company from the business of lending to its customers, or at least from Winstar, the pressure to have Winstar continue purchasing and building out the network continued  Indeed when Winstar did not behave as Lucent wanted, Lucent simply shut down any discussion of a transition agreement  Lucent continued to control Winstar throughout the course of their relationship  including in December 2000  Although their may have been periods when Lucents control was less apparent or even relaxed, and indeed there were times when Winstar was able to extract concessions from Lucent  the fact remains that these parties were not dealing at arms length  For example  the bill and hold transactions were done at the request of Lucent (PX 462 at Exhibit N) [39] purchase orders are vague-often describing as  miscellaneous" a purchase of several million dollars (See  e g  PX 462 at Exhibit H and I)  the inflation of the Software Pool Agreement from $31 million to $135 million over the course of a 9 day period (PX 462 at Exhibit P) [40] There were also excessive end of quarter deals  unneeded equipment paid for by Winstar but sitting in Lucent's facilities  duplicate charges, and difficultly, to say the least, in getting

---

[39] PX 462 is the Report of Paul Pocalyko who was retained as an expert by Winstar to render an opinion as to whether the transactions were arm s-length and if Lucent exerted undue influence and control  Lucent sought to exclude Pocalyko's testimony under *Daubert v Merrell Dow Pharm  Inc*  509 U S  579 (1993)  Assuming for the sake of argument that *Daubert* is applicable in a bench trial  the Court denied the motion  (Tr of March 16  2005 hearing at 34-41) [Docket 322]  Although the Court continues to believe its initial ruling is correct  it has used Pocalyko's report only as a convenient vehicle to refer to relevant documents  The Court has not relied upon Pocalyko's opinions in reaching its decision

[40] The Software Pool Agreement prices the equipment at  list  price rather than the reduced price that the Supply Agreement provides

credits correctly to Winstar s accounts [41]  Winstar was and remained Lucent's captive

purchaser of unneeded and sometimes unidentified goods to permit Lucent to inflate its

own revenue

72  By letter dated December 28, 2000 and addressed to Michael Montemarano

Lucent's Vice President of Finance of Worldwide Sales and Marketing  (DX 556)  Winstar

---

[41]Although the parties disputed these allegations  after weighing the credible
evidence  including the documents appended to and compiled as part of the Pocalyko
Report  the Court finds that the Plaintiff has proved that Lucent essentially dumped
excessive amount of unneeded equipment on Winstar in order to inflate Lucent s own
revenues  For example, excluding the $135 million paid to Lucent under the Software Pool
Agreement (which itself is another indication of the sham transactions Lucent devised to
inflate its own revenues)  Winstar made an aggregate of approximately $706 000 000 in
purchases from Lucent in calendar years 1999 and 2000  During this period the amount of
Lucent equipment paid for by Winstar but sitting in Winstar's or Lucent's warehouses
continued to increase so that by March 31  2001 there was, on an adjusted cost basis
approximately $327 million in those warehouses  Of that $327 million in equipment  the
overwhelming majority, indeed about $256 million was paid Lucent equipment while $71
million was non Lucent merchandise  And needless to say  the valuation of the Lucent
equipment at $256 million on an adjusted cost basis is less than that actual amount paid to
Lucent by Winstar for that equipment

Moreover closer examination of the facts relating to the warehoused equipment
purchased from Lucent reveals that of the approximately $256,000,000 (on a cost adjusted
basis) of Lucent equipment in Winstar inventory in warehouses as of March 31, 2001
approximately $74 million of the $256 million of Lucent equipment could be specifically
traced as to the original date that Winstar purchased such equipment from Lucent  Of that
$74 million of Lucent equipment, approximately $36 million (on a cost adjusted basis) of
that equipment was purchased by Winstar in a December 31  1999  end of quarter bill and
hold sale and remained in a Lucent warehouse undeployed for 15 months as of March 31
2001  In fact once Winstar paid for Lucent equipment  it was not unusual for some of that
merchandise to sit in a warehouse for more than a year

49

sent Lucent a request to borrow $62,324,930 00 [42] Accompanying the letter was a one

page "analysis captioned

Winstar Telecommunications, Inc
Lucent Billing for Capital Labor
Q1 2001 Estimate

The chart lists the departments which provided the services under three general headings

"Winstar Systems Group, Winstar For Buildings ' and "Winstar Network Services " Each

general heading is followed by a specific list of what appear to be the various departments

which rendered services along with the total of internal, external, and Lucent billable

labor costs incurred by each department for the months of October November and

December (for which month the figures are estimates) of 2000

73   On the evening of December 27 2000 Montemarano sent an email (included as

part of PX 199) to several Lucent employees, including Ben Verwaayen Lucent s Vice

Chairmen and Hopkins Lucent s CFO which reads in part as follows

> Based on a call today from winstar [sic] chairmen, president
> and CFO we took the following position as articulated by Ben
> We could allow winstar [sic] to use the credit facility to fund
> their services for this quarter  We would not engage in any
> billing/po's between the companies, but they could and do
> intend to draw down the facility for about 65M [sic]  This is
> money out the door for us
> We agreed that the 35m [sic] credit granted in 4qtr can be used
> as a reduction to their outstanding credit facility  It would not be
> dispersed as cash to them  but we [sic] go against the credit
> facility as "repayment "
> They also indicated they had presented a draw down last week
> of 32M [sic], Ben asked them to reconsider this given the
> extremely low lucent [sic] content

---

[42]The letter requests that the funds be wired to WCI Capital Corp

50

I will work this tomorrow with their CFO and plan to ensure they adequately document cash draws  In addition, Ben asked the CT [customer team][43] to set up a meeting with winstar to get the relationship to a new level where both companies benefit

74  The next morning Lucent's CFO sent the following reply via email (also part of

PX 199)

WE HAVE ALREADY SAID no TO THE SERVICES FUNDING

75  A few hours later  Verwaayen emailed (also part of PX 199) the following

Well  after a read out from the lawyers and after reviewing the options with everybody on our pre call yesterday  Winstar can draw down upon the credit facility  including services
We did push back on credits (no cash  but off setting a/r's) and the 30 million request that came in Friday
We really had not the option of denying their rights here
In reality  we can make their lives miserable for a couple of days  but they have an open line and that is what we have to change
So what we did  after all agreed in our pre call is to create a basis for a **fundamental resetting** of this relationship
We will create from both sides a wishlist how to recreate our legal platform working together and renegotiate on those issues
I think we all understand how much better we are and how  to get out of this situation going forward
We want to make this a profitable account with clear rules of engagement

76  But as suggested in the December 29, 2000 email Ben Verwaayen sent, Lucent

had used its influence over Winstar to set the stage for the new negotiations

Now we have positioned ourselves for a major overhaul of our relationship with Winstar  I think we should involve our partners in treasury and Legal in preparing a model for our negotiations

---

[43]Hayes  Depo, Tr 13-63

51

on Jan 9 or 10    (PX 261)

77  On the evening of January 5, 2001, Elizabeth Perricone (who was not copied on

the above series of emails) sent an email (PX 119) which reads in part

> Financing of Services on 12/29/00
> Given our agreement to finance services on 12/29/00  legal
> feels it would be prudent to send Winstar a letter confirming this
> was a borrowing under the Credit Agreement as an
> accomodation [sic]  and we reserve the right not to make loans
> for any such purpose in the future

78  On March 27  2001 Winstar faxed to Lucent a notice of Winstar's request to

borrow $62,050,743 00 effective March 30, 2001  (DX 668)  The draw request is on

Winstar letterhead and is captioned "Notice of Request for Borrowing " The Notice states

that the request is given "[p]ursuant to Section 2 03 of the Credit Agreement" and contains a

certification "that all conditions for borrowing set forth in Section 4 03 the [sic] Credit

Agreement have been satisfied or will be satisfied as of the date hereof and as of the date

the borrowing is made " The Notice also indicates that the entire amount requested is to be

paid to the "Borrower  for non-Lucent equipment

79  On April 2, 2001 Winstar sent Lucent a second fax that contained the back-up

detail to the Notice of Request for Borrowing (included as part of DX 668)  The cover sheet

contains the following note  "Please add this to the draw request as an attachment

Although this is not usually provided  this is the detail behind the services number " The

detail attached is a one page chart that is captioned

Winstar Telecommunications  Inc
Lucent Billing for Capital Labor
Q1 2001 Estimate

52

The chart is virtually identical to the one attached to the fourth quarter 2000 request except that this request is for the months of January, February, and March (for which the figures are estimates) of 2001   The total of all of these costs is approximately $62 050 742 [44]

80   Lucent refused to pay citing the lack of a task order   The lack of a task order was simply a ruse, however   Lucent had not required task orders in the past and  although Aversano s September 27  2000 letter purported to set new parameters for payment Aversano's letter extorted Winstar's assent to the reset terms by threatening nonpayment Even Lucent s own executives testified that the documentation submitted by Winstar created a 'commercially binding relationship" for the relevant time periods    [a]t September 30th [2000]  we clearly were in a relationship that was commercially binding because there were purchase orders and invoices between the companies where we subcontracted with them '  (Montemarano  Video-direct at 10-11  see also Montemarano  Video-direct 68 8 — 69 24,  Simpson  Video-direct at 18- 54) [45]

81   Although, beginning as early as the communications surrounding the invoice for the second quarter of 1999  Lucent warned Winstar that it would pay for Wireless  services one last time  without a task order, there were too many ' one last times  for that warning to be effective   (See Aversano s letter of September 27, 2000, December 27, 2000 call

---

[44]This figure was calculated by the Court, the numbers listed on the line called "Grand Total" are unreadable on the exhibit  Some of the numbers throughout the exhibit are difficult to read but the total appears to be within $1 of the amount requested in the Notice of Request for Borrowing

[45]The transcript of Montemarano s deposition testimony is Joint Trial Exhibit 9  the transcript of Simpson s testimony is Joint Trial Exhibit 11

between Lucent and Winstar) (Wilson Tr 16 110-11)  Moreover privately Lucent
employees agreed that Lucent was obligated to pay for these services  As is discussed in
greater detail below  Lucent was using the threat of non payment to get Winstar to
renegotiate their various agreements to get a better deal  On repeated occasions, Lucent
advised Winstar that it was paying for Wireless' services under the Subcontract "one more
time  or one last time  but always paying each invoice until March 2001 when Lucent was
again trying to turn up the heat to get a better deal from Winstar  (Wilson Tr 16 110-11)

82  The requirement that there be task orders" as contemplated by the Subcontract
was modified by the course of conduct between the parties

83  Lucent argues that this course of conduct between the parties is irrelevant
because the Subcontract contains a  no oral modification clause  Although such clauses
are generally enforceable under New York law, there are two exceptions  (1) where an oral
modification is supported by full performance, or by partial performance unequivocally
referable to the oral modification  Rose v Spa Realty Associates, 42 N Y 2d 338 343, 397
N Y S 2d 922 926 (N Y 1977) and (2) where a party has relied upon an oral modification
through conduct which is incompatible with the express terms of the contract  equitable
estoppel will prevent the other party from attempting subsequent strict reliance on the
written terms  Id , 42 N Y at 344, 397 N Y S 2d at 927  84  Under New York law  oral
directions to perform extra work  or the general course of conduct between the parties  may
modify or eliminate contract provisions requiring written authorization or notice of claims
Barsotti's, Inc v Consolidated Edison Co of New York Inc  254 A D 2d 211  212  680
N Y S 2d 88  89 (1998) (internal quotations and citations omitted)  When the contract has

54

not been fully performed 'the party seeking relief from the written terms of the contract must introduce evidence of conduct on the part of other parties or reliance on his own part which is "unequivocally referable" to the oral modification and incompatible with the contract's written terms  *Rose*  42 N Y 2d at 341, 344  366 N E 2d at 1281, 1283  397 N Y S 2d at 924  927  "Because the doctrine of part performance is based upon the equitable principle that it would be a fraud to allow one party  insisting on the Statute [of Frauds], to escape performance after permitting the other party, acting in reliance  to substantially perform  the acts of part performance must have been those of the party insisting on the contract  not those of the party insisting on the Statute of Frauds   *Messner Vetere Berger McNamee Schmetterer Euro RSCG Inc  v  Aegis Group PLC*  93 N Y 2d 229, 237, 711 N E 2d 953 958, 689 N Y S 2d 674  679-80 (1999)

85  In this case the parties' behavior resulted in a modification to the Subcontract There can be no question that Wireless' performance was undertaken pursuant to the Subcontract  Based upon Lucent's past practices, neither Wireless nor Winstar was unreasonable in relying upon Lucent's practice of funding and paying for services upon presentation of an invoice and spreadsheet and neither was unreasonable in expecting this practice to continue  Moreover  it is not credible that almost two years after the pattern had been established that Lucent would insist upon compliance with the letter of the Subcontract  particularly when Lucent has used this tactic in the past to try to pressure Winstar and when Lucent itself was dragging its heels on negotiating the long-awaited transition agreement  In fact  after Lucent forced Uhl, under threat of non-payment of the

55

Winstar's September 8 2000 invoice in the amount of $65,509,331 to sign Aversano s September 27 2000 letter (PX 88) purportedly resetting the terms and conditions of the Subcontract Lucent ignored the reset terms the very next quarter Therefore based on the parties' behavior the Subcontract was modified to provide for payment of purchase orders, invoices etc after the Wireless performed the work and thus Lucent's refusal to pay the March 2001 invoice was in breach of the Subcontract

86 The Trustee is awarded damages in the amount of $62,050,742 00, the amount of the March 2001 invoice which Lucent was obligated to, but did not, pay Pursuant to the law of this case, no consequential or punitive damages are awarded in connection with the breach (See Docket #85 and #103) Moreover the parties have agreed that if the event that the Trustee should be awarded damages pursuant to this Count, Lucent would be entitled to an offset of $6 3 million Therefore the damage award is reduced to $55,750,742 00

## COUNT X PREFERENCE

87 Section 547(b) of the Bankruptcy Code, 11 U S C § 547(b), provides in

relevant part as follows

> Except as provided in subsection (c) of this section the trustee may avoid any transfer of an interest of the debtor in property--
>
> (1) to or for the benefit of a creditor
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made

56

(3) made while the debtor was insolvent

(4) made—

\*\*\*

> (B) between ninety days and one year before the
> date of filing of the petition if such creditor at the
> time of such transfer was an insider, and

(5) that enables such creditor to receive more than such
creditor would receive if--

> (A) the case were a case under chapter 7 of this title,
>
> (B) the transfer had not been made and
>
> (C) such creditor received payment of such debt to the extent
> provided by the provisions of this title

88    The burden of proving each of these elements by a preponderance of the

evidence is on the chapter 7 Trustee    11 U S C  § 547(g)    *Official Committee of*

*Unsecured Creditors v  Concena Sabrina*, 195 B R  602, 612  (Bankr  M D Pa  1996)

89    In November 2000  with Lucent and Winstar still in negotiations on a transition

agreement  Winstar informed Lucent that Siemans agreed to join the Bank Facility and lend

Winstar an additional $200 million

90  Prior to the closing of the Siemans loan  Winstar sought Lucent's permission  to

keep all  or failing that  $100 million of the loan and pay the other $100 to Lucent even

though the Second Credit Agreement called for 100% of the proceeds of any increase in

the Bank Facility to be paid to Lucent   Lucent refused and responded with a letter dated

November 7, 2000  consent letter" that was merely a list of demands  Those demands

included the following

A  First, Lucent demanded that Winstar draw all of the funds down as soon as they were available and pay them to Lucent rather than allowing Winstar to determine whether and when it would tap the facility

B  Second  Lucent demanded that Winstar agree to prepare a written paydown schedule for the remainder of the sums it owed Lucent under the Second Credit Agreement — even though Winstar was not obligated even to begin repaying the sums until 2005 — and insisted that Winstar help Lucent sell off the other outstanding Winstar borrowings

C  Third  Lucent required that Winstar cooperate in Lucent s performing a due diligence review of Winstar

91  When Winstar did not immediately agree to Lucent's demands, Lucent put the transit on agreement negotiations on hold  Lucent s communications to Winstar were clear and carried the single message  agree to Lucent s demands or there would be no transition agreement

92  When Winstar still did not acquiesce  Lucent played its ultimate trump card  give Lucent all of the Siemans proceeds or there would be no further draws under the Second Credit Agreement  Lucent  of course  could not withhold funding without breaching the Second Credit Facility  Lucent s threat was one more ploy to control Winstar

93  Faced with the economic pressure  Winstar agreed to turn over the Siemans

58

proceeds and on December 7  2000 closed on a $200 million increase to its syndicated loan with Bank of New York

94  On the same day Winstar paid  by wire transfer  Lucent $188,180,000 to reduce Winstar's outstanding loan with Lucent  This transfer represented the net loan proceeds of $194 million minus $5,820,000 refund of an up front fee Winstar had paid Lucent at the time of the borrowing under the Second credit Agreement

95  Lucent disputes that a transfer of Winstar s interest in property was made, that Winstar was insolvent at the time of the Transfer  and that Lucent was an insider of Winstar at the time of the Transfer

### Transfer of the Debtor's Interest

96  Lucent waived the argument that there was not a transfer of Winstar's interest when it agreed to the following stipulated fact set forth in paragraph 6 of the Additions to Stipulated Facts  filed in open court on March 21  2005

> Section 547(b)(1) of the United States Bankruptcy Code has been satisfied with respect to the Trustee s claim that the transfer to Lucent of a portion of the Siemens loan proceeds constituted a voidable preference

97  Subsequently, after the Trustee had rested  Lucent argued its motion for partial findings under Fed R  Civ  P  52(c)  incorporated by reference into Fed R  Bankr  P  7052, and asserted for the first time that the Trustee had not sustained her burden of proving that section 547(b)(1) had been satisfied  (Tr  17-7)  Having stipulated that this element has been satisfied  Lucent is not free to take back the stipulation after the Plaintiff concluded her case  But lest Lucent argue that the stipulated fact which  to the Court  is clear on its face is

somehow ambiguous or means something other than what is says the Court finds that even

without the stipulation, there is more than ample evidence that a transfer of Winstar's

interest in property occurred when it paid over a portion of the Siemens proceeds to Lucent

As Judge Fitzgerald recently stated in *In re AmeriServe Food Distribution Inc*

> Section 547(b) requires inter alia that the property transferred
> by the debtor be an "interest of the debtor in property " The
> Supreme Court has interpreted this to be "property that would
> have been part of the estate had it not been transferred before
> the commencement of bankruptcy proceedings " *Begier v IRS*
> 496 U S 53 58 110 S Ct 2258 110 L Ed 2d 46 (1990) In
> determining whether a transfer was ' an interest of the debtor in
> property " courts apply the "diminution of estate doctrine,"
> under which a transfer of an interest of the debtor occurs when
> a transfer "diminish[es] directly or indirectly the fund to which
> creditors of the same class can legally resort for the payment of
> their debts to such an extent that it is impossible for other
> creditors of the same class to obtain as great a percentage as
> the favored one " *In re Superior Stamp & Coin Co Inc* , 223
> F 3d 1004 1007 (9th Cir 2000) quoting 4 Collier on
> Bankruptcy ¶ 547 03 at 547-26 (15th ed 1993)

*AFD Funds v Transmed Foods Inc (In re AmeriServe Food Distribution, Inc )* 315 B R

24 29 (Bankr D Del 2005)

98 But for the payment over to Lucent that Debtor would have had the use of those

funds That the failure to pay Lucent upon completion of the refinancing with Siemens might

have given rise to a claim by Lucent for breach of contract does not nullify the fact that a

transfer of the Debtor's interest was made

99 Lucent further attempts to couch this argument as one of substitution ' that is

Siemens was substituted for Lucent on that portion of the loan it made This argument is

factually incorrect By Lucent s own admission, its collateral pool was different from that

60

given the Siemens  The Siemens transaction was not simply the substitution of one lender

for another  Viewed another way what Lucent is really arguing is  as the Trustee correctly

notes  the so-called "earmarking doctrine   Under this theory Lucent argues that Winstar

had no ability to divert a vast majority of the Siemens proceeds away from Lucent  Thus,

Lucent asserts Winstar had no interest in the proceeds and was somehow simply a conduit

through which the money flowed  But the facts here are distinguishable from those cases in

which debtors validly assign proceeds before they are acquired  Here there was no

assignment  just a simple promise to pay  That contractual obligation  without more  is

insufficient to convert this into an assignment  Compare In re Computer Engr'ng Assocs

Inc , 337 F 3d 38 (1st Cir  2003) (valid assignment of contract proceeds meant that debtor

had no interest in proceeds as they accrued)  In re RISCmanagement  Inc , 304 B R  566

(Bankr  D  Mass  2004) (valid assignment of contract proceeds would deprive debtor of any

interest in that property  but mere agreement to pay creditor out of contract proceeds would

not)  Moreover there is nothing in the record evidencing an agreement between Siemans

and the Debtors that the proceeds of the Siemans transaction be used to pay Lucent  See

Reigle v  S S  Mahajan (In re Kumar Bavishi & Associates)  906 F 2d 942  944 (3d Cir

1990) (affirming preference where "record does not reflect the existence of an agreement

between [new creditor] and the debtor that the funds be used to pay a specified antecedent

debt )  In re Bohlen Enters   Ltd  859 F 2d 561, 566 (8th Cir  1988), Howdeshell of Fort

Myers v  Dunham Bush  Inc  (In re Howdeshell of Fort Myers  Inc )  55 B R  470  474-75

(Bankr  M D  Fla  1985) (rejecting earmarking where debtor decided who to pay  and third

party did not "condition" loan on payment to defendant)

100  Finally, earmarking is an affirmative defense  Lucent did not raise it in its

Answer or in the Joint Pretrial Memorandum  Thus  even if Lucent had not previously

waived the issue in the Additional Stipulated Facts  and even if it had proved facts that

bring the Siemens proceeds under the doctrine of earmarking  it waived the defense when

it failed to plead it as an affirmative defense

### *Insolvency*

101  Under the Bankruptcy Code

> 'insolvent' means–  (A) with reference to an
> entity other than a partnership and a municipality,
> financial condition such that the sum of such
> entity's debts is greater than all of such entity's
> property, at a fair valuation  exclusive of–
>
> (i) property transferred  concealed  or removed
> with intent to hinder, delay, or defraud such
> entity's creditors  and
>
> (ii) property that may be exempted from property
> of the estate under section 522 of this title

11 U S C § 101 (32)

102  This test of insolvency  the so-called 'balance sheet  insolvency  compares the

"fair value" of all of the debtor s assets with the face or "stated" value of its liabilities on the

relevant date  It is different from equity tests that focus on a debtor's current ability to pay

debts as they become due  Moreover  although labeled as the  balance sheet" test  as

Judge Walrath noted  'this may be a misnomer because the Balance sheet Test is based

upon a fair valuation and not based on Generally Accepted Accounting Principles ( GAAP )

62

which are used to prepare a typical balance sheet " *Lids Corp v Marathon Investment Partners, L P (In re Lids Corp )* 281 B R 535 540 (Bankr D Del 2002) '[A]lthough GAAP is relevant in [a] section 547 solvency analysis, it is not determinative ' *Id* at 542 "Whether a company is insolvent under the Bankruptcy Code is considered a mixed question of law and fact " *In re Trans World Airlines, Inc*, 134 F 3d 188, 193 (3d Cir 1998)

*Fair Valuation*

103   There are three standard approaches to determine the fair value of assets  the market approach  the income approach and the asset approach  (Scherf Tr 12-12-13 and 23-24)  Although experts generally consider each of these approaches (Scherf, Tr 12-13) not all of the approaches are appropriate or helpful in determining the proper measure of valuation  Indeed valuation  although employing broad principles of economics, is as much an art as it is a science  Each approach may yield a different result and which approach offers the best or better framework is a determination made in light of the facts of a case  Nevertheless there are some basic tenets that guide courts in evaluation valuation evidence

104  Fair valuation is generally interpreted as fair market value  that is the amount a hypothetical willing buyer would pay to a willing seller  rather than a distressed or liquidation value  *Travelers Int l AG v  Trans World Airlines  Inc  (In re Trans World Airlines  Inc )* 134 F 3d 188, 194 (3d Cir 1998) *cert denied* 523 U S  1138  118 S Ct  1843  140 L Ed 2d 1093 (1998)

63

105  "[A] fair valuation of assets contemplates a conversion of assets into cash during a reasonable period of time "  *Id*  Although the determination of what is a reasonable period of time depends upon the facts of each case, a "reasonable time should be an estimate of the time that a typical creditor would find optimal  not so short a period that the value of the goods is substantially impaired via a forced sale  but not so long a time that a typical creditor would receive less satisfaction of its claim  as a result of the time value of money and typical business needs  by waiting for the possibility of a higher price '  *Id*  at 195  Thus the Court must decide whether  fair value  under the facts of this case means that the Debtor's assets at the time of the transfer must be valued as a going concern or on some other basis  such as a liquidation sale   The answer depends on whether a liquidation in bankruptcy was "clearly imminent on the date of the challenged transfer     *Id*  at 193 *Vadnais Lumber Supply  Inc  v  Byrne (In re Vadnais Lumber Supply Inc )*  100 B R  127, 131 (Bankr  D  Mass 1989)( The proper standard of valuation to be applied in determining solvency in a bankruptcy proceeding is the value of the business as a going concern  not the liquidation value of its assets less its liabilities    Liquidation value is appropriate however, if at the time in question the business is so close to shutting its doors that a going concern standard is unrealistic    )  Moreover 'going concern' value may not be an appropriate test in an unstable market  *In re Art Shirt  Ltd*  93 B R  333 (E D  Pa  1988)

106  As Lucent s insolvency expert noted in his report

> During the 1999 2000 period telecom stocks exhibited a great deal of volatility  According to Merrill Lynch  during the period from January 1  1999 to early March 2000 an average stock within the emerging broadband group appreciated 63% year to

> date  then these stocks declined an average of 87% by the end
> of 2000

(DX 701 at 11)

107   The traditional method of determining going concern value is by capitalizing net profit   *Vadnais Lumber Supply*  100 B R  at 131

108   The Trustee and Lucent each rely upon the testimony of their respective insolvency experts and not unexpectedly those experts reached vastly different conclusions The Trustee s expert  Scherf  concluded that Winstar was insolvent on December 7, 2000 the date of the transfer  Collins  Lucent s expert  concluded the Debtor was solvent on that date

109   Stephen J  Scherf  the Trustee's expert  is a Certified Public Accountant and a Certified Valuation Analyst  He is a principal in Parente Rudulph  LLC and is well qualified to render an expert opinion in the area of insolvency   Lucent does not dispute his qualifications as an expert in this matter   Scherf's report was admitted into evidence as PX 460

110   Lucent relied upon the expert opinion of Kevin Collins  a managing director of Houlihan Lokey Howard & Zukin and in charge of the valuation practice of the firm's New York City office   He is also well qualified to render an expert opinion in the area of insolvency and the Trustee does not dispute his qualifications as an expert in this matter His report was admitted into evidence as DX 701 [46]

---

[46]Both experts have substantial experience testifying as experts   Both have had courts accept their opinions as correct  both have had their opinions criticized   Because the Court must determine solvency in light of the unique facts of *this* case  criticism by

65

111  In this case the Trustee s expert considered all three approaches (Scherf, Tr 12-24-25) while Lucent's expert did not consider the asset approach (Collins  Tr  18-16)

### The Market Approach

112  The market approach measures the subject company s assets and those of similarly situate companies

113  Collins testified that "there was a large and active trading market for Winstar    (Collins  Tr  18-16)  He opined that the market approach or an income approach would be the appropriate tests for valuation  Because the market approach considered the value only on the basis that the purchaser could only acquire a minority ownership interest via stock purchases  he then adjusted the value upward to include the increase in value that could be attributed to buying a controlling  or indeed entire  interest in the Debtors  Based upon his analysis, he opined that Winstar was solvent on the Transfer date

114  Scherf rejected the stock market valuation of Winstar and he was correct to do so  The stock market value artificially overvalued the Debtor  For one thing market investors did not know that Lucent was holding back on issuing its refinancing notice  Lucent  but not the average investor  knew that Winstar's true financial picture was much bleaker than the Debtors' publicized financials would indicate  Moreover, as even Collins acknowledged  the market was unstable  [cite]  It was simply too unstable to be an adequate indicator of valuation

---

another court of the methodology chosen by either expert in a different factual context has limited value

115  Moreover, as part of his market approach, Collins  blending a market approach with principles upon which the income approach is based  examined sales of companies or controlling interest in companies that were not comparable to Winstar in performing a guideline company approach and comparable transaction methodology

### The Asset Approach

116  Scherf and Collins both utilized an asset approach to value Winstar  This approach looks at categories of assets and determines the fair market value of those assets or categories of assets based on what it would cost to replace or reconstruct the assets  that is  their replacement cost  (Scherf, Tr  12-24 and PX 460 at 6)  This approach generally begins with a company's balance sheet but substitutes the fair market value of assets and liabilities in place of the book value

117  The date of the transfer  in this case  December 7  2000, is the relevant date for solvency  The Debtors, however  did not have financial statements as of that date  and, even if they had  financial statements prepared according to GAAP  although relevant  are not controlling  The Debtor did, however, have internally prepared financial statements for December 1, 2000 and December 31  2000  Thus one approach to determining solvency as of December 7, 2000 is to begin with the financial statements of December 31, 2002 and apply a technique commonly referred to as retrojection  '[T]he United States Court of Appeals for the First Circuit has expressly approved the technique of retrojection  whereby a trustee may meet his burden of proof on the issue of insolvency by showing that the debtor was insolvent at a reasonable time subsequent to the alleged transfer  accompanied by proof that the debtor's financial situation did not change materially during the intervening

67

period    *In re Industrial Commercial Elec , Inc  V  Babineau ( In re Industrial Commercial Elec , Inc )* 2004 WL 1354530  *7 (Bankr  D  Mass ) (citations omitted)  There is no reason to believe that this technique, employed by both parties  experts, would not be expressly approved by the Third Circuit as well  "That rule [retrojection] provides that when a debtor was insolvent on the first known date and insolvent on the last relevant date  and the trustee demonstrates 'the absence of any substantial or radical changes in the assets or liabilities of the bankrupt between the retrojection dates  *id*  the debtor is deemed to have been insolvent at all intermediate times  *Foley v  Briden (In re Arrowhead Gardens, Inc )*, 32 B R  296, 300 (Bankr  D  Mass 1983)  *Murphy v  Nunes (In re Terrific Seafoods  Inc )* 197 B R  724  731 (Bankr  D  Mass  1996)

118  There were no contemporaneously prepared audited financials for the year ended December 31  2000  Winstar's unaudited financials for that time showed Winstar had a positive net worth *on a book value basis*  (PX 460 at 10)  Book value is not the same as fair value [47]  If Winstar's net worth is evaluated on an income basis  it had a negative value

---

[47]In fact one indication of how poorly Winstar's book value reflected that actual market value of its assets is the optronics inventory  Because Winstar had purchased unneeded equipment from Lucent, including optronics equipment, when Winstar's financial condition was deteriorating in the fall of 2000  it made plans to institute some measures to improve its financial condition  *See* PX 68  One of those measures included selling off excess equipment  including the optronics equipment  (Kantor Video-direct at 479)  But the only offer Winstar received for its excess optronics equipment came from Lucent  and it was at a reduced price  *See* PX 22 (Uhl s 12/14/00 email to Frank Jules, Fred Rubin and Nate Kantor  Guys[ ] Carole Spurrier and Debbie Harris called at 4 30 to inform as follows  5  They have found no buyer for the Optronics  Their internal remarketing group offered to buy it at $ 30 on the $1 00  (I said no thanks)  )

68

119  Scherf identified four subsequent events he believed had to be accounted for in order to apply the asset approach  (1) the recognition and recording of a $1 8 billion impairment charge for the three months ended December 31, 2000 by  Grant Thorton, LLP, the Debtors  independent auditors  (2) the sale of substantially all of the Debtors' assets and nor of their liabilities to IDT for $42 5 million on December 19, 2001,[48] (3) the valuation prepared for IDT in connection with the allocation of the purchase price  and (4) the administrative insolvency of the Debtors  estates  a factor which he ultimately determined did not provide evidence of solvency or insolvency on the Transfer Date  (Scherf  Tr  12-25)

120  The impairment charge was based on projections that were prepared for a presentation on December 11  2000  The impairment charge was clearly knowable on December 7  2000  (Scherf, Tr  12-33)

121  In February 2001 Monoco sent an email documenting Winstar's cash flow problems -Monaco's email in Feb 2001 re  "Depending on the time of checks clearing  we will  have difficulty getting to the end of March when we anticipate a brief reprieve by receiving $60mm from Lucent for services, etc '  (PX 284)  By March 30, 2001 Uhl recognized Winstar's need to file bankruptcy  (Uhl Video-direct at 242-43)

122  Valuations were prepared for IDT in connection with the December 19, 2001 sale by Deloitte & Touche  which valued just the tangible assets at $328 million  and Empire Valuation, after reviewing the work of Deloitte & Touche  determined that the tangible and

---

[48]The purchase price was paid as follows  $30 million in cash and $12 5 million in IDT Class B stock  (Scherf 12-34, PX 460 at 10)

69

intangible assets were worth $630 million

123    Based upon his analysis, Scherf opined that Winstar was insolvent by approximately $1 6 billion on the Transfer Date    The Court agrees

124    Lucent criticizes any reliance upon the actual sale price ultimately paid for Winstar's assets during its bankruptcy    It argues this number represents a distress sale and a price significantly less than Winstar's value on December 7 2000    The sale price, although not the only or even the primary fact upon which Scherf's valuation is based    is relevant    Contrary to Lucent s characterization of the sale of Winstar's assets    the sale was not an auction but rather as a going concern    See  e g    Order Authorizing Sale [of substantially all assets to IDT]  dated December 19, 2001 at M (entry of sale order necessary to provide uninterrupted service to Debtors  customers) [Docket # 1627] Master/Final Execution Copy of Asset Purchase Agreement [Docket # 1629]

### The Income Approach

125    The income approach estimates the value of a company based on its earnings capacity  (PX 460 at 7)    There are two commonly used methods to conduct income approach valuation    The first  capitalized debt free method also called capitalization of earnings, is based on a company's debt free net cash flow for one year or some other discreet period    Winstar never had any debt free cash flow    In fact Winstar  which began its operations in 1996, lost $83 million in that year    The losses steadily increased and by 2000 the loss had grown to $870 million    Thus application of this method mandates a finding of insolvency

126    Under the second method  the discounted cash flow method  future earnings

70

are projected and then discounted to present value, adjusted to reflect the risk that such earnings will not materialize  (PX 460 at 8)  Winstar in fact had prepared projections for a ten (10) year period, until 2009  Because of Winstar's historical performance and the instability of the telecommunications industry, Scherf concluded the Winstar was insolvent using this method  His conclusion is correct  Those projections were speculative at best  They included growth rates significantly in excess of what was projected to be reasonable growth in the telecommunications industry  Moreover while Winstar generally had been able to meet its revenue projections-although the ten year projections through 2009 relied heavily upon equity infusion which may or may not materialize in an unstable market historically it understated its expenses  Finally the balance sheet for December 31, 2000 in actuality differed significantly for what Winstar had projected

    127  Collins ignored the deficiencies inherent in Winstar's projections  instead he accepted them at face value and thus his reliance on them produced a flawed result  Further he used a discounted rate of 16% to reflect the risk to investors at a time when Winstar's debt yield was in the range of 25-30%

    128  But Lucent argues that Scherf ignored contemporaneous cash flow data and future projections (which would be used to perform a valuation based on the discounted cash flow method) when performing a valuation based on the income approach and instead relied upon the capitalized debt free net cash flow method  Lucent is incorrect  The capitalized debt free net cash flow method is supported by valuation treatises and has been adopted by courts  Moreover Scherf did not ignore the discounted cash flow method but rather rejected its use in this case given the unreliability of Winstar's future projections  The

discounted cash flow methodology is simply an unacceptable method to be used in this case

### Amount of Liabilities

129   Absent some unusual circumstances not applicable here, the insolvency test anticipates that liabilities will be valued at their face value   *In re Trans World Airlines, Inc* 134 F 3d 188, 197 (3d Cir 1998)

130   Scherf values those liabilities at $4 8 billion as of December 7, 2000 (Tr 12-14-15, PX 460), Collins did not value them as of that date   (Tr 18-118)   In fact Collins testified that he was unable to value the liabilities as of December 7 2000   (Tr 18-119) He valued the liabilities as of December 31  2000 at $4 321 billion  (Tr 18-118)

131   Based upon the valuation of the assets and liabilities  Winstar was insolvent on December 7 2000  the date of the Transfer

### *Insider Status*

132   Because the Transfer occurred during the period greater than 90 days before the Petition date but less than one year prior to the bankruptcies  the Trustee may only recover on her preference claim if she proves that Lucent was an insider at the time of the Transfer

133   With respect to a corporation  an insider includes a   person in control of the debtor   11 U S C § 101 (31)

134   Some courts have defined control as the creditor dominating the debtor   *In re A Tarricone, Inc* , 286 B R 256  265 (Bankr S D N Y 2002)   Others 'have used terminology such as having a stranglehold  over the debtor, having 'complete

domination of the debtor rendering the debtor a mere instrumentality or alter ego of the

lender or powerless to act independently " *Badger Freightways Inc v Continental III Nat'l*

*Bank & Trust Co Of Chicago (In re Badger Freightways Inc )*, 106 B R 971, 981 82

(Bankr N D III 1989)(internal citations omitted)

135  Both Lucent and the Trustee correctly note that whether a party is or was "in

control of a debtor requires a case by case determination  'The legislative history of §

101(31) indicates that the term applies to  one who has a sufficiently close relationship with

the debtor that his conduct is made subject to closer scrutiny than those dealing at arms

length with the debtor  *Official Committee of Unsecured Creditors v Austin financial*

*services Inc (In re KDI Holdings Inc )* 277 B R 493 511 (Bankr S D N Y 1999) (quoting

S Rep No 989 95th Cong  1st Sess  25 (1978)  reprinted in 1978 U S C C A N  5787

5810, 6269) (legislative history 11 U S C  § 101(31)) (other citations omitted)  "The true

test of insider' status is whether one's dealings with the debtor cannot accurately be

characterized as arms-length  *In re Craig Systems Corporation*  244 B R 529  539 (Bankr

D Mass 2000)  The emphasis is on the nature of the relationship between debtor and the

other person  especially on whether their relationship gave the other person the power or

influence to have a debt owed to it repaid "  *In re Demko*  264 B R  at 408

136  In determining whether a creditor  and particularly a bank  has the requisite
level of control to be an insider  the courts examine whether the creditor had
more ability to assert control than the other creditors  whether the creditor
made management decisions for the debtor  directed work performance  and
directed payment of the debtor's expenses  *ABC Elec Serv Inc  v Rondout
Elec  Inc  (In re ABC Elec Serv Inc )*  190 B R  672 (Bankr M D Fla 1995)
*There must be day-to-day control  rather than some monitoring or exertion
of influence regarding financial transactions in which the creditor has a*

73

direct stake

*In re Armstrong* 231 B R 746 749-50 (Bankr E D Ark 1999)

137 That does not mean, however as Lucent asserts that Lucent must have used its control to obtain the transfer although whether the transfer in question was done under pressure from Lucent is one fact to be considered in making the determination of control *Walsh v Dutil (In re Demko)* 264 B R 404, 408 (Bankr W D Pa 2001) Neither the Bankruptcy Code nor the case law, however require the use of the insider's status as an insider to force the preferential payment to be made The elements of a preference are set forth in Section 547(b) which requires, among other things that the transfer have been made "between ninety days and one year before the date of filing of the petition if such creditor at the time of such transfer was an insider ' 11 U S C § 547(b)(4)(B) There is nothing in the language that requires the causal connection between the control and the preferential transfer that Lucent claims is needed

138 In this case the facts indicate that Lucent controlled many of Winstar's decisions relating to the buildout of the network Lucent forced the "purchase" of its goods well before the equipment was needed and in many instances under the Software Pool Agreement never needed at all Lucent treated Winstar as a captive buyer for Lucent's goods These purchases, especially those under the Software Pool Agreement were just a means for Lucent to inflate its own revenue

139 Lucent argues however that Winstar is complicit in its scheme to inflate revenues For example when Lucent required Winstar employees to sign false bill and hold letters needed for Lucent to book revenue they did so even though Winstar knew that

74

Lucent used the process to deceive its auditors  That Winstar was a participant in Lucent's

scheme does not prove that Winstar was not under Lucent control  In fact, Lucent's ability to

involve Winstar's employees in Lucent duplicity is further evidence of Lucent's control

140  Two former Lucent employees  Deborah Harris and William Plunkett refused to

answer deposition questions beyond providing their names and addresses and instead

asserted their right against self incrimination [49]  The Fifth Amendment does not forbid

adverse inferences against parties to civil actions when they refuse to testify in response to

probative evidence offered against them " Baxter v  Palmigiano  425 U S  308  318  96

S Ct  1551, 47 L Ed 2d 810 (1976)  This Court may and chooses to draw negative adverse

inferences from their testimony  Both were employees of Lucent when the relevant actions

occurred [50]  Although neither is a party to this lawsuit  a fact which Lucent emphasizes to

---

[49]Prior to trial the Trustee sought a ruling that the Court could draw an adverse
interest from Harris' and Plunkett's silence while Lucent disputed that their testimony was
relevant and otherwise corroborated  It also argued that the questions posed to these two
individuals were too specific thus rendering the examinations unfair  The Court granted the
Trustee's motion but noted that it would revisit the issue after hearing the evidence upon
Lucent's request  See Transcript of March 16, 2005 hearing [docket # 322] at 59-62
Having revisited the issue, the Court concludes that its initial ruling was correct for the
reasons set forth herein

[50]There is no dispute that Harris and Plunkett were employed by Lucent during the
time when the events at issue in the specific questions which the Court finds that they
would have answered adversely had they answered the questions honestly  Ms Harris
answered questions during her 2001 deposition and at the time testified she was
employed by Lucent as the Vice President of Sales for the Winstar account beginning in
August 2000  (Harris, Depo Tr 11-34)  She also testified that William Plunkett the Vice
President of Emerging Markets and was a member of Lucent s management team
responsible for the Winstar account (Id )  Mr Plunkett was placed on administrative leave
by Lucent in late November 2000 and was terminated shortly thereafter (Wilson Tr 16-
11)  His termination was a direct result of his involvement in postdating documents relating
to the Software Pool Agreement  (Schacht Tr 21 at 35)  Both Harris and Plunkett

75

show that neither cared whether Lucent succeeds in this litigation " their non-party status does not render admitting their testimony impermissible given the facts of this case   Nor does the fact that neither was employed by Lucent when their testimony was taken   *Red*   Both Harris and Plunkett were parties to the SEC's action (PX 739), both were employed by Lucent during the relevant time frame and the questions they refused to answer related directly to their actions as Lucent employees during this period

141   Before an adverse inference may be drawn from a party s refusal to testify in a civil case  there must be independent corroborative evidence to support the negative inference beyond the invocation of the privilege  *See Baxter*  425 U S  at 318  96 S Ct at 1558  ("the Fifth Amendment does not forbid adverse inferences against parties   when they refuse to testify in response to probative evidence offered against them ')  [L]iability should not be imposed based solely upon the adverse inference " *United States v  Private Sanitation Industry Ass'n*, 899 F  Supp  974, 982 (E D N Y 1994)  aff'd 47 F 3d 1158 (2d Cir )  *cert  denied sub  nom  Ferrante v  United States*, 516 U S  806  116 S Ct  50  133 L Ed 2d 15 (1995)

142   During his deposition Mr  Plunkett was asked a series of questions relating to end of quarter deals  sham bill and hold transactions  the Software Poll Agreement   He asserted his Fifth Amendment privilege in response to each question but had he responded truthfully  his testimony would have added to the substantial evidence against Lucent and indeed would have been devastating to his former employer   Examples of the questions

---

reported to Nina Aversano

asked of this witness are set forth below

Q  Isn t it a fact that in 1999 and 2000 you participated in
transactions between Lucent and Winstar at the end of each
quarter form December 31st 1999 through September 30th,
wherein Winstar purchased substantial quantities of equipment,
software and/or services from Lucent Technologies?

A  On advice of counsel I respectfully decline to answer on the
ground that my answer may incriminate or tend to incriminate
me  ' (Hereinafter referred to as "Fifth Amendment Response")

Q  Isn t it a fact that in December 1999 Winstar purchased over
$96 million worth of goods and services from Lucent?

A  Fifth Amendment Response

Q  Isn't it a fact that this transaction was referred to as an end of
quarter deal?

A  Fifth Amendment Response

Q  Isn t it a fact that certain of the equipment purchased by
Winstar in the December 1999 end of quarter deal was not
delivered to Winstar but was held by Lucent even through the
purchase price was paid by Winstar?

A  Fifth Amendment Response

And isn t it a fact that in connection with the end of quarter deal
and in order to be certain that Lucent could book the revenue

77

Lucent prepared letters which it gave to winstar which it asked

Winstar to sign?

A  Fifth Amendment Response

Q  Isn't it a fact that Winstar did, in fact, sign the letters provided

by Lucent with respect tot he December 1999 end of quarter

deal?

A  Fifth Amendment Response

Q  And isn t it in fact correct that these letters were not true and

correct in all respects?

A  Fifth Amendment Response

Q  Isn t it a fact that these letters falsely stated dates by which

Lucent would install the purchased equipment?

A  Fifth Amendment Response

Q  And isn t it a fact the Winstar did not need the equipment

purchased through these letters immediately but was buying the

equipment earlier to provide Lucent with additional revenue?

A  Fifth Amendment Response

Q  And isn't it a fact that the letters also stated falsely that

Winstar lacked the warehouse space to store equipment?

A  Fifth Amendment Response

Q  Isn t it a fact that some of the equipment purchased by

Winstar in the December 1999 end of quarter deal included

Optronics equipment?

A  Fifth Amendment Response

Q  And isn't it a fact that when your employment with Lucent

terminated in November of 2000 this equipment remained in

Lucent s warehouses?

A  Fifth Amendment Response

(Plunkett, Deposition transcript at p 11  line 25 to p 14  line 23)

143  He was then asked virtually identical questions with respect to March 2000,
June 2000 purchases  and September 2000 end of quarter purchases and again asserted
his Fifth Amendment privilege  (Id  at p 15  Line 9 to p  20, line 25, p  22  line 8 to p 24  line
4)  Similarly when questioned about the Software Pool Agreement  Plunkett refused to
answer  Had he answered truthfully his testimony would support the finding that the
agreement was a sham transaction  it was nothing more than a device to inflate Lucent's
revenues  (Id  at p  24  line 5 to p  26  line 18) [51]

144  Independent evidence shows that Plunkett was involved in the June 2000 end
of quarter deal  See, e g , PX 360 (Ackerman's June 23  2000 email to Kantor) ("He
[Plunkett] wants us to agree to another $53M in purchases for 2Q (that includes $17M of
accelerated pay as you grow $$ for 5ESS's")  Independent evidence also proves he was
involved in the September 2000 end of quarter deal and the Software Pool Agreement

---

[51] Although there is conflicting testimony about the actual value of the goods Winstar
was committed to purchases under the Software Pool Agreement, evidence of the value is
that it totaled somewhere between $20 and $40 million, significantly less than the $135
million Winstar was to pay

79

See e g PX 125 (Plunkett's September 29 2000 letter to Ackerman 'Winstar Agrees [sic] to purchase from Lucent the following $18 852 500 5ESS PAYG ) and PX 127 (Ackerman's September 18 2000 email to Kantor I just spoke with Bill [Plunkett] He informed me that you and Nina had met (dinner?) And you agreed to help them get to the number they need this quarter something around $110M of which we have already spent about $45M There is not much I can give them that we really need, but there are some creative things I can do that can get us close to their number without being totally stupid )

145 Harris was asked virtually the same questions and also invoked her Fifth Amendment privilege She, like Plunkett was involved in the transactions about which she was questioned and the Court finds that had she answered truthfully her testimony would also have been adverse to Lucent Had Plunkett and Harris answered truthfully about the nature of the relationship between the two companies they would have acknowledged Lucent s control over Winstar and lack of arms length relationship between them *Rad Services v Aetna Cas & Surety Co* 808 F 2d 271 280-81 (3d Cir 1986), *quoting Baxter v Palmigiano* 425 U S 308 318 (1976) *See also Baxter* 425 U S 308 *Libutti v U S* 107 F 3d 110 (2d Cir 1997), *Federal Deposit Ins Corp v Fidelity & Deposit Co of Maryland* 45 F 3d 969 (5th Cir 1995) *Davis v The Mut Life Ins Co of New York* 6 F 3d 367 (6th Cir 1993), *cert denied*, 510 U S 1193 (1994) *Bnnk's Inc v The City of New York*, 717 F 2d 700 (2d Cir 1983)

146 Lucent was an insider of Winstar s on December 7 2000, the date of the Transfer

147  Consequently all of the elements of a preference have been satisfied  The payment of the Siemans proceeds was a preference

148  Lucent argues, however, that even if the Transfer was preferential the Trustee may not recover because Lucent gave subsequent new value to Winstar when it continued to loan under the Second Credit Agreement  Although the amount that it claims it gave in new value is an ever-changing figure in this case  the inability of Lucent to fix the amount is irrelevant as it is not entitled to the benefit of the new value defense

149  Lucent bears the burden of establishing new value  11 U S C § 547(g) (the creditor    against whom recovery or avoidance is sought has the burden of proving the non-avoidability of a transfer under subsection (c) of this section)  *Phoenix Restaurant Group  Inc  v  Ajilon Professional Staffing LLC (In re Phoenix Restaurant Group, Inc )* 317 B R  491, 494 (Bankr  M D  Tenn  2004)

150  Lucent's new value defense fails for two reasons  First  to the extent Lucent provided any equipment or software to Winstar after December 7  2000  it did so on a secured basis, as is evidenced by the Security Agreements dated May 9, 2000  and December 22  2000  (DX-32  DX-33) and as admitted by Lucent in its October 11, 2001, secured proof of claim (PX-340) and the escrow fund stipulations  (PX-506, PX-507, PX 508)  Second  even if the additional value were provided on an unsecured basis  Lucent has failed to show that it was provided _after_ the receipt by Lucent of the preferential transfer

151  It is well settled that to support a new value affirmative defense  section 547(c)(4)(A) requires a creditor to establish that  after receiving a preferential payment  the creditor advanced 'new value  to the debtor "not secured by an otherwise unavoidable

81

security interest ' *New York City Shoes  Inc  v  Bentley Int'l  Inc  (In re New York City Shoes, Inc )*, 880 F 2d 679  680 (3d Cir  1989)  Lucent provided only secured value  all Lucent equipment and software sold to Winstar was sold subject to two separate security agreements dated May 9  2000  and December 22, 2000  (DX-32, DX-33),  Lucent's proof of claim (PX-340) alleges a secured claim although it provides no evidence of the value of its collateral  the Trustee and Lucent have entered into three stipulations (PX-506, PX-507, and PX 508) which recognize the validity of Lucent's security interests and provide for distribution to Lucent of the proceeds of the sale of Winstar assets that were subject to Lucent s lien (subject to judgment on the Trustee s equitable subordination claim)

152  For the foregoing reasons the Trustee is awarded judgment in the amount of $188,180,000

## COUNT XI  EQUITABLE SUBORDINATION

153  The Bankruptcy Code invests the Court with authority to subordinate all or part of a claim  under the principles of equitable subordination      11 U S C  § 510(c)  Courts considering equitable subordination follow the *Mobile Steel* test  (1) the claimant must have engaged in some type of inequitable conduct, (2) the misconduct must have resulted in injury to the creditors of the debtor or conferred an unfair advantage on the claimant  and (3) equitable subordination of the claim must not be inconsistent with the Bankruptcy Code  *In re Mobile Steel Co*  563 F 2d 692  700 (5th Cir  1977)  *See also Merrimac Paper Co v  Harrison (In re Merrimac Paper Co )*  420 F 3d 53  58 (1st Cir  2005), *Citicorp Venture Capital  Ltd  v  Committee of Creditors Holding Unsecured Claims*  160 F 3d 982, 986

(3d Cir 1998)

154  When the creditor is an insider, the proof required to prove equitable subordination is not demanding  In such cases, a bankruptcy trustee need only show "material evidence of unfair conduct  *In re N&D Properties, Inc* , 799 F 2d 726, 731 (11th Cir 1986), *see also In re Epic Capital Corp*  *et al*  290 B R  514  524 (Bankr  D  Del 2003), *aff'd*, 307 B R  767 (D  Del  2004)

155  For non-insider claimants, egregious conduct must be established to justify equitable subordination  ' *In re Mid-American Waste Systems, Inc* , 284 B R  53, 70 (Bankr  D  Del  2002) (internal citations omitted)  [The degree of non insider misconduct] has been variously described as  very substantial  misconduct involving  moral turpitude or some breach of duty  or some misrepresentation whereby other creditors were deceived to their damage  or as gross misconduct amounting to fraud  overreaching or spoliation  *In re M  Paolella & Sons, Inc* , 161 B R  107, 119 (Bankr  E D  Pa  1993), citing *In re Osborne* 42 B R  988  996 (W D  Wis 1984)

156  Nevertheless the test is the same  only the standard of proof required differs *Mid-American Waste Systems*  284 B R  at 70 (internal citations omitted)

**Inequitable Conduct**

157  There are three generally recognized categories of misconduct which may constitute inequitable conduct for insiders  (1) fraud  illegality  and breach of fiduciary duties  (2) undercapitalization  or (3) claimant's use of the debtor as a mere instrumentality or alter ego  *Id*

83

158  The same facts underlying the finding that Lucent was an insider of Winstar warrant a finding that Lucent engaged in inequitable conduct by using Winstar as a mere instrumentality to inflate Lucent's own revenues

159  Yet whether Lucent is an insider or not does not affect the outcome of the Court's conclusion that the first prong of the *Mobile Steel* test is satisfied  the facts in this case warrant equitably subordinating Lucent's claim because it was egregious  Lucent repeatedly threatened Winstar with nonpayment after Wireless performed significant services under the subcontract  all in an effort to extract more and more from Winstar  Lucent's captive purchaser  Ultimately  when Lucent's new management regime determined that a refinancing notice  the equivalent of a financial death knell for Winstar  had to be sent  Lucent deliberately held up the refinancing notice to ensure that the Siemans refinancing occurred and new equity was infused into the dying Winstar

### Harm to Winstar's creditors

160  Lucent's conduct resulted in substantial damages to Winstar and ultimately Winstar's creditors, including, apart from the preferential payment itself, the interest paid by Winstar to Lucent on unnecessary Lucent equipment and services purchased by Winstar to generate revenue for Lucent  storage costs, and insurance costs  Winstar sustained additional damages in that the approximate $244 million (on a cost adjusted basis) of Lucent equipment in inventory in warehouses on March 31  2001 was sold in December 2001 for approximately a penny on the dollar compared to its December 7  2000  balance sheet stated value

161  In addition Winstar received $270 million in equity financing on December 7

84

2000 through the issuance of Series H Preferred Stock  The funding came primarily from Welch Carson Anderson & Stowe and Credit Suisse First Boston Private Equity   (DX 701 at 26 and 48)

162  The Debtors and their creditors were harmed by Lucent's deliberate delay in sending the refinancing notice  Lucent intentionally waited until it had received the proceeds of the Siemans refinancing before allowing the public to learn what it already knew  Winstar was in significant financial distress and indeed  as set forth above  was insolvent  Lucent reaped a substantial benefit but at the expense of the Debtors' other creditors

### Consistent with the Bankruptcy Code

163  Subordinating Lucent s claims is not inconsistent with the Bankruptcy Code

164  Consequently Lucent s claim will be subordinated under section 510(c) of the Bankruptcy Code to the claims of *all* creditors  including all unsecured claims which includes the deficiency claim of Siemans  if any, and to the interests of those entities who infused the $270 million of equity in Winstar on December 7  2000  The lien of Lucent is preserved for the benefit of the estate and is transferred to the Trustee in her representative capacity

### LUCENT'S COUNTERCLAIMS

165  Lucent seeks damages from Winstar s estate on the basis of fraud and negligent misrepresentation arising from Winstar s representation implicit in at least four borrowing representations from and after January 18  2001 that it was in compliance with

85

the CAPEX covenant

166   ' Under Delaware law, express choice of law provisions in contracts are generally given effect " *Harper v  Delaware Valley Broadcasters, Inc*  743 F  Supp  1076 (D Del  1990)

167   Lucent must establish each of the following elements  (1) a material misrepresentation or omission of fact  (2) made with knowledge of its falsity  (3) with an intent to defraud, (4) reasonable reliance on the representation  and (5) resulting damages *Schlaifer Nance & Co  v  Estate of Warhol*  119 F 3d 91  98 (2d Cir  1997)  *see also Dallas Aero , Inc  v  CIS Air Corp*  352 F 3d 775  784-85 (2d Cir  2003)  Each must be proved by clear and convincing evidence  *Dallas Aero   Inc  v  CIS Air Corp*  352 F 3d 775, 784-85 (2d Cir  2003)

168   Lucent has not proved that Winstar breached the CAPEX covenant and if it did so  it did so knowingly  Winstar's employees testified that they believed that the company was in compliance with the CAPEX covenant in the first quarter of 2001  To the extent that Winstar was not in compliance with the CAPEX covenant, this "breach  is harmless  Lucent was well aware of Winstar's financial status and some of its employees were even involved in attempting to help Winstar lower its CAPEX in order to comply with the covenant

169   Lucent has not demonstrated  and given the level of its knowledge and involvement cannot demonstrate, that it reasonably relied upon Winstar's representations  Lucent itself knew of Winstar's deteriorating financial condition in November and December

86

2000  Lucent was prepared to issue the refinancing notice as soon as it got the Siemans proceeds  For it now to argue it was duped by the Debtor is disingenuous

170  To establish a claim of negligent misrepresentation, the claimant must prove by a preponderance of the evidence  (1) carelessness in imparting words, (2) upon which others were expected to rely, (3) and upon which others acted or failed to act  (4) to their damage  and (5) the declarant must express the words directly to one to whom it is bound by some relation or owes a special duty of care (which must involve a ' closer degree of trust  than that of an ordinary buyer and seller)  *Dallas Aero  Inc* , 352 F 2d at 788  *see also* *Hydro Investors  Inc  v  Trafalgar Power Inc*  227 F 3d 8  20 (2d Cir 2000)  It must also demonstrate that its reliance on Winstar s purportedly false statements was "reasonable " *Morrissey v  GMC*  21 Fed  Appx  70  73 (2d Cir  2001)        171  As set above  Lucent has not met its burden  It cannot ignore its own knowledge and feign surprise to learn the CAPEX covenant was breached when it was deeply immersed in the financial transactions of Winstar   Therefore judgment will enter for Winstar with respect to Lucent s counterclaims

**CONCLUSION**

For the foregoing reasons, the Court finds that judgment should enter for the Plaintiff

on all counts and counterclaims as set forth above

A separate order of judgment for the Plaintiff will enter

Dated  December 21  2005

Joel B  Rosenthal
United States Bankruptcy Judge

88

ach-jbr TIF

# ROA
# TAB
# 367

Scherf - Direct                    12-33

1    similar to the projections that I looked at   And I believe

2    that we'll be talking about those in a few minutes -- they in

3    my view were overstated and speculative, so the result of that

4    would be that the impairment charge that was recorded would be

5    less than the appropriate impairment charge

6    Q    That's because they accepted the projections as if they

7    were accurate as opposed to challenge them, is that what you're

8    saying?

9    A    That's right, as opposed to evaluating them I would say

10   Q    All right, better word   Now, was the impairment charge

11   that you just testified to known or knowable as of December 7,

12   2000?

13   A    Yes, it was an item that was known -- well, at least

14   knowable

15   Q    And why do you say that?

16   A    Because it was based on projections as of December 11th

17   that were in a presentation   Clearly the facts and

18   circumstances of that were known or knowable and actually

19   should have been known   Somebody had just taken them and added

20   them together 4 days earlier on December 7, 2000

21   Q    So what was your conclusion, if any, as to solvency after

22   considering the impairment charge?

23   A    After considering the impairment charge, I concluded that

24   Winstar was insolvent by in excess of $1 6 billion

25   Q    As of December 7, 2000?

Scherf - Direct                    12-34

1    A    As of December 7th

2    Q    Now, let's talk about the second matter that you say you

3    considered under the asset approach, the sale of substantially

4    all of the assets -- Winstar assets to IDT on December 19,

5    2001   Could you describe that transaction for us?

6    A    Yes, the transaction was a sale of the operating assets in

7    a 363 sale under the Bankruptcy Code   Essentially, the sale

8    had two components, a $42 5 million purchase price, as well as

9    a 5% equity to the Winstar Creditors that also -- it was

10   subsequently sold off in, I guess it would be April of 2002

11   Q    How much was it subsequently sold off for, that 5% equity?

12   A    It was sold off for $14 5 million

13   Q    Now, were any Winstar liabilities assumed by IDT in

14   connection with that sale of substantially all of the Winstar

15   assets?

16   A    It was a -- essentially the sale was a 363 sale, which was

17   a sale free and clear of all liabilities   IDT did retain their

18   right under that agreement to accept certain of the operating

19   leases as part of that consideration if they wanted to cure

20   those leases and acquire them

21   Q    So why did you consider this sale almost a year later to be

22   evidence of value?

23   A    Well, it -- we have at December 31, 2000 $4 7 billion of

24   assets sitting on the balance sheet   Within a year those

25   assets sold for less than 1% of the value of the assets

Scherf - Direct                          12-35

1    That's a clear indication, in my mind it's almost common sense
2    where one looks at the assets at $4 9 billion and says that
3    they can't be worth $4 9 billion a year earlier
4    Q    And -- well, let me ask you this    What about the condition
5    of the market in between December 7, 2000 and December 19,
6    2001?  Do you -- did you consider that in what you were -- did
7    you consider that in looking at the price realized from the IDT
8    sale?
9    A    Yes, when one looks at a subsequent transaction you can't
10   do it in a vacuum, you have to look at what happens between, in
11   this case, December 7, 2000 and December 19, 2001, which would
12   explain why the value of the assets went down    Essentially
13   during that time period the stock market continued to decline
14   and we analyzed that and determined that the effect of that
15   decline would not provide an explanation for the full amount as
16   to why something at $4 9 billion sold for, you know, let's call
17   it $60 million a year later    The decline was not that steep
18   Q    Okay    Before we move on, my colleague thinks that when you
19   testified about the impairment charge that you used the phrase
20   $1 6 million versus $1 6 billion    I thought you said billion,
21   but I certainly want to have the record clear
22   A    Well    if I said million, I apologize to the Court    It was
23   in excess of $1 6 billion
24          THE COURT    I thought you said 1 8 billion
25   A    The impairment charge was 1 8 billion, Your Honor, but when

**ROA**
**TAB**
**371**

Wilson - Direct                    16-22

1          MR  SAUNDERS    Under the heading "Delivery of

2     Services "

3     BY MR  SAUNDERS

4     Q   6 1(a), Mr  Wilson, says, and I quote, "Subject to the

5     transition plan, Lucent shall preform services -- the services

6     ordered by Winstar hereunder "  What's that all about?

7     A   So the services was another area that took quite a bit of

8     discussion with Winstar   Their request coming into the

9     negotiations was that Lucent would assume all of the network

10    build-out services that were typically done by Winstar   During

11    the negotiations, we went back to Winstar and made it clear

12    that Lucent -- we just didn't have the capability to do that,

13    we didn't have core competencies in a lot of the areas that

14    they were discussing, and that we wouldn't be able to commit

15    during this agreement -- or with this agreement that we'd just

16    be willing to do that   It would be both irresponsible and it

17    actually wouldn't result in a quality product for Winstar

18    Q   So they were doing their own network build-out prior to

19    this agreement?

20    A   They were doing -- yeah, they were doing a lot of the

21    network planning, the network engineering, site selections,

22    architectures, capacity planning, the stuff that typically is

23    required, negotiating with the other carriers such as Verizon

24    to be able to facilitate their network on their network, those

25    types of things   Acquiring real estate to put their -- you

Wilson - Direct                    16-23

1      know, to put their roof rights for their radio sites and also

2      real estate to put their switch centers in the cities

3      Q    The -- this sentence refer- to a transition plan    What is

4      or was a transition plan?

5      A    So the concept of the transition plan was since we were not

6      in a position to take o er dav one these responsibilities or

7      these services  the thought would be to put the concept of a

8      transition plan, which basically says, you know, we over the

9      term of the agreement, we would work together with Winstar on

10     how to transition those services and those capabilities to

11     Lucent as Lucent acquired those core competencies and both

12     parties were comfortable that we were able to assume them

13     Q    All right   If you look also at Defendant's Exhibit-28,

14     this time at page A(15) under Section 3 3

15              MR  SAUNDERS   And that is Bates number, Your Honor,

16     7152

17     BY MR  SAUNDERS

18     Q    That paragraph refers to transition planning --

19     A    Correct

20     Q    Can you tell us briefly what is being described in that

21     paragraph

22     A    So with, you know, with 2½ weeks to get the agreement done

23     -- you know, this is a very, very complex endeavor   I mean,

24     there's a lot of tasks, a lot of competencies that have to be

25     acquired to do something in the realm of a network build-out

1    We had a lot of those competencies  We, you know, we had
2    competencies in engineering, we had competencies in installing
3    product, those things we're very comfortable  We had some RF
4    engineering capabilities that we felt we could bring to bear
5    But, you know, in those 2 weeks it was jut too big of a task to
6    try to take on, so the thought was is that we could work
7    together on a transition plan that would then put up
8    milestones, time lines and sit down and work on, you know  when
9    would Lucent be ready to assume those services, when would we
10   develop the competencies and move forward based on some sort of
11   published transition plan between the two companies
12   Q   And did there come a time when you did, in fact, take over
13   some of those services, some of those build-out activities?
14   A   We did some  Ultimately we were doing some at the B sites,
15   those are the sites where the radios were actually at the end-
16   customer location  We were beginning to do some work on the
17   hub sites ultimately  We did some city plans for Dave
18   Ackerman's engineering organization  So we did do some of
19   that  We set up a CTO organization, a network architecture
20   team in Tyson's Corner to support this work
21   Q   Okay  A B site would be a building?
22   A   A B site is actually a Winstar location that would have a
23   radio which transmitted network signals back to their hub and
24   that had other gear there  That was the end point right in
25   front of their customer  Kind of like on customer

Wilson - Direct                    16-25

1       (indiscern )

2   Q   And the hub would be the place where all --

3   A   All those would --

4   Q   -- the signals would be --

5   A   -- come back in

6   Q   -- collected?

7   A   Correct

8   Q   And then connected to the public switch --

9   A   Yes

10  Q   -- network?

11  A   Yes

12  Q   Going back to the transition planning, did Lucent ever

13      develop a transition plan?

14  A   Yes, we did

15  Q   And if you look at Defendant's Exhibit-190

16          (Defendant's Exhibit-190 previously marked for

17      identification)

18  Q   Can you identify that for us?

19  A   Yeah, this is a transmittal email from Bob Lewine, who

20      headed up our group of folks that were putting the transition

21      plan together, to Alan Zendle at Winstar

22  Q   And what is attached to the transmittal memo?

23  A   It's the transition plan for Lucent Resource Integration

24  Q   And that was sent to Winstar?

25  A   Yes, in January of 1998 -- I'm sorry, '99, I believe

Wilson - Direct                16-26

```
 1          THE COURT   So the date on the front of this is wrong?
 2     A   If you look at the bottom, Your Honor, it's actually
 3     accurate   They released that one January 15th -- yeah, it
 4     looks like the date is in error on the title
 5     BY MR  SAUNDERS
 6     Q   It should have been 1999?
 7     A   Yes
 8     Q   Yeah   That's -- because the agreement, the supply
 9     agreement  wasn't even negotiated in '98?
10     A   Correct
11     Q   In January of '98
12     A   Yes, yes
13     Q   If you look at the first page of the transition plan, it
14     says -- just look at the first paragraph   That paragraph
15     refers to Schedule 8  paragraph 3 3(a) of the supply agreement
16     So this is, in fact, is it not -- or is it the transition plan
17     that was prepared in accordance with the supply agreement?
18     A   Yes, it is   And obviously, you know, like I said before,
19     it's very, very complex to transition this work from one to
20     other, so this was kind of a key first step to make that
21     happen
22     Q   All right   So what happened after this was sent to
23     Winstar?
24     A   We sent this over to Alan and we never actually got an
25     official answer back from Winstar, acceptance or decline
```

Wilson - Direct                          16-27

1    Q    Alan, being Alan Zendle --

2    A    Alan Zendle at Winstar

3    Q    -- at Winstar?

4    A    Yes

5    Q    You never heard back from him?

6    A    Never heard back

7    Q    Did you ever hear back from anybody about --

8    A    No, sir

9    Q    -- about the transition plan?

10   A    No

11   Q    Did you continue to make proposals to Winstar to take over

12        more of the network build-out?

13   A    We -- yes, for a variety of different reasons we were

14        always trying to get to a space where -- you know, we were

15        trying to set up a business process to allow us to approach the

16        projects more in a turnkey manner as we went along    We did do

17        some work specifically around the B sites, like I mentioned

18        We did do work on building an integration lab for Winstar,

19        although they went very aggressively and built their own lab

20        capabilities as well    We did do some city plans for and

21        submitted them to both Dave Ackerman and Alan Zendle for review

22        as well

23   Q    Was the transition plan ever agreed to?

24   A    No

25   Q    All right, did there come a time in the end of 1998 when

Wilson - Direct                    16-28

1    you were approached -- you or Lucent was approached by Winstar

2    in connection with something called Winstar provided services?

3    A    Yes

4    Q    And can you tell His Honor when that occurred and what

5    occurred?

6    A    It began actually in the fourth quarter of 1998    Winstar

7    approached us and said for accounting reasons they would like

8    to run a set of Winstar services through our books, so to

9    speak    In other words, they would like us to order those

10   services from them, and they, in return, would send an order to

11   us for those services

12            MR  RATHKOPF    Objection, Your Honor    Can we find out

13   whether this is based on a conversation that this witness had

14   with somebody at Winstar or whether --

15            MR  SAUNDERS    Certainly, Your Honor

16            MR  RATHKOPF    -- what the source of the testimony is?

17            MR  SAUNDERS    Certainly, Your Honor    I'll be happy

18   to do that

19   BY MR  SAUNDERS

20   Q    Can you explain to His Honor how you came to learn that?

21   A    Well, it was in the context of a couple of things    We were

22   working on a very large order that would kind of be a total

23   network build order    And there was discussions around pass

24   through services that are --

25   Q    Were they discussions that you had with Winstar?

Wilson - Direct                                   16-29

1     A    Myself, Chuck Nailor and others, yes, sir

2     Q    And with whom at Winstar?

3     A    Primarily Alan Zendle   Rif Hafar was our main interface,

4     and Dave Ackerman as well

5     Q    Rif Hafar?

6     A    Rif Hafar

7     Q    H-A-F-E-A-R?

8     A    I believe it's one F

9     Q    Or H-A-F-A-R?

10    A    I believe it's one F

11    Q    And those conversations took place wher?

12    A    That would be fourth quarter calendar year   Soon

13    thereafter after the agreement was signed

14    Q    It would be sometime between October and December of 1998?

15    A    Correct

16    Q    And what were you being asked to do?

17    A    Winstar had indicated that they were looking to, for

18    accounting purposes  I guess maybe mainly to capitalize the

19    services stream, to actually incorporate those things in an

20    order from us to them, and then obviously an order from them to

21    us included in some of the network build stuff

22    Q    All right  But they were doing the work?

23    A    They were doing the work, yes  sir

24    Q    All right  what happened with that request?

25    A    Well, in the fourth quarter we weren't able to do that

1     And then there was a lot of discussion between the two

2     companies after January of that year as to how to make this

3     work

4     Q    Well, why did you care?

5     A    Actually, we didn't really -- obviously the only concern we

6     had was actually it turned out to be customer sat issue

7     Q    I m sorry, customer --

8     A    Customer satisfaction issue   I mean, we had no revenue

9     recognition at stake   You know, we could not recognize revenue

10    on pass through services   We actually had a lot of concerns,

11    not just -- there was really no benefit, there was concerns

12    that we had   Certainly you know, running revenue through our

13    books at zero margin, you know, was something we didn't want to

14    do   There was no revenue, there was a cost of actually

15    processing the orders   We had a concern when Winstar began to

16    ask us to finance those services around collateralization of

17    our paper and our loan

18    Q    Were the Winstar people telling you that you had a

19    contractual obligation to do this at that time?

20    A    No

21    Q    They were asking you to do it as an accommodation?

22    A    They were saying you know, since the transition plan was

23    not moving quickly and they had the need to actually capitalize

24    these expenses, they were looking for us to run them through

25    the books

1    Technologies and Winstar Wireless   Who or what was Winstar
2    Wireless?
3    A   Winstar Wireless was the network construction
4    implementation side of Winstar   And it was actually the -- it
5    was one of their subsidiaries
6    Q   Was it a subsidiary of Winstar Communications?
7    A   Yes
8    Q   All right   And so the agreement is not with Winstar, but
9    it's with one of its subsidiaries, right?
10   A   Yes
11   Q   Now, I also notice that the agreement says that its
12   effective date is the fourth day of January, 1999   But this
13   agreement was signed in March
14   A   Yeah
15   Q   Can you explain that?
16   A   Well, the agreement was specifically entered into to
17   facilitate the pass through of the first quarter services
18   performed by Winstar
19   Q   Now, if you look at paragraph 1 1 of the agreement, under
20   the heading "Services," the agreement says "contractor," and
21   that would be Winstar Wireless?
22   A   Yes, yes
23   Q   "Agrees to perform for Lucent the tasks, responsibilities
24   and services described on the attached task specific
25   schedules "  And then it says, "{parentheses} {individually a

1      task order for the services)"   I notice that attached to this

2      exhibit is a letter from you to Mr Hafar dated January 4, 1999

3      A   Yes

4      Q   Is that the task order that is referred to in paragraph 1 1

5      --

6      L   Yes, it is

7      Q   -- of Plaintiff's Exhibit-164?

8      A   Yeah   Task order specifically for work that they had

9      performed in the first quarter of 1999 calendar year

10     Q   Okay   Now, it's dated January 4, 1999, but it was actually

11     signed in March --

12     A   Late March

13     Q   -- 1999?

14     A   Late March, yes

15     Q   All right   The second sentence of paragraph 1 1 of

16     Plaintiff's Exhibit-164 says, (quote)  The parties may enter

17     into future task orders to which the parties may agree from

18     time to time with each task order to be consecutively numbered

19     and attached hereto "  Do you see that?

20     A   Yes

21     Q   Were there ever any future task orders?

22     A   No

23     Q   Why not?

24     A   We never --

25           MR  RATHKOPF   Objection, Your Honor

1          THE COURT   Basis?

2          MR RATHKOPF   When he says "Why not," does this

3    witness have a foundation to answer the question?

4          THE COURT   Ask it in a different fashion, Mr

5    Saunders

6    BY MR SAUNDERS

7    Q   Did --

8          MR SAUNDERS   Well  let me try it this way, Your

9    Honor

10   BY MR SAUNDERS

11   Q   After -- let me back up   After this agreement was signed

12   in March, did there come a time when there was, in fact, a pass

13   through of services with Winstar?

14   A   Yes

15   Q   And how exactly did that happen?

16   A   That typically would be Winstar informing us through Joe

17   Dwyer primarily in future quarters the need to again capitalize

18   services in a quarter   And we would be told an amount a the

19   end of the quarter and that was typically just a straight

20   purchase order from Winstar to Lucent, and then a purchase

21   order from Lucent to Winstar with a general dollar amount

22   associated with it

23   Q   In the same amount?

24   A   The same amount, yes, sir

25   Q   So there was a purchase order from Winstar to Lucent, and

Wilson - Direct                    16-45

1    then a purchase order from Lucent to Winstar Wireless --

2    A    Yes

3    Q    -- in the same amount --

4    A    The same amount

5    Q    -- on the same day?

6    A    Typically the same day, yes sir

7    Q    All right   Now, you just told us a moment ago that there

8    were never any task orders after that   Did you ever prepare

9    any task orders --

10   A    No --

11   Q    -- for Winstar Wireless --

12   A    No

13   Q    -- after the date on which Plaintiff's Exhibit-164 was

14   signed?

15   A    No

16   Q    Why not?

17   A    Well, typically twofold   This agreement -- our view was

18   this agreement was to cover the first quarter requirement, that

19   specific task order   Second of all --

20   Q    I'm sorry, the first quarter of 1999?

21   A    Of 1999   The second item is is that, you know, the

22   assumption was if we were going to put a task order on Wintar,

23   there would be an actual need for the work to be done   And we

24   were never -- we never had a transaction with Winstar in front

25   of this, in front of the work that was done that would actually

1    cause us to issue a task order to Winstar to supplement what we

2    agreed to do for Winstar

3    Q    And you say this was just done to cover the first quarter

4    of 1999?

5    A    This was done --

6    Q    Why is that?

7    A    -- specifically for the first quarter of 1999

8    Q    All right   So paragraph 1 2 of this agreement, which

9    describes what the task order should be  that was never done in

10   the future?

11   A    No, it was not

12   Q    All right  sir, now after this agreement was signed and

13   after the first pass through was done, what happened next?

14   A    You know, we were trying to get to a structure between us

15   and Winstar that went back to the original premise, which was

16   let's get together on the tasks that needs to be done, let's

17   look at the turnkey approach  So we  you know, went back and

18   said let's try to put together a turnkey proposal and structure

19   around the work that had to get done   Let's identify that, let

20   Lucent price that out, and then again, divide the sub-tasks

21   between the two companies as to what work needed to be

22   performed and get ahead of it so that, you know, we could

23   actually then have some logic as to how we did these services

24   Q    Let me make sure the record is clear   With respect to

25   Plaintiff s Exhibit-164, the contract --

1    the services pass through?

2    A    Yes

3    Q    All right

4    A    She says, "I can't agree to the Q2 request "

5    Q    And once again, the top email is an email from Mr  Kantor

6    to some people on his staff  I presume, saying that  This may

7    or may not be consistent with my discussions with Nina and we

8    need to have a meeting, the sooner the better "  Do you see

9    that?

10   A    Yes, I do

11   Q    What actually happened as a result of this exchange of

12   these emails and these meetings?

13   A    We actually -- there was a large pressure from Winstar to

14   go ahead and do it   They felt like it would have implications

15   on their earnings report since they were capitalizing these

16   services last quarter, and had it not happened this quarter it

17   would reflect badly on their announcement   And in the end, we

18   agreed to do it for that quarter with the agreement from

19   Winstar that we would pursue a business arrangement structure

20   around a turnkey approach to the projects and the network

21   implementation that would then, again, well define the tasks

22   for each company to perform  orders up front from Winstar to

23   Lucent, Lucent then going through those task lists and ordering

24   back from Winstar what we could not perform

25   Q    So you say do it one more time, you're referring to the

1      pass through?

2      A    We agreed to receive an order from Winstar for their

3      services that they performed and then subcontract back to

4      Winstar for those services

5      Q    Back to Winstar Wireless?

6      A    Back to Winstar Wireless for those services

7      Q    And then now were those financed?

8      A    I believe we allowed them to take it from the credit

9      facility as non-Lucent content

10     Q    You allowed Winstar to borrow --

11     A    To draw down the credit facility --

12     Q    -- under the --

13     A    -- to pay for those services

14     Q    -- credit facility to pay for those services?

15     A    Yes

16     Q    You weren't paying?

17     A    We weren't paying for those services

18     Q    All right   Was that done -- the second time, was that done

19     pursuant to the agreement that we saw earlier?

20     A    No   It was done based on --

21     Q    That was Plaintiff's --

22     A    -- the orders --

23     Q    -- Exhibit-164

24     A    It was done based on the order we accepted from Winstar for

25     those services   And --

1    Q    You just exchanged the purchase orders?

2    A    When we got the order from Winstar, we accepted that order,

3    and then we immediately turned back and sent an order to

4    Winstar to perform those services --

5    Q    To Winstar Wireless?

6    A    -- to Winstar Wireless for those services

7    Q    And then Winstar borrowed the amount of money?

8    A    From the credit facility --

9    Q    From the credit facility?

10    A    -- to pay for the invoice from us, yes

11    Q    All right    So that was done a second time at the end of

12    the second calendar quarter of 1999?

13    A    Correct

14    Q    Now, you said that you wanted to try to get -- I think you

15    said that you wanted to try to get the arrangement more on a

16    different footing    Did you take any actions or prepare any

17    documentation in that regard at that time?

18    A    Yes    In the following quarter we prepared a good bit of

19    work around proposals on turnkey where Lucent would be the

20    turnkey project manager and implementor for a lot of the pieces

21    of their network

22    Q    Why did Lucent want to do that?

23    A    I think there were two reasons    One is we would have a

24    structure around how we would perform the services between the

25    two companies    But more importantly it was a great opportunity

Wilson - Direct                    16-57

1    for us to get into new business, right? I mean, if we actually

2    got the B site build-out turrkey project, for example, we could

3    then build businesses within Lucent core competencies to take

4    pieces of that work over from Winstar, which would be more

5    revenue for us and actually new lines of business

6    Q    All right   Would you look at Defendant's Exhibit-168?

7         (Defendant's Exhibit-168 previously marked for

8    identification)

9    Q    That appears to be an email with an attached file and

10   there's an attachment to it   Can you tell us what that is?

11   A    Yeah   This is a strawman proposal back to Winstar on how

12   we would facilitate this aporcach to turnkey services

13   Q    And did you send that proposal to Winstar on or about

14   August the 5th, 1999?

15   A    Yes, I did

16   Q    And without going through the entire proposal line by line,

17   can you tell us in sum what this proposal was proposing?

18   A    It was proposing that we would actually approach the major

19   pieces of the network build in, like I said before, a turnkey

20   manner, which means Winstar would submit an order to Lucent for

21   an entire hub site build-out, an entire B site build-out   We

22   would then take that and we would then look at the third party

23   vendor equipment, we would order that out, we could be the

24   prime contractor on those approaches   And then what we would

25   do is we would then sub-task out what work Lucent would

Wilson - Direct                        16-58

1    perform, what services and products Lucent would perform under

2    that turnkey, and then go back to Winstar for those services

3    that we could not perform as part of a turnkey effort

4    Q    What ever happened with this proposal?

5    A    We never made real traction   Like I said, we made some

6    traction in some areas --

7    Q    Making traction meaning what?

8    A    It was never implemented for the majority of the network

9    build-out

10   Q    Did you get a response to this from Winstar?

11   A    We had several meetings based on this around looking at

12   specifics and, you know  trying to get our hands around how

13   would we do things like turnkey on B site, stuff like that

14   But we never actually did a wholesale conversion where Winstar

15   was ordering from Lucent up front for the network

16   implementation

17   Q    Why not?

18   A    I actually -- it was very complex   A lot of moving pieces,

19   very difficult   There was pricing issues from Winstar's

20   perspective as to how much we could charge and how cheaply we

21   could do it   And I think the complexity of moving a lot of the

22   Winstar individuals over to Lucent wasn't lost on Winstar or

23   Lucent

24   Q    I'm sorry, moving a lot of the Winstar individuals over to

25   Lucent, what does that mean?

Wilson - Direct                    16-59

1    A    Ultimately, the more tasks Winstar would -- I mean Lucent

2    would take, some of the resources we would use to implement

3    those services might actually be transferring people from

4    Winstar over to Lucent

5    Q    You mean employees?

6    A    Employees

7    Q    Winstar employees would then become Lucent employees?

8    A    Correct

9    Q    Did that ever happen?

10   A    No

11   Q    Do you know why not?

12   A    We could never get traction with Winstar on how to make

13   that happen

14   Q    Getting traction meaning you could never get agreement?

15   A    We could never even get --

16            MR  RATHKOPF   Objection, Your Honor

17            MR  SAUNDERS   I'm just trying to understand -- the

18   word traction is not a word that I use in my vocabulary

19            THE COURT   Sustained   Let the witness answer the

20   question   One question at a time   Let the witness answer

21   By MR  SAUNDERS

22   Q    When you say you did not achieve traction with Winstar on

23   that, what do you mean by traction?

24   A    We were never able to get, in a complete fashion, an

25   approach where Winstar would actually look to Lucent to be the

1    turnkey provider for the network implementation   We were never

2    able to get to an area where we would get up front orders for

3    Lucent for pieces of their network build that we then could

4    sub-task out to both ourselves, third party, and to Winstar to

5    provide the required services and equipment to build the

6    network

7    Q    Did you receive any subsequent requests from Winstar to do

8    the pass through?

9    A    Yes

10    Q    Do you know when those requests came?

11    A    We knew there was going to be a pass through at the end of

12    third quarter calendar that we both anticipated, and we agreed

13    to do that because we were thinking this turnkey approach would

14    take at least 'til October to get implemented

15              MR  RATHKOPF   Objection   Can we just know again

16    whether the we is the imperial we or Mr  Wilson?

17              MR  SAUNDERS   Sure

18    BY MR  SAUNDERS

19    Q    Mr  Wilson, when you say we, you have to explain who you

20    mean by we

21    A    Well, if you notice in my note to Rif, we said we'd have to

22    do the pass through at the end of quarter routine one more

23    time   That was referring to the services pass through that was

24    anticipated for 3Q

25    Q    And when you said we were anticipating work on the --

1     A    That would be I and my team that, yeah --

2     Q    -- you and your team?

3     A    Myself and the team that were putting together the whole

4     turnkey proposals

5     Q    All right   And is that why the pass through was done in

6     the third in 1t?

7     A    In+ pa s through as -- yeah, e agreed one more time to do

8     the pass through because e thought it was going to take time

9     to get the turnkey approach in place so we wouldn't have to do

10    this anymore

11    Q    And was that done pursuant to the agreement that is

12    Plaintiff's Exhibit-164?

13    A    I m sorry --

14          MR  RATHKOPF   Objection to the form   Is he calling

15    for a legal conclusion?

16          MR  SAUNDERS   No, Your Honor

17    A    No, this was not done in -- under that agreement   It was

18    done under the original services agreement, this work would be

19    performed

20    BY MR  SAUNDERS

21    Q    That the  or  would be performed?

22    A    Yes   And the end of quarter transaction was not done under

23    the 164 exhibit

24    Q    Right   Well, why did you agree to do the -- why did you

25    agree to do the pass through one more time in the third quarter

Wilson - Direct                      16-62

1      of 1999?

2      A    Because of the time it was going to take to implement the

3      turnkey approach

4      Q    All right   Now  the turnkey approach, I take it, never did

5      get implemented, right?

6      A    We nial -- primarily  ro   to did i a c some trials going on

7      when I left the account around the B sites and some of the hub

8      sites

9      Q    All right   Did there come a time when there was yet

10     another request from Winstar to do the pass through?

11     A    Yes

12     Q    Ana would you look at Defendant's Exhibit-214

13         (Defendant's Exhibit-214 previously marked for

14     identification)

15     Q    Look at the first paragraph of the bottom email from Ms

16     DiRoma to you and a number of other people

17     A    Yes

18     Q    Can you tell us what that's about?

19     A    This again -- we found ourselves at the end of December

20     still not making significant headway on the turnkey approach

21     Winstar approached us one more time and we agreed to do it,

22     always with the assumption that we ultimately would get to the

23     turnkey model between the two companies

24     Q    And was that done pursuant to Plaintiff's Exhibit-164?

25     A    No, it was not

1      Q    All right   Why was this done?

2      A    This was done because we consistently had pressure from

3      Winstar that this was important to their earnings announcement

4      and that they were halfway through this and they couldn't go

5      back and not have this occur during the quarter   And, you

6      no   re al d,s nqreec  , do this  itl tle intent that  e ould

7      always get to tnis turnkey approach ultimately to satisfy this

8      issue

9      Q    Was Lucent paying for the build-out of the Winstar network?

10     A    We were not paying for -- we vere not responsible or paying

11     for the build-out of the network, no

12     Q    And do you know how those services were financed in the

13     fourth calendar quarter 1999?

14     A    I believe they were financed through our credit facility

15     Q    All right   By Winstar?

16     A    By Winstar

17     O    All right

18              MR   SAUNDERS   Your Honor, I'm moving to a different

19     topic

20     BY MR   SAUNDERS

21     Q    Mr  Wilson  I'd like to ask you some questions about the

22     sale of optical equipment, optical networking equipment, to

23     Winstar   And before I do that, perhaps you could take 15

24     seconds and explain to us again what optical networking

25     equipment is

1    Communications so they had that set up and now they were

2    looking to what we call light up or actually put the

3    electronics at the end of the network   They had a pretty

4    sophisticated evaluation lab there in Tyson's Corner, and they

5    had been looking at Sycamore   And I was told they were leaning

6    that way

7    Q    Now, did there come a time when you made a proposal to do

8    that work on a turnkey basis to Winstar?

9    A    Yes, when I heard this I asked Dave Ackerman if he could

10   take another look at us and could we go in with some

11   enticements and some movement primarily on price in the way we

12   approached the project to win Winstar's business

13   Q    Would you look at Defendant's Exhibit-185 please

14        (Defendant's Exhibit-185 previously marked for

15   identification)

16   Q    Is that the turnkey proposal that you just referred to a

17   moment ago?

18   A    Yes, it actually -- a piece of this is the optical network

19   proposal

20   Q    Right   And again, without going in detail in this

21   proposal, what's the substance of this proposal?

22   A    Well we actually -- we had won, by meeting Nortel price,

23   the New York to D C  route   We were in the middle of putting a

24   route between D C  and Houston and we actually came off

25   somewhere around 30% of those price points to be competitive

Wilson - Direct                    16-70

1     with Sycamore at that time   We also agreed to put a very large

2     and significant program management team in place to support the

3     implementation of the long-haul network for Winstar

4         Q    So did Winstar accept this proposal as you wrote it?

5         A    Winstar accepted the price proposal, yes

6         Q    The price proposal --

7         A    And they actually -- we actually ended up winning the

8     optical long-haul (indiscern )

9         Q    Did you have to negotiate on price?

10        A    Very much so

11        Q    And could you tell His Honor what those negotiations

12    consisted of?

13        A    Well, like I said, we basically -- you know, we had a set

14    price with Winstar for the current business we were doing   We

15    had to take a reduction of somewhere around 30% on our pricing

16    on the product itself to win the business to get within

17    striking distance of Sycamore   And at the end of the deal, we

18    were actually asked to purchase some services from Winstar as

19    well in order to do the deal

20        Q    All right   So you had to reduce your prices 30% in order

21    to win the deal?

22        A    And provide a significant amount of program management

23    support as well

24        Q    And then you just said a moment ago that you had to buy

25    some services or something from Winstar?

Wilson - Direct                          16-71

1    A    Yes, yes

2    Q    In order to get the deal?

3    A    It was linked to the deal, yes

4    Q    What was that about?

5    A    Well, at the time, Winstar felt like Lucent, as being a

6         er, large supplier of services and goods to Winstar, should

7         also be a large consumer and partner in them selling their

8         services to both my internal CIO organization for our internal

9         use  plus also helping them sell out within the marketplace

10        their services  So one of the prerequisites for winning this

11        deal was to take a certain portion of those services as part of

12        this agreement

13   Q    Did you need those services?

14   A    Not the full quantity of what we actually took, no

15   Q    Why did you take them?

16   A    Well, we needed to win the business  You know, this was an

17        important product to us  It was a very large amount of revenue

18        for us and our product, and it was a key piece of the Winstar

19        network that we wanted to be a part of

20   Q    Do you know somebody named Bob McGuire?

21   A    Yes

22   Q    Who was he?

23   A    Bob was on the Winstar sales team actually serving Lucent

24        technologies  We were one of his customers as he sold Winstar

25        services

Wilson - Direct                16-72

1    Q    He worked for Winstar?

2    A    He worked for Winstar

3    Q    And he sold Winstar services?

4    A    He sold Winstar services

5    Q    What kind of services?

6    A    Typically one, were selling a lot of different kinds of

7    services    They were selling retail services, basically phone

8    access, cial tone, long distance services    They were selling

9    what we call access services  which were -- you know, they had

10   the ability to connect your building or your company to another

11   carrier  And they also had long-haul services, which would be

12   higher data rates across very long pieces of the network

13   between their cities

14   Q    Would you look at Defendant's Exhibit-201 please

15        (Defendant's Exhibit-201 previously marked for

16   identification)

17   Q    This appears to be an email from you to Mr  Ackerman   I

18   take it he is at Winstar?

19   A    Yes

20   Q    Dated December 17, 1999  And in that email, in the third

21   paragraph you say   I need your help   The good news is I

22   believe in working with your team that we are within 10% of the

23   other vendor's 80 Lamda System "  What's that a reference to?

24   A    Well, this was in reference to the price action that we

25   took in order to secure this business from Winstar and the

1    other vendor -- Lamda is the number of light rails you can

2    actually put on one glass fiber  And the 80 Lamda system is

3    referencing the capacity of the system we were talking about

4    Q    And the next sentence says, 'The other piece of good news

5    is that we have convinced our CIO folks to take the radio links

6    that Bob McGuire asked us to take in advance $10 million

7    A    Yes

8    Q    What's that --

9    A    That is in reference to the services that Bob asked us to

10   purchase end quarter his part of the optical transaction in

11   order to win business

12   Q    The CI -- I'm sorry  The CIO folks?

13   A    CIO would be the folks that were in charge of my --

14   Lucent's internal communications network  The folks that, you

15   know, worked for Lucent (indiscern ), contracted out capacity

16   and telecommunications needs with other vendors

17   Q    All right  Now, did there come a time when Lucent also

18   purchased equipment from Winstar?

19   A    Actually, equipment was imbedded in the service because a

20   lot of this service was based on radio links and you had to

21   have the radio  So yes  there was equipment involved with

22   every one of these purchases around the access purchases

23   Q    So you purchased radios from Winstar?

24   A    Radios and the associated service with the radio

25   Q    Why did you do that?

Wilson - Direct                    16-74

1     A    In order to gain business with Winstar

2     Q    Did you need the radios?

3     A    We needed a very small portion of the radios for our

4     internal network

5     Q    Did you need the other radios that you took?

6     A    No

7     Q    What ultimately happened with the radios?

8     A    We ended up writing them off

9     Q    Did you try to sell them?

10    A    Yes  we did

11    Q    Successfully?

12    A    No  no   The -- one of the approaches we had was to use a

13    certain amount of the service internally for our own needs

14    The other plan we had was to try to take the services and

15    capacity out to some of our other customer base, primarily the

16    ultimate carriers that were looking for access into their

17    customers   And the radio (indiscern ) would be one way to

18    provide that so we thought we might have had a market at one

19    point to try to offload this capacity

20    Q    Now, did there come a time when the people at Winstar told

21    you that there were delays being encountered in building out

22    the route from New York to Washington  D C ?

23    A    Yes, yes we were informed of that

24    Q    Who told you that?

25    A    Dave Ackerman   He was head of their engineering

Wilson - Direct                          16-88

1   A   I was responsible for Winstar through the end of March of
2   2000
3   Q   Right   Well, what ultimately happened with these
4   negotiations?  What did they result in?
5   A   It resulted in Winstar committing to utilize Lucent for
6   their technology platform for this new line of access business
7   It resulted in an order in the first quarter calendar year 2000
8   for a significant amount of equipment, especially for the
9   access deployment   And it resulted in us purchasing I believe
10  it was $35 million of services from Winstar
11  Q   Did you need those services?
12  A   We did not need those services at the time, no
13  Q   All right   Did there come a time when you received a large
14  purchase order from Winstar?
15  A   Yes, as part of the agreement, they produced for Lucent a
16  purchase order that reflected their requirements for equipment
17  for their access deployment plan
18  Q   Do you know how large that purchase order was?
19  A   It was in the range of hundreds of millions of dollars, but
20  there was not the agreement to ship the equipment in quarter
21  except for a small fraction of the access requirements
22  Q   We've heard references earlier in this trial to a purchase
23  order for $133 million worth of Lucent equipment
24  A   Yes   That was --
25  Q   Do you recall receiving a purchase order in that amount

1       from Winstar?

2       A    Yes, it was associated with what we called a Max 20

3       product, which was the access product, as well as the p-sacks

4       product which was an ATM piece of equipment that would do

5       traffic aggregation back into the network   So it would take

6       multiple streams of traffic  aggregate it  pack it tightly and

7       efficiently run it back to the core locations

8       Q    The Max 20 was a DSLAM?

9       A    The Max 20 was our small DSLAM product

10      Q    A DSLAM stands for what?

11      A    Digital subscriber line access module

12      Q    All right

13      A    It was the actual platform that provided the DSL service to

14      the end customer

15      Q    Now even though you received this purchase order for $133

16      million -- and this was in the first quarter of 2000?

17      A    This was in the --

18      Q    First calendar quarter?

19      A    This was in the first quarter of 2000, yes

20      Q    Did you actually ship that amount of product to Winstar?

21      A    We shipped minimum Max 20s   They weren't ready to deploy

22      to Max 20s at that point in time, but we did ship a significant

23      amount of p-sacks

24      Q    Of the $133 million in that purchase order, do you know

25      approximately how much you actually shipped to Winstar?

1   A    It was somewhere less than $20 million, somewhere in the

2   teens

3   Q    Well, why -- if the purchase order was for $133 million

4   worth of equipment, why did you only ship less than $20 million

5   of equipment to Winstar?

6   A    Because Winstar was not ready to deploy the DSL equipment

7   at that time    They weren't far enough in the deployment plans

8   to ship

9   Q    So you didn't ship it to them, and they didn't pay for it?

10  A    Correct

11  Q    If you would look at Defendant's Exhibit-26, and in

12  particular, let me direct your attention to the page with the

13  Bates #228416   Now, Mr Wilson, I appreciate that this

14  document was dated in January 26th, 2001   I take it you were

15  no longer on the Winstar account --

16      (Defendant's Exhibit-26 previously marked for

17  identification)

18  A    I was no longer on the account at that time

19  Q    At that time   And I have no reason to believe that you

20  ever saw this document in connection with your work at Lucent

21  But I wanna ask you just one question about one entry on page

22  8416 in the middle of the left-hand column   where it says

23  Winstar POs

24  A    Yes

25  Q    And then it says, underneath that, there's an entry for Q2?

Wilson - Direct                    16-91

1    A    Right

2    Q    Right   I take it Q2 would be the second calendar -- I

3    guess this would be probably the Lucent's fiscal --

4    A    This would be --

5    Q    -- second quarter

6    A    - this wuld be our fiscal Q2  which would be the first

7    calendar cuarter of 2000

8    Q    Right   And you were still responsible for the Winstar --

9    A    I was responsible --

10   Q    -- relationship

11   A    -- for that, for Winstar relationship in that quarter, yes

12   Q    All right   That box that we just highlighted on the screen

13   says $327 million, 834,358   I take it -- withdrawn   Can you

14   just tell us what was being referred to in the box under that

15   number   What's that all about?

16   A    Well  that was the PO for the access project that Winstar

17   had given us as a commitment that they were gonra utilize us

18   for that deployment   So in return for doing the aggressive

19   risk share pricing on the product set, as well as the fact that

20   we purchased $35 million of their services end cuarter, we had

21   procured the access business   And that was an order for their

22   project, so to speak

23   Q    So you thought you were gonna get all of that business?

24   A    So we took that as a commitment that, yes, we had won their

25   business and they were gonna utilize our technology for the

1    deployment

2    Q   Did you in fact get the business?

3    A   We did not get the Max 20 business   They were never

4    ordered

5    Q   All right

6    A   The p-sacks for the aggregation function were ordered

7    because they were still required by Winstar

8    Q   P-sacks 2300 is what?

9    A   I'm sorry  yeah, that's the ATM aggregation device that I

10   talked about that's further back in their network that does

11   facility grooming

12   Q   What --

13        MR  SAUNDERS   We need to do one more acronym, Your

14   Honor

15   BY MR  SAUNDERS

16   Q   ATM is asynchronous transfer mode?

17   A   Yeah   It's a standard format on how to package data within

18   a transmission stream   And it's a standard in the industry

19   that --

20        THE COURT   Is it important for me to know for this

21   case?

22        MR  SAUNDERS   No, Your Honor --

23        THE COURT   Thank you

24        MR  SAUNDERS   I just thought you might like to know

25   what an ATM was   It's --

Wilson - Direct                    16-93

1          THE COURT    I can live without the knowledge, let's

2      move on

3              MR  SAUNDERS    It's not where you get --

4      A    I can understand

5              MR  SAUNDERS    -- your cash on weekends

6      BY MR  SAUNDERS

7      Q    So point is  that large purchase order for $27 million you

8      in fact only got $1 million of the business and only shipped

9      $19 million worth of product to Winstar, is that right?

10     A    Correct  For the access project, that's correct

11     Q    All right, if you look very briefly at Defendant's Exhibit-

12     260   The email at the bottom of the page from Ms  DiRoma, if

13     I'm -- from Vicky Palamour to Jill DiRoma   Who was Vicky

14     Palamour?

15         (Defendant's Exhibit-260 previously marked for

16     identification)

17     A    Vicky was my admin  assistant at the time

18     Q    Okay   So are you the real author of this, do you know?

19     A    Yes, I am

20     Q    And what's that all about?

21     A    This was when we agreed to do the $35 million purchases of

22     services without  real term demand  for them or a way to resell

23     them   This is a note to our CFO organization explaining why we

24     did the transaction and why it was of strategic importance for

25     Lucent to do that transaction

1    Q    Strategic importance meaning what, sir?

2    A    To procure their access business, which we thought was

3    about a $400 million spend over 3 years that we projected

4    Winstar was gonna spend on access

5    Q    All right  Now at the top of the page, there's an email

6    from Mr  Manzi to you

7    A    Yes

8    Q    Who is Mr  Manzi?

9    A    Frank was in our business management or our operations --

10   financial operations organization at Lucent

11   Q    And he says to you in part  'I need to be kept informed of

12   how this $35 million asset will be moving off our books

13   What's that about?

14   A    Well, there was certainly a lot of consternation because

15   this now became an asset on Lucent's books and  you know, I was

16   being held personally responsible to make sure that we somehow

17   got it off the books by selling it to other customers at the

18   time

19   Q    Well  what did you ultimately do?

20   A    We ultimately found no market for the equipment or the

21   services

22   Q    Found a market?

23   A    No market

24   Q    No market

25   A    No market

# ROA
# TAB
# 374

Keefe - Direct                    19-62

1   Q   And if there were issues that would have to involve the

2   attention of senior management at Lucent with respect to the

3   terms of that agreement, would you provide advice to Lucent

4   executives regarding its terms?

5   A   Yes, I would

6           MR  KING   Your Honor, again, could we have a little

7   less leading in his questions?

8           THE COURT   Good point   Go ahead   Of course, there's

9   a fine line between leading and efficiency

10          MR  KING   I understand, Your Honor   That's why I

11  hadn't stood up earlier

12  BY MR  PASKIN

13  Q   Now, a few minutes ago, we walked through a few of the

14  principal terms of the first credit agreement   I'd like to do

15  the same with the second credit agreement   Could you tell me

16  what was the amount of the loan that Lucent extended to Winstar

17  in the second credit agreement?

18  A   Sure   The second credit agreement was also for a total of

19  $2 billion   But the total exposure that Lucent could have at

20  any one time was $1 billion   Now, there were a lot of other

21  differences as well   In the first credit agreement, Lucent had

22  the benefit of guarantees from various Winstar subsidiaries,

23  including some of the operating subsidiaries   In the second

24  credit agreement, Lucent had a guarantee from the Winstar

25  parent, but then the only other obligor with the borrowers were

Keefe - Direct                    19-63

1    really special purpose, limited purpose subsidiaries of Winstar
2    whose purpose was to basically borrow money and hold the assets
3    that were being purchased with the loans  In addition, under
4    the second credit agreement, Lucent only had loans on the
5    specific equipment that it was financing  It didn't have liens
6    or collateral on any other Winstar assets, or any other Winstar
7    entities  And there were no guarantees from any of the other
8    Winstar entities or the operating entities of Winstar
9    Q    My next question was gonna be how did the collateral
10   position under the second credit agreement differ from under
11   the first  You may have just answered that question, but if
12   there's anything to elaborate, please do
13   A    Well, the collateral position under the second credit
14   agreement was much less advantageous to Lucent than it was
15   under the first credit agreement because, I mean  having -- you
16   know, we only had liens on against specific assets that we were
17   financing rather than the general assets of Winstar itself
18   Q    And then with respect to Lucent's seniority among the
19   hierarchy of Winstar's Creditors, could you tell me what
20   Lucent's position was under the second credit agreement?
21   A    I mean, we were, in effect, structurally subordinated
22   because a lot of Winstar's operating assets were in
23   subsidiaries that were not guarantors of Lucent's loans  And
24   the banks had the advantage of either -- those subsidiaries
25   were either the borrower or the guarantors of the bank  There

Keefe - Direct                    19-64

1    was also bank credit agreement at that time  So the banks had

2    the benefit of that collateral and because Winstar did not have

3    any claims under any of these other operating subsidiaries,

4    Lucent was structurally subordinated as well for the general

5    Creditors of these other Winstar subsidiaries

6    Q   So we've just talked through some of the general principal

7    terms of the two credit agreements  In terms of overall

8    exposure to risk, how did Lucent's position under the second

9    credit agreement compare to under the first credit agreement?

10   A   As far --

11            THE COURT  Are you asking his opinion?

12            MR  PASKIN   I'm asking him based on his work on both

13   credit agreements and working with them on a daily basis as

14   counsel for Lucent

15            THE COURT  Okay

16            MR  KING   Your Honor -- never mind, go ahead

17   A   Lucent had much less -- fewer advantages and was much -- I

18   say riskier from a collateral and guarantee standpoint under

19   the second credit agreement than the first credit agreement

20   because of the absence of guarantees from the various other

21   Winstar operating subsidiaries  And also under the second

22   credit agreement  the lack of collateral of the general Winstar

23   assets

24   BY MR  PASKIN

25   Q   Then do you have an understanding as to why Lucent entered

Keefe - Direct                    19-73

1    necessarily privileged

2              THE COURT   Well, that's true

3              MR  PASKIN   If it's just a question of understanding

4    the facts of what's happening in a negotiation and apprising

5    himself of those facts, which he may need at some subsequent

6    point in time, then that isn't necessarily privileged   And I'm

7    only asking him about the facts of what happened in these

8    negotiations

9              THE COURT   The facts of what happened in the

10   negotiations in the room or the fact -- or what he was told by

11   the Lucent people outside the room?

12             MR  PASKIN   What I wanted to do was to have him

13   explain what the issues are that are being discussed and

14   whether or not Lucent was able to obtain them in the course of

15   the negotiations   It's as simple as that

16             THE COURT   Well, that may be what you're trying, I'm

17   not sure it's as simple -- simple at all

18             MR  PASKIN   I was gonna say my question was gonna be

19   as simple as that

20             THE COURT   Well, I'll let you go a little bit, but

21   I'm not there yet

22             MR  PASKIN   Thank you, Your Honor

23   BY MR  PASKIN

24   Q   Mr  Keefe, if you could just walk through the bullet points

25   that appear on Defendant's Exhibit-78 and describe for me the

Keefe - Direct                    19-74

1    issues in the negotiations between Winstar and Lucent that were
2    being discussed in the bullet points, and then whether or not
3    Lucent actually obtained the things discussed in the bullet
4    points in the second credit agreement
5    A    Sure    The first bullet point, I know at the meeting we had
6    with Winstar around the February time frame about the credit
7    agreement, I believe as Fred Rubin mentioned, that their
8    intention was to continually pay Lucent down, especially when
9    they went to the capital market    So the first bullet point was
10   requested basically to reflect what we thought Winstar had
11   intended to do    But we -- that did not make it into the credit
12   agreement    The second bullet point was to, while they were
13   subordinating guarantees, to at least get Lucent guarantees
14   similar to what it had in the first credit agreement    But we
15   did not get it -- that as well    To use the credit facility to
16   purchase Lucent equipment only was    I mean, I think that speaks
17   for itself that we did not get that    The covenant that the
18   bank facility available commitment must be drawn before
19   Lucent's, that was again a desire that the bank's money go out
20   first and Lucent be used only after that    That is provision
21   that we did get    The maturity on the loans to basically
22   through and by 2004, that was -- the objective of that was to
23   reduce Lucent's risk by making these a shorter term loan and
24   possibly more sellable, but we did not get that shorter
25   maturity    The pricing on the loans to increase based on how

Keefe - Direct                    19-75

1    much was outstanding, again was to price in the risk and to try
2    to give Winstar more incentive to help us sell off or reduce
3    the amount of the exposure   We did not get any of those
4    provisions   The no restriction on the sale or syndication of
5    loans, that was something that we typically got in almost all
6    our credit agreements with other customers   That was important
7    to Lucent because of our -- again, our desire to keep our
8    exposure reduced to any customer and the ability to quickly, on
9    an opportunistic basis  to go into the market to sell the
10   loans   We did not get that   The third to last bullet point
11   are ability to convert the loans into a notes and sell it to
12   the investor market   That  again, was a desire to help us
13   reduce our risk and be able to sell the paper itself and our
14   exposure   We did get a provision like that but it was not as
15   easy as this   There were a lot of restrictions on it   The
16   outstandings had to exceed $500 million, we had to give what's
17   known as a refinancing notice, and then a period of time had to
18   pass before we could make that conversion   The second to last
19   bullet point, to provide us with warrants   Again, that was
20   because of Winstar's indication to us they were gonna try to
21   keep our exposure down, and that was to compensate us for the
22   impact on our balance sheet   Again, Lucent is not a bank,
23   we're financed and structured differently from a bank and this
24   was to help try to compensate Lucent for pressure on its credit
25   rating   And the last bullet point was to make our credit

Keefe - Direct                    19-76

1   agreement look very similar to a bank credit agreement   And we

2   did get that provision

3   Q   Now, do you have an understanding as to why there were so

4   many of these provisions that Lucent was unable to obtain in

5   negotiations?

6   A   It was just part of the negotiations that goes on between

7   parties

8   Q   Now, I'm gonna turn to a different subject   A minute ago

9   you referenced -- you made reference to a refinance provision

10  of the second credit agreement?

11  A   Yes

12  Q   Could you just give a little bit of explanation as to what

13  the refinance provision was?

14  A   It was a provision that said that if the total outstanding

15  that Lucent -- under the second credit agreement that was held

16  by Lucent exceeded $500 million, Lucent could give a

17  refinancing notice to Winstar   Then there was a time period

18  that had to lapse   But that was important for Lucent for a few

19  reasons   First of all, it would enable Lucent to convert its

20  loans into kind of high yield capital market type paper   The

21  second reason was when that occurred, the refinancing notice

22  became effective, the restrictions on Lucent's ability to sell

23  or transfer loans ended so Lucent had free ability to sell the

24  paper into the market   And then also there were limits on the

25  amount of non-Lucent equipment that could be financed under the