# ROA TAB 375

Perricone - Direct                    20-17

1    A    Yes, the financial projections that we would be provided

2    would always indicate the draw down periods and when they

3    expected to have outstandings under the Lucent credit facility

4    Initially, when we were provided the set of projections for the

5    original approval it was not anticipated that Lucent would draw

6    down under -- excuse me, Winstar would draw down under the

7    Lucent credit facility until sometime in the Fall    Those

8    projections were subsequently amended and -- to show sometime

9    during the Summer

10   Q    And when where those projections amended?

11   A    I seem to recall them being amended either the day before

12   or 2 days before the closing date of the Credit Agreement

13   That would have been May 2nd or May 3rd --

14   Q    And did --

15   A    -- of 2000

16   Q    Did you have any discussions with Winstar about that topic

17   when they gave you revised projections?

18   A    Yes, it was quite honestly a little bit disturbing because

19   it came very late, as I mentioned, before the closing    It was

20   not what we had expected    It was extremely frustrating, even

21   to the point I remember being in a conference room with a co-

22   partner and we were, you know, finalizing the Credit Agreement

23   And it just seemed like, you know, one additional last thing

24   that Winstar was putting in front of us that was totally

25   different from that -- what -- that which was expected and that

Perricone - Direct                    20-22

1     to our borrower, WVF

2     Q    And did Lucent assist Winstar in curing those defects?

3     A    Yes, we worked with Winstar and their counsel and gave the

4     permission and worked with the senior bank group -- the lending

5     group because they needed to approve that transfer, if you

6     will of assets or assignment of assets

7     Q    Now, you testified a few minutes ago that the May 23rd

8     borrowing request was not funded but there was a subsequent

9     request in June that was   If you could turn to Defendant's

10    Exhibit-309 in your book -- they're in numerical order   You

11    got it?

12         (Defendant's Exhibit-309 previously marked for

13    identification)

14    A    Yeah, sorry

15    Q    And my question is is Defendant's Exhibit-309 the June

16    borrowing request to which you referred previously?

17    A    Yes, it is

18    Q    So, did Lucent in fact loan $248 million to Winstar in June

19    of 2000 pursuant to this borrowing request? '

20    A    Yes, it did

21    Q    Now  do you recall the exact date on which Lucent loaned

22    that money?

23    A    It was June 23rd

24    Q    Okay, and that would be listed on the second page, it says,

25    'Effective date of borrowing," is that --

Perricone - Direct                    20-23

1    A    Yes

2    Q    -- what you were just referring to?  And just so that it's

3    clear, when was June 23rd in relation to Lucent's fiscal

4    quarter?

5    A    Lucent's fiscal quarter would have ended on June 30th and

6    so this would have been 7 days prior to the end of Lucent

7    quarter

8    Q    Thank you  Now, with respect to this $248 million in

9    borrowing, did Lucent engage in any efforts to sell that loan

10   to anybody, any third party?

11   A    Yes, we did

12   Q    Could you tell -- explain to the Court in a little more

13   detail what efforts you went through?

14   A    I was directly involved with that myself, and we had had a

15   meeting approximately 2 weeks or a week earlier to this date

16   with Mr  Fred Rubin and had spent some time talking about the

17   fact that, you know, we had not anticipated this level of

18   borrowings to occur at this particular time based on their

19   original representations to us and the financial projections

20   So we had at that time asked Mr  Rubin if Winstar would be

21   willing to work with us and allow us to go out and syndicate or

22   sell or assign these outstanding notes to third parties    And

23   we talked about potential buyers for this paper, reviewed those

24   names with Mr  Rubin  and got his permission at that meeting to

25   move forward and to market the paper  And so I engaged in

Perricone - Direct                    20-24

1    direct dialog with two financial institutions in particular, at
2    that time DLJ and Bear Sterns, to determine their level of
3    interest in purchasing this paper from Lucent
4    Q    And so tell me a little bit more about the conversations
5    you had with DLJ and Bear Sterns    What came of them?
6    A    Typically --
7              MR  KING   Objection --
8    A    -- what would happen and in this --
9              THE COURT   Hold it, hold it
10             MR  KING   Objection, Your Honor   Can we have
11   limitation here in terms of what she discussed with them?   I
12   don't want to hear from this witness what she was told by DLJ
13   and Bear Sterns
14             THE COURT   Objection sustained
15   BY MR  PASKIN
16   Q    Yes, absolutely, Ms  Perricone, please limit your answer to
17   your own personal conversations with DLJ and Bear Sterns
18   A    I spoke directly myself with both organizations and my
19   conversations with them were updating them on the company's
20   operations, sharing with them the Credit Agreement and any
21   other documents that they would need to see and then soliciting
22   back from them directly their offers to purchase the paper, the
23   dollar amount, which they would be willing to purchase and the
24   price at which they would be willing to purchase
25   Q    Okay, and did you receive offers from DLJ and Bear Sterns

Perricone - Direct                    20-25

1    with respect to the dollar amount and the price that they were

2    willing to purchase?

3    A    I received offers from both organizations   Both

4    organizations were extremely excited and willing to purchase

5    this amount and more, quite honestly, of Lucent/Winstar paper

6    And they had offered me a price of 93 on the paper

7    Q    And a price of 93, what does that mean?

8    A    That means 93¢ on the dollar  so for every dollar, Lucent

9    would be paid 93¢

10   Q    And every dollar -- it would be every dollar of the 248

11   million loan?

12   A    That's correct

13   Q    Okay   Now, was Lucent able to complete that proposed

14   transaction with DLJ and Bear Sterns?

15   A    Unfortunately not

16   Q    Why not?

17   A    I had left for vacation on June the 23rd with all hopes

18   that with this offer we would be able to consummate it and

19   close it and sell the paper prior to June 30th   When I

20   returned from vacation the following Monday I had understood

21   that there was a call placed by Winstar senior management to

22   Lucent senior management telling them that they could not sell

23   this paper  that they did not have our permission -- their

24   permission --

25            THE COURT   Hold on

Perricone - Direct                    20-31

1    admissible, Your Honor

2            THE COURT   I'll allow it, but this is redundant

3    testimony.  We've heard this before

4            MR PASKIN   Okay, and we're -- I'm moving -- I'll try

5    and move quickly, Your Honor   We'll be through this fairly

6    soon

7    3/ MR  PASKIN

8    Q   To your understanding  Ms  Perricone, did you or anybody

9    else at Lucent instruct Winstar concerning the time when

10   Winstar should complete its deal with Siemens?

11   A   No

12           MR  KING   Objection, Your Honor, can we have the

13   witness' discussions with Winstar rather than what other people

14   at Lucent are saying to Winstar?

15           MR  PASKIN   Again, Your Honor, I'm asking --

16           THE COURT   No, no, you're -- if she did -- if she had

17   the discussion or if she had directed somebody to have it, it's

18   one thing   How would she know what other people were

19   instructed?  Objection sustained  re-phrase your question

20   BY MR  PASKIN

21   Q   Ms  Perricone, did you have any discussions with Winstar

22   regarding the time when they were to conclude their agreement

23   with Siemens?

24   A   No

25   Q   And could you just explain in a little bit more detail, a

Perricone - Direct                    20-32

1    few questions ago you said that we were not pleased with the
2    Winstar/Siemens transaction   Could you explain from your
3    perspective why you were displeased?
4    A   My concerns with the transaction were that there was a
5    competitor of Lucent now selling equipment to Winstar, that
6    there could have been a situation where Lucent actually ended
7    up financing that equipment of the competitor through draws
8    under the Lucent credit facility   My further concern was that
9    it meant additional debt at a senior level above the Lucent
10   credit facility, so more debt on the company at a more senior
11   position
12   Q   And could you turn in your book please to Defendant's
13   Exhibit-477   And the top email on the page appears to be an
14   email that you wrote on November 7th, 2000   If you focus on
15   the first bullet point of that email, could you explain to me
16   the issue that you're discussing?
17       (Defendant's Exhibit-477 previously marked for
18   identification)
19   A   In the first bullet point of the top email I am discussing
20   a concept that's called Lucent Content   It's a provision
21   within the Credit Agreement that speaks to the percentage of
22   financing that would need to be for Lucent gear, Lucent
23   equipment   And I go on further to say that my concern here is
24   that technically Winstar could come to Lucent with a draw
25   request, and given we were financing a portion of non-Lucent

Perricone - Direct                    20-33

1   equipment, that Lucent's cash, in effect, could go out to

2   purchase Siemens gear

3   Q   Now, to your understanding, did Winstar ultimately conclude

4   a transaction with Siemens to obtain the financing?

5   A   Yes

6   Q   And do you know how much financing they obtained from

7   Siemens?

8   A   Two hundred million

9   Q   And do you know what Winstar did with that $200 million

10  that it obtained from Siemens?

11  A   Yes  a portion of it came to repay Lucent outstanding

12  loans

13  Q   Do you recall how much that portion was?

14  A   I know it was in the $190-some million range

15  Q   If you turn to Defendant's Exhibit-521 in your book, and

16  I'll just ask you if you recognize this document, and to the

17  extent it refreshes your recollection, please elaborate for the

18  Court

19      (Defendant's Exhibit-521 previously marked for

20  identification)

21  A   Yes, this is the letter dated December 7th that speaks to

22  the repayment to Lucent from the proceeds of the Siemens loan,

23  and basically the net proceeds to Lucent were 188 million and

24  that was split between two things  One was the pre-payment of

25  194 million, which was the Siemens piece, and then there were

# ROA
# TAB
# 376

1    Q    All right    And are you affiliated with any not-for-profit
2    organizations?
3    A    Yes    I'm the financial chairman for the Metropolitan
4    Museum of Art, and the chairman of a small school for autistic
5    kids called Gillen Brewer
6    Q    All right    Do you have a relationship with Warburg Pinkus?
7    A    I'm the -- I m now a partner and a managing director of
8    Warburg Pinkus, had been since I left Lucent, yes
9    Q    All right    Can you be more specific about the date in the
10   fall of 2000 when you returned to Lucent as chief executive?
11   A    I believe it was October 23rd    I believe that's the
12   correct date
13   Q    All right, sir    And what were the circumstances under
14   which you returned to Lucent as chief executive?
15   A    The company had been going through a difficult period, as
16   the telecom expansion had appeared to slow, and there was a
17   debate at the Board of Directors as to the future course of the
18   company    And the board decided that the then-chief executive,
19   Rich McGinn's position -- that this was a recovery of Lucent in
20   a market that was still growing -- was not correct    We
21   believed at the time that this was a market in the -- ought to
22   be in precipitous decline    And that what was needed was a
23   restructuring as opposed to a continued pursuit of aggressive
24   expansion    And I was asked to resume the title of chairman and
25   chief executive and undertake a retrenchment as opposed to an

Schacht - Direct                        21-9

1    expansion policy that had been followed up to then

2    Q    All right, sir   During your first term as chief executive

3    at Lucent Technologies, did you have anything directly to do

4    with Winstar?

5    A    I did not

6    Q    All right   And -- I'm gonna ask you in a minute about what

7    happened after you returned   But before I do that, I would

8    like to put up on the screen one page from the trial testimony

9    in this case, of Mr  Peter -- Mr  Paul Pocalyko who was a

10   witness called by the Trustee   And this is from page 3-48 of

11   Mr  Pocalyko's direct testimony   I'd like to direct your

12   attention to the --

13           THE COURT   Excuse me, can you read that, sir?

14           MR  SAUNDERS   I'm gonna blow it up, Your Honor --

15   A    I have a screen here, sir --

16           THE COURT   Oh

17   A    -- thank you   Which is very helpful

18           MR  SAUNDERS   Yeah   Could you blow that up a little

19   bit?

20   BY MR  SAUNDERS

21   Q    I'm gonna direct your attention to the question that begins

22   at line 8, and all the way down to line 21   Question, Your

23   forensic examination of financial records focused largely on

24   transactions and events that ended around September 30, 2000,

25   is that correct?   Answer,   That's correct '   Question, 'What

1    is the basis in the financial records for your conclusion that
2    as of December 7th  2000, Lucent and Winstar were not dealing
3    at aims length and that Lucent exhibited influence and control
4    over Winstar?'  Answer,  Nothing in the relationship changed
5    The prior non-arm's length transactions were not reversed
6    Lucent continued to charge interest on these transactions
7    Winstar was unable to return the inventory that it had
8    prepurchased  the -- there was nothing changed   The
9    relationship continued   The financial transactions were still
10   in place and enforced   Do you see that, sir?
11   A   I do
12   Q   What is your reaction to that testimony?
13   A   Well, my reaction is that everything at Lucent had changed
14   And I'd be glad to describe the particular relationships, but
15   let me describe what had changed at Lucent   I was asked to
16   come back to make a fundamental change in the way the company
17   was exercising its activities   And basically, before I was
18   asked to come back, we were on a -- expansion mode, heavy
19   emphasis on selling and recovery, because the position that was
20   taken at the time was that this was a Lucent problem  not a --
21   industry problem   The board had concluded this was an industry
22   problem and we needed to move to a restructuring mode, and that
23   the skill set needed to be changed at the CEO level, and we
24   believed that we had to change what we were doing
25        And so when I got there, essentially, what I did was talk

Schacht - Direct                21-11

1    to a lot of the customers  and virtually everyone in the senior

2    management one-on-one, with a series of meetings   And the

3    phrase I used with everybody was "old model, new model '   And

4    the old model was essentially a -- aggressive pursuit of

5    business, of a full-scale press to grow a very heavy use of

6    vendor financing, a very aggressive use of bidding for

7    business  offering discounts for future business if it were

8    bought earlier, and essentially, came to the conclusion that as

9    we were worried about, that the business was running way too

10   hot

11        And so what I was -- what I said to everyone after having

12   interviewed almost all the senior management and having spent a

13   lot of time in the early days -- we're talking about just a few

14   weeks here -- talking to customers, it was very clear to me

15   that we had to change the way we were doing business top to

16   bottom   And so we essentially changed from a very aggressive

17   selling mode to a retrenchment mode   And this meant very much

18   pulling back on how we did vendor financing, it meant very much

19   changed attitude towards bidding for future business, it meant

20   a changed attitude toward the way we ran the business

21        When I got back, we had a small cadre of staff folks and

22   then we had -- I think it was 11 small divisions, each of which

23   was trying to pursue different parts of the product strategy

24   We changed that completely   I reorganized the company   I took

25   Ben Verwaayen, who was really without portfolio, and put him in

Schacht - Direct                    21-12

1    charge of all the marketing   I took Bob Holder, who was an

2    operations guy, and I consolidated all the operations under

3    him   And I took Deb Hopkins, who was a relatively new chief

4    financial officer, and put all of the administrative units

5    under them   And then the strategy was under Bill O'Shea   And

6    those were the four senior people, none of whom had any of

7    those portfolios before

8         So  this -- the basis that nothing changed from September

9    to December is just plain not true   Everything changed -- the

10   way we did business, who was in charge  the way we organized,

11   the policies of the company, and I can't describe any more

12   graphically -- we had new people, new organization, new way of

13   doing business, a completely different philosophy -- we were on

14   a very rapid expansion, pushing very hard for sales   We pulled

15   back quite substantially in all of the policies we were doing,

16   reset the company for what turned out to be correctly a

17   retrenchment mode as opposed to a heavy expansion mode

18        So, new organization, new people, and we had a brand new

19   treasurer who took a very, very detailed look at where we were

20   on the financial side   That was not a pretty picture   And so

21   I can't think of anything that didn't change, quite the

22   contrary to what's been said here

23   Q   Now  after you came back  did you have an opportunity to

24   meet with anyone at Winstar?

25   A   Yes, one of the things I did was not only talk to all of

Schacht - Direct                    21-13

1    the folks that -- internally to see what was going on there
2    both collectively and individually, to impress upon them how
3    different our approach was gonna be   But I also went out and
4    met with all the major customers   I started with the Bell
5    operating companies, and then started to work through the
6    competitive local e change carriers  and one of the first calls
7    I made was to Winstar

8    Q   And could you tell the Court about that call?
9    A   Yes   I did the same thing there that I did in all the
10   other relationships   I went in, said, 'Describe for me what
11   the business is  how we doing ' et cetera et cetera   And I met
12   with Mr  Rohana  and he described for me the relationship, went
13   back  and how much the two companies were interdependent, the
14   kinds of things that -- they had bought a lot of equipment from
15   us, they had borrowed a lot of money from us

16       It was a relationship he valued as their major vendor, and
17   that he would -- was not comfortable with the approach of the
18   new chief financial officer or the new treasurer   He was not
19   comfortable with the new person in charge, Carol Spurrier, who
20   was then in charge of the account   She was one of our most
21   senior account executives at Lucent   She had taken over the
22   account  had done a complete review of the account and he was
23   not comfortable with the fact that we were pressing on some
24   legal requirements around their loan agreement that he was
25   uncomfortable with

Schacht - Direct                    21-14

1          He asked me at the close of the meeting if we in fact

2     would forego our legal option of notifying them that the debt

3     we held -- we had to give 'em 105 days notice on the debt we

4     held that we were in fact going to sell it   We couldn't sell

5     it unless we gave 'em prior notice   He was going to do some

6     financing   he said to me, "Look, I want you not to do that

7     That s not something that would be helpful   And I didn't

8     respond   I said okay, and he said the other thing, we are

9     thinking of doing some financing with Siemens and we'd prefer

10    that you not exercise your rights to have that money go to

11    Lucent to pay down your debt   And I said I understand that

12    Let me go back and talk to our folks and see what the answers

13    would be to those questions   He said, 'Well I hope you can

14    accommodate on -- accommodate this -- accommodate us on this,

15    we ve had a good relationship in the past and would you please

16    get back to me?'   I said I would

17    Q    And did you?

18              THE COURT   Mr King -- excuse me, Mr --

19              MR   SAUNDERS   I'm sorry

20              MR   KING   I'd just like to present an objection

21    We've now heard in the past 10 minutes two -- probably six or

22    seven minute monologues from this witness without any questions

23    to develop the examination here   In addition to which

24    frankly, I'm a little bit disturbed at Mr Schacht's testimony

25    because he's discussing things that were discussed at four

Schacht - Direct                    21-15

1     separate depositions that he never once mentioned, that we're
2     now hearing about for the first time
3              THE COURT   Well, you can cross examine him --
4              MR  KING   We will, Your Honor
5              THE COURT   -- with respect to that
6              MR  KING   We will
7              THE COURT   Let s ask questions and get answers
8     instead of --
9              MR  SAUNDERS   Certainly, Your Honor
10    BY MR  SAUNDERS
11    Q    Did you get back to Mr  Rohana?
12    A    I did
13    Q    And what did you tell him?
14    A    I told him that we were going to pursue our rights under
15    the two -- under the contract and that we were going to go
16    ahead with 105 degree notice  and secondly that we were going
17    to require them to pay us the 200 million that they get from
18    Siemens
19    Q    And did Mr  Rohana say anything during that conversation
20    that gave you concern?
21    A    Yes   Mr  Rohana made a series of comments -- the exact
22    nature of which I don't remember, that caused me to say,  I
23    don't like the tone of that   I know a threat when I hear one,
24    and I went back and called the General Counsel and said --
25    Q    Excuse me -- don't   Please don't tell us what you asked

Schacht - Direct                    21-16

1    the General Counsel to do   But you had a conversation with the

2    General Counsel --

3    A   I did

4    Q   -- at that point   And was there subsequently an

5    investigation?

6    A   Yes   The General Counsel hired outside Counsel and

7    investigated the transactions between Lucent and Winstar

8    Q   All right sir   Is there anything else you'd like to add

9    to your observations with respect to this testimony that's on

10   the screen?

11   A   Well it's hard to know what the gentleman meant   I wasn't

12   here, but the fact that we did -- after the investigation  the

13   first investigation of the Winstar transactions, we did in

14   November -- late November issue a press release -- excuse me,

15   issue a press release correcting a prior press release

16   reversing $125 million of sales that we had found to be

17   incorrectly claimed, and we notified the SEC   And that

18   happened during this period of time   So that was certainly a

19   change

20   Q   All right, sir   On December 7th, 2000, was Lucent in a

21   position to control Winstar?

22   A   No

23        MR  KING   Object to the form of the question, Your

24   Honor   I don't understand what the term we're using for

25   control is here

Terrell - Direct                    21-44

1    they're working, attempting to get -- to win business, Your

2    Honor   And a request for a quote will come from the customer

3    And the sales team --

4            THE COURT   He didn't ask you the sales process, he

5    asked you the billing process   So let's start with the

6    business has been -- there's been a sale

7    A    Okay

8            THE COURT   Now we're going to have -- tell me what

9    the process is

10   A    Okay   There's been a sale   That means a firm price quote

11   has come from the sales team and a purchase order has come from

12   the customer   And that purchase order is given to our order

13   management team   That firm price quote also goes to the order

14   management team   and this is our first checkpoint to make sure

15   that the order that they're putting in is valid   We have a

16   customer document and a Lucent document

17           Order management then will actually enter that order into

18   the system to set up the billing process   They enter the order

19   in the system which triggers a couple of things   If it is a

20   complex order, that's known as an engineer, furnish, and

21   install order   We call it EF and I   What the order management

22   person does is enter that header information -- bill to, ship

23   to, in the system   That triggers our engineers to begin

24   writing specs or specifications   And these engineers will

25   work with the sales team, with the customer, sometimes, or with

Terrell - Direct                    21-45

1    others, to begin writing these specifications

2         What these specifications do is they are transmitted to

3    the factory or the provider   And that factory begins building

4    the equipment   And that equipment is then staged -- most

5    likely if it's a complex job, staged at some type of warehouse

6    or staging facility   And if there's installation   of course

7    that's scheduled as well

8         While this order's being built and then shipped, the order

9    manager will then electronically send an electronic folder with

10   all the pertinent documents -- the purchase order, the firm

11   price quote, the shipping records, et cetera, over to the

12   building team, and we call them asset management   That's the

13   billers   and in this process the asset manager is checking --

14   first of all, they understand the contract terms   They're

15   watching the system   When I say the system, various number of

16   systems to see if this order has shipped   Is it 50  60, 70

17   95% shipped?

18        Once they verify that   they then verify the documents --

19   the purchase order, the quote, and has it shipped at that 90 or

20   95% threshold   And then they invoice the customer   And of

21   course a collection process begins to ensue here  and we're

22   looking obviously for cash to pay that invoice off   And that's

23   just a brief high level

24   BY MR  PASKIN

25   Q   Thank you, Mr  Terrell

Terrell - Direct                    21-46

1      A    Sure

2      Q    So, based on the description that you just gave, and based

3           on your experience working in the asset management areas of

4           Lucent, what controls are in place within Lucent's processes to

5           ensure that invoices aren't issued prior to purchase orders

6           being received by customers?

7                 MR  KING   Objection  Your Honor   Can we just get

8           some foundation, what s the time period we're talking about for

9           this process?

10     BY MR  PASKIN

11     Q    You can focus, sir  on the time period '99 through 2001

12     A    Okay  The process here is that the biller is trained

13          They are trained on how and when to issue an invoice   And they

14          are familiar -- they familiarize themselves with the terms and

15          conditions of the contract   Our standard terms and conditions

16          are that they can invoice when shipped or soon thereafter as

17          practical   Our guideline and policy and practice is 90 to 95%

18          And so their first line of defense in any billing process is

19          good training   So they're trained on when to bill, what to

20          look for   Secondly, another checkpoint to make sure that they

21          didn't invoice incorrectly  is really the very back end of the

22          process   If we invoice a customer incorrectly, we would get a

23          dispute back   The customer -- you know, our job is to do our

24          best to facilitate payment, to make that invoice easy to

25          understand  match their PO to the best of our ability and then

Terrell - Direct                    21-47

1       to remove obstacles to facilitate cash  If there's an issue,

2       the customer would quickly dispute that  So that's another

3       checkpoint if we've invoiced incorrectly  --

4       Q   And is there a process in place within the asset management

5       organization at Lucent to register or track any disputes that

6       are raised by the customer?

7       A   Yes, there is  There's a system called the claims and

8       dispute system  That is our system of record for tracking any

9       claim or dispute

10      Q   Now could you describe briefly for the Court  on a typical

11      Lucent invoice what kind of description is given regarding the

12      products or services that are the subject of the invoice?

13              MR  KING  Objection, Your Honor  A typical Lucent

14      invoice -- I don't know what we're talking about  Are we

15      talking about for the Winstar customer, for every customer?

16              THE COURT  Don't we have somewhere something we could

17      use to --

18              MR  PASKIN  Sure, we can do that, Your Honor

19              THE COURT  Rather than do a hypothetical, let's take

20      a look at a real invoice

21              MR  PASKIN  Right

22      BY MR  PASKIN

23      Q   Why don't we focus on Defendant's Exhibit-644 in your book,

24      Mr  Terrell

25      A   That's fine

Terrell - Direct                    21-48

1     Q   And we can just take the first invoice on the front of that
2         book, on the front of that exhibit   And in the description
3         field within the center of the document, could you just
4         describe the level of detail that's provided with respect to
5         that invoice?
6     A   Yes   Again here the level of detail -- you have some key
7         fields on this invoice   You're gonna have a purchase order
8         number, a Lucent order number  which is really along the left-
9         hand column and you're gonna have a description field   And
10        that description field can vary, of course, across customers
11        This are standard, especially for a complex job  will simply
12        say material  engineering  installation right to use just as a
13        default   But that can change based on as we work with the
14        customer, the customer may say  Hey, can we have a little more
15        detail around that invoice?   So we try to develop a
16        relationship with our customers to make sure we build them in a
17        way that is easy for them, really, to pay
18    Q   So then on a customer-by-customer and invoice-by-invoice
19        basis how does the particular person at Lucent who's preparing
20        the invoice know how much detail to provide within the
21        description?
22    A   Most of the time, they base it off of the purchase order
23        The purchase order is the customer document   And what we want
24        to do is match the customer document with our invoice document
25        That is really the ideal   Now sometimes you may have a little

Terrell - Direct                    21-49

1    variation where you say, well, the customer document may say
2    I've got a 5ESS switch, and we might bill it as material   Or
3    we may say 5ESS switch on there and the customer document may
4    say material or switching   But our job is to -- best we can,
5    to match that purchase order
6    Q    Well, in a situation where the -- where both the purchase
7    order and the invoice say something as general as 5ESS switch
8    how does the customer and how does Lucent know precisely what
9    has been ordered?
10   A    Well  really  it's -- the customer who's -- what our
11   concern is is payment   How they know they got their material,
12   it's -- I kind of  I use the illustration like if you're
13   ordering a car or a bike   You know, you don't wanna know if
14   you got the radiator and the oil plate and the tires   You want
15   your car   Well  that's what they're ordering is a car   So
16   most of the POs that we get for a complex job is gonna be "I
17   want a car in this make and model '  And then that's how we
18   bill it back
19   Q    Okay  and is complex job a synonym for the engineer,
20   furnish and install jobs --
21   A    Yes --
22   Q    -- that you described earlier?
23   A    -- I -- yes
24        MR  KING   Objection  Your Honor   Could we have a
25   little bit less leading again?  I didn't have a chance to

Terrell - Direct                    21-50

1    oppose the objection with that answer

2              THE COURT   Well, you know, I think this witness is

3    going to testify as to what Winstar owes Lucent, is that where

4    you're going?

5              MR   PASKIN   He's -- I'm getting there, Your Honor

6    yes

7              THE COURT   So  I mean  I m not even sure that's

8    disputed but for a couple of the transactions that weren't

9    reversed   But I'm not sure there's any dispute on these

10   invoices  is there?

11             MR   KING   Your Honor, there is no dispute that these

12   invoices were issued if that's the question   There may be a

13   dispute as to whether these invoices -- I haven't heard what

14   the witness is gonna testify yet, but with respect to the set

15   off claim there may be a dispute as to whether these invoices

16   were properly issued

17             THE COURT   I understand, but so let's not worry about

18   leading if we're only talking about getting into these

19   invoices                               -

20             MR   PASKIN   Right   Exactly   This is only some

21   foundational testimony  Your Honor

22             THE COURT   I think that's what it's been up to now

23   I mean, I really frankly didn't need that invoice flow to know

24   that --

25             MR   PASKIN   I apologize, Your Honor

Terrell - Direct                    2_-51

1          THE COURT    -- goods are manufactured, they're

2     shipped, they're received and they're billed for   I mean,

3     that's not -- their system flow may be a little bit different,

4     but that's pretty much what everybody --

5          MR  PASKIN   Okay

6          THE COURT   -- is supposed to do  so let's move on

7          MR  PASKIN   Right   Well ther I'll skip forward, your

8     Honor

9     BY MR  PASKIN

10    Q   Focusing on Defendant s Exhibit-644, I'll represent to you

11    and the Trustee that it's the same collection of exhibits that

12    -- same collection of invoices that was submitted as an exhibit

13    to the declaration that you submitted with Lucent's summary

14    judgment papers   And I'll also represent to you that the sum

15    total of the number of the total values of those invoices is

16    approximately $28 million   Had you performed any analysis with

17    respect to this collection of invoices?

18    A   Yes  sir  I did an analysis months ago on that set of

19    invoices where I went into the Lucent systems to validate --

20    really two key points at that time -- was validate the shipping

21    time frame and to validate whether or not this invoice was

22    paid   That was my first analysis

23    Q   Okay, now with respect to the shipping time frame  did you

24    in your analysis confirm that all of the invoices that are

25    collected at Exhibit-644 were shipped by Lucent between

Terrell - Direct                    21-52

1    December 8th, 2000 and April 18th, 2001?

2    A    In my analysis that is correct

3           THE COURT    April what?

4           MR  PASKIN    April 18th, 2001, Your Honor

5    BY MR  PASKIN

6    Q    And in the analysis that you performed  did you confirm

7    whether or not those invoices in Exhibit-644 had been paid by

8    Winstar?

9    A    The invoices were not paid by Winstar in my analysis

10   Q    Now  you said that that was the analysis that you did

11   originally   Is there any analysis that you've done more

12   recently with respect to these same invoices?

13   A    Yes, sir

14   Q    And what have you done?

15   A    In addition to the shipment, I also did a second analysis

16   on disputes to see if any of these invoices were disputed by

17   the customer   And also the second part of the analysis   I

18   reverified -- actually I had someone else on my team -- an

19   expert also on payment -- analyze, were these in fact paid

20   Just to check my prior -- and --

21   Q    And did you find that there -- well, in rechecking the

22   payment issue --

23   A    Yes

24   Q    -- did you find that any of these invoices had been paid?

25           MR  KING   Objection, Your Honor   Just to the extent

Terrell - Direct                    21-53

1    that the witness just testified that his knowledge comes from
2    work that someone else did at Lucent, I think we're talking
3    again about hearsay
4          MR  PASKIN   Your Honor, he may have delegated an
5    assignment to somebody who worked for him to run some numbers
6    through a computer  but that doesn't mear that the witness
7    doesn't ha c personal k owledge as to the results of that
8    exercise
9          THE COURT   I'll allow it
10         MR  PASKIN    Thark you, Your Honor
11   BY MR  PASKIN
12   A    Yes   Ine invoices were rot paid in my second analysis
13   Q    Anc with respect to vour more recent analysis regarding
14   whether there were any disputes concerning the invoices in
15   Exhibit-644, cid you find within Lucent's systems any disputes
16   that were registered?
17   A    Actually, I did find one dispute in this stack of invoces
18   Q    One with respect to one invoice in the stack?
19   A    There were -- yes, with one invoice
20   Q    Now, do you remember specifically which invoice number the
21   dispute relates to and what the nature of the dispute was?
22   A    I don't remember specifically the invoice number, I have a
23   number in my -- the amount of the rebill for that in my head
24   but I do not remember the invoice number
25   Q    All right

Terrell - Direct                    21-54

1      MR  PASKIN   Your Honor, I spoke to Mr  King about
2   this before and   There's an email that I could use to refresh
3   Mr  Terrell's recollection   I could either use it to refresh
4   his recollection, but Mr  King suggested that he might
5   stipulate to which particular invoice is at issue and the
6   change in the numbers
7            MR  KING   We ll stipulate  your Honor
8            MR  PASKIN   Okay, I'll just read it into the record,
9   then, Your Honor
10           THE COURT   Well, can you -- yes   Can I find it in
11  here --
12           MR  KING   Stipulate --
13           THE COURT   -- so I can make a note of it?
14           MR  PASKIN   No, but I can give you a copy   It's not
15  marked as an exhibit  Your Honor   That's why I didn't want --
16           THE COURT   Well, wait a minute   These aren't all the
17  invoices that are owed?
18           MR  PASKIN   No  no   It's not a question of all the
19  invoices that are owed   It's a question of the invoices that
20  are attached at Exhibit-644
21           THE COURT   Yes
22           MR  PASKIN   When he went back and looked, there was
23  one where he said --
24           THE COURT   One dispute
25           MR  PASKIN   -- it was disputed and he went -- and to

# ROA
# TAB
# 460

**Defendant s Deposition Designations**

19    still add a little more detail on the financial
20    part of the agreement or describe the
21    arrangements in more precise terms as a lease
22    for example  Also  there is not a lot of detail
23    in here about what Lucent get out of the deal --
24    there is nothing quantified or explicitly
25    identified as a tangible benefit to them   That

page 51

1              NATHAN KANTOR - CONFIDENTIAL
2    may be how it is in the agreement  in which case
3    we can't say anything  but if the agreement
4    spells it out  I'm sure that they'll want to
5    disclose it   Of course we get a better idea of
6    how they want to position this when we look at
7    their release "
8              I take it that is a press release he
9    is referring to?
10        A    I believe so
11        Q    Who is Gary Holmes?
12        A    He was a contractor  a public
13    relations contractor that was working with us
14        Q    Then Bill Rouhana responds to
15    Mr Holmes' E-mail  do you see that?
16        A    Yes
17        Q    Then you respond to Mr  Rouhana  do
18    you see that?
19        A    Yes
20        Q    This is on October 18  1998?
21        A    Right
22        Q    Leaving aside your comments about his
23    word processing ability you say "Let s not
24    emphasize Lucent and construction -- it is their
25    weakest point and I sense we will be doing a lot

page 52

1              NATHAN KANTOR - CONFIDENTIAL
2    of it for them   Also  I am sensitive to our
3    folks and contractors currently doing the work so
4    I don t want them leaving us right in the middle
5    of millennium   We should emphasize their" I take
6    that it is Lucent's  "system integration
7    capability and systems testing as well as the lab
8    they will provide to us  they will be running it
9    as well "
10             Do you see that  sir?
11        A    Yes
12        Q    What did you mean when you said
13    "Let's not emphasize Lucent and construction --
14    it is their weakest point"?
15        A    That is exactly what it says   I
16    didn't want to emphasize it until they were
17    prepared to take over that responsibility   And I
18    did not want to create turmoil throughout our
19    organization and contractors until Lucent was
20    prepared to take over that as part of their
21    turnkey responsibilities
22        Q    So is it correct  sir  that at the
23    beginning of this relationship you understood
24    that Lucent was not going to be taking on
25    responsibility for all of the build-out functions

page 53

1              NATHAN KANTOR - CONFIDENTIAL
2    of the network?
3        A    That's correct   I was directly aware
4    of that and that was part of the Transition Plan
5    covered in the Supply Agreement

# ROA
# TAB
# 465

```
                                Ackerman txt
13      A    Yes, it s certainly an element of --
14      Q    Right
15      A    -- what we called a strategic partnership
16      Q    Right   And part of that was you weren't
17 going to do anything that was affirmatively bad for
18 Winstar just because you had a partnership, right?


[424 21] - [425 14] 3/5/2004 Ackerman  David


page 424
21      A    That's -- that s true
22      Q    Right   And you didn't expect Lucent to do
23 things that were bad for Lucent either  did you?
24      A    No, I didn't
25      Q    Okay   Now, I think we went over this a
page 425
1 little bit in your prior testimony  I just want to
2 be clear   There were times when you went and bought
3 equipment from companies other than Lucent, is that
4 fair?
5       A    That's true
6       Q    Okay   In particular I think  if I recall
7 correctly, you told me that when Lucent didn't have a
8 best of breed product or couldn't get you what you
9 gathered as a best of breed product, you went and got
10 something from somebody else  is that fair?
11      A    That's typically true
12      Q    Right   And you felt that you were entitled
13 to do that under the arrangement, is that fair?
14      A    Yes


[426 20] - [428 6] 3/5/2004 Ackerman, David


page 426
20      Q    Right   A lot of your financing came from
21 Lucent, correct?
22      A    Correct
23      Q    Right   And Lucent expected you to spend
24 much or all of that money buying Lucent equipment, is
25 that fair?
page 427
1       A    With certain carve-outs  yes
2       Q    But in fact, there were occasions where you
3 didn't buy Lucent equipment because it wasn't best of
4 breed?
5       A    That's correct
6       Q    Okay   So I think you told me you bought
7 digital cross-connects from Tellabs, is that right?
8       A    Right   With Lucent's concurrence
9       Q    Right   Sure   But Lucent agreed?
10      A    Yes
11      Q    Right   And Lucent let you do that  is that
12 fair?
13      A    Yes
14      Q    Because, you know  you explained to them
15 that you thought that was in the best interest of
16 Winstar, and they were fine with that?
17      A    Well, actually it might have even been a
18 Lucent recommendation  I'm not sure
                                        Page 28
```



                              Ackerman txt
19      Q    Okay   But the Tellabs equipment is the
20  equipment you wanted to put into the Winstar network,
21  is that fair?
22      A    It was -- we both thought it was
23  appropriate because remember the construct of the
24  agreement was that Winstar had hired Lucent to do the
25  planning, engineering and buildout, so in effect
page 428
1  Lucent would have created the architecture, done the
2  engineering, and recommended to Winstar that this is
3  the appropriate solution  Now  was that how it
4  worked specifically in this case?  I can t recall
5  But conceptually that was how it was intended to
6  work


[428 18] - [428 20] 3/5/2004 Ackerman  David


page 428
18      Q    Right   I also think you told me you bought
19  routers from Cisco?
20      A    That's true


[428 23] - [429 16] 3/5/2004 Ackerman, David


page 428
23      Q    Okay   I think you told me in the last
24  session we had that Lucent tried to sell you
25  something called the Any Media Fast product   Do you
page 429
1  remember that?
2      A    Yes
3      Q    Okay   And you said that in fact you didn t
4  buy it from Lucent?  You actually bought another
5  company's solution?
6      A    As I recall  yes
7      Q    Right   Do you remember what the other
8  company was?
9      A    I think AFC
10     Q    Okay
11     A    I think
12     Q    And other than what I've said, you know
13  talking about Tellabs and Cisco and AFC, were there
14  other occasions where you bought non-Lucent
15  equipment?
16     A    Yes


[430 25] - [431 2] 3/5/2004 Ackerman, David


page 430
25      Q    But is it fair to say you were trying to
page 431
1  develop a relationship with Siemens?
2      A    Yes


[431 15] - [433 1] 3/5/2004 Ackerman  David

# ROA
# TAB
# 468

**Defendant s Deposition Designations**

```
                        13  at Lucent?
                        14       A      In the role --
```

[36 17] - [37 2]        6/25/2004   Montemarano  Michael

```
                        page 36
                        17       A      In the role I had as vice-president
                        18  as Lucent for Worldwide Sales, working with the
                        19  sales teams  I would most certainly have been
                        20  aware if we entered into that type of
                        21  arrangement
                        22       Q      Did you have a view at the time
                        23  again  in your capacity as a financial person at
                        24  Lucent  did you have a view at the time as to
                        25  whether it was good business for Lucent to
                        page 37
                        1                MICHAEL MONTEMARANO
                        2  subcontract to Winstar?
```

[37 5]   [39 14]        6/25/2004   Montemarano  Michael

```
                        page 37
                        5       A      In my view of subcontracting out
                        6  work to Winstar or to any other party to perform
                        7  it on behalf of one of my customers was just bad
                        8  business because there s no profit in it for me
                        9  Much similar to financing someone else s
                        10  equipment  just did not want to be in that
                        11  business
                        12       Q      In your recollection in this period
                        13  after October of 2000  did Winstar ask to borrow
                        14  money from Lucent for services that Lucent
                        15  itself had not performed?
                        16       A      Yes  they did
                        17             MR SLIFKIN  Let me show you what
                        18  we re going to mark as Exhibit 6  WC 40576
                        19  through 77
                        20             (Defendant s Exhibit 6 marked for
                        21  identification  Bates WC 40576 through 77 )
                        22  BY MR  SLIFKIN
                        23       Q      Can you identify Exhibit 6 for us
                        24  please?
                        25       A      It s a draw request from Winstar to
                        page 38
                        1                MICHAEL MONTEMARANO
                        2  Lucent dated 29th of December 2000 for $62
                        3  million  little bit more than $62 million
                        4       Q      Keep that in front of you
                        5             MR  SLIFKIN   Let me mark as
                        6  Exhibit 7 a series of internal Lucent e-mails
                        7  Bates numbered LW 146788 through 89
                        8             (Defendant s Exhibit 7 marked for
                        9  identification  Bates LW 146788 through 89 )
                        10  BY MR  SLIFKIN
                        11       Q      Just take a moment to look at
                        12  Exhibit 7 and let me know when you re done
                        13       A      Okay
                        14       Q      First off  can you identify Exhibit
                        15  7 for us?
                        16       A      Yes  it s a series of e-mails from
                        17  myself  chaining up to Peter Derrick  who was
                        18  the director of financing at Lucent in the
                        19  treasury organization  yes  so I can identify
                        20  that
                        21       Q      Do these e-mails concern -- the
                        22  e-mails in Exhibit 7 -- concern the draw request
                        23  in Exhibit 6?
                        24       A      Yes  it is   The e-mail is a recap
                        25  of the events that surrounded that $62 million
                        page 39
```

• Defendant s Deposition Designations

```
                    1                MICHAEL MONTEMARANO
                    2   draw request
                    3        Q      Now  having had an opportunity to
                    4   look at these documents  do you have a
                    5   recollection of what the $62 million draw
                    6   request in Exhibit 6 was for?
                    7        A      It was for Winstar-performed
                    8   services, services that Winstar -- work that
                    9   Winstar did on their network that they wanted
                   10   Lucent to finance
                   11        Q      In your recollection  had you
                   12   personally authorized Winstar to do that $62
                   13   million worth of work?
                   14        A      No
```

[39 17]  [40 15]      6/25/2004  Montemarano Michael

```
                   page 39
                   17        A      We did not -- I did not  and I was
                   18   not aware of anybody in Lucent that had
                   19   authorized Winstar to do that work
                   20        Q      Did Lucent fund this draw request
                   21   did they lend this money?
                   22        A      Yes  we did  We funded that draw
                   23   request at the end of December 2000
                   24        Q      Why was that?
                   25        A      Specifically at the direction of
                   page 40
                    1                MICHAEL MONTEMARANO
                    2   Ben Verwaayen, who at the time was the
                    3   vice-chairman  and his view was from a customer
                    4   relationship point of view  we wanted to make
                    5   the payment
                    6        Q      Earlier when we looked at some of
                    7   the equipment draw  I think you mentioned
                    8   contractual obligations  Do you remember that?
                    9        A      Yes  I do
                   10        Q      In your understanding  was Lucent
                   11   contractually obligated the make this $62
                   12   million services loan?
                   13        A      No  we absolutely were not
                   14   contractually required to make this payment to
                   15   them
```

[40 18]  [41 19]      6/25/2004  Montemarano Michael

```
                   page 40
                   18        Q      Why did you have that belief?
                   19        A      Because there was no underlying
                   20   relationship between us authorizing them to
                   21   perform the work  there were no purchase orders
                   22   put in place  as the e-mail I indicated points
                   23   out  We simply allowed them to do it based on
                   24   Ben s direction as the vice-chairman
                   25        Q      I believe you used the phrase
                   page 41
                    1                MICHAEL MONTEMARANO
                    2   something like  customer relations  Do you
                    3   remember that?
                    4        A      Yes  I do
                    5        Q      What did you mean by that?
                    6        A      At that point time we were working
                    7   with Winstar to try to get the relationship to a
                    8   better level where we were  in fact  performing
                    9   work for them  selling them more equipment  et
                   10   cetera  and we were in the midst of those
                   11   discussions  hence Ben s view in good faith to
                   12   make the payment in December  so not required,
                   13   just done from a customer relationship point of
                   14   view
```

**Defendant s Deposition Designations**

```
15      Q      At the time that this loan was
16  extended to Winstar  the $62 million loan  did
17  you advise Winstar as to whether this would be
18  an ongoing relationship or one off  or did you
19  have any kind of discussion like that?
```

[41 22]  [42 6]          6/25/2004   Montemarano  Michael

```
page 41
22      A      Yes  I spoke to their CFO  chief
23  financial officer  Rick Uhl  and told him that
24  we were not going to continue to do this  it was
25  being done merely as an accommodation at the
page 42
1                   MICHAEL MONTEMARANO
2  December quarter end
3      Q      Did you tell Mr  Uhl that this was
4  not to be repeated in 2001?
5      A      I told him this would definitely
6  not be repeated in 2001
```

[42 9] - [42 11]         6/25/2004   Montemarano  Michael

```
page 42
9      Q      Well  after this $62 million loan
10  do you recall Winstar making additional requests
11  for borrowing to fund services?
```

[42 14]  [43 19]          6/25/2004   Montemarano  Michael

```
page 42
14      A      They made additional requests for
15  funding of services in the subsequent months
16  January and February  as I recall  of 2001
17      Q      Let me show you another document
18            MR  SLIFKIN    Let s mark as Exhibit
19  8 a two page document LW 147206 through 207
20            (Defendant s Exhibit 8 marked for
21  identification  Bates LW 147206 through 207 )
22  BY MR  SLIFKIN
23      Q      Do you have Exhibit 8 now  sir?
24      A      Yes  I do
25      Q      Do you recognize this document?
page 43
1                   MICHAEL MONTEMARANO
2      A      Yes  I do
3      Q      Can you tell us what it is, please?
4      A      It s a letter from a Rick Uhl  who
5  was the CFO at Winstar  to me  indicating his
6  forecasted amount for draws for the quarter
7  ended March 31st of 2001  and attached to that
8  was a schedule indicating what the breakout of
9  the draw request was for, between content of
10  Lucent product  non-Lucent product  and
11  services
12      Q      Is there an amount for services
13  here?
14      A      $60 million was the amount for
15  services
16      Q      Is that on the second page?
17      A      Yes  it is
18      Q      Had you authorized Winstar to
19  perform $60 million worth of services?
```

[43 22] - [48 22]         6/25/2004   Montemarano  Michael

```
page 43
22      A      I had not authorized Winstar to
23  perform those services
```



• Defendant s Deposition Designations

```
24      Q       To your knowledge  had anyone at
25  Lucent authorized Winstar to perform that $60
page 44
1               MICHAEL MONTEMARANO
2   million worth of services?
3       A       To my knowledge  nobody at Lucent
4   had authorized that either
5       Q       Did you respond to Mr  Uhl s
6   letter?
7       A       My recollection was  yes  I did
8               MR  SLIFKIN   Let me mark as
9   Exhibit 9 a one page document  LW 35971
10              (Defendant s Exhibit 9 marked for
11  identification  Bates LW 35971 )
12  BY MR  SLIFKIN
13      Q       Do you have Exhibit 9?
14      A       Yes  I do
15      Q       Do you recognize that document?
16      A       It s a document that I wrote   I do
17  recognize it
18      Q       Can you tell us what it  I please?
19      A       Yeah   It was a response to Richard
20  Uhl  the CFO at Winstar  indicating I had
21  received his request for draw and reiterated the
22  point that the $60 million placeholder for
23  services had been discussed many times and the
24  position stands firm   We were not going to make
25  payment on that
page 45
1               MICHAEL MONTEMARANO
2       Q       Why did you tell Mr  Uhl you
3   weren t going to make that payment?
4       A       Because we hadn t authorized the
5   work to be performed
6       Q       Other than this letter  Exhibit 9
7   to Mr  Uhl  do you recall any other
8   communications on this topic of the $60 million
9   services financing with Winstar folks?
10      A       In this time period there were a
11  series of communications  there were a series of
12  meetings as well  so there were phone calls and
13  there were some sessions with  as I recall  Nate
14  Kantor and Dave Ackerman  yes  as well as other
15  senior people at Lucent  reiterated the point
16  that we would not make these payments again in
17  the March quarter
18      Q       Do you know who Mr  Rouhana was?
19      A       Yes
20      Q       Who was he?
21      A       President and  I believe  chief
22  executive officer at Winstar
23      Q       Did you ever meet with him?
24      A       Yes
25      Q       Did you ever discuss this topic of
page 46
1               MICHAEL MONTEMARANO
2   services financing with him?
3       A       Yes  I did
4       Q       I d like to show you another
5   document  please  which we re going to mark as
6   Exhibit 10  LW 59741
7               (Defendant s Exhibit 10 marked for
8   identification  Bates LW 59741 )
9   BY MR  SLIFKIN
10      Q       Do you have Exhibit 10 now?
11      A       Yes  I do
12      Q       Can you tell us what this document
13  is?
14      A       It s a memo to file prepared by me
15  on March the 29th of 2001
```

• Defendant s Deposition Designations

```
16      Q       Is that your signature at the
17 bottom?
18      A       Yes it is
19      Q       Did you write this document
20 yourself?
21      A       Yes -- I typed it myself  yes
22      Q       Without reading it out to us  what
23 does the memo concern?
24      A       It concerns a meeting we had with
25 both Winstar management  bankers that were
page 47
1               MICHAEL MONTEMARANO
2  loaning money to Winstar  and Ben Verwaayen who
3  was the vice-chairman at Lucent  on March 29th
4  so it was my memorandum of what transpired at
5  that meeting
6       Q       Did you write this memo the same
7  day as the meeting?
8       A       My recollection  since it s dated
9  under my signature  is yeah  I typed it that
10 evening after the meeting was over
11      Q       Was it your regular practice to
12 write memos to file of this kind?
13      A       Given my financing position at
14 Lucent  and frankly as a practice that I
15 continue to this day  given the variety of
16 issues  this is a common practice I get into
17      Q       Did you have personal knowledge of
18 all the items discussed in this memo?
19      A       Yes  I did   I was present for
20 these discussions
21      Q       Did you prepare this memo in the
22 course of performing your duties at Lucent?
23      A       In my capacity at Lucent I prepared
24 this memo  yes
25      Q       I d like to direct your attention
page 48
1               MICHAEL MONTEMARANO
2  to the third paragraph  starting  At 3 30   Do
3  you see that?
4       A       Yes
5       Q       I d like to direct your attention
6  then to the last few sentences   I turned to
7  Bill and said  We had told him since
8  December
9               Do you see that?
10      A       Yes  I do
11      Q       Just read to the end of that and
12 tell me when you re done
13      A       Okay
14      Q       Is that an accurate description of
15 your conversation with Mr  Rouhana on March
16 29th   01?
17      A       Absolutely is an accurate
18 description of that conversation
19      Q       Does that refresh your recollection
20 as to the substance of your communications with
21 him?
22      A       Yes --
```

[48 25] - [51 13]      6/25/2004   Montemarano  Michael

```
page 48
25      A       Yes  it does   It represents the
page 49
1               MICHAEL MONTEMARANO
2  substance of the communications
3       Q       So is this communication reflected
4  in Exhibit 10 the same as the communication
5  about financing with Mr  Rouhana you were
```

Defendant s Deposition Designations

```
 6   testifying about earlier?
 7       A     It s a consistent message regarding
 8   the financing  that we would not finance the
 9   services in the March ended quarter of 2001 as
10   we had financed them in the December ended
11   quarter of 2000  yes  consistent
12       Q     Is this the first occasion that you
13   that you had told Mr  Rouhana that personally?
14       A     My recollection of that was that I
15   had told Nate Kantor and Rick Uhl and Dave
16   Ackerman  but this was probably the first time I
17   had actually told Bill
18       Q     And Uhl  Mr  Kantor and
19   Mr  Ackerman  in your understanding  did they
20   work for Mr  Rouhana?
21       A     Yes  they did   They were senior
22   executives at Winstar
23       Q     Now  did  in fact  Winstar seek
24   financing for Winstar-performed services from
25   Lucent at the end of the first quarter of 2001?
page 50
 1              MICHAEL MONTEMARANO
 2       A     Yes  they did
 3              MR  SLIFKIN   I m going to show you
 4   what we re going to mark as Exhibit 11  two page
 5   document  3WC 8249 through 50
 6              (Defendant s Exhibit 11 marked for
 7   identification  Bates 3WC 8249 through 50 )
 8   BY MR  SLIFKIN
 9       Q     Do you have Exhibit 11 there?
10       A     Yes  I do
11       Q     Can you identify this document for
12   us?
13       A     It s   draw request from Winstar to
14   Lucent  dated 27th of March 2001  signed by Rick
15   Uhl  their chief financial officer  for $62
16   million  little bit more than $62 million  for
17   non-Lucent equipment is the reference
18       Q     In your understanding  was this the
19   request for the services financing we ve been
20   discussing?
21       A     Yeah  my recollection is this is
22   the document that supports the previous exhibit
23   that was the letter from Rick Uhl to me
24   requesting the amounts
25       Q     Did Lucent finance this request?
page 51
 1              MICHAEL MONTEMARANO
 2       A     No  we did not
 3       Q     Why not?
 4       A     We didn t have to contracturally
 5       Q     What you do mean by that?
 6       A     It was for work that Lucent had not
 7   authorized to perform   It was not for our
 8   equipment or someone else s equipment or for our
 9   services   It was for their services which we
10   had not authorized them to perform
11       Q     Just so we re clear  prior to
12   rejecting this request  had you advised Winstar
13   that you were going to do that?
```

[51 16] - [51 19]    6/25/2004  Montemarano Michael

```
page 51
16       A     Prior to this request  we advised
17   Winstar numerous times that we were not going to
18   pay them for their services performed in this
19   period
```

# ROA
# TAB
# 485

NOV-30-2000  15 01      WINSTAR                          2125844073      P 02


winstar

## NOTICE OF REQUEST FOR BORROWING

**To**    Lucent Technologies Inc., as Administrative Agent

Reference is made to the Credit Agreement dated as of May 4, 2000 among WVF-I LLC
("the Borrower"), Winstar Communications Inc (Winstar), the lenders which are a party
thereto The Bank of New York as Collateral Agent, and Lucent Technologies Inc
as Administrative Agent (as amended from time to time the 'Credit Agreement")
Unless otherwise defined herein  capitalized terms defined in the Credit Agreement
and used herein shall have the same meaning ascribed to such terms in the Credit
Agreement

Pursuant to Section 2 03 the Credit Agreement, the Borrower hereby gives the Administrative
Agent written notice of request for a Borrowing according to the following instructions

| | | |
|---|---|---|
| 1  Total Amount of Borrowing | $ | 63 604,904 42 |
| a)  Amount of Borrowing to be paid directly to Lucent for Lucent Invoices | $ | 29,386 976.24 |
| b)  Amount of Borrowing to be paid directly to Lucent for Lucent Subsidiary Invoices | $ | |
| c)  Amount of Borrowing to be paid directly to Lucent for Lucent International Invoices | $ | 4,214 993 80 |
| d)  Amount of Borrowing to be paid directly to Lucent for Lucent Arrangement Fees | $ | |
| e)  Amount of Borrowing to be paid directly to the Borrower Non Lucent Equipment | $ | 30 002 934 38 |

| | |
|---|---|
| BANK NAME | STATE STREET BANK & TRUST BOSTON  MA |
| ABA NUMBER. | 011 000 028 |
| ACCOUNT NAME | MERRILL GROUP CREDIT  MERRILL PREMIER FUND |
| FOR FURTHER CREDIT TO- | WVF-I, LLC |
| ACCOUNT NUMBER | 3 2 7 3 9 3 2 |
| AMOUNT | $ |

Draw # 6
11/30/00

DEFENDANT'S
EXHIBIT
7

onfidential

LW00071205

NOV-30-2000  15 01      WINSTAR                              2125844073    P 03

| | |
|---|---|
| **BANK NAME** | **STATE STREET BANK & TRUST BOSTON MA** |
| **ABA NUMBER** | **011 000 028** |
| **ACCOUNT NAME.** | **MERRILL GROUP CREDIT MERRILL PREMIER FUND** |
| **FOR FURTHER CREDIT TO** | **WVF-I, LLC** |
| **ACCOUNT NUMBER** | **3274457** |
| **AMOUNT** | **$  30,002,934.38** |

2. Effective Date of Borrowing        November 30 2000

3 Type of Borrowing          ╳  LIBOR        ⊛ ABR

4 Interest Period      Months·          1,      2,      3
                              ╳   6       9       12

5  The Lucent invoices to be paid with the Borrowing are listed on Schedule A attached

The Borrower hereby certifies that all conditions for borrowing set forth in Section 4 03 the
Credit Agreement have been satisfied or will be satisfied as of the date hereof and the date the
borrowing is made

Dated this 30 day of November 2000

WVF-I LLC

By _____

Name   Frederic E  Rubin

Title  Vice President, Treasurer

onfidential                                      LW00071206



NOV-30-2000  15 01     WINSTAR                              2125844073    P 04

## Lucent Invoices - Draw 6
### November 30, 2000

|  | Invoice # | Invoice Amt |
|---|---|---|
| | | |

### DOMESTIC

| | Invoice # | Invoice Amt |
|---|---|---|
| PARENT | 20108174 | 1,563,824 00 |
| PARENT | ER011668 | 4,774,813 00 |
| PARENT | ED012651 | 15,962.89 |
| PARENT | SU022532 | 2,083,200 00 |
| PARENT | SU022520 | 2,265,480 00 |
| PARENT | ER011591 | 14,324 00 |
| PARENT | SR007199 | 2,083,200 00 |
| PARENT | SR007161 | 1,220 00 |
| PARENT | CR006863 | 170,401 00 |
| PARENT | CR006879 | 1 736 856 00 |
| PARENT | CR006877 | 1 869,367 50 |
| PARENT | SU022556 | 1 157,904 00 |
| PARENT | SU022581 | 1 997 640 00 |
| PARENT | NR009998 | 9 200 00 |
| PARENT | ER011594 | 2,421 00 |
| PARENT | ER011642 | 2,083 200 00 |
| PARENT | PR004795 | 72,613 00 |
| PARENT | SR007722 | 1,833 00 |
| PARENT | ER011983 | 234 707 00 |
| PARENT | ER011985 | 37 355 00 |
| PARENT | ER011638 | 2 083,200 00 |
| PARENT | ER011584 | 350,004 97 |
| PARENT | ER011586 | 30,004 97 |
| PARENT | ER011671 | 1 350 771 95 |
| PARENT | 40323081 | 253 20 |
| PARENT | CR006848 | 127,701 00 |
| PARENT | SR007697 | 54,936 00 |
| PARENT | CR007240 | 211,191 00 |
| PARENT | PR005101 | 8,824 00 |
| PARENT | WR001048 | 8,238 90 |
| PARENT | CR006878 | 1,763 750 00 |
| PARENT | ER011784 | 175,955 00 |
| PARENT | 40322338 | 364 58 |
| PARENT | SU023652 | 1,635 00 |
| PARENT | ER012014 | 4,896 00 |
| PARENT | 40321480 | 477 95 |
| PARENT | SO038194 | 909 45 |
| PARENT | 50107195 | 150 000 00 |

onfidential                              LW00071207

NOV-30-2000  15 01        WINSTAR                          2125844073    P 05

## Lucent Invoices – Draw 6
### November 30, 2000

|  | Invoice # | Invoice Amt |
|---|---|---|
| PARENT | 50107196 | 150,000 00 |
| PARENT | 50107198 | 150,000 00 |
| PARENT | 50105804 | 23,995 00 |
| PARENT | 50107257 | 58,500 00 |
| PARENT | SO941531 | 389 10 |
| PARENT | SO931442 | 290 00 |
| PARENT | SO910480 | 244.22 |
| **PARENT TOTAL** | | **28,882,053.68** |
| NETWORK CARE | PS-36308 | 11,573 91 |
| NETWORK CARE | PS-34587 | 51 745 00 |
| **TOTAL NETWORK CARE** | | **63,318 91** |
| Ascend Group | 400025969 | 7,048 04 |
| Ascend Group | 400024387 | 16 925 47 |
| Ascend Group | 400023231 | 39 699 90 |
| Ascend Group | 400026089 | 42 131 25 |
| Ascend Group | 400025224 | 105,830 40 |
| Ascend Group | 400022344 | 32 186 00 |
| Ascend Group | 400023656 | 8 503 16 |
| Ascend Group | 400025248 | 143,606 80 |
| Ascend Group | 400026347 | 8 038 63 |
| Ascend Group | 400026457 | 4,254 00 |
| Ascend Group | 400026459 | 8 360 00 |
| Ascend Group | 400026458 | 8 660 00 |
| Ascend Group | 400026619 | 8 000 00 |
| Ascend Group | 400026538 | 8,360.00 |
| **TOTAL ASCEND** | | **441 603 65** |

| **TOTAL DOMESTIC** | **29,386,976 24** |
|---|---|

onfidential                                                LW00071208

NOV-30-2000  15:02     WINSTAR                        2125844873      P 05

## Lucent Invoices - Draw 6
### November 30, 2000

| Invoice # | Invoice Amt. |
|---|---|

### INTERNATIONAL

| | Invoice # | Invoice Amt. |
|---|---|---|
| FRANCE | 982428 | 8,139.60 |
| FRANCE | 983717 | 17,268.75 |
| FRANCE | 983716 | (17,268.75) |
| FRANCE | 981416 | 17,268.75 |
| FRANCE TOTAL | | 25,408.35 |
| | | |
| BELGIUM | 982502 | 168,219.00 |
| BELGIUM | 984529 | 5,382.00 |
| BELGIUM | 983213 | 7,152.00 |
| BELGIUM | 983544 | 50,064.00 |
| BELGIUM | 983724 | 72,336.00 |
| BELGIUM | 983528 | 25,662.00 |
| BELGIUM | 983726 | 15,449.49 |
| BELGIUM | 983725 | (15,449.49) |
| BELGIUM | 984513 | 8,172.00 |
| BELGIUM | 984522 | 960.00 |
| BELGIUM | 984408 | 720.00 |
| BELGIUM | 984561 | 1,694.00 |
| BELGIUM | 984550 | 1,137.00 |
| BELGIUM | 983265 | 9,421.00 |
| BELGIUM | 983264 | 10,021.00 |
| BELGIUM | 981633 | 94,941.00 |
| BELGIUM | 983723 | (94,941.00) |
| BELGIUM | 983770 | 95,000.00 |
| BELGIUM | 982500 | 8,139.60 |
| BELGIUM TOTAL | | 464,079.60 |
| | | |
| NETHERLANDS | 983713 | 71,742.00 |
| NETHERLANDS | 984315 | 16,983.00 |
| NETHERLANDS | 983208 | 21,456.00 |
| NETHERLANDS | 983704 | 8,987.00 |
| NETHERLANDS | 983699 | 16,397.00 |
| NETHERLANDS | 984336 | 12,656.00 |
| NETHERLANDS | 983703 | 30,158.00 |
| ·ETHERLANDS | 984329 | 24,078.00 |

Page 3 of 6

ᴄonfidential                                            LW00071209

NOV-30-2000  15 02        WINSTAR                          2125344073    P 07

## Lucent Invoices - Draw 6
### November 30, 2000

|  | Invoice # | Invoice Amt. |
|---|---|---|
| NETHERLANDS | 984332 | 17,185 00 |
| NETHERLANDS | 984319 | 15,883 00 |
| NETHERLANDS | 984338 | 23,789 00 |
| NETHERLANDS | 984339 | 8,821 00 |
| NETHERLANDS | 984323 | 18,242.00 |
| NETHERLANDS | 984321 | 10,954 00 |
|  | NETHERLANDS TOTAL | 297,331 00 |
|  |  |  |
| UNITED KINGDOM | 983105 | 4,136 00 |
| UNITED KINGDOM | 983714 | 47 715 00 |
| UNITED KINGDOM | 983443 | 5 938 00 |
| UNITED KINGDOM | 983442 | 8 327 00 |
| UNITED KINGDOM | 983715 | 65 102 00 |
| UNITED KINGDOM | 983119 | 8 400 00 |
| UNITED KINGDOM | 983451 | 11 154 00 |
| UNITED KINGDOM | 983427 | 9 076 00 |
| UNITED KINGDOM | 983112 | 3 038 00 |
| UNITED KINGDOM | 983109 | 12,379 00 |
| ITED KINGDOM | 983428 | 6 267 00 |
| UNITED KINGDOM | 979390 | 38 052 00 |
| JNITED KINGDOM | 979391 | 158 287 00 |
| JNITED KINGDOM | 976174 | 210 315 15 |
|  | UNITED KINGDOM TOTAL | 588 186.15 |
|  |  |  |
| GERMANY | 980384 | 73,800 78 |
| GERMANY | 982340 | 8 139 60 |
| GERMANY | 982347 | 54 468 00 |
| GERMANY | 982349 | 7 069 00 |
| GERMANY | 983070 | 137,968 50 |
| GERMANY | 983670 | 101,529 00 |
| GERMANY | 983691 | 3,178 00 |
| GERMANY | 983683 | 8,327 00 |
| GERMANY | 983071 | 137,968 50 |
| GERMANY | 983073 | 137 968 50 |
| GERMANY | 983688 | 120 00 |
| GERMANY | 984065 | 8,327 00 |
| GERMANY | 983684 | 40 168 00 |
| GERMANY | 984063 | 7 812 00 |

Page 4 of 8

onfidential                                        LW00071210

NOV-30-2000  15:02    WINSTAR                    2125844073    P.08

## Lucent Invoices - Draw 6
### November 30, 2000

|  | Invoice # | Invoice Amt |  |
|---|---|---|---|
| GERMANY | 981583 | 3,178 00 | |
| GERMANY | 983081 | 112,759 00 | |
| GERMANY | 981632 | 15,000 00 | |
| GERMANY | 981616 | 27,143 00 | |
| GERMANY | 984031 | (15,000 00) | |
| GERMANY | 983694 | 13,572 00 | |
| GERMANY | 984027 | 17,143 00 | |
| GERMANY | 983693 | (27,143 00) | |
| GERMANY | 981635 | 15,000 00 | |
| GERMANY | 983390 | 260,557 00 | |
| GERMANY | 983690 | (3 178 00) | |
| GERMANY | 984024 | (13 572 00) | |
| GERMANY | 983074 | 38 052 00 | |
| GERMANY | 983399 | 38,052 00 | |
| GERMANY | 982362 | 65,102 00 | |
| GERMANY | 981631 | 65,102 00 | |
| GERMANY | 980414 | 328,917 00 | |
| GERMANY | 979551 | 171,191 60 | |
| GERMANY | 981444 | 53 277 00 | |
| GERMANY | 982361 | 2 000 00 | |
| GERMANY | 983669 | (101 529 00) | |
| GERMANY | 981621 | 101,529 00 | |
| GERMANY | 982370 | 51 966 00 | |
| GERMANY | 982374 | 28,318 00 | |
| | **GERMANY TOTAL** | **1 974,280 48** | |
| EUROPE | 983141 | 57,760 00 | |
| EUROPE | 981463 | 72,485 00 | |
| EUROPE | 981512 | 56 200 00 | |
| EUROPE | 983718 | (56,200 00) | |
| EUROPE | 982552 | 3,600 00 | |
| EUROPE | 983720 | (52,230 00) | |
| EUROPE | 982604 | 55 670 00 | |
| EUROPE | 981468 | 43,650 00 | |
| EUROPE | 976250 | 52,230 00 | |
| | **EUROPE TOTAL** | **233,165 00** | |
| ARGENTINA | 2s510104 | 3,341 40 | Lucent USA |
| ARGENTINA | 2s510129 | 46 861 50 | Lucent USA |
| ARGENTINA | 2s510137 | 2 680 00 | Lucent USA |

Page 5 of 6

onfidential                    LW00071211

NOV-30-2000  15:02          WINSTAR                      212584407.1    P 09

## Lucent Invoices - Draw 6
### November 30, 2000

| | Invoice # | Invoice Amt. | |
|---|---|---|---|
| ARGENTINA | 2s510142 2s510144 | 129,000 00 | Lucent USA |
| ARGENTINA | 2s510146 | 82,335.25 | Lucent USA |
| ARGENTINA | 2s510148 | 42,914 00 | Lucent USA |
| ARGENTINA | 2s510149 | 9,250 00 | Lucent USA |
| ARGENTINA | 2s510150 | 18,500 00 | Lucent USA |
| ARGENTINA | 2s510151 | 17,257 00 | Lucent USA |
| ARGENTINA | 2s510152 | 10,728 50 | Lucent USA |
| ARGENTINA | 2s510153 | 9,250 00 | Lucent USA |
| ARGENTINA | 1-10038 | 92,388 79 | Lucent Arg |
| ARGENTINA | 1-10190 | 27,530 80 | Lucent Arg |
| ARGENTINA | 1-10203 | 37,521 98 | Lucent Arg |
| ARGENTINA | 1-10204 | 44 470 00 | Lucent Arg |
| ARGENTINA | 1-10206 | 12,514 00 | Lucent Arg |
| ARGENTINA | 1-10207 | 6,000 00 | Lucent Arg |

| ARGENINA TOTAL | 632 543 22 |
|---|---|
| INTERNATIONAL TOTAL | 4,214 993 80 |

TOTAL P 09

onfidential                      LW00071212

NOV-30-2000  15 01        WINSTAR                          2125844073    P 01

winstar

# Fax Cover Sheet

Date        November 27 2000

To          Adrian Alfred

Fax #       908-582-2237

From.       Doreene Nidowicz

Phone #     212-792-9069

RI Fax      212-584-4073

# of pages (including cover)      18

Message

**Attached, please find the draw request for 11/30/00**

Please call me if you have any questions

Thanks
Doreene

onfidential

LW00071213

<HELP> for explanation                          DG28 Index **HP**

CLOSE/ASK/ YIELD                                Page  1 / 1
US0006M   LIBOP-USD FIX    6 MONTH
                                            HI 6 70000    ON 11/28/00
Range **11/28/00** to **11/28/00**  Period ▯ Daily    AVE 6 7
                                            LOW 6 70000   ON 11/28/00

| DATE | YIELD | DATE | YIELD | DATE | YIELD |
|------|-------|------|-------|------|-------|
| F    |       |      |       |      |       |
| T    |       |      |       |      |       |
| W    |       |      |       |      |       |
| T  11/28 L | 6 70000 |  |   |      |       |

Copyright 2000 BLOOMBERG L P    Frankfurt 69-920410   Hong Kong 2-977-6000   London 20-7-330-7500   New York 212-318-2000
Princeton 609-279-3000   Singapore 65-212-1000   Sydney 2-977-8696   Tokyo 3-3201-8900   Sao Paulo 11-3048-4500
                                                              I44-60-0 04-Jan-01 J  24 39

**Bloomberg**
PROFESSIONAL

ADJUSTED   —   6.75%
STATED     —   3.75%
                 ──────────
                 10 50%

ALL IN

onfidential                              LW00071214

NOV-27-2000  16 24          WINSTAR                    2125844073    P 10

```
Report ID    WI_cthis                                                    Page No        1
Operator ID  DNDOWIC        i History Report                             Run Date       11/27/00
Run Control  CHECK          PeopleSoft Accounts Payable                  Run Time       4 04 60 PM
                            Activity From 10/1/2000 To 11/27/2000
                            -Bank Account-      -WFFWK-
```

| Check Number | Check Date | Vendor Number | Vendor Name | Payment Status | Replaced Date | Pay Cycle | Amount |
|---|---|---|---|---|---|---|---|
| 0000001538 | 10/17/2000 | 0000005050 | PROJECT INTERFACE CONNECTIONS | Paid | | WVFWK | 0 00 |
| 0000001539 | 10/17/2000 | 0000005050 | PROJECT INTERFACE CONNECTIONS | Overflow | | WVFWK | 0 00 |
| 0000001540 | 10/17/2000 | 0000005050 | PROJECT INTERFACE CONNECTIONS | Overflow | | WVFWK | 0 00 |
| 0000001541 | 10/17/2000 | 0000005050 | PROJECT INTERFACE CONNECTIONS | Overflow | | WVFWK | 0 00 |
| 0000001542 | 10/18/2000 | 0000034338 | REDLINE COMMUNICATIONS INC | Paid | | OUICK6 | 101,940 70 |
| 0000001543 | 10/18/2000 | 0000034338 | REDLINE COMMUNICATIONS INC | Pa d | | OUICK6 | 70,757 12 |
| 0000001544 | 10/19/2000 | 0000000002 | P COM INC | Void | | OUICK6 | 421 835 50 |
| 0000001545 | 10/23/2000 | 0090032077 | HELP SERVICE CO | Paid | | OUICK6 | 371 621 |
| 0000001546 | 10/23/2000 | 0000018197 | INTEGRATED COMMUNICATIONS SERVICES | Paid | | OUICK8 | 49,970 bu |
| 0000001547 | 10/25/2000 | 0000018197 | INTEGRATED COMMUNICATIONS SERVICES | Paid | | OUICK8 | 13 590 00 |
| 0000001548 | 10/25/2000 | 0000018197 | INTEGRATED COMMUNICATIONS SERVICES | Pa d | | OUICK8 | 75 415 00 |
| 0000001549 | 10/25/2000 | 0000003345 | CPI COMMUNICATION SERVICES INC | Paid | | OUICK8 | 577 29 |
| 0000001550 | 10/25/2000 | 0000000047 | LUCENT TECHNOLOGIES INC | Paid | | WVFWK | 0 00 |
| 0000001531 | 10/25/2000 | 0000000047 | LUCENT TECHNOLOGIES INC | Paid | | WVFWK | 0 00 |
| 0000001532 | 10/25/2000 | 0000000047 | LUCENT TECHNOLOGIES INC | Overflow | | WVFWK | 0 00 |
| 0000001553 | 10/25/2000 | 0000000047 | LUCENT TECHNOLOGIES INC | Overflow | | WVFWK | 0 00 |
| 0000001554 | 10/25/2000 | 0000000047 | LUCENT TECHNOLOGIES INC | Overflow | | WVFWK | 0 00 |
| 0000001555 | 10/25/2000 | 0000000047 | LUCENT TECHNOLOGIES INC | Overflow | | WVFWK | 0 00 |
| 0000001556 | 10/25/2000 | 0000000047 | LUCENT TECHNOLOGIES INC | Overflow | | WVFWK | 0 00 |
| 0000001557 | 10/26/2000 | 0000019834 | ABUCK INC | Overflow | | WVFWK | 0 00 |
| 0000001558 | 10/26/2000 | 0000000607 | CARTER & BURGESS INC | Paid | | OUICK3 | 129 015 00 |
| 0000001559 | 10/26/2000 | 0000008606 | GUILD TECHNOLOGIES | Paid | | OUICK1 | 156,799 29 |
| 0000001560 | 10/26/2000 | 0000033206 | MARCONI COMMUNICATIONS | Pend | | OUICK1 | 66,534 23 |
| 0000001561 | 10/26/2000 | 0000033206 | MARCONI COMMUNICATIONS | Pa d | | OUICK1 | 264,561 10 |
| 0000001562 | 10/27/2000 | 0000046133 | PARK PLAZA HOTEL SAN FRANCISCO | Pa d | | OUICK1 | 112,388.3 ̄ |
| 0000001563 | 10/27/2000 | 0000019187 | SCHILD INCORPORATED | Paid | | OUICK1 | 6,039 00 |
| 0000001564 | 10/30/2000 | 0000044101 | MDB CONSTRUCTION | Paid | | OUICK1 | 61 049 25 |
| 0000001565 | 10/30/2000 | 0000042280 | NAUMAN HOBBS MATERIAL HANDLING | Paid | | OUICK4 | 21 655 77 |
| 0000001566 | 10/30/2000 | 0000036714 | ALLEGHENY BUILDERS INC | Paid | | OUICK4 | 12,558 13 |
| 0000001567 | 10/30/2000 | 0000039278 | AMERIWAVE TECHNOLOGIES | Paid | | OUICK4 | 39,316 00 |
| 0000001568 | 10/30/2000 | 0000018489 | STRATA COMMUNICATIONS | Paid | | OUICK4 | 21,310 00 |
| 0000001569 | 10/30/2000 | 0000008495 | VOLT SERVICES GROUP | Paid | | OUICK4 | 13 719 44 |
| 0000001570 | 10/30/2000 | 0000033579 | TRI TECH ELECTRIC CONTRACTORS INC | Paid | | OUICK4 | 23 800 00 |
| 000001571 | 11/1/2000 | 0000000001 | IMCI TECHNOLOGIES | Paid | | OUICK4 | 43 486 00 |
| 000001572 | 11/1/2000 | 0000000001 | IMCI TECHNOLOGIES | Overflow | | WVFWK | 0 00 |
| 000001573 | 11/1/2000 | 0000000001 | IMCI TECHNOLOGIES | Overflow | | WVFWK | 0 00 |
| 0000001574 | 11/1/2000 | 0000000001 | IMCI TECHNOLOGIES | Overflow | | WVFWK | 0 00 |

onfidential

LW00071215

NOV-27-2000  16 25    WINSTAR    2125844073    P 11

Report ID  WLathia
Operator ID  DNDDWJC
Run Control  CHECK

History Report
People... Accounts Payable
Activity From 10/12/2000 to 11/27/2000
Bank Account    WYFVU?

Page N
Run Date    (1/27/00)
Run Time    4 04:50 PM

| Check Number | Check Date | Vendor Number | Vendor Name | Payment Status | Replaced Date | Pay Code | Amount |
|---|---|---|---|---|---|---|---|
| 0000001575 | 11/1/2000 | 0000000047 | LUCENT TECHNOLOGIES INC | Paid | | WVFWK | 0 00 |
| 0000001576 | 11/1/2000 | 0000000047 | LUCENT TECHNOLOGIES INC | Overflow | | WVFWK | 0 00 |
| 0000001577 | 11/1/2000 | 0000000047 | LUCENT TECHNOLOGIES INC | Overflow | | WVFWK | 0 00 |
| 0000001578 | 11/1/2000 | 0000000047 | LUCENT TECHNOLOGIES INC | Overflow | | WVFWK | 0 00 |
| 0000001579 | 11/2/2000 | 0000002756 | MICROWAVE DESIGNS INTERNATIONAL INC | Paid | | WVFWK | 0 00 |
| 0000001580 | 11/2/2000 | 0000004764 | BLACKBOX NETWORK SERVICES | Paid | | QUICK3 | 38 067.00 |
| 0000001581 | 11/2/2000 | 0000000913 | LIEBERT CORPORATION | Paid | | QUICK3 | 2,029 254 63 |
| 0000001582 | 11/2/2000 | 0000003401 | POWER AND TELEPHONE SUPPLY | Paid | | QUICK3 | 135 407 72 |
| 0000001583 | 11/2/2000 | 0000005151 | PRIME ELECTRIC COMPANY INC | Void | | QUICK3 | 448 740 |
| 0000001584 | 11/2/2000 | 0000004338 | REDLINE COMMUNICATIONS INC | Void | | QUICK3 | 58.310 |
| 0000001585 | 11/2/2000 | 0000001317 | SINGLO TELECOM INC | Paid | | QUICK3 | 16,988.37 |
| 0000001586 | 11/2/2000 | 0000004680 | TTC | Paid | | QUICK3 | 12 654 00 |
| 0000001587 | 11/2/2000 | 0000004680 | TTC | Paid | | QUICK3 | 507 210 89 |
| 0000001588 | 11/2/2000 | 0000001251 | PRIME ELECTRIC COMPANY INC | Paid | | QUICK3 | 349,887 63 |
| 0000001589 | 11/2/2000 | 0000001251 | PRIME ELECTRIC COMPANY INC | Paid | | QUICK9 | 16,898 00 |
| 0000001590 | 11/2/2000 | 0000001401 | POWER AND TELEPHONE SUPPLY | Paid | | QUICK3 | 41 412 00 |
| 0000001591 | 11/2/2000 | 0000001401 | POWER AND TELEPHONE SUPPLY | Paid | | QUICK3 | 369 003 26 |
| 0000001592 | 11/2/2000 | 0000008606 | GUILD TECHNOLOGIES | Paid | | QUICK3 | 79 707 41 |
| 0000001593 | 11/3/2000 | 0000000002 | P COM INC | Paid | | QUICK7 | 42,969 80 |
| 0000001594 | 11/3/2000 | 0000000002 | P COM INC | Paid | | WVFWK | 0 00 |
| 0000001595 | 11/8/2000 | 0000000001 | IMCI TECHNOLOGIES | Overflow | | WVFWK | 0 00 |
| 0000001596 | 11/8/2000 | 0000000001 | IMCI TECHNOLOGIES | Paid | | QUICK1 | 11 038 01 |
| 0000001597 | 11/8/2000 | 0000034338 | REDLINE COMMUNICATIONS INC | Paid | | QUICK1 | 53,216 19 |
| 0000001598 | 11/8/2000 | 0000000001 | IMCI TECHNOLOGIES | Paid | | QUICK1 | 83,259 60 |
| 0000001599 | 11/9/2000 | 0000001002 | DIGITAL MICROWAVE CORP | Paid | | QUICK3 | 17 224 |
| 0000001600 | 11/9/2000 | 0000001002 | DIGITAL MICROWAVE CORP | Void | | QUICK1 | 175,835. |
| 0000001601 | 11/9/2000 | 0000001002 | DIGITAL MICROWAVE CORP | Void | | QUICK1 | 44,605 69 |
| 0000001602 | 11/9/2000 | 0000004815 | ASSEMBLIES INC | Paid | | QUICK3 | 44 605 69 |
| 0000001603 | 11/9/2000 | 0000033206 | MARCONI COMMUNICATIONS | Paid | | QUICK1 | 44 076 74 |
| 0000001604 | 11/9/2000 | 0000033206 | MARCONI COMMUNICATIONS | Paid | | QUICK1 | 18 043 32 |
| 0000001605 | 11/9/2000 | 0000033206 | MARCONI COMMUNICATIONS | Paid | | QUICK1 | 211 765 55 |
| 0000001606 | 11/9/2000 | 0000037206 | MARCONI COMMUNICATIONS | Paid | | QUICK3 | 176 607 05 |
| 0000001607 | 11/9/2000 | 0000M42722 | PROJECT INTERFACE CONNECTIONS | Paid | | QUICK1 | 102 840 49 |
| 0000001608 | 11/13/2000 | 0000001484 | SPECIALTY CONSTRUCTION SERVICES | Paid | | QUICK1 | 559 437 00 |
| 0000001609 | 11/13/2000 | 0000000907 | ARBOR MATERIAL HANDLING INC | Paid | | QUICK3 | 8 796 35 |
| 0000001610 | 11/13/2000 | 0000035480 | BAIRD SATELLITE | Paid | | QUICK3 | 2,774 93 |
| 0000001611 | 11/13/2000 | | BCC BLACKBOX | Paid | | QUICK3 | 492.36 |
| | | | | | | | 1 245.50 |

Confidential

LW00071216

NOV-27-2000  16 26    WINSTAR    2125844073    P 12

Report ID WLehhls
Operator ID DNIDOWIC
Run Control CHECK

G    History Report
Peoplesoft Accounts Payable
Activity From 10/12/2000 To 11/27/2000
Bank-Regular    ****10****

Page No. 1
Run Date 11/27/00
Run Time 4 04 50 PM

| Check Number | Check Date | Vendor Number | Vendor Name | Payment Status | Replaced Date | Pay Cycle | Amount |
|---|---|---|---|---|---|---|---|
| 000001612 | 11/13/2000 | 0000003607 | CARTER & BURGESS INC | Paid | | QUICK4 | 294 00 |
| 000001613 | 11/13/2000 | 0000001292 | HUGH OKANE ELECTRIC CO LLC | Paid | | QUICK4 | 6 820 74 |
| 000001614 | 11/13/2000 | 0000032114 | TAYLOR COMMUNICATIONS INC | Paid | | QUICK3 | 3 891 37 |
| 000001615 | 11/13/2000 | 0000008495 | VOLT SERVICES GROUP | Paid | | QUICK3 | 4 860 00 |
| 000001616 | 11/13/2000 | 0000018197 | INTEGRATED COMMUNICATIONS SERVICES | Paid | | QUICK3 | 1 045 00 |
| 000001617 | 11/13/2000 | 0000032917 | DIGITAL COMMUNICATIONS GROUP INC | Paid | | QUICK1 | 1 200 00 |
| 000001618 | 11/13/2000 | 0000001302 | GENSLER | Pa d | | QUICK1 | 9 682 06 |
| 000001619 | 11/13/2000 | 0000010917 | FISK ELECTRIC COMPANY | Paid | | QUICK1 | 2 792 |
| 000001620 | 11/13/2000 | 0000002852 | ACT NETWORKS INC | Paid | | QUICK1 | 6 683 |
| 000001621 | 11/13/2000 | 0000038135 | KDC ARCHITECTS ENGINEERS | Paid | | QUICK4 | 5 198 89 |
| 000001622 | 11/13/2000 | 0000041006 | TELECOM PROFESSIONAL SERVICES INC | Pai' | | QUICK1 | 1 111 50 |
| 000001623 | 11/13/2000 | 0000039278 | AMERIWAVE TECHNOLOGIES | Paid | | QUICK1 | 1 600 00 |
| 000001624 | 11/13/2000 | 0000003574 | ANDREW CORPORATION | Paid | | QUICK1 | 252 20 |
| 000001625 | 11/13/2000 | 0000000906 | ANIXTER INC | Paid | | QUICK1 | 310 70 |
| 000001626 | 11/13/2000 | 0000000907 | BAIRD SATELLITE | Paid | | QUICK3 | 9 318 96 |
| 000001627 | 11/13/2000 | 0000002071 | COMSEARCH | Pnd | | QUICK3 | 7 325 00 |
| 000001628 | 11/13/2000 | 0000001453 | CONNECTION CONCEPTS INC | Pa o | | QUICK3 | 689 50 |
| 000001629 | 11/13/2000 | 0000043595 | ENTREX COMMUNICATION SERVICES INC | Paid | | QUICK1 | 5 672 90 |
| 000001630 | 11/13/2000 | 0000001302 | GENSLER | Paid | | QUICK3 | 6 716 49 |
| 000001631 | 11/13/2000 | 0000007772 | HNS TELECOM | Paio | | QUICK3 | 8 722 64 |
| 000001632 | 11/13/2000 | 0000040974 | HY TEK | Pa d | | QUICK3 | 3 136 45 |
| 000001633 | 11/13/2000 | 0000003458 | INTERMOUNTAIN PARTNERS | Paid | | QUICK3 | 1 736 32 |
| 000001634 | 11/13/2000 | 0000044811 | JERDAN ELECTRIC LLC | Paid | | QUICK3 | 2 800 00 |
| 000001635 | 11/13/2000 | 0000001339 | MICROWAVE TOWER SERVICES INC | Paio | | QUICK3 | 3 049 0* |
| 000001636 | 11/13/2000 | 0000000002 | P-COM INC | Paid | | QUICK4 | 189 |
| 000001637 | 11/13/2000 | 0000002200 | OSP CONSULTANTS INC | Paid | | QUICK1 | 13 600 00 |
| 000001638 | 11/13/2000 | 0000002200 | OSP CONSULTANTS INC | Paid | | QUICK1 | 21 439 32 |
| 000001639 | 11/13/2000 | 0000001106 | PENN ENGINEERING COMPONENTS | Paid | | QUICK1 | 2 633 93 |
| 000001640 | 11/13/2000 | 0000008799 | POND & COMPANY | Paid | | QUICK1 | 10 508 77 |
| 000001641 | 11/13/2000 | 0000003401 | POWER AND TELEPHONE SUPPLY | Paid | | QUICK1 | 9 991 10 |
| 000001642 | 11/13/2000 | 0000005251 | PRIME ELECTRIC COMPANY INC | Paid | | QUICK1 | 21 113 48 |
| 000001643 | 11/13/2000 | 0000045171 | OSERVE COMMUNICATIONS | Paid | | QUICK1 | 2 378 50 |
| 000001644 | 11/13/2000 | 0000008827 | RAINBOW DISTRIBUTORS USA INC | Paid | | QUICK1 | 343 65 |
| 000001645 | 11/13/2000 | 0000003375 | ROTMAN ELECTRICAL CO. INC | Paid | | QUICK1 | 2 484 00 |
| 000001646 | 11/13/2000 | 0000019187 | SCHULD INCORPORATED | Paid | | QUICK1 | 622 00 |
| 000001647 | 11/13/2000 | 0000001001 | SURE POWER | Paid | | QUICK1 | 11 520 00 |
| 000001648 | 11/13/2000 | 0000026431 | SYSTEMS MANUFACTURING CORPORATION | Paid | | QUICK1 | 4 712 70 |

Confidential

LW00071217

NOV-27-2000  16:26    WINSTAR    2125844073    P.13

Ch History Report
PeopleSoft Accounts Payable
Activity From 10/12/2000 To 11/27/2000
Bank Account        WVFP03

port ID    WL_ehis
rator ID   DNIDOWIC
Run Control  CHECK  1

Page/N    4
Run Date  11/27/00
Run Time  4:04:50 PM

| Check Number | Check Date | Vendor Number | Vendor Name | Payment Status | Replaced Date | Pay Cycle | Amount |
|---|---|---|---|---|---|---|---|
| 0000001649 | 11/13/2000 | 0000000048 | TELLABS OPERATIONS | Paid | | QUICK1 | 6,438.18 |
| 0000001650 | 11/13/2000 | 0000000048 | TELLABS OPERATIONS | Paid | | QUICK1 | 9,302.43 |
| 0000001651 | 11/13/2000 | 0000000048 | TELLABS OPERATIONS | Paid | | QUICK1 | 7,857.27 |
| 0000001652 | 11/13/2000 | 0000001022 | TESSCO TECHNOLOGIES INC | Paid | | QUICK1 | 2,417.30 |
| 0000001653 | 11/13/2000 | 0000016934 | THE BOARD ROOM INC | Paid | | QUICK1 | 500.00 |
| 0000001654 | 11/13/2000 | 0000009885 | G S ELECTRIC CO | Paid | | QUICK1 | 14,240.00 |
| 0000001655 | 11/13/2000 | 0000000093 | GRAYBAR | Paid | | QUICK1 | 4,382.01 |
| 0000001656 | 11/13/2000 | 0000000093 | GRAYBAR | Paid | | QUICK1 | 1,901.67 |
| 0000001657 | 11/13/2000 | 0000000093 | GRAYBAR | Paid | | QUICK1 | 2,876. |
| 0000001658 | 11/14/2000 | 0000002756 | MICROWAVE DESIGNS INTERNATIONAL INC | Paid | | QUICK1 | 37,939.00 |
| 0000001659 | 11/14/2000 | 0000019834 | ABUCK INC | Paid | | QUICK1 | 14,327.00 |
| 0000001660 | 11/14/2000 | 0000000014 | ANICOM, INC | Paid | | QUICK1 | 65,571.27 |
| 0000001661 | 11/14/2000 | 0000001484 | CARRIER ACCESS CORPORATION | Paid | | QUICK1 | 18,015.00 |
| 0000001662 | 11/14/2000 | 0000001302 | GENSLER | Paid | | QUICK1 | 9,000.54 |
| 0000001663 | 11/14/2000 | 0000000913 | LIEBERT CORPORATION | Paid | | QUICK1 | 78,257.42 |
| 0000001664 | 11/14/2000 | 0000042303 | MASTEC TECHNOLOGIES | Paid | | QUICK1 | 482,661.45 |
| 0000001665 | 11/14/2000 | 0000001337 | SUNGLO TELECOM INC | Paid | | QUICK1 | 83,614.69 |
| 0000001666 | 11/14/2000 | 0000009941 | VECA ELECTRIC CO INC | Paid | | QUICK1 | 79,415.49 |
| 0000001667 | 11/14/2000 | 0000000002 | P COM INC | Paid | | QUICK1 | 31,741.21 |
| 0000001668 | 11/15/2000 | 0000040457 | SYSKA & HENNESSY INC | Paid | | QUICK1 | 41,300.00 |
| 0000001669 | 11/15/2000 | 0000018207 | MDM WEST INC | Paid | | QUICK1 | 2,423.88 |
| 0000001670 | 11/16/2000 | 0000033441 | ALPHA TELECOM SERVICES CO | Paid | | QUICK1 | 2,571.20 |
| 0000001671 | 11/17/2000 | 0000045247 | SPECIALTY CONSTRUCTION INC | Paid | | QUICK1 | 63,092.13 |
| 0000001672 | 11/17/2000 | 0000000001 | LMCI TECHNOLOGIES | Paid | | QUICK1 | 145,458.61 |
| 0000001673 | 11/20/2000 | 0000039278 | AMERIWAVE TECHNOLOGIES | Paid | | WVFWK | 4,370. |
| 0000001674 | 11/20/2000 | 0000000014 | ANICOM, INC | Paid | | WVFWK | 66,065.62 |
| 0000001675 | 11/20/2000 | 0000000906 | ANIXTER INC | Paid | | WVFWK | 951.55 |
| 0000001676 | 11/20/2000 | 0000001484 | ARBOR MATERIAL HANDLING INC | Paid | | WVFWK | 1,575.00 |
| 0000001677 | 11/20/2000 | 0000000907 | BAIRD SATELLITE | Paid | | WVFWK | 2,133.56 |
| 0000001678 | 11/20/2000 | 0000002071 | COMSEARCH | Paid | | WVFWK | 6,450.00 |
| 0000001679 | 11/20/2000 | 0000041222 | DATA GENERAL CORP | Paid | | WVFWK | 1,482.78 |
| 0000001680 | 11/20/2000 | 0000010917 | FISK ELECTRIC COMPANY | Paid | | WVFWK | 2,744.81 |
| 0000001681 | 11/20/2000 | 0000009620 | FTV INC | Paid | | WVFWK | 5,394.90 |
| 0000001682 | 11/20/2000 | 0000010690 | GALLAGHER ELECTRIC AND ENGINEERING C | Paid | | WVFWK | 4,000.02 |
| 0000001683 | 11/20/2000 | 0000001302 | GENSLER | Paid | | WVFWK | 9,194.93 |
| 0000001684 | 11/20/2000 | 0000000093 | GRAYBAR | Paid | | WVFWK | 7,664.83 |
| 0000001685 | 11/20/2000 | 0000000093 | GRAYBAR | Paid | | WVFWK | 2,200.00 |

onfidential

LW00071218

Report ID WL_ckhis
Operator ID DNIDOWIC
Run Control CHECK

k History Report
PeopleSoft Accounts Payable
Activity From 10/12/2000To 11/27/2000
Bank Account WVFOP

Page No 5
Run Date 11/27/00
Run Time 4:04:50 PM

| Check Number | Check Date | Vendor Number | Vendor Name | Payment Status | Replaced Date | Pay Cycle | Amount |
|---|---|---|---|---|---|---|---|
| 0000001686 | 11/20/2000 | 0000000093 | GRAYBAR | Paid | | WVFWK | 3 218 31 |
| 0000001687 | 11/20/2000 | 0000008606 | GUILD TECHNOLOGIES | Paid | | WVFWK | 35 749 77 |
| 0000001688 | 11/20/2000 | 0000008606 | GUILD TECHNOLOGIES | Overflow | | WVFWK | 0 00 |
| 0000001689 | 11/20/2000 | 0000002661 | IN HOUSE COMMUNICATIONS INC | Paid | | WVFWK | 2,625 00 |
| 0000001690 | 11/20/2000 | 0000041153 | INTEGRIX INC | Paid | | WVFWK | 831 00 |
| 0000001691 | 11/20/2000 | 0000003458 | INTERMOUNTAIN PARTNERS | Paid | | WVFWK | 779 85 |
| 0000001692 | 11/20/2000 | 0000035861 | L-3 COMMUNICATIONS/NARDA MICROWAVE- | Paid | | WVFWK | 0 00 |
| 0000001693 | 11/20/2000 | 0000000913 | LIEBERT CORPORATION | Paid | | WVFWK | 4 536.77 |
| 0000001694 | 11/20/2000 | 0000001339 | MICROWAVE TOWER SERVICES INC | Paid | | WVFWK | 10 921[illegible] |
| 0000001695 | 11/20/2000 | 0000046015 | NORMAN BREMER CORPORATION | Paid | | WVFWK | 3 263.56 |
| 0000001696 | 11/20/2000 | 0000033527 | OPC COMMUNICATIONS | Paid | | WVFWK | 1 106 00 |
| 0000001697 | 11/20/2000 | 0000002200 | OSP CONSULTANTS INC | Paid | | WVFWK | 7,299 00 |
| 0000001698 | 11/20/2000 | 0000001106 | PENN ENGINEERING COMPONENTS | Paid | | WVFWK | 9 95 |
| 0000001699 | 11/20/2000 | 0000003401 | POWER AND TELEPHONE SUPPLY | Paid | | WVFWK | 1 207 26 |
| 0000001700 | 11/20/2000 | 0000005251 | PRIME ELECTRIC COMPANY INC | Paid | | WVFWK | 6 129 00 |
| 0000001701 | 11/20/2000 | 0000000091 | PROGRESSIVE TECHNOLOGIES INC | Paid | | WVFWK | 4 067 00 |
| 0000001702 | 11/20/2000 | 0000005050 | PROJECT INTERFACE CONNECTIONS | Paid | | WVFWK | 2 666 80 |
| 0000001703 | 11/20/2000 | 0000045371 | OSERVE COMMUNICATIONS | Paid | | WVFWK | 371 00 |
| 0000001704 | 11/20/2000 | 0000034338 | REDLINE COMMUNICATIONS INC | Paid | | WVFWK | 4,969 74 |
| 0000001705 | 11/20/2000 | 0000019187 | SCHULD INCORPORATED | Paid | | WVFWK | 11 119 43 |
| 0000001706 | 11/20/2000 | 0000000937 | SOLUNET INC | Paid | | WVFWK | 35,383 99 |
| 0000001707 | 11/20/2000 | 0000000937 | SOLUNET INC | Overflow | | WVFWK | 0 00 |
| 0000001708 | 11/20/2000 | 0000010908 | STEALTH NETWORK TECHNOLOGIES INC | Paid | | WVFWK | 2 625 38 |
| 0000001709 | 11/20/2000 | 0000034136 | STRATA INC | Paid | | WVFWK | 1,364.0[illegible] |
| 0000001710 | 11/20/2000 | 0000001001 | SURE POWER | Paid | | WVFWK | 19 200 [illegible] |
| 0000001711 | 11/20/2000 | 0000000048 | TELLABS OPERATIONS | Paid | | WVFWK | 13 205 40 |
| 0000001712 | 11/20/2000 | 0000036954 | THE BOARD ROOM INC | Paid | | WVFWK | 250 00 |
| 0000001713 | 11/20/2000 | 0000017174 | THE COURTNEY COMPANY | Paid | | WVFWK | 1 758 89 |
| 0000001714 | 11/20/2000 | 0000004680 | TTC | Paid | | WVFWK | 2,517.50 |
| 0000001715 | 11/20/2000 | 0000045020 | TUSI CABLING SOLUTIONS INCORPORATED | Paid | | WVFWK | 3 901.50 |
| 0000001716 | 11/21/2000 | 0000003607 | CARTER & BURGESS INC | Paid | | QUICK1 | 356.11 |
| 0000001717 | 11/21/2000 | 0000000903 | MCMASTER CARR SUPPLY COMPANY | Paid | | QUICK1 | 480 90 |
| 0000001718 | 11/21/2000 | 0000034136 | STRATA INC | Paid | | QUICK1 | 1 774 81 |
| 0000001719 | 11/21/2000 | 0000038135 | KDC ARCHITECTS ENGINEERS | Paid | | QUICK1 | 4,910.35 |
| 0000001720 | 11/21/2000 | 0000033441 | ALPHA TELECOM SERVICES CO | Paid | | QUICK5 | 49 389 80 |
| 0000001721 | 11/21/2000 | 0000003607 | CARTER & BURGESS INC | Paid | | QUICK1 | 36,283.56 |
| 0000001722 | 11/21/2000 | 0000004658 | ELECTRONIC TELE-COMMUNICATIONS CORP | Paid | | QUICK3 | 10 892.29 |

NOV-27-2000  16:27  WINSTAR  2125844073  P 15

Report ID  WL_chkhr
Vendor ID  DNIDOWIC
Run Control  CHECK

Check History Report
PeopleSoft Accounts Payable
Activity From 10/12/2000 to 11/27/2000 — WYFWK

Bank Account — WYFWK

Run Date 11/27/00
Run Time 4:04:59 PM

| Check Number | Check Date | Vendor Number | Vendor Name | Payment Status | Replaced Date | Pay Cycle | Amount |
|---|---|---|---|---|---|---|---|
| 0000001723 | 11/21/2000 | 0000001292 | HUGH O KANE ELECTRIC CO LLC | Paid | | QUICK3 | 242,011.69 |
| 0000001724 | 11/21/2000 | 0000001153 | INTEGRIX INC | Paid | | QUICK3 | 20,463.00 |
| 0000001725 | 11/21/2000 | 0000004929 | HOGANTEC INC | Paid | | QUICK3 | 71,143.69 |
| 0000001726 | 11/21/2000 | 0000001141 | I.EE TECHNOLOGIES INC | Paid | | QUICK1 | 75,000.00 |
| 0000001727 | 11/21/2000 | 0000042763 | SOLAR COMMUNICATIONS INTERNATIONAL I | Paid | | QUICK1 | 84,974.36 |
| 0000001728 | 11/21/2000 | 0000044153 | INTEGRIX INC | Paid | | QUICK1 | 21,801.50 |
| 0000001729 | 11/21/2000 | 0000039183 | PLAYER AND COMPANY | Paid | | QUICK1 | 23,450.00 |
| 0000001730 | 11/21/2000 | 0000011437 | TOTAL UPGRADE SOLUTIONS INC | Paid | | QUICK1 | 18,328.90 |
| 0000001731 | 11/21/2000 | 0000005607 | CARTER & BURGESS INC | Paid | | QUICK1 | 9.49 |
| 0000001732 | 11/21/2000 | 0000001292 | HUGH O KANE ELECTRIC CO LLC | Paid | | QUICK3 | 178,485.75 |
| 0000001733 | 11/21/2000 | 0000001292 | HUGH O KANE ELECTRIC CO LLC | Paid | | QUICK1 | 74,904.88 |
| 0000001734 | 11/21/2000 | 0000001292 | HUGH O KANE ELECTRIC CO LLC | Paid | | QUICK1 | 60,531.63 |
| 0000001735 | 11/21/2000 | 0000001292 | HUGH O KANE ELECTRIC CO LLC | Paid | | QUICK1 | 92,556.86 |
| 0000001736 | 11/21/2000 | 0000000048 | TELLABS OPERATIONS | Paid | | QUICK1 | 119,154.09 |
| 0000001737 | 11/21/2000 | 0000000048 | TELLABS OPERATIONS | Paid | | QUICK3 | 402,553.79 |
| 0000001738 | 11/21/2000 | 0000000902 | SECURITY TECHNOLOGIES GROUP INC | Paid | | QUICK1 | 24,006.02 |
| 0000001739 | 11/21/2000 | 0000016954 | THE BOARD ROOM INC | Paid | | QUICK1 | 16,105.00 |
| 0000001740 | 11/21/2000 | 0000049387 | EXFO ELECTRO OPTICAL ENGINEERING INC | Paid | | QUICK1 | 74,660.00 |
| 0000001741 | 11/21/2000 | 0000010917 | FISK ELECTRIC COMPANY | Paid | | QUICK1 | 13,649.00 |
| 0000001742 | 11/21/2000 | 0000010917 | FISK ELECTRIC COMPANY | Paid | | QUICK1 | 78,245.50 |
| 0000001743 | 11/21/2000 | 0000003607 | CARTER & BURGESS INC | Paid | | QUICK1 | 140,312.13 |
| 0000001744 | 11/27/2000 | 0000002852 | ACT NETWORKS INC | Paid | | WYFWK | 27,721.31 |
| 0000001745 | 11/27/2000 | 0000001703 | ADC TELECOMMUNICATIONS | Paid | | WYFWK | 13,676.38 |
| 0000001746 | 11/27/2000 | 0000009978 | ADVANCED FIBER COMMUNICATIONS | Paid | | WYFWK | 1,194,398.97 |
| 0000001747 | 11/27/2000 | 0000043202 | AGILENT TECHNOLOGIES | Paid | | WYFWK | 3,040 |
| 0000001748 | 11/27/2000 | 0000036714 | ALLEGHENY BUILDERS INC | Paid | | WYFWK | 74,928.105 |
| 0000001749 | 11/27/2000 | 0000009443 | ALLIED GROUP INC | Paid | | WYFWK | 114,753.84 |
| 0000001750 | 11/27/2000 | 0000039278 | AMERIWAVE TECHNOLOGIES | Paid | | WYFWK | 69,255.00 |
| 0000001752 | 11/27/2000 | 0000008634 | ASPEN SYSTEMS INC | Paid | | WYFWK | 1,968.53 |
| 0000001753 | 11/27/2000 | 0000040697 | AZTEA TECH SERVICE | Paid | | WYFWK | 20,473.85 |
| 0000001754 | 11/27/2000 | 0000009607 | BAIRD SATELLITE | Paid | | WYFWK | 492.36 |
| 0000001755 | 11/27/2000 | 0000036480 | BCC BLACKBOX | Paid | | WYFWK | 144,232.14 |
| 0000001756 | 11/27/2000 | 0000047124 | BOVIS LEND LEASE INC | Paid | | WYFWK | 25,984.00 |
| 0000001757 | 11/27/2000 | 0000041246 | BUILDERS GROUP | Paid | | WYFWK | 210,095.41 |
| 0000001758 | 11/27/2000 | 0000001301 | BULLEY & ANDREWS/BUCHANAN LLC | Paid | | WYFWK | 372,422.00 |
| 0000001758 | 11/27/2000 | 0000010480 | CAMSAN INC | Paid | | WYFWK | 6,000.00 |
| 0000001759 | 11/27/2000 | 0000031484 | CARRIER ACCESS CORPORATION | Paid | | WYFWK | 922,852.50 |



onfidential

LW00071220

Report ID    WL_chklc
Operator ID    DNIDOWIC
Run Control    CHECK

NOV-27-2000    4:04:50 PM

2125844073    P 16

WINSTAR

cx History Report
PeopleSoft Accounts Payable
Activity From 10/12/2000 To 11/27/2000
Bank Account
WWTOP

| Check Number | Check Date | Vendor Name | Vendor Number | Payment Status | Replaced Date | Pay Cycle | Amount |
|---|---|---|---|---|---|---|---|
| 0000001760 | 1/27/2000 | CARTER & BURGESS INC | 0000003607 | Paid | | WVFWK | 82 962.00 |
| 0000001761 | 1/27/2000 | CARTER & BURGESS INC | 0000003607 | Paid | | WVFWK | 7 050.00 |
| 0000001762 | 1/27/2000 | CERAGON NETWORKS INC | 0000043585 | Paid | | WVFWK | 310 520.00 |
| 0000001763 | 1/27/2000 | CLEARVIEW ELECTRIC INC | 0000045191 | Paid | | WVFWK | 12 200.00 |
| 0000001764 | 1/27/2000 | COM NET CONSTRUCTION SERVICES | 0000009655 | Paid | | WVFWK | 127 662.82 |
| 0000001765 | 1/27/2000 | COMSEARCH | 0000002071 | Paid | | WVFWK | 108 684.00 |
| 0000001766 | 1/27/2000 | COMSEARCH | 0000002071 | Overflow | | WVFWK | 0.00 |
| 0000001767 | 1/27/2000 | COMSEARCH | 0000002071 | Overflow | | WVFWK | 0.00 |
| 0000001768 | 1/27/2000 | COMSEARCH | 0000002071 | Overflow | | WVFWK | 0.00 |
| 0000001769 | 1/4/2000 | COMSEARCH | 0000002071 | Overflow | | WVFWK | 0.00 |
| 0000001770 | 1/27/2000 | COMSEARCH | 0000002071 | Overflow | | WVFWK | 0.00 |
| 0000001771 | 1/27/2000 | CONNECTION CONCEPTS INC | 0000001453 | Paid | | WVFWK | 14 053.00 |
| 0000001772 | 1/27/2000 | CONNECTION CONCEPTS INC | 0000001453 | Paid | | WVFWK | 13 625.00 |
| 0000001773 | 1/27/2000 | DIGITAL COMMUNICATIONS GROUP INC | 0000032917 | Paid | | WVFWK | 120 675.00 |
| 0000001774 | 1/27/2000 | DIGITAL MICROWAVE CORP | 0000001002 | Paid | | WVFWK | 49 760.00 |
| 0000001775 | 1/27/2000 | ELECTRICAL CONSTRUCTION CO | 0000039199 | Paid | | WVFWK | 132 877.66 |
| 0000001776 | 1/27/2000 | ELECTRONIC TELE-COMMUNICATIONS CORP | 0000004658 | Paid | | WVFWK | 28 041.82 |
| 0000001777 | 1/27/2000 | ENTREX COMMUNICATION SERVICES INC | 0000043595 | Paid | | WVFWK | 18 068.59 |
| 0000001778 | 1/27/2000 | EPLUS TECHNOLOGY INC | 0000042009 | Paid | | WVFWK | 15 199.54 |
| 0000001779 | 1/27/2000 | ESD SYSTEMS | 0000044126 | Paid | | WVFWK | 23 100.00 |
| 0000001780 | 1/27/2000 | EXCEL PAINTING COMPANY | 0000044216 | Paid | | WVFWK | 17 850.00 |
| 0000001781 | 1/27/2000 | EXFO ELECTRO OPTICAL ENGINEERING INC | 0000040367 | Paid | | WVFWK | 18 665.00 |
| 0000001782 | 1/27/2000 | FISK ELECTRIC COMPANY | 0000010917 | Paid | | WVFWK | 169 218.57 |
| 0000001783 | 1/27/2000 | FISK ELECTRIC COMPANY | 0000010917 | Paid | | WVFWK | 33 781.95 |
| 0000001784 | 1/27/2000 | FOUNDRY NETWORKS INC | 0000013289 | Paid | | WVFWK | 725 61.— |
| 0000001785 | 1/27/2000 | FRANK PARSONS PAPER COMPANY INC | 0000033434 | Paid | | WVFWK | 8 339.10 |
| 0000001786 | 1/27/2000 | GENSLER | 0000009885 | Paid | | WVFWK | 19 390.00 |
| 0000001787 | 1/27/2000 | GRAYBAR | 0000001202 | Paid | | WVFWK | 25 837.87 |
| 0000001788 | 1/27/2000 | GRAYBAR | 0000000093 | Paid | | WVFWK | 16 303.12 |
| 0000001789 | 1/27/2000 | GRAYBAR | 0000000093 | Paid | | WVFWK | 6 414.88 |
| 0000001790 | 1/27/2000 | GRAYBAR | 0000000093 | Paid | | WVFWK | 208.78 |
| 0000001791 | 1/27/2000 | GUILD TECHNOLOGIES | 0000008606 | Paid | | WVFWK | 478 511.75 |
| 0000001792 | 1/27/2000 | GUILD TECHNOLOGIES | 0000008606 | Overflow | | WVFWK | 0.00 |
| 0000001793 | 1/27/2000 | GUILD TECHNOLOGIES | 0000008606 | Overflow | | WVFWK | 0.00 |
| 0000001794 | 1/27/2000 | GUILD TECHNOLOGIES | 0000008606 | Overflow | | WVFWK | 0.00 |
| 0000001795 | 1/27/2000 | HELP SERVICE CO | 0000032077 | Paid | | WVFWK | 46 845.00 |
| 0000001796 | 1/27/2000 | HOGANTEC INC | 0000004929 | Paid | | WVFWK | 18 730.00 |

Confidential



LW00071221

NOV-27-2000   16 28        WINSTAR                          2125844073      P 17

Report ID   WL_chhla    DMDOWIC
persrno ID  DMDOWIC
Run Control CHECK

History Report
Progra...n Accounts Payable
Activity From. 10/12/2000 To 11/27/2000        WFPOt

Fast
Run Date  11/27/00
Run Time  4 04 0 PM

| Check Number | Check Date | Vendor Number | Vendor Name | Payment Status | Replaced Date | Pay Cycle | Amount |
|---|---|---|---|---|---|---|---|
| 0000001797 | 11/27/2000 | 0000001292 | HUGH OKANE ELECTRIC CO  LLC | Paid | | WVFWK | 560 264 74 |
| 0000001798 | 11/27/2000 | 0000001292 | HUGH OKANE ELECTRIC CO  LLC | Overflow | | WVFWK | 0 00 |
| 0000001799 | 11/27/2000 | 0000001292 | HUGH OKANE ELECTRIC CO  LLC | Overflow | | WVFWK | 0 00 |
| 0000001800 | 11/27/2000 | 0000001292 | HUGH OKANE ELECTRIC CO  LLC | Overflow | | WVFWK | 0 00 |
| 0000001801 | 11/27/2000 | 0000001292 | HUGH OKANE ELECTRIC CO  LLC | Overflow | | WVFWK | 0 00 |
| 0000001802 | 11/27/2000 | 0000005650 | HUGHES NETWORK SYSTEMS INC | Paid | | WVFWK | 165 875 00 |
| 0000001803 | 11/27/2000 | 0000000913 | LIEBERT CORPORATION | Paid | | WVFWK | 56,636 36 |
| 0000001804 | 11/27/2000 | 0000003206 | MARCONI COMMUNICATIONS | Paid | | WVFWK | 9479".~9 |
| 0000001805 | 11/27/2000 | 0000031222 | MARKET HALSEY URBAN RENEWAL  LLC | Paid | | WVFWK | 30 00....0 |
| 0000001806 | 11/27/2000 | 0000042501 | MASTEC TECHNOLOGIES | Paid | | WVFWK | 44 091 77 |
| 0000001807 | 11/27/2000 | 0000018207 | MDM WEST INC | Paid | | WVFWK | 63,906 00 |
| 0000001808 | 11/27/2000 | 0000002756 | MICLOWAVE DESIGNS INTERNATIONAL  INC | Paid | | WVFWK | 61 951 00 |
| 0000001809 | 11/27/2000 | 0000001339 | MICROWAVE TOWER SERVICES  INC | Paid | | WVFWK | 13,229 63 |
| 0000001810 | 11/27/2000 | 0000002749 | N J SULLIVAN CO  INC | Paid | | WVFWK | 9 153 00 |
| 0000001811 | 11/27/2000 | 0000043611 | NEWTON INSTRUMENT COMPANY INC | Paid | | WVFWK | 2,181 81 |
| 0000001812 | 11/27/2000 | 0000039585 | OSAGE SYSTEMS GROUP INC | Paid | | WVFWK | 641 793 21 |
| 0000001813 | 11/27/2000 | 0000002200 | OSP CONSULTANTS INC | Paid | | WVFWK | 175 722 00 |
| 0000001814 | 11/27/2000 | 0000002200 | OSP CONSULTANTS INC | Overflow | | WVFWK | 0 00 |
| 0000001815 | 11/27/2000 | 0000000002 | P-COM INC | Paid | | WVFWK | 2 511 131 50 |
| 0000001816 | 11/27/2000 | 0000000002 | P-COM INC | Overflow | | WVFWK | 0 00 |
| 0000001817 | 11/27/2000 | 0000000002 | P COM INC | Overflow | | WVFWK | 0 00 |
| 0000001818 | 11/27/2000 | 0000002705 | P COM NETWORK SERVICES INC | Paid | | WVFWK | 17 660 00 |
| 0000001819 | 11/27/2000 | 0000002705 | P COM NETWORK SERVICES INC | Paid | | WVFWK | 32,136 04 |
| 0000001820 | 11/27/2000 | 0000008799 | POND & COMPANY | Overflow | | WVFWK | 0 00 |
| 0000001821 | 11/27/2000 | 0000003401 | POWER AND TELEPHONE SUPPLY | Paid | | WVFWK | 38 00) ~ |
| 0000001822 | 11/27/2000 | 0000003401 | POWER AND TELEPHONE SUPPLY | Paid | | WVFWK | 756,50....) |
| 0000001823 | 11/27/2000 | 0000005251 | PRIME ELECTRIC COMPANY INC | Overflow | | WVFWK | 0 00 |
| 0000001824 | 11/27/2000 | 0000005251 | PRIME ELECTRIC COMPANY INC | Paid | | WVFWK | 295 056 00 |
| 0000001825 | 11/27/2000 | 0000000991 | PROGRESSIVE TECHNOLOGIES INC | Overflow | | WVFWK | 0 00 |
| 0000001826 | 11/27/2000 | 0000005050 | PROJECT INTERFACE CONNECTIONS | Paid | | WVFWK | 456 118 00 |
| 0000001827 | 11/27/2000 | 0000004571 | QSERVE COMMUNICATIONS | Paid | | WVFWK | 1 875 00 |
| 0000001828 | 11/27/2000 | 0000008827 | RAINBOW DISTRIBUTORS USA  INC | Paid | | WVFWK | 21 406 50 |
| 0000001829 | 11/27/2000 | 0000034518 | REDLINE COMMUNICATIONS INC | Paid | | WVFWK | 306 00 |
| 0000001830 | 11/27/2000 | 0000003173 | ROTMAN ELECTRICAL CO  INC | Paid | | WVFWK | 3,853 75 |
| 0000001831 | 11/27/2000 | 0000045290 | RSA SECURITY INC | Paid | | WVFWK | 16,450 63 |
| 0000001832 | 11/27/2000 | 0000001562 | SACHS SYSTEMS INC | Paid | | WVFWK | 33,986 86 |
| 0000001833 | 11/27/2000 | 0000019187 | SCHILD INCORPORATED | Paid | | WVFWK | 29 623 77 |
| | | | | Paid | | WVFWK | 135 127 29 |

Report ID  WLchhist
Operator ID  DNIDOWIC
Run Control  CHECK

cK History Report
Prep. Jeff Accounts Payable
Activity From 10/12/2000 To 11/21/2000
Bank Account    WVFWK

Pass
Run Date  11/27/2000
Run Time  4 04 50 PM

2125944073    P 1B

| Check Number | Check Date | Vendor Number | Vendor Name | Payment Status | Replaced Date | Pay Cycle | Amount |
|---|---|---|---|---|---|---|---|
| 0000001834 | 11/27/2000 | 0000003743 | SECURITY TECHNOLOGIES GROUP | Paid | | WVFWK | 11,900.00 |
| 0000001835 | 11/27/2000 | 0000000977 | SOLUNET INC | Paid | | WVFWK | 2,460,763.54 |
| 0000001836 | 11/27/2000 | 0000036924 | SPECTRA SITE | Paid | | WVFWK | 162,068.00 |
| 0000001837 | 11/27/2000 | 0000010908 | STEALTH NETWORK TECHNOLOGIES INC | Paid | | WVFWK | 160,554.00 |
| 0000001838 | 11/27/2000 | 0000034136 | STRATA INC | Paid | | WVFWK | 69,213.31 |
| 0000001839 | 11/27/2000 | 0000040181 | SUNGLO TELECOM | Paid | | WVFWK | 575.00 |
| 0000001840 | 11/27/2000 | 0000001337 | SUNGLO TELECOM INC | Paid | | WVFWK | 107,093.00 |
| 0000001841 | 11/27/2000 | 0000001001 | SURE POWER | Paid | | WVFWK | 7,320.00 |
| 0000001842 | 11/27/2000 | 0000032114 | TAYLOR COMMUNICATIONS INC | Paid | | WVFWK | 24,31.39 |
| 0000001843 | 11/27/2000 | 0000041006 | TELECOM PROFESSIONAL SERVICES INC | Paid | | WVFWK | 62,979.00 |
| 0000001844 | 11/27/2000 | 0000000048 | TELLABS OPERATIONS | Paid | | WVFWK | 1,909,638.36 |
| 0000001845 | 11/27/2000 | 0000000048 | TELLABS OPERATIONS | Overflow | | WVFWK | 0.00 |
| 0000001846 | 11/27/2000 | 0000001022 | TESSCO TECHNOLOGIES INC | Paid | | WVFWK | 1,161.78 |
| 0000001847 | 11/27/2000 | 0000011174 | THE COURTNEY COMPANY | Paid | | WVFWK | 16,425.50 |
| 0000001848 | 11/27/2000 | 0000004680 | TTC | Paid | | WVFWK | 47,279.44 |
| 0000001849 | 11/27/2000 | 0000045020 | TUSI CABLING SOLUTIONS INCORPORATED | Paid | | WVFWK | 316,433.69 |
| 0000001850 | 11/27/2000 | 0000041228 | URS GREINER WOODWARD CYCLE | Paid | | WVFWK | 6,987.64 |
| 0000001851 | 11/27/2000 | 0000001043 | VA LINUX SYSTEMS | Paid | | WVFWK | 11,190.05 |
| 0000001852 | 11/27/2000 | 0000000959 | VALMONT MICROFLECT INC | Paid | | WVFWK | 16,305.51 |
| 0000001853 | 11/27/2000 | 0000045156 | WESTEK ELECTRONICS INC | Paid | | WVFWK | 2,863.58 |
| 0000001854 | 11/27/2000 | 0000001252 | WESTERN COMM TOWER INC | Paid | | WVFWK | 1,074,722 |
| 0000001855 | 11/27/2000 | 0000006493 | VOLT SERVICES GROUP | Paid | | OUICK9 | 29,470.00 |
| 0000001856 | 11/27/2000 | 0000000048 | TELLABS OPERATIONS | Paid | | OUICK9 | 109,274.75 |
| 0000001857 | 11/27/2000 | 0000041708 | BURR COMPUTER ENVIRONMENTS INC | Paid | | OUICK9 | 364,395.99 |
| 0000001858 | 11/27/2000 | 0000003501 | BULLEY & ANDREWS/BUCHANAN LLC | Paid | | OUICK1 | 260,57>45 |
| 0000001859 | 11/27/2000 | 0000000906 | ANIXTER INC | Paid | | OUICK1 | 148,783.10 |
| 0000001860 | 11/27/2000 | 0000001337 | SUNGLO TELECOM INC | Paid | | OUICK9 | 210,926.00 |
| 0000001861 | 11/27/2000 | 0000002705 | P-COM NETWORK SERVICES INC | Paid | | OUICK9 | 210,926.00 |

Total Amount    30,669,953.55

less Voids    (661,019.17)
                30,008,934.3?

TOTAL P 1B

# ROA
# TAB
# 486

## NOTICE OF REQUEST FOR BORROWING

To    Lucent Technologies Inc , as Administrative Agent

Reference is made to the Credit Agreement dated as of May 4  2000 among WVF LU2 LLC
( the Borrower"), Winstar Communications Inc  (Winstar)  the lenders which are a party
thereto, The Bank of New York as Collateral Agent, and Lucent Technologies Inc
as Administrative Agent (as amended from time to time  the  Credit Agreement )
Unless otherwise defined herein  capitalized terms defined in the Credit Agreement
and used herein shall have the same meaning ascribed to such terms in the Credit
Agreement.

Pursuant to Section 2 03 the Credit Agreement the Borrower hereby gives the Administrative
Agent written notice of request for a Borrowing according to the following instructions

1  Total Amount of Borrowing:    $    32 006,966 01

a) Amount of Borrowing to be paid directly to
   Lucent for Lucent Invoices    $    15,942 95

b) Amount of Borrowing to be paid directly to
   Lucent for Lucent Subsidiary Invoices    $    663 637 32

c) Amount of Borrowing to be paid directly to
   Lucent for Lucent International Invoices    $    1 327 333 70

d) Amount of Borrowing to be paid directly to
   Lucent for Lucent Arrangement Fees    $

e) Amount of Borrowing to be paid directly to
   the Borrower Non Lucent Equipment    $    30,000 052 04

| BANK NAME | STATE STREET BANK & TRUST BOSTON  MA |
| ABA NUMBER | 011 000 028 |
| ACCOUNT NAME | MERRILL GROUP CREDIT  MERRILL PREMIER FUND |
| FOR FURTHER CREDIT TO | WVF LU2, LLC |
| ACCOUNT NUMBER | 3 3 2 4 7 7 2 |
| AMOUNT | $ |

**DEFENDANT'S
EXHIBIT
8**

CONFIDENTIAL
3WC 0008176

| | |
|---|---|
| BANK NAME | **STATE STREET BANK & TRUST**<br>**BOSTON MA** |
| ABA NUMBER | **011 000 028** |
| ACCOUNT NAME | **MERRILL GROUP**<br>**CREDIT MERRILL PREMIER FUND** |
| FOR FURTHER CREDIT TO | **WVF LU2 LLC** |
| ACCOUNT NUMBER | **3324773** |
| AMOUNT | **$ 30,000,052 04** |

2  Effective Date of Borrowing    <u>December 29, 2000</u>      .

3  Type of Borrowing    _____ LIBOR   __X__ ABR

4  Interest Period    Months    _____ 1 ____ 2 ____ 3
                                 _____ 6 ____ 9 ____ 12

5  The Lucent invoices to be paid with the Borrowing are listed on Schedule A attached

The Borrower hereby certifies that all conditions for borrowing set forth in Section 4 03 the Credit Agreement have been satisfied or will be satisfied as of the date hereof and the date the borrowing is made

Dated this 22 day of December 2000

WVF LU2 LLC

By _____

Name   Richard Uhl

CONFIDENTIAL
3WC 0008177

12/22/2000  12 35 PM

**Lucent Invoices - Draw 6**
**December 29, 2000**

| | Invoice # | Invoice Amt | |
|---|---|---|---|

### DOMESTIC

| | | | |
|---|---|---|---|
| PARENT | 30110168 | 105 00 | 30110168 |
| PARENT | 40113486 | 35 00 | 40113486 |
| PARENT | 60109125 | 335 00 | 60109125 |
| PARENT | SU022487 | 300 86 | |
| PARENT | 10106641 | 35 00 | 10106641 |
| PARENT | 60109296 | 370 00 | 60109296 |
| PARENT | 50113939 | 70 00 | 50113939 |
| PARENT | 10106541 | 970 00 | 10106541 |
| PARENT | 60109190 | 335 00 | 60109190 |
| PARENT | 40113954 | 3 435 50 | 40113954 |
| PARENT | 30110465 | 35 00 | 30110465 |
| PARENT | 40114021 | 580 00 | 40114021 |
| PARENT | 30111021 | 35 00 | 30111021 |
| PARENT | 60109499 | 370 00 | 60109499 |
| PARENT | 40114870 | 835 00 | 40114870 |
| PARENT | ER011587 | 174 959 27 | ER011587 |
| PARENT | S0954714 | 5 23 | |
| PARENT | S0958427 | 5 23 | |
| PARENT | 50115206 | 35 00 | |
| PARENT | 30111516 | 35 00 | |
| PARENT | NR010436 | 3 004 00 | NR010436 |
| PARENT | WR001048 | (8,238 90) | Paid and processed by AP in M |
| PARENT | | (161,708 24) | Lucent Credit for Marketing D |

| | PARENT TOTAL | 15,942 95 | |
|---|---|---|---|

| | | | |
|---|---|---|---|
| NETWORK CARE | PS 37325 | 19,434 00 | |
| NETWORK CARE | PS 32263 | 47 479 00 | |
| NETWORK CARE | PS-32262 | 5,284 07 | |
| NETWORK CARE | PS-34586 | 7,986 19 | |
| NETWORK CARE | PS 30807 | 24 808 00 | |
| | TOTAL NETWORK CARE | 104 991 26 | |

| | | | |
|---|---|---|---|
| Ascend Group | 400022568 | 4,528 51 | Processed thru A/P as $105 28 |
| Ascend Group | 400020887 | 68 46 | |
| Ascend Group | 400027060 | 272,997 16 | |
| Ascend Group | 400027018 | 279,447 00 | |
| Ascend Group | 400026681 | 1 604 93 | |

CONFIDENTIAL
3WC 0008178

12/22/2000 12 35 PM

### Lucent Invoices - Draw 6
#### December 29, 2000

| Invoice # | Invoice Amt |
|---|---|
| TOTAL ASCEND | 558 646 06 |

| TOTAL DOMESTIC | 679,580 27 |

CONFIDENTIAL
3WC 0008179

12/22/2000 12 35 PM

**Lucent Invoices – Draw 6**
December 29, 2000

| Invoice # | Invoice Amt |
|---|---|

### INTERNATIONAL

| | Invoice # | Invoice Amt |
|---|---|---|
| FRANCE | 985427 | 36,196 00 |
| FRANCE | 985428 | 36,196 00 |
| FRANCE | 985429 | 36 196 00 |
| | FRANCE TOTAL | 108 588 00 |
| | | |
| BELGIUM | 983214 | 14 304 00 |
| BELGIUM | 985269 | 5 382 00 |
| BELGIUM | 985563 | 27 554 00 |
| BELGIUM | 985561 | 27 554 00 |
| BELGIUM | 985560 | 27 554 00 |
| BELGIUM | 985381 | 2 333 00 |
| BELGIUM | 985386 | 2 333 00 |
| BELGIUM | 985362 | 2 933 00 |
| BELGIUM | 985357 | 2 933 00 |
| BELGIUM | 984882 | 5 382 00 |
| BELGIUM | 983520 | 12 831 00 |
| BELGIUM | 983722 | 14,552 00 |
| BELGIUM | 984556 | 9 421 00 |
| | BELGIUM TOTAL | 155,066 00 |
| | | |
| NETHERLANDS | 985531 | 65,266 00 |
| NETHERLANDS | 985532 | 65 266 00 |
| NETHERLANDS | 985533 | 65,266 00 |
| NETHERLANDS | 985238 | 25 507 00 |
| NETHERLANDS | 978028 | 13,413 00 |
| NETHERLANDS | 984746 | (13,413 00) |
| | NETHERLANDS TOTAL | 221,305 00 |
| | | |
| UNITED KINGDOM | 985873 | 16 773 95 |
| UNITED KINGDOM | 985569 | 28 449 00 |
| UNITED KINGDOM | 985568 | 28,449 00 |
| UNITED KINGDOM | 985566 | 28 449 00 |
| UNITED KINGDOM | 983769 | 22 176 00 |
| UNITED KINGDOM | 985784 | 114 820 75 |

CONFIDENTIAL
3WC 0008180

12/22/2000  12 35 PM

## Lucent Invoices - Draw 6
### December 29, 2000

| | Invoice # | Invoice Amt | |
|---|---|---|---|
| UNITED KINGDOM | 985711 | 74 564 15 | |
| | UNITED KINGDOM TOTAL | 313 681 85 | |
| | | | |
| GERMANY | 985538 | 30,130 00 | |
| GERMANY | 985534 | 30,130 00 | |
| GERMANY | 985536 | 30 130 00 | |
| GERMANY | 985753 | 9 047 00 | |
| GERMANY | 985716 | 35 988 85 | |
| GERMANY | 983686 | 18 190 00 | |
| | GERMANY TOTAL | 153 615 85 | |
| | | | |
| EUROPE | 985465 | 1,257 75 | |
| EUROPE | 985461 | (1,257 75) | |
| EUROPE | 985466 | 88 878 31 | |
| EUROPE | 985463 | (88 878 31) | |
| | EUROPE TOTAL | | |
| | | | |
| ARGENTINA | 2s510135 | 107 285 00 | Lucent USA |
| ARGENTINA | 2s510154 | 25 198 00 | Lucent USA |
| ARGENTINA | 2s510145 | 42,680 00 | Lucent USA |
| ARGENTINA | 2s510158 | 4,100 00 | Lucent USA |
| ARGENTINA | 2s510157 | 652 00 | Lucent USA |
| ARGENTINA | 2s510160 | 25 200 00 | Lucent USA |
| ARGENTINA | 2s510159 | 11,460 00 | Lucent USA |
| ARGENTINA | 2s510161 | 9,856 00 | Lucent USA |
| ARGENTINA | 2s510163 | 896 00 | Lucent USA |
| ARGENTINA | 2s510166 | 18 750 00 | Lucent USA |
| ARGENTINA | 2s510168 | 129,000 00 | Lucent USA |
| | ARGENINA TOTAL | 375,077 00 | |
| | | | |
| | INTERNATIONAL TOTAL | 1 327,333 70 | |

CONFIDENTIAL
3WC 0008181

Report ID  WL_ckhis
Operator ID  PDESIMON
Run Contr  CHECK

**Check History Report**
PeopleSoft Accounts Payable
Activity From 11/28/2000 To 12/21/2000
Bank/Account    WXPOI

Par No        12/21/00
Run Date
Run Time    9 02 59 AM

| Check Number | Check Date | Vendor Number | Vendor Name | Payment Status | Replaced Date | Pay Cycle | Amount |
|---|---|---|---|---|---|---|---|
| 000001862 | 11/28/2000 | 000054338 | REDLINE COMMUNICATIONS INC | Paid | | WVFWX | 34 366 84 |
| 000001863 | 11/29/2000 | 000000047 | LUCENT TECHNOLOGIES INC | Paid | | WVFWX | 0 00 |
| 000001864 | 11/29/2000 | 000000047 | LUCENT TECHNOLOGIES INC | Overflow | | WVFWX | 0 00 |
| 000001865 | 11/29/2000 | 000000047 | LUCENT TECHNOLOGIES INC | Overflow | | WVFWX | 0 00 |
| 000001866 | 11/29/2000 | 000000047 | LUCENT TECHNOLOGIES INC | Overflow | | WVFWX | 0 00 |
| 000001867 | 11/29/2000 | 000000047 | LUCENT TECHNOLOGIES INC | Overflow | | WVFWX | 0 00 |
| 000001868 | 11/29/2000 | 000000047 | LUCENT TECHNOLOGIES INC | Overflow | | WVFWX | 0 00 |
| 000001869 | 11/29/2000 | 000000047 | LUCENT TECHNOLOGIES INC | Overflow | | WVFWX | 0 00 |
| 000001870 | 11/29/2000 | 000000047 | LUCENT TECHNOLOGIES INC | Overflow | | WVFWK | 0 00 |
| 000001871 | 11/29/2000 | 000000047 | LUCENT TECHNOLOGIES INC | Overflow | | WVFWK | 0 00 |
| 000001872 | 11/30/2000 | 000000001 | IMCI TECHNOLOGIES | Overflow | | WVFWK | 0 00 |
| 000001873 | 11/30/2000 | 000000001 | IMCI TECHNOLOGIES | Paid | | QUICK1 | 16 564 08 |
| 000001874 | 11/30/2000 | 000000001 | IMCI TECHNOLOGIES | Paid | | QUICK9 | 35 983 09 |
| 000001875 | 11/30/2000 | 000017809 | SIEMENS INFORMATION & COMM NETWORKS | Paid | | QUICK1 | 154 491 99 |
| 000001876 | 12/1/2000 | 000007324 | CIC ASSOCIATES INC | Paid | | QUICK1 | 639 277 20 |
| 000001877 | 12/5/2000 | 000000002 | P COM INC | Paid | | QUICK4 | 103 969 78 |
| 000001878 | 12/5/2000 | 000032206 | MARCONI COMMUNICATIONS | Paid | | QUICK4 | 1 943 634 10 |
| 000001879 | 12/5/2000 | 000000906 | ANIXTER INC | Paid | | QUICK4 | 128 687 69 |
| 000001880 | 12/5/2000 | 000000906 | ANIXTER INC | Paid | | QUICK4 | 153 494 80 |
| 000001881 | 12/7/2000 | 000000001 | IMCI TECHNOLOGIES | Paid | | QUICK4 | 84 348 53 |
| 000001882 | 12/7/2000 | 000000001 | IMCI TECHNOLOGIES | Paid | | QUICK1 | 4 349 24 |
| 000001883 | 12/7/2000 | 000045247 | SPECIALTY CONSTRUCTION INC | Paid | | QUICK1 | 214 704 00 |
| 000001884 | 12/7/2000 | 000077772 | HNS TELECOM | Paid | | QUICK1 | 73 845 20 |
| 000001885 | 12/7/2000 | 000011669 | HIGGINS NETWORK SERVICES | Paid | | QUICK1 | 34 512 79 |
| 000001886 | 12/8/2000 | 000043595 | ENTREX COMMUNICATION SERVICES INC | Paid | | QUICK1 | 11 970 26 |
| 000001887 | 12/8/2000 | 000001292 | HUGH OKANE ELECTRIC CO LLC | Paid | | QUICK1 | 98 667 63 |
| 000001888 | 12/8/2000 | 000001292 | HUGH OKANE ELECTRIC CO LLC | Paid | | QUICK1 | 44 357 47 |
| 000001889 | 12/8/2000 | 000002705 | P COM NETWORK SERVICES INC | Paid | | QUICK1 | 93 920 24 |
| 000001890 | 12/8/2000 | 000002705 | P COM NETWORK SERVICES INC | Paid | | QUICK1 | 92 308 29 |
| 000001891 | 12/8/2000 | 000002705 | P COM NETWORK SERVICES INC | Paid | | QUICK6 | 74 129 00 |
| 000001892 | 12/8/2000 | 000002705 | P-COM NETWORK SERVICES INC | Paid | | QUICK6 | 51 315 29 |
| 000001893 | 12/8/2000 | 000002705 | P COM NETWORK SERVICES INC | Paid | | QUICK6 | 90 533 23 |
| 000001894 | 12/8/2000 | 000002705 | P COM NETWORK SERVICES INC | Paid | | QUICK6 | 66 106 75 |
| 000001895 | 12/8/2000 | 000038852 | EC COMPANY | Paid | | QUICK1 | 20 133 57 |
| 000001896 | 12/8/2000 | 000008606 | GUILD TECHNOLOGIES | Paid | | QUICK1 | 2 051 34 |
| 000001897 | 12/8/2000 | 000018197 | INTEGRATED COMMUNICATIONS SERVICES | Paid | | QUICK1 | 77 740 00 |
| 000001898 | 12/8/2000 | 000018197 | INTEGRATED COMMUNICATIONS SERVICES | Paid | | QUICK1 | 21 473 75 |
| 000001898 | 12/8/2000 | 000000911 | LIEBERT CORPORATION | Paid | | QUICK1 | 4 945 21 |

CONFIDENTIAL
3WC 0008182

| | | | | Check History Report | | | Page No. | 2 |
| Report ID  WI_ckhis | | | | PeopleSoft Accounts Payable | | | Run Date | 12/21/00 |
| Operator I  PDESIMON | | | | Activity From 11/28/2000 To 12/21/2000 | | | Run Time | 9 02 19 AM |
| Run Contr  CHECK | | | | | | | | |

Bank Account    WVPDST

| Check Number | Check Date | Vendor Number | Vendor Name | Payment Status | Replaced Date | Pay Cycle | Amount |
|---|---|---|---|---|---|---|---|
| 000001899 | 12/8/2000 | 0000033206 | MARCONI COMMUNICATIONS | Paid | | QUICK1 | 107 613 12 |
| 000001900 | 12/8/2000 | 0000001001 | SURE POWER | Paid | | QUICK1 | 49 920 00 |
| 000001901 | 12/8/2000 | 0000001001 | SURE POWER | Paid | | QUICK1 | 88 320 00 |
| 000001902 | 12/8/2000 | 0000001001 | SURE POWER | Paid | | QUICK1 | 84 480 00 |
| 000001903 | 12/8/2000 | 0000002756 | MICROWAVE DESIGNS INTERNATIONAL  INC | Paid | | QUICK1 | 182 492 30 |
| 000001904 | 12/11/2000 | 0000040697 | AZTEK TECH SERVICE | Paid | | QUICK4 | 6 077 10 |
| 000001905 | 12/13/2000 | 0000000002 | P COM INC | Paid | | QUICK4 | 2 427 716 00 |
| 000001906 | 12/14/2000 | 0000000093 | GRAYBAR | Paid | | QUICK8 | 3 445 99 |
| 000001907 | 12/14/2000 | 0000000001 | IMCI TECHNOLOGIES | Paid | | QUICK8 | 66 558 83 |
| 000001908 | 12/14/2000 | 0000000001 | IMCI TECHNOLOGIES | Paid | | QUICK1 | 1 043 60 |
| 000001909 | 12/14/2000 | 0000045185 | GIANNI ELECTRIC INC | Paid | | QUICK8 | 181 220 40 |
| 000001910 | 12/14/2000 | 0000045185 | GIANNI ELECTRIC INC | Paid | | QUICK1 | 123 772 80 |
| 000001911 | 12/14/2000 | 0000045185 | GIANNI ELECTRIC INC | Paid | | QUICK1 | 36 046 48 |
| 000001912 | 12/14/2000 | 0000045185 | GIANNI ELECTRIC INC | Paid | | QUICK1 | 14 481 52 |
| 000001913 | 12/15/2000 | 0000018197 | INTEGRATED COMMUNICATIONS SERVICES | Paid | | O JACK1 | 56 872 00 |
| 000001914 | 12/18/2000 | 0000005345 | CPI COMMUNICATION SERVICES INC | Paid | | QUICK3 | 44 955 00 |
| 000001915 | 12/18/2000 | 0000001290 | OSERVE COMMUNICATIONS | Paid | | QUICK4 | 6 000 00 |
| 000001916 | 12/19/2000 | 0000043571 | HUGH O LANE ELECTRIC CO   LLC | Paid | | QUICK4 | 110 371 56 |
| 000001917 | 12/19/2000 | 0000000047 | LUCENT TECHNOLOGIES INC | Paid | | WVFWK | 0 00 |
| 000001918 | 12/19/2000 | 0000000047 | LUCENT TECHNOLOGIES INC | Overflow | | WVFWK | 0 00 |
| 000001919 | 12/19/2000 | 0000000047 | LUCENT TECHNOLOGIES INC | Overflow | | WVFWK | 0 00 |
| 000001920 | 12/19/2000 | 0000000047 | LUCENT TECHNOLOGIES INC | Overflow | | WVFWK | 0 00 |
| 000001921 | 12/19/2000 | 0000033206 | MARCONI COMMUNICATIONS | Paid | | QUICK3 | 197 454 60 |
| 000001922 | 12/19/2000 | 0000009041 | ALLIED GROUP INC | Paid | | QUICK3 | 66 912 95 |
| 000001923 | 12/19/2000 | 0000045032 | C C C NETWORK SYSTEMS INC | Paid | | QUICK3 | 576 805 52 |
| 000001924 | 12/19/2000 | 0000003607 | CARTER & BURGESS INC | Paid | | QUICK3 | 403 044 94 |
| 000001925 | 12/19/2000 | 0000043270 | CONSTRUCTORS & ASSOCIATES INC | Paid | | QUICK3 | 17 724 00 |
| 000001926 | 12/20/2000 | 0000004837 | CREATIVE DESIGN AND MACHINING INC | Paid | | QUICK4 | 11 700 00 |
| 000001927 | 12/20/2000 | 0000032917 | DIGITAL COMMUNICATIONS GROUP INC | Paid | | QUICK1 | 53 700 00 |
| 000001928 | 12/20/2000 | 0000040387 | EXFO ELECTRO OPTICAL ENGINEERING INC | Paid | | QUICK3 | 18 665 00 |
| 000001929 | 12/20/2000 | 0000000093 | GRAYBAR | Paid | | QUICK1 | 7 700 00 |
| 000001930 | 12/20/2000 | 0000042503 | MASTEC TECHNOLOGIES | Paid | | QUICK1 | 63 906 00 |
| 000001931 | 12/20/2000 | 0000001022 | TESSCO TECHNOLOGIES INC | Paid | | QUICK1 | 4 456 92 |
| 000001932 | 12/20/2000 | 0000018207 | MDM WEST INC | Paid | | QUICK1 | 50 372 57 |
| 000001933 | 12/20/2000 | 0000002749 | N J SULLIVAN CO   INC | Paid | | QUICK1 | 31 614 38 |
| 000001934 | 12/20/2000 | 0000033441 | ALPHA TELECOM SERVICES  CO | Paid | | QUICK3 | 138 369 75 |
| 000001935 | 12/20/2000 | 0000084.3 | C RALLO CONTRACTING | Paid | | QUICK1 | 60 046 97 |

CONFIDENTIAL
3WC 0008183

Report ID: WI_chkhis
Operator: PDESIMON
Run Contr: CHECK

**Check History Report**
PeopleSoft Accounts Payable
Activity From 11/28/2000 To 12/21/2000

Bank Account: WVFWK

Page No: 3
Run Date: 12/21/00
Run Time: 9 02 19 AM

| Check Number | Check Date | Vendor Number | Vendor Name | Payment Status | Replaced Date | Pay Cycle | Amount |
|---|---|---|---|---|---|---|---|
| 000001936 | 12/20/2000 | 000001017 | FISK ELECTRIC COMPANY | Paid | | QUICK4 | 189 616 20 |
| 000001937 | 12/20/2000 | 000001302 | GENSLER | Paid | | QUICK4 | 34 734 03 |
| 000001938 | 12/20/2000 | 000005251 | PRIME ELECTRIC COMPANY INC | Paid | | QUICK3 | 18 957 00 |
| 000001939 | 12/20/2000 | 000005050 | PROJECT INTERFACE CONNECTIONS | Paid | | QUICK3 | 74 015 00 |
| 000001940 | 12/20/2000 | 000002200 | QSP CONSULTANTS INC | Paid | | QUICK3 | 18 645 00 |
| 000001941 | 12/20/2000 | 000003401 | POWER AND TELEPHONE SUPPLY | Paid | | QUICK3 | 392 118 25 |
| 000001942 | 12/20/2000 | 000003401 | POWER AND TELEPHONE SUPPLY | Paid | | QUICK3 | 364 793 88 |
| 000001943 | 12/20/2000 | 000003401 | SECURITY TECHNOLOGIES GROUP INC | Paid | | QUICK3 | 46 735 61 |
| 000001944 | 12/20/2000 | 000000962 | SUNGLO TELECOM INC | Paid | | QUICK3 | 46 201 82 |
| 000001945 | 12/20/2000 | 000001337 | THE BOARD ROOM INC | Paid | | QUICK1 | 15 958 78 |
| 000001946 | 12/20/2000 | 000036954 | THE COURTNEY COMPANY | Paid | | QUICK1 | 16 428 50 |
| 000001947 | 12/20/2000 | 000017174 | URS GREINER WOODWARD CYCLE | Paid | | QUICK1 | 84 294 75 |
| 000001948 | 12/20/2000 | 000041228 | VECA ELECTRIC CO INC | Paid | | QUICK4 | 65 123 37 |
| 000001949 | 12/20/2000 | 000094441 | VERITAS SOFTWARE CORPORATION | Paid | | QUICK4 | 55 039 69 |
| 000001950 | 12/20/2000 | 000031801 | VIAGATE TECHNOLOGIES | Paid | | QUICK4 | 12 945 00 |
| 000001951 | 12/20/2000 | 000006830 | WESTERN COMM TOWER, INC | Paid | | QUICK1 | 10 747 22 |
| 000001952 | 12/20/2000 | 000001252 | MCMASTER CARR SUPPLY COMPANY | Paid | | QUICK1 | 5 957 10 |
| 000001953 | 12/20/2000 | 000000901 | AMERIWAVE TECHNOLOGIES | Paid | | QUICK1 | 63 255 00 |
| 000001954 | 12/20/2000 | 000359278 | COMSEARCH | Paid | | QUICK1 | 48 059 50 |
| 000001955 | 12/20/2000 | 000002071 | COMSEARCH | Paid | | QUICK7 | 37 192 50 |
| 000001956 | 12/20/2000 | 000002071 | COMSEARCH | Paid | | QUICK7 | 50 335 00 |
| 000001957 | 12/20/2000 | 000002071 | COMSEARCH | Paid | | QUICK1 | 35 985 00 |
| 000001958 | 12/20/2000 | 000002071 | COMSEARCH | Paid | | QUICK1 | 42 565 00 |
| 000001959 | 12/20/2000 | 000002071 | COMSEARCH | Paid | | QUICK1 | 33 790 00 |
| 000001960 | 12/20/2000 | 000002071 | COMSEARCH | Paid | | QUICK7 | 24 648 75 |
| 000001961 | 12/20/2000 | 000002071 | COMSEARCH | Paid | | QUICK4 | 39 208 00 |
| 000001962 | 12/20/2000 | 000000207 | COMSEARCH | Paid | | QUICK1 | 23 613 50 |
| 000001963 | 12/20/2000 | 000002071 | COMSEARCH | Paid | | QUICK1 | 14 665 00 |
| 000001964 | 12/20/2000 | 000002071 | COMSEARCH | Paid | | QUICK1 | 11 991 25 |
| 000001965 | 12/20/2000 | 000002071 | COMSEARCH | Paid | | QUICK1 | 8 991 25 |
| 000001966 | 12/20/2000 | 000002071 | COMSEARCH | Paid | | QUICK4 | 8 991 25 |
| 000001967 | 12/20/2000 | 000010917 | FISK ELECTRIC COMPANY | Paid | | QUICK4 | 8 218 75 |
| 000001968 | 12/20/2000 | 000000093 | GRAYBAR | Paid | | QUICK1 | 16 799 00 |
| 000001969 | 12/21/2000 | 000000002 | P COM INC | Paid | | QUICK4 | 44 967 24 |
| 000001970 | 12/21/2000 | 000000000 | P COM INC | Paid | | QUICK4 | 2 000 320 59 |
| 000001971 | 12/21/2000 | 000043202 | AGILENT TECHNOLOGIES | Paid | | WVFWK4 | 4 503 458 26 |
| 000001972 | 12/21/2000 | 000036714 | ALLEGHENY BUILDERS INC | Paid | | WVFWK2 | 3 040 95 |
| | | | | | | WVFWK2 | 83 748 00 |

CONFIDENTIAL
3WC 0008184

**PEOPLE**

Report ID WI_ckhis
Operator I PDESIMON
Run Control CHECK

**Check History Report**
Peoplesoft Accounts Payable
Activity From 11/28/2000 To 12/21/2000

Bank Account   WVFOF

Page No          4
Run Date     12/22/00
Run Time   9 02 19 AM

| Check Number | Check Date | Vendor Number | Vendor Name | Payment Status | Replaced Date | Pay Cycle | Amount |
|---|---|---|---|---|---|---|---|
| 000001973 | 12/21/2000 | 000009411 | ALLIED GROUP INC | Paid | | WVFWK2 | 32 740 61 |
| 000001974 | 12/21/2000 | 000009278 | AMERIWAVE TECHNOLOGIES | Paid | | WVFWK2 | 4 600 00 |
| 000001975 | 12/21/2000 | 000009006 | ANIXTER INC | Paid | | WVFWK2 | 99 650 57 |
| 000001976 | 12/21/2000 | 000038614 | ASPEN SYSTEMS INC | Paid | | WVFWK2 | 1 968 53 |
| 000001977 | 12/21/2000 | 000009907 | BAIRD SATELLITE | Paid | | WVFWK2 | 492 36 |
| 000001978 | 12/21/2000 | 000000310 | BULLEY & ANDREWS/BUCHANAN LLC | Paid | | WVFWK2 | 4 509 00 |
| 000001979 | 12/21/2000 | 000031484 | CARRIER ACCESS CORPORATION | Paid | | WVFWK2 | 2 880 660 75 |
| 000001980 | 12/21/2000 | 000003607 | CARTER & BURGESS INC | Paid | | WVFWK2 | 2 880 98 |
| 000001981 | 12/21/2000 | 000043585 | CERAGON NETWORKS INC | Paid | | WVFWL2 | 11 203 15 |
| 000001982 | 12/21/2000 | 000007324 | CIC ASSOCIATES INC | Paid | | WVFWL2 | 2 567 00 |
| 000001983 | 12/21/2000 | 000032486 | CONTINENTAL RESOURCES | Paid | | WVFWK2 | 23 582 23 |
| 000001984 | 12/21/2000 | 000035341 | CPI COMMUNICATION SERVICES INC | Paid | | WVFWK2 | 42 778 00 |
| 000001985 | 12/21/2000 | 000000059 | DBI ARCHITECTS | Paid | | WVFWK2 | 3 430 05 |
| 000001986 | 12/21/2000 | 000024344 | DELL CORPORATION | Paid | | WVFWK2 | 41 617 71 |
| 000001987 | 12/21/2000 | 000026014 | DELTA CONTRACTORS INC | Paid | | WVFWK2 | 375 00 |
| 000001988 | 12/21/2000 | 000007636 | ELECTRIC MACHINERY ENTERPRISES INC | Paid | | WVFWL2 | 15 214 56 |
| 000001989 | 12/21/2000 | 000039199 | ELECTRICAL CONSTRUCTION CO | Paid | | WVFWK2 | 20 133 57 |
| 000001990 | 12/21/2000 | 000004658 | ELECTRONIC TELE COMMUNICATIONS CO | Paid | | WVFWK2 | 28 041 82 |
| 000001991 | 12/21/2000 | 000042009 | EPLUS TECHNOLOGY INC | Paid | | WVFWK2 | 15 199 54 |
| 000001992 | 12/21/2000 | 000041577 | FIBER INSTRUMENT SALES INC | Paid | | WVFWK2 | 738 56 |
| 000001993 | 12/21/2000 | 000010917 | FISK ELECTRIC COMPANY | Paid | | WVFWK2 | 126 024 61 |
| 000001994 | 12/21/2000 | 000010917 | FISK ELECTRIC COMPANY | Paid | | WVFWK2 | 33 781 93 |
| 000001995 | 12/21/2000 | 000033434 | FRANK PARSONS PAPER COMPANY INC | Paid | | WVFWL2 | 8 339 10 |
| 000001996 | 12/21/2000 | 000009888* | G S ELECTRIC CO | Paid | | WVFWK2 | 5 920 00 |
| 000001997 | 12/21/2000 | 000001107 | GENSLER | Paid | | WVFWK2 | 2 616 36 |
| 000001998 | 12/21/2000 | 000045185 | GIANNI ELECTRIC INC | Paid | | WVFWK2 | 39 768 00 |
| 000001999 | 12/21/2000 | 000000093 | GRAYBAR | Paid | | WVFWK2 | 993 95 |
| 000002000 | 12/21/2000 | 000000093 | GRAYBAR | Paid | | WVFWK2 | 778 94 |
| 000002001 | 12/21/2000 | 000008606 | GUILD TECHNOLOGIES | Paid | | WVFWK2 | 197 917 20 |
| 000002002 | 12/21/2000 | 000008606 | GUILD TECHNOLOGIES | Overflow | | WVFWK2 | 0 00 |
| 000002003 | 12/21/2000 | 000008606 | GUILD TECHNOLOGIES | Overflow | | WVFWK2 | 0 00 |
| 000002004 | 12/21/2000 | 000032459 | HARGER LIGHTNING PROTECTION | Paid | | WVFWK2 | 2 578 60 |
| 000002005 | 12/21/2000 | 000092077 | HELP SERVICE CO | Paid | | WVFWK2 | 232 202 00 |
| 000002006 | 12/21/2000 | 000092077 | HOGANTEC INC | Paid | | WVFWK2 | 121 048 00 |
| 000002007 | 12/21/2000 | 000001292 | HUGH OKANE ELECTRIC CO  LLC | Paid | | WVFWK2 | 288 181 82 |
| 000002008 | 12/21/2000 | 000001292 | HUGH OKANE ELECTRIC CO  LLC | Overflow | | WVFWK2 | 0 00 |
| 000002009 | 12/21/2000 | 000001292 | HUGH OKANE ELECTRIC CO  LLC | Overflow | | WVFWK2 | 0 00 |

CONFIDENTIAL
3WC 0008185

Report ID  WL_ckhis
Operator ID  PDESIMON
Run Cntr  CHECK

**Check History Report**
PeopleSoft Accounts Payable
Activity From 11/28/2000 To 12/21/2000
Bank Account  WVPFG?

Page No  5
Run Date  1272/00
Run Time  9 02 19 AM

| Check Number | Check Date | Vendor Number | Vendor Name | Payment Status | Replaced Date | Pay Cycle | Amount |
|---|---|---|---|---|---|---|---|
| 000002010 | 12/21/2000 | 000000001 | IMCI TECHNOLOGIES | Paid | | WVFWK2 | 300 000 00 |
| 000002011 | 12/21/2000 | 000045189 | J WAYNE POOLE | Paid | | WVFWK2 | 1 787 00 |
| 000002012 | 12/21/2000 | 000045918 | JULIUS KRAFT COMPANY INC | Paid | | WVFWK2 | 16 093 85 |
| 000002013 | 12/21/2000 | 00000114 1 | I EE TECHNOLOGIES INC | Paid | | WVFWK2 | 97 800 00 |
| 000002014 | 12/21/2000 | 000045813 | LEGATO SYSTEMS INC | Paid | | WVFWK2 | 14 429 00 |
| 000002015 | 12/21/2000 | 000009013 | LIEBERT CORPORATION | Paid | | WVFWK2 | 28 282 88 |
| 000002016 | 12/21/2000 | 000032222 | MARKET HALSEY URBAN RENEWAL, LLC | Paid | | WVFWK2 | 30 000 00 |
| 000002017 | 12/21/2000 | 000001339 | MICROWAVE TOWER SERVICES INC | Paid | | WVFWK2 | 12 039 86 |
| 000002018 | 12/21/2000 | 000043611 | NEWTON INSTRUMENT COMPANY INC | Paid | | WVFWK2 | 2 881 81 |
| 000002019 | 12/21/2000 | 000016817 | NORTHCO CORPORATION | Paid | | WVFWK2 | 358 180 38 |
| 000002020 | 12/21/2000 | 000039965 | OSAGE SYSTEMS GROUP INC | Paid | | WVFWK2 | 42 889 15 |
| 000002021 | 12/21/2000 | 000002200 | OSP CONSULTANTS INC | Paid | | WVFWK2 | 10 869 30 |
| 000002022 | 12/21/2000 | 000002705 | P COM NETWORK SERVICES INC | Paid | | WVFWK2 | 109 082 40 |
| 000002023 | 12/21/2000 | 000043613 | PJH COMPANY LLC | Paid | | WVFWK2 | 2 417 50 |
| 000002024 | 12/21/2000 | 000039133 | PLAYER AND COMPANY | Paid | | WVFWK2 | 23 000 00 |
| 000002025 | 12/21/2000 | 000008799 | POND & COMPANY | Paid | | WVFWK2 | 45 191 27 |
| 000002026 | 12/21/2000 | 000008799 | POND & COMPANY | Overflow | | WVFWK2 | 0 00 |
| 000002027 | 12/21/2000 | 000000340 1 | POWER AND TELEPHONE SUPPLY | Paid | | WVFWK2 | 145 413 97 |
| 000002028 | 12/21/2000 | 000039167 | PREFERRED UTILITIES MANUFACTURING COR | Paid | | WVFWK2 | 6 381 34 |
| 000002029 | 12/21/2000 | 000053251 | PRIME ELECTRIC COMPANY INC | Paid | | WVFWK2 | 33 490 00 |
| 000002030 | 12/21/2000 | 000000991 | PROGRESSIVE TECHNOLOGIES INC | Paid | | WVFWK2 | 456 118 00 |
| 000002031 | 12/21/2000 | 000043825 | PROJECT GROUP 2000 LLC | Paid | | WVFWK2 | 2 280 00 |
| 000002032 | 12/21/2000 | 000005050 | PROJECT INTERFACE CONNECTIONS | Paid | | WVFWK2 | 1 875 00 |
| 000002033 | 12/21/2000 | 000008827 | RAINBOW DISTRIBUTORS USA, INC | Paid | | WVFWK2 | 306 00 |
| 000002034 | 12/21/2000 | 000045298 | RSA SECURITY INC | Paid | | WVFWK2 | 6 810 79 |
| 000002035 | 12/21/2000 | 000031562 | SACHS SYSTEMS INC | Paid | | WVFWK2 | 65 602 16 |
| 000002036 | 12/21/2000 | 000043083 | SIGNET TESTING LABS INC | Paid | | WVFWK2 | 1 055 00 |
| 000002037 | 12/21/2000 | 000000937 | SOLUNET INC | Paid | | WVFWK2 | 1 236 076 66 |
| 000002038 | 12/21/2000 | 000000937 | SOLUNET INC | Overflow | | WVFWK2 | 0 00 |
| 000002039 | 12/21/2000 | 000000937 | SOLUNET INC | Overflow | | WVFWK2 | 0 00 |
| 000002040 | 12/21/2000 | 000034116 | STRATA INC | Paid | | WVFWK2 | 68 065 06 |
| 000002041 | 12/21/2000 | 000034116 | STRATA INC | Overflow | | WVFWK2 | 0 00 |
| 000002042 | 12/21/2000 | 000040181 | SUNGLO TELECOM | Paid | | WVFWK2 | 9 193 00 |
| 000002043 | 12/21/2000 | 000001337 | SUNGLO TELECOM INC | Paid | | WVFWK2 | 25 412 00 |
| 000002044 | 12/21/2000 | 000001001 | SURE POWER | Paid | | WVFWK2 | 11 160 00 |
| 000002045 | 12/21/2000 | 000032111 | TAYLOR COMMUNICATIONS INC | Paid | | WVFWK2 | 22 288 68 |
| 000002046 | 12/21/2000 | 000000048 | TELLABS OPERATIONS | Paid | | WVFWK2 | 115 532 15 |
| | | | TELLABS OPERATIONS | Overflow | | | 0 00 |

CONFIDENTIAL
3WC 0008186

**PEOPLE**

| Report ID WI_ckhis | | | Check History Report | | | | Page No | 6 |
| Operator I PDESIMON | | | PeopleSoft Accounts Payable | | | | Run Date | 12/22/00 |
| Run Cntrl CHECK | | | Activity From 1/28/2000 to 12/21/2000 | | | | Run Time | 9 02 19 AM |
| | | | Bank Account WTPOP | | | | | |

| Check Number | Check Date | Vendor Number | Vendor Name | Payment Status | Overflow | Replaced Date | Pay Cycle | Amount |
|---|---|---|---|---|---|---|---|---|
| 0000002047 | 12/21/2000 | 000000048 | TELLABS OPERATIONS | | | | WVFWK2 | 0 00 |
| 0000002048 | 12/21/2000 | 000004680 | TTC | | | | WVFWK2 | 18 256 12 |
| 0000002049 | 12/21/2000 | 000000959 | VALMONT MICROFLECT INC | | | | WVFWK2 | 15 502 15 |
| 0000002050 | 12/21/2000 | 000009441 | VECA ELECTRIC CO INC | Paid | | | WVFWK2 | 41 103 25 |
| 0000002051 | 12/21/2000 | 000008495 | VOLT SERVICES GROUP | Paid | | | WVFWK2- | 4 616 00 |
| 0000002052 | 12/21/2000 | 000003301 | BULLEY & ANDREWS/BUCHANAN LLC | Paid | | | WVFWK2 | 21 544 00 |
| 0000002053 | 12/21/2000 | 000041708 | BURR COMPUTER ENVIRONMENTS INC | Void | | | QUICK4 | 21 544 00 |
| 0000002054 | 12/21/2000 | 000045032 | C C C NETWORK SYSTEMS INC | Paid | | | QUICK4 | 1 515 627 00 |
| 0000002055 | 12/21/2000 | 000042503 | MASTEC TECHNOLOGIES | Paid | | | QUICK1 | 1 624 002 12 |
| 0000002056 | 12/21/2000 | 000000937 | SOLUNET INC | Paid | | | QUICK1 | 402 217 11 |
| 0000002057 | 12/21/2000 | 000000048 | TELLABS OPERATIONS | Paid | | | QUICK1 | 849 709 41 |
| 0000002058 | 12/21/2000 | 000039123 | VOICE DATA SOLUTIONS INC | Paid | | | QUICK4 | 1 266 715 80 |
| 0000002059 | 12/21/2000 | 000003692. | SPECTRA SITE | Paid | | | QUICK1 | 161 892 86 |
| 0000002060 | 12/21/2000 | 000003917 | DIGITAL COMMUNICATIONS GROUP INC | Paid | | | QUICK1 | 141 896 10 |
| | | | | Paid | | | QUICK1 | 69 325 00 |

Total Amount    33 954 827 97

*handwritten:* LESS VOIDS (# 21 5HH 00)
LESS VOIDS (# 2,483 231 43)
FROM PEOPLE DETAILS
#33,606,052 c1

CONFIDENTIAL
3WC 0008187

# ROA
# TAB
# 487

DEC-29-2000  11 10          WINSTAR                                    P 02

## winstar

### NOTICE OF REQUEST FOR BORROWING

To    Lucent Technologies Inc , as Administrative Agent

Reference is made to the Credit Agreement dated as of May 4, 2000 among WVF LU2, LLC ("the Borrower"), Winstar Communications Inc. (Winstar) the lenders which are a party thereto The Bank of New York as Collateral Agent and Lucent Technologies Inc as Administrative Agent (as amended from time to time, the  Credit Agreement") Unless otherwise defined herein, capitalized terms defined in the Credit Agreement and used herein shall have the same meaning ascribed to such terms in the Credit Agreement.

Pursuant to Section 2 03 the Credit Agreement  the Borrower hereby gives the Administrative Agent written notice of request for a Borrowing according to the following instructions

1  Total Amount of Borrowing                                    $      62 324,930 00

   a)  Amount of Borrowing to be paid directly to          $                -
       Lucent for Lucent Invoices

   b)  Amount of Borrowing to be paid directly to          $
       Lucent for Lucent Subsidiary Invoices

   c)  Amount of Borrowing to be paid directly to          $                -
       Lucent for Lucent International Invoices

   d)  Amount of Borrowing to be paid directly to          $
       Lucent for Lucent Arrangement Fees

   e)  Amount of Borrowing to be paid directly to          $      62,324 930 00
       the Borrower Non Lucent Equipment


BANK NAME.           STATE STREET BANK & TRUST
                     BOSTON  MA
ABA NUMBER           011 000 028
ACCOUNT NAME         MERRILL GROUP
                     CREDIT  MERRILL PREMIER FUND

FOR FURTHER CREDIT TO    WCI Capital Corp
ACCOUNT NUMBER           3 3 1 6 0 7 6
AMOUNT                   $  62,324 930 00

**DEFENDANT'S EXHIBIT**
9

onfidential                                    LW00071187

DEC-29-2000  11 10    WINSTAR                                    P 03

| BANK NAME | STATE STREET BANK & TRUST |
|---|---|
| | BOSTON, MA |
| ABA NUMBER | 011 000 028 |
| ACCOUNT NAME | MERRILL GROUP |
| | CREDIT MERRILL PREMIER FUND |

FOR FURTHER CREDIT TO      WVF-I LLC
ACCOUNT NUMBER            3324773
AMOUNT                    $

2. Effective Date of Borrowing    December 29 2000

3 Type of Borrowing                    LIBOR    X ABR

4 Interest Period    Months          1,    2,    3,
                                      6     9     12

5 The Lucent invoices to be paid with the Borrowing are listed on Schedule A attached

The Borrower hereby certifies that all conditions for borrowing set forth in Section 4.03 the Credit Agreement have been satisfied or will be satisfied as of the date hereof and the date the borrowing is made

Dated this 29 day of December 2000

WVF LU2, LLC

By

Name  Richard J Uhl

Title  Group Executive and CFO

TOTAL P 03

DEC-22-2000  13 17      WINSTAR                    2125844073    P 01

# Winstar Communications, Inc.

## Fax Cover Sheet

**Date**            **December 22, 2000**

**To**              **Adrian Alfred**

**Fax #**           **908-582-2237**

**From:**           **Doreene Nidowicz**

**Phone #**    212-792-9069

**RI Fax**     212-584-4073

**# of pages (including cover)**  13

**Message**

**Attached, please find the draw request for 12/29/00**

**Please call me if you have any questions**

**Thanks**
**Doreene**

(908) 559-3013

#35 5M. Balance
Alt

## Lucent Invoices - Draw 6
### December 29, 2000

| | Invoice # | Invoice Amt. | |
|---|---|---|---|
| | | **DOMESTIC** | |
| PARENT | 30110168 | 105 00 | 30110168 |
| PARENT | 40113486 | 35 00 | 40113486 |
| PARENT | 60109125 | 335 00 | 60109125 |
| PARENT | SU022487 | 300 86 | |
| PARENT | 10106641 | 35 00 | 10106641 |
| PARENT | 60109296 | 370 00 | 60109296 |
| PARENT | 50113939 | 70 00 | 50113939 |
| PARENT | 10106541 | 970 00 | 10106541 |
| PARENT | 60109190 | 335 00 | 60109190 |
| PARENT | 40113954 | 3 435 50 | 40113954 |
| PARENT | 30110465 | 35 00 | 30110465 |
| PARENT | 10114021 | 580 00 | 40114021 |
| PARENT | 30111021 | 35 00 | 30111021 |
| PARENT | 60109499 | 370 00 | 60109499 |
| PARENT | 40114870 | 835 00 | 40114870 |
| PARENT | ER011587 | 174 959 27 | ER011587 |
| PARENT | S0954714 | 5 23 | |
| PARENT | S0958427 | 5 23 | |
| PARENT | 50115206 | 35 00 | |
| PARENT | 30111516 | 35 00 | |
| ARENT | NR010436 | 3 004 00 | NR010436 |
| ARENT | WR001048 | (8 238 90) | Paid and processed by AP in M |
| ARENT | | (161 708 24) | Lucent Credit for Marketing D |
| | PARENT TOTAL | 15 942 95 | |
| NETWORK CARE | PS-37325 | 19,434 00 | |
| NETWORK CARE | PS-32263 | 47 479 00 | |
| NETWORK CARE | PS-32262 | 5 284 07 | |
| NETWORK CARE | PS-34586 | 7 986 19 | |
| NETWORK CARE | PS-30807 | 24 808 00 | |
| | TOTAL NETWORK CARE | 104,991 26 | |
| Ascend Group | 400022568 | 4,528.51 | Processed thru A/P as $105 28 |
| Ascend Group | 400020887 | 68 46 | |
| Ascend Group | 400027060 | 272 997 16 | |
| Ascend Group | 400027018 | 279 447 00 | |
| Ascend Group | 400026681 | 1 604 93 | |

Confidential                                   LW00071190

DEC-22-2000  13 18        WINSTAR                          2125844873    P 05
                                                           12/22/2000 12.35 PM

**Lucent Invoices – Draw 6**
December 29, 2000

| Invoice # | Invoice Amt |
|-----------|-------------|
| TOTAL ASCEND | 558 646 06 |

| TOTAL DOMESTIC | 679,580 27 |

Page 2 of 4

onfidential

## Lucent Invoices - Draw 6
### December 29, 2000

| | Invoice # | Invoice Amt. |
|---|---|---|

### INTERNATIONAL

| | Invoice # | Invoice Amt. |
|---|---|---|
| FRANCE | 985427 | 36,196 00 |
| FRANCE | 985428 | 36,196 00 |
| FRANCE | 985429 | 36,196 00 |
| **FRANCE TOTAL** | | **108,588 00** |
| BELGIUM | 983214 | 14,304 00 |
| BELGIUM | 985269 | 5 382 00 |
| BELGIUM | 985563 | 27,554 00 |
| BELGIUM | 985561 | 27 554 00 |
| BELGIUM | 985560 | 27 554 00 |
| BELGIUM | 985381 | 2 333 00 |
| BELGIUM | 985386 | 2 333 00 |
| BELGIUM | 985362 | 2 933 00 |
| BELGIUM | 985357 | 2,933 00 |
| BELGIUM | 984882 | 5 382 00 |
| BELGIUM | 983520 | 12 831 00 |
| BELGIUM | 983722 | 14 552 00 |
| BELGIUM | 984556 | 9 421 00 |
| **BELGIUM TOTAL** | | **155 066 00** |
| NETHERLANDS | 985531 | 65 266 00 |
| NETHERLANDS | 985532 | 65 266 00 |
| NETHERLANDS | 985533 | 65 266 00 |
| NETHERLANDS | 985238 | 25 507 00 |
| NETHERLANDS | 978028 | 13 413 00 |
| NETHERLANDS | 984746 | (13 413 00) |
| **NETHERLANDS TOTAL** | | **221,305 00** |
| UNITED KINGDOM | 985873 | 16 773 95 |
| UNITED KINGDOM | 985569 | 28 449 00 |
| UNITED KINGDOM | 985568 | 28 449 00 |
| UNITED KINGDOM | 985566 | 28 449 00 |
| UNITED KINGDOM | 983769 | 22 176 00 |
| UNITED KINGDOM | 985784 | 111 820 75 |

onfidential          LW00071192

DEC-22-2000  13 18    WINSTAR                                        2125844073    P 8/
                                                                    12/22/2000  12 33 PM

## Lucent Invoices - Draw 6
### December 29, 2000

| | Invoice # | | Invoice Amt |
|---|---|---|---|
| UNITED KINGDOM | 985711 | | 74 564 15 |
| | UNITED KINGDOM TOTAL | | 313,681 85 |
| | | | |
| GERMANY | 985538 | | 30 130 00 |
| GERMANY | 985534 | | 30,130 00 |
| GERMANY | 985536 | | 30 130 00 |
| GERMANY | 985753 | | 9 047 00 |
| GERMANY | 985716 | | 35 988 85 |
| GERMANY | 983686 | | 18,190 00 |
| | GERMANY TOTAL | | 153 615 85 |
| | | | |
| EUROPE | 985465 | | 1 257 75 |
| EUROPE | 985461 | | (1 257 75) |
| EUROPE | 985466 | | 88 878 31 |
| EUROPE | 985463 | | (88 878 31) |
| | EUROPE TOTAL | | |
| | | | |
| ARGENTINA | 2s510135 | | 107 285 00  Lucent USA |
| ARGENTINA | 2s510154 | | 25,198 00  Lucent USA |
| ARGENTINA | 2s510145 | | 42 680 00  Lucent USA |
| ARGENTINA | 2s510158 | | 4 100 00  Lucent USA |
| ARGENTINA | 2s510157 | | 652 00  Lucent USA |
| ARGENTINA | 2s510160 | | 25,200 00  Lucent USA |
| ARGENTINA | 2s510159 | | 11 460 00  Lucent USA |
| ARGENTINA | 2s510161 | | 9 856 00  Lucent USA |
| ARGENTINA | 2s510163 | | 896 00  Lucent USA |
| ARGENTINA | 2s510166 | | 18 750 00  Lucent USA |
| ARGENTINA | 2s510168 | | 129,000 00  Lucent USA |
| | | | |
| | ARGENINA TOTAL | | 375,077 00 |
| | | | |
| | INTERNATIONAL TOTAL | | 1 327 333 70 |

*handwritten notes:* USI Domestic NO wire to Argentina RECLASS TO BE Done by FIDEL CASTRO

*signature:* Fidel Castro

Page 4 of 4

onfidential                    LW00071193

DEC-22-2000  13 18    WINSTAR    2125844073    P 08

| Report ID: WI_chkls | | | Peoplesoft Accounts Payable | | | Page | |
| Operator: PDESIMON | | | History Report | | | Run Date 1122/00 | |
| Run Contrl: CHECK | | | Activity From 11/28/2000 To 12/21/2000 | | | Run Time 9-02:19 AM | |

| Check Number | Check Date | Vendor Number | Vendor Name | Replaced Date | Payment Status | Pay Cycle | Amount |
|---|---|---|---|---|---|---|---|
| 0000001862 | 11/28/2000 | 0000034338 | REDLINE COMMUNICATIONS INC | | Paid | QUICK1 | 34 366.84 |
| 0000001863 | 11/29/2000 | 0000000047 | LUCENT TECHNOLOGIES INC | | Paid | WVFWK | 0 00 |
| 0000001864 | 11/29/2000 | 0000000047 | LUCENT TECHNOLOGIES INC | | Overflow | WVFWK | 0 00 |
| 0000001865 | 11/29/2000 | 0000000047 | LUCENT TECHNOLOGIES INC | | Overflow | WVFWK | 0 00 |
| 0000001866 | 11/29/2000 | 0000000047 | LUCENT TECHNOLOGIES INC | | Overflow | WVFWK | 0 00 |
| 0000001867 | 11/29/2000 | 0000000047 | LUCENT TECHNOLOGIES INC | | Overflow | WVFWK | 0 00 |
| 0000001868 | 11/29/2000 | 0000000047 | LUCENT TECHNOLOGIES INC | | Overflow | WVFWK | 0 00 |
| 0000001869 | 11/29/2000 | 0000000047 | LUCENT TECHNOLOGIES INC | | Overflow | WVFWK | 0 00 |
| 0000001870 | 11/29/2000 | 0000000047 | LUCENT TECHNOLOGIES INC | | Overflow | WVFWK | 0 00 |
| 0000001871 | 11/29/2000 | 0000000047 | LUCENT TECHNOLOGIES INC | | Overflow | WVFWK | 0 00 |
| 0000001872 | 11/30/2000 | 0000000001 | IMCI TECHNOLOGIES | | Paid | QUICK1 | 16 564.08 |
| 0000001873 | 11/30/2000 | 0000000001 | IMCI TECHNOLOGIES | | Paid | QUICK9 | 35 983.09 |
| 0000001874 | 11/30/2000 | 0000000001 | IMCI TECHNOLOGIES | | Paid | QUICK1 | 154 491.99 |
| 0000001875 | 11/30/2000 | 0000017809 | SIEMENS INFORMATION & COMM NETWORKS | | Paid | QUICK1 | 639 277.20 |
| 0000001876 | 12/1/2000 | 0000007324 | CIC ASSOCIATES INC | | Paid | QUICK4 | 103 969.78 |
| 0000001877 | 12/5/2000 | 0000000002 | P COM INC | | Paid | QUICK4 | 1 943 634.50 |
| 0000001878 | 12/5/2000 | 0000033206 | MARCONI COMMUNICATIONS | | Paid | QUICK4 | 128 687.69 |
| 0000001879 | 12/5/2000 | 0000000906 | ANIXTER INC | | Paid | QUICK4 | 153 494.80 |
| 0000001880 | 12/5/2000 | 0000000906 | ANIXTER INC | | Paid | QUICK4 | 84 348.53 |
| 0000001881 | 12/7/2000 | 0000000001 | IMCI TECHNOLOGIES | | Paid | QUICK1 | 4 349.24 |
| 0000001882 | 12/7/2000 | 0000045247 | SPECIALTY CONSTRUCTION INC | | Paid | QUICK1 | 214 704.00 |
| 0000001883 | 12/7/2000 | 0000007772 | HNS TELECOM | | Paid | QUICK1 | 73,845.20 |
| 0000001884 | 12/7/2000 | 0000011669 | HIGGINS NETWORK SERVICES | | Paid | QUICK1 | 34 512.79 |
| 0000001885 | 12/8/2000 | 0000043595 | ENTREX COMMUNICATION SERVICES INC | | Paid | QUICK1 | 11,970.26 |
| 0000001886 | 12/8/2000 | 0000001292 | HUGH OKANE ELECTRIC CO  LLC | | Paid | QUICK1 | 98 66` |
| 0000001887 | 12/8/2000 | 0000001292 | HUGH OKANE ELECTRIC CO  LLC | | Paid | QUICK1 | 44 357.47 |
| 0000001888 | 12/8/2000 | 0000002705 | P COM NETWORK SERVICES INC | | Paid | QUICK1 | 93 920.24 |
| 0000001889 | 12/8/2000 | 0000002705 | P COM NETWORK SERVICES INC | | Paid | QUICK1 | 92 308.29 |
| 0000001890 | 12/8/2000 | 0000002705 | P COM NETWORK SERVICES INC | | Paid | QUICK6 | 74 129.00 |
| 0000001891 | 12/8/2000 | 0000002705 | P COM NETWORK SERVICES INC | | Paid | QUICK6 | 51 315.29 |
| 0000001892 | 12/8/2000 | 0000002705 | P COM NETWORK SERVICES INC | | Paid | QUICK1 | 90 533.25 |
| 0000001893 | 12/8/2000 | 0000002705 | P COM NETWORK SERVICES INC | | Paid | QUICK6 | 66 106.75 |
| 0000001894 | 12/8/2000 | 0000038852 | EC COMPANY | | Paid | QUICK1 | 20 133.57 |
| 0000001895 | 12/8/2000 | 0000000006 | CHILD TECHNOLOGIES | | Paid | QUICK1 | 2 051.34 |
| 0000001896 | 12/8/2000 | 0000018197 | INTEGRATED COMMUNICATIONS SERVICES | | Paid | QUICK1 | 77 740.00 |
| 0000001897 | 12/8/2000 | 0000018197 | INTEGRATED COMMUNICATIONS SERVICES | | Paid | QUICK1 | 21 473.75 |
| 0000001898 | 12/8/2000 | 0000000913 | LIEBERT CORPORATION | | Paid | QUICK1 | 4 945.21 |

LW00071194

Report ID  WI_chhis
Operator I  PDISIMON
Run Contr  CHECK

Ch  History Report
People—( Accounts Payable
Activity From 11/28/2000To 12/21/2000
Bank Account    WYF02

Page  2
Run Date  1/22/00
Run Time  9 02 19 AM

DEC-22-2000  13 19    WINSTAR    2125844073    P 09

| Check Number | Check Date | Vendor Number | Vendor Name | Replaced Date | Payment Status | Pay Cycle | Amount |
|---|---|---|---|---|---|---|---|
| 0000001899 | 12/8/2000 | 0000031206 | MARCONI COMMUNICATIONS | | Paid | QUICK1 | 107 613 12 |
| 0000001900 | 12/8/2000 | 0000001001 | SURE POWER | | Paid | QUICK1 | 49 920 00 |
| 0000001901 | 12/8/2000 | 0000001001 | SURE POWER | | Paid | QUICK1 | 88 320 00 |
| 0000001902 | 12/8/2000 | 0000001001 | SURE POWER | | Paid | QUICK1 | 84 480 00 |
| 0000001903 | 12/8/2000 | 0000007755 | MICROWAVE DESIGNS INTERNATIONAL INC | | Paid | QUICK1 | 182,492.10 |
| 0000001904 | 12/11/2000 | 0000040697 | AZTEK TECH SERVICE | | Paid | QUICK4 | 6 077 10 |
| 0000001905 | 12/13/2000 | 0000000002 | P COM INC | | Paid | QUICK4 | 2 427 716 00 |
| 0000001906 | 12/14/2000 | 0000000093 | GRAYBAR | | Paid | QUICK8 | 3 445 99 |
| 0000001907 | 12/14/2000 | 0000000001 | IMCI TECHNOLOGIES | | Paid | QUICK8 | 66.5 |
| 0000001908 | 12/14/2000 | 0000000001 | IMCI TECHNOLOGIES | | Paid | QUICK1 | 1 045 69 |
| 0000001909 | 12/14/2000 | 0000045185 | GIANNI ELECTRIC INC | | Paid | QUICK8 | 181 220 40 |
| 0000001910 | 12/14/2000 | 0000045185 | GIANNI ELECTRIC INC | | Paid | QUICK1 | 123 772.80 |
| 0000001911 | 12/14/2000 | 0000045185 | GIANNI ELECTRIC INC | | Paid | QUICK1 | 36 046 48 |
| 0000001912 | 12/14/2000 | 0000045185 | GIANNI ELECTRIC INC | | Paid | QUICK1 | 14 481 32 |
| 0000001913 | 12/15/2000 | 0000018197 | INTEGRATED COMMUNICATIONS SERVICES | | Paid | QUICK3 | 56 872 00 |
| 0000001914 | 12/18/2000 | 0000005345 | CPI COMMUNICATION SERVICES INC | | Paid | QUICK3 | 44 955 00 |
| 0000001915 | 12/18/2000 | 0000048371 | OSERVE COMMUNICATIONS | | Paid | QUICK4 | 6 000 00 |
| 0000001916 | 12/19/2000 | 0000001292 | HUGH OKANE ELECTRIC CO  LLC | | Paid | QUICK1 | 110 371.56 |
| 0000001917 | 12/19/2000 | 0000000047 | LUCENT TECHNOLOGIES INC | | Paid | WYFWK | 0 00 |
| 0000001918 | 12/19/2000 | 0000000047 | LUCENT TECHNOLOGIES INC | | Overflow | WYFWK | 0 00 |
| 0000001919 | 12/19/2000 | 0000000047 | LUCENT TECHNOLOGIES INC | | Overflow | WYFWK | 0 00 |
| 0000001920 | 12/19/2000 | 0000000047 | LUCENT TECHNOLOGIES INC | | Overflow | WYFWK | 0 00 |
| 0000001921 | 12/19/2000 | 0000033206 | MARCONI COMMUNICATIONS | | Paid | QUICK3 | 197 454 60 |
| 0000001922 | 12/19/2000 | 0000009443 | ALLIED GROUP  INC | | Paid | QUICK3 | 66 912 05 |
| 0000001923 | 12/19/2000 | 0000045032 | C C C NETWORK SYSTEMS INC | | Paid | QUICK3 | 576 80 |
| 0000001924 | 12/19/2000 | 0000003670 | CARTER & BURGESS INC | | Paid | QUICK3 | 403 044 94 |
| 0000001925 | 12/20/2000 | 0000003270 | CONSTRUCTORS & ASSOCIATES INC | | Paid | QUICK3 | 12 724 00 |
| 0000001926 | 12/20/2000 | 0000004837 | CREATIVE DESIGN AND MACHINING INC | | Paid | QUICK4 | 11 700 00 |
| 0000001927 | 12/20/2000 | 0000032917 | DIGITAL COMMUNICATIONS GROUP  INC | | Paid | QUICK3 | 53 700 00 |
| 0000001928 | 12/20/2000 | 0000040387 | EXFO ELECTRO OPTICAL ENGINEERING INC | | Paid | QUICK3 | 18 665 00 |
| 0000001929 | 12/20/2000 | 0000000093 | GRAYBAR | | Paid | QUICK3 | 7 700 00 |
| 0000001930 | 12/20/2000 | 0000042503 | MASTEC TECHNOLOGIES | | Paid | QUICK1 | 63 905 00 |
| 0000001931 | 12/20/2000 | 0000041022 | TESSCO TECHNOLOGIES INC | | Paid | QUICK1 | 4 455 92 |
| 0000001932 | 12/20/2000 | 0000018207 | MDM WEST  INC | | Paid | QUICK1 | 50,372 57 |
| 0000001933 | 12/20/2000 | 0000002749 | N J SULLIVAN CO  INC | | Paid | QUICK1 | 31 614 38 |
| 0000001934 | 12/20/2000 | 0000033441 | ALPHA TELECOM SERVICES CO | | Paid | QUICK3 | 138 369 75 |
| 0000001935 | 12/20/2000 | 0000008843 | C RALLO CONTRACTING | | Paid | QUICK1 | 60 046 97 |

Confidential

Report to WL_adms
Operator 1 PDESIMON
Run Contr CHECK

C t History Report
PeopleSoft Accounts Payable
Activity From 11/28/2000 To 12/21/2000
Bank Account    WVFWOP

Page
Run Date    12/22/00
Run Time    9 02:19 AM

DEC-22-2000    13 20    WINSTAR    2125844673    P 10

| Check Number | Check Date | Vendor Number | Vendor Name | Payment Status | Replaced Date | Pay Cycle | Amount |
|---|---|---|---|---|---|---|---|
| 0000001936 | 12/20/2000 | 0000010917 | FISK ELECTRIC COMPANY | Paid | | QUICK4 | 189 616.20 |
| 0000001937 | 12/20/2000 | 0000001302 | GENSLER | Paid | | QUICK3 | 34 734 03 |
| 0000001938 | 12/20/2000 | 0000005251 | PRIME ELECTRIC COMPANY INC | Paid | | QUICK3 | 18 957 06 |
| 0000001939 | 12/20/2000 | 0000003050 | PROJECT INTERFACE CONNECTIONS | Paid | | QUICK3 | 74 015 00 |
| 0000001940 | 12/20/2000 | 0000002200 | QSP CONSULTANTS INC | Paid | | QUICK3 | 18 645 00 |
| 0000001941 | 12/20/2000 | 0000003401 | POWER AND TELEPHONE SUPPLY | Paid | | QUICK3 | 392 118.25 |
| 0000001942 | 12/20/2000 | 0000003401 | POWER AND TELEPHONE SUPPLY | Paid | | QUICK3 | 364 793 88 |
| 0000001943 | 12/20/2000 | 0000000962 | SECURITY TECHNOLOGIES GROUP INC | Paid | | QUICK3 | 46 71< 61 |
| 0000001944 | 12/20/2000 | 0000001337 | SUNGLO TELECOM INC | Paid | | QUICK3 | 66 2._J2 |
| 0000001945 | 12/20/2000 | 0000036954 | THE BOARD ROOM INC | Paid | | QUICK1 | 15 958 78 |
| 0000001946 | 12/20/2000 | 0000017174 | THE COURTNEY COMPANY | Paid | | QUICK1 | 16 428.50 |
| 0000001947 | 12/20/2000 | 0000041228 | URS GREINER WOODWARD CYCLE | Paid | | QUICK7 | 84 294 75 |
| 0000001948 | 12/20/2000 | 0000009441 | VECA ELECTRIC CO INC | Paid | | QUICK4 | 63 127 37 |
| 0000001949 | 12/20/2000 | 0000033801 | VERITAS SOFTWARE CORPORATION | Paid | | QUICK4 | 55 039 69 |
| 0000001950 | 12/20/2000 | 0000036830 | VIAGATE TECHNOLOGIES | Paid | | QUICK4 | 12 945 00 |
| 0000001951 | 12/20/2000 | 0000001252 | WESTERN COMM TOWER, INC | Paid | | QUICK4 | 10 747 22 |
| 0000001952 | 12/20/2000 | 0000000903 | MCMASTER-CARR SUPPLY COMPANY | Paid | | QUICK1 | 3.957 10 |
| 0000001953 | 12/20/2000 | 0000039278 | AMERIWAVE TECHNOLOGIES | Paid | | QUICK3 | 63 255 00 |
| 0000001954 | 12/20/2000 | 0000002071 | COMSEARCH | Paid | | QUICK1 | 48 039.50 |
| 0000001955 | 12/20/2000 | 0000002071 | COMSEARCH | Paid | | QUICK7 | 37 192.50 |
| 0000001956 | 12/20/2000 | 0000002071 | COMSEARCH | Paid | | QUICK1 | 50.235 00 |
| 0000001957 | 12/20/2000 | 0000002071 | COMSEARCH | Paid | | QUICK1 | 35 985 00 |
| 0000001958 | 12/20/2000 | 0000002071 | COMSEARCH | Paid | | QUICK1 | 42 565 00 |
| 0000001959 | 12/20/2000 | 0000002071 | COMSEARCH | Paid | | QUICK1 | 33 790 00 |
| 0000001960 | 12/20/2000 | 0000002071 | COMSEARCH | Paid | | QUICK1 | 246 _5 |
| 0000001961 | 12/20/2000 | 0000002071 | COMSEARCH | Paid | | QUICK7 | 39 208 00 |
| 0000001962 | 12/20/2000 | 0000002071 | COMSEARCH | Paid | | QUICK4 | 23 613 50 |
| 0000001963 | 12/20/2000 | 0000002071 | COMSEARCH | Paid | | QUICK1 | 14 665 00 |
| 0000001964 | 12/20/2000 | 0000002071 | COMSEARCH | Paid | | QUICK1 | 11 991.25 |
| 0000001965 | 12/20/2000 | 0000002071 | COMSEARCH | Paid | | QUICK4 | 8 991 25 |
| 0000001966 | 12/20/2000 | 0000002071 | COMSEARCH | Paid | | QUICK4 | 8 218 75 |
| 0000001967 | 12/20/2000 | 0000010917 | FISK ELECTRIC COMPANY | Paid | | QUICK1 | 8 218 75 |
| 0000001968 | 12/21/2000 | 0000000093 | GRAYBAR | Paid | | QUICK1 | 16 799 00 |
| 0000001969 | 12/21/2000 | 0000000002 | P COM INC | Paid | | QUICK1 | 44 967 24 |
| 0000001970 | 12/21/2000 | 0000000002 | P-COM INC | Paid | | QUICK1 | 2 000 320 59 |
| 0000001971 | 12/21/2000 | 0000043202 | AGILENT TECHNOLOGIES | Paid | | QUICK4 | 4 503 453 26 |
| 0000001972 | 12/21/2000 | 0000036714 | ALLEGHENY BUILDERS INC | Paid | | WVFWK2 | 3 040 95 |
| | | | | Paid | | WVFWK2 | 83 748 00 |

Report ID  WM_ckhis  
Operator: FDESIMON  
Run Contr: CHECK  

C: History Report  
Peoples,...t Accounts Payable  
Activity From: 11/28/2000 To 12/21/2000  
Bank Account    WVFROP

Page    4  
Run Date  DEC-22-2000  
Run Time  9 02 19 AM

21258440/3    P 11

WINTRAP    13 20

| Check Number | Check Date | Vendor Number | Vendor Name | Payment Status | Replaced Date | Pay Cycle | Amount |
|---|---|---|---|---|---|---|---|
| 0000001973 | 12/21/2000 | 0000009443 | ALLIED GROUP INC | Paid | | WVFWK2 | 32 740 61 |
| 0000001974 | 12/21/2000 | 0000039278 | AMERIWAVE TECHNOLOGIES | Paid | | WVFWK2 | 4 600 00 |
| 0000001975 | 12/21/2000 | 0000000906 | ANIXTER INC | Paid | | WVFWK2 | 99 650 57 |
| 0000001976 | 12/21/2000 | 0000016634 | ASPEN SYSTEMS INC | Paid | | WVFWK2 | 1,968 53 |
| 0000001977 | 12/21/2000 | 0000000907 | BAIRD SATELLITE | Paid | | WVFWK2 | 492 36 |
| 0000001978 | 12/21/2000 | 0000000101 | BULLEY & ANDREWS/BUCHANAN LLC | Paid | | WVFWK2 | 4 509 00 |
| 0000001979 | 12/21/2000 | 0000031484 | CARRIER ACCESS CORPORATION | Paid | | WVFWK2 | 2,880 660 75 |
| 0000001980 | 12/21/2000 | 0000005607 | CARTER & BURGESS INC | Paid | | WVFWK2 | 2,860 98 |
| 0000001981 | 12/21/2000 | 0000043385 | CERAGON NETWORKS INC | Paid | | WVFWK2 | 112/ /5 |
| 0000001982 | 12/21/2000 | 0000007124 | CIC ASSOCIATES INC | Paid | | WVFWK2 | 2 567 00 |
| 0000001983 | 12/21/2000 | 0000032486 | CONTINENTAL RESOURCES | Paid | | WVFWK2 | 23 582 33 |
| 0000001984 | 12/21/2000 | 0000005345 | CPI COMMUNICATION SERVICES INC | Paid | | WVFWK2 | 42 778 00 |
| 0000001985 | 12/21/2000 | 0000000059 | DBI ARCHITECTS | Paid | | WVFWK2 | 3 430 05 |
| 0000001986 | 12/21/2000 | 0000042344 | DELL CORPORATION | Paid | | WVFWK2 | 41 612 71 |
| 0000001987 | 12/21/2000 | 0000046014 | DELTA CONTRACTORS INC | Paid | | WVFWK2 | 375 00 |
| 0000001988 | 12/21/2000 | 0000007636 | ELECTRIC MACHINERY ENTERPRISES INC | Paid | | WVFWK2 | 15 214 56 |
| 0000001989 | 12/21/2000 | 0000039199 | ELECTRICAL CONSTRUCTION CO | Paid | | WVFWK2 | 20 133.57 |
| 0000001990 | 12/21/2000 | 0000004658 | ELECTRONIC TELE COMMUNICATIONS CORP | Paid | | WVFWK2 | 28 041 82 |
| 0000001991 | 12/21/2000 | 0000042009 | EPLUS TECHNOLOGY INC | Paid | | WVFWK2 | 15 199 54 |
| 0000001992 | 12/21/2000 | 0000041577 | FIBER INSTRUMENT SALES INC | Paid | | WVFWK2 | 738.56 |
| 0000001993 | 12/21/2000 | 0000010917 | FISK ELECTRIC COMPANY | Paid | | WVFWK2 | 126 024 61 |
| 0000001994 | 12/21/2000 | 0000010917 | FISK ELECTRIC COMPANY | Paid | | WVFWK2 | 33 781.95 |
| /0000001993 | 12/21/2000 | 0000013434 | FRANK PARSONS PAPER COMPANY INC | Paid | | WVFWK2 | 8 339 10 |
| 0000001996 | 12/21/2000 | 0000009985 | G S ELECTRIC CO | Paid | | WVFWK2 | 5 920 00 |
| 0000001997 | 12/21/2000 | 0000001302 | GENSLER | Paid | | WVFWK1 | 2 61  S |
| 0000001998 | 12/21/2000 | 0000045185 | GIANNI ELECTRIC INC | Paid | | WVFWK2 | 39 76800 |
| 0000001999 | 12/21/2000 | 0000000093 | GRAYBAR | Paid | | WVFWK2 | 991 95 |
| 0000002000 | 12/21/2000 | 0000000093 | GRAYBAR | Paid | | WVFWK2 | 778 94 |
| 0000002001 | 12/21/2000 | 0000008606 | GUILD TECHNOLOGIES | Paid | | WVFWK2 | 197 917 20 |
| 0000002002 | 12/21/2000 | 0000008606 | GUILD TECHNOLOGIES | Overflow | | WVFWK3 | 0 00 |
| 0000002003 | 12/21/2000 | 0000008606 | GUILD TECHNOLOGIES | Overflow | | WVFWK1 | 0 00 |
| 0000002004 | 12/21/2000 | 0000003459 | HARGER LIGHTNING PROTECTION | Paid | | WVFWK2 | 2 578.60 |
| 0000002005 | 12/21/2000 | 0000032077 | HELP SERVICE CO | Paid | | WVFWK2 | 232 202.00 |
| 0000002006 | 12/21/2000 | 0000004929 | ROGANTEC INC | Paid | | WVFWK2 | 121 048 00 |
| 0000002007 | 12/21/2000 | 0000001292 | HUGH OKANE ELECTRIC CO LLC | Paid | | WVFWK2 | 288 181 82 |
| 0000002008 | 12/21/2000 | 0000001292 | HUGH OKANE ELECTRIC CO LLC | Overflow | | WVFWK2 | 0 00 |
| 0000002009 | 12/21/2000 | 0000001292 | HUGH OKANE ELECTRIC CO LLC | Overflow | | WVFWK2 | 0 00 |

onfidential

Report ID WL_chis
Operator 1 PDEBMON
Run Contrl CHECK

C   t History Report
PeopleSoft Accounts Payable
Activity From 11/28/2000 To 12/21/2000
BankAccount     WVFWK2

Pag.                5
Run Date    12/22/2000
Run Time    9 02:19 AM

DEC-22-2000   13 21     WINSTAR                                    2128444J.3      r  12

| Check Number | Check Date | Vendor Number | Vendor Name | Replaced Date | Payment Status | Pay Cycle | Amount |
|---|---|---|---|---|---|---|---|
| 0000002010 | 12/21/2000 | 0000000001 | MCI TECHNOLOGIES | | Paid | WVFWK2 | 300 000 00 |
| 0000002011 | 12/21/2000 | 0000045189 | J WAYNE POOLE | | Paid | WVFWK2 | 1 787 06 |
| 0000002012 | 12/21/2000 | 0000045918 | JULIUS KRAFT COMPANY INC | | Paid | WVFWK2 | 16 093 85 |
| 0000002013 | 12/21/2000 | 0000001143 | LEE TECHNOLOGIES INC | | Paid | WVFWK2 | 97 800 00 |
| 0000002014 | 12/21/2000 | 0000045813 | LEGATO SYSTEMS INC | | Paid | WVFWK2 | 14 429 00 |
| 0000002015 | 12/21/2000 | 0000060910 | LIEBERT CORPORATION | | Paid | WVFWK2 | 28 282 86 |
| 0000002016 | 12/21/2000 | 0000012222 | MARKET HALSEY URBAN RENEWAL LLC | | Paid | WVFWK2 | 30 000 00 |
| 0000002017 | 12/21/2000 | 0000045924 | MICROWAVE TOWER SERVICES INC | | Paid | WVFWK2 | 12 019 86 |
| 0000002018 | 12/21/2000 | 0000041613 | NEWTON INSTRUMENT COMPANY INC | | Paid | WVFWK2 | 2 6  J1 |
| 0000002019 | 12/21/2000 | 0000016817 | NORTHCO CORPORATION | | Paid | WVFWK2 | 358 180 38 |
| 0000002020 | 12/21/2000 | 0000035585 | OSAGE SYSTEMS GROUP INC | | Paid | WVFWK2 | 42 889 15 |
| 0000002021 | 12/21/2000 | 0000002200 | OSP CONSULTANTS. INC | | Paid | WVFWK2 | 10 869 50 |
| 0000002022 | 12/21/2000 | 0000002705 | P-COM NETWORK SERVICES INC | | Paid | WVFWK2 | 109 082.40 |
| 0000002023 | 12/21/2000 | 0000036143 | PJH COMPANY LLC | | Paid | WVFWK2 | 2.417 50 |
| 0000002024 | 12/21/2000 | 0000039183 | PLAYER AND COMPANY | | Paid | WVFWK2 | 23 000 00 |
| 0000002025 | 12/21/2000 | 0000008799 | POND & COMPANY | | Paid | WVFWK2 | 45 191 27 |
| 0000002026 | 12/21/2000 | 0000008799 | POND & COMPANY | | Overflow | WVFWK2 | 0 00 |
| 0000002027 | 12/21/2000 | 0000003401 | POWER AND TELEPHONE SUPPLY | | Paid | WVFWK2 | 145 413 97 |
| 0000002028 | 12/21/2000 | 0000039167 | PREFERRED UTILITIES MANUFACTURING COR | | Paid | WVFWK2 | 6 381 34 |
| 0000002029 | 12/21/2000 | 0000005251 | PRIME ELECTRIC COMPANY INC | | Paid | WVFWK2 | 33 490 00 |
| 0000002030 | 12/21/2000 | 0000000991 | PROGRESSIVE TECHNOLOGIES INC | | Paid | WVFWK2 | 456 118 00 |
| 0000002031 | 12/21/2000 | 0000043823 | PROJECT GROUP 2000 LLC | | Paid | WVFWK2 | 2 280 00 |
| 0000002032 | 12/21/2000 | 0000005050 | PROJECT INTERFACE CONNECTIONS | | Paid | WVFWK2 | 1 875 00 |
| 0000002033 | 12/21/2000 | 0000008827 | RAINBOW DISTRIBUTORS USA INC | | Paid | WVFWK2 | 306 00 |
| 0000002034 | 12/21/2000 | 0000045298 | RSA SECURITY INC | | Paid | WVFWK2 | 6 8   9 |
| 0000002035 | 12/21/2000 | 0000031562 | SACHS SYSTEMS INC | | Paid | WVFWK2 | 65 60Σ 16 |
| 0000002036 | 12/21/2000 | 0000043083 | SIGNET TESTING LABS INC | | Paid | WVFWK2 | 1 055 00 |
| 0000002037 | 12/21/2000 | 0000000937 | SOLUNET INC | | Paid | WVFWK2 | 1 236 076 66 |
| 0000002038 | 12/21/2000 | 0000000937 | SOLUNET INC | | Overflow | WVFWK2 | 0 00 |
| 0000002039 | 12/21/2000 | 0000034136 | STRATA INC | | Paid | WVFWK2 | 68 005 05 |
| 0000002040 | 12/21/2000 | 0000034136 | STRATA INC | | Overflow | WVFWK2 | 0 00 |
| 0000002041 | 12/21/2000 | 0000040181 | SUNGLO TELECOM | | Paid | WVFWK2 | 9 193 00 |
| 0000002042 | 12/21/2000 | 0000011337 | SUNGLO TELECOM  INC | | Paid | WVFWK2 | 25 412 00 |
| 0000002043 | 12/21/2000 | 0000901001 | SURE POWER | | Paid | WVFWK2 | 11 160 00 |
| 0000002044 | 12/21/2000 | 0000012114 | TAYLOR COMMUNICATIONS INC | | Paid | WVFWK2 | 22 288 65 |
| 0000002045 | 12/21/2000 | 0000000048 | TELLABS OPERATIONS | | Paid | WVFWK2 | 1 115.532 15 |
| 0000002046 | 12/21/2000 | 0000000048 | TELLABS OPERATIONS | | Overflow | WVFWK2 | 0 00 |

Confidential

DEC-22-2000   13 21                    WIINSTAR

Report ID  WI_ckhis
Operator I  FDESIMON
Run Contrc  CHECK

ck History Report
Peop...oft Accounts Payable
Activity From 11/28/2000 To 12/21/2000
Bank Account         WWPOP

Page     6
Run Date   12/21/200
Bue Time.   9 02.19 AM

| Check Number | Check Date | Vendor Number | Vendor Name | Replaced Date | Payment Status | Pay Cycle | Amount |
|---|---|---|---|---|---|---|---|
| 0000002047 | 12/21/2000 | 0000000048 | TELLABS OPERATIONS | | Overflow | WVFWK2 | 0 00 |
| 0000002048 | 12/21/2000 | 0000004680 | TTC | | Paid | WVFWK2 | 18 256 32 |
| 0000002049 | 12/21/2000 | 0000000959 | VALMONT MICROFLECT  INC | | Paid | WVFWK2 | 15 502.15 |
| 0000002050 | 12/21/2000 | 0000009441 | VECA ELECTRIC CO INC | | Paid | WVFWK2 | 41 103.23 |
| 0000002051 | 12/21/2000 | 0000008495 | VOLT SERVICES GROUP | | Paid | WVFWK2 | 4 616 00 |
| 0000002052 | 12/21/2000 | 0000003101 | BULLEY & ANDREWS/BUCHANAN LLC | | Void | OUICK4 | 21,544 00 |
| 0000002053 | 12/21/2000 | 0000041708 | BURR COMPUTER ENVIRONMENTS INC | | Paid | OUICK4 | 1.515 627 00 |
| 0000002054 | 12/21/2000 | 0000045032 | C C C NETWORK SYSTEMS INC | | Paid | OUICK4 | 1,624 007 12 |
| 0000002015 | 12/21/2000 | 0000014503 | MASTEC TECHNOLOGIES | | Paid | OUICK1 | 4012_ |
| 0000002056 | 12/21/2000 | 0000000937 | SOLUNET INC | | Paid | OUICK1 | 849 709 41 |
| 0000002057 | 12/21/2000 | 0000000048 | TELLABS OPERATIONS | | Paid | OUICK4 | 1 266 715 80 |
| 0000002058 | 12/21/2000 | 0000039123 | VOICE DATA SOLUTIONS INC | | Paid | OUICK4 | 161 892 86 |
| 0000002059 | 12/21/2000 | 0000016924 | SPECTRA SITE | | Paid | OUICK1 | 141 896 10 |
| 0000002060 | 12/21/2000 | 0000012917 | DIGITAL COMMUNICATIONS GROUP INC | | Paid | OUICK1 | 69,325 00 |

Total Amount    32,954 887 97

2125844075      P 13

- [ LESS VOIDS ($ 21,544 ex
- LESS VOIDS ($ 2,473,231.5
  From Polch
  Dlmales

$30,000,005_ô

TOTAL P 13

onfidential                                                    LW00071199

# ROA
# TAB
# 488

winstar

## NOTICE OF REQUEST FOR BORROWING

To    Lucent Technologies Inc  as Administrative Agent

Reference is made to the Credit Agreement dated as of May 4  2000 among WVF LU2  LLC
( the Borrower") Winstar Communications Inc  (Winstar)  the lenders which are a party
thereto, The Bank of New York as Collateral Agent, and Lucent Technologies Inc
as Administrative Agent (as amended from time to time  the "Credit Agreement )
Unless otherwise defined herein  capitalized terms defined in the Credit Agreement
and used herein shall have the same meaning  ascribed to such terms in the Credit
Agreement.

Pursuant to Section 2 03 the Credit Agreement  the Borrower hereby gives the Administrative
Agent written notice of request for a Borrowing according to the following instructions

| | | |
|---|---|---|
| 1  Total Amount of Borrowing' | | $    48 735 275 74 |
| a) | Amount of Borrowing to be paid directly to Lucent for Lucent Invoices | $    7 820 947 87 |
| b) | Amount of Borrowing to be paid directly to Lucent for Lucent Subsidiary Invoices | $    1 626 129 27 |
| c) | Amount of Borrowing to be paid directly to Lucent for Lucent International Invoices | $    9 089 150 74 |
| d) | Amount of Borrowing to be paid directly to Lucent for Lucent Arrangement Fees | $ |
| e) | Amount of Borrowing to be paid directly to the Borrower Non-Lucent Equipment | $    30 199 047 86 |

| | |
|---|---|
| BANK NAME. | STATE STREET BANK & TRUST BOSTON  MA |
| ABA NUMBER. | 011 000 028 |
| ACCOUNT NAME. | MERRILL GROUP CREDIT-MERRILL PREMIER FUND |
| FOR FURTHER CREDIT TO- | WVF-LU2, LLC |
| ACCOUNT NUMBER | 3324772 |
| AMOUNT | $ |

DEFENDANT'S
EXHIBIT

10

| | |
|---|---|
| BANK NAME. | STATE STREET BANK & TRUST<br>BOSTON MA |
| ABA NUMBER | 011 000 028 |
| ACCOUNT NAME. | MERRILL GROUP<br>CREDIT MERRILL PREMIER FUND |
| FOR FURTHER CREDIT TO· | WVF-LU2, LLC |
| ACCOUNT NUMBER. | 3324773 |
| AMOUNT | $ 30,199,047 86 |

2 Effective Date of Borrowing    <u>January 31 2000</u>

3 Type of Borrowing    _____ LIBOR    __X__ ABR

4 Interest Period    Months    _____ 1 ___ 2 ___ 3
                                         ___ 6 ___ 9 ___ 12

5 The Lucent invoices to be paid with the Borrowing are listed on Schedule A attached

The Borrower hereby certifies that all conditions for borrowing set forth in Section 4 03 the
Credit Agreement have been satisfied or will be satisfied as of the date hereof and the date the
borrowing is made

Dated this 26 day of January 2001

                                   WVF LU2, LLC

                                   By _____

                                   Name   Frederic E Rubin
                                   VP Treasurer

CONFIDENTIAL
3WC 0008193

1/26/01  10.28 AM

**Lucent Invoices - Draw 2 for WVF-LU2**
**January 31, 2000**

| | Invoice # | Invoice Amt |
|---|---|---|

### DOMESTIC

| | Invoice # | Invoice Amt |
|---|---|---|
| PARENT | 40116150 | 35 00 |
| PARENT | SO055535 | 45 01 |
| PARENT | SO056625 | 592 14 |
| PARENT | 50115952 | 70 00 |
| PARENT | 20110495 | 1 070 00 |
| PARENT | 30112222 | 35 00 |
| PARENT | NR012355 | 1 287 097 80 |
| PARENT | 10106852 | 5,121 20 |
| PARENT | 10106560 | 1 405 00 |
| PARENT | 10106642 | 111,211 00 |
| PARENT | 10106542 | 35 00 |
| PARENT | 40113938 | 53,602 50 |
| PARENT | 10106197 | 14,082 55 |
| PARENT | ER007044 | 4,908,750 00 |
| PARENT | ER014834 | 206 800 00 |
| PARENT | 10107066 | 670 00 |
| PARENT | WR013179 | 32 176 06 |
| PARENT | SU022486 | 1,198,149 61 |
| | **PARENT TOTAL** | **7,820 947 87** |
| | | |
| NETWORK CARE | PS-39259 | 2,278 79 |
| | **TOTAL NETWORK CARE** | **2,278 79** |
| | | |
| Ascend Group | 400024732 | 42,131 25 |
| Ascend Group | 400025143 | 1,673 59 |
| Ascend Group | 400028679 | 80,691 30 |
| Ascend Group | 400014284 | 330,631 88 |
| Ascend Group | 400015473 | 166,438 13 |
| Ascend Group | 400029462 | 1,242.07 |
| Ascend Group | 400028605 | 5,256 02 |
| Ascend Group | 400024811 | 1,241 785 25 |
| Ascend Group | C400015473 | (166 438 13) Max20 credit (#400015473) |
| Ascend Group | 400029560 | (235,384 39) Max20 credit (#400014284) |
| Ascend Group | 400029534 | (95,247 49) Max20 credit (#400014284) |
| | **TOTAL ASCEND** | **1,372,779 48** |

CONFIDENTIAL
3WC 0008194

1/26/01 10 28 AM

**Lucent Invoices - Draw 2 for WVF-LU2**
**January 31, 2000**

|  | Invoice # | Invoice Amt |  |
|---|---|---|---|
| Vitalnet | SW-2583 | 251 071 00 | Max20 credit (#400014284) |
|  | TOTAL VITALNET | 251 071 00 |  |

| TOTAL DOMESTIC | 9 447 077 14 |
|---|---|

CONFIDENTIAL
3WC 0008195

1/26/01  10 28 AM

Lucent Invoices - Draw 2 for WVF-LU2
January 31  2000

| Invoice # | Invoice Amt |
|---|---|

### INTERNATIONAL

| | Invoice # | Invoice Amt |
|---|---|---|
| FRANCE | 983104 | 172,688 00 |
| FRANCE | 986347 | 104,200 00 |
| FRANCE | 986370 | 36,196 00 |
| FRANCE | 979640 | 32 340 00 |
| FRANCE | 979641 | 32 822 00 |
| FRANCE | 977858 | 87,794 00 |
| FRANCE | 982450 | 104 491 00 |
| FRANCE | 983717 | 17 268 75 |
| FRANCE | 981416 | 17 268 75 |
| FRANCE | 982428 | 8 139 60 |
| FRANCE | 983716 | (17,268 75) |
| FRANCE | 986842 | 150 811 00 |
| FRANCE | 986839 | 33 075 00 |
| FRANCE | 987391 | (187 773 00) |
| FRANCE | 987598 | 21 900 00 |
| **FRANCE TOTAL** | | **613,952.35** |
| BELGIUM | 986353 | 171 700 00 |
| BELGIUM | 986372 | 27,554 00 |
| BELGIUM | 979635 | 15 515 00 |
| BELGIUM | 979634 | 16 493 00 |
| BELGIUM | 977856 | 23,655 00 |
| BELGIUM | 982565 | 66 401 00 |
| BELGIUM | 983213 | 7,152 00 |
| BELGIUM | 983544 | 50,064 00 |
| BELGIUM | 984513 | 8,172 00 |
| BELGIUM | 983264 | 10,021 00 |
| BELGIUM | 983265 | 9,421 00 |
| BELGIUM | 983723 | (94 941 00) |
| BELGIUM | 983528 | 25,662.00 |
| BELGIUM | 984550 | 1,137 00 |
| BELGIUM | 984408 | 720 00 |
| BELGIUM | 984522 | 960 00 |
| BELGIUM | 983724 | 72 336 00 |
| BELGIUM | 984529 | 5 382 00 |

CONFIDENTIAL
3WC 0008198

1/26/01 10 28 AM

Lucent Invoices - Draw 2 for WVF-LU2
January 31 2000

|  | Invoice # | Invoice Amt |
|---|---|---|
| BELGIUM | 984561 | 1 694 00 |
| BELGIUM | 983770 | 95 000 00 |
| BELGIUM | 983726 | 15,449 49 |
| BELGIUM | 981633 | 94 941 00 |
| BELGIUM | 982500 | 8 139 60 |
| BELGIUM | 982502 | 168,219 00 |
| BELGIUM | 983725 | (15,449 49) |
| BELGIUM | 986932 | 10 959 66 |
| BELGIUM | 986924 | 20,479 05 |
| BELGIUM | 987350 | (164,998 00) |
| BELGIUM | 987549 | 46 650 00 |
| BELGIUM | 987514 | 3 988 00 |
| BELGIUM | 987516 | 9,408 00 |
| BELGIUM | 987500 | 3 638 00 |
| BELGIUM | 987494 | 10 764 00 |
| BELGIUM | 987476 | 64,368 00 |
| BELGIUM | 987540 | 43,800 00 |
| BELGIUM | 987455 | 18 084 00 |
|  | **BELGIUM TOTAL** | 852,538 31 |
| NETHERLANDS | 976335 | 54 162 00 |
| NETHERLANDS | 988207 | (54,162 00) |
| NETHERLANDS | 981515 | 49,695 00 |
| NETHERLANDS | 976334 | 6,202 00 |
| NETHERLANDS | 981577 | 16,436 00 |
| NETHERLANDS | 979027 | 644 00 |
| NETHERLANDS | 979332 | 2,270 00 |
| NETHERLANDS | 979126 | 2 688 00 |
| NETHERLANDS | 986351 | 385 100 00 |
| NETHERLANDS | 986367 | 65 266 00 |
| NETHERLANDS | 986326 | 10,632 00 |
| NETHERLANDS | 986460 | 8,327 00 |
| NETHERLANDS | 986325 | 5,593 00 |
| NETHERLANDS | 986548 | 8,327 00 |
| NETHERLANDS | 986547 | 24,381 00 |
| NETHERLANDS | 986544 | 28 096 00 |
| NETHERLANDS | 986578 | 1 100 00 |
| NETHERLANDS | 986575 | 3,600 00 |

CONFIDENTIAL
3WC 0008197

1/26/01  10 28 AM

**Lucent Invoices - Draw 2 for WVF-LU2**
**January 31, 2000**

| | Invoice # | Invoice Amt |
|---|---|---|
| NETHERLANDS | 986573 | 12 048 00 |
| NETHERLANDS | 986571 | 18,839 00 |
| NETHERLANDS | 986568 | 3,208 00 |
| NETHERLANDS | 986566 | 5 285 00 |
| NETHERLANDS | 986563 | 11 127 00 |
| NETHERLANDS | 986559 | 763 00 |
| NETHERLANDS | 986558 | 8 627 00 |
| NETHERLANDS | 986557 | 8 321 00 |
| NETHERLANDS | 986556 | 9 887 00 |
| NETHERLANDS | 986555 | 1 569 00 |
| NETHERLANDS | 986552 | 4 000 00 |
| NETHERLANDS | 986540 | 2,422 00 |
| NETHERLANDS | 986542 | 24 261 00 |
| NETHERLANDS | 986549 | 8 656 00 |
| NETHERLANDS | 986551 | 10,593 00 |
| NETHERLANDS | 986473 | 7 227 00 |
| NETHERLANDS | 986382 | 13 096 00 |
| NETHERLANDS | 986145 | 10 527 00 |
| NETHERLANDS | 987601 | 351 086 67 |
| NETHERLANDS | 979632 | 46,164 00 |
| NETHERLANDS | 979633 | 47,383 00 |
| NETHERLANDS | 977852 | 1,029,328 00 |
| NETHERLANDS | 984315 | 16 983 00 |
| NETHERLANDS | 983699 | 16,397 00 |
| NETHERLANDS | 984339 | 8 821 00 |
| NETHERLANDS | 984332 | 17,185 00 |
| NETHERLANDS | 983713 | 71,742 00 |
| NETHERLANDS | 984336 | 12,656 00 |
| NETHERLANDS | 984338 | 23,789 00 |
| NETHERLANDS | 984329 | 24,078 00 |
| NETHERLANDS | 983704 | 8,987 00 |
| NETHERLANDS | 983208 | 21,456 00 |
| NETHERLANDS | 983703 | 30 158 00 |
| NETHERLANDS | 984321 | 10,954 00 |
| NETHERLANDS | 984323 | 18,242 00 |
| NETHERLANDS | 984319 | 15,883 00 |
| NETHERLANDS | 982385 | 198,222.00 |
| NETHERLANDS | 987344 | (598,584 00) |
| NETHERLANDS | 986324 | 26,826 00 |
| NETHERLANDS | 986320 | 7,785 00 |

CONFIDENTIAL
3WC 0008198

1/26/01  10 28 AM

## Lucent Invoices - Draw 2 for WVF-LU2
### January 31, 2000

| | Invoice # | Invoice Amt |
|---|---|---|
| NETHERLANDS | 986463 | 97,296 00 |
| NETHERLANDS | 986537 | 19,174 00 |
| NETHERLANDS | 986350 | 30,831 09 |
| NETHERLANDS | 986845 | 34,131 75 |
| NETHERLANDS | 986837 | 7,276 00 |
| NETHERLANDS | 987606 | 9,421 00 |
| NETHERLANDS | 987612 | 3,360 00 |
| NETHERLANDS | 987609 | 26 882 00 |
| NETHERLANDS | 987520 | 1 765 00 |
| NETHERLANDS | 987506 | 12 544 00 |
| NETHERLANDS | 987448 | 171 648 00 |
| | NETHERLANDS TOTAL | 2 598,683 51 |
| UNITED KINGDOM | 985868 | 31,145 50 |
| UNITED KINGDOM | 986348 | 107 100 00 |
| UNITED KINGDOM | 986366 | 28 449 00 |
| UNITED KINGDOM | 986784 | 37,500 00 |
| UNITED KINGDOM | 987519 | 3,700 00 |
| UNITED KINGDOM | 983451 | 11,154 00 |
| UNITED KINGDOM | 983442 | 8,327 00 |
| UNITED KINGDOM | 987415 | (56 750 00) |
| UNITED KINGDOM | 986824 | 8,327 00 |
| UNITED KINGDOM | 986922 | 31 099 84 |
| UNITED KINGDOM | 986919 | 57,341 34 |
| UNITED KINGDOM | 986857 | 71,724 00 |
| UNITED KINGDOM | 986810 | 9 042 00 |
| UNITED KINGDOM | 987561 | 39,194 50 |
| UNITED KINGDOM | 987541 | 21,900 00 |
| UNITED KINGDOM | 987603 | 52,012 84 |
| UNITED KINGDOM | 977859 | 10 000 00 |
| UNITED KINGDOM | 979637 | 17,292.00 |
| UNITED KINGDOM | 979636 | 17 292.00 |
| UNITED KINGDOM | 982404- | 59,382.00 |
| UNITED KINGDOM | 976174 | 210,315 15 |
| UNITED KINGDOM | 979390 | 38,052.00 |
| UNITED KINGDOM | 979391 | 158 287 00 |

CONFIDENTIAL
3WC 0008199

1/26/01  10 28 AM

## Lucent Invoices - Draw 2 for WVF-LU2
### January 31, 2000

| | Invoice # | Invoice Amt |
|---|---|---|
| | UNITED KINGDOM TOTAL | 971 887 17 |
| GERMANY | 981634 | 17,143 00 |
| GERMANY | 981617 | 40,000 00 |
| GERMANY | 979613 | 102 827 00 |
| GERMANY | 981417 | 152,050 15 |
| GERMANY | 986343 | 231,900 00 |
| GERMANY | 986368 | 30 130 00 |
| GERMANY | 977857 | 10,000 00 |
| GERMANY | 979638 | 17 051 00 |
| GERMANY | 979639 | 17 292 00 |
| GERMANY | 979551 | 171 191 60 |
| GERMANY | 981444 | 53 277 00 |
| GERMANY | 983684 | 40 168 00 |
| GERMANY | 983688 | 120 00 |
| GERMANY | 984065 | 8,327 00 |
| GERMANY | 983683 | 8,327 00 |
| GERMANY | 981583 | 3 178 00 |
| GERMANY | 982374 | 28,318 00 |
| GERMANY | 983669 | (101,529 00) |
| GERMANY | 983670 | 101 529 00 |
| GERMANY | 981621 | 101,529 00 |
| GERMANY | 983081 | 112 759 00 |
| GERMANY | 983074 | 38,052 00 |
| GERMANY | 981616 | 27,143 00 |
| GERMANY | 983693 | (27 143 00) |
| GERMANY | 984027 | 17,143 00 |
| GERMANY | 984024 | (13 572 00) |
| GERMANY | 983694 | 13,572 00 |
| GERMANY | 982347 | 54,468 00 |
| GERMANY | 983073 | 137,968 50 |
| GERMANY | 981631 | 65,102 00 |
| GERMANY | 982370 | 51,966 00 |
| GERMANY | 983399 | 38 052 00 |
| GERMANY | 983390 | 260,557 00 |
| GERMANY | 984031 | (15 000 00) |
| GERMANY | 982346 | 57,806 00 |
| GERMANY | 983071 | 137 968 50 |
| GERMANY | 983691 | 3,178 00 |

CONFIDENTIAL
3WC 0008200

1/26/01  10 28 AM

## Lucent Invoices - Draw 2 for WVF-LU2
### January 31, 2000

| | Invoice # | Invoice Amt |
|---|---|---|
| GERMANY | 983070 | 137 968 50 |
| GERMANY | 984063 | 7 812 00 |
| GERMANY | 982340 | 8,139 60 |
| GERMANY | 982349 | 7,069 00 |
| GERMANY | 982362 | 65 102 00 |
| GERMANY | 982361 | 2 000 00 |
| GERMANY | 981635 | 15,000 00 |
| GERMANY | 981632 | 15 000 00 |
| GERMANY | 980414 | 328 917 00 |
| GERMANY | 980384 | 73 800 78 |
| GERMANY | 983690 | (3 178 00) |
| GERMANY | 987424 | (64,332 00) |
| GERMANY | 985949 | 22 605 00 |
| GERMANY | 986742 | 2 000 00 |
| GERMANY | 986739 | 798 00 |
| GERMANY | 986736 | 10 000 00 |
| GERMANY | 986741 | 65 102 00 |
| GERMANY | 986929 | 30 282 84 |
| GERMANY | 987594 | 8,378 00 |
| GERMANY | 987576 | 39 957 75 |
| GERMANY | 987423 | 20 918 00 |
| GERMANY | 987567 | 48,753 00 |
| GERMANY | 987565 | 48 753 00 |
| GERMANY | 987564 | 43,800 00 |
| GERMANY | 986993 | 44 835 00 |
| | GERMANY TOTAL | 2,972,330 22 |
| EUROPE | 986618 | (48 165 00) |
| EUROPE | 986611 | 2,400 00 |
| EUROPE | 986614 | 123,120 00 |
| EUROPE | 986613 | 30 400 00 |
| EUROPE | 986612 | 39,330 00 |
| EUROPE | 986619 | 18,450 00 |
| EUROPE | 986598 | 44,400 00 |
| EUROPE | 986597 | 36,800 00 |
| EUROPE | 986596 | 41 000 00 |
| EUROPE | 987585 | 31 920 00 |
| EUROPE | 987587 | 60,230 00 |
| EUROPE | 978479 | 28 800 00 |

CONFIDENTIAL
3WC 0008201

1/26/01  10 28 AM

## Lucent Invoices - Draw 2 for WVF-LU2
### January 31 2000

| | Invoice # | Invoice Amt | |
|---|---|---|---|
| EUROPE | 983721 | 52,230 00 | |
| EUROPE | 986591 | (52,230 00) | |
| EUROPE | 986593 | (28 800 00) | |
| EUROPE | 982616 | 37,012 50 | |
| EUROPE | 982609 | 127,720 00 | |
| EUROPE | 983719 | 45,920 00 | |
| EUROPE | 986599 | (127,720 00) | |
| EUROPE | 986617 | (37 012 50) | |
| EUROPE | 986594 | (45 920 00) | |
| EUROPE | 983720 | (52 230 00) | |
| EUROPE | 976250 | 52 230 00 | |
| EUROPE | 981463 | 72 485 00 | |
| EUROPE | 981512 | 56,200 00 | |
| EUROPE | 981468 | 43 650 00 | |
| EUROPE | 983141 | 57 760 00 | |
| EUROPE | 982552 | 3 600 00 | |
| EUROPE | 982604 | 55,670 00 | |
| EUROPE | 983718 | (56,200 00) | |
| | **EUROPE TOTAL** | **613,050 00** | |
| ARGENTINA | 9973 | 33,863 00 | Lucent Argentina |
| ARGENTINA | 1-10253 | 189,483 78 | Lucent Argentina |
| ARGENTINA | 2s510134 | 13 608 40 | Lucent USA |
| ARGENTINA | 2s510139 | 27 750 00 | Lucent USA |
| ARGENTINA | 2s510156 | 13,585 00 | Lucent USA |
| ARGENTINA | 2s510165 | 7,348 00 | Lucent USA |
| ARGENTINA | 2s510167 | 18,000 00 | Lucent USA |
| ARGENTINA | 2s510171 | 11,235 00 | Lucent USA |
| ARGENTINA | 2s510173 | 64,272.00 | Lucent USA |
| ARGENTINA | 2s510174 | 29,250 00 | Lucent USA |
| ARGENTINA | 2s510175 | 6,000 00 | Lucent USA |
| ARGENTINA | 2s510176 | 18,000 00 | Lucent USA |
| ARGENTINA | 2s510177 | 28,314 00 | Lucent USA |
| ARGENTINA | 2s510178 | 6,000 00 | Lucent USA |
| | **ARGENINA TOTAL** | **466,709 18** | |
| | **INTERNATIONAL TOTAL** | **9 089,150 74** | |

CONFIDENTIAL
3WC 0008202

Report ID  WI_ckhis
Operator ID  DNIDOWIC
Run Control  CHECK

**Check History Report**
PeopleSoft Accounts Payable
Activity From 12/1/2000 To 1/25/2001
Bank Account ---- VPZOP

Page No: 1
Run Date: 1/26/01
Run Time: 10 32 41 AM

| Check Number | Check Date | Vendor Number | Vendor Name | Payment Status | Replaced Date | Pay Cycle | Amount |
|---|---|---|---|---|---|---|---|
| 000000001 | 12/28/2000 | 0000005251 | PRIME ELECTRIC COMPANY INC | Paid | | QUICK4 | 32 493 00 |
| 000000002 | 12/28/2000 | 0000045032 | C C C NETWORK SYSTEMS INC | Paid | | QUICK4 | 702 665 32 |
| 000000003 | 12/29/2000 | 0000033434 | FRANK PARSONS PAPER COMPANY INC | Paid | | QUICK4 | 2 898 21 |
| 000000004 | 1/5/2001 | 0000033434 | FRANK PARSONS PAPER COMPANY INC | Paid | | QUICK1 | 68 904 44 |
| 000000005 | 1/5/2001 | 0000006906 | ANIXTER INC | Paid | | WVF2WK | 69 155 34 |
| 000000006 | 1/5/2001 | 0000032486 | CONTINENTAL RESOURCES | Paid | | WVF2WK | 5 813 57 |
| 000000007 | 1/5/2001 | 0000040601 | CRANEL INCORPORATED | Paid | | WVF2WK | 0 00 |
| 000000008 | 1/5/2001 | 0000001002 | DIGITAL MICROWAVE CORP | Void | | WVF2WK | 90 604 64 |
| 000000009 | 1/5/2001 | 0000010690 | GALLAGHER ELECTRIC AND ENGINEERING C | Void | | WVF2WA | 3 819 62 |
| 000000010 | 1/5/2001 | 0000045185 | GIANNI ELECTRIC INC | Paid | | WVF2WK | 18 48 |
| 000000011 | 1/5/2001 | 0000000093 | GRAYBAR | Paid | | WVF2WK | 2 124 01 |
| 000000012 | 1/5/2001 | 0000000093 | GRAYBAR | Paid | | WVF2WK | 278 83 |
| 000000013 | 1/5/2001 | 0000008606 | GUILD TECHNOLOGIES | Paid | | WVF2WK | 165 223 54 |
| 000000014 | 1/5/2001 | 0000008606 | GUILD TECHNOLOGIES | Overflow | | WVF2WK | 0 00 |
| 000000015 | 1/5/2001 | 0000011669 | HIGGINS NETWORK SERVICES | Paid | | WVF2WK | 14 580 38 |
| 000000016 | 1/5/2001 | 0000001292 | HUGH O KANE ELECTRIC CO  LLC | Paid | | WVF2WK | 365 212 05 |
| 000000017 | 1/5/2001 | 0000001292 | HUGH O KANE ELECTRIC CO  LLC | Overflow | | WVF2WK | 0 00 |
| 000000018 | 1/5/2001 | 0000001292 | HUGH O KANE ELECTRIC CO  LLC | Overflow | | WVF2WK | 0 00 |
| 000000019 | 1/5/2001 | 0000001292 | HUGH O KANE ELECTRIC CO  LLC | Overflow | | WVF2WK | 0 00 |
| 000000020 | 1/5/2001 | 0000001292 | HUGH O KANE ELECTRIC CO  LLC | Overflow | | WVF2WK | 0 00 |
| 000000021 | 1/5/2001 | 0000000913 | LIEBERT CORPORATION | Overflow | | WVF2WK | 0 00 |
| 000000022 | 1/5/2001 | 0000002200 | OSP CONSULTANTS INC | Paid | | WVF2WK | 47 975 40 |
| 000000023 | 1/5/2001 | 0000002705 | P COM NETWORKS SERVICES INC | Paid | | WVF2WK | 1 608 75 |
| 000000074 | 1/5/2001 | 0000005251 | PRIME ELECTRIC COMPANY INC | Paid | | WVF2WK | 15 138 60 |
| 000000025 | 1/5/2001 | 0000034838 | REDLINE COMMUNICATIONS INC | Paid | | WVF2WK | 19 065 00 |
| 000000027 | 1/5/2001 | 0000003743 | SECURITY TECHNOLOGIES GROUP | Paid | | WVF2WK | 43 863 79 |
| 000000028 | 1/5/2001 | 0000000937 | SOLUNET INC | Paid | | WVF2WK | 2 355 32 |
| 000000029 | 1/5/2001 | 0000036924 | SPECTRA SITE | Paid | | WVF2WK | 156 65 |
| 000000030 | 1/5/2001 | 0000034136 | STRATA INC | Paid | | WVF2WK | 89 244 90 |
| 000000031 | 1/5/2001 | 0000001337 | SUNGLO TELECOM INC | Paid | | WVF2WK | 41 957 27 |
| 000000032 | 1/5/2001 | 0000041006 | TELECOM PROFESSIONAL SERVICES INC | Paid | | WVF2WK | 18 114 00 |
| 000000033 | 1/8/2001 | 0000033579 | TRI TECH ELECTRIC CONTRACTORS INC | Paid | | QUICK5 | 13 833 98 |
| 000000034 | 1/8/2001 | 0000000001 | IMCI TECHNOLOGIES | Paid | | QUICK5 | 592 25 |
| 000000003 | 1/8/2001 | 0000005251 | PRIME ELECTRIC COMPANY INC | Paid | | QUICK3 | 523 88 |
| 000000035 | 1/11/2001 | 0000005251 | PRIME ELECTRIC COMPANY INC | Paid | | QUICK3 | 153 226 60 |
| 000000036 | 1/11/2001 | 0000198534 | ABUCK INC | Paid | | WVF2WK | 122 384 50 |
| 000000037 | 1/11/2001 | 0000014484 | ARBOR MATERIAL HANDLING INC | Paid | | WVF2WA | 114 498 80 |

CONFIDENTIAL
3WC 0008203

Report ID   WI_ckhis
Operator ID   DNIDOWIC
Run Control   CHECK

**Check History Report**
PeopleSoft Accounts Payable
Activity From 12/1/2000 To 1/25/2001
Bank Account   VPZOP

Page No   2
Run Date   1/24/01
Run Time   10.32.41 AM

| Check Number | Check Date | Vendor Number | Vendor Name | Payment Status | Replaced Date | Pay Cycle | Amount |
|---|---|---|---|---|---|---|---|
| 0000000038 | 1/11/2001 | 0000040697 | AZTEK TECH SERVICE | Paid | | WVF2WK | 4,186.09 |
| 0000000039 | 1/11/2001 | 0000040907 | BAIRD SATELLITE | Paid | | WVF2WK | 4,759.48 |
| 0000000040 | 1/11/2001 | 0000003301 | BULLEY & ANDREWS/BUCHANAN LLC | Paid | | WVF2WK | 98,170.00 |
| 0000000041 | 1/11/2001 | 0000031712 | CAPITOL SIGN SYSTEMS | Paid | | WVF2WK | 56,330.00 |
| 0000000042 | 1/11/2001 | 0000006237 | CAROL ELECTRIC COMPANY INC | Paid | | WVF2WK | 24,622.30 |
| 0000000043 | 1/11/2001 | 0000006237 | CAROL ELECTRIC COMPANY INC | Overflow | | WVF2WK | 0.00 |
| 0000000044 | 1/11/2001 | 0000031484 | CARRIER ACCESS CORPORATION | Paid | | WVF2WK | 8,964.14 |
| 0000000045 | 1/11/2001 | 0000003607 | CARTER & BURGESS INC | Paid | | WVF2WK | 109,759.20 |
| 0000000046 | 1/11/2001 | 0000003607 | CARTER & BURGESS INC | Paid | | WVF2WK | 264,242.40 |
| 0000000047 | 1/11/2001 | 0000007324 | CIC ASSOCIATES INC | Paid | | WVF2WK | 13,063.00 |
| 0000000048 | 1/11/2001 | 0000009655 | COM NET CONSTRUCTION SERVICES | Paid | | WVF2WK | 131,486.17 |
| 0000000049 | 1/11/2001 | 0000048237 | CREATIVE DESIGN AND MACHINING INC | Paid | | WVF2WK | 36,625.00 |
| 0000000050 | 1/11/2001 | 0000045241 | DC CONNECTIONS | Paid | | WVF2WK | 19,820.02 |
| 0000000051 | 1/11/2001 | 0000040676 | DCG | Paid | | WVF2WK | 2,200.00 |
| 0000000052 | 1/11/2001 | 0000032917 | DIGITAL COMMUNICATIONS GROUP INC | Paid | | WVF2WK | 39,800.00 |
| 0000000053 | 1/11/2001 | 0000010917 | FISK ELECTRIC COMPANY | Paid | | WVF2WK | 33,117.60 |
| 0000000054 | 1/11/2001 | 0000080606 | GUILD TECHNOLOGIES | Paid | | WVF2WK | 46,824.43 |
| 0000000055 | 1/11/2001 | 0000003459 | HARGER LIGHTNING PROTECTION | Paid | | WVF2WK | 1,383.00 |
| 0000000056 | 1/11/2001 | 0000004929 | HOGANTEC INC | Paid | | WVF2WK | 7,264.40 |
| 0000000057 | 1/11/2001 | 0000001292 | HUGH O'KANE ELECTRIC CO LLC | Paid | | WVF2WK | 196,872.42 |
| 0000000058 | 1/11/2001 | 0000001292 | HUGH O'KANE ELECTRIC CO LLC | Overflow | | WVF2WK | 0.00 |
| 0000000059 | 1/11/2001 | 0000001292 | HUGH O'KANE ELECTRIC CO LLC | Overflow | | WVF2WK | 0.00 |
| 0000000060 | 1/11/2001 | 0000045189 | J WAYNE POOLE | Paid | | WVF2WK | 1,787.00 |
| 0000000061 | 1/11/2001 | 0000000913 | LIEBERT CORPORATION | Paid | | WVF2WK | 230,818.76 |
| 0000000062 | 1/11/2001 | 0000000913 | LIEBERT CORPORATION | Overflow | — | WVF2WK | 0.00 |
| 0000000063 | 1/11/2001 | 0000000913 | LIEBERT CORPORATION | Overflow | | WVF2WK | 0.00 |
| 0000000064 | 1/11/2001 | 0000000047 | LUCENT TECHNOLOGIES INC | Paid | | WVF2WK | 0.00 |
| 0000000065 | 1/11/2001 | 0000000047 | LUCENT TECHNOLOGIES INC | Overflow | | WVF2WK | 0.00 |
| 0000000066 | 1/11/2001 | 0000000047 | LUCENT TECHNOLOGIES INC | Overflow | | WVF2WK | 0.00 |
| 0000000067 | 1/11/2001 | 0000033206 | MARCONI COMMUNICATIONS | Paid | | WVF2WK | 56,589.16 |
| 0000000068 | 1/11/2001 | 0000082277 | NAMEPLATES FOR INDUSTRY INC | Paid | | WVF2WK | 2,223.98 |
| 0000000069 | 1/11/2001 | 0000043613 | NEWTON INSTRUMENT COMPANY INC | Paid | | WVF2WK | 2,881.81 |
| 0000000070 | 1/11/2001 | 0000022200 | OSP CONSULTANTS INC | Paid | | WVF2WK | 11,742.00 |
| 0000000071 | 1/11/2001 | 0000002705 | P COM NETWORK SERVICES INC | Paid | | WVF2WK | 28,733.00 |
| 0000000072 | 1/11/2001 | 0000031069 | QUALITY TELECOMMUNICATION INC | Paid | | WVF2WK | 13,010.37 |
| 0000000073 | 1/11/2001 | 0000034538 | REDLINE COMMUNICATIONS INC | Paid | | WVF2WK | 152,190.12 |
| 0000000073 | 1/11/2001 | 0000003375 | ROTMAN ELECTRICAL CO INC | Paid | | WVF2WK | 129,653.70 |
| 0000000074 | 1/11/2001 | 0000003375 | ROTMAN ELECTRICAL CO INC | Overflow | | WVF2WK | 0.00 |

CONFIDENTIAL
3WC 0008204

Report ID   WI_ckhis
Operator ID   DNIDOWIC
Run Control   CHECK

Check History Report
PeopleSoft Accounts Payable
Activity From 12/1/2000 To 1/25/2001

Bank Account   VP20P

Page No   3
Run Date   1/24/01
Run Time   10:32:41 AM

| Check Number | Check Date | Vendor Number | Vendor Name | Payment Status | Replaced Date | Pay Cycle | Amount |
|---|---|---|---|---|---|---|---|
| 000000075 | 1/11/2001 | 0000031562 | SACHS SYSTEMS INC | Paid | | WVF2WK | 134 929 00 |
| 000000076 | 1/11/2001 | 0000000937 | SOLUNET INC | Paid | | WVF2WK | 238 567 32 |
| 000000077 | 1/11/2001 | 0000003063 | SPECIALIZED PRODUCTS COMPANY | Paid | | WVF2WK | 26 438 45 |
| 000000078 | 1/11/2001 | 0000001337 | SUNGLO TELECOM INC | Paid | | WVF2WK | 8 545 00 |
| 000000079 | 1/11/2001 | 0000045117 | SUPRA | Paid | | WVF2WK | 65 794 10 |
| 000000080 | 1/11/2001 | 0000041964 | TELECOM NETWORK DESIGN & CABLING | Void | | WVF2WK | 184 337 52 |
| 000000081 | 1/11/2001 | 0000041006 | TELECOM PROFESSIONAL SERVICES INC | Paid | | WVF2WK | 37 275 00 |
| 000000082 | 1/11/2001 | 0000000048 | TELLABS OPERATIONS | Paid | | WVF2WK | 37 275 00 |
| 000000083 | 1/11/2001 | 0000017174 | THE COURTNEY COMPANY | Paid | | WVF2WK | 36 643 99 |
| 000000084 | 1/11/2001 | 0000033579 | TRI TECH ELECTRIC CONTRACTORS INC | Paid | | WVF2WK | 16 428 50 |
| 000000085 | 1/11/2001 | 0000004680 | TTC | Paid | | WVF2WK | 69 953 00 |
| 000000086 | 1/16/2001 | 0000041964 | TELECOM NETWORK DESIGN & CABLING | Paid | | WVF2WK | 3 701 20 |
| 000000087 | 1/17/2001 | 0000000978 | ADVANCED FIBRE COMMUNICATIONS | Paid | | QUICKS | 150 831 08 |
| 000000088 | 1/17/2001 | 0000043202 | AGILENT TECHNOLOGIES | Paid | | WVF2WK | 901 529 42 |
| 000000089 | 1/17/2001 | 0000036714 | ALLEGHENY BUILDERS INC | Paid | | WVF2WK | 2 871 95 |
| 000000090 | 1/17/2001 | 0000039278 | AMERIWAVE TECHNOLOGIES | Paid | | WVF2WK | 79 177 60 |
| 000000091 | 1/17/2001 | 0000005574 | ANDREW CORPORATION | Paid | | WVF2WK | 48 098 00 |
| 000000092 | 1/17/2001 | 0000000906 | ANIXTER INC | Paid | | WVF2WK | 12 737 11 |
| 000000093 | 1/17/2001 | 0000000906 | ANIXTER INC | Overflow | | WVF2WK | 513 780 10 |
| 000000094 | 1/17/2001 | 0000000906 | ANIXTER INC | Overflow | | WVF2WK | 0 00 |
| 000000095 | 1/17/2001 | 0000000907 | BAIRD SATELLITE | Paid | | WVF2WK | 17 560 84 |
| 000000096 | 1/17/2001 | 0000000907 | BAIRD SATELLITE | Overflow | | WVF2WK | 0 00 |
| 000000097 | 1/17/2001 | 0000006237 | CAROL ELECTRIC COMPANY INC | Paid | | WVF2WK | 21 857 50 |
| 000000098 | 1/17/2001 | 0000031484 | CARRIER ACCESS CORPORATION | Paid | | WVF2WK | 21 513 69 |
| 000000099 | 1/17/2001 | 0000043585 | CERAGON NETWORKS INC | Paid | | WVF2WK | 509 404 00 |
| 000000100 | 1/17/2001 | 0000045241 | DC CONNECTIONS | Paid | | WVF2WK | 19 44 |
| 000000101 | 1/17/2001 | 0000032917 | DIGITAL COMMUNICATIONS GROUP INC | Paid | | WVF2WK | 1 500 00 |
| 000000102 | 1/17/2001 | 0000001002 | DIGITAL MICROWAVE CORP | Paid | | WVF2WK | 803 849 22 |
| 000000103 | 1/17/2001 | 0000043413 | DORF CONSTRUCTION CO INC | Paid | | WVF2WK | 97 496 00 |
| 000000104 | 1/17/2001 | 0000002196 | EE LINDEN ASSOCIATES INC | Paid | | WVF2WK | 109 149 63 |
| 000000105 | 1/17/2001 | 0000002196 | EE LINDEN ASSOCIATES INC | Overflow | | WVF2WK | 0 00 |
| 000000106 | 1/17/2001 | 0000002196 | EE LINDEN ASSOCIATES INC | Overflow | | WVF2WK | 0 00 |
| 000000107 | 1/17/2001 | 0000002196 | EE LINDEN ASSOCIATES INC | Overflow | | WVF2WK | 0 00 |
| 000000108 | 1/17/2001 | 0000007636 | ELECTRIC MACHINERY ENTERPRISES INC | Paid | | WVF2WK | 9 918 22 |
| 000000109 | 1/17/2001 | 0000043595 | ENTREX COMMUNICATION SERVICES INC | Paid | | WVF2WK | 14 697 52 |
| 000000110 | 1/17/2001 | 0000005550 | FIDELITY ENGINEERING CORP | Paid | | WVF2WK | 75 417 07 |
| 000000111 | 1/17/2001 | 0000010917 | FISK ELECTRIC COMPANY | Paid | | WVF2WK | 14 407 00 |

CONFIDENTIAL
3WC 0008205

**PEOPLE** (logo)

| Report ID | WL_ckhis |
|---|---|
| Operator ID | DNIDOWIC |
| Run Control | CHECK |

**Check History Report**

PeopleSoft Accounts Payable

Activity From 12/1/2000 To 1/25/2001

Bank Account — VPF107

| Page No | 4 |
|---|---|
| Run Date | 1/26/01 |
| Run Time | 10:32:41 AM |

| Check Number | Check Date | Vendor Number | Vendor Name | Payment Status | Replaced Date | Pay Cycle | Amount |
|---|---|---|---|---|---|---|---|
| 000000112 | 1/17/2001 | 000003390 | FORTREX TECHNOLOGIES | Paid | | WVF2WK | 75 380 76 |
| 000000113 | 1/17/2001 | 000009620 | FTV INC | Paid | | WVF2WK | 5 954 04 |
| 000000114 | 1/17/2001 | 000032077 | HELP SERVICE CO | Paid | | WVF2WK | 175 385 00 |
| 000000115 | 1/17/2001 | 000007772 | HNS TELECOM | Void | | WVF2WK | 525 00 |
| 000000116 | 1/17/2001 | 000007772 | HNS TELECOM | Paid | | WVF2WK | 14 311 11 |
| 000000117 | 1/17/2001 | 000049929 | HOGANTEC INC | Paid | | WVF2WK | 73 110 45 |
| 000000118 | 1/17/2001 | 000001292 | HUGH O'KANE ELECTRIC CO   LLC | Paid | | WVF2WK | 197 408 26 |
| 000000119 | 1/17/2001 | 000001292 | HUGH O'KANE ELECTRIC CO   LLC | Overflow | | WVF2WK | 0 00 |
| 000000120 | 1/17/2001 | 000001292 | HUGH O'KANE ELECTRIC CO   LLC | Overflow | | WVF2WK | 0 00 |
| 000000121 | 1/17/2001 | 000001292 | HUGH O'KANE ELECTRIC CO   LLC | Overflow | | WVF2WK | 0 00 |
| 000000122 | 1/17/2001 | 000001292 | HUGH O'KANE ELECTRIC CO   LLC | Overflow | | WVF2WK | 0 00 |
| 000000123 | 1/17/2001 | 000005630 | HUGHES NETWORK SYSTEMS INC | Paid | | WVF2WK | 153 000 00 |
| 000000124 | 1/17/2001 | 000011141 | LEE TECHNOLOGIES INC | Paid | | WVF2WK | 103 680 00 |
| 000000125 | 1/17/2001 | 000013334 | MASTEC WIRELESS SERVICES | Paid | | WVF2WK | 260 935 20 |
| 000000126 | 1/17/2001 | 000000903 | MCMASTER CARR SUPPLY COMPANY | Paid | | WVF2WK | 4 019 50 |
| 000000127 | 1/17/2001 | 000002756 | MICROWAVE DESIGNS INTERNATIONAL  INC | Paid | | WVF2WK | 87 116 45 |
| 000000128 | 1/17/2001 | 000001139 | MICROWAVE TOWER SERVICES INC | Paid | | WVF2WK | 7 293 76 |
| 000000129 | 1/17/2001 | 000004265 | MYDAY COMMUNICATION | Paid | | WVF2WK | 650 00 |
| 000000130 | 1/17/2001 | 000005050 | PROJECT INTERFACE CONNECTIONS | Paid | | WVF2WK | 40 970 00 |
| 000000131 | 1/17/2001 | 000034338 | REDLINE COMMUNICATIONS INC | Paid | | WVF2WK | 8 344 00 |
| 000000132 | 1/17/2001 | 000031562 | SACHS SYSTEMS INC | Paid | | WVF2WL | 14 766 00 |
| 000000133 | 1/17/2001 | 000000937 | SOLUNET INC | Paid | | WVF2WK | 844 261 47 |
| 000000134 | 1/17/2001 | 000003605 | STEPLIN CONSTRUCTION | Paid | | WVF2WK | 24 750 00 |
| 000000135 | 1/17/2001 | 000034116 | STRATA INC | Paid | | WVF2WK | 3 608 33 |
| 000000136 | 1/17/2001 | 000033626 | TAYLOR COMMUNICATIONS | Paid | | WVF2WK | 86 349 08 |
| 000000137 | 1/17/2001 | 000041964 | TELECOM NETWORK DESIGN & CABLING | Void | | WVF2WK | 33 506 44 |
| 000000138 | 1/17/2001 | 000041006 | TELECOM PROFESSIONAL SERVICES INC | Paid | | WVF2WK | 16 015 00 |
| 000000139 | 1/17/2001 | 000000048 | TELLABS OPERATIONS | Paid | | WVF2WK | 39 152 92 |
| 000000140 | 1/17/2001 | 000000048 | TELLABS OPERATIONS | Overflow | | WVF2WK | 0 00 |
| 000000141 | 1/17/2001 | 000004680 | TTC | Paid | | WVF2WK | 188 118 00 |
| 000000142 | 1/17/2001 | 000001643 | VA LINUX SYSTEMS INC | Paid | | WVF2WK | 1 525 91 |
| 000000143 | 1/17/2001 | 000008495 | VOLT SERVICES GROUP | Paid | | WVF2WK | 30 480 00 |
| 000000144 | 1/18/2001 | 000046004 | TRANSEL ELEVATOR INC | Paid | | OUICK6 | 7 236 68 |
| 000000145 | 1/18/2001 | 000001292 | HUGH O'KANE ELECTRIC CO   LLC | Paid | | OUICK6 | 70 343 25 |
| 000000146 | 1/18/2001 | 000001292 | HUGH O'KANE ELECTRIC CO   LLC | Paid | | OUICK6 | 12 570 79 |
| 000000147 | 1/22/2001 | 000043202 | AGILENT TECHNOLOGIES | Paid | | WVF2WK | 3 578 01 |
| 000000148 | 1/22/2001 | 000036714 | ALLEGHENY BUILDERS INC | Void | | WVF2WK | 12 562 20 |

CONFIDENTIAL
3WC 0008206

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Report ID | WLshla | | | | | Page No | 5 |
| Operator ID | DNIDOWIC | | | | | Run Date | 1/26/01 |
| Run Control | CHECK | | | | | Run Time | 10:32:41 AM |

**Check History Report**
**PeopleSoft Accounts Payable**
**Activity From 12/1/2000 To 1/25/2001**
**Bank Account    VPPOT**

| Check Number | Check Date | Vendor Number | Vendor Name | Payment Status | Replaced Date | Pay Cycle | Amount |
|---|---|---|---|---|---|---|---|
| 000000149 | 1/22/2001 | 000047456 | ALT ENTERPRISES INC | Paid | | WVF2WK | 21,584.20 |
| 000000150 | 1/22/2001 | 000000907 | BARD SATELLITE | Paid | | WVF2WK | 3,117.53 |
| 000000141 | 1/22/2001 | 000038792 | BALTIMORE AIRCOIL COMPANY INC | Paid | | WVF2WK | 29,492.00 |
| 000000152 | 1/22/2001 | 000042764 | BLACKBOX NETWORK SERVICES | Paid | | WVF2WK | 63,657.77 |
| 000000153 | 1/22/2001 | 000003301 | BULLEY & ANDREWS/BUCHANAN LLC | Paid | | WVF2WK | 178,490.00 |
| 000000154 | 1/22/2001 | 000006237 | CAROL ELECTRIC COMPANY INC | Paid | | WVF2WK | 59,508.75 |
| 000000155 | 1/22/2001 | 000006237 | CAROL ELECTRIC COMPANY INC | Overflow | | WVF2WK | 0.00 |
| 000000156 | 1/22/2001 | 000031484 | CARRIER ACCESS CORPORATION | Paid | | WVF2WK | 14,341.17 |
| 000000157 | 1/22/2001 | 000003607 | CARTER & BURGESS INC | Paid | | WVF2WK | 314,445.47 |
| 000000158 | 1/22/2001 | 000029017 | DIGITAL COMMUNICATIONS GROUP INC | Paid | | WVF2WK | 30,700.00 |
| 000000159 | 1/22/2001 | 000002196 | EE LINDEN ASSOCIATES INC | Paid | | WVF2WK | 3,344.92 |
| 000000160 | 1/22/2001 | 000002196 | EE LINDEN ASSOCIATES INC | Paid | | WVF2WK | 313,904.18 |
| 000000161 | 1/22/2001 | 000002196 | EE LINDEN ASSOCIATES INC | Overflow | | WVF2WK | 0.00 |
| 000000162 | 1/22/2001 | 000002196 | EE LINDEN ASSOCIATES INC | Overflow | | WVF2WK | 0.00 |
| 000000163 | 1/22/2001 | 000002196 | EE LINDEN ASSOCIATES INC | Overflow | | WVF2WK | 0.00 |
| 000000164 | 1/22/2001 | 000002196 | EE LINDEN ASSOCIATES INC | Overflow | | WVF2WK | 0.00 |
| 000000165 | 1/22/2001 | 000002196 | EE LINDEN ASSOCIATES INC | Overflow | | WVF2WK | 0.00 |
| 000000166 | 1/22/2001 | 000002196 | EE LINDEN ASSOCIATES INC | Overflow | | WVF2WK | 0.00 |
| 000000167 | 1/22/2001 | 000002196 | EE LINDEN ASSOCIATES INC | Overflow | | WVF2WK | 0.00 |
| 000000168 | 1/22/2001 | 000002196 | EE LINDEN ASSOCIATES INC | Overflow | | WVF2WK | 0.00 |
| 000000169 | 1/22/2001 | 000002196 | EE LINDEN ASSOCIATES INC | Overflow | | WVF2WK | 0.00 |
| 000000170 | 1/22/2001 | 000002196 | EE LINDEN ASSOCIATES INC | Overflow | | WVF2WK | 0.00 |
| 000000171 | 1/22/2001 | 000002196 | EE LINDEN ASSOCIATES INC | Overflow | | WVF2WK | 0.00 |
| 000000172 | 1/22/2001 | 000002196 | EE LINDEN ASSOCIATES INC | Overflow | | WVF2WK | 0.00 |
| 000000173 | 1/22/2001 | 000003434 | FRANK PARSONS PAPER COMPANY INC | Paid | | WVF2WK | 4,049.38 |
| 000000174 | 1/22/2001 | 000001302 | GENSLER | Paid | | WVF2WK | 1,125.77 |
| 000000175 | 1/22/2001 | 000045185 | GIANNI ELECTRIC INC | Paid | | WVF2WK | 1,167.20 |
| 000000176 | 1/22/2001 | 000000093 | GRAYBAR | Paid | | WVF2WK | 1,059.11 |
| 000000177 | 1/22/2001 | 000000093 | GRAYBAR | Paid | | WVF2WK | 405.37 |
| 000000178 | 1/22/2001 | 000041157 | GTE SUPPLY | Paid | | WVF2WK | 38,467.30 |
| 000000179 | 1/22/2001 | 000008606 | GUILD TECHNOLOGIES | Overflow | | WVF2WK | 248,771.02 |
| 000000180 | 1/22/2001 | 000008606 | GUILD TECHNOLOGIES | Overflow | | WVF2WK | 0.00 |
| 000000181 | 1/22/2001 | 000008606 | GUILD TECHNOLOGIES | Overflow | | WVF2WK | 0.00 |
| 000000182 | 1/22/2001 | 000008606 | GUILD TECHNOLOGIES | Overflow | | WVF2WK | 0.00 |
| 000000183 | 1/22/2001 | 000046992 | GUILD TECHNOLOGIES COLORADO LLC | Paid | | WVF2WK | 13,854.22 |
| 000000184 | 1/22/2001 | 000011669 | HIGGINS NETWORK SERVICES | Paid | | WVF2WK | 8,750.00 |
| 000000185 | 1/23/2001 | 000001202 | HUGH O LANE ELECTRIC CO LLC | Paid | | WVF2WK | 39,902.79 |

CONFIDENTIAL
3WC 0008207

Report ID  WI_ckhis
Operator ID  DNIDOWIC
Run Control  CHECK

**Check History Report**
PeopleSoft Accounts Payable
Activity From 12/1/2000 To 1/25/2001

Bank Account    APPCHK

Page No  6
Run Date  1/26/01
Run Time  10 32 41 AM

| Check Number | Check Date | Vendor Number | Vendor Name | Payment Status | Replaced Date | Pay Cycle | Amount |
|---|---|---|---|---|---|---|---|
| 000000186 | 1/22/2001 | 000045918 | JULIUS KRAFT COMPANY INC | Paid | | WVF2WK | 7 193 10 |
| 000000187 | 1/22/2001 | 000044375 | LYNCOLE | Paid | | WVF2WK | 4 700 00 |
| 000000188 | 1/22/2001 | 000033206 | MARCONI COMMUNICATIONS | Paid | | WVF2WK | 15 850 70 |
| 000000189 | 1/22/2001 | 000019841 | METROPOLITAN CONSTRUCTION CO | Paid | | WVF2WK | 46 661 00 |
| 000000190 | 1/22/2001 | 000002756 | MICROWAVE DESIGNS INTERNATIONAL INC | Paid | | WVF2WK | 4 903 35 |
| 000000191 | 1/22/2001 | 000001139 | MICROWAVE TOWER SERVICES INC | Paid | | WVF2WK | 3 293 75 |
| 000000192 | 1/22/2001 | 000045184 | NAT COM INC | Paid | | WVF2WK | 11 920 00 |
| 000000193 | 1/22/2001 | 000016402 | NATIONAL NETWORK TECHNOLOGIES INC | Paid | | WVF2WK | 28 744 97 |
| 000000194 | 1/22/2001 | 000016402 | NATIONAL NETWORK TECHNOLOGIES INC | Overflow | | WVF2WK | 0 00 |
| 000000195 | 1/22/2001 | 000054395 | NEC BUSINESS NETWORK SOLUTIONS | Paid | | WVF2WK | 84 655 65 |
| 000000196 | 1/22/2001 | 000042622 | NETSWORK INC | Paid | | WVF2WK | 14 677 00 |
| 000000197 | 1/22/2001 | 000002200 | OSP CONSULTANTS INC | Paid | | WVF2WK | 371 838 00 |
| 000000198 | 1/22/2001 | 000002200 | OSP CONSULTANTS INC | Overflow | | WVF2WK | 0 00 |
| 000000199 | 1/22/2001 | 000002200 | OSP CONSULTANTS INC | Overflow | | WVF2WK | 0 00 |
| 000000200 | 1/22/2001 | 000002200 | OSP CONSULTANTS INC | Overflow | | WVF2WK | 0 00 |
| 000000201 | 1/22/2001 | 000002200 | OSP CONSULTANTS INC | Overflow | | WVF2WK | 0 00 |
| 000000202 | 1/22/2001 | 000002705 | P COM NETWORK SERVICES INC | Paid | | WVF2WK | 139 977 00 |
| 000000203 | 1/22/2001 | 000002705 | P COM NETWORK SERVICES INC | Paid | | WVF2WK | 163 860 06 |
| 000000204 | 1/22/2001 | 000002705 | P COM NETWORK SERVICES INC | Overflow | | WVF2WK | 0 00 |
| 000000205 | 1/22/2001 | 000002705 | P COM NETWORK SERVICES INC | Overflow | | WVF2WK | 3 325 00 |
| 000000206 | 1/22/2001 | 000016232 | PAGANINI ELECTRIC CORPORATION | Paid | | WVF2WK | 29 461 00 |
| 000000207 | 1/22/2001 | 000008799 | POND & COMPANY | Paid | | WVF2WA | 55 080 01 |
| 000000208 | 1/22/2001 | 000008799 | POND & COMPANY | Overflow | | WVF2WK | 0 00 |
| 000000209 | 1/22/2001 | 000003401 | POWER AND TELEPHONE SUPPLY | Paid | | WVF2WK | 1 243 659 08 |
| 000000210 | 1/22/2001 | 000003401 | POWER AND TELEPHONE SUPPLY | Overflow | | WVF2WK | 0 00 |
| 000000211 | 1/22/2001 | 000003401 | POWER AND TELEPHONE SUPPLY | Overflow | | WVF2WK | 0 00 |
| 000000212 | 1/22/2001 | 000005251 | PRIME ELECTRIC COMPANY INC | Paid | | WVF2WK | 251 752 00 |
| 000000213 | 1/22/2001 | 000005251 | PRIME ELECTRIC COMPANY INC | Overflow | | WVF2WK | 0 00 |
| 000000214 | 1/22/2001 | 000000991 | PROGRESSIVE TECHNOLOGIES INC | Paid | | WVF2WK | 27 920 00 |
| 000000215 | 1/22/2001 | 000043338 | REDLINE COMMUNICATIONS INC | Paid | | WVF2WK | 1 416 85 |
| 000000216 | 1/22/2001 | 000043271 | RICHMOND ELECTRICAL SERVICES INC | Paid | | WVF2WK | 1 775 00 |
| 000000217 | 1/22/2001 | 000016563 | ROEDIGER CONSTRUCTION INC | Paid | | WVF2WK | 9 993 00 |
| 000000218 | 1/22/2001 | 000031562 | SACHS SYSTEMS INC | Paid | | WVF2WK | 13 632 36 |
| 000000219 | 1/22/2001 | 000000962 | SECURITY TECHNOLOGIES GROUP INC | Paid | | WVF2WK | 5 717 59 |
| 000000220 | 1/22/2001 | 000000962 | SECURITY TECHNOLOGIES GROUP INC | Paid | | WVF2WK | 5 468 00 |
| 000000221 | 1/22/2001 | 000042763 | SOLAR COMMUNICATIONS INTERNATIONAL I | Paid | | WVF2WK | 9 377 73 |
| 000000222 | 1/22/2001 | 000000917 | SOLUNET INC | Paid | | WVF2WK | 28 580 75 |

CONFIDENTIAL
3WC 0008208

**PEOPLE**

Report ID     WL_Gkhis
Operator ID   DNIDOWIC
Run Control   CHECK

**Check History Report**
**PeopleSoft Accounts Payable**
Activity From 12/1/2000 To 1/25/2001
Bank Account     VP208

Page No.     7
Run Date     1/26/01
Run Time     10:32:41 AM

| Check Number | Check Date | Vendor Number | Vendor Name | Payment Status | Replaced Date | Pay Cycle | Amount |
|---|---|---|---|---|---|---|---|
| 000000223 | 1/22/2001 | 000045247 | SPECIALTY CONSTRUCTION INC | Paid | | WVF2WK | 79,364.97 |
| 000000224 | 1/22/2001 | 000032618 | SPRINT NORTH SUPPLY | Paid | | WVF2WK | 4,810.80 |
| 000000225 | 1/22/2001 | 000003605 | STEPLIN CONSTRUCTION | Paid | | WVF2WK | 45,550.00 |
| 000000226 | 1/22/2001 | 000034116 | STRATA INC | Paid | | WVF2WK | 31,190.40 |
| 000000227 | 1/22/2001 | 000001337 | SUNGLO TELECOM INC | Paid | | WVF2WK | 115,680.07 |
| 000000228 | 1/22/2001 | 000001337 | SUNGLO TELECOM INC | Overflow | | WVF2WK | 0.00 |
| 000000229 | 1/22/2001 | 000001001 | SURE POWER | Paid | | WVF2WK | 3,840.00 |
| 000000230 | 1/22/2001 | 000036431 | SYSTEMS MANUFACTURING CORPORATION | Paid | | WVF2WK | 61,394.35 |
| 000000231 | 1/22/2001 | 000003626 | TAYLOR COMMUNICATIONS | Paid | | WVF2WA | 31,900.19 |
| 000000232 | 1/22/2001 | 000041964 | TELECOM NETWORK DESIGN & CABLING | Paid | | WVF2WA | 20,081.44 |
| 000000233 | 1/22/2001 | 000000048 | TELLABS OPERATIONS | Paid | | WVF2WK | -141.25 |
| 000000234 | 1/22/2001 | 000017174 | THE COURTNEY COMPANY | Void | | WVF2WK | -141.25 |
| 000000235 | 1/22/2001 | 000033579 | TRI TECH ELECTRIC CONTRACTORS INC | Paid | | WVF2WA | 5,458.40 |
| 000000236 | 1/22/2001 | 000004680 | TTC | Paid | | WVF2WA | 47,287.00 |
| 000000237 | 1/22/2001 | 000036830 | VIAGATE TECHNOLOGIES | Paid | | WVF2WA | 174,060.45 |
| 000000238 | 1/22/2001 | 000039123 | VOICE DATA SOLUTIONS INC | Paid | | WVF2WA | 171,736.50 |
| 000000239 | 1/22/2001 | 000019834 | ABLICK INC | Paid | | WVF2WK2 | 128,615.36 |
| 000000240 | 1/22/2001 | 000000978 | ADVANCED FIBRE COMMUNICATIONS | Paid | | WVFWK2 | 15,158.70 |
| 000000241 | 1/22/2001 | 000033441 | ALPHA TELECOM SERVICES CO | Paid | | WVFWK2 | 160,844.31 |
| 000000242 | 1/22/2001 | 000041246 | BUILDERS GROUP | Paid | | WVFWK2 | 14,194.00 |
| 000000243 | 1/22/2001 | 000005345 | CPI COMMUNICATION SERVICES INC | Paid | | WVFWK2 | 72,534.38 |
| 000000244 | 1/22/2001 | 000005345 | CPI COMMUNICATION SERVICES INC | Paid | | WVFWK2 | 15,803.00 |
| 000000245 | 1/22/2001 | 000044961 | DAY WIRELESS SYSTEMS INC | Paid | | WVFWK2 | 67,335.00 |
| 000000246 | 1/22/2001 | 000033151 | ENERGY MANAGEMENT SYSTEMS | Paid | | WVFWK2 | 95,400.00 |
| 000000247 | 1/22/2001 | 000010917 | FISK ELECTRIC COMPANY | Paid | — | WVFWK2 | 1,610.00 |
| 000000248 | 1/22/2001 | 000010917 | FISK ELECTRIC COMPANY | Paid | | WVFWK2 | 259.80 |
| 000000249 | 1/22/2001 | 000009885 | G S ELECTRIC CO | Paid | | WVFWK2 | 74,903.90 |
| 000000250 | 1/22/2001 | 000000093 | GRAYBAR | Paid | | WVFWK2 | 590.00 |
| 000000251 | 1/22/2001 | 000000606 | GUILD TECHNOLOGIES | Paid | | WVFWK2 | 418.87 |
| 000000252 | 1/22/2001 | 000032077 | HELP SERVICE CO | Paid | | WVFWK2 | 47,959.43 |
| 000000253 | 1/22/2001 | 000001292 | HUGH O KANE ELECTRIC CO   LLC | Paid | | WVFWK2 | 116,210.00 |
| 000000254 | 1/22/2001 | 000001292 | HUGH O KANE ELECTRIC CO   LLC | Overflow | | WVFWK2 | 517,282.52 |
| 000000255 | 1/22/2001 | 000001292 | HUGH O KANE ELECTRIC CO   LLC | Overflow | | WVFWK2 | 0.00 |
| 000000256 | 1/22/2001 | 000001292 | HUGH O KANE ELECTRIC CO   LLC | Overflow | | WVFWK2 | 0.00 |
| 000000257 | 1/22/2001 | 000001292 | HUGH O KANE ELECTRIC CO   LLC | Overflow | | WVFWK2 | 0.00 |
| 000000258 | 1/22/2001 | 000001292 | HUGH O KANE ELECTRIC CO   LLC | Overflow | | WVFWK2 | 0.00 |
| 000000259 | 1/22/2001 | 000005630 | HUGHES NETWORK SYSTEMS INC | Paid | | WVFWK2 | 10,400.00 |

CONFIDENTIAL
3WC 0008209

Report ID     WI_ckhis
Operator ID   DNIDOWIC
Run Control   CHECK

**Check History Report**
PeopleSoft Accounts Payable
Activity From 12/1/2000To 1/25/2001

Bank Account_____VPBOI

Page No       8
Run Date      1/26/01
Run Time      10 32 41 AM

| Check Number | Check Date | Vendor Number | Vendor Name | Payment Status | Replaced Date | Pay Cycle | Amount |
|---|---|---|---|---|---|---|---|
| 0000000260 | 1/22/2001 | 0000018197 | INTEGRATED COMMUNICATIONS SERVICES | Paid | | WVFWK2 | 19 731 00 |
| 000000026I | 1/22/2001 | 0000001141 | LEE TECHNOLOGIES INC | Paid | | WVFWK2 | 66 593 09 |
| 0000000262 | 1/22/2001 | 0000001339 | MICROWAVE TOWER SERVICES INC | Paid | | WVFWK2 | 18 320 39 |
| 0000000263 | 1/22/2001 | 0000016817 | NORTHCO CORPORATION | Paid | | WVFWK2 | 16 225 00 |
| 0000000264 | 1/22/2001 | 0000002705 | P COM NETWORK SERVICES INC | Paid | | WVFWK2 | 43 835 00 |
| 0000000265 | 1/22/2001 | 0000003401 | POWER AND TELEPHONE SUPPLY | Paid | | WVFWK2 | 11 406 80 |
| 0000000266 | 1/22/2001 | 0000043825 | PROJECT GROUP 2000 LLC | Paid | | WVFWK2 | 2 280 00 |
| 0000000267 | 1/22/2001 | 0000034136 | STRATA INC | Paid | | WVFWK2 | 69 267 06 |
| 0000000268 | 1/22/2001 | 0000001337 | SUNGLO TELECOM INC | Paid | | WVFWK2 | 100 351 85 |
| 0000000269 | 1/22/2001 | 0000009441 | VECA ELECTRIC CO INC | Paid | | WVFWK2 | 16 692 00 |
| 0000000270 | 1/22/2001 | 0000008495 | VOLT SERVICES GROUP | Paid | | WVFWK2 | 900 00 |
| 0000000271 | 1/22/2001 | 0000008495 | VOLT SERVICES GROUP | Paid | | WVFWK2 | 900 00 |
| 0000000272 | 1/22/2001 | 0000019814 | ABUCK, INC | Paid | | WVFZWK | 16 006 50 |
| 0000000273 | 1/22/2001 | 0000036714 | ALLEGHENY BUILDERS INC | Paid | | WVFZWK | 44 897 20 |
| 0000000274 | 1/22/2001 | 0000039278 | AMERIWAVE TECHNOLOGIES | Paid | | WVFZWK | 74 079 38 |
| 0000000275 | 1/22/2001 | 0000039278 | AMERIWAVE TECHNOLOGIES | Overflow | | WVFZWK | 0 00 |
| 0000000276 | 1/22/2001 | 0000004815 | ASSEMBLIES INC | Paid | | WVFZWK | 24 177 44 |
| 0000000277 | 1/22/2001 | 0000042567 | ATLANTIC COAST TOWERS INC | Paid | | WVFZWK | 13 165 00 |
| 0000000278 | 1/22/2001 | 0000003301 | BULLEY & ANDREWS/BUCHANAN LLC | Paid | | WVFZWK | 274 881 00 |
| 0000000279 | 1/22/2001 | 0000045032 | C C C NETWORK SYSTEMS INC | Paid | | WVFZWK | 150 794 00 |
| 0000000280 | 1/22/2001 | 0000046482 | CABLE SYSTEM DESIGN | Paid | | WVFZWK | 1 750 00 |
| 0000000281 | 1/22/2001 | 0000006237 | CAROL ELECTRIC COMPANY INC | Paid | | WVFZWK | 33 485 00 |
| 0000000282 | 1/27/2001 | 0000014484 | CARRIER ACCESS CORPORATION | Paid | | WVFZWK | 352 835 76 |
| 0000000283 | 1/22/2001 | 0000014484 | CARRIER ACCESS CORPORATION | Paid | | WVFZWK | 14 303 54 |
| 0000000284 | 1/22/2001 | 0000003607 | CARTER & BURGESS INC | Paid | | WVFZWK | 42 327 79 |
| 0000000285 | 1/22/2001 | 0000043585 | CERAGON NETWORKS INC | Paid | | WVFZWK | 581 006 00 |
| 0000000286 | 1/22/2001 | 0000005415 | CISCO SYSTEMS INC | Paid | | WVFZWK | 836 00 |
| 0000000287 | 1/22/2001 | 0000004837 | CREATIVE DESIGN AND MACHINING INC | Paid | | WVFZWK | 5 450 00 |
| 0000000288 | 1/22/2001 | 0000045241 | DC CONNECTIONS | Paid | | WVFZWK | 1 489 90 |
| 0000000289 | 1/22/2001 | 0000042344 | DELL CORPORATION | Paid | | WVFZWK | 614 46 |
| 0000000290 | 1/22/2001 | 0000032917 | DIGITAL COMMUNICATIONS GROUP INC | Paid | | WVFZWK | 37 950 00 |
| 0000000291 | 1/22/2001 | 0000036241 | DON THINSCHMIDT | Paid | | WVFZWK | 24 815 98 |
| 0000000292 | 1/22/2001 | 0000043413 | DORF CONSTRUCTION CO INC | Paid | | WVFZWK | 49 644 00 |
| 0000000293 | 1/22/2001 | 0000038852 | EC COMPANY | Paid | | WVFZWK | 57 995 08 |
| 0000000294 | 1/22/2001 | 0000046526 | EDD HELMS DATA COMM GROUP | Paid | | WVFZWK | 79 640 00 |
| 0000000295 | 1/22/2001 | 0000043594 | ENTREX COMMUNICATION SERVICES INC | Paid | | WVFZWK | 20 033 26 |
| 0000000296 | 1/22/2001 | 0000037649 | G F MORIN COMPANY | Paid | | WVFZWK | 15 296 71 |

CONFIDENTIAL
3WC 0008210

| Report ID | WL_ckhis | | Check History Report | | | Page No | 9 |
|---|---|---|---|---|---|---|---|
| Operator ID | DNIDOWIC | | PeopleSoft Accounts Payable | | | Run Date | 1/26/01 |
| Run Control | CHECK | | Activity From 12/1/2000To 1/25/2001 | | | Run Time | 10 32 41 AM |
| | | | Bank Account VPSOP | | | | |

| Check Number | Check Date | Vendor Number | Vendor Name | Payment Status | Replaced Date | Pay Cycle | Amount |
|---|---|---|---|---|---|---|---|
| 000000297 | 1/22/2001 | 000010690 | GALLAGHER ELECTRIC AND ENGINEERING C( | Paid | | WVF2WK | 351 93 |
| 000000298 | 1/22/2001 | 000001202 | GENSLER | Paid | | WVF2WK | 39 564 82 |
| 000000299 | 1/22/2001 | 000000093 | GRAYBAR | Paid | | WVF2WK | 5 499 27 |
| 000000300 | 1/22/2001 | 000000093 | GRAYBAR | Paid | | WVF2WK | 1 083 53 |
| 000000301 | 1/22/2001 | 000008606 | GUILD TECHNOLOGIES | Paid | | WVF2WK | 97 756 38 |
| 000000302 | 1/22/2001 | 000008606 | GUILD TECHNOLOGIES | Overflow | | WVF2WK | 0 00 |
| 000000303 | 1/22/2001 | 000032077 | HELP SERVICE CO | Paid | | WVF2WK | 173 385 00 |
| 000000304 | 1/22/2001 | 000011669 | HIGGINS NETWORK SERVICES | Paid | | WVF2WK | 11 642 47 |
| 000000305 | 1/22/2001 | 000011669 | HIGGINS NETWORK SERVICES | Paid | | WVF2WK | 23 010 19 |
| 000000306 | 1/22/2001 | 000045918 | JULIUS KRAFT COMPANY INC | Paid | | WVF2WK | 12 333 45 |
| 000000307 | 1/22/2001 | 000045918 | JULIUS KRAFT COMPANY INC | Paid | | WVF2WK | 674 40 |
| 000000308 | 1/22/2001 | 000033206 | MARCONI COMMUNICATIONS | Paid | | WVF2WK | 443 791 63 |
| 000000309 | 1/22/2001 | 000033206 | MARCONI COMMUNICATIONS | Paid | | WVF2WK | 59 012 18 |
| 000000310 | 1/22/2001 | 000027746 | MICROWAVE DESIGNS INTERNATIONAL INC | Paid | | WVF2WK | 50 304 25 |
| 000000311 | 1/22/2001 | 000001339 | MICROWAVE TOWER SERVICES INC | Paid | | WVF2WK | 6 365 00 |
| 000000312 | 1/22/2001 | 000016402 | NATIONAL NETWORK TECHNOLOGIES INC | Paid | | WVF2WK | 14 795 52 |
| 000000313 | 1/22/2001 | 000045395 | NEC BUSINESS NETWORK SOLUTIONS | Paid | | WVF2WK | 71 099 72 |
| 000000314 | 1/22/2001 | 000002200 | OSP CONSULTANTS INC | Paid | | WVF2WK | 142 708 50 |
| 000000315 | 1/22/2001 | 000002705 | P COM NETWORK SERVICES INC | Paid | | WVF2WN | 103 788 00 |
| 000000316 | 1/22/2001 | 000002705 | P COM NETWORK SERVICES INC | Paid | | WVF2WK | 82 945 00 |
| 000000317 | 1/22/2001 | 000002705 | P COM NETWORK SERVICES INC | Overflow | | WVF2WK | 0 00 |
| 000000318 | 1/22/2001 | 000002157 | PACIFIC NATCOM INC | Paid | | WVF2WK | 20 969 00 |
| 000000319 | 1/22/2001 | 000039183 | PLAYER AND COMPANY | Paid | | WVF2WK | 2 825 00 |
| 000000320 | 1/22/2001 | 000008799 | POND & COMPANY | Paid | | WVF2WK | 55 739 12 |
| 000000321 | 1/22/2001 | 000008799* | POND & COMPANY | Overflow | | WVF2WK | 0 00 |
| 000000322 | 1/22/2001 | 000003401 | POWER AND TELEPHONE SUPPLY | Paid | | WVF2WK | 104 884 80 |
| 000000323 | 1/22/2001 | 000052251 | PRIME ELECTRIC COMPANY INC | Paid | | WVF2WK | 188 997 00 |
| 000000324 | 1/22/2001 | 000052251 | PRIME ELECTRIC COMPANY INC | Overflow | | WVF2WK | 0 00 |
| 000000325 | 1/22/2001 | 000003050 | PROJECT INTERFACE CONNECTIONS | Paid | | WVF2WK | 95 50 |
| 000000326 | 1/22/2001 | 000043571 | OSERVE COMMUNICATIONS | Paid | | WVF2WK | 13 971 25 |
| 000000327 | 1/22/2001 | 000034338 | REDLINE COMMUNICATIONS INC | Paid | | WVF2WK | 30 602 35 |
| 000000328 | 1/22/2001 | 000034338 | REDLINE COMMUNICATIONS INC | Overflow | | WVF2WK | 0 00 |
| 000000329 | 1/22/2001 | 000003375 | ROTMAN ELECTRICAL CO INC | Paid | | WVF2WK | 107 703 92 |
| 000000330 | 1/22/2001 | 000019187 | SCHILD INCORPORATED | Paid | | WVF2WR | 36 733 27 |
| 000000331 | 1/22/2001 | 000042763 | SOLAR COMMUNICATIONS INTERNATIONAL I | Paid | | WVF2WK | 72 104 84 |
| 000000332 | 1/22/2001 | 000036924 | SPECTRA SITE | Paid | | WVF2WK | 118 993 20 |
| 000000333 | 1/22/2001 | 000001337 | SUNGLO TELECOM INC | Paid | | WVF2WA | 34 098 50 |

CONFIDENTIAL
3WC 0008211

Report ID  WL_chhis
Operator ID  DNIDOWIC
Run Control  CHECK

**Check History Report**
PeopleSoft Accounts Payable
Activity From  12/1/2000To  1/25/2001
Bank Account  VPPOP

Page No  10
Run Date  1/26/01
Run Time  10 32 41 AM

| Check Number | Check Date | Vendor Number | Vendor Name | Payment Status | Replaced Date | Pay Cycle | Amount |
|---|---|---|---|---|---|---|---|
| 000000334 | 1/22/2001 | 000000101 | SURE POWER | Paid | | WVF2WK | 61 440 00 |
| 000000335 | 1/22/2001 | 000003626 | TAYLOR COMMUNICATIONS | Paid | | WVF2WK | 50 742 16 |
| 000000336 | 1/22/2001 | 000041006 | TELECOM PROFESSIONAL SERVICES INC | Paid | | WVF2WK | 19 757 00 |
| 000000337 | 1/22/2001 | 000001022 | TESSCO TECHNOLOGIES INC | Paid | | WVF2WK | 1 092 88 |
| 000000338 | 1/22/2001 | 000033579 | TRI TECH ELECTRIC CONTRACTORS INC | Paid | | WVF2WK | 60 218 00 |
| 000000339 | 1/22/2001 | 000045020 | TUSI CABLING SOLUTIONS INCORPORATED | Paid | | WVF2WK | 15 959 12 |
| 000000340 | 1/22/2001 | 000036714 | ALLEGHENY BUILDERS INC | Paid | | WVF2WK | 163 103 80 |
| 000000341 | 1/22/2001 | 000036714 | ALLEGHENY BUILDERS INC | Overflow | | WVF2WK | 0 00 |
| 000000342 | 1/22/2001 | 000007456 | ALT ENTERPRISES INC | Paid | | WVFWK2 | 73 143 38 |
| 000000343 | 1/22/2001 | 000039278 | AMERIWAVE TECHNOLOGIES | Paid | | WVFWK2 | 6 725 00 |
| 000000364 | 1/22/2001 | 000042567 | ATLANTIC COAST TOWERS INC | Paid | | WVFWK2 | 4 465 00 |
| 000000345 | 1/22/2001 | 000006237 | CAROL ELECTRIC COMPANY INC | Paid | | WVFWK2 | 68 136 00 |
| 000000346 | 1/22/2001 | 000003607 | CARTER & BURGESS INC | Paid | | WVFWK2 | 12 964 93 |
| 000000347 | 1/22/2001 | 000043585 | CERAGON NETWORKS INC | Paid | | WVFWK2 | 236 064 00 |
| 000000348 | 1/22/2001 | 000048672 | CLARION REALTY SERVICES | Paid | | WVFWK.2 | 3 783 33 |
| 000000349 | 1/22/2001 | 000070557 | CORT FURNITURE RENTAL HO | Paid | | WVFWK.2 | 52 749 71 |
| 000000350 | 1/22/2001 | 000053545 | CPI COMMUNICATION SERVICES INC | Paid | | WVFWK2 | 2 000 00 |
| 000000351 | 1/22/2001 | 000053545 | CPI COMMUNICATION SERVICES INC | Paid | | WVFWK2 | 22 962 00 |
| 000000352 | 1/22/2001 | 000032917 | DIGITAL COMMUNICATIONS GROUP  INC | Paid | | WVFWK2 | 6 140 00 |
| 000000353 | 1/22/2001 | 000046526 | EDD HELMS DATA COMM GROUP | Paid | | WVFWK2 | 84 651 00 |
| 000000354 | 1/22/2001 | 000002196 | EE LINDEN ASSOCIATES INC | Paid | | WVFWK2 | 131 653 70 |
| 000000355 | 1/22/2001 | 000002196 | EE LINDEN ASSOCIATES INC | Overflow | | WVFWK.2 | 0 00 |
| 000000356 | 1/22/2001 | 000002196 | EE LINDEN ASSOCIATES INC | Overflow | | WVFWK2 | 0 00 |
| 000000357 | 1/22/2001 | 000002196 | EE LINDEN ASSOCIATES INC | Overflow | | WVFWK2 | 0 00 |
| 000000358 | 1/22/2001 | 000002196 | EE LINDEN ASSOCIATES INC | Overflow | | WVFWK2 | 0 00 |
| 000000359 | 1/22/2001 | 000002196 | EE LINDEN ASSOCIATES INC | Overflow | | WVFWK2 | 0 00 |
| 000000360 | 1/22/2001 | 000043595 | ENTREX COMMUNICATION SERVICES  INC | Paid | | WVFWK2 | 2 553 79 |
| 000000361 | 1/22/2001 | 000016917 | FISK ELECTRIC COMPANY | Paid | | WVFWK2 | 25 006 00 |
| 000000362 | 1/22/2001 | 000016917 | FISK ELECTRIC COMPANY | Paid | | WVFWK2 | 23 817 00 |
| 000000363 | 1/22/2001 | 000009620 | FTV INC | Paid | | WVFWK2 | 37 595 00 |
| 000000364 | 1/22/2001 | 000011669 | HIGGINS NETWORK SERVICES | Paid | | WVFWK2 | 4 677 00 |
| 000000365 | 1/22/2001 | 000011669 | HIGGINS NETWORK SERVICES | Paid | | WVFWK2 | 1 760 00 |
| 000000366 | 1/22/2001 | 000002661 | IN HOUSE COMMUNICATIONS | Paid | | WVFWK2 | 1 000 00 |
| 000000367 | 1/22/2001 | 000018197 | INTEGRATED COMMUNICATIONS SERVICES | Paid | | WVFWK2 | 79 385 00 |
| 000000368 | 1/22/2001 | 000045918 | JULIUS KRAFT COMPANY INC | Paid | | WVFWK2 | 7 428 27 |
| 000000369 | 1/22/2001 | 000001141 | LEE TECHNOLOGIES INC | Paid | | WVFWK2 | 67 459 00 |
| 000000370 | 1/22/2001 | 000047517 | LEXENT SERVICES | Paid | | WVFWK2 | 30 659 62 |

CONFIDENTIAL
3WC 0008212

**PEOPLE**

Report ID   WL_ckhis
Operator ID   DNIDOWIC
Run Control   CHECK

**Check History Report**
PeopleSoft Accounts Payable
Activity From 12/1/2000 To 1/25/2001

Bank Account   VPPOP

Page No   11
Run Date   1/26/01
Run Time   10 32 41 AM

| Check Number | Check Date | Vendor Number | Vendor Name | Payment Status | Replaced Date | Pay Cycle | Amount |
|---|---|---|---|---|---|---|---|
| 000000371 | 1/22/2001 | 000002243 | LINDERLAKE CORPORATION | Paid | | WVFWK2 | 552 00 |
| 000000372 | 1/22/2001 | 000033206 | MARCONI COMMUNICATIONS | Paid | | WVFWK2 | 204 710 11 |
| 000000373 | 1/22/2001 | 000033206 | MARCONI COMMUNICATIONS | Overflow | | WVFWK2 | 0 00 |
| 000000374 | 1/22/2001 | 000033206 | MARCONI COMMUNICATIONS | Paid | | WVFWK2 | 75 577 00 |
| 000000375 | 1/22/2001 | 000002756 | MICROWAVE DESIGNS INTERNATIONAL INC | Paid | | WVFWK2 | 12 767 25 |
| 000000376 | 1/22/2001 | 000001339 | MICROWAVE TOWER SERVICES INC | Paid | | WVFWK2 | 12 561 40 |
| 000000377 | 1/22/2001 | 000045395 | NEC BUSINESS NETWORK SOLUTIONS | Paid | | WVFWK2 | 65 490 00 |
| 000000378 | 1/22/2001 | 000002200 | OSP CONSULTANTS INC | Paid | | WVFWK2 | 262 700 94 |
| 000000379 | 1/22/2001 | 000002200 | OSP CONSULTANTS INC | Paid | | WVFWK2 | 10 813 00 |
| 000000380 | 1/22/2001 | 000002200 | OSP CONSULTANTS INC | Paid | | WVFWL2 | 102 436 00 |
| 000000381 | 1/22/2001 | 000002705 | P COM NETWORK SERVICES INC | Overflow | | WVFWK2 | 0 00 |
| 000000382 | 1/22/2001 | 000002705 | P COM NETWORK SERVICES INC | Paid | | WVFWK2 | 23 692 00 |
| 000000383 | 1/22/2001 | 000002705 | P COM NETWORK SERVICES INC | Paid | | WVFWK2 | 310 080 44 |
| 000000384 | 1/22/2001 | 000003401 | PACIFIC NATCOM INC | Overflow | | WVFWK2 | 0 00 |
| 000000385 | 1/22/2001 | 000003401 | POWER AND TELEPHONE SUPPLY | Paid | | WVFWK2 | 4 000 00 |
| 000000386 | 1/22/2001 | 000003162 | PPI CONSULTING | Overflow | | WVFWK2 | 236 411 00 |
| 000000387 | 1/22/2001 | 000005251 | PRIME ELECTRIC COMPANY INC | Paid | | WVFWK2 | 0 00 |
| 000000388 | 1/22/2001 | 000005251 | PRIME ELECTRIC COMPANY INC | Overflow | | WVFWK2 | 0 00 |
| 000000389 | 1/22/2001 | 000005050 | PRIME ELECTRIC COMPANY INC | Overflow | | WVFWK2 | 95 50 |
| 000000390 | 1/22/2001 | 000034338 | PROJECT INTERFACE CONNECTIONS | Paid | | WVFWK2 | 39 455 03 |
| 000000391 | 1/22/2001 | 000034338 | REDLINE COMMUNICATIONS INC | Overflow | | WVFWK2 | 0 00 |
| 000000392 | 1/22/2001 | 000003375 | REDLINE COMMUNICATIONS INC | Paid | | WVFWK2 | 49 005 67 |
| 000000393 | 1/22/2001 | 000003053 | ROTMAN ELECTRICAL CO INC | Paid | | WVFWK2 | 432 63 |
| 000000394 | 1/22/2001 | 000045247 | SPECIALIZED PRODUCTS COMPANY | Paid | | WVFWK2 | 142 070 90 |
| 000000395 | 1/22/2001 | 000034136 | SPECIALTY CONSTRUCTION INC | Paid | | WVFWK2 | 151 563 35 |
| 000000396 | 1/22/2001 | 000034136 | STRATA INC | Overflow | | WVFWK2 | 0 00 |
| 000000397 | 1/22/2001 | 000001337 | STRATA INC | Overflow | | WVFWK2 | 163 258 50 |
| 000000398 | 1/22/2001 | 000001337 | SUNGLO TELECOM INC | Paid | | WVFWK2 | 0 00 |
| 000000399 | 1/22/2001 | 000001001 | SUNGLO TELECOM INC | Paid | | WVFWK2 | 57 600 00 |
| 000000400 | 1/22/2001 | 000041006 | SURE POWER | Paid | | WVFWK2 | 1 742 00 |
| 000000401 | 1/22/2001 | 000033579 | TELECOM PROFESSIONAL SERVICES INC | Paid | | WVFWK2 | 37 089 00 |
| 000000402 | 1/22/2001 | 000034257 | TRI TECH ELECTRIC CONTRACTORS INC | Paid | | QUICK6 | 10 775 00 |
| 000000403 | 1/22/2001 | 000000907 | ATLANTIC COAST TOWERS INC | Paid | | QUICK6 | 5 251 84 |
| 000000404 | 1/22/2001 | 000032917 | BARD SATELLITE | Paid | | QUICK6 | 47 867 45 |
| 000000405 | 1/22/2001 | 000032917 | DIGITAL COMMUNICATIONS GROUP INC | Paid | | QUICK6 | 123 668 80 |
| 000000406 | 1/22/2001 | 000032917 | DIGITAL COMMUNICATIONS GROUP INC | Paid | | QUICK6 | 98 952 00 |
| 000000407 | 1/27/2001 | 000046526 | DIGITAL COMMUNICATIONS GROUP INC | Paid | | QUICK6 | 28 266 00 |
| | | | EDD HELMS DATA COMM GROUP | | | | |

CONFIDENTIAL
3WC 0008213

**PEOPLE**

Report ID    WL_ckhls
Operator ID    DNIDOWIC
Run Control    CHECK

**Check History Report**
PeopleSoft Accounts Payable
Activity From  12/1/2000 To  1/25/2001

Bank Account    WPPOP

Page No    12
Run Date    1/26/01
Run Time    10 32 41 AM

| Check Number | Check Date | Vendor Number | Vendor Name | Payment Status | Replaced Date | Pay Cycle | Amount |
|---|---|---|---|---|---|---|---|
| 000000408 | 1/22/2001 | 000002200 | OSP CONSULTANTS INC | Paid | | OUICK6 | 20 799 00 |
| 000000409 | 1/22/2001 | 000000002 | P COM INC | Paid | | OUICK6 | 2 258 628 32 |
| 000000410 | 1/22/2001 | 000000002 | P COM INC | Paid | | OUICK6 | 2 336 018 00 |
| 000000411 | 1/22/2001 | 000000048 | TELLABS OPERATIONS | Paid | | OUICK5 | 92 364 58 |
| 000000412 | 1/22/2001 | 000000937 | SOLUNET INC | Paid | | OUICK6 | 1 090 759 04 |
| 000000413 | 1/23/2001 | 000005251 | PRIME ELECTRIC COMPANY INC | Paid | | OUICK7 | 106 770 00 |
| 000000414 | 1/23/2001 | 000005251 | PRIME ELECTRIC COMPANY INC | Paid | | OUICK6 | 108 533 00 |

Total Amount    30 953 179 06

less Voids  ( 754,131 20 )

30,199,047 86

CONFIDENTIAL
3WC 0008214

```
*************** -COMM  JOURNAL- ************* DATE JAN-26-2001 **** TIME 11 04 ********

     MODE = MEMORY TRANSMISSION          START=JAN-26 10 52    END=JAN-26 11 04
     FILE NO =993

 STN NO    COMM    ABBR NO    STATION NAME/TEL NO    PAGES   DURATION

  001      OK      #          B19065823103           024/024 00 11 2"


                                         -WINSTAR
***********************************   -    -- ***** -    2125844073- *********
```

winstar

# Fax Cover Sheet

| | |
|---|---|
| Date: | January 26 2001 |
| To | Genoveso Caviness |
| Fax #- | 908-582-3103 |
| From. | Doreene Nidowicz |
| Phone #- | 212-792-9069 |
| RJ Fax | 212-584-4073 |

# of pages (including cover)  24

Message:

Attached, please find the draw request for 1/31/01

Please call me if you have any questions

Thanks
Doreene

CONFIDENTIAL
3WC 0008215

```
*************** -COMM  JOURNAL- ***************** DATE JAN-26-2001 ***** TIME 11 55 **********

   MODE = MEMORY TRANSMISSION          START=JAN-26 11 49    END=JAN-26 11 55
      FILE NO =998

  STN NO   COMM    ABBR NO    STATION NAME/TEL NO    PAGES  DURATION
   001     OK      *          819085823101           024/024 00 04 56
```

—WINSTAR

**Fax Cover Sheet**

Date        January 26 2001

To          Genoveso Caviness

Fax #       908-582-3103

From        Doreene Nidowncz

Phone #     212-792 9069

RI Fax      212-584-4073

# of pages (including cover)   34

Message:

Attached, please find the draw request for 1/31/01

Please call me if you have any questions.

Thanks
Doreene

CONFIDENTIAL
3WC 0008216



winstar

# Fax Cover Sheet

Date        January 26  2001

To          Genoveso Caviness

Fax #       908-582-3103

From        Doreene Nidowicz

Phone #     212-792-9069

RI Fax      212-584-4073

# of pages (including cover)    24

Message

**Attached, please find the draw request for 1/31/01**

**Please call me if you have any questions**

**Thanks**
**Doreene**

CONFIDENTIAL
3WC 0008217

# ROA
# TAB
# 489



## NOTICE OF REQUEST FOR BORROWING

To    Lucent Technologies Inc  as Administrative Agent

Reference is made to the Credit Agreement dated as of May 4  2000 among WVF LU2  LLC
("the Borrower")  Winstar Communications Inc  (Winstar)  the lenders which are a party
thereto  The Bank of New York as Collateral Agent, and Lucent Technologies Inc
as Administrative Agent (as amended from time to time  the "Credit Agreement")
Unless otherwise defined herein  capitalized terms defined in the Credit Agreement
and used herein shall have the same meaning ascribed to such terms in the Credit
Agreement

Pursuant to Section 2.03 the Credit Agreement, the Borrower hereby gives the Administrative
Agent written notice of request for a Borrowing according to the following instructions

| | | |
|---|---|---|
| 1  Total Amount of Borrowing | | $    34 281 745 44 |
| a) | Amount of Borrowing to be paid directly to Lucent for Lucent Invoices | $    2 390 811 90 |
| b) | Amount of Borrowing to be paid directly to Lucent for Lucent Subsidiary Invoices | $    427 660 23 |
| c) | Amount of Borrowing to be paid directly to Lucent for Lucent International Invoices | $    1 565 011 64 |
| d) | Amount of Borrowing to be paid directly to Lucent for Lucent Arrangement Fees | $ |
| e) | Amount of Borrowing to be paid directly to the Borrower Non  Lucent Equipment | $    29 898 261 67 |

| | |
|---|---|
| BANK NAME | STATE STREET BANK & TRUST BOSTON  MA |
| ABA NUMBER | 011 000 028 |
| ACCOUNT NAME | MERRILL GROUP CREDIT  MERRILL PREMIER FUND |
| FOR FURTHER CREDIT TO | WVF LU2, LLC |
| ACCOUNT NUMBER | 3324772 |
| AMOUNT | $ |

DEFENDANT'S
EXHIBIT

11

| | |
|---|---|
| BANK NAME | STATE STREET BANK & TRUST BOSTON  MA |
| ABA NUMBER | 011 000 028 |

CONFIDENTIAL
3WC 0008219

| | |
|---|---|
| ACCOUNT NAME | MERRILL GROUP<br>CREDIT MERRILL PREMIER FUND |
| FOR FURTHER CREDIT TO | WVF LU2, LLC |
| ACCOUNT NUMBER | 3324773 |
| AMOUNT | $   29 898 261 67 |

2  Effective Date of Borrowing        February 28 2001

3  Type of Borrowing        _____ LIBOR        X   ABR

4  Interest Period      Months        _____ 1, _____ 2 _____ 3,
                                      _____ 6 _____ 9 _____ 12

5  The Lucent invoices to be paid with the Borrowing are listed on Schedule A attached

The Borrower hereby certifies that all conditions for borrowing set forth in Section 4 03 the
Credit Agreement have been satisfied or will be satisfied as of the date hereof and the date the
borrowing is made

Dated this 23 day of February 2001

                                        WVF LU2 LLC
                                        By _____

                                        Name  Frederic E Rubin
                                        VP Treasurer

CONFIDENTIAL
3WC 0008220



## NOTICE OF INTEREST ELECTION REQUEST

To      Lucent Technologies Inc   as Administrative Agent

This Interest Election Request ( Interest Election Request ) is delivered to you pursuant to the Credit Agreement dated as of May 4 2000 among WVF LU2 LLC (the Borrower ), Winstar Communications Inc (Winstar) the lenders which are a party thereto The Bank of New York, as Collateral Agent, and Lucent Technologies Inc as Administrative Agent (as amended from time to time, the Credit Agreement' ) Unless otherwise defined herein, terms defined in the Credit Agreement and used herein shall have the same meanings as in this Notice

Pursuant to Section 2 05 of the Credit Agreement, this Interest Election Request represents the written request of Winstar to Lucent to convert the interest rate and period of an existing Borrowing according to the following instructions

1   Borrowing Request Number      3

2   Amount of Borrowing      $ 34,281,745 44

3   Original Date of Borrowing  2/28/01

4   Effective Date New Interest Period   3/02/01

5   Type of Interest    __X__ LIBOR        _____ ABR

6   New Interest Period  Months    ___1    ___2    ___3    _X_6

The undersigned hereby certifies that as of the date of such borrowing, all conditions contained in Section 4 02 Credit Agreement have been satisfied (or waived in accordance with Section 9 02)

Dated this 23th day of February 2001

WVF LU2 LLC

By _____

Name   Frederic E Rubin
       VP, Treasurer

CONFIDENTIAL
3WC 0008221

Lucent Invoices  Draw 2 for WVF LU2

January 31  2000

2/23/01  10 36 AM

| | Invoice # | Invoice Amt |
|---|---|---|
| | DOMESTIC | |
| PARENT | 11107607 | 70 00 |
| PARENT | 21100718 | 43 717 20 |
| PARENT | 31100274 | 300 00 |
| PARENT | 31100496 | 70 00 |
| PARENT | 41100243 | 1 135 00 |
| PARENT | 41100368 | 370 00 |
| PARENT | 51100686 | 1 805 00 |
| PARENT | 61100174 | 35 00 |
| PARENT | CR007237 | 17 089 00 |
| PARENT | CR100072 | 24 943 96 |
| PARENT | CR100196 | 12 102 00 |
| PARENT | CR100240 | 2 636 80 |
| PARENT | ER100222 | 80 033 57 |
| PARENT | ER100523 | 1 776 68 |
| PARENT | ER100626 | 1,542 46 |
| PARENT | ER100644 | 10 894 93 |
| PARENT | ER100645 | 21,202 25 |
| PARENT | NR100225 | 7 340 86 |
| PARENT | NR100490 | 17 881 84 |
| PARENT | NR100644 | 8,342 00 |
| PARENT | NR100671 | 5 007 00 |
| PARENT | PR100114 | 43 767 86 |
| PARENT | PR100164 | 1 570 481 47 |
| PARENT | PR100192 | 70,912 31 |
| PARENT | PR100201 | 10 591 54 |
| PARENT | PR100243 | 5 942 31 |
| PARENT | PR100349 | 31 045 00 |
| PARENT | PR100481 | 34,294 00 |
| PARENT | PR100482 | 15 148 00 |
| PARENT | PR100519 | 4 919 00 |
| PARENT | SR010196 | 23,220 50 |
| PARENT | SR100226 | 11,279 00 |
| PARENT | SR100317 | 1 301 28 |
| PARENT | SR100340 | 11 064 24 |
| PARENT | SR100347 | 8 071 03 |
| PARENT | SR100606 | 70 874 00 |
| PARENT | SR100861 | 32 994 35 |
| PARENT | SR100981 | 7 729 00 |
| PARENT | SR100982 | 12 627 00 |
| PARENT | SU100274 | 80 265 00 |
| PARENT | SU100944 | 11 695 94 |
| PARENT | SU101067 | 388 06 |
| PARENT | WR100122 | 8 462 30 |

CONFIDENTIAL
3WC 0008222

Lucent Invoices - Draw 2 for WVF LU2

January 31, 2000

2/23/01 10 36 AM

| | Invoice # | Invoice Amt |
|---|---|---|
| PARENT | WR100125 | 1 157 47 |
| PARENT | WR100126 | 3 718 48 |
| PARENT | WR100202 | 84 124 00 |
| PARENT | WR100289 | 399 42 |
| PARENT | WR100404 | 7 713 97 |
| PARENT | WR100590 | 14 583 00 |
| PARENT | | (46,253 18) Marketing Credit |
| | PARENT TOTAL | 2,390 811 90 |
| | | |
| AVAYA | 0210154449 | 59 84 |
| AVAYA | 0210942712 | 35 20 |
| AVAYA | 0211092641 | 3 290 38 |
| AVAYA | 0211098782 | 5 732 57 |
| AVAYA | 0211101646 | 1 765 98 |
| AVAYA | 0211210146 | 51 20 |
| AVAYA | 0211296131 | 416 725 06 |
| | TOTAL AVAYA | 427 660 23 |
| | | |
| | TOTAL DOMESTIC | 2 818 472 13 |

CONFIDENTIAL
3WC 0008223

Lucent Invoices  Draw 2 for WVF-LU2
January 31, 2000

2/23/01  10 36 AM

| | Invoice # | Invoice Amt |
|---|---|---|

INTERNATIONAL

| | | |
|---|---|---|
| FRANCE | 988298 | 1 563 00 |
| FRANCE | 987497 | 13 563 00 |
| FRANCE | 987507 | 12 831 00 |
| FRANCE | 988299 | 11 876 00 |
| | FRANCE TOTAL | 39 833 00 |
| | | |
| BELGIUM | 981619 | 14 695 25 |
| BELGIUM | 979334 | 3 500 00 |
| BELGIUM | 986719 | 177 734 50 |
| BELGIUM | 987512 | 2 700 00 |
| BELGIUM | 987491 | 34 216 00 |
| BELGIUM | 988058 | 2 700 00 |
| BELGIUM | 988055 | 12 499 00 |
| BELGIUM | 988291 | 65 102 00 |
| BELGIUM | 988292 | 47 715 00 |
| BELGIUM | 988290 | 2 143 00 |
| BELGIUM | 988293 | 3 038 00 |
| BELGIUM | 988294 | 2,345 00 |
| BELGIUM | 988296 | 9 445 00 |
| BELGIUM | 988342 | 13 563 00 |
| BELGIUM | 989296 | (14 695 25) |
| | BELGIUM TOTAL | 376 700 50 |
| | | |
| NETHERLANDS | 988375 | 4 521 00 |
| NETHERLANDS | 988484 | 40 689 00 |
| NETHERLANDS | 988440 | 47 047 00 |
| NETHERLANDS | 983710 | 18 190 00 |
| NETHERLANDS | 972473 | 40,672 00 |
| NETHERLANDS | 979157 | 11,339 00 |
| NETHERLANDS | 987523 | 2 700 00 |
| NETHERLANDS | 987913 | 12 800 00 |
| NETHERLANDS | 987728 | 3 636 00 |
| NETHERLANDS | 988081 | 7 152 00 |
| NETHERLANDS | 988212 | 43 435 00 |
| NETHERLANDS | 988353 | 6,202 00 |
| NETHERLANDS | 988415 | 9 408 00 |
| NETHERLANDS | 989295 | (40 672 00) |

CONFIDENTIAL
3WC 0008224

Lucent Invoices - Draw 2 for WVF LU2

January 31, 2000

2/23/01 10 36 AM

| | Invoice # | Invoice Amt |
|---|---|---|
| | NETHERLANDS TOTAL | 207 119 00 |
| | | |
| UNITED KINGDOM | 986362 | 6,267 00 |
| UNITED KINGDOM | 986361 | 600 00 |
| UNITED KINGDOM | 986825 | 14,064 00 |
| UNITED KINGDOM | 986812 | 9 672 00 |
| UNITED KINGDOM | 987580 | 71,724 00 |
| UNITED KINGDOM | 987570 | 13,319 25 |
| UNITED KINGDOM | 987488 | 16 146 00 |
| UNITED KINGDOM | 987486 | 28 608 00 |
| UNITED KINGDOM | 988084 | 53,277 00 |
| UNITED KINGDOM | 988334 | 311 808 29 |
| UNITED KINGDOM | 988676 | 1,541 00 |
| UNITED KINGDOM | 988420 | 2 668 00 |
| UNITED KINGDOM | 988418 | 11,367 00 |
| UNITED KINGDOM | 989297 | (1 806 00) |
| UNITED KINGDOM | 981591 | 1 806 00 |
| | UNITED KINGDOM TOTAL | 541 061 54 |
| | | |
| GERMANY | 979362 | 21,385 00 |
| GERMANY | 987475 | 23,361 00 |
| GERMANY | 987504 | 89 817 00 |
| GERMANY | 987471 | 16 146 00 |
| GERMANY | 987482 | 43 656 00 |
| GERMANY | 987470 | 114 432 00 |
| GERMANY | 987789 | (53,277 00) |
| GERMANY | 987792 | 53,277 00 |
| GERMANY | 987730 | 9 408 00 |
| GERMANY | 988071 | 11 407 00 |
| | GERMANY TOTAL | 329 612 00 |
| | | |
| ARGENTINA | 2s510179 | 5 482 50 Lucent USA |
| ARGENTINA | 2s510180 | 4 868 50 Lucent USA |
| ARGENTINA | 2s510181 | 150 60 Lucent USA |
| ARGENTINA | 2s510182 | 1,204 00 Lucent USA |
| ARGENTINA | 2s510183 | 45 750 00 Lucent USA |
| ARGENTINA | 2s510184 | 4,200 00 Lucent USA |
| ARGENTINA | 2s510185 | 9 030 00 Lucent USA |
| | ARGENINA TOTAL | 70 685 60 |

CONFIDENTIAL
3WC 0008225

Lucent Invoices  Draw 2 for WVF LUZ

January 31  2000

2/23/01  10 36 AM

| Invoice # | Invoice Amt |
|---|---|
| INTERNATIONAL TOTAL | 1 565 011 64 |

CONFIDENTIAL
3WC 0008228

**PEOPLE SOFT**

| Report ID | WL_chhis | | Check History Report | | | | Page No | 1 |
| Operator ID | PDESIMON | | PeopleSoft Accounts Payable | | | | Run Date | 2/23/01 |
| Run Control | CHECK | | Activity From 1/26/2001 To 2/22/2001 | | | | Run Time | 8 21 13 AM |
| | | | Bank Account    XXXXX | | | | | |

| Check Number | Check Date | Vendor Number | Vendor Name | Payment Status | Replaced Date | Pay Cycle | Amount |
|---|---|---|---|---|---|---|---|
| 000000415 | 1/26/2001 | 000000002 | P COM INC | Void | | QUICK3 | 311 139 90 |
| 000000416 | 1/26/2001 | 000000002 | P COM INC | Void | | QUICK3 | 290 250 00 |
| 000000417 | 1/29/2001 | 000000002 | P COM INC | Paid | | QUICK3 | 2 831 154 00 |
| 000000418 | 1/29/2001 | 000032017 | DIGITAL COMMUNICATIONS GROUP INC | Paid | | QUICK4 | 42 160 00 |
| 000000419 | 1/29/2001 | 000000002 | P COM INC | Paid | | QUICK3 | 2 336 018 00 |
| 000000420 | 1/29/2001 | 000000002 | P COM INC | Paid | | QUICK3 | 2 258 628 32 |
| 000000421 | 1/29/2001 | 000000002 | P COM INC | Paid | | QUICK3 | 290 250 00 |
| 000000422 | 1/30/2001 | 000002756 | MICROWAVE DESIGNS INTERNATIONAL INC | Paid | | QUICK3 | 21 356 00 |
| 000000423 | 2/2/2001 | 000002705 | P COM NETWORK SERVICES INC | Paid | | QUICK3 | 86 556 82 |
| 000000424 | 2/2/2001 | 000002705 | P COM NETWORK SERVICES INC | Paid | | QUICK3 | 97 448 00 |
| 000000425 | 2/2/2001 | 000002705 | P COM NETWORK SERVICES INC | Paid | | QUICK3 | -41 575 20 |
| 000000426 | 2/2/2001 | 000009471 | NICHOLSON GALLOWAY INC | Paid | | QUICK1 | 2 706 25 |
| 000000427 | 2/5/2001 | 000003441 | ALPHA TELECOM SERVICES CO | Paid | | QUICK3 | 1 563 53 |
| 000000428 | 2/5/2001 | 000004256-7 | ATLANTIC COAST TOWERS INC | Paid | | WVF2WK | 4 145 00 |
| 000000429 | 2/5/2001 | 000001607 | CARTER & BURGESS INC | Paid | | WVF2WK | 81 017 16 |
| 000000430 | 2/5/2001 | 000004276-1 | CB BREEN ASSOCIATES | Paid | | WVF2WK | 412 06 |
| 000000431 | 2/5/2001 | 000043585 | CERAGON NETWORKS INC | Overflow | | WVF2WK | 1 997 90 |
| 000000432 | 2/5/2001 | 000043585 | CERAGON NETWORKS INC | Paid | | WVF2WK | 0 00 |
| 000000433 | 2/5/2001 | 000005415 | CISCO SYSTEMS INC | Paid | | WVF2WK | 89 316 74 |
| 000000434 | 2/5/2001 | 000032486 | CONTINENTAL RESOURCES | Paid | | WVF2WK | 7 266 61 |
| 000000435 | 2/5/2001 | 000041222 | DATA GENERAL CORP | Paid | | WVF2WK | 15 394 93 |
| 000000436 | 2/5/2001 | 000032017 | DIGITAL COMMUNICATIONS GROUP INC | Paid | | WVF2WK | 82 713 00 |
| 000000437 | 2/5/2001 | 000001002 | DIGITAL MICROWAVE CORP | Paid | | WVF2WK | 39 472 00 |
| 000000438 | 2/5/2001 | 000048334 | DYNAELECTRIC CO | Paid | | WVF2WK | 4 799 00 |
| 000000439 | 2/5/2001 | 000005550 | FIDELITY ENGINEERING CORP | Paid | | WVF2WK | 75 090 00 |
| 000000440 | 2/5/2001 | 000010917 | FISK ELECTRIC COMPANY | Paid | | WVF2WK | 16 672 04 |
| 000000441 | 2/5/2001 | 000008606 | GUILD TECHNOLOGIES | Paid | | WVF2WK | 395 11 |
| 000000442 | 2/5/2001 | 000001292 | HUGH O KANE ELECTRIC CO  LLC | Paid | | WVF2WK | 195 222 38 |
| 000000443 | 2/5/2001 | 000001292 | HUGH O KANE ELECTRIC CO  LLC | Overflow | | WVF2WK | 0 00 |
| 000000444 | 2/5/2001 | 000001292 | HUGH O KANE ELECTRIC CO  LLC | Overflow | | WVF2WK | 0 00 |
| 000000445 | 2/5/2001 | 000001292 | HUGH O KANE ELECTRIC CO  LLC | Overflow | | WVF2WK | 0 00 |
| 000000446 | 2/5/2001 | 000045224 | KRUEGER INTERNATIONAL | Paid | | WVF2WK | 35 722 86 |
| 000000447 | 2/5/2001 | 000018207 | MDM WEST INC | Paid | | WVF2WK | 97 292 27 |
| 000000448 | 2/5/2001 | 000002756 | MICROWAVE DESIGNS INTERNATIONAL INC | Paid | | WVF2WK | 39 810 87 |
| 000000449 | 2/5/2001 | 000001339 | MICROWAVE TOWER SERVICES INC | Paid | | WVF2WK | 25 747 16 |
| 000000450 | 2/5/2001 | 000001339 | MICROWAVE TOWER SERVICES INC | Overflow | | WVF2WK | 0 00 |
| 000000451 | 2/5/2001 | 000033577 | OPC COMMUNICATIONS | Paid | | WVF2WK | 1 130 00 |

CONFIDENTIAL
3WC 0008227

Report ID   WL_ckhis
Operator ID   PDESIMON
Run Control   CHECK

**Check History Report**
PeopleSoft Accounts Payable
Activity From 1/26/2001 To 2/22/2001

Bank Account   VPBOF

Page No.   2
Run Date   2/23/01
Run Time   9:21:13 AM

| Check Number | Check Date | Vendor Number | Vendor Name | Payment Status | Replaced Date | Pay Cycle | Amount |
|---|---|---|---|---|---|---|---|
| 000000452 | 2/5/2001 | 000000002 | P COM INC | Paid | | WVF2WK | 26 460.00 |
| 000000453 | 2/5/2001 | 000002705 | P COM NETWORK SERVICES INC | Paid | | WVF2WK | 2 000.00 |
| 000000454 | 2/5/2001 | 000016232 | PAGANNI ELECTRIC CORPORATION | Paid | | WVF2WK | 1 994.00 |
| 000000455 | 2/5/2001 | 000047321 | ROBERT R ROSEN ASSOCIATES | Paid | | WVF2WK | 1 050.00 |
| 000000456 | 2/5/2001 | 000003743 | SECURITY TECHNOLOGIES GROUP | Paid | | WVF2WK | 1 800.00 |
| 000000457 | 2/5/2001 | 000000937 | SOLINET INC | Paid | | WVF2WK | 483 150.28 |
| 000000458 | 2/5/2001 | 000001337 | SUNGLO TELECOM INC | Paid | | WVF2WK | 24 247.67 |
| 000000459 | 2/5/2001 | 000001001 | SURE POWER | Paid | | WVF2WK | 3 840.00 |
| 000000460 | 2/5/2001 | 000041006 | TELECOM PROFESSIONAL SERVICES  INC | Paid | | WVF2WK | 3 500.00 |
| 000000461 | 2/5/2001 | 000004680 | TTC | Paid | | WVF2WK | 75 132.10 |
| 000000462 | 2/5/2001 | 000005345 | CPI COMMUNICATION SERVICES INC | Paid | | WVF2WK | 17 553.00 |
| 000000463 | 2/5/2001 | 000049198 | QUANTIFIED SYSTEMS INC | Paid | | QUICKI | 408 844.25 |
| 000000464 | 2/6/2001 | 000004680 | TTC | Paid | | QUICKI | 19 740.00 |
| 000000465 | 2/6/2001 | 000018197 | INTEGRATED COMMUNICATIONS SERVICES | Paid | | QUICKI | 174 000.00 |
| 000000466 | 2/6/2001 | 000009443 | ALLIED GROUP INC | Paid | | QUICKI | 63 370.81 |
| 000000467 | 2/9/2001 | 000009443 | ALLIED GROUP INC | Paid | | QUICKI | 108 264.20 |
| 000000468 | 2/9/2001 | 000005345 | CPI COMMUNICATION SERVICES INC | Paid | | QUICKI | 29 049.00 |
| 000000469 | 2/9/2001 | 000009443 | ALLIED GROUP INC | Paid | | QUICKI | 93 429.66 |
| 000000470 | 2/14/2001 | 000034338 | REDLINE COMMUNICATIONS INC | Paid | | QUICKS | 80 239.28 |
| 000000471 | 2/14/2001 | 000046482 | CABLE SYSTEM DESIGN | Paid | | QUICKS | 23 222.50 |
| 000000472 | 2/14/2001 | 000005345 | CPI COMMUNICATION SERVICES INC | Paid | | QUICKS | 65 585.00 |
| 000000473 | 2/14/2001 | 000033151 | ENERGY MANAGEMENT SYSTEMS | Paid | | QUICKI | 93 400.00 |
| 000000474 | 2/14/2001 | 000049541 | AMERICAN POWER CONVERSION | Paid | | QUICKI | 2 828.88 |
| 000000475 | 2/14/2001 | 000009906 | ANIXTER INC | Paid | | WVF2WK | 222 247.50 |
| 000000476 | 2/14/2001 | 000041246 | BUILDERS GROUP | Paid | | WVF2WK | 0.00 |
| 000000477 | 2/14/2001 | 000006237 | CAROL ELECTRIC COMPANY INC | Paid | | WVF2WK | 1 693.92 |
| 000000478 | 2/14/2001 | 000003607 | CARTER & BURGESS INC | Paid | | WVF2WK | 14 653.17 |
| 000000479 | 2/14/2001 | 000043585 | CERAGON NETWORKS INC | Paid | | WVF2WK | 415.73 |
| 000000480 | 2/14/2001 | 000008145 | COMMONWEALTH ELECTRIC | Paid | | WVF2WK | 6 909.24 |
| 000000481 | 2/14/2001 | 000032486 | CONTINENTAL RESOURCES | Paid | | WVF2WK | 727.27 |
| 000000482 | 2/14/2001 | 000048177 | CREATIVE DESIGN AND MACHINING  INC | Paid | | WVF2WK | 13 029.80 |
| 000000483 | 2/14/2001 | 000041222 | DATA GENERAL CORP | Paid | | WVF2WK | 2 109.70 |
| 000000484 | 2/14/2001 | 000032917 | DIGITAL COMMUNICATIONS GROUP INC | Paid | | WVF2WK | 12 800.00 |
| 000000485 | 2/14/2001 | 000005550 | FIDELITY ENGINEERING CORP | Paid | | WVF2WK | 63 175.00 |
| 000000486 | 2/14/2001 | 000045185 | GIANNI ELECTRIC INC | Paid | | WVF2WK | 81.70 |
| 000000487 | 2/14/2001 | 000008606 | GUILD TECHNOLOGIES | Paid | | WVF2WK | 612.38 |
| 000000488 | 2/14/2001 | 000032077 | HELP SERVICE CO | Paid | | WVF2WK | 77 610.00 |

CONFIDENTIAL
3WC 0008228

| | Report ID | WL_ckhis | | | | Page No. | 3 |
| | Operator ID | PDESIMON | | | | Run Date | 2/23/01 |
| | Run Control | CHECK | | | | Run Time | 8:21:13 AM |

**Check History Report**
**PeopleSoft Accounts Payable**
**Activity From 1/26/2001 To 2/22/2001**
Bank Account  VF20?

| Check Number | Check Date | Vendor Number | Vendor Name | Payment Status | Replaced Date | Pay Cycle | Amount |
|---|---|---|---|---|---|---|---|
| 000000525 | 2/20/2001 | 000043577 | CBI TELECOMMUNICATIONS | Void | | WVF2WA | 41 620 36 |
| 000000524 | 2/20/2001 | 000006237 | CAROL ELECTRIC COMPANY INC | Paid | | WVF2WK | 40 569 00 |
| 000000523 | 2/20/2001 | 000045032 | C C NETWORK SYSTEMS INC | Paid | | WVF2WK | 6 783 73 |
| 000000522 | 2/20/2001 | 000033168 | A VCOM TECHNOLOGIES | Paid | | WVF2WK | 301 50 |
| 000000521 | 2/20/2001 | 000000914 | ANICOM INC | Paid | | WVF2WK | 64 843 64 |
| 000000520 | 2/20/2001 | 000039278 | AMERIWAVE TECHNOLOGIES | Paid | | WVF2WK | 297 00 |
| 000000519 | 2/20/2001 | 000044810 | AIRTITE CONTRACTORS INC | Paid | | WVF2WK | 18 138 00 |
| 000000518 | 2/20/2001 | 000009929 | HOGANTEC INC | Paid | | OUICKI | 80 771 50 |
| 000000517 | 2/15/2001 | 000003605 | STEPLIN CONSTRUCTION | Paid | | OUICK3 | 45 550 00 |
| 000000516 | 2/15/2001 | 000018197 | INTEGRATED COMMUNICATIONS SERVICES | Paid | | OUICK3 | 77 230 00 |
| 000000515 | 2/15/2001 | 000018197 | INTEGRATED COMMUNICATIONS SERVICES | Paid | | OUICK1 | 25 000 00 |
| 000000514 | 2/15/2001 | 000049728 | KENNEDY WILSON PROPERTIES LTD | Paid | | OUICK1 | 81 100 00 |
| 000000513 | 2/14/2001 | 000018669 | URBAN DATA SOLUTIONS LLC | Paid | | WVF2WK | 13 213 21 |
| 000000512 | 2/14/2001 | 000004680 | TTC | Paid | | WVF2WK | 149 977 72 |
| 000000511 | 2/14/2001 | 000011437 | TOTAL UPGRADE SOLUTIONS INC | Paid | | WVF2WK | 9 868 50 |
| 000000510 | 2/14/2001 | 000041964 | TELECOM NETWORK DESIGN & CABLING | Paid | | WVF2WK | 20 487 79 |
| 000000509 | 2/14/2001 | 000048925 | TECHPOINT SOLUTIONS INC | Paid | | WVF2WK | 6 321 00 |
| 000000508 | 2/14/2001 | 000032216 | SUPERIOR ELECTRICAL CONSTRUCTION | Paid | | WVF2WA | 4 271 00 |
| 000000507 | 2/14/2001 | 000034136 | STRATA INC | Paid | | WVF2WA | 1 655 00 |
| 000000506 | 2/14/2001 | 000003053 | SPECIALIZED PRODUCTS COMPANY | Paid | | WVF2WK | 13 269 99 |
| 000000505 | 2/14/2001 | 000000937 | SOLNET INC | Paid | | WVF2WK | 52 511 71 |
| 000000504 | 2/14/2001 | 000017809 | SIEMENS INFORMATION & COMM NETWORKS | Paid | | WVF2WK | 264 000 00 |
| 000000503 | 2/14/2001 | 000043438 | REDLINE COMMUNICATIONS INC | Paid | | WVF2WK | 341 00 |
| 000000502 | 2/14/2001 | 000005251 | PRIME ELECTRIC COMPANY INC | Paid | | WVF2WK | 1 303 48 |
| 000000501 | 2/14/2001 | 000002705 | P COM NETWORK SERVICES INC | Paid | | WVF2WK | 21 720 00 |
| 000000500 | 2/14/2001 | 000000002 | P COM INC | Overflow | | | 0 00 |
| 000000499 | 2/14/2001 | 000000002 | P COM INC | Paid | | WVF2WK | 495 908 90 |
| 000000498 | 2/14/2001 | 000043395 | NEC BUSINESS NETWORK SOLUTIONS | Void | | WVF2WK | 155 00 |
| 000000497 | 2/14/2001 | 000001339 | MICROWAVE TOWER SERVICES INC | Paid | | WVF2WK | 107 708 65 |
| 000000496 | 2/14/2001 | 000033206 | MARCONI COMMUNICATIONS | Paid | | WVF2WK | 101 367 59 |
| 000000495 | 2/14/2001 | 000045224 | KRUEGER INTERNATIONAL | Paid | | WVF2WK | 19 277 16 |
| 000000494 | 2/14/2001 | 000045918 | JULIUS KRAFT COMPANY INC | Paid | | WVF2WK | 216 513 43 |
| 000000493 | 2/14/2001 | 000001292 | HUGH O KANE ELECTRIC CO LLC | Paid | | WVF2WK | 18 500 00 |
| 000000492 | 2/14/2001 | 000004929 | HOGANTEC INC | Paid | | WVF2WK | 3 450 00 |
| 000000491 | 2/14/2001 | 000011669 | HIGGINS NETWORK SERVICES | Paid | | WVF2WK | 40 860 37 |
| 000000490 | 2/14/2001 | 000011669 | HIGGINS NETWORK SERVICES | Paid | | WVF2WK | 12 000 60 |
| 000000489 | 2/14/2001 | 000046289 | HI TECH DATA FLOORS INC | Paid | | WVF2WA | |

CONFIDENTIAL
3WC 0006229

**PEOPLE**

| Report ID | | | Check History Report | | | Page No | 4 |
| Operator ID | PDESIMON | | PeopleSoft Accounts Payable | | | Run Date | 2/23/01 |
| Run Control | CHECK | | Activity From 1/26/2001 To 2/22/2001 | | | Run Time | 9:21:13 AM |
| | | | Bank Account | WF201 | | | |

| Check Number | Check Date | Vendor Number | Vendor Name | Payment Status | Replaced Date | Pay Cycle | Amount |
|---|---|---|---|---|---|---|---|
| 000000526 | 2/20/2001 | 0000001002 | DIGITAL MICROWAVE CORP | Paid | | WVF2WA | 142,879.06 |
| 000000527 | 2/20/2001 | 0000010917 | FISK ELECTRIC COMPANY | Paid | | WVF2WK | 99,000.00 |
| 000000528 | 2/20/2001 | 0000000093 | GRAYBAR | Paid | | WVF2WK | 183.25 |
| 000000529 | 2/20/2001 | 0000008606 | GUILD TECHNOLOGIES | Paid | | WVF2WK | 20,233.69 |
| 000000570 | 2/20/2001 | 0000023077 | HELP SERVICE CO | Paid | | WVF2WK | 0.00 |
| 000000530 | 2/20/2001 | 0000040929 | HOGANTEC INC | Paid | | WVF2WA | 5,707.45 |
| 000000531 | 2/20/2001 | 0000001292 | HUGH O-LANE ELECTRIC CO LLC | Paid | | WVF2WA | 190,129.75 |
| 000000532 | 2/20/2001 | 0000005610 | HUGHES NETWORK SYSTEMS INC | Paid | | WVF2WK | 15,000.00 |
| 000000533 | 2/20/2001 | 0000000001 | IMCI TECHNOLOGIES | Paid | | WVF2WK | 563.12 |
| 000000534 | 2/20/2001 | 0000010474 | LAN TEL COMMUNICATIONS | Paid | | WVF2WK | 5,196.00 |
| 000000535 | 2/20/2001 | 0000033206 | MARCONI COMMUNICATIONS | Paid | | WVF2WK | 63,695.78 |
| 000000536 | 2/20/2001 | 0000042103 | MASTEC TECHNOLOGIES | Paid | | WVF2WK | 231,230.26 |
| 000000537 | 2/20/2001 | 0000013134 | MASTEC WIRELESS SERVICES | Paid | | WVF2WK | 202,846.50 |
| 000000538 | 2/20/2001 | 0000018707 | MDM WEST INC | Paid | | WVF2WK | 7,432.02 |
| 000000539 | 2/20/2001 | 0000000002 | P COM INC | Paid | | WVF2WK | 30,723.00 |
| 000000540 | 2/20/2001 | 0000022705 | P COM NETWORK SERVICES INC | Paid | | WVF2WK | 14,480.00 |
| 000000541 | 2/20/2001 | 0000017809 | SIEMENS INFORMATION & COMM NETWORKS | Paid | | WVF2WK | 54,656.88 |
| 000000542 | 2/20/2001 | 0000014116 | STRATA INC | Paid | | WVF2WK | 24,438.00 |
| 000000543 | 2/20/2001 | 0000048925 | TECHPORT SOLUTIONS INC | Paid | | WVF2WK | 3,289.50 |
| 000000544 | 2/20/2001 | 0000000048 | TELLABS OPERATIONS | Paid | | WVF2WA | 34,256.00 |
| 000000545 | 2/20/2001 | 0000048495 | TUSI CABLING SOLUTIONS INCORPORATED | Paid | | WVF2WK | 18,822.22 |
| 000000546 | 2/20/2001 | 0000004020 | VOLT SERVICES GROUP | Paid | | WVF2WK | 8,402.00 |
| 000000547 | 2/20/2001 | 0000033202 | AGILENT TECHNOLOGIES | Paid | | WVF2WA | 55,228.35 |
| 000000548 | 2/20/2001 | 0000041313 | CACHE VALLEY ELECTRIC TELEDATA DIVISI | Paid | | WVF2WK | 1,710.00 |
| 000000549 | 2/20/2001 | 0000006237 | CAROL ELECTRIC COMPANY INC | Paid | | WVF2WK | 189,484.55 |
| 000000550 | 2/22/2001 | 0000006237 | CAROL ELECTRIC COMPANY INC | Overflow | | WVF2WK | 0.00 |
| 000000551 | 2/22/2001 | 0000006237 | CAROL ELECTRIC COMPANY INC | Paid | | WVF2WK | 12,862.00 |
| 000000552 | 2/22/2001 | 0000023607 | CARTER & BURGESS INC | Paid | | WVF2WK | 43,726.97 |
| 000000553 | 2/22/2001 | 0000006237 | CAROL ELECTRIC COMPANY INC | Overflow | | WVF2WK | 41,620.36 |
| 000000554 | 2/22/2001 | 0000043577 | CBI TELECOMMUNICATIONS | Paid | | WVF2WL | 70,380.00 |
| 000000555 | 2/22/2001 | 0000043585 | CERAGON NETWORKS INC | Paid | | WVF2WK | 8,534.00 |
| 000000556 | 2/22/2001 | 0000032917 | DIGITAL COMMUNICATIONS GROUP INC | Paid | | WVF2WK | 159,895.00 |
| 000000557 | 2/22/2001 | 0000001002 | DIGITAL MICROWAVE CORP | Paid | | WVF2WK | 48,140.00 |
| 000000558 | 2/22/2001 | 0000000934 | DIMENSION ENTERPRISES INC | Paid | | WVF2WK | 0.00 |
| 000000559 | 2/22/2001 | 0000000934 | DIMENSION ENTERPRISES INC | Overflow | | WVF2WK | 0.00 |
| 000000560 | 2/22/2001 | 0000000934 | DIMENSION ENTERPRISES INC | Overflow | | WVF2WK | 0.00 |
| 000000561 | 2/22/2001 | 0000042009 | EPLUS TECHNOLOGY INC | Paid | | WVF2WK | 29,723.22 |
| 000000562 | 2/22/2001 | 0000008606 | GUILD TECHNOLOGIES | Paid | | WVF2WK | 19,481.07 |

CONFIDENTIAL
3WC 0008230

Report ID   WI_ckhis
Operator ID   PDESMON
Run Control   CHECK

**Check History Report**
PeopleSoft Accounts Payable
Activity From 1/26/2001 To 2/22/2001
Bank Account   WSOP

Page No   5
Run Date   2/23/01
Run Time   8:21:13 AM

| Check Number | Check Date | Vendor Number | Vendor Name | Payment Status | Replaced Date | Pay Cycle | Amount |
|---|---|---|---|---|---|---|---|
| 000000563 | 2/22/2001 | 000001292 | HUGH O KANE ELECTRIC CO LLC | Paid | | WVF2WK | 48,497.27 |
| 000000564 | 2/22/2001 | 000005630 | HUGHES NETWORK SYSTEMS INC | Paid | | WVF2WK | 270,000.00 |
| 000000565 | 2/22/2001 | 000002661 | IN HOUSE COMMUNICATIONS INC | Paid | | WVF2WA | 125.00 |
| 000000566 | 2/22/2001 | 000046585 | INFRASTRUCTURE MANAGEMENT GROUP | Paid | | WVF2WA | 3,913.07 |
| 000000567 | 2/22/2001 | 000004717 | LAN TEL COMMUNICATIONS | Paid | | WVF2WK | 21,244.07 |
| 000000568 | 2/22/2001 | 000004317 | LEXENT SERVICES | Paid | | WVF2WK | 39,457.56 |
| 000000569 | 2/22/2001 | 000033206 | MARCONI COMMUNICATIONS | Paid | | WVF2WK | 63,444.45 |
| 000000570 | 2/22/2001 | 000002756 | MICROWAVE COMMUNICATIONS | Paid | | WVF2WK | 12,028.00 |
| 000000571 | 2/22/2001 | 000045395 | MICROWAVE DESIGNS INTERNATIONAL, INC | Paid | | WVF2WK | 22,541.95 |
| 000000572 | 2/22/2001 | 000002200 | NEC BUSINESS NETWORK SOLUTIONS | Paid | | WVF2WK | 47,104.00 |
| 000000573 | 2/22/2001 | 000002705 | DSP CONSULTANTS INC | Paid | | WVF2WL | 4,791.00 |
| 000000574 | 2/22/2001 | 000002157 | P COM NETWORK SERVICES INC | Paid | | WVF2WL | 11,846.00 |
| 000000575 | 2/22/2001 | 000008799 | PACIFIC NATCOM INC | Paid | | WVF2WK | 12,461.77 |
| 000000576 | 2/22/2001 | 0000D1401 | POND & COMPANY | Paid | | WVF2WK | 13,746.69 |
| 000000577 | 2/22/2001 | 000005531 | POWER AND TELEPHONE SUPPLY | Paid | | WVF2WK | 11,785.00 |
| 000000578 | 2/22/2001 | 000019187 | PRIME ELECTRIC COMPANY INC | Paid | | WVF2WK | 17,642.20 |
| 000000579 | 2/22/2001 | 000000937 | SCHULD INCORPORATED | Paid | | WVF2WK | 15,094.75 |
| 000000580 | 2/22/2001 | 000043263 | SOLINET INC | Paid | | WVF2WK | 5,531.43 |
| 000000581 | 2/22/2001 | 000001001 | STRATEGIC TENANT SERVICES | Paid | | WVF2WK | 46,080.00 |
| 000000582 | 2/22/2001 | 000048923 | SURE POWER | Paid | | WVF2WK | 8,201.17 |
| 000000583 | 2/22/2001 | 000000048 | TECHPOINT SOLUTIONS INC | Paid | | WVF2WK | 146,832.00 |
| 000000584 | 2/22/2001 | 000048371 | TELLABS OPERATIONS INC | Paid | | WVF2WK | 1,985.00 |
| 000000585 | 2/22/2001 | 000036801 | UNITED ELECTRIC COMPANY | Paid | | WVF2WK | 40,105.00 |
| 000000586 | 2/22/2001 | 000000978 | WASATCH ELECTRIC | Paid | | WVF2WK | 5,054,284.62 |
| 000000587 | 2/22/2001 | 000000978 | ADVANCED FIBRE COMMUNICATIONS | Overflow | | WVF2WK2 | 0.00 |
| 000000588 | 2/22/2001 | 000036714 | ADVANCED FIBRE COMMUNICATIONS | Paid | | WVF2WK2 | 107,368.90 |
| 000000589 | 2/22/2001 | 000036714 | ALLEGHENY BUILDERS INC | Overflow | | WVF2WK2 | 0.00 |
| 000000590 | 2/22/2001 | 000033441 | ALLEGHENY BUILDERS INC | Paid | | WVF2WK2 | 2,500.00 |
| 000000591 | 2/22/2001 | 000009278 | ALPHA TELECOM SERVICES CO | Paid | | WVFWK2 | 5,624.55 |
| 000000592 | 2/22/2001 | 000009906 | AMERIWAVE TECHNOLOGIES | Paid | | WVFWK2 | 3,938.88 |
| 000000593 | 2/22/2001 | 000040907 | ANIXTER INC | Paid | | WVFWK2 | 29,527.69 |
| 000000594 | 2/22/2001 | 000000907 | AZTEK TECH SERVICE | Paid | | WVFWK2 | 40,127.28 |
| 000000595 | 2/22/2001 | 000041313 | BARD SATELLITE | Paid | | WVFWK2 | 2,508.00 |
| 000000596 | 2/22/2001 | 000002237 | CACHE VALLEY ELECTRIC TELEDATA DIVISIO | Paid | | WVFWK2 | 27,442.92 |
| 000000597 | 2/22/2001 | 000003607 | CAROL ELECTRIC COMPANY INC | Paid | | WVFWKC | 20,572.51 |
| 000000598 | 2/22/2001 | 000003607 | CARTER & BURGESS INC | Paid | | WVFWKC | 2,465.39 |
| 000000599 | 2/22/2001 | 000043585 | CARTER & BURGESS INC | Paid | | WVFWK2 | 323.03 |
| | | | CERAGON NETWORKS INC | | | | |

CONFIDENTIAL
3WC 0008231

**PEOPLE**
Report ID
Operator ID  WL_ckhis
Run Control  PDESIMON  CHECK

**Check History Report**
**PeopleSoft Accounts Payable**
Activity From  1/26/2001 To  2/22/2001
Bank Account  TYPOL

Page No.  6
Run Date  2/23/01
Run Time  9:21:13 AM

| Check Number | Check Date | Vendor Number | Vendor Name | Payment Status | Replaced Date | Pay Cycle | Amount |
|---|---|---|---|---|---|---|---|
| 000000600 | 2/22/2001 | 000047234 | COMPUTER CABLES OF DALLAS LLC | Paid | | WVFWK2 | 2 387 58 |
| 000000601 | 2/22/2001 | 000005345 | CPI COMMUNICATION SERVICES INC | Paid | | WVFWK2 | 4 675 00 |
| 000000602 | 2/22/2001 | 000001002 | DIGITAL MICROWAVE CORP | Paid | | WVFWK2 | 15 850 00 |
| 000000603 | 2/22/2001 | 000002196 | EE LINDEN ASSOCIATES INC | Paid | | WVFWK2 | 79 042 51 |
| 000000604 | 2/22/2001 | 000002196 | EE LINDEN ASSOCIATES INC | Overflow | | WVFWK2 | 0.00 |
| 000000605 | 2/22/2001 | 000002196 | EE LINDEN ASSOCIATES INC | Overflow | | WVFWK2 | 0.00 |
| 000000606 | 2/22/2001 | 000002196 | EE LINDEN ASSOCIATES INC | Overflow | | WVFWK2 | 0.00 |
| 000000607 | 2/22/2001 | 000002196 | EE LINDEN ASSOCIATES INC | Overflow | | WVFWK2 | 0.00 |
| 000000608 | 2/22/2001 | 000043595 | ENTREX COMMUNICATION SERVICES INC | Overflow | | WVFWK2 | 0.00 |
| 000000609 | 2/22/2001 | 000001102 | GENSLER | Paid | | WVFWK2 | 2 885 17 |
| 000000610 | 2/22/2001 | 000000893 | GRAYBAR | Paid | | WVFWK2 | 2 417 88 |
| 000000611 | 2/22/2001 | 000032077 | HELP SERVICE CO | Paid | | WVFWK2 | 6 647 90 |
| 000000612 | 2/22/2001 | 000011669 | HIGGINS NETWORKS SERVICES | Paid | | WVFWK2 | 87 766 00 |
| 000000613 | 2/22/2001 | 000046385 | INFRASTRUCTURE MANAGEMENT GROUP | Paid | | WVFWK2 | 4 125 00 |
| 000000614 | 2/22/2001 | 000019427 | INTERIOR CONSTRUCTION SERVICES LTD | Paid | | WVFWK2 | 6 737 35 |
| 000000615 | 2/22/2001 | 000039612 | KLEINKNECHT ELECTRIC CO | Paid | | WVFWK2 | 20 085 00 |
| 000000616 | 2/22/2001 | 000000474 | LAN TEL COMMUNICATIONS | Paid | | WVFWK2 | 11 400 00 |
| 000000617 | 2/22/2001 | 000033206 | MARCONI COMMUNICATIONS | Paid | | WVFWK2 | 26 910 96 |
| 000000618 | 2/22/2001 | 000033206 | MARCONI COMMUNICATIONS | Paid | | WVFWK2 | 18 202 60 |
| 000000619 | 2/22/2001 | 000048896 | MARON ELECTRONIC SWITCHING SYSTEMS I | Paid | | WVFWK2 | 68 959 69 |
| 000000620 | 2/22/2001 | 000002756 | MICROWAVE DESIGNS INTERNATIONAL INC | Paid | | WVFWK2 | 2 733 91 |
| 000000621 | 2/22/2001 | 000002749 | N J SULLIVAN CO INC | Paid | | WVFWK2 | 34 868 00 |
| 000000622 | 2/22/2001 | 000016402 | NATIONAL NETWORK TECHNOLOGIES INC | Paid | | WVFWK2 | 20 320 80 |
| 000000623 | 2/22/2001 | 000016402 | NATIONAL NETWORK TECHNOLOGIES INC | Paid | | WVFWK2 | 33 923 74 |
| 000000624 | 2/22/2001 | 000016817 | NORTHCO CORPORATION | Overflow | | WVFWK2 | 0.00 |
| 000000625 | 2/22/2001 | 000033527 | OPC COMMUNICATIONS | Paid | | WVFWK2 | 87 400 00 |
| 000000626 | 2/22/2001 | 000047553 | ORBLS NETWORK SERVICE DIVISION | Paid | | WVFWK2 | 617 50 |
| 000000627 | 2/22/2001 | 000002200 | OSP CONSULTANTS INC | Paid | | WVFWK2 | 28 434 91 |
| 000000628 | 2/22/2001 | 000000002 | P COM INC | Paid | | WVFWK2 | 46 060 00 |
| 000000629 | 2/22/2001 | 000022705 | P COM NATCOM INC | Paid | | WVFWK2 | 189 840 00 |
| 000000630 | 2/22/2001 | 000021157 | PACIFIC NATCOM INC | Paid | | WVFWK2 | 47 804 00 |
| 000000631 | 2/22/2001 | 000008799 | POND & COMPANY | Paid | | WVFWK2 | 6 935 91 |
| 000000632 | 2/22/2001 | 000003401 | POWER AND TELEPHONE SUPPLY | Paid | | WVFWK2 | 11 854 00 |
| 000000633 | 2/22/2001 | 000052251 | PRIME ELECTRIC COMPANY INC | Paid | | WVFWK2 | 64 183 83 |
| 000000634 | 2/22/2001 | 000047521 | QUALITY CONTROL SERVICES LLC | Paid | | WVFWK2 | 65 945 52 |
| 000000635 | 2/22/2001 | 000034338 | REDLINE COMMUNICATIONS INC | Paid | | WVFWK2 | 2 300 00 |
| 000000636 | 2/22/2001 | 000016363 | ROEDIGER CONSTRUCTION INC | Paid | | WVFWK2 | 32 508 94 |

CONFIDENTIAL
3WC 0008232

Report ID
Operator ID  WL_ckhils
Run Control  PDESIMON    CHECV

**Check History Report**
PeopleSoft Accounts Payable
Activity From 1/26/2001 To 2/22/2001
Bank Account: *****

Page No  7
Run Date  2/23/01
Run Time  9:21:13 AM

| Check Number | Check Date | Vendor Number | Vendor Name | Payment Status | Replaced Date | Pay Cycle | Amount |
|---|---|---|---|---|---|---|---|
| 000000637 | 2/22/2001 | 000003373 | ROTMAN ELECTRICAL CO INC | Paid | | WVFWK2 | 8,587.00 |
| 000000638 | 2/22/2001 | 000019187 | SCHILD INCORPORATED | Paid | | WVFWK2 | 42,560.48 |
| 000000639 | 2/22/2001 | 000003470 | SIXTH & VIRGINIA PROPERTIES | Paid | | WVFWK2 | 23,542.31 |
| 000000640 | 2/22/2001 | 000021447 | SIXTH & VIRGINIA PROPERTIES | Paid | | WVFWK2 | 12,527.01 |
| 000000641 | 2/22/2001 | 000048377 | SOUTHWEST ENCLOSURES INC | Paid | | WVFWK2 | 6,370,880.90 |
| 000000642 | 2/22/2001 | 000025924 | SPECTRA SITE | Paid | | WVFWK2 | 16,687.50 |
| 000000643 | 2/22/2001 | 000034136 | STRATA INC | Paid | | WVFWK2 | 1,804.11 |
| 000000644 | 2/22/2001 | 000040181 | SUNGLO TELECOM | Paid | | WVFWK2 | 1,249.00 |
| 000000645 | 2/22/2001 | 000001001 | SURE POWER | Paid | | WVFWK2 | 11,520.00 |
| 000000646 | 2/22/2001 | 000001001 | SURE POWER | Paid | | WVFWK2 | 161,280.00 |
| 000000647 | 2/22/2001 | 000001001 | SURE POWER | Overflow | | WVFWK2 | 0.00 |
| 000000648 | 2/22/2001 | 000048571 | TECHPOINT SOLUTIONS INC | Paid | | WVFWK2 | 6,901.50 |
| 000000649 | 2/22/2001 | 000048925 | TECHPOINT SOLUTIONS INC | Paid | | WVFWK2 | 8,236.25 |
| 000000650 | 2/22/2001 | 000041006 | TELECOM PROFESSIONAL SERVICES INC | Paid | | WVFWK2 | 36,670.00 |
| 000000651 | 2/22/2001 | 000044944 | TELNET SYSTEMS INC | Paid | | WVFWK2 | 256.16 |
| 000000652 | 2/22/2001 | 000036954 | THE BOARD ROOM INC | Paid | | WVFWK2 | 87,806.14 |
| 000000653 | 2/22/2001 | 000041228 | URS GREINER WOODWARD CYCLE | Paid | | WVFWK2 | 533,042.84 |
| 000000654 | 2/22/2001 | 000019834 | ABUCK, INC | Paid | | WVFWL | 87,142.50 |
| 000000655 | 2/22/2001 | 000000978 | ADVANCED FIBRE COMMUNICATIONS | Paid | | WVFWL | 2,679,386.92 |
| 000000656 | 2/22/2001 | 000036714 | ALLEGHENY BUILDERS INC | Paid | | WVFWK2 | 51,358.30 |
| 000000657 | 2/22/2001 | 000047456 | ALT ENTERPRISES INC | Paid | | WVFWK | 84,665.83 |
| 000000658 | 2/22/2001 | 000047456 | ALT ENTERPRISES INC | Overflow | | WVFWK | 0.00 |
| 000000659 | 2/22/2001 | 000047456 | ALT ENTERPRISES INC | Overflow | | WVFWK | 0.00 |
| 000000660 | 2/22/2001 | 000039278 | AMERIWAVE TECHNOLOGIES | Paid | | WVFWK | 33,590.31 |
| 000000661 | 2/22/2001 | 000042567 | ATLANTIC COAST TOWERS INC | Paid | | WVFWK | 12,900.00 |
| 000000662 | 2/22/2001 | 000040697 | AZTEK TECH SERVICE | Paid | | WVFWK | 9,313.76 |
| 000000663 | 2/22/2001 | 000003301 | B&A TELECOM | Paid | | WVFWK | 1,431.00 |
| 000000664 | 2/22/2001 | 000003907 | BAIRD SATELLITE | Paid | | WVFWK | 7,877.76 |
| 000000665 | 2/22/2001 | 000006237 | CAROL ELECTRIC COMPANY INC | Paid | | WVFWK | 64,605.00 |
| 000000666 | 2/22/2001 | 000002064 | CHARLES TAYLOR COMMUNICATIONS INC | Paid | | WVFWK | 11,009.03 |
| 000000667 | 2/22/2001 | 000045241 | DC CONNECTIONS | Paid | - | WVFWK | 360.53 |
| 000000668 | 2/22/2001 | 000032917 | DIGITAL COMMUNICATIONS GROUP INC | Paid | | WVFWK | 67,350.00 |
| 000000669 | 2/22/2001 | 000038976 | E M ENTERPRISES INC | Paid | | WVFWK | 54,520.00 |
| 000000670 | 2/22/2001 | 000202 | EE LINDEN ASSOCIATES INC | Paid | | WVFWK | 66,753.72 |
| 000000671 | 2/22/2001 | 000002196 | EE LINDEN ASSOCIATES INC | Overflow | | WVFWK | 0.00 |
| 000000672 | 2/22/2001 | 000002196 | EE LINDEN ASSOCIATES INC | Overflow | | WVFWK | 0.00 |
| 000000673 | 2/22/2001 | 000002196 | EE LINDEN ASSOCIATES INC | Overflow | | WVFWK | 0.00 |

CONFIDENTIAL
3WC 0008233

Report ID
Operator ID   WLCahis
Run Control   PDESIMON
CHECK

**Check History Report**
PeopleSoft Accounts Payable
Activity From 1/26/2001To 2/22/2001
Bank Account   VPSC

Page No   8
Run Date   2/23/01
Run Time   9 21 13 AM

| Check Number | Check Date | Vendor Number | Vendor Name | Payment Status | Replaced Date | Pay Cycle | Amount |
|---|---|---|---|---|---|---|---|
| 000000674 | 2/22/2001 | 000000917 | FISK ELECTRIC COMPANY | Paid | | WVFWK | 397 89 |
| 000000675 | 2/22/2001 | 000000917 | FISK ELECTRIC COMPANY | Paid | | WVFWA | 145 124 00 |
| 000000676 | 2/22/2001 | 000001917 | FISK ELECTRIC COMPANY | Paid | | WVFWK | 2 761 02 |
| 000000677 | 2/22/2001 | 000000834 | FREESTATE ELECTRIC COMPANY | Paid | | WVFWA | 12 256 00 |
| 000000678 | 2/22/2001 | 000009620 | FTV INC | Paid | | WVFWK | 1 190 00 |
| 000000679 | 2/22/2001 | 000010690 | GALLAGHER ELECTRIC AND ENGINEERING C( | Paid | | WVFWK | 1 505 25 |
| 000000680 | 2/22/2001 | 000048305 | GEORGIA NETWORK CABLING | Paid | | WVFWK | 8 823 62 |
| 000000681 | 2/22/2001 | 000008606 | GUILD TECHNOLOGIES | Paid | | WVFWK | 94 880 97 |
| 000000682 | 2/22/2001 | 000008606 | GUILD TECHNOLOGIES | Overflow | | WVFWK | 0 00 |
| 000000683 | 2/22/2001 | 000046992 | GUILD TECHNOLOGIES COLORADO LLC | Paid | | WVFWK | 35 171 71 |
| 000000684 | 2/22/2001 | 000023077 | HELP SERVICE CO | Paid | | WVFWK | 1 981 00 |
| 000000685 | 2/22/2001 | 000001669 | HIGGINS NETWORK SERVICES | Paid | | WVFWK | 3 500 00 |
| 000000686 | 2/22/2001 | 000001292 | HUGH O KANE ELECTRIC CO   LLC | Paid | | WVFWK | 539 163 27 |
| 000000687 | 2/22/2001 | 000001292 | HUGH O KANE ELECTRIC CO   LLC | Paid | | WVFWK | 0 00 |
| 000000688 | 2/22/2001 | 000001292 | HUGH O KANE ELECTRIC CO   LLC | Overflow | | WVFWK | 0 00 |
| 000000689 | 2/22/2001 | 000001292 | HUGH O KANE ELECTRIC CO   LLC | Overflow | | WVFWK | 0 00 |
| 000000690 | 2/22/2001 | 000001292 | HUGH O KANE ELECTRIC CO   LLC | Overflow | | WVFWK | 0 00 |
| 000000691 | 2/22/2001 | 000000001 | IMCI TECHNOLOGIES | Paid | | WVFWK | 3 727 58 |
| 000000692 | 2/22/2001 | 000045585 | INFRASTRUCTURE MANAGEMENT GROUP | Paid | | WVFWK | 2 847 20 |
| 000000693 | 2/22/2001 | 000018197 | INTEGRATED COMMUNICATIONS SERVICES | Paid | | WVFWK | 1 560 00 |
| 000000694 | 2/22/2001 | 000019427 | INTERIOR CONSTRUCTION SERVICES LTD | Paid | | WVFWA | 5 881 53 |
| 000000695 | 2/22/2001 | 000004474 | LAN TEL COMMUNICATIONS | Paid | | WVFWA | 5 975 40 |
| 000000696 | 2/22/2001 | 000047517 | LEXENT SERVICES | Paid | | WVFWK | 41 532 91 |
| 000000697 | 2/22/2001 | 000033206 | MARCONI COMMUNICATIONS | Paid | | WVFWK | 36 176 90 |
| 000000698 | 2/22/2001 | 000002756 | MICROWAVE DESIGNS INTERNATIONAL INC | Paid | | WVFWK | 45 623 00 |
| 000000699 | 2/22/2001 | 000002200 | OSP CONSULTANTS INC | Paid | | WVFWK | 28 930 00 |
| 000000700 | 2/22/2001 | 000002705 | P COM NETWORK SERVICES INC | Paid | | WVFWK | 85 398 00 |
| 000000701 | 2/22/2001 | 000002705 | P COM NETWORK SERVICES INC | Overflow | | WVFWK | 0 00 |
| 000000702 | 2/22/2001 | 000003401 | P COM NETWORK SERVICES INC | Overflow | | WVFWK | 0 00 |
| 000000703 | 2/22/2001 | 000052251 | POWER AND TELEPHONE SUPPLY | Paid | | WVFWK | 71 151 00 |
| 000000704 | 2/22/2001 | 000045371 | PRIME ELECTRIC COMPANY   INC | Paid | | WVFWK | 110 547 00 |
| 000000705 | 2/22/2001 | 000045371 | OSERVE COMMUNICATIONS | Paid | | WVFWK | 45 672 00 |
| 000000706 | 2/22/2001 | 000016363 | ROEDIGER CONSTRUCTION INC | Paid | | WVFWK | 6 227 32 |
| 000000707 | 2/22/2001 | 000003375 | ROTMAN ELECTRICAL CO   INC | Paid | | WVFWK | 71 694 15 |
| 000000708 | 2/22/2001 | 000003375 | ROTMAN ELECTRICAL CO   INC | Overflow | | WVFWK | 0 00 |
| 000000709 | 2/22/2001 | 000003375 | ROTMAN ELECTRICAL CO   INC | Overflow | | WVFWK | 0 00 |
| 000000710 | 2/22/2001 | 000019187 | SCHULD INCORPORATED | Paid | | WVFWK | 44 203 97 |

CONFIDENTIAL
3WC 0008234

**PEOPLE**

| Report ID | W1_ckhis |
| Operator ID | PDESIMON |
| Run Control | CHECK |

**Check History Report**
PeopleSoft Accounts Payable
Activity From 1/26/2001 To 2/22/2001
Bank Account VP201

| Page No | 9 |
| Run Date | 2/23/01 |
| Run Time | 8:21:13 AM |

| Check Number | Check Date | Vendor Number | Vendor Name | Payment Status | Replaced Date | Pay Cycle | Amount |
|---|---|---|---|---|---|---|---|
| 000000711 | 2/22/2001 | 000000937 | SOLUNET INC | Paid | | WVFWK | 17 039 50 |
| 000000712 | 2/22/2001 | 000000937 | SPECIALIZED PRODUCTS COMPANY | Paid | | WVFWK | 41 937 05 |
| 000000713 | 2/22/2001 | 000003053 | SPECTRA SITE | Paid | | WVFWK | 69 355 68 |
| 000000714 | 2/22/2001 | 000036924 | STRATA COMMUNICATIONS | Paid | | WVFWK | 1 802 76 |
| 000000715 | 2/22/2001 | 000018480 | STRATA INC | Paid | | WVFWK | 43 032 19 |
| 000000716 | 2/22/2001 | 000034116 | SUNGLO TELECOM INC | Paid | | WVFWK | 39 192 38 |
| 000000717 | 2/22/2001 | 000001337 | TAYLOR COMMUNICATIONS | Paid | | WVFWK | 14 862 73 |
| 000000718 | 2/22/2001 | 000033626 | TECHPOINT SOLUTIONS INC | Paid | | WVFWK | 9 632 00 |
| 000000719 | 2/22/2001 | 000048925 | TELECOM PROFESSIONAL SERVICES INC | Paid | | WVFWK | 48 902 00 |
| 000000720 | 2/22/2001 | 000041006 | TRI TECH ELECTRIC CONTRACTORS INC | Paid | | WVFWK | 30 917 00 |
| 000000721 | 2/22/2001 | 000033579 | VECA ELECTRIC CO INC | Paid | | WVFWK | 21 887 24 |
| 000000722 | 2/22/2001 | 000009441 | VECA ELECTRIC CO INC | Paid | | OUICK4 | 12 005 00 |
| 000000723 | 2/22/2001 | 000002705 | P COM NETWORK SERVICES INC | Paid | | OUICK4 | 9 730 00 |
| 000000724 | 2/22/2001 | 000005345 | CPI COMMUNICATION SERVICES INC | Paid | | OUICK4 | 6 380 00 |
| 000000725 | 2/22/2001 | 000006237 | CAROL ELECTRIC COMPANY INC | Paid | | OUICK5 | 50 734 52 |
| 000000726 | 2/22/2001 | 000000906 | ANIXTER INC | Paid | | OUICK5 | 28 163 40 |
| 000000727 | 2/22/2001 | 000008321 | DP AIR CORPORATION | Paid | | OUICK5 | 7 049 48 |

Total Amount     35 505 866 08

CONFIDENTIAL
3WC 0008235

# ROA
# TAB
# 506

SUPPLY AGREEMENT

BY AND BETWEEN

WINSTAR COMMUNICATIONS INC

AND

LUCENT TECHNOLOGIES INC

Effective as of October 21 1998

DEFENDANT'S
EXHIBIT
28

CONFIDENTIAL I/C 0007084

# TABLE OF CONTENTS

| | | |
|---|---|---:|
| 1 | **DEFINITIONS** | 1 |
| 1 1 | Certain Definitions | 1 |
| 1 2 | Other Terms | 6 |
| 2 | **SCOPE AND STRUCTURE** | 6 |
| 2 1 | General | 6 |
| 2 2 | Other Entities | 6 |
| 2 3 | Strategic Relationship | 7 |
| 2 4 | Existing Agreements | 9 |
| 2 5 | International Aspects | 9 |
| 3 | **TERM** | 10 |
| 3 1 | Initial Term and Extension | 10 |
| 3 2 | Interim Extension | 10 |
| 4 | **PURCHASING AND ORDERING** | 10 |
| 4 1 | Purchase Orders | 10 |
| 4 2 | Administrative Changes | 12 |
| 4 3 | Timing of Delivery | 12 |
| 4 4 | Cancellation and Rescheduling of Purchase Orders | 13 |
| 4 5 | Termination of Purchase Orders | 15 |
| 5 | **SHIPPING AND DELIVERY** | 15 |
| 5 1 | Incorrect Delivery | 15 |
| 5 2 | Purchase Order Tracking | 15 |
| 5 3 | Packing | 16 |
| 5 4 | Labeling | 16 |
| 5 5 | Calibration and Testing | 16 |
| 5 6 | Shipping | 16 |
| 5 7 | Title and Risk of Loss | 17 |
| 6 | **DELIVERY OF SERVICES** | 17 |
| 6 1 | Transition/Ramp-up of Lucent Service Capabilities | 17 |
| 6 2 | Use of Third Parties | 17 |
| 6 3 | Key Lucent Positions | 18 |
| 6 4 | Required Consents | 19 |
| 6 5 | Implementation Plaus Milestones and Milestone Dates | 19 |
| 7 | **ACCEPTANCE TESTING AND FINAL ACCEPTANCE** | 19 |
| 7 1 | Acceptance Testing and Cure | 19 |
| 7 2 | Acceptance | 19 |
| 8 | **PERFORMANCE STANDARDS** | 20 |
| 8 1 | General | 20 |
| 8 2 | Failure to Perform | 20 |
| 8 3 | Periodic Reviews | 20 |
| 8 4 | Measurement and Monitoring Tools | 21 |
| 9 | **SOFTWARE LICENSES AND PROPRIETARY RIGHTS** | 21 |
| 9 1 | Licenses | 21 |
| 9 2 | Proprietary Rights | 22 |
| 9 3 | Source Code Availability | 23 |
| 10 | **WINSTAR RESPONSIBILITIES** | 24 |
| 10 1 | Facilities and Resources | 24 |
| 10 2 | Savings Clause | 24 |

CONFIDENTIAL WC 0007085

11      CHARGES                                                                    24
11 1    General                                                                    24
11 2    Taxes                                                                      25
11 3    Financing                                                                  26
11 4    Incidental Expenses                                                        27

12      INVOICING AND PAYMENT                                                      28
12 1    Invoicing                                                                  28
12 2    Payment Due                                                                29
12 3    Accountability                                                             29
12 4    Proration                                                                  29
12 5    Set Off                                                                    29
12 6    Disputed Charges                                                           29
12 7    Encumbrances                                                               29

13      CONFIDENTIALITY                                                            30
13 1    Confidential Information                                                   30
13 2    Obligations                                                                30
13 3    Exclusions                                                                 30
13 4    No Implied Rights                                                          31

14      REPRESENTATIONS WARRANTIES AND COVENANTS                                   31
14 1    Pass Through Warranties                                                    31
14 2    Non Infringement                                                           32
14 3    Ownership or Use                                                           32
14 4    Authorization                                                              32
14 5    Inducements                                                                32
14 6    Work Standards                                                            32
14 7    Product Warranties                                                        33
14 8    Discontinued Lucent Products                                               35
14 9    Compliance                                                                 35
14 10   Documentation                                                             35
14 11   Viruses                                                                    35
14 12   Disabling Code                                                             35
14 1    Integration Test                                                           36
14 14   Year 2000                                                                  36
14 15   Disclaimer                                                                 37

15      TERMINATION                                                                37
15 1    Termination for Cause                                                      37
15 2    Termination by Lucent                                                      37
15 3    Termination Option for Lucent's Failure to Provide Financing              38
15 4    Disengagement Assistance                                                   38

16      LIABILITY                                                                  38
16 1    General Intent                                                             38
16 2    Liability Restrictions                                                     38
16 3    Force Majeure                                                              39

17      INDEMNIFICATION                                                            40
17 1    Indemnities by Lucent                                                      40
17 2    Indemnities by VinStar                                                     40
17 3    Infringement                                                               41
17 4    Indemnification Procedures                                                 41

18      DISPUTE RESOLUTION                                                         42
18 1    Informal Dispute Resolution                                               42

ii

| | | |
|---|---|---:|
| 18 2 | Litigation | 43 |
| 18 3 | Continued Performance | 43 |
| 18 4 | Governing Law | 44 |
| **19** | **INSURANCE REQUIREMENTS** | 44 |
| **20** | **GENERAL** | 44 |
| 20 1 | Binding Nature and Assignment | 44 |
| 20 2 | Entire Agreement | 45 |
| 20 3 | Notices | 45 |
| 20 4 | Counterparts | 46 |
| 20 5 | Relationship of Parties | 46 |
| 20 6 | Severability | 46 |
| 20 7 | Consents and Approval | 46 |
| 20 8 | Waiver of Default | 46 |
| 20 9 | Cumulative Remedies | 47 |
| 20 10 | Survival | 47 |
| 20 11 | Public Disclosures | 47 |
| 20 12 | Service Marks | 47 |
| 20 13 | Third Party Beneficiaries | 48 |
| 20 14 | Amendment | 48 |
| 20 15 | Interpretation | 48 |
| 20 16 | Incorporation by Reference and Order of Precedence | 49 |

### LIST OF SCHEDULES AND EXHIBITS

| | |
|---|---|
| Schedule A | Statement of Work |
| Exhibit A 1 | Lucent Responsibility Matrix by Technology |
| Exhibit A 2 | International |
| Exhibit A 3 | WinStar/Lucent Market Deployment Responsibility Matrix |
| Exhibit A 4 | Transition Plan |
| Exhibit A 5 | Product Spec Principles |
| Exhibit A 6 | Current Network Diagrams |
| Exhibit A 7 | Future Network Diagrams |
| Schedule B | Performance Standards |
| Schedule C | Pricing |
| Exhibit C 1 | Lucent Product Price List |
| Exhibit C 2 | WinStar Product Discounts |
| Exhibit C 3 | Reference Pricing |
| Exhibit C-4 | Switch Pricing |
| Exhibit C 5 | Pricing for Lucent Services |
| Exhibit C 6 | Pricing for Interoperability Testing Lab |
| Exhibit C 7 | Pricing for Optical Networking Technologies |
| Exhibit C 8 | Pricing for International Services |
| Schedule D | Documentation and Specifications |
| Schedule E | Testing and Acceptance |
| Schedule F | Credit Agreement |
| Schedule G | International Consideration |
| Schedule H | Best of Breed |
| Schedule I | Warranty Periods |
| Schedule J | Key Lucent Positions |
| Schedule K | Lucent Indicia Use Guidelines |

iii

# SUPPLY AGREEMENT

## BY AND BETWEEN

## WINSTAR COMMUNICATIONS, INC

## AND

## LUCENT TECHNOLOGIES INC

This Supply Agreement (the Agreement) effective as of October 21 1998 (the Effective Date) is entered into by and between WINSTAR COMMUNICATIONS INC a Delaware corporation with offices located at 230 Park Avenue New York New York 10169 (WinStar) and LUCENT TECHNOLOGIES INC a Delaware corporation with offices located at 600 Mountain Avenue Murray Hill New Jersey 07974 (Lucent) As used in this Agreement Party means either WinStar or Lucent as appropriate and Parties means WinStar and Lucent The Parties agree that the following terms and conditions shall apply to the products and services to be provided by Lucent under this Agreement in consideration of certain payments to be made by WinStar

1    DEFINITIONS

    1 1    Certain Definitions

       As used in this Agreement

      (a)    Acceptance has the meaning set forth in Section 7 2

      (b)    Acceptance Criteria mean the criteria used to determine whether a Deliverable is ready for Acceptance as set forth more fully in Schedule E The Acceptance Criteria require unless otherwise mutually agreed in writing that the Deliverable

         (i)    Meets or exceeds the Specifications applicable to such Deliverable as well as all applicable warranties

         (ii)    Integrates in accordance with the approved Network design architecture and technology

         (iii)    Complies with applicable Documentation

         (iv)    Complies with Applicable Standards and

         (v)    Complies with all additional mutually agreed upon testing criteria and plans as may be developed and agreed upon by the Parties in accordance with the terms of this Agreement

      (c)    Acceptance Test Period for a Deliverable shall mean the applicable period specified in Schedule E In the event an Acceptance Test Period for a particular Deliverable is not specified in Schedule E and is not otherwise mutually agreed

CONFIDENTIAL WC 0007088

upon the Acceptance Test Period shall be thirty (30) days from either Lucent Certification if installed or implemented by Lucent or delivery of the Deliverable if not installed or implemented by Lucent

(d)     Affiliate means with respect to any entity any other entity Influencing Influenced by or under common Influence with such entity

(e)     Agreement has the meaning set forth in the preamble to this Agreement

(f)     Applicable Standards means (i) all industry standards (whether domestic or international) applicable to the Deliverable including NEBS (1 2 and 3) Underwriters Laboratory EIA/TIA Bellcore ANSI IEEE ATM Forum NFSC ITU T and NEC all as may be amended from time to time and (ii) all domestic and international federal state and local laws regulations ordinances codes and requirements applicable to the Deliverable all as may be amended from time to time

(g)     Best of Breed shall have the meaning set forth in Schedule H Best of Breed analyses shall be used for all Products and Services to be provided or implemented as part of the Network design and architecture

(h)     City Specific Plan means a plan that addresses the timing (including Milestones) network cost/budget functionality and scope of implementation (addition or augmentation) for a particular network design

(i)     Contract Year shall have the meaning set forth in Section 11 3(b)

(j)     Credit Agreement shall refer to that certain Credit Agreement dated as of October 21 1998 among WinStar Network Expansion LLC WinStar Communications Inc the Lenders party thereto State Street Bank and Trust Company as collateral agent and Lucent Technologies Inc as administrative agent A copy of the Credit Agreement is attached hereto as Schedule F

(k)     Custom Product shall mean a Product that requires engineering to WinStar s specific and unique requirements

(l)     Customer Colocation means the existence of WinStar customer equipment and associated software and peripherals interconnected with a WinStar network and located in WinStar s premises (whether owned leased or licensed by WinStar)

(m)     Customer Virtual Colocation means the existence of WinStar customer equipment and associated software and peripherals interconnected with a WinStar network and not located in WinStar s premises (whether owned leased or licensed by WinStar)

(n)     Deliverable means a Product or an end product of a Service delivered by Lucent pursuant to this Agreement and the applicable Schedules

(o)     Developed Deliverable has the meaning set forth in Section 9 2

CONFIDENTIAL I/C 0007089

(p)    Documentation  has the meaning set forth in Section 9 1(f)

(q)    Effective Date  has the meaning set forth in the preamble to this Agreement

(r)    Equipment  means the equipment hardware firmware cabling and embedded Software components that may be purchased  or with respect to embedded Software  licensed by WinStar from or through Lucent under this Agreement As of the Effective Date  the categories of Equipment include the categories identified as such in Schedule C

(s)    Extended Warranty Period  has the meaning set forth in Section (ss)

(t)    Influence  and its derivatives means (i) legal  beneficial  or equitable ownership directly or indirectly  of more than an Interest of outstanding capital stock  (or other ownership interest  if not a corporation) of an entity ordinarily having voting rights or (ii) with respect to entities incorporated or principally operating in the United States  management or operational control over such entity

(u)    Interest  means thirty three and one third percent (33⅓%) with respect to entities incorporated or principally operating in the United States  and five percent (5%) with respect to all other entities

(v)    Lucent  has the meaning set forth in the preamble to this Agreement  With respect to the obligation to fulfill Purchase Orders  Lucent  shall also include Lucent s distributors  provided  however  Lucent shall remain fully responsible for the performance of such distributors

(w)    Lucent Certification  shall mean Lucent s written certification to WinStar that (i) it has fully and successfully tested the Deliverable in accordance with the developed test plan (individually and as integrated into the Network)  (ii) the Deliverable has met the Acceptance Criteria to Lucent s satisfaction and (iii) the Deliverable is available for WinStar s testing in accordance with the applicable test plan

(x)    Lucent Product  means any product created  sold through  distributed or branded by Lucent or its distributors  and shall include those products identified in this Agreement and otherwise made commercially available by Lucent or its distributors

(y)    Milestone  has the meaning set forth in Section 6 5(a)

(z)    Milestone Date  has the meaning set forth in Section 6 5(a)

(aa)    Network  means the physical  transport and application network layers of the communication infrastructure used by WinStar to connect to its domestic and foreign customers and central offices in a variety of combinations  The demarcation points of the Network shall be coincident with the WinStar customer demarcation points  It is anticipated that the Network will include

---

Supply Agreement

3

Confidential – WinStar/Lucent

CONFIDENTIAL I/C 0007090

domestic intra city networks inter city networks international networks and international intra city networks

(bb)    Network Architecture means the overall design and architecture specification for the Network including sizing and engineering requirements from which the Network Technology is developed

(cc)    Network Element means any product or transport service necessary for the proper operation of the Network which will be set forth in the Network Technology

(dd)    Network Technology means the Deliverable developed from the Network Architecture by Lucent for review and approval by WinStar all as set forth in Schedule A that identifies the Product and transport specifications for implementation as part of the City Specific Plans

(ee)    Nonconformity has the meaning set forth in Schedule E

(ff)    Out of Pocket Expenses means reasonable and actual out of pocket expenses incurred by a Party but not including that Party s overhead costs (or allocations thereof) administrative expenses or other mark ups

(gg)    Party and Parties has the meaning set forth in the preamble to this Agreement

(hh)    Product means Lucent Products and Third Party Products

(ii)    Purchase Order has the meaning specified in Section 4 1(a)

(jj)    Required Consents means such third party consents with regard to Third Party Products or other items as may be required for Lucent s provision of Services and Deliverables

(kk)    Service means the services provided by Lucent pursuant to this Agreement and (i) described in any Purchase Order or (ii) not specifically described in a Purchase Order but implied by or required for the proper performance and provision of services included in a Purchase Order As of the Effective Date the Services that WinStar may purchase from Lucent include those services identified as such in Schedule A subject to the Transition Plan specified therein as well as those services described in Schedule G

(ll)    Software means software including applicable documentation that may be licensed by WinStar from Lucent under this Agreement or that is developed by Lucent as a Deliverable pursuant to this Agreement

(mm)    Source Code means both machine readable and human readable copies of Software consisting of instructions to be executed upon a computer in the language used by its programmers (i e prior to compilation or assembly) in a form in which the program logic of the Software is deducible by a human being fully commented and including all related flow diagrams and all other

CONFIDENTIAL I/C 0007091

1 2　　**Other Terms**

Other terms used in this Agreement are defined in the context in which they are used and have the meanings there indicated

2　　**SCOPE AND STRUCTURE**

2 1　　**General**

(a)　This Agreement sets forth the general terms and conditions under which WinStar may purchase and receive Deliverables and Services from Lucent and financing the Network related Third Party Products and services purchased directly by WinStar

(b)　This Agreement is being made and entered into with reference to the following

(i)　It is WinStar s objective to engage Lucent to design and implement a Best of Breed nationwide and global communications Network

(ii)　By entering into this Agreement WinStar and Lucent desire to leverage Lucent s core competencies in both products and services in designing and implementing the Best of Breed Network and

(iii)　Lucent desire to provide such products and services and provide the requisite financing to enable WinStar and Lucent to achieve this mutual objective

(c)　The Parties acknowledge that this Agreement does not grant to Lucent an exclusive privilege to sell or otherwise provide to WinStar any or all of the Deliverables or Services of the type described in this Agreement WinStar may contract with other manufacturers and suppliers for the procurement of comparable equipment software systems deliverables or services Lucent is not restricted from selling the types of products or services that may be purchased and ordered by WinStar her under to other parties except as provided in Section 9 2

2 2　　**Other Entities**

(a)　As of the Effective Date Lucent shall provide Deliverables and Services to WinStar and any WinStar Affiliates designated by WinStar from time to time in its sole discretion For the purposes of this Agreement Deliverables and Services provided to WinStar s Affiliates shall be deemed to be Deliverables and Services provided to WinStar and WinStar s Affiliates shall be entitled to the rights of WinStar hereunder with respect to Deliverables and Services purchased by such Affiliates Payment for Deliverables and Services to Affiliates either will be guaranteed by WinStar or may be conditioned upon the Affiliates ability to pay

---

CONFIDENTIAL I/C 0007093

(b)     Except as may be otherwise provided by the terms and conditions of the Credit Agreement WinStar shall have the right to assign transfer sell alienate lease or sublicense Lucent Products to third parties in conjunction with (i) the disposal of such Products (ii) Customer Colocations involving such Products or (iii) Customer Virtual Colocations involving such Products and pass through to such third parties the rights (and the applicable warranty exclusions) granted to WinStar under this Agreement that are applicable to such Lucent Products subject to the following

(i)     Each third party shall agree in writing that its license for any Software to which Lucent maintains title under this Agreement is revocable by Lucent in the event such third party materially breaches the licensing restrictions imposed upon WinStar under this Agreement pursuant to Section 9 1

(ii)    Each such third party shall agree in writing to confidentiality terms and conditions substantially similar to those set forth in Article 13  and

(iii)   With respect to rights granted to WinStar under Article 14 and passed through to such third parties  the Parties will agree upon a reasonable means of administering Lucent s fulfillment of its obligations with respect to such rights

Where WinStar substantially complies with the obligations set forth above WinStar shall have no liability to Lucent for any action or omission of such third parties except for providing Lucent reasonable assistance in bringing claims as against the third party for reasonable claims

(c)     The Parties will proactively pursue entering into mutual value added reseller or similar relationships as business needs dictate  Such relationships may also include co marketing activities where Lucent would also sell WinStar products in conjunction with Lucent products

2 3     Strategic Relationship

(a)     Best of Breed Commitment and Preferred Supplier Status   The Parties agree that a critical component of the Parties success in working together under this Agreement is sharing in the following objectives and commitments (i) the Network and associated services will be Best of Breed  and (ii) subject to the Parties following the Best of Breed selection process set forth in Schedule H Lucent will be WinStar s preferred supplier to the extent Best of Breed Network Elements exist from Lucent  Consistent with this mutual objective and commitment  Lucent understands that as part of the Best of Breed analysis and subsequent recommendation  some of the recommended Network Elements and services may consist of Third Party Products and services  even where Lucent has a competing product and service

(b)     Preferred Customer Status  In consideration of WinStar's agreement to treat Lucent as a preferred supplier  Lucent agrees to treat WinStar as a preferred

CONFIDENTIAL I/C  0007094

customer  This preferred customer status shall include providing WinStar with any preferential treatment that Lucent may provide to its other significant customers including expediting orders  providing access to new technologies competitive pricing and discounts  invitations to Lucent run conferences customer events and educational activities (including finance related educational events Lucent may provide)  and potential business referrals  Nothing herein will require Lucent to violate any of its existing agreements

(c) **Lucent provided Roof Rights and Building Access**  If requested by WinStar Lucent shall grant to WinStar  at no cost  roof and interior space and conduit rights to buildings for which Lucent can obtain or has such rights pursuant to industry standard terms  In addition  Lucent shall assist WinStar in obtaining such rights with respect to any other buildings leased or occupied by Lucent Nothing herein shall obligate Lucent to violate any of its existing real property lease agreements  Within ninety (90) days of the Effective Date and semi annually thereafter  Lucent shall provide WinStar with a written list of all addresses of current real estate properties owned  leased or otherwise occupied by Lucent

(d) **Mutual Marketing Support**  The Parties will provide reasonable marketing support to the each other in connection with the Network and associated business opportunities of each Party  This shall include WinStars ability to use  subject to Section 20 12 and Schedule K  the Lucent name  logos and service marks (including use of the  Bell Labs  and  Bell Laboratories  names  logos and service marks in the same manner that Lucent uses such names  logos and service marks) in WinStar advertising and marketing materials  Lucent will credit to an account of WinStar on an annual basis one quarter of one percent of the total purchase price for Lucent Products and Services during the previous Contract Year  Said credit will be accrued by Lucent and utilized for co-branding and co marketing activities related to promoting WinStar in the marketplace

(e) **Technology Summit**  Semiannually after the Effective Date and during the Term  the Parties shall meet to discuss their plans and objectives with respect to the development and deployment of new network related solutions  As part of such discussion (i) WinStar shall share with Lucent its plans for potential future service offerings  potential market demand and anticipated product needs and (ii) Lucent shall share with WinStar its plans regarding product enhancements and evaluations as well as new products under development

(f) **Lucent Lab/Testing Facilities**  Lucent shall provide the testing and lab facilities as provided in Schedule A and Exhibit C 6

(g) **Demonstration Products**  From time to time and at WinStars reasonable request  Lucent  shall  at no charge  provide WinStar with limited quantities of Lucent Products not previously introduced to the market generally by Lucent for the purpose of WinStars evaluation (or demonstration) for a trial period

CONFIDENTIAL  I/C  0007095

3    TERM

3 1    Init al Term and Extension

The term of this Agreement shall begin upon the Effective Date and shall continue for a period of five years  unless terminated earlier or extended in accordance with this Agreement (the  Term  )  Upon giving written notice to Lucent no less than thirty (30) days prior to the then existing expiration date of this Agreement, WinStar shall have the right to extend the Term of this Agreement for additional one (1) year periods on the terms and conditions then in effect  provided  however  that Lucent reserves the right to renegotiate the pricing set forth in Schedule C of this Agreement subject to Section 3 2

3 2    Interim Extension

In the event that WinStar provides notice to Lucent pursuant to Section 3 1 of its desire to extend the Term  and Lucent exercises its right to renegotiate pricing as described in Section 3 1  the Term of this Agreement shall be deemed extended upon the terms and conditions then in effect (including with respect to the pricing set forth in Schedule C) for any period of time during which the Parties are renegotiating such pricing  In the event that such renegotiation terminates in an agreement between the Parties with respect to Schedule C pricing  the Term shall be extended pursuant to Section 3 1  and such agreement between the Parties will apply retroactively beginning upon the immediately prior expiration of the Term  In the event that such renegotiation terminates without an agreement between the Parties with respect to Schedule C pricing  this Agreement shall expire upon such termination of renegotiations

4    PURCHASING AND ORDERING

4 1    Purchase Orders

(a)    All purchases of Deliverables or Services shall be made by means of orders (each a  Purchase Order  ) issued by WinStar to Lucent from time to time pursuant to this Section  unless otherwise expressly agreed by the Parties in writing  WinStar will not be liable to Lucent for any charges  additional or otherwise  for Deliverables or Services provided by Lucent unless set forth in a Purchase Order  or otherwise mutually agreed upon by the Parties in writing

(b)    Lucent agrees to provide and deliver  and WinStar agrees to purchase

(i)    Any Deliverable or Service listed in a Schedule hereto that is specified by WinStar in a Purchase Order that conforms to Subsection (e) of this Section  and

(ii)    Any other Deliverable or Service specified by WinStar in a Purchase Order that conforms to Subsection (e) of this Section and is accepted by Lucent

(c)    With respect to any Purchase Order that is either consistent with (i) the requirements of a City Specific Plan  or (ii) Lucent s ordering intervals set forth

---

Supply Agreement

10

in Schedule C for the Products identified therein or Lucent's standard ordering intervals for any other Products then Lucent shall be deemed to have accepted a Purchase Order immediately upon receipt of such Purchase Order Otherwise Lucent shall be deemed to have accepted a Purchase Order on the tenth (10th) business day following receipt of such Purchase Order pursuant to Section 20 3 if Lucent has not notified WinStar in writing of its rejection of the Purchase Order pursuant to Section 20 3 prior to such time In the event of a disaster declared by WinStar Lucent will use commercially reasonable efforts to expedite the acceptance of any Purchase Orders that are submitted by WinStar as a means of mitigating the adverse effects to WinStar of such disaster provided however that the terms and conditions of Section 4 3(c) shall not apply to such Purchase Order

(d)    Estimates or forecasts furnished by WinStar to Lucent shall not constitute Purchase Orders or commitments for purchases

(e)    Purchase Orders placed under this Agreement may be made by means of mail or fax pursuant to Section 20 3 or upon mutual agreement of the Parties electronic data interchange No Purchase Order or other ordering document which would otherwise modify or supplement this Agreement or any Schedule shall add to or vary the terms of this Agreement All such proposed variations or additions (whether submitted by either Party) are objected to and deemed material Each Purchase Order shall contain at a minimum the following information

(i)    The date of the Purchase Order

(ii)    A written reference to this Agreement

(iii)    Any applicable discounts as set forth in Schedule C

(iv)    With regard to Products

(1)    The quantity and a brief written description of each Product ordered including any applicable part accessory or product number

(2)    The unit price of each Product ordered calculated pursuant to this Agreement as well as subtotals and Purchase Order totals for Products and

(3)    The required delivery date and place

(v)    With regard to other Deliverables or Services

(1)    The quantity and a brief written description of each Service ordered

(2)    The price of each Service ordered (e g applicable rates or fixed fees) calculated pursuant to this Agreement as well as subtotals and Purchase Order totals for Services

---

Supply Agreement

Confidential – WinStar/Lucent

CONFIDENTIAL  WC 0007098

(3)    In the case of a Deliverable the required delivery date and in the case of a Service the required performance date or dates and

(4)    In the case of a Deliverable the required place of delivery and in the case of a Service the required place of performance

(f)    With respect Third Party Products provided by Lucent pursuant to this Agreement Lucent shall

(i)    Use commercially reasonable efforts to effect a formal original equipment manufacturer ( OEM ) or similar relationship with the third party sellers manufacturers lessors or licensors of such Third Party Products that is consistent with Lucent s then-current OEM policies and standards and

(ii)    To the extent Lucent does not have an OEM or similar relationship with the third party sellers manufactures lessors or licensors of such Third Party Product (1) pass through to WinStar the benefits of any rights and remedies it has with respect to such Third Party Products to the extent that Lucent is able pursuant to any agreements between Lucent and the third party sellers manufacturers lessors or licensors of such Third Party Products and enforce such warranties and indemnities on behalf of WinStar as directed by WinStar and (2) use commercially reasonable efforts to obtain terms and conditions that are favorable to WinStar

4 2    **Administrative Changes**

Lucent will notify WinStar at least thirty (30) calendar days in advance of any administrative changes with respect to any Product set forth in Schedule A or previously provided by Lucent to WinStar such as changes in product part numbers or descriptions as well as newly compatible products or components

4 3    **Timing of Delivery**

(a)    Delivery dates for Deliverables and Services shall be firm  Lucent will deliver Deliverables and Services strictly in accordance with the terms and conditions of this Agreement

(b)    If Lucent discovers any potential delay that threatens the timely delivery or the full delivery of Deliverables or Services with respect to a Purchase Order Lucent shall immediately notify WinStar of such delay  If requested by WinStar Lucent shall provide a written plan for correction of such delay

(c)    Subject to Sections 4 1(c) 10 2 and 16 3 if Lucent fails to deliver such Deliverable or Services in accordance with the scheduled delivery or performance date set forth in the corresponding Purchase Order then after five (5) business days following the scheduled delivery or performance date WinStar

---

Confidential – WinStar/Lucent

CONFIDENTIAL VC 0007099

(ii)    Verify that bills of lading match corresponding shipping invoices  and

(iii)   Forward applicable bills of lading and shipping notices with items shipped

(d)     All shipments will be F O B  destination  unless otherwise agreed in writing by WinStar  WinStar will reimburse Lucent for actual  reasonable freight and insurance costs on an Out of Pocket expenses basis  provided  however that upon reasonable request by WinStar  Lucent substantiates such costs by providing WinStar with freight bills or other written documentation that adequately verifies such charges  Lucent will ship all items by means of a common carrier or carriers designated by WinStar

## 5 7    Title and Risk of Loss

Risk of loss and title to any item shipped to WinStar will pass to WinStar upon delivery into the interior of the WinStar destination facility or as otherwise specified in writing by WinStar  WinStar will notify Lucent as soon as reasonably practicable of any claim with respect to loss which occurs while Lucent has the risk of loss and shall provide reasonable cooperation to facilitate the settlement of any claim

## 6    DELIVERY OF SERVICES

### 6 1    Transition/Ramp up of Lucent Service Capabilities

(a)    Subject to the Transition Plan  Lucent shall perform the Services ordered by WinStar hereunder

(b)    If Lucent fails to achieve the transition on or before the completion date as set forth in the Transition Plan for reasons other than the wrongful actions of WinStar  then Lucent shall pay WinStar for additional Out of Pocket Expenses incurred by WinStar as a result of such failure

### 6 2    Use of Third Parties

(a)    Lucent shall not subcontract any of its obligations under this Agreement  without WinStar s prior written consent  which shall not be unreasonably withheld  WinStar shall have the right to revoke its prior approval of a subcontractor and direct Lucent to replace such subcontractor if (i) the subcontractor s performance is deficient (ii) there have been misrepresentations by or concerning the subcontractor  or (iii) good faith doubts exist concerning the subcontractor s ability to render future performance because of changes to the subcontractor s ownership  personnel  management  financial condition  or otherwise

(b)    Lucent will remain responsible for obligations performed by its subcontractors to the same extent as if such obligations were performed by Lucent employees  Lucent shall be WinStar s so e point of contact regarding Deliverables and Services provided by such subcontractors  including with respect to payment  Lucent will not disclose Confidential Information of WinStar to a subcontractor

---

CONFIDENTIAL  WC 0007104

claim arising out of a form or return signed by a Party to this Agreement such
Party shall have the right to elect to control the response to and settlement of the
claim but the other Party shall have all rights to participate in the responses and
settlements that are appropriate to its potential responsibilities or liabilities If
WinStar requests Lucent to challenge th imposition of any tax WinStar shall
reimburse Lucent for the reasonable legal fees and expenses it incurs WinStar
shall be entitled to any tax refunds or rebates granted to the extent such refunds
or rebates are of taxes that were paid by WinStar

11 3    Financing

(a)    Lucent shall provide WinStar financing in accordance with the Credit
       Agreement and otherwise in accordance with the terms of this Agreement

(b)    Lucent agrees to provide financing (subject to the terms and conditions set forth
       in the Credit Agreement) for all Lucent Products and Services purchased by
       WinStar under this Agreement plus up to $2 600 000 per Contract Year for
       amounts dra vn down for WinStar provided RF engineering (with any excess and
       any other WinStar provided products and services to be treated as Other
       Products and Services as defined below) (collectively the  Lucent Content )
       Lucent also agrees to provide financing for non Lucent Products and services
       associated with the Network ( Other Products and Services )  subject to the
       following annual total financing percentage limitations set forth below  For
       purposes of this Subsection (b) the following definitions shall apply  (1)
       Contract Year  shall refer to each year of the Term of this Agreement  with the
       initial Contract Year commencing on the Effective Date (2)  Total Contract
       Year Draw Down  shall refer to the total dollar amount drawn down by WinStar
       under the Credit Agreement during a Contract Year  and (3)  Total Surcharge
       Amount  for each Contract Year shall equal a total of U S  $3 000 000

       (i)     WinStar may use up to thirty five percent (35%) of the Total Contract
               Year Draw Down during the first Contract Year for Other Products and
               Services  During each of the second  third  fourth and fifth Contract
               Years /each  a  Subsequent Contract Year )  WinStar may use up to
               thirty percent (30%) of the Total Contract Year Draw Down for Other
               Products and Services

       (ii)    At the end of each Contract Year  Lucent shall provide for WinStar s
               review and subject to WinStar s confirmation  a reconciliation statement
               that specifies the percentage of the Total Contract Year Draw Down that
               was used for Lucent Content and for Other Products and Services and
               the amount of the Total Surcharge Amount that is due Lucent  if any
               based upon the following

               (1)     If the actual percentage for Other Products and Services is less
                       or equal to thirty percent (30%) for the First Contract Year and
                       less than or equal to twenty five percent (25%) during any
                       Subsequent Contract Year as the case may be  there will be no

---

CONFIDENTIAL I/C 0007113

portion of the Total Surcharge Amour due and payable by WinStar

(2)  Where the actual percentage for Other Products and Services exceeds thirty percent (30%) in the First Contract Year or exceeds twenty five percent (25%) in Subsequent Contract Year as the case may be the portion of the Total Surcharge Amount due and payable by WinStar shall be an amount equal to six thousand dollars (U S $6 000) per each one hundredth of a percentage (1/100%) in excess of thirty percent (30%) for the First Contract Year and twenty five percent (25%) in a Subsequent Contract Year but in each case no greater than the Total Surcharge Amount

(c)  Subject to the terms set forth in Subsection (b) above this Agreement and the Credit Agreement Lucent shall provide financing and act as the paying agent for any such other invoices for non Lucent Products and services (e g Thi d Party Product and third party and WinStar provided services) delivered to Lucent by WinStar Lucent shall pay all uch delivered invoices in accordance with the payment terms set forth on such invoice or as otherwise directed by WinStar

(d)  Lucent shall continue to provide WinStar with financing for Deliverables and Services during the Disengagement Period as described in Section 15 4(a) subject to the terms set forth in Subsection (b) above

(e)  Should WinStar acquire any significant interest in any company to which Lucent is currently providing financing pursuant to an independent contractual agreement Lucent hereby consents and agrees at no cost to WinStar for such consent to continue to honor such contractual agreement if all the terms and conditions of such agreement other than change in ownership are met under WinStar s acquisition of such significant interest

11 4  Incidental Expenses

(a)  Lucent acknowledges that except as provided in Subsection (b) of this Section expenses that Lucent expects to incur in performing under this Agreement (including document reproduction and long distance telephone) are included in Lucent s charges under in this Agreement Accordingly such Lucent expenses are not separately reimbursable by WinStar unless on a case by case basis for unusual expenses WinStar has agreed in advance and in writing to reimburse Lucent for the expense

(b)  WinStar will reimburse Lucent for the verifiable travel and travel related Out of Pocket Expenses incurred by Lucent that are necessary to provide the Services to the extent that such Out of Pocket Expenses are consistent with WinStar s expense policies provided that Lucent obtains WinStar's consent in advance of incurring any such expenses

---

CONFIDENTIAL I/C 0007114

(c)    Attending regularly scheduled progress reviews with appropriate WinStar personnel to communicate project status and resolve issues in cooperation with WinStar

3 2    **City Implementation Planning**

(a)    WinStar will develop and provide to Lucent a roll out schedule that among other things indicates cities in which WinStar will commence offering services the scope of those services budget scope target markets (buildings to be targeted) and timeframes

(b)    Lucent will develop and submit City Specific Project Plans for WinStar s review and potential approval Each such City Specific Project Plan will be based upon the corresponding city specific Network Architecture and Network Technology plans and will include specific disaster recovery and back out procedures The City Specific Plans will schedule and detail each of the responsibilities set forth in the matrix in Exhibit A 3 as applicable to the particular city (i e for augmentation of existing cities only a subset will be applicable) Lucent will also take into account WinStar input regarding WinStar functions (e g site acquisition regulatory compliance numbering/dial plans ILEC facilities negotiation and build out of common space at the customer building) The City Specific Project Plans will be updated as responsibilities are completed and Network Elements are implemented so as to incorporate developing best practices Best of Breed solutions and issue resolution

3 3    **Transition Planning**

(a)    Except as otherwise specified in Exhibit A 4 within forty five (45) days after the Effective Date Lucent will develop a transition plan with WinStar s input review and potential approval consistent with the matrices set forth in Exhibits A 1 and A 3 provided however Lucent will develop a transition plan with WinStar s input review and potential approval for Network Engineering/Traffic Engineering within fifteen (15) days of the Effective Date This plan will address transfer of responsibility for network architecture and technology planning services program management testing and implementation The transition plan will identify and schedule Lucent assumption of responsibility based upon the following prerequisites

(i)    Lucent core competency and Best of Breed decisions (e g Lucent RF engineering and radio and data products respectively)

(ii)    Understanding (detail) of WinStar expectations

(iii)–    Lucent s evolving core-competencies and

(iv)    A joint (Lucent and WinStar) development of appropriate business processes to transition those responsibilities which will include a process for positive acknowledgement of responsibility transfer

---

CONFIDENTIAL I/C 0007152

(b)     The Parties intend that certain functions such as those that as of the Effective Date are performed by WinStar s Engineering and Network Construction & Deployment departments although not currently within Lucent s core competence will be assumed by Lucent during the Term

(c)     Certain functions although necessary to the implementation of the Network will remain WinStar s responsibility This includes site acquisition regulatory compliance numbering/dial plans ILEC facilities negotiation build out of common space at the customer building and management of business relationships with WinStar customers

(d)     WinStar and Lucent agree to providing the required subject matter expertise time and resources required to complete the transition plan on schedule

4     **Testing**

4 1     **Test Beds**

(a)     Test Facilities Lucent will develop and maintain test facilities to support the test and acceptance process necessary to drive the technical evaluation and selection set forth in this Section ( Test Facilities )

(i)     The Test Facilities will include a functional replica of the Network environment including each Network Element to be implemented per the Network design At no additional cost to WinStar Lucent will provide WinStar with at least one of each Lucent Product purchased by WinStar for implementation into the Test Facilities Title in all such Test Facilities Network Elements shall vest in WinStar and WinStar shall be entitled to continue to use such Elements in its Test Facilities following termination or expiration of the Agreement The Test Facilities must be adequate to support the following types of network testing

(1)     End to end integration testing

(2)     Network topology changes

(3)     Integration testing of new/individual Network Elements within the existing Network (including Lucent Products and Third Party Products) and with the OSS/BSS

(4)     Integration testing of WinStar customer CPE and network applications within the then current Network

(5)     Performance load and stress testing

(6)     Trouble/fault isolation

(7)     Year 2000 compliance testing and

---

CONFIDENTIAL I/C 0007153

# ROA
# TAB
# 507

# Second Credit Agreement
## *See* Lucent Appendix
## Volume II

# ROA
# TAB
# 510

EXECUTION COPY

SECURITY AGREEMENT dated as of May 9 2000 between WVF-I LLC a Delaware limited liability company (the "Grantor"), and BANK OF NEW YORK, as collateral agent (in such capacity, the "Collateral Agent") for the Secured Parties, as defined herein

Reference is made to the Credit Agreement dated as of May 4 2000 (as amended or modified from time to time the "Credit Agreement") among the Grantor as borrower thereunder any other borrowers thereunder from time to time party thereto Winstar Communications, Inc , the lenders party thereto, the Collateral Agent and Lucent Technologies Inc , as administrative agent   The Grantor is a Borrower under the Credit Agreement   The Lenders have agreed to extend credit to the Grantor and any other Borrowers pursuant to  and subject to the terms and conditions specified in  the Credit Agreement   The obligations of the Lenders to extend credit under the Credit Agreement are conditioned upon  among other things  the execution and delivery by the Grantor of a security agreement in the form hereof to secure (a) the due and punctual payment by each Borrower of (i) the principal of and interest on the Loans when and as due, whether at maturity, by acceleration  upon one or more dates set for prepayment or otherwise, and (ii) all other monetary obligations of each Borrower to the Secured Parties under the Credit Agreement, and (b) the due and punctual performance of all other obligations of each Borrower to the Secured Parties under the Credit Agreement and the other Loan Documents (all the foregoing obligations being collectively called the "Obligations")

Accordingly  the Grantor and the Collateral Agent hereby agree as follows

## ARTICLE I

### Definitions

SECTION 1 01   Terms Defined in the Credit Agreement   Terms used herein and not otherwise defined herein shall have the meanings set forth in the Credit Agreement

SECTION 1 02   Definition of Certain Terms Used Herein   As used herein, the following terms shall have the following meanings

[NYCorp 1060194 9 43050 05/05/2000  ( 0^p]

DEFENDANT'S
EXHIBIT
32

CONFIDENTIAL                    LWI  00003847

2

"Collateral" shall mean all (a) Equipment,
(b) General Intangibles (but excluding General Intangibles
to the extent that an assignment thereof would violate a
restriction on assignment contained therein), and
(c) Proceeds

"Credit Agreement" shall have the meaning assigned
to such term in the preliminary statement of this Agreement

"Equipment" shall mean all equipment, furniture
and furnishings, and all tangible personal property similar
to any of the foregoing  including tools  parts and supplies
of every kind and description, and all improvements,
accessions or appurtenances thereto, in each case that are
now owned or hereafter acquired by the Grantor   The term
Equipment shall also include Fixtures

"Fixtures  shall mean all items of Equipment,
whether now owned or hereafter acquired  of the Grantor that
become so related to particular real estate that an interest
in them arises under any real estate law applicable thereto

"General Intangibles" shall mean all choses in
action and causes of action and all other assignable
intangible personal property of the Grantor of every kind
and nature now owned or hereafter acquired by the Grantor,
including the Grantor's rights under the Supply Agreement
and all intellectual property acquired by or granted to the
Grantor pursuant to the Supply Agreement

"Obligations" shall have the meaning assigned to
such term in the preliminary statement of this Agreement

"Proceeds" shall mean any consideration received
from the sale  exchange, license, lease or other disposition
of an, asset which constitutes Collateral  including any
payment received from any insurer or other Person as a
result of the destruction  loss, theft, damage or other
involuntary conversion of whatever nature of any asset which
constitutes Collateral, and shall include any and all other
amounts from time to time paid or payable under or in
connection with any of the Collateral

'Secured Parties" shall mean (a) the Lenders,
(b) the Administrative Agent and the Collateral Agent, in
their capacities as such under each Loan Document and
(c) the successors and assigns of the foregoing

"Security Interest" shall have the meaning
assigned to such term in Section 2 01

[DTCorp:1060191 9 4305B 05/05/ 000  4 07p]

CONFIDENTIAL            LWI  00003848

3

SECTION 1 03    <u>Rules of Interpretation</u>    The rules of interpretation specified in Section 1 03 of the Credit Agreement shall be applicable to this Agreement

ARTICLE II

<u>Security Interest</u>

SECTION 2 01    <u>Security Interest</u>    As security for the payment or performance  as the case may be, in full of the Obligations, the Grantor hereby bargains, sells, conveys assigns sets over, mortgages pledges, hypothecates and transfers to the Collateral Agent, its successors and assigns  for the benefit of the Secured Parties and hereby grants to the Collateral Agent, its successors and assigns, for the benefit of the Secured Parties a security interest in  all of the Grantor s right title and interest in, to and under the Collateral (the '<u>Security Interest</u>")    Without limiting the foregoing  the Collateral Agent is hereby authorized to file one or more financing statements (including fixture filings, but only to the extent such fixture filings are required pursuant to Section 5 14(c) of the Credit Agreement (the "<u>Fixture Filings</u> )), continuation statements or other documents for the purpose of perfecting  confirming  continuing, enforcing or protecting the Security Interest granted by the Grantor without the signature of the Grantor  and naming the Grantor as debtor and the Collateral Agent as secured party

SECTION 2 02    <u>No Assumption of Liability</u>    The Security Interest is granted as security only and shall not subject the Collateral Agent or any other Secured Party to, or in any way alter or modify  any obligation or liability of the Grantor with respect to or arising out of any of the Collateral

ARTICLE III

<u>Representations and Warranties</u>

The Grantor represents and warrants to the Collateral Agent and the Secured Parties that

SECTION 3 01    <u>Title and Authority</u>    The Grantor has good and valid rights in and title to the Collateral and has full power and authority to grant to the Collateral Agent the Security Interest in the Collateral pursuant hereto and to execute  deliver and perform its obligations in accordance with the terms of this Agreement, without the

[NYCorp,1060194 9 43050 05/05/2000  4 07p]

CONFIDENTIAL        LWI   00003849