# ROA
# TAB
# 524

FORM B10 (Official For 10) (4/01)

| UNITED STATES BANKRUPTCY COURT DISTRICT OF DELAWARE | | PROOF OF CLAIM |
|---|---|---|

Name of Debtor   Winstar Communications Inc

Case Number  01-01430 (JJF)

NOTE  This form should not be used to make a claim for an administrative expense arising after the commencement of the case  A "report" for payment of an administrative expense may be filed pursuant to 11 U S C § 503

Name of Creditor (The person or other entity to whom the debtor owes money or property)  Lucent Technologies Inc  and its affiliates

☐ Check bo anyone e claim rel Attach co particulars

Name and address where notices should be sent
Lucent Technologies Inc
Attn  Thomas M O Hara  Esq.
600-700 Mountain Ave.
Murray Hill  NJ  07974-0636
Telephone number  (908) 582 8500

Jones Day Reavis & Pogue
Attn  Richard M Cieri Esq
North Point 901 Lakeside Ave
Cleveland, Ohio 44114-1190
(216) 586 3939

☐ Check bo received bankruptcy court in this case.
X Check box if the address differs from the address on the envelope sent to you by the court

WINSTAR COMMUNICATION ET AL
01 1430 (JJF)        0000002019

THIS SPACE IS FOR COURT USE ONLY

Account or other number by which creditor identified debtor
See Exhibit A

Check here
if this claim  ☐ replaces      a previously filed claim  dated _____
              ☐ amends

| 1  Basis for Claim | |
|---|---|
| X   Goods sold | ☐  Retiree benefits as defined in 11 U S C § 1114(a) |
| X   Services performed | ☐  Wages  salaries  and compensation (fill out below) |
| X   Money loaned (and related claims) | Your SS # ____ ____ ____ |
| ☐  Personal injury/wrongful death | Unpaid compensation for services performed |
| ☐  Taxes | from _____ to _____ |
| X   Other   (See Exhibit A) | (date)                 (date) |

2   Date debt was incurred  5/4/2000

3   If court judgment, date obtained

4   Total Amount of Claim at Time Case Filed        An amount not less than $799 060,301 68 plus certain unliquidated amounts (an itemized statement of this claim is attached hereto as Exhibit A)
If all or part of your claim is secured or entitled to priority  also complete Item 5 or 6 below
X  Check this box if claim includes interest or other charges in addition to the principal amount of the claim  Attach itemized statement of all interest or additional charges

5   Secured Claim
X  Check this box if your claim is secured by collateral (including a right of setoff)
Brief Description of Collateral
☐  Real Estate        ☐  Motor Vehicle
        X  Other  See Exhibit B
Value of Collateral   In excess of dollar amount of claims

Amount of arrearage and other charges at time case filed included in secured claims if any  An amount not less than $766,489,553 80 plus certain unliquidated amounts

6   Unsecured Priority Claim
☐  Check this box if you have an unsecured priority claim
Amount entitled to priority $ _____
Specify the priority of the claim
☐  Wages, salaries, or commissions (up to $4 650), earned with 90 days before filing of the bankruptcy petition or cessation of the debtor s business whichever is earlier  11 U S C § 507(a)(3)
☐  Contribution to an employee benefit plan – 11 U S C § 407(a)(4)
☐  Up to $2 100  of deposits toward purchase  lease or rental of property  services for personal, family or household use – 11 U S C § 507(a)(6)
☐  Alimony, maintenance, or support owed to spouse, former spouse, or child – 11 U S C § 507(a)(7)
☐  Taxes or penalties owed to governmental units  11 U S C § 507(a)(8)
☐  Other – Specify applicable paragraph of 11 U S C § 507(a)(___)
Amounts are subject to adjustment on 4/1/04 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment

7   Credits  The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim

8   Supporting Documents  Attach copies of supporting documents  such as promissory notes  purchase orders  invoices  itemized statements of running accounts  contracts  court judgments, mortgages, security agreements  and evidence of perfection of lien  DO NOT SEND ORIGINAL DOCUMENTS  If the documents are not available  explain  If the documents are voluminous  attach a summary

9   Date Stamped Copy  To received an acknowledgment of the filing of your claim  enclose a stamped  self addressed envelope and copy of this proof of claim

THIS SPACE IS FOR COURT USE ONLY

FILED / RECEIVED

OCT 15 2001

BANKRUPTCY SERVICES LLC

| Date 10/11/01 | Sign and print the name and title  if any  of the creditor or other person authorized to file this claim (attach copy of power of attorney  if any)  On behalf of Lucent Technologies Inc  and its affiliates   _Lucinda Sabrian, Manager Director_ |
|---|---|

Penalty for presenting fraudulent claim  Fine of up to $500 000 or imprisonment for up to 5 years  or both  18 U S C §§ 152 and 3571

DEFENDANT'S EXHIBIT
46

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In particular types of cases or circumstances such as bankruptcy cases that are not filed voluntarily by a debtor there may be exceptions to these general rules.*

## — DEFINITIONS —

**Debtor**

The person, corporation or other entity that has filed a bankruptcy case is called the debtor

**Creditor**

A creditor is any person corporation, or other entity to whom the debtor owed a debt on the date that the bankruptcy case was filed.

**Proof of Claim**

A form telling the bankruptcy court how much the debtor owed a creditor at the time the bankruptcy case was filed (the amount of the creditor's claim) This form must be filed with the clerk of the bankruptcy court where the bankruptcy case was filed.

**Secured Claim**

A claim is a secured claim to the extent that the creditor has a lien on property of the debtor (collateral) that gives the creditor the right to be paid from that property before creditors who do not have liens on the property

Examples of liens are a mortgage on real estate and a security interest in a car, truck, boat, television set or other item of property  A lien may have been obtained through a court proceeding before the bankruptcy case began  in some states a court judgment is a lien.  In addition, to the extent a creditor also owes money to the debtor (has a right of setoff) the creditor's claim may be a secured claim. (See also *Unsecured Claim* )

**Unsecured Claim**

If a claim is not a secured claim it is an unsecured claim. A claim may be partly secured and partly unsecured if the property on which a creditor has a lien is not worth enough to pay the creditor in full.

**Unsecured Priority Claim**

Certain types of unsecured claims are given priority  so they are to be paid in bankruptcy cases before most other unsecured creditors (if there is sufficient money or property available to pay these claims)  The most common types of priority claims are listed on the proof of claim form.  Unsecured claims that are not specifically given priority status by the bankruptcy laws are classified as *Unsecured Nonpriority Claims*

## Items to be completed in Proof of Claim form (if not already filled in)

**Court, Name of Debtor  and Case Number**
Fill in the name of the federal judicial district where the bankruptcy case was filed (for example  Central District of California)  the name of the debtor in the bankruptcy case and the bankruptcy case number  If you received a notice of the case from the court, all of this information is near the top of the notice

**Information about Creditor**
Complete the section giving the name, address  and telephone number of the creditor to whom the debtor owes money or property  and the debtor's account number if any  If anyone else has already filed a proof of claim relating to this debt, if you never received notices from the bankruptcy court about this case if your address differs from that to which the court sent notice  or if this proof of claim replaces or changes a proof of claim that was already filed, check the appropriate box on the form.

**1  Basis for Claim**
Check the type of debt for which the proof of claim is being filed  If the type of debt is not listed, check "Other" and briefly described the type of debt.  If you were an employee of the debtor  fill in your social security number and the dates of work for which you were not paid.

**2  Date Debt Incurred**
Fill in the date when the debt first was owned by the debtor

**3  Court Judgments**
If you have a court judgment for this debt, state the date the court entered the judgment.

**4  Total Amount of Claim at Time Case Filed**
Fill in the total amount of the entire claim.  If interest or other charges in addition to the principal amount of the claim are included, check the appropriate place on the form and attach an itemization of the interest and charges.

**5  Secured Claim**
Check the appropriate place if the claim is a secured claim.  You must state the type and value of property that is collateral for the claim, attach copies of the documentation of your lien, and state the amount past due on the claim as of the date the bankruptcy case was filed.  A claim may be partly secured and partly unsecured.  (See DEFINITIONS  above)

**6  Unsecured Priority Claim**
Check the appropriate place if you have an unsecured priority claim, and state the amount entitled to priority  (See DEFINITIONS  above)  A claim may be partly priority and partly nonpriority if for example, the claim is for more than the amount given priority by the law  Check the appropriate place to specify the type of priority claim

**7  Credits**
By signing this proof of claim  you are stating under oath that in calculating the amount of your claim you have given the debtor credit for all payments received from the debtor

**8  Supporting Documents**
You must attach to this proof of claim form copies of documents that show the debtor owes the debt claimed or  if the documents are too lengthy  a summary of those documents  If documents are not available  you must attach an explanation of why they are not available.

<u>Exhibit A</u>

Summary of Secured Claim of
Lucent Technologies Inc. (collectively with its affiliates, "Lucent")
Relating to the Lucent Credit Agreement

I    <u>Summary of Claim</u>

Prior to the date of the Debtor's bankruptcy filing, Lucent sold equipment and services to the Debtor and certain of its affiliates pursuant to the Lucent Supply Agreement (as such term is defined herein)  The Debtor and its affiliates financed their purchases of equipment and services from Lucent  as well as their purchases of certain equipment and services from third-party vendors  pursuant to the Lucent Credit Agreement (as such term is defined herein)  The secured claim asserted by Lucent herein arises under or relates to among other things, the Lucent Credit Agreement and related documents and agreements including the Lucent Supply Agreement, the Lucent Security Agreements  the Lucent Cash Collateral Agreements, the Lucent Guarantee Agreement, the Lucent Pledge Agreement (as such terms are defined herein) and certain UCC-1 Financing Statements [1] A breakdown of this secured claim is set forth at Tab A 1 [2]

II    <u>Supporting Documentation</u>

A summary of the documents supporting Lucent's secured claim is set forth at Tab A 2

---

[1]  Lucent was granted certain rights and remedies under the Lucent Credit Agreement  For instance  Lucent had the right to convert certain loans extended under the Lucent Credit Agreement to senior notes to be issued by Debtor Winstar Communications, Inc ("WCI "), pursuant to the Conversion Agreement executed between WCI and Lucent and the related indenture  Lucent hereby specifically reserves its rights in the future to assert and pursue its rights and remedies under the Lucent Credit Agreement and any and all related documents and agreements and to amend, modify or supplement this proof of claim to the extent necessary to assert such rights and remedies

[2]  The Debtors currently have possession of certain lab equipment in which Lucent holds all title  interests and rights, accordingly  the Debtors' estates do not have any interest in or right to the lab equipment.  The lab equipment is described on Exhibit A to the Stipulation and Agreed Order Resolving Motion of Secured Creditor Lucent Technologies Inc  for Relief from Automatic Stay or, Alternatively, Adequate Protection with Respect to Certain Investment and Disbursement Accounts (the "Stipulation and Agreed Order"), filed by the Debtors and Lucent on or about October 3, 2001  To the extent that the Debtors fail to turn over the lab equipment to Lucent, Lucent hereby reserves its rights to assert claims against the Debtors relating to the lab equipment and to amend, modify or supplement this proof of claim to incorporate such claims

III   Detailed Information Supporting Claim

    A    A summary of Lucent's claims under the Lucent Credit Agreement and related documents is set forth at **Tab A 3**

    B    A summary of the borrowing requests submitted under the Lucent Credit Agreement is set forth at **Tab A 4**

    C    A chart summarizing the UCC 1 Financing Statements filed by or on behalf of Lucent in connection with the Lucent Credit Agreement, the Lucent Security Agreements, the Lucent Cash Collateral Agreements and the Lucent Pledge Agreement is set forth at **Tab A 5**

IV   Reservation of Rights

    A    Lucent has used its best efforts in preparing this proof of claim based on the information currently available to it  To the extent that additional information becomes available or other claims come to its attention, Lucent hereby reserves its rights to amend  modify or supplement this proof of claim

    B    In addition to the documents and information provided herein to support Lucent's secured claim  Lucent also relies upon applicable law, including applicable federal  state and common law  and hereby reserves all of its rights thereunder

CL 620013v5                                         2

Tab A.1

Breakdown of Lucent's Secured Claim
Under the Lucent Credit Agreement

| Basis of Claim | Relevant Section of Lucent Credit Agreement | Amount |
|---|---|---|
| Principal | 2 01, 2 02 | $736,919,626.31 |
| Interest | 2 11, 2 12 | $47,471,506 32 |
| Fees | 2 10 | $10,208,734 32 |
| Expenses | 9 03(a) | $4,460,440 73 |
| Indemnity[1] | 9 03(b) | Unliquidated |
| Other Fees, Costs and Charges Due Under Lucent Credit Agreement[2] | | Unliquidated |
| TOTAL[3] | | $799,060,307 68 |

---

[1]    Although the amount of Lucent's indemnity claims under the Lucent Credit Agreement is not known at this time, Lucent hereby specifically reserves its rights to assert such claims and to amend, modify or supplement this proof of claim to reflect the amount of such claims

[2]    Although the amount of additional fees, costs and other charges due under the Lucent Credit Agreement is not known at this time  Lucent hereby specifically reserves its rights to assert such claims and to amend, modify or supplement this proof of claim to reflect the amount of such claims

[3]    On or about October 3, 2001, the Debtors and Lucent executed and filed the Stipulation and Agreed Order  The Stipulation and Agreed Order resolves, among other things, the parties' respective interests in and rights to certain Accounts (as such term is defined in Exhibit B attached hereto) and permits Lucent to apply a portion of the proceeds of the Accounts towards the payment of Lucent's secured claim against certain of the Debtors  As of the date of this proof of claim, however, the Stipulation and Agreed Order has not yet been entered by the Court  Accordingly, Lucent has not yet received or applied the proceeds of the Accounts to reduce its secured claim against certain of the Debtors

CL  620013v5

## Summary of Supporting Documentation

Because of the voluminous nature of the supporting documents, Lucent has not attached copies of such documents hereto  Lucent however, will provide copies of the Supporting Documents to any party in interest (i) upon request to its counsel, Jones, Day, Reavis & Pogue, and (ii) and subject to appropriate confidentiality restrictions acceptable to Lucent. Lucent believes that the Debtor has copies of all of the documents listed below

### Supporting Documents

- Credit Agreement dated May 4  2000, among WVF I LLC  Winstar Communications, Inc , The Bank of New York and Lucent Technologies Inc  (as amended and collectively with any schedules and exhibits thereto  the "Lucent Credit Agreement"), any amendments thereto and any and all related documents and agreements

- First Amendment to the Lucent Credit Agreement  dated June 23, 2000, among WVF-I LLC, Winstar Communications  Inc , The Bank of New York and Lucent Technologies Inc

- Acknowledgment dated June 20  2000  among WVF-I LLC  Winstar Network Expansion LLC  Winstar Communications  Inc  Lucent Technologies Inc  and The Bank of New York, as Administrative Agent and Collateral Agent for the lenders under that certain Revolving Credit and Term Loan Agreement, dated May 4, 2000

- Acknowledgment  dated December 22  2000, among WVF-LU2 LLC, Winstar Network Expansion LLC  Winstar Communications, Inc  Lucent Technologies Inc  and The Bank of New York, as Administrative Agent and Collateral Agent for the lenders under that certain Revolving Credit and Term Loan Agreement, dated May 4, 2000

- Cash Account Security Agreement, dated June 23, 2000, between WVF I LLC and The Bank of New York, as Collateral Agent for the benefit of Lucent (the 'WVF-I Cash Collateral Agreement")

- Cash Account Security Agreement, dated December 22, 2000, between WVF-LU2 LLC and The Bank of New York, as Collateral Agent for the benefit of Lucent (collectively with the WVF I Cash Collateral Agreement, the "Lucent Cash Collateral Agreements")

- Equipment User Agreement  dated May 23, 2000, among WVF-I LLC, Winstar Wireless Inc , Lucent Technologies Inc , as Administrative Agent and The Bank of New York, as Collateral Agent for the benefit of Lucent

CL  620013v5

Summary of Supporting Documentation
Continued

- Guarantee Agreement, dated May 9, 2000, among Winstar Communications, Inc , WCI Capital Corp , and Lucent Technologies Inc , as Administrative Agent

- Investment Intermediary Acknowledgments and Disbursing Bank Acknowledgments, dated June 23, 2000, among WVF-1 LLC, The Bank of New York, as Collateral Agent for the benefit of Lucent, and Fleet National Bank and State Street Bank & Trust Company, respectively (collectively, the "WVF-1 Acknowledgments")

- Investment Intermediary Acknowledgments and Disbursing Bank Acknowledgments, dated December 22, 2000  among WVF LU2 LLC  The Bank of New York, as Collateral Agent for the benefit of Lucent  and Fleet National Bank and State Street Bank & Trust Company  respectively (collectively with the WVF 1 Acknowledgments  the "Acknowledgments ')

- Pledge Agreement, dated May 4, 2000  between Winstar Wireless  Inc  and The Bank of New York  as Collateral Agent for the benefit of Lucent (the "Lucent Pledge Agreement")

- Security Agreement, dated as of May 9, 2000  between WVF-1 LLC and The Bank of New York, as Collateral Agent for the benefit of Lucent (the "WVF 1 Security Agreement ')

- Security Agreement, dated as of December 22  2000, between WVF-LU2 LLC and The Bank of New York  as Collateral Agent for the benefit of Lucent (collectively with the WVF-1 Security Agreement  the ' Lucent Security Agreements )

- Supply Agreement, dated October 21, 1998, between Winstar Communications, Inc  and Lucent Technologies Inc  (as amended and collectively with any schedules and exhibits thereto, the "Lucent Supply Agreement")  any amendments thereto and any and all related documents, agreements and statements of work

- All documents, agreements and other materials that may be produced in connection with any discovery related to this proof of claim

### Summary of Secured Claims under the Lucent Credit Agreement

- **Principal** The Borrowers (as such term is defined in the Lucent Credit Agreement) are obligated to pay Lucent principal loaned through the Borrowing Requests under the Lucent Credit Agreement  See Lucent Credit Agreement § 2 01-02, **Tab A 4**  As of April 18, 2001 (the 'Petition Date"), the amount of principal due under the Lucent Credit Agreement totaled $736,919,626 31

- **Interest** The Borrowers must pay Lucent interest on the outstanding principal under the Lucent Credit Agreement  See Lucent Credit Agreement § 2 11  As of the Petition Date, the amount of interest due under the Lucent Credit Agreement totaled $18,922 649 51  Since the Petition Date interest has continued to accrue under the Lucent Credit Agreement and  as of October 8  2001  such amount totaled $28,548 856 81 (for the period from the Petition Date through October 8  2001) [1]/

- **Fees**  The Borrowers owe Lucent a commitment fee that is payable on the last day of March  June  September and December of each year  The commitment fee accrues at 1 5% per annum on the average daily amount of the Available Commitment (as such term is defined in the Lucent Credit Agreement)  See Lucent Credit Agreement § 2 10(a)  As of the Petition Date, the amount of such fees due under the Lucent Credit Agreement totaled $2 839 538 06  In addition  the Borrowers were obligated to pay to Lucent a 1% fee on outstanding principal on April 4, 2001 (the parties extended this deadline to April 13, 2001)  See Lucent Credit Agreement § 2 10(b)  As of the Petition Date  the Borrowers owed Lucent $7,369,196 26 on account of such fee

- **Expenses**  The Borrowers must pay certain costs and expenses reasonably incurred by Lucent in connection with the negotiation, preparation and execution of the Lucent Credit Agreement  including fees, charges and disbursements of counsel and costs relating to the enforcement or protection of Lucent's rights under the Lucent Credit Agreement  See Lucent Credit Agreement § 9 03(a)  As of October 8, 2001, the amount of expenses due under the Lucent Credit Agreement totaled approximately $4,460,440 73

    These expenses include storage and warehousing charges incurred by Lucent on behalf of the Debtor to store and protect the equipment. As of the Petition Date, the amount of storage and warehousing charges due under the Lucent Credit Agreement totaled $159 841 00  Since the Petition Date  storage and warehousing charges have continued to accrue under the Lucent Credit

---

[1]/    Interest continues to accrue under the Lucent Credit Agreement, and Lucent hereby specifically reserves its rights to amend, modify or supplement this proof of claim to incorporate and assert such additional interest

CL  620013v5

### Summary of Borrowing Requests

| Date of Borrowing Request | Borrower | Total Borrowing |
|---|---|---|
| 6/23/00 | WVF 1 LLC | $248 064,106 03 |
| 7/24/00 | WVF-1 LLC | 72,369,718 05 |
| 8/24/00 | WVF-1 LLC | 73,540,891 64 |
| 9/22/00 | WVF 1 LLC | 103,058 768 11 |
| 10/20/00 | WVF-1 LLC | 192,932 320 87 |
| 11/30/00 | WVF-1 LLC | 63,604,904 42 |
| 12/22/00 | WVF-LU2 LLC | 32,006 966 01 |
| 12/29/00 | WVF-LU2 LLC | 62 324 930 00 |
| 1/26/01 | WVF-LU2 LLC | 48,735 275 74 |
| 2/23/01 | WVF-LU2 LLC | 34,281,745 44 |
| **Subtotal** | | $930 919 626 31 |
| **Payment on 12/7/00** | | (194 000 000 00) |
| **TOTAL** | | $736,919,626.31 |

CL. 620013v5

A-5

Summary 6          Filing Statements

| UCC TYPE | DEBTOR | DEBTOR ADDRESS | DEBTOR TAX ID | FILING STATE | FILING JURISDICTION | FILE DATE | FILE NUMBER |
|---|---|---|---|---|---|---|---|
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | AK | SECRETARY OF STATE | 6/19/2000 | 482386 |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | AL | SECRETARY OF STATE | 6/16/2000 | B2000 24609 |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | AR | SECRETARY OF STATE | 6/16/2000 | 1249843 |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | AZ | SECRETARY OF STATE | 6/16/2000 | 1121874 |
| 1 | WVF-I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | AZ | MARICOPA | 6/16/2000 | 00 0 160046 |
| 1 | WVF-I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | CA | SECRETARY OF STATE | 6/16/2000 | 17260131 |
| 1 | WVF-I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | CO | SECRETARY OF STATE | 6/16/2000 | 20002055626 |
| 1 | WVF-I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | CT | SECRETARY OF STATE | 6/19/2000 | 2004895 |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, N 10017 | 13 4114885 | DC | SECRETARY OF STATE | 6/20/2000 | 2000057462 |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13 4114885 | DE | SECRETARY OF STATE | 6/19/2000 | 38324 |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13 4114885 | DE | SECRETARY OF STATE | 7/11/2000 | 43441 |
| 1 | WVF-I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13 4114885 | FL | SECRETARY OF STATE | 6/16/2000 | 200000140342 |
| 1 | WVF-I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13 4114885 | GA | COBB | 6/21/2000 | 3320008647 |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13 4114885 | GA | DE KALB | 6/21/2000 | 442000005237 |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13 4114885 | GA | FULTON | 6/16/2000 | 60200011341 |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | GA | GWINNETT | 6/21/2000 | 6782 |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | HI | SECRETARY OF STATE | 6/20/2000 | 2000 084279 |
| 1 | VF-I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | | | SECRETARY OF STATE | 1/6/2000 | P111550 |
| 1 | WVF-I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13 4114885 | ID | SECRETARY OF STATE | 6/16/2000 | B 873094 |
| 1 | WVF-I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | IL | SECRETARY OF STATE | 6/27/2000 | 4238359 |

CL 624215v1

Summary of ...    **Filling Statements**

| UCC TYPE | DEBTOR | DEBTOR ADDRESS | DEBTOR TAX ID | FILING STATE | FILING JURISDICTION | FILE DATE | FILE NUMBER |
|---|---|---|---|---|---|---|---|
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | IN | SECRETARY OF STATE | 6/19/2000 | 2331444 |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114805 | KS | SECRETARY OF STATE | 6/19/2000 | 3727690 |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | KY | SECRETARY OF STATE | 6/16/2000 | 1603816 |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | LA | JEFFERSON | 6/29/2000 | 26245536 |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | LA | ORLEANS | 6/16/2000 | 36 149029 |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | MA | SECRETARY OF STATE | 6/16/2000 | 721960 |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | MA | BOSTON | 6/26/2000 | 426443 |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | MA | BOSTON CITY | 6/19/2000 | 426263 |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | MA | BURLINGTON | 6/26/2000 | 398 |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | MA | MANSFIELD | 6/27/2000 | 136-00 |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | MD | SECRETARY OF STATE | 6/19/2000 | 181049885 |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | ME | SECRETARY OF STATE | 6/16/2000 | 1368723 |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | MI | SECRETARY OF STATE | 6/16/2000 | 14696C |
| 1 | WVF-I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13 4114885 | MN | SECRETARY OF STATE | 6/16/2000 | 2236862 |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | MO | SECRETARY OF STATE | 6/16/2000 | 4058409 |
| 1 | WVF-I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | MO | JACKSON | 6/16/2000 | 20000424078 |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | MO | ST LOUIS | 6/26/2000 | 200008006 |
| 1 | WVF-I LLC | 685 THIRD AVENUE NEW YORK, NY 1005 | 13-4114885 | MS | SECRETARY OF STATE | 6/16/2000 | 1440594 |
| 1 | WVF-I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | MT | SECRETARY OF STATE | 6/19/2000 | 600402B2 |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | NC | SECRETARY OF STATE | 6/16/2000 | 20000061209 |

CL 624215v1    Page 2 of 14

**Summary  Filing Statements**

φ A 5

| UCC TYPE | DEBTOR | DEBTOR ADDRESS | DEBTOR TAX ID | FILING STATE | FILING JURISDICTION | FILE DATE | FILE NUMBER |
|---|---|---|---|---|---|---|---|
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | NC | MECKLENBURG | 6/19/2000 | 20005418 |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | ND | SECRETARY OF STATE | 6/16/2000 | 949158 |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | NE | SECRETARY OF STATE | 6/16/2000 | 9900063540 |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | NH | SECRETARY OF STATE | 6/21/2000 | 562377 |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | NJ | SECRETARY OF STATE | 6/15/2000 | 1981526 |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | NM | SECRETARY OF STATE | 6/15/2000 | 616033 |
| 1 | WVF-I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | NV | SECRETARY OF STATE | 6/15/2000 | 9341 |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | NY | SECRETARY OF STATE | 6/15/2000 | 119059 |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | NY | SECRETARY OF STATE | 7/11/2000 | 134993 |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | NY | DUTCHESS | 8/21/2000 | 00 2201 |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | NY | ERIE | 6/26/2000 | 795741 |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | NY | KINGS | 6/22/2000 | 00PK08557 |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | NY | NEW YORK | 6/21/2000 | 00PN30843 |
| 1 | WVF-I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | OH | SECRETARY OF STATE | 6/19/2000 | AP0248592 |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | OH | CUYAHOGA | 6/21/2000 | 200006219104 1 |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | OH | FRANKLIN | 6/16/2000 | 2000061601 9447 |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | OH | HAMILTON | 6/29/2000 | 0 98950 |
| 1 | WVF-I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | OK | OKLAHOMA | 6/16/2000 | 33113 |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | OR | SECRETARY OF STATE | 6/16/2000 | 516058 |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | PA | SECRETARY OF STATE | 6/19/2000 | 31750680 |

CL 614215v1

**Summary of** **filing Statements**

| UCC TYPE | DEBTOR | DEBTOR ADDRESS | DEBTOR TAX ID | FILING STATE | FILING JURISDICTION | FILE DATE | FILE NUMBER |
|---|---|---|---|---|---|---|---|
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | PA | ALLEGHENY | 6/21/2000 | 00-4300 |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | PA | PHILADELPHIA | 6/20/2000 | 3069 |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | RI | SECRETARY OF STATE | 6/16/2000 | 714041 |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | SC | SECRETARY OF STATE | 6/19/2000 | 000619 124522A |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | SD | SECRETARY OF STATE | 6/19/2000 | 1711000723 |
| 1 | WVF-I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | TX | SECRETARY OF STATE | 6/19/2000 | 00 521418 |
| 1 | WVF-I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13 4114885 | UT | SECRETARY OF STATE | 6/19/2000 | 00 683058 |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | VA | SECRETARY OF STATE | 6/21/2000 | 6197804 |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | VA | ARLINGTON | 6/21/2000 | 62714 B0000179 PO1869 |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | VA | FAIRFAX | 6/21/2000 | 00 005901 |
| 1 | WVF-I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | VA | NEWPORT NEWS | 6/21/2000 | 11640 |
| 1 | WVF-I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | VT | SECRETARY OF STATE | 6/19/2000 | 00 120144 |
| 1 | WVF-I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | WA | SECRETARY OF STATE | 6/19/2000 | 2000 171-0211 |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | WI | SECRETARY OF STATE | 6/19/2000 | 1966871 |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | WV | SECRETARY OF STATE | 6/19/2000 | 541871 |
| 1 | WVF I LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4114885 | WY | SECRETARY OF STATE | 6/19/2000 | 00 171141803 |
| 1 | WVF LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | AK | SECRETARY OF STATE | 1/4/2001 | 491279 |
| 1 | WVF LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | AL | SECRETARY OF STATE | 1/4/2001 | 2001-00475 FS |
| 1 | WVF LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | AR | SECRETARY OF STATE | 1/4/2001 | 1280218 |
| 1 | WVF LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | AZ | SECRETARY OF STATE | 1/4/2001 | 1155419 |

CL 62421.5v1

Summary of    iling Statements

| UCC TYPE | DEBTOR | DEBTOR ADDRESS | DEBTOR TAX ID | FILING STATE | FILING JURISDICTION | FILE DATE | FILE NUMBER |
|---|---|---|---|---|---|---|---|
| 1 | WVF-LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | AZ | MARICOPA | 1/4/2001 | 2001 0007943 |
| 1 | WVF-LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | CA | SECRETARY OF STATE | 1/4/2001 | 0109610l4 |
| 1 | WVF LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | CO | SECRETARY OF STATE | 1/4/2001 | 20012000781 (COPY TO FOLLOW) |
| 1 | WVF LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13 4146066 | CT | SECRETARY OF STATE | 1/4/2001 | 2043818 |
| 1 | WVF LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | DC | SECRETARY OF STATE | 1/4/2001 | 2001001221 |
| 1 | WVF-LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | DE | SECRETARY OF STATE | 1/4/2001 | 10010806 |
| 1 | WVF-LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | FL | SECRETARY OF STATE | 1/4/2001 | 200100003129-0 |
| 1 | WVF LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | GA | COBB | 1/4/2001 | 33200100238 |
| 1 | WVF-LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | | | | |
| 1 | WVF-LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | GA | DEKALB | 1/4/2001 | 442001000116 |
| 1 | WVF-LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | GA | FULTON | 1/4/2001 | 60200100241 |
| 1 | WVF-LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | GA | GWINNETT | 1/4/2001 | 184 |
| 1 | WVF-LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | HI | SECRETARY OF STATE | 1/9/2001 | 2001 063159 |
| 1 | WVF LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | IA | SECRETARY OF STATE | 1/4/2001 | P154817 |
| 1 | WVF-LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | ID | SECRETARY OF STATE | 1/4/2001 | B 890038 |
| 1 | WVF-LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | IL | SECRETARY OF STATE | 1/12/2001 | 4321540 |
| 1 | WVF-LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | IN | SECRETARY OF STATE | 1/4/2001 | 2267297 |
| 1 | WVF-LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | KS | SECRETARY OF STATE | 1/4/2001 | 4310023 |
| 1 | WVF-LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | KY | SECRETARY OF STATE | 1/4/2001 | 1606230 |
| 1 | WVF-LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | LA | JEFFERSON | 1/4/2001 | 26251026 |

CL 634215v1

A.5

Summary of ... UCC Statements

| UCC TYPE | DEBTOR | DEBTOR ADDRESS | DEBTOR TAX ID | FILING STATE | FILING JURISDICTION | FILE DATE | FILE NUMBER |
|---|---|---|---|---|---|---|---|
| 1 | WVF LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | LA | ORLEANS | 1/4/2001 | 36 154927 |
| 1 | WVF LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | MA | BOSTON | 1/5/2001 | 430797 |
| 1 | WVF LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146006 | MA | BOSTON | 1/4/2001 | 430785 |
| 1 | WVF-LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | MA | BURLINGTON SECRETARY OF STATE | 1/4/2001 | 4 |
| 1 | WVF-LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13 4146066 | MA | SECRETARY OF STATE | 1/4/2001 | 766592 |
| 1 | WVF-LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146065 | MA | MANSFIELD | 1/5/2001 | 36892 |
| 1 | WVF-LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | MD | SECRETARY OF STATE | 1/4/2001 | 181009974 |
| 1 | WVF-LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | ME | SECRETARY OF STATE | 1/4/2001 | 1394384 |
| 1 | WVF-LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | MI | SECRETARY OF STATE | 1/4/2001 | 20430C |
| 1 | WVF-LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13 4146066 | MN | SECRETARY OF STATE | 1/4/2001 | 2237451 |
| 1 | WVF-LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | MO | SECRETARY OF STATE | 1/4/2001 | 4120431 |
| 1 | WVF-LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | MO | JACKSON | 1/4/2001 | 2001/0430421 |
| 1 | WVF LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | MO | ST LOUIS CITY | 1/5/2001 | 200100255 |
| 1 | WVF-LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | MS | SECRETARY OF STATE | 1/4/2001 | 1489753 |
| 1 | WVF LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | MT | SECRETARY OF STATE | 1/4/2001 | 02193043 |
| 1 | WVF LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | NC | SECRETARY OF STATE | 1/5/2001 | 20010001594 |
| 1 | WVF-LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | NC | SECRETARY OF STATE | 1/5/2001 | 20010001594 |
| 1 | WVF LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | C | ECKLENB..PG | 1/5/2001 | .00117718 |
| 1 | WVF-LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13 4145066 | ND | SECRETARY OF STATE | 1/4/2001 | 01 000986184 |
| 1 | WVF-LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | NE | SECRETARY OF STATE | 1/4/2001 | 99001106515 |

CL 62421591

A.5

Summary of    Filing Statements

| UCC TYPE | DEBTOR | DEBTOR ADDRESS | DEBTOR TAX ID | FILING STATE | FILING JURISDICTION | FILE DATE | FILE NUMBER |
|---|---|---|---|---|---|---|---|
| 1 | WVF LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | NH | SECRETARY OF STATE | 1/4/2001 | 573421 |
| 1 | WVF LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13 4146066 | NJ | SECRETARY OF STATE | 1/4/2001 | 2016518 |
| 1 | WVF-LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | NM | SECRETARY OF STATE | 1/5/2001 | 10105024 |
| 1 | WVF-LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | NY | SECRETARY OF STATE | 1/4/2001 | 2713 |
| 1 | WVF-LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | NY | DUTCHESS | 1/4/2001 | 34 |
| 1 | WVF-LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13 4146066 | NY | ERIE | 1/5/2001 | 087 1322 |
| 1 | WVF-LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | NY | KINGS | 1/4/2001 | 01PK00151 |
| 1 | WVF LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | NY | NEW YORK | 1/5/2001 | 01PN00689 |
| 1 | WVF LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | NY | SECRETARY OF STATE | 1/4/2001 | 100223 |
| 1 | WVF LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | OH | SECRETARY OF STATE | 1/5/2001 | AP306060 |
| 1 | WVF LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | OH | CUYAHOGA | 1/4/2001 | 200101049082 |
| 1 | WVF LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | OH | FRANKLIN | 1/4/2001 | 200101040002968 |
| 1 | WVF LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | OH | HAMILTON | 1/8/2001 | 632968 |
| 1 | WVF LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | OK | OKLAHOMA | 1/4/2001 | 537648 |
| 1 | WVF LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | OR | SECRETARY OF STATE | 1/4/2001 | 537646 |
| 1 | WVF-LU1LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | PA | ALLEGHENY | 1/4/2001 | UCC-01-43 |
| 1 | WVF LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146065 | PA | PHILADELPHIA | 1/9/2001 | 10113 |
| 1 | WVF LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | PA | SECRETARY OF STATE | 1/4/2001 | 33461186 |
| 1 | WVF LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | RI | SECRETARY OF STATE | 1/4/2001 | 722899 |
| 1 | WVF LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | SC | SECRETARY OF STATE | 1/5/2001 | 085109A |

CL 6242l5v1

## Summary of UCC Filing Statements

| UCC TYPE | DEBTOR | DEBTOR ADDRESS | DEBTOR TAX ID | FILING STATE | FILING JURISDICTION | FILE DATE | FILE NUMBER |
|---|---|---|---|---|---|---|---|
| 1 | WVF LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | SD | SECRETARY OF STATE | 1/4/2001 | 10040901695 |
| 1 | WVF LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | TX | SECRETARY OF STATE | 1/4/2001 | 01 001236 |
| 1 | WVF LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | UT | SECRETARY OF STATE | 1/4/2001 | 01 702771 |
| 1 | WVF LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | UT | SECRETARY OF STATE | 1/4/2001 | 01 702771 |
| 1 | WVF-LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | VA | ARLINGTON | 1/4/2001 | G3659 |
| 1 | WVF LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | VA | SECRETARY OF STATE | 1/4/2001 | 01 01 04 7817 |
| 1 | WVF LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | VA | FAIRFAX | 1/8/2001 | 01 000152 (COPY TO FOLLOW) |
| 1 | WVF LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | VA | NEWPORT NEWS | 1/9/2001 | 1,177 |
| 1 | WVF LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | VT | SECRETARY OF STATE | 1/4/2001 | 01 133687 |
| 1 | WVF LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | WA | SECRETARY OF STATE | 1/4/2001 | 2001 004 0339 |
| 1 | WVF LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | WI | SECRETARY OF STATE | 1/4/2001 | 2023177 |
| 1 | WVF-LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13-4146066 | WV | SECRETARY OF STATE | 1/4/2001 | 552988 |
| 1 | WVF LU2LLC | 685 THIRD AVENUE NEW YORK, NY 10017 | 13 4146066 | WY | SECRETARY OF STATE | 1/4/2001 | 200100413 1A03 |
| 1 | WINSTAR WIRELESS INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | AK | SECRETARY OF STATE | 6/16/2000 | 462263 |
| 1 | WINSTAR WIRELESS INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | AL | SECRETARY OF STATE | 6/16/2000 | B2000 24611 |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | AR | SECRETARY OF STATE | 6/19/2000 | 12500004 |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | AZ | SECRETARY OF STATE | 6/19/2000 | 1122358 |
| 1 | WINSTAR WIRELESS INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | AZ | MARICOPA | 6/19/2000 | 00 0461881 |
| 1 | WINSTAR WIRELESS INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | CA | SECRETARY OF STATE | 6/19/2000 | 173601580 |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | CO | SECRETARY OF STATE | 6/19/2000 | 20002055004 |

CL 63421svl

**Summary o    -    Filing Statements**

| UCC TYPE | DEBTOR | DEBTOR ADDRESS | DEBTOR TAX ID | FILING STATE | FILING JURISDICTION | FILE DATE | FILE NUMBER |
|---|---|---|---|---|---|---|---|
| - | WINSTAR WIRELESS, INC. | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | CT | SECRETARY OF STATE | 6/19/2000 | 2004899 |
| - | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | DC | SECRETARY OF STATE | 6/20/2000 | 2000057454 |
| - | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | DE | SECRETARY OF STATE | 6/19/2000 | 13321 |
| - | WINSTAR WIRELESS, INC. | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | FL | SECRETARY OF STATE | 6/19/2000 | 200000141978 5 |
| - | WINSTAR WIRELESS, INC. | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | GA | COBB | 6/19/2000 | 3320008648 |
| - | WINSTAR WIRELESS, INC. | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | GA | DEKALB | 6/20/2000 | 44200000539 0 |
| - | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | GA | FULTON | 6/20/2000 | 6020001 1446 |
| - | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | GA | GWINNETT | 6/21/2000 | 67 2000006781 |
| - | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | HI | SECRETARY OF STATE | 6/20/2000 | 2000 084280 |
| - | WINSTAR WIRELESS, INC. | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | IA | SECRETARY OF STATE | 6/19/2000 | P111801 |
| - | WINSTAR WIRELESS, INC. | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | ID | SECRETARY OF STATE | 6/19/2000 | B671292 |
| - | WINSTAR WIRELESS, INC. | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | IL | SECRETARY OF STATE | 6/29/2000 | 4229685 |
| - | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | IN | SECRETARY OF STATE | 6/19/2000 | 2331445 |
| - | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | KS | SECRETARY OF STATE | 6/19/2000 | 3725868 |
| - | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | KY | SECRETARY OF STATE | 6/19/2000 | 1603834 |
| - | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | LA | JEFFERSON | 6/29/2000 | 26245537 |
| - | WINSTAR WIRELESS, INC. | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | LA | ORLEANS | 6/19/2000 | 36-149069 |
| - | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | MA | SECRETARY OF STATE | 6/19/2000 | 724289 |
| - | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | MA | BOSTON | 6/19/2000 | 426264 |
| - | WINSTAR WIRELESS, INC. | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | MA | BOSTON | 6/26/2000 | 426442 |

CL 63421sv1

A.5

Summary o    Filing Statements

| UCC TYPE | DEBTOR | DEBTOR ADDRESS | DEBTOR TAX ID | FILING STATE | FILING JURISDICTION | FILE DATE | FILE NUMBER |
|---|---|---|---|---|---|---|---|
| 1 | WINSTAR WIRELESS INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | MA | BURLINGTON | 6/26/2000 | 399 |
| 1 | WINSTAR WIRELESS INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | MA | MANSFIELD | 6/23/2000 | 132 00 |
| 1 | WINSTAR WIRELESS, INC. | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | MD | SECRETARY OF STATE | 6/16/2000 | 181040593 |
| 1 | WINSTAR WIRELESS, INC. | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | ME | SECRETARY OF STATE | 6/19/2000 | 1169076 |
| 1 | WINSTAR WIRELESS, INC. | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | MI | SECRETARY OF STATE | 6/19/2000 | 1474JC |
| 1 | WINSTAR WIRELESS INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | MN | SECRETARY OF STATE | 6/19/2000 | 2217375 |
| 1 | WINSTAR WIRELESS INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | MO | SECRETARY OF STATE | 6/19/2000 | 4058868 |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | MO | JACKSON | 6/19/2000 | 2000J0424100 |
| 1 | WINSTAR WIRELESS INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | MO | ST LOUIS | 6/26/2000 | 200008009 |
| 1 | WINSTAR WIRELESS INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | MS | SECRETARY OF STATE | 6/19/2000 | 1441212 |
| 1 | WINSTAR WIRELESS INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | MT | SECRETARY OF STATE | 6/19/2000 | 60048200 |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | NC | SECRETARY OF STATE | 6/19/2000 | L0000061572 |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | NC | MECKLENBURG | 6/19/2000 | 20005460 |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | ND | SECRETARY OF STATE | 6/16/2000 | 949153 |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | NE | SECRETARY OF STATE | 6/19/2000 | 9900064014 |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | NH | SECRETARY OF STATE | 6/21/2000 | 562378 |
| 1 | WINSTAR WIRELESS, INC. | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | NJ | SECRETARY OF STATE | 6/19/2000 | 1981670 |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | NM | SECRETARY OF STATE | 6/16/2000 | 616034 |
| 1 | WINSTAR WIRELESS, INC. | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | NV | SECRETARY OF STATE | 6/19/2000 | 9444 |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | NY | SECRETARY OF STATE | 6/19/2000 | 120282 |

CL_62421.sv1

A.5

Summary 01          iling Statements

| UCC TYPE | DEBTOR | DEBTOR ADDRESS | DEBTOR TAX ID | FILING STATE | FILING JURISDICTION | FILE DATE | FILE NUMBER |
|---|---|---|---|---|---|---|---|
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | NY | DUTCHESS | 6/21/2000 | 2200 |
| 1 | WINSTAR WIRELESS, INC. | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | NY | ERIE | 6/26/2000 | Q795739 |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | NY | KINGS | 6/12/2000 | 00PK08558 |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | NY | NEW YORK | 6/21/2000 | 00PN30844 |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | OH | SECRETARY OF STATE | 6/19/2000 | AP0248593 |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | OH | CUYAHOGA | 6/21/2000 | 200006219103 |
| 1 | WINSTAR WIRELESS, INC. | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | OH | FRANKLIN | 6/16/2000 | 200005160119449 |
| 1 | WINSTAR WIRELESS, INC. | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | OH | HAMILTON | 6/29/2000 | 0 9894B |
| 1 | WINSTAR WIRELESS, INC. | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | OK | OKLAHOMA | 6/19/2000 | 13443 |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | OR | SECRETARY OF STATE | 6/19/2000 | 516188 |
| 1 | WINSTAR WIRELESS, INC. | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | PA | SECRETARY OF STATE | 6/19/2000 | 31750679 |
| 1 | WINSTAR WIRELESS, INC. | 230 PARK AVENUE NEW YORK, NY 10169 | 13-3758650 | PA | ALLEGHENY | 6/21/2000 | 60-4297 |
| 1 | WINSTAR WIRELESS, INC. | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | PA | PHILADELPHIA | 6/20/2000 | 3070 |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | RI | SECRETARY OF STATE | 6/19/2000 | 714130 |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | SC | SECRETARY OF STATE | 6/19/2000 | 000619 124510A |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | SD | SECRETARY OF STATE | 6/19/2000 | 1711000722 |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | TX | SECRETARY OF STATE | 6/19/2000 | 00 521416 |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | UT | SECRETARY OF STATE | 6/19/2000 | 00 883052 |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | VA | SECRETARY OF STATE | 6/21/2000 | 6197803 |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | VA | ARLINGTON | 6/21/2000 | 62713 D0000179PD1867 |

CL_62421591

A.5

Summary o

Filing Statements

| UCC TYPE | DEBTOR | DEBTOR ADDRESS | DEBTOR TAX ID | FILING STATE | FILING JURISDICTION | FILE DATE | FILE NUMBER |
|---|---|---|---|---|---|---|---|
| 1 | WINSTAR WIRELESS, INC. | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | VA | FAIRFAX | 6/27/2000 | 00-006900 |
| 1 | WINSTAR WIRELESS, INC. | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | VA | NEWPORT NEWS | 6/21/2000 | 11639 |
| 1 | WINSTAR WIRELESS, INC. | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | VT | SECRETARY OF STATE | 6/19/2000 | 00 126143 |
| 1 | WINSTAR WIRELESS, INC. | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | WA | SECRETARY OF STATE | 6/16/2000 | 2000 1o8 0264 |
| 1 | WINSTAR WIRELESS, INC. | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | WI | SECRETARY OF STATE | 6/16/2000 | 1986776 |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | WV | SECRETARY OF STATE | 6/16/2000 | 541772 |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | WY | SECRETARY OF STATE | 6/16/2000 | 200015815 1802 |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13-3758650 | AK | SECRETARY OF STATE | 1/4/2001 | 491280 |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | AL | SECRETARY OF STATE | 1/4/2001 | 2001 00476 FS |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | AR | SECRETARY OF STATE | 1/4/2001 | 01230219 |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | AZ | SECRETARY OF STATE | 1/4/2001 | 01155418 |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | AZ | MARICOPA | 1/4/2001 | 2001 0007944 |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | CA | SECRETARY OF STATE | 1/4/2001 | 0100960957 |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | CO | SECRETARY OF STATE | 1/4/2001 | 20012000780 |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | CT | SECRETARY OF STATE | 1/4/2001 | 2043819 |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | DC | SECRETARY OF STATE | 1/4/2001 | 20001001213 |
| 1 | WINSTAR WIRELESS, INC. | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | DE | SECRETARY OF STATE | 1/4/2001 | 1001079 B |
| 1 | WINSTAR WIRELESS, INC. | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | FL | SECRETARY OF STATE | 1/4/2001 | 200100003130 B |
| 1 | WINSTAR WIRELESS, INC. | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | GA | COBB | 1/4/2001 | 033200100239 |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | GA | DEKALB | 1/17/2001 | 442001000457 |

Summary 2    Filing Statements

| UCC TYPE | DEBTOR | DEBTOR ADDRESS | DEBTOR TAX ID | FILING STATE | FILING JURISDICTION | FILE DATE | FILE NUMBER |
|---|---|---|---|---|---|---|---|
| 1 | WINSTAR WIRELESS INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | GA | FULTON | 1/4/2001 | 060200100240 |
| 1 | WINSTAR WIRELESS INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | GA | GWINNETT | 1/4/2001 | 000183 |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | HI | SECRETARY OF STATE | 1/9/2001 | 2001 003160 |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | IA | SECRETARY OF STATE | 1/4/2001 | P154816 |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13-3758650 | ID | SECRETARY OF STATE | 1/4/2001 | 890039 |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | IL | SECRETARY OF STATE | 1/12/2001 | 4321541 |
| 1 | WINSTAR WIRELESS, INC, | 230 PARK AVENUE NEW YORK, NY 10169 | 13-3758650 | IN | SECRETARY OF STATE | 1/4/2001 | 2367298 |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | KS | SECRETARY OF STATE | 1/4/2001 | 4310017 |
| 1 | WINSTAR WIRELESS INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | KY | SECRETARY OF STATE | 1/4/2001 | 1606231 |
| 1 | WINSTAR WIRELESS INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | LA | JEFFERSON | 1/4/2001 | 701062 |
| 1 | WINSTAR WIRELESS INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13-3758650 | LA | ORLEANS | 1/4/2001 | 36 154929 |
| 1 | WINSTAR WIRELESS INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | MA | BOSTON | 1/5/2001 | 430797 |
| 1 | WINSTAR WIREL SS INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | MA | BOSTON | 1/4/2001 | 430784 |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | MA | BURLINGTON | 1/4/2001 | 3 |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | MA | SECRETARY OF STATE | 1/4/2001 | 768591 |
| 1 | WINSTAR WIRELESS INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | MA | MANSFIELD | 1/5/2001 | 2 01 |
| 1 | WINSTAR WIRELESS INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | MD | SECRETARY OF STATE | 1/4/2001 | 181069975 |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | ME | SECRETARY OF STATE | | PENDING |
| 1 | WINSTAR WIRELESS INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | MI | SECRETARY OF STATE | 1/4/2001 | 20427C |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | MN | SECRETARY OF STATE | 1/4/2001 | 2287453 |

CL 624215v1

Page 13 of 14

| UCC TYPE | DEBTOR | DEBTOR ADDRESS | DEBTOR TAX ID | FILING STATE | FILING JURISDICTION | FILE DATE | FILE NUMBER |
|---|---|---|---|---|---|---|---|
| 1 | WINSTAR WIRELESS INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 758( ? | MO | SECRETARY OF STATE | 1/4/2001 | 4120430 |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 37 ▪; | MO | JACKSON | 1/4/2001 | 2001J0430422 |
| 1 | WINSTAR WIRELESS INC | 230 PARK AVENUE NEW YORK NY 10169 | 13 3758650 | MO | ST LOUIS CITY | 1/5/2001 | 200100256 |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | MS | SECRETARY OF STATE | 1/4/2001 | 01489754 |
| 1 | WINSTAR WIRELESS INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | MT | SECRETARY OF STATE | 1/4/2001 | 62392911 |
| 1 | WINSTAR WIRELESS INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13-3758650 | NC | SECRETARY OF STATE | 1/5/2001 | 20010001593 |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | NC | MECKLENBURG | 1/5/2001 | 200111717 |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | ND | SECRETARY OF STATE | 1/4/2001 | 0100986189 |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | NE | SECRETARY OF STATE | 1/4/2001 | 9901106516 |
| 1 | WINSTAR WIRELESS INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | NH | SECRETARY OF STATE | 1/4/2001 | 573422 |
| 1 | WINSTAR WIRELESS, INC. | 230 PARK AVENUE NEW YORK, NY 10169 | 13-3758650 | NJ | SECRETARY OF STATE | 1/4/2001 | 2016520 |
| 1 | WINSTAR WIRELESS INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | NM | SECRETARY OF STATE | 1/5/2001 | 010105025 |
| 1 | WINSTAR WIRELESS INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | NV | SECRETARY OF STATE | 1/4/2001 | 0100222 |
| 1 | WINSTAR WIRELESS INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | NY | SECRETARY OF STATE | 1/4/2001 | 002727 |
| 1 | WINSTAR WIRELESS, INC. | 230 PARK AVENUE NEW YORK, NY 10169 | 13-3758650 | NY | DUTCHESS | 1/4/2001 | 1-0033 |
| 1 | WINSTAR WIRELESS, INC. | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | NY | ERIE | 1/5/2001 | Q87 1314 |
| 1 | WINSTAR WIRELESS INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | NY | KINGS | 1/4/2001 | 01PK00150 |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | NY | NEW YORK | 1/5/2001 | 01PN00590 |
| 1 | WINSTAR WIRELESS, INC | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | OH | SECRETARY OF STATE | 1/5/2001 | AP306061 |
| 1 | WINSTAR WIRELESS, INC. | 230 PARK AVENUE NEW YORK, NY 10169 | 13 3758650 | OH | CUYAHOGA | 1/4/2001 | 20010104908I |

CL 6242I5vi

## Exhibit B

### Description of Collateral

I    Lucent Security Agreements

Pursuant to the Lucent Security Agreements,[1/] Lucent was granted a security interest in all of the Borrowers' right, title and interest in, to and under the "Collateral," which is defined as follows

- *"Collateral"* shall mean all (i) Equipment  (ii) General Intangibles (but excluding General Intangibles to the extent that an assignment thereof would violate a restriction on assignment contained therein) and (iii) Proceeds

For purposes of this definition of the Collateral, capitalized terms have the following meanings

- *"Equipment"* shall mean all equipment, furniture and furnishings, and all tangible personal property similar to any of the foregoing, including tools, parts and supplies of every kind and description, and all improvements accessions or appurtenances thereto  in each case that are now owned or hereafter acquired by the Borrowers  The term Equipment shall also include Fixtures

- *"Fixtures"* shall mean all items of Equipment  whether now owned or hereafter acquired  of the Borrowers that become so related to particular real estate that an interest in them arises under any real estate law applicable thereto

- *"General Intangibles"* shall mean all choses in action and causes of action and all other assignable intangible personal property of the Borrowers of every kind and nature now owned or hereafter acquired by the Borrowers, including the Borrowers' rights under the Lucent Supply Agreement and all intellectual property acquired by or granted to the Borrowers pursuant to the Lucent Supply Agreement

- *"Proceeds"* shall mean any consideration received from the sale, exchange, license, lease or other disposition of any asset which constitutes Collateral, including any payment received from any insurer or other person as a result of the destruction, loss, theft, damage or other involuntary conversion of whatever nature of any asset which constitutes Collateral, and shall include any and all other amounts from time to time paid or payable under or in connection with any of the Collateral

The Collateral includes the Equipment subject to the invoices financed by the Borrowing Requests set forth at **Tab A 4**

---

[1/]    See Lucent Security Agreements § 1 02  The description of the Collateral set forth herein is intended as a summary of the provisions of the Lucent Security Agreements and should not be interpreted to alter or amend the Lucent Security Agreements in any respect

CL  620013v5

## Description of the Accounts

• Pursuant to section 1 02 of the Lucent Cash Collateral Agreements, the Accounts include the following accounts, together with any investment property therein and proceeds thereof

| Account | Account Number |
|---|---|
| Fleet Bank Investment Account | 9427772529 |
| Fleet Bank Investment Account | 9428385707 |
| State Street Investment Account | 3274457 |
| State Street Investment Account | 3324773 |
| Fleet Bank Disbursement Account | 9427772510 |
| Fleet Bank Disbursement Account | 9428385694 |

CL 620013v5

ROA
TAB
595

NOV-22- 699  12 3=          STAR                    723-7-9-  94   P 2 /28



**Lucent Technologies**
Bell Labs Innovations

Mark Wilson  Lucent Technologies, Inc.
Vice President Sales  Emerging Service Providers
900 North Point Parkway
Alpharetta, GA 30005
Telephone 770 750-5541
Facsimile 770 750-5590

January 4  1999

Rif Haffar
Winstar Telecommunications
7799 Leesburg Pike  700 South
Falls Church  VA 22043

Rif

Pursuant to our recently executed *Agreement for Network Build-out Services*  please accept this letter as my authorization for the subcontracting of Network Services from Winstar Wireless  Inc

The following is a list of services  which Lucent will subcontract to Winstar for an amount not to exceed $25M for the period January 1  1999 through March 31  1999

- Switch Site Planning & Construction
- Hub Site Planning & Construction
- Broadband Riser Engineering
- Inside Wire Engineering
- Network Integration (CO & Hubs)
- Network Integration (B Sites)
- Site Surveys
- Site Acquisition

Thank you in advance for your support.

Sincerely

Mark Wilson
VP  Emerging Service Providers

**DEFENDANT'S
EXHIBIT
117**

CONFIDENTIAL \\C  0019778

01-22-999  2 35    WINSTAR    723-7.8-  4  P 22/09

**WINSTAR**

Lucent Technologies Inc
5 Wood Hollow Rd
Parsippany New Jersey 07054

Attn  Mark Wilson

Re  Agreement for Network Build out Services

Dear Mr Wilson

As you are aware Lucent Technologies Inc ( Lucent ) and WinStar Wireless Inc ( WWI) entered into that certain Agreement for Network Build out Services, effective as of January 4 1999 (the "Network Build-out Agreement") whereby WWI will be providing agreed upon network build-out services to Lucent as Lucent s subcontractor under that certain Supply Agreement between WinStar Communications Inc ( WinStar") and Lucent, effective as of October 21 1998 (the "Supply Agreement") Notwithstanding anything to the contrary in the Supply Agreement WinStar and Lucent agree as follows

1  Lucent shall be relieved of any warranty breach or other liability under the Supply Agreement if and to the extent such breach or liability was caused by services performed by WWI under the Network Build-out Agreement

If the foregoing accurately represents our agreement, please have an authorized representative sign and date this letter in the space provided below and return an original copy to me

Best regards

WinStar Communications Inc

By _____
Name _____
Title _____

ACCEPTED AND AGREED

Lucent Technologies Inc

By _____
Name  MARK WILSON
Title  VICE PRESIDENT

CONFIDENTIAL  1/C  0019779

NOV-22- 099 12 25   J NSTAR  r                    723-7.5-  56   = 23/28

# WINSTAR⊙

## AGREEMENT FOR NETWORK BUILD OUT SERVICES

This agreement for network build-out services (the Agreement") is made and entered into as of the 4th day of January 1999 (the 'Effective Date') by and between LUCENT TECHNOLOGIES INC a Delaware corporation with offices at 600 Mountain Avenue, Murray Hill New Jersey 07974 ( Lucent") and WINSTAR WIRELESS INC a Delaware corporation with offices located at 230 Park Avenue New York New York 10169 ('Contractor")

WHEREAS Lucent desires Contractor to perform certain network build out services to be specified in an attached task description(s) for the benefit of Lucent and its customers and

WHEREAS Contractor is willing to perform such services subject to and in accordance with the terms and conditions of this Agreement

NOW THEREFORE in consideration of the mutual promises set forth herein Lucent and Contractor hereby agree as follows

1    SERVICES AND SCOPE OF WORK

   1 1   Services  Contractor agrees to perform for Lucent the tasks responsibilities and services described on the attached task specific schedule(s) (individually a Task Order') (the Services') The parties may enter into future Task Orders to which the parties may agree from time to time with each Task Order to be consecutively numbered and attached hereto Services shall be provided in accordance with the provisions of this Agreement and the applicable Task Order and shall be on either a firm fixed price or time and materials basis as specified in the applicable Task Order executed by both parties.

   1 2   Task Order  Unless otherwise agreed by the parties in writing each Task Order will include the following information. (i) a description of the Services to be performed  (ii) the targeted commencement and completion dates of the Services (iii) a list of deliverables to be provided by Contractor (the Deliverables") and targeted delivery dates (iv) method of compensation to be provided to the Contractor (e g time and materials firm fixed price or otherwise) and other appropriate pricing terms such as hourly rates and (v) other information the parties agree to include

2   INDEPENDENT CONTRACTOR AND SUBCONTRACTING

   2 1   Independent Contractor  Contractor is performing the Services as an independent contractor and as such has the sole right and obligation to supervise manage and perform all work to be performed by its personnel under this Agreement

Confidential

CONFIDENTIAL  I/C  0019780

2 2    Subcontracting  Contractor may subcontract any of the Services without the express written consent of Lucent  Contractor will be responsible for the performance of the Services performed by any such subcontractors

3    PERSONNEL

3 1    Qualifications  The personnel that Contractor assigns to perform the Services will be qualified for the specific Services they are to perform

3 2    Personnel Rules and Regulations  Contractor personnel shall comply with Lucent s and its customers  reasonable security regulations made known to Contractor in connection with its performance of the Services

3 3    Non solicitation  Unless otherwise mutually agreed to by the parties in writing  Lucent agrees not to hire, or to solicit the employment of any Contractor personnel or subcontractors directly or indirectly associated with Services under any Task Order during the term of such Task Order and for a period of twelve (12) consecutive months thereafter

4    FEES, EXPENSES RECORDS AND TAXES

4 1    Invoice  Contractor agrees to provide a written invoice to Lucent monthly in arrears for Services actually performed under each Task Order  For Services performed on a time and materials basis  Contractor will be compensated in accordance with the applicable Task Order for work performed  For Services performed on a fixed price basis Contractor agrees to invoice Lucent in accordance with the schedule of milestone payments set forth in the applicable Task Order

4 2    Out-of Pocket Expenses  Lucent will reimburse Contractor for out of pocket expenses incurred by Contractor in performance of the Services

4 3    Taxes  Lucent agrees to pay the amount of any sales  use  excise or similar taxes applicable to the performance of the Services  if any  or  in lieu thereof  Lucent shall provide Contractor with a certificate acceptable to the taxing authorities exempting Lucent from payment of these taxes  In no event shall Lucent be responsible for taxes based on net income or gross receipts of Contractor

5    LIMITATION OF LIABILITY

IN NO EVENT WILL EITHER PARTY BE LIABLE FOR SPECIAL  INDIRECT INCIDENTAL, CONSEQUENTIAL OR PUNITIVE DAMAGES  EVEN IF IT HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES  EACH PARTY S MAXIMUM

Confidential

2

CONFIDENTIAL  I/C  0019781

LIABILITY TO THE OTHER UNDER THIS AGREEMENT SHALL BE THE RECOVERY OF ACTUAL DAMAGES UP TO THE AMOUNT PAYABLE BY LUCENT UNDER THE APPLICABLE TASK ORDER SUBJECT OF THE CLAIM

6     WARRANTIES

CONTRACTOR MAKES NO WARRANTY FOR ANY PRODUCTS OR SERVICES PROVIDED UNDER THIS AGREEMENT EXPRESS OR IMPLIED INCLUDING BUT NOT LIMITED TO ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE

7     TERM AND TERMINATION

7 1     Term  The term of this Agreement will commence on the Effective Date and will continue until both parties mutually agree to terminate, unless sooner terminated pursuant to this Section 7 2  In the event of the termination of this Agreement it shall remain in full force and effect with respect to any then outstanding Task Orders issued under this Agreement until all such Task Orders are completed, expired or terminated

7 2     Termination for Cause  This Agreement and/or any Task Order issued under it may be terminated by either party in the event the other party has materially breached this Agreement or any Task Order (i) upon receipt of written notice thereof if such material breach is incapable of cure  or (ii) upon the expiration of thirty (30) days (or such additional cure period as the non breaching party may authorize in writing) after receipt of written notice thereof if the material breach is capable of cure and has not been cured

8     GENERAL

8 1     Assignment. This Agreement shall be binding on the parties hereto and their respective successors and assigns  Neither party may  or shall have the power to  assign this Agreement without prior written consent of the other  which consent shall not be unreasonably withheld

8.2     Force Majeure  In the event performance of this Agreement or a particular Task Order is prevented or interfered with by reason of acts of God fires floods epidemic strikes or any other circumstances beyond the reasonable control and without the fault or negligence of the party affected, the party so affected, upon giving notice to the other party of the circumstances causing its delay or failure to perform and of its plans and efforts to implement a work around solution, shall be excused from such performance until such until the delay restriction or interference has ceased

8 3     Informal Dispute Resolution  The parties agree that prior to initiating formal dispute resolution they will attempt to resolve disputes informally by working together to

Confidential

3

CONFIDENTIAL  VC  0019782

promptly address problems and escalate issues within their respective companies as reasonably required

8 4   Notices.  Any notices or communication under this Agreement and/or any Task Order shall be in writing and shall be hand delivered or sent by registered mail return receipt requested to the party receiving such communication at the address first set forth above or such other address as either party may in the future specify to the other party in accordance with this notice provision

8 5   Governing Law  This Agreement and related Task Orders shall be governed by and construed in accordance with the laws of the State of New York without regard to its choice of law rules

8 6   Entire Agreement.  This Agreement and each Task Order attached hereto set forth the entire understanding and agreement of the parties as to the subject matter therein and supersedes all prior agreements and representations whether written or oral with respect to the subject matter of this Agreement, and each Task Order attached hereto between the parties. No modification amendment, supplement to or waiver of this Agreement or any Task Order hereunder or any of their provisions shall be binding upon the parties hereto unless made in writing and duly signed by both parties

8 7   Counterparts  This Agreement and any Task Order may be executed in one or more counterparts each of which shall be deemed to be an original but all of which shall together constitute one and the same Agreement

8 8   No Waiver  No waiver shall be effective unless in a writing signed by an authorized representative of the party against whom enforcement of the waiver is sought. Neither the failure of either party to exercise any right of termination, nor the waiver of any default or breach shall constitute a waiver of the rights granted in this Agreement with respect to any subsequent other default or breach.

8 9   Severability  In the event any one or more of the provisions of this Agreement or of any Task Order is invalid or otherwise unenforceable the enforceability of remaining provisions shall be unimpaired

8 10   Survival  Any provision of this Agreement which contemplates performance subsequent to any termination or expiration of this Agreement shall survive any termination or expiration of this Agreement and continue in full force and effect

8 11   Headings  The section headings in this Agreement are intended for reference purposes only and shall in no way be construed to modify or restrict any of the terms or provisions of this Agreement

Confidential

4

CONFIDENTIAL WC 0019783

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Agreement as of the date first above written.

LUCENT TECHNOLOGIES INC

By _____

Name _MARK WILSON_

Title _VICE PRESIDENT_

WINSTAR WIRELESS, INC

By _____

Name _RF HAFFAR_

Title _SVP_

Confidential

CONFIDENTIAL W/C 0019784

TASK ORDER NO 1

See attached

Confidential

TOTAL P 09
TOTAL P 08

CONFIDENTIAL VC 0019785

# ROA
# TAB
# 603

**Printer Printer**

| | |
|---|---|
| From | Dwyer Joe [jdwyer@winstar com] |
| Sent | Thursday January 28 1999 4 56 PM |
| To | Rouhana Bill Kantor Nate Dickson Charles |
| Cc | Haffar Riffat |
| Subject | Lucent Accounting Good News! |

All

Great news!

We structured a methodology with Grant Thornton today which will allow WinStar the accounting treatment which we were looking for re subcontracting of services  effective 10/98

To make this work  we will now need to complete the PO s with Lucent  obtain their agreement to subcontract to us each of the related services we ve discussed  and to obtain their agreement on the appropriate document wording to support this accounting treatment

Rif and I will keep you up to date on this progress

Joe


> - Original Message
> From     Dwyer  Joe
> Sent     Thursday  January 28  1999 4 03 PM
> To  Haffar  Riffat  Earle  Ken
> Cc  Barry Weiss (E mail)  Scott Levy (E-mail)
> Subject   Lucent
>
> Guys
>
> This it to summarize our agreement today re  Lucent costs
>
> 1   Lucent will be responsible for the buildout of the WinStar network
>
> 2   Lucent will subcontract WinStar to perform certain tasks related to
> this buildout
> 3   WinStar will provide these services to Lucent at agreed upon rates
> WinStar will bill Lucent  and     Lucent will pay WinStar on 30 day
> terms
>      The services billed to Lucent can include both direct and indirect
> costs  however  all costs must   have been incurred directly as a
> result of the buildout of the network (i e   if in a no build
> environment  these costs would continue  we won t include them in such
> service invoices)
> 4   Lucent will negotiate purchase orders with WinStar for the buildout
> of the network  defining costs   per market   Lucent s purchase order
> and billing will clearly state that such costs billed to WinStar    WILL
> NOT include any indirect costs which WinStar has billed to Lucent   i e
> in the end when    Lucent bills WinStar for the network build  WinStar
> will not be capitalizing any of these indirect   costs  because they
> were excluded from the purchase order to begin with
> 5   We will draft and execute these purchase orders and agreements
> effective with the date of the   original Lucent supply and financing
> agreement
>
> Thanks for all your help
>
> If this is not everyone s understanding  pls advise ASAP   Thanks

DEFENDANT'S
EXHIBIT

125

# ROA
# TAB
# 633

**Printer Printer**

| | |
|---|---|
| From | Rogers Leslie L (Leslie) [lesrogers@lucent com] |
| Sent | Tuesday June 08 1999 2 42 PM |
| To | frubin@winstar com |
| Subject | FW Escalation to Nina re WinStar Services Pass Through |

```
> --------- -
> From      Rogers  Leslie L (Leslie)
> Sent      Tuesday  June 08  1999 1 42 PM
> To        Aversano  Nina (Nina)  Naylor  Charles L (Chuck)
> Subject   FW Escalation to Nina re WinStar Services Pass-Through
>
> Dear Nina -
>
> Over the past several months  customer finance has looked into the effect
> of financing the pass-through of WinStar services on the syndication of
> the Lucent loans  Our opinion today  as it was in March  is that
> financing WinStar services (soft costs) would impose a heavy burden upon
> both Lucent and WinStar in their efforts to syndicate the Lucent paper and
> provide WinStar with further Lucent financing
>
> 1)  As we stated in March  the structure of our facility is under-
> collater lized vis a vis usual  senior secured bank debt  This
> inability to place a lien on all assets is due to restrictions imposed by
> the WinStar indenture  Soft costs  when added to the collateral held
> overseas  would create an appearance that the loan to value ratio is as
> low as 2 1  if not worse  The financial institutions will not finance
> loans structured in this way
>
> 2)  The loan agreement itself does not permit the WinStar services to be
> financed  Reference is made to Section 5 1 of the loan agreement      Use
> of Proceeds
>
> In conclusion  it is for the benefit of BOTH WinStar and Lucent that these
> WinStar services not be financed  We must look ahead toward syndicating
> the $2 billion of expected CAPEX loans over the next four to five years
>
> It is critical that the syndication market accept the loans as structured
> today  unencumbered by these soft costs  If the funded Lucent debt cannot
> be syndicated  WinStar will not have access to the remaining financing
> commitments from Lucent  This would be disasterous to WinStar and its
> ability to fulfill its business plan
>
> Leslie
>
>
> ----------
> From      Naylor  Charles L (Chuck)
> Sent      Tuesday  June 08  1999 9 28 AM
> To        Leslie Rogers  Paul Hayes
> Cc        Vanonda Heron  Janet Davidson  Distler  Angela (Angela)  Wilson
> Mark (Mark)
> Subject   FW  Escalation to Nina re WinStar Services Pass-Through
>
> Leslie & Paul
>
> Below you ll find an escalation from Nate Kantor to Nina re  financing of
> WinStar Services  Mark Wilson and I discussed this last night and need
> you all to share Lucent issues/position with Nina so she can respond to
> Nate  Please prepare written response to Nina that she will then forward
> (copying Janet Davidson  Mark and I)
>
```

DEFENDANT'S EXHIBIT 155

1

> As you ll see below, we shared feedback with WinStar regarding their
> request to pass-through $115M in WinStar services  This is no longer a
> revenue recognition issue as we ve been turned down multiple times by CFO
> This is a financing issue  From my conversation with Paul last week  our
> financing agreement with WinStar is based on an equipment facility that is
> backed by equipment collateral  If we add $115M in non-equipment services
> (non-collateralized, to this equipment facility we weaken the equipment
> facility paper and therefore limit WinStar s borrowing  WinStar however
> believes that if there is a problem unloading the loan with these services
> attached Lucent should simply separate the  $115M services  and hold the
> paper ourselves  We ve pushed back hard telling them once again we re not
> a bank and i s never been our intention to hold paper – we sell'
>
> Will you please help by drafting a response for Nina  Nina  Mark and I
> will be seeing many WinStar folks at SuperComm and we d like to have
> something in writing today
>
> Thanks
> Chuck
> )
>
>
>
>
> ----------
> From  Heron  Vanonda (Va Nonda)
> Sent  Monday  June 07  1999 7 35 AM
> To  Naylor  Charles L (Chuck)  Wilson  Mark (Mark)
> Cc  Davidson  Janet G (Janet)
> Subject  FW  Escalation to Nina re WinStar Services Pass-Through
>
> Chuck & Mark
>
> I wanted to ensure that you were aware of this  Please advise Nina of any
> details she may need in order to respond to Nate
>
> v
>
> ----------
> From     Nate Kantor[SMTP nkantor@winstar com]
> Sent     Monday, June 07, 1999 7 36 AM
> To       Aversano  Nina (Nina)
> Subject  Escalation to Nina re WinStar Services Pass-Through
>
>
> Nina
>
> FYI-I am very confused   You told me NOT to worry about WinStar Services
> Lucent Content or Syndication  I thought this was under control
>
> Please review and let s discuss
>
>  Nate
>
>
> >X-From_  rhaffar@winstar com  Fri Jun  4 10 49 28 1999
> >X-Sender  rhaffar@mail winstar com
> >X-Mailer  Windows Eudora Pro Version 3 0 (32)
> >Date  Fri  04 Jun 1999 10 49 21 -0400
> >To  nkantor@winstar com
> >From  Rif Haffar <rhaffar@winstar com>
> >Subject  Escalation to Nina re WinStar Services Pass-Through
> >
> >Nate
> >
> >We have to-date passed $26 6M through Lucent for WinStar services  This
> >covers 1Q99

2

CONFIDENTIAL 2WC 0016320

```
> >
> >Now Mark W and Chuck N are pushing back on letting WinStar continue with
> >this up to the $115M we agreed to in the $750M framework you and Nina
> >discussed
> >
> >Their concern is that this level of services financing might hurt the
> >syndication of the paper   For example  if we offer $300M to the banks
> for
> >syndication and they refuse $50M of it becasue it is not sufficiently
> >collateralized  Lucent will have to discount that paper to sell it  or
> keep
> >it on their own books   I understand from Mark and Chuck that neither of
> >these is an acceptable resolution for them
> >
> >My response was that you and Nina agreed to $115M in pass-through
> services
> >and that this sounds like backing away from that agreement
> >
> >As a matter of practice  we do not know  and won t know until August
> when
> >the first tranche is syndicated  whether or not the banks will have
> >heartburn over the paper  This according to Fred Rubin
> >
> >Net net  I want to be able to begin billing Lucent immediately for
> WinStar
> >services  starting with April 1999  and continue doing so on a monthly
> >basis   Could use your help in reenforcing the agreement on this
> >
> >Thanks,
> >
> >R
> >
> >
> >
> >
> >
```

3

CONFIDENTIAL 2WC 0016321

# ROA
# TAB
# 641

Printer Printer

| | |
|---|---|
| From | Nate Kantor [nkantor@winstar com] |
| Sent | Wednesday July 14 1999 1 09 PM |
| To | cdickson@winstar com, Rubin Fred  Dwyer Joe |
| Subject | Response to Your Request |

All

I don t understand this-please rev ew and let s discuss   This may or may
not be consistant with my discussions with Nina   We need to have a
meeting the sooner the better

    Nate


>\-From_  aversano@lucent com  Tue Jul 13 16 50 48 1999
>From   Aversano  Nina (Nina)  <aversano@lucent com>
>To    nkantor@winstar com   <n antor@winstar com>
>Cc   rhaffar@winstar com   <rhaffar@winstar com>
>       Davidson  Janet G (Janet)  <jgdavidson@lucent com>
>       Naylor  Charles L (Chuck)  <cnaylor@lucent com>
>       Plunkett  William Montgomery  II (Bill)  <wmplunkett@lucent com>
>       Wilson  Mark (Mark)  <wilsonmark@lucent com>
>Subject  Response to Your Request
>Date  Tue  13 Jul 1999  6 50 45 -0400
>X-Mailer  Internet Mail Service (5 5 2448 0)
>
>Nate
>
>I took the opportunity to review your request for Lucent to subcontract
>(pass-through) and finance WinStar Services for Q1 and Q2 1999   Let me
>address each of these items independently  as to clarify the arrangements
>and to avoid future confusion
>
>At the beginning of Q1 1999  we agreed to consider providing additional
>services to WinStar under our Supply Agreement of October 21  1998   This
>consideration included the possibility of subcontracting back to WinStar for
>certain Network Services   As we began this opportunity assessment  we
>agreed to trial this subcontracting arrangement for (calendar) Q1   The
>result was Lucent subcontracted to WinStar 525M in Networ  Services (under
>the agreement for Network Build-Out Services) which we in-turn processed
> ith no revenue recognition eligibility through our systems   This trial
>yielded no material benefit for Lucent  and in fact cost us considerable
>resources to process  track and manage
>
>Based on the results of our Q1 trial  it is not feasible for Lucent to
>consider this same approach for WinStar Services in Q2   The benefits are
>simply not there   We are  however  willing to continue to explore creative
>approaches to this subcontracting concept in the future and welcome the
>opportunity
>
>As for the financing aspect of your request  we already accommodated WinStar
>by treating the $25M of Q1 subcontracted services as Lucent content  With
>respect to your request to finance the $30M of WinStar services incurred
>during (calendar) Q2  we are willing to finance this  however  since we are
>not able to subcontract the Q2 WinStar Services (for the reasons stated
>above)  these will be financed under the non-Lucent category in our
>agreement
>
>Nate  sorry I can t agree to your Q2 request but rest assured we re always
>open to trying new things

1

DEFENDANT'S
EXHIBIT
163

```
>
>Sincerely
>
>Nina
>
>
```

2

CONFIDENTIAL 2WC 0013004

# ROA
# TAB
# 642

### Summary of Lucent Meeting
### 7/26/99

Confidential, For Internal Use Only

Janet Davidson
Jill DiRoma
Mark Wilson

Fred Rubin
Joe Dwyer
Steve Lidd

Lucent felt
- They cannot recognize revenue on the subcontracting arrangement
- This costs them money to manage with no compensation
- They are also hit with the cost of money not reimbursed
- They provide no value add to the product
- Their auditors will have a problem tracking the money in and out, and have concerns about this ending up incorrectly in revenue
- Lucent is a big company with big departments and this type of transaction is difficult to structure (ie process for competitive bidding for subcontractors of which WinStar is one)

Solutions to resolve these problems
- Lucent will program manage as much as the build as possible   exact roles to be defined by 8/13
- If Lucent is program managing the build, this will/may give them the revenue opportunity that they want
- Even if Lucent cannot recognize revenue on the transaction, WinStar wants to continue the subcontracting role anyway, and Lucent will work to find a way to do this
- WinStar will pay cost of money on receivables  fee for internal costs, as necessary, through appropriate markup in addition to normal profit on program management, etc
- Q2 purchase orders to be received by 7/30



DEFENDANT'S
EXHIBIT
164

ROA
TAB
646

| From | Wilson Mark (Mark) |
|------|-------------------|
| Sent | Thursday August 05 1999 3 16 PM |
| To | jdwyer@winstar com  frubin@winstar com  sldd@winstar com  rhafar@winstar com |
| Cc | Davidson Janel G (Janet)  Plunkett William  Montgomery II (Bill)  Naylor Charles L (Chuck)  Rigotli David Roy (David)  Loner Thomas N (Tom)  Diroma Jill B (Jill)  Epstein Marc N (Marc)  Gregg John Andrew (John)  Rogers Leslie L (Leslie)  Hayes Paul (Paul)  Cassady Steven John (Steven) |

Joe  Fred  Rif  and Steve

I ve attached a file describing how we would see the turnkey order approach working for your review  (Please remember that Oct 1 would be for the transaction only  Lucent and Winstar roles would not change significantly at that time as far as managing the construction of the network  Those roles will migrate over time )



Strawman
escription of turnke

A few items to be cared for

Oct 1 implementation seems reasonable which would have us do the end of quarter routine one more time

Need to watch out for any possible negative impacts on Lucent revenue recognition which may require some work on acceptance language in the contract

Lucent content requirements wouldn t change from the contract  but certainly this approach would allow for Lucent to more quickly assume more of the network build and help meet the requirements

The issue of the collateral dilution around services still needs to be worked with our PFO group  We need to resolve this together real soon so as not to be a problem at the end of this quarter

Need to work together on valuing the turnkey orders as described in the file

Let me know your thoughts on whether we are on the right track  I know everyone is tied up next week  but I will plan on meeting with Rif on Friday (8/13) to discuss further

Thanks

Mark

DEFENDANT'S
EXHIBIT
168

1

LW00053257



## Lucent Strawman Outline of Network Build-Out
## Of WinStar Network

8/4/99

**Objective**
Based on the outcome of last week s operations review meeting a Lucent team was assembled to brainstorm the process necessary to begin to implement a transaction interface that more closely resembles the contract structure and have Lucent more aggressively take on the building out of WinStar s network  This document is written to describe the initial steps necessary to recognize this objective

In analyzing the true advantages to both companies for structuring the relationship in this manner the following conclusions were drawn

### For WinStar

1   Have a fully funded financing arrangement for WinStar s Network Build (original supply agreement intent)  The thought here is that if Lucent would assume more responsibility while providing more products and services directly  the content requirements would be more easily met
2   Maximize the capitalization of WinStar s expense budget for the purposes of building out their network
3   Overall management of the build out of WinStar s network by Lucent   Full project management responsibility & functional responsibilities for those areas where Lucent has competency or a desire to  get into the business'  Or to subcontract out those functional responsibilities for those activities that Lucent does not have the core competencies

### For Lucent

1   Profitable Recognizable Revenue growth (Target full WinStar Budget of $750 Million)
2   Develop core competencies that can be ported to the marketplace

**THE QUESTION**   How to structure the manner in which WinStar transacts business with Lucent to begin to meet the objectives stated above?

**THE ANSWER**   The thinking is that if we can have **all** products and services (including those of WinStar's employees) that WinStar is purchasing for their network build out flow through Lucent  then we would be taking the first step towards realizing the goals as stated above  Lucent would then perform  against these orders  in the following manner
- In some cases as the supplier
- In some cases as the prime contractor
- In some cases as the agent who will assign the order to another supplier



Page 1 of 1

Confidential                                    LW00053258

## Lucent Strawman Outline of Network Build-Out Of WinStar Network

> **Note** The existence of this new ordering structure in its initial form would NOT imply or intend to convey any financing commitments but would be used as a vehicle to grow Lucent's ability to receive full stream orders and work with WinStar to determine what parts of the orders would
> - Count as Lucent Content
> - Be taken as Lucent Revenue, or Not
> - Financed or Not (as related to the content clause)
>
> By moving to this initial phase for the turnkey approach does not by definition alter the current calculations for Lucent vs non Lucent content It does facilitate a more easy evolution to a structure that would allow Lucent to provide more true value-added products and services that would alter the content calculations towards the committed to levels

### Issues/Ideas
- Have to insure that the solution does not dilute capital collateral in a way that would affect the existing financing vehicle Or if it does affect it, we might have to develop a new financial vehicle for these services activities

  The new transaction model cannot negatively impact revenue recognition or cash flow for Lucent May involve changes or additions to Section E of the current contract

- As Lucent assumes responsibility for 3rd party Equipment 3rd party Services, or WinStar Provided Services we must determine the appropriate invoicing points (Rev on Ship VS Percent of Completion VS On acceptance) and modify contract to reflect the same? Also, need to coordinate turnaround/intervals of invoicing and payments for individual orders

### Moving Forward
To date WinStar has approached Lucent at the end of the first two quarters of calendar 1999 to help solve their expense capitalization problems by flowing through approximately $60M of Winstar provided services The process was very end of quarter 'intensive In order to 'fix' this reactive approach and move closer to the end state of accepting full stream (turnkey) type orders from WinStar we need to set up the structure within Lucent to support this vision The best case end state view is presented as the following

Confidential

LW00053259

## Lucent Strawman Outline of Network Build-Out
## Of WinStar Network

**View of the content of
all future WinStar
POs to Lucent**                              **End State**

Lucent Equipment                As is today
Lucent Services                 As is today
3rd Party Equipment             Mark Up and Resell back to WS or replace w/ LU
3rd Party Services              Direct Subcontract to Lucent or Continued as WS
WinStar Provided Services       Direct Subcontract to Lucent or Continued as WS

We currently have achieved varying degrees of success toward obtaining the end state view (i e
Radio B-site construction)   It was also acknowledged that getting to the above state will not be
a flash cut   Each of these components will require a business case review and determination as
to whether the component is part of Lucent's business strategy moving forward,  and how can we
move from one model to the next

**Designing a Master Turn Key PO**
The team created a high level view of what a WinStar PO Template would look like moving
forward to support the long term vision and the ability to more easily transact business under the
turnkey approach   This template would be used by WinStar in the placement of all future orders

| WinStar PO Types Template | 1 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|---|
| New City /Augment /Metro Ring / Long haul Route/Grouped Svcs | Lucent Technologies Equipment | Lucent Technologies Service | 3rd Party Equipment | 3rd Party Services | WinStar Provided Services |
| Central Office | As Quoted | As Quoted | As Detailed in Attachment to PO (Who  What  Where  When) Provided by WS | As Detailed in Attachment to PO (Who  What  Where  When) Provided by WS | Fixed Amount on a per order basis  to cover mutually agreed to WinStar service organizations annual budgets |
| HUBS | Same | Same | Same | Same | Same |
| B Sites | Same | Same | Same | Same | Same |
| FO  Rings | Same | Same | Same | Same | Same |
| FO  Long Haul | Same | Same | Same | Same | Same |
| Comm Software | Same | Same | Same | Same | Same |
| C 5 Services | Same | Same | Same | Same | Same |

Invoicing Criteria
  1    Standard Existing Contract (On Ship for Equipment & Engineering)
  2    Standard Existing Contract (Installation completion or acceptance)
  3    Standard Existing Contract (On Ship handled by Customer Service)
  4    On an interim basis to be triggered by #2 above
  5    On an interim basis to be triggered by #2 above

The 1st effort is to set up a process that orders are received from WinStar that will allow us to

Confidential

LW00053260

## Lucent Strawman Outline of Network Build-Out
## Of WinStar Network

track the columns 3,4 and 5  This will clean up the end of quarter reconciliation activity and to allow Lucent to decide whether the revenue is recognizable or not per standard accounting rules

### Action Items To Mechanically Set Up

Lucent can set up the transaction process by 10/1 to facilitate the achievement of a significant part of the objectives listed above  without having Lucent assume full responsibility for Winstar s  network build-out (and all risks and liabilities that come with that)  However, to do so we must work the following items

- People Impact  Asset management  CFO purchasing (GPO)
- WinStar needs to document columns 3&4 expenditures at time of PO placement
- WinStar to provide a list of Subs & 3Rd party equipment to Lucent Purchasing (GPO)
- Review with all affected WinStar organizations, and gain acceptance and concurrence
- Meet with WinStar to determine course of action for column 5  Initial thoughts are to follow these steps

> 3  Capture the annual expense budgets for the WinStar Planning / Engineering and Building (NC&D) organizations

4  Determine the average number of orders place by WinStar on Lucent and their other providers for delivery of these products and services on an annual basis

5  Establish a fixed dollar figure for inclusion with each PO to Lucent that will cover the expense budgets for these organizations  The order quantities will have to be monitored to make sure the funding stays in line with forecasted, and actual, WinStar requirements

October 1st is the targeted cut date to attempt to begin to receive orders in this manner

Confidential

LW00053261

# ROA
# TAB
# 647

**Printer Printer**

| | |
|---|---|
| From | Howard Shartel [hshartel@winstar com] |
| Sent | Monday August 23 1999 7 59 AM |
| To | cdickson@winstar com |
| Cc | jdwyer@winstar com  dhoopes@winstar com  amunson@winstar com |
| Subject | Lucent/B Site Cab s |

Charlie

Fyi on Lucent s expanded role

I spoke with Joe Dwyer on this last week  and have a good understanding of
our intent to expand our spend with Lucent  as discussed at the executive
review several weeks ago

I feel very comfortable that we can expand the Lucent relationship without
giving them  control of the network build

Simply put  upon final approval within WinStar  we ll buy more from Lucent
and its VAR  and distributors  There are markup issues  but we ll work
through them  What we won t do advise Lucent of what we need  and empower
them to go out and act as our agent  This would cost us  both in dollars
and in our (Engineering NC&D  Procurement  etc )  ability to manage the
network build

I have a meeting with Dave Ackerman at 10 this morning to discuss what he
would like to see them (Lucent) do beyond what they re doing today  I will
summarize the result in a note to you  Charlie

The net is that I m sure we can meet Lucent s objective of  profitably
growing recognizable revenue  while still managing the neetwork build  and
the supplier selection process  This will involve Lucent subcontracting
work on our behalf in specific areas  also something that we will carefully
control

Lastly  we will aggressively pursue any benefits that might be realized by
leveraging Lucent s national network of staging areas  If they re doing
work for us in a given city  we should be utilizing any/ tier 2 like
capability they may have available  in lieu of hiring more people and
opening up more warehouses for what may be a 3 4 year need  Al and I will
pursue this

thanks

Howie

>X-From_  dpiett@winstar com  Fri Aug 20 22 07 22 1999
>X Sender  dpiett@mail winstar com
>X-Mailer  QUALCOMM Windows Eudora Pro Version 3 0 3 (32)
>Date  Fri  20 Aug 1999 22 11 49  0400
>To  hshartel@winstar com
>From  Dan Piett <dpiett@winstar com>
>Subject  Lucent/B Site Cab s
>
>Howie
>
>Mike Roberts called a left me a voice mail on the subject tonight
>and requested that I express his comments to you
>He is headed to New Mexico to visit his parents
>
>The issue he expresed is that any attempt to build B Site Cabinets
>by Lucent is a TRIAL BASIS only and not a contractual obligation
>



DEFENDANT'S
EXHIBIT
168

CONFIDENTIAL
3WC 0004499

>In addition he expressed that it is not his intention to place Lucent
>in the procurement business outside of what Best Tronic s is
>currently providing to construct the cabinets  ( cables  ect ect )
>
>He expressed that the purchasing was your responsibility for the
>major componets as currently performed
>
>He expressed that this project in his opinion has a 50/50 chance
>of working with Lucent building the cabinet s to our spec s  but
>feels in is worth a TRIAL   If it works and we accept the quality
>and price  we can all be winners  if not we move forward in another
>direction
>
>That s the bulk of his comments
>
>OK
>
>Dan
>
>
>
>

CONFIDENTIAL
3WC 0004500

# ROA
# TAB
# 673

Page 1 of 2

**Pprinter**

**From**    Genner  Byron A (Byron)  <genner@lucent com>
**To**    "Hicks  Lisa  <hicks@winstar com>
**Sent**    Tuesday  December 14  1999 4 00 PM
**Subject**    FW Turnkey Update w/o 12/6/99

Lisa

As promised  here is the email Chuck sent out yesterday   Now you have
softcopy

Look for our 1st Q Turnkey Traction Proposal later today or first thing in
the morning

By the way, how did the meeting go?  I ll get a debrief from Chuck and Mark
Just curious on your take

Bo Genner
Solutions Account Manager
Lucent Technologies
202-829 8332 (Lucent Office)
800 759-8888 PIN # 1365357 (pager)
genner@lucent com

> -
> From  Naylor  Charles L (Chuck)
> Sent  Monday  December 13, 1999 11 50 AM
> To  dackerman@winstar com, azendle@winstar com
> Cc  Wilson  Mark (Mark), Lewine  R N (Bob)  Petrini  Vanessa H
> (Vanessa) Rigotti  David Roy (David)  gpearl@lucent com  Kipke, Richard J
> (Rich)  Genner Byron A (Byron)  Gregg John Andrew (John)
> Subject  Turnkey Update w/o 12/6/99
>
>
> Dave & Allan
>
> Our teams spent considerable time last week performing Due Diligence on
> our Service Node and Hub/B Site turnkey proposals  On Tuesday  the Lucent
> sub team met with folks from engineering including Thanos  Vicki Fiala,
> and Bob Lawson   Wednesday, the team met with your NC&D group including
> George  Mike Roberts  and John Resavage   Finally, Thursday we held our
> full day Review Session with the following participants from Winstar
> George, Mike Roberts  John Resavage  Vicki Fiala  Ira Anslow, Bob Lawson,
> and Lisa Hicks
>
> I want to thank all the Winstar folks who worked with us last week
> Without exception, everyone has been very supportive of Lucent stepping up
> to a turnkey role in your Yr2000 network buildout  Their candid feedback
> and suggestions have provided for productive discussions and yielded an
> Action Plan which will produce incremental results for Winstar in Q1 2000
>
>
> The attached two viewgraphs provide a summary readout from our meetings
> with Winstar along with our collective thoughts on Action Plan
>



DEFENDANT'S
EXHIBIT
*195*

5/4/01

CONFIDENTIAL  WC 0116681

> <<Turnkey Readout ppt>> <<Turnkey Division of Responsibility ppt>>
>
> The team s consensus is to get Lucent started in Q1  While we realize our
> Yr 2000 Turnkey Proposals are not agreed to and concerns remain re  scope
> and price, we collectively believe we must get rolling in order to
> positively impact your Q1 network build  We re suggesting a risk sharing
> arrangement that includes a  not to exceed  price for select Q1
> activities  Pricing for these activities is being re worked based on
> feedback we received from the Winstar troops and we ll be prepared to
> share these this week  The select Q1 activities we re focusing on are
> 100 (+/ ) Bundle Phase 2 Buildings along with those buildings specifically
> identified by marketing  the NYC CoLo initiative  the Richmond Service
> Node, and (30) new Hubs and associated 600 buildings George offered
> yesterday (exact number to be finalized by 12/20)
>
> We look forward to discussing this with you tomorrow during our 11 00
> meeting  Bob Lewine will join us for this part of discussion
>
> Thanks
> Chuck
>
>

Attachment Converted   C \Eudora\Attach\Turnkey Readout ppt

Attachment Converted   C \Eudora\Attach\Turnkey Division of Responsibility ppt

5/4/01

CONFIDENTIAL WC 0116682

# ROA
# TAB
# 689

SECURITIES AND EXCHANGE COMMISSION
WASHINGTON  D C  20549

FORM 10-K

(MARK ONE)

/x/ ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(D) OF THE SECURITIES EXCHANGE
ACT OF 1934
FOR THE FISCAL YEAR ENDED DECEMBER 31  1999

/ / TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(D) OF THE SECURITIES
EXCHANGE ACT OF 1934
FOR TH  TRANSITION PERIOD FROM _____ TO _____

COMMISSION FILE NUMBER 1-10726

WINSTAR COMMUNICATIONS  INC
(EXACT NAME OF REGISTRANT AS SPECIFIED IN ITS CHARTER)

DELAWARE                                              13 3585278
(STATE OR O HER JURISDICTION OF INCORPORATION OR      (I R S  EMPLOYER IDENTIFICATION NO )
ORGANIZATION)

685 THIRD AVENUE
NEW YORK  NEW YORK 10017
(212) 792-9800
(ADDRESS  INCLUDING ZIP CODE  AND TELEPHONE NUMBER  INCLUDING
AREA CODE  OF REGISTRANT S PRINCIPAL EXECUTIVE OFFICES)

SECURITIES REGISTERED PURSUANT TO SECTION 12(B) OF THE ACT  NONE

SECURITIES REGISTERED PURSUANT TO SECTION 12(G) OF THE ACT
COMMON STOCK
Rights to Purchase Series B Preferred Stock

Indicate by check mark whether the registrant (1) has filed all reports
required to be filed by Section 13 or 15(d) of the Securities Exchange Act of
1934 during the preceding 12 months (or for such shorter period that the
registrant was required to file such reports)  and (2) has been subject to such
filing requirements for the past 90 days  Yes /x/  No / /

Indicate by check mark if disclosure of delinquent filers pursuant to Item
405 of Regulation S-K is not contained herein  and will not be contained  to
the best of registrant s knowledge  in definitive proxy or information
statements incorporated by reference in Part III of this Form 10-K or any
amendment to this Form 10-K   /x/

State the aggregate market value of the voting and non-voting common
equity held by non-affiliates computed by reference to the price at which the
common equity was sold  or the average bid and asked price of such  as of a
specified date within the past 60 days  As of March 6  2000  the aggregate



DEFENDANT'S
EXHIBIT
211

market value of such stock was approximately $4 448 1 million

Indicate the number of shares outstanding of each of the registrant's classes of common stock  as of the latest practicable date  As of March 6 ˜000  the number of shares of common stock outstanding was 85 646 757

## DOCUMENTS INCORPORATED BY REFERENCE

The information required in Part III by Items 10  11  12 and 13 is incorporated by reference to the registrant s proxy statement in connection with the annual meeting of stockholders scheduled to be held on June 28, 2000 which will be filed by the registrant within 120 days after the close of its fiscal year

PART I

ITeM 1    BUSINESS

GENERAL (1)

     We provide businesses with broadband services  We offer our services
across our own end-to-end broadband network in 60 major markets in the United
States  including each of the top 30 U S  markets  We also offer services in 10
overseas markets  including Amsterdam  Brussels  Buenos Aires and Tokyo
Revenues from our communications and information services for the year ended
December 31  1999 were $445 6 million compared to $244 4 million for the same
period in 1998

     We believe that our rapidly expanding network will enable us to offer
broadband services to a majority of the companies comprising the business
communications market in the United States  This market is projected to grow
from approximately $178 0 billion in 1999 to approximately $360 0 billion by
2009  Our domestic network combines local and long haul capacity with voice and
data switching facilities and is capable of carrying a substantial portion of
our customers  communications traffic from point of origin to point of
termination  This network consists of

          o  the nation s largest amount of fixed wireless spectrum  covering more
             than 80% of the U S  business market  which we use to extend our
             broadband network across the  last mile  to our customers' buildings

          o  intracity fiber in 50 of the top 60 domestic markets  covering more than
             6 000 delivered or committed route miles  which we are incorporating
into
             our network to interconnect our hub site buildings and switching and
data
             center facilities

          o  a nationwide fiber backbone  comprised of four fiber strands covering
             more than 16 000 route miles  and which connects our top 60 markets

          o  access rights to connect more than 8 000 buildings  which we believe
             provides us with access to more buildings than any other facilities
based
             competitive communications provider  and

          o  34 installed Lucent local and long distance voice switches and 135
             installed data switches

     In order to reduce network deployment costs and increase network
flexibility  we are integrating point to multipoint technology into our
nationwide network  We recently accomplished the initial rollout of point to-
multipoint technology in Oakland  Phoenix  Salt Lake City  San Jose  Seattle
and Washington  D C

OUR SERVICES

     Our broadband network allows us to offer an integrated suite of
communications and information services  including

          o  local and long distance voice services

          o  always-on and dial-up Internet access

          o  ATM  frame relay and IP data transport services

o web hosting and web design and development services

o online business content  including office com  a service from Winstar(2)
     our online business center

o online application hosting services  including Microsoft Office 2000 OnlineSM  and

o network and applications solutions for vertical business communities and

o LAN and WAN systems integration

--  --  -  -  --

1 As used in this report  the terms  we  , us   "our "  our company  and
    Winstar  refer to Winstar Communications  Inc  and  if appropriate in the
    context  its subsidiaries
2 office com(R)  a service from WinstarSM and Wireless FiberSM are service marks
    and WinstarSM  office com(R)  Winstar for BusinessSM and Winstar Business
    InfoCenterTM are trademarks of Winstar Communications  Inc

2

THE WINSTAR NETWORK

We are constructing a broadband communications network that will be capable of carrying bandwidth intensive traffic from point of origination to point of termination for a substantial majority of the companies comprising the business communications market in the United States and selected overseas markets

Connecting the last mile

Local communications service historically has been carried by incumbent local providers over their legacy networks  The portion of these legacy networks that ultimately connects to customer buildings  called the  last mile  is typically copper wire  Without enhancements  copper wire is poorly suited to support high bandwidth services  The rapid growth of bandwidth intensive communications services  such as Internet access  data transport audio and video streaming and e commerce applications  has created an increasingly acute shortage of transmission capacity across the last mile

We believe that there are more than 750 000 commercial buildings in the United States  Only a small percentage of these buildings have broadband connections  most of which are made using fiber-optic cable  Further construction of last mile fiber connections has slowed substantially in recent years due to the high cost and long delays associated with extending fiber to most buildings  Since labor constitutes the largest cost component in the construction of last mile fiber  we believe that it will become increasingly less cost effective to connect the majority of commercial buildings with last-mile fiber

We believe our fixed wireless infrastructure provides an optimal solution for delivering broadband capacity across the last mile  In contrast to fiber the majority of the cost associated with establishing our fixed wireless connections is related to technology and equipment  the cost of which has tended to decrease over time as the technology develops and becomes more widely used  As such  we are able to connect customer buildings at a cost which is substantially less than that incurred in a fiber-build strategy  This significant cost advantage enables us to economically deliver broadband capacity  services and applications to a larger addressable market than would otherwise be possible with fiber or other facilities-based broadband alternatives  We believe that we will be able to bring broadband last mile connections to a majority of commercial buildings in each of our target markets on a cost-effective basis  Where economically warranted or otherwise complementary to our overall system architecture, we may use fiber to establish the last mile broadband connection to a building

Our typical customer is serviced by placing a 10 to 12 inch digital microwave antenna on the roof of the customer s building  The customer s voice data and video communications traffic travels from the customer s premises over the building s internal wiring to this rooftop antenna  The traffic is then routed via wireless transmission to another antenna located on a nearby hub site building which has a direct line of site to the antenna on the customer s building  Hub sites serve as aggregation points for the reception and distribution of our customers  traffic  Hub sites are located to maximize the number of potential buildings from which such sites can receive and distribute this communications traffic  These hub sites are typically located on our intracity fiber rings  allowing traffic received there to continue on at broadband speeds to our switching centers where it is routed to its final destination

We use capacity in the 38 GHz spectrum and the 31 and 28 GHz  or LMDS spectrum  as well as other portions of the radio spectrum for our wireless

connections  Our spectrum holdings cover more than 80% of the business market
in the United States  We can provide customers with up to an OC 3 (more than
2 000 voice grade equivalents) of transmission capacity over a single wireless
link  which is more than 2 700 times faster than the fastest dial-up service
currently in general use  The capacity of these wireless links has risen
dramatically in recent years and we expect that it will continue to expand as
wireless technology advances

We deploy point-to point and point-to-multipoint connections in our local
network infrastructure  Point-to point connections use a single dedicated link
between two antennas having line of site to each other  one located on the
customer s building and one at our hub site  Point-to-multipoint technology
allows for simultaneous transmissions between a single hub site antenna and
multiple customer building antennas to which it has line of sight

A point to multipoint connection allows for the cost of the hub site
antenna to be allocated over numerous customer building sites  rather than just
one  and reduces the capital expenditures necessary to bring broadband

3

ROA
TAB
692

| From | Naylor  Charles L (Chuck) |
|---|---|
| Sent | Tuesday  January 18  2000 12 49 PM |
| To | Wilson  Mark (Mark)  Epstein  Marc N (Marc)  Dowdy  Mary M (Mary)  Quinn  John F (John)  Jerden  Antonietta (Antonietta)  Carrone  Angela (Angela)  Diroma  Jill B (Jill) |
| Cc | Manzi  Frank P (Frank)  Cocito  James Vincent (Jim)  Coleman  Glenn (Glenn)  Rigotti  David  Roy (David) |
| Subject | RE  Winstar Services |

Jill

Thanks for the response  Dave Rigotti on my team will work with Mary Dowdy on processing 4Q PO/invoices
Additionally  we re anxious to pursue the on going services opportunity and will look for Jim Cocito and Mark Wilson s
direction on how to capture this

Chuck

> From   Diroma  Jill B (Jill)
> Sent  Tuesday  January 18  2000 7 27 AM
> To  Naylor  Charles L (Chuck)  Wilson  Mark (Mark)  Epstein  Marc N (Marc)  Dowdy  Mary M (Mary)  Quinn  John
>     F (John)  Jerden  Antonietta (Antonietta)  Carrone  Angela (Angela)
> Cc  Manzi  Frank P (Frank)  Cocito  James Vincent (Jim)  Coleman  Glenn (Glenn)
> Subject  Winstar Services
>
> Mark
>
> We have discussed the Winstar performed services and have concurrence from Corporate CFO that this
> transaction can be done **ONE MORE TIME**  This one time allowance is to cover Calendar 4th quarter services for
> Winstar  We all recognize that this means that a Lucent PO needed to be generated to Winstar dated prior to
> Dec 31  1999  This will then be followed up with invoicing and payments between the parties to take place
> sometime in Feb 2000   Finally a journal entry will be processed in March 2000 to clear out the transaction from
> our books
>
> I understand that the team is working towards a Turn Key solution with this customer  Please keep in mind that
> this alone will not allow us to continue this practice of running Winstar performed services through our
> books   The only way we will run these through our books after this transaction is if they are services performed
> by some party other than Winstar and it is deemed after careful review that Lucent can take revenue on these
> services
>
> Since it is doubtful that we will move to a third party performing all of these services It is imperative that
> communication is sent to Winstar to inform them that we cannot issue any further Purchase Orders for services
> performed by them   Please provide a copy of this coorespondance to me as soon as possible
>
> Thanks
>
> Jill

DEFENDANT'S
EXHIBIT
214

1

LW00053196

# ROA
# TAB
# 753

| | |
|---|---|
| **From** | Quinn  John F (John) |
| **Sent** | Thursday  April 06  2000 2 51 PM |
| **To** | Diroma  Jill B (Jill) |
| **Cc** | Naylor  Charles L (Chuck)  Rigoth  David Roy (David)  Wilson  Mark (Mark)  Dowdy  Mary M (Mary)  Kardomateas  Mary (Mary)  Cassady  Steven John (Steven)  Lorer  Thomas N (Tom)  Noda  John David (Dave)  Deady  Mark A (Mark)  Manzi  Frank P (Frank) |
| **Subject** | RE  Rationale for Lucent/WinSstar Quarterly Funds Transfers for Network Buildout Services |

Jill

Remember sending me your CFO process description (attached below) back in September  on how we flow the WinStar services through Lucent s books so that WinStar can capitalize these services as part of their network build  You had explained that basically the reason Lucent was doing these services was because Winstar has been looking for Lucent to actually take over and perform these services  Since Lucent was not yet in a position to perform the services ourselves  Lucent agreed to flow them through its books so that Winstar could capitalize these services as part of their network build  Lucent would not take any revenue on these transactions and would ensure that these funds would flow between the two companies on the same day

Then I forwarded to you a flowchart (also attached below) of your CFO process description that I created to aid the reader  We did this back then for senior GPO management who had requested some clarification as to why we were issuing such large POs for WinStar on such short notice  I had also copied most of the WinStar team so that everyone would have a better understanding of the process

 

jqWinstar Services        WinStarServices
Process doc        Process (CFO D

Well  it looks like we both need to get together again and update those documents to satisfy the new Chief Procurement Officer  Jose Mejia  who instructed GPO leaders to not do any more of these WinStar quarterly transfer POs (after this last 1Q00 one) until he understands the rationale for them  Dave Noda stated that as an accounting transaction  he was really okay with his team cutting a P O  once a quarter  However  as requested by Dave Noda  Frank Manzi and Tom Lorer  we apparently were both charged with putting in place an ongoing process to handle the checks and balance issue that Dave Noda raised to Jose Mejia

Dave explained his on going issue with these Winstar transactions is that these quarterly funds transfer P O s represent a significant commitment and outflow of cash that is outside of the normal procurement process  Typically a transaction of this size would require significant documentation and approvals to insure that everything was in accordance with company policy and within the controls established by the Corporation  Per the Winstar and CFO team s request  purchasing s role in transactions of this nature  would not involve any background work (RFQ negotiations  ) but merely involve cutting the P O

As usual on this latest 1Q00 PO  senior GPO management requested we avoid another last minute rush when processing such a large dollar PO  Each quarter  I have explained  to them that I create the required Plan Of Action for their approval just as soon as the WinStar team tells me about the quarterly requisition  I also explained to them that these last minute rush POs are unavoidable due to the need to pay both invoices on the same day to avoid the A/R issues  It appears they have a hard time remembering that important yet unavoidable factor

To date  GPO has processed $187M in WinStar quarterly funds transfer POs (each expected to be the last) as follows  1Q99 for $25M  2Q99 for $34M  3Q99 for $38M  4Q99 for $38 5M and now 1Q00 for $51 5M  We recognize that these orders are outside normal GPO processes and procedures and we have been doing them to accommodate

1

DEFENDANT'S
EXHIBIT
274

LW00079831

your accounting transactions for the WinStar team  As it appears that these funds transfers will continue to flow through GPO  senior CFO and GPO managers are requiring a documented and approved process

Mark Deady, CFO  North America, confirmed to Tom Loner that GPO had CFO clearance to process the last $51 5M Purchase Order  after obtaining the appropriate signatures  Mark said he spoke to you and that you verified that the order was within the guidelines and intent of the arrangements made by Frank Manzi directly with WinStar

My question is  what are Manzi s guidelines and the intent of the arrangements with WinStar? And can we incorporate those guidelines and the intent of the WinStar arrangements into our revised update of our two attached documents? Do we need to start all over if Manzi s guidelines and arrangements are substantially different then what we had documented back in September?

Please advise on how we should proceed in creating/modifying a new/existing documented and pre-approved process that we can place before Jose Mejia for approval  Our best course of action would be to develop an estimate of WinStar s quarterly funds transfers for an entire year and obtain Jose s approval for the next entire year

I would appreciate it if you would quickly review our CFO process and flowchart  Then let me know if we need to modify them to reflect the latest arrangements  We need to do this quickly so we can send it up the line to our Chief Procurement Officer  Jose Mejia  for his understanding of the rationale behind these POs

Forgive my long yet necessary email  Thanks and have a great day

*John F Quinn*  APP  CFE

Senior Procurement Specialist
Lucent Technologies
Global Procurement Organization
900 North Point Parkway  Room 93S630
Alpharetta  GA  30005

jfquinn@lucent.com
770-750-2593
Fax  770 750-4496

2

Confidential

LW00079832

Winstar Services Process

| Steps | Details | Action Required |
|---|---|---|
| Winstar issues PO to Lucent for $34M in Various Network related services | $34M subcontracted back to Winstar to perform services noted on their PO to us | PO needs to go to Customer Svc (L McCaffery) |
| Lucent issues PO to subcontractor – (Winstar) for $34M | Winstar performs the required services | GPO needs to issue a PO for $34M to Winstar PO is coded to an Inventory Account, which is relieved when billed to Winstar |
| Winstar performs the services and bills Lucent $34M | Lucent now owes Winstar $34M | A/P receives an invoice from Winstar Payment date is coordinated with Winstar's payment to us which must happen the same month the bill is generated to ensure there is no A/R or A/R issue |
| Lucent then bills Winstar for $34M in services | $34M Winstar services – No Revenue Recognition as it simply clears out the inventory account | Asset management needs to invoice all services which relieves the inventory account |

Confidential

LW00079833

# ROA
# TAB
# 763

$1 150 000 000

REVOLVING CREDIT
AND TERM LOAN AGREEMENT

dated as of May 4 2000

among

WINSTAR COMMUNICATIONS INC

THE GUARANTORS FROM TIME TO TIME PARTIES HERETO

and

WCI CAPITAL CORP

THE LENDERS FROM TIME TO TIME PARTIES HERETO

and

THE BANK OF NEW YORK
as Administrative Agent and Collateral Agent

BNY CAPITAL MARKETS INC
as Sole Lead Arranger and Book Runner

CIBC WORLD MARKETS CORP
CITICORP NORTH AMERICA INC and
CREDIT SUISSE FIRST BOSTON
as Co Arrangers

CITICORP NORTH AMERICA INC
as Syndication Agent

CIBC WORLD MARKETS CORP and
CREDIT SUISSE FIRST BOSTON
as Documentation Agents

THE BANK OF NEW YORK
as Letter of Credit Issuer

DEFENDANT'S
EXHIBIT
284

CONFIDENTIAL 2WC 0057688

(c)  Consolidated Senior Debt to Consolidated Annualized EBITDA  From March 31, 2002 until the satisfaction in full of all the obligations of the Borrower under the Credit Documents and termination of the Commitments of the Lenders hereunder the Consolidated Group Members shall not permit the ratio of Consolidated Senior Debt to Consolidated Annualized EBITDA for any day during the following periods to be more than the following

| Periods | Ratio |
| --- | --- |
| March 31, 2002 - June 29, 2002 | 12.50x |
| June 30, 2002 - September 29, 2002 | 10.00x |
| September 30, 2002 - December 30, 2002 | 9.00x |
| December 31, 2002 - March 30, 2003 | 7.50x |
| March 31, 2003 - June 29, 2003 | 5.00x |
| June 30, 2003 - September 29, 2003 | 4.50x |
| September 30, 2003 - December 30, 2003 | 4.00x |
| December 31, 2003 - March 30, 2004 | 4.00x |
| March 31, 2004 and thereafter | 3.50x |

(d)  EBITDA to Consolidated Debt Service  Commencing in the quarter ending December 31, 2003 not permit the ratio of EBITDA to Consolidated Debt Service for the four consecutive fiscal quarters ending on such date to be less than 1.0

## ARTICLE IX

### Events of Default

Section 9.01  Events of Default  If one or more of the following events (each an *Event of Default* ) shall occur

(a)  The Borrower shall fail duly to pay any principal of any Loan or amount drawn under any Letter of Credit when due whether at maturity by notice of intention to prepay or otherwise

(b)  The Borrower shall fail duly to pay any interest fee or any other amount payable under the Credit Documents within three Business Days after the same shall be due

(c)  The Loan Parties shall fail duly to observe or perform any term covenant or agreement contained in Sections 8.02 and 8.03

(d)  The Loan Parties shall fail duly to observe or perform any other term covenant or agreement contained in this Agreement and such failure shall have

NY1 5   7 170                                    91

CONFIDENTIAL 2WC 0057786

continued unremedied for a period of 30 days after written notice is given by the Administrative Agent to the Loan Parties

(e)  Any representation or warranty made or deemed made by a Loan Party in a Credit Document or Security Document or any statement or representation made in any certificate report or opinion delivered by or on behalf of a Loan Party in connection with a Credit Document or Security Document shall prove to have been false or misleading in any material respect when so made or deemed made

(f)  A Loan Party shall fail to pay any Indebtedness (other than obligations hereunder) in an amount of $25.0 million or more when due and such failure shall continue after the applicable grace period if any specified in the agreement or instrument evidencing such Indebtedness unless such failure shall have been cured or waived or a default shall have occurred and be continuing with respect to any such Indebtedness having an aggregate principal amount outstanding of $25.0 million or more and as a result of such default the holder of such Indebtedness shall have accelerated or shall have the right to accelerate the maturity of such Indebtedness prior to its express maturity

(g)  An involuntary case or other proceeding shall be commenced against any Loan Party (except as provided below) seeking liquidation reorganization or other relief with respect to it or its debts under any applicable bankruptcy insolvency reorganization or similar law or seeking the appointment of a custodian receiver liquidator assignee trustee sequestrator or similar official of it or any substantial part of its property and such involuntary case or other proceeding shall remain undismissed and unstayed for a period of more than 60 days or an order or decree approving or ordering any of the foregoing shall be entered and continued unstayed and in effect

(h)  Any Loan Party (except as provided below) shall commence a voluntary case or proceeding under any applicable bankruptcy insolvency reorganization or similar law or any other case or proceeding to be adjudicated a bankrupt or insolvent or any of them shall consent to the entry of a decree or order for relief in respect of the Loan Party in an involuntary case or proceeding under any applicable bankruptcy insolvency reorganization or other similar law or to the commencement of any bankruptcy or insolvency case or proceeding against any of them or any of them shall file a petition or answer or consent seeking reorganization or relief under any applicable law or any of them shall consent to the filing of such petition or to the appointment of or taking possession by a custodian receiver liquidator assignee trustee sequestrator or similar official of the Loan Party or any substantial part of their respective property or any of them shall make an assignment for the benefit of creditors or any of them shall admit in writing its inability to pay its debts generally as they become due or the Loan Party shall take corporate action in furtherance of any such action

(i)  One or more judgments against a Loan Party or attachments against its property which in the aggregate exceed $25.0 million or the operation or result of which could reasonably be expected to have a Material Adverse Effect shall be rendered against such Loan Party and there shall be any period of 30 consecutive days during

92

NYI   4170

CONFIDENTIAL 2WC 0057787

which a stay of such judgment or attachment by reason of a pending appeal or otherwise shall not be in effect

(j) Notice of intent to terminate or amend a Pension Plan shall have been filed with any affected party (as defined in Section 4001 of ERISA) if after giving effect thereto the Pension Plan is a plan described in Section 4021(b) of ERISA or notice of an application by the PBGC to institute proceedings to terminate a Pension Plan pursuant to Section 4042 of ERISA shall have been received by any member of the ERISA Group in each case only if the amount of unfunded benefit liabilities (as defined in Section 4001(a)(18) of ERISA) as of the date such notice is filed or received exceeds $15 0 million any member of the ERISA Group incurs liability under Sections 4062(e) 4063 or 4064 of ERISA in respect of a Pension Plan in an amount in excess of $15 0 million an amendment is adopted to a Pension Plan which would require security to be given to such Pension Plan pursuant to Section 401(a)(29) of the Code or Section 307 of ERISA in an amount in excess of $15 0 million any member of the ERISA Group fails to make a payment to a Pension Plan which would give rise to a Lien in favor of such Plan under Section 302(f) of ERISA in an amount in excess of $15 0 million or

(k) any Change of Control shall occur

then and at any time during the continuance of such Event of Default the Required Lenders may by written notice to the Borrower take either or both of the following actions at the same or different times (i) terminate forthwith the Commitments and (ii) declare any Loans then outstanding to be due whereupon the principal of the Loans so declared to be due together with accrued interest thereon and any unpaid amounts accrued under the Credit Documents shall become forthwith due without presentment demand protest or any other notice of any kind (all of which are hereby expressly waived by the Loan Parties) *provided* that in the case of any Event of Default described in Section 9 01(g) or (h) occurring with respect to the Borrower the Commitments shall automatically and immediately terminate and the principal of all Loans then outstanding together with accrued interest thereon and any unpaid amounts accrued under the Credit Documents shall automatically and immediately become due without presentment demand protest or any other notice of any kind (all of which are hereby expressly waived by the Loan Parties)

The provisions of paragraphs (g) and (h) of this Section 9 01 shall not apply to any Loan Party that would be permitted to become an Unrestricted Subsidiary pursuant to Article XII without the occurrence of a Default hereunder after giving effect to such action Any such Loan Party shall be deemed converted to an Unrestricted Subsidiary provided that such conversion shall be deemed to be an Investment in Unrestricted Subsidiaries under Section 8 02(d)(ii)(T) as of the date of such conversion

NY1 51  25130                              93

CONFIDENTIAL  2WC  0057788

# ROA
# TAB
# 764

Winstar Outstanding
New Facility Dated
May 04 2000

# Winstar - WVF-1

| Drawdowns | Lucent Content | Non-Lucent Content | Total |
|---|---|---|---|
| 06/23/2000 | $ 167,174,406.90 | $ 80,889,699.13 | 248,064,106.03 |
| 07/31/2000 | $ 15,412,989.42 | $ 56,956,728.63 | 72,369,718.05 |
| 08/31/2000 | $ 18,159,440.23 | $ 55,381,451.41 | 73,540,891.64 |
| 09/29/2000 | $ 35,670,396.11 | $ 67,388,372.00 | 103,058,768.11 |
| 10/23/2000 | 68,912,173.52 | 124,020,147.35 | 192,932,320.87 |
| | $ 305,329,406.18 | $ 384,636,398.52 | $ 699,965,804.70 |



DEFENDANT'S
EXHIBIT
285

Confidential

# ROA
# TAB
# 774

| | |
|---|---|
| From | Rogers  Leslie L (Leslie) |
| Sent | Tuesday  May 23  2000 9 12 AM |
| To | Petrini  Vanessa H (Vanessa)  Forrester  Douglas Lamar (Doug)  Epstein  Marc N (Marc)  O'Hara  Thomas M (Tom)  Diroma  Jill B (Jill)  Diez, Carlos A (Carlos)  Naylor  Charles L (Chuck)  Aversano  Nina (Nina)  Viquera  William (William)  Quinn  William N (William)  Perricone  Elizabeth (Beth)  Celross  Susan M (Susan)  Rogers  Leslie L (Leslie)  Fasclano  Annette L (Annette) |
| Cc | Mo Caffrey  Catherine Loy (Loy) |
| Subject | RE  Winstar Financing  UPDATE |

It looks like Winstar cannot borrow  We believe that the invoices are to and the equipment owned WNE  not our new borrower WVL 1 LLC  That means  that Bank of New York has that particular invoiced equipment already as its collateral  We're checking into it now and will let you know by the end of the day if we found a way out of funding

| | |
|---|---|
| From | Rog  rs  Lesl e L (Leslie) |
| Sent | Tuesday  May 23  2000 11 27 AM |
| To | Petrini  Vanessa H (Vanessa)  Forrester  Douglas Lamar (Doug)  Epstein  Marc N (Marc)  O'Hara  Thomas M (Tom)  Diroma, Jill B (Jill)  Diez, Carlos A (Carlos)  Naylor  Charles L (Chuck)  Aversano  Nina (Nina)  Viquera, William (William)  Quinn  William N (William)  Perricone  Elizabeth (Beth)  Celross  Susan M (Susan) |
| Cc | Mc Caffrey  Catherine Loy (Loy) |
| Subject | RE  Winstar Financing |

Dear CT

I need your quick attention to a situation  Winstar has given a borrowing request to Lucent for $160 million  of which $77 million will be for non-Lucent equipment  As you know  the company cannot borrow from Lucent until it has used up all of its other funds

The company borrowed everything under its bank facility and now has $600 million cash  Rouhana wants to borrow from Lucent because he has no more availability under the bank deal  This satisfies the need to "use up availability from other sources

Rouhana is worried about the markets and is borrowing while he can  This is not in the spirit of the new deal  This is reprehensible  The company lied to us about the usage  It is because of their representations that they would not borrow that we closed o r new deal

I need the CT to call Nate and demand that Winstar use its cash to pay us and work with us under our agreement  Please let me know if you can do this

Lea

| | |
|---|---|
| From | Naylor  Charles L (Chuck) |
| Sent | Tuesday  May 23  2000 9 36 AM |
| To | Petrini, Vanessa H (Vanessa)  Forrester  Douglas Lamar (Doug)  Epstein, Marc N (Marc)  O'Hara, Thomas M (Tom)  Jill D roma  Carlos Diez |
| Cc | Catherine Mc Caffrey  James Vickers  Leslie Rogers |
| Subject | RE  Winstar Financing |

Jill

Can you please weigh in on this and direct Customer Service and Asset Management accordingly?

Chuck

X

DEFENDANT'S
EXHIBIT
295

LW00293397

# ROA
# TAB
# 779

**Perricone, Elizabeth (Beth)**

| | |
|---|---|
| **From** | Alfred  Adrian (Adnan) |
| **Sent** | Thursday  June 01  2000 2 10 PM |
| **To** | Rogers  Leslie L (Leslie)  Perricone  Elizabeth (Beth) |
| **Subject** | Winstar Summary xls |



Winstar Summary xls

Leslie and Beth

Of all the draws totaling $1 207Billion from December 1998 to April 30  2000  $462 587 460 was used for payment of Lucent Invoices

Sorry for the delay in getting these figures  I got caught up on a different project

Regards
Adnan

Page 1

DEFENDANT'S
EXHIBIT
300

Winstar Communications
Credit Agreement Summary

For the Month ended
April-00

| Drawdowns | | Loaned 1 value | Fees (Feb-25 .%) | Exhibited Interest | L rest Cancel | Non-Loan 1 C rn t | Total |
|---|---|---|---|---|---|---|---|
| 1 | December 4, 1998 | 40,404,106 | 600,000 | 2,080,355 | 19,404,782 | 77,000,000 | 62,943,137 |
| 2 | December 29, 1998 | 8,461,721 | | 1,929,413 | 19,463,134 | 20,000,000 | 30,471,134 |
| 3 | January 25, 1999 | 19,179,723 | | 3,253,711 | 22,287,444 | 30,000,000 | 52,287,444 |
| 4 | February 25, 1999 | 18,702,019 | | 1,334,113 | 11,053,514 | 10,000,000 | 21,053,514 |
| 5 | March 29, 1999 | 3,794,233 | | 1,496,138 | 8,204,146 | 20,000,000 | 28,204,146 |
| 6 | April 30, 1999 | 57,062,593 | | 3,463,146 | 61,684,125 | 20,000,000 | 69,534,125 |
| 7 | May 25, 1999 | 15,620,204 | | 1,931,677 | 18,100,516 | 50,000,000 | 35,100,516 |
| 8 | June 15, 1999 | 33,245,922 | | 1,311,659 | 33,227,761 | 25,000,000 | 63,342,761 |
| 9 | July 21, 1999 | 57,070,023 | | 2,148,467 | 58,524,400 | 25,000,000 | 84,524,400 |
| 10 | August 31, 1999 | 62,255,718 | 16,500,000 | 8,041,733 | 74,704,402 | 64,000,000 | 83,758,842 |
| 11 | September 30, 1999 | 5,137,783 | | | 5,137,783 | 35,000,000 | 40,137,783 |
| 12 | October 29, 1999 | 27,165,413 | | | 27,165,428 | 35,000,000 | 62,165,413 |
| 13 | December 17, 1999 | 20,714,991 | | 1,637,729 | 78,803,420 | 51,000,000 | 79,807,723 |
| 14 | December 29, 1999 | 22,596,240 | | 1,121,112 | 23,717,352 | 35,000,000 | 81,717,352 |
| 15 | December 30, 1999 | | | | | 12,709,363 | 12,709,363 |
| 16 | December 31, 1999 | 10,346,511 | | 739,155 | 18,715,529 | 0.10 | 18,715,529 |
| 17 | January 1, 2000 | 3,711,721 | | 582,619 | 4,064,075 | 25,000,000 | 29,064,070 |
| 18 | February 10, 2000 | 47,457,132 | | | 7,457,132 | 30,000,000 | 77,457,132 |
| 19 | March 15, 2000 | 42,304,707 | | | 63,234,707 | 70,000,000 | 138,234,707 |
| | April 30, 2000 | | | | 11,133,000 | 111,000,000 | 122,133,000 |
| T b) Drawdown 1 | | 465,329,141 | 22,100,000 | 27,108,929 | 818,862,010 | 491,047,72 | 1,287,131,723 |

Total Draw (December 4th, 1998 to December 15th, 1999)
Pit cent of Earning requested for Other Products and/or Services .........
Calculation of Surcharge Amount
Surcharge Due at the End of Contract Year

| | 34.32% |
| $ | 11,913,515 |
| $ | 3,000,000 |

Total Two (December 17th, 1999 to December 31st, 2000)
Percent of Borrowings used for Other Products and Services ........
Calculation of Surcharge Amount
Surcharge Due at the End of Contract Year

| | 63.15% |
| $ | 18,815,253 |
| $ | 3,000,000 |

Total All Times
Percent 1 Borrowings used for Other Products and Services ........
Calculation of Surcharge Amount 1
$ rcharge D

| | 57.26% |
| $ | 30,863,075 |
| $ | 6,000,000 |

Notes

A Per 3.6.8(b) of the Credit Agreement, Capitalized interest accrues while the committment
B Per 14.3(c) (D)right Agreement Surcharge is capped as $3,000,000 per year

Lucent Technologies, Inc - Proprietary (Restricted)
Solely for authorized persons having
a need to know

Confidential

ROA
TAB
869

| | |
|---|---|
| **From** | Harris Deborah K (Deborah Kristine) |
| **Sent** | Friday September 22 2000 9 26 AM |
| **To** | dackerman@winstar com ruhl@winstar com |
| **Cc** | Aversano Nina Plunkett, William bzlotnick@winstar com lhicks@winstar com jritter@winstar com fruben@winstar com |
| **Subject** | Winstar Services Purchase Order |
| **Importance** | High |

Dave and Rick

As Bill Plunkett and I indicated in our phone conversations on Thursday September 21st attached is a letter explaining the Lucent position regarding the Puchase Order for Services issued by Winstar on September 8th
Debbie



njuwinstar doc        dwawinstar doc

DEFENDANT'S
EXHIBIT
390

1



**Lucent Technologies**
Bell Labs Innovations

Deborah K Harris   Lucent Technologies Inc
Vice President   Room A2-E52
Global Sales   283 King George Road
Winstar Account   Warren New Jersey 07059
Telephone 908 559 5983
Facsimile 908 559 2338
email  dharrisbrown@lucent.com

September 22 2000

Mr  Richard J  Uhl
Group Executive and Chief Financial Officer
Winstar Communications
685 Third Avenue
New York  New York 10017

Dear Rick

At the signing of the supply agreement certain services in support of the Winstar network deployment were described as potentially being performed by Lucent Technologies  The actual assumption of these services was contingent upon the development and successful execution of a transition plan for the services that Lucent and Winstar agreed were Lucent competencies and could be successfully executed by Lucent

In the past year  Lucent has in fact executed a broad spectrum of services support valued at $100M such as  Architecture Planning  Network/City Planning  Integration Test Lab  Capacity Management  Detailed Equipment Engineering  Installation  Program Management  Integration Testing  Kenan Billing Integration  Construction Management  Monitoring & Surveillance Operations Technicians  Disaster Recovery analysis, etc

There is tremendous potential in both the volume and content of services which Lucent can continue to provide and expand upon in support of Winstar s rapid growth  As Lucent becomes much more active in the actual construction of Winstar s Hubs and Bs/Cs worldwide  expansion of Metros in North America  and growth of the Long Haul Optical Network in North America  and potentially in Europe  the volume of business can grow significantly  In addition there are other untapped areas for Lucent services growth

Clearly, Winstar is growing globally and the need to ensure a consistent high level of execution, based upon proven best practices  is required  Currently, Winstar does not have a Global Program Management Office (GPMO) to plan  coordinate  and ensure flawless execution worldwide  Lucent is prepared to provide the people  processes  and tools to Winstar to quickly establish a GPMO as a value added service to support Winstar International operations

There is a category of services which to date Winstar continues to provide for itself These services include

Radio RF engineering
Site acquisition
Winstar Systems Group Services
- CSP Host development
- BSS systems testing
- Production Operations
Winstar Network Services management
Leased facilities acquisition

We have been pursuing ways to take on these services in an agreeable manner to all parties but have been unable to reach consensus Consequently, we believe it is not appropriate for Lucent to accept Purchase Orders for these services Specifically, we must reluctantly reject line item #1 of the Purchase Order for $65,509,331 00 WVF1 00000002958 issued by Winstar on September 8 2000 Lucent stands ready to negotiate an arrangement under which Lucent becomes responsible for some or all of these services whether via outsourcing or some other method We suggest that Lucent and Winstar each designate an empowered team to move ahead with these negotiations with the goal of completing by October 15 2000 If you agree with this suggestion we are ready to start immediately beginning with a kickoff meeting next week

If you have any questions please contact me

Sincerely



Letter to
D W Ackerman

Copy to
N Aversano
L Hicks
W Plunkett
F Rubin
J Ritter
B Zlotnick

Confidential

LW00101021