UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Civil Action No. 06-147(JJF) |
| WINSTAR COMMUNICATIONS, INC., et al., | Chapter 7 |
| Debtors. | Bankr. Case No. 01-1430 (KJC) |
| LUCENT TECHNOLOGIES INC., | Adv. Pro. No. 01-1063 (KJC) |
| Defendant-Appellant, | |
| v. | |
| CHRISTINE C. SHUBERT, CHAPTER 7 TRUSTEE, | |
| Plaintiff-Appellee. | |

## TRUSTEE CHRISTINE C. SHUBERT'S APPENDIX - VOLUME 5 OF 5

On the Brief:

    Stephen M. Rathkopf, Esq.
    David R. King, Esq.
    Andrew C. Gold, Esq.

Of Counsel:

    Sheldon K. Rennie, Esq.
    (DE Bar No. 3772)

HERRICK, FEINSTEIN LLP
2 Park Avenue
New York, New York 10016-9301
Telephone:    (212) 592-1400
Facsimile:    (212) 592-1500

FOX ROTHSCHILD LLP
Citizens Bank Center
919 North Market Street
Suite 1300
Wilmington, Delaware 19899-2323
Telephone:    (302) 654-7444

*Attorneys for Appellee Christine C. Shubert, Chapter 7 Trustee*

HF 3306091v.1 #06723/0002 06/13/2006

# APPENDIX

## TABLE OF CONTENTS

|  | ROA | Page |
|---|---|---|
| **VOLUME 1** | | |
| **PLEADINGS:** | | |
| Judgment 12/21/05 | 351 | B1 |
| Opinion 12/21/05 | 347 | B5 |
| District Court Opinion 11/18/04 | 2212 | B93 |
| Second Amended Complaint | 69 | B104 |
| Joint Pretrial Memorandum | 292 | B166 |
| RJSF | 327 | B181 |
| TFOF | 334 | B189 |
| TCOL | 334 | B279 |
| **VOLUME 2** | | |
| LFOF & LCOL | 335 | B435 |
| **TRIAL TRANSCRIPTS:** | | |
| Aversano | 363 | B629 |
| Garrett | 375 | B638 |
| Harris | 366 | B649 |
| Hayes | 368 | B673 |
| Holwell | 375 | B684 |
| Hopkins | 366 | B687 |
| Huber | 361 | B690 |
| Hund-Mejean | 369 | B695 |
| Jules | 361 | B705 |
| Keefe | 374 | B711 |

|  | ROA | Page |
|---|---|---|
| Perricone | 375 | B716 |
| Pocalyko | 358 | B728 |
| Rogers | 375 | B755 |
| Schacht | 376 | B756 |
| Solomon | 376 | B776 |
| Stark | 374 | B782 |
| Terrell | 376 | B789 |
| Verwaayen | 368 | B797 |
| Wilson | 371 | B804 |

## VOLUME 3

**JOINT TRIAL EXHIBIT TRANSCRIPTS:**

| Ackerman | 465 | B814 |
|---|---|---|
| DiRoma | 463 | B854 |
| Harris | 478 | B871 |
| Hicks | 461 | B906 |
| Holwell | 476 | B927 |
| Kantor | 460 | B928 |
| McGinn | 466 | B954 |
| Montemarano | 468 | B956 |
| Plunkett | 477 | B980 |
| Rubin | 464 | B995 |
| Schacht | 473 | B1003 |
| Uhl | 472 | B1024 |
| Zlotnick | 462 | B1029 |

HF 3306170v.1 #06723/0002 06/13/2006

|  | ROA | Page |
|---|---|---|

**PLAINTIFF'S TRIAL EXHIBITS**

| | ROA | Page |
|---|---|---|
| PX-2 | 1244 | B1043 |
| PX-3 | 1245 | B1046 |
| PX-13 | 1255 | B1048 |
| PX-21 | 1263 | B1056 |
| PX-22 | 1264 | B1069 |
| PX-43 | 1285 | B1070 |
| PX-45 | 1287 | B1081 |
| PX-46 | 1288 | B1083 |
| PX-51 | 1293 | B1084 |
| PX-53 | 1295 | B1100 |
| PX-54 | 1296 | B1103 |
| PX-55 | 1297 | B1105 |
| PX-56 | 1298 | B1107 |
| PX-57 | 1299 | B1111 |
| PX-58 | 1300 | B1113 |
| PX-62 | 1304 | B1118 |
| PX-66 | 1308 | B1120 |
| PX-70 | 1312 | B1124 |
| PX-73 | 1315 | B1126 |
| PX-78 | 1320 | B1130 |
| PX-79 | 1321 | B1132 |
| PX-81 | 1323 | B1134 |
| PX-84 | 1326 | B1140 |
| PX-86 | 1328 | B1142 |
| PX-87 | 1329 | B1153 |

HF 3306170v.1 #06723/0002 06/13/2006

|  | ROA | Page |
|---|---|---|
| PX-88 | 1330 | B1156 |
| PX-90 | 1332 | B1157 |
| PX-92 | 1334 | B1162 |
| PX-94 | 1336 | B1163 |
| PX-104 | 1346 | B1164 |
| PX-107 | 1349 | B1165 |
| PX-109 | 1351 | B1172 |
| PX-110 | 1352 | B1186 |
| PX-112 | 1354 | B1188 |
| PX-113 | 1355 | B1191 |
| PX-116 | 1358 | B1193 |

**VOLUME 4**

| PX-123 | 1365 | B1194 |
| PX-125 | 1367 | B1344 |
| PX-127 | 1369 | B1345 |
| PX-131 | 1373 | B1347 |
| PX-136 | 1378 | B1350 |
| PX-137 | 1379 | B1351 |
| PX-138 (Excerpts) | 1380 | B1352 |
| PX-148 | 1390 | B1366 |
| PX-149 | 1391 | B1370 |
| PX-151 | 1393 | B1371 |
| PX-153 | 1395 | B1383 |
| PX-155 | 1397 | B1395 |
| PX-157 | 1399 | B1396 |
| PX-158 | 1400 | B1397 |

HF 3306170v.1 #06723/0002 06/13/2006

|       |       | ROA  | Page  |
|-------|-------|------|-------|
| PX-167 | ............................................................................ | 1409 | B1398 |
| PX-169 | ............................................................................ | 1411 | B1400 |
| PX-179 | ............................................................................ | 1421 | B1405 |
| PX-185 | ............................................................................ | 1427 | B1413 |
| PX-186 | ............................................................................ | 1428 | B1415 |
| PX-187 | ............................................................................ | 1429 | B1464 |
| PX-188 | ............................................................................ | 1430 | B1468 |
| PX-192 | ............................................................................ | 1434 | B1470 |
| PX-199 | ............................................................................ | 1441 | B1480 |
| PX-200 | ............................................................................ | 1442 | B1482 |
| PX-201 | ............................................................................ | 1443 | B1487 |
| PX-202 | ............................................................................ | 1444 | B1510 |
| PX-220 | ............................................................................ | 1462 | B1511 |
| PX-225 | ............................................................................ | 1467 | B1513 |
| PX-231 | ............................................................................ | 1473 | B1515 |
| PX-241 | ............................................................................ | 1483 | B1516 |
| PX-243 | ............................................................................ | 1485 | B1517 |
| PX-251 | ............................................................................ | 1493 | B1519 |
| PX-252 | ............................................................................ | 1494 | B1521 |
| PX-261 | ............................................................................ | 1530 | B1523 |
| PX-262 | ............................................................................ | 1504 | B1524 |
| PX-264 | ............................................................................ | 1506 | B1526 |
| PX-297 | ............................................................................ | 1539 | B1529 |
| PX-300 | ............................................................................ | 1542 | B1532 |
| PX-307 | ............................................................................ | 1549 | B1535 |
| PX-311 | ............................................................................ | 1553 | B1537 |

HF 3306170v.1 #06723/0002 06/13/2006

|  | ROA | Page |
|---|---|---|
| PX-320 | 1562 | B1542 |
| PX-322 | 1564 | B1545 |
| PX-323 | 1565 | B1546 |
| PX-324 | 1566 | B1551 |
| PX-325 | 1567 | B1552 |
| PX-326 | 1568 | B1554 |
| PX-330 | 1572 | B1555 |
| PX-340 | 1582 | B1556 |
| PX-342 | 1584 | B1589 |
| PX-345 | 1587 | B1614 |
| PX-348 | 1590 | B1615 |
| PX-349 | 1591 | B1617 |
| PX-360 | 1602 | B1618 |
| PX-390 | 1632 | B1619 |
| PX-440 | 1682 | B1620 |
| PX-443 | 1685 | B1621 |
| PX-462 | 1704 | B1623 |
| PX-486 | 1728 | B1664 |
| PX-501 | 1743 | B1665 |
| PX-506 | 1748 | B1667 |
| PX-507 | 1749 | B1677 |
| PX-508 | 1750 | B1693 |
| PX-509 | 1751 | B1707 |

HF 3306170v.1 #06723/0002 06/13/2006

|  | ROA | Page |
|---|---|---|

## VOLUME 5

**DEFENDANT'S TRIAL EXHIBITS**

| | ROA | Page |
|---|---|---|
| DX-1 (Excerpts) | 479 | B1709 |
| DX-22 | 500 | B1724 |
| DX-29 (Excerpts) | 507 | B1760 |
| DX-32 | 510 | B1793 |
| DX-33 | 511 | B1813 |
| DX-72 | 550 | B1833 |
| DX-96 | 574 | B1835 |
| DX-142 | 620 | B1843 |
| DX-214 | 692 | B1844 |
| DX-260 | 739 | B1845 |
| DX-364 | 843 | B1847 |
| DX-516 | 995 | B1850 |
| DX-644 | 1123 | B1944 |
| DX-702 | 1181 | B2067 |
| DX-721 | 1200 | B2088 |
| DX-739 | 1219 | B2110 |

HF 3306170v.1 #06723/0002 06/13/2006

# DEFENDANT'S TRIAL EXHIBITS

Lucent Technologies

LUCENT TECHNOLOGIES, INC.
P O BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

# INVOICE

CUST SVC TEAM CODE: SE

SHIP TO
WINSTAR NETWORK EXPANSION LLC
PROJECT WNE000004692 / D4131NH
SPARES AND EXCHANGE
ATTN: REGINA BERGER
60 HUDSON STREET      SUITE 1204
NEW YORK     NY 10013-3316

BILL TO
WINSTAR WIRELESS
ATTN: JULIAN HADDAD
2548 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON     VA 20171

| | |
|---|---|
| INVOICE NUMBER | 10103521 |
| INVOICE DATE | 06/28/00 |
| ACCOUNT NUMBER | 100109838 |
| PAGE NUMBER | 1 |
| PAYMENT DUE | 07/28/00 |

| CUSTOMER P.O. # | LUC REFERENCE # | CUSTOMER CODE | TERMS | CONTRACT # | FOB |
|---|---|---|---|---|---|
| WNE0000048 | | NNY702 (Y7) | NET 30 DAYS | | |

| ITEM NO | LUCENT ORDER | SHIP DATE | SHIP METH | BILL OF LADING # | PART NUMBER/DESCRIPTION | QUANTITY ORDERED | QUANTITY SHIPPED | UNIT PRICE | PM | TOTAL PRICE |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | D4131NH | 04/12/00 | | | 10G91220 PK CKT AKM 46B CD1*Y;SV*PN SHIP=000413;DJD=000413 AUTH=SES B000001 | | 1 | $3,169.00 | X | $3,169.00 |
| 2 | D4131NH | 06/20/00 | | | 108447970 SESTP EMER DELIVERY SVC CHG FOR LINE ITEM NUMBER 1 PK CKT AKM 46B CD1*Y;SV*PN SHIP=000521;DJD=000922 | | 1 | $70.00 | X | $70.00 |

CONTINUED ON NEXT PAGE

| | | |
|---|---|---|
| SUB TOTAL | $ | 3,239.00 |
| LESS ADVANCE PAYMENT | | |
| TRANSPORTATION | $ | .00 |
| TAX | $ | .00 |
| TOTAL DUE | $ | 3,239.00 |

QUESTIONS ABOUT YOUR ACCOUNT?
CALL     DIANE SHULTZ
(404) 673-5273

INVOICES ARE PAYABLE IN U S CURRENCY AND OVERDUE AMOUNT SHALL BEAR INTEREST AT A REASONABLE RATE OR IS SUBJECT TO LATE PAYMENT CHARGES PER AGREEMENT
REMARKS
THANK YOU FOR LETTING US SERVE YOU AS WE STRIVE FOR BILLING ACCURACY YOUR TIMELY PAYMENT IS APPRECIATED.

----- RETURN THIS PORTION WITH PAYMENT -----

REMIT TO
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: JULIAN HADDAD
2548 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON     VA 20171

| ACCOUNT NUMBER | INVOICE # | CURRENT BALANCE | TOTAL DUE THIS BILL |
|---|---|---|---|
| 100109838 | 10103521 | N/A | $ 3,239.00 |

| AMOUNT PAST DUE | AMOUNT THIS BILL | DISCOUNT AMOUNT | AMOUNT ENCLOSED |
|---|---|---|---|
| N/A | $ 3,239.00 | N/A | |

10103521

0000000032900

DUPLICATE

CONFIDENTIAL
WCV A0000496

B1709



**INVOICE**

CUST SVC TEAM CODE: SE

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

| | |
|---|---|
| INVOICE NUMBER | 1010G521 |
| INVOICE DATE | 06/26/00 |
| ACCOUNT NUMBER | 100109838 |
| PAGE NUMBER | 2 |
| PAYMENT DUE | 07/26/00 |

SHIP TO
WINSTAR NETWORK EXPANSION LLC
PROJECT WNEOOOOO4892 / D4131MH
SPARES AND EXCHANGE
ATTN: REGINA BERGER
60 HUDSON STREET   SUITE 1204
NEW YORK   NY 10013-3315

BILL TO
WINSTAR WIRELESS
ATTN: JULIAN HADDAD
2845 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON   VA 20171

| CUSTOMER P.O. # | LUC REFERENCE # | CUSTOMER CODE | TERMS | | CONTRACT # | | FOB |
|---|---|---|---|---|---|---|---|
| WNEOOOOO4B | | HWY702 (Y7) | NET 30 DAYS | | | | |

| ITEM NO | LUCENT ORDER | SHIP DATE | SHIP METH | BILL OF LADING # | PART NUMBER/DESCRIPTION | QUANTITY ORDERED | QUANTITY SHIPPED | UNIT PRICE | PM | TOTAL PRICE |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | AUTH=SES 8000001 | | | | | |
| | | | | | ****** LAST PAGE ****** | | | | | |

| | | |
|---|---|---|
| SUB TOTAL | $ | 3,239.00 |
| LESS ADVANCE PAYMENT | | |
| TRANSPORTATION | $ | .00 |
| TAX | $ | .00 |
| TOTAL DUE | $ | 3,239.00 |

MAKE CHECK PAYABLE TO
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

INVOICES ARE PAYABLE
IN U.S. CURRENCY AND
OVERDUE AMOUNT SHALL
BEAR INTEREST AT A
REASONABLE RATE OR IS
SUBJECT TO LATE CHARGES
PER AGREEMENT

DUPLICATE

QUESTIONS ABOUT YOUR ACCOUNT?
CALL   DIANE SHULTZ
(404) 573-5273
THANK YOU FOR LETTING US SERVE YOU
REMARKS   AS WE STRIVE FOR BILLING ACCURACY!
YOUR TIMELY PAYMENT IS APPRECIATED.

CONFIDENTIAL
WCV A0000497

B1710



# INVOICE

Lucent Technologies

LUCENT TECHNOLOGIES, INC
P.O. BOX 1003I7
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

| | |
|---|---|
| CUST SVC TEAM CODE | SE |
| INVOICE NUMBER | 10104127 |
| INVOICE DATE | 07/25/00 |
| ACCOUNT NUMBER | 100109838 |
| PAGE NUMBER | 1 |
| PAYMENT DUE | 08/24/00 |

SHIP TO
WINSTAR TELECOMMUNICATIONS A4975NH
ATTN: BILL MC MAHON
7799 LEESBURG PIKE    SUITE 401 SOUTH
TYSONS CORNER    VA 22043

BILL TO
WINSTAR
ATTN: ACCOUNTS PAYABLE
LINDA WALTON
1577 SPRINGFIELD ROAD
VIENNA    VA 22182

| CUSTOMER P.O. # | CONTRACT # | FOB |
|---|---|---|
| 100270 | | |

| ITEM NO | LUCENT ORDER | SHIP DATE | SHIP METH | BILL OF LADING # | LUC REFERENCE # | CUSTOMER CODE HMY701 (Y7) | TERMS NET 30 DAYS | PART NUMBER/DESCRIPTION | QUANTITY ORDERED | QUANTITY SHIPPED | UNIT PRICE | PM | TOTAL PRICE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | A4975NH | 07/18/00 | | | | | | 900700000 SESS NORM DELIVERY SVC CHG FOR LINE ITEM NUMBER 1 PK CKT UN 582 CO1#Y.5WNN SHIP=000720:DJD=000721 AUTH=SES 8000390 | | 1 | $35 00 | 1 | $35 00 |
| 3 | A4975NH | 07/18/00 | | | | | | 100898503 PRODUCT EXCHANGE CHARGE FOR LINE ITEM NUMBER 1 PK CKT UN 582 | | 1 | $300 00 | 1 | $300.00 |

CONTINUED ON NEXT PAGE

- - - - - - - - RETURN THIS PORTION WITH PAYMENT - - - - - - - -

| | |
|---|---|
| SUB TOTAL | $ 335 00 |
| LESS ADVANCE PAYMENT | |
| TRANSPORTATION | $ 00 |
| TAX | $ 00 |
| TOTAL DUE | $ 1,955 00 |

QUESTIONS ABOUT YOUR ACCOUNT?
CALL    DIANE SHULTZ
         (404) 573-5273

REMARKS
THANK YOU FOR LETTING US SERVE YOU
AS WE STRIVE FOR BILLING ACCURACY!
YOUR TIMELY PAYMENT IS APPRECIATED

INVOICES ARE PAYABLE IN U.S. CURRENCY AND OVERDUE AMOUNT SHALL BEAR INTEREST AT A REASONABLE RATE OR IS SUBJECT TO LATE PAYMENT CHARGES PER AGREEMENT

REMIT TO
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR
ATTN: ACCOUNTS PAYABLE
LINDA WALTON
1577 SPRINGFIELD ROAD
VIENNA    VA 22182

| ACCOUNT NUMBER | INVOICE # | CURRENT BALANCE | TOTAL DUE THIS BILL |
|---|---|---|---|
| 100109838 | 10104127 | N/A | $ 1,955 00 |
| AMOUNT PAST DUE | AMOUNT THIS BILL | DISCOUNT AMOUNT | AMOUNT ENCLOSED |
| N/A | $ 1,955.00 | N/A | |

10104127                    0000000001955000

DUPLICATE

CONFIDENTIAL
WCV A0000505

B1711

Lucent Technologies
Bell Labs Innovations

# INVOICE

**CUST SVC TEAM CODE**  SE

LUCENT TECHNOLOGIES, INC
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

SHIP TO  WINSTAR TELECOMMUNICATIONS A4975NH
ATTN BILL MC MAHON
7799 LEESBURG PIKE  SUITE 401 SOUTH
TYSONS CORNER       VA 22043

BILL TO  WINSTAR
ATTN, ACCOUNTS PAYABLE
LINDA WALTON
1577 SPRINGFIELD ROAD

VIENNA       VA 22182

| INVOICE NUMBER | 10104127 |
|---|---|
| INVOICE DATE | 07/25/00 |
| ACCOUNT NUMBER | 100109838 |
| PAGE NUMBER | 2 |
| PAYMENT DUE | 08/24/00 |
| CONTRACT # | |

| CUSTOMER P.O. # | LUC REFERENCE # | CUSTOMER CODE | TERMS | FOB |
|---|---|---|---|---|
| 100270 | | WNY701 (Y7) | NET 30 DAYS | |

| ITEM NO | LUCENT ORDER | SHIP DATE | SHIP METH | BILL OF LADING # | PART NUMBER/DESCRIPTION | QUANTITY ORDERED | QUANTITY SHIPPED | UNIT PRICE | PM | TOTAL PRICE |
|---|---|---|---|---|---|---|---|---|---|---|
| 2 | A4975NH | 07/18/00 | | | CD1*Y,SV*NN SHIP*000720,OJD*000721 AUTH*SES B000390 | | | | | |
| | | | | | 90079085B SESS NORM DELIVERY SVC CHG FOR LINE ITEM NUMBER 1 PK CKT BKF 1 CD1*Y,SV*NN SHIP*000720,OJD*000721 AUTH*SES B000394 | | 1 | $35 00 | I | $35 00 |
| 2 | A4975NH | 07/18/00 | | | 90079086B SESS NORM DELIVERY SVC CHG FOR LINE ITEM NUMBER 1 PK CKT BKD 1 CD1*Y,SV*NN SHIP*000720,OJD*000721 AUTH*SES B000395 | | 1 | $35 00 | I | $35 00 |
| | | | | | CONTINUED ON NEXT PAGE | | | | | |

MAKE CHECK PAYABLE TO

LUCENT TECHNOLOGIES, INC
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

INVOICES ARE PAYABLE
IN U.S. CURRENCY AND
OVERDUE AMOUNT SHALL
BEAR INTEREST AT A
REASONABLE RATE OR IS
SUBJECT TO LATE CHARGES
PER AGREEMENT

| | | |
|---|---|---|
| SUB TOTAL | $ | 405 00 |
| LESS ADVANCE PAYMENT | | |
| TRANSPORTATION | $ | 00 |
| TAX | $ | 00 |
| TOTAL DUE | $ | 1,955 00 |

QUESTIONS ABOUT YOUR ACCOUNT?
CALL    DIANE SHULTZ
(404) 573-8273

REMARKS THANK YOU FOR LETTING US SERVE YOU
AS WE STRIVE FOR BILLING ACCURACY!
YOUR TIMELY PAYMENT IS APPRECIATED.

DUPLICATE

CONFIDENTIAL
WCV A0000506

B1712

# INVOICE

**Lucent Technologies**
Bell Labs Innovations

LUCENT TECHNOLOGIES, INC.
P.O. BOX 1000317
ATLANTA, GA  30384-0317
ATTN.  ACCOUNTS RECEIVABLE

SHIP TO  WINSTAR TELECOMMUNICATIONS A4975NH
ATTN: BILL MC MAHON
7799 LEEBURG PIKE   SUITE 401 SOUTH
TYSONS CORNER       VA 22043

BILL TO  WINSTAR
ATTN. ACCOUNTS PAYABLE
LINDA WALTON
1577 SPRINGFIELD ROAD
VIENNA          VA 22182

| | | CUST SVC TEAM CODE | SE |
|---|---|---|---|
| INVOICE NUMBER | 10104127 | | |
| INVOICE DATE | 07/25/00 | | |
| ACCOUNT NUMBER | 100109636 | | |
| PAGE NUMBER | 3 | | |
| PAYMENT DUE | 08/24/00 | | |

| ITEM NO | LUCENT ORDER | SHIP DATE | SHIP METH | CUSTOMER P.O. # | LUC REFERENCE # | BILL OF LADING # | CUSTOMER CODE | PART NUMBER/DESCRIPTION | TERMS | CONTRACT # | QUANTITY ORDERED | QUANTITY SHIPPED | FOB | UNIT PRICE | PM | TOTAL PRICE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 100270 | | | WNY701 (Y7) | | NET 30 DAYS | | | | | | | |
| 2 | A4975NH | 07/18/00 | | | | | | 901053980<br>PRODUCT EXCHANGE CHARGE<br>FOR LINE ITEM NUMBER 1<br>PK CKT BKO<br>CDI*Y:SV*NH<br>SHIP=000720,OJD=000721<br>AUTH=SES<br>B000395 | | | | 1 | | $1,000 00 | I | $1,000 00 |
| 3 | A4975NH | 07/18/00 | | | | | | 900799951<br>SESS EMER DELIVERY SVC CHG<br>FOR LINE ITEM NUMBER 1<br>PK CKT BKF<br>CDI*Y:SV*NH<br>SHIP=000720;OJD=000721<br>AUTH=SES<br>B200508 | | | | 1 | | $70 00 | I | $70 00 |
| 4 | A4975NH | 07/18/00 | | | | | | 901018717<br>SESS CRIT DELIVERY SVC CHG<br>FOR LINE ITEM NUMBER 2<br>PK CKT BKF<br>CDI*Y:SV*NH<br>SHIP=000720;OJD=000721 | | | | 4 | | $120 00 | I | $480 00 |
| | | | | | | | | CONTINUED ON NEXT PAGE | | | | | | | | |

| | |
|---|---|
| SUB TOTAL: | $ 1,955 00 |
| LESS ADVANCE PAYMENT | |
| TRANSPORTATION | $ 00 |
| TAX | $ 00 |
| TOTAL DUE | $ 1,955 00 |

MAKE CHECK PAYABLE TO
LUCENT TECHNOLOGIES, INC
P.O BOX 1000317
ATLANTA, GA  30384-0317
ATTN:  ACCOUNTS RECEIVABLE

INVOICES ARE PAYABLE
IN U.S. CURRENCY AND
OVERDUE AMOUNT SHALL
BEAR INTEREST AT A
REASONABLE RATE OR IS
SUBJECT TO LATE CHARGES
PER AGREEMENT

DUPLICATE

QUESTIONS ABOUT YOUR ACCOUNT?
CALL      DIANE SHULTZ
(404) 573-5273

REMARKS  THANK YOU FOR LETTING US SERVE YOU
AS WE STRIVE FOR BILLING ACCURACY!
YOUR TIMELY PAYMENT IS APPRECIATED.

CONFIDENTIAL
WCV A0000507

B1713



# INVOICE

**Lucent Technologies**

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

SHIP TO: WINSTAR TELECOMMUNICATIONS A497BHH
ATTN: BILL MC MAHON
7799 LEESBURG PIKE   SUITE 401 SOUTH
TYSONS CORNER        VA 22043

BILL TO: WINSTAR
ATTN: ACCOUNTS PAYABLE
LINDA WALTON
1577 SPRINGFIELD ROAD
VIENNA          VA 22182

CUST SVC TEAM CODE.  SE

| | |
|---|---|
| INVOICE NUMBER | 10104127 |
| INVOICE DATE | 07/25/00 |
| ACCOUNT NUMBER | 100109636 |
| PAGE NUMBER | 4 |
| PAYMENT DUE | 08/24/00 |

| CUSTOMER P.O. # | LUC REFERENCE # | CUSTOMER CODE | TERMS | CONTRACT # | FOB |
|---|---|---|---|---|---|
| 100270 | | WNY701 (Y7) | NET 30 DAYS | | |

| LUCENT ORDER | SHIP DATE | SHIP METH | BILL OF LADING # | PART NUMBER/DESCRIPTION | QUANTITY ORDERED | QUANTITY SHIPPED | UNIT PRICE | PM | TOTAL PRICE |
|---|---|---|---|---|---|---|---|---|---|
| ITEM NO | | | | AUTH-SES B200606 | | | | | |
| | | | | ****** | | | | | |
| | | | | ****** LAST PAGE ****** | | | | | |

| | | |
|---|---|---|
| SUB TOTAL | $ | 1,955.00 |
| LESS ADVANCE PAYMENT | | |
| TRANSPORTATION | $ | .00 |
| TAX | $ | .00 |
| TOTAL DUE | $ | 1,955.00 |

MAKE CHECK PAYABLE TO
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

INVOICES ARE PAYABLE
IN US CURRENCY AND
OVERDUE AMOUNT SHALL
BEAR INTEREST AT A
REASONABLE RATE OR IS
SUBJECT TO LATE CHARGES
PER AGREEMENT

DUPLICATE

QUESTIONS ABOUT YOUR ACCOUNT?
CALL    DIANE SHULTZ
(404) 873-8273

REMARKS: THANK YOU FOR LETTING US SERVE YOU
AS WE STRIVE FOR BILLING ACCURACY!
YOUR TIMELY PAYMENT IS APPRECIATED.

CONFIDENTIAL
WCV A0000508

Lucent Technologies, Inc.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

# INVOICE

CUST SVC TEAM CODE: NM

| | |
|---|---|
| INVOICE NUMBER | 20105242 |
| INVOICE DATE | 06/22/00 |
| ACCOUNT NUMBER | 100109838 |
| PAGE NUMBER | 1 |
| PAYMENT DUE | 07/22/00 |

SHIP TO
WINSTAR NETWORK EXPANSION
PROJ E2156ATT CPO 0000003730
ATTN JEFF DIX
401 PENCADER DR
NEWARK                DE 19702-3339

BILL TO
WINSTAR WIRELESS
ATTN: JULIAN HADDAD
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON                VA 20171

| CUSTOMER P.O. # | LUC REFERENCE # | CUSTOMER CODE | TERMS | CONTRACT # | FOB |
|---|---|---|---|---|---|
| 0000003730 | | NMY702 (Y7) | 2% 10-NET 30 | | |

| ITEM NO | LUCENT ORDER | SHIP DATE | SHIP METH | BILL OF LADING # | PART NUMBER/DESCRIPTION | QUANTITY ORDERED | QUANTITY SHIPPED | UNIT PRICE | PM | TOTAL PRICE |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | E2156ATT | 06/09/00 | | | 408272672 UNIT 01-0005-0-100 | | 34 | $11,193.78 | I | $378,548.52 |
| 2 | E2156ATT | 06/09/00 | | | 408272722 UNIT 01-0008-0-100 | | 34 | $11,193.78 | I | $378,548.52 |
| 3 | E2156ATT | 06/09/00 | | | 408272681 UNIT 02-0100-0-100 | | 142 | $7,412.13 | I | $1,052,522.46 |
| 4 | E2156ATT | 06/09/00 | | | 408272765 UNIT 01-0007-0-100 | | 42 | $11,193.78 | I | $487,818.76 |

CONTINUED ON NEXT PAGE

| | |
|---|---|
| SUB TOTAL | $ 2,277,238.26 |
| LESS ADVANCE PAYMENT | |
| TRANSPORTATION | $ .00 |
| TAX | $ .00 |
| TOTAL DUE | $ 2,857,400.88 |

QUESTIONS ABOUT YOUR ACCOUNT?
CALL        DIANE SHULTZ
            (404) 873-5273

INVOICES ARE PAYABLE IN U.S. CURRENCY
AND OVERDUE AMOUNT SHALL BEAR INTEREST
AT A REASONABLE RATE OR IS SUBJECT TO
LATE PAYMENT CHARGES PER AGREEMENT
REMARKS
PAYMENTS SHOULD BE MAILED
TO ARRIVE BY THE DUE DATE.

- - - - - RETURN THIS PORTION WITH PAYMENT - - - - -

REMIT TO
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: JULIAN HADDAD
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON                VA 20171

| ACCOUNT NUMBER | INVOICE # | CURRENT BALANCE | TOTAL DUE THIS BILL |
|---|---|---|---|
| 100109838 | 20105242 | N/A | $ 2,857,400.88 |

| AMOUNT PAST DUE | AMOUNT THIS BILL | DISCOUNT AMOUNT | AMOUNT ENCLOSED |
|---|---|---|---|
| N/A | $ 2,857,400.88 | N/A | |

0000002857400088

20105242

DUPLICATE

CONFIDENTIAL
WCV A0000514

B1715

**Lucent Technologies, INC.**
P.O BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

# INVOICE

CUST SVC TEAM CODE: NM

| | |
|---|---|
| INVOICE NUMBER | 20105242 |
| INVOICE DATE | 06/22/00 |
| ACCOUNT NUMBER | 100109808 |
| PAGE NUMBER | 2 |
| PAYMENT DUE | 07/22/00 |

SHIP TO
WINSTAR NETWORK EXPANSION
PROJ E21864TT CPD 0000003730
ATTN JEFF DIX
401 PENCADER DR
NEWARK                    DE 19702-3339

BILL TO
WINSTAR WIRELESS
ATTN: JULIAN HADDAD
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON            VA 20171

| CUSTOMER P.O. # | LUC REFERENCE # | CUSTOMER CODE | TERMS | CONTRACT # | | FOB |
|---|---|---|---|---|---|---|
| 0000003730 | | NN7702 (Y7) | 2% 10-NET 30 | | | |

| ITEM NO | LUCENT ORDER | SHIP DATE | SHIP METH | BILL OF LADING # | PART NUMBER/DESCRIPTION | QUANTITY ORDERED | QUANTITY SHIPPED | UNIT PRICE | PM | TOTAL PRICE |
|---|---|---|---|---|---|---|---|---|---|---|
| 5 | E21864TT | 06/09/00 | | | 40N272797 UNIT 01-0008-0-100 | | 43 | $11,133.78 | I | $478,752.54 |
| 6 | E21864TT | 06/04/00 | | | 40N278206 ANTENNA AH-0002-0-100 | | 202 | $502.03 | I | $101,410.06 |
| | | | | | ****** LAST PAGE ****** | | | | | |

| | | |
|---|---|---|
| SUB TOTAL | $ | 2,857,400.88 |
| LESS ADVANCE PAYMENT | | .00 |
| TRANSPORTATION | $ | .00 |
| TAX | | .00 |
| TOTAL DUE | $ | 2,857,400.88 |

MAKE CHECK PAYABLE TO.
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

INVOICES ARE PAYABLE
IN US CURRENCY AND
OVERDUE AMOUNT SHALL
BEAR INTEREST AT A
REASONABLE RATE OR IS
SUBJECT TO LATE CHARGES
PER AGREEMENT

DUPLICATE

QUESTIONS ABOUT YOUR ACCOUNT?
CALL    DIANE SHULTZ
        (404) 573-5273

REMARKS
PAYMENTS SHOULD BE MAILED
TO ARRIVE BY THE DUE DATE.

CONFIDENTIAL
WCV A0000515

B1716

Lucent Technologies

**INVOICE**

CUST SVC TEAM CODE.   JM

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN:  ACCOUNTS RECEIVABLE

SHIP TO   WINSTAR TELECOMMUNICATIONS
ATTN: SAM OWENS   407-840-0423
PROJECT: FM094CLA/WNE000001584
201 SOUTH ORANGE
SUITE # 100
ORLANDO          FL 32801

BILL TO   WINSTAR WIRELESS
ATTN: JULIAN HADDAD
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON          VA 20171

| INVOICE NUMBER | 30108740 |
| INVOICE DATE | 07/19/00 |
| ACCOUNT NUMBER | 100109838 |
| PAGE NUMBER | 1 |
| PAYMENT DUE | 08/18/00 |

| CUSTOMER P.O. # | LUCENT ORDER | SHIP DATE | SHIP METH | BILL OF LADING # | LUC REFERENCE # | CUSTOMER CODE | TERMS | | | CONTRACT # | | FOB |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| WNE000001584 | | | | | | WNY702 (Y7) | NET 30 DAYS | | | | | |

| ITEM NO | LUCENT ORDER | SHIP DATE | PART NUMBER/DESCRIPTION | QUANTITY ORDERED | QUANTITY SHIPPED | UNIT PRICE | PM | TOTAL PRICE |
|---|---|---|---|---|---|---|---|---|
| 1 | FM094CLA | 07/07/00 | 408869370 BOARD 6417-K100-0000 | | 2 | $204.75 | 1 | $409.50 |
| 1 | FM094CLA | 07/07/00 | 408869370 NORMAL/UNBUNDLED TRANSPORTATION | | | | | $8.19 |
| | | | ****** LAST PAGE ****** | | | | | |

- - - - - - - - RETURN THIS PORTION WITH PAYMENT - - - - - - - -

| | |
|---|---|
| SUB TOTAL | $ 409.50 |
| LESS ADVANCE PAYMENT | |
| TRANSPORTATION | $ 8.19 |
| TAX | .00 |
| TOTAL DUE | $ 417.69 |

QUESTIONS ABOUT YOUR ACCOUNT?
CALL   DIANE SHULTZ
(404) 573-5273

INVOICES ARE PAYABLE IN U.S. CURRENCY
AND OVERDUE AMOUNT SHALL BEAR INTEREST
AT A REASONABLE RATE OR IS SUBJECT TO
LATE PAYMENT CHARGES PER AGREEMENT

REMARKS
THANK YOU FOR USING
LUCENT TECHNOLOGIES

REMIT TO
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN   ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN  JULIAN HADDAD
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON          VA 20171

| ACCOUNT NUMBER | CURRENT BALANCE | INVOICE # | TOTAL DUE THIS BILL |
|---|---|---|---|
| 100109838 | N/A | 30108740 | $ 417.69 |
| AMOUNT PAST DUE | DISCOUNT AMOUNT | AMOUNT THIS BILL | AMOUNT ENCLOSED |
| N/A | N/A | $ 417.69 | |

30108740

000000000041769

DUPLICATE

CONFIDENTIAL
WCV A0000528

B1717

Lucent Technologies
Bell Labs Innovations

# INVOICE

CUST SVC TEAM CODE: SE

LUCENT TECHNOLOGIES, INC
P O BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

| | |
|---|---|
| INVOICE NUMBER | 30107277 |
| INVOICE DATE | 08/08/00 |
| ACCOUNT NUMBER | 100109838 |
| PAGE NUMBER | 1 |
| PAYMENT DUE | 09/08/00 |

SHIP TO
WINSTAR NETWORK EXPANSION LLC
PROJECT: WNEOOOOO4692 G0914LH
SPARES AND EXCHANGE
ATTN: CURTIS HARBAUGH
200 S. COLLEGE STREET SUITE 2200
CHARLOTTE    NC 28202-2005

BILL TO
WINSTAR WIRELESS
ATTN: JULIAN MADDAD
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON      VA 20171

| CUSTOMER P.O. # | LUC REFERENCE # | CUSTOMER CODE | TERMS | CONTRACT # | FOB |
|---|---|---|---|---|---|
| WNE4692 | | WNY702 (Y7) | NET 30 DAYS | | |

| ITEM NO | LUCENT ORDER | SHIP DATE | SHIP METH | BILL OF LADING # | PART NUMBER/DESCRIPTION | QUANTITY ORDERED | QUANTITY SHIPPED | UNIT PRICE | PM | TOTAL PRICE |
|---|---|---|---|---|---|---|---|---|---|---|
| 5 | G0914LH | 07/25/00 | | | 900790069<br>SESS NORM DELIVERY SVC CHG<br>FOR LINE ITEM NUMBER 1<br>PK CKT KTU    1<br>SESS NORM DELIVERY SVC CHG<br>FOR LINE ITEM NUMBER 2<br>PK CKT KLU    3<br>SESS NORM DELIVERY SVC CHG<br>FOR LINE ITEM NUMBER 3<br>PK CKT KLU    1B<br>SESS NORM DELIVERY SVC CHG<br>FOR LINE ITEM NUMBER 4<br>PK CKT KTU    2 | | 4 | $35.00 | I | $140.00 |

CONTINUED ON NEXT PAGE

| | | |
|---|---|---|
| SUB TOTAL | $ | 140.00 |
| LESS ADVANCE PAYMENT | | |
| TRANSPORTATION | $ | .00 |
| TAX | $ | .00 |
| TOTAL DUE | $ | 140.00 |

QUESTIONS ABOUT YOUR ACCOUNT?
CALL      DIANE SHULTZ
          (404) 573-5273

INVOICES ARE PAYABLE IN US  CURRENCY
AND OVERDUE AMOUNT SHALL BEAR INTEREST
AT A REASONABLE RATE OR IS SUBJECT TO
LATE PAYMENT CHARGES PER AGREEMENT
REMARKS
THANK YOU FOR USING
LUCENT TECHNOLOGIES

- - - - - RETURN THIS PORTION WITH PAYMENT - - - - -

REMIT TO
LUCENT TECHNOLOGIES, INC.
P. O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: JULIAN MADDAD
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON      VA 20171

| ACCOUNT NUMBER | CURRENT BALANCE | | TOTAL DUE THIS BILL | |
|---|---|---|---|---|
| 100109838 | N/A | | $ | 140 00 |

| INVOICE # | DISCOUNT AMOUNT | AMOUNT ENCLOSED |
|---|---|---|
| 30107277 | N/A | |

| AMOUNT PAST DUE | AMOUNT THIS BILL | |
|---|---|---|
| N/A | $ | 140 00 |

30107277

0000000000014000

DUPLICATE

CONFIDENTIAL
WCV A0000530

B1718



Lucent Technologies
Bell Labs Innovations

# INVOICE

CUST SVC TEAM CODE: SE

LUCENT TECHNOLOGIES, INC
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

SHIP TO  WINSTAR NETWORK EXPANSION LLC
PROJECT: WNE000004892 G8914LH
SPARES AND EXCHANGE
ATTN: CURTIS HARBAUGH
200 S. COLLEGE STREET SUITE 2200
CHARLOTTE          NC 28202-2005

BILL TO  WINSTAR WIRELESS
ATTN: JULIAN HADDAD
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON          VA 20171

| INVOICE NUMBER | 30107377 |
| INVOICE DATE | 08/09/00 |
| ACCOUNT NUMBER | 100109838 |
| PAGE NUMBER | 2 |
| PAYMENT DUE | 08/08/00 |

| CUSTOMER P.O. # | LUC REFERENCE # | CUSTOMER CODE | TERMS | | | CONTRACT # | | FOB |
|---|---|---|---|---|---|---|---|---|
| WNE4892 | | WNY702 (Y?) | NET 30 DAYS | | | | | |

| ITEM NO | LUCENT ORDER | SHIP DATE | SHIP METH | BILL OF LADING # | PART NUMBER/DESCRIPTION | QUANTITY ORDERED | QUANTITY SHIPPED | UNIT PRICE | PM | TOTAL PRICE |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | CO1=Y:SV=NN | | | | | |
| | | | | | SHIP=000727;OJD=000727 | | | | | |
| | | | | | AUTH=SES | | | | | |
| | | | | | BO00001 | | | | | |
| | | | | | ****** LAST PAGE ****** | | | | | |

|  |  |  |
|---|---|---|
| SUB TOTAL | $ | 140.00 |
| LESS ADVANCE PAYMENT | | |
| TRANSPORTATION | $ | .00 |
| TAX | $ | .00 |
| TOTAL DUE | $ | 140.00 |

MAKE CHECK PAYABLE TO
LUCENT TECHNOLOGIES, INC
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN  ACCOUNTS RECEIVABLE

INVOICES ARE PAYABLE
IN U.S. CURRENCY AND
OVERDUE AMOUNT SHALL
BEAR INTEREST AT A
REASONABLE RATE OR IS
SUBJECT TO LATE CHARGES
PER AGREEMENT

DUPLICATE

QUESTIONS ABOUT YOUR ACCOUNT?
CALL     DIANE SHULTZ
(404) 573-5273

REMARKS
THANK YOU FOR USING
LUCENT TECHNOLOGIES

CONFIDENTIAL
WCV A0000531

B1719

Lucent Technologies
Bell Labs Innovations

ATTN: ACCOUNTS RECEIVABLE

| INVOICE NUMBER | 30105298 |
| INVOICE DATE | 06/08/00 |
| ACCOUNT NUMBER | 100106636 |
| PAGE NUMBER | 1 |
| PAYMENT DUE | 07/08/00 |

| SHIP TO | WINSTAR NETWORK EXPANISON LLC |
| | PROJECT: WNE000004692 G9918LH |
| | SPARES AND EXCHANGE |
| | ATTN: TOM RIVERS |
| | 4200 WEST CYPRESS         SUITE 630 |
| | TAMPA                     FL 33607 |

| BILL TO | WINSTAR WIRELESS |
| | ATTN: JULIAN HADDAD |
| | 2545 HORSE PEN ROAD |
| | C-1483 1ST FLOOR |
| | HERNDON        VA 20171 |

| CUSTOMER P.O. # | LUC REFERENCE # | CUSTOMER CODE | TERMS | CONTRACT # | FOB |
|---|---|---|---|---|---|
| WNE0000048 | | WN7702 (Y7) | NET 30 DAYS | | |

| ITEM NO | LUCENT ORDER | SHIP DATE | SHIP METH | BILL OF LADING # | PART NUMBER/DESCRIPTION | QUANTITY ORDERED | QUANTITY SHIPPED | UNIT PRICE | PM | TOTAL PRICE |
|---|---|---|---|---|---|---|---|---|---|---|
| 2 | G9918LH | 05/23/00 | | | 900799066 SESS WORK DELIVERY SVC CHG FOR LINE ITEM NUMBER 1 PK CKT BKD  2 CDI-1*1SYMM SHP=000526;OJD=000526 AUTH=SES B000001 | | 1 | $35.00 | I | $35.00 |
| | | | | | ****** LAST PAGE ****** | | | | | |

| SUB TOTAL | $ | 35.00 |
| LESS ADVANCE PAYMENT | | |
| TRANSPORTATION | $ | .00 |
| TAX | $ | .00 |
| TOTAL DUE | $ | 35.00 |

QUESTIONS ABOUT YOUR ACCOUNT?
CALL          DIANE SHULTZ
              (404) 573-5273

INVOICES ARE PAYABLE IN U.S. CURRENCY
AND OVERDUE AMOUNT SHALL BEAR INTEREST
AT A REASONABLE RATE OR IS SUBJECT TO
LATE PAYMENT CHARGES PER AGREEMENT
REMARKS
THANK YOU FOR USING
LUCENT TECHNOLOGIES

- - - - RETURN THIS PORTION WITH PAYMENT - - - - - - - - -

REMIT TO

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: JULIAN HADDAD
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON        VA 20171

| ACCOUNT NUMBER | INVOICE # | CURRENT BALANCE | TOTAL DUE THIS BILL |
|---|---|---|---|
| 100106636 | 30105298 | N/A | $ 35.00 |

| AMOUNT PAST DUE | AMOUNT THIS BILL | DISCOUNT AMOUNT | AMOUNT ENCLOSED |
|---|---|---|---|
| N/A | $ 35.00 | N/A | |

30105298                    00000000000035000

DUPLICATE

CONFIDENTIAL
WCV A0000533

B1720

**InterNetworking Systems**

# Invoice

nologies
:s Invocbra

1701 Harbor Bay Parkway
ALAMEDA, CA 94502
TEL: 510.769.6001

**REMIT TO:**

PO BOX 200955
DALLAS TX 75320-0955
United States

| INVOICE NO. | |
|---|---|
| 400016804 | |
| INVOICE DATE | PAGE |
| 06-JUN-00 | 1 of 1 |
| PURCHASE ORDER NO. | |
| WNE- 0000006880 | |
| SALES ORDER NO. | |
| 30122945 | |

**SHIP TO:**

N LEONE
STAR NETWORK EXPANSION
5 HORSE PEN RD
NDON VA 20171
ted States

WINSTAR NETWORK EXPANSION, LLC.
2350 CORPORATE PARK DRIVE
HERNDON VA 20170
United States

COPY

| M SCRIPTION | QTY ORDERED | QTY INVOICED | DUE DATE 06-JUL-00 | FREIGHT TERMS PREPAID AND ADD | |
|---|---|---|---|---|---|
| | | | UNIT PRICE | EXTENDED PRICE | |
| IC-50-SOL 5.0 for Solaris, imary Server | 1 | 1 | 6,297.75 | 6,297.75 | |
| NC-50-DSL-SOL DSL Service odule for Solaris | 1 | 1 | 4,497.75 | 4,497.75 | |
| NC-50-SOL-WS 5.0 Workstation or Solaris | 1 | 1 | 8,097.75 | 8,097.75 | |
| REIGHT REIGHT | 1 | 1 | 14.11 | 14.11 | |

| UNIT TOTAL | TAX TOTAL | FREIGHT TOTAL | TOTAL |
|---|---|---|---|
| 18,907.36 | 850.83 | | 19,758.19 |

108857

Currency: USD

nt is due 30 days from the invoice date subject to credit approval, or as otherwise specified. Delinquent payments are subject to
yment charges of the lower of 1.5%/month or portion thereof or the maximum amount allowed by law.

CONFIDENTIAL
WCV A0000537

B1721



**InterNetworking Systems**          **Invoice**

**Lucent Technologies**
Bell Labs Innovations
1701 Harbor Bay Parkway
ALAMEDA, CA 94502
TEL: 510.769.6001

**REMIT TO:**

PO BOX 200955
DALLAS TX 75320-0955
United States

| INVOICE NO. |
| --- |
| 400019094 |

| INVOICE DATE | PAGE |
| --- | --- |
| 30-JUN-00 | 1 of 1 |

| PURCHASE ORDER NO. |
| --- |
| WVF1- 0000001238 |

| SALES ORDER NO. |
| --- |
| 30126869 |

**BILL TO:**

JULIAN HADDAD
WINSTAR NETWORK EXPANSION
2545 HORSE PEN RD
HERNDON VA 20171
United States

**SHIP TO:**

RICHARD THOMPSON
WINSTAR
11436 CHAIRMAN DRIVE
DALLAS TX 75243
United States

| TERMS | | DUE DATE | FREIGHT TERMS | | |
| --- | --- | --- | --- | --- | --- |
| 30 NET | | 30-JUL-00 | PREPAID AND ADD | | |
| LINE NO. | ITEM DESCRIPTION | QTY ORDERED | QTY INVOICED | UNIT PRICE | EXTENDED PRICE |
| 1 | 11592 1PORT OC-12/STM-4 MMF PHY INT MOD 40A75007    40A75024 40A75027    40A75057 | 6 | 6 40A75025 40A74967 | 6,250.00 | 37,500.00 |
| 2 | FREIGHT FREIGHT | 1 | 1 | 10.50 | 10.50 |

**CONFIDENTIAL**
**WCV A0000540**

| UNIT TOTAL | TAX TOTAL | FREIGHT TOTAL | TOTAL |
| --- | --- | --- | --- |
| 37,510.50 | 3,094.62 | | 40,605.12 |

22-3408857

Currency: USD

*Payment is due 30 days from the invoice date subject to credit approval, or as otherwise specified. Delinquent payments are subject to late payment charges of the lower of 1.5%/month or portion thereof or the maximum amount allowed by law.*

B1722



**Lucent Technologies**
Bell Labs Innovations

1701 Harbor Bay Parkway
ALAMEDA, CA 94502
TEL: 510.769.6001

**InterNetworking Systems**    **Invoice**

**REMIT TO:**

PO BOX 200955
DALLAS TX 75320-0955
United States

| INVOICE NO. | |
|---|---|
| 400019096 | |
| **INVOICE DATE** | **PAGE** |
| 30-JUN-00 | 1 of 1 |
| **PURCHASE ORDER NO.** | |
| WVF1- 0000001235 | |
| **SALES ORDER NO.** | |
| 30126858 | |

**BILL TO:**

JULIAN HADDAD
WINSTAR NETWORK EXPANSION
2545 HORSE PEN RD
HERNDON VA 20171
United States

**SHIP TO:**

MARK DRAKE
WINSTAR
8085 FLINT STREET
LENEXA KS 66214
United States

| TERMS | | DUE DATE | FREIGHT TERMS | | | |
|---|---|---|---|---|---|---|
| 30 NET | | 30-JUL-00 | PREPAID AND ADD | | | |
| LINE NO. | ITEM DESCRIPTION | QTY ORDERED | QTY INVOICED | UNIT PRICE | EXTENDED PRICE |
| 1 | 11592 1PORT OC-12/STM-4 MMF PHY INT MOD 40A75034      40A71239 40A75030 | 4 | 4  40A74997 | 6,250.00 | 25,000.00 |
| 2 | FREIGHT FREIGHT | 1 | 1 | 22.08 | 22.08 |

| | UNIT TOTAL | TAX TOTAL | FREIGHT TOTAL | TOTAL |
|---|---|---|---|---|
| | 25,022.08 | 1,720.27 | | 26,742.35 |

22-3408857

Currency: USD

*Payment is due 30 days from the invoice date subject to credit approval, or as otherwise specified. Delinquent payments are subject to late payment charges of the lower of 1.5%/month or portion thereof or the maximum amount allowed by law.*

CONFIDENTIAL
WCV A0000542

B1723





Lucent Technologies
Bell Labs Innovations

winstar℠
Brave New Business

# Relationship Overview
### January 9, 2001

## Debbie Harris

Lucent Restricted - Version 1



winstar
the new ？？？

Confidential

LW00228384

B1724



## History of the Lucent / Winstar Relationship

- 1997 – Lucent is one of many vendors competing to supply equipment for Winstar's network build-out

- 1998 – Supply Agreement (10/98) Strategic agreement with Lucent to design, build, and deploy Winstar's global network

- 1998 – Financing Facility (10/98) $2B

- 1999 – Master Services Agreement (8/99) formalizes $100M commitment to support WS's company growth; Financing terms re-negotiated; International business gains momentum

- 2000 – New $2B financing facility (4/00)

Confidential



**Lucent Technologies**
Bell Labs Innovations

## Contracts & Agreements

- **Supply Agreement, October 1998 - $2B agreement- Lucent to design build, deploy and finance Winstar Global communications network**

- **Master Service Agreement, August 1999 - $100M 5 Year agreement. Lucent will facilitate growth of Winstar customer and revenue base through Internal Consumption, Joint Marketing/Selling to other Lucent customers and VAR/Indirect activities**

- **Addenda To Supply Agreement:**
  - **Octel**
  - **Radios**

Confidential

LW00228386

B1726



**Addenda**

- INS Addendum (operational but unsigned)
- Switching Addendum (operational but unsigned)
- ONG Addendum (operational but unsigned)
- Hub/B Build-out Addendum (red line version signed; final version unsigned)
- ONG Build-out Addendum (red line version signed; final version unsigned)
- SS7 Statement of Work (issues resolution underway)
- EIL Statement of Work (under negotiations)

Confidential

LW00228387

B1727





# Winstar Purchasing History

Lucent Technologies
Bell Labs Innovations

| Year | NAR $ | International $ |
|---|---|---|
| 1997 | $14M | $- |
| 1998 | $45M | $- |
| 1999 | $264M | $12 |
| 2000 | $408M | $50 |
| 2000 (restated) | $410M | |
| 2001(Quota) | $550M | $58 |

Confidential



## Lucent Content of Winstar Purchases

Lucent Technologies
Bell Labs Innovations

| Product | FY 99 | % of Total | FY 00 (WO Software Pool) | % of Total | FY 01 (to date) (Preliminary) |
|---|---|---|---|---|---|
| ONG | $237,482,931 | 77% | $221,273,780 | 54.1% | $8,699,103 |
| | $66,937,835 | | $101,300,000 | | $2,902,855 |
| SSG | $120,495,283 | | $76,600,000 | | 0 |
| Octel | $0 | | $10,073,780 | | 0 |
| INS | $50,049,813 | | $33,300,000 | | $8,155,621 (2,359,373) |
| Software | $16,195,451 | 5% | $29,700,000 | 7.3% | $812,932 |
| SPG | $16,195,451 | | $29,700,000 | | $812,932 |
| Services | 54,312,762 | 17.6% | $95,260,000 | 23.3% | $4,011,413 |
| NNS | $24,279,793 | | $34,700,000 | | $4,011,413 |
| NPS | $30,032,969 | | $60,560,000 | | 0 |
| OEM | $1,300,000 | 0.4% | $62,700,000 | 15.3% | $271,530 |
| Radios | $1,300,000 | | $62,700,000 | | $271,530 |
| Total | $309,291,144 | 100% | $408,933,780 | 100% | $13,794,978 |

LW00228389

B1729



Lucent Technologies
Bell Labs Innovations

# Non-Lucent Content Analysis

## Winstar Financed / Non-Lucent Content
### Sample Audit**

| Summary Catgory | Category | Sum Of Price | % Of Price Of Total Lending |
|---|---|---|---|
| OTHER | FINANCE CHARGES | $2,240,417.00 | |
| OTHER | TEST EQUIPMENT AND TOOLS | $499,447.39 | |
| OTHER | SAFETY | $300,000.00 | |
| OTHER | TRAINING | $11,532.09 | |
| OTHER | BUILDING SPACE - LEASED | $6,601.65 | |
| OTHER Total | | $3,057,998.13 | 1.13% |
| PRODUCTS | OWNED - TECHNOLOGY | $83,555,270.71 | |
| PRODUCTS | MISC. MATERIAL | $35,066,908.54 | |
| PRODUCTS | PERSONAL COMPUTERS | $29,980,663.84 | |
| PRODUCTS | RADIOS | $9,902,308.79 | |
| PRODUCTS | LEASED - TECHNOLOGY | $146,278.18 | |
| PRODUCTS | FREIGHT | $27,420.40 | |
| PRODUCTS Total | | $158,678,850.46 | 58.85% |
| SERVICES | CONSTRUCTION | $53,917,710.06 | |
| SERVICES | INSTALLATION | $17,114,031.98 | |
| SERVICES | LABOR | $7,826,907.31 | |
| SERVICES | A&E SERVICES | $4,054,153.90 | |
| SERVICES | ENGINEERING | $1,155,579.09 | |
| SERVICES | ACCEPTANCE TESTING - LABOR | $756,808.56 | |
| SERVICES | MAINTENANCE | $350,769.02 | |
| SERVICES | ALARM UNIT INSTALL | $126,268.02 | |
| SERVICES | CONSULTANT | $9,961.14 | |
| SERVICES Total | | $64,312,189.08 | 23.85% |
| SOFTWARE | SOFTWARE | $43,601,823.51 | |
| SOFTWARE Total | | $43,601,823.51 | 16.17% |

**This is a SAMPLING of the non-Lucent content; this is not a complete audit.

Winstar

Confidential

LW00228390

B1730

**winstar**

# Financing View

### For the Month ended
### December-00

**Lucent Technologies**
Bell Labs Innovations

| Drawdowns | | Lucent Invoices | Fees (Non-Cash) | Lucent Content | Non-Lucent Content | Total Drawdown | Cummulative Loan Balance |
|---|---|---|---|---|---|---|---|
| **NEW FACILITY** | | | | | | | |
| 1 | June 23, 2000 | 167,174,407 | | 167,174,407 | 80,889,699 | 248,064,106 | 248,064,106 |
| 2 | July 31, 2000 | 15,412,989 | | 15,412,989 | 56,956,729 | 72,369,718 | 320,433,824 |
| 3 | August 31, 2000 | 18,159,440 | | 18,159,440 | 55,381,451 | 73,540,892 | 393,974,716 |
| 4 | September 29, 2000 | 35,670,395.11 | 0 | 35,670,396 | 67,388,372 | 103,058,788 | 497,033,484 |
| 5 | October 23, 2000 | 68,912,173.52 | 0 | 68,912,174 | 124,020,147 | 192,932,321 | 689,965,805 |
| 6 | November 30,2000 | 33,601,970.04 | | 33,601,970 | 30,002,934 | 63,604,904 | 753,570,709 |
| 7 | December 29, 2000 | 2,006,913.97 | | 2,006,914 | 92,324,982 | 94,331,896 | 847,902,605 |
| | | | | | | | |
| **Total Drawdowns** | | 340,938,290 | . | 340,938,290 | 506,964,315 | 847,902,604 | |
| | | | | | | | |
| **Total Sale/Repayments** | | | | | | | |
| | December 8, 2000 | Repayment | | | | | (194,000,000) |
| | | | | | | | |
| **Total outstanding as of December 31, 2000** | | | | | | | 653,902,605 |

Confidential



# Financing View (cont'd)

**Lucent Technologies** — Bell Labs Innovations

For the Month ended
December-00

**OLD FACILITY**

| Drawdowns | | Lucent Invoices | Fees (Non-Cash) | Lucent Content | Non-Lucent Content | Total Drawdown | Cummulative Loan Balance |
|---|---|---|---|---|---|---|---|
| 1 | December 4, 1998 | 20,030,482 | 600,000 | 21,630,482 | 27,600,000 | 49,030,482 | 49,030,482 |
| 2 | December 28, 1998 | 8,461,721 | | 8,461,721 | 20,000,000 | 28,461,721 | 77,512,203 |
| 3 | January 29, 1999 | 19,178,735 | | 19,178,735 | 30,000,000 | 49,178,735 | 126,690,938 |
| 4 | February 26, 1999 | 9,700,019 | | 9,700,019 | 10,000,000 | 19,700,019 | 146,390,957 |
| 5 | March 29, 1999 | 3,784,008 | | 3,784,008 | 30,000,000 | 33,784,008 | 180,164,965 |
| 6 | April 30, 1999 | 57,992,669 | | 57,992,669 | 25,000,000 | 82,992,669 | 263,177,634 |
| 7 | May 28, 1999 | 16,882,638 | | 16,882,638 | 20,000,000 | 36,882,638 | 300,060,272 |
| 8 | June 30, 1999 | 32,040,822 | | 32,040,822 | 28,000,000 | 67,040,822 | 357,101,094 |
| 9 | July 31, 1999 | 67,379,023 | | 67,379,023 | 35,000,000 | 82,379,023 | 449,480,118 |
| 10 | August 31, 1999 | 22,029,719 | 10,600,000 | 32,629,719 | 64,000,000 | 96,629,719 | 546,144,600 |
| 11 | September 30, 1999 | 5,137,763 | | 5,137,763 | 35,000,000 | 40,137,763 | 586,144,600 |
| 12 | October 29, 1999 | 27,106,459 | | 27,106,459 | 35,000,000 | 62,106,459 | 648,310,059 |
| 13 | December 7, 1999 | 26,741,661 | | 26,741,661 | 61,258,039 | 78,000,000 | 726,310,059 |
| 14 | December 30, 1999 | 22,996,730 | | 22,996,730 | 35,000,000 | 12,706,383 | 784,296,789 |
| 15 | December 30, 1999 | | | | 12,706,383 | 12,706,383 | 797,003,172 |
| 16 | December 31, 1999 | 16,346,661 | | 16,346,661 | 0.00 | 16,346,661 | 813,349,833 |
| 17 | January 31, 2000 | -3,751,721 | | 3,751,721 | 25,000,000 | 29,751,721 | 842,101,775 |
| 18 | February 28, 2000 | 47,407,122 | | 47,407,122 | 30,000,000 | 77,407,122 | 919,508,897 |
| 19 | March 31, 2000 | 66,394,707 | | 66,394,707 | 70,000,000 | 138,394,707 | 1,057,903,604 |
| 20 | April 20, 2000 | | 11,065,000 | 11,065,000 | 111,000,000 | 122,065,000 | 1,179,968,604 |
| | Total Drawdowns | 486,338,581 | 22,155,000 | 488,494,481 | 691,464,422 | 1,179,958,903 | |
| | December 15, 1999 Sale To BoNY | | | | (360,000,000) | (360,000,000) | (360,000,000) |
| | December 15, 1999 Sale To BoNY | | | | (300,000,000) | (300,000,000) | (660,000,000) |
| | March 31, 2000 Sale To BoNY | | | | (461,903,903) | (461,903,903) | (1,067,903,903) |
| | May 9, 2000 Final Repayment | | | | (122,066,000) | (122,066,000) | (1,179,968,903) |
| | Total Sale/Repayments | | | | 0.00 | 0.00 | 0.00 |
| | Total outstanding under Old Facility | | | | | 0.00 | 0.00 |

winstar — Clear The Way Forward

Confidential

# Financing View (cont'd)

**For the Month ended December-00**

winstar            Lucent Technologies

| Drawdowns | | Lucent Invoices | Fees (Non-Cash) | Lucent Content | Non-Lucent Content | Total Drawdown | Cumulative Loan Balance |
|---|---|---|---|---|---|---|---|
| **OLD FACILITY** | | | | | | | |
| 1 | December 4,1998 | 20,030,482 | 500,000 | 21,530,482 | 27,500,000 | 49,030,482 | 49,030,482 |
| 2 | December 29,1998 | 8,481,721 | | 8,481,721 | 20,000,000 | 28,481,721 | 77,512,203 |
| 3 | January 29,1999 | 19,178,735 | | 19,178,735 | 30,000,000 | 49,178,735 | 126,690,938 |
| 4 | February 26,1999 | 9,700,019 | | 9,700,019 | 10,000,000 | 19,700,019 | 146,390,957 |
| 5 | March 26,1999 | 3,794,008 | | 3,794,008 | 30,000,000 | 33,794,008 | 180,184,965 |
| 6 | April 30,1999 | 57,992,669 | | 57,992,669 | 25,000,000 | 82,992,669 | 263,177,634 |
| 7 | May 26,1999 | 16,882,638 | | 16,882,638 | 20,000,000 | 36,882,638 | 300,060,272 |
| 8 | June 30,1999 | 32,040,822 | | 32,040,822 | 25,000,000 | 57,040,822 | 357,101,094 |
| 9 | July 31,1999 | 57,379,023 | | 57,379,023 | 25,000,000 | 82,379,023 | 449,480,118 |
| 10 | August 31,1999 | 22,026,719 | 10,500,000 | 32,526,719 | 64,000,000 | 96,526,719 | 546,006,837 |
| 11 | September 30,1999 | 6,137,763 | | 5,137,763 | 35,000,000 | 40,137,763 | 586,144,600 |
| 12 | October 29,1999 | 27,185,459 | | 27,185,459 | 35,000,000 | 62,185,459 | 648,310,059 |
| 13 | December 7,1999 | 28,741,981 | | 28,741,981 | 51,258,039 | 78,000,000 | 726,310,059 |
| | December 13,1999 | Sale To BoNY | | | | (350,000,000) | 376,310,059 |
| | December 13,1999 | Sale To BoNY | | | | (250,000,000) | 126,310,059 |
| 14 | December 30,1999 | 22,986,730 | | 22,986,730 | 35,000,000 | 57,986,730 | 184,296,789 |
| 15 | December 30,1999 | | | | 12,706,383 | 12,706,383 | 197,003,172 |
| 16 | December 31,1999 | 16,346,881 | | 16,346,881 | 0.00 | 16,346,881 | 213,350,053 |
| 17 | January 31,2000 | 3,761,721 | | 3,761,721 | 25,000,000 | 28,751,721 | 242,101,775 |
| 18 | February 28,2000 | 47,407,122 | | 47,407,122 | 30,000,000 | 77,407,122 | 319,508,897 |
| 19 | March 31,2000 | 68,394,707 | | 68,394,707 | 70,000,000 | 138,394,707 | 457,903,604 |
| 20 | March 31,2000 | Sale To BoNY | | | | (457,903,603) | 0 |
| | April 20,2000 | Final Repayment | | | | | |
| | May 9,2000 | | 11,055,000 | 11,055,000 | 111,000,000 | 122,055,000 | 122,055,000 |
| | | | | | | (122,055,000) | 0 |
| **NEW FACILITY** | | | | | | | |
| 21 | June 23,2000 | 187,174,407 | | 187,174,407 | 60,889,699 | 248,064,106 | 248,064,106 |
| 22 | July 31,2000 | 15,412,989 | | 15,412,989 | 56,956,729 | 72,369,718 | 320,433,824 |
| 23 | August 31,2000 | 18,159,440 | | 18,159,440 | 55,381,451 | 73,540,892 | 393,974,716 |
| 24 | September 29,2000 | 35,670,396.11 | 0 | 35,670,396 | 67,388,372 | 103,058,768 | 497,033,484 |
| 25 | October 23,2000 | 86,912,173.52 | 0 | 86,912,174 | 124,020,147 | 192,032,321 | 689,065,805 |
| 26 | November 29,2000 | 33,601,970.04 | | 33,601,970 | 30,002,934 | 63,604,904 | 763,570,709 |
| | December 6,2000 | Repayment | | | | (194,000,000) | 569,570,709 |
| 27 | December 29,2000 | 2,006,913.97 | | 2,008,914 | 92,324,892 | 94,331,886 | 653,902,605 |
| Total Drawdowns | | 807,277,471 | 22,155,000 | 829,432,471 | 1,198,428,737 | 853,902,605 | 653,902,605 |

Confidential



# Financing View (cont'd)

**Lucent Technologies** Bell Labs Innovations

winstar

### For the Month ended September-99

| Drawdowns | | Lucent Invoices | Fees (Non-Cash) | Total Lucent Content | Non-Lucent Content | Total |
|---|---|---|---|---|---|---|
| 1 | December 4, 1998 | 20,930,482 | 600,000 | 21,530,482 | 27,500,000 | 49,030,482 |
| 2 | December 29, 1998 | 8,481,721 | | 8,481,721 | 20,000,000 | 28,481,721 |
| 3 | January 28, 1999 | 19,178,735 | | 19,178,735 | 30,000,000 | 49,178,735 |
| 4 | February 26, 1999 | 9,700,019 | | 9,700,019 | 10,000,000 | 19,700,019 |
| 5 | March 28, 1999 | 3,794,008 | | 3,794,008 | 30,000,000 | 33,794,008 |
| 6 | April 30, 1999 | 57,992,669 | | 57,992,669 | 25,000,000 | 82,992,669 |
| 7 | May 28, 1999 | 16,882,638 | | 16,882,638 | 20,000,000 | 36,882,638 |
| 8 | June 30, 1999 | 32,040,822 | | 32,040,822 | 25,000,000 | 57,040,822 |
| 9 | July 31, 1999 | 57,379,023 | | 57,379,023 | 35,000,000 | 92,379,023 |
| 10 | August 31, 1999 | 22,026,719 | 10,500,000 | 32,526,719 | 64,000,000 | 96,526,719 |
| 11 | September 30, 1999 | 5,137,763 | | 5,137,763 | 35,000,000 | 40,137,763 |
| Total Borrowing In Year 1 | | 253,544,600 | 11,100,000 | 264,644,600 | 321,500,000 | 586,144,600 |
| Actual Ratio | | | | 45% | 55% | |
| Required Ratio | | | | 65% | 35% | |

LW00228394

B1734



# Financing View (cont'd)

Lucent Technologies
Bell Labs Innovations

For the Month ended
October-00

| Drawdowns | | Lucent Invoices | Fees (Non-Cash) | Total Lucent Content | Non-Lucent Content | Total |
|---|---|---|---|---|---|---|
| 1 | October 29, 1999 | 27,165,459 | | 27,165,459 | 35,000,000 | 62,165,459 |
| 2 | December 7, 1999 | 26,741,961 | | 26,741,961 | 51,258,039 | 78,000,000 |
| 3 | December 30, 1999 | 22,986,730 | | 22,986,730 | 47,706,383 | 70,693,113 |
| 4 | December 31, 1999 | 16,346,881 | | 16,346,881 | 0.00 | 16,346,881 |
| 5 | January 31, 2000 | 3,751,721 | | 3,751,721 | 25,000,000 | 28,751,721 |
| 6 | February 28, 2000 | 47,407,122 | | 47,407,122 | 30,000,000 | 77,407,122 |
| 7 | March 31, 2000 | 68,394,707 | | 68,394,707 | 70,000,000 | 138,394,707 |
| 8 | April 20, 2000 | 0.00 | 11,055,000 | 11,055,000 | 111,000,000 | 122,055,000 |
| 9 | June 23, 2000 | 167,174,407 | | 167,174,407 | 80,889,699 | 248,064,106 |
| 10 | July 31, 2000 | 15,412,989 | | 15,412,989 | 56,956,729 | 72,369,718 |
| 11 | August 31, 2000 | 18,159,440 | | 18,159,440 | 55,381,451 | 73,540,892 |
| 12 | September 29, 2000 | 35,670,396.11 | 0 | 35,670,396 | 67,388,372 | 103,058,768 |
| Total Borrowing In Year 2 | | 449,211,815 | 11,055,000 | 460,266,815 | 630,580,673 | 1,090,847,488 |
| Actual Ratio | | | | 42% | 58% | |
| Required Ratio | | | | 70% | 30% | |

Confidential

LW00228395

B1735



# Financing View (cont'd)

**Lucent Technologies** Bell Labs Innovations

### For the Month ended December-00

| Drawdowns | | Lucent Invoices | Fees (Non-Cash) | Capitalized Interest | Lucent Content | Non-Lucent Content | Total |
|---|---|---|---|---|---|---|---|
| 1 | October 23, 2000 | 68,912,173.82 | 0 | 0 | 68,912,174 | 124,020,147.35 | 192,932,321 |
| 2 | November 29,2000 | 33,601,970.04 | | | 33,601,970 | 30,002,934.38 | 63,604,904 |
| 3 | December 29, 2000 | 2,006,913.97 | | | 2,006,914 | 30,000,082.04 | 32,006,996 |
| 4 | December 29, 2000 | | | | | 62,324,930.00 | 62,324,930 |
| | | | | | | | |
| Total Borrowing in Year3 | | 104,521,058 | - | - | 104,521,058 | 246,348,064 | 350,869,121 |
| | | 33,601,970.04 | | | | | |
| | | | | | | | |
| Actual Ratio | | | | | 30% | 70% | |
| | | | | | | | |
| Required Ratio | | | | | 70% | 30% | |

Confidential

LW00228396

B1736



**WinStar**

# Profitability Analysis

**Lucent Technologies**
Bell Labs Innovations

| WinStar | Actual RP for FY2000 | | Scenario 1 | | Scenario 2 | |
|---|---|---|---|---|---|---|
| | FY 2000 | As a % of Revenue | Stretch View | As a % of Revenue | Realistic Plan | As a % of Revenue |
| Revenue | 410,000,000 | | 410,000,000 | | 410,000,000 | |
| SGP | 203,227,000 | | 306,227,000 | | 235,000,000 | |
| SGP % | 49.6% | | 74.7% | | 57.3% | |
| AIR | 174,800,000 | 42.6% | 131,100,000 | 32.0% | 131,100,000 | 32.0% |
| Notes Rec | 497,000,000 | 121.2% | 198,800,000 | 48.5% | 248,500,000 | 60.6% |
| Net Assets | 993,885,449 | 242.4% | 651,985,449 | 159.0% | 701,885,449 | 171.1% |
| Capital Char | 119,266,254 | 29.1% | 78,238,254 | 19.1% | 84,226,254 | 20.5% |
| Own Expens | 23,109,000 | 5.6% | 12,300,000 | 3.0% | 12,300,000 | 3.0% |
| NOPAT | (35,052,619) | -8.5% | 78,766,381 | 19.2% | 7,539,381 | 1.8% |
| Realized Prd | (154,318,873) | -37.6% | 618,127 | 0.1% | (76,672,873) | -18.7% |

**Notes:**

**Actual RP for FY 2000**
1) Realized Profit is determined as NOPAT minus the Capital Charge. (Capital Charge is 12% of Net Assets.)
2) WinStar is driven to negative Realized Profit because of AIR & NR and its effect on Net Assets.
3) Net Assets are charges @ 12% pushing the Capital Charge to $119M (29% of Revenue) in the case of WinStar.
4) The revenue for this analysis reflects a reduction of $125M to reflect the 4Q software deal.

Scenario 1 - (Stretch View) If AIR is reduced by 25%, NR is reduced by 60%, SGP increased to 75%, and Own Expense is 3% of Revenue, WinStar is marginally able to achieve a positive RP.

Scenario 2 - (Realistic view to be to get on track) If AIR is reduced by 25%, NR is reduced by 50% (vs 60%), SGP is increased to 57% (vs 76%), and Own Expense is 3% of Revenue, WinStar still has a negative RP, however, it has been halved and can possibly achieve profitability with a sound 3-5 year plan.

Confidential



Lucent Technologies
Bell Labs Innovations

# NAR Installed Base and Opportunity

## NAR Installed Base

- Winstar has an installed base of 50 5ESS Switches with Octel Voice Messaging
- Nationwide ATM network composed of Lucent CBX500/GX550 core switches
- Lucent DWDM (400G) Core Long Haul Optical Network
- Initial Build of Metro Network using Lucent SONET and DWDM terminals
- Suite of Lucent OSS/BSS software

## NAR 2001 Opportunity

- Completion of Long Haul ONG routes
- Metro Network –Chromatis
- Converged Access Solution
- Data Center Deployment - Professional Services, Softswitch
- IP Core and Metro Deployment

Confidential

Lucent Technologies
Bell Labs Innovations

winstar

# International Installed Base and Opportunity

- **Current Footprint**
  - Winstar has Lucent ATM network in Netherlands, Belgium, Germany, UK and Argentina, Hong Kong in progress
  - Data Services, ISP, Web Hosting and Co-location entry strategy for international
  - Circuit Switched voice not in plans
- **2001 Opportunities**
  - Long Haul and Metro Optical roll-outs
  - Enhanced IP Services -VoIP
  - ATM Core Networks
  - Converged Access

Confidential



Lucent Technologies
Bell Labs Innovations

winstar
the new networks

# Cap Ex Analysis

## Winstar Global 2000 Budget Analysis

| Categories | Budget ($) |
|---|---|
| **Central Offices** | |
| Construction and Environmental | 20,000,000 |
| New and Growth- Switching | 76,600,000 |
| Central Office Totals | 96,600,000 |
| **Service Nodes** | |
| ATM Equipment | 28,000,000 |
| Routers | 10,000,000 |
| DACS | 25,000,000 |
| Service Data Node Totals | 63,000,000 |
| **Hubs Sites** | |
| New Site Builds and Installs | 70,000,000 |
| Equipment - PSAX | 5,000,000 |
| Hubs Site Totals | 75,000,000 |
| **B/C Sites** | |
| New Site Builds and Installs (includes network elements & cabinet logistics) | 110,000,000 |
| Maintenance, Spares | 5,000,000 |
| Hi Speed Internet Access Routers | 6,000,000 |
| Other (Augments-Existing Sites) | 8,000,000 |
| B/C Site Totals | 129,000,000 |
| **Optical Networking (mostly NA)** | |
| New Long Haul & Metro | 101,000,000 |
| Wms, MFN, other IRU's | 170,000,000 |
| Optical Networking Totals | 271,000,000 |
| **Professional Services and Labor** | |
| Systems Labor | 100,000,000 |
| Capital (W/NS) Labor | 100,000,000 |
| Operations, Installation | 11,300,000 |
| Lucent Services (C5 items) | 28,000,000 |
| Systems Totals | 239,300,000 |
| **Data Centers** | |
| Core Infrastructure (Servers & Storage, etc.) | 50,000,000.00 |
| Customer Web Hosting Equipment (Routers, Firewalls, etc.) | |
| Construction & other Services | |
| Data Center Totals | 50,000,000 |
| **Radios** | |
| Miscellaneous Totals | 80,000,000 |
| | 80,000,000 |
| **2000 Budget Total** | 1,003,900,000 |

Confidential



**Lucent Technologies**
Bell Labs Innovations

**winstar**
Broadband

# Negotiating Points

## *What Lucent Wants:*

### Financing

- Reduce Lucent commitments to expected Lucent purchases
- Finance 70% Lucent content (to be defined as equipment manufacture or formally OEM by Lucent and/or services performed by Lucent) / 30% Non-Lucent content, with each draw in compliance with this ratio

## *What Winstar Would Want:*

- Finance with minimum Lucent content requirement
- Possible plan to borrow $1B by April 2001
- No payback schedule
- Eliminate refinance trigger

Confidential



Lucent Technologies
Bell Labs Innovations

winstar
the broadband

# Negotiating Points (cont'd)

## *What Lucent Wants*

Financing (cont'd)

• Rather than waiting 4/4/01, the existing provisions of the Refinance Notice become effective immediately and then become standard provisions for our Credit agreement on an ongoing basis AND/OR Winstar agrees that no additional draws will be made under the Lucent facility effective immediately. Specific provisions include:

- Lucent is free to assign Loans without consent, without regard to the number of lenders, the status of the lenders, and with full voting rights for the lenders.

- The interest rate margin on Loans increases by 2%.

- Winstar is limited in its borrowing for non-Lucent content.

## *What Winstar Would Want*

Confidential

LW00228402

B1742



**Lucent Technologies**
Bell Labs Innovations

winstar

# Negotiating Points (cont'd)

## *What Lucent Wants*
### Financing (cont'd)

- Reduction of outstanding Lucent Loans by Winstar beginning immediately by a net amount of not less than $100M/quarter until all outstanding Lucent Loans have been repaid.

- "Nice to Have's".
  - Finance 100% Lucent content only
  - Share in same structure, provisions, pricing, etc. as Bank Group
  - Eliminate Fee Refund provisions
  - Revisit mandatory prepayment provisions of our Agreement, ie, $350M equity threshold.

## *What Winstar Would Want*

Confidential





Lucent Technologies
Bell Labs Innovations

# Negotiating Points (cont'd)

## *What Lucent Wants*

### Supply Agreement

- Incorporate a dollar amount in the Supply Agreement to coincide with Financing Agreeement
- $3M payment for non-compliance on 70-30% content requirement
- Strictly enforce content requirement
- Eliminate "Best of Breed"/compromise move to "Best of Solution"
- Change title, risk of loss and acceptance terms
- Establish time limits to ability to dispute charges
- Comply with the contractual commitment for "C5 Services" over five years.

## *What Winstar Would Want*

- Continue with "Best of Breed"
- Minimal requirement on content

Confidential



**Lucent Technologies**
Bell Labs Innovations

**winstar**

# Negotiating Points (cont'd)

## *What Lucent Wants*

### Outsourcing Services Agreement

- Winstar to pay cost of finance over and above turnkey price
- Enhanced security package (ie,collateral and/or guarantees)

## *What Winstar Would Want*

- Go forward with Services Agreement
- Continue to finance irrespective of "phase"
- Lucent as a systems integrator

Confidential

LW00228405

B1745



Lucent Technologies
Bell Labs Innovations

# Negotiating Points (cont'd)

## *What Lucent Wants*

### Solutions

- Change in Hub and B pricing
- Win (rewin) metro optical business
- Adherence to volume commitments
- Continue to get all long haul optical business (need to verify volume)
- Enhanced Lucent awards outside the US
- Do we want to ask to redefine 4Q00F deal?

## *What Winstar Would Want*

- Eliminate product problems, i.e., 400G experience
- Take back optical equipment currently in warehouse
- Changes in product portfolio to meet their needs (agree on reusability)
- More Lucent OEM relationships

Confidential

LW00228406

B1746



**Lucent Technologies**
Bell Labs Innovations

# Open Issues List

| Winstar Request | Lucent Suggested Response |
|---|---|
| 1. Reconciliation of B & Hub pricing based on new pricing levels ($20K/B; $400K/Hub); apply new pricing going forward. | This pricing is not profitable for Lucent. New pricing being proposed by Lucent. |
| 2. Include all costs in B, Hub pricing (radios, A&E, construction management and other overhead services) | Radios and overhead services are not included in B, Hub pricing; services are based on headcount requirements over a period of time |
| 3. Vocall: Winstar has requested $1.4M of their liability be waived. | Winstar owes Lucent $3.2M from the Vocall deal ($1.8M equipment; $1.4M termination charges.) |
| 4. 100 Building Project: Winstar purchased $3.7M of equipment for this project (4Q99/1Q00) but subsequently cancelled. Winstar requested a credit and Lucent CT agreed due to the fact Winstar had awarded us a $133M PO for the buildout of their network. Winstar then cancelled this PO and Lucent CT denied the credit. | Lucent has held we will not issue the $3.7M credit |
| 5. Dispute of $2,353,068 (portion previously paid) in invoices for SS7 project because the entire project is in dispute. | Lucent has a fixed fee contract for the SS7 project and we are owed this money for the work we've performed. Meetings are scheduled to try and resolve the disputes. |
| 6. Lucent to pay extra $900K to upgrade Winstar's SS7 network management platform. | Lucent believes we are not obligated to pay this; it was not included in the Scope of Work. |
| 7. Lucent to pay $700K to migrate SS7 traffic from Illuminet to Winstar's SS7 network. | Scope of Work was changed mid-project to shift this responsibility to Winstar. This was not properly documented. Due to the ambiguity, Lucent may be willing to perform this service for no extra charge in return for dropping all other disputes/penalties regarding this project. |

winstar

Confidential

LW00228407

B1747



**Lucent Technologies**
Bell Labs Innovations

# Negotiation Strategy

**Scenario 1**

**Motivation:** Conserve Cash, Reduce Expenses on Financing

- Play hardball on chaning financing terms (but until April not sure what the incentive would be for Winstar to make changes)
- Drive them to seek financing arrangements with other vendors (ie. Nortel)
- Significantly reduce revenue opportunity
- Slowly dissolve strategic partnership

**Scenario 2**

**Motivation:** Top line growth with improved profitability

- Support Winstar's aggressive business plan (higher Caps budget) and require revenue of $750M
- Change to "Best of Solution" concept
- Attain 70% of Lucent content - strategic requirements
- Results: - all optronics
  - higher % access opportunity at adjusted price levels
  - move forward with outsourcing agreement
  - Continue with CS Services
  - Adjustment on some contractural terms

**Scenario 3**

**Motivation:** Balance the roles of Vendor and Banker from incompatible goals to a mid-point

- Reduce reliance on financing from Lucent but without driving Winstar to other vendors
  - affiliate program
  - special purpose trust
  - slow down netowrk expansion and focus
- Formalize a plan with Winstar over a four quarter period
  1. Spending level per quarter (70% Lucent)
  2. Draw down requirements per quarter
  3. Payback plan per quarter

winstar
Blue Star Systems

Confidential



**Winstar**  Bell the Ratars

# Hub's & B's Pricing

**Lucent Technologies**  Bell Labs Innovations



**Objective:** Provide a robust technical solution to Winstar which fulfills their Converged Access needs and is profitable to Winstar and Lucent to develop. Assume Winstar Build Plan documented in Due Diligence. (see Scaled Down Model and Robust Model for years 2001, 2002, and 2003) and anticipated significant Lucent breakthrough initiatives to reduce cost.

| Hub and B Pricing | New Hubs | | | New B's | | |
|---|---|---|---|---|---|---|
| | 2001 | 2002 | 2003 | 2001 | 2002 | 2003 |
| Volumes : Lucent Only | | | | | | |
| Scaled Down Model | 37 | 0 | 0 | 2000 | 200 | 150 |
| Robust Model (no financing issues) | 37 | 9 | 72 | 2409 | 3230 | 3761 |
| assumes 1/2 share with AN | | | | | | |
| Current Pricing Yr 2000 | $75K | | | $48.5K | | |
| (Cost Based Negotiations) | | | | | | |
| Reduced Pricing (Sept 00 ISO) plus $50M Subsidy (yr 2001) | $40K | | | $32K | | |
| Lucent Margin | <115%> | | | <115%> | | |
| Realized Pricing (100) plus $50M Subsidy (yr2001) | $75K | $75K | TBD | $33.3K | $42K* | TBD |
| Lucent Margin | 30% | | | 30% | | |
| (Margin equals Gross Margin reflects impact of Cost of Financing (10% on Reserve line). | | | | | | |

Is not Turnkey. Does not include Radios, A&E, Overhead, PM, etc.

3 major Cost Reduction Activities for 2001 - 03
Downsize current architecture with MRT/ smaller cabinet (planned for Line 01)
Potential Roof Top B-Site Cabinet Architecture
New Entry/ Small Architecture For Direct Customer A/O Connect to Indoor Radio Unit
all of these either eliminate DSL/AM, reduce power and cabinet size, and some services requirements.
To be determined - significant change in Services contractor structure and deployment

* $42K reflects only the first architecture change/cost reduction, others TBD



Confidential



Lucent Technologies
Bell Labs Innovations

# Back-Up



winstar

**Confidential**



**Lucent Technologies**
Bell Labs Innovations



**winstar**
see the future

# Metro Optical Build-Out

## Problem Statement

- Winstar claims to have **20** "constrained" hubs in need of immediate space and power reductions.    Lucent has not been provided a list of these hub locations. (ie. Cities) Winstar has stated that they are typically in older cites such as New York, Boston, and Chicago where less space was available for hubs and growth has occurred.

- In hubs, which are constrained, Winstar cannot add additional customers.

- Winstar would like to use the Cerent "DACs" solution to relieve these "constrained" hubs in order to avoid using racks of M1/3 mutiplexers and manual DSX panels to groom traffic from DS3 and DS1 radios prior to interfacing the optical or electrical equipment at DS3 in the Hub.  If Cisco gains a footprint in these hubs, they can utilize the Cisco's Optical, DWDM and ATM capabilities for those customer applications.  See attached figure of legacy hub configuration. Problem goes away with converged architecture but that does not help existing hubs.

- As of today, Winstar feels Lucent does not have a product that has the full VT grooming functionality to provide the DACS function Winstar has requested for their **New & Existing** Metro builds.

LW00228411

B1751



**Lucent Technologies**
Bell Labs Innovations

# Metro Optical Build-Out

**Lucent Solution**

- The Chromatis Metropolis solution:

  - Winstar believes that in July 2001 Lucent's Chromatis solution will be the best all around product for their metro needs when the VT1 grooming capabilities are available in release 3.

  - A proposed interim solution for constrained hubs would be the Chromatis Release 2 product combined with the AX-11 small DACS product. Although not reducing the footprint as much as the Cisco solution it will provide remote provisioning and management of DS1 cross-connects. There is the disadvantage that Winstar would have to do a transition to the AX-11 and then a second transition to the DS1 cards on the Chromatis when they become available in July. New hubs being put on fiber rings where there is plenty of space available could use the Chromatis solution with the current CAC configuration for DS1 terminations until release 3 is available.

  - Winstar has a Chromatis release 2 system in the lab and will be under test this week.

  - The Winstar Customer Team has been assured there are units in the funnel for delivery to Winstar in 1Q01 (Release 2 upgradable to R3 in July).

Winstar is concerned they will be one of the first customers to implement this technology. Winstar would like to avoid this because of all the problems they have as on of the first customers for 400G. Winstar will want guarantees on product and feature (VT1 grooming) availability timeframes

Confidential

LW00228412

B1752



**Lucent Technologies**
Bell Labs Innovations

# Metro Optical Build-Out

**winstar**

## Lucent Advantage

- Chromatis is a true multi-service product with DWDM, ATM, TDM functions in one shelf. In July 2001, Chromatis will meet all of Winstar's requirements.
- Chromatis Executives (Bob Barron, Jim Dertzbaugh) are available to help Champion the deployment of the Chromatis deployment.

| Key Features | Cisco 454 | | Chromatis | |
|---|---|---|---|---|
| | Now | Future | Now | Future |
| ATM | Add on Lightstream 1010 | Integrated Promised 6/01 | Yes – fully integrated into shelf | |
| DWDM | Avanex Passive Add on – 18 lambdas @ 200G spacing – Manual adjustments at every node to add nodes in future | | Integrated DWDM with option for Amplification – 8 lambdas now ->16 rel. 3 – Fully managed solution provides easy node additions | |
| DS1 + VT grooming (DACS like Function) | Have now – 14 DS1s per card | | No- would have to use add-on such as AX-11 shelf – larger footprint and 2 transitions | Planned for Rel 3 in 7/01 – 56 DS1s per card |
| Field Experience | Thousands in the field over two years – Avanex option relatively new | | Rel. 2 in ramp up mode – Don't want to be first | |
| Size-Shelves/bay | 4 | | 1 – 4500 or 2 2500s | |
| OC-192 | No | March? | No | Rel 4 4Q01 |

Confidential

LW00228413

B1753





Lucent Technologies
Bell Labs Innovations

winstar

# New Services Addendum – Executive Summary

## Phase I / Project Assessment

- Lucent will provide program managers to staff the Joint Global Program Management Office and manage the 27 Projects

- Lucent will provide Project Assessment Teams to evaluate each of the 27 Projects and develop outsourcing Proposals. Proposals will be developed in response to more detailed descriptions of Projects and corresponding Descriptions of Deliverables to be provided by Winstar. All Proposals will either be accepted or rejected by Winstar by August 31, 2001

- Lucent employees (program managers and Project Assessment Teams) will be billed at market rates plus the cost of financing

**Major Change:** Lucent will not be responsible for completion of the Projects, will not subcontract work back to Winstar, and will not accept purchase orders for work to be performed by Winstar

## Phase II / Implementing Proposals

- Lucent will implement Proposals that will most likely involve complete outsourcing of Project to Lucent for a fixed price

- Lucent Proposals will specify how Lucent will implement the Projects, for example, Lucent may hire Winstar employees, may utilize Lucent employees or contractors, or may assume Winstar third party contracts. Winstar may either accept or reject Lucent Proposals

- Lucent Proposals will also specify payment and acceptance terms if different than the Supply Agreement

Confidential

LW00228414

B1754



winstar

Lucent Technologies
Bell Labs Innovations

# Executive Summary (cont'd)

## General Terms and Conditions

- Lucent may terminate management or implementation of a Project or Deliverable within 6 months of providing notice of intent to terminate.  Also may terminate for breach of payment obligations, subject to notice and cure provisions specified in the Supply Agreement

- Lucent relieved of any warranty breach under the Supply Agreement if caused by Winstar employees, contractors or subcontractors

- Winstar to indemnify Lucent for claims (death, injury, property damage, Workmen's Compensation, theft, entitlement to employee benefits) by Winstar employees, contractors, and subcontractors

- Unless Lucent otherwise specifies in its Proposals, Lucent will not warrant that the Network implemented as a result of these Proposals will interoperate

- **Note:** Winstar has indicated reluctance to add new indemnities or alter warranties set forth in the Supply Agreement

Confidential

LW00228415

B1755



**winstar** _Broadband._   **EOQ Deals**

## LUCENT/WINSTAR END OF QUARTER DEALS
## FISCAL YEAR 2000

**Lucent Technologies**
_Bell Labs Innovations_

| Quarter | Winstar PO's* | Lucent Billed Rev | Winstar Sales to Lucent | Equipment Stored in Warehouse | Lucent Revenue Credits to Winstar |
|---|---|---|---|---|---|
| Q1 | $96,791,572 | $113,902,391 | $10M (Radios) | | |
| Q2 | $327,834,358 (includes $133M PO for 5,200 Max 20's which were never ordered; 200 PSAX 2300's which were all shipped; only $19M of this PO actually billed) | $114,977,092 | $10M (Radios) $25M (Lit Fiber TRU's) | PSAX 2300: 190 systems ($11.9M) staged in Lucent's Columbia, MD warehouse; CopperComm 30 systems ($4.9M) staged in Lucent's Columbia, MD warehouse | ($3M) ($3M) |
| Q3 | $112,728,000 | $130,050,799 | $10M (Radios) | CBX 500 : 23 Systems ($7.5M) in Winstar DE warehouse; GX550: 10 systems ($3.5M) in Winstar DE warehouse; | ($14M) ($2.9M) |
| | | | | Cumulative: ONG equipment: $58M in Lucent's Morrow, GA warehouse (will be depleted by Feb/March 2001) 5ESS: 1 Model 2A ($1.3M) stored in Lucent warehouse for approx. one year | |
| TOTAL | $537,353,930 | $358,930,282 | $55,000,000 | $87,100,000 | $22,900,000 |

* These were not the only PO's received from Winstar during these quarters. This list includes the PO's that were involved in the EOQ deals.

LW00228416

B1756



**Lucent Technologies**
Bell Labs Innovations

# EOQ Deals



**winstar**

## Q4 Billed Revenue

$158M (Included $135M Software pool)

### Deferred Billing

### Pricing Commitments

B/Hub Site: Effective October 1, 2000 for all new B's, Hubs: $20K per B site pricing (previous price was $57K); $400K per Hub pricing (previous price was $713K). Winstar committed to deploy Lucent's converged access solution in at least 3,000 B's. Winstar committed to provide Lucent these 3,000 B's in 2001 or at least half of the total build program of 2001 if building issues prevent Winstar from providing Lucent with 3,000 B's. If the latter is the case, the remaining B's will be built in 2002.

Optical Networking: Winstar agreed to exclusive build of long haul and metro networks in the domestic U.S. with Lucent's solution. Lucent agreed to meet Sycamore pricing for the same product with like features, capacity and network design.

### Winstar Contractors

Lucent agreed to pick up Winstar's contractors retroactive to October 1, 2000 subject to contract negotiations to be completed by the end of October, 2000.

### Enterprise Integration Laboratory

Lucent committed to provide up to $45M worth of equipment and services for the development of an Enterprise Integration Laboratory as needed for a term of 18 months commencing November 15, 2000. The lab will demonstrate flow through provisioning and fool proof record keeping across network technologies.

### Credits

$35M (to be applied in fiscal Q12001)

Confidential

LW00228417

B1757

# Restructuring of the End Of Quarter Deal (9/2000)

- $135M Software Pool
- $10M Credit issued 9/2000
- $35M Credit to be issued 4Q2000 (Calendar)
- $45M Lab commitment to be implemented within 18 months
- $20M of actual software from list provided. Any software purchased by Winstar that is not on this list will be purchased seperately
- $25M to subsidize Hub and B pricing for 3,000 Bs at $20K per B and $400K per Hub
- Software Pool Payment terms outlined as $33.75M on each of the following dates; 1/15/2001, 3/30/2001, 6/29/2001, 8/29/2001.

- Original $135M Software Pool Eliminated
- $10M Credit issued 9/00 stands, but "payback" element agreement signed
- $35M Credit issued 4Q00 stands, but "payback" element agreement signed
- Winstar issues Lucent a PO for $45M to build Lab
- Winstar issues Lucent $20M for listed software
- Winstar issues Lucent PO for 1,200 Bs at $40K per B, and 20 Hubs at $450K per Hub. Per original agreement, remaining 1,800 Bs will be priced at $20K & $400K.
- * (Prices do not include Radios, and overhead costs such as A&E, Construction Mgt, Engineering services, Integration NOC support, etc. Hub and B pricing is based on the scope outlined in original proposal. Outside the scope elements will be subject to the change management process and agreed upon fence guidelines.)

LW00228418

B1758

# Pros and Cons of Restructuring of 135M Software Deal with Winstar

- Pros
    - Negotiating position to change certain elements.
    - Easier treatment of individual elements from a Lucent accounting standpoint.
    - Clearer understanding from all affected parties on what the agreement is for.
    - Lucent Hub and B deployment team see more direct impact of services rendered, and value delivered. No confusion on budget.
    - Winstar gains advantage with payment terms (i.e. they would change from present terms, to whatever new agreement would be).

- Cons
    - Lucent is "guaranteed" Winstar revenue (or cash) stream on original dates specified in the agreement.
    - Lucent CFO org has a somewhat reasonable approach to "treating" these $$ from Winstar (there is a question on treatment of $25M Hub and B pricing subsidy).
    - Gives Lucent flexibility in allocating $25M Hub and B pricing subsidy (otherwise additional Hub and B dollars come in when jobs completed).

Confidential

LW00228419

B1759

CONFORMED COPY

CREDIT AGREEMENT

Dated as of May 4, 2000

among

WVF-I LLC, as Initial Borrower,

Any Additional Borrowers Party Hereto,

WINSTAR COMMUNICATIONS, INC.,

The Lenders Party Hereto,

THE BANK OF NEW YORK,
as Collateral Agent,

and

LUCENT TECHNOLOGIES INC.,
as Administrative Agent



[Reference No. 7725-064]



[NYCORP;1087706.1:4459B:06/14/00-5:50p]

B1760

TABLE OF CONTENTS

Page

ARTICLE IDefinitions

SECTION 1.01.   Defined Terms ............................. 1
SECTION 1.02.   Classification of Loans and Borrowings ... 41
SECTION 1.03.   Terms Generally .......................... 41
SECTION 1.04.   Accounting Terms ......................... 42


ARTICLE IIThe Loans

SECTION 2.01.   Commitments .............................. 42
SECTION 2.02.   Loans and Borrowings ..................... 42
SECTION 2.03.   Requests for Borrowings .................. 43
SECTION 2.04.   Funding of Borrowings .................... 45
SECTION 2.05.   Interest Elections ....................... 46
SECTION 2.06.   Termination and Reduction of Commitments . 48
SECTION 2.07.   Repayment of Loans; Evidence of Debt ..... 49
SECTION 2.08.   Amortization of Loans .................... 50
SECTION 2.09.   Prepayment of Loans ...................... 50
SECTION 2.10.   Fees ..................................... 51
SECTION 2.11.   Interest ................................. 52
SECTION 2.12.   Alternate Rate of Interest ............... 53
SECTION 2.13.   Increased Costs .......................... 53
SECTION 2.14.   Break Funding Payments ................... 54
SECTION 2.15.   Taxes .................................... 55
SECTION 2.16.   Payments Generally; Pro Rata Treatment;
                Sharing of Set-offs ...................... 58
SECTION 2.17.   Mitigation Obligations; Replacement of
       Lenders 60
SECTION 2.18.   Refinancing Requirement .................. 61
SECTION 2.19.   Conversion Notes ......................... 63
SECTION 2.20.   Replacement Borrowers .................... 64
SECTION 2.21.   Borrower Payment Allocations ............. 66
SECTION 2.22.   Mandatory Assignment of Loans ............ 67


ARTICLE IIIRepresentations and Warranties

SECTION 3.01.   Corporate Organization and Power ......... 69
SECTION 3.02.   Subsidiaries ............................. 69
SECTION 3.03.   Corporate Authority ...................... 69
SECTION 3.04.   Binding Obligation ....................... 70
SECTION 3.05.   Litigation; Labor Controversies .......... 70
SECTION 3.06.   Governmental Approvals; No Conflicts ..... 70
SECTION 3.07    Financial Condition ...................... 71
SECTION 3.08.   Taxes .................................... 71
SECTION 3.09.   Margin Regulations; Margin Stock ......... 72
SECTION 3.10.   Compliance with ERISA .................... 72
SECTION 3.11.   Investment Company and Holding Company
                Status ................................... 73
SECTION 3.12.   Properties and Licenses .................. 73

[NYCORP;1007700.1:4459B:06/14/00-5:50p]

B1761

SECTION 3.13.   Telecommunications Business and    ....
                Telecommunications Licenses 73
SECTION 3.14.   Investments ...........................  74
SECTION 3.15.   Compliance with Laws and Charter
                Documents .........................  74
SECTION 3.16.   Environmental Protection ..............  75
SECTION 3.17.   Insurance .............................  76
SECTION 3.18.   Compliance with Agreements ............  76
SECTION 3.19.   Full Disclosure .......................  76
SECTION 3.20.   Supply Agreement ......................  76
SECTION 3.21.   Security Documents ....................  77

ARTICLE IV Conditions

SECTION 4.01.   Effective Date ........................  77
SECTION 4.02.   First Borrowing .......................  79
SECTION 4.03.   Each Borrowing ........................  81
SECTION 4.04.   Replacement Borrower ..................  81
SECTION 4.05.   Released Borrower .....................  84

ARTICLE V Affirmative Covenants

SECTION 5.01.   Financial Statements; Compliance
                Certificates ......................  84
SECTION 5.02.   Corporate Existence ...................  86
SECTION 5.03.   Conduct of Business ...................  86
SECTION 5.04.   Taxes .................................  86
SECTION 5.05.   Insurance .............................  87
SECTION 5.06.   Inspection ............................  87
SECTION 5.07.   Maintenance of Records ................  87
SECTION 5.08.   Maintenance of Property ...............  88
SECTION 5.09    ERISA .................................  88
SECTION 5.10.   Notice of Adverse Developments ........  89
SECTION 5.11.   Environmental Matters .................  90
SECTION 5.12.   Interest Rate Protection ..............  90
SECTION 5.13.   Measurement Date ......................  90
SECTION 5.14.   Information Regarding Collateral .......  91
SECTION 5.15.   Casualty and Condemnation .............  92
SECTION 5.16.   Temporary Restricted Subsidiaries .....  93
SECTION 5.17.   Leasing of Collateral .................  93

ARTICLE VI Negative Covenants

SECTION 6.01.   Limitation on Indebtedness ............  93
SECTION 6.02.   Limitations on Mergers, Consolidations and
                Sales of Assets .......................  98
SECTION 6.03.   Limitations on Liens ..................  99
SECTION 6.04.   Investments, Acquisitions, Loans, Advances
                and Guaranties ...................... 102
SECTION 6.05.   Dividends, Purchase of Stock .......... 108
SECTION 6.06.   Use of Proceeds ....................... 110
SECTION 6.07.   Phase 1 Financial Covenants ........... 110
SECTION 6.08.   Phase 2 Financial Covenants ........... 113

[NYCORP;1087760.1:4459B:06/14/00-5:50p]

SECTION 6.09.  Consolidated Senior Debt to Consolidated  ...
                Annualized EBITDA ......................... 115
SECTION 6.10.  EBITDA to Consolidated Debt Service ..... 116
SECTION 6.11.  Certain Prepayments of Indebtedness ..... 116
SECTION 6.12.  Amount of Bank Facilities ............... 116
SECTION 6.13.  Use of Collateral ....................... 117
SECTION 6.14.  Activities of Borrower .................. 120

ARTICLE VIIEvents of Default


ARTICLE VIIIThe Agents


ARTICLE IXMiscellaneous

SECTION 9.01.  Notices ................................. 126
SECTION 9.02.  Waivers; Amendments ..................... 127
SECTION 9.03.  Expenses; Indemnity; Damage Waiver ...... 128
SECTION 9.04.  Successors and Assigns .................. 130
SECTION 9.05.  Survival ................................ 133
SECTION 9.06.  Counterparts; Integration; Effectiveness 134
SECTION 9.07.  Severability ............................ 134
SECTION 9.08.  Right of Setoff ......................... 134
SECTION 9.09.  Governing Law; Jurisdiction; Consent to  ...
                Service of Process ..................... 135
SECTION 9.10.  WAIVER OF JURY TRIAL .................... 136
SECTION 9.11.  Headings ................................ 136
SECTION 9.12.  Confidentiality ......................... 136
SECTION 9.13.  Interest Rate Limitation ................ 137

ARTICLE XSubsidiaries

SECTION 10.01.  Restricted Subsidiaries ................ 137
SECTION 10.02.  Principal Subsidiaries ................. 140
SECTION 10.03.  Designated Foreign Subsidiaries ........ 141
SECTION 10.04.  Temporary Restricted Subsidiaries ...... 142
SECTION 10.05.  Administrative Agent Duties ............ 142
SECTION 10.06.  Additional Subsidiaries ................ 142
SECTION 10.07.  Designation of Subsidiaries Under Bank  ....
                Credit Agreement ....................... 142
SECTION 10.08.  Conversions Upon Prepayment ............ 142

[NYCORP;1007788.1:4459B:06/14/00-5:50p]

will be necessary in each such jurisdiction during the period of 18 months after the date of such certificate in order to maintain the effectiveness and perfection of all Liens granted under all Foreign Subsidiary Security Agreements.

(c)   Notwithstanding the foregoing, no fixture filing shall be required with respect to Collateral constituting fixtures at a single customer location unless all the Collateral constituting fixtures at such location has an aggregate Collateral Cost in excess of $100,000.

SECTION 5.15.   Casualty and Condemnation.
(a)   The Parent and the Borrowers shall furnish to the Agents and the Lenders prompt written notice of any casualty or other damage to any material portion of any Collateral or the commencement of any action or proceeding for the taking of any Collateral or any part thereof or interest therein under power of eminent domain or by condemnation or similar proceeding.

(b)   If any event described in paragraph (a) of this Section results in Net Proceeds (whether in the form of insurance proceeds, condemnation award or otherwise) and either the aggregate amount of all such Net Proceeds exceeds $5,000,000 or a Default has occurred and is continuing, the Collateral Agent is authorized to collect such Net Proceeds and, if received by any Borrower, any Foreign Subsidiary Equipment Owner or any other Consolidated Group Member, such Net Proceeds shall be paid over to the Collateral Agent. All such Net Proceeds retained by or paid over to the Collateral Agent shall be held by the Collateral Agent and released from time to time to pay the costs of repairing, restoring or replacing the affected property in accordance with the terms of this Agreement and the applicable provisions of the applicable Security Agreement, subject to the provisions of the applicable Security Agreement regarding application of such Net Proceeds during a Default.

(c)   If any Net Proceeds retained by or paid over to the Collateral Agent as provided above continue to be held by the Collateral Agent on the date that any prepayment is due pursuant to Section 2.09(c) in respect of the event resulting in such Net Proceeds, then such Net Proceeds shall be applied to prepay Borrowings as provided in Section 2.09(c).

SECTION 5.16.   Temporary Restricted Subsidiaries.
On or before the first anniversary date of the date hereof, the Parent shall cause each Temporary Restricted Subsidiary to (a) become a direct or indirect Subsidiary of the Bank

Borrower, (b) Guarantee the Bank Loans and (c) pledge a substantial majority of its assets to secure the Bank Loans to the extent legally permissible.

SECTION 5.17.  Leasing of Collateral.  Each Borrower will enter into, as lessor, operating leases with respect to all Collateral owned by it providing revenues sufficient to satisfy its Obligations as and when due.  Any such leases shall comply with Section 6.13.


.................. ARTICLE VI

Negative Covenants

Until the Commitments have expired or terminated and the principal of and interest on each Loan and all fees payable hereunder have been paid in full, each of the Parent and the Borrowers covenants and agrees with the Lenders that:

SECTION 6.01.  Limitation on Indebtedness. (a)  None of the Consolidated Group Members shall Incur any Indebtedness, except, without duplication:

(i)  Subject to Section 6.12, Indebtedness of the Bank Loan Parties to the Bank Agent, the Bank Lenders and Bank L/C Issuer under the Bank Credit Documents;

(ii)  Indebtedness of the Bank Borrower or a Restricted Subsidiary owed to and held by the Bank Borrower and Restricted Subsidiaries; provided, however, that (A) such Indebtedness may not be sold, pledged, assigned or in any way transferred to a Person other than the Bank Borrower and Restricted Subsidiaries and the instruments evidencing the Indebtedness must so provide; (B) the occurrence of any event that results in a Restricted Subsidiary that is owed or holds Indebtedness ceasing to be a Restricted Subsidiary shall constitute a transfer of the Indebtedness, (C) the Bank Borrower may only Incur Indebtedness under this clause (ii) if the Indebtedness is unsecured and expressly subordinated to the prior payment in full in cash of all Loans and obligations Incurred in any way under the Loan Documents and (D) for avoidance of doubt, the Parent, Principal Subsidiaries, Vendor Financing Obligors and Designated Foreign Subsidiaries may not Incur Indebtedness under this clause (ii);

B1765

(iii)   Indebtedness of the Parent Incurred under the Bond Notes Offering and Indebtedness of the Parent Incurred in respect of the Series C Stock Transaction, and any Refinancing of Indebtedness permitted under this clause (iii);

(iv)   Indebtedness existing on the date hereof as set forth on Schedule 6.01;

(v)   Purchase Money Indebtedness;

(A)   Incurred by the Loan Parties under the Loan Documents,

(B)   Incurred by the Bank Borrower, Restricted Subsidiaries, Principal Subsidiaries, Vendor Financing Obligors and Designated Foreign Subsidiaries under Fiber Capital Lease Obligations not to exceed $250.0 million, excluding the MFN Fiber IRU Capital Lease Obligations and the Williams Fiber IRU Capital Lease Obligations; provided that Indebtedness Incurred under this clause (v)(B), shall be on commercially reasonable terms and conditions,

(C)   Incurred by the Bank Borrower, Restricted Subsidiaries, Principal Subsidiaries, Vendor Financing Obligors and Designated Foreign Subsidiaries in respect of Data Center Equipment Financings (or Incurred by the Parent or the Bank Borrower, in the form of a Guarantee) not to exceed $150.0 million; provided that any Guarantee of Indebtedness Incurred under this clause by the Bank Borrower shall be (1) substantially in the form of Exhibit F attached hereto or, otherwise (2) on terms and conditions reasonably acceptable to the Administrative Agent, such acceptance not to be unreasonably delayed,

(D)   Incurred by the Bank Borrower, Restricted Subsidiaries, Principal Subsidiaries, Vendor Financing Obligors and Designated Foreign Subsidiaries in respect of Network Equipment Financings (or Incurred by the Parent or the Bank Borrower, in the form of a Guarantee) not to exceed $250.0 million; provided that any Guarantee of Indebtedness Incurred under this clause by the Bank Borrower shall be (1) substantially in the form of Exhibit F attached hereto or, otherwise (2) on terms and conditions reasonably acceptable

B1766

96

to the Administrative Agent, such acceptance not to be unreasonably delayed, or

(E)  Incurred by the Bank Borrower, Restricted Subsidiaries, Principal Subsidiaries, Vendor Financing Obligors and Designated Foreign Subsidiaries (or Incurred by the Parent or the Bank Borrower, in the form of a Guarantee) not to exceed $100.0 million at any time outstanding; provided that any Guarantee of Indebtedness Incurred under this clause by the Bank Borrower shall be (1) substantially in the form of Exhibit F attached hereto or, otherwise (2) on terms and conditions reasonably acceptable to the Administrative Agent, such acceptance not to be unreasonably delayed,

provided, however, that Indebtedness under this clause (v), other than clauses (A) and (B) above, shall be on commercially reasonable terms and conditions and, to the extent that any such Incurrence shall be in a principal amount exceeding $25.0 million and not be Incurred by a Vendor Financing Obligor, on terms and conditions reasonably acceptable to the Administrative Agent, such acceptance not to be unreasonably withheld or delayed;

(vi) Hedging Obligations consisting of (A) Interest Rate Agreements or Currency Agreements directly related to Indebtedness permitted to be Incurred by the Bank Loan Parties or Principal Subsidiaries; provided, however, that the notional amount of any such Hedging Obligation does not exceed the amount of Indebtedness to which such Hedging Obligation relates or (B) Currency Agreements used to hedge non-U.S. dollar currency exposures of the Bank Loan Parties or Principal Subsidiaries, entered into in accordance with customary industry practices for companies in the Telecommunications Business with international operations and not for purposes of speculation;

(vii)    Indebtedness of a Consolidated Group Member solely in respect of letters of credit, bank guarantees, banker's acceptances, cash deposits, surety bonds, bid bonds and performance bonds Incurred in the ordinary course of business; provided, however, that such instruments or deposits do not support any Indebtedness other than Indebtedness which, if Incurred by such Person, would be permitted to be Incurred pursuant to another provision of this covenant;

97

(viii) Indebtedness of the Bank Loan Parties and Principal Subsidiaries in an aggregate principal amount not to exceed $50.0 million at any time outstanding;

(ix) Indebtedness of the Parent in an aggregate principal amount not to exceed the sum of (x) $1.65 billion, (y) an additional amount equal to the sum of (A) the aggregate Net Cash Proceeds received by the Parent after the Effective Date from the issuance or sale of Capital Stock (other than Disqualified Stock) of the Parent (other than an issuance or sale to the Bank Borrower or any Restricted Subsidiary and other than an issuance or sale to an employee stock ownership plan or to a trust established by the Parent, the Bank Borrower, a Restricted Subsidiary or a Principal Subsidiary for the benefit of its employees) provided that such Net Cash Proceeds in this clause (y) are invested by the Parent in the Bank Borrower and such Investment is not in the form of Indebtedness and (B) the Fair Market Value of any Capital Stock (other than Disqualified Stock) of the Parent issued to any Person (other than a Subsidiary) in exchange for Telecommunications Assets which will be held by the Bank Borrower or a Restricted Subsidiary or in exchange for the Capital Stock of another Person a substantial majority of the assets of which consist of Telecommunications Assets in a transaction pursuant to which such other Person becomes a Restricted Subsidiary, in each case received or issued, as the case may be, subsequent to the Effective Date and (z) Conversion Notes and amounts raised and utilized by the Parent to invest in the Bank Borrower for the purpose of Refinancing Loans and that are applied to prepay Loans in accordance with this Agreement; provided, however, that Indebtedness Incurred under this clause (ix) is issued on terms (other than as to interest rates, redemption prices and issue price) no more restrictive than the Bond Notes Offering or, if more restrictive, such restrictions would not be more adverse than the terms of the Bond Notes Offering to the interests of the Lenders in any material respect; provided further that such Indebtedness has a Stated Maturity at least one year beyond the later of the maturity of the Loans and the maturity of the Bank Loans and further provided that no principal payments thereunder shall fall due during the life of the Loans or the Bank Loans and such Indebtedness shall be issued at commercially reasonable rates (it being understood that the rates applicable to Conversion Notes are deemed to be commercially reasonable);

B1768

98

(x)  Acquired Indebtedness Incurred by the Bank
Borrower, Restricted Subsidiaries, Principal
Subsidiaries and Designated Foreign Subsidiaries in
respect of the acquisition of a Restricted Subsidiary,
Principal Subsidiary or Designated Foreign Subsidiary;

(xi)  Refinancing Indebtedness in respect of
Indebtedness Incurred with respect to the Outstanding
Old Bond Debt or pursuant to clauses (iii), (iv), (v),
(ix) and (x) of this Section 6.01(a); provided, that
Indebtedness of the Parent cannot be Refinanced by
Indebtedness Incurred by the Bank Borrower, any
Restricted Subsidiary, Principal Subsidiary, or
Designated Foreign Subsidiary; provided further,
however, that Refinancing Indebtedness shall not
include Indebtedness of a Restricted Subsidiary,
Principal Subsidiary or Designated Foreign Subsidiary
that Refinances Indebtedness of the Bank Borrower;

(xii)  Guarantees by a Consolidated Group Member
of Indebtedness Incurred by an Unrestricted Subsidiary
secured by a pledge of the Capital Stock of such
Unrestricted Subsidiary so long as the pledge provides
for no recourse against the Consolidated Group Member
for such Indebtedness other than recourse against such
Capital Stock;

(xiii)  Indebtedness Incurred pursuant to the MFN
Fiber IRU Capital Lease Obligations and the Williams
Fiber IRU Capital Lease Obligations and other Capital
Lease Obligations arising under an agreement in effect
on the date hereof; and

(xiv)  Guarantees by the Parent or the Bank
Borrower of Indebtedness of another such Consolidated
Subsidiary Group Member, to the extent the Parent or
the Bank Borrower would be allowed to Incur such
Indebtedness directly hereunder.

(b)  The Borrowers shall not incur any
Indebtedness other than the Loans, notwithstanding whether
any such Indebtedness would be permitted under
Section 6.01(a).

(c)  All Indebtedness that the Bank Borrower and
the Restricted Subsidiaries are permitted to Incur pursuant
to Section 6.01(a) must be Incurred by the Bank Borrower
(and shall not be Incurred by any Restricted Subsidiary),
except (i) Indebtedness under the Bank Credit Documents,
(ii) Indebtedness permitted by clause (ii) of

B1769

99

Section 6.01(a), (iii) existing Indebtedness of Restricted
Subsidiaries referred to in clause (iv) of Section 6.01(a),
(iv) Indebtedness permitted to be Incurred by a Restricted
Subsidiary under clause (vii), (viii), (x), (xi) or
(xiii) of Section 6.01(a) and (v) Purchase Money
Indebtedness permitted by clause (v) of Section 6.01(a);
provided that, in the case of any such Purchase Money
Indebtedness other than the Loans and other than the Fiber
Capital Lease Obligations, either (A) each individual
financing constituting Purchase Money Indebtedness is in an
aggregate principal amount not exceeding $75,000,000 and is
secured only by the Property the purchase price of which was
financed by the proceeds of such individual financing (and
not cross-collateralized with any other Purchase Money
Indebtedness) or (B) in the case of any other such Purchase
Money Indebtedness, such Purchase Money Indebtedness is
Incurred by a Vendor Financing Obligor.

SECTION 6.02.   Limitations on Mergers,
Consolidations and Sales of Assets.   (a)   None of the
Consolidated Group Members shall be a party to any merger,
consolidation or share exchange, or sell, transfer, lease or
otherwise dispose of all or substantially all of its assets
or property, including the Capital Stock of Subsidiaries, in
one transaction or a series of related transactions,
including any disposition of assets or property as part of a
Sale/Leaseback Transaction or permit any Restricted
Subsidiary or Principal Subsidiary so to do; provided,
however, that this Section shall not apply to nor operate to
prevent (i) the Bank Borrower, a Restricted Subsidiary,
Principal Subsidiary or Designated Foreign Subsidiary being
a party to any merger where the Bank Borrower, a Restricted
Subsidiary, Principal Subsidiary or Designated Foreign
Subsidiary is the surviving Person if, after giving effect
to such merger, no Default would then exist; provided
further that if a Restricted Subsidiary merges with a
Designated Foreign Subsidiary or Principal Subsidiary and
the Designated Foreign Subsidiary or Principal Subsidiary is
the surviving Person, as the case may be, then such merger
shall be deemed to be a conversion of the Restricted
Subsidiary into a Designated Foreign Subsidiary or a
Principal Subsidiary, as the case may be, and such
conversion shall be subject to the restrictions herein,
(ii) any Restricted Subsidiary or the Bank Borrower merging
into another Restricted Subsidiary or the Bank Borrower if,
after giving effect to such merger, no Default would then
exist, or (iii) the Bank Borrower or any Restricted
Subsidiary or Principal Subsidiary from selling its
inventory in the ordinary course of its business or selling
Capital Stock of Unrestricted Subsidiaries.  Notwithstanding
the foregoing exceptions, neither any Borrower nor any of

B1770

its Subsidiaries shall be a party to any merger, consolidation or share exchange, or sell, transfer or otherwise dispose of all or substantially all of its assets or property, including the Capital Stock of Subsidiaries, in one transaction or a series of related transactions.

(b)   None of the Consolidated Group Members shall sell or issue any Capital Stock (i) of the Bank Borrower to any Person other than the Parent or (ii) of any Borrower to any Person other than the Pledgor (which shall pledge any additional Capital Stock of any Borrower it acquires to secure the Obligations).  The Pledgor shall continue to be a Wholly Owned Subsidiary of the Bank Borrower.

SECTION 6.03.  Limitations on Liens.  (a)  None of the Consolidated Group Members shall create, incur, assume or suffer to exist any Lien upon or in any of its property or assets, whether now owned or hereafter acquired, except the following Liens (collectively, "Permitted Liens"):

(i)   Liens arising by operation of law in connection with worker's compensation, unemployment insurance, social security obligations, taxes, assessments, statutory obligations or other similar charges, good faith deposits, pledges or Liens in connection with bids, tenders, contracts or leases to which such Consolidated Group Member is a party (other than contracts for borrowed money), or other deposits required to be made or surety bonds or other obligations of like nature (which for the purposes of this Agreement shall include letters of credit in the nature of a surety bond) required to be obtained in the ordinary course of business in connection with any of the foregoing; provided that in each case the obligation secured is not overdue or, if overdue, is being contested in good faith by appropriate proceedings and for which reserves in conformity with GAAP have been provided on the books of such Consolidated Group Member;

(ii)   mechanics', workmen's, materialmen's, landlords', carriers' or other similar Liens arising in the ordinary course of business (or deposits to obtain the release of such Liens) securing obligations not due or, if due, being contested in good faith by appropriate proceedings and for which reserves in conformity with GAAP have been provided on the books of such Consolidated Group Member;

(iii)   Liens for taxes or assessments or other government charges or levies on such Consolidated Group

Member, not yet due or delinquent, or which can thereafter be paid without penalty, or which are being contested in good faith by appropriate proceedings and for which reserves in conformity with GAAP have been provided on the books of such Consolidated Group Member;

(iv)   Liens arising out of judgments or awards against such Consolidated Group Member, or in connection with surety or appeal bonds in connection with bonding such judgments or awards, the time for appeal from which or petition for rehearing of which shall not have expired or with respect to which such Consolidated Group Member shall be prosecuting an appeal or proceeding for review, and with respect to which it shall have obtained a stay of execution pending such appeal or proceeding for review; _provided_ that the aggregate amount of liabilities (including interest and penalties, if any) of the Consolidated Group on a consolidated basis secured by such Liens shall not exceed $25.0 million at any one time outstanding;

(v)   Liens upon any Property acquired by such Consolidated Group Member to secure any Indebtedness of the Consolidated Group on a consolidated basis incurred at the time of the acquisition of such Property to finance the purchase price of such Property, or Liens upon property resulting from the sale by such Consolidated Group Member of Property and the leasing of the same or similar property from the purchaser thereof (or a subsequent purchaser or lessee), _provided_ that any such Lien shall apply only to the Property that was so acquired or sold and leased back and the aggregate principal amount of Indebtedness secured by such Liens shall not exceed $15.0 million at any time outstanding on a consolidated basis;

(vi)   Survey exceptions or encumbrances, easements or reservations, or rights of others for rights-of-way, utilities and other similar purposes, or zoning or other restrictions as to the use of real properties which are necessary for the conduct of the activities of such Consolidated Group Member or which customarily exist on properties of corporations engaged in similar activities and similarly situated and which do not in any event materially impair their use in the operation of the business of such Consolidated Group Member;

(vii)   Liens listed on Schedule 6.03;

[NYCORP:1087708.1:4459B:06/14/00-5:50p]

B1772

102

(viii)   Liens securing permitted Indebtedness of a Subsidiary of a Bank Loan Party incurred in connection with the acquisition or construction of Property of such Subsidiary; provided that such Lien is limited to the Property being financed by such Indebtedness and any revenues of such Subsidiary directly attributable to such Property;

(ix)   Liens securing Indebtedness under the Bank Credit Documents;

(x)   Any extension, renewal or replacement (or successive extensions, renewals or replacements) in whole or in part of any Lien referred to in the foregoing paragraphs (i) through (ix), inclusive, in connection with the permitted extension, renewal or replacement of the Indebtedness secured thereby; provided, however, that the principal amount of Indebtedness secured thereby shall not exceed the principal amount of the Indebtedness so secured at the time of any extension, renewal or refinancing, and that such extension, renewal or refinancing shall be limited to the Property which was subject to the Lien so extended, renewed or refinanced;

(xi)   Liens securing obligations under the Loan Documents, including Liens provided for in the Security Documents;

(xii)   Liens securing Indebtedness existing or incurred in connection with permitted Capital Lease Obligations, provided such Liens are limited to Liens on the capital assets that have been acquired or construction of which has been financed by the proceeds of such Capital Lease Obligations, including Liens incurred pursuant to the Fiber Capital Lease Obligations and Capital Lease Obligations Incurred in respect of the Data Center Equipment Financing;

(xiii)   Liens encumbering the Capital Stock of Unrestricted Subsidiaries provided that there is no recourse to the Consolidated Group for the obligations secured other than against such stock;

(xiv)   Liens under the Bank Credit Documents securing obligations under Hedging Obligations;

(xv)   Liens securing repurchase obligations arising out of permitted Temporary Cash Investments;

B1773

(xvi)  Liens securing obligations of a Consolidated Group Member (other than in respect of Indebtedness for borrowed money) in an aggregate amount not to exceed $10.0 million;

(xvii)   Liens on Temporary Cash Investments to secure   Indebtedness Incurred under Section 6.01(a)(vii); and

(xviii)  Liens securing Purchase Money Indebtedness now existing or to be Incurred under Section 6.01(a)(v)(C), (D) or (E) or any replacement financing thereof.

(b)  Notwithstanding the foregoing, no Consolidated Group Member will create, incur, assume or suffer to exist any Lien on any Collateral or any Capital Stock of a Borrower or any Subsidiary thereof except (i) Liens created under the Security Documents, (ii) Liens described in clause (ii) or (iii) of paragraph (a) of this Section, (iii) in the case of Collateral, rights of Equipment Users under leases or similar arrangements, subject to Equipment User Agreements and (iv) in the case of Capital Stock of a Second Borrower, Liens securing the Bank Loans that are junior to the Liens created under the Pledge Agreement, on the terms contemplated by the Pledge Agreement; provided that, in the case of Liens described in clause (ii) or (iii) of paragraph (a) of this Section that are permitted because the obligations secured thereby are being contested, such Liens shall be permitted on the Collateral or Capital Stock of a Borrower or any Subsidiary thereof only if such contest effectively suspends the collection of the contested obligation and the failure to make payment pending the resolution of such contest could not reasonably be expected to result in a Material Adverse Effect.

SECTION 6.04.  Investments, Acquisitions, Loans, Advances and Guaranties.  None of the Consolidated Group Members shall directly or indirectly, make, retain or have outstanding any Investments except the following Investments (collectively "Permitted Investments"):

(a) in the case of the Parent,

(i)  Investments in the Bank Borrower (other than Indebtedness);

(ii)  Investments in Capital Stock of Temporary Restricted Subsidiaries owned as of the

104

Effective Date, subject to the provisions of Section 5.16;

(iii)   Investments in Subsidiaries not to exceed more than $1.0 million in the aggregate;

(iv)   Temporary Cash Investments in an aggregate amount no greater than $10.0 million at any one time, provided that such Temporary Cash Investments balance shall not exceed $5.0 million for more than three (3) consecutive Business Days;

(v)   Investments in Outstanding Old Bond Debt;

(vi)   Investments in a captive insurance company not to exceed $1.0 million; and

(vii)   Investments with respect to the Series C Stock Transaction.

(b) in the case of the Parent, clauses (vi), (viii), (x) (xiii) and (xxvii), and in the case of the Bank Borrower and Restricted Subsidiaries, any of the following:

(i)   Investments in (A) a Person that will, upon the making of such Investment, become a Restricted Subsidiary; provided, however, that the primary business of such Restricted Subsidiary is the Telecommunications Business, or (B) all or substantially all of the assets of a Person, or a corporate division thereof by the Bank Borrower or a Restricted Subsidiary in an aggregate amount for all Investments pursuant to this clause (i) not to exceed the sum of (x) $200.0 million plus (y) Unrestricted Proceeds, provided that to the extent that the Bank Borrower deems an Investment made under the preceding clause (A) or clause (B) to be a capital expenditure permitted under Section 6.07(c) or 6.08(c), such Investment shall be deemed to be a Cash Capital Expenditure for the purposes of this Agreement and shall not be deemed to be an Investment for the purpose of calculating amounts available to be invested under this clause (i);

(ii)   Investments in Temporary Cash Investments;

(iii)   ownership of stock, obligations or securities received in settlement of debts (created in the ordinary course of business) owing to the Bank Borrower or any Subsidiary;

B1775

105

(iv)   endorsements of negotiable instruments for collection in the ordinary course of business;

(v)   loans and advances to employees in the ordinary course of business for payroll, travel, relocation, and similar purposes;

(vi)   loans or advances to employees made in the ordinary course of business consistent with past practices of the Consolidated Group or as part of a compensation plan approved by the Board of Directors of the Parent in an amount not to exceed $5.0 million at any time outstanding;

(vii)   Investments consisting of performance bonds and letters of credit and other similar surety devices obtained to support, or in lieu of, performance bonds, in each case entered into in the ordinary course of business;

(viii)   the repurchase or other acquisition of shares of Capital Stock of a Bank Loan Party from employees, former employees, directors or former directors of the Bank Loan Party (or permitted transferees of such employees, former employees, directors or former directors), pursuant to the terms of the agreements (including employment agreements) or plans (or amendments thereto) approved by the Board of Directors of the Parent under which such individuals purchase or sell or are granted the option to purchase or sell, shares of such Capital Stock; provided, however, that the aggregate amount of such repurchases and other acquisitions (other than repurchases and acquisitions made pursuant to agreements in effect on the Effective Date) shall not exceed $5.0 million in any calendar year (with unused amounts being carried forward indefinitely);

(ix)   Investments in any Person a substantial majority of the assets of which consist of Telecommunications Assets; provided, however, that the Investments made pursuant to this clause (ix) are pledged as Bank Collateral for the Bank Loans and provided further that the cost of acquisition of all such Investments made pursuant to this clause (ix) (measured on the date each such Investment was made) and then outstanding, does not exceed the sum of $100.0 million, plus Unrestricted Proceeds on the date of any such Investment; provided that with respect to this clause (ix) Unrestricted Proceeds are deemed to be

106

utilized only after the $100.0 million has been utilized in full;

(x)   cash payments in lieu of the issuance of fractional shares in connection with stock splits or upon conversion into Capital Stock of the Consolidated Group Member (other than Disqualified Stock) of any security of the Consolidated Group Member or any convertible Indebtedness of the Consolidated Group Member;

(xi)   Investments in office.com, the cost of which (measured by the Fair Market Value of the consideration paid on the date each such Investment is made) does not exceed $25.0 million during each of the three 12-month periods following the Effective Date (with unused annual amounts being carried over to future periods even if such periods occur after the third anniversary of the Effective Date);

(xii)   Investments, the aggregate cost of which (measured by the Fair Market Value of the consideration paid on the date each such Investment was made) which when taken together with the cost of all other Investments made pursuant to this clause (xii), does not exceed $80.0 million at any time outstanding;

(xiii)   any Guarantee of any Indebtedness of any Restricted Subsidiary, Principal Subsidiary or Designated Foreign Subsidiary to the extent the Person Incurring such Guarantee would be permitted to directly Incur such Indebtedness under Section 6.01;

(xiv)   Existing Investments as set forth on Schedule 3.14;

(xv)   Investments in Capital Stock of customers of any Consolidated Subsidiary Group Member received and held by the Person providing such products or services, or by the Bank Borrower or any Restricted Subsidiary in exchange for products and services provided in the ordinary course of business; provided, however, that the value of such products and services (calculated as the consideration received by such Person for such products and services in a comparable arm's-length transaction) shall not exceed $50.0 million during each successive 12-month period following the Effective Date;

(xvi)   Hedging Obligations on Indebtedness permitted pursuant to Section 6.01;

(xvii)   Investments in Restricted Subsidiaries;

(xviii)   advances to customers in the ordinary course of business that are recorded as Receivables on the balance sheet of the vendor;

(xix)   Investments in Principal Subsidiaries and Designated Foreign Subsidiaries in an aggregate amount not to exceed the sum of (A) $150.0 million, (B) Unrestricted Proceeds on the date of any such Investment and (C) the original cost of any Investment in a Principal Subsidiary or Designated Foreign Subsidiary plus the cost of any subsequent Investments in such Subsidiaries to the extent that such Subsidiaries are converted to Restricted Subsidiaries pursuant to Article X; provided that with respect to this clause (xix) Unrestricted Proceeds are deemed to be utilized only after the $150.0 million has been utilized in full; provided further that the conversion of a Restricted Subsidiary or Unrestricted Subsidiary to a Principal Subsidiary or a Designated Foreign Subsidiary shall constitute an Investment under this clause and such Investment shall be valued, in the case of a Restricted Subsidiary, at the cost of the Investment in the Restricted Subsidiary at the time it became a Restricted Subsidiary plus the cost of any subsequent Investments in the Restricted Subsidiary through the date the Restricted Subsidiary becomes a Principal Subsidiary or a Designated Foreign Subsidiary and, in the case of an Unrestricted Subsidiary, at the cost of the Investment in the Unrestricted Subsidiary at the time it became an Unrestricted Subsidiary plus the cost of any subsequent Investments in the Unrestricted Subsidiary through the date the Unrestricted Subsidiary becomes a Principal Subsidiary or a Designated Foreign Subsidiary;

(xx)   Investments in Unrestricted Subsidiaries in an aggregate amount not to exceed the sum of (A) $50.0 million, (B) Unrestricted Proceeds on the date of any such Investment and (C) the original cost of any Investment in an Unrestricted Subsidiary plus the cost of any subsequent Investments in such Subsidiaries to the extent that such Subsidiaries are converted to Restricted Subsidiaries, Principal Subsidiaries or Designated Foreign Subsidiaries pursuant to Article X; provided that with respect to this clause (xx) Unrestricted Proceeds are deemed to be utilized only after the $50.0 million has been utilized in full; provided further, that the conversion of a

[NYCORP;1087708.1:4459B:06/14/00-S:50p]

108

Restricted Subsidiary, Principal Subsidiary or a Designated Foreign Subsidiary into an Unrestricted Subsidiary shall constitute an Investment in Unrestricted Subsidiaries under this clause and such Investment shall be valued at the cost of the Investment in the Restricted Subsidiary, Principal Subsidiary or Designated Foreign Subsidiary at the time it became such a Person plus the cost of any subsequent Investments on such Person through the date the Restricted Subsidiary, Principal Subsidiary or Designated Foreign Subsidiary becomes an Unrestricted Subsidiary;

(xxi)   Investments paid for with Capital Stock of the Parent (based on the cost of such Investments measured by the Fair Market Value of the Parent's Capital Stock on the date of such Investment)

(A)   in any Person engaged in the Telecommunications Business that is not a Subsidiary, a substantial majority of the assets of which person consist of Telecommunications Assets, and

(B)   in any other Person that is not a Subsidiary of the Parent up to a maximum aggregate amount of $50.0 million at any time outstanding;

(xxii)   Investments in Outstanding Old Bond Debt;

(xxiii)   Investments in Capital Stock of (A) any Borrower, (B) any Vendor Financing Obligor and (C) a captive insurance company in an aggregate amount, for clauses (A), (B) and (C), not to exceed $5.0 million;

(xxiv)   Investments in the Capital Stock of the Parent by the Bank Borrower but only in the event the Bank Borrower is prohibited by law, contract or otherwise from making a dividend to the Parent pursuant to Section 6.05(a) and to the extent and in an amount that a dividend from the Bank Borrower to the Parent would be permitted pursuant to Section 6.05(a); provided, however, the proceeds from an Investment under this clause (xxiv) shall be used solely for the purposes permitted under Section 6.05(a) with respect to the payment of dividends;

(xxv)   Investments in any Vendor Financing Obligor to meet regularly scheduled principal and interest payments and fees and indemnity and expense

[NYCORP;1087766.1:4459B:06/14/00-5:50p]

B1779

reimbursement obligations owed under Purchase Money Indebtedness of such Vendor Financing Obligor to the extent not paid out of proceeds from operating leases on Property owned by such Vendor Financing Obligor;

(xxvi)   Investments in any Borrower that are applied to pay Obligations; and

(xxvii)   Guarantees by the Parent or the Bank Borrower (i) of the Obligations pursuant to the Guarantee Agreement or (ii) of the Indebtedness to be Incurred by the Bank Borrower under Section 6.01(a)(v)(C), (D) or (E);

provided that no new Investment shall be permitted to be made pursuant to clause (i), (viii), (ix), (xi), (xii), (xix), (xx), (xxi) or (xxv) above while an Event of Default shall have occurred and be continuing, except for Investments that such Consolidated Group Member shall have committed to make prior to the date of the related Default; and

(c)   in the case of any Borrower, Investments in Temporary Cash Investments.

In determining the amount of Investments outstanding, (A) Investments in Capital Stock and Investments taking the form of equity contributions shall always be valued at the original cost thereof (regardless of any subsequent appreciation or depreciation therein) less cash (or in the case of Investments made for other than cash, the Fair Market Value of Telecommunications Assets or Marketable Securities) received from such Investments by the Person making such Investments, provided that in no event may the amount of an Investment outstanding be valued at less than zero and (B) Investments in Indebtedness shall be valued at the original principal amount thereof less any cash payments received on such Indebtedness.  It is understood that the assumption and payment by a Borrower of a Foreign Subsidiary Equipment Owner's obligation to pay the Purchase Price of any Eligible Equipment and Services in accordance with Section 6.13 shall not be construed to be an Investment by such Borrower in violation of this Section.

SECTION 6.05.   Dividends, Purchase of Stock and Prepayments.   (a)   None of the Consolidated Group Members shall declare any dividends (other than dividends payable in Capital Stock of the Parent or the Bank Borrower) on any shares of any class of its Capital Stock, or apply any of its Property or assets to the purchase, redemption or other retirement of, or set apart any sum for the payment of any

110

dividends on, or for the purchase, redemption or other retirement of, or make any other distribution by reduction of capital or otherwise in respect of, any shares of any class of Capital Stock of a Loan Party, or permit any Principal Subsidiary so to do, or permit any Unrestricted Subsidiary to purchase or acquire any shares of any class of Capital Stock of the Bank Borrower, except for any Permitted Investment, provided that dividends (other than dividends by a Borrower, which shall not be permitted by any of the following clauses) are permitted (i) by the Bank Borrower to the Parent to the extent necessary for the Parent to (A) so long as no Event of Default has occurred and is continuing, meet its regularly scheduled obligations in regard to principal and interest in connection with Indebtedness Incurred pursuant to clauses (iii), (iv) and (v) of Section 6.01(a) and Refinancing thereof to the extent permitted in Section 6.01(a)(xi), (B) pay the ordinary operating expenses of the Parent and other liabilities incurred by the Parent in the ordinary course of business, (C) so long as no Event of Default has occurred and is continuing, repay the Outstanding Old Bond Debt, including regularly scheduled interest payments thereon, and (D) pay cash payments in lieu of the issuance of fractional shares in connection with stock splits or upon conversion into Capital Stock of the Parent (other than Disqualified Stock) of any security of the Parent or any convertible Indebtedness of the Parent, (ii) to the Bank Borrower, Restricted Subsidiaries, Principal Subsidiaries, Designated Foreign Subsidiaries and minority shareholders, provided that dividends may only be paid to minority shareholders ratably to the extent of their percentage interests in Capital Stock of the applicable Subsidiary; and (iii) so long as no Event of Default has occurred and is continuing, to the Parent or by the Parent in an amount no greater than the Net Available Cash of the substantially concurrent sale of (or specified with particularity at the time of the sale of, and subsequently made with such Net Available Cash of), or made by exchange for, Capital Stock (other than Disqualified Stock) of the Parent (other than Capital Stock issued or sold to a Subsidiary of the Parent or an employee stock ownership plan or to a trust established by the Parent or any of its Subsidiaries for the benefit of their employees); provided that such dividends and purchases of Capital Stock shall be deemed to be a utilization of Unrestricted Proceeds and shall not exceed the regularly scheduled dividend amounts under Series A Preferred Stock and Series G Preferred Stock.  It is understood that the assumption and payment by a Borrower of a Foreign Subsidiary Equipment Owner's obligation to pay the Purchase Price of any Eligible Equipment and Services in accordance with

B1781

111

Section 6.13 shall not be construed to be a dividend by such Borrower in violation of this Section.

(b)   None of the Consolidated Group Members shall permit any Restricted Subsidiary, Principal Subsidiary or Designated Foreign Subsidiary to enter into any agreement or instrument which by its terms restricts the ability of such Restricted Subsidiary, Principal Subsidiary or Designated Foreign Subsidiary to (i) declare or pay dividends or make similar distributions, (ii) repay principal of, or pay any interest on, any Indebtedness owed to any Consolidated Group Member described in Section 6.01(a), (iii) make payments of royalties, licensing fees and similar amounts to any Consolidated Group Member, (iv) make loans or advances to any Consolidated Group Member or (v) permit any Consolidated Group Member to engage in consolidated cash management inconsistent with prudent business practice.

(c)   None of the Consolidated Group Members shall permit (i) a Restricted Subsidiary, Principal Subsidiary or Designated Foreign Subsidiary to issue a stock dividend other than on a pro rata basis to its shareholders, and (ii) the Bank Borrower to issue stock dividends to any Person other than the Parent, and, in each case of clauses (i) and (ii), the stock issued to a Restricted Subsidiary, Principal Subsidiary, or Designated Subsidiary in connection with such stock dividend is pledged to secure the Bank Loans.

(d)   None of the Consolidated Group Members shall, subject to the Refinancing provisions of Section 6.01(a)(xi), prepay Indebtedness under clauses (iii) and (ix) of Section 6.01(a) except that Indebtedness under clause (iii) may be prepaid to the extent allowed pursuant to provisions in the applicable Bond Notes indentures that allow prepayments of up to 35% of the aggregate amount of the Bond Notes and notes issued in the Series C Transaction with the net cash proceeds from one or more public equity offerings (an "Equity Clawback Prepayment"); provided that any such prepayment shall be deemed to be utilization of Unrestricted Proceeds in the amount of such prepayment.

SECTION 6.06.   Use of Proceeds.   The proceeds of Loans will be used solely to pay the Purchase Price of Eligible Equipment and Services acquired by the Designated Borrower (or by a Foreign Subsidiary Equipment Owner as contemplated by Section 6.13) pursuant to the Supply Agreement.

112

SECTION 6.07.  <u>Phase 1 Financial Covenants.</u>  Until December 31, 2002, the Consolidated Group Members shall:

(a)  <u>Maximum EBITDA Losses/Minimum EBITDA.</u>  Not permit EBITDA for any fiscal quarter referred to below to be less than the amount set forth opposite such fiscal quarter:

| Quarter Ended | Amount |
|---|---|
| March 31, 2000 | $(48,000,000) |
| June 30, 2000 | $(42,000,000) |
| September 30, 2000 | $(38,000,000) |
| December 31, 2000 | $(28,000,000) |
| March 31, 2001 | $(17,000,000) |
| June 30, 2001 | $(9,000,000) |
| September 30, 2001 | $(5,000,000) |
| December 31, 2001 | $1,000,000 |
| March 31, 2002 | $28,000,000 |
| June 30, 2002 | $44,000,000 |
| September 30, 2002 | $60,000,000 |
| December 31, 2002 | $76,000,000 |

(b)  <u>Minimum Revenues.</u>  Not permit Consolidated Revenue for any fiscal quarter referred to below (calculated as of the last day of any fiscal quarter end and based on the results of the quarter then ended) to be less than the amount set forth opposite such fiscal quarter:

| Quarter Ended | Amount |
|---|---|
| March 31, 2000 | $118,000,000 |
| June 30, 2000 | $129,000,000 |
| September 30, 2000 | $139,000,000 |
| December 31, 2000 | $163,000,000 |
| March 31, 2001 | $173,000,000 |
| June 30, 2001 | $188,000,000 |
| September 30, 2001 | $199,000,000 |
| December 31, 2001 | $217,000,000 |
| March 31, 2002 | $240,000,000 |
| June 30, 2002 | $268,000,000 |
| September 30, 2002 | $294,000,000 |
| December 31, 2002 | $328,000,000 |

B1783

113

(c) <u>Maximum Cash Capital Expenditures.</u>  Not
permit total Cash Capital Expenditures during any fiscal
year referred to below to exceed the amount set forth
opposite such fiscal year; <u>provided</u> that unused amounts
permitted to be expended in any fiscal year may be carried
forward one year with all capital expenditures deemed first
applied to any carry-forward amounts; <u>provided further</u> that
on any date that any Bank Loan Party receives Net Cash
Proceeds from permitted Indebtedness (other than Refinancing
Indebtedness) or equity in excess of $1.5 billion, on a
cumulative basis from the Effective Date, the Bank Borrower
may increase, at its discretion, the maximum Cash Capital
Expenditures in any year or years by an aggregate amount
equal to such Net Cash Proceeds that exceed $1.5 billion;
<u>provided further</u> that any such amount of increase shall be
deemed a utilization of Unrestricted Proceeds; and <u>provided
further</u> that under no circumstances shall the maximum annual
Cash Capital Expenditures exceed (excluding carry over
amounts) $1.3 billion for any year prior to and including
2001 and $1.0 billion in any year thereafter while this
covenant is applicable:

| Fiscal Year | Amount |
|---|---|
| 2000 | $1,300,000,000 |
| 2001 | $1,150,000,000 |
| 2002 | $ 550,000,000 |

(d)  <u>Maximum Consolidated Senior Secured Debt to
Consolidated Total Capitalization.</u>  Not permit the ratio of
Consolidated Senior Secured Debt to Consolidated Total
Capitalization to exceed 25% at any time.  For the purpose
of calculating Consolidated Total Capitalization, paid-in
capital shall be given effect as of the date paid in.

(e)  <u>Maximum Consolidated Total Debt to
Consolidated Total Capitalization.</u>  Not permit the ratio of
Consolidated Total Debt to Consolidated Total Capitalization
to exceed 75% at any time.  For the purpose of calculating
Consolidated Total Capitalization, paid-in capital shall be
given effect as of the date paid in.

(f)  <u>Maximum Consolidated Senior Secured Debt to
Adjusted Gross PP&E.</u>  Not permit the ratio of Consolidated
Senior Secured Debt to Adjusted Gross PP&E to exceed 50% at
any time.

**B1784**

114

(g)  On-Network Hubs.  Not permit the number of
On-Network Hubs as of the last day of any fiscal quarter
referred to below to be less than the amount set forth
opposite such fiscal quarter:

| Quarter Ended | On-Network Hubs |
|---|---|
| March 31, 2000 | 125 |
| June 30, 2000 | 142 |
| September 30, 2000 | 159 |
| December 31, 2000 | 175 |
| March 31, 2001 | 190 |
| June 30, 2001 | 204 |
| September 30, 2001 | 219 |
| December 31, 2001 | 234 |
| March 31, 2002 | 249 |
| June 30, 2002 | 263 |
| September 30, 2002 | 267 |
| December 31, 2002 | 268 |

(h)  On-Network Buildings:  Not permit the number
of On-Network Buildings as of the last day of any fiscal
quarter referred to below to be less than the amount set
forth opposite such fiscal quarter:

| Quarter Ended | On-Network Buildings |
|---|---|
| March 31, 2000 | 1,649 |
| June 30, 2000 | 2,322 |
| September 30, 2000 | 3,320 |
| December 31, 2000 | 4,477 |
| March 31, 2001 | 5,981 |
| June 30, 2001 | 7,366 |
| September 30, 2001 | 8,755 |
| December 31, 2001 | 10,147 |
| March 31, 2002 | 10,256 |
| June 30, 2002 | 10,366 |
| September 30, 2002 | 10,475 |
| December 31, 2002 | 10,585 |

{NYCORP:1067706.1:4459B:06/14/00-5:50p}

**B1785**

115

SECTION 6.08.   Phase 2 Financial Covenants.   On and after January 1, 2003, the Consolidated Group Members shall:

(a)   Consolidated Total Debt to Consolidated Annualized EBITDA.   Not permit the ratio of Consolidated Total Debt as of any date during any period referred to below to Consolidated Annualized EBITDA as of such date to be greater than the ratio set forth opposite the period during which such date occurs:

| Period | Ratio |
| --- | --- |
| March 31, 2003 - June 29, 2003 | 15.00x |
| June 30, 2003 - September 29, 2003 | 11.00x |
| September 30, 2003 - December 30, 2003 | 10.00x |
| December 31, 2003 - March 30, 2004 | 9.00x |
| March 31, 2004 - June 29, 2004 | 8.00x |
| June 30, 2004 - September 29, 2004 | 7.50x |
| September 30, 2004 - December 30, 2004 | 7.00x |
| December 31, 2004 - March 30, 2005 | 6.00x |
| March 31, 2005 and thereafter | 5.00x |

(b)   EBITDA to Consolidated Interest Expense.   Not permit the ratio of EBITDA to Consolidated Interest Expense, in each case for the period of four consecutive fiscal quarters ending on any date referred to below to be less than the ratio set forth opposite such date:

| Quarter End Date | Ratio |
| --- | --- |
| March 31, 2003 | 0.50x |
| June 30, 2003 | 0.50x |
| September 30, 2003 | 0.75x |
| December 31, 2003 | 0.75x |
| March 31, 2004 | 1.00x |
| June 30, 2004 | 1.00x |
| September 30, 2004 | 1.25x |
| December 31, 2004 | 1.25x |
| March 31, 2005 | 1.50x |
| June 30, 2005 | 1.50x |
| September 30, 2005 | 1.75x |
| December 31, 2005 | 1.75x |
| March 31, 2006 | 2.00x |
| June 30, 2006 | 2.00x |

[NYCORP:1007708.1:44598:06/14/00-5:50p]

B1786

116

| Quarter End Date | Ratio |
|---|---|
| September 30, 2006 | 2.25x |
| December 31, 2006 | 2.25x |
| March 31, 2007 and the last day of each quarter ended thereafter | 2.50x |

(c)  <u>Maximum Cash Capital Expenditures.</u>  Not permit total Cash Capital Expenditures during any fiscal year, commencing with the fiscal year ending December 31, 2003, to exceed $400.0 million (<u>provided</u> that unused amounts permitted to be expended in any fiscal year may be carried forward one year with all Cash Capital Expenditures deemed first applied to any carry-forward amounts); <u>provided further, however,</u> that on any date that any Bank Loan Party receives Net Cash Proceeds from permitted issuance of Indebtedness (other than Refinancing Indebtedness) or equity in excess of $1.5 billion, on a cumulative basis from the Effective Date, the Bank Borrower may increase, at its discretion, the maximum Cash Capital Expenditures in any year or years by an aggregate amount equal to such Net Cash Proceeds that exceed $1.5 billion; <u>provided further</u> that any such amount of increase shall be deemed a utilization of Unrestricted Proceeds; and <u>provided further</u> that under no circumstances shall the maximum annual Cash Capital Expenditures (excluding carry over amounts) exceed $1.0 billion in any year while this covenant is applicable.

SECTION 6.09.  <u>Consolidated Senior Debt to Consolidated Annualized EBITDA.</u>  On and after March 31, 2002, the Consolidated Group Members shall not permit the ratio of Consolidated Senior Debt to Consolidated Annualized EBITDA as of any day during any period referred to below to be more than the ratio set forth opposite such period:

| Period | Ratio |
|---|---|
| March 31, 2002 - June 29, 2002 | 12.50x |
| June 30, 2002 - September 29, 2002 | 10.00x |
| September 30, 2002 - December 30, 2002 | 9.00x |
| December 31, 2002 - March 30, 2003 | 7.50x |
| March 31, 2003 - June 29, 2003 | 5.00x |
| June 30, 2003 - September 29, 2003 | 4.50x |
| September 30, 2003 - December 30, 2003 | 4.00x |
| December 31, 2003 - March 30, 2004 | 4.00x |
| March 31, 2004 and thereafter | 3.50x |

**B1787**

117

SECTION 6.10.   EBITDA to Consolidated Debt
Service.  The Consolidated Group Members shall not permit
the ratio of EBITDA to Consolidated Debt Service for the
four consecutive fiscal quarters ending on the last day of
any fiscal quarter ending on or after December 31, 2003, to
be less than 1.0x.

SECTION 6.11.   Certain Prepayments of
Indebtedness.  No Consolidated Group Member shall
voluntarily prepay, redeem or defease any Indebtedness at
any time that any Loans are outstanding, other than
(a) prepayments of Loans, (b) prepayment of revolving credit
loans outstanding under the Bank Credit Agreement that do
not involve any termination or reduction of (or agreement to
terminate or reduce) the commitments to make such loans,
(c) prepayments or redemptions of Indebtedness (other than
(i) prepayments of Indebtedness under the Bank Credit
Agreement that are not described in clause (b) above, (ii)
prepayments or redemptions of Indebtedness issued by the
Parent, other than (x) Outstanding Old Bond Debt and (y)
prepayments described in clause (iii) of the definition of
Series C Stock Transaction, and (iii) prepayments or
redemptions of other Purchase Money Indebtedness) not
exceeding $150,000,000 in the aggregate for all such
prepayments and redemptions made pursuant to this
clause (c), and (d) Equity Clawback Prepayments in respect
of the Bond Notes, provided that at the time of and after
giving effect to any such Equity Clawback Prepayment and any
concurrent prepayment of Loans, no Refinancing Period is in
effect and the aggregate principal amount of outstanding
Loans does not exceed $250,000,000.

SECTION 6.12.   Amount of Bank Facilities.  The
aggregate principal amount of Indebtedness outstanding under
the Bank Credit Documents shall not at any time exceed the
sum of (a) the aggregate amount of revolving credit
commitments under the Bank Credit Agreement on the Effective
Date, minus the aggregate amount of such commitments that
have expired or have been terminated or reduced prior to
such time, (b) the aggregate amount of Bank Loans made as
term loans under the Bank Credit Agreement on the Effective
Date, minus the aggregate amount of such Bank Loans repaid
or prepaid prior to such time, (c) the aggregate amount of
commitments to make Bank Loans to be made as term loans--
under the Bank Credit Agreement that are in effect on the
Effective Date but are not drawn on the Effective Date,
minus the aggregate amount of such commitments that have
expired or have been terminated or reduced (without having
been drawn upon) prior to such time and the aggregate amount
of Bank Loans made pursuant to such commitments that have
been repaid or prepaid prior to such time, plus (d) the

B1788

aggregate amount of additional Bank Loans made under the
Bank Credit Agreement prior to such time the proceeds of
which were applied to prepay Loans promptly after the
borrowing of such Bank Loans, minus the aggregate amount of
such Bank Loans that have been repaid or prepaid prior to
such time.

SECTION 6.13.  Use of Collateral.  (a)  The Parent
and the Borrowers will not permit any asset constituting
Collateral to be outside any Borrower's possession or
located on any property not owned by a Borrower, except in
accordance with this Section.

(b)  A Borrower may lease any assets constituting
Collateral to, or otherwise allow any such assets to be in
the possession of, any other Restricted Subsidiary or any
Affiliate of the Parent (or other Person with which the
Parent or a Restricted Subsidiary has entered into an
agreement to provide management and operating services) that
is in the business of operating assets of the type leased to
or possessed by it or any customer of any such Restricted
Subsidiary or Affiliate (any such Restricted Subsidiary,
Affiliate (or other Person) or customer obtaining a lease
with respect to or possession of, or other right to use or
possess, such assets, an "Equipment User") if (i) in the
case of any such Affiliated Equipment User (A) such
Affiliated Equipment User has entered into an Equipment User
Agreement and (B) all documents and instruments, including
Uniform Commercial Code financing statements, required by
law or reasonably requested by either Agent to be filed,
registered or recorded to perfect (or maintain the
perfection of) the Liens created under the applicable
Security Agreement with respect to such assets, and to
protect the applicable Borrower's ownership interests
therein, shall be so filed, registered or recorded or
(ii) in the case of any such customer to which has been
leased (or which possesses or otherwise uses) Collateral
having a Collateral Cost in excess of $50,000 (A) such
customer has entered into a written lease agreement for (or
other written agreement granting such customer the right to
possess or use) such assets and such lease (or other
agreement) shall have a term not exceeding three years
(subject to renewal rights requiring the consent of the
lessor) and otherwise be on terms and conditions no less
favorable to the applicable Borrower than those customary
for leases of similar assets between unaffiliated parties,
(B) the assets leased to (or otherwise possessed or used by)
such customer shall be of the type described on
Schedule 6.13 and (C) such customer shall have entered into
an Equipment User Agreement or the lease agreement (or other
agreement) with such customer shall include provisions

substantially the same as those that would be included in an
Equipment User Agreement; provided that any lease or
transfer of possession of any Collateral contemplated hereby
shall not relieve any Loan Party of any of its respective
obligations under any Loan Document. The foregoing shall
not be construed to prohibit (1) the return of any asset
constituting Collateral to the vendor thereof or another
service provider for repairs, services, modifications or
other similar purposes or (2) the storage of any asset
constituting Collateral in any warehouse or similar
facility.

(c)  It is understood that the Parent and the
Borrowers intend that a portion of the Collateral will be
located and used outside the United States of America;
provided that neither the Parent nor any Borrower will
permit any asset constituting Collateral to be located
outside the United States of America (or to be transferred
between jurisdictions outside the United States of America)
unless (i) the Parent or the applicable Borrower shall have
notified the Lenders thereof reasonably in advance of any
such assets being transferred outside the United States of
America (or between such jurisdictions) and (ii) the
Administrative Agent shall be reasonably satisfied that
(A) the laws of the jurisdiction in which such assets are to
be located adequately protect the interests of the Lenders
in such Collateral, (B) the security interests in such
Collateral granted under the applicable Security Agreement
will continue to be adequately protected and perfected,
(C) there are not any material risks relating to the
political or economic stability of the jurisdiction in which
such Collateral is to be located or the Person that will
possess such Collateral in such jurisdiction, (D) the
portion of the Collateral located in such jurisdiction, and
in all jurisdictions outside the United States of America,
is within acceptable limits and (E) the location of such
Collateral in such jurisdiction is not otherwise materially
disadvantageous to the Lenders. The applicable Borrower
shall deliver to the Lenders, with a copy to the Agents,
such legal opinions and other documentation as the
Administrative Agent shall reasonably request in connection
with its consideration or approval of any proposed transfer
of Collateral outside the United States of America or
between jurisdictions outside the United States of America.

(d)  In order to facilitate the use of Collateral
outside the United States of America as contemplated by
paragraph (c) above, a Borrower may sell or otherwise
transfer title to any asset constituting Collateral to any
Foreign Subsidiary that is a Consolidated Group Member;
provided that no such asset shall be so sold or transferred

unless (i) all the requirements of paragraph (c) above are satisfied prior to such sale or transfer, (ii) such sale or transfer is made subject to the security interests granted under the applicable Security Agreement and (iii) the applicable Foreign Subsidiary Equipment Owner has entered into an Equipment Owner Agreement with respect to such asset and such other documents and agreements as the Administrative Agent shall reasonably request in order to confirm, protect and perfect the security interests in such asset granted under the applicable Security Agreement. After giving effect to any such sale or transfer, the provisions of this Section shall continue to apply to any subsequent use (or relinquishment of possession or control) of the applicable Collateral by the applicable Foreign Subsidiary Equipment Owner (as though such Foreign Subsidiary Equipment Owner were named as a Borrower herein).

(e)   In order to facilitate the use of Collateral outside the United States of America as contemplated by paragraph (c) above, as an alternative to the procedure set forth in paragraph (d) above a Borrower may permit any Foreign Subsidiary that is a Consolidated Group Member to acquire directly from Lucent (or any Affiliate of Lucent), pursuant to the Supply Agreement, any asset that is to constitute a Financed Foreign Subsidiary Asset; provided that no such asset shall be so acquired by a Foreign Subsidiary unless (i) all the requirements of paragraph (c) above are satisfied prior to such acquisition, (ii) the applicable Foreign Subsidiary Equipment Owner has entered into a Foreign Subsidiary Security Agreement and an Equipment Owner Agreement with respect to such asset and such other documents and agreements as the Administrative Agent shall reasonably request in order to confirm, protect and perfect the security interests in such asset granted under such Foreign Subsidiary Security Agreement and (iii) the Designated Borrower shall assume the obligation of the applicable Foreign Subsidiary Equipment Owner to pay the Purchase Price of such asset. After giving effect to any such acquisition, such asset shall constitute "Collateral" for all purposes hereof and the provisions of this Section shall continue to apply to any subsequent use (or relinquishment of possession or control) of the applicable Collateral by the applicable Foreign Subsidiary Equipment Owner (as though such Foreign Subsidiary Equipment Owner were named as a Borrower herein). If there is more than one Borrower hereunder, any Foreign Subsidiary Equipment Owner must enter into separate Foreign Subsidiary Security Agreements with respect to the Collateral financed by the respective Borrowers.

SECTION 6.14.  <u>Activities of Borrowers.</u>  No Borrower will engage in any business or activity other than the acquisition of assets comprising Collateral, the financing thereof pursuant to this Agreement, the leasing and disposition thereof to Equipment Users as contemplated hereby and activities incidental to the foregoing.  No Borrower will incur any liabilities other than its obligations under the Loan Documents to which it is a party and liabilities incidental to its existence and permitted business activities.

## ARTICLE VII

### Events of Default

If any of the following events ("<u>Events of Default</u>") shall occur:

(a)  Any Borrower shall fail duly to pay any principal of any Loan when due, whether at maturity, by notice of intention to prepay or otherwise;

(b)  Any Borrower shall fail duly to pay any interest, fee or any other amount payable under the Loan Documents within three Business Days after the same shall be due;

(c)  The Loan Parties shall fail duly to observe or perform any term, covenant, or agreement contained in Article VI;

(d)  The Loan Parties shall fail duly to observe or perform any other term, covenant or agreement contained in any Loan Document, and such failure shall have continued unremedied for a period of 30 days after written notice is given by the Administrative Agent to the Borrowers and the Parent;

(e)  Any representation or warranty made or deemed made by a Loan Party in a Loan Document, or any statement or representation made in any certificate, report or opinion delivered by or on behalf of a Loan Party in connection with a Loan Document, shall prove to have been false or misleading in any material respect when so made or deemed made;

(f)  A Loan Party or Bank Loan Party shall fail to pay any Indebtedness (other than obligations hereunder) in an amount of $25.0 million or more when due and such failure shall continue after the applicable grace period, if any, specified in the agreement or

[NYCORP;1087708.1:4459B:06/14/00-5:50p]

B1792

EXECUTION COPY

SECURITY AGREEMENT dated as of May 9, 2000, between WVF-I LLC, a Delaware limited liability company (the "Grantor"), and BANK OF NEW YORK, as collateral agent (in such capacity, the "Collateral Agent") for the Secured Parties, as defined herein.

Reference is made to the Credit Agreement dated as of May 4, 2000 (as amended or modified from time to time, the "Credit Agreement"), among, the Grantor, as borrower thereunder, any other borrowers thereunder from time to time party thereto, Winstar Communications, Inc., the lenders party thereto, the Collateral Agent and Lucent Technologies Inc., as administrative agent. The Grantor is a Borrower under the Credit Agreement. The Lenders have agreed to extend credit to the Grantor and any other Borrowers pursuant to, and subject to the terms and conditions specified in, the Credit Agreement. The obligations of the Lenders to extend credit under the Credit Agreement are conditioned upon, among other things, the execution and delivery by the Grantor of a security agreement in the form hereof to secure (a) the due and punctual payment by each Borrower of (i) the principal of and interest on the Loans, when and as due, whether at maturity, by acceleration, upon one or more dates set for prepayment or otherwise, and (ii) all other monetary obligations of each Borrower to the Secured Parties under the Credit Agreement, and (b) the due and punctual performance of all other obligations of each Borrower to the Secured Parties under the Credit Agreement and the other Loan Documents (all the foregoing obligations being collectively called the "Obligations").

Accordingly, the Grantor and the Collateral Agent hereby agree as follows:

ARTICLE I

Definitions

SECTION 1.01. Terms Defined in the Credit Agreement. Terms used herein and not otherwise defined herein shall have the meanings set forth in the Credit Agreement.

SECTION 1.02. Definition of Certain Terms Used Herein. As used herein, the following terms shall have the following meanings:

[NYCorp;1060194.9:4305B:05/05/2000--4:07p]

DEFENDANT'S EXHIBIT 32

CONFIDENTIAL                    LWI    00003847

B1793

2

"Collateral" shall mean all (a) Equipment,
(b) General Intangibles (but excluding General Intangibles
to the extent that an assignment thereof would violate a
restriction on assignment contained therein), and
(c) Proceeds.

"Credit Agreement" shall have the meaning assigned
to such term in the preliminary statement of this Agreement.

"Equipment" shall mean all equipment, furniture
and furnishings, and all tangible personal property similar
to any of the foregoing, including tools, parts and supplies
of every kind and description, and all improvements,
accessions or appurtenances thereto, in each case that are
now owned or hereafter acquired by the Grantor.  The term
Equipment shall also include Fixtures.

"Fixtures" shall mean all items of Equipment,
whether now owned or hereafter acquired, of the Grantor that
become so related to particular real estate that an interest
in them arises under any real estate law applicable thereto.

"General Intangibles" shall mean all choses in
action and causes of action and all other assignable
intangible personal property of the Grantor of every kind
and nature now owned or hereafter acquired by the Grantor,
including the Grantor's rights under the Supply Agreement
and all intellectual property acquired by or granted to the
Grantor pursuant to the Supply Agreement.

"Obligations" shall have the meaning assigned to
such term in the preliminary statement of this Agreement.

"Proceeds" shall mean any consideration received
from the sale, exchange, license, lease or other disposition
of any asset which constitutes Collateral, including any
payment received from any insurer or other Person as a
result of the destruction, loss, theft, damage or other
involuntary conversion of whatever nature of any asset which
constitutes Collateral, and shall include any and all other
amounts from time to time paid or payable under or in
connection with any of the Collateral.

"Secured Parties" shall mean (a) the Lenders,
(b) the Administrative Agent and the Collateral Agent, in
their capacities as such under each Loan Document and
(c) the successors and assigns of the foregoing.

"Security Interest" shall have the meaning
assigned to such term in Section 2.01.

[NYCorp;1060194.9:4305B:05/05/2000--4:07p]

CONFIDENTIAL          LWI   00003848

B1794

SECTION 1.03. <u>Rules of Interpretation</u>. The rules of interpretation specified in Section 1.03 of the Credit Agreement shall be applicable to this Agreement.

## ARTICLE II

### Security Interest

SECTION 2.01. <u>Security Interest</u>. As security for the payment or performance, as the case may be, in full of the Obligations, the Grantor hereby bargains, sells, conveys, assigns, sets over, mortgages, pledges, hypothecates and transfers to the Collateral Agent, its successors and assigns, for the benefit of the Secured Parties, and hereby grants to the Collateral Agent, its successors and assigns, for the benefit of the Secured Parties, a security interest in, all of the Grantor's right, title and interest in, to and under the Collateral (the "<u>Security Interest</u>"). Without limiting the foregoing, the Collateral Agent is hereby authorized to file one or more financing statements (including fixture filings, but only to the extent such fixture filings are required pursuant to Section 5.14(c) of the Credit Agreement (the "<u>Fixture Filings</u>")), continuation statements or other documents for the purpose of perfecting, confirming, continuing, enforcing or protecting the Security Interest granted by the Grantor without the signature of the Grantor, and naming the Grantor as debtor and the Collateral Agent as secured party.

SECTION 2.02. <u>No Assumption of Liability</u>. The Security Interest is granted as security only and shall not subject the Collateral Agent or any other Secured Party to, or in any way alter or modify, any obligation or liability of the Grantor with respect to or arising out of any of the Collateral.

## ARTICLE III

### Representations and Warranties

The Grantor represents and warrants to the Collateral Agent and the Secured Parties that:

SECTION 3.01. <u>Title and Authority</u>. The Grantor has good and valid rights in and title to the Collateral and has full power and authority to grant to the Collateral Agent the Security Interest in the Collateral pursuant hereto and to execute, deliver and perform its obligations in accordance with the terms of this Agreement, without the

[NYCorp;1060194.9;4305B;05/05/2000--4:07p]

CONFIDENTIAL          LWI   00003849

4

consent or approval of any other Person other than any
consent or approval which has been obtained.

SECTION 3.02.  _Filings_.  On or prior to the first
Borrowing by the Grantor under the Credit Agreement, a
Perfection Certificate with respect to the Grantor shall
have been duly prepared, completed and executed and the
information set forth therein shall be correct and complete.
On or prior to the first Borrowing by the Grantor under the
Credit Agreement, fully executed Uniform Commercial Code
financing statements (including Fixture Filings, as
applicable) or other appropriate filings, recordings or
registrations containing a description of the Collateral
shall have been filed of record in each governmental,
municipal or other office specified in Schedule 5 to the
Perfection Certificate, which are all the filings,
recordings and registrations that are necessary to publish
notice of and protect the validity of and to establish a
legal, valid and perfected security interest in favor of the
Collateral Agent (for the benefit of the Secured Parties) in
respect of all Collateral in which the Security Interest may
be perfected by filing, recording or registration in the
United States (or any political subdivision thereof) and its
territories and possessions, and no further or subsequent
filing, refiling, recording, rerecording, registration or
reregistration is necessary in any such jurisdiction, except
as provided under applicable law with respect to the filing
of continuation statements; _provided_ that fixture filings
will only be filed if required by Section 5.14(c) of the
Credit Agreement.

SECTION 3.03.  _Validity of Security Interest_.  The
Security Interest constitutes (a) a legal and valid security
interest in all the Collateral securing the payment and
performance of the Obligations and (b) a perfected security
interest in all Collateral in which a security interest may
be perfected by filing, recording or registering a financing
statement or analogous document in the United States (or any
political subdivision thereof) and its territories and
possessions pursuant to the Uniform Commercial Code or other
applicable law in such jurisdictions; _provided_ that fixture
filings will only be filed if required by Section 5.14(c) of
the Credit Agreement.  The Security Interest is and shall be
prior to any other Lien on any of the Collateral, except for
Liens expressly permitted by the Credit Agreement that are
prior to the Security Interest as a matter of law.

SECTION 3.04.  _Absence of Other Liens_.  The
Collateral is owned by the Grantor free and clear of any
Lien, except for Liens permitted under Section 6.03(b) of
the Credit Agreement.  The Grantor has not filed or

[NYCorp:1060194.9:4305B:05/05/2000--4:07p]

CONFIDENTIAL           LWI   00003850

B1796

5

consented to the filing of any financing statement or analogous document under the Uniform Commercial Code or any other applicable laws covering any Collateral, except in respect of the Security Interest.

## ARTICLE IV

### Covenants

SECTION 4.01. Collateral Schedules. (a) Promptly following the delivery of each Borrowing Request by the Grantor under the Credit Agreement, the Grantor will deliver to the Collateral Agent (i) copies of all invoices paid or financed, in whole or in part, with the Loans resulting from such Borrowing Request, together with such other information as shall be necessary to identify each item of Collateral financed thereby and (ii) a schedule indicating the Equipment User or Users that will lease, use or otherwise possess such Collateral and the location or locations of such Collateral.

(b) From time to time (but not less frequently than quarterly), the Grantor will deliver to the Collateral Agent (i) supplements to and corrections of the schedules and other information theretofore delivered to the Collateral Agent sufficient to enable the Collateral Agent to identify each item of Collateral, the jurisdiction in which it is located and the Equipment User that is leasing such Collateral and (ii) copies of all Equipment User Agreements and leases and subleases under which any Collateral is leased (to the extent not previously delivered to the Collateral Agent).

SECTION 4.02. Protection of Security. The Grantor shall, at its own cost and expense, take any and all actions necessary to defend title to the Collateral against all Persons and to defend the Security Interest of the Collateral Agent in the Collateral and the priority thereof against any Lien (except for Liens permitted under Section 6.03(b) of the Credit Agreement).

SECTION 4.03. Further Assurances. The Grantor agrees, at its own expense, to execute, acknowledge, deliver and cause to be duly filed all such further instruments and documents and take all such actions as the Collateral Agent, the Administrative Agent, or any Lucent Lender may from time to time reasonably request to better assure, preserve, protect and perfect the Security Interest and the rights and remedies created hereby, including the payment of any fees and taxes required in connection with the execution and

[NYCorp;1060194.9:4305B:05/05/2000--4:07p]

**CONFIDENTIAL**          **LWI   00003851**

**B1797**

6

delivery of this Agreement, the granting of the Security Interest and the filing of any financing statements (including Fixture Filings) or other documents in connection herewith or therewith.

SECTION 4.04.  Inspection and Verification.  The Collateral Agent and such Persons as the Collateral Agent may reasonably designate shall have the right, on reasonable advance notice during normal business hours at the Grantor's own cost and expense, to inspect the Collateral, all records related thereto (and to make extracts and copies from such records) and the premises upon which any of the Collateral is located, to discuss the Grantor's affairs with the officers of the Grantor and its independent accountants and to verify under reasonable procedures the validity, amount, quality, quantity, value, condition and status of, or any other matter relating to, the Collateral, including, in the case of Collateral in the possession of any third Person, by contacting the third Person possessing such Collateral for the purpose of making such a verification.  Subject to the provisions of Section 9.12 of the Credit Agreement, the Collateral Agent shall have the absolute right to share any information it gains from such inspection or verification with any Secured Party and their agents and representatives.

SECTION 4.05.  Taxes; Encumbrances.  At its option, the Collateral Agent may discharge past due taxes, assessments, charges, fees, liens, security interests or other encumbrances at any time levied or placed on the Collateral and not permitted under the Loan Documents and may pay for the maintenance and preservation of the Collateral to the extent the Grantor fails to do so as required by the Credit Agreement or this Agreement, and the Grantor agrees to reimburse the Collateral Agent on demand for any payment made or any expense incurred by the Collateral Agent pursuant to the foregoing authorization; provided, however, that nothing in this Section 4.05 shall be interpreted as excusing the Grantor from the performance of, or imposing any obligation on the Collateral Agent or any Secured Party to cure or perform, any covenants or other promises of the Grantor with respect to taxes, assessments, charges, fees, liens, security interests or other encumbrances and maintenance as set forth herein or in the Credit Agreement.

SECTION 4.06.  Continuing Obligations of the Grantor.  The Grantor shall remain liable to observe and perform all the conditions and obligations to be observed and performed by it under each contract, agreement or instrument relating to the Collateral, all in accordance with the terms and conditions thereof, and the Grantor

[NYCorp;1060194.9:4305B:05/05/2000--4:07p]

CONFIDENTIAL          LWI    00003852

B1798

agrees to indemnify and hold harmless the Collateral Agent and the Secured Parties from and against any and all liability for such performance.

SECTION 4.07.  Use and Disposition of Collateral. The Grantor shall not make or permit to be made an assignment, pledge or hypothecation of the Collateral or grant any other Lien (except for Liens permitted under Section 6.03(b) of the Credit Agreement) in respect of the Collateral.  The Grantor shall not make or permit to be made any transfer of the Collateral and the Grantor shall remain at all times in possession of the Collateral, except that unless and until the Collateral Agent shall notify (which notice may be given by telephone if promptly confirmed in writing) the Grantor that an Event of Default shall have occurred and be continuing and that during the continuance thereof the Grantor shall not sell, convey, lease, assign, transfer or otherwise dispose of any Collateral, the Grantor may use and dispose of the Collateral in any lawful manner not inconsistent with the provisions of this Agreement or the Credit Agreement.

SECTION 4.08.  Insurance and Related Matters. (a) The Grantor, at its own expense, shall maintain or cause to be maintained insurance covering physical loss or damage to the Collateral in accordance with the provisions of the Credit Agreement and this Agreement.

(b)  The Grantor will, maintain, with financially sound and reputable insurance companies with AM Best's rating of A minus (A-) or better, All-Risk property insurance for the full replacement value of all Collateral. All policies of All-Risk property insurance maintained by or for the benefit of the Grantor with respect to the Collateral shall be (i) maintained in an amount not less than the full replacement value of all property thereof, with deductibles or self insured retention not exceeding $100,000, and (ii) endorsed or otherwise amended to include a "standard" or "New York" lender's loss payable endorsement, in favor of and satisfactory to the Collateral Agent, which endorsement shall provide that the insurance carrier shall pay all proceeds otherwise payable to any Loan Party under such policies directly to the Collateral Agent. All such policies also shall provide that none of the Grantor, the Administrative Agent, the Collateral Agent nor any other party shall be a coinsurer thereunder and shall contain a "Replacement Cost Endorsement", without any deduction for depreciation, "mortgagee's interest"/"breach of warranty coverage" and such other provisions as the Administrative Agent or the Collateral Agent may reasonably require from time to time to protect the interests of the

[NYCorp;1060194.9:4305B:05/05/2000--4:07p]

CONFIDENTIAL              LWI   00003853

B1799

8

Lenders.  Each such policy also shall provide that it shall
not be canceled (i) by reason of nonpayment of premium
except upon not less than 10 days' prior written notice
thereof by the insurer to the Administrative Agent and the
Collateral Agent (giving the Administrative Agent and the
Collateral Agent the right to cure defaults in the payment
of premiums) or (ii) for any other reason except upon not
less than 30 days' prior written notice thereof by the
insurer to the Administrative Agent and the Collateral
Agent.  The Grantor shall deliver to the Administrative
Agent and the Collateral Agent, upon not less than 30 days'
prior written notice to the cancelation, modification or
nonrenewal of any such policy of insurance, a copy of a
renewal or replacement policy (or other evidence of renewal
of a policy previously delivered to the Administrative Agent
and the Collateral Agent) together with evidence
satisfactory to the Administrative Agent and the Collateral
Agent of payment of the premium therefor.  The Grantor shall
notify the Administrative Agent and the Collateral Agent
immediately whenever any separate insurance concurrent in
form or contributing in the event of loss with that required
to be maintained under this Section is taken out by any Loan
Party, and shall promptly deliver to the Administrative
Agent and the Collateral Agent a duplicate original copy of
such policy or policies.

          (c) The Grantor irrevocably makes, constitutes and
appoints the Collateral Agent (and all officers, employees
or agents designated by the Collateral Agent) as the
Grantor's true and lawful agent (and attorney-in-fact) for
the purpose, during the continuance of an Event of Default,
of making, settling and adjusting claims in respect of
Collateral under policies of insurance, endorsing the name
of the Grantor on any check, draft, instrument or other item
of payment for the proceeds of such policies of insurance
and for making all determinations and decisions with respect
thereto.  In the event that the Grantor at any time or times
shall fail to obtain or maintain any of the policies of
insurance required hereby or to pay any premium in whole or
part relating thereto, the Collateral Agent may, without
waiving or releasing any obligation or liability of the
Grantor hereunder or any Event of Default, in its sole
discretion, obtain and maintain such policies of insurance
and pay such premium and take any other actions with respect
thereto as the Collateral Agent deems advisable.  All sums
disbursed by the Collateral Agent in connection with this
Section 4.08, including reasonable attorneys' fees, court
costs, expenses and other charges relating thereto, shall be
payable, upon demand, by the Grantor to the Collateral
Agent.

[NYCorp;1060194.9:4305B:05/05/2000--4:07p]

CONFIDENTIAL           LWI   00003854

B1800

9

      (d)  In the event of any casualty or other damage to, or any taking under power of eminent domain or by condemnation or similar proceedings of, any property or asset constituting Collateral, then any and all Net Proceeds from such event shall be deposited with the Collateral Agent to the extent required by Section 5.15 of the Credit Agreement.  Subject to the provisions of the Credit Agreement requiring that such Net Proceeds be applied to prepay Loans in the event of a Collateral Trigger Event, the Collateral Agent will hold such Net Proceeds and, provided that the Grantor elects to repair, restore or replace the affected property or asset in accordance with the definition of the term "Collateral Trigger Event" set forth in the Credit Agreement, the Collateral Agent will release such Net Proceeds from time to time to pay the costs of such repair, restoration or  replacement; provided that (i) such repair, restoration or replacement shall comply with the requirements set forth in such definition of "Collateral Trigger Event" and (ii) as a condition of any release of funds, the Collateral Agent may require delivery of evidence reasonably satisfactory to it of compliance with such requirements.  The Collateral Agent shall invest any portion of the funds held by it from time to time pursuant to this paragraph as directed in writing from time to time by the Grantor.  Any such investment shall be made only in Temporary Cash Investments, shall be at the Grantor's risk and the earnings thereon shall be credited to the funds then held by the Collateral Agent hereunder for the Grantor's account.  The Collateral Agent shall not be liable for any interest on uninvested funds.  If any Event of Default occurs and is continuing, the Collateral Agent may, in its discretion, apply any funds then held by it hereunder as provided in Section 6.02.

## ARTICLE V

### Power of Attorney

      SECTION 5.01.  Power of Attorney.  The Collateral Agent shall have the right, as the true and lawful agent and attorney-in-fact of the Grantor, with power of substitution for the Grantor and in the Grantor's name or otherwise, for the use and benefit of the Collateral Agent and the Secured Parties, upon the occurrence and during the continuance of an Event of Default (a) to receive, endorse, assign and/or deliver any and all notes, acceptances, checks, drafts, money orders or other evidences of payment relating to the Collateral or any part thereof; (b) to demand, collect, receive payment of, give receipt for and give discharges and releases of all or any of the Collateral; (c) to commence

[NYCorp;1060194.9:4305B:05/05/2000--4:07p]

CONFIDENTIAL        LWI  00003855

B1801

and prosecute any and all suits, actions or proceedings at law or in equity in any court of competent jurisdiction to collect or otherwise realize on all or any of the Collateral or to enforce any rights in respect of any Collateral; (d) to settle, compromise, compound, adjust or defend any actions, suits or proceedings relating to all or any of the Collateral; and (e) to use, sell, assign, transfer, pledge, make any agreement with respect to or otherwise deal with all or any of the Collateral, and to do all other acts and things necessary to carry out the purposes of this Agreement, as fully and completely as though the Collateral Agent were the absolute owner of the Collateral for all purposes; provided, however, that nothing herein contained shall be construed as requiring or obligating the Collateral Agent or any Secured Party to make any commitment or to make any inquiry as to the nature or sufficiency of any payment received by the Collateral Agent or any Secured Party, or to present or file any claim or notice, or to take any action with respect to the Collateral or any part thereof or the moneys due or to become due in respect thereof or any property covered thereby, and no action taken or omitted to be taken by the Collateral Agent or any Secured Party with respect to the Collateral or any part thereof shall give rise to any defense, counterclaim or offset in favor of the Grantor or to any claim or action against the Collateral Agent or any Secured Party. It is understood and agreed that the appointment of the Collateral Agent as the agent and attorney-in-fact of the Grantor for the purposes set forth above is coupled with an interest and is irrevocable. The provisions of this Section shall in no event relieve the Grantor of any of its obligations hereunder or under the Credit Agreement with respect to the Collateral or any part thereof or impose any obligation on the Collateral Agent or any Secured Party to proceed in any particular manner with respect to the Collateral or any part thereof, or in any way limit the exercise by the Collateral Agent or any Secured Party of any other or further right which it may have on the date of this Agreement or hereafter, whether hereunder, under any other Loan Document, by law or otherwise.

## ARTICLE VI

### Remedies

SECTION 6.01.  Remedies upon Default.  Upon the occurrence and during the continuance of an Event of Default, the Grantor agrees to deliver each item of Collateral to the Collateral Agent on demand, and it is agreed that the Collateral Agent shall have the right with or without legal process and with or without previous notice

[NYCorp;1060194.9:4305B:05/05/2000--4:07p]

CONFIDENTIAL            LWI   00003856

or demand for performance, to take possession of the Collateral or any part thereof (at the same or different times) and without liability for trespass to enter any premises where the Collateral or any part thereof may be located for the purpose of taking possession of or removing the Collateral and, generally, to exercise any and all rights afforded to a secured party under the Uniform Commercial Code or other applicable law. Without limiting the generality of the foregoing, the Grantor agrees that the Collateral Agent shall have the right, subject to the mandatory requirements of applicable law, to sell or otherwise dispose of all or any part of the Collateral, at public or private sale for cash, upon credit or for future delivery as the Collateral Agent shall deem appropriate. Upon consummation of any such sale the Collateral Agent shall have the right to assign, transfer and deliver to the purchaser or purchasers thereof the Collateral so sold. Each such purchaser at any such sale shall hold the property sold absolutely, free from any claim or right on the part of the Grantor, and the Grantor hereby waives (to the extent permitted by law) all rights of redemption, stay and appraisal which the Grantor now has or may at any time in the future have under any rule of law or statute now existing or hereafter enacted.

The Collateral Agent shall give the Grantor 10 days' written notice (which the Grantor agrees is reasonable notice within the meaning of Section 9-504(3) of the Uniform Commercial Code as in effect in the State of New York or its equivalent in other jurisdictions) of the Collateral Agent's intention to make any sale of Collateral. Such notice, in the case of a public sale, shall state the time and place for such sale. Any such public sale shall be held at such time or times within ordinary business hours and at such place or places as the Collateral Agent may fix and state in the notice of such public sale. At any such sale, the Collateral, or portion thereof, to be sold may be sold in one lot as an entirety or in separate parcels, as the Collateral Agent may (in its sole and absolute discretion) determine. The Collateral Agent shall not be obligated to make any sale of any Collateral if it shall determine not to do so, regardless of the fact that notice of sale of such Collateral shall have been given. The Collateral Agent may, without notice or publication, adjourn any public or private sale or cause the same to be adjourned from time to time by announcement at the time and place fixed for sale, and such sale may, without further notice, be made at the time and place to which the same was so adjourned. In case any sale of all or any part of the Collateral is made on credit or for future delivery, the Collateral so sold may be retained by the Collateral Agent

[NYCorp;1060194.9:4305B:05/05/2000--4:07p]

CONFIDENTIAL          LWI    00003857

12

until the sale price is paid by the purchaser or purchasers thereof, but the Collateral Agent shall not incur any liability in case any such purchaser or purchasers shall fail to take up and pay for the Collateral so sold and, in case of any such failure, such Collateral may be sold again upon like notice.  At any public (or, to the extent permitted by law, private) sale made pursuant to this Section, any Secured Party may bid for or purchase, free (to the extent permitted by law) from any right of redemption, stay, valuation or appraisal on the part of the Grantor (all said rights being also hereby waived and released to the extent permitted by law), the Collateral or any part thereof offered for sale and may make payment on account thereof by using any Obligation then due and payable to such Secured Party from the Grantor as a credit against the purchase price and such Secured Party may, upon compliance with the terms of sale, hold, retain and dispose of such property without further accountability to the Grantor therefor.  For purposes hereof, a written agreement to purchase the Collateral or any portion thereof shall be treated as a sale thereof; the Collateral Agent shall be free to carry out such sale pursuant to such agreement and the Grantor shall not be entitled to the return of the Collateral or any portion thereof subject thereto, notwithstanding the fact that after the Collateral Agent shall have entered into such an agreement all Events of Default shall have been remedied and the Obligations paid in full.  As an alternative to exercising the power of sale herein conferred upon it, the Collateral Agent may proceed by a suit or suits at law or in equity to foreclose this Agreement and to sell the Collateral or any portion thereof pursuant to a judgment or decree of a court or courts having competent jurisdiction or pursuant to a proceeding by a court-appointed receiver.

SECTION 6.02.  Application of Proceeds.  The Collateral Agent shall apply the proceeds of any collection or sale of the Collateral, as well as any Collateral consisting of cash, as follows:

FIRST, to the payment of all costs and expenses incurred by the Administrative Agent or the Collateral Agent (in its capacity as such hereunder or under any other Loan Document) in connection with such collection or sale or otherwise in connection with this Agreement or any of the Obligations, including all court costs and the fees and expenses of its agents and legal counsel, the repayment of all advances made by the Collateral Agent or the Administrative Agent hereunder or under any other Loan Document on behalf of the Grantor and any other costs or expenses incurred in

[NYCorp;1060194.9:4305B:05/05/2000--4:07p]

CONFIDENTIAL          LWI   00003858

B1804

13

connection with the exercise of any right or remedy hereunder or under any other Loan Document;

SECOND, to the payment in full of the Obligations (the amounts so applied to be distributed among the Secured Parties pro rata in accordance with the amounts of the Obligations owed to them on the date of any such distribution); and

THIRD, to the Grantor, its successors or assigns, or as a court of competent jurisdiction may otherwise direct.

Subject to the instructions of the Required Lenders, the Collateral Agent shall have absolute discretion as to the time of application of any such proceeds, moneys or balances in accordance with this Agreement. Upon any sale of the Collateral by the Collateral Agent (including pursuant to a power of sale granted by statute or under a judicial proceeding), the receipt of the Collateral Agent or of the officer making the sale shall be a sufficient discharge to the purchaser or purchasers of the Collateral so sold and such purchaser or purchasers shall not be obligated to see to the application of any part of the purchase money paid over to the Collateral Agent or such officer or be answerable in any way for the misapplication thereof.

### ARTICLE VII

#### Miscellaneous

SECTION 7.01.  Notices.  All communications and notices hereunder shall (except as otherwise expressly permitted herein) be in writing and given as provided in Section 9.01 of the Credit Agreement.

SECTION 7.02.  Security Interest Absolute.  All rights of the Collateral Agent hereunder, the Security Interest and all obligations of the Grantor hereunder shall be absolute and unconditional irrespective of (a) any lack of validity or enforceability of the Credit Agreement, any other Loan Document, any agreement with respect to any of the Obligations or any other agreement or instrument relating to any of the foregoing, (b) any change in the time, manner or place of payment of, or in any other term of, all or any of the Obligations, or any other amendment or waiver of or any consent to any departure from the Credit Agreement or any other Loan Document or any other agreement or instrument, (c) any exchange, release or non-perfection of any Lien on other collateral, or any release or amendment

[NYCorp;1060194.9;4305B;05/05/2000--4;07p]

CONFIDENTIAL        LWI    00003859

14

or waiver of or consent under or departure from any guarantee, securing or guaranteeing all or any of the Obligations, or (d) any other circumstance which might otherwise constitute a defense available to, or a discharge of, the Grantor in respect of the Obligations or this Agreement.

SECTION 7.03. <u>Survival of Agreement</u>. All covenants, agreements, representations and warranties made by the Grantor herein and in the certificates or other instruments prepared or delivered in connection with or pursuant to this Agreement or any other Loan Document shall be considered to have been relied upon by the Secured Parties and shall survive the making by the Lenders of the Loans, regardless of any investigation made by the Secured Parties or on their behalf, and shall continue in full force and effect until this Agreement shall terminate.

SECTION 7.04. <u>Binding Effect</u>. This Agreement shall become effective when a counterpart hereof executed on behalf of the Grantor shall have been delivered to the Collateral Agent and a counterpart hereof shall have been executed on behalf of the Collateral Agent, and thereafter shall be binding upon the Grantor and the Collateral Agent and their respective successors and assigns, and shall inure to the benefit of the Grantor, the Collateral Agent and the other Secured Parties and their respective successors and assigns, except that the Grantor shall not have the right to assign or transfer its rights or obligations hereunder or any interest herein or in the Collateral (and any such assignment or transfer shall be void) except as expressly contemplated by this Agreement or the Credit Agreement.

SECTION 7.05. <u>Successors and Assigns</u>. Whenever in this Agreement any of the parties hereto is referred to, such reference shall be deemed to include the successors and assigns of such party; and all covenants, promises and agreements by or on behalf of the Grantor or the Collateral Agent that are contained in this Agreement shall bind and inure to the benefit of their respective successors and assigns.

SECTION 7.06. <u>Collateral Agent Appointed Attorney-in-Fact</u>. The Grantor hereby appoints the Collateral Agent the attorney-in-fact of the Grantor for the purpose of carrying out the provisions of this Agreement and taking any action and executing any instrument which the Collateral Agent may deem necessary or advisable to accomplish the purposes hereof, which appointment is irrevocable and coupled with an interest.

[NYCorp;1060194.9:4305B:05/05/2000--4:07p]

CONFIDENTIAL                    LWI    00003860

SECTION 7.07.  Collateral Agent's Fees and Expenses; Indemnification.  (a)  The Grantor agrees to pay upon demand to the Collateral Agent the amount of any and all reasonable expenses, including the reasonable fees and expenses of its counsel and of any experts or agents, which the Collateral Agent may incur in connection with (i) the administration of this Agreement, (ii) the custody or preservation of, or the sale of, collection from or other realization upon any of the Collateral, (iii) the exercise, enforcement or protection of any of the rights of the Collateral Agent hereunder or (iv) the failure of the Grantor to perform or observe any of the provisions hereof.

(b)  Without limitation of its indemnification obligations under the other Loan Documents, the Grantor agrees to indemnify the Collateral Agent and the other Indemnitees against, and hold each of them harmless from, any and all losses, claims, damages, liabilities and related expenses, including reasonable counsel fees and expenses incurred by or asserted against any of them arising out of, in any way connected with, or as a result of, the execution, delivery or performance of this Agreement or any claim, litigation, investigation or proceeding relating hereto or to the Collateral, whether or not any Indemnitee is a party thereto; provided that such indemnity shall not, as to any Indemnitee, be available to the extent that such losses, claims, damages, liabilities or related expenses are determined by a court of competent jurisdiction by final and nonappealable judgment to have resulted from the gross negligence or willful misconduct of such Indemnitee.

(c)  The provisions of this Section 7.07 shall remain operative and in full force and effect regardless of the termination of this Agreement or any other Loan Document, the consummation of the transactions contemplated hereby, the repayment of any of the Loans, the invalidity or unenforceability of any term or provision of this Agreement or any other Loan Document, or any investigation made by or on behalf of the Collateral Agent or any Secured Party.  All amounts due under this Section 7.07 shall be payable on written demand therefor.

(d)  Notwithstanding the foregoing, the obligations of the Grantor hereunder with respect to payment of fees, charges and disbursements of counsel will be limited to (i) Cravath, Swaine & Moore, special counsel to Lucent and the Administrative Agent (or such other single firm acting in such capacity from time to time), (ii) Sullivan & Cromwell, special counsel to the Collateral Agent (or such other single firm acting in such capacity from time to time), (iii) one other firm of counsel to the

[NYCorp:1060194.9:4305B:05/05/2000--4:07p]

CONFIDENTIAL          LWI   00003861

16

Collateral Agent, the Administrative Agent and the Lenders in each jurisdiction and (iv) if necessary, special counsel to the Collateral Agent, the Administrative Agent and the Lenders in such areas as telecommunications regulations.

SECTION 7.08. GOVERNING LAW. THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE LAWS OF THE STATE OF NEW YORK.

SECTION 7.09. Waivers; Amendment. (a) No failure or delay of the Collateral Agent in exercising any power or right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right or power, or any abandonment or discontinuance of steps to enforce such a right or power, preclude any other or further exercise thereof or the exercise of any other right or power. The rights and remedies of the Collateral Agent hereunder and of the Collateral Agent, the Administrative Agent and the Secured Parties under the other Loan Documents are cumulative and are not exclusive of any rights or remedies that they would otherwise have. No waiver of any provisions of this Agreement or any other Loan Document or consent to any departure by the Grantor therefrom shall in any event be effective unless the same shall be permitted by paragraph (b) below, and then such waiver or consent shall be effective only in the specific instance and for the purpose for which given. No notice to or demand on the Grantor in any case shall entitle the Grantor to any other or further notice or demand in similar or other circumstances.

(b) Neither this Agreement nor any provision hereof may be waived, amended or modified except in accordance with Section 9.02 of the Credit Agreement.

SECTION 7.10. WAIVER OF JURY TRIAL. EACH PARTY HERETO HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS. EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS, AS APPLICABLE, BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION 7.10.

[NYCorp;1060194.9;4305B:05/05/2000--4:07p]

CONFIDENTIAL                    LWI    00003862

B1808

17

SECTION 7.11.  <u>Severability</u>.  In the event any one or more of the provisions contained in this Agreement should be held invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.  The parties shall endeavor in good-faith negotiations to replace the invalid, illegal or unenforceable provisions with valid provisions the economic effect of which comes as close as possible to that of the invalid, illegal or unenforceable provisions.

SECTION 7.12  <u>Counterparts</u>.  This Agreement may be executed in two or more counterparts, each of which shall constitute an original but all of which when taken together shall constitute but one contract, and shall become effective as provided in Section 7.04.

SECTION 7.13  <u>Headings</u>.  Article and Section headings used herein are for convenience of reference only, are not part of this Agreement and are not to affect the construction of, or to be taken into consideration in interpreting, this Agreement.

SECTION 7.14.  <u>Jurisdiction; Consent to Service of Process</u>.  (a)  The Grantor hereby irrevocably and unconditionally submits, for itself and its property, to the nonexclusive jurisdiction of any New York State court or Federal court of the United States of America sitting in New York City, and any appellate court from any thereof, in any action or proceeding arising out of or relating to this Agreement or the other Loan Documents, or for recognition or enforcement of any judgment, and each of the parties hereto hereby irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding may be heard and determined in such New York State or, to the extent permitted by law, in such Federal court.  Each of the parties hereto agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.  Nothing in this Agreement shall affect any right that the Collateral Agent or any Secured Party may otherwise have to bring any action or proceeding relating to this Agreement or the other Loan Documents against the Grantor or its properties in the courts of any jurisdiction.

(b)  The Grantor hereby irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, any objection which it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement or

[NYCorp;1060194.9;4305B;05/05/2000--4:07p]

**CONFIDENTIAL**          **LWI   00003863**

B1809

18

the other Loan Documents in any New York State court or Federal court sitting in New York City. Each of the parties hereto hereby irrevocably waives, to the fullest extent permitted by law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

(c) Each party to this Agreement irrevocably consents to service of process in the manner provided for notices in Section 7.01. Nothing in this Agreement will affect the right of any party to this Agreement to serve process in any other manner permitted by law.

SECTION 7.15. Termination. This Agreement and the Security Interest shall terminate when all the Obligations have been indefeasibly paid in full and the Lenders have no further commitment to lend under the Credit Agreement, at which time the Collateral Agent shall execute and deliver to the Grantor, at the Grantor's expense, all Uniform Commercial Code termination statements and similar documents which the Grantor shall reasonably request to evidence such termination and release of the Security Interest. Any execution and delivery of termination statements or documents pursuant to this Section 7.15 shall be without recourse to or warranty by the Collateral Agent. If pursuant to Section 2.20 of the Credit Agreement, the Grantor ceases to be a "Borrower" under the Credit Agreement, the Grantor shall automatically be released from its obligations hereunder and the Security Interest in the Collateral of the Grantor shall be automatically released; provided that, if required by the Bank Credit Agreement, the Liens granted under this Agreement that secured the Obligations prior to the effectiveness of such release shall not terminate, but shall be assigned by the Collateral Agent. This Agreement and the Security Interest shall also be subject to termination or assignment as expressly provided in Sections 2.20 and 2.22 of the Credit Agreement.

[NYCorp;1060194.9:4305B:05/05/2000--4:07p]

CONFIDENTIAL          LWI   00003864

B1810

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the day and year first above written.

WVF-I LLC,

by _____
Name:
Title:        Frederic E. Rubin
              Vice President, Treasurer


BANK OF NEW YORK, as
Collateral Agent,

by _____
Name:
Title:

CONFIDENTIAL

LWI   00003865

B1811

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the day and year first above written.

WVF-I LLC,

by _____
    Name:
    Title:


BANK OF NEW YORK, as Collateral Agent,

by _____
    Name: Brendan T. Nedzi
    Title: Senior Vice President


CONFIDENTIAL

B1812

EXECUTION COPY

SECURITY AGREEMENT dated as of December

22, 2000, between WVF-LU2, LLC, a Delaware
limited liability company (the "Grantor"),
and BANK OF N NEW YORK, as collateral agent (in
such capacity, the "Collateral Agent") for
the Secured i Parties, as defined herein.

Reference is made e to the Credit Agreement dated as
of May 4, 2000 (as amended ( as of June 23, 2000, and as
amended or modified from time to time, the "Credit
Agreement"), among, the Grantor, as borrower thereunder, any
other borrowers thereunder : from time to time party thereto,
Winstar Communications, Inc., the lenders party thereto, the
Collateral Agent and Lucent Technologies Inc., as
administrative agent.  The i Grantor is a Borrower under the
Credit Agreement.  The Lenders have agreed to extend credit
to the Grantor and any other Borrowers pursuant to, and
subject to the terms and conditions specified in, the Credit
Agreement.  The obligations of the Lenders to extend credit
under the Credit Agreement : are conditioned upon, among other
things, the execution and d delivery by the Grantor of a
security agreement in the f form hereof to secure (a) the due
and punctual payment by each Borrower of (i) the principal of
and interest on the Loans, , when and as due, whether at
maturity, by acceleration, , upon one or more dates set for
prepayment or otherwise, and (ii) all other monetary
obligations of each Borrower to the Secured Parties under the
Credit Agreement, and (b) t the due and punctual performance of
all other obligations of each Borrower to the Secured Parties
under the Credit Agreement and the other Loan Documents (all
the foregoing obligations I being collectively called the
"Obligations").

Accordingly, the e Grantor and the Collateral Agent
hereby agree as follows:

### ARTICLE I

#### Definitions

SECTION 1.01.  Terms Defined in the Credit
Agreement.  Terms used herein and not otherwise defined
herein shall have the meanings set forth in the Credit
Agreement.

SECTION 1.02.  Definition of Certain Terms Used
Herein.  As used herein, t the following terms shall have the
following meanings:

<<NYCorp·1185103.3:4460D:12/20/00-5:01a>>



DEFENDANT'S
EXHIBIT
33

L001732

B1813

2

"Collateral" shall mean all (a) Equipment,
(b) General Intangibles (but excluding General Intangibles to
the extent that an assignement thereof would violate a
restriction on assignment c contained therein), and
(c) Proceeds.

"Credit Agreement" shall have the meaning assigned
to such term in the preliminary statement of this Agreement.

"Equipment" shall mean all equipment, furniture
and furnishings, and all tangible personal property similar
to any of the foregoing, including tools, parts and supplies
of every kind and description, and all improvements,
accessions or appurtenances thereto, in each case that are
now owned or hereafter acqquired by the Grantor.  The term
Equipment shall also include Fixtures.

"Fixtures" shall mean all items of Equipment,
whether now owned or hereafter acquired, of the Grantor that
become so related to particular real estate that an interest
in them arises under any r real estate law applicable thereto.

"General Intangibles" shall mean all choses in
action and causes of action and all other assignable
intangible personal property of the Grantor of every kind and
nature now owned or hereafter acquired by the Grantor,
including the Grantor's rights under the Supply Agreement and
all intellectual property , acquired by or granted to the
Grantor pursuant to the Suuply Agreement.

"Obligations" shall have the meaning assigned to
such term in the preliminary statement of this Agreement.

"Proceeds" shall mean any consideration received
from the sale, exchange, license, lease or other disposition
of any asset which constitutes Collateral, including any
payment received from any insurer or other Person as a result
of the destruction, loss, , theft, damage or other involuntary
conversion of whatever nature of any asset which constitutes
Collateral, and shall include any and all other amounts from
time to time paid or payable under or in connection with any
of the Collateral.

"Secured Parties" shall mean (a) the Lenders,
(b) the Administrative Agent and the Collateral Agent, in
their capacities as such under each Loan Document and (c) the
successors and assigns of f the foregoing.

"Security Interest" shall have the meaning
assigned to such term in Section 2.01.

<<NYCorp-8195101.2:4408D:11/20/00-1.02a>> >>

L001733

B1814

3

SECTION 1.03.  Rurles of Interpretation.  The rules
of interpretation specifiedd in Section 1.03 of the Credit
Agreement shall be applicabble to this Agreement.

## ARRTICLE II

### Securikity Interest

SECTION 2.01.  Seiscurity Interest.  As security for
the payment or performance,:, as the case may be, in full of
the Obligations, the Grantzor hereby bargains, sells, conveys,
assigns, sets over, mortgagges, pledges, hypothecates and
transfers to the Collateral Agent, its successors and
assigns, for the benefit obf the Secured Parties, and hereby
grants to the Collateral Adgent, its successors and assigns,
for the benefit of the Seomured Parties, a security interest
in, all of the Grantor's rkright, title and interest in, to and
under the Collateral (the " "Security Interest").  Without
limiting the foregoing, thhe Collateral Agent is hereby
authorized to file one or n more financing statements
(including fixture filingss, but only to the extent such
fixture filings are required pursuant to Section 5.14(c) of
the Credit Agreement (the ' "Fixture Filings")), continuation
statements or other documeents for the purpose of perfecting,
confirming, continuing, ennmforcing or protecting the Security
Interest granted by the Grirantor without the signature of the
Grantor, and naming the Griirantor as debtor and the Collateral
Agent as secured party.

SECTION 2.02.  NNo Assumption of Liability.  The
Security Interest is grantted as security only and shall not
subject the Collateral Ageent or any other Secured Party to,
or in any way alter or modddify, any obligation or liability of
the Grantor with respect t to or arising out of any of the
Collateral.

## AIARTICLE III

### Representationtions and Warranties

The Grantor reppresents and warrants to the
Collateral Agent and the ë Secured Parties that:

SECTION 3.01.  1 Title and Authority.  The Grantor
has good and valid rightss in and title to the Collateral and
has full power and authorkity to grant to the Collateral Agent
the Security Interest in t tha Collateral pursuant hereto and
to execute, deliver and poperform its obligations in accordance
with the terms of this Agigreement, without the consent or

<<NYCorp-1188103.2((((65p:11/30/05-1:02s>> ◊

L001734

B1815

4

approval of any other Person other than any consent or
approval which has been obtained.

        SECTION 3.02.  _Filings_.  On or prior to the first
Borrowing by the Grantor under the Credit Agreement, a
Perfection Certificate with respect to the Grantor shall have
been duly prepared, completed and executed and the
information set forth therein shall be correct and complete.
On or prior to the first Borrowing by the Grantor under the
Credit Agreement, fully executed Uniform Commercial Code
financing statements (including Fixture Filings, as
applicable) or other appropriate filings, recordings or
registrations containing a description of the Collateral
shall have been filed of record in each governmental,
municipal or other office specified in Schedule 5 to the
Perfection Certificate, which are all the filings, recordings
and registrations that are necessary to publish notice of and
protect the validity of and to establish a legal, valid and
perfected security interest in favor of the Collateral Agent
(for the benefit of the Secured Parties) in respect of all
Collateral in which the Security Interest may be perfected by
filing, recording or registration in the United States (or
any political subdivision thereof) and its territories and
possessions, and no further or subsequent filing, refiling,
recording, rerecording, reregistration or reregistration is
necessary in any such jurisdiction, except as provided under
applicable law with respect to the filing of continuation
statements; _provided_ that fixture filings will only be filed
if required by Section 5.1.14(c) of the Credit Agreement.

        SECTION 3.03.  _Validity of Security Interest_.  The
Security Interest constitutes (a) a legal and valid security
interest in all the Collateral securing the payment and
performance of the Obligations and (b) a perfected security
interest in all Collateral in which a security interest may
be perfected by filing, recording or registering a financing
statement or analogous document in the United States (or any
political subdivision thereof) and its territories and
possessions pursuant to the Uniform Commercial Code or other
applicable law in such jurisdictions; _provided_ that fixture
filings will only be filed if required by Section 5.14(c) of
the Credit Agreement.  The Security Interest is and shall be
prior to any other Lien on any of the Collateral, except for
Liens expressly permitted by the Credit Agreement that are
prior to the Security Interest as a matter of law.

        SECTION 3.04.  _Absence of Other Liens_.  The
Collateral is owned by the Grantor free and clear of any
Lien, except for Liens permitted under Section 6.03(b) of the
Credit Agreement.  The Grantor has not filed or consented to
the filing of any financing statement or analogous document

&lt;&lt;NYCorp-NY35103.3:4401b:12/20/00-1:03a&gt;&gt;

L001735

B1816

under the Uniform Commercial Code or any other applicable laws covering any Collateral, except in respect of the Security Interest.

## ARTICLE IV

### Covenants

SECTION 4.01.  Collateral Schedules.  (a) Promptly following the delivery of each Borrowing Request by the Grantor under the Credit Agreement, the Grantor will deliver to the Collateral Agent (i) copies of all invoices paid or financed, in whole or in part, with the Loans resulting from such Borrowing Request, together with such other information as shall be necessary to identify each item of Collateral financed thereby and (ii) a schedule indicating the Equipment User or Users that will lease, use or otherwise possess such Collateral and the location or locations of such Collateral.

(b) From time to time (but not less frequently than quarterly), the Grantor will deliver to the Collateral Agent (i) supplements to and corrections of the schedules and other information theretofore delivered to the Collateral Agent sufficient to enable the Collateral Agent to identify each item of Collateral, the jurisdiction in which it is located and the Equipment User that is leasing such Collateral and (ii) copies of all Equipment User Agreements and leases and subleases under which any Collateral is leased (to the extent not previously delivered to the Collateral Agent).

SECTION 4.02.  Protection of Security.  The Grantor shall, at its own cost and expense, take any and all actions necessary to defend title to the Collateral against all Persons and to defend the Security Interest of the Collateral Agent in the Collateral and the priority thereof against any Lien (except for Liens permitted under Section 6.03(b) of the Credit Agreement).

SECTION 4.03.  Further Assurances.  The Grantor agrees, at its own expense, to execute, acknowledge, deliver and cause to be duly filed all such further instruments and documents and take all such actions as the Collateral Agent, the Administrative Agent, or any Lucent Lender may from time to time reasonably request to better assure, preserve, protect and perfect the Security Interest and the rights and remedies created hereby, including the payment of any fees and taxes required in connection with the execution and delivery of this Agreement, the granting of the Security Interest and the filing of any financing statements

L001736

B1817

6

(including Fixture Filings);) or other documents in connection herewith.

SECTION 4.04.  Inspection and Verification.  The Collateral Agent and such P Persons as the Collateral Agent may reasonably designate shall l have the right, on reasonable advance notice during normal business hours at the Grantor's own cost and expense, to inspect the Collateral, all records related thereto (and to make extracts and copies from such records) and the premises u upon which any of the Collateral is located, to discuss the Grantor's affairs with the officers of the Grantor and its independent accountants and to verify under reasonable procedures the validity, amount, quality, quantity, value, condition n and status of, or any other matter relating to, the Collateral, including, in the case of Collateral in the possession of any third Person, by contacting the third Person possessing such Collateral for the purpose of making such h a verification.  Subject to the provisions of Section 9.12 2 of the Credit Agreement, the Collateral Agent shall have the absolute right to share any information it gains from : such inspection or verification with any Secured Party and d their agents and representatives.

SECTION 4.05.  Taxes; Encumbrances.  At its option, the Collateral Agent may discharge past due taxes, assessments, charges, fees;s, liens, security interests or other encumbrances at any t time levied or placed on the Collateral and not permitted under the Loan Documents and may pay for the maintenance annd preservation of the Collateral to the extent the Grantor failils to do so as required by the Credit Agreement or this Agreement, and the Grantor agrees to reimburse the Collateral Agent on demand for any payment made or any expense incurred byy the Collateral Agent pursuant to the foregoing authorizatio.on; provided, however, that nothing in this Section 4.05 shall.l be interpreted as excusing the Grantor from the performanince of, or imposing any obligation on the Collateral Agent onr any Secured Party to cure or perform, any covenants or : other promises of the Grantor with respect to taxes, assessmeents, charges, fees, liens, security interests or other encumbrrances and maintenance as set forth herein or in the Credit Agrreement.

SECTION 4.06.  Continuing Obligations of the Grantor.  The Grantor shalll remain liable to observe and perform all the conditions and obligations to be observed and performed by it under eachh contract, agreement or instrument relating to the Collateral, all in accordance with the terms and conditions thereof, annd the Grantor agrees to indemnify and hold harmless the Collllateral Agent and the Secured Parties from and against a any and all liability for such performance.

<<PTCSEP-IIE2102.2;44080112/20/00-1:02sm>> >

L001737

B1818

7

SECTION 4.07.  Uses and Disposition of Collateral.
The Grantor shall not make a or permit to be made an
assignment, pledge or hypothecation of the Collateral or
grant any other Lien (excempt for Liens permitted under
Section 6.03(b) of the Credit Agreement) in respect of the
Collateral.  The Grantor shshall not make or permit to be made
any transfer of the Collateral and the Grantor shall remain
at all times in possession of the Collateral, except that
unless and until the Collateral Agent shall notify (which
notice may be given by telephone if promptly confirmed in
writing) the Grantor that a an Event of Default shall have
occurred and be continuing and that during the continuance
thereof the Grantor shall n not sell, convey, lease, assign,
transfer or otherwise dispose of any Collateral, the Grantor
may use and dispose of the e Collateral in any lawful manner
not inconsistent with the provisions of this Agreement or the
Credit Agreement.

SECTION 4.08.  Insurance and Related Matters.
(a) The Grantor, at its own expense, shall maintain or cause
to be maintained insurance e covering physical loss or damage
to the Collateral in accordance with the provisions of the
Credit Agreement and this Agreement.

(b)  The Grantor will, maintain, with financially
sound and reputable insurance companies with AM Best's rating
of A minus (A-) or better, , All-Risk property insurance for
the full replacement value e of all Collateral.  All policies
of All-Risk property insurance maintained by or for the
benefit of the Grantor witith respect to the Collateral shall
be (i) maintained in an amount not less than the full
replacement value of all piproperty thereof, with deductibles
or self insured retention not exceeding $100,000, and
(ii) endorsed or otherwisee amended to include a "standard" or
"New York" lender's loss papayable endorsement, in favor of and
satisfactory to the Collateral Agent, which endorsement shall
provide that the insurance carrier shall pay all proceeds
otherwise payable to any Loan Party under such policies
directly to the Collaterall Agent.  All such policies also
shall provide that none of f the Grantor, the Administrative
Agent, the Collateral Agemnt nor any other party shall be a
coinsurer thereunder and s shall contain a "Replacement Cost
Endorsement", without any deduction for depreciation,
"mortgagee's interest"/"breach of warranty coverage" and such
other provisions as the Addministrative Agent or the
Collateral Agent may reasoonably require from time to time to
protect the interests of t the Lenders.  Each such policy also
shall provide that it shalll not be canceled (i) by reason of
nonpayment of premium except upon not less than 10 days'
prior written notice thereeof by the insurer to the
Administrative Agent and t the Collateral Agent (giving the

<<CMRCorp-1393102.2:44080:12/20/00-1:02>>

L001738


B1819

8

Administrative Agent and the Collateral Agent the right to cure defaults in the payment of premiums) or (ii) for any other reason except upon not less than 30 days' prior written notice thereof by the insurer to the Administrative Agent and the Collateral Agent.  The a Grantor shall deliver to the Administrative Agent and the Collateral Agent, upon not less than 30 days' prior written notice to the cancelation, modification or nonrenewal l of any such policy of insurance, a copy of a renewal or replacement policy (or other evidence of renewal of a policy previously delivered to the Administrative Agent and the Collateral Agent) together with evidence satisfactory to the Administrative Agent and the Collateral Agent of payment of the premium therefor.  The Grantor shall notify the Administrative Agent and the Collateral Agent immediately whenever any separate insurance concurrent in form or contributing in the event of loss with that required to be maintained under this Section is taken out by any Loan Party, and d shall promptly deliver to the Administrative Agent and the Collateral Agent a duplicate original copy of such policy or policies.

(c) The Grantor : irrevocably makes, constitutes and appoints the Collateral Agent (and all officers, employees or agents designated by the Collateral Agent) as the Grantor's true and lawful agent (and attorney-in-fact) for the purpose, during the continuance of  an Event of Default, of making, settling and adjusting claims in respect of Collateral under policies of insurance, endorsing the name of the Grantor on any check, draft, instrument or other item of payment for the proceeds of such policies  of insurance and for making all determinations and decisions with respect thereto.  In the event that the Grantor at : any time or times shall fail to obtain or maintain any of ! the policies of insurance required hereby or to pay any premium in whole or part relating thereto, the Collateral Agent may, without waiving or releasing any obligation o or liability of the Grantor hereunder or any Event of ! Default, in its sole discretion, obtain and maintain such p policies of insurance and pay such premium and take any other actions with respect thereto as the Collateral Agent deems as advisable.  All sums disbursed by the Collateral Agent in connection with this Section 4.08, including reasonable attorneys' fees, court costs, expenses and other charges relating thereto, shall be payable, upon demand, by the Grantor to > the Collateral Agent.

(d)  In the event of any casualty or other damage to, or any taking under power of eminent domain or by condemnation or similar proceedings of, any property or asset constituting Collateral, t then any and all Net Proceeds from such event shall be deposited with the Collateral Agent to the extent required by Section 5.15 of the Credit Agreement.

<<NYCorp-11PS102.3:4408b:12/20/00-1:02a>>  ;

L001739

B1820

Subject to the provisions of the Credit Agreement requiring that such Net Proceeds be applied to prepay Loans in the event of a Collateral Trigger Event, the Collateral Agent will hold such Net Proceeds and, provided that the Grantor elects to repair, restore or replace the affected property or asset in accordance with the definition of the term "Collateral Trigger Event", set forth in the Credit Agreement, the Collateral Agent will release such Net Proceeds from time to time to pay the costs of such repair, restoration or replacement; provided that (i) such repair, restoration or replacement shall comply with the requirements set forth in such definition of "Collateral Trigger Event" and (ii) as a condition of any release of funds, the Collateral Agent may require delivery of evidence reasonably satisfactory to it of compliance with such requirements. The Collateral Agent shall invest any portion of the funds held by it from time to time pursuant to this paragraph as directed in writing from time to time by the Grantor. Any such investment shall be made only in Temporary Cash Investments, shall be at the Grantor's risk and the earnings thereon shall be credited to the funds then held by the Collateral Agent hereunder for the Grantor's account. The Collateral Agent shall not be liable for any interest on uninvested funds. If any Event of Default occurs and is continuing, the Collateral Agent may, in its discretion, apply any funds then held by it hereunder as provided in Section 6.02.

## ARTICLE V

### Power of Attorney

SECTION 5.01.   Power of Attorney.   The Collateral Agent shall have the right, as the true and lawful agent and attorney-in-fact of the Grantor, with power of substitution for the Grantor and in the Grantor's name or otherwise, for the use and benefit of the Collateral Agent and the Secured Parties, upon the occurrence and during the continuance of an Event of Default (a) to receive, endorse, assign and/or deliver any and all notes, acceptances, checks, drafts, money orders or other evidences of payment relating to the Collateral or any part thereof; (b) to demand, collect, receive payment of, give a receipt for and give discharges and releases of all or any of the Collateral; (c) to commence and prosecute any and all suits, actions or proceedings at law or in equity in any court of competent jurisdiction to collect or otherwise realize on all or any of the Collateral or to enforce any rights in respect of any Collateral; (d) to settle, compromise, compound, adjust or defend any actions, suits or proceedings relating to all or any of the Collateral; and (e) to use, sell, assign, transfer, pledge,

L001740

B1821

10

make any agreement with resispect to or otherwise deal with all
or any of the Collateral, a and to do all other acts and things
necessary to carry out the > purposes of this Agreement, as
fully and completely as thonugh the Collateral Agent were the
absolute owner of the Collateral for all purposes; provided,
however, that nothing hereiin contained shall be construed as
requiring or obligating thena Collateral Agent or any Secured
Party to make any commitmeent or to make any inquiry as to the
nature or sufficiency of arany payment received by the
Collateral Agent or any Seacured Party, or to present or file
any claim or notice, or to 0 take any action with respect to
the Collateral or any part t thereof or the moneys due or to
become due in respect thereeof or any property covered
thereby, and no action takeen or omitted to be taken by the
Collateral Agent or any Seacured Party with respect to the
Collateral or any part themreof shall give rise to any
defense, counterclaim or oOffset in favor of the Grantor or to
any claim or action againsst the Collateral Agent or any
Secured Party.  It is undemrstood and agreed that the
appointment of the Collateral Agent as the agent and
attorney-in-fact of the Graantor for the purposes set forth
above is coupled with an irinterest and is irrevocable.  The
provisions of this Section n shall in no event relieve the
Grantor of any of its obliqigations hereunder or under the
Credit Agreement with respeect to the Collateral or any part
thereof or impose any obligation on the Collateral Agent or
any Secured Party to proceeed in any particular manner with
respect to the Collateral ( or any part thereof, or in any way
limit the exercise by the ( Collateral Agent or any Secured
Party of any other or furtither right which it may have on the
date of this Agreement or l hereafter, whether hereunder, under
any other Loan Document, bjby law or otherwise.

### AJARTICLE VI

### ] Remedies

SECTION 6.01.  R<u>Remedies upon Default</u>.  Upon the
occurrence and during the , continuance of an Event of Default,
the Grantor agrees to deliiiver each item of Collateral to the
Collateral Agent on demandd. and it is agreed that the
Collateral Agent shall havvve the right with or without legal
process and with or withouut previous notice or demand for
performance, to take posseression of the Collateral or any part
thereof (at the same or dilifferent times) and without
liability for trespass to , enter any premises where the
Collateral or any part thenreof may be located for the purpose
of taking possession of orrr removing the Collateral and,
generally, to exercise anyy and all rights afforded to a
secured party under the Unhniform Commercial Code or other

L001741

B1822

11

applicable law. Without l.limiting the generality of the foregoing, the Grantor agrrees that the Collateral Agent shall have the right, subject to.o the mandatory requirements of applicable law, to sell orr otherwise dispose of all or any part of the Collateral, anc public or private sale for cash, upon credit or for future : delivery as the Collateral Agent shall deem appropriate. U'Upon consummation of any such sale the Collateral Agent shall.l have the right to assign, transfer and deliver to the purchasiser or purchasers thereof the Collateral so sold. Each ) such purchaser at any such sale shall hold the property soiold absolutely, free from any claim or right on the part of thhe Grantor, and the Grantor hereby waives (to the extent permmitted by law) all rights of redemption, stay and apprraisal which the Grantor now has or may at any time in the fuuture have under any rule of law or statute now existing or heereafter enacted.

The Collateral A Agent shall give the Grantor 10 days' written notice (wwhich the Grantor agrees is reasonable notice within t the meaning of Section 9-504(3) of the Uniform Commercial Cocbde as in effect in the State of New York or its equivalent in ) other jurisdictions) of the Collateral Agent's intentiion to make any sale of Collateral. Such notice, in the case o of a public sale, shall state the time and place for such ssale. Any such public sale shall be held at such time or timess within ordinary business hours and at such place or places ams the Collateral Agent may fix and state in the notice of sucuch public sale. At any such sale, the Collateral, or portioon thereof, to be sold may be sold in one lot as an entirety orr in separate parcels, as the Collateral Agent may (in i its sole and absolute discretion) determine. The Collateralal Agent shall not be obligated to make any sale of any Collalateral if it shall determine not to do so, regardless of the f fact that notice of sale of such Collateral shall have beeren given. The Collateral Agent may, without notice or publicataion, adjourn any public or private sale or cause the same too be adjourned from time to time by announcement at the time z and place fixed for sale, and such sale may, without further r notice, be made at the time and place to which the same wwas so adjourned. In case any sale of all or any part of the e Collateral is made on credit or for future delivery, the Collolateral so sold may be retained by the Collateral Agent untilil the sale price is paid by the purchaser or purchasers ttthereof, but the Collateral Agent shall not incur any liabililility in case any such purchaser or purchasers shall fail to t take up and pay for the Collateral so sold and, in case of atany such failure, such Collateral may be sold again upon like nnotice. At any public (or, to the extent permitted by law, r private) sale made pursuant to this Section, any Secured Partjty may bid for or purchase, free (to the extent permitted by lrlaw) from any right of redemption,

44#rCorp-3185102.2:44040:13/20/00-1:02>>> :>

L001742

B1823

12

stay, valuation or appraissal on the part of the Grantor (all
said rights being also hereeby waived and released to the
extent permitted by law), t the Collateral or any part thereof
offered for sale and may mmake payment on account thereof by
using any Obligation then c due and payable to such Secured
Party from the Grantor as ε a credit against the purchase price
and such Secured Party may,y, upon compliance with the terms of
sale, hold, retain and disspose of such property without
further accountability to ì the Grantor therefor. For purposes
hereof, a written agreemeint to purchase the Collateral or any
portion thereof shall be t:treated as a sale thereof; the
Collateral Agent shall be ; free to carry out such sale
pursuant to such agreement:t and the Grantor shall not be
entitled to the return of ( the Collateral or any portion
thereof subject thereto, nnotwithstanding the fact that after
the Collateral Agent shall.l have entered into such an
agreement all Events of Deiefault shall have been remedied and
the Obligations paid in fu'ull. As an alternative to
exercising the power of saiale herein conferred upon it, the
Collateral Agent may proceeed by a suit or suits at law or in
equity to foreclose this A-Agreement and to sell the Collateral
or any portion thereof purirsuant to a judgment or decree of a
court or courts having commpetent jurisdiction or pursuant to
a proceeding by a court-apppointed receiver.

      SECTION 6.02.  A Application of Proceeds.  The
Collateral Agent shall appply the proceeds of any collection
or sale of the Collateral,l, as well as any Collateral
consisting of cash, as foïllows:

      FIRST, to the paayment of all costs and expenses
incurred by the Adminiistrative Agent or the Collateral
Agent (in its capaciity as such hereunder or under any
other Loan Document) ι in connection with such collection
or sale or otherwise a in connection with this Agreement
or any of the Obligatatations, including all court costs
and the fees and oxpeoenses of its agents and legal
counsel, the repaymerent of all advances made by the
Collateral Agent or t the Administrative Agent hereunder
or under any other LoLoan Document on behalf of the
Grantor and any otherar costs or expenses incurred in
connection with the e exercise of any right or remedy
hereunder or under arany other Loan Document;

      SECOND, to the p payment in full of the Obligations
(the amounts so appliìied to be distributed among the
Secured Parties pro r rata in accordance with the amounts
of the Obligations oiowed to them on the date of any such
distribution); and

<CWYCorp-119518Z.2:44080:12/20/00-1:02a>> >

L001743

B1824

13

THIRD, to the Grantor, its successors or assigns, or as a court of competent jurisdiction may otherwise direct.

Subject to the instructions of the Required Lenders, the Collateral Agent shall have absolute discretion as to the time of application of any such proceeds, moneys or balances in accordance with this Agreement.  Upon any sale of the Collateral by the Collateral Agent (including pursuant to a power of sale granted by statute or under a judicial proceeding), the receipt of the Collateral Agent or of the officer making the sale shall be a sufficient discharge to the purchaser or purchasers of the Collateral so sold and such purchaser or purchasers shall not be obligated to see to the application of any part of the purchase money paid over to the Collateral Agent or such officer or be answerable in any way for the misapplication thereof.

### ARTICLE VII

### Miscellaneous

SECTION 7.01.  Notices.  All communications and notices hereunder shall (except as otherwise expressly permitted herein) be in writing and given as provided in Section 9.01 of the Credit Agreement.

SECTION 7.02.  Security Interest Absolute.  All rights of the Collateral Agent hereunder, the Security Interest and all obligations of the Grantor hereunder shall be absolute and unconditional irrespective of (a) any lack of validity or enforceability of the Credit Agreement, any other Loan Document, any agreement with respect to any of the Obligations or any other agreement or instrument relating to any of the foregoing, (b) any change in the time, manner or place of payment of, or in any other term of, all or any of the Obligations, or any other amendment or waiver of or any consent to any departure from the Credit Agreement or any other Loan Document or any other agreement or instrument, (c) any exchange, release or non-perfection of any Lien on other collateral, or any release or amendment or waiver of or consent under or departure from any guarantee, securing or guaranteeing all or any of the Obligations, or (d) any other circumstance which might otherwise constitute a defense available to, or a discharge of, the Grantor in respect of the Obligations or this Agreement.

SECTION 7.03.  Survival of Agreement.  All covenants, agreements, representations and warranties made by the Grantor herein and in the certificates or other

<<NYCorp-1385182.2:4409D:12/30/00-1:03a>>

L001744

B1825

14

instruments prepared or delelivered in connection with or
pursuant to this Agreement or any other Loan Document shall
be considered to have been n relied upon by the Secured Parties
and shall survive the makiing by the Lenders of the Loans,
regardless of any investiggation made by the Secured Parties
or on their behalf, and shhall continue in full force and
effect until this Agreemeint shall terminate.

SECTION 7.04.  B:Binding Effect.  This Agreement
shall become effective wheen a counterpart hereof executed on
behalf of the Grantor shal.ll have been delivered to the
Collateral Agent and a couunterpart hereof shall have been
executed on behalf of the ¢ Collateral Agent, and thereafter
shall be binding upon the ¢ Grantor and the Collateral Agent
and their respective succeessors and assigns, and shall inure
to the benefit of the Granntor, the Collateral Agent and the
other Secured Parties and ¢ their respective successors and
assigns, except that the G Grantor shall not have the right to
assign or transfer its rigihts or obligations hereunder or any
interest herein or in the ¢ Collateral (and any such assignment
or transfer shall be voidll) except as expressly contemplated
by this Agreement or the C Credit Agreement.

SECTION 7.05.  S Successors and Assigns.  Whenever
in this Agreement any of tithe parties hereto is referred to,
such reference shall be deleemed to include the successors and
assigns of such party; andd all covenants, promises and
agreements by or on behalffif of the Grantor or the Collateral
Agent that are contained i in this Agreement shall bind and
inure to the benefit of thrheir respective successors and
assigns.

SECTION 7.06.  C Collateral Agent Appointed
Attorney-in-Fact.  The Grrantor hereby appoints the Collateral
Agent the attorney-in-factit of the Grantor for the purpose of
carrying out the provisionns of this Agreement and taking any
action and executing any i instrument which the  Collateral
Agent may deem necessary o or advisable to accomplish the
purposes hereof, which apppointment is irrevocable and coupled
with an interest.

SECTION 7.07.  C Collateral Agent's Fees and
Expenses; Indemnification.n.  (a)  The Grantor agree to pay
upon demand to the Collatteral Agent the amount of any and all
reasonable expenses, incllluding the reasonable fees and
expenses of its counsel arand of any experts or agents, which
the Collateral Agent may i incur in connection with (i) the
administration of this Agrgreement, (ii) the custody or
preservation of, or the seale of, collection from or other
realization upon any of tithe Collateral, (iii) the exercise,
enforcement or protection n of any of the rights of the

<<NYCorp-1285102.2:4483;13/29/00-1:02a>>  ▸

L001745

B1826

Collateral Agent hereunder c or (iv) the failure of the Grantor to perform or observe any o of the provisions hereof.

(b)    Without limitation of its indemnification obligations under the other Loan Documents, the Grantor agrees to indemnify the Collateral Agent and the other Indemnitees against, and hold each of them harmless from, any and all losses, claims, damages, liabilities and related expenses, including reasonable counsel fees and expenses incurred by or asserted against any of them arising out of, in any way connected with, , or as a result of, the execution, delivery or performance of f this Agreement or any claim, litigation, investigation c or proceeding relating hereto or to the Collateral, whether or r not any Indemnitee is a party thereto, provided that such indemnity shall not, as to any Indemnitee, be available to the extent that such losses, claims, damages, liabilities or related expenses are determined by a court of competent jurisdiction by final and nonappealable judgment to  have resulted from the gross negligence or willful misconduct of such Indemnitee.

(c)    The provisions of this Section 7.07 shall remain operative and in full force and effect regardless of the termination of this Agreement or any other Loan Document, the consummation of the transactions contemplated hereby, the repayment of any of the Loans, the invalidity or unenforceability of any term or provision of this Agreement or any other Loan Document,t, or any investigation made by or on behalf of the Collateral Agent or any Secured Party.  All amounts due under this Section 7.07 shall be payable on written demand therefor.

(d)    Notwithstanding the foregoing, the obligations of the Grantor hereunder with respect to payment of fees, charges and disbursements of counsel will be limited to (i) Cravath, Swaine & Moore, special counsel to Lucent and the Administrative Agent ( or such other single firm acting in such capacity from time to time), (ii) Sullivan & Cromwell, special counsel to the Collateral Agent (or such other single firm acting in such capacity from time to time), (iii) one other firm of counsel to t the Collateral Agent, the Administrative Agent and t the Lenders in each jurisdiction and (iv) if necessary, special counsel to the Collateral Agent, the Administrative Agent a and the Lenders in such areas as telecommunications regulations.

SECTION 7.08.  G GOVERNING LAW.  THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE LAWS OF THE STATE OF NEW YORK.

<<NYCorp-1188101.2:44080:12/20/00-1:02a>>

16

SECTION 7.09. **Waivers; Amendment.** (a) No failure or delay of the Collateral Agent in exercising any power or right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right or power, or any abandonment or discontinuance of steps to enforce such a right or power, preclude any other or further exercise thereof or the exercise of any other right or power. The rights and remedies of f the Collateral Agent hereunder and of the Collateral Agent, the Administrative Agent and the Secured Parties under the other Loan Documents are cumulative and are not exclusive of any rights or remedies that they would otherwise have. No waiver of any provisions of this Agreement or any other Loan Document or consent to any departure by the Grantor therefrom shall in any event be effective unless the same shall be permitted by paragraph (b) below, and then such waiver or consent shall be effective only in the specific instance and for the purpose for which given. No notice to or demand on the Grantor in any case shall entitle the Grantor t to any other or further notice or demand in similar or other circumstances.

(b) Neither this Agreement nor any provision hereof may be waived, amended or modified except in accordance with Section 9.08 of the Credit Agreement.

SECTION 7.10. **WAIVER OF JURY TRIAL.** EACH PARTY HERETO HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS. EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS, AS APPLICABLE, BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION 7.10.

SECTION 7.11. **Severability.** In the event any one or more of the provisions contained in this Agreement should be held invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby. The parties shall endeavor in good-faith negotiations to replace the invalid, illegal or unenforceable provisions with valid provisions the economic effect of which comes as close as possible to that of the invalid, illegal or unenforceable provisions.

<<NYCorp-2193303.2:4408p:12/10/00-1:03p>>

L001747

B1828

SECTION 7.12  Counterparts.  This Agreement may be executed in two or more counterparts, each of which shall constitute an original but t all of which when taken together shall constitute but one contract, and shall become effective as provided in Section 7.04.

SECTION 7.13  Headings.  Article and Section headings used herein are for convenience of reference only, are not part of this Agreement and are not to affect the construction of, or to be t taken into consideration in interpreting, this Agreement.

SECTION 7.14.  Jurisdiction; Consent to Service of Process.  (a)  The Grantor hereby irrevocably and unconditionally submits, for itself and its property, to the nonexclusive jurisdiction of any New York State court or Federal court of the United States of America sitting in New York City, and any appellate court from any thereof, in any action or proceeding arising out of or relating to this Agreement or the other Loan Documents, or for recognition or enforcement of any judgment, and each of the parties hereto hereby irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding may be heard and determined in such New York State or, to the extent permitted by law, in such Federal court.  Each of the parties hereto agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.  Nothing in this Agreement shall affect any right that the Collateral Agent or any Secured Party may otherwise have to bring any action or proceeding relating to this Agreement or the other Loan Documents against the Grantor or its properties in the courts of any jurisdiction.

(b)  The Grantor hereby irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, any objection which it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement or the other Loan Documents in any New York State court or Federal court sitting in New York City.  Each of the parties hereto hereby irrevocably waives, to the fullest extent permitted by law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

(c)  Each party to this Agreement consents to service of process in the manner provided for notices in Section 7.01.  Nothing in this Agreement will affect the right of any party to this Agreement to serve process in any other manner permitted by law.

<<NYCorp-1363303.3:4404080:12/28/00-1:03a>>

L001748

B1829

18

SECTION 7.15.  T(Termination.  This Agreement and the Security Interest shall.ll terminate when all the Obligations have been indefeasibly paid in full and the Lenders have no further cotommitment to lend under the Credit Agreement, at which time tithe Collateral Agent shall execute and deliver to the Grantor,r, at the Grantor's expense, all Uniform Commercial Code te.ermination statements and similar documents which the Grantoor shall reasonably request to evidence such termination t and release of the Security Interest.  Any execution aiand delivery of termination statements or documents punursuant to this Section 7.15 shall be without recourse to or t warranty by the Collateral Agent. If pursuant to Section 2.2!20 of the Credit Agreement, the Grantor ceases to be a "Boioxrrower" under the Credit Agreement, the Grantor shall automatiiically be released from its obligations hereunder and l the Security Interest in the Collateral of the Grantor : shall be automatically released; provided that, if requiredd by the Bank Credit Agreement, the Liens granted under this A-Agreement that secured the Obligations prior to the e effectiveness of such release shall not terminate, but shall b be assigned by the Collateral Agent. This Agreement and the Secaacurity Interest shall also be subject to termination or : assignment as expressly provided in Sections 2.20 and 2.22 of : the Credit Agreement.

<<NYCorp-1198183.2:4466D:12/30/00-2:02aa> >

L001749

B1830

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as obf the day and year first above written.

WVF-LU2, LLC,

by _____
   Name:
   Title:


BANK OF NEW YORK, as
Collateral Agent,

by _____
   Name:
   Title:

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as c of the day and year first above written.

WVF-LU2, LLC,

by _____
          Name:
          Title:

BANK OF NEW YORK, as
Collateral Agent,

by _____
          Name:
          Title:    JAMES W. WHITAKER
                    SENIOR VICE PRESIDENT

L001751

B1832

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WINSTAR COMMUNICATIONS, INC., et al., | : |
|     Debtor | : |
|     Christine C. Shubert, | : |
|     Chapter 7 Trustee | : |
|     of Winstar | : |
|     Communications, Inc. | : |
|     and Winstar Wireless, Inc. | : |
|     Plaintiff | : |
| | : |
|     v. | : |
| | : |
| LUCENT TECHNOLOGIES INC. | : |
|     Defendant | : |

CASE NO. 01-1430

EXPERT REPORT OF JOHN I. SALOMON

March 29, 2004

*[signature]*

F T I

1201 Eye Street, NW, Suite 400
Washington, DC 20005

202-312-9162

DEFENDANT'S EXHIBIT 72

B1833

CONFIDENTIAL

## Table of Contents

| | | Page |
|---|---|---|
| I. | Introduction | 2 |
| II. | Basis for Analysis | 2 |
| III. | Covenant Analysis | |
| a. | Background | 3 |
| b. | Analysis | |
| | i. EBITDA and Revenue Covenants – Revenue Recognition Issues | 3 |
| | ii. EBITDA – Amortization of Prepaid Operating Expenditure | 12 |
| | iii. Capital Expenditure Covenant – Capital Expenditure Management Strategies | 13 |
| IV. | Rebuttal to Report of Mr. Pocalyko | |
| a. | Summary | 18 |
| b. | Analysis | |
| | i. FIFO Analysis | 20 |
| | ii. "Vague" Invoicing | 22 |
| | iii. Bill and Hold Analysis | 24 |
| c. | Conclusion | 25 |

**Appendices**

| | |
|---|---|
| John I. Salomon Curriculum Vitae and Rule 26 Disclosure | Appendix A |
| Summary of Information Considered | Appendix B |

1

CREDIT AGREEMENT

dated as of

October 21, 1998

among


WINSTAR NETWORK EXPANSION, LLC,

WINSTAR COMMUNICATIONS, INC.,

The Lenders Party Hereto,

STATE STREET BANK AND TRUST COMPANY,
as Collateral Agent,

and

LUCENT TECHNOLOGIES INC.,
as Administrative Agent


[Reference No. 7725-042]

[NYCORP;690042]



CONFIDENTIAL WC 0019924

B1835

TABLE OF CONTENTS

Page

ARTICLE I

Definitions

SECTION 1.01.   Defined Terms . . . . . . . . . . .   1
SECTION 1.02.   Classification of Loans and
                Borrowings . . . . . . . . . . .    36
SECTION 1.03.   Terms Generally . . . . . . . . . .  36
SECTION 1.04.   Accounting Terms; GAAP  . . . . . .  36


ARTICLE II

The Loans

SECTION 2.01.   Commitments . . . . . . . . . . . .  37
SECTION 2.02.   Loans and Borrowings . . . . . . .   37
SECTION 2.03.   Requests for Borrowings . . . . . .  38
SECTION 2.04.   Funding of Borrowings . . . . . . .  39
SECTION 2.05.   Interest Elections  . . . . . . . .  40
SECTION 2.06.   Termination and Reduction of
                Commitments . . . . . . . . . . .    42
SECTION 2.07.   Repayment of Loans; Evidence of Debt  .  43
SECTION 2.08.   Amortization of Loans . . . . . . .  44
SECTION 2.09.   Prepayment of Loans . . . . . . . .  46
SECTION 2.10.   Fees  . . . . . . . . . . . . . .    49
SECTION 2.11.   Interest  . . . . . . . . . . . .    49
SECTION 2.12.   Alternate Rate of Interest  . . . .  51
SECTION 2.13.   Increased Costs . . . . . . . . . .  51
SECTION 2.14.   Break Funding Payments; Prepayment
                Fees  . . . . . . . . . . . . . .    52
SECTION 2.15.   Taxes . . . . . . . . . . . . . .    53
SECTION 2.16.   Payments Generally; Pro Rata Treatment;
                Sharing of Set-Offs . . . . . . . .  55
SECTION 2.17.   Mitigation Obligations; Replacement of
                Lenders . . . . . . . . . . . . .    57


ARTICLE III

Representations and Warranties

SECTION 3.01.   Organization; Powers  . . . . . . .  58
SECTION 3.02.   Authorization; Enforceability . . . .  59
SECTION 3.03.   Governmental Approvals; No Conflicts  .  59

[NYCORP.690042]

CONFIDENTIAL WC 0019925

B1836

Page

SECTION 3.04.   Financial Condition; No Material
                Adverse Change . . . . . . . . . .   59
SECTION 3.05.   Properties and Licenses . . . . . . . .   60
SECTION 3.06.   Litigation and Environmental Matters  .   60
SECTION 3.07.   Compliance with Laws and Agreements  . .   61
SECTION 3.08.   Investment and Holding Company Status .   61
SECTION 3.09.   Taxes . . . . . . . . . . . . . . . .   61
SECTION 3.10.   ERISA . . . . . . . . . . . . . . . .   62
SECTION 3.11.   Disclosure . . . . . . . . . . . . .   62
SECTION 3.12.   Subsidiaries . . . . . . . . . . . .   62
SECTION 3.13.   Insurance . . . . . . . . . . . . . .   63
SECTION 3.14.   Labor Matters . . . . . . . . . . . .   63
SECTION 3.15.   Supply Agreement . . . . . . . . . .   63
SECTION 3.16.   Security Agreement  . . . . . . . . .   63
SECTION 3.17.   Year 2000 Compliance  . . . . . . . .   63

ARTICLE IV

Conditions

SECTION 4.01.   Effective Date  . . . . . . . . . . .   64
SECTION 4.02.   Each Borrowing  . . . . . . . . . . .   67

ARTICLE V

Affirmative Covenants

SECTION 5.01.   Financial Statements and Other
                Information . . . . . . . . . . . .   67
SECTION 5.02.   Notices of Material Events . . . . . .   69
SECTION 5.03.   Information Regarding Collateral  . . .   70
SECTION 5.04.   Existence; Conduct of Business . . . .   71
SECTION 5.05.   Payment of Obligations  . . . . . . .   71
SECTION 5.06.   Maintenance of Properties . . . . . .   72
SECTION 5.07.   Insurance . . . . . . . . . . . . . .   72
SECTION 5.08.   Books and Records; Inspection Rights  .   73
SECTION 5.09.   Compliance with Laws and Agreements . .   73
SECTION 5.10.   Use of Proceeds . . . . . . . . . . .   74
SECTION 5.11.   Further Assurances  . . . . . . . . .   74
SECTION 5.12.   Casualty and Condemnation . . . . . .   74
SECTION 5.13.   Interest Rate Protection  . . . . . .   75
SECTION 5.14.   Additional Subsidiary Guarantors  . . .   75

[NYCORP;690042]

CONFIDENTIAL WC 0019926

B1837

Contents, p. 3

Page

## ARTICLE VI

### Negative Covenants

| SECTION 6.01. | Indebtedness . . . . . . . . . . . | 75 |
| SECTION 6.02. | Liens . . . . . . . . . . | 78 |
| SECTION 6.03. | Fundamental Changes . . . . . . . . | 79 |
| SECTION 6.04. | Investments, Loans, Advances, Guarantees and Acquisitions; Asset Sales . . . . . . . . . . . . | 81 |
| SECTION 6.05. | Hedging Agreements . . . . . . . . | 85 |
| SECTION 6.06. | Restricted Payments . . . . . . . . | 85 |
| SECTION 6.07. | Transactions with Affiliates . . . . . | 86 |
| SECTION 6.08. | Restrictive Agreements . . . . . . | 87 |
| SECTION 6.09. | Repayment of Indebtedness . . . . . . | 87 |
| SECTION 6.10. | Limitation on Sale-Leaseback Transactions . . . . . . . . . . | 87 |
| SECTION 6.11. | Secured Indebtedness to Total Capitalization . . . . . . . . . | 87 |
| SECTION 6.12. | Consolidated Indebtedness to Total Capitalization . . . . . . . . . | 89 |
| SECTION 6.13. | Consolidated Indebtedness to Consolidated EBITDA . . . . . . . | 90 |
| SECTION 6.14. | Consolidated EBITDA to Consolidated Debt Service . . . . . . . . . | 91 |
| SECTION 6.15. | Consolidated EBITDA to Consolidated Interest Expense . . . . . . . . | 91 |
| SECTION 6.16. | Minimum Revenues . . . . . . . . | 91 |
| SECTION 6.17. | Use of Collateral . . . . . . . . . | 92 |

## ARTICLE VII

### Events of Default

Events of Default . . . . . . . . . . . . . . . . . . . . 93

[NYCORP:690042]

CONFIDENTIAL WC 0019927

B1838

Contents, p. 4

Page

## ARTICLE VIII

### The Agents

The Agents . . . . . . . . . . . . . . . . . . . . . . 97

## ARTICLE IX

### Miscellaneous

| SECTION 9.01. | Notices . . . . . . . . . . . . . | 99 |
| SECTION 9.02. | Waivers; Amendments . . . . . . . . . | 100 |
| SECTION 9.03. | Expenses; Indemnity; Damage Waiver . . | 102 |
| SECTION 9.04. | Successors and Assigns . . . . . . . | 103 |
| SECTION 9.05. | Survival . . . . . . . . . . . . | 106 |
| SECTION 9.06. | Counterparts; Integration; Effectiveness . . . . . . . . . . | 107 |
| SECTION 9.07. | Severability . . . . . . . . . . | 107 |
| SECTION 9.08. | Right of Setoff . . . . . . . . . | 108 |
| SECTION 9.09. | Governing Law; Jurisdiction; Consent to Service of Process . . . . . . . | 108 |
| SECTION 9.10. | WAIVER OF JURY TRIAL . . . . . . . . | 109 |
| SECTION 9.11. | Headings . . . . . . . . . . . . | 109 |
| SECTION 9.12. | Confidentiality . . . . . . . . . . | 109 |
| SECTION 9.13. | Interest Rate Limitation . . . . . . | 110 |

SCHEDULES:

Schedule 2.01  -- Commitments
Schedule 3.06  -- Disclosed Matters
Schedule 3.12  -- Subsidiaries
Schedule 3.13  -- Insurance
Schedule 6.01  -- Existing Indebtedness
Schedule 6.02  -- Permitted Liens
Schedule 6.04A -- Pending Acquisitions
Schedule 6.04B -- Existing Investments
Schedule 6.04C -- Permitted Asset Sales
Schedule 6.08  -- Existing Restrictions
Schedule 6.17  -- Customer Equipment

EXHIBITS:

Exhibit A -- Form of Assignment and Acceptance
Exhibit B -- Form of Guarantee Agreement
Exhibit C -- Form of Indemnity and Contribution Agreement
Exhibit D -- Form of Perfection Certificate
Exhibit E -- Form of Security Agreement

[NYCORP:690842]

CONFIDENTIAL WC 0019928

B1839

Contents, p. 5

Page

Exhibit F -- Form of Equipment User Agreement

[NYCORP:630042]

CONFIDENTIAL WC 0019929

B1840

9

requirements of the foregoing proviso, then a "Collateral Trigger Event" shall be deemed to have occurred at the expiration of such 180-day (or, if applicable 360-day) period.

"Collateral Trigger Threshhold" means, at any time, an amount equal to the greater of $5,000,000 or 2.50% of the total Collateral Cost of all properties and assets constituting Collateral at the time.

"Commitment" means, with respect to each Lender, the commitment, if any, of such Lender to make Loans hereunder during any Availability Period, expressed as an amount representing the maximum principal amount of the Loans to be made by such Lender hereunder, as such commitment may be (a) reduced from time to time pursuant to Section 2.06 and (b) reduced or increased from time to time pursuant to assignments by or to such Lender pursuant to Section 9.04. The initial amount of each Lender's Commitment is set forth on Schedule 2.01, or in the Assignment and Acceptance pursuant to which such Lender shall have assumed its Commitment, as applicable. The initial aggregate amount of the Lenders' Commitments is $2,000,000,000.

"Consolidated Debt Service" means, for any period, Consolidated Interest Expense for such period plus any scheduled payments of principal of Indebtedness of the Parent and the Restricted Subsidiaries during such period.

"Consolidated EBITDA" means, for any period, Consolidated Net Income for such period (adjusted to exclude all extraordinary items and Non-Recurring Items), plus, without duplication and to the extent deducted from revenues in determining Consolidated Net Income, the sum of (a) the aggregate amount of Consolidated Interest Expense for such period, (b) the aggregate amount of income tax expense for such period, (c) all amounts attributable to depreciation and amortization for such period and (d) preferred stock dividends in respect of any Disqualified Stock for such period, all as determined on a consolidated basis with respect to the Parent and the Restricted Subsidiaries in accordance with GAAP.

"Consolidated Indebtedness" means, as of any date of determination, the aggregate principal amount of Indebtedness (including Disqualified Stock) of the Parent and the Restricted Subsidiaries outstanding as of such date determined on a consolidated basis in accordance with GAAP.

[NYCORP;690042]

CONFIDENTIAL WC 0019938

terms of an accounting or financial nature shall be construed in accordance with GAAP, as in effect from time to time; provided that, if the Parent notifies the Administrative Agent that the Parent requests an amendment to any provision hereof to eliminate the effect of any change occurring after the date hereof in GAAP or in the application thereof on the operation of such provision (or if the Administrative Agent notifies the Parent that the Required Lenders request an amendment to any provision hereof for such purpose), regardless of whether any such notice is given before or after such change in GAAP or in the application thereof, then such provision shall be interpreted on the basis of GAAP as in effect and applied immediately before such change shall have become effective until such notice shall have been withdrawn or such provision amended in accordance herewith.

(b)   Each reference herein to any financial term, definition or computation that is to be calculated for or with respect to the Parent and the Restricted Subsidiaries on a consolidated basis in accordance with GAAP shall be calculated excluding and without giving effect to any consolidated subsidiary of the Parent that is not a Restricted Subsidiary (including Unrestricted Subsidiaries) or any investment therein or earnings thereon, except to the extent otherwise expressly provided herein.

## ARTICLE II

### The Loans

SECTION 2.01.  Commitments.  Subject to the terms and conditions set forth herein, each Lender with an Available Commitment agrees to make Loans to the Borrower at any time and from time to time during each Availability Period in an aggregate principal amount not exceeding its remaining Available Commitment at the time.  Amounts repaid in respect of Loans may not be reborrowed.

SECTION 2.02.  Loans and Borrowings.  (a)  Each Loan shall be made as part of a Borrowing consisting of Loans of the same Class and Type made by the Lenders ratably in accordance with their respective Available Commitments. The failure of any Lender to make any Loan required to be made by it shall not relieve any other Lender of its obligations hereunder; provided that the Commitments of the Lenders are several and no Lender shall be responsible for any other Lender's failure to make Loans as required.

{NYCORP;490042}

NO.412   D01

04/01/1999   05:09

3-31-1999 4 55PM     913 338 8884
FROM LUCENT TECHNOLOGIES 913 338 8884     P. 1

MAR-31-1999  11:49     WINSTAR     P.82/03



Lucent Technologies
Bell Labs Innovations

March 30, 1999

Mr. Rif Haffar
WinStar Telecommunications
7799 Leesburg Pike, 700 South
Falls Church, VA 22043

Dear Rif:

As we have discussed, Lucent is willing to consider providing additional services to WinStar under our Supply Agreement dated October 21, 1998. If Lucent agrees to provide such services, it is our current expectation that Lucent would subcontract with WinStar for certain Network Services including: Switch Site Planning and Construction, Network Integration, Building Site Surveys and Site Acquisitions. Lucent has not yet determined whether these services will be financed by Lucent. A more complete statement of the services WinStar might provide to Lucent, valued at $115M, is attached to this letter.

As you know, Lucent's plans will continue to be refined during the year. As such, this letter is a non-binding statement of Lucent's anticipated plans. This letter is intended solely as a basis of further discussions and is not intended to be, and does not constitute, a legal binding obligation of the parties. No legally binding relationship will be created, implied, or inferred until an appropriate Amendment to the Supply Agreement is executed by WinStar and Lucent and until the parties execute a subcontract and other related documents regarding the subject matter to this letter.

We look forward to continuing our relationship with WinStar.

Sincerely,

Mark Wilson
VP, Emerging Service Providers
Lucent Technologies

DEFENDANT'S
EXHIBIT
42

CONFIDENTIAL WC 0035405

B1843

**From:**       Naylor, Charles L (Chuck)
**Sent:**       Tuesday, January 18, 2000 12:49 PM
**To:**         Wilson, Mark (Mark); Epstein, Marc N (Marc); Dowdy, Mary M (Mary); Quinn, John F (John);
                Jerden, Antonietta (Antonietta); Carrone, Angela (Angela); Diroma, Jill B (Jill)
**Cc:**         Manzi, Frank P (Frank); Cocito, James Vincent (Jim); Coleman, Glenn (Glenn); Rigotti, David
                Roy (David)
**Subject:**    RE: Winstar Services

Jill,

Thanks for the response.  Dave Rigotti on my team will work with Mary Dowdy on processing 4Q PO/invoices.
Additionally, we're anxious to pursue the on-going services opportunity and will look for Jim Cocito and Mark Wilson's
direction on how to capture this.

Chuck

>       **From:**  Diroma, Jill B (Jill)
>       Sent: Tuesday, January 18, 2000 7:27 AM
>       To: Naylor, Charles L (Chuck); Wilson, Mark (Mark); Epstein, Marc N (Marc); Dowdy, Mary M (Mary); Quinn, John
>               F (John); Jerden, Antonietta (Antonietta); Carrone, Angela (Angela)
>       Cc: Manzi, Frank P (Frank); Cocito, James Vincent (Jim); Coleman, Glenn (Glenn)
>       Subject: Winstar Services
>
>       Mark,
>
>       We have discussed the Winstar performed services and have concurrence from Corporate CFO that this
>       transaction can be done **ONE MORE TIME**. This one time allowance is to cover Calendar 4th quarter services for
>       Winstar.  We all recognize that this means that a Lucent PO needed to be generated to Winstar dated prior to
>       Dec. 31, 1999.  This will then be followed up with invoicing and payments between the parties to take place
>       sometime in Feb. 2000.  Finally a journal entry will be processed in March 2000 to clear out the transaction from
>       our books.
>
>       I understand that the team is working towards a Turn Key solution with this customer.  **Please keep in mind that
>       this alone will not allow us to continue this practice of running Winstar performed services through our
>       books.**  The only way we will run these through our books after this transaction is if they are services performed
>       by some party other than Winstar and it is deemed after careful review that Lucent can take revenue on these
>       services.
>
>       Since it is doubtful that we will move to a third party performing all of these services it is imperative that
>       communication is sent to Winstar to inform them that we cannot issue any further Purchase Orders for services
>       performed by them.  Please provide a copy of this coorespondance to me as soon as possible.
>
>       Thanks,
>
>       Jill



**DEFENDANT'S EXHIBIT 214**

B1844

1

| From: | Manzi, Frank P (Frank) |
|---|---|
| To: | Wilson, Mark R (Mark) |
| Cc: | Diroma, Jill B (Jill); Mark Deady; James Cocito |
| Subject: | RE: Resale of Winstar asset purchase |

Mark,

I fully understand the strategic relationship we have with Winstar and I am glad to see the access business flowing our way. But, (a small but) I need to be kept informed of how this $35 million asset will be moving off our books. It will be a drain on our asset metrics until it is removed. This is really a different product offering for us so I want to be assured that we manage it appropriately.

Please provide me with a monthly report telling me:
- the amount sold,
- gain/loss incurred,
- customer we sold to and
- the amount and customer we expect to sell in next month.

Hopefully you will only have to do this once.

Frank
908 559 3075

-----Original Message-----
| From: | Diroma, Jill B (Jill) |
|---|---|
| Sent: | Thursday, March 30, 2000 4:20 PM |
| To: | Manzi, Frank P (Frank) |
| Subject: | FW: Resale of Winstar asset purchase |

| From: | Palmour, Vicky R (Vicky) |
|---|---|
| Sent: | Thursday, March 30, 2000 2:02 PM |
| To: | Diroma, Jill B (Jill); Castellon, Karen E (Karen) |
| Subject: | Resale of Winstar asset purchase |

Jill,

As you know we are purchasing $35M from Winstar in network assets. The approximate make up is $20M in backbone capacity between NY and Dallas (OC 12 and OC 3 rates) and approximately 75 OC-3/DS3 radio links.

There are two reasons we are doing this. One was to help secure over $350M of orders this quarter for the Winstar build. This agreement on the $35M diverted a $400M purchase decision (3 year spend) from our competitor's in the access space. This was a win back situation. This in and of itself was strategic.

The second reason was to use these assets to help position us with other customers. Our ability to offer these assets with our products greatly enhances our ability to sell large projects. These assets will be packaged initially with a mark up of around 7%. There may be instances where we want to sell these assets below what we paid Winstar. This would be where there is a substantial amount of revenue tied to the asset. In this case the cost of the asset would be included in the business case for the new revenue stream from the customer.

We currently see the following customers as candidates for these assets.

**Evolution Networks** - Up to 75 radio links to be used as backup to leased ILEC facilities.

**ATG** is looking to deploy fixed wireless assets.

**KMC** is talking to us about fixed wireless facilities in Tier 4 cities.

1


DEFENDANT'S
EXHIBIT
260

Confidential                                                                                    LW00052908

B1845

Aerie would use the backbone capacity until they can fiber facilities turned up using our equipment

US LEC is interested in backbone facilities to connect their existing cities.

There is another 50 or so customers that are looking at both fixed wireless and backbone strategies that are potential customers for these assets. Obviously we have not begun discussion on a wholesale basis until the Winstar agreement is complete. I believe we will have these assets resold next quarter.

Mark

2

**B1846**

Confidential

LW00052909

| | |
|---|---|
| **From:** | Fullerton, William K (Bill) |
| **Sent:** | Tuesday, August 29, 2000 9:29 PM |
| **To:** | Diroma, Jill B (Jill) |
| **Cc:** | Carrone, Angela (Angela); Kelly, Charles (Chuck); Manzi, Frank P (Frank) |
| **Subject:** | FW: Resale of Winstar asset purchase |

Jill -- wanted to know the status of these assets. Do we have customers? Are they recoverable? Just as an FYI, Rich McGinn has been inquiring about this specifically and wants to know if Lucent can use it if we can't sell it. Obviously we need to have all our facts straight before I have that discussion. Please let me know where we are relating to the $35M. Thanks.

---

| | |
|---|---|
| **From:** | Fullerton, William K (Bill) |
| **Sent:** | Thursday, April 06, 2000 9:09 PM |
| **To:** | Diroma, Jill B (Jill); Kelly, Charles (Chuck) |
| **Cc:** | Manzi, Frank P (Frank) |
| **Subject:** | RE: Resale of Winstar asset purchase |

let's make sure the sales team knows that if we don't sell this next quarter and the business case doesn't support the recoverability of the asset we are writing it off to revenue to the CT

---

| | |
|---|---|
| **From:** | Kelly, Charles (Chuck) |
| **Sent:** | Thursday, April 06, 2000 8:19 AM |
| **To:** | Diroma, Jill B (Jill) |
| **Cc:** | Fullerton, William K (Bill); Manzi, Frank P (Frank) |
| **Subject:** | RE: Resale of Winstar asset purchase |

4/6/00

Jill,

I discussed the accounting will Bill last night. We don't have enough time this quarter to go through an analysis of the entire transaction. Therefore, the suggestion is to record the entire amount in 'other assets' at this time. Based on the assessment that we believe that this will all be resold by next quarter then we can make the necessary adjustments at that time. In our discussions the issue was raised that we need to carefully monitor the situation to make sure that this transaction does not represent a sales concession related to the larger deal that was just signed . If it does then we would need to show the concession as a reduction to revenue. The schedule that Frank requested on a monthly basis should give us that indication and we can begin to discuss again next month when we get the first schedule.

**Chuck Kelly**
Senior Manager - Accounting Policy
(908) 559 - 3206
<<OLE Object: Picture (Metafile)>>

---

> **From: Diroma, Jill B (Jill)**
> Sent: Wednesday, April 05, 2000 2:25 PM
> To: Kelly, Charles (Chuck)
> Subject: FW: Resale of Winstar asset purchase

> Chuck,
> Here is a write up from the Sales VP as to how he expects to sell the Winstar radios and IRU's. I think we are comfortable saying it is worth what we paid at this point.

> Jill

**B1847**

> | | |
> |---|---|
> | **From:** | Castellon, Karen E (Karen) |
> | **Sent:** | Tuesday, April 04, 2000 11:30 PM |
> | **To:** | Burke, Maureen A (Maureen) |



1

LW00052853

Cc: Naylor, Charles L (Chuck); Wilson, Mark (Mark); Sabeh, Denise F (Denise); Diroma, Jill B (Jill)
Subject:    FW: Resale of Winstar asset purchase

Maureen,
Pls. see note from Mark below. Is this sufficient, or are you looking for something else? Pls. advise.

Thanks,
Karen

From:        Diroma, Jill B (Jill)
Sent:        Friday, March 31, 2000 9:59 AM
To: Castellon, Karen E (Karen)
Subject:    FW: Resale of Winstar asset purchase

karen,

We will need to work together to provide this information.

Jill

From:        Manzi, Frank P (Frank)
Sent:        Friday, March 31, 2000 8:57 AM
To: Wilson, Mark (Mark)
Cc: Diroma, Jill B (Jill); Deady, Mark A (Mark); Cocito, James Vincent (Jim)
Subject:    RE: Resale of Winstar asset purchase

Mark,

I fully understand the strategic relationship we have with Winstar and I am glad to see the access business flowing our way. But, (a small but) I need to be kept informed of how this $35 million asset will be moving off our books. It will be a drain on our asset metrics until it is removed. This is really a different product offering for us so I want to be assured that we manage it appropriately.

Please provide me with a monthly report telling me:
- the amount sold,
- gain/loss incurred,
- customer we sold to and
- the amount and customer we expect to sell in next month.

Hopefully you will only have to do this once.

Frank
908 559 3075

-----Original Message-----
From:        Diroma, Jill B (Jill)
Sent:        Thursday, March 30, 2000 4:20 PM
To:        Manzi, Frank P (Frank)
Subject:    FW: Resale of Winstar asset purchase


From:        Palmour, Vicky R (Vicky)
Sent:        Thursday, March 30, 2000 2:02 PM
To:        Diroma, Jill B (Jill); Castellon, Karen E (Karen)
Subject:    Resale of Winstar asset purchase

Jill,

As you know we are purchasing $35M from Winstar in network assets. The approximate make up is $20M in backbone capacity between NY and Dallas (OC 12 and OC 3 rates) and approximately 75 OC-3/DS3 radio links.

There are two reasons we are doing this. One was to help secure over $350M of orders this quarter for

2

**B1848**

Confidential                                                    LW00052854

the Winstar build. This agreement on the $35M diverted a $400M purchase decision (3 year spend) from our competitor's in the access space. This was a win back situation. This in and of itself was strategic.

The second reason was to use these assets to help position us with other customers. Our ability to offer these assets with our products greatly enhances our ability to sell large projects. These assets will be packaged initially with a mark up of around 7%. There may be instances where we want to sell these assets below what we paid Winstar. This would be where there is a substantial amount of revenue tied to the asset. In this case the cost of the asset would be included in the business case for the new revenue stream from the customer.

We currently see the following customers as candidates for these assets.

**Evolution Networks** - Up to 75 radio links to be used as backup to leased ILEC facilities.

**ATG** is looking to deploy fixed wireless assets.

**KMC** is talking to us about fixed wireless facilities in Tier 4 cities.

**Aerie** would use the backbone capacity until they can fiber facilities turned up using our equipment

**US LEC** is interested in backbone facilities to connect their existing cities.

There is another 50 or so customers that are looking at both fixed wireless and backbone strategies that are potential customers for these assets. Obviously we have not begun discussion on a wholesale basis until the Winstar agreement is complete. I believe we will have these assets resold next quarter.

Mark

3

B1849

Confidential                                    LW00052855

Confidential

**Execution Copy**

### AMENDMENT NO. 2 AND NEW LENDER AGREEMENT

AMENDMENT NO. 2 AND NEW LENDER AGREEMENT, dated as of December 6, 2000 (this "*Amendment No 2*"), in respect of the REVOLVING CREDIT AND TERM LOAN AGREEMENT, dated as of May 4, 2000, (as amended prior to the date hereof and unless otherwise stated herein, the "*Credit Agreement*") among WINSTAR COMMUNICATIONS, INC., a Delaware corporation (the "*Parent*"), WCI CAPITAL CORP., a Delaware corporation (the "*Borrower*"), each of the entities listed on the signature pages thereof under the heading "*Guarantors*" and the Additional Guarantors (as defined in Section 6.09 thereof) from time to time parties thereto, each of the lenders from time to time parties thereto (collectively, the "*Lenders*"), THE BANK OF NEW YORK, as letter of credit issuer, administrative agent and collateral agent for the Lenders, CITICORP NORTH AMERICA, INC., as syndication agent for the Lenders, and CIBC WORLD MARKETS CORP. and CREDIT SUISSE FIRST BOSTON, as documentation agents for the Lenders. Capitalized terms not otherwise defined herein shall have the meaning set forth in the Credit Agreement.

### WITNESSETH:

WHEREAS, the Borrower has requested that the existing Lenders under the Credit Agreement (the "*Existing Lenders*") permit an increase in the Indebtedness of the Loan Parties under the Credit Documents by $200,000,000 under a new senior secured term loan;

WHEREAS, the Existing Lenders are willing to permit such an increase in Indebtedness under the Credit Documents and Siemens Financial Services, Inc. (the "*New Lender*") is willing to make loans of $200,000,000 under a new senior secured term loan; and

WHEREAS, the parties hereto desire to amend the Credit Agreement as provided herein.

NOW THEREFORE, the parties hereto agree as follows:

SECTION 1.    Amendments to the Credit Agreement.

(a)    The first recital of the Credit Agreement is hereby amended by deleting the words "and (iii)" in line 7 thereof and by replacing them with the word "(iii)", and by deleting the words "; the Term Loan B Loans, together with the Term Loan A Loans, being the "*Term Loans*") in lines 9 and 10 thereof and by adding, after the word "and" in line 10 thereof, the following paragraph (iv):

DEFENDANT'S
EXHIBIT
5L

Siemens ICN 01462

# Confidential

"(iv) $200,000,000 for general corporate purposes under a senior secured term loan facility (the "*Term Loan C Facility*"; loans made thereunder each being a "*Term Loan C Loan*" and, collectively, the "*Term Loan C Loans*"; the Term Loan C Loans, together with the Term Loan A Loans and the Term Loan B Loans, being the "*Term Loans*");"

(b)     Section 1.01(c) of the Credit Agreement is hereby amended by:

(i)     adding the following new defined term after the definition of Alternate Base Rate:

"*Amendment No. 2*" means Amendment No. 2 and New Lender Agreement in respect of this Agreement, dated as of December 6, 2000.

(ii)     adding the words "and Term Loan C Loans" after the words "Term Loan B Loans" in line 6 of the definition of Applicable Margin, and replacing the Applicable Margin set forth with respect to Term Loan B Loans therein with the following:

Term Loan B Loans and Term Loan C Loans

In respect of the Term Loan B Loans and Term Loan C Loans, the Applicable Margin for ABR Loans means 3.50% and the Applicable Margin for Eurodollar Loans means 4.50%,"

(iii)     deleting the definition of "Facilities" and replacing such definition in its entirety with the following:

"*Facilities*" means the Revolving Credit Facility, the Term Loan A Facility, the Term Loan B Facility and the Term Loan C Facility.

(iv)     deleting the word "and" in line 4 of paragraph (iv) of the definition of Interest Period, adding the word "; and" after the words "Scheduled Installment Date" in line 4 of paragraph (v) thereof and adding a new paragraph (vi) as follows:

"(vi) any Interest Period with respect to a Term Loan C Loan that begins before a Term Loan C Scheduled Installment Date and would otherwise end after such Term Loan C Scheduled Installment Date shall end on such Term Loan C Scheduled Installment Date."

Siemens ICN 01463

B1851

# Confidential

Execution Copy

(v)     deleting the word "and" in line 10 of the definition of Pro Rata Share and adding a paragraph (iv) after the words "then outstanding" in line 14 thereof as follows:

", and (iv) in relation to Term Loan C Loans, the proportion of such Lender's Term Loan C Commitment to the Total Term Loan C Commitment, or after the Term Loan C Commitment Termination Date, the proportion of such Lender's Term Loan C Loans to the aggregate amount of Term Loan C Loans then outstanding."

(vi)     deleting the word "direct" in line 1 of the definition of Special Purpose Vendor Subsidiary.

(vii)     adding the following definitions in alphabetical order:

"*Term Loan C Commitment*" means, with respect to a Lender, on the date of Amendment No. 2, the amount set forth opposite such Lender's name under the heading "Term Loan C Commitment" on *Schedule 1.01(c)-1* hereto as such amount may be changed from time to time pursuant to the terms of this Agreement.

"*Term Loan C Commitment Termination Date*" means the Term Loan C Effective Date.

"*Term Loan C Effective Date*" means the day during which the Term Loan C Effective Time occurs.

"*Term Loan C Effective Time*" has the meaning assigned to such term in Section 7.04.

"*Term Loan C Facility*" has the meaning set forth in the preamble.

"*Term Loan C Lenders*" means the Lenders committed to lend under the Term Loan C Facility.

"*Term Loan C Loans*" has the meaning assigned to such term in the preamble.

"*Term Loan C Loan Request*" means the single request by the Borrower for Term Loan C Loans, which shall specify (i) the requested Borrowing Date, (ii) the aggregate amount of such Term Loan C Loans, (iii) whether such Term Loan C Loans are to bear

Siemens ICN 01464

B1852

# Confidential

Execution Copy

interest initially as ABR Loans or Eurodollar Loans and (iv) if applicable, the initial Interest Period therefor.

"*Term Loan C Scheduled Installment Date*" has the meaning set forth in Section 2.05(d).

"*Total Term Loan C Commitment*" means, on any day, the aggregate Term Loan C Commitment on such day of all the Lenders.

(viii)    adding the words "or a Term Loan C Loan Request" after the words "Term Loan B Loan Request" in the definition of Term Loan Request.

(c)    Section 2.03 of the Credit Agreement is hereby amended by adding the words "and Term Loan C Loans" after the words "Term Loan B Loans" in the heading thereof and by adding subsections (c) and (d) as follows:

"(c)    Until the Term Loan C Commitment Termination Date, subject to the terms and conditions of this Agreement, each of the Term Loan C Lenders, severally and not jointly with the other Term Loan C Lenders, agrees to make Term Loan C Loans to the Borrower in an amount not to exceed such Term Loan C Lender's Term Loan C Commitment.

(d)    In order to borrow Term Loan C Loans, the Borrower shall give a Term Loan C Loan Request to the Administrative Agent, by telephone or telecopy or in writing, not later than 11:00 A.M. (if by telephone, to be so confirmed in substantially the form of *Exhibit 2.03(c)* not later than 2:00 P.M. on the same day), (i) on the Borrowing Date for ABR Loans and (ii) on the third Business Day before the Borrowing Date for Eurodollar Loans. Upon receipt, the Administrative Agent forthwith shall give notice to each Term Loan C Lender of the substance of the Term Loan C Loan Request. Not later than 2:00 P.M., on the Borrowing Date, each Term Loan C Lender shall make available to the Administrative Agent such Term Loan C Lender's Pro Rata Share of the requested Loans in funds immediately available at the Administrative Agent's office specified pursuant to Section 13.08(a). Subject to satisfaction, or waiver in accordance with Section 7.04, of each of the applicable conditions precedent contained in Article VII, on the Borrowing Date the Administrative Agent shall make available, in like funds, to the Borrower the amounts received by the Administrative Agent from the Term Loan C Lenders."

Siemens ICN 01465

B1853

# Confidential

**Execution Copy**

(d)     Section 2.04 of the Credit Agreement is hereby amended by adding a subsection (e) as follows:

"(e)     Term Loan C Commitments; Mandatory Borrowing Request; Commitment Termination.  On the Term Loan C Effective Date, Borrower shall give a single Term Loan C Loan Request to the Administrative Agent totaling an aggregate principal amount of $200,000,000.  The Term Loan C Commitment terminates on the Term Loan C Commitment Termination Date."

(e)     Section 2.05 of the Credit Agreement is hereby amended by adding a subsection (d) as follows:

"(d)     Term Loan C Loans.  The outstanding principal of the Term Loan C Loans shall be repaid in installments payable on the last day of each calendar quarter commencing on June 30, 2004 and ending on December 31, 2007 as set forth in the following table:

| Date | Quarterly Installment Payment |
|---|---|
| June 30, 2004 | $500,000 |
| September 30, 2004 | $500,000 |
| December 31, 2004 | $500,000 |
| March 31, 2005 | $500,000 |
| June 30, 2005 | $500,000 |
| September 30, 2005 | $500,000 |
| December 31, 2005 | $500,000 |
| March 31, 2006 | $500,000 |
| June 30, 2006 | $500,000 |
| September 30, 2006 | $500,000 |
| December 31, 2006 | $500,000 |
| March 31, 2007 | $500,000 |
| June 30, 2007 | $64,666,667 |
| September 30, 2007 | $64,666,667 |
| December 31, 2007 | Balance of outstanding Term Loan C Loans |

Siemens ICN 01466

B1854

# Confidential

**Execution Copy**

(each of the foregoing dates, a *"Term Loan C Scheduled Installment Date"*)."

(f)     Subject to Section 2(b) of this Amendment No. 2, Section 2.06(b) of the Credit Agreement is hereby amended by adding the words "or the Term Loan C Loans" after the words "Term Loan B Loans" in line 13 thereof and by replacing the final two sentences thereof with the following:

> "On and after the third anniversary of the Effective Date each partial prepayment shall be applied (i) ratably to the Term Loan A Loans, Term Loan B Loans, and the Term Loan C Loans, and (ii) ratably to the scheduled installments of principal of the Term Loan A Loans, Term Loan B Loans and the Term Loan C Loans, in each case in accordance with the respective principal amounts thereof outstanding as of the date of such payment. Prepaid Term Loans may not be reborrowed."

(g)     Section 2.06(c)(iv) of the Credit Agreement is hereby amended by adding the words "outstanding as of the date of such payment" after the words "principal amounts thereof" in line 3 thereof and Section 2.06 of the Credit Agreement is further hereby amended by adding a subsection (e) as follows:

> "(e)     Term Loan C Loan Prepayment Fee. In the event the Borrower prepays the Term Loan C Loan, the Borrower shall pay, for the account of the Term Loan C Lenders, a prepayment fee equal to (i) 3% of the principal amount prepaid if prepayment occurs after the Term Loan C Effective Date and on or before the first anniversary of the Term Loan C Effective Date, (ii) 2% of the principal amount prepaid if prepayment occurs after the first anniversary of the Term Loan C Effective Date and on or before the second anniversary of the Term Loan C Effective Date, and (iii) 1% of the principal amount prepaid if prepayment occurs after the second anniversary of the Term Loan C Effective Date and on or before the third anniversary of the Term Loan C Effective Date. Prepayments of the Term Loan C Loan made after the third anniversary of the Term Loan C Effective Date are not subject to this prepayment fee."

(h)     Article VII of the Credit Agreement is hereby amended by adding a Section 7.04 as follows:

> "Section 7.04 Conditions Precedent for Term Loan C Commitments and Term Loan C Loans. The conditions precedent set forth in Sections 7.01(a) through (j) shall not apply in respect of Term Loan C Lenders, Term Loan C Commitments or Term Loan C Loans. The obligations of each Term Loan C Lender hereunder are subject to, and each Term Loan C Lender's Commitments shall not become available until, the earliest time

Siemens ICN 01467

B1855

## Confidential

Execution Copy

(the "*Term Loan C Effective Time*") on which each of the following conditions precedent shall have been satisfied or waived in writing by the Term Loan C Lenders:

(a)    <u>Amendment No. 2</u>.  Amendment No. 2 shall have become effective in accordance with the terms of Section 2 of Amendment No. 2.

(b)    <u>Consents and Agreements.</u> All consents or agreements (other than any required for Amendment No. 2 to become effective in accordance with its terms) required by the Borrower to Incur Indebtedness in respect of the Term Loan C Loans pursuant to this Agreement (as amended by Amendment No. 2) shall have been obtained and the Administrative Agent, on behalf of the Term Loan C Lenders, shall have received a certificate, signed by an authorized officer of the Parent and the Borrower, certifying that such consents or agreements have been obtained and attaching thereto a copy or copies of such consents or agreements.

(c)    <u>Representations and Warranties</u>.  The representations and warranties contained in Section 4 of Amendment No. 2 shall be true and correct in all material respects on the Term Loan C Effective Date (except as otherwise set forth in Section 4 of Amendment No. 2) and the Administrative Agent, on behalf of the Term Loan C Lenders, shall have received a certificate, signed by an authorized officer of each of the Loan Parties, to that effect.

(d)    <u>Evidence of Corporate Action</u>.  The Administrative Agent on behalf of the Term Loan C Lenders shall have received the following:

(i)     a copy of the certificate of incorporation or similar constitutive document of each of the Consolidated Group Members as in effect on the Term Loan C Effective Date, each certified by the Secretary of State of the respective jurisdictions in which such Consolidated Group Member is organized, and a certificate from such Secretary of State as to the good standing of each of the domestic Consolidated Group Members in each case as of a date reasonably close to the Term Loan C Effective Date; and

(ii)     a certificate of the Secretary or an Assistant Secretary of the Loan Parties, dated the Term Loan C Effective Date, and stating (A) that attached thereto is a true and complete copy of the by-laws or similar constitutive document of the

Siemens ICN 01468

B1856

# Confidential

relevant Loan Party as in effect on such date and at all times since the date of the resolutions described in clause (B) below, (B) that attached thereto is a true and complete copy of resolutions duly adopted by the Board of Directors or equivalent authority of the relevant Loan Party authorizing the execution, delivery and performance of this Agreement (as amended by Amendment No. 2), and that such resolutions have not been modified, rescinded or amended and are in full force and effect, (C) that the certificate of incorporation or similar constitutive document of the relevant Loan Party has not been amended since the date of the last amendment thereto shown on the certificate of good standing furnished pursuant to clause (i) above, and (D) a verification as to the incumbency and signature of each officer executing Amendment No. 2 or any document delivered in connection therewith on behalf of the relevant Loan Party.

(e)    Opinions of Counsel.  The Lenders shall have received favorable written opinions, dated the Term Loan C Effective Date, of (i) Shearman & Sterling, counsel for the Borrower, (ii) Graubard Mollen & Miller, counsel for the Borrower, (iii) Sullivan & Cromwell, special counsel for the Lenders, and (iv) Willkie Farr & Gallagher, special FCC counsel to the Borrower (in reference to spectrum matters only), each in respect of this Agreement as amended by Amendment No. 2 in substantially the form received by the Lenders on the Effective Date.

(f)    Fees.  The Administrative Agent shall have received, on behalf of the Term Loan C Lenders, all fees due pursuant to the fee letter, dated November 7, 2000, or any supplement thereto, from Siemens Information and Communications Networks, Inc to Parent and Borrower.

For the avoidance of doubt, this Section 7.04 is without prejudice to the definition of Effective Time and is without prejudice to Sections 7.02 and 7.03 of this Agreement (which Sections shall apply in respect of the Term Loan C Lenders and Term Loan C Loans except that, solely in relation to the Term Loan C Lenders and the Term Loan C Loans, the reference to Section 5.01 in Section 7.02(c) shall be deemed instead to be a reference to Section 4 of Amendment No. 2)."

B1857

# Confidential

Execution Copy

    (i)    Section 8.02(d)(ii)(Z) of the Credit Agreement is hereby amended by:

    (i) deleting the words "Net Available Cash" and replacing them with the words "Net Cash Proceeds" in line 1 of subparagraph (2) thereof, adding the words "or" after the word "Proceeds," in line 7 of subparagraph (2) thereof and adding a subparagraph (3) as follows:

    "(3)    $200,000,000 in cash on or after the Term Loan C Effective Date and before December 31, 2000,"

    (ii) deleting the word "either" in line 10 thereof and replacing it with the word "each".

    (j)    Section 8.01(n) of the Credit Agreement is hereby amended by adding the words " ))" after the words "Loan Party" in line 13 thereof and by deleting the words ")" after the words "Identification Number" in Line 16 thereof.

    (k)    Section 11.03(a) of the Credit Agreement is hereby amended by deleting the words "and Term Loan B Loans" in line 23 thereof and replacing them with the words ", Term Loan B Loans and Term Loan C Loans".

    (l)    Section 13.06 of the Credit Agreement is hereby amended by deleting the words "and the other Credit Documents" in line 3 thereof.

    (m)    The Credit Agreement is hereby amended by adding an Exhibit 2.03(c) in the form attached to Annex A to this Amendment No. 2.

    (n)    The Credit Agreement is hereby amended by deleting Exhibit 11.01(d)-2 and replacing it with a new Exhibit 11.01(d)-2 in the form attached to Annex B to this Amendment No. 2.

    (o)    The Credit Agreement is hereby amended by deleting Exhibit 11.03(a) and replacing it with a new Exhibit 11.03(a) in the form attached to Annex C to this Amendment No. 2.

    (p)    The Credit Agreement is hereby amended by deleting Schedule 1.01(c)-1 and replacing it with a new Schedule 1.01(c)-1 in the form attached to Annex D to this Amendment No. 2.

    SECTION 2.   Effectiveness.  Subject to Section 2(b) of this Amendment No. 2, this Amendment No. 2 shall be effective upon the following subsections each having been satisfied:

Siemens ICN 01470

B1858

# Confidential

Execution Copy

(a)     the execution of counterparts hereof by the Parent, the Borrower, each of the Guarantors (as such term is defined in the Credit Agreement in relation to Article VI thereof) and the Required Lenders;

(b)     the execution of counterparts hereof by Existing Lenders holding more than 50% of the sum of the unused portion of the Total Commitment and the total outstanding Loans for each class of Loans that is adversely effected by the modifications to Section 2.06 resulting from this Amendment No. 2, *provided* that if this Section 2(b) is not satisfied, this Amendment No. 2 shall nevertheless become effective on the satisfaction of Sections 2(a), 2(c) and 2(d) hereof except that (i) the amendment to the Credit Agreement set forth in Section 1(f) of this Amendment No. 2 shall not be made and (ii) Section 2.06 of the Credit Agreement shall, instead, hereby be amended as set forth in Amendment Exhibit A;

(c)     the execution of a counterpart hereof by New Lender (it being acknowledged that the execution of this Amendment No. 2 by the New Lender is for the purpose of Section 3 hereof and of the New Lender's agreement to the amendments to the Credit Agreement effected hereby); and

(d)     upon receipt by the Parent of $250,000,000 gross proceeds from the issuance of its Capital Stock on or before January 31, 2001.

SECTION 3.  New Lender.  At the same time as this Amendment No. 2 shall become effective in accordance with its terms, the New Lender shall, without further action on behalf of any person, become a party to and be bound by the provisions of the Credit Agreement (as amended by this Amendment No. 2) and shall have the rights and obligations of a Lender thereunder and under the Credit Documents and the New Lender and each other party executing this Amendment No. 2 accepts and acknowledges the same by their respective signatures hereto.  For the avoidance of doubt, neither New Lender nor any affiliate of New Lender shall be an Equipment Vendor Lender solely by reason of (a) New Lender becoming a Lender under the Credit Agreement (as amended by this Amendment No. 2), or (b) an affiliate of New Lender entering into an equipment purchase agreement with a Loan Party, nor shall any Term Loan C Loan be deemed a Vendor Financing.

SECTION 4.  Representations and Warranties.  Each of the Loan Parties as to itself, and as to any Consolidated Group Member that is a Subsidiary thereof, hereby represents and warrants to the other parties hereto that, as of the date hereof and after giving effect to this Amendment No. 2, (a) the representations and warranties contained in Section 5.01 of the Credit Agreement (except to the extent any representation or warranty speaks as of a date certain and which is not made as of the date hereof pursuant to this Section 4) are true and correct in all material respects on and as of the date hereof

Siemens ICN 01471

B1859

# Confidential

**Execution Copy**

as though made on the date hereof, (b) no Default or Event of Default exists and is continuing, or shall exist and be continuing, under the Credit Agreement, (c) *Schedule 5.01(b)* of the Credit Agreement is true and correct in all material respects on and as of the date hereof and each of the representations and warranties in Section 5.01(l)(i) and Section 5.01(n) of the Credit Agreement is true and correct in all material respects on and as of the date hereof as though made on the date hereof, (d) the Credit Agreement (including all schedules and exhibits thereto) has not been amended prior to the date hereof except by Amendment No. 1, dated as of May 4, 2000, and none of the other Credit Documents have been amended in writing, and (e) each of the conditions precedent set forth in Section 7.01 of the Credit Agreement was satisfied (and not waived in writing by the Required Lenders) on the Effective Date.

SECTION 5.  Survival.  All representations and warranties made in this Amendment No. 2 pursuant to Section 4 of this Amendment No. 2, and in the certificates or other instruments prepared or delivered in connection with or pursuant to this Amendment No. 2, shall (i) be considered to have been relied upon by the New Lender regardless of any investigation made by, or on behalf of, the New Lender and (ii) survive the making of the Term Loan C Loans.

SECTION 6.  Miscellaneous.

(a)    Except as amended hereby, all of the terms of the Credit Agreement shall remain and continue in full force and effect and are hereby confirmed in all respects.

(b)    This Amendment No. 2 shall be a Credit Document for the purposes of the Credit Agreement (as hereby amended).

(c)    This Amendment No. 2 may be signed in any number of counterparts, each of which shall be an original, with the same effect as if the signatures thereto were upon the same instrument. Delivery of an executed counterpart of a signature page of this Amendment No. 2 or consent hereto by telecopier shall be effective as delivery of a manually executed counterpart of this Amendment No. 2.

(d)    **THIS AMENDMENT NO. 2 AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HERETO SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.**

B1860

# Confidential

Execution Copy

Amendment Exhibit A

(A)     Section 2.06(b) of the Credit Agreement shall be amended by:

(i)  adding after the words "Borrower's direction" in line 14 thereof the words "and shall not, so long as any Term Loan A Loans or Term Loan B Loans shall be outstanding, be applied to the Term Loan C Loans"; and

(ii)  by adding after the words "B Loans" in line 17 thereof the words ", and (iii) to the Term Loan C Loans if no Term Loan A Loans and Term Loan B Loans shall be outstanding" and by adding after the words "principal amounts thereof" the words "outstanding as of the date of such payment".

(B)     Section 2.06(c) of the Credit Agreement shall be amended by deleting paragraph (iv) thereof and replacing it with a new paragraph (iv) as follows:

"(iv)  Prepayments under subsections (ii) and (iii) above shall be applied (A) first, ratably to the Term Loan A Loans and Term Loan B Loans and ratably to the scheduled installments of principal of the Term Loan A Loans and Term Loan B Loans, in each case in accordance with the respective principal amounts thereof outstanding as of the date of such payment, (B) second, to the extent the Term Loan A Loans and Term Loan B Loans have been paid in full, to the Revolving Credit Credit Loans, and (C) third, to the extent the Term Loan A Loans, the Term Loan B Loans have been paid in full and no Revolving Credit Loans are outstanding, to the Term Loan C Loans."

**[signature pages follow]**

Siemens ICN 01473

B1861

# Confidential

**Execution Copy**

IN WITNESS WHEREOF, the parties hereto have caused this Amendment No.2 to be duly executed as of the date first above written.

**PARENT and GUARANTOR:**

WINSTAR COMMUNICATIONS, INC.

By: _____
　　Name:　Frederic E. Rubin
　　Title:　Senior Vice President, Treasurer

**BORROWER:**

WCI CAPITAL CORP.

By: _____
　　Name:　Frederic E. Rubin
　　Title:　Vice President, Treasurer

**GUARANTORS:**

WINSTAR WIRELESS, INC.

By: _____
　　Name:　Frederic E. Rubin
　　Title:　Vice President, Treasurer

WINSTAR A/R SPE, LLC

By: _____
　　Name:　Frederic E. Rubin
　　Title:　Vice President, Treasurer

Siemens ICN 01474

B1862

Confidential

Execution Copy

WINSTAR A/R ACCOUNT PARTY, LLC

By: _____
Name:        Frederic E. Rubin
Title:        Vice President, Treasurer


WINSTAR BROADBAND ACQUISITION 1999,
LLC

By: _____
Name:        Frederic E. Rubin
Title:        Vice President, Treasurer


WINSTAR NETWORK EXPANSION, LLC

By: _____
Name:        Frederic E. Rubin
Title:        Vice President, Treasurer


WWI LICENSE HOLDING, INC.

By: _____
Name:        Frederic E. Rubin
Title:        Vice President, Treasurer


WINSTAR EQUIPMENT CORP.

By: _____
Name:        Frederic E. Rubin
Title:        Vice President, Treasurer


NY12527: 95794.10                -15-

Siemens ICN 01475

B1863

# Confidential

WINSTAR EQUIPMENT II CORP.

By: _____

Name:       Frederic E. Rubin
Title:      Vice President, Treasurer


WINSTAR WIRELESS FIBER CORP.

By: _____

Name:       Frederic E. Rubin
Title:      Vice President, Treasurer


WINSTAR LMDS, LLC

By: _____

Name:       Frederic E. Rubin
Title:      Vice President, Treasurer


WINSTAR CREDIT CORP.

By: _____

Name:       Frederic E. Rubin
Title:      Vice President, Treasurer


WINSTAR SWITCH ACQUISITION CORP.

By: _____

Name:
Title:      Frederic E. Rubin
            Vice President, Treasurer

Siemens ICN 01476

B1864

# Confidential

**Execution Copy**

WINSTAR NEW MEDIA COMPANY, INC.

By: _____
    Name:   Frederic E. Rubin
    Title:    Vice President, Treasurer


WINSTAR INTERACTIVE MEDIA SALES, INC.

By: _____
    Name:   Frederic E. Rubin
    Title:    Vice President, Treasurer


WINSTAR EASYNET INC.

By: _____
    Name:   Frederic E. Rubin
    Title:    Vice President, Treasurer


WINSTAR INTERACTIVE VENTURES I, INC.

By: _____
    Name:   Frederic E. Rubin
    Title:    Vice President, Treasurer


WINSTAR GLOBAL MEDIA, INC.

By: _____
    Name:   Frederic E. Rubin
    Title:    Vice President, Treasurer

Siemens ICN 01477

B1865

# Confidential

**Execution Copy**

WINSTAR RADIO NETWORKS, INC.

By: _____
Name:    Frederic E. Rubin
Title:    Vice President, Treasurer


WALT BABY LOVE PRODUCTIONS, INC.

By: _____
Name:    Frederic E. Rubin
Title:    Vice President, Treasurer


NON FICTION FILMS INC.

By: _____
Name:    Frederic E. Rubin
Title:    Vice President, Treasurer


FOX/LORBER ASSOCIATES, INC.

By: _____
Name:    Frederic E. Rubin
Title:    Vice President, Treasurer


WELLSPRING MEDIA, INC.

By: _____
Name:    Frederic E. Rubin
Title:    Vice President, Treasurer

Siemens ICN 01478

B1866

# Confidential

**Execution Copy**

WINSTAR BROADCASTING CORP.

By: _____
    Name:
    Title:    Frederic E. Rubin
           Vice President, Treasurer

SPORTSFAN RADIO NETWORK INC.

By: _____
    Name:
    Title:    Frederic E. Rubin
           Vice President, Treasurer

WINSTAR GOVERNMENT SOLUTIONS, LLC

By: _____
    Name:
    Title:    Frederic E. Rubin
           Vice President, Treasurer

WINSTAR MIDCOM ACQUISITION CORP.

By: _____
    Name:
    Title:    Frederic E. Rubin
           Vice President, Treasurer

Siemens ICN 01479

B1867

# Confidential

**Execution Copy**

<u>**LENDERS:**</u>

THE BANK OF NEW YORK,
        as Lender, Letter of Credit Issuer, Administrative
        Agent and Collateral Agent

By: _____

Name: _Brendan T. Nedzi_

Title: _SVP_

Siemens ICN 01480

B1868

# Confidential

Execution Copy

ABN AMRO BANK N.V.

By: _____
Name:    FRANCES O'R. LOGAN
Title:    SENIOR VICE PRESIDENT

By: _____
Name:    DAVID C. CARRINGTON
Title:    GROUP VICE PRESIDENT

Siemens ICN 01481

B1869

Confidential

ALLIANCE CAPITAL FUNDING, LLC.

By: Alliance Capital Management L.P., as its Collateral
Manager

By: _____

Name: Robert Boyce

Title: Vice President

B1870

DEC. -04' 00 (MON) 09:46     BNY CAPITAL MARKETS          TEL: 212 635 8509          P. 002

MONUMENT CAPITAL LTD.
By: Alliance Capital Management L.P., as its Collateral
     Manager

By: _____
Name: Robert Bayes
Title: Vice President

-22-

Siemens ICN 01483

B1871

Confidential

**Execution Copy**

THE BANK OF NOVA SCOTIA

By: _____

Name: VINCENT J. FITZGERALD, JR.
Title: AUTHORIZED SIGNATORY

Siemens ICN 01484

B1872

# Confidential

**Execution Copy**

FC CBO IV, LTD
By:    The Bank of Montreal, as its Collateral Manager

By: _____
Name: _____
Title: _____

Siemens ICN 01485

B1873

Confidential

Execution Copy

BARCLAYS BANK PLC

By: _____

Name:  **Daniele Iacovone**
Title:  **Director**

Siemens ICN 01486

B1874

00[FRI] 11:51     BNY CAPITAL MARKETS          TEL:212 635 8509          P. 002

## Confidential

Execution Copy

SIERRA CLO I, LTD
By:     Centre Pacific, as its Collateral Manager

By: _____
Name: JOHN M. CASPARIAN
Title: SENIOR MANAGING DIRECTOR

B1875

Siemens ICN 01487

-26-

Confidential

Execution Copy

CIBC WORLD MARKETS, CORP.
as Lender and Syndication Agent

By: _____

Name:
Title:

Michele E. Roller
Executive Director
CIBC World Markets Corp. As Agent

Siemens ICN 01488

B1876

Confidential

11/30/00   14:59 FAX 212 506 3568        O.H. & SUTCLIFFE LLP                      002/002
11/28/00   TUE 19:39 FAX 345 949 5223      DEUTSCHE BANK CY LTD                  002
11/28/00   18:26 FAX 212 506 3568          O.H. & SUTCLIFFE LLP                  014

Execution Copy

CAPTIVA FINANCE LTD.

By:

Name:
Title:

**DAVID DYER**
**Director**

NY12527; 95794.10

Siemens ICN 01489

B1877

Confidential

Execution Copy

CITIBANK, N.A.

By: _____
Name: Claudio Phillips
Title: Director

Siemens ICN 01490

B1878

## Confidential

Execution Copy

CITICORP NORTH AMERICA, INC.,
as Lender and Syndication Agent

By: _____

Name: JAMES F. GARVIN, VP

Title:

Siemens ICN 01491

B1879

# Confidential

**Execution Copy**

CREDIT LYONNAIS, NEW YORK BRANCH

By: _____

Name:

Title:     **PATRICK McCARTHY**
           **AUTHORIZED SIGNATURE**

NOV. 21. 2000  2:56PM    CREDIT SUISSE FIRST BOSTON                NO. 0602    P.  2

# Confidential

Execution Copy

CREDIT SUISSE FIRST BOSTON,
as Lender and Documentation Agent

By: _____
    Name:    KRISTIN LEPRI
    Title:   ASSOCIATE

By: _____
    Name:    BILL O'DALY
    Title:   VICE PRESIDENT

B1881

NY12527: 93764.16

Siemens ICN 01493

## Confidential

**Execution Copy**

DRESDNER BANK AG, NEW YORK AND GRAND
CAYMAN BRANCHES

By: _____

Name:    Brian E. Haughney
Title:    Assistant Vice President

By: _____

Name:
Title:

**BRIAN SCHNEIDER
ASSISTANT VICE PRESIDENT**

Siemens ICN 01494

B1882

NOV-21-2000  17:30

# Confidential

P.02/06

Execution Copy

SENIOR DEBT PORTFOLIO
By:    Boston Management and Research
       as Investment Advisor

By: _____
    Name:
    Title:
         VICE PRESIDENT

B1883

Siemens ICN 01495

NOV. -21' 00(TUE) 17:52    BNI GAP MN15

Confidential

Execution Copy

EATON VANCE SENIOR INCOME TRUST
By:    Eaton Vance Management
       as Investment Advisor

By: _____
   Name:
   Title:

   VICE PRESIDENT

B1884

Siemens ICN 01496

NY12527:93794.10

P.84/85

# Confidential

Execution Copy

EATON VANCE INSTITUTIONAL SENIOR LOAN
    FUND
By:   Eaton Vance Management
    as Investment Advisor

By:
Name:
Title:

VICE PRESIDENT

**B1885**

Siemens ICN 01497

NY12527:95794.10

TEL:212 635 8268　　　BNY CAP MKTS　　　NOV. -21'00(TUE) 17:52

P.06/06

# Confidential

**Execution Copy**

EATON VANCE CDO III, LTD
By:    Eaton Vance Management
       as Investment Advisor

By: _____
    Name:
    Title:

    VICE PRESIDENT

B1886

Siemens ICN 01498

TOTAL P.06

N~21-2000 . 17:39

## Confidential

P.05/06

**Execution Copy**

OXFORD STRATEGIC INCOME FUND
By:    Eaton Vance Management,
       as Investment Advisor

By: _Barbara Campbell_
   Name:
   Title:

        VICE PRESIDENT

**B1887**

Siemens ICN 01499

NOV. -21. 00(TUE) 17:52     BNY CAP MKTS     IPL:212 CCC 0000

# Confidential

Execution Copy

VARIABLE INSURANCE PRODUCTS FUND II: ASSET
MANAGER: GROWTH PORTFOLIO

By: _____

Name: _____ _____ELLO

Title: _____ Treasurer

Siemens ICN 01500

B1888

Confidential

Execution Copy

**VARIABLE INSURANCE PRODUCTS FUND II: ASSET MANAGER PORTFOLIO**

By: _____

Name:     JOHN COSTELLO

Title:     Asst. Treasurer

Siemens ICN 01501

B1889

# Confidential

Execution Copy

FLEET NATIONAL BANK

By: _E. Z. Willard, J._

Name:  Ellery (Tim) Willard
Title:  Vice President

Siemens ICN 01502

B1890

# Confidential

**Execution Copy**

FRANKLIN FLOATING RATE FUND
By:    Franklin Templeton Funds, as its Collateral Agent

By:
Name:
Title:    ^auncey Lufkin
         President

NY12527: 95794.10                    -43-    same as 42

Siemens ICN 01503

B1891

## Confidential

**Execution Copy**

FRANKLIN CLO I, LTD.

By: Franklin Templeton Funds, as its Collateral Agent

By:
Name:
Title: Chauncey Lufkin
Vice President

Siemens ICN 01504

B1892

# Confidential

Execution Copy

FRANKLIN FLOATING RATE MASTER SERIES
By:    Franklin Templeton Funds, as its Collateral Agent

By: _____
    Name:
    Title:        Chauncey Lufkin
                  Vice President

Siemens ICN 01505

TOTAL P.04

B1893

Confidential

Execution Copy

GENERAL ELECTRIC CAPITAL CORPORATION

By:

Name:  BRIAN P WARD

Title:  MANAGER-OPERATIONS

NY12527: 95794.10

Siemens ICN 01506

B1894

## Confidential

**Execution Copy**

HARCH CAPITAL

By: _Michael E. Lewitt_____

Name:
Title:    **Michael E. Lewitt**
          **AUTHORIZED SIGNATORY**

B1895

# Confidential

**Execution Copy**

ELF-FUNDING TRUST I
By:     Highland Capital Management, as its Collateral
        Manager

By: _____
    Name:
    Title:   Todd Travers
             Senior Portfolio Manager

Siemens ICN 01508

B1896

Confidential

Execution Copy

SRV-HIGHLAND, INC.

By: _____

Name:
Title:

ANN E. MORRIS
ASST. VICE PRESIDENT

Siemens ICN 01509

B1897

# Confidential

Execution Copy

PAM CAPITAL FUNDING LP
By:    Highland Capital Management, as its Collateral
       Manager

By: _____

Name:
Title:    Todd Travers
          Senior Portfolio Manager

Siemens ICN 01510

B1898

Confidential

Execution Copy

HIGHLAND LEGACY LIMITED
By:    Highland Capital Management, as its Collateral
       Manager

By: _____

Name:   Todd Travers
Title:  Senior Portfolio Manager

NY12527: 95794.10

Siemens ICN 01511

B1899

Confidential

PAMCO CAYMAN LTD.
By:    Highland Capital Management, as its Collateral
      Manager

By: _____
    Name:
    Title:    Todd Travers
          Senior Portfolio Manager

Siemens ICN 01512

B1900

# Confidential

**Execution Copy**

IBM CREDIT CORPORATION

By: _____

Name: Thomas S. Curcio

Title: Manager of Credit

B1901

Siemens ICN 01513

NY12527:95794.10   -53-

# Confidential

Execution Copy

**NEMEAN CLO, LTD.**

BY:   ING Capital Advisors LLC,
       as Investment Manager

BY: _____
Name:    STEVEN GORSKI
Title:     VICE PRESIDENT &
           SENIOR CREDIT ANALYST

NY12527: 95794.10

Siemens ICN 01514

B1902

# Confidential

**Execution Copy**

**ARCHIMEDES FUNDING II, LTD.**

BY:  ING Capital Advisors LLC,
     as Collateral Manager

BY:  _____
Name:   STEVEN GORSKI
Title:    VICE PRESIDENT &
          SENIOR CREDIT ANALYST

B1903

# Confidential

Execution Copy

**ARCHIMEDES FUNDING III, LTD.**

BY:  ING Capital Advisors LLC,
as Collateral Manager

BY: _____
Name:  STEVEN GORSKI
Title:  VICE PRESIDENT &
SENIOR CREDIT ANALYST

Siemens ICN 01516

B1904

# Confidential

Execution Copy

KZH ING-1 LLC

By:

By: _____

Name:

Title:        Susan Lee
              Authorized Agent

Siemens ICN 01517

B1905

NOV-30-2000  14:35    WEIL, GOTSHAL & MANGES    1 212 735 4996    P.03/03
FROM    (MON)11. 27' 00 10:46/ST. 10:44/NO. 4863492159 P 4

## Confidential

Execution Copy

KZH ING-2 LLC
By:

By: _____
Name:        Susan Lee
Title:        Authorized Agent

NY12527:95794.10    -58-    Siemens ICN 01518

TOTAL P.03

B1906

# Confidential

Execution Copy

MORGAN GUARANTY TRUST COMPANY OF NEW
YORK

By: _____

Name: JOHN KOWALCZUK

Title: VICE PRESIDENT

NY12527: 95794.10

Siemens ICN 01519

B1907

Confidential

**Execution Copy**

MERITA-NORDBANKEN GROUP

By: _____

Name: CHARLES J. LANSDOWN

Title: Senior Vice President

By: _____

Name: JOSEPH A. CICCOLINI

Title: Vice President

12527: 95794.10

Siemens ICN 01520

B1908

# Confidential

Execution Copy

MERRILL LYNCH SENIOR FLOATING RATE FUND.
INC.

By: _____

Name:    ANDREW C. LIGGIO

Title:    AUTHORIZED SIGNATORY

Siemens ICN 01521

B1909

# Confidential

Execution Copy

MERRILL LYNCH PRIME RATE PORTFOLIO
By:    Merrill Lynch Investment Managers, L.P., as
       Investment Advisor

By: _____
Name:
Title:          ANDREW C. LIGGIO
                AUTHORIZED SIGNATORY

Siemens ICN 01522

B1910

# Confidential

**Execution Copy**

MORGAN STANLEY DEAN WITTER
PRIME INCOME TRUST

By: _____

Name: SHEILA FINNERTY

Title: SR VICE PRESIDENT

Siemens ICN 01523

B1911

# Confidential

---

Execution Copy

HARBOURVIEW CDO II, LTD.
By:    Oppenheimer Funds, as its Collateral Manager

By:
    Name:
    Title:        SCOTT FARRAR
                  VICE PRESIDENT

NY12527: 95794.10                          -64-

Siemens ICN 01524

B1912

Confidential

Execution Copy

OPPENHEIMER SENIOR FLOATING RATE FUND
By:    Oppenheimer Funds, as its Collateral Manager

By: _____
     Name:
     Title:    SCOTT FARRAR
               VICE PRESIDENT

NY12527: 95794.10                    -65-

Siemens ICN 01525

B1913

# Confidential

Execution Copy

NUVEEN FLOATING RATE FUND
By:     John Nuveen, as its Collateral Manager

By: *Eileen T. Rives*
Name:
Title:        Eileen T. Rives
            Managing Director

Siemens ICN 01526

B1914

# Confidential

Execution Copy

NUVEEN SENIOR INCOME FUND
By:     John Nuveen, as its Collateral Manager

By: _Eileen T. Rives_____
  Name:
  Title:      Eileen T. Rives
               Managing Director

Siemens ICN 01527

B1915

# Confidential

Execution Copy

ROYAL BANK OF CANADA

By:

Name:     STEPHANIE BABICH

Title:     SENIOR MANAGER

Siemens ICN 01528

B1916

# Confidential

Execution Copy

SOCIETE GENERALE

By: _Richard Knowlton_

Name: **Richard Knowlton, Director**

Title:

Siemens ICN 01529

B1917

# Confidential

Execution Copy

STANFIELD CLO, LTD.
By:    Stanfield Capital Partners LLC
       as its Collateral Manager

By: _____
Name:    Gregory L. Smith
Title:    Partner

Siemens ICN 01530

B1918

# Confidential

Execution Copy

STANFIELD/RMF TRANSATLANTIC CDO, LTD.
By:     Stanfield Capital Partners LLC
        as its Collateral Manager

By: _____
Name:
Title:      Gregory L. Smith
            Partner

Siemens ICN 01531

B1919

Confidential

Execution Copy

SUMITOMO TRUST AND BANKING CO., LTD.

By: *Stephanie M. Fowler*
Name:    STEPHANIE M. FOWLER
Title:       VICE PRESIDENT

WCI Capital Corp.

Amendment No.2 and New Lender Agreement

Siemens ICN 01532

B1920

# Confidential

Execution Copy

TORONTO DOMINION (TEXAS), INC.

By: _____
Name: Carolyn R. Faeth
Title:   Vice President

B1921

Siemens ICN 01533

NOV. 30. 2000  5:17PM    UBS WARBURG                           NO. 3001

# Confidential

Execution Copy

UBS AG, STAMFORD BRANCH

By: _____

Name:

Title:      Wilfred V. Saint
            Associate Director
            Banking Products Services, US

LYNNE B. Alfarone
Associate Director
Banking Products Services, US

NY12327: 95794.10

B1922

Siemens ICN 01534

# Confidential

Execution Copy

VAN KAMPEN PRIME RATE INCOME TRUST

By:  Van Kampen Investment Advisory Corp.

By: _____

Name:

Title:    DA~~~ ~. ~~
          VICE PRES~~~~

Siemens ICN 01535

B1923

Confidential

Execution Copy

VAN KAMPEN SENIOR INCOME TRUST
By: Van Kampen Investment Advisory Corp.

By: _____
Name:    RVIN D. PIERCE
Title:    CE PRESIDENT

NY12527: 95794.10

Siemens ICN 01536

B1924

# Confidential

**Execution Copy**

J.H. WHITNEY CASH FLOW FUND, L.P.

By: _____

Name:    Michael B. DeFlorio
Title:    Managing Director

Siemens ICN 01537

B1925

# Confidential

Execution Copy

WINDSOR LOAN FUNDING, LIMITED
By:    Stanfield Capital Partners LLC
       as its Collateral Manager

By:
Name:
Title:    Gregory L. Smith
          Partner

Siemens ICN 01538

B1926

# Confidential

**Execution Copy**

[Signature page to Amendment No. 2 and New Lender Agreement dated December 6, 2000]

SIEMENS FINANCIAL SERVICES, INC.

By:_____

Name:___Robert J. Knapp_____

Title:___Sr. VP & Chief Financial Officer__

- 79 -

Confidential

Execution Copy

**GUARANTORS:**

WINSTAR BROADBAND ACQUISITION 2000, LLC

By: _____
Name:
Title:      Kenneth J. Zinghini
            Vice President and Secretary

Siemens ICN 01540

B1928

Confidential

Execution Copy

Annex A

*Form of Term Loan C Loan Request*

Siemens ICN 01541

B1929

# Confidential

Execution Copy

Exhibit 2.03(c)

## Form of Term Loan C Loan Request

[Date]

The Bank of New York,
as Administrative Agent
One Wall Street
New York, New York  10286

Attention:  _____

### Term Loan C Loan Request

Ladies and Gentlemen:

   Reference is made to the Revolving Credit and Term Loan Agreement, dated as of May 4, 2000 (as amended, amended and restated, supplemented or otherwise modified from time to time, the "*Credit Agreement*"), among Winstar Communications, Inc., a Delaware corporation (the "*Parent*"), WCI Capital Corp., a De___re corporation (the "*Borrower*"), each of the entities listed on the signature pages th___ under the heading "*Guarantors*" and the Additional Guarantors from time to ti___ _arties thereto, each of the Lenders from time to time parties thereto, The Bank of New York, as letter of credit issuer, administrative agent and collateral agent for the Lenders, Citicorp North America, Inc., as syndication agent for the Lenders, and CIBC World Markets Corp. and Credit Suisse First Boston, as documentation agents for the Lenders.  Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Credit Agreement.

   The Borrower hereby gives you notice, pursuant to Section 2.03(c) of the Credit Agreement, that it requests Term Loan C Loans, and in that connection sets forth below the terms on which such Term Loan C Loans are requested to be made:

  (A)  Borrowing Date   [Must be a Business Day]

  (B)  Aggregate Principal Amount $200,000,000 _____

  (C)  Interest Rate Basis   [ABR] [Eurodollar Loan]

  (D)  Interest Period and the

B1930

# Confidential

last day thereof*                    _____

(E)     Applicable Margin           _____

Very truly yours,

WCI CAPITAL CORP.

By:_____
    Name:
    Title:

---

\*     One, two, three or six months (or with consent of Lenders, nine or twelve months) in the case of Eurodollar Loans; not applicable to ABR Loans.

Siemens ICN 01543

B1931

# Confidential

Execution Copy

Annex B

*Form of Term Loan Note*

Siemens ICN 01544

B1932

Confidential

Execution Copy

Exhibit 11.01(d)-2

Form of Term Loan Note

### PROMISSORY NOTE

[Principal Amount]                                                                    [Date]

WCI CAPITAL CORP., a Delaware corporation (the "*Borrower*"), for value received, hereby promises to pay to the order of [LENDER] (the "*Lender*"), at the office of _____, at _____, in lawful money of the United States, the principal sum of [PRINCIPAL AMOUNT IN DOLLARS], in installments as follows due on each Term Loan [A] [B] [C] Scheduled Installment Date, as defined in the Credit Agreement (hereinafter defined), equal to the [percentages][amounts] set forth in Section 2.05[(b)][c][d] of the Credit Agreement.

This Note shall bear interest as set forth in the Credit Agreement for Term Loan [A] [B] [C]Loans. If interest or principal on the loan evidenced by this Note becomes due and payable on a day which is not a Business Day, as defined in the Credit Agreement, the maturity thereof shall be extended and interest shall be payable there     the rate specified in the Credit Agreement during such extension.

This Note is one of the Term Notes referred to in that certain Revolving Credit and Term Loan Agreement, dated as of May 4, 2000 (as amended, amended and restated, supplemented or otherwise modified from time to time, the "*Credit Agreement*"), among Winstar Communications, Inc., a Delaware corporation (the "*Parent*"), WCI Capital Corp., a Delaware corporation (the "*Borrower*"), each of the entities listed on the signature pages thereof under the heading "*Guarantors*" and the Additional Guarantors from time to time parties thereto, each of the Lenders from time to time parties thereto, The Bank of New York, as letter of credit issuer, administrative agent and collateral agent for the Lenders, Citicorp North America, Inc., as syndication agent for the Lenders, and CIBC World Markets Corp. and Credit Suisse First Boston, as documentation agents for the Lenders, and is subject to prepayment in whole or in part and its maturity is subject to acceleration upon the terms provided in the Credit Agreement.

**THIS NOTE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK.**

This Note is not negotiable and interests herein may be assigned only upon the terms and conditions specified in the Credit Agreement.

All changes in interest determination on the Term Loan [A] [B] [C] Loan made pursuant to the Credit Agreement and all payments of principal hereof may be indicated by

B1933

Confidential

the Lender upon the grid attached hereto which is a part of this Note.  Such notations shall be presumptive as to the aggregate unpaid principal and interest due under this Term Loan [A] [B] [C] Loan.

WCI CAPITAL CORP.

By:_____

    Name:

    Title:

Siemens ICN 01546

B1934

# Confidential

Execution Copy

## TERM LOAN AND PRINCIPAL PAYMENTS

Aggregate Principal Amount of Term Loan [A] [B] [C] Loan: $_____

Borrowing Date: _____

| Date | Interest Rate Basis | Interest Period (if applicable) | Amount of Principal Repaid | Amount of Unpaid Principal Balance | Total | Notation Made By |
|------|---------------------|--------------------------------|----------------------------|------------------------------------|-------|------------------|
|      | [ABR] [Eurodollar]  |                                |                            |                                    |       |                  |
|      |                     |                                |                            |                                    |       |                  |
|      |                     |                                |                            |                                    |       |                  |
|      |                     |                                |                            |                                    |       |                  |
|      |                     |                                |                            |                                    |       |                  |
|      |                     |                                |                            |                                    |       |                  |
|      |                     |                                |                            |                                    |       |                  |
|      |                     |                                |                            |                                    |       |                  |
|      |                     |                                |                            |                                    |       |                  |
|      |                     |                                |                            |                                    |       |                  |
|      |                     |                                |                            |                                    |       |                  |
|      |                     |                                |                            |                                    |       |                  |
|      |                     |                                |                            |                                    |       |                  |
|      |                     |                                |                            |                                    |       |                  |
|      |                     |                                |                            |                                    |       |                  |
|      |                     |                                |                            |                                    |       |                  |
|      |                     |                                |                            |                                    |       |                  |

Siemens ICN 01547

B1935

Confidential

Execution Copy

<u>Annex C</u>

*Form of Assignment and Acceptance*

Siemens ICN 01548

B1936

# Confidential

<div align="right">

**Execution Copy**

</div>

<u>Exhibit 11.03(a)</u>

**Form of Assignment and Acceptance**

## ASSIGNMENT AND ACCEPTANCE

Reference is made to the Revolving Credit and Term Loan Agreement, dated as of May 4, 2000 as amended, amended and restated, supplemented or otherwise modified from time to time, the "*Credit lgreement*"), among Winstar Communications, Inc., a Delaware corporation (the "*Parent*"), WCI Capital Corp., Delaware corporation (the "*Borrower*"), each of the entities listed on the signature pages thereof under the eading "*Guarantors*" and the Additional Guarantors from time to time parties thereto, each of the Lenders from ime to time parties thereto, The Bank of New York, as letter of credit issuer, administrative agent and collateral gent for the Lenders, Citicorp North America, Inc., as syndication agent for the Lenders, and CIBC World Aarkets Corp. and Credit Suisse First Boston, as documentation agents for the Lenders. Capitalized terms efined in the Credit Agreement are used herein with the same meanings.

1. The assignor identified below (the "*Assignor*") hereby sells and assigns, without recourse, to e assignee identified below (the "*Assignee*"), and the Assignee hereby purchases      sumes, without course, from the Assignor, effective as of the Assignment Date (as defined herein      orth below, the interests t forth below (the "*Assigned Interest*") in the Assignor's rights and obligations under the Credit Agreement nd the other Credit Documents , including, without limitation, the interests set forth below in (i) the ommitments of the Assignor on the Assignment Date, (ii) the Loans (and any accrued interest thereon) owing  the Assignor which are outstanding on the Assignment Date and (iii) any other amounts owing to each such ssignor under the Credit Agreement on the Assignment Date. The Assignee hereby acknowledges receipt of a  py of the Credit Agreement. From and after the Assignment Date (i) the Assignee shall be a party to and be  und by the provisions of the Credit Agreement and, to the extent of the interests assigned by this Assignment nd Acceptance, have the rights and obligations of a Lender thereunder and under the Credit Documents and (ii)  e Assignor shall, to the extent of the interests assigned by this Assignment and Acceptance, relinquish its rights nd be released from its obligations under the Credit Agreement.

2. This Assignment and Acceptance is being delivered to the Administrative Agent together ith (i) if the Assignee is a Foreign Lender, any forms of the type described in Section 4.04(a) of the Credit greement, duly completed and executed by such Assignee, (ii) if the Assignee is not already a Lender under the redit Agreement, an Administrative Questionnaire and (iii) if required under the Credit Agreement, a ocessing and recordation fee of $3,500.

3. **THIS ASSIGNMENT AND ACCEPTANCE SHALL BE GOVERNED BY AND ONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK.**

B1937

# Confidential

Execution Copy

Date of Assignment and Acceptance:

Legal Name of Assignor:

Legal Name of Assignee:

Assignee's Address for Notices:

Effective Date of Assignment and Acceptance (the "*Assignment Date*")[*]:

| | Percentage of Total Commitment Assigned[**] |
|---|---|
| Revolving Credit Commitment | % |
| Term Loan A Commitment | % |
| Term Loan B Commitment | % |
| Term Loan C Commitment | % |

| | Principal Amount Assigned |
|---|---|
| Revolving Credit Loans | $ |
| Term Loan A Loans | $ |
| Term Loan B Loans | $ |
| Term Loan C Loans | $ |

---

[*] May not be fewer than two Business Days after the date of the Assignment and Acceptance.

[**] Set forth, to at least 8 decimals, as a percentage of the Total Commitment.

Siemens ICN 01550

B1938

# Confidential

**Execution Copy**

IN WITNESS WHEREOF, the parties hereto have caused this Assignment and Acceptance to be executed by their respective officers thereunto duly authorized, as of the date first above written.

**The terms set forth above**
**are hereby agreed to:**

_____, as Assignor                     _____, as Assignee


By:_____                           By:_____
  Name:                                                        Name:
  Title:                                                         Title:


`onsent given:*/`

WINSTAR COMMUNICATIONS, INC.              [ADMINISTRATIVE AGENT]


By:_____                           By:_____
  Name:                                                        Name:
  Title:                                                         Title:


WCI CAPITAL CORP.                                        [L/C ISSUER]


By:_____                           By:_____
  Name:                                                        Name:
  Title:                                                         Title:

_____

\*    To be completed to the extent consents are required under Section 11.03(a) of the Credit Agreement.

Siemens ICN 01551

B1939

Confidential

**Execution Copy**

<u>Annex D</u>

*Schedule 1.01(c)-1 Lenders and Commitment*

Siemens ICN 01552

B1940

Execution Copy

Schedule 1.01(c)-1

Lenders and Commitments*

| Lender | Address for Notices | Revolving Credit Commitment | Term Loan A Commitment | Term Loan B Commitment | Term Loan C Commitment | Total Commitment |
|---|---|---|---|---|---|---|
| The Bank of New York | One Wall Street New York, NY 10286 | $25,000,000.00 | $31,250,000.00 | $101,562,500.00 | | $157,812,500.00 |
| CIBC Inc. | 425 Lexington Avenue New York, NY 10017 | $25,000,000.00 | $31,250,000.00 | $101,562,500.00 | | $157,812,500.00 |
| Citicorp North America, Inc. | 390 Greenwich Street, 1st Floor New York, NY 10013 | $25,000,000.00 | $31,250,000.00 | $101,562,500.00 | | $157,812,500.00 |
| Credit Suisse First Boston | 11 Madison Avenue New York, NY 10010 | $25,000,000.00 | $31,250,000.00 | $106,562,500.00 | | $162,812,500.00 |
| ABN AMRO Bank N.V. | 500 Park Avenue, 2nd Floor New York, NY 10022 | $18,888,888.89 | $23,611,111.11 | -- | | $42,500,000.00 |
| Bank of Nova Scotia | One Liberty Plaza New York, NY 10006 | $18,888,888.89 | $23,611,111.11 | -- | | $42,500,000.00 |

\* Commitments as of the Effective Date, or in the case of the Term Loan C Commitment, the Term Loan C Effective Date.

NY12527: 95794.11

-91-

Siemens ICN 01553

B1941

Execution Copy

Confidential

| Lender | Address for Notices | Revolving Credit Commitment | Term Loan A Commitment | Term Loan B Commitment | Term Loan C Commitment | Total Commitment |
|---|---|---|---|---|---|---|
| Barclays Bank PLC | Borrowing Notices: 222 Broadway New York, NY 10038 Attention: Jackie Brown Other Notices: 388 Market Street, Suite 1700 San Francisco, CA 94111 | $18,888,888.89 | $23,611,111.11 | $10,000,000.00 | | $52,500,000.00 |
| Credit Lyonnais New York Branch | 1301 Avenue of the Americas New York, NY 10019 | $18,888,888.89 | $23,611,111.11 | $10,000,000.00 | | $52,500,000.00 |
| Dresdner Bank AG, New York and Grand Cayman Branches | 75 Wall Street New York, NY 10005-2889 | $18,888,888.89 | $23,611,111.11 | - | | $42,500,000.00 |
| Fleet National Bank | 100 Federal Street Mail Code: MADE10000BH Boston, MA 02110 | $18,888,888.89 | $23,611,111.11 | - | | $42,500,000.00 |
| Morgan Guaranty Trust Company of New York | 60 Wall Street New York, NY 10260-0060 Attention: John Kowalczuk | $18,888,888.89 | $23,611,111.11 | - | | $42,500,000.00 |
| Royal Bank of Canada | One Liberty Plaza, Fifth Floor New York, NY 10006-1404 | $18,888,888.89 | $23,611,111.11 | - | | $42,500,000.00 |
| Siemens Financial Services, Inc. | Borrowing Notices: 200 Somerset Corporate Blvd. Bridgewater, NJ 08807-2843 Attention: Robert Knepp Other Notices: 900 Broken Sound Parkway NW (A-5) Boca Raton, FL 33487 | - | - | - | $200,000,000.00 | $200,000,000.00 |
| Société Générale | 1221 Avenue of the Americas New York, NY 10020 | $18,888,888.89 | $23,611,111.11 | - | | $42,500,000.00 |

NY12527: 95794.11

Siemens ICN 01554

B1942

Execution Copy

| Lender | Address for Notices | Revolving Credit Commitment | Term Loan A Commitment | Term Loan B Commitment | Term Loan C Commitment | Total Commitment |
|---|---|---|---|---|---|---|
| Toronto Dominion (Texas), Inc. | 909 Fannin Street, 19th Floor Houston, TX 77010 | $18,888,888.89 | $23,611,111.11 | $2,250,000.00 | | $45,000,000.00 |
| IBM Credit Corporation | North Castle Drive Armonk, NY 10504 | $11,111,111.11 | $13,888,888.89 | --- | | $25,000,000.00 |
| Merrill Lynch Senior Floating Rate Fund, Inc. | 800 Scudders Mill Road Plainsboro, NJ 08536 | --- | --- | $16,500,000.00 | | $16,500,000.00 |
| Van Kampen Prime Rate Income Trust | One Parkview Plaza, 5th Floor Oakbrook Terrace, IL 60181 | --- | --- | $12,500,000.00 | | $12,500,000.00 |
| Van Kampen Senior Income Trust | One Parkview Plaza, 5th Floor Oakbrook Terrace, IL 60181 | --- | --- | $12,500,000.00 | | $12,500,000.0 |

Siemens ICN 01555

-93-

NY1252719579411

B1943

# INVOICE

**Lucent Technologies, INC.**
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

**Ship To:**
WINSTAR
401 PECADER DR
SUITE D
PROJECT E40412TE

NEWARK          DE 19702

**Bill To:**
WINSTAR WIRELESS
ATTN: SOPHIA REHALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON          VA 20171

| Invoice Number | ER102926 |
|---|---|
| Invoice Date | 03/21/01 |
| Account Number | 100109636 |
| Page Number | 1 |

| Customer P.O. # | LUC Reference # | Customer Code | Terms | PAYMENT DUE Contract # | 04/20/01 | FOB | AUDIT # AVH |
|---|---|---|---|---|---|---|---|
| WVF1-000005249 | | NMW702 (Y7) | NET 30 DAYS | | | | |

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 00001 | E40412TE | 03/20/01 | | | 1-1 ODU DS3 BAND 4, 29Q49 | | 188 | $3,225.00 | E | $606,300.00 |
| 00002 | E40412TE | 03/20/01 | | | 2-1 ODU DS3 BAND 2, 29Q46 | | 188 | $3,225.00 | E | $606,300.00 |
| 00003 | E40412TE | 03/20/01 | | | 3-1 ODU DS3 BAND 3, 29Q48 | | 462 | $3,225.00 | E | $1,489,950.00 |
| 00004 | E40412TE | 03/20/01 | | | 4-1 ODU DS3 BAND 1, 29Q44 | | 462 | $3,225.00 | E | $1,489,950.00 |
| 00005 | E40412TE | 03/20/01 | | | 5-1 ANTENNA 2FT ANDREW | | 401 | $526.75 | E | $211,226.75 |
| 00006 | E40412TE | 03/20/01 | | | 6-1 ANTENNA 1FT ANDREW | | 896 | $295.63 | E | $264,884.48 |
| 00007 | E40412TE | 03/20/01 | | | 7-1 P-COM DS3 IDU SHWP 29Q03 | | 1,300 | $4,688.61 | E | $6,095,193.00 |

CONTINUED ON NEXT PAGE

| | |
|---|---|
| Sub Total | $ 10,763,804.23 |
| Less Advance Payment | |
| Transportation | $       .00 |
| Tax | $       .00 |
| Total Due | $ 10,763,804.23 |

Questions About
Your Account?
Call

DIANE SHULTZ
(404) 573-5723

PAYMENTS SHOULD BE MAILED
TO ARRIVE BY THE DUE DATE.

INVOICES ARE PAYABLE IN U.S. CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONABLE RATE OR AS
SUBJECT TO LATE PAYMENT CHARGES PER
AGREEMENT REMARKS:

**ORIGINAL**

---

RETURN THIS PORTION WITH PAYMENT

**Remit To:**
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: SOPHIA REHALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON          VA 20171

| Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|
| ER102926 | N/A | $ 10,763,804.23 |

| Amount This Bill | Discount Amount | Amount Enclosed |
|---|---|---|
| $ 10,763,804.23 | N/A | N/A |

| Account Number | Amount Past Due |
|---|---|
| 100109636 | N/A |

CONFIDENTIAL

LW 00300269



DEFENDANTS
EXHIBIT
1247

B1944



# INVOICE

Lucent Technologies

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

**Ship To:**
WINSTAR
401 PECADER DR
SUITE P
PROJECT E40412TE

NEWARK    DE 19702

**Bill To:**
WINSTAR WIRELESS
ATTN: SOPHIA REINALDS
2545 MORSE PEN ROAD
C-1A83 1ST FLOOR

HERNDON    VA 20171

| | |
|---|---|
| Invoice Number | ER102926 |
| Invoice Date | 03/21/01 |
| Account Number | 100109636 |
| Page Number | 2 |

PAYMENT DUE    04/20/01

| Customer P.O. # | LUC Reference # | Customer Code | Terms | FOB |
|---|---|---|---|---|
| WWF1-000000S249 | | NWY02 (Y7) | NET 30 DAYS | |

AUDIT #
WJH

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Contract # | Unit Price | PW | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | DIANE SHULTZ INVOICE FOR ALL MATERIAL SHIPPED AS OF 3-20-01 | | | | | | |
| | | | | | ****** LAST PAGE ****** | 404573527S | | | | | |

| | |
|---|---|
| Sub Total | $ 10,763,804.23 |
| Less Advance Payments | |
| Transportation | $ .00 |
| Tax | $ .00 |
| Total Due | $ 10,763,804.23 |

**MAKE CHECK PAYABLE TO:**

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

INVOICES ARE PAYABLE
IN U.S. CURRENCY AND
OVERDUE AMOUNT
SHALL BEAR INTEREST AT
A REASONABLE RATE OR
IS SUBJECT TO LATE
PAYMENT CHARGES PER
AGREEMENT REMARKS:

Questions About Your
Account    Call

DIANE SHULTZ
(404) 573-5273

**REMARKS:**

PAYMENTS SHOULD BE MAILED
TO ARRIVE BY THE DUE DATE.

ORIGINAL

CONFIDENTIAL

LW 00300270

B1945

**INVOICE**

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

**Ship To:**
WINSTAR
401 PENCADER DR
SUITE P
PROJECT E40412TE
NEWARK          DE 19702

**Bill To:**
WINSTAR WIRELESS
ATTN: SOPHIA REMALUS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON          VA 20171

| | |
|---|---|
| Invoice Number | ER102977 |
| Invoice Date | 03/22/01 |
| Account Number | 100109636 |
| Page Number | 1 |

| Customer P.O. # | LUC Reference # | Customer Code | Terms | PAYMENT DUE Contract # | FOB AUDIT # AVJH |
|---|---|---|---|---|---|
| WF1-000005249 | | NWY702 (Y7) | NET 30 DAYS | 04/21/01 | |

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 00001 | E40412TE | 03/21/01 | | | 1-1 ODU DS3 BAND 5, 29049 | | 62 | $3,225.00 | E | $199,950.00 |
| 00002 | E40412TE | 03/21/01 | | | 2-1 ODU DS3 BAND 2, 29046. | | 62 | $3,225.00 | E | $199,950.00 |
| 00003 | E40412TE | 03/21/01 | | | 3-1 ODU DS3 BAND 3, 29048 | | 188 | $3,225.00 | E | $606,300.00 |
| 00004 | E40412TE | 03/21/01 | | | 4-1 ODU DS3 BAND 1, 29044 | | 188 | $3,225.00 | E | $606,300.00 |
| 00005 | E40412TE | 03/21/01 | | | 7-1 PCOM DS3 IDU SHMP, 29503 | | 500 | $4,688.61 | E | $2,344,305.00 |

DIANE SHULTZ
INVOICED EQUIPMENT SHIPPED UP TO 3-21-01          4045731273

****** LAST PAGE ******

| | |
|---|---|
| Sub Total | $ 3,956,805.00 |
| Less Advance Payment | |
| Transportation | $ .00 |
| Tax | $ .00 |
| Total Due | $ 3,956,805.00 |

Questions About Your Account? Call
DIANE SHULTZ
(404) 573-5673

PAYMENTS SHOULD BE MAILED
TO ARRIVE BY THE DUE DATE.

PRICES ARE PAYABLE IN U.S. CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONALBE RATE OR IS
SUBJECT TO LATE PAYMENT CHARGES PER
AGREEMENT REMARKS

**ORIGINAL**

------ RETURN THIS PORTION WITH PAYMENT ------

Remit To:
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: SOPHIA REMALUS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON          VA 20171

| Account Number | Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|---|
| 100109636 | ER102977 | | $ 3,956,805.00 |
| Amount Past Due | Amount of this Bill | Discount Amount | Amount Enclosed |
| N/A | N/A | N/A | |
| $ 3,956,805.00 | $ 3,956,805.00 | | |

CONFIDENTIAL          LW 00300271

B1946



CONFIDENTIAL

LW 00300273

B1947



# INVOICE

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

**Ship To:**
WINSTAR
PROJECT E40807TE
401 PENCADER DR
SUITE P

NEWARK          DE 19702

**Bill To:**
WINSTAR WIRELESS
ATTN: SOPHIA REHALOS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON          VA 20171

| Invoice Number | ER103301 |
|---|---|
| Invoice Date | 03/27/01 |
| Account Number | 100109636 |
| Page Number | 2 |

PAYMENT DUE          04/26/01

| Customer P.O. # | LUC Reference # | Customer Code | Terms | Contract # | FOB |
|---|---|---|---|---|---|
| WWF2-0000000059 | | WWY702 (Y7) | NET 30 DAYS | | |

| Item No. | Leased Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | DIANE SHULTZ | | | | | |
| | | | | | BILLED ALL EQUIPMENT SHIPPED AS OF 3-26-01 | 4045759273 | | | | |
| | | | | | ***** LAST PAGE ***** | | | | | |

|  |  |
|---|---|
| Sub Total | $ 3,426,223.20 |
| Less Advance Payments | .00 |
| Transportation | $ |
| Tax | $ .00 |
| Total Due | $ 3,426,223.20 |

**MAKE CHECK PAYABLE TO:**
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

INVOICES ARE PAYABLE
IN U.S. CURRENCY AND
OVERDUE AMOUNT
SHALL BEAR INTEREST AT
A REASONABLE RATE OR
IS SUBJECT TO LATE
PAYMENT CHARGES PER
AGREEMENT REMARKS)

**ORIGINAL**

Questions About Your
Account? Call
DIANE SHULTZ
(404) 573-5273

**REMARKS:**

PAYMENTS SHOULD BE MAILED
TO ARRIVE BY THE DUE DATE.

CONFIDENTIAL

LW 00300274

B1948

**Lucent Technologies**

# INVOICE

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

| | |
|---|---|
| **Invoice Number** | ER102810 |
| **Invoice Date** | 03/16/01 |
| **Account Number** | 100109636 |
| **Page Number** | 1 |

**Ship To:**
WINSTAR
401 PENCADER DR
SUITE P
PROJECT E30984TE WVF1-0000000206
NEWARK            DE 19702

**Bill To:**
WINSTAR WIRELESS
ATTN: SOPHIA REWALDS
2545 MORSE PEN ROAD
C-1403 1ST FLOOR
HERNDON          VA 20171

| Customer P.O. # | LUC Reference # | | |
|---|---|---|---|
| WVF1-0000000206 | | | |

| Customer Code | Terms |
|---|---|
| WNY702 (Y2) | NET 30 DAYS |

PAYMENT DUE  04/16/01

| Contract # | | | FOB |
|---|---|---|---|

AUDIT #
/NJH

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 00001 | E30984TE | 03/12/01 | | | 3-1 ODU 38GHZ BAND 2TX LOW | | 329 | $4,171.00 | E | $1,372,259.00 |
| 00002 | E30984TE | 03/12/01 | | | 4-1 ODU 38GHZ BAND 2TX HIGH | | 329 | $4,171.00 | E | $1,372,259.00 |
| | | | | | DIANE SHULTZ | | | | | |
| | | | | | REFLECTS SHIPMENTS FROM 9-30-00 TO 03-15-01 | | | | | |
| | | | | | 4045733273 | | | | | |
| | | | | | ****** LAST PAGE ****** | | | | | |

| | |
|---|---|
| **Sub Total** | $ 2,744,518.00 |
| **Less Advance Payment** | |
| **Transportation** | $ .00 |
| **Tax** | $ .00 |
| **Total Due** | $ 2,744,518.00 |

Questions About
Your Account?
Call

DIANE SHULTZ
(404) 573-3820

PAYMENTS SHOULD BE MAILED
TO ARRIVE BY THE DUE DATE.

INVOICES ARE PAYABLE IN U.S. CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONALBE RATE OR IS
SUBJECT TO LATE PAYMENT CHARGES PER
AGREEMENT REMARKS.

**ORIGINAL**

---

—— RETURN THIS PORTION WITH PAYMENT ——

Remit To:
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: SOPHIA REWALDS
2545 MORSE PEN ROAD
C-1403 1ST FLOOR
HERNDON          VA 20171

| Current Balance | Total Due This Bill |
|---|---|
| N/A | $ 2,744,518.00 |

| Account Number | Invoice Number | Amount Paid This Bill |
|---|---|---|
| 100109636 | ER102810 | $ 2,744,518.00 |

| Amount Paid This Bill | Discount Amount | Amount Enclosed |
|---|---|---|
| N/A | N/A | N/A |

CONFIDENTIAL

LW 00300278

B1949



# INVOICE

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

| Invoice Number | WR103565 |
| Invoice Date | 04/02/01 |
| Account Number | 100109636 |
| Page Number | 1 |

**Ship To:**
WINSTAR WIRELESS
ATTN: SOPHIA RENALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HUBS AND B'S WHE000005825
HERNDON         VA 20171

**Bill To:**
WINSTAR WIRELESS
ATTN: SOPHIA RENALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON         VA 20171

| Customer P.O. # | LUC Reference # |  | Customer Code | Terms |
|---|---|---|---|---|
| WHE000005825 |  |  | NWY202 (Y2) | NET 30 DAYS |

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 00001 | K6985VT | 03/26/01 |  |  | 16-1 EQUIPMENT ENG AND RECORDS |  |  |  |  | $5,334.00 |
| 00002 | K7813HT | 03/26/01 |  |  | 16-1 EQUIPMENT ENG AND RECORDS |  |  |  |  | $1,524.00 |
| 00003 | K7914HT | 03/26/01 |  |  | 16-1 EQUIPMENT ENG AND RECORDS |  |  |  |  | $3,048.00 |
| 00004 | H5283HT | 03/26/01 |  |  | 16-1 EQUIPMENT ENG AND RECORDS |  |  |  |  | $6,858.00 |
| 00005 | H6648NE | 03/26/01 |  |  | 16-1 EQUIPMENT ENG AND RECORDS |  |  |  |  | $4,572.00 |
| 00006 | H6763JT | 03/26/01 |  |  | 16-1 EQUIPMENT ENG AND RECORDS |  |  |  |  | $9,144.00 |
| 00007 | N9884HT | 03/26/01 |  |  | 16-1 EQUIPMENT ENG AND RECORDS |  |  |  |  | $2,286.00 |
|  |  |  |  |  | CONTINUED ON NEXT PAGE |  |  |  |  |  |

| PAYMENT DUE | 05/02/01 | FOB |
|---|---|---|
| Contract # |  |  |

AUDIT #
/VJH

| | Sub Total | $ | 32,766.00 |
|---|---|---|---|
| | Less Advance Payment | | |
| | Transportation | $ | 5,884.98 |
| | Tax | $ | .00 |
| | **Total Due** | $ | 1,371,598.98 |

Questions About
Your Account?
Call              DIANE SHULTZ
                  (404) 573-8923

ORIGINAL

PRICES ARE PAYABLE IN U.S. CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONALBE RATE OR IS
SUBJECT TO LATE PAYMENT CHARGES PER
AGREEMENT REMAINS.

---

**RETURN THIS PORTION WITH PAYMENT**

**Remit To:**
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: SOPHIA RENALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON         VA 20171

| Account Number | Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|---|
| 100109636 | WR103565 | N/A | $ 1,371,598.98 |

| Amount Past Due | Amount this Bill | Discount Amount | Amount Enclosed |
|---|---|---|---|
| N/A | $ 1,371,598.98 | N/A | N/A |

B1950

# INVOICE

**Lucent Technologies, Inc.**
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

**Ship To:**
WINSTAR WIRELESS
ATTN: SOPHIA REWALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HUBS AND B'S WHE00000S825
HERNDON        VA 20171

**Bill To:**
WINSTAR WIRELESS
ATTN: SOPHIA REWALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON        VA 20171

| | |
|---|---|
| Invoice Number | WR103565 |
| Invoice Date | 04/02/01 |
| Account Number | 100109636 |
| Page Number | 2 |

PAYMENT DUE  05/02/01

| Customer Code | LUC Reference # | Terms | Contract # | FOB | AUDIT # AVJH |
|---|---|---|---|---|---|
| WNY702 (Y7) | | NET 30 DAYS | | | |

**Customer P.O. #:** WHE00005825

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 00008 | D14659NE | 03/26/01 | | | 14-1 MISC MATERIAL | | 1 | $30,999.00 | E | $30,999.00 |
| 00009 | D59200MA | 03/26/01 | | | 14-1 MISC MATERIAL | | 1 | $30,999.00 | E | $30,999.00 |
| 00010 | D61272MA | 03/26/01 | | | 14-1 MISC MATERIAL | | 1 | $30,999.00 | E | $30,999.00 |
| 00011 | D61286HA | 03/26/01 | | | 14-1 MISC MATERIAL | | 1 | $30,999.00 | E | $30,999.00 |
| 00012 | D61287HA | 03/26/01 | | | 14-1 MISC MATERIAL | | 1 | $30,999.00 | E | $30,999.00 |
| 00013 | D61289HA | 03/26/01 | | | MISC MATERIAL | | 1 | $30,999.00 | E | $30,999.00 |
| 00014 | D61290HA | 03/26/01 | | | MISC MATERIAL | | 1 | $30,999.00 | E | $30,999.00 |
| 00015 | D61291HA | 03/26/01 | | | 14-1 MISC MATERIAL | | 1 | $30,999.00 | E | $30,999.00 |
| 00016 | D61292HA | 03/26/01 | | | 14-1 MISC MATERIAL | | 1 | $30,990.00 | E | $30,990.00 |
| 00017 | D61293HA | 03/26/01 | | | 14-1 MISC MATERIAL | | 1 | $30,999.00 | E | $30,999.00 |
| 00018 | D61294MA | 03/26/01 | | | MISC MATERIAL | | 1 | $30,999.00 | E | $30,999.00 |
| 00019 | D61578VA | 03/26/01 | | | 14-1 MISC MATERIAL | | 1 | $30,999.00 | E | $30,999.00 |

CONTINUED ON NEXT PAGE

| | |
|---|---|
| Sub Total | $  404,745.00 |
| Less Advance Payments | |
| Transportation | $    5,884.98 |
| Tax | $        .00 |
| Total Due | $  1,371,598.98 |

**MAKE CHECK PAYABLE TO:**

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

INVOICES ARE PAYABLE
IN U.S. CURRENCY AND
OVERDUE AMOUNT
SHALL BEAR INTEREST AT
A REASONABLE RATE OR
IS SUBJECT TO LATE
PAYMENT CHARGES PER
AGREEMENT REMARKS.

**ORIGINAL**

Questions About Your
Account?  Call

DIANE SHULTZ
(404) 573-8273

**REMARKS:**

CONFIDENTIAL

LW 00300282

B1951



## INVOICE

**Lucent Technologies, INC.**
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

**Ship To:**
WINSTAR WIRELESS
ATTN: SOPHIA RENALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HUBS AND B'S WHEOOOOO05825
HERNDON          VA 20171

**Bill To:**
WINSTAR WIRELESS
ATTN: SOPHIA RENALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON          VA 20171

| Invoice Number | WR103565 |
|---|---|
| Invoice Date | 04/02/01 |
| Account Number | 100109636 |
| Page Number | 3 |

PAYMENT DUE    05/02/01

**Customer Code:** WNY702 (V7)
**Terms:** NET 30 DAYS

**Customer P.O. #:** WHEOOOOO05825

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | FM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 00020 | D61579VA | 03/26/01 | | | 14-1 MISC MATERIAL | | 1 | $30,999.00 | E | $30,999.00 |
| 00021 | D61580VA | 03/26/01 | | | 14-1 MISC MATERIAL | | 1 | $30,999.00 | E | $30,999.00 |
| 00022 | D61581VA | 03/26/01 | | | 14-1 MISC MATERIAL | | 1 | $30,999.00 | E | $30,999.00 |
| 00023 | D61582VA | 03/26/01 | | | 14-1 MISC MATERIAL | | 1 | $30,999.00 | E | $30,999.00 |
| 00024 | D61956VA | 03/26/01 | | | 14-1 MISC MATERIAL | | 1 | $30,999.00 | E | $30,999.00 |
| 00025 | D61960VA | 03/26/01 | | | 14-1 MISC MATERIAL | | 1 | $30,999.00 | E | $30,999.00 |
| 00026 | D62220MA | 03/26/01 | | | 14-1 MISC MATERIAL | | 1 | $30,999.00 | E | $30,999.00 |
| 00027 | D62220MA | 03/26/01 | | | TRANSPORTATION | | | | | $994.83 |
| 00028 | D62221MA | 03/26/01 | | | 14-1 MISC MATERIAL | | 1 | $30,999.00 | E | $30,999.00 |
| 00029 | D62221MA | 03/26/01 | | | TRANSPORTATION | | | | | $994.83 |
| 00030 | D62222MA | 03/26/01 | | | 14-1 MISC MATERIAL | | 1 | $30,999.00 | E | $30,999.00 |
| 00031 | D62222MA | 03/26/01 | | | TRANSPORTATION | | | | | $994.83 |

CONTINUED ON NEXT PAGE

**MAKE CHECK PAYABLE TO:**

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

**Questions About Your Account? Call**
DIANE SHULTZ
(404) 573-8273

**REMARKS:**

INVOICES ARE PAYABLE
IN U.S. CURRENCY AND
OVERDUE AMOUNT
SHALL BEAR INTEREST AT
A REASONABLE RATE OR
IS SUBJECT TO LATE
PAYMENT CHARGES PER
AGREEMENT REMARKS:

| | |
|---|---|
| Sub Total | $ 683,736.00 |
| Less Advance Payments | |
| Transportation | $ 5,884.98 |
| Tax | $ .00 |
| Total Due | $ 1,371,598.98 |

**ORIGINAL**

CONFIDENTIAL

LW 00300283

B1952

Lucent Technologies
Bell Labs Innovations

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN:  ACCOUNTS RECEIVABLE

# INVOICE

| | |
|---|---|
| **Invoice Number** | WR103565 |
| **Invoice Date** | 04/02/01 |
| **Account Number** | 10010636 |
| **Page Number** | 4 |
| PAYMENT DUE | 05/02/01 |

**Ship To:**

WINSTAR WIRELESS
ATTN: SOPHIA REYNOLDS
2546 HORSE PEN ROAD
C-1483 1ST FLOOR
HUBS AND B'S WNE000000S825
HERNDON                VA 20171

**Bill To:**

WINSTAR WIRELESS
ATTN: SOPHIA REYNOLDS
2546 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON                VA 20171

| Customer P.O. # | | LUC Reference # | Customer Code | Terms | Contract # | FOB |
|---|---|---|---|---|---|---|
| WNE000000S825 | | | HNY702 (Y7) | NET 30 DAYS | | |

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price AUDIT #<br>AVH |
|---|---|---|---|---|---|---|---|---|---|---|
| 00032 | D62224HA | 03/26/01 | | | 14-1 MISC MATERIAL | | 1 | $30,999.00 | E | $30,999.00 |
| 00033 | D62224HA | 03/26/01 | | | TRANSPORTATION | | | | | $994.83 |
| 00034 | E14560NE | 03/26/01 | | | 14-1 MISC MATERIAL | | 1 | $30,999.00 | E | $30,999.00 |
| 00035 | E15028NE | 03/26/01 | | | 14-1 MISC MATERIAL | | 1 | $30,999.00 | E | $30,999.00 |
| 00036 | E15029NE | 03/26/01 | | | 14-1 MISC MATERIAL | | 1 | $30,999.00 | E | $30,999.00 |
| 00037 | E16608NE | 03/26/01 | | | 14-1 MISC MATERIAL | | 1 | $30,999.00 | E | $30,999.00 |
| 00038 | E16690NE | 03/26/01 | | | 14-1 MISC MATERIAL | | 1 | $30,999.00 | E | $30,999.00 |
| 00039 | E16693NE | 03/26/01 | | | 14-3 MISC MATERIAL | | 1 | $30,999.00 | E | $30,999.00 |
| 00040 | E16694NE | 03/26/01 | | | 14-1 MISC MATERIAL | | 1 | $30,999.00 | E | $30,999.00 |
| 00041 | E17112NE | 03/26/01 | | | 14-1 MISC MATERIAL | | 1 | $30,999.00 | E | $30,999.00 |
| 00042 | E17112NE | 03/26/01 | | | TRANSPORTATION | | | | | $952.83 |
| 00043 | E17113NE | 03/26/01 | | | 14-1 MISC MATERIAL | | 1 | $30,999.00 | E | $30,999.00 |

CONTINUED ON NEXT PAGE.

**Questions About Your Account?**  Call
DIANE SHULTZ
(404) 573-5273

**REMARKS:**

**MAKE CHECK PAYABLE TO:**

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN:  ACCOUNTS RECEIVABLE

INVOICES ARE PAYABLE
IN US CURRENCY AND
OVERDUE AMOUNT
SHALL BEAR INTEREST AT
A REASONABLE RATE OR
IS SUBJECT TO LATE
PAYMENT CHARGES PER
AGREEMENT REMARKS:

| | | |
|---|---|---|
| Sub Total | $ | 993,726.00 |
| Less Advance Payments | | |
| Transportation | $ | 5,884.98 |
| Tax | $ | .00 |
| Total Due | $ | 1,321,598.98 |

ORIGINAL

CONFIDENTIAL

LW  00300284

B1953

Lucent Technologies
Bell Labs Innovations

**INVOICE**

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

| | | |
|---|---|---|
| **Ship To:** | **Bill To:** | |
| WINSTAR WIRELESS | WINSTAR WIRELESS | **Invoice Number** WR103565 |
| ATTN: SOPHIA REMALDS | ATTN: SOPHIA REMALDS | **Invoice Date** 04/02/01 |
| 2545 HORSE PEN ROAD | 2545 HORSE PEN ROAD | |
| C-1483 1ST FLOOR | C-1483 1ST FLOOR | **Account Number** 100109636 |
| HUBS AND B'S WHED0000005825 | | **Page Number** 5 |
| HERNDON VA 20171 | HERNDON VA 20171 | |

PAYMENT DUE 05/02/01

| Customer P.O. # | | LUC Reference # | | Customer Code | Terms | Contract # | | FOB | AUDIT #
WJR |
|---|---|---|---|---|---|---|---|---|---|
| WHED0000005825 | | | | WHY702 (Y?) | NET 30 DAYS | | | | |

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | Pmt | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 00044 | E17113NE | 03/26/0 | | | TRANSPORTATION | | | | | $952.83 |
| 00045 | F21518JC | 03/26/0 | | | 14-1 MISC MATERIAL | | 1 | $30,999.00 | E | $30,999.00 |
| 00046 | F21519JC | 03/26/0 | | | 14-1 MISC MATERIAL | | 1 | $30,999.00 | E | $30,999.00 |
| 00047 | F21520JC | 03/26/0 | | | 14-1 MISC MATERIAL | | 1 | $30,999.00 | E | $30,999.00 |
| 00048 | F21521JC | 03/26/0 | | | 14-1 MISC MATERIAL | | 1 | $30,999.00 | E | $30,999.00 |
| 00049 | F21522JC | 03/26/0 | | | 14-1 MISC MATERIAL | | 1 | $30,999.00 | E | $30,999.00 |
| 00050 | F21523JC | 03/26/0 | | | 14-1 MISC MATERIAL | | 1 | $30,999.00 | E | $30,999.00 |
| 00051 | F21524JC | 03/26/0 | | | 14-1 MISC MATERIAL | | 1 | $30,999.00 | E | $30,999.00 |
| 00052 | F21525JC | 03/26/0 | | | 14-1 MISC MATERIAL | | 1 | $30,999.00 | E | $30,999.00 |
| 00053 | F21526JC | 03/26/0 | | | 14-1 MISC MATERIAL | | 1 | $30,999.00 | E | $30,999.00 |
| 00054 | F21528JC | 03/26/0 | | | 14-1 MISC MATERIAL | | 1 | $30,999.00 | E | $30,999.00 |
| 00055 | F21529JC | 03/26/0 | | | 14-1 MISC MATERIAL | | 1 | $30,999.00 | E | $30,999.00 |

CONTINUED ON NEXT PAGE

**MAKE CHECK PAYABLE TO:**

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

INVOICES ARE PAYABLE
IN U.S. CURRENCY AND
OVERDUE AMOUNT
SHALL BEAR INTEREST AT
A REASONABLE RATE OR
IS SUBJECT TO LATE
PAYMENT CHARGES PER
AGREEMENT REMARKS.

| | | |
|---|---|---|
| **Sub Total** | $ | 1,334,715.00 |
| **Less Advance Payments** | | |
| **Transportation** | $ | 5,884.98 |
| **Tax** | $ | .00 |
| **Total Due** | $ | 1,371,598.98 |

Questions About Your
Account? Call

DIANE SHULTZ
(404) 573-5273

**REMARKS:**

ORIGINAL

CONFIDENTIAL

LW 00300285

B1954



**INVOICE**

**Lucent Technologies**

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

**Ship To:**
WINSTAR WIRELESS
ATTN: SOPHIA REYNALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HUBS AND B'S WNE000005825
HERNDON         VA 20171

**Bill To:**
WINSTAR WIRELESS
ATTN: SOPHIA REYNALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON         VA 20171

| Invoice Number | HR103565 |
|---|---|
| Invoice Date | 04/02/01 |
| Account Number | 100109636 |
| Page Number | 6 |

PAYMENT DUE    05/02/01

| Customer P.O. # | LUC Reference # | Customer Code | Terms | Contract # | | FOB | AUDIT # WAH |
|---|---|---|---|---|---|---|---|
| WNE000005825 | | WNY702 (Y7) | NET 30 DAYS | | | | |

| Item No. | Local Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | PM | Unit Price | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 00056 | F215321C | 03/26/01 | | | 14-1 MISC MATERIAL | | 1 | E | $30,999.00 | $30,999.00 |
| | | | | | 406573527 | | | | | |
| | | | | | DIANE SHULTZ | | | | | |
| | | | | | BILLED TO MATCH FPDS. | | | | | |
| | | | | | CABINETS AND DSLAM FOR ALL ORDERS LISTED. | | | | | |
| | | | | | ENGINEERING FOR ALL ORDERS LISTED ON INVOICE. | | | | | |
| | | | | | ****** LAST PAGE ****** | | | | | |

| | | |
|---|---|---|
| Sub Total | $ | 1,365,714.00 |
| Less Advance Payments | | |
| Transportation | $ | 5,884.98 |
| Tax | $ | .00 |
| Total Due | $ | 1,371,598.98 |

**MAKE CHECK PAYABLE TO:**
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

INVOICES ARE PAYABLE
IN U.S. CURRENCY AND
OVERDUE AMOUNT
SHALL BEAR INTEREST AT
A REASONABLE RATE OR
IS SUBJECT TO LATE
PAYMENT CHARGES PER
AGREEMENT REMARKS:

**ORIGINAL**

Questions About Your
Account? Call
DIANE SHULTZ
(404) 573-5273

REMARKS:

CONFIDENTIAL

LW 00300286

B1955



# INVOICE

**LUCENT TECHNOLOGIES, INC.**
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

**Ship To:**
WINSTAR
COLUMBIA GPC
9516 GERWIG LN
SUITE 131

COLUMBIA    MD 21046

**Bill To:**
WINSTAR WIRELESS
ATTN: JULIAN HADDAD
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON    VA 20171

| Invoice Number | ERI00993 |
|---|---|
| Invoice Date | 01/29/01 |
| Account Number | 100109636 |
| Page Number | 1 |

| Customer P.O. # | | | | Customer Code | Terms | | | PAYMENT DUE Contract # | 02/28/01 | FOB | AUDIT # WJH |
|---|---|---|---|---|---|---|---|---|---|---|---|
| WHE000005925 | | | | HWY702 (Y7) | NET 30 DAYS | | | | | | |

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 00001 | E42C083TE | 01/25/01 | | | 1-1 NETWORK ENGINEERING SVC.CM | | | | | $1,044,240.00 |
| 00002 | E42C083TE | 01/25/01 | | | 1-1 NETWORK ENGINEERING SVC 1577 | | | | | $261,060.00 |
| | | | | | DIANE SHULTZ          4045734273 | | | | | |
| | | | | | NETWORK ENGINEERING SERVICES - CONSTRUCTION MANAGEMENT | | | | | |
| | | | | | REFERENCE 1-1 ON PO WHE000005925 | | | | | |
| | | | | | ****** LAST PAGE ****** | | | | | |

| | | |
|---|---|---|
| Sub Total | $ | 1,305,300.00 |
| Less Advance Payment | | |
| Transportation | $ | .00 |
| Tax | $ | .00 |
| Total Due | $ | 1,305,300.00 |

Questions About
Your Account?
Call

DIANE SHULTZ
(404) 573-6123

PAYMENTS SHOULD BE MAILED
TO ARRIVE BY THE DUE DATE.

INVOICES ARE PAYABLE IN U.S. CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONALBE RATE OR IS
SUBJECT TO LATE PAYMENT CHARGES PER
AGREEMENT REMARKS.

**ORIGINAL**

---

**RETURN THIS PORTION WITH PAYMENT**

**Remit To:**
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: JULIAN HADDAD
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON    VA 20171

| Current Balance | Total Due This Bill |
|---|---|
| N/A | $ 1,305,300.00 |

| Invoice Number | ERI00993 |
|---|---|
| Amount this Bill | $ 1,305,300.00 |

| Discount Amount | Amount Enclosed |
|---|---|
| N/A | N/A |

| Account Number | 100109636 |
|---|---|
| Amount Past Due | N/A |

CONFIDENTIAL

LW 00300287

B1956



# INVOICE

**Lucent Technologies, Inc.**
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

**Ship To:** WINSTAR WIRELESS
ATTN: SOPHIA RENALDS
2545 HORSE PEN ROAD
C-1403 1ST FLOOR
HERNDON            VA 20171

**Bill To:** WINSTAR WIRELESS
ATTN: SOPHIA RENALDS
2545 HORSE PEN ROAD
C-1403 1ST FLOOR
HERNDON            VA 20171

| Invoice Number | ER103548 |
|---|---|
| Invoice Date | 03/29/01 |
| Account Number | 10010636 |
| Page Number | 1 |

| Customer P.O. # | LUC Reference # | Customer Code | Terms | PAYMENT DUE | FOB |
|---|---|---|---|---|---|
| WVF2-000300174 | | WN702 (Y7) | NET 30 DAYS | 04/28/01 | |

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Contract # | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 00001 | E43921TE | 03/26/01 | | | 1-1 CVU R5 | | | 1 | $134,200.00 | E | $134,200.00 |
| 00002 | E43921TE | 03/26/01 | | | 2-1 CVU SE14 & FEATURES | | | 1 | $23,760.00 | E | $23,760.00 |
| 00003 | E43921TE | 03/26/01 | | | 3-1 CVU R7.0.2 | | | 1 | $22,296.27 | E | $22,296.27 |
| 00004 | E43921TE | 03/26/01 | | | 4-1 NFM R7 | | | 1 | $280,500.00 | E | $280,500.00 |
| 00005 | E43921TE | 03/26/01 | | | 5-1 NFM R10 | | | 1 | $30,855.00 | E | $30,855.00 |
| 00006 | E43921TE | 03/26/01 | | | 6-1 SNC/SNMS | | | 1 | $179,575.00 | E | $179,575.00 |
| | | | | | DIANE SHULTZ        4045735273 | | | | | | |
| | | | | | CONTINUED ON NEXT PAGE | | | | | | |

| | |
|---|---|
| Sub Total | $ 671,186.27 |
| Less Advance Payment | |
| Transportation | $ .00 |
| Tax | $ .00 |
| Total Due | $ 671,186.27 |

Questions About
Your Account?
Call    DIANE SHULTZ
        (404) 573-5273

PAYMENTS SHOULD BE MAILED
TO ARRIVE BY THE DUE DATE.

INVOICES ARE PAYABLE IN U.S. CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONALBE RATE OR 1 5
SUBJECT TO LATE PAYMENT CHARGES PER
AGREEMENT REMARKS

AUDIT
AVJH

**ORIGINAL**

--- RETURN THIS PORTION WITH PAYMENT ---

**Remit To:** LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: SOPHIA RENALDS
2545 HORSE PEN ROAD
C-1403 1ST FLOOR
HERNDON            VA 20171

| Account Number | Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|---|
| 10010636 | ER103548 | N/A | $ 671,186.27 |

| Amount Past Due | Amount This Bill | Discount Amount | Amount Enclosed |
|---|---|---|---|
| N/A | $ 671,186.27 | N/A | N/A |

CONFIDENTIAL

LW 00300289

B1957



# INVOICE

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

| | |
|---|---|
| Invoice Number | ER103548 |
| Invoice Date | 03/29/01 |
| Account Number | 100109636 |
| Page Number | 2 |
| PAYMENT DUE | 04/20/01 |

**Bill To:**
WINSTAR WIRELESS
ATTN: SOPHIA RENALDS
2545 HORSE PEN ROAD
C-1403 1ST FLOOR

HERNDON        VA 20171

**Ship To:**
WINSTAR WIRELESS
ATTN: SOPHIA RENALDS
2545 HORSE PEN ROAD
C-1403 1ST FLOOR

HERNDON        VA 20171

| Customer Code | Terms | FOB | AUDIT # |
|---|---|---|---|
| WNY702 (Y7) | NET 30 DAYS | | |

| Customer P.O. # | LUC Reference # | | | |
|---|---|---|---|---|
| WVF2-0000001747 | | | | |

| Item No. | L菊cal Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | FMt | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | QUARTERLY BILLING FOR 01-01 / 3-01 PER PATRICIA PERRY | | | | | |
| | | | | | ****** LAST PAGE ****** | | | | | |

Contract # _____

| | | |
|---|---|---|
| Sub Total | $ | 671,186.27 |
| Less Advance Payments | $ | .00 |
| Transportation | $ | .00 |
| Tax | $ | |
| Total Due | $ | 671,186.27 |

**MAKE CHECK PAYABLE TO:**

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

INVOICES ARE PAYABLE
IN U.S. CURRENCY AND
OVERDUE AMOUNT
SHALL BEAR INTEREST AT
A REASONABLE RATE OR
IS SUBJECT TO LATE
PAYMENT CHARGES PER
AGREEMENT REMARKS:

Questions About Your
Account?  Call
     DIANE SHULTZ
     (404) 573-5273

REMARKS:

PAYMENTS SHOULD BE MAILED
TO ARRIVE BY THE DUE DATE.

ORIGINAL

CONFIDENTIAL

LW 00300290

B1958



# INVOICE

**LUCENT TECHNOLOGIES, INC.**
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

**Ship To:**
WINSTAR
PHOENIX GPC
3750 W INDIAN SCHOOL RD
GENE J WOOD

PHOENIX          AZ 85019

**Bill To:**
WINSTAR WIRELESS
ATTN: JULIAN HADDAD
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON          VA 20171

| Invoice Number | ER103700 |
|---|---|
| Invoice Date | 03/30/01 |
| Account Number | 100109636 |
| Page Number | 1 |

| Customer P.O. # | LUC Reference # | | Customer Code | | Terms | PAYMENT DUE | | | 04/29/01 | FOB |
|---|---|---|---|---|---|---|---|---|---|---|
| WHEO00000S825 | | | Y7 | | NET 30 DAYS | Contract # | | | | |

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 00001 | E41966TE | 01/25/01 | | | 99 MADISON AVE | | | | | $20,500.00 |
| 00002 | E41966TE | 01/25/01 | | | 24 EAST 21ST ST | | | | | $14,623.00 |
| 00003 | E41966TE | 01/25/01 | | | 114E. 32ND ST | | | | | $25,627.00 |
| 00004 | E41966TE | 01/25/01 | | | 352 PARK AVE. S. | | | | | $15,172.00 |
| 00005 | E41966TE | 01/25/01 | | | 250 PARK AVE. S. | | | | | $8,860.00 |
| 00006 | E41966TE | 01/25/01 | | | 8918 TERSORO | | | | | $5,063.00 |
| 00007 | E41966TE | 01/25/01 | | | 8700 TESORO | | | | | $20,500.00 |

CONTINUED ON NEXT PAGE

| | | |
|---|---|---|
| Sub Total | $ | 110,345.00 |
| Less Advance Payment | | |
| Transportation | $ | .00 |
| Tax | $ | .00 |
| Total Due | $ | 628,485.00 |

Questions About
Your Account?
Call

DIANE SHULTZ
(404) 573-8805

PAYMENTS SHOULD BE MAILED
TO ARRIVE BY THE DUE DATE.

INVOICES ARE PAYABLE IN U.S. CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONALBE RATE OR IS
SUBJECT TO LATE PAYMENT CHARGES PER
AGREEMENT REMARKS.

# ORIGINAL

---

——————— RETURN THIS PORTION WITH PAYMENT ———————

Remit To:
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: JULIAN HADDAD
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON          VA 20171

| Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|
| ER103700 | N/A | $ 628,485.00 |
| Amount this Bill | Discount Amount | Amount Enclosed |
| $ 628,485.00 | N/A | N/A |

| Account Number | Amount Past Due | Amount Past Due |
|---|---|---|
| 100109636 | N/A | N/A |

LW  00300291

B1959



# INVOICE

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

| | |
|---|---|
| **Invoice Number** | ER103700 |
| **Invoice Date** | 03/30/01 |
| **Account Number** | 100109636 |
| **Page Number** | 2 |
| **PAYMENT DUE** | 04/29/01 |

**Ship To:**
WINSTAR
PHOENIX GPC
3750 N INDIAN SCHOOL RD
GENE J WOOD
PHOENIX          AZ 85019

**Bill To:**
WINSTAR WIRELESS
ATTN: JULIAN HADDAD
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON          VA 20171

| Customer P.O. # | | LUC Reference # | Customer Code | Terms | Contract # | | FOB |
|---|---|---|---|---|---|---|---|
| WHC00000005825 | | | Y7 | NET 30 DAYS | | | |

| Item No. | Local Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 00008 | E41966TE | 01/25/0 | | | 8826 TESORO | | | | | $20,500.00 |
| 00009 | E41966TE | 01/25/01 | | | 9800 LA CIENEGA | | | | | $6,075.00 |
| 00010 | E41966TE | 01/25/01 | | | 7425 MISSION VALLEY DR | | | | | $20,500.00 |
| 00011 | E41966TE | 01/25/01 | | | 591 CAMINO DE LA REINA | | | | | $20,500.00 |
| 00012 | E41966TE | 01/25/01 | | | 480 CAMINO DEL RIO | | | | | $20,500.00 |
| 00013 | E41966TE | 01/25/01 | | | 261 S. LAKE | | | | | $20,500.00 |
| 00014 | E41966TE | 01/25/01 | | | 11403-11417 | | | | | $20,500.00 |
| 00015 | E41966TE | 01/25/01 | | | 11437-11457 | | | | | $20,500.00 |
| 00016 | E41966TE | 01/25/01 | | | 11471-11495 | | | | | $20,500.00 |
| 00017 | E41966TE | 01/25/01 | | | 6600 CITY WEST PARKWAY | | | | | $20,500.00 |
| 00018 | E41966TE | 01/25/01 | | | 7905 GOLDEN TRIANGLE | | | | | $20,500.00 |
| 00019 | E41966TE | 01/25/01 | | | 7562-7578 MARKET PLACE DRIVE | | | | | $20,500.00 |

CONTINUED ON NEXT PAGE

**MAKE CHECK PAYABLE TO:**

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

INVOICES ARE PAYABLE
IN U.S. CURRENCY AND
OVERDUE AMOUNT
SHALL BEAR INTEREST AT
A REASONABLE RATE OR
IS SUBJECT TO LATE
PAYMENT CHARGES PER
AGREEMENT REMARKS:

| | | |
|---|---|---|
| Sub Total | $ | 341,920.00 |
| Less Advance Payments | | |
| Transportation | $ | .00 |
| Tax | $ | .00 |
| **Total Due** | **$** | **628,485.00** |

ORIGINAL

Questions About Your Account? Call
DIANE SHULTZ
(404) 573-5273

**REMARKS:**

PAYMENTS SHOULD BE MAILED
TO ARRIVE BY THE DUE DATE.

CONFIDENTIAL

LW 00300292

B1960

# INVOICE

**Lucent Technologies, Inc.**
P.O. BOX 10037
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

| | |
|---|---|
| Invoice Number | ER103700 |
| Invoice Date | 03/30/01 |
| Account Number | 10010636 |
| Page Number | 3 |
| PAYMENT DUE | 04/29/01 |

**Ship To:**
WINSTAR
PHOENIX GPC
3750 W INDIAN SCHOOL RD
GENE J WOOD
PHOENIX            AZ 85019

**Bill To:**
WINSTAR WIRELESS
ATTN: JULIAN HADDAD
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON            VA 20171

| Customer Code | Terms |
|---|---|
| Y7 | NET 30 DAYS |

| Item No. | Local/Order | Ship Date | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | Pmt | Total Price |
|---|---|---|---|---|---|---|---|---|---|
| | Customer P.O. # | | LUC Reference # | | | | Contract # | FOB | |
| | WME00000005825 | | | | | | | | |
| 00020 | E41966TE | 01/25/0 | | 7567-7583 MARKET PLACE DRIVE | | | | | $20,500.00 |
| 00021 | E41966TE | 01/25/0 | | 7901 FLYING CLOUD DR | | | | | $20,500.00 |
| 00022 | E41966TE | 01/25/0 | | 9625 WEST 76TH STREET | | | | | $20,500.00 |
| 00023 | E41966TE | 01/25/0 | | 9675 WEST 76TH STREET | | | | | $20,500.00 |
| 00024 | E41966TE | 01/25/0 | | 2031 W. ALAMEDA | | | | | $4,725.00 |
| 00025 | E41966TE | 01/25/0 | | 245 S LOS ROBLES | | | | | $32,813.00 |
| 00026 | E41966TE | 01/25/0 | | 299 EUCLID | | | | | $20,500.00 |
| 00027 | E41966TE | 01/25/0 | | 200 S. LOS ROBLES | | | | | $4,595.00 |
| 00028 | E41966TE | 01/25/0 | | 180 S. LAKE | | | | | $20,500.00 |
| 00029 | E41966TE | 01/25/0 | | 55 S. LAKE | | | | | $4,595.00 |
| 00030 | E41966TE | 01/25/0 | | 600 S. LAKE | | | | | $25,826.00 |
| 00031 | E41966TE | 01/25/0 | | 283 S. LAKE | | | | | $20,500.00 |

CONTINUED ON NEXT PAGE

| | |
|---|---|
| Sub Total | $ 557,974.00 |
| Less Advance Payments | |
| Transportation | $ .00 |
| Tax | $ .00 |
| Total Due | $ 628,485.00 |

**MAKE CHECK PAYABLE TO:**
LUCENT TECHNOLOGIES, INC.
P.O. BOX 10037
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

INVOICES ARE PAYABLE
IN U.S. CURRENCY AND
OVERDUE AMOUNT
SHALL BEAR INTEREST AT
A REASONALBE RATE OR
IS SUBJECT TO LATE
PAYMENT CHARGES PER
AGREEMENT REMARKS:

Questions About Your
Account? Call
DIANE SHULTZ
(404) 573-5273

REMARKS:
PAYMENTS SHOULD BE MAILED
TO ARRIVE BY THE DUE DATE.

ORIGINAL

CONFIDENTIAL

LW 00300293

B1961



LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

# INVOICE

**Ship To:**

WINSTAR
PHOENIX GPC
3750 W INDIAN SCHOOL RD
GENE J WOOD

PHOENIX          AZ 85019

**Bill To:**

WINSTAR WIRELESS
ATTN: JULIAN HADDAD
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON          VA 20171

| | Invoice Number | ER103700 |
|---|---|---|
| | Invoice Date | 03/30/01 |
| | Account Number | 100109636 |
| | Page Number | 4 |
| | PAYMENT DUE | 04/29/01 |

| Customer P.O. # | | | LUC Reference # | | Customer Code | Terms | Contract # | | | | FOB |
|---|---|---|---|---|---|---|---|---|---|---|---|
| WNEO0005825 | | | | | Y7 | NET 30 DAYS | | | | | |

| Item No. | Lucent/Order | Ship Date | Ship Method | Bill of Lading | Part Number/Description | Quantity Ordered | Quantity Shipped | User Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 00032 | E41966TE | 01/25/01 | | | 225 S. LAKE | | | | | $20,500.00 |
| 00033 | E41966TE | 01/25/01 | | | 201 S. LAKE | | | | | $20,500.00 |
| 00034 | E41966TE | 01/25/01 | | | 307 WEST 200 SOUTH | | | | | $2,936.00 |
| 00035 | E41966TE | 01/25/01 | | | 102 WEST 500 SOUTH | | | | | $20,500.00 |
| 00036 | E41966TE | 01/25/01 | | | 8450 SEPULVEDA | | | | | $6,075.00 |
| | | | | | DIANE SHULTZ | | | | | |
| | | | | | B-SITE CONTRUCTION REFERENCING LINE 16-1 ON WNEO0005825 | 404573273 | | | | |
| | | | | | ****** LAST PAGE ****** | | | | | |

| | | |
|---|---|---|
| Sub Total | $ | 628,485.00 |
| Less Advance Payments | | |
| Transportation | $ | .00 |
| Tax | $ | .00 |
| Total Due | $ | 628,485.00 |

**Questions About Your Account? Call**

**MAKE CHECK PAYABLE TO:**

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

INVOICES ARE PAYABLE
IN U.S. CURRENCY AND
OVERDUE AMOUNT
SHALL BEAR INTEREST AT
A REASONABLE RATE OR
IS SUBJECT TO LATE
PAYMENT CHARGES PER
AGREEMENT REMARKS'

**REMARKS:**

DIANE SHULTZ
(404) 573-5273

PAYMENTS SHOULD BE MAILED
TO ARRIVE BY THE DUE DATE.

ORIGINAL

CONFIDENTIAL

LW 00300294

B1962



## INVOICE

**Lucent Technologies**
Bell Labs Innovations

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

| | | |
|---|---|---|
| Invoice Number | NR101952 | |
| Invoice Date | 03/02/01 | |
| Account Number | 100109636 | |
| Page Number | 1 | |

**Ship To:**
WINSTAR
401 PENCADER DR
SUITE P

NEWARK    DE 19702

**Bill To:**
WINSTAR WIRELESS
ATTN: SOPHIA RENALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON    VA 20171

| Customer P.O. # | Lucent Order | Ship Date | LUC Reference # | Ship Method | Bill of Lading | Customer Code | Terms |
|---|---|---|---|---|---|---|---|
| WWF1-000000195 | E14498NE | 03/01/01 | | | | HWY702 (Y7) | NET 30 DAYS |

| Item No. | Part Number Description | Quantity Ordered | Quantity Shipped | PAYMENT DUE Contract # | Unit Price | PM | FOB | Total Price |
|---|---|---|---|---|---|---|---|---|
| 00001 | 12-1 RT IDU FDMA 1XOC3/3XSTS3 | 4045735273- | 160 | 04/01/01 | $3,399.69 | E | | $543,950.40 |
| | DIANE SHULTZ | | | | | | | |
| | ITEMS THAT HAVE SHIPPED SINCE LAST INVOICE | | | | | | | |
| | ****** LAST PAGE ****** | | | | | | | |

AUDIT #____

| | | |
|---|---|---|
| Sub Total | $ | 543,950.40 |
| Less Advance Payment | | |
| Transportation | $ | .00 |
| Tax | $ | .00 |
| Total Due | $ | 543,950.40 |

Questions About
Your Account?
Call

DIANE SHULTZ
(404) 573-3672

----- RETURN THIS PORTION WITH PAYMENT -----

**Remit To:**
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: SOPHIA RENALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON    VA 20171

| Account Number | Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|---|
| 100109636 | NR101952 | N/A | $ 543,950.40 |

| Amount Past Due | Amount This Bill | Discount Amount | Amount Enclosed |
|---|---|---|---|
| N/A | $ 543,950.40 | N/A | N/A |

THANK YOU FOR LETTING US SERVE YOU
AS WE STRIVE FOR BILLING ACCURACY!
YOUR TIMELY PAYMENT IS APPRECIATED

INVOICES ARE PAYABLE IN U.S. CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONABLE RATE OR IS
SUBJECT TO LATE PAYMENT CHARGES PER
AGREEMENT REMARKS.

**ORIGINAL**



# INVOICE

**Lucent Technologies, INC.**
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

**Ship To:**
WINSTAR
401 PENCADER DR SUITE P
PROJECT E3696ITE

NEWARK          DE 19702

**Bill To:**
WINSTAR WIRELESS
ATTN: SOPHIA REWALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON          VA 20171

| Invoice Number | ER102918 |
|---|---|
| Invoice Date | 03/20/01 |
| Account Number | 100109636 |
| Page Number | 1 |

| Customer P.O. # | LUC Reference # | Customer Code | Terms | | | | Contract # | FOB | |
|---|---|---|---|---|---|---|---|---|---|
| WVF1-000000392 | | HWY702 (Y2) | NET 30 DAYS | | | | | | |

| Item No. | Lucent Order | Ship Date | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|
| 00001 | E3696ITE | 03/19/01 | | 1-1 ODU OC3 38GHZ BAND 3A | | 11 | $10,020.08 | E | $110,220.88 |
| 00002 | E3696ITE | 03/19/01 | | 2-1 ODU OC3 38GHZ BAND 3B | | 11 | $10,020.08 | E | $110,220.88 |
| 00003 | E3696ITE | 03/19/01 | | 5-1 DS3 IDU NARROWBAND W/ TWO CHANN | | 22 | $6,628.45 | E | $145,825.90 |
| 00004 | E3696ITE | 03/19/01 | | 6-1 ANTENNA OC3 38GHZ 1FT | | 20 | $452.58 | E | $9,051.60 |
| 00005 | E3696ITE | 03/19/01 | | 7-1 ANTENNA OC3 38GHZ 2FT | | 1 | $806.25 | E | $806.25 |
| | | | | DIANE SHULTZ | | | | | |
| | | | | INVOICED ALL EQUIPMENT BILLED AS OF 3-19-01 | 4045733273 | | | | |
| | | | | ****** LAST PAGE ****** | | | | | |

| | | |
|---|---|---|
| | Sub Total | $          376,125.51 |
| | Less Advance Payment | |
| | Transportation | $                        .00 |
| | Tax | $                        .00 |
| | Total Due | $          376,125.51 |

Questions About
Your Account?
Call
DIANE SHULTZ
(404) 573-5823

PAYMENTS SHOULD BE MAILED
TO ARRIVE BY THE DUE DATE.

INVOICES ARE PAYABLE IN U.S. CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONABLE RATE OR IS
SUBJECT TO LATE PAYMENT CHARGES PER
AGREEMENT REMARKS:

**ORIGINAL**

---

**----- RETURN THIS PORTION WITH PAYMENT -----**

**Remit To:**
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: SOPHIA REWALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON          VA 20171

| Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|
| ER102918 | N/A | $          376,125.51 |

| Amount This Bill | Discount Amount | Amount Enclosed |
|---|---|---|
| $          376,125.51 | N/A | N/A |

| Account Number | | |
|---|---|---|
| 100109636 | | |

| Amount Past Due | | |
|---|---|---|
| N/A | | |

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

## INVOICE

**Ship To:**
WINSTAR WIRELESS
ATTN: SOPHIA REHALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON      VA 20171

**Bill To:**
WINSTAR WIRELESS
ATTN: SOPHIA REHALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON      VA 20171

| Invoice Number | ER102442 |
| Invoice Date | 03/02/01 |
| Account Number | 100109636 |
| Page Number | 1 |

| Customer P.O. # | Lucent Order | Ship Date | Ship Method | Bill of Lading | LUC Reference # | Customer Code | Terms |
|---|---|---|---|---|---|---|---|
| HHE000005625 | E419661E | 02/27/01 | | | | WNY702 (Y2) | NET 30 DAYS |

| Item No. | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | Total Price |
|---|---|---|---|---|---|
| 00001 | 16-1 INSTALLATION ACTIVITIES | 404573%273 | | | $302,060.00 |
| | DIANE SHULTZ | | | | |
| | BILLED SPEC 37,38,40 ON ORDER PER BEVERLY SOWELL | | | | |
| | ****** LAST PAGE ****** | | | | |

PAYMENT DUE    04/01/01

Contract #

FOB

AUDIT #
AVAH

| | | |
|---|---|---|
| Sub Total | $ | 302,060.00 |
| Less Advance Payment | | |
| Transportation | $ | .00 |
| Tax | $ | .00 |
| Total Due | $ | 302,060.00 |

Questions About
Your Account?
Call

DIANE SHULTZ
(404) 573-5273

INVOICES ARE PAYABLE IN U.S. CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONABLE RATE OR IS
SUBJECT TO LATE PAYMENT CHARGES PER
AGREEMENT REMARKS

PAYMENTS SHOULD BE MAILED
TO ARRIVE BY THE DUE DATE.

**ORIGINAL**

---

------RETURN THIS PORTION WITH PAYMENT------

**Remit To:**
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: SOPHIA REHALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON      VA 20171

| Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|
| ER102442 | N/A | $ 302,060.00 |

| Account Number | Amount This Bill | Discount Amount | Amount Enclosed |
|---|---|---|---|
| 100109636 | $ 302,060.00 | N/A | |

| Amount Past Due |
|---|
| N/A |

CONFIDENTIAL

LW 00300303

B1965



**Lucent Technologies**

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN:  ACCOUNTS RECEIVABLE

## INVOICE

**ORIGINAL**

| | |
|---|---|
| Invoice Number | NR101492 |
| Invoice Date | 02/20/01 |
| Account Number | 100109636 |
| Page Number | 1 |

AUDIT #
AVJH

**Ship To:**
WINSTAR
PROJECT H8273NT
60 HUDSON STREET

NEW YORK    NY 10013

**Bill To:**
WINSTAR WIRELESS
ATTN: SOPHIA RENALDS
2545 HORSE PEN ROAD
C-1403 1ST FLOOR

HERNDON    VA 20171

| Customer P.O. # | LUC Reference # | | Customer Code | Terms | | PAYMENT DUE | FOB |
|---|---|---|---|---|---|---|---|
| WVF1-0000005143 | | | MKY702 (Y7) | NET 30 DAYS | | Contract # | 03/22/01 |

| Item No. | Latent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 00001 | H8273NT | 01/15/01 | | | 4-1 WAVESTAR MATERIAL 60 HUDSON | | 1 | $238,363.00 | E | $238,363.00 |
| 00002 | H8273NT | 01/15/01 | | | 5-1 ENGINEERING | | | | | $4,684.00 |
| 00003 | H8273NT | 01/15/01 | | | INSTALLATION | | | | | $48,405.00 |
| 00004 | H8273NT | 01/15/01 | | | TRANSPORTATION | | | | | $875.52 |
| | | | | | DIANE SHULTZ | | | | | |
| | | | | | BILLED PER PURCHASE ORDER | 4045731273 | | | | |
| | | | | | ****** LAST PAGE ****** | | | | | |

| | | |
|---|---|---|
| Sub Total | $ | 291,452.00 |
| Less Advance Payment | | |
| Transportation | $ | 875.52 |
| Tax | $ | .00 |
| Total Due | $ | 292,327.52 |

Questions About
Your Account?
Call            DIANE SHULTZ
                (404) 573-3612

THANK YOU FOR LETTING US SERVE YOU
AS WE STRIVE FOR BILLING ACCURACY!
YOUR TIMELY PAYMENT IS APPRECIATED.

INVOICES ARE PAYABLE IN U.S. CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONABLE RATE OR IS
SUBJECT TO LATE PAYMENT CHARGES PER
AGREEMENT REMARKS:

----------- RETURN THIS PORTION WITH PAYMENT -----------

**Remit To:**
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN:  ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: SOPHIA RENALDS
2545 HORSE PEN ROAD
C-1403 1ST FLOOR

HERNDON    VA 20171

| Account Number | Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|---|
| 100109636 | NR101492 | N/A | $ 292,327.52 |
| Amount Past Due | Amount This Bill | Discount Amount | Amount Enclosed |
| N/A | $ 292,327.52 | N/A | |

CONFIDENTIAL

LW 00300304

B1966



**INVOICE**

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

| Invoice Number | ER102907 |
|---|---|
| Invoice Date | 03/20/01 |
| Account Number | 100109636 |
| Page Number | 1 |

**Ship To:**
WINSTAR TELECOMMUNICATIONS
401 PENCADER DR.
SUITE P

NEWARK     DE 19702

**Bill To:**
WINSTAR WIRELESS
ATTN: SOPHIA REWALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON     VA 20171

| Customer P.O. # | LUC Reference # | | | Customer Code | | Terms | | | | | FOB | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| WVF1-0000000217 | DE 19702 | | | HWY702 (Y7) | | NET 30 DAYS | | | | | | | | |

PAYMENT DUE 04/19/01
Contract #

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 00001 | E30888TE | 03/05/01 | | | 2-1 SECTOR ANTENNA 22.5 DEG 386HZ | | 94 | $1,580.25 | E | $148,543.50 |
| 00002 | E30888TE | 03/05/01 | | | 3-1 TR 2FT ANTENNA | 4046573G273 | 150 | $650.38 | E | $97,557.00 |
| | | | | | DIANE SHULTZ | | | | | |
| | | | | | INVOICE TO COVER ITEMS SHIPPED SINCE 9-28-00 | | | | | |
| | | | | | ****** LAST PAGE ****** | | | | | |

AUDIT #
KVJR

| | Sub Total | $ | 246,100.50 |
|---|---|---|---|
| | Less Advance Payment | | |
| | Transportation | $ | .00 |
| | Tax | $ | .00 |
| | **Total Due** | $ | 246,100.50 |

Questions About Your Account?
Call
DIANE SHULTZ
(404) 573-6921

PAYMENTS SHOULD BE MAILED
TO ARRIVE BY THE DUE DATE.

INVOICES ARE PAYABLE IN U.S. CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONALBE RATE OR IS
SUBJECT TO LATE PAYMENT CHARGES PER
AGREEMENT REMARKS:

**ORIGINAL**

--- RETURN THIS PORTION WITH PAYMENT ---

**Remit To:**
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: SOPHIA REWALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON     VA 20171

| Account Number | Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|---|
| 100109636 | ER102907 | N/A | $ 246,100.50 |
| Amount Past Due | Amount This Bill | Discount Amount | Amount Enclosed |
| N/A | $ 246,100.50 | N/A | |

CONFIDENTIAL

LW 00300305

B1967



## INVOICE

Lucent Technologies, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

**Ship To:**
WINSTAR TELECOMMUNICATIONS
PROJECT M8167TT
165 HALSEY STREET

NEWARK          NJ 07102

**Bill To:**
WINSTAR WIRELESS
ATTN: SOPHIA REMULOS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON          VA 20171

| Invoice Number | ER101863 |
| Invoice Date | 02/20/01 |
| Account Number | 100109636 |
| Page Number | 1 |

| Customer P.O. # | LUC Reference # | | | Customer Code | Terms | | PAYMENT DUE Contract # | FOB |
|---|---|---|---|---|---|---|---|---|
| WFI-000000513 | | | | NW702 (Y7) | NET 30 DAYS | | 03/22/01 | |

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | PM | Unit Price | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 00001 | M8167TT | 01/15/01 | | | 1-1 WAVESTAR MATERIAL 165 HALSEY | | 1 | E | $220,608.00 | $220,608.00 |
| 00002 | M8167TT | 01/15/01 | | | 2-1 ENGINEERING 165 HALSEY | | | | | $3,356.00 |
| 00003 | M8167TT | 01/15/01 | | | TRANSPORTATION | | | | | $828.49 |
| | | | | | DIANE SHULTZ | | | | | |
| | | | | | INSTALLATION WILL BE BILLED WHEN COMPLETED. | 404573S273 | | | | |
| | | | | | ****** LAST PAGE ****** | | | | | |

| | | |
|---|---|---|
| | Sub Total | $ 223,964.00 |
| Less Advance Payment | | |
| | Transportation | $ 828.49 |
| Questions About Your Account? Call | Tax | $ .00 |
| DIANE SHULTZ (404) 573-5873 | Total Due | $ 224,792.49 |

AUDIT # AVH

PAYMENTS SHOULD BE MAILED TO ARRIVE BY THE DUE DATE.

INVOICES ARE PAYABLE IN U.S. CURRENCY AND OVERDUE AMOUNTS SHALL BEAR INTEREST AT A REASONABLE RATE OR 1% SUBJECT TO LATE PAYMENT CHARGES PER AGREEMENT REMARKS.

**ORIGINAL**

---

**RETURN THIS PORTION WITH PAYMENT**

**Remit To:**
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: SOPHIA REMULOS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON          VA 20171

| Account Number | Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|---|
| 100109636 | ER101863 | N/A | $ 224,792.49 |

| Amount Past Due | Amount this Bill | Discount Amount | Amount Enclosed |
|---|---|---|---|
| N/A | $ 224,792.49 | N/A | |



# INVOICE

**Lucent Technologies, Inc.**
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

**Ship To:**
WINSTAR
7500 FLYING CLOUD DR

EDEN PRAIRIE     MN 55344

**Bill To:**
WINSTAR WIRELESS
ATTN: JULIAN HADDAD
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON     VA 20171

| | |
|---|---|
| Invoice Number | WR100610 |
| Invoice Date | 01/29/01 |
| Account Number | 100109636 |
| Page Number | 1 |

PAYMENT DUE

FOB

AUDIT #
AVJH

| Customer P.O. # | LUC Reference # | | Customer Code | | Terms | | Contract # |
|---|---|---|---|---|---|---|---|
| WWF1-000000225 | | | WH702 (Y7) | | NET 30 DAYS | | |

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | Total Price |
|---|---|---|---|---|---|---|---|---|---|
| 00001 | 062363MA | 01/25/01 | | | 1-1 HUB SITE CONSTRUCTION SERVICE | | | | $223,132.00 |
| | | | | | 4045733273 | | | | |
| | | | | | DIANE SCHULTZ | | | | |
| | | | | | HUB SITE CONSTRUCTION SERVICES FOR 7500 FLYING CLOUD, MINNEAPOL | | | | |
| | | | | | IS MS. | | | | |
| | | | | | ***** LAST PAGE ***** | | | | |

| | | |
|---|---|---|
| Sub Total | $ | 223,132.00 |
| Less Advance Payment | | |
| Transportation | $ | .00 |
| Tax | $ | .00 |
| Total Due | $ | 223,132.00 |

Questions About
Your Account?
Call
DIANE SHULTZ
(404) 573-5873

ORIGINAL

PRICES ARE PAYABLE IN U.S. CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONABLE RATE OR IS
SUBJECT TO LATE PAYMENT CHARGES PER
AGREEMENT REMARKS.

**——— RETURN THIS PORTION WITH PAYMENT ———**

Remit To:
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: JULIAN HADDAD
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON     VA 20171

| Account Number | Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|---|
| 100109636 | WR100610 | N/A | $ 223,132.00 |
| Amount Past Due | Amount This Bill | Discount Amount | Amount Enclosed |
| N/A | $ 223,132.00 | N/A | |

# INVOICE

**Lucent Technologies, INC.**
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

**Ship To:**
WINSTAR WIRELESS
ATTN: SOPHIA REWALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HUBS AND B'S WNE000005825
HERNDON        VA 20171

**Bill To:**
WINSTAR WIRELESS
ATTN: SOPHIA REWALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON        VA 20171

| Invoice Number | WR103593 |
|---|---|
| Invoice Date | 04/02/01 |
| Account Number | 100109636 |
| Page Number | 1 |

| Customer P.O. # | LUC Reference # | | Customer Code | Terms |
|---|---|---|---|---|
| WNE000005825 | | | WNY702 (Y7) | NET 30 DAYS |

PAYMENT DUE  05/02/01    FOB

| Contract # | AUDIT # AV3H |
|---|---|

| Item No. | Lucent Order | Ship Date | Bill of Lading | Ship Method | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 00001 | H667BVT | 03/26/01 | | | 15-1 EQUIPMENT ENG AND RECORDS | | | | | $2,286.00 |
| 00002 | H67643T | 03/26/01 | | | 15-1 EQUIPMENT ENG AND RECORDS | | | | | $3,048.00 |
| 00003 | D63788VA | 03/26/01 | | | 14-1 MISC EQUIPMENT | | 1 | $31,021.00 | E | $31,021.00 |
| 00004 | D63789VA | 03/26/01 | | | 14-1 MISC EQUIPMENT | | 1 | $31,021.00 | E | $31,021.00 |
| 00005 | D63790VA | 03/26/01 | | | 14-1 MISC EQUIPMENT | | 1 | $31,021.00 | E | $31,021.00 |
| 00006 | F215533C | 03/26/01 | | | MISC EQUIPMENT | | 1 | $31,021.00 | E | $31,021.00 |
| 00007 | F215535C | 03/26/01 | | | MISC EQUIPMENT | | 1 | $31,021.00 | E | $31,021.00 |
| | | | | | CONTINUED ON NEXT PAGE | | | | | |

| | |
|---|---|
| Sub Total | $ 160,439.00 |
| Less Advance Payment | |
| Transportation | $ .00 |
| Tax | $ .00 |
| Total Due | $ 222,481.00 |

Questions About
Your Account?
Call

DIANE SHULTZ
(404) 573-5873

ORIGINAL

INVOICES ARE PAYABLE IN U.S. CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONABLE RATE OR IS
SUBJECT TO LATE PAYMENT CHARGES PER
AGREEMENT REMARKS.

—— RETURN THIS PORTION WITH PAYMENT ——

**Remit To:**
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: SOPHIA REWALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON        VA 20171

| Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|
| WR103593 | N/A | $ 222,481.00 |

| Account Number | Amount this Bill | Discount Amount | Amount Enclosed |
|---|---|---|---|
| 100109636 | $ 222,481.00 | N/A | |

| Amount Past Due | | | |
|---|---|---|---|
| N/A | | | |

LW 00300309

B1970



# INVOICE

**LUCENT TECHNOLOGIES, INC.**
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

**Ship To:**
WINSTAR WIRELESS
ATTN: SOPHIA RENALDS
2545 HORSE PEN ROAD
C-1403 1ST FLOOR
HUBS AND B'S WHEO0000005825
HERNDON          VA 20171

**Bill To:**
WINSTAR WIRELESS
ATTN: SOPHIA RENALDS
2545 HORSE PEN ROAD
C-1403 1ST FLOOR

HERNDON          VA 20171

| | |
|---|---|
| Invoice Number | WR103593 |
| Invoice Date | 04/02/01 |
| Account Number | 100109636 |
| Page Number | 2 |
| PAYMENT DUE | 05/02/01 |

| Customer P.O. # | Customer Code | Terms |
|---|---|---|
| WHE000005825 | HWY702 (Y7) | NET 30 DAYS |

**LUC Reference #**   **Contract #**   **FOB**   AUDIT #
AVJR

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 00008 | F21536JC | 03/26/01 | | | 14-1 MISC MATERIAL | | 1 | $31,021.00 | E | $31,021.00 |
| 00009 | F21604JC | 03/26/01 | | | 14-1 MISC MATERIAL | | 1 | $31,021.00 | E | $31,021.00 |
| | | | | | 4045735273 | | | | | |
| | | | | | DIANE SHULTZ | | | | | |
| | | | | | BILLED TO MATCH FPDS | | | | | |
| | | | | | MISC EQUIPMENT IS CABINETS AND OSLAM. | | | | | |
| | | | | | ENG FOR ALL ORDERS ON THIS INVOICE ARE ON ORDERS N6764JT AND | | | | | |
| | | | | | N6678VT. | | | | | |
| | | | | | ****** LAST PAGE ****** | | | | | |

| | | |
|---|---|---|
| Sub Total | $ | 222,481.00 |
| Less Advance Payments | $ | |
| Transportation | $ | .00 |
| Tax | | .00 |
| Total Due | $ | 222,481.00 |

**MAKE CHECK PAYABLE TO:**

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

Questions About Your
Account?   Call
DIANE SHULTZ
(404) 573-5273

**REMARKS:**

INVOICES ARE PAYABLE
IN U.S. CURRENCY AND
OVERDUE AMOUNT
SHALL BEAR INTEREST AT
A REASONALBE RATE OR
IS SUBJECT TO LATE
PAYMENT CHARGES PER
AGREEMENT REMARKS:

**ORIGINAL**



INVOICE

Lucent Technologies, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

Ship To:
WINSTAR NETWORK EXPANSION
401 PENCADER DR.
SUITE P

NEWARK                    DE 19702

Bill To:
WINSTAR WIRELESS
ATTN: SOPHIA REINALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON                   VA 20171

| Invoice Number | ER103069 |
| Invoice Date | 03/23/01 |
| Account Number | 10010636 |
| Page Number | 1 |

PAYMENT DUE 04/22/01

| Customer P.O. # | WNE-000000521 | | | | Customer Code | Terms | | Contract # | | FOB |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Y7 | NET 30 DAYS | | | | |

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 00001 | E27055TT | 01/22/01 | | | 3-1 18GHZ OS3 ODU HPHP LB | | 20 | $4,940.70 | E | $98,814.00 |
| 00002 | E27055TT | 01/22/01 | | | 4-118GHX DS3 ODU HP HP LB | | 20 | $4,940.70 | E | $98,814.00 |
| | | | | | DIANE SHULTZ 4045734273 | | | | | |
| | | | | | REN INVOICE WITH CORRECT PO, PAYMENT IS DUE UPON RECEIPT OF INVOICE. | | | | | |
| | | | | | ****** LAST PAGE ****** | | | | | |

| Sub Total | $ | 197,628.00 |
|---|---|---|
| Less Advance Payment | | |
| Transportation | $ | .00 |
| Tax | $ | .00 |
| Total Due | $ | 197,628.00 |

Questions About Your Account?
Call      DIANE SHULTZ
          (404) 573-4273

PAYMENTS SHOULD BE MAILED
TO ARRIVE BY THE DUE DATE.

ALL PRICES ARE PAYABLE IN U.S. CURRENCY AND OVERDUE AMOUNT SHALL BEAR INTEREST AT A REASONABLE RATE OR IS SUBJECT TO LATE PAYMENT CHARGES PER AGREEMENT REMARKS.

ORIGINAL

─── RETURN THIS PORTION WITH PAYMENT ───

Remit To:
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: SOPHIA REINALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON                   VA 20171

| Current Balance | Total Due This Bill |
|---|---|
| N/A | $ 197,628.00 |
| Discount Amount | Amount Enclosed |
| N/A | |

| Account Number | Invoice Number |
|---|---|
| 10010636 | ER103069 |
| Amount Past Due | Amount this Bill |
| N/A | $ 197,628.00 |

CONFIDENTIAL

LW 00300311

B1972



## INVOICE

**LUCENT TECHNOLOGIES, INC.**
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

| Invoice Number | PR101850 |
| Invoice Date | 03/29/01 |
| Account Number | 100109636 |
| Page Number | 1 |

**Ship To:**
WINSTAR
PROJECT H5996VT
2600 WEST OLICE AVENUE
BURBANK        CA 91505

**Bill To:**
WINSTAR WIRELESS
ATTN: SOPHIA REINALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON        VA 20171

| Customer P.O. # | LUC Reference # | Customer Code | Terms |
|---|---|---|---|
| WHEC0000S825 | | MMV702 (Y2) | NET 30 DAYS |

| Item No. | Lucent Order | Ship Mailed | Ship Date | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 00001 | K5996VT | | 03/29/01 | | 9-1 HUB MATERIAL | | 1 | $129,736.63 | E | $129,736.63 |
| 00002 | K5996VT | | 03/28/01 | | 9-1 HUB ENGINEERING | | | | | $11,355.74 |
| 00003 | K5996VT | | 03/28/01 | | 10-1 HUB INSTALLATION | | | | | $50,072.00 |
| | | | | | DIANE SHULTZ | | | | | |
| | | | | | HUB COMPLETED | | | | | |
| | | | | | GS-00-730006-A1 | | | | | |
| | | | | | ****** LAST PAGE ****** | 4045735273 | | | | |

| | | |
|---|---|---|
| Sub Total | $ | 191,164.37 |
| Less Advance Payment | | |
| Transportation | $ | .00 |
| Tax | $ | .00 |
| Total Due | $ | 191,164.37 |

Questions About
Your Account?
Call         DIANE SHULTZ
             (404) 573-6035

HAVE A NICE DAY FROM THE
PACIFIC REGION CONTRACTS
& ACCOUNTS RECEIVABLE ORGANIZATION.

INVOICES ARE PAYABLE IN U.S. CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONABLE RATE OR IS
SUBJECT TO LATE PAYMENT CHARGES PER
AGREEMENT REMARKS.

**ORIGINAL**

---------- RETURN THIS PORTION WITH PAYMENT ----------

Remit To: LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: SOPHIA REINALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON        VA 20171

| Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|
| PR101850 | N/A | $ 191,164.37 |
| Amount this Bill | Discount Amount | Amount Enclosed |
| $ 191,164.37 | N/A | |

| Account Number | Amount Past Due |
|---|---|
| 100109636 | N/A |

CONFIDENTIAL

LW 00300312

B1973



# INVOICE

**Lucent Technologies, INC.**
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

**Ship To:**
WINSTAR WIRELESS
ATTN: SOPHIA RENALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HUBS AND B'S WHEOOOO005825
HERNDON          VA 20171

**Bill To:**
WINSTAR WIRELESS
ATTN: SOPHIA RENALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON          VA 20171

| Invoice Number | WR103590 |
|---|---|
| Invoice Date | 04/02/01 |
| Account Number | 100109636 |
| Page Number | 1 |

| Customer P.O. # | Lucent Order | Ship Date | Ship Mthod | Bill of Lading | LUC Reference # |
|---|---|---|---|---|---|
| WHEOOOO005825 | | | | | |

| Customer Code | Terms |
|---|---|
| WNY702 (Y7) | NET 30 DAYS |

PAYMENT DUE
Contract #        04/03/01

| Item No. | Lucent Order | Ship Date | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | FM | Total Price |
|---|---|---|---|---|---|---|---|---|
| 00001 | M5177YT | 03/26/01 | 15-1 EQUIPMENT ENG AND RECORDS | | | | | $762.00 |
| 00002 | M5178YT | 03/26/01 | 15-1 EQUIPMENT ENG AND RECORDS | | | | | $3,810.00 |
| 00003 | D63441VA | 03/26/01 | 14-1 MISC MATERIAL | | 1 | $31,044.00 | E | $31,044.00 |
| 00004 | D63448VA | 03/26/01 | 14-1 MISC MATERIAL | | 1 | $31,044.00 | E | $31,044.00 |
| 00005 | D63449VA | 03/26/01 | 14-1 MISC MATERIAL | | 1 | $31,044.00 | E | $31,044.00 |
| 00006 | D63452VA | 03/26/01 | 14-1 MISC MATERIAL | | 1 | $31,044.00 | E | $31,044.00 |
| 00007 | D63457VA | 03/26/01 | 14-1 MISC MATERIAL | | 1 | $31,044.00 | E | $31,044.00 |
| | | | CONTINUED ON NEXT PAGE | | | | | |

AUDIT #
AVJH

FOB

| | Sub Total | $ | 159,792.00 |
|---|---|---|---|
| | Less Advance Payment | | |
| | Transportation | $ | .00 |
| | Tax | $ | .00 |
| | Total Due | $ | 190,836.00 |

Questions About
Your Account?
Call          DIANE SHULTZ
              (404) 573-2523

------RETURN THIS PORTION WITH PAYMENT------

**Remit To:**
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: SOPHIA RENALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON          VA 20171

| Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|
| WR103590 | N/A | $ 190,836.00 |

| Amount this Bill | Discount Amount | Amount Enclosed |
|---|---|---|
| $ 190,836.00 | N/A | N/A |

| Account Number | Amount Past Due |
|---|---|
| 100109636 | N/A |

ORIGINAL

INVOICES ARE PAYABLE IN U.S. CURRENCY AND OVERDUE AMOUNT SHALL BEAR INTEREST AT A REASONABLE RATE OR IS SUBJECT TO LATE PAYMENT CHARGES PER AGREEMENT REMARKS:

Lucent Technologies
Bell Labs Innovations

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

# INVOICE

**Ship To:**

WINSTAR WIRELESS
ATTN: SOPHIA REMALDS
2345 HORSE PEN ROAD
C-1483 1ST FLOOR
HUBS AND B'S WNEO00005825
HERNDON          VA 20171

**Bill To:**

WINSTAR WIRELESS
ATTN: SOPHIA REMALDS
2345 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON          VA 20171

| Invoice Number | WR103590 |
|---|---|
| Invoice Date | 04/02/01 |
| Account Number | 100109636 |
| Page Number | 2 |

PAYMENT DUE    05/02/01

| Customer P.O. # | | LUC Reference # | | Customer Code | | Terms | Contract # | | | FOB | | AUDIT # |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| WNEO00005825 | | | | HNY702 (Y7) | | NET 30 DAYS | | | | | | AVJH |

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 00008 | D63458VA | 03/26/01 | | | 14-1 MISC MATERIAL | | 1 | $31,044.00 | E | $31,044.00 |
| | | | | | DIANE SHULTZ | | | | | |
| | | | | | BILLED TO MATCH FPDS | | | | | |
| | | | | | CABINETS AND DSLAM INVOICED UDER MISC MATERIAL | | | | | |
| | | | | | ENGINEERING FOR EACH ORDER BILLED ON TWO ENG ORDERS W5178VT AND | | | | | |
| | | | | | W5177VT. | 404575273 | | | | |
| | | | | | ****** LAST PAGE ****** | | | | | |

| | | |
|---|---|---|
| | Sub Total | $ 190,836.00 |
| | Less Advance Payments | |
| | Overdue Amount Transportation | $ .00 |
| | Tax | $ .00 |
| | Total Due | $ 190,836.00 |

**MAKE CHECK PAYABLE TO:**

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

INVOICES ARE PAYABLE
IN U.S. CURRENCY AND
OVERDUE AMOUNT
SHALL BEAR INTEREST AT
A REASONABLE RATE OR
IS SUBJECT TO LATE
PAYMENT CHARGES PER
AGREEMENT REMARKS:

**Questions About Your Account? Call**

DIANE SHULTZ
(404) 573-5273

**REMARKS:**

**ORIGINAL**

CONFIDENTIAL

LW 00300314

B1975



**Lucent Technologies**

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

# INVOICE

| | |
|---|---|
| Ship To: | WINSTAR<br>8610 BROADWAY ST<br><br>SAN ANTONIO    TX 78217 |
| Bill To: | WINSTAR WIRELESS<br>ATTN: JULIAN HADDAD<br>2545 HORSE PEN ROAD<br>C-1483 1ST FLOOR<br><br>HERNDON    VA 20171 |

| | |
|---|---|
| Invoice Number | SR100994 |
| Invoice Date | 01/29/01 |
| Account Number | 100109636 |
| Page Number | 1 |

| Customer P.O. # | LUC Reference # | Customer Code | Terms |
|---|---|---|---|
| WYF1-000000915 | | HMY702 (Y7) | NET 30 DAYS |

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Contract # | PM | FOB | AUDIT #<br>A\VH<br>Total Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 00001 | F22716JC | 01/25/01 | | | 1-1 HUB SITE CONSTRUCTION SVC | 4045735273 | | | | | |
| | | | | | DIANE SHULTZ<br>BILLED PER LUCENT ORDER | | | | | | $163,200.00 |
| | | | | | ****** LAST PAGE ****** | | | | | | |

| | |
|---|---|
| Sub Total | $    163,200.00 |
| Less Advance Payment | |
| Transportation | $    .00 |
| Tax | $    .00 |
| **Total Due** | $    163,200.00 |

Questions About
Your Account?
Call

DIANE SHULTZ
(404) 573-6033

THANK YOU FOR USING
LUCENT TECHNOLOGIES

INVOICES ARE PAYABLE IN U.S. CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONALBE RATE OR IS
SUBJECT TO LATE PAYMENT CHARGES PER
AGREEMENT REMARKS.

# ORIGINAL

---

**RETURN THIS PORTION WITH PAYMENT**

Remit To:
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: JULIAN HADDAD
2545 HORSE PEN ROAD
C-1403 1ST FLOOR

HERNDON    VA 20171

| Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|
| SR100994 | N/A | $    163,200.00 |
| Amount this Bill | Discount Amount | Amount Enclosed |
| $    163,200.00 | N/A | |

| Account Number | Amount Past Due |
|---|---|
| 100109636 | N/A |



**LUCENT TECHNOLOGIES, INC.**
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

## INVOICE

**Ship To:**
WINSTAR
ATTN BOB HANNAN
PROJECT E43350TE / WVF2-0000001362
2350 CORPORATE PARK DRIVE

HERNDON          VA 20171

**Bill To:**
WINSTAR WIRELESS
ATTN: SOPHIA REINOLDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON          VA 20171

| Invoice Number | ER103008 |
|---|---|
| Invoice Date | 03/22/01 |
| Account Number | 100109636 |
| Page Number | 1 |

| Customer P.O. # | LUC Reference # | Customer Code | Terms |
|---|---|---|---|
| WVF2-000001362 | | HHY702 (Y7) | NET 30 DAYS |

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 00001 | E43350TE | 03/09/01 | | | 1-1 NFM LAB UPGRADE AND PROD. DEPLO | 4045734273 | 1 | $125,000.00 | E | $125,000.00 |
| | | | | | DIANE SHULTZ INVOICED TO PO PER PATRICIA PERRY GS-01-VA1007-A1 | | | | | |
| | | | | | ****** LAST PAGE ****** | | | | | |

PAYMENT DUE 04/21/01    FOB    AUDIT # AVJH

|  |  |  |
|---|---|---|
| Sub Total | $ | 125,000.00 |
| Less Advance Payment | | |
| Transportation | $ | .00 |
| Tax | $ | .00 |
| Total Due | $ | 125,000.00 |

Questions About
Your Account?
Call
DIANE SHULTZ
(404) 573-3623

PAYMENTS SHOULD BE MAILED
TO ARRIVE BY THE DUE DATE.

INVOICES ARE PAYABLE IN U.S. CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONABLE RATE OR IS
SUBJECT TO LATE PAYMENT CHARGES PER
AGREEMENT REMARKS:

**ORIGINAL**

----- RETURN THIS PORTION WITH PAYMENT -----

**Remit To:**
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: SOPHIA REINOLDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON          VA 20171

| Account Number | Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|---|
| 100109636 | ER103008 | N/A | $ 125,000.00 |
| Amount Past Due | Amount this Bill | Discount Amount | Amount Enclosed |
| N/A | $ 125,000.00 | N/A | |

CONFIDENTIAL

LW 00300317

B1977



LW 00300326

B1978



# INVOICE

**LUCENT TECHNOLOGIES, INC.**
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN:  ACCOUNTS RECEIVABLE

**Ship To:**
WINSTAR
PROJECT 9833VT
WOODLAND HILL CA HUB
21031 VENTURA BLVD

WOODLAND HILLS    CA 91364

**Bill To:**
WINSTAR WIRELESS
ATTN: SOPHIA REHOLDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON        VA 20171

**Invoice Number** PR101843
**Invoice Date** 03/29/01
**Account Number** 100109636
**Page Number** 1

| Customer P.O. # | LUC Reference # | | | | Customer Code | Terms | | | PAYMENT DUE 04/28/01 | | FOB |
|---|---|---|---|---|---|---|---|---|---|---|---|
| WNE000005825 | | | | | NNY702 (Y7) | NET 30 DAYS | | | Contract # | | AUDIT #<br>N2H |

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 00001 | G9833VT | 03/28/01 | | | 10-1 INSTALLATION SEVICES | 4045738273 | | | | $50,072.00 |
| | | | | | DIANE SHULTZ<br>INSTALLATION COMPLETE | | | | | |
| | | | | | ****** LAST PAGE ****** | | | | | |

| | | | |
|---|---|---|---|
| | Sub Total | $ | 50,072.00 |
| | Less Advance Payment | | |
| | Transportation | $ | .00 |
| | Tax | $ | .00 |
| | Total Due | $ | 50,072.00 |

Questions About
Your Account
Call

DIANE SHULTZ
(404) 573-5702

HAVE A NICE DAY FROM THE
PACIFIC REGION CONTRACTS
& ACCOUNTS ORGANIZATION.

PRICES ARE PAYABLE IN US CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONALBE RATE OR IS
SUBJECT TO LATE PAYMENT CHARGES PER
AGREEMENT REMARKS.

**ORIGINAL**

**──RETURN THIS PORTION WITH PAYMENT──**

**Remit To:**
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN:  ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: SOPHIA REHOLDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON        VA 20171

| Account Number | Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|---|
| 100109636 | PR101843 | N/A | $  50,072.00 |
| Amount Past Due | Amount (this Bill) | Discount Amount | Amount Enclosed |
| N/A | $  50,072.00 | N/A | |



LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

# INVOICE

**Ship To:**
WINSTAR NETWORK EXPANSION
SUITE 300
1850 M STREET

WASHINGTON    DC 20036

**Bill To:**
WINSTAR WIRELESS
ATTN: SOPHIA RENALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON    VA 20171

| Invoice Number | ER102478 |
| Invoice Date | 03/06/01 |
| Account Number | 100109636 |
| Page Number | 1 |

| Customer P.O. # | LUC Reference # | | Customer Code | Terms | PAYMENT DUE | Contract # | FOB | 04/05/01 | AUDIT # AVJH |
|---|---|---|---|---|---|---|---|---|---|
| WNF1-000002827 | | | NMY702 (Y7) | NET 30 DAYS | | | | | |

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quanity Ordered | Quanity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 00001 | M1624TT | 01/06/01 | | | 7-1 MATERIAL 1850 M | | 1 | $2,316.00 | E | $2,316.00 |
| 00002 | M1624TT | 01/06/01 | | | TRANSPORTATION | | 1 | | | $38.58 |
| 00003 | M1625TT | 01/06/01 | | | 7-1 MATERIAL 811 VERMONT | | 1 | $5,184.00 | E | $5,184.00 |
| 00004 | M1625TT | 01/06/01 | | | TRANSPORTATION | | | | | $254.68 |
| 00005 | M1625TT | 01/06/01 | | | 8-1 ENGINEERING | | | | | $12,756.00 |
| 00006 | M1625TT | 01/06/01 | | | 8-1 INSTALLATION | | | | | $27,020.00 |
| | | | | | DIANE SHULTZ | 4045735273 | | | | |
| | | | | | CONTINUED ON NEXT PAGE | | | | | |

| | | |
|---|---|---|
| Sub Total | $ | 47,276.00 |
| Less Advance Payment | | |
| Transportation | $ | 293.26 |
| Tax | $ | .00 |
| Total Due | $ | 47,569.26 |

Questions About
Your Account
Call

DIANE SHULTZ
(404) 573-5013

PAYMENTS SHOULD BE MAILED
TO ARRIVE BY THE DUE DATE.

INVOICES ARE PAYABLE IN U.S. CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONABLE RATE OR IS
SUBJECT TO LATE PAYMENT CHARGES PER
AGREEMENT REMARKS.

**ORIGINAL**

---

**RETURN THIS PORTION WITH PAYMENT**

**Remit To:**
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: SOPHIA RENALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON    VA 20171

| Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|
| ER102478 | N/A | $ 47,569.26 |

| Amount This Bill | Discount Amount | Amount Enclosed |
|---|---|---|
| $ 47,569.26 | N/A | |

| Account Number | Amount Past Due |
|---|---|
| 100109636 | N/A |
| $ 47,569.26 | |



# INVOICE

**Lucent Technologies**
Bell Labs Innovations

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

**Ship To:**
WINSTAR NETWORK EXPANSION
SUITE 300
1850 M STREET

WASHINGTON        DC 20036

**Bill To:**
WINSTAR WIRELESS
ATTN: SOPHIA RENALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON        VA 20171

| Invoice Number | ER102478 |
|---|---|
| Invoice Date | 03/06/01 |
| Account Number | 100109636 |
| Page Number | 2 |

PAYMENT DUE        04/05/01

| Customer P.O. # | Lucent Order | Ship Date | Ship Method | Bill of Lading | LUC Reference # | Customer Code | Part Number Description | Terms | Quantity Ordered | Quantity Shipped | Contract # | Unit Price | PM | FOB | AUDIT # AVH Total Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| WWF1-000000282 | | | | | | WWY702 (Y7) | | NET 30 DAYS | | | | | | | |
| | | | | | | | INVOICED PER PO | | | | | | | | |
| | | | | | | | GS-00-740025-81 | | | | | | | | |
| | | | | | | | GS-00-740025-81 | | | | | | | | |
| | | | | | | | ****** LAST PAGE ****** | | | | | | | | |

Item No.

| | | |
|---|---|---|
| Sub Total | $ | 47,276.00 |
| Less Advance Payments | | |
| Transportation | $ | 293.26 |
| Tax | $ | .00 |
| Total Due | $ | 47,569.26 |

**Questions About Your Account? Call**
DIANE SHULTZ
(404) 573-5273

**REMARKS:**

PAYMENTS SHOULD BE MAILED
TO ARRIVE BY THE DUE DATE.

**MAKE CHECK PAYABLE TO:**

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

INVOICES ARE PAYABLE
IN U.S. CURRENCY AND
OVERDUE AMOUNT
SHALL BEAR INTEREST AT
A REASONABLE RATE OR
IS SUBJECT TO LATE
PAYMENT CHARGES PER
AGREEMENT REMARKS.

**ORIGINAL**

CONFIDENTIAL

LW 00300329        B1981



# INVOICE

Lucent Technologies, Inc.

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

CUST SVC TEAM CODE:  SE

| Invoice Number | 41103996 |
|---|---|
| Invoice Date | 03/28/01 |
| Account Number | 100109636 |
| Page Number | 1 |

**Ship To:**
WINSTAR NETWORK EXPANSION LLC
PROJECT WNEOO00004692 / MG049RHRBill To:
SPARES AND EXCHANGE
ATTN: TOM RAYESKI
21290 MELROSE AVE
SOUTHFIELD    MI 48075-7901

WINSTAR WIRELESS
ATTN: SOPHIA RENALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON    VA 20171

| Customer P.O. # | LUC Reference # | Customer Code | Terms |
|---|---|---|---|
| WNE4692 | | WNY702 (Y7) | NET 30 DAYS |

PAYMENT DUE 04/27/01

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | MG049RH | 01/17/01 | | | 104127704<br>CONNECTOR 982TH<br>CD1*1*59*RH<br>SHIP=010101810\0D=010123<br>AUTH=SES<br>8000004 | | 1 | $206.25 | 1 | $206.25 |
| 2 | MG049RH | 01/17/01 | | | 102826717<br>PK CKT UN 588<br>CD1*1*59*RH<br>SHIP=010101810\0D=010123<br>AUTH=SES<br>8000004 | | 1 | $36,193.20 | 1 | $36,193.20 |

CONTINUED ON NEXT PAGE

| | | |
|---|---|---|
| Sub Total | $ | 36,399.45 |
| Less Advance Payment | | |
| Transportation | $ | .00 |
| Tax | $ | .00 |
| Total Due | $ | 36,469.45 |

Contract #  100109635
FOB

Questions About
Your Account?
Call

DIANE SHULTZ
(404) 573-8273

PLEASE ALLOW FIVE DAYS WHEN PAYING
BY MAIL.

INVOICES ARE PAYABLE IN U.S. CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONABLE RATE OR 1.5
SUBJECT TO LATE PAYMENT CHARGES PER
AGREEMENT REMARKS.

**ORIGINAL**

----RETURN THIS PORTION WITH PAYMENT----

**Remit To:**
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: SOPHIA RENALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON    VA 20171

| Account Number | Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|---|
| 100109636 | 41103996 | N/A | $ 36,469.45 |

| Amount Past Due | Amount of this Bill | Discount Amount | Amount Enclosed |
|---|---|---|---|
| N/A | $ 36,469.45 | N/A | |



CUST SVC TEAM CODE: SE

**Lucent Technologies**
Bell Labs Innovations

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

# INVOICE

**Ship To:**

WINSTAR NETWORK EXPANSION LLC  **Bill To:**
PROJECT WNE00000004692 / NG849RH
SPARES AND EXCHANGE
ATTN: TOM RAYESKI
21290 MELROSE AVE
SOUTHFIELD          MI 48075-7901

WINSTAR WIRELESS
ATTN: SOPHIA REMALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON          VA 20171

| | | | | | | |
|---|---|---|---|---|---|---|
| Invoice Number | 4110 3996 | | | | | |
| Invoice Date | 03/28/01 | | | | | |
| Account Number | 100109636 | | | | | |
| Page Number | 2 | | | | | |
| PAYMENT DUE | 04/27/01 | | | | | |

| Customer P.O. # | | LUC Reference # | | | Customer Code | Terms | Contract # | | | FOB |
|---|---|---|---|---|---|---|---|---|---|---|
| WNE4692 | | | | | WNY702 (Y7) | NET 30 DAYS | | | | |

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 3 | NG849RH | 03/20/01 | | | 900799669<br>SESS NORM DELIVERY SVC CHG<br>FOR LINE ITEM NUMBER 1<br>CONNECTOR 982CN<br>SESS NORM DELIVERY SVC CHG<br>FOR LINE ITEM NUMBER 2<br>PK CKT UN 588<br>CDI=Y;SY=NN<br>SHIP=Q10321;OJD=010322<br>AUTH=SES<br>B0QO004<br><br>****** LAST PAGE ****** | | 2 | $35.00 | 1 | $70.00 |

| | | |
|---|---|---|
| Sub Total | $ | 36,469.45 |
| Less Advance Payments | | |
| Transportation | $ | .00 |
| Tax | $ | .00 |
| Total Due | $ | 36,469.45 |

INVOICES ARE PAYABLE
IN U.S. CURRENCY AND
OVERDUE AMOUNT
SHALL BEAR INTEREST AT
A REASONABLE RATE OR
IS SUBJECT TO LATE
PAYMENT CHARGES PER
AGREEMENT REMARKS:

**MAKE CHECK PAYABLE TO:**

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

Questions About Your
Account? Call

DIANE SHULTZ
(404) 573-5273

**REMARKS:** PLEASE ALLOW FIVE DAYS WHEN PAYING
BY MAIL.

# ORIGINAL

CONFIDENTIAL          LW 00300332          B1983



Lucent Technologies
Bell Labs Innovations

# INVOICE

| | |
|---|---|
| **Ship To:** | LUCENT TECHNOLOGIES, INC.<br>P.O. BOX 100317<br>ATLANTA, GA  30384-0317<br>ATTN: ACCOUNTS RECEIVABLE |
| | WINSTAR WIRELESS<br>PROJECT E4196BTE<br>2545 HORSE PEN ROAD<br>C-1483 1ST FLOOR<br><br>HERNDON        VA 20171 |

| | |
|---|---|
| **Bill To:** | WINSTAR WIRELESS<br>ATTN: JULIAN HADDAD<br>2545 HORSE PEN ROAD<br>C-1483 1ST FLOOR<br><br>HERNDON        VA 20171 |

| | |
|---|---|
| Invoice Number | ER100996 |
| Invoice Date | 02/06/01 |
| Account Number | 100109636 |
| Page Number | 1 |

| Customer P.O. # | LUC Reference # | | | Customer Code | | Terms | | | Contract # | FOB |
|---|---|---|---|---|---|---|---|---|---|---|
| WWF1-000000294B | | | | WHY702 (Y7) | | NET 30 DAYS | | PAYMENT DUE 03/08/01 | | |

AUDIT #
AVJH

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 00001 | E4196BTE | 01/25/01 | | | 3-1 AXE SERVICES PHASE1 2SITES | 4045735273 | | | | $30,000.00 |
| | | | | | DIANE SHULTZ<br>BILLED PER PO | | | | | |
| | | | | | ****** LAST PAGE  ****** | | | | | |

| | | |
|---|---|---|
| | Sub Total | $ 30,000.00 |
| Less Advance Payment | | |
| | Transportation | $        .00 |
| | Tax | $        .00 |
| Questions About<br>Your Account?<br>Call | Total Due | $ 30,000.00 |

DIANE SHULTZ
(404) 573-5273

PAYMENTS SHOULD BE MAILED
TO ARRIVE BY THE DUE DATE.

INVOICES ARE PAYABLE IN US CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONABLE RATE, OR IS
SUBJECT TO LATE PAYMENT CHARGES PER
AGREEMENT REMARKS

**ORIGINAL**

---------- RETURN THIS PORTION WITH PAYMENT ----------

**Remit To:**
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: JULIAN HADDAD
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON        VA 20171

| Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|
| ER100996 | N/A | $  30,000.00 |
| **Amount this Bill** | **Discount Amount** | **Amount Enclosed** |
| $  30,000.00 | N/A | N/A |

| Account Number | |
|---|---|
| 100109636 | |
| **Amount Past Due** | |
| N/A | |



# INVOICE

**Lucent Technologies**
Bell Labs Innovations

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

Ship To:
WINSTAR
ATTN BOB HANNAN
PROJECT E43261TE / WVF2-0000001311
2350 COPORATE PARK DRIVE

HERNDON    VA 20171

Bill To:
WINSTAR WIRELESS
ATTN: SOPHIA RENALDS
2645 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON    VA 20171

| Invoice Number | ER103004 |
|---|---|
| Invoice Date | 03/22/01 |
| Account Number | 100109636 |
| Page Number | 1 |

| Customer P.O. # | LUC Reference # | Customer Code | Terms |
|---|---|---|---|
| WVF2-0000001311 | | WNY202 (Y?) | NET 30 DAYS |

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number | Description | Quanity Ordered | Quanity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 00001 | E43261TE | 03/05/01 | | | 1-1 SNW5 UPGRADE TO RELEASE 3.1 INS | | | 1 | $5,000.00 | E | $5,000.00 |
| 00002 | E43261TE | 03/05/01 | | | 2-1 SNW5 UPGRADE TO RELEASE 4.0 INS | | | 1 | $5,000.00 | E | $5,000.00 |
| 00003 | E43261TE | 03/05/01 | | | 3-1 SNC UPGRADE TO MATCH 10.0 INS | | | 1 | $5,000.00 | E | $5,000.00 |
| | | | | | DIANE SHULTZ | 4046734273 | | | | | |
| | | | | | INVOICED TO MATCH PO PER PATRICIA PERRY. | | | | | | |
| | | | | | ****** LAST PAGE ****** | | | | | | |

| | | |
|---|---|---|
| | Sub Total | $    15,000.00 |
| | Less Advance Payment | |
| | Transportation | $    .00 |
| | Tax | $    .00 |
| | Total Due | $    15,000.00 |

Questions About
Your Account?
Call

DIANE SHULTZ
(404) 573-1873

PAYMENTS SHOULD BE MAILED
TO ARRIVE BY THE DUE DATE.

INVOICES ARE PAYABLE IN U.S. CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONABLE RATE OR IS
SUBJECT TO LATE PAYMENT CHARGES PER
AGREEMENT REMARKS.

**ORIGINAL**

---RETURN THIS PORTION WITH PAYMENT---

Remit To:
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: SOPHIA RENALDS
2645 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON    VA 20171

| Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|
| ER103004 | N/A | $    15,000.00 |

| Account Number | Amount this Bill | Discount Amount | Amount Enclosed |
|---|---|---|---|
| 100109636 | $    15,000.00 | N/A | N/A |

| Amount Past Due | |
|---|---|
| N/A | |



CUST SVC TERM CODE: SE

# INVOICE

**LUCENT TECHNOLOGIES, INC.**
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

| | |
|---|---|
| Invoice Number | 31102301 |
| Invoice Date | 03/19/01 |
| Account Number | 100109636 |
| Page Number | 1 |

**Ship To:**
WINSTAR NETWORK EXPANISON LLC
PROJECT: WNE000004692 G9913LH
SPARES AND EXCHANGE
ATTN: AL BURLEY
34 PEACHTREE ST NW  SUITE 400
ATLANTA        GA 30303-2334

**Bill To:**
WINSTAR WIRELESS
ATTN: SOPHIA RENALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON        VA 20171

| Customer P.O. # | LUC Reference # | Customer Code | Terms | PAYMENT DUE 04/18/01 | | FOB |
|---|---|---|---|---|---|---|
| WNE4692 | | NW702 (Y2) | NET 30 DAYS | Contract # | | |

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 5 | G9913LH | 03/06/01 | | | 900799669 | | 4 | $35.00 | 1 | $140.00 |
| | | | | | SESS NORM DELIVERY SVC CHG | | | | | |
| | | | | | FOR LINE ITEM NUMBER 1 | | | | | |
| | | | | | PK CKT KTU 2 | | | | | |
| | | | | | SESS NORM DELIVERY SVC CHG | | | | | |
| | | | | | FOR LINE ITEM NUMBER 2 | | | | | |
| | | | | | PK CKT TN1570 | | | | | |
| | | | | | SESS NORM DELIVERY SVC CHG | | | | | |
| | | | | | FOR LINE ITEM NUMBER 3 | | | | | |
| | | | | | PK CKT TN12848 | | | | | |
| | | | | | SESS NORM DELIVERY SVC CHG | | | | | |
| | | | | | FOR LINE ITEM NUMBER 4 | | | | | |
| | | | | | PK CKT TN1846 | | | | | |

CONTINUED ON NEXT PAGE

| | |
|---|---|
| Sub Total | $ 140.00 |
| Less Advance Payment | |
| Transportation | $ .00 |
| Tax | $ .00 |
| Total Due | $ 13,091.75 |

Questions About
Your Account?
Call

DIANE SHULTZ
(404) 573-6273

THANK YOU FOR USING
LUCENT TECHNOLOGIES

INVOICES ARE PAYABLE IN U.S. CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONABLE RATE OR 1S
SUBJECT TO LATE PAYMENT CHARGES PER
AGREEMENT REMARKS;

**ORIGINAL**

---

**-----RETURN THIS PORTION WITH PAYMENT-----**

**Remit To:**
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: SOPHIA RENALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON        VA 20171

| Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|
| 31102301 | N/A | $ 13,091.75 |

| Account Number | Amount this Bill | Discount Amount | Amount Enclosed |
|---|---|---|---|
| 100109636 | $ 13,091.75 | N/A | N/A |

| Amount/Past Due | |
|---|---|
| N/A | |



CUST SVC TERM CODE:   SE

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

# INVOICE

**Ship To:**

WINSTAR NETWORK EXPANSION LLC
PROJECT: WNE000004692 G9913LH
SPARES AND EXCHANGE
ATTN: AL BURLEY
34 PEACHTREE ST NW  SUITE 400
ATLANTA          GA 30303-2334

**Bill To:**

WINSTAR WIRELESS
ATTN: SOPHIA RENALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON          VA 20171

| | |
|---|---|
| Invoice Number | 31102301 |
| Invoice Date | 03/19/01 |
| Account Number | 100109636 |
| Page Number | 2 |

PAYMENT DUE   04/18/01

| Customer P.O. # | LUC Reference # | Customer Code | Terms | Contract # | FOB |
|---|---|---|---|---|---|
| WNE4692 | | NMY702 (Y7) | NET 30 DAYS | | |

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 6 | G9913LH | 03/06/01 | | | CDI-W*;SV=HN SHIP=010307;0/D=010308 AUTH=SES B000004 | | | | | |
| | | | | | 106699446 PRODUCT EXCHANGE CHARGE FOR LINE ITEM NUMBER 4 PK CKT TN1046 | | 1 | $625.00 | I | $625.00 |
| 7 | G9913LH | 03/06/01 | | | CDI-W*;SV=HN SHIP=010307;0/D=010308 AUTH=SES B000004 | | | | | |
| | | | | | 106699603 PRODUCT EXCHANGE CHARGE FOR LINE ITEM NUMBER 1 PK CKT KTU 2 | | | | | |
| | | | | | PRODUCT EXCHANGE CHARGE FOR LINE ITEM NUMBER 2 PK CKT TN1670 | | | | | |
| | | | | | PRODUCT EXCHANGE CHARGE FOR LINE ITEM NUMBER 3 PK CKT TN12848 | | 3 | $300.00 | I | $900.00 |

CONTINUED ON NEXT PAGE

| | |
|---|---|
| Sub Total | $ 1,665.00 |
| Less Advance Payments | |
| Transportation | $ .00 |
| Tax | $ .00 |
| Total Due | $ 13,091.75 |

**MAKE CHECK PAYABLE TO:**

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

Questions About Your Account? Call

DIANE SHULTZ
(404) 573-5273

**REMARKS:**

THANK YOU FOR USING
LUCENT TECHNOLOGIES

INVOICES ARE PAYABLE
IN U.S. CURRENCY AND
OVERDUE AMOUNT
SHALL BEAR INTEREST AT
A REASONABLE RATE OR
IS SUBJECT TO LATE
PAYMENT CHARGES PER
AGREEMENT REMARKS:

**ORIGINAL**



**Lucent Technologies**

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

# INVOICE

CUST SVC TEAM CODE:  SE

| | |
|---|---|
| Invoice Number | 31102301 |
| Invoice Date | 03/19/01 |
| Account Number | 100109636 |
| Page Number | 3 |
| PAYMENT DUE | 04/18/01 |

**Ship To:**
WINSTAR NETWORK EXPANISON LLC 69915LH
PROJECT: WNEO000004692 69915LH
SPARES AND EXCHANGE
ATTN: MATTHEW MURFIN
150 SOUTHEAST 2ND AVENUE
MIAMI                 FL 33131

**Bill To:**
WINSTAR WIRELESS
ATTN: SOPHIA RENALDS
2545 HORSE PEN ROAD
C-1403 1ST FLOOR
HERNDON                VA 20171

| Customer Code | Terms |
|---|---|
| WNY702 (Y7) | NET 30 DAYS |

FOB

Customer P.O. #: WNE4692

| Item No. | Local Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 69915LH | 12/08/00 | | | CD1=Y1SV=RH SHP=O10307;0JD=O10309 AUTH=SES B000004 | | | | | |
| | | | | | 103882056 PK CKT WC3F003A1 CD1=Y1SV=PH SHP=001221O;0JD=001215 AUTH=SES B000008 | | 1 | $4,704.75 | I | $4,704.75 |
| 3 | 69915LH | 12/08/00 | | | 103811684 PK CKT TN1048 CD1=Y1SV=PH SHP=001221O;0JD=001215 AUTH=SES B000008 | | 1 | $5,852.00 | I | $5,852.00 |
| 4 | 69915LH | 03/13/01 | | | 900799669 SESS NORM DELIVERY SVC CHG FOR LINE ITEM NUMBER 1 PK CKT WC3F003A1 SESS NORM DELIVERY SVC CHG | | 3 | $35.00 | I | $105.00 |

CONTINUED ON NEXT PAGE

| | | |
|---|---|---|
| Sub Total | $ | 12,326.75 |
| Less Advance Payments | | |
| Transportation | $ | .00 |
| Tax | $ | .00 |
| Total Due | $ | 13,091.75 |

Questions About Your Account? Call
DIANE SHULTZ
(404) 573-5273

**REMARKS:**

**MAKE CHECK PAYABLE TO:**

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

INVOICES ARE PAYABLE
IN U.S. CURRENCY AND
OVERDUE AMOUNT
SHALL BEAR INTEREST AT
A REASONWALBE RATE OR
IS SUBJECT TO LATE
PAYMENT CHARGES PER
AGREEMENT REMARKS:

THANK YOU FOR USING
LUCENT TECHNOLOGIES

**ORIGINAL**

CONFIDENTIAL

LW 00300340

B1989



CUST SVC TEAM CODE:  SE

# INVOICE

**Lucent Technologies, Inc.**
P.O. BOX 10317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

**Ship To:**
WINSTAR NETWORK EXPANSION LLC 69915LH
PROJECT: WNED00004692 69915LH
SPARES AND EXCHANGE
ATTN: MATTHEW MARTIN
150 SOUTHEAST 2ND AVENUE
MIAMI                    FL 33131

**Bill To:**
WINSTAR WIRELESS
ATTN: SOPHIA REYNOLDS
2645 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON          VA 20171

| Invoice Number | 31102301 |
|---|---|
| Invoice Date | 03/19/01 |
| Account Number | 100109636 |
| Page Number | 4 |

PAYMENT DUE   04/18/01

| | Customer P.O. # | Ship Date | Ship Method | Bill of Lading | Customer Code | Terms | Contract # | FOB |
|---|---|---|---|---|---|---|---|---|
| | WNE4692 | | | | NNY702 (Y7) | NET 30 DAYS | | |

| Item No. | Lucent Order | LUC Reference # | Part Number/Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|
| | | | FOR LINE ITEM NUMBER 2 PK CKT NC3F0204IC SESS NORM DELIVERY SVC CHG FOR LINE ITEM NUMBER 3 PK CKT TN1048 CDI=t;SV=NN SHIP=010314;OJD=010315 AUTH=SES B000008 | | | | | |
| 2 | 69915LH 03/06/01 | | 900799651 SESS EMER DELIVERY SVC CHG FOR LINE ITEM NUMBER 1 PK CKT KTU  2 CDI=t;SV=NN SHIP=010307;OJD=010308 AUTH=SES B000010 | | 1 | $70.00 | I | $70.00 |
| 3 | 69915LH 03/06/01 | | 900799669 SESS NORM DELIVERY SVC CHG FOR LINE ITEM NUMBER 1 PK CKT TN1684 SESS NORM DELIVERY SVC CHG | | 2 | $35.00 | I | $70.00 |

CONTINUED ON NEXT PAGE

**Questions About Your Account?  Call**
DIANE SHULTZ
(404) 573-5273

**REMARKS:**
THANK YOU FOR USING
LUCENT TECHNOLOGIES

**MAKE CHECK PAYABLE TO:**
LUCENT TECHNOLOGIES, INC.
P.O. BOX 10317
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

INVOICES ARE PAYABLE
IN U.S. CURRENCY AND
OVERDUE AMOUNT
SHALL BEAR INTEREST AT
A REASONABLE RATE OR
IS SUBJECT TO LATE
PAYMENT CHARGES PER
AGREEMENT REMARKS:

| | | |
|---|---|---|
| Sub Total | $ | 12,466.75 |
| Less Advance Payments | | .00 |
| Transportation | | |
| Tax | $ | .00 |
| Total Due | $ | 13,091.75 |

**ORIGINAL**



LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN:  ACCOUNTS RECEIVABLE

# INVOICE

CUST SVC TEAM CODE:  SE

**Ship To:**

WINSTAR NETWORK EXPANISON LLC G9915LH
PROJECT: WNE0000004692 G9915LH
SPARES AND EXCHANGE
ATTN: MATTHEW NURFIN
150 SOUTHEASE 2ND AVENUE
MIAMI              FL 33131

**Bill To:**

WINSTAR WIRELESS
ATTN: SOPHIA REWALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON          VA 20171

Invoice Number    31102301
Invoice Date      03/19/01
Account Number    100109636
Page Number       5
PAYMENT DUE       04/18/01

| Customer P.O. # | | | LUC Reference # | Customer Code | | Terms | | Contract # | | | FOB | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| WNE4692 | | | | WNY702 (Y7) | | NET 30 DAYS | | | | | | |
| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price | | |
| | | | | | FOR LINE ITEM NUMBER 2 | | | | | | | |
| | | | | | PK CKT MC3F003A1 | | | | | | | |
| | | | | | C01=1;SY=HN | | | | | | | |
| | | | | | SHIP=010307;0.0=010308 | | | | | | | |
| | | | | | AUTH=SES | | | | | | | |
| | | | | | B000011 | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | 106694445 | | | | | | | |
| | | | | | PRODUCT EXCHANGE CHARGE | | | | | | | |
| | | | | | FOR LINE ITEM NUMBER 1 | | | | | | | |
| 4 | G9915LH | 03/06/01 | | | PK CKT TN1684 | | 1 | $625.00 | 1 | $625.00 | | |
| | | | | | C01=1;SY=HN | | | | | | | |
| | | | | | SHIP=010307;0.0=010308 | | | | | | | |
| | | | | | AUTH=SES | | | | | | | |
| | | | | | B000011 | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | ***** LAST PAGE ***** | | | | | | | |

| | | |
|---|---|---|
| Sub Total | $ | 13,091.75 |
| Less Advance Payments | | |
| Transportation | $ | .00 |
| Tax | $ | .00 |
| Total Due | $ | 13,091.75 |

INVOICES ARE PAYABLE
IN U.S. CURRENCY AND
OVERDUE AMOUNT
SHALL BEAR INTEREST AT
A REASONABLE RATE OR
IS SUBJECT TO LATE
PAYMENT CHARGES PER
AGREEMENT REMARKS:

**MAKE CHECK PAYABLE TO:**

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

Questions About Your
Account?  Call
DIANE SHULTZ
(404) 573-5273

REMARKS:

THANK YOU FOR USING
LUCENT TECHNOLOGIES

**ORIGINAL**

CONFIDENTIAL

LW 00300342

B1991



LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

# INVOICE

| | | | |
|---|---|---|---|
| **Invoice Number** | NR102464 | | |
| **Invoice Date** | 03/20/01 | | |
| **Account Number** | 100109635 | | |
| **Page Number** | 1 | | |

**Ship To:**
WINSTAR
401 PENCADER DR SUITE P

NEWARK    DE 19702

**Bill To:**
WINSTAR WIRELESS
ATTN: SOPHIA REIMLOS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON    VA 20171

| Customer P.O. # | LUC Reference # | Customer Code | Terms | PAYMENT DUE Contract # | | FOB |
|---|---|---|---|---|---|---|
| WF1-000001965 | | NWY702 (Y7) | NET 30 DAYS | 04/19/01 | | |

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quanity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 00001 | E14498NE | 03/05/01 | | | 16-1 RT 2FT ANTENNA COMCODE | | 20 | $650.38 | E | $13,007.60 |
| | | | | | 4045731273 | | | | | |
| | | | | | DIANE SHULTZ | | | | | |
| | | | | | INVOICED ALL EQUIPMENT SHIPPED SINCE 3-2-01. | | | | | |
| | | | | | ****** LAST PAGE ****** | | | | | |

| | | AUDIT # AVJH |
|---|---|---|
| | **Sub Total** | $ 13,007.60 |
| | **Less Advance Payment** | |
| **Questions About Your Account?** | **Transportation** | $      .00 |
| **Call** | **Tax** | $      .00 |
| DIANE SHULTZ | **Total Due** | $ 13,007.60 |
| (404) 573-2632 | | |

INVOICE CHARGES ARE PAYABLE IN US CURRENCY AND OVERDUE AMOUNT SHALL BEAR INTEREST AT A REASONALBE RATE OR IS SUBJECT TO LATE PAYMENT CHARGES PER AGREEMENT REMARKS:

THANK YOU FOR LETTING US SERVE YOU AS WE STRIVE FOR BILLING ACCURACY! YOUR TIMELY PAYMENT IS APPRECIATED.

# ORIGINAL

---

**----- RETURN THIS PORTION WITH PAYMENT -----**

**Remit To:**
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: SOPHIA REIMLOS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON    VA 20171

| · Account Number · | · Invoice Number · | · Current Balance · | · Total Due This Bill · |
|---|---|---|---|
| 100109635 | NR102464 | N/A | $   13,007.60 |

| · Amount Past Due · | · Amount this Bill · | · Discount Amount · | · Amount Enclosed · |
|---|---|---|---|
| N/A | $   13,007.60 | N/A | |



# INVOICE

**Lucent Technologies, Inc.**
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

**Ship To:**
WINSTAR WIRELESS
ATTN: SOPHIA RENALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON       VA 20171

**Bill To:**
WINSTAR WIRELESS
ATTN: SOPHIA RENALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON       VA 20171

| Invoice Number | ER103637 |
|---|---|
| Invoice Date | 04/02/01 |
| Account Number | 100109696 |
| Page Number | 1 |

| Customer P.O. # | | | | LUC Reference # | | Customer Code | Terms | | | | | | Contract # | | | AUDIT # AV3H |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

HNE000005825

| Item No. | Lucent Order | Ship Date | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | Total Price |
|---|---|---|---|---|---|---|---|---|
| 00001 | J8059HT | 03/26/01 | | TRANSPORTATION | | | | $2,591.77 |
| 00002 | K7023HT | 03/26/01 | | TRANSPORTATION | | | | $2,477.76 |
| 00003 | H5283JT | 03/26/01 | | TRANSPORTATION | | | | $2,369.19 |
| 00004 | HK814RT | 03/26/01 | | TRANSPORTATION | | | | $2,555.61 |

Customer Code: HNY702 (Y7)
Terms: NET 30 DAYS

DIANE SHULTZ                    4045735171
THESE ARE TRANSPORTATION CHARGES FOR THE INDIVIDUAL HUB SITES
EFERENCED BY THE LUCENT ORDER NUMBER

****** LAST PAGE ******

| | Sub Total | $ | .00 |
|---|---|---|---|
| | Less Advance Payment | | |
| | Transportation | $ | 9,994.33 |
| | Tax | $ | .00 |
| | **Total Due** | $ | **9,994.33** |

Questions About Your Account
Call
DIANE SHULTZ
(404) 573-5971

PAYMENTS SHOULD BE MAILED
TO ARRIVE BY THE DUE DATE.

INVOICES ARE PAYABLE IN U.S. CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONABLE RATE OR IS
SUBJECT TO LATE PAYMENT CHARGES PER
AGREEMENT REMARKS.

**ORIGINAL**

---RETURN THIS PORTION WITH PAYMENT---

**Remit To:**
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: SOPHIA RENALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON       VA 20171

| Account Number | Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|---|
| 100109696 | ER103637 | N/A | $ 9,994.33 |

| Amount Past Due | Amount This Bill | Discount Amount | Amount Enclosed |
|---|---|---|---|
| N/A | $ 9,994.33 | N/A | |



# INVOICE

**Lucent Technologies, Inc.**
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

**Ship To:**
WINSTAR
PROJECT M6784TE
1101 MARKET STREET
6TH FLOOR
PHILADELPHIA    PA 19107

**Bill To:**
WINSTAR WIRELESS
ATTN: SOPHIA REINALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON    VA 20171

| | Invoice Number | ER103146 |
|---|---|---|
| | Invoice Date | 03/26/01 |
| | Account Number | 100109636 |
| | Page Number | 1 |

| Customer P.O. # | LUC Reference # | | Customer Code | | Terms | PAYMENT DUE Contract # | | 04/25/01 FOB |
|---|---|---|---|---|---|---|---|---|
| WVF2-000000103 | | | NW7202 (Y7) | | NET 30 DAYS | | | |

AUDIT #
AVJH

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 00001 | M6784TE | 01/19/01 | | | 1-1 INSTALLATION SUPPORT OF SE15 | | | | | $7,111.00 |
| | | | | | DIANE SHULTZ | 4045735273 | | | | |
| | | | | | INVOICED TO MATCH PO | | | | | |
| | | | | | ****** LAST PAGE ****** | | | | | |

| | | |
|---|---|---|
| Sub Total | $ | 7,111.00 |
| Less Advance Payment | | |
| Transportation | $ | .00 |
| Tax | $ | .00 |
| Total Due | $ | 7,111.00 |

Questions About
Your Account?
Call
DIANE SHULTZ
(404) 573-5273

PAYMENTS SHOULD BE MAILED
TO ARRIVE BY THE DUE DATE.

INVOICES ARE PAYABLE IN U.S. CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONABLE RATE OR IS
SUBJECT TO LATE PAYMENT CHARGES PER
AGREEMENT REMARKS:

**ORIGINAL**

---

RETURN THIS PORTION WITH PAYMENT

**Remit To:**
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: SOPHIA REINALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON    VA 20171

| Account Number | Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|---|
| 100109636 | ER103146 | N/A | $ 7,111.00 |

| Amount Past Due | Amount of this Bill | Discount Amount | Amount Enclosed |
|---|---|---|---|
| N/A | $ 7,111.00 | N/A | |



# INVOICE

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN:  ACCOUNTS RECEIVABLE

**Ship To:**
WINSTAR TELECOMMUNICATIONS
PROJECT H7460VE / WVF2-1049
600 WEST BROADWAY
3RD FLOOR

SAN DIEGO        CA 92101

**Bill To:**
WINSTAR WIRELESS
ATTN: SOPHIA REWALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON        VA 20171

| Invoice Number | PR101291 |
|---|---|
| Invoice Date | 03/15/01 |
| Account Number | 100109636 |
| Page Number | 1 |

PAYMENT DUE  04/14/01  FOB

| Customer P.O. # | LUC Reference # | Customer Code | Terms | Contract # | AUDIT # AVJH |
|---|---|---|---|---|---|
| WVF2-000000104g | | WWY02 (Y2) | NET 30 DAYS | | |

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | Total Price |
|---|---|---|---|---|---|---|---|---|---|
| 00001 | H7460VE | 02/02/01 | | | 1-1 INSTALLATION REPORT OF SE15 RET | 4046735273 | | | $7,111.00 |
| | | | | | DIANE SHULTZ INVOICED TO HATCH PO | | | | |
| | | | | | ****** LAST PAGE ****** | | | | |

| | | |
|---|---|---|
| Sub Total | $ | 7,111.00 |
| Less Advance Payment | | |
| Transportation | $ | .00 |
| Tax | $ | .00 |
| Total Due | $ | 7,111.00 |

Questions About
Your Account?
Call

DIANE SHULTZ
(404) 573-6873

HAVE A NICE DAY FROM THE
PACIFIC REGION CONTRACTS
& ACCOUNTS ORGANIZATION.

INVOICES ARE PAYABLE IN U.S. CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONABLE RATE OR IS
SUBJECT TO LATE PAYMENT CHARGES PER
AGREEMENT REMARKS.

**ORIGINAL**

---------- RETURN THIS PORTION WITH PAYMENT ----------

**Remit To:**
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN:  ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: SOPHIA REWALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON        VA 20171

| Account Number | Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|---|
| 100109636 | PR101291 | N/A | $  7,111.00 |

| Amount Past Due | Amount this Bill | Discount Amount | Amount Enclosed |
|---|---|---|---|
| N/A | $  7,111.00 | N/A | N/A |

CONFIDENTIAL                    LW 00300346                    B1995



## INVOICE

**LUCENT TECHNOLOGIES, INC.**
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

**Ship To:**
MINSTAR
PROJECT H6622JE / WVF2-0000001064
11656 LILBURN PARK ROAD
1ST FLOOR

SAINT LOUIS          MO 63146

| Invoice Number | SR103349 |
|---|---|
| Invoice Date | 03/23/01 |
| Account Number | 100109636 |
| Page Number | 1 |

**Bill To:**
WINSTAR WIRELESS
ATTN: SOPHIA REMALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON          VA 20171

| Customer P.O. # | LUC Reference # | Customer Code | Terms | PAYMENT DUE Contract # | FOB | AUDIT # AVJH |
|---|---|---|---|---|---|---|
| WVF2-0000001064 | | HMY702 (Y7) | NET 30 DAYS | | 04/22/01 | |

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | Total Price |
|---|---|---|---|---|---|---|---|---|---|
| 00001 | H6622JE | 01/05/01 | | | 4-1 INSTALLATION SUPPORT OF 5E15 RE | 4045734273 | | | $7,111.00 |
| | | | | | DIANE SHULTZ BILLED TO MATCH PO | | | | |
| | | | | | ****** LAST PAGE ****** | | | | |

| | | |
|---|---|---|
| Sub Total | $ | 7,111.00 |
| Less Advance Payment | | |
| Transportation | $ | .00 |
| Tax | $ | .00 |
| Total Due | $ | 7,111.00 |

Questions About
Your Account?
Call

DIANE SHULTZ
(404) 573-3322

THANK YOU FOR USING
LUCENT TECHNOLOGIES

INVOICES ARE PAYABLE IN U.S. CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONABLE RATE OR IS
SUBJECT TO LATE PAYMENT CHARGES PER
AGREEMENT REMARKS:

**ORIGINAL**

---

**— RETURN THIS PORTION WITH PAYMENT —**

**Remit To:**
LUCENT TECHNOLOGIES, INC.
P O. BOX 100317
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: SOPHIA REMALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON          VA 20171

| Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|
| SR103349 | N/A | $    7,111.00 |

| Account Number | Amount this Bill | Discount Amount | Amount Enclosed |
|---|---|---|---|
| 100109636 | $    7,111.00 | N/A | N/A |

| Amount Past Due |
|---|
| N/A |

CONFIDENTIAL

LW 00300347

B1996



# INVOICE

**Ship To:**
WINSTAR
PROJECT H5604JE / WYF2-00000010J
324 EAST 11TH STREET
10TH FLOOR

KANSAS CITY          MO 64106

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

**Bill To:**
WINSTAR WIRELESS
ATTN: SOPHIA REINALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON          VA 20171

| Invoice Number | SR103350 |
|---|---|
| Invoice Date | 03/23/01 |
| Account Number | 100109636 |
| Page Number | 1 |

| Customer P.O. # | Lucent Order | Ship Date | Ship Method | Bill of Lading | LUC Reference # | Customer Code | Terms | PAYMENT DUE | Contract # | FOB | AUDIT # AVJH |
|---|---|---|---|---|---|---|---|---|---|---|---|
| WYF2-000000106 | | 01/12/01 | | | | WNY702 (YT) | NET 30 DAYS | 04/22/01 | | | |

| Item No. | Part Number/Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|
| 00001 | 4-1 INSTALLATION SUPPORT OF 5EI5RE | 4045735273 | | | | $7,111.00 |
| | DIANE SHULTZ | | | | | |
| | BILLED PER PO | | | | | |
| | ****** LAST PAGE ****** | | | | | |

| | | |
|---|---|---|
| | Sub Total | $ 7,111.00 |
| | Less Advance Payment | |
| | Transportation | $ .00 |
| | Tax | $ .00 |
| | Total Due | $ 7,111.00 |

Questions About
Your Account?
Call

DIANE SHULTZ
(404) 573-5273

THANK YOU FOR USING
LUCENT TECHNOLOGIES

INVOICES ARE PAYABLE IN U.S. CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONABLE RATE OR IS
SUBJECT TO LATE PAYMENT CHARGES PER
AGREEMENT REMARKS.

**ORIGINAL**

---

-------RETURN THIS PORTION WITH PAYMENT-------

**Remit To:**
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: SOPHIA REINALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON          VA 20171

| Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|
| SR103350 | N/A | $ 7,111.00 |
| Amount This Bill | Discount Amount | Amount Enclosed |
| $ 7,111.00 | N/A | N/A |

| Account Number | | | |
|---|---|---|---|
| 100109636 | | | |
| Amount Past Due | | | |
| N/A | | | |



# INVOICE

**LUCENT TECHNOLOGIES, INC.**
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

**Ship To:**
WINSTAR TELECOMMUNICATIONS
PROJECT Q0396LE / WF2-1055
34 PEACHTREE STREET
SUITE 300

ATLANTA          GA 30303

**Bill To:**
WINSTAR WIRELESS
ATTN: SOPHIA RENALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON          VA 20171

| Invoice Number | SU102814 |
|---|---|
| Invoice Date | 02/21/01 |
| Account Number | 100109636 |
| Page Number | 1 |

| Customer P.O. # | Lucent Order | Ship Date | LUC Reference # | Ship Method | Bill of Lading | Customer Code | Terms |
|---|---|---|---|---|---|---|---|
| WF2-1055 | Q0396LE | 01/12/01 | | | | HWY702 (V7) | NET 30 DAYS |

| Item No. | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | Total Price |
|---|---|---|---|---|---|
| 00001 | 1-1 LUCENT INSTALLATION 5E16 RETROF | 404573#273 | | | $7,111.00 |
| | DIANE SHULTZ | | | | |
| | BILLED PER PO | | | | |
| | ****** LAST PAGE ****** | | | | |

| PAYMENT DUE | 03/23/01 | | |
|---|---|---|---|
| Contract # | FOB | | AUDIT # AVJH |

| | |
|---|---|
| Sub Total | $ 7,111.00 |
| Less Advance Payment | |
| Transportation | $ .00 |
| Tax | $ .00 |
| Total Due | $ 7,111.00 |

Questions About
Your Account?
Call     DIANE SHULTZ
         (404) 573-9923

THANK YOU FOR USING
LUCENT TECHNOLOGIES

PRICES ARE PAYABLE IN U.S. CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONABLE RATE OR IS
SUBJECT TO LATE PAYMENT CHARGES PER
AGREEMENT REMARKS;

# ORIGINAL

---

## RETURN THIS PORTION WITH PAYMENT

**Remit To:**
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: SOPHIA RENALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON          VA 20171

| Account Number | Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|---|
| 100109636 | SU102814 | N/A | $ 7,111.00 |

| Amount Past Due | Amount this Bill | Discount Amount | Amount Enclosed |
|---|---|---|---|
| N/A | $ 7,111.00 | N/A | |

CONFIDENTIAL

LW 00300349

B1998



# INVOICE

**Lucent Technologies**

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

**Ship To:**
WINSTAR TELECOMMUNICATIONS
PROJECT QQ282LE / WVF2-1050
4200 WEST CYPRESS STREET
SUITE 600
TAMPA    FL 33607

**Bill To:**
WINSTAR WIRELESS
ATTN: SOPHIA RENALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON    VA 20171

| Invoice Number | SU105103 |
| Invoice Date | 03/15/01 |
| Account Number | 100109636 |
| Page Number | 1 |

| Customer P.O. # | LUC Reference # | PAYMENT DUE | 04/14/01 | FOB | AUDIT #  AVJH |
| WVF2-0000001050 | | Contract # | | | |

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Customer Code | Quantity Ordered | Quantity Shipped | Part Number Description | Terms | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 00001 | QQ282LE | 02/02/01 | | | WNY702 (Y) | | | 1-1 INSTALLATION SUPPORT OF SE16 RE | NET 30 DAYS | | | $7,111.00 |
| | | | | | | | 4045731273 | DIANE SHULTZ | | | | |
| | | | | | | | | INVOICED TO MATCH PO | | | | |
| | | | | | | | | ****** LAST PAGE ****** | | | | |

| Sub Total | $ | 7,111.00 |
| Less Advance Payment | | |
| Transportation | $ | .00 |
| Tax | $ | .00 |
| Total Due | $ | 7,111.00 |

Questions About
Your Account?
Call

DIANE SHULTZ
(404) 573-1601

THANK YOU FOR USING
LUCENT TECHNOLOGIES

ALL INVOICES ARE PAYABLE IN U.S. CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONALBE RATE OR IS
SUBJECT TO LATE PAYMENT CHARGES PER
AGREEMENT REMARKS.

**ORIGINAL**

—RETURN THIS PORTION WITH PAYMENT—

Remit To:
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: SOPHIA RENALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON    VA 20171

| Invoice Number | Current Balance | Total Due This Bill |
| SU105103 | N/A | $ 7,111.00 |

| Account Number | Amount This Bill | Discount Amount | Amount Enclosed |
| 100109636 | $ 7,111.00 | N/A | N/A |

| Amount Past Due |
| N/A |

**Lucent Technologies**
Bell Labs Innovations

**LUCENT TECHNOLOGIES, INC.**
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

**INVOICE**

**ORIGINAL**

Ship To:
WINSTAR NETWORK EXPANSION LLC
PROJECT M5593NE
1002 NORTH 3RD STREET
1ST FLOOR

PHOENIX           AZ 85003

Bill To:
WINSTAR WIRELESS
ATTN: SOPHIA REHALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON          VA 20171

| Invoice Number | WR101537 |
|---|---|
| Invoice Date | 02/21/01 |
| Account Number | 100109636 |
| Page Number | 1 |

PAYMENT DUE   03/23/01

| Customer P.O. # | | LUC Reference # | | Customer Code | Terms | | Contract # | | FOB | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| WNF2-000000105/ | | | | HHY702 (Y2) | NET 30 DAYS | | | | | AUDIT #  AVJH | |

| Item No. | Lucent Order | Ship Date | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|
| 00001 | M5593NE | 12/29/00 | | 4-1 INSTALLATION SUPPORT OF SE15 RE | | | | | $7,111.00 |
| | | | | | 4045735273 | | | | |
| | | | | DIANE SHULTZ | | | | | |
| | | | | BILLED PER PO | | | | | |
| | | | | ***** LAST PAGE ***** | | | | | |

| | | |
|---|---|---|
| Sub Total | $ | 7,111.00 |
| Less Advance Payment | | |
| Transportation | $ | .00 |
| Tax | $ | .00 |
| Total Due | $ | 7,111.00 |

Questions About
Your Account?
Call

DIANE SHULTZ
(404) 573-8002

PRICES ARE PAYABLE IN US CURRENCY. AND OVERDUE AMOUNT SHALL BEAR INTEREST AT A REASONALBE RATE OR IS SUBJECT TO LATE PAYMENT CHARGES PER AGREEMENT REMARKS;

---

**RETURN THIS PORTION WITH PAYMENT**

Remit To:
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: SOPHIA REHALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON          VA 20171

| Current Balance | | Total Due This Bill |
|---|---|---|
| N/A | $ | 7,111.00 |

| Invoice Number | | Discount Amount | | Amount Enclosed |
|---|---|---|---|---|
| WR101537 | N/A | | N/A | |

| Account Number | | Amount This Bill | |
|---|---|---|---|
| 100109636 | $ | 7,111.00 | |

| Amount Past Due | |
|---|---|
| N/A | |

CONFIDENTIAL

LW 00300351

B2000



CONFIDENTIAL

LW 00300352

B2001

**INVOICE**

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

**Ship To:**
WINSTAR
PROJECT W7796NE / WVF2-000000104
1000 2ND AVENUE
1ST FLOOR

SEATTLE        WA 98104

**Bill To:**
WINSTAR WIRELESS
ATTN: SOPHIA REMALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON        VA 20171

| Invoice Number | WR102894 |
|---|---|
| Invoice Date | 03/26/01 |
| Account Number | 100109636 |
| Page Number | 1 |

| Customer P.O. # | LUC Reference # | Customer Code | Terms |
|---|---|---|---|
| WVF2-000000104 | | NH7202 (Y7) | NET 30 DAYS |

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quanity Ordered | Quanity Shipped | Unit Price | Total Price |
|---|---|---|---|---|---|---|---|---|---|
| 00001 | W7796NE | 01/26/01 | | | 1-1 INSTALLATION SUPPORT FOR SE15 R | 404573273 | | | $7,111.00 |
| | | | | | DIANE SHULTZ | | | | |
| | | | | | INVOICED TO PO | | | | |
| | | | | | ****** LAST PAGE ****** | | | | |

PAYMENT DUE

Contract #    04/26/01

| | FOB | | AUDIT # AVJM |
|---|---|---|---|

| | | PM | |

| Sub Total | $ | 7,111.00 |
|---|---|---|
| Less Advance Payment | | |
| Transportation | $ | .00 |
| Tax | $ | .00 |
| Total Due | $ | 7,111.00 |

Questions About
Your Account?
Call

DIANE SHULTZ
(404) 573-XXXX

INVOICES ARE PAYABLE IN U.S. CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONABLE RATE OR IS
SUBJECT TO LATE PAYMENT CHARGES PER
AGREEMENT REMARKS:

**ORIGINAL**

---

**RETURN THIS PORTION WITH PAYMENT**

**Remit To:**
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: SOPHIA REMALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON        VA 20171

| Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|
| WR102894 | N/A | $ 7,111.00 |

| Amount This Bill | Discount Amount | Amount Enclosed |
|---|---|---|
| $ 7,111.00 | N/A | N/A |

| Account Number | Amount Past Due |
|---|---|
| 100109636 | N/A |

CONFIDENTIAL

LW 00300353        B2002



LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

# INVOICE

**Ship To:**
WINSTAR TELECOMMUNICATIONS
PROJECT Q5822LE/ WNE000004725 **Bill To:**
34 PEACHTREE STREET
4TH FLOOR
ATLANTA        GA 30303

WINSTAR WIRELESS
ATTN: SOPHIA REYNALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON        VA 20171

| | Invoice Number | SU105111 |
|---|---|---|
| | Invoice Date | 03/15/01 |
| | Account Number | 100109636 |
| | Page Number | 1 |

| Customer P.O. # | LUC Reference # | Customer Code | Terms | PAYMENT DUE Contract # | FOB |
|---|---|---|---|---|---|
| WNE000004725 | | WNY202 (Y7) | NET 30 DAYS | 04/14/01 | 100109636 |

AUDIT #
MJH

| Item No. | Lucent Order | Ship Date | Bill of Lading | Ship Method | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | Total Price |
|---|---|---|---|---|---|---|---|---|---|
| 00001 | Q5822LE | 02/09/01 | | | ENGINEERING | | | | $1,569.00 |
| 00002 | Q5822LE | 02/09/01 | | | INSTALLATION | | | | $2,757.00 |
| | | | | | DIANE SHULTZ | | | | |
| | | | | | BILLED TO NEW ORLEANS BLANKET PO | 4045735273 | | | |
| | | | | | ****** LAST PAGE ****** | | | | |

| | | |
|---|---|---|
| Sub Total | $ | 4,326.00 |
| Less Advance Payment | | |
| Transportation | $ | .00 |
| Tax | $ | .00 |
| Total Due | $ | 4,326.00 |

Questions About
Your Account?
Call

DIANE SHULTZ
(404) 573-5623

THANK YOU FOR USING
LUCENT TECHNOLOGIES

INVOICES ARE PAYABLE IN U.S. CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONABLE RATE OR IS
SUBJECT TO LATE PAYMENT CHARGES PER
AGREEMENT REMARKS.

**ORIGINAL**

---

**RETURN THIS PORTION WITH PAYMENT**

**Remit To:**
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: SOPHIA REYNALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON        VA 20171

| Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|
| SU105111 | N/A | $ 4,326.00 |

| Account Number | Amount this Bill | Discount Amount | Amount Enclosed |
|---|---|---|---|
| 100109636 | $ 4,326.00 | N/A | N/A |

| Amount Past Due |
|---|
| N/A |



# INVOICE

CUST SVC TEAM CODE: SE

**Lucent Technologies, Inc.**
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

**Ship To:**
WINSTAR NETWORK EXPANSION LLC
PROJECT WNED000004692 / NG845RH
SPARES AND EXCHANGE
ATTN: RUIZ EFRAIN
101 NORTH WACKER DR       SUITE 1175
CHICAGO            IL 60606-7385

**Bill To:**
WINSTAR WIRELESS
ATTN: SOPHIA REINALDS
2545 HORSE PEN ROAD
C-1403 1ST FLOOR
HERNDON          VA 20171

| Invoice Number | 41104351 |
| Invoice Date | 04/04/01 |
| Account Number | 100109636 |
| Page Number | 1 |

| Customer P.O.# | LUC Reference # | Customer Code | Terms |
|---|---|---|---|
| WNE4692 | | NW9702 (Y7) | NET 30 DAYS |

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 2 | NG845RH | 01/19/01 | | | 104441587<br>PK CKT TM1681<br>CDI=Y;SV=PM<br>SHIP=010121:DJD=010122<br>AUTH=SES<br>B000015 | | 1 | $3,643.80 | I | $3,643.80 |
| 3 | NG845RH | 03/27/01 | | | 900799659<br>SESS NORM DELIVERY SVC CHG<br>FOR LINE ITEM NUMBER 1<br>PK CKT TM1681<br>SESS NORM DELIVERY SVC CHG<br>FOR LINE ITEM NUMBER 2 | | 2 | $35.00 | I | $70.00 |
| | | | | | CONTINUED ON NEXT PAGE | | | | | |

PAYMENT DUE       06/04/01
Contract #                   FOB

| | | |
|---|---|---|
| Sub Total | $ | 3,713.80 |
| Less Advance Payment | | |
| Transportation | $ | .00 |
| Tax | $ | .00 |
| Total Due | $ | 4,013.80 |

Questions About Your Account? Call
DIANE SHULTZ
(404) 573-6623

PLEASE ALLOW FIVE DAYS WHEN PAYING BY MAIL.

INVOICES ARE PAYABLE IN US. CURRENCY AND OVERDUE AMOUNT SHALL BEAR INTEREST AT A REASONABLE RATE OR IS SUBJECT TO LATE PAYMENT CHARGES PER AGREEMENT REMARKS:

**ORIGINAL**

---RETURN THIS PORTION WITH PAYMENT---

**Remit To:**
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: SOPHIA REINALDS
2545 HORSE PEN ROAD
C-1403 1ST FLOOR
HERNDON          VA 20171

| Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|
| 41104351 | N/A | $ 4,013.80 |
| Amount this Bill | Discount Amount | Amount Enclosed |
| $ 4,013.80 | N/A | N/A |

| Account Number | |
|---|---|
| 100109636 | |
| Amount Past Due | |
| N/A | |



# INVOICE

CUST SVC TEAM CODE: SE

LUCENT TECHNOLOGIES, INC.
P.O. BOX 10317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

**Ship To:**
WINSTAR NETWORK EXPANSION LLC / NG845RH
PROJECT WNEQOCO04692 / NG845RH
SPARES AND EXCHANGE
ATTN: RUIZ EFRAIN
101 NORTH WACKER DR    SUITE 1175
CHICAGO        IL 60606-7305

**Bill To:**
WINSTAR WIRELESS
ATTN: SOPHIA REHALDS
2545 NORSE PER ROAD
C-1483 1ST FLOOR
HERNDON        VA 20171

| Invoice Number | 4110435I |
|---|---|
| Invoice Date | 04/04/01 |
| Account Number | 100109636 |
| Page Number | 2 |

PAYMENT DUE 05/04/01

| Customer P.O. # | LUC Reference # | Customer Code | Terms |
|---|---|---|---|
| WNE2692 | | NNY702 (Y7) | NET 30 DAYS |

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | PK CKT TN1681 | | | | | |
| | | | | | CDI=Y;S=NN | | | | | |
| | | | | | SHIP=Q10328;OJD=Q10329 | | | | | |
| | | | | | AUTH=SES | | | | | |
| | | | | | B000015 | | | | | |
| 4 | NG845RH | 03/27/01 | | | 106696503 | | 1 | $300.00 | 1 | $300.00 |
| | | | | | PRODUCT EXCHANGE CHARGE | | | | | |
| | | | | | FOR LINE ITEM NUMBER 1 | | | | | |
| | | | | | PK CKT TN1681 | | | | | |
| | | | | | CDI=Y;S=NN | | | | | |
| | | | | | SHIP=Q10328;OJD=Q10329 | | | | | |
| | | | | | AUTH=SES | | | | | |
| | | | | | B000015 | | | | | |
| | | | | | ****** LAST PAGE ****** | | | | | |

FOB

| | |
|---|---|
| Sub Total | $ 4,013.00 |
| Less Advance Payments | |
| Transportation | .00 |
| Tax | .00 |
| Total Due | $ 4,013.00 |

**MAKE CHECK PAYABLE TO:**

LUCENT TECHNOLOGIES, INC.
P.O. BOX 10317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

INVOICES ARE PAYABLE
IN U.S. CURRENCY AND
OVERDUE AMOUNT
SHALL BEAR INTEREST AT
A REASONABLE RATE OR
IS SUBJECT TO LATE
PAYMENT CHARGES PER
AGREEMENT REMARKS:

**Questions About Your
Account? Call**
DIANE SHULTZ
(404) 573-6273

REMARKS:

PLEASE ALLOW FIVE DAYS WHEN PAYING
BY MAIL.

**ORIGINAL**

CONFIDENTIAL

LW 00300356

B2005

LUCENT TECHNOLOGIES, INC.
ATTN: ACCOUNT RECEIVABLE
P.O. BOX 100317
ATLANTA, GA. 30384-0317

**INVOICE**

Ship To:
WINSTAR
1850 H STREET N.W.
SUITE 300

WASHINGTON          DC 20036

Bill To:
WINSTAR
ATTN: ACCOUNTS PAYABLE
1850 H. STREET          SUITE 300

WASHINGTON          DC 20036

PAYMENT DUE DATE: 05/05/01

| | | | | | |
|---|---|---|---|---|---|
| Invoice Number | S0116623 |
| Invoice Date | 04-05-01 |
| Account Number | 100419789 |
| Page Number | 1 |

| Customer P.O. # | | | | LUC Reference # | | Customer Code | Terms | | Contract # | | FOB | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 84032047 | | | | Q30446 | | Y7- | NET 30 DAYS | | | | ORIGIN | |

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number/Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 0001 | 84032047 | 03-19-01 | NORMAL | | REPAIR LABOR PK CKT TN1800 S6 | 0 | 1 | $2,360.00 | 1 | $2,360.00 |
| 0002 | 84032047 | 03-19-01 | NORMAL | | REPAIR MATERIAL PK CKT TN1800 S6 | 0 | 1 | $408.00 | 1 | $408.00 |
| 0003 | 84032047 | 03-19-01 | NORMAL | | HANDLING CHARGES PK CKT TN1800 S6 | 0 | 1 | $24.00 | 1 | $24.00 |
| | | | | | 2  ITEM(S) RECEIVED FOR REPAIR 2  REPAIRED AND 0  JUNKED | | | | | |
| | | | | | CONTINUED ON NEXT PAGE | | | | | |

| | | |
|---|---|---|
| Sub Total | $ | 2,792.00 |
| Less Advance Payment | | |
| Transportation | $ | .00 |
| Tax | $ | 159.16 |
| Total Due | $ | 2,951.16 |

Questions About
Your Account?
Call

DIANE SHULTZ
(404) 573-3273

INVOICES ARE PAYABLE IN U.S. CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONABLE RATE OR IS
SUBJECT TO LATE PAYMENT CHARGES PER
AGREEMENT REMARKS:

PAYMENTS SHOULD BE RECEIVED
BY DUE DATE. THANK YOU FOR
USING LUCENT TECHNOLOGIES

----- RETURN THIS PORTION WITH PAYMENT -----

Remit To:
LUCENT TECHNOLOGIES, INC.
ATTN: ACCOUNT RECEIVABLE
P.O. BOX 100317
ATLANTA, GA. 30384-0317

Bill To:
WINSTAR
ATTN: ACCOUNTS PAYABLE
1850 H. STREET          SUITE 300

WASHINGTON          DC 20036

| Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|
| S0116623 | N/A | $  2,951.16 |
| Amount This Bill | Discount Amount | Amount Enclosed |
| $  2,951.16 | N/A | N/A |

| Account Number | Invoice Number |
|---|---|
| 100419789 | S0116623 |
| Amount Past Due | Amount This Bill |
| N/A | $  2,951.16 |

**ORIGINAL**

# INVOICE

Lucent Technologies

LUCENT TECHNOLOGIES, INC.
ATTN: ACCOUNT RECEIVABLE
P.O. BOX 100317
ATLANTA, GA. 30384-0317

**Ship To:**

WINSTAR
1850 M STREET N.W.
SUITE 300

WASHINGTON        DC 20036

**Bill To:**

WINSTAR
ATTN: ACCOUNTS PAYABLE
1850 M. STREET        SUITE 300

WASHINGTON        DC 20036

| Invoice Number | S0116623 |
| Invoice Date | 04-05-01 |
| Account Number | 100419769 |
| Page Number | 2 |

PAYMENT DUE DATE: 05/05/01

| Customer P.O. # | LUC Reference # | Customer Code | Terms | Contract # | FOB |
| 84032047 | Q80446 | Y7- | NET 30 DAYS | | ORIGIN |

| Item No | Locent Order | Ship Date | Ship Method | Bill of Lading | Part Number | Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | ****** | FINAL SHIPMENT | | | | | |
| | | | | | ****** | LAST PAGE    ****** | | | | | |

| | | |
|---|---|---|
| Sub Total | $ | 2,792.00 |
| Less Advance Payments | | |
| Transportation | $ | .00 |
| Tax | $ | 159.16 |
| Total Due | $ | 2,951.16 |

**MAKE CHECK PAYABLE TO:**

LUCENT TECHNOLOGIES, INC.
ATTN: ACCOUNT RECEIVABLE
P.O. BOX 100317
ATLANTA, GA. 30384-0317

**ORIGINAL**

**Questions About Your Account    Call**

DIANE SHULTZ
(404) 573-5273

PAYMENTS SHOULD BE RECEIVED
BY DUE DATE. THANK YOU FOR
USING LUCENT TECHNOLOGIES

**REMARKS:**

INVOICES ARE PAYABLE
IN U.S. CURRENCY AND
OVERDUE AMOUNT
SHALL BEAR INTEREST AT
A REASONALBE RATE OR
IS SUBJECT TO LATE
PAYMENT CHARGES PER
AGREEMENT REMARKS:



# INVOICE

CUST SVC TEAM CODE: SE

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100337
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

| | |
|---|---|
| Invoice Number | 71101686 |
| Invoice Date | 03/28/01 |
| Account Number | 100109636 |
| Page Number | 1 |

**Ship To:**
WINSTAR NETWORK EXPANSION LLC
PROJECT WNE00000004692 / 03732VHBill To:
SPARES AND EXCHANGE
ATTN: PATRICK PHILBIN
525 MARKET STREET    SUITE 270
SAN FRANCISCO    CA 94105-2708

WINSTAR WIRELESS
ATTN: SOPHIA REMALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON    VA 20171

PAYMENT DUE 04/27/01

| Customer P.O. # | Lucent Order | Ship Date | Ship Method | Bill of Lading | LUC Reference # | Customer Code | Terms | Contract # | FOB | PM |
|---|---|---|---|---|---|---|---|---|---|---|
| WNE4692 | | | | | | WNW702 (Y7) | NET 30 DAYS | | | I |

| Item No. | Lucent Order | Ship Date | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | Total Price |
|---|---|---|---|---|---|---|---|
| 10 | 03732VH | 01/16/01 | 000799669<br>SES5 NORM DELIVERY SVC CHG<br>FOR LINE ITEM NUMBER 1<br>PK CKT UN 363  S1-3<br>SES5 NORM DELIVERY SVC CHG<br>FOR LINE ITEM NUMBER 2<br>PK CKT UN 560<br>SES5 NORM DELIVERY SVC CHG<br>FOR LINE ITEM NUMBER 3<br>PK CKT KEN  68<br>SES5 NORM DELIVERY SVC CHG<br>FOR LINE ITEM NUMBER 4<br>PK CKT KLU  2 | | 9 | $35.00 | $315.00 |

CONTINUED ON NEXT PAGE

| | |
|---|---|
| Sub Total | $ 315.00 |
| Less Advance Payment | |
| Transportation | $ .00 |
| Tax | $ .00 |
| Total Due | $ 2,685.00 |

Questions About Your Account? Call    DIANE SHULTZ    (404) 573-5873

HAVE A NICE DAY FROM THE PACIFIC REGION CONTRACTS & ACCOUNTS ORGANIZATION.

INVOICES ARE PAYABLE IN U.S. CURRENCY AND OVERDUE AMOUNT SHALL BEAR INTEREST AT A REASONABLE RATE OR IS SUBJECT TO LATE PAYMENT CHARGES PER AGREEMENT REMARKS.

## ORIGINAL

---

**RETURN THIS PORTION WITH PAYMENT**

Remit To:
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: SOPHIA REMALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON    VA 20171

| Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|
| 71101686 | N/A | $ 2,685.00 |

| Account Number | Amount this Bill | Discount Amount | Amount Enclosed |
|---|---|---|---|
| 100109636 | $ 2,685.00 | N/A | |

| Amount Past Due | | | |
|---|---|---|---|
| N/A | | | |



CUST SVC TEAM CODE:  SE

# INVOICE

**Lucent Technologies**
Bell Labs Innovations

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN:  ACCOUNTS RECEIVABLE

**Ship To:**

WINSTAR NETWORK EXPANSION LLC  **Bill To:**
PROJECT WNE000004692 / D3732WH
SPARES AND EXCHANGE
ATTN: PATRICK PHILBIN
525 MARKET STREET          SUITE 270
SAN FRANCISCO    CA 94105-2708

WINSTAR WIRELESS
ATTN: SOPHIA RENALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON              VA 20171

| Invoice Number | 71101686 |
|---|---|
| Invoice Date | 03/28/01 |
| Account Number | 100109636 |
| Page Number | 2 |

PAYMENT DUE  04/27/01

| Item No. | Customer P.O. # / Lucent Order | Ship Date | LUC Reference # / Ship Method | Bill of Lading | Customer Code / Part Number / Description | Terms | Quantity Ordered | Quantity Shipped | FOB / PM | Unit Price | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | WNE4692 | | | | WNY702 (YT) | NET 30 DAYS | | | | | |
| | | | | | Contract # | | | | | | |
| | | | | | SESS NORM DELIVERY SVC CHG | | | | | | |
| | | | | | FOR LINE ITEM NUMBER 5 | | | | | | |
| | | | | | PK CKT KTU 1B | | | | | | |
| | | | | | SESS NORM DELIVERY SVC CHG | | | | | | |
| | | | | | FOR LINE ITEM NUMBER 6 | | | | | | |
| | | | | | PK CKT KTU 1B | | | | | | |
| | | | | | SESS NORM DELIVERY SVC CHG | | | | | | |
| | | | | | FOR LINE ITEM NUMBER 7 | | | | | | |
| | | | | | PK CKT KTU 1 | | | | | | |
| | | | | | SESS NORM DELIVERY SVC CHG | | | | | | |
| | | | | | FOR LINE ITEM NUMBER 8 | | | | | | |
| | | | | | PK CKT THJ848 | | | | | | |
| | | | | | SESS NORM DELIVERY SVC CHG | | | | | | |
| | | | | | FOR LINE ITEM NUMBER 9 | | | | | | |
| | | | | | PK CKT THJ846 | | | | | | |
| | | | | | CDI+YiSV+HN | | | | | | |
| | | | | | SHIP+010117;0JD=010118 | | | | | | |
| | | | | | AUTH=SES | | | | | | |
| | | | | | 8000001 | | | | | | |
| 11 | D3732WH | 01/16/0 | | | 106696503 | | | 1 | 1 | $300.00 | $300.00 |
| | | | | | PRODUCT EXCHANGE CHARGE | | | | | | |
| | | | | | FOR LINE ITEM NUMBER 3 | | | | | | |
| | | | | | PK CKT KBH   6B | | | | | | |

CONTINUED ON NEXT PAGE

**MAKE CHECK PAYABLE TO:**

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN:  ACCOUNTS RECEIVABLE

INVOICES ARE PAYABLE
IN US CURRENCY AND
OVERDUE AMOUNT
SHALL BEAR INTEREST AT
A REASONABLE RATE OR
IS SUBJECT TO LATE
PAYMENT CHARGES PER
AGREEMENT REMARKS.

| | | |
|---|---|---|
| Sub Total | $ | 615.00 |
| Less Advance Payments | | |
| Transportation | $ | .00 |
| Tax | | .00 |
| **Total Due** | $ | 2,695.00 |

**ORIGINAL**

Questions About Your
Account?  Call

DIANE SHULTZ
(404) 573-5273

**REMARKS:**

HAVE A NICE DAY FROM THE
PACIFIC REGION CONTRACTS
& ACCOUNTS ORGANIZATION.



# INVOICE



**LUCENT TECHNOLOGIES, INC.**
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

CUST SVC TEAM CODE: SE

**Ship To:**
WINSTAR NETWORK EXPANSION LLC / D3732VH
PROJECT WHEO000004692
SPARES AND EXCHANGE
ATTN: PATRICK PHILBIN    SUITE 270
525 MARKET STREET
SAN FRANCISCO    CA 94105-2708

**Bill To:**
WINSTAR WIRELESS
ATTN: SOPHIA REYNALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON    VA 20171

Invoice Number   71101686
Invoice Date     03/28/01
Account Number   100109936
Page Number      3

PAYMENT DUE      04/27/01

| Customer P.O. # | Lucent Order | Ship Date | Ship Method | Bill of Lading | LUC Reference # | Customer Code | Terms | Contract # | FOB |
|---|---|---|---|---|---|---|---|---|---|
| WNE4692 | | | | | | NHM702 (Y7) | NET 30 DAYS | | |

| Item No. | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PK | Total Price |
|---|---|---|---|---|---|---|
| 12 | CD1=Y;SY=HN<br>SHIP=010117;OJD=010118<br>AUTH=SES<br>SRV CHG    SES-5 $300.00<br>B000001<br>901083980<br>PRODUCT EXCHANGE CHARGE<br>FOR LINE ITEM NUMBER 2<br>PK CKT UN 560<br>PRODUCT EXCHANGE CHARGE<br>FOR LINE ITEM NUMBER 4<br>PK CKT KLU    2<br>CD1=Y;SY=HN<br>SHIP=010117;OJD=010118<br>AUTH=SES<br>B000001 | | 2 | $1,000.00 | 1 | $2,000.00 |
| 3 | 900799669<br>SES5 MORN DELIVERY SVC CHG<br>FOR LINE ITEM NUMBER 1<br>PK CKT KTU    1<br>SES5 MORN DELIVERY SVC CHG<br>FOR LINE ITEM NUMBER 2 | | 2 | $35.00 | 1 | $70.00 |

CONTINUED ON NEXT PAGE

**Questions About Your Account? Call**
DIANE SHULTZ
(404) 573-5273

**REMARKS:**
HAVE A NICE DAY FROM THE
PACIFIC REGION CONTRACTS
& ACCOUNTS ORGANIZATION.

**MAKE CHECK PAYABLE TO:**
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

INVOICES ARE PAYABLE
IN U.S. CURRENCY AND
OVERDUE AMOUNT
SHALL BEAR INTEREST AT
A REASONABLE RATE OR
IS SUBJECT TO LATE
PAYMENT CHARGES PER
AGREEMENT REMARKS:

| | | |
|---|---|---|
| Sub Total | $ | 2,685.00 |
| Less Advance Payments | | |
| Transportation | $ | .00 |
| Tax | $ | .00 |
| **Total Due** | $ | 2,685.00 |

ORIGINAL

CONFIDENTIAL

LW 00300361

B2010



CUST SVC TEAM CODE:  SE

# INVOICE

Lucent Technologies, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN:  ACCOUNTS RECEIVABLE

| | |
|---|---|
| Invoice Number | 71101666 |
| Invoice Date | 03/28/01 |
| Account Number | 100109636 |
| Page Number | 4 |
| PAYMENT DUE | 04/27/01 |

**Ship To:**
WINSTAR NETWORK EXPANSION LLC  Bill To:
PROJECT WNE000004692 / 03732YH
SPARES AND EXCHANGE
ATTN: PATRICK PHILBIN
525 MARKET STREET    SUITE 270
SAN FRANCISCO    CA 94105-2708

WINSTAR WIRELESS
ATTN: SOPHIA RENALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON    VA 20171

| Customer P.O. # | LUC Reference # | Customer Code | Terms | Contract # | FOB |
|---|---|---|---|---|---|
| WNE4692 | | WNY702  (Y7) | NET 30 DAYS | | |

| Item No. | Locus Order | Ship Date | Ship Finished | Bill of Lading | Part Number/Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | PK CKT KTU    1 | | | | | |
| | | | | | COI=Y;SF=HN | | | | | |
| | | | | | SHIP=00117-0JD=010118 | | | | | |
| | | | | | AUTH=SE53 | | | | | |
| | | | | | B000003 | | | | | |
| | | | | | ****** LAST PAGE ****** | | | | | |

| | | |
|---|---|---|
| Sub Total | $ | 2,665.00 |
| Less Advance Payments | | |
| Transportation | $ | .00 |
| Tax | $ | .00 |
| Total Due | $ | 2,665.00 |

**MAKE CHECK PAYABLE TO:**

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN:  ACCOUNTS RECEIVABLE

INVOICES ARE PAYABLE
IN U.S. CURRENCY AND
OVERDUE AMOUNT
SHALL BEAR INTEREST AT
A REASONABLE RATE OR
IS SUBJECT TO LATE
PAYMENT CHARGES PER
AGREEMENT REMARKS;

ORIGINAL

Questions About Your
Account?  Call
DIANE SHULTZ
(404) 573-5273

REMARKS:
HAVE A NICE DAY FROM THE
PACIFIC REGION CONTRACTS
& ACCOUNTS ORGANIZATION.

CONFIDENTIAL

LW 00300362

B2011



**INVOICE**

CUST SVC TEAM CODE: SE

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

| | |
|---|---|
| Invoice Number | 1101259 |
| Invoice Date | 03/13/01 |
| Account Number | 100109636 |
| Page Number | 1 |

Ship To:
WINSTAR TELECOMMUNICATIONS A4975NH
ATTN: BILL MC MAHON
7799 LEEBURG PIKE   SUITE 401 SOUTH
TYSONS CORNER   VA 22043

Bill To:
WINSTAR
ATTN: ACCOUNTS PAYABLE
SOPHIA REMALDS
1577 SPRINGFIELD ROAD
VIENNA   VA 22182

| Customer P.O. # | Luceut Order | Ship Date | Ship Method | Bill of Ladiag | LUC Reference # | Customer Code | Terms | | | | | Contract # | PAYMENT DUE | FOB |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 100270 | A4975NH | 02/20/01 | | | | NH7701 (Y7) | NET 30 DAYS | | | | | | 04/12/01 | |

| Item No. | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|
| 4 | 900799669 | | 3 | $35.00 | 1 | $105.00 |
| | SE85 NORM DELIVERY SVC CHG | | | | | |
| | FOR LINE ITEM NUMBER 1 | | | | | |
| | PK CKT BKO 2 | | | | | |
| | SE85 NORM DELIVERY SVC CHG | | | | | |
| | FOR LINE ITEM NUMBER 2 | | | | | |
| | PK CKT KTU 1B | | | | | |
| | SE85 NORM DELIVERY SVC CHG | | | | | |
| | FOR LINE ITEM NUMBER 3 | | | | | |
| | PK CKT TN1681 | | | | | |
| | COL*Y:SV=NN | | | | | |
| | SHIP=010221:OJD=010222 | | | | | |
| | AUTH=SES | | | | | |
| | B000434 | | | | | |
| | CONTINUED ON NEXT PAGE | | | | | |

| | | |
|---|---|---|
| Sub Total | $ | 105.00 |
| Less Advance Payment | | |
| Transportation | $ | .00 |
| Tax | $ | .00 |
| **Total Due** | $ | 1,750.00 |

Questions About
Your Account?
Call

DIANE SHULTZ
(404) 573-5533

**RETURN THIS PORTION WITH PAYMENT**

Remit To: LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR
ATTN: ACCOUNTS PAYABLE
SOPHIA REMALDS
1577 SPRINGFIELD ROAD
VIENNA   VA 22182

| Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|
| 1110259 | N/A | $ 1,750.00 |

| Account Number | Amount This Bill | Discount Amount | Amount Enclosed |
|---|---|---|---|
| 100109636 | $ 1,750.00 | N/A | N/A |

| Amount Past Due | | | |
|---|---|---|---|
| N/A | | | |

THANK YOU FOR LETTING US SERVE YOU
AS WE STRIVE FOR BILLING ACCURACY!
YOUR TIMELY PAYMENT IS APPRECIATED.

ALL INVOICES ARE PAYABLE IN U.S. CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONALBE RATE OR IS
SUBJECT TO LATE PAYMENT CHARGES PER
AGREEMENT REMARKS.

**ORIGINAL**

CONFIDENTIAL

LW 00300363

B2012



INVOICE

CUST SVC TEAM CODE:   SE

| | | | | | |
|---|---|---|---|---|---|

Ship To:

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN:  ACCOUNTS RECEIVABLE

WINSTAR TELECOMMUNICATIONS A4975 Bill To:
ATTN: BILL MC MAHON
7799 LEESBURG PIKE   SUITE 401 SOUTH
TYSONS CORNER       VA 22043

WINSTAR
ATTN: ACCOUNTS PAYABLE
SOPHIA REINALDS
1577 SPRINGFIELD ROAD

VIENNA          VA 22182

| | |
|---|---|
| **Invoice Number** | 11101259 |
| **Invoice Date** | 03/13/01 |
| **Account Number** | 100109636 |
| **Page Number** | 2 |

PAYMENT DUE   04/12/01

| Item No. | Customer P.O. # | | LUC Reference # | | | Customer Code | Part Number Description | Terms | Quantity Ordered | Quantity Shipped | Contract # | | | FOB | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 100270 | | | | | WNY701 (Y7) | | NET 30 DAYS | | | | Unit Price | PK | | Total Price |
| | Lucent Order | Ship Date | A4975NH | Ship Method | Bill of Lading | | | | | | | | | | |
| 5 | | 02/20/01 | | | | | 901083900 PRODUCT EXCHANGE CHARGE FOR LINE ITEM NUMBER 1 PK CKT BND 2 CDI=Y;SV=NN SHIP=010221;OJD=010222 AUTH=SES B000434 | | | 1 | | $1,000.00 | 1 | | $1,000.00 |
| 3 | | 02/20/01 | | | | | 900799669 SES5 NORM DELIVERY SVC CHG FOR LINE ITEM NUMBER 1 PK CKT KTU 1 SES5 NORM DELIVERY SVC CHG FOR LINE ITEM NUMBER 2 PK CKT KTU 1 CDI=Y;SV=NN SHIP=010221;OJD=010222 AUTH=SES B000435 | | | 2 | | $35.00 | 1 | | $70.00 |
| 4 | | 02/20/01 | | | | | 106696503 PRODUCT EXCHANGE CHARGE FOR LINE ITEM NUMBER 2 | | | 1 | | $300.00 | 1 | | $300.00 |

CONTINUED ON NEXT PAGE

MAKE CHECK PAYABLE TO:

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

INVOICES ARE PAYABLE
IN U.S. CURRENCY AND
OVERDUE AMOUNT
SHALL BEAR INTEREST AT
A REASONABLE RATE OR
IS SUBJECT TO LATE
PAYMENT CHARGES PER
AGREEMENT REMARKS:

| | | |
|---|---|---|
| **Sub Total** | $ | 1,475.00 |
| **Less Advance Payments** | | |
| **Transportation** | $ | .00 |
| **Tax** | $ | .00 |
| **Total Due** | $ | 1,750.00 |

Questions About Your
Account?  Call

DIANE SHULTZ
(404) 573-5273

REMARKS:   THANK YOU FOR LETTING US SERVE YOU
AS WE STRIVE FOR BILLING ACCURACY!
YOUR TIMELY PAYMENT IS APPRECIATED.

ORIGINAL

CONFIDENTIAL

LW 00300364

B2013

Lucent Technologies, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

# INVOICE

CUST SVC TEAM CODE: SE

**Ship To:**

WINSTAR TELECOMMUNICATIONS A497 **Bill To:**
ATTN: BILL MC MAHON
7799 LEEBURG PIKE   SUITE 401 SOUTH
TYSONS CORNER      VA 22043

WINSTAR
ATTN: ACCOUNTS PAYABLE
SOPHIA REWALDS
1577 SPRINGFIELD ROAD

VIENNA      VA 22182

| Invoice Number | 11101259 |
|---|---|
| Invoice Date | 03/13/01 |
| Account Number | 100109636 |
| Page Number | 3 |

PAYMENT DUE      04/12/01

| Customer P.O. # | | Customer Code | Terms | | Contract # | | FOB |
|---|---|---|---|---|---|---|---|
| 100270 | | HNY701 (Y7) | NET 30 DAYS | | | | |

| Item No. | Lucent Order | Ship Date | LUC Reference # | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | PK CKT KTU      1 | | | | | |
| | | | | | | CDI*J*15V=HN | | | | | |
| | | | | | | SHIP=010221;OJD=010222 | | | | | |
| | | | | | | AUTH=SES | | | | | |
| | | | | | | B000436 | | | | | |
| 2 | A4975NH | 02/20/01 | | | | 900799669 | | 1 | $35.00 | 1 | $35.00 |
| | | | | | | SES5 MORN DELIVERY SVC CHG | | | | | |
| | | | | | | FOR LINE ITEM NUMBER 1 | | | | | |
| | | | | | | PK CKT SH 5168 | | | | | |
| | | | | | | CDI*J*15V=HN | | | | | |
| | | | | | | SHIP=010221;OJD=010222 | | | | | |
| | | | | | | AUTH=SES | | | | | |
| | | | | | | B000439 | | | | | |
| 3 | A4975NH | 02/20/01 | | | | 100696479 | | 1 | $240.00 | 1 | $240.00 |
| | | | | | | PRODUCT EXCHANGE CHARGE | | | | | |
| | | | | | | FOR LINE ITEM NUMBER 1 | | | | | |
| | | | | | | PK CKT SH 5168 | | | | | |
| | | | | | | CDI*J*15V=HN | | | | | |
| | | | | | | SHIP=010221;OJD=010222 | | | | | |
| | | | | | | AUTH=SES | | | | | |
| | | | | | | B000439 | | | | | |
| | | | | | | *****  LAST PAGE  ***** | | | | | |

INVOICES ARE PAYABLE
IN U.S. CURRENCY AND
OVERDUE AMOUNT
SHALL BEAR INTEREST AT
A REASONABLE RATE OR
IS SUBJECT TO LATE
PAYMENT CHARGES PER
AGREEMENT REMARKS:

| Sub Total | $ | 1,750.00 |
|---|---|---|
| Less Advance Payment | | |
| Transportation | $ | .00 |
| Tax | $ | .00 |
| Total Due | $ | 1,750.00 |

**MAKE CHECK PAYABLE TO:**

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

ORIGINAL

**Questions About Your Account? Call**
DIANE SKULTZ
(404) 573-5273

**REMARKS:**
THANK YOU FOR LETTING US SERVE YOU
AS WE STRIVE FOR BILLING ACCURACY!
YOUR TIMELY PAYMENT IS APPRECIATED.



CONFIDENTIAL

B2015

# INVOICE

CUST SVC TEAM CODE:  SE

Lucent Technologies, Inc.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

**Ship To:**
WINSTAR TELECOMMUNICATIONS A4975NH
ATTN: BILL MC MAHON
7799 LEEBURG PIKE   SUITE 401 SOUTH
TYSONS CORNER   VA 22043

**Bill To:**
WINSTAR
ATTN: ACCOUNTS PAYABLE
SOPHIA RENALDS
1577 SPRINGFIELD ROAD

VIENNA   VA 22182

| Invoice Number | 11101399 |
|---|---|
| Invoice Date | 03/19/01 |
| Account Number | 100109636 |
| Page Number | 2 |
| PAYMENT DUE | 04/18/01 |

Customer Code: WNY701 (Y7)
Terms: NET 30 DAYS
Contract #:   FOB

| Item No. | Customer P.O. # | Lucent Order | Ship Date | Ship Method | Bill of Lading | LUC Reference # | Part Number/Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 100270 | | | | | | | | | | | |
| 3 | | A4975NH | 03/13/01 | | | | CDI=Y;SV=NH SHIP=010314;OJD=010315 AUTH=SES B000444 | | | | | |
| | | | | | | | 10696503 PRODUCT EXCHANGE CHARGE FOR LINE ITEM NUMBER 1 PK CKT UN 376C CDI=Y;SV=NH SHIP=010314;OJD=010315 AUTH=SES B000444 | | 1 | $300.00 | 1 | $300.00 |
| 2 | | A4975NH | 03/06/01 | | | | 900799669 SESS NORM DELIVERY SVC CHG FOR LINE ITEM NUMBER 1 PK CKT TN1601 CDI=Y;SV=NH SHIP=010307;OJD=010308 AUTH=SES B000445 | | 1 | $35.00 | 1 | $35.00 |

****** LAST PAGE ******

| | | |
|---|---|---|
| Sub Total | $ | 1,405.00 |
| Less Advance Payments | $ | .00 |
| Transportation | | |
| Tax | $ | .00 |
| Total Due | $ | 1,405.00 |

**MAKE CHECK PAYABLE TO:**
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

INVOICES ARE PAYABLE
IN U.S. CURRENCY AND
OVERDUE AMOUNT
SHALL BEAR INTEREST AT
A REASONALBE RATE OR
IS SUBJECT TO LATE
PAYMENT CHARGES PER
AGREEMENT REMARKS:

ORIGINAL

**Questions About Your Account? Call**
DIANE SHULTZ
(404) 573-5273

**REMARKS:**
THANK YOU FOR LETTING US SERVE YOU
AS WE STRIVE FOR BILLING ACCURACY!
YOUR TIMELY PAYMENT IS APPRECIATED.

CONFIDENTIAL

LW 00300367

B2016

**INVOICE**

CUST SVC TEAM CODE: SE

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN:  ACCOUNTS RECEIVABLE

Ship To:
WINSTAR NETWORK EXPANSION LLC
PROJECT WNE000004692 / G8824MH
SPARES AND EXCHANGE
608 2ND AVENUE SOUTH
MINNEAPOLIS         MN 55402-1916

Bill To:
WINSTAR WIRELESS
ATTN: SOPHIA REINALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON         VA 20171

| Invoice Number | 61101127 |
|---|---|
| Invoice Date | 04/04/01 |
| Account Number | 10109636 |
| Page Number | 1 |

| Customer P.O. # | Lucent Order | Ship Date | LUC Reference # | Ship Method | Bill of Lading | Customer Code | Terms |
|---|---|---|---|---|---|---|---|
| WNE4692 | G8824MH | 03/02/01 | | | | WNY702 (Y7) | NET 30 DAYS |

| Item No. | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|
| 3 | 900799661 | | 2 | $70.00 | 1 | $140.00 |
| | SES ENER DELIVERY SVC CHG | | | | | |
| | FOR LINE ITEM NUMBER 1 | | | | | |
| | SES ENER DELIVERY SVC CHG | | | | | |
| | FOR LINE ITEM NUMBER 2 | | | | | |
| | PK CKT TN1683 | | | | | |
| | PK CKT TN1684 | | | | | |
| | CDI*YI:SVANN | | | | | |
| | SHIP*010328:OJD*010329 | | | | | |
| | AUTH*SES | | | | | |
| | B000002 | | | | | |
| | | | | | | |
| | CONTINUED ON NEXT PAGE | | | | | |

PAYMENT DUE  05/04/01

Contract #     FOB

|  | Sub Total | $ | 140.00 |
|---|---|---|---|
| | Less Advance Payment | | |
| | Transportation | $ | .00 |
| | Tax | $ | .00 |
| | Total Due | $ | 1,390.00 |

Questions About Your Account?
Call
DIANE SHULTZ
(404) 573-8623

----------- RETURN THIS PORTION WITH PAYMENT -----------

Remit To:
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN:  ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: SOPHIA REINALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON         VA 20171

| Current Balance | $ | | Total Due This Bill | $ | 1,390.00 |
|---|---|---|---|---|---|
| Discount Amount | N/A | | Amount Enclosed | | |

| Account Number | Invoice Number | Amount this Bill | |
|---|---|---|---|
| 10109636 | 61101127 | $ | 1,390.00 |

| Amount Past Due | | | |
|---|---|---|---|
| N/A | | | |

INVOICES ARE PAYABLE IN U.S. CURRENCY AND OVERDUE AMOUNTS SHALL BEAR INTEREST AT A REASONABLE RATE OR IS SUBJECT TO LATE PAYMENT CHARGES PER AGREEMENT REMARKS.

**ORIGINAL**

CONFIDENTIAL

B2017

LW 00300368



# INVOICE

CUST SVC TEAM CODE:  SE

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN:  ACCOUNTS RECEIVABLE

**Ship To:**
WINSTAR NETWORK EXPANSION LLC   **Bill To:**
PROJECT WNE00004692 / G8824HH
SPARES AND EXCHANGE
ATTN: PAT CHRASTEK
608 2ND AVENUE SOUTH
MINNEAPOLIS          MN 55402-1916

WINSTAR WIRELESS
ATTN: SOPHIA REHALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON          VA 20171

Invoice Number     6110127
Invoice Date       04/04/01
Account Number     100109636
Page Number        2

PAYMENT DUE        05/04/01

| Customer P.O. # | | LUC Reference # | Customer Code | Terms | | Contract # | | FOB | |
|---|---|---|---|---|---|---|---|---|---|
| WNE4692 | | | WNY702 (Y7) | NET 30 DAYS | | | | | |

| Item No | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 4 | G8824HH | 03/27/0 | | | 10699446 | | 2 | $625.00 | 1 | $1,250.00 |
| | | | | | PRODUCT EXCHANGE CHARGE | | | | | |
| | | | | | FOR LINE ITEM NUMBER 1 | | | | | |
| | | | | | PK CKT TN1683 | | | | | |
| | | | | | PRODUCT EXCHANGE CHARGE | | | | | |
| | | | | | FOR LINE ITEM NUMBER 2 | | | | | |
| | | | | | PK CKT TN1684 | | | | | |
| | | | | | CBI*T:SV=HN | | | | | |
| | | | | | SHIP=010328,OID=010329 | | | | | |
| | | | | | AUTH=SES | | | | | |
| | | | | | B000002 | | | | | |
| | | | | | ****** LAST PAGE ****** | | | | | |

**MAKE CHECK PAYABLE TO:**

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN:  ACCOUNTS RECEIVABLE

INVOICES ARE PAYABLE
IN U.S. CURRENCY AND
OVERDUE AMOUNT
SHALL BEAR INTEREST AT
A REASONABLE RATE OR
IS SUBJECT TO LATE
PAYMENT CHARGES PER
AGREEMENT REMARKS:

| | | |
|---|---|---|
| Sub Total | $ | 1,390.00 |
| Less Advance Payments | | |
| Transportation | $ | .00 |
| Tax | $ | .00 |
| Total Due | $ | 1,390.00 |

**Questions About Your Account?  Call**
DIANE SHULTZ
(404) 573-5273

**REMARKS:**

ORIGINAL

CONFIDENTIAL

LW  00300369

B2018



LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN:  ACCOUNTS RECEIVABLE

# INVOICE

CUST SVC TEAM CODE:  SE

Ship To:  WINSTAR TELECOMMUNICATIONS A4975NN
ATTN:  BILL MC MAHON
7799 LEEBURG PIKE  SUITE 401 SOUTH
TYSONS CORNER     VA 22043

Bill To:  WINSTAR
ATTN:  ACCOUNTS PAYABLE
SOPHIA REMALDS
1577 SPRINGFIELD ROAD
VIENNA     VA 22182

| Invoice Number | 11100961 |
| Invoice Date | 02/27/01 |
| Account Number | 100109636 |
| Page Number | 1 |

| Item No. | Customer P.O. # | Lucent Order | Ship Date | LUC Reference # | Ship Method | Bill of Lading | Customer Code | Part Number Description | Terms | Quantity Ordered | Quantity Shipped | Contract # | PM | Unit Price | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | NNY701 (Y7) | | NET 30 DAYS | | | | | | |
| 2 | 100270 | A4975NH | 02/13/01 | | | | | 900799469 SESS MODM DELIVERY SVC CHG FOR LINE ITEM NUMBER 1 PK CKT TN1684 CD1*VJSV*NN SHIP*010214;OJD*010215 AUTM*SES B000493 | | | 1 | | I | $35.00 | $35.00 |
| 3 | | A4975NH | 02/13/01 | | | | | 10669446 PRODUCT EXCHANGE CHARGE FOR LINE ITEM NUMBER 1 PK CKT TN1684 | | | 1 | | I | $625.00 | $625.00 |
| | | | | | | | | CONTINUED ON NEXT PAGE | | | | | | | |

| | |
|---|---|
| Sub Total | $ 660.00 |
| Less Advance Payment | |
| Transportation | $ .00 |
| Tax | $ .00 |
| Total Due | $ 1,355.00 |

Questions About Your Account?
Call
DIANE SHULTZ
(404) 573-4623

INVOICES ARE PAYABLE IN U.S. CURRENCY AND OVERDUE AMOUNTS SHALL BEAR INTEREST AT A REASONALBE RATE OR IS SUBJECT TO LATE PAYMENT CHARGES PER AGREEMENT REMARKS:

THANK YOU FOR LETTING US SERVE YOU AS WE STRIVE FOR BILLING ACCURACY!
YOUR TIMELY PAYMENT IS APPRECIATED.

**ORIGINAL**

---

**RETURN THIS PORTION WITH PAYMENT**

Remit To:  LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN:  ACCOUNTS RECEIVABLE

WINSTAR
ATTN:  ACCOUNTS PAYABLE
SOPHIA REMALDS
1577 SPRINGFIELD ROAD
VIENNA     VA 22182

| | | Current Balance | | Total Due This Bill |
|---|---|---|---|---|
| | | $ | 1,355.00 | |

| Account Number | Invoice Number | Discount Amount | Amount Enclosed |
|---|---|---|---|
| 100109636 | 11100961 | N/A | N/A |

| Amount Past Due | Amount this Bill | | | |
|---|---|---|---|---|
| N/A | $ 1,355.00 | | | |

CONFIDENTIAL

LW 00300370

B2019

⬤ Lucent Technologies
Bell Labs Innovations

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN:  ACCOUNTS RECEIVABLE

# INVOICE

CUST SVC TEAM CODE:  SE

| | |
|---|---|
| Invoice Number | 11103961 |
| Invoice Date | 02/27/01 |
| Account Number | 100109636 |
| Page Number | 2 |

PAYMENT DUE  03/29/01

**Ship To:**
WINSTAR TELECOMMUNICATIONS A497 **Bill To:**
ATTN: BILL MC MAHON
7799 LEESBURG PIKE    SUITE 401 SOUTH
TYSONS CORNER    VA 22043

WINSTAR
ATTN: ACCOUNTS PAYABLE
SOPHIA REBULDS
1577 SPRINGFIELD ROAD

VIENNA    VA 22182

| Customer P.O. # | | | | Customer Code | Terms | | | Contract # | | | FOB |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 100270 | | | | NWY701 (Y7) | NET 30 DAYS | | | | | | |

| Item No. | Lucent Order | Ship Date | LUC Reference # | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | | | | | | CD1=Y:SV=NN SHIP=010214:OJD=010215 AUTH=SES B000433 | | 1 | $35.00 | 1 | $35.00 |
| | A4975NH | 02/13/01 | | | | 900799669 SES5 NORM DELIVERY SVC CHG FOR LINE ITEM NUMBER 1 PK CKT TN1584 CD1=Y:SV=NN SHIP=010214:OJD=010215 AUTH=SES B000435 | | | | | |
| 3 | A4975NH | 02/13/01 | | | | 106666445 PRODUCT EXCHANGE CHARGE FOR LINE ITEM NUMBER 1 PK CKT TN1584 CD1=Y:SV=NN SHIP=010214:OJD=010215 AUTH=SES B000435 | | 1 | $625.00 | 1 | $625.00 |

CONTINUED ON NEXT PAGE

| | | |
|---|---|---|
| Sub Total | $ | 1,320.00 |
| Less Advance Payments | $ | .00 |
| Transportation | $ | .00 |
| Tax | | |
| Total Due | $ | 1,355.00 |

INVOICES ARE PAYABLE
IN U.S. CURRENCY AND
OVERDUE AMOUNT
SHALL BEAR INTEREST AT
A REASONABLE RATE OR
IS SUBJECT TO LATE
PAYMENT CHARGES PER
AGREEMENT REMARKS.

ORIGINAL

**MAKE CHECK PAYABLE TO:**

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

**Questions About Your Account?  Call**

DIANE SHULTZ
(404) 573-8273

**REMARKS:**

THANK YOU FOR LETTING US SERVE YOU
AS WE STRIVE FOR BILLING ACCURACY!
YOUR TIMELY PAYMENT IS APPRECIATED.

CONFIDENTIAL

LW 00300371

B2020



# INVOICE

CUST SVC TEAM CODE:  SE

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN:  ACCOUNTS RECEIVABLE

| | |
|---|---|
| Invoice Number | 11100961 |
| Invoice Date | 02/27/01 |
| Account Number | 100109636 |
| Page Number | 3 |

Bill To:
WINSTAR TELECOMMUNICATIONS A4975MH
ATTN: BILL MC MAHON
7799 LEEBURG PIKE   SUITE 401 SOUTH
TYSONS CORNER   VA 22043

Ship To:
WINSTAR
ATTN: ACCOUNTS PAYABLE
SOPHIA REYNOLDS
1577 SPRINGFIELD ROAD

VIENNA   VA 22182

PAYMENT DUE  03/29/01

| Customer P.O. # | LUC Reference # | Customer Code | Terms | Contract # | | FOB |
|---|---|---|---|---|---|---|
| 100270 | | MMY701 (Y7) | NET 30 DAYS | | | |

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number/Description | Quantity Ordered | Quantity Shipped | PM | Unit Price | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 2 | A4975MH | 02/13/01 | | | 900799669 | | 1 | 1 | $35.00 | $35.00 |
| | | | | | SE85 NORM DELIVERY SVC CHG | | | | | |
| | | | | | FOR LINE ITEM NUMBER 1 | | | | | |
| | | | | | PK CKT TN1681 | | | | | |
| | | | | | CDI=Y:SY=NH | | | | | |
| | | | | | SHIP=010214:DJD=010215 | | | | | |
| | | | | | AUTH=SES | | | | | |
| | | | | | B000437 | | | | | |
| | | | | | ****** LAST PAGE ****** | | | | | |

| | | |
|---|---|---|
| Sub Total | $ | 1,355.00 |
| Less Advance Payments | $ | .00 |
| Transportation | $ | .00 |
| Tax | $ | |
| Total Due | $ | 1,355.00 |

Questions About Your
Account?   Call

DIANE SHULTZ
(404) 573-5273

REMARKS:

THANK YOU FOR LETTING US SERVE YOU
AS WE STRIVE FOR BILLING ACCURACY!
YOUR TIMELY PAYMENT IS APPRECIATED.

MAKE CHECK PAYABLE TO:

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN:  ACCOUNTS RECEIVABLE

INVOICES ARE PAYABLE
IN U.S. CURRENCY AND
OVERDUE AMOUNT
SHALL BEAR INTEREST AT
A REASONABLE RATE OR
IS SUBJECT TO LATE
PAYMENT CHARGES PER
AGREEMENT REMARKS:

ORIGINAL



INVOICE

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

| | |
|---|---|
| Invoice Number | SU105490 |
| Invoice Date | 03/21/01 |
| Account Number | 100793150 |
| Page Number | 1 |

**Ship To:**
WINSTAR
ATTN: BRAD SHELTON
1577 SPRING HILL ROAD

VIENNA    VA 22182223

**Bill To:**
WINSTAR
ATTN: BRAD SHELTON
1577 SPRING HILL ROAD

VIENNA    VA 22182223

| Customer P.O. # | LUC Reference # | Customer Code | Terms |
|---|---|---|---|
| PO#000002828 | | Y7 | NET 30 DAYS |

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 00001 | EBW4200 | 02/27/01 | | | 18 X 24C SIZE EXP DWGS | | 388 | $2.64 | E | $1,023.46 |
| | | | | | TAX AMOUNT | | | | | $46.06 |
| | | | | | ****** LAST PAGE ****** | | | | | |

| | | |
|---|---|---|
| Sub Total | $ | 1,023.46 |
| Less Advance Payment | | |
| Transportation | $ | .00 |
| Tax | $ | 46.06 |
| Total Due | $ | 1,069.52 |

PAYMENT DUE 04/20/01
FOB

Contract #

Questions About
Your Account?
Call

DIANE SHULTZ
(404) 573-5273

THANK YOU FOR USING
LUCENT TECHNOLOGIES

INVOICES ARE PAYABLE IN U.S. CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONABLE RATE OR IS
SUBJECT TO LATE PAYMENT CHARGES PER
AGREEMENT REMARKS.

**ORIGINAL**

--- RETURN THIS PORTION WITH PAYMENT ---

**Remit To:**
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR
ATTN: BRAD SHELTON
1577 SPRING HILL ROAD

VIENNA    VA 22182223

| Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|
| | | $ 1,069.52 |

| Account Number | Amount This Bill | Discount Amount | Amount Enclosed |
|---|---|---|---|
| 100793150 | $ 1,069.52 | N/A | N/A |

| Amount Past Due | | | |
|---|---|---|---|
| N/A | | | |



CUST SVC TEAM CODE: SE

# INVOICE

**LUCENT TECHNOLOGIES, INC.**
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

| | |
|---|---|
| Invoice Number | 11101746 |
| Invoice Date | 04/04/01 |
| Account Number | 100109636 |
| Page Number | 1 |

**Ship To:**
WINSTAR TELECOMMUNICATIONS A4975HH
ATTN: BILL MC MAHON
7799 LEESBURG PIKE   SUITE 401 SOUTH
TYSONS CORNER        VA 22043

**Bill To:**
WINSTAR
ATTN: ACCOUNTS PAYABLE
SOPHIA REMALDS
1577 SPRINGFIELD ROAD

VIENNA        VA 22182

| Customer P.O. # | LUC Reference # | Customer Code | Terms |
|---|---|---|---|
| 100270 | | HWY270 (Y7) | NET 30 DAYS |

| Item No. | Lucet Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 3 | A4975HH | 03/27/01 | | | 900799669<br>SESS NORM DELIVERY SVC CHG<br>FOR LINE ITEM NUMBER 1<br>PK CKT KTU  2<br>SESS NORM DELIVERY SVC CHG<br>FOR LINE ITEM NUMBER 2<br>PK CKT UN 530<br>CD1=Y1;SV=NN<br>SHIP=Q10329LOJD=Q10329<br>AUTH=SES<br>8000448 | | 2 | $35.00 | 1 | $70.00 |
| | | | | | CONTINUED ON NEXT PAGE | | | | | |

| | | |
|---|---|---|
| | Sub Total | $ 70.00 |
| Less Advance Payment | | |
| | Transportation | $ .00 |
| | Tax | $ .00 |
| | Total Due | $ 1,030.00 |

Questions About
Your Account?
Call

DIANE SHULTZ
(404) 573-8623

THANK YOU FOR LETTING US SERVE YOU
AS WE STRIVE FOR BILLING ACCURACY!
YOUR TIMELY PAYMENT IS APPRECIATED.

INVOICES ARE PAYABLE IN US CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONABLE RATE OR IS
SUBJECTED TO LATE PAYMENT CHARGES PER
AGREEMENT REMARKS.

# ORIGINAL

---

**RETURN THIS PORTION WITH PAYMENT**

PAYMENT DUE
Contract #        06/04/01        FOB

**Remit To:**
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR
ATTN: ACCOUNTS PAYABLE
SOPHIA REMALDS
1577 SPRINGFIELD ROAD

VIENNA        VA 22182

| Current Balance | Total Due This Bill |
|---|---|
| N/A | 1,030.00 |

| Discount Amount | Amount Enclosed |
|---|---|
| N/A | |

| Account Number | Invoice Number |
|---|---|
| 100109636 | 11101746 |

| Amount Past Due | Amount This Bill |
|---|---|
| N/A | $ 1,030.00 |

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

# INVOICE

CUST SVC TEAM CODE: SE

Ship To:

WINSTAR TELECOMMUNICATIONS A497 Bill To:
ATTN: BILL MC MAHON
7799 LEEBURG PIKE  SUITE 401 SOUTH
TYSONS CORNER  VA 22043

WINSTAR
ATTN: ACCOUNTS PAYABLE
SOPHIA REWALDS
1577 SPRINGFIELD ROAD

VIENNA  VA 22182

| | | | |
|---|---|---|---|
| Invoice Number | 11101746 |
| Invoice Date | 04/04/01 |
| Account Number | 100100636 |
| Page Number | 2 |
| PAYMENT DUE | 05/04/01 |

| Customer P.O. # | | LUC Reference # | | Customer Code | | Terms | Contract # | | FOB |
|---|---|---|---|---|---|---|---|---|---|
| 100270 | | | | WNW701 (Y7) | | NET 30 DAYS | | | |

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 4 | A4975MH | 03/27/01 | | | 106696446 PRODUCT EXCHANGE CHARGE FOR LINE ITEM NUMBER 2 PK CKT UN 538 CDI*Y:SV=HN SHIP=010328:OJD=010329 AUTH=SES B000448 | | 1 | $625.00 | 1 | $625.00 |
| 5 | A4975MH | 03/27/01 | | | 106696503 PRODUCT EXCHANGE CHARGE FOR LINE ITEM NUMBER 1 PK CKT KTU 2 CDI*Y:SV=HN SHIP=010328:OJD=010329 AUTH=SES B000448 | | 1 | $300.00 | 1 | $300.00 |
| 2 | A4975MH | 03/27/01 | | | 90079669 SES5 NORM DELIVERY SVC CHG FOR LINE ITEM NUMBER 1 PK CKT TN1369 CDI*Y:SV=HN SHIP=010328:OJD=010329 | | 1 | $35.00 | 1 | $35.00 |

CONTINUED ON NEXT PAGE

MAKE CHECK PAYABLE TO:

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

INVOICES ARE PAYABLE
IN U.S. CURRENCY AND
OVERDUE AMOUNT
SHALL BEAR INTEREST AT
A REASONABLE RATE OR
IS SUBJECT TO LATE
PAYMENT CHARGES PER
AGREEMENT REMARKS:

| | | |
|---|---|---|
| Sub Total | $ | 1,030.00 |
| Less Advance Payments | | |
| Transportation | $ | .00 |
| Tax | $ | .00 |
| Total Due | $ | 1,030.00 |

ORIGINAL

Questions About Your
Account? Call

DIANE SHULTZ
(404) 573-5273

REMARKS:

THANK YOU FOR LETTING US SERVE YOU
AS WE STRIVE FOR BILLING ACCURACY!
YOUR TIMELY PAYMENT IS APPRECIATED.

CONFIDENTIAL

LW 00300375

B2024



CUST SVC TEAM CODE: SE

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

# INVOICE

| | |
|---|---|
| Invoice Number | 11101746 |
| Invoice Date | 04/04/01 |
| Account Number | 100100636 |
| Page Number | 3 |

**Ship To:**

WINSTAR TELECOMMUNICATIONS A497
ATTN: BILL MC MAHON
7799 LEEBURG PIKE   SUITE 401 SOUTH
TYSONS CORNER        VA 22043

**Bill To:**

WINSTAR
ATTN: ACCOUNTS PAYABLE
SOPHIA REBALDS
1577 SPRINGFIELD ROAD
VIENNA        VA 22182

PAYMENT DUE    05/04/01

| Customer P.O. # | Customer Code | Terms | Contract # | FOB |
|---|---|---|---|---|
| 100270 | HWY701 (Y7) | NET 30 DAYS | | |

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | LUC Reference # | Part Number/Discription | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | AUTH-SES B000449 | | | | | |
| | | | | | | ****** LAST PAGE ****** | | | | | |

| | | |
|---|---|---|
| Sub Total | $ | 1,030.00 |
| Less Advance Payments | | |
| Transportation | $ | .00 |
| Tax | $ | .00 |
| Total Due | $ | 1,030.00 |

**ORIGINAL**

**MAKE CHECK PAYABLE TO:**

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

Questions About Your
Account?   Call

DIANE SHULTZ
(404) 573-5273

REMARKS:

THANK YOU FOR LETTING US SERVE YOU
AS WE STRIVE FOR BILLING ACCURACY!
YOUR TIMELY PAYMENT IS APPRECIATED.

INVOICES ARE PAYABLE
IN U.S. CURRENCY AND
OVERDUE AMOUNT
SHALL BEAR INTEREST AT
A REASONABLE RATE OR
IS SUBJECT TO LATE
PAYMENT CHARGES PER
AGREEMENT REMARKS:

CONFIDENTIAL

LW 00300376

B2025



CUST SVC TEAM CODE: SE

**INVOICE**

Lucent Technologies, Inc.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

Ship To:
WINSTAR NETWORK EXPANISON LLC
PROJECT 1 WNE00000004492 G9913LH  Bill To:
SPARES AND EXCHANGE
ATTN: AL BURLEY
34 PEACHTREE ST NW  SUITE 400
ATLANTA    GA 30303-2334

WINSTAR WIRELESS
ATTN: SOPHIA RENALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON    VA 20171

Invoice Number      31102722
Invoice Date        03/26/01
Account Number      100109636
Page Number         1

| Customer P.O. # | Lucent Reference # |
| --- | --- |
| WNE4692 | G9913LH |

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Customer Code | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | 02/13/01 | | | WNY702 (Y7) | | | | | | |
| 8 | G9913LH | | | | | 900799669 | | 7 | $35.00 | 1 | $245.00 |
| | | | | | | SESS NORM DELIVERY SVC CHG | | | | | |
| | | | | | | FOR LINE ITEM NUMBER 1 | | | | | |
| | | | | | | PK CKT BKF  1 | | | | | |
| | | | | | | SESS NORM DELIVERY SVC CHG | | | | | |
| | | | | | | FOR LINE ITEM NUMBER 2 | | | | | |
| | | | | | | PK CKT UN 560 | | | | | |
| | | | | | | SESS NORM DELIVERY SVC CHG | | | | | |
| | | | | | | FOR LINE ITEM NUMBER 3 | | | | | |
| | | | | | | PK CKT BKD  1 | | | | | |
| | | | | | | SESS NORM DELIVERY SVC CHG | | | | | |
| | | | | | | FOR LINE ITEM NUMBER 4 | | | | | |
| | | | | | | PK CKT KTU  1B | | | | | |
| | | | | | | CONTINUED ON NEXT PAGE | | | | | |

Terms: NET 30 DAYS

PAYMENT DUE  04/26/01
Contract #                    FOB

| | | |
| --- | --- | --- |
| Sub Total | $ | 245.00 |
| Less Advance Payment | | |
| Transportation | $ | .00 |
| Tax | $ | .00 |
| Total Due | $ | 845.00 |

Questions About
Your Account?
Call

DIANE SHULTZ
(404) 573-5273

THANK YOU FOR USING
LUCENT TECHNOLOGIES

INVOICES ARE PAYABLE IN U.S CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONABLE RATE OR IS
SUBJECT TO LATE PAYMENT CHARGES PER
AGREEMENT REMARKS

**ORIGINAL**

------- RETURN THIS PORTION WITH PAYMENT -------

Remit To:
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: SOPHIA RENALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR

HERNDON    VA 20171

| Account Number | Invoice Number | Current Balance | Total Due This Bill |
| --- | --- | --- | --- |
| 100109636 | 31102722 | N/A | $ 845.00 |

| Amount Past Due | Amount This Bill | Discount Amount | Amount Enclosed |
| --- | --- | --- | --- |
| N/A | $ 845.00 | N/A | |

CONFIDENTIAL

LW 00300377

B2026



# INVOICE

CUST SVC TEAM CODE: SE

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

**Ship To:**
WINSTAR NETWORK EXPANISON LLC
PROJECT: HNE0000004692 G9913LH
SPARES AND EXCHANGE
ATTN: AL BURLEY
34 PEACHTREE ST NW  SUITE 400
ATLANTA        GA 30303-2234

**Bill To:**
WINSTAR WIRELESS
ATTN: SOPHIA RENALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON        VA 20171

| Invoice Number | 31102722 |
|---|---|
| Invoice Date | 03/26/01 |
| Account Number | 10010936 |
| Page Number | 2 |

PAYMENT DUE   04/25/01

| Item No. | Customer P.O. # | | LUC Reference # | | | Customer Code | | Terms | FOB |
|---|---|---|---|---|---|---|---|---|---|
| | Lucent Order | Ship Date | Ship Method | Bill of Lading | | HNW702 (V7) | | NET 30 DAYS | |

Customer P.O. #: WNE4692

Contract #

| Item No. | Lucent Order | Ship Date | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|
| | | | SES5 MORN DELIVERY SVC CHG | | | | | |
| | | | FOR LINE ITEM NUMBER 5 | | | | | |
| | | | PK CKT KLU  1B | | | | | |
| | | | SES5 MORN DELIVERY SVC CHG | | | | | |
| | | | FOR LINE ITEM NUMBER 6 | | | | | |
| | | | PK CKT KTU  1 | | | | | |
| | | | SES5 MORN DELIVERY SVC CHG | | | | | |
| | | | FOR LINE ITEM NUMBER 7 | | | | | |
| | | | CONNECTOR 98220Y | | | | | |
| | | | CDI*I;SV=WN | | | | | |
| | | | SHIP=010214;OJD=010215 | | | | | |
| | | | AUTH=SES | | | | | |
| | | | B0Q0003 | | | | | |
| 9 | G9913LH 02/13/01 | | 105696503 | | 2 | $300.00 | 1 | $600.00 |
| | | | PRODUCT EXCHANGE CHARGE | | | | | |
| | | | FOR LINE ITEM NUMBER 6 | | | | | |
| | | | PK CKT KTU  1 | | | | | |
| | | | PRODUCT EXCHANGE CHARGE | | | | | |
| | | | FOR LINE ITEM NUMBER 7 | | | | | |
| | | | CONNECTOR 98220Y | | | | | |
| | | | CDI*I;SV=WN | | | | | |
| | | | SHIP=010214;OJD=010215 | | | | | |
| | | | AUTH=SES | | | | | |
| | | | B0Q0003 | | | | | |

CONTINUED ON NEXT PAGE

| | | |
|---|---|---|
| Sub Total | $ | 845.00 |
| Less Advance Payments | $ | .00 |
| Transportation | | |
| Tax | $ | .00 |
| Total Due | $ | 845.00 |

**MAKE CHECK PAYABLE TO:**

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

INVOICES ARE PAYABLE
IN U.S. CURRENCY AND
OVERDUE AMOUNT
SHALL BEAR INTEREST AT
A REASONALBE RATE OR
IS SUBJECT TO LATE
PAYMENT CHARGES PER
AGREEMENT REMARKS:

**Questions About Your Account? Call**
DIANE SHULTZ
(404) 573-5273

**REMARKS:**

THANK YOU FOR USING
LUCENT TECHNOLOGIES

**ORIGINAL**

CONFIDENTIAL

LW 00300378

B2027



CUST SVC TEAM CODE: SE

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

# INVOICE

Ship To:

WINSTAR NETWORK EXPANISON LLC  Bill To:
PROJECT: WNE00004692 G9913LH
SPARES AND EXCHANGE
ATTN: AL BURLEY
34 PEACHTREE ST NW  SUITE 400
ATLANTA        GA 30303-2334

WINSTAR WIRELESS
ATTN: SOPHIA RENALOS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON        VA 20171

| Invoice Number | 31102722 |
|---|---|
| Invoice Date | 03/26/01 |
| Account Number | 10010936 |
| Page Number | 3 |

PAYMENT DUE        04/25/01

| Customer P.O. # | Lucent Order | Ship Date | Ship Method | Bill of Lading | LUC Reference # | Customer Code | Terms | Contract # | FOB |
|---|---|---|---|---|---|---|---|---|---|
| WNE4692 | | | | | | WN4702 (Y7) | NET 30 DAYS | | |

| Item No. | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|
| | ****** LAST PAGE ****** | | | | | |

MAKE CHECK PAYABLE TO:

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

INVOICES ARE PAYABLE
IN U.S. CURRENCY AND
OVERDUE AMOUNT
SHALL BEAR INTEREST AT
A REASONABLE RATE OR
IS SUBJECT TO LATE
PAYMENT CHARGES PER
AGREEMENT REMARKS:

| | | |
|---|---|---|
| Sub Total | $ | 845.00 |
| Less Advance Payments | | |
| Transportation | $ | .00 |
| Tax | $ | .00 |
| Total Due | $ | 845.00 |

Questions About Your
Account? Call

DIANE SHULTZ
(404) 573-5273

REMARKS:

THANK YOU FOR USING
LUCENT TECHNOLOGIES

ORIGINAL

CONFIDENTIAL

LW 00300379

B2028



LUCENT TECHNOLOGIES, INC.
ATTN: ACCOUNT RECEIVABLE
P. O. BOX 100317
ATLANTA, GA. 30384-0317

**INVOICE**

Ship To:
WINSTAR
700 SOUTH FLOWER
SUITE 660
ATTN: SAM YANG

LOS ANGELES          CA 90017

Bill To:
WINSTAR
ACCOUNTING DEPT  SUITE 650
700 SOUTH FLOWER

LOS ANGELES          CA 90017

PAYMENT DUE: 04/21/01

| Invoice Number | S0114674 |
|---|---|
| Invoice Date | 03-22-01 |
| Account Number | 944761985 |
| Page Number | 1 |

| Customer P.O. # | LUC Reference # | Customer Code | Terms | Contract # | | FOB |
|---|---|---|---|---|---|---|
| 84031993 | Q306PK | Q3- | NET 30 DAYS | | | ORIGIN |

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 0001 | 84031993 | 03-12-01 | NORMAL | | REPAIR LABOR PK CKT AKM 91 S2 | 0 | 0 | $753.00 | 1 | $753.00 |
| 0002 | 84031993 | 03-12-01 | NORMAL | | HANDLING CHARGES PK CKT AKM 91 S2 | 0 | 0 | $12.00 | 1 | $12.00 |
| | | | | | ITEM(S) RECEIVED FOR REPAIR | 1 | | | | |
| | | | | | REPAIRED AND | 1 | | | | |
| | | | | | JUNKED | 0 | | | | |
| | | | | | FINAL SHIPMENT | | | | | |
| | | | | | ****** LAST PAGE ****** | | | | | |

|  |  |
|---|---|
| Sub Total | $  765.00 |
| Less Advance Payment | |
| Transportation | $  .00 |
| Tax | 60.24 |
| **Total Due** | $  825.24 |

Questions About
Your Account?
Call

A/R REPRESENTATIVE
1-800-795-6850

PAYMENTS SHOULD BE RECEIVED
BY DUE DATE. THANK YOU FOR
USING LUCENT TECHNOLOGIES

INVOICES ARE PAYABLE IN U.S. CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONABLE RATE OR IS
SUBJECT TO LATE PAYMENT CHARGES PER
AGREEMENT REMARKS.

---

RETURN THIS PORTION WITH PAYMENT

Remit To:
LUCENT TECHNOLOGIES, INC.
ATTN: ACCOUNT RECEIVABLE
P.O. BOX 100317
ATLANTA, GA. 30384-0317

WINSTAR
ACCOUNTING DEPT  SUITE 650
700 SOUTH FLOWER

LOS ANGELES          CA 90017

| Account Number | Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|---|
| 944761985 | S0114674 | N/A | $  825.24 |

| Amount Past Due | Amount This Bill | Discount Amount | Amount Enclosed |
|---|---|---|---|
| N/A | $  825.24 | N/A | |

**ORIGINAL**



**LUCENT TECHNOLOGIES, INC.**
ATTN: ACCOUNT RECEIVABLE
P.O. BOX 100317
ATLANTA, GA. 30384-0317

# INVOICE

Ship To:
WINSTAR
1850 M STREET N.W.
SUITE 300
WASHINGTON          DC 20036

Bill To:
WINSTAR
ATTN: ACCOUNTS PAYABLE
1850 M. STREET     SUITE 300
WASHINGTON          DC 20036

PAYMENT DUE DATE: 04/21/01

| Invoice Number | S0114640 |
|---|---|
| Invoice Date | 03-22-01 |
| Account Number | 100419769 |
| Page Number | 1 |

| Customer P.O. # | LUC Reference # | Customer Code | Terms | Contract # | FOB |
|---|---|---|---|---|---|
| 58032151 | Q30446 | Y7- | NET 30 DAYS | | ORIGIN |

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number/Description | Quantity Ordered | Quantity Shipped | PM | Unit Price | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 0001 | 58032151 | 03-05-01 | NORMAL | | REPAIR LABOR<br>PK CKT TN1846 SS | 0 | 0 | 1 | $656.00 | $656.00 |
| 0002 | 58032151 | 03-05-01 | NORMAL | | REPAIR MATERIAL<br>PK CKT TN1846 SS | 0 | 0 | 1 | $13.00 | $13.00 |
| 0003 | 58032151 | 03-05-01 | NORMAL | | HANDLING CHARGES<br>PK CKT TN1846 SS | 0 | 0 | 1 | $12.00 | $12.00 |
| | | | | | 1  ITEM(S) RECEIVED FOR REPAIR | | | | | |
| | | | | | 1  REPAIRED AND | | | | | |
| | | | | | 0  JUNKED | | | | | |
| | | | | | CONTINUED ON NEXT PAGE | | | | | |

| | |
|---|---|
| Sub Total | $  681.00 |
| Less Advance Payment | |
| Transportation | $  .00 |
| Tax | $  39.16 |
| Total Due | $  720.16 |

Questions About
Your Account?
Call
DIANE SHULTZ
(404) 573-5273

INVOICES ARE PAYABLE IN U.S. CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONABLE RATE OR IS
SUBJECT TO LATE PAYMENT CHARGES PER
AGREEMENT REMARKS.

PAYMENTS SHOULD BE RECEIVED
BY DUE DATE.  THANK YOU FOR
USING LUCENT TECHNOLOGIES

---

**RETURN THIS PORTION WITH PAYMENT**

Remit To:
LUCENT TECHNOLOGIES, INC.
ATTN: ACCOUNT RECEIVABLE
P.O. BOX 100317
ATLANTA, GA. 30384-0317

WINSTAR
ATTN: ACCOUNTS PAYABLE
1850 M. STREET     SUITE 300
WASHINGTON          DC 20036

| Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|
| S0114640 | N/A | $  720.16 |
| Amount this Bill | Discount Amount | Amount Enclosed |
| $  720.16 | N/A | |

| Account Number | | |
|---|---|---|
| 100419769 | | |
| Amount Past Due | | |
| N/A | | |

**ORIGINAL**

CONFIDENTIAL

LW 00300381          B2030



**INVOICE**

CUST SVC TEAM CODE: SE

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

**Ship To:**
WINSTAR NETWORK EXPANISON LLC
PROJECT: WNE000004692 G9915LH
SPARES AND EXCHANGE
ATTN: MATTHEW MURFIN
150 SOUTHEASE 2ND AVENUE
MIAMI          FL 33131

**Bill To:**
WINSTAR WIRELESS
ATTN: SOPHIA RENALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON          VA 20171

| | | |
|---|---|---|
| Invoice Number | | 31102970 |
| Invoice Date | | 03/29/01 |
| Account Number | | 100109636 |
| Page Number | | 1 |

PAYMENT DUE: 04/28/01
Contract #          FOB          PM

| Item No. | Customer P.O. # | LUC Reference # | Lucent Order | Ship Date | Ship Method | Bill of Lading | Customer Code | Part Number Description | Terms | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | WNE4692 | | G9915LH | 01/16/01 | | | HNY702 (Y2) | 90079969 SESS NORM DELIVERY SVC CHG FOR LINE ITEM NUMBER 1 CONNECTOR 9822DY CD1=Y;SY=NN SHIP=010117;OJD=010118 AUTH=SES B000007 | NET 30 DAYS | 1 | 1 | $35.00 | 1 | $35.00 |
| 3 | | | G9915LH | 01/16/01 | | | | 105695503 PRODUCT EXCHANGE CHARGE FOR LINE ITEM NUMBER 1 CONNECTOR 9822DY | | 1 | 1 | $300.00 | 1 | $300.00 |
| | | | | | | | | CONTINUED ON NEXT PAGE | | | | | | |

| | | |
|---|---|---|
| Sub Total | $ | 335.00 |
| Less Advance Payment | | |
| Transportation | $ | .00 |
| Tax | $ | .00 |
| Total Due | $ | 705.00 |

Questions About Your Account? Call
DIANE SHULTZ
(404) 573-3873

INVOICES ARE PAYABLE IN U.S. CURRENCY AND OVERDUE AMOUNT SHALL BEAR INTEREST AT A REASONABLE RATE OR IS SUBJECT TO LATE PAYMENT CHARGES PER AGREEMENT REMARKS;

THANK YOU FOR USING
LUCENT TECHNOLOGIES

**ORIGINAL**

---

**RETURN THIS PORTION WITH PAYMENT**

**Remit To:**
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: SOPHIA RENALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON          VA 20171

| Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|
| 31102970 | N/A | 705.00 |
| Amount This Bill | Discount Amount | Amount Enclosed |
| $          705.00 | N/A | N/A |

| Account Number | Amount Past Due |
|---|---|
| 100109636 | N/A |



INVOICE

Lucent Technologies, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

CUST SVC TEAM CODE: SE

Invoice Number 51102471
Invoice Date 03/19/01
Account Number 10109636
Page Number 1

Ship To:
WINSTAR WIRELESS
ATTN: SOPHIA REMALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON                VA 20171

Bill To:
WINSTAR NETWORK EXPANSION LLC
PROJECT WNE000004692 / G9169JH
SPARES AND EXCHANGE
ATTN: MATT PATTERSON
324 EAST 11TH ST        SUITE 1000
KANSAS CITY             MO 64106-2421

| Customer P.O. # | LUC Reference # | | Customer Code | Terms |
|---|---|---|---|---|
| WNE4692 | | | WNW702 (Y7) | NET 30 DAYS |

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Contract # | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | G9169JH | 03/13/01 | | | 900799651 SESS ENER DELIVERY SVC CHG FOR LINE ITEM NUMBER 1 PK CKT TN1684 CDI=Y SV=NN SHIP=010314!0JD=010315 AUTH=SES B000004 | | 1 | | $70.00 | 1 | $70.00 |
| 3 | G9169JH | 03/13/01 | | | 10696446 PRODUCT EXCHANGE CHARGE FOR LINE ITEM NUMBER 1 PK CKT TN1684 | | 1 | | $625.00 | 1 | $625.00 |

CONTINUED ON NEXT PAGE

FOB

| | |
|---|---|
| Sub Total | $ 695.00 |
| Less Advance Payment | |
| Transportation | $ .00 |
| Tax | $ .00 |
| Total Due | $ 695.00 |

Questions About
Your Account?
Call
DIANE SHULTZ
(404) 573-5673

THANK YOU FOR USING
LUCENT TECHNOLOGIES

----- RETURN THIS PORTION WITH PAYMENT -----

Remit To:
LUCENT TECHNOLOGIES, INC
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: SOPHIA REMALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON                VA 20171

| Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|
| 51102471 | N/A | 695.00 |

| Amount this Bill | Discount Amount | Amount Enclosed |
|---|---|---|
| $ 695.00 | N/A | N/A |

| Account Number | | |
|---|---|---|
| 10109636 | | |

| Amount Past Due | | |
|---|---|---|
| N/A | | |

ALL INVOICES ARE PAYABLE IN U S CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONABLE RATE OR AS
SUBJECT TO LATE PAYMENT CHARGES PER
AGREEMENT REMARKS

ORIGINAL

CONFIDENTIAL
LW 00300383
B2032



INVOICE

CUST SVC TEAM CODE: SE

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

Ship To:

WINSTAR NETWORK EXPANSION LLC  Bill To:
PROJECT WNE00000A692 / 09169JH
SPARES AND EXCHANGE
ATTN: MATT PATTERSON
324 EAST 11TH ST       SUITE 1000
KANSAS CITY          MO 64106-2421

WINSTAR WIRELESS
ATTN: SOPHIA RENALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON          VA 20171

| Invoice Number | S1102471 |
| Invoice Date | 03/19/01 |
| Account Number | 100109636 |
| Page Number | 2 |

PAYMENT DUE        04/18/01

| Customer P.O. # | Lucent Order | Ship Date | LUC Reference # | Ship Method | Bill of Lading | Customer Code | Terms | FOB | Contract # |
|---|---|---|---|---|---|---|---|---|---|
| WNE4692 | | | | | | NHY702  (Y7) | NET 30 DAYS | | |

| Item No | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|
| | C01-*1:SY*AIN | | | | | |
| | SHIP=010314;0JD=010315 | | | | | |
| | AUTH=SES | | | | | |
| | 8000004 | | | | | |
| | ****** LAST PAGE ****** | | | | | |

MAKE CHECK PAYABLE TO:

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

| Sub Total | $ | 695.00 |
| Less Advance Payments | | |
| Transportation | $ | .00 |
| Tax | | |
| Total Due | $ | .00 |
| | $ | 695.00 |

Questions About Your
Account?  Call

DIANE SHULTZ
(404) 573-8273

REMARKS:

THANK YOU FOR USING
LUCENT TECHNOLOGIES

INVOICES ARE PAYABLE
IN U S CURRENCY AND
OVERDUE AMOUNT
SHALL BEAR INTEREST AT
A REASONABLE RATE OR
IS SUBJECT TO LATE
PAYMENT CHARGES PER
AGREEMENT REMARKS.

ORIGINAL

Lucent Technologies
Bell Labs Innovations

CONFIDENTIAL          LW 00300384          B2033



Lucent Technologies

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

CUST SVC TEAM CODE:  SE

## INVOICE

| | |
|---|---|
| Invoice Number | 31102793 |
| Invoice Date | 03/27/01 |
| Account Number | 100109636 |
| Page Number | 1 |

Ship To:  WINSTAR NETWORK EXPANSION LLC
PROJECT: WNE000004692 G9915LH
SPARES AND EXCHANGE
ATTN: MATTHEW MURFIN
150 SOUTHEASE 2ND AVENUE
MIAMI                    FL 33131

Bill To:  WINSTAR WIRELESS
ATTN: SOPHIA REINALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON            VA 20171

| Customer P.O. # | Lucent Order | Ship Date | Ship Method | Bill of Lading | LUC Reference # | Customer Code | Terms |
|---|---|---|---|---|---|---|---|
| WNE4692 | G9915LH | 03/20/01 | | | | WNY702 (Y7) | NET 30 DAYS |

| Item No. | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|
| 3 | 900799669 | | 2 | $35.00 | 1 | $70.00 |
| | SESS NORM DELIVERY SVC CHG | | | | | |
| | FOR LINE ITEM NUMBER 1 | | | | | |
| | PK CKT UN 186 | | | | | |
| | SESS NORM DELIVERY SVC CHG | | | | | |
| | FOR LINE ITEM NUMBER 2 | | | | | |
| | PK CKT WC5D0218A2 | | | | | |
| | CD1=Y;SV=HN | | | | | |
| | SHIP=010321;0JD=010322 | | | | | |
| | AUTH=SES | | | | | |
| | B000012 | | | | | |
| | CONTINUED ON NEXT PAGE | | | | | |

| | | |
|---|---|---|
| Sub Total | $ | 70 00 |
| Less Advance Payment | | |
| Transportation | $ | .00 |
| Tax | $ | .00 |
| Total Due | $ | 670.00 |

Contract #        FOB

PAYMENT DUE  04/26/01

Questions About
Your Account?
Call

DIANE SHULTZ
(404) 573-3872

THANK YOU FOR USING
LUCENT TECHNOLOGIES

PRODUCTS ARE PAYABLE IN US CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONABLE RATE OR IS
SUBJECT TO LATE PAYMENT CHARGES PER
AGREEMENT REMARKS

**ORIGINAL**

----- RETURN THIS PORTION WITH PAYMENT -----

Remit To:  LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: SOPHIA REINALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON            VA 20171

| Account Number | Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|---|
| 100109636 | 31102793 | N/A | $ 670.00 |

| Amount Past Due | Amount this Bill | Discount Amount | Amount Enclosed |
|---|---|---|---|
| N/A | $ 670.00 | N/A | N/A |



LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

# INVOICE

CUST SVC TEAM CODE: SE

**Ship To:**

WINSTAR NETWORK EXPANSION LLC G9915LH
PROJECT: NWE00000004692 G9915LH
SPARES AND EXCHANGE
ATTN: MATTHEW MURFIN
150 SOUTHEAST 2ND AVENUE
MIAMI                      FL 33131

**Bill To:**

WINSTAR WIRELESS
ATTN: SOPHIA REMALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON                    VA 20171

| | |
|---|---|
| Invoice Number | 31102793 |
| Invoice Date | 03/27/01 |
| Account Number | 100109636 |
| Page Number | 2 |

PAYMENT DUE          04/26/01

| Customer P.O. # | | | LUC Reference # | Customer Code | | Terms | | Contract # | | | FOB |
|---|---|---|---|---|---|---|---|---|---|---|---|
| WNE4692 | | | | NWY702 (YT) | | NET 30 DAYS | | | | | |

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 4 | G9915LH | 03/20/01 | | | 106696503 PRODUCT EXCHANGE CHARGE FOR LINE ITEM NUMBER 1 PK CKT UN 186 | | | | | | |
| | | | | | PRODUCT EXCHANGE CHARGE FOR LINE ITEM NUMBER 2 PK CKT MC5021642 | | | 2 | $300.00 | 1 | $600.00 |
| | | | | | CD1=Y;SV=NN SHIP=010321;0JD=010322 AUTH=SES 8000012 | | | | | | |
| | | | | | ***** LAST PAGE ***** | | | | | | |

| | | |
|---|---|---|
| Sub Total | $ | 670.00 |
| Less Advance Payments | | |
| Transportation | $ | .00 |
| Tax | | |
| Total Due | $ | 670.00 |

**ORIGINAL**

Questions About Your
Account?    Call

DIANE SHULTZ
(404) 573-5273

**REMARKS.**

THANK YOU FOR USING
LUCENT TECHNOLOGIES

**MAKE CHECK PAYABLE TO:**

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

INVOICES ARE PAYABLE
IN U.S. CURRENCY AND
OVERDUE AMOUNT
SHALL BEAR INTEREST AT
A REASONALBE RATE OR
IS SUBJECT TO LATE
PAYMENT CHARGES PER
AGREEMENT REMARKS-

CONFIDENTIAL

LW 00300386

B2035



# INVOICE

**LUCENT TECHNOLOGIES, INC.**
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

CUST SVC TEAM CODE: SE

| Invoice Number | 1110329 |
| Invoice Date | 03/15/01 |
| Account Number | 100109636 |
| Page Number | 1 |

**Ship To:**
WINSTAR TELECOMMUNICATIONS A4975NH
ATTN: BILL MC MAHON
7799 LEEBURG PIKE  SUITE 401 SOUTH
TYSONS CORNER    VA 22043

**Bill To:**
WINSTAR
ATTN: ACCOUNTS PAYABLE
SOPHIA REMALDS
1577 SPRINGFIELD ROAD

VIENNA    VA 22182

| Item No. | Customer P.O. # | Lucren Order | Ship Date | Ship Method | Bill of Lading | LUC Reference # | Customer Code | Part Number Description | Terms | Quantity Ordered | PAYMENT DUE Contract # | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 100270 | | | | | | NNY701 (Y7) | | NET 30 DAYS | | 04/14/01 FOB | | | | |
| 2 | | A4975NH | 02/27/01 | | | | | 900799669 SESS MORN DELIVERY SVC CHG FOR LINE ITEM NUMBER 1 PK CKT TN1846 CO1=Y;SV=NN SNTP=010228:0JD=010301 AUTH=SES B000429 | | | | 1 | $35.00 | 1 | $35.00 |
| 3 | | A4975NH | 02/27/01 | | | | | 10669646 PRODUCT EXCHANGE CHARGE FOR LINE ITEM NUMBER 1 PK CKT TN1846 | | | | 1 | $625.00 | 1 | $625.00 |
| | | | | | | | | CONTINUED ON NEXT PAGE | | | | | | | |

| | | |
|---|---|---|
| Sub Total | $ | 660.00 |
| Less Advance Payment | | |
| Transportation | $ | .00 |
| Tax | $ | .00 |
| Total Due | $ | 660.00 |

Questions About Your Account?
Call

DIANE SHULTZ
(404) 573-5623

THANK YOU FOR LETTING US SERVE YOU
AS WE STRIVE FOR BILLING ACCURACY!
YOUR TIMELY PAYMENT IS APPRECIATED.

INVOICES ARE PAYABLE IN U.S. CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONABLE RATE OR IS
SUBJECT TO LATE PAYMENT CHARGES PER
AGREEMENT REMARKS:

**ORIGINAL**

------ RETURN THIS PORTION WITH PAYMENT ------

**Remit To:**
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR
ATTN: ACCOUNTS PAYABLE
SOPHIA REMALDS
1577 SPRINGFIELD ROAD

VIENNA    VA 22182

| Account Number | Invoice Number | Amount this Bill | Current Balance | Total Due This Bill |
|---|---|---|---|---|
| 100109636 | 1110329 | $  660.00 | N/A | $  660.00 |

| Amount Past Due | Discount Amount | Amount Enclosed |
|---|---|---|
| N/A | N/A | N/A |

CONFIDENTIAL

LW 00300387

B2036



CONFIDENTIAL

LW 00300388

B2037



**INVOICE**

CUST SVC TEAM CODE: SE

Lucent Technologies
Bell Labs Innovations

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

**Ship To:**

WINSTAR NETWORK EXPANSION LLC
PROJECT: WNE000004692 H0378LH
SPARKS AND EXCHANGE
ATTN: TOM RIVERS
4200 WEST CYPRESS        SUITE 630
TAMPA                    FL 33607

**Bill To:**

WINSTAR WIRELESS
ATTN: SOPHIA RENALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON          VA 20171

| | Invoice Number - | 31101535 |
| | Invoice Date | 02/27/01 |
| | Account Number | 100109636 |
| | Page Number | 2 |
| | PAYMENT DUE | 03/29/01 |

| Item No | Customer P.O. # | | LUC Reference # | | | Customer Code | | Terms | | Contract # | | | FOB | |
| | Lucent Order | Ship Date | Ship Method | Bill of Lading | | | | | | | | | | |
| | WNE4692 | | | | | WNY702 (Y7) | | NET 30 DAYS | | | | | | |

| Item No | Lucent Order | Ship Date | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | Pvt | Total Price |
|---|---|---|---|---|---|---|---|---|
| 2 | H0378LH | 02/13/01 | CDI=Y1=SV=NN SHIP=010214:0JD=010215 AUTH=SES B000007 | | | | | |
| | | | 108447921 SESTP NORM DELIVERY SVC CHG FOR LINE ITEM NUMBER 1 PK CKT AMR 10 CDI=Y1=SV=NN SHIP=010214:0JD=010215 AUTH=SES B000001 | | 1 | $35.00 | 1 | $35.00 |
| 3 | H0378LH | 02/13/01 | 108451220 PRODUCT EXCHANGE CHARGE FOR LINE ITEM NUMBER 1 PK CKT AMR 10 CDI=Y1=SV=NN SHIP=010214:0JD=010215 AUTH=SES B000001 | | 1 | $450.00 | 1 | $450 00 |
| | | | ****** LAST PAGE ****** | | | | | |

| | | |
|---|---|---|
| Sub Total | $ | 625.00 |
| Less Advance Payments | | |
| Transportation | $ | .00 |
| Tax | $ | .00 |
| Total Due | $ | 625.00 |

**MAKE CHECK PAYABLE TO:**

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

INVOICES ARE PAYABLE
IN US CURRENCY AND
OVERDUE AMOUNT
SHALL BEAR INTEREST AT
A REASONABLE RATE OR
IS SUBJECT TO LATE
PAYMENT CHARGES PER
AGREEMENT REMARKS:

Questions About Your
Account?  Call

DIANE SHULTZ
(404) 573-8273

**REMARKS:**

THANK YOU FOR USING
LUCENT TECHNOLOGIES

**ORIGINAL**

CONFIDENTIAL

LW 00300389

B2038



INVOICE

| | | | | | Invoice Number | 41301100 |
|---|---|---|---|---|---|---|
| | | | | | Invoice Date | 01/23/01 |
| | | | | | Account Number | 100793150 |
| | | | | | Page Number | 1 |

**LUCENT TECHNOLOGIES, INC.**
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

**Ship To:**
WINSTAR
RICHARD WEAVER
7799 LEESBURG PIKE
FALLS CHURCH VA 22043
US

**Bill To:**
WINSTAR TELECOMMUNICATIONS INC
1577 SPRINGHILL ROAD
ACCOUNTS PAYABLE
VIENNA VA 22182

| Customer P.O. # | | LUC Reference # | | Customer Code | Terms | | PAYMENT DUE Contract # | 02/22/01 | FOB |
|---|---|---|---|---|---|---|---|---|---|
| WT1-0000001966 | | | | KE | NET 30 DAYS | | | | |

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 0001 | 40434630 | 01/18/01 | | | SCANS-USE | | 1 | $602.34 | E | $602.34 |
| | | | | | SCANS 12/01/00 TO 12/31/00 | | | | | |
| | ORDER NOTE | | | | CIC ORDER # 018123938 | | | | | |
| | | | | | 22002084 | | | | | |
| | | | | | CreditCard Welcome on next purchase | | | | | |
| | | | | | VISA, MasterCard and AMEX accepted. | | | | | |
| | | | | | For more information on credit card | | | | | |
| | | | | | Call 1-800-225-4672; ask for SCANS. | | | | | |
| | | | | | ****** LAST PAGE ****** | | | | | |

| | | Sub Total | $ | 602.34 |
|---|---|---|---|---|
| | | Less Advance Payment | | |
| | | Transportation | $ | .00 |
| | | Tax | $ | .00 |
| | | Total Due | $ | 602.34 |

**Questions About Your Account?**
Call ANDREW RYTLEWSKI
(404) 573-7886
(404) 573-7986

PLEASE ALLOW FIVE DAYS WHEN PAYING
BY MAIL.

NOTE: INVOICES ARE PAYABLE IN U.S. CURRENCY. ANY OVERDUE AMOUNT SHALL BEAR INTEREST AT A REASONABLE RATE OR IS SUBJECT TO LATE PAYMENT CHARGES PER AGREEMENT REMARKS

**ORIGINAL**

---------------RETURN THIS PORTION WITH PAYMENT---------------

**Remit To:**
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR TELECOMMUNICATIONS INC
1577 SPRINGHILL ROAD
ACCOUNTS PAYABLE
VIENNA VA 22182

| Account Number | Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|---|
| 100793150 | 41301100 | N/A | $ 602.34 |

| Amount Past Due | Amount this Bill | Discount Amount | Amount Enclosed |
|---|---|---|---|
| N/A | $ 602.34 | N/A | |



CONFIDENTIAL

LW 00300391

B2040



LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

# INVOICE

CUST SVC TEAM CODE: SE

Invoice Number    31103212
Invoice Date      04/04/01
Account Number    100109636
Page Number       1

**Ship To:**
WINSTAR NETWORK EXPANSION LLC
PROJECT: WNE000000492 G9916LH
SPARES AND EXCHANGE
ATTN: TOM RIVERS
4200 WEST CYPRESS    SUITE 630
TAMPA                FL 33607

**Bill To:**
WINSTAR WIRELESS
ATTN: SOPHIA REBALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON            VA 20171

| Customer P.O. # | Lucent Order | Ship Date | Ship Method | Bill of Lading | LUC Reference # | Customer Code | Terms |
|---|---|---|---|---|---|---|---|
| WNE4492 | | | | | | NNY702 (Y7) | NET 30 DAYS |

| Item No. | Lucent Order | Ship Date | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|
| 2 | G9916LH | 03/27/01 | 90799669 SE55 NORM DELIVERY SVC CHG FOR LINE ITEM NUMBER 1 PK CKT UN 583 CDI=Y;SV=NN SHIP=010328(O;D=010329 AUTH=SE5 B000007 | | 1 | $35.00 | 1 | $35.00 |
| 3 | G9916LH | 03/27/01 | 10669653 PRODUCT EXCHANGE CHARGE FOR LINE ITEM NUMBER 1 PK CKT UN 583 | | 1 | $500.00 | 1 | $500.00 |

CONTINUED ON NEXT PAGE

PAYMENT DUE   06/04/01

Contract #

FOB

|  |  |
|---|---|
| Sub Total | $ 535.00 |
| Less Advance Payment | |
| Transportation | $ .00 |
| Tax | $ .00 |
| Total Due | $ 535.00 |

Questions About Your Account?
Call

DIANE SHULTZ
(404) 573-5621

THANK YOU FOR USING
LUCENT TECHNOLOGIES

PRICES ARE PAYABLE IN US CURRENCY AND OVERDUE AMOUNT SHALL BEAR INTEREST AT A REASONALBE RATE. OR IS SUBJECT TO LATE PAYMENT CHARGES PER AGREEMENT REMARKS.

**ORIGINAL**

----- RETURN THIS PORTION WITH PAYMENT -----

**Remit To:**
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: SOPHIA REBALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON            VA 20171

| Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|
| 31103212 | N/A | $ 535.00 |

| Amount this Bill | Discount Amount | Amount Enclosed |
|---|---|---|
| $ 535.00 | N/A | N/A |

| Account Number | Amount Past Due |
|---|---|
| 100109636 | N/A |

CONFIDENTIAL

LW 00300392

B2041



CUST SVC TERM CODE.   SE

**INVOICE**

Lucent Technologies

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN:  ACCOUNTS RECEIVABLE

| | |
|---|---|
| Invoice Number | 31103212 |
| Invoice Date | 04/04/01 |
| Account Number | 100109636 |
| Page Number | 2 |

Bill To:

WINSTAR NETWORK EXPANISON LLC
PROJECT: WNEO00004692 G9916LH
SPARES AND EXCHANGE
ATTN: TOM RIVERS
4200 WEST CYPRESS     SUITE 630
TAMPA              FL 33607

Ship To:

WINSTAR WIRELESS
ATTN: SOPHIA RENALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON        VA 20171

PAYMENT DUE   05/04/01

| Item No. | Customer P.O. # | Lucent Order | Ship Date | LUC Reference # | Ship Method | Bill of Lading | Customer Code | Terms | Part Number Description | Quantity Ordered | Contract # | Quantity Shipped | Unit Price | PM | FOB | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | WNE4692 | | | | | | NNY202 (YT) | NET 30 DAYS | | | | | | | | |
| | | | | | | | | | CDI=YT;SV=NN | | | | | | | $    535.00 |
| | | | | | | | | | SHIP=010328,OJD=010329 | | | | | | | |
| | | | | | | | | | AUTH=SES | | | | | | | |
| | | | | | | | | | B000007 | | | | | | | |
| | | | | | | | | | ****** LAST PAGE ****** | | | | | | | |

| | | |
|---|---|---|
| Sub Total | $ | 535.00 |
| Less Advance Payments | $ | .00 |
| Transportation | | |
| Tax | $ | .00 |
| Total Due | $ | 535.00 |

**MAKE CHECK PAYABLE TO:**

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

INVOICES ARE PAYABLE
IN U.S. CURRENCY AND
OVERDUE AMOUNT
SHALL BEAR INTEREST AT
A REASONAL BLE RATE OR
IS SUBJECT TO LATE
PAYMENT CHARGES PER
AGREEMENT REMARKS.

Questions About Your
Account* Call

DIANE SHULTZ
(404) 573-5273

REMARKS.

THANK YOU FOR USING
LUCENT TECHNOLOGIES

**ORIGINAL**

CONFIDENTIAL

LW  00300393

B2042



CONFIDENTIAL

LW 00300394

B2043

Lucent Technologies

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

**INVOICE**

CUST SVC TEAM CODE: SE

Ship To:
WINSTAR NETWORK EXPANSION LLC
PROJECT WNED00004692 / D3892TH Bill To:
SPARES AND EXCHANGE
ATTN: SAM KIMBLE
1850 N STREET NW          SUITE 300
WASHINGTON          DC 20036-5805

WINSTAR WIRELESS
ATTN: SOPHIA REMALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON          VA 20171

Invoice Number    21102911
Invoice Date      04/04/01
Account Number    100109636
Page Number       1

| Customer P.O. # | Lucent Order | Ship Date | LUC Reference # | Ship Method | Bill of Lading | Customer Code | Terms |
|---|---|---|---|---|---|---|---|
| WNE00000046 | D3892TH | 03/27/01 | | | | WNY702 (Y7) | NET 30 DAYS |

PAYMENT DUE    06/04/01
Contract #    FOB

| Item No. | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|
| 3 | 90D799669<br>SESS NORM DELIVERY SVC CHG<br>FOR LINE ITEM NUMBER 1<br>PK CKT TN1681<br>SESS NORM DELIVERY SVC CHG<br>FOR LINE ITEM NUMBER 2<br>PK CKT TN1681<br>CDI=F:SV=NN<br>SHIP=010328;OJD=010329<br>AUTH=SES<br>8000003<br><br>CONTINUED ON NEXT PAGE | | 2 | $35.00 | 1 | $70.00 |

Questions About
Your Account?
Call

| | |
|---|---|
| Sub Total | $ 70.00 |
| Less Advance Payment | |
| Transportation | .00 |
| Tax | .00 |
| Total Due | $ 370.00 |

DIANE SHULTZ
(404) 573-5623

PAYMENTS SHOULD BE MAILED
TO ARRIVE BY THE DUE DATE.

ALL CHARGES ARE PAYABLE IN US CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONALBE RATE OR 1%
SUBJECT TO LATE PAYMENT CHARGES PER
AGREEMENT REMARKS

**ORIGINAL**

— RETURN THIS PORTION WITH PAYMENT —

Remit To:
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: SOPHIA REMALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON          VA 20171

| Account Number | Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|---|
| 100109636 | 21102911 | N/A | $ 370.00 |

| Amount Past Due | Amount this Bill | Discount Amount | Amount Enclosed |
|---|---|---|---|
| N/A | $ 370.00 | N/A | |

LW 00300396

B2045



# INVOICE

CUST SVC TEAM CODE: SE

**Lucent Technologies, INC.**
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

| | |
|---|---|
| Invoice Number | 21102911 |
| Invoice Date | 04/04/01 |
| Account Number | 100109636 |
| Page Number | 2 |

PAYMENT DUE 05/04/01

**Ship To:**
WINSTAR NETWORK EXPANSION LLC
PROJECT WNEDO0004092 / D3892TH
SPARES AND EXCHANGE
ATTN: SAM KIMBLE      SUITE 300
1850 M STREET NW
WASHINGTON          DC 20036-5805

**Bill To:**
WINSTAR WIRELESS
ATTN: SOPHIA REINALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON          VA 20171

| Customer P.O. # | LUC Reference # | Customer Code | Terms |
|---|---|---|---|
| WNEO0000046 | | HNY702 (Y7) | NET 30 DAYS |

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | FXt | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 4 | D3892TH | 03/27/01 | | | 104696503<br>PRODUCT EXCHANGE CHARGE<br>FOR LINE ITEM NUMBER 2<br>PK CKT TN1681<br>CDI*Y:SV4HN<br>SHIP=010328:0.00=010329<br>AUTH=SES<br>8000003<br><br>****** LAST PAGE ****** | | 2 | $300.00 | 1 | $300.00 |

| | |
|---|---|
| Contract # | FOB |

| | | |
|---|---|---|
| Sub Total | $ | 370.00 |
| Less Advance Payments | $ | .00 |
| Transportation | | |
| Tax | $ | .00 |
| Total Due | $ | 370.00 |

**MAKE CHECK PAYABLE TO:**

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

INVOICES ARE PAYABLE
IN U.S. CURRENCY AND
OVERDUE AMOUNT
SHALL BEAR INTEREST AT
A REASONABLE RATE OR
IS SUBJECT TO LATE
PAYMENT CHARGES PER
AGREEMENT REMARKS.

**ORIGINAL**

Questions About Your
Account* Call

DIANE SHULTZ
(404) 673-5273

PAYMENTS SHOULD BE MAILED
TO ARRIVE BY THE DUE DATE.

REMARKS:

CONFIDENTIAL

LW 00300397          B2046



**INVOICE**

CUST SVC TEAM CODE:  SE

Lucent Technologies

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN:  ACCOUNTS RECEIVABLE

Ship To:
WINSTAR NETWORK EXPANSION LLC
PROJECT WNEDOOOA4692 / G8823WH
SPARES AND EXCHANGE
ATTN:  NEIL SCHUSTER
910 15TH STREET       SUITE 140
DENVER                CO 80202-2935

Bill To:
WINSTAR WIRELESS
ATTN:  SOPHIA REMALOS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON           VA 20171

| Invoice Number | 61100915 |
| Invoice Date | 03/19/01 |
| Account Number | 100109636 |
| Page Number | 1 |

| Customer P.O. # | LUC Reference # | Customer Code | Terms | PAYMENT DUE Contract # | FOB |
|---|---|---|---|---|---|
| WNE4692 | | WN4702 (Y7) | NET 30 DAYS | 04/18/01 | |

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 2 | G8823WH | 03/13/01 | | | 900799651 SES5 EMER DELIVERY SVC CHG FOR LINE ITEM NUMBER 1 PK CKT TN 881 CDI=Y;SV=WN SHIP=010314;0JD=010315 AUTH=SES B000002 | 1 | 1 | $70.00 | 1 | $70.00 |
| 3 | G8823WH | 03/13/01 | | | 106596503 PRODUCT EXCHANGE CHARGE FOR LINE ITEM NUMBER 1 PK CKT TN 881 | | 1 | $300.00 | 1 | $300.00 |

CONTINUED ON NEXT PAGE

| | |
|---|---|
| Sub Total | $   370.00 |
| Less Advance Payment | |
| Transportation | .00 |
| Tax | .00 |
| Total Due | $   370.00 |

Questions About
Your Account?
Call

DIANE SHULTZ
(404) 573-5273

----- RETURN THIS PORTION WITH PAYMENT -----

Remit To:
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN:  ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN:  SOPHIA REMALOS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON           VA 20171

| Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|
| 61100915 | $ | $   370.00 |

| Account Number | Amount This Bill | Discount Amount | Amount Enclosed |
|---|---|---|---|
| 100109636 | $   370.00 | N/A | N/A |

| Amount Past Due | | | |
|---|---|---|---|
| N/A | | | |

INVOICES ARE PAYABLE IN U.S. CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONABLE RATE OR IS
SUBJECT TO LATE PAYMENT CHARGES PER
AGREEMENT REMARKS.

**ORIGINAL**

B2047



## INVOICE

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

CUST SVC TEAM CODE: SE

**Ship To:**

WINSTAR NETWORK EXPANSION LLC  **Bill To:**
PROJECT WNEDC0004092 / G8023NM
SPARES AND EXCHANGE
ATTN: NEIL SCHUSTER
910 15TH STREET    SUITE 140
DENVER          CO 80202-2935

WINSTAR WIRELESS
ATTN: SOPHIA REKHLDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON      VA, 20171

| | |
|---|---|
| Invoice Number | 61100915 |
| Invoice Date | 03/19/01 |
| Account Number | 100109636 |
| Page Number | 2 |

PAYMENT DUE 04/18/01

| Customer P.O. # | LUC Reference # | Customer Code | Terms | Contract # | FOB |
|---|---|---|---|---|---|
| WNE4092 | | NMY702 (Y7) | NET 30 DAYS | | |

| Item No. | Local Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | CD1*Y15V*NN | | | | | |
| | | | | | SHIP=010314/0JD=010315 | | | | | |
| | | | | | AUTH=SE5 | | | | | |
| | | | | | 8000002 | | | | | |
| | | | | | ****** LAST PAGE ****** | | | | | |

| | | |
|---|---|---|
| Sub Total | $ | 370.00 |
| Less Advance Payments | | |
| Transportation | $ | .00 |
| Tax | | .00 |
| Total Due | $ | 370.00 |

**MAKE CHECK PAYABLE TO:**

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

INVOICES ARE PAYABLE
IN US CURRENCY AND
OVERDUE AMOUNT
SHALL BEAR INTEREST AT
A REASONABLE RATE OR
IS SUBJECT TO LATE
PAYMENT CHARGES PER
AGREEMENT REMARKS:

**ORIGINAL**

Questions About Your
Account? Call

DIANE SHULTZ
(404) 573-5273

REMARKS:

CONFIDENTIAL

LW 00300399

B2048



CUST SVC TEAM CODE:  SE

# INVOICE

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN:  ACCOUNTS RECEIVABLE

| Invoice Number | 7100563 |
| Invoice Date | 01/31/01 |
| Account Number | 10010636 |
| Page Number | 1 |

**Ship To:**

WINSTAR NETWORK EXPANSION LLC
PROJECT WNEQ00004692 / D3732WNBill To:
SPARES AND EXCHANGE
ATTN: PATRICK PHILBIN
525 MARKET STREET        SUITE 270
SAN FRANCISCO    CA 94105-2708

WINSTAR WIRELESS
ATTN: JULIAN HADDAO
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON        VA 20171

| Customer P.O. # | | LUC Reference # | | Customer Code | | Terms | |
|---|---|---|---|---|---|---|---|
| WNE4692 | | | | HHY702 (Y7) | | NET 30 DAYS | |

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | Total Price |
|---|---|---|---|---|---|---|---|---|---|
| 3 | D3732WH | 12/19/00 | | | 900799669 | | 2 | $35.00 | $70.00 |
| | | | | | SESS NORM DELIVERY SVC CHG | | | | |
| | | | | | FOR LINE ITEM NUMBER 1 | | | | |
| | | | | | PK CKT BKF   1 | | | | |
| | | | | | SESS NORM DELIVERY SVC CHG | | | | |
| | | | | | FOR LINE ITEM NUMBER 2 | | | | |
| | | | | | PK CKT KBN   5 | | | | |
| | | | | | CD1=F;SY=WN | | | | |
| | | | | | SHIP=001220;OLD=001221 | | | | |
| | | | | | AUTH=SES | | | | |
| | | | | | B000002 | | | | |
| | | | | | CONTINUED ON NEXT PAGE | | | | |

PAYMENT DUE  03/02/01    Contract #    FOB

| | Sub Total | $ | 70.00 |
| | Less Advance Payment | | |
| | Transportation | $ | .00 |
| | Tax | $ | .00 |
| | Total Due | $ | 370.00 |

Questions About Your Account? Call
DIANE SHULTZ
(404) 573-8723

HAVE A NICE DAY FROM THE
PACIFIC REGION CONTRACTS
& ACCOUNTS ORGANIZATION.

ORIGINAL

ALL INVOICES ARE PAYABLE IN U S CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONABLE RATE OR IS
SUBJECT TO LATE PAYMENT CHARGES PER
AGREEMENT REMARKS.

---

**RETURN THIS PORTION WITH PAYMENT**

**Remit To:**
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN:  ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: JULIAN HADDAO
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON        VA 20171

| Account Number | Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|---|
| 10010636 | 7100563 | N/A | $        370.00 |

| Amount Past Due | Amount this Bill | Discount Amount | Amount Enclosed |
|---|---|---|---|
| N/A | $        370.00 | N/A | N/A |



CUST SVC TEAM CODE: SE

# INVOICE

Lucent Technologies, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN:  ACCOUNTS RECEIVABLE

Ship To:
WINSTAR NETWORK EXPANSION LLC
PROJECT WNE000004692 / D3732VH
SPARES AND EXCHANGE
ATTN: PATRICK PHILBIN
525 MARKET STREET        SUITE 270
SAN FRANCISCO    CA 94105-2708

Bill To:
WINSTAR WIRELESS
ATTN: JULIAN HADDAD
2545 HORSE PEN ROAD
C-1493 1ST FLOOR
HERNDON        VA 20171

| | |
|---|---|
| Invoice Number | 71110563 |
| Invoice Date | 01/31/01 |
| Account Number | 100109636 |
| Page Number | 2 |

PAYMENT DUE  03/02/01

| Customer P.O. # | Lucent Order | Ship Date | Ship Method | Bill of Lading | LUC Reference # | Customer Code | Terms | Contract # | FOB |
|---|---|---|---|---|---|---|---|---|---|
| WNE4692 | D3732VH | 12/19/00 | | | | WNV702 (Y7) | NET 30 DAYS | | |

| Item No. | Part Number Description | Quantity Ordered | Quantity Shipped | PM | Unit Price | Total Price |
|---|---|---|---|---|---|---|
| 4 | 10669650J<br>PRODUCT EXCHANGE CHARGE<br>FOR LINE ITEM NUMBER 2<br>PK CKT KGN   5<br>CDI=IISV=HN<br>SHP=001220IOJD=001221<br>AUTH=SES<br>SRV CHG     SES-5 $300.00<br>B000002<br>****** LAST PAGE ****** | | 1 | 1 | $300.00 | $300.00 |

| | | |
|---|---|---|
| Sub Total | $ | 370.00 |
| Less Advance Payments | | |
| Transportation | $ | .00 |
| Tax | $ | .00 |
| Total Due | $ | 370.00 |

MAKE CHECK PAYABLE TO:

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN:  ACCOUNTS RECEIVABLE

INVOICES ARE PAYABLE
IN U.S. CURRENCY AND
OVERDUE AMOUNT
SHALL BEAR INTEREST AT
A REASONALBE RATE, OR
IS SUBJECT TO LATE
PAYMENT CHARGES PER
AGREEMENT REMARKS:

ORIGINAL

Questions About Your
Account? Call

DIANE SHULTZ
(404) 573-5273

REMARKS:
HAVE A NICE DAY FROM THE
PACIFIC REGION CONTRACTS
& ACCOUNTS ORGANIZATION.

CONFIDENTIAL

LW  00300401

B2050



## INVOICE

**LUCENT TECHNOLOGIES, INC.**
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN:  ACCOUNTS RECEIVABLE

**Ship To:**
WINSTAR
KATHY SOTHERN  612-782-9292
3346 ULYSSES ST NE
MINNEAPOLIS    MN 55418

**Bill To:**
US

**Invoice Number** 41301036
**Invoice Date** 01/23/01
**Account Number** 100385027
**Page Number** 1

WINSTAR COMMUNICATIONS INC.
2545 HORSE PEN ROAD
ACCOUNTS PAYABLE
HERNDON         VA 20171-3401

| Item No. | Customer P.O. # | LUC Reference # | Customer Code | Terms | | | | | | | PAYMENT DUE | FOB |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 0000004936. | | C1 | NET 30 DAYS | | | | | | | 02/23/01 | |

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | PM | Unit Price | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 0001 | 4G436219 | 01/19/01 | | | TG 5 0101.00 SESS SW TRANSL GD 14V * | | 1 | E | $165.90 | $165.90 |
| | | | | | TAX AMOUNT | | | | | $10.78 |
| 00002 | 4G436219 | 01/19/01 | | | TRANSPORTATION | | | | | $3.05 |
| 0001 | 4G437160 | 01/19/01 | | | TG 5 0101.00 SESS SW TRANSL GD 14V * | | 1 | E | $165.90 | $165.90 |
| | | | | | TAX AMOUNT | | | | | $10.78 |
| 00004 | 4G437160 | 01/19/01 | | | TRANSPORTATION | | | | | $3.05 |
| | | | | | ORDER NOTE  CIC ORDER # 0094600314 | | | | | |
| | | | | | CONTINUED ON NEXT PAGE | | | | | |

SHIP: KATHY SOTHERN  612-782-9292

| | Contract # | |
|---|---|---|
| **Sub Total** | $ | 331.80 |
| **Less Advance Payment** | | |
| **Transportation** | $ | 6.10 |
| **Tax** | $ | 21.56 |
| **Total Due** | $ | 359.46 |

Questions About Your Account? Call
A/R REPRESENTATIVE
1-800-795-6850

INVOICES ARE PAYABLE IN U.S. CURRENCY AND OVERDUE AMOUNT SHALL BEAR INTEREST AT A REASONABLE RATE OR IS SUBJECT TO LATE PAYMENT CHARGES PER AGREEMENT REMARKS:

PLEASE ALLOW FIVE DAYS WHEN PAYING BY MAIL.

**ORIGINAL**

---

**RETURN THIS PORTION WITH PAYMENT**

**Remit To:**
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN:  ACCOUNTS RECEIVABLE

WINSTAR COMMUNICATIONS INC.
2545 HORSE PEN ROAD
ACCOUNTS PAYABLE
HERNDON         VA 20171-3401

| Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|
| 41301036 | N/A | $ 359.46 |

| Amount This Bill | Discount Amount | Amount Enclosed |
|---|---|---|
| $ 359.46 | N/A | N/A |

| Account Number | Amount Past Due |
|---|---|
| 100385027 | N/A |

CONFIDENTIAL    LW 00300402



# INVOICE

**LUCENT TECHNOLOGIES, INC.**
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

| Invoice Number | 41301036 |
| Invoice Date | 01/23/01 |
| Account Number | 100385027 |
| Page Number | 2 |

PAYMENT DUE 02/22/01

**Ship To:**
WINSTAR
VIVIAN AUEL 612/955-3313
9100 COUNTY RD 15   MN 55359
MAPLE PLAIN

**Bill To:**
US

WINSTAR COMMUNICATIONS INC.
2545 HORSE PEN ROAD
ACCOUNTS PAYABLE
HERNDON   VA 20171-3401

| Customer P.O. # | LUC Reference # | Customer Code | Terms | FOB |
|---|---|---|---|---|
| 0000004936 | | C1 | NET 30 DAYS | |

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | ORDER NOTE | ORD: NEAL   CAMPBLIN | | CreditCard welcome on next purchase | | | |
| | | | | | 7038896640 | | | | | |
| | | | | | CTC ORDER # 0094600318 | | SHP: VIVIAN AUEL 612/955-3313 | | | |
| | | | | | ORD: NEAL   CAMPBLIN | | CreditCard welcome on next purchase | | | |
| | | | | | 7038896640 | | | | | |
| | | | | | ****** LAST PAGE ****** | | | | | |

| | | |
|---|---|---|
| Sub Total | $ | 331.80 |
| Less Advance Payments | | |
| Transportation | $ | 6.10 |
| Tax | $ | 21.56 |
| Total Due | $ | 359.46 |

**MAKE CHECK PAYABLE TO:**

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

INVOICES ARE PAYABLE
IN US. CURRENCY AND
OVERDUE AMOUNT
SHALL BEAR INTEREST AT
A REASONALBE RATE OR
IS SUBJECT TO LATE
PAYMENT CHARGES PER
AGREEMENT REMARKS:

Questions About Your
Account?   Call
A/R REPRESENTATIVE
1-800-795-6850

REMARKS:

PLEASE ALLOW FIVE DAYS WHEN PAYING
BY MAIL.

**ORIGINAL**

CONFIDENTIAL

LW 00300403

B2052



CONFIDENTIAL

LW 00300404

B2053



CUST SVC TEAM CODE: SE

# INVOICE

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

**Ship To:**

WINSTAR NETWORK EXPANSION LLC
PROJECT WNE00004692 / M6048RH
SPARES AND EXCHANGE
ATTN: JEFERY FINKBEINER
240 NORTH 5TH STREET  SUITE 220
COLUMBUS       OH 43215-2611

**Bill To:**

WINSTAR WIRELESS
ATTN: SOPHIA REWALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON          VA 20171

| Invoice Number | 41103361 |
|---|---|
| Invoice Date | 03/15/01 |
| Account Number | 100109636 |
| Page Number | 2 |

PAYMENT DUE   04/14/01

| Customer P.O. # | LUC Reference # | | Customer Code | | Terms | Contract # | | | FOB |
|---|---|---|---|---|---|---|---|---|---|
| | | | NNY702 (Y7) | | NET 30 DAYS | | | | |

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| | WNE4692 | | | | CDI-Y;SV-AH | | | | | |
| | | | | | SHIP=010228;ODJ-010301 | | | | | |
| | | | | | AUTH-SES | | | | | |
| | | | | | B000007 | | | | | |
| | | | | | ****** LAST PAGE ****** | | | | | |

| | | |
|---|---|---|
| Sub Total | $ | 335.00 |
| Less Advance Payments | | .00 |
| Transportation | | |
| Tax | $ | .00 |
| **Total Due** | $ | 335.00 |

**Questions About Your Account? Call**

DIANE SHULTZ
(404) 573-5273

PLEASE ALLOW FIVE DAYS WHEN PAYING
BY MAIL.

**REMARKS**

**MAKE CHECK PAYABLE TO:**

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

INVOICES ARE PAYABLE
IN U.S. CURRENCY AND
OVERDUE AMOUNT
SHALL BEAR INTEREST AT
A REASONABLE RATE OR
IS SUBJECT TO LATE
PAYMENT CHARGES PER
AGREEMENT REMARKS.

**ORIGINAL**

Lucent Technologies
Bell Labs Innovations



# INVOICE

**Lucent Technologies**

LUCENT TECHNOLOGIES, INC.
ATTN: ACCOUNT RECEIVABLE
P.O. BOX 100317
ATLANTA, GA. 30384-0317

**Ship To:**
WINSTAR
1002 NORTH 3RD STREET
FLOOR 1

PHOENIX          AZ 85004

**Bill To:**
WINSTAR
ATTN: ACCOUNTS PAYABLE
1002 NORTH 3RD STREET

PHOENIX          AZ 85004

PAYMENT DUE DATE. 04/07/01

| | | | | | |
|---|---|---|---|---|---|
| Invoice Number | S0111088 | | | | |
| Invoice Date | 03-08-01 | | | | |
| Account Number | 990940170 | | | | |
| Page Number | 1 | | | | |

| Customer P.O. # | LUC Reference # | Customer Code | Terms | Contract # | FOB |
|---|---|---|---|---|---|
| 84031955 | Q304JZ | Y7- | NET 30 DAYS | | ORIGIN |

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 0001 | 84031955 | 02-07-01 | NORMAL | | LABOR - ALL TESTS PA PK CKT MC5021SA2 16A | 0 | 0 | $248.00 | 1 | $248.00 |
| 0002 | 84031955 | 02-07-01 | NORMAL | | HANDLING CHARGES PK CKT MC5021SA2 16A | 0 | 0 | $12.00 | 1 | $12.00 |
| | | | | | 1 | | | | | |
| | | | | | 1 | | | | | |
| | | | | | 0 | | | | | |
| | | | | | ITEM(S) RECEIVED FOR REPAIR REPAIRED AND JUNKED | | | | | |
| | | | | | FINAL SHIPMENT | | | | | |
| | | | | | ***** LAST PAGE ***** | | | | | |

| | | |
|---|---|---|
| | Sub Total | $ 260.00 |
| | Less Advance Payment | |
| | Transportation | $ .00 |
| | Tax | $ .00 |
| | Total Due | $ 260.00 |

Questions About Your Account?
Call
DIANE SHULTZ
(404) 573-5273

INVOICES ARE PAYABLE IN U.S. CURRENCY AND OVERDUE AMOUNT SHALL BEAR INTEREST AT A REASONABLE RATE OR IS SUBJECT TO LATE PAYMENT CHARGES PER AGREEMENT REMARKS.

PAYMENTS SHOULD BE RECEIVED BY DUE DATE. THANK YOU FOR USING LUCENT TECHNOLOGIES

---- **RETURN THIS PORTION WITH PAYMENT** ----

Remit To:
LUCENT TECHNOLOGIES, INC.
ATTN: ACCOUNT RECEIVABLE
P.O. BOX 100317
ATLANTA, GA. 30384-0317

WINSTAR
ATTN: ACCOUNTS PAYABLE
1002 NORTH 3RD STREET

PHOENIX          AZ 85004

| Current Balance | Total Due This Bill |
|---|---|
| N/A | $ 260.00 |
| Discount Amount | Amount Enclosed |
| N/A | |

| Account Number | Invoice Number | Amount this Bill |
|---|---|---|
| 990940170 | S0111088 | $ 260.00 |
| Amount Past Due | | |
| N/A | | |



# INVOICE

**Lucent Technologies, INC.**
ATTN: ACCOUNT RECEIVABLE
P.O. BOX 100317
ATLANTA, GA. 30384-0317

**Ship To:**
WINSTAR
1850 M STREET N.W.
SUITE 300
WASHINGTON          DC 20036

**Bill To:**
WINSTAR
ATTN: ACCOUNTS PAYABLE
1850 M. STREET          SUITE 300
WASHINGTON          DC 20036

PAYMENT DUE DATE: 05/05/01

| Invoice Number | S0116599 |
|---|---|
| Invoice Date | 04-05-01 |
| Account Number | 100419789 |
| Page Number | 1 |

| Customer P.O. # | LUC Reference # | Customer Code | Terms | Contract # | | FOB |
|---|---|---|---|---|---|---|
| 58032148 | 030446 | Y7- | NET 30 DAYS | | | ORIGIN |

| Item No | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 0001 | 58032148 | 03-19-01 | NORMAL | | LABOR - ALL TESTS PA PK CKT UN 182 S7 | 0 | 0 | $212.00 | 1 | $212.00 |
| 0002 | 58032148 | 03-19-01 | NORMAL | | HANDLING CHARGES PK CKT UN 182 S7 | 0 | 0 | $12.00 | 1 | $12.00 |
| | | | | | 2  ITEM(S) RECEIVED FOR REPAIR | | | | | |
| | | | | | 1  REPAIRED AND | | | | | |
| | | | | | 0  JUNKED | | | | | |
| | | | | | FINAL SHIPMENT | | | | | |
| | | | | | ****** LAST PAGE ****** | | | | | |

| | |
|---|---|
| Sub Total | $ 224.00 |
| Less Advance Payment | |
| Transportation | $ .00 |
| Tax | $ 12.88 |
| Total Due | $ 236.88 |

Questions About
Your Account?
Call

DIANE SHULTZ
(404) 573-5273

INVOICES ARE PAYABLE IN U.S CURRENCY AND OVERDUE AMOUNT SHALL BEAR INTEREST AT A REASONABLE RATE OR IS SUBJECT TO LATE PAYMENT CHARGES PER AGREEMENT REMARKS.

PAYMENTS SHOULD BE RECEIVED BY DUE DATE. THANK YOU FOR USING LUCENT TECHNOLOGIES

---RETURN THIS PORTION WITH PAYMENT---

**Remit To:**
LUCENT TECHNOLOGIES, INC.
ATTN: ACCOUNT RECEIVABLE
P.O. BOX 100317
ATLANTA, GA. 30384-0317

WINSTAR
ATTN: ACCOUNTS PAYABLE
1850 M. STREET          SUITE 300
WASHINGTON          DC 20036

| Invoice Number | Current Balance | Total Due/This Bill |
|---|---|---|
| S0116599 | N/A | $ 236.88 |

| Amount This Bill | Discount Amount | Amount Enclosed |
|---|---|---|
| $ 236.88 | N/A | N/A |

| Account Number | |
|---|---|
| 100419789 | |

| Amount Past Due | |
|---|---|
| N/A | |



LUCENT TECHNOLOGIES, INC.
ATTN: ACCOUNT RECEIVABLE
P.O. BOX 100317
ATLANTA, GA. 30384-0317

# INVOICE

| | |
|---|---|
| Ship To: | WINSTAR<br>3 ALLEN CENTER, 50TH FLOOR<br>333 CLAY STREET<br><br>HOUSTON          TX 77002 | Bill To: | WINSTAR<br>ATTN: ACCOUNTS PAYABLE<br>333 CLAY STREET  3 ALEN CTR 50TH FL<br><br>HOUSTON          TX 77002 |

PAYMENT DUE DATE: 04/14/01

| Invoice Number | S0113975 |
|---|---|
| Invoice Date | 03-15-01 |
| Account Number | 100515053 |
| Page Number | 1 |

| Customer P.O. # | LUC Reference # | Customer Code | Terms | Contract # | FOB |
|---|---|---|---|---|---|
| 84QR6178 | Q304LS | Y7- | NET 30 DAYS | | ORIGIN |

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PW | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 0001 | 84QR6178 | 02-27-01 | NORMAL | | LABOR - ALL TESTS PA<br>PK CKT WSNB03  S3 | 0 | 0 | $201.00 | 1 | $201.00 |
| 0002 | 84QR6178 | 02-27-01 | NORMAL | | HANDLING CHARGES<br>PK CKT WSNB03 S3 | 0 | 0 | $12.00 | 1 | $12.00 |
| | | | | | 1  ITEM(S) RECEIVED FOR REPAIR<br>1  REPAIRED AND<br>0  JUNKED | | | | | |
| | | | | | FINAL SHIPMENT<br>****** LAST PAGE ****** | | | | | |

| | |
|---|---|
| Sub Total | $ 213.00 |
| Less Advance Payment | |
| Transportation | $ .01 |
| Tax | $ .00 |
| Total Due | $ 213.01 |

Questions About
Your Account?
Call

DIANE SHULTZ
(404) 573-5273

INVOICES ARE PAYABLE IN US CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONABLE RATE OR IS
SUBJECT TO LATE PAYMENT CHARGES PER
AGREEMENT REMARKS.

PAYMENTS SHOULD BE RECEIVED
BY DUE DATE.  THANK YOU FOR
USING LUCENT TECHNOLOGIES

------RETURN THIS PORTION WITH PAYMENT------

Remit To:
LUCENT TECHNOLOGIES, INC.
ATTN: ACCOUNT RECEIVABLE
P.O. BOX 100317
ATLANTA, GA. 30384-0317

WINSTAR
ATTN: ACCOUNTS PAYABLE
333 CLAY STREET  3 ALEN CTR 50TH FL

HOUSTON          TX 77002

| Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|
| S0113975 | N/A | $ 213.01 |

| Amount This Bill | Discount Amount | Amount Enclosed |
|---|---|---|
| $ 213.01 | N/A | |

| Account Number | | |
|---|---|---|
| 100515053 | | |

| Amount Past Due | | |
|---|---|---|
| N/A | | |

B2057

**Lucent Technologies**
Bell Labs Innovations

**INVOICE**

LUCENT TECHNOLOGIES, INC.
ATTN: ACCOUNT RECEIVABLE
P.O. BOX 100317
ATLANTA, GA. 30384-0317

**Ship To:**
WINSTAR
1002 NORTH 3RD STREET

PHOENIX                AZ 85004

**Bill To:**
WINSTAR
ATTN: ACCOUNTS PAYABLE
1002 NORTH 3RD STREET

PHOENIX                AZ 85004

PAYMENT DUE DATE: 04/21/01

| Invoice Number | S0114675 |
|---|---|
| Invoice Date | 03-22-01 |
| Account Number | 100423155 |
| Page Number | 1 |

| Customer P.O. # | LUC Reference # | Customer Code | Terms | Contract # | FOB |
|---|---|---|---|---|---|
| 84032164 | Q304J2 | Y7- | NET 30 DAYS | | ORIGIN |

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number/Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 0001 | 84032164 | 03-02-01 | NORMAL | | REPAIR LABOR PK CKT KBN  5  S10 REPAIR | 0 | 0 | $56.00 | 1 | $56.00 |
| 0002 | 84032164 | 03-02-01 | NORMAL | | REPAIR MATERIAL PK CKT KBN  5  S10 REPAIR | 0 | 0 | $24.00 | 1 | $24.00 |
| 0003 | 84032164 | 03-02-01 | NORMAL | | HANDLING CHARGES PK CKT KBN  5  S10 REPAIR | 0 | 0 | $12.00 | 1 | $12.00 |
| | | | | | 1  ITEM(S) RECEIVED FOR REPAIR 1  REPAIRED AND 0  JUNKED | | | | | |
| | | | | | CONTINUED ON NEXT PAGE | | | | | |

| | | |
|---|---|---|
| Sub Total | $ | 92.00 |
| Less Advance Payment | | |
| Transportation | $ | .00 |
| Tax | $ | .00 |
| Total Due | $ | 92.00 |

Questions About
Your Account?
Call

DIANE SHULTZ
(404) 573-5273

INVOICES ARE PAYABLE IN U.S. CURRENCY.
ANY OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONABLE RATE OR U.S.
SUBJECT TO LATE PAYMENT CHARGES PER
AGREEMENT REMARKS

PAYMENTS SHOULD BE RECEIVED
BY DUE DATE. THANK YOU FOR
USING LUCENT TECHNOLOGIES

------ RETURN THIS PORTION WITH PAYMENT ------

**Remit To:**
LUCENT TECHNOLOGIES, INC.
ATTN: ACCOUNT RECEIVABLE
P.O. BOX 100317
ATLANTA, GA. 30384-0317

WINSTAR
ATTN: ACCOUNTS PAYABLE
1002 NORTH 3RD STREET

PHOENIX                AZ 85004

| Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|
| S0114675 | N/A | $        92.00 |

| Amount of this Bill | Discount Amount | Amount Enclosed |
|---|---|---|
| $        92.00 | N/A | N/A |

| Account Number | Amount Past Due |
|---|---|
| 100423155 | N/A |

**CONFIDENTIAL**

LW  00300409        B2058



# INVOICE

Lucent Technologies

**Ship To:**

LUCENT TECHNOLOGIES, INC.
ATTN: ACCOUNT RECEIVABLE
P.O. BOX 100317
ATLANTA, GA. 30384-0317

WINSTAR
1002 NORTH 3RD STREET

PHOENIX          AZ 85004

**Bill To:**

WINSTAR
ATTN: ACCOUNTS PAYABLE
1002 NORTH 3RD STREET

PHOENIX          AZ 85004

| Invoice Number | S0114675 |
| Invoice Date | 03-22-01 |
| Account Number | 100423155 |
| Page Number | 2 |

PAYMENT DUE DATE: 04/21/01

| Customer Code | Terms | Contract # | FOB |
|---|---|---|---|
| Y7- | NET 30 DAYS | | ORIGIN |

| Customer P.O. # | LUC Reference # |
|---|---|
| 84032154 | QS04JZ |

| Item No | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | ****** FINAL SHIPMENT | | | | | |
| | | | | | ****** LAST PAGE ****** | | | | | |

|  |  |
|---|---|
| Sub Total | $ 92.00 |
| Less Advance Payments | |
| Transportation | $ .00 |
| Tax | $ .00 |
| Total Due | $ 92.00 |

**Questions About Your Account? Call**

DIANE SHULTZ
(404) 573-5273

PAYMENTS SHOULD BE RECEIVED
BY DUE DATE. THANK YOU FOR
USING LUCENT TECHNOLOGIES

**MAKE CHECK PAYABLE TO:**

LUCENT TECHNOLOGIES, INC.
ATTN: ACCOUNT RECEIVABLE
P.O. BOX 100317
ATLANTA, GA. 30384-0317

ORIGINAL

**REMARKS:**

INVOICES ARE PAYABLE
IN U.S. CURRENCY AND
OVERDUE AMOUNT
SHALL BEAR INTEREST AT
A REASONABLE RATE OR
IS SUBJECT TO LATE
PAYMENT CHARGES PER
AGREEMENT REMARKS

CONFIDENTIAL

LW 00300410

B2059



# INVOICE

**LUCENT TECHNOLOGIES, INC.**
ATTN: ACCOUNT RECEIVABLE
P.O. BOX 100317
ATLANTA, GA. 30384-0317

**Ship To:**
WINSTAR
1002 NORTH 3RD STREET

PHOENIX                    AZ 85004

**Bill To:**
WINSTAR
ATTN: ACCOUNTS PAYABLE
1002 NORTH 3RD STREET

PHOENIX                    AZ 85004

PAYMENT DUE DATE: 04/28/01

| Invoice Number | S0115619 |
|---|---|
| Invoice Date | 03-29-01 |
| Account Number | 10Q423155 |
| Page Number | 1 |

| Customer P.O. # | LUC Reference # | Customer Code | Terms | Contract # | | FOB |
|---|---|---|---|---|---|---|
| 84Q32163 | 0304JZ | Y7- | NET 30 DAYS | | | ORIGIN |

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 0001 | 84Q32163 | 03-09-01 | NORMAL | | LABOR - ALL TESTS PA PK CKT UN 186 S2 | 0 | 0 | $72.00 | 1 | $72.00 |
| 0002 | 84Q32163 | 03-09-01 | NORMAL | | HANDLING CHARGES PK CKT UN 186 S2 | 0 | 0 | $12.00 | 1 | $12.00 |
| | | | | | 1  ITEM(S) RECEIVED FOR REPAIR 1  REPAIRED AND 0  JUNKED | | | | | |
| | | | | | FINAL SHIPMENT | | | | | |
| | | | | | ****** LAST PAGE ****** | | | | | |

| | | |
|---|---|---|
| Sub Total | $ | 84.00 |
| Less Advance Payment | | |
| Transportation | $ | .00 |
| Tax | $ | .00 |
| Total Due | $ | 84.00 |

Questions About
Your Account?
Call

DIANE SHULTZ
(404) 573-5273

INVOICES ARE PAYABLE IN US CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONABLE RATE OR IS
SUBJECT TO LATE PAYMENT CHARGES PER
AGREEMENT REMARKS

PAYMENTS SHOULD BE RECEIVED
BY DUE DATE. THANK YOU FOR
USING LUCENT TECHNOLOGIES

---- RETURN THIS PORTION WITH PAYMENT ----

**Remit To:**
LUCENT TECHNOLOGIES, INC.
ATTN: ACCOUNTS RECEIVABLE
P.O. BOX 100317
ATLANTA, GA  30384-0317

WINSTAR
ATTN: ACCOUNTS PAYABLE
1002 NORTH 3RD STREET

PHOENIX                    AZ 85004

| Account Number | Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|---|
| 10Q423155 | S0115619 | N/A | $  84.00 |
| Amount Past Due | Amount this Bill | Discount Amount | Amount Enclosed |
| N/A | $  84.00 | N/A | |



# INVOICE

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

CUST SVC TEAM CODE: SE

**Ship To:**
WINSTAR NETWORK EXPANSION LLC
PROJECT WNEDOC004692 / G9186JH Bill To:
SPARES AND EXCHANGE
ATTN: ROGER LEE
415 N MAIN STREET          SUITE 300
SAN ANTONIO          TX 78205-1415

WINSTAR WIRELESS
ATTN: SOPHIA REHALOS
2645 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON          VA 20171

| Invoice Number | 5110125 |
| Invoice Date | 02/26/01 |
| Account Number | 100109636 |
| Page Number | 1 |

| Customer P.O. # | LUC Reference # | Ship Date | Ship Method | Bill of Lading | Customer Code | Terms | PAYMENT DUE Contract # | FOB |
|---|---|---|---|---|---|---|---|---|
| WNE4692 | | 02/06/01 | | | WNY702 (Y7) | NET 30 DAYS | 02/28/01 | |

| Item No. | Lucent Order | | Part Number Description | Quanity Ordered | Quanity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|
| 3 | G9186JH | | 900799669<br>SESS NORM DELIVERY SVC CHG<br>FOR LINE ITEM NUMBER 1<br>PK CKT BKO  2<br>SESS NORM DELIVERY SVC CHG<br>FOR LINE ITEM NUMBER 2<br>PK CKT TN061<br>CD1=Y1SV=NN<br>SHIP=010207;OJD=010208<br>AUTH=SES<br>8000002<br><br>******  LAST PAGE  ****** | | 2 | $35.00 | 1 | $70 00 |

| | | |
|---|---|---|
| Sub Total | $ | 70.00 |
| Less Advance Payment | | |
| Transportation | $ | 00 |
| Tax | $ | .00 |
| Total Due | $ | 70.00 |

Questions About
Your Account?
Call

DIANE SHULTZ
(404) 573-3633

-------- RETURN THIS PORTION WITH PAYMENT --------

Remit To: LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: SOPHIA REHALOS
2645 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON          VA 20171

| Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|
| 5110125 | N/A | $ 70.00 |
| **Amount this Bill** | **Discount Amount** | **Amount Enclosed** |
| $ 70.00 | N/A | N/A |

| Account Number | |
|---|---|
| 100109636 | |
| **Amount Past Due** | |
| N/A | |

THANK YOU FOR USING
LUCENT TECHNOLOGIES

ALL CHARGES ARE PAYABLE IN U.S. CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONABLE RATE OR IS
SUBJECT TO LATE PAYMENT CHARGES PER
AGREEMENT REMARKS

**ORIGINAL**



# INVOICE

**Lucent Technologies**

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

CUST SVC TEAM CODE: SE

**Ship To:**
WINSTAR NETWORK EXPANSION LLC
PROJECT WNE000004692 / G9188JH Bill To:
SPARES AND EXCHANGE
ATTN: GREG KRIVOSIK
3 ALLEN CENTER SUITE 5000
HOUSTON TX 77002

WINSTAR WIRELESS
ATTN: SOPHIA RENALDS
2845 HORSE PEN ROAD
C-1403 1ST FLOOR
HERNDON VA 20171

| | |
|---|---|
| Invoice Number | 51102417 |
| Invoice Date | 03/15/01 |
| Account Number | 100109636 |
| Page Number | 1 |

| Customer P.O. # | Lucent Order | Ship Date | LUC Reference # | Bill of Lading | Customer Code | Terms | PAYMENT DUE Contract # | | FOB |
|---|---|---|---|---|---|---|---|---|---|
| WNE4692 | G9188JH | 02/27/01 | | | | NET 30 DAYS | 04/14/01 | | |

| Item No. | Part Number Description | Quanity Ordered | Quanity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|
| 2 | 900799669 | . | 1 | $35.00 | 1 | $35.00 |
| | SESS NORM DELIVERY SVC CHG | | | | | |
| | FOR LINE ITEM NUMBER 1 | | | | | |
| | PK CKT TN1046 | | | | | |
| | CDI*1*ST*NN | | | | | |
| | SHIP*010228:OJD*010301 | | | | | |
| | AUTH*SES | | | | | |
| | 8000008 | | | | | |
| | | | | | | |
| | ****** LAST PAGE ****** | | | | | |

| | | |
|---|---|---|
| Sub Total | $ | 35.00 |
| Less Advance Payment | | |
| Transportation | $ | .00 |
| Tax | $ | .00 |
| Total Due | $ | 35.00 |

Questions About
Your Account?
Call

DIANE SHULTZ
(404) 573-2621

THANK YOU FOR USING
LUCENT TECHNOLOGIES

PRICES ARE PAYABLE IN U.S. CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONALBE RATE OR IS
SUBJECT TO LATE PAYMENT CHARGES PER
AGREEMENT REMARKS

**ORIGINAL**

--- RETURN THIS PORTION WITH PAYMENT ---

**Remit To:**
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: SOPHIA RENALDS
2845 HORSE PEN ROAD
C-1403 1ST FLOOR
HERNDON VA 20171

| Account Number | Current Balance | Total Due This Bill |
|---|---|---|
| 100109636 | N/A | $ 35.00 |

| Invoice Number | Amount this Bill | Discount Amount | Amount Enclosed |
|---|---|---|---|
| 51102417 | $ 35.00 | N/A | N/A |

| Amount Past Due | | | |
|---|---|---|---|
| N/A | | | |



# INVOICE

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

CUST SVC TEAM CODE:  SE

**Ship To:**
WINSTAR NETWORK EXPANSION LLC
PROJECT WNED000004692 / H1J1OJHBHI To:
SPARES AND EXCHANGE
ATTN: ROGER TURNER
3012 MONTOPOLIS DRIVE   SUITE 300
AUSTIN            TX 78741

WINSTAR WIRELESS
ATTN: SOPHIA REINALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON      VA 20171

| | |
|---|---|
| Invoice Number | 51102470 |
| Invoice Date | 03/19/01 |
| Account Number | 100109636 |
| Page Number | 1 |

| Customer P.O. # | Ship Date | LUC Reference # | Ship Method | Bill of Lading | Customer Code | Terms |
|---|---|---|---|---|---|---|
| WNE4092 | | | | | HNY702 (Y7) | NET 30 DAYS |
| H1J1OJH | 03/13/01 | | | | | |

| Item No. | Lucent Order | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|
| 2 | | 900799669 SES5 NORM DELIVERY SVC CHG FOR LINE ITEM NUMBER 1 PK CKT BKO   1 CDI=I:SY=AN SHP=010314:0JD=010315 AUTH=SES B000007 | | 1 | $35.00 | 1 | $35.00 |
| | | ***** LAST PAGE ***** | | | | | |

PAYMENT DUE
Contract #                    04/18/01              FOB

| | | | |
|---|---|---|---|
| Sub Total | | $ | 35.00 |
| Less Advance Payment | | | |
| Transportation | | $ | .00 |
| Tax | | $ | .00 |
| Total Due | | $ | 35.00 |

Questions About Your Account?
Call
DIANE SHULTZ
(404) 573-8622

PRICES ARE PAYABLE IN US CURRENCY AND OVERDUE AMOUNT SHALL BEAR INTEREST AT A REASONALBE RATE OR IS SUBJECT TO LATE PAYMENT CHARGES PER AGREEMENT REMARKS

THANK YOU FOR USING
LUCENT TECHNOLOGIES

## ORIGINAL

--- RETURN THIS PORTION WITH PAYMENT ---

**Remit To:**
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: SOPHIA REINALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON      VA 20171

| Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|
| 51102470 | N/A | $   35.00 |

| Account Number | | |
|---|---|---|
| 100109636 | | |

| Amount this Bill | Discount Amount | Amount Enclosed |
|---|---|---|
| $   35.00 | N/A | N/A |

| Amount Past Due | | |
|---|---|---|
| N/A | | |



INVOICE

CUST SVC TEAM CODE:  SE

Lucent Technologies

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN:  ACCOUNTS RECEIVABLE

Ship To:
WINSTAR NETWORK EXPANSION LLC
PROJECT WNEXX000004692 / G8825HWBill To:
SPARES AND EXCHANGE
ATTN: LYNN SUMMERS
1002 NORTH 3RD STREET
PHOENIX         AZ 85003

WINSTAR WIRELESS
ATTN: SOPHIA REWALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON         VA 20171

Invoice Number    61101058
Invoice Date      03/29/01
Account Number    100109636
Page Number       1

| Customer P.O. # | LUC Reference # | Customer Code | Terms | PAYMENT DUE Contract # | | FOB |
|---|---|---|---|---|---|---|
| WNE4692 | | WWY702 (Y7) | NET 30 DAYS | 04/28/01 | | |

| Item No. | Lucent Order | Ship Date | Ship Method | Bill of Lading | Part Number Description | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|
| 2 | G8825HW | 01/16/01 | | | 900799669 SESS NORM DELIVERY SVC CHG FOR LINE ITEM NUMBER 1 PK CKT KTU  2 COI=Y;SV=HW SHIP=010117;OJD=010118 AUTH=SES B000013 | | 1 | $35.00 | 1 | $35.00 |
| | | | | | ****** LAST PAGE ****** | | | | | |

Sub Total                              $  35.00

Less Advance Payment

Transportation           $         .00

Tax              $         .00

Total Due                $  35.00

Questions About
Your Account?
Call                     DIANE SHULTZ
                         (404) 573-9823

INVOICES ARE PAYABLE IN U.S. CURRENCY AND OVERDUE AMOUNT SHALL BEAR INTEREST AT A REASONABLE RATE OR IS SUBJECT TO LATE PAYMENT CHARGES PER AGREEMENT REMARKS.

ORIGINAL

------- RETURN THIS PORTION WITH PAYMENT -------

Remit To:
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN:  ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: SOPHIA REWALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON         VA 20171

| Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|
| 61101058 | N/A | $  35.00 |

| Amount this Bill | Discount Amount | Amount Enclosed |
|---|---|---|
| $  35.00 | N/A | N/A |

| Account Number | Amount Past Due |
|---|---|
| 100109636 | N/A |



CUST SVC TEAM CODE: SE

## INVOICE

| | |
|---|---|
| Invoice Number | 7101093 |
| Invoice Date | 02/27/01 |
| Account Number | 100109636 |
| Page Number | 1 |

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

Ship To:

WINSTAR NETWORK EXPANSION LLC
PROJECT WNE000000692 / D3732YH
SPARES AND EXCHANGE
ATTN: PATRICK PHILBIN
525 MARKET STREET    SUITE 270
SAN FRANCISCO    CA 94105-2708

Bill To:

WINSTAR WIRELESS
ATTN: SOPHIA REINALDS
2546 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON    VA 20171

| Customer P.O. # | Lucent Order | Ship Date | Ship Method | Bill of Lading | LUC Reference # | Customer Code | Terms | PAYMENT DUE | Contract # | FOB |
|---|---|---|---|---|---|---|---|---|---|---|
| WNE4692 | | | | | | NWY702 (Y7) | NET 30 DAYS | 03/29/01 | | |

| Item No. | Lucent Order | Ship Date | | | | Part Number/Description | | Quantity Ordered | Quantity Shipped | Unit Price | PM | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | D3732YH | 02/13/01 | | | | 90079669<br>SESS NORM DELIVERY SVC CHG<br>FOR LINE ITEM NUMBER 1<br>PK CKT TNI681<br>CDI=Y;SV=NN<br>SHIP=D30214;0,0=010215<br>AUTH=SES<br>B000004<br>****** LAST PAGE ****** | 1 | 1 | $35.00 | 1 | $35.00 |

|  |  |  |  |
|---|---|---|---|
| Sub Total | $ | | 35.00 |
| Less Advance Payment | | | |
| Transportation | $ | | .00 |
| Tax | $ | | .00 |
| Total Due | $ | | 35.00 |

Questions About
Your Account?
Call

DIANE SHULTZ
(404) 573-5821

HAVE A NICE DAY FROM THE
PACIFIC REGION CONTRACTS
& ACCOUNTS ORGANIZATION.

INVOICES ARE PAYABLE IN U.S. CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONABLE RATE, OR IS
SUBJECT TO LATE PAYMENT CHARGES PER
AGREEMENT REMARKS

## ORIGINAL

------ RETURN THIS PORTION WITH PAYMENT ------

Remit To:

LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA 30384-0317
ATTN: ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN: SOPHIA REINALDS
2546 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON    VA 20171

| | Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|---|
| | | N/A | $ 35 00 |

| Account Number | Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|---|
| 100109636 | 7101093 | N/A | $ 35.00 |

| Amount Past Due | Amount this Bill | Discount Amount | Amount Enclosed |
|---|---|---|---|
| N/A | $ 35.00 | N/A | |

CONFIDENTIAL

LW 00300417

B2065



LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN:  ACCOUNTS RECEIVABLE

# INVOICE

CUST SVC TEAM CODE:  SE

Ship To:
WINSTAR NETWORK EXPANSION LLC
PROJECT WNE000004692 / D3732WHBill To:
SPARES AND EXCHANGE
ATTN:  PATRICK PHILBIN
525 MARKET STREET      SUITE 270
SAN FRANCISCO      CA 94105-2708

WINSTAR WIRELESS
ATTN:  SOPHIA REINALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON      VA 20171

Invoice Number     7110530
Invoice Date       03/19/01
Account Number     10010636
Page Number        1

| Item No. | Customer P.O. # | Lucent Order | Ship Date | LUC Reference # | Ship Method | Bill of Lading | Customer Code | Part Number Description | Terms | Quantity Ordered | Quantity Shipped | PAYMENT DUE Contract # | Unit Price | PM | FOB | Total Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | WNE4692 | | | | | | WHY702 (Y7) | | NET 30 DAYS | | | 04/18/01 | | | | |
| 2 | D3732WH | 03/13/01 | | | | | | 900799669 SESS NORM DELIVERY SVC CHG FOR LINE ITEM NUMBER 1 PK CKT TN1846 CD1=1;SV=NN SHIP=D03141;0JD=010315 AUTH=SES 8000005 ***** LAST PAGE ***** | | 1 | 1 | | $35.00 | 1 | | $35.00 |

Questions About Your Account?
Call

Sub Total          $    35.00

Less Advance Payment

Transportation     $      .00

Tax                $      .00

Total Due          $    35.00

DIANE SHULTZ
(404) 573-5821

HAVE A NICE DAY FROM THE
PACIFIC REGION CONTRACTS
& ACCOUNTS ORGANIZATION.

INVOICES ARE PAYABLE IN U.S. CURRENCY
AND OVERDUE AMOUNT SHALL BEAR
INTEREST AT A REASONABLE RATE, OR IS
SUBJECT TO LATE PAYMENT CHANGES PER
AGREEMENT REMAINS.

**ORIGINAL**

-----RETURN THIS PORTION WITH PAYMENT-----

Remit To:
LUCENT TECHNOLOGIES, INC.
P.O. BOX 100317
ATLANTA, GA  30384-0317
ATTN:  ACCOUNTS RECEIVABLE

WINSTAR WIRELESS
ATTN:  SOPHIA REINALDS
2545 HORSE PEN ROAD
C-1483 1ST FLOOR
HERNDON      VA 20171

| Account Number | Invoice Number | Current Balance | Total Due This Bill |
|---|---|---|---|
| 100109636 | 7110530 | N/A | $   35.00 |

| Amount Past Due | Amount this Bill | Discount Amount | Amount Enclosed |
|---|---|---|---|
| N/A | $   35.00 | N/A | |

CONFIDENTIAL

LW  00300418

B2066

# Expert Report

## Of

## Christopher Stark

## CS Hawthorn Inc.



B2067



Limiting Conditions and Rule 26 Disclosures

1.  The report is intended solely for the information of the person or persons to whom it is addressed,

    solely for the purpose stated, and may not be relied upon by any other person for any other

    purpose without CS Hawthorn's prior written consent.

2.  No opinion, counsel or interpretation is intended in matters that require legal, accounting, tax or

    other appropriate professional advice. It is assumed that such opinion, counsel or interpretation

    have been or will be obtained from the appropriate professional sources.

3.  I am being paid $450 per hour for the services offered in this matter and my fee is not contingent

    upon the outcome of the litigation or the content of this report.

4.  In addition to my own industry experience and expertise, the data or other information that I have

    considered in forming my opinion is as follows:

    a.  Standard & Poor's industry survey, "Communications Equipment", dated

        January 18, 2001;

    b.  CIBC World Markets industry update, "Global Cap-ex 2004: Behind the Kimono", dated

        March 17, 2004.

5.  I have not testified as an expert at trial or by deposition within the preceding four years.

6.  My work on this matter is continuing and I expressly reserve the right to amend or supplement the

    opinions expressed herein based on additional information that I may review.

B2068



I    Background and qualifications

      I am president of CS Hawthorn Inc, a consulting firm specializing in management consulting to the telecommunications industry. I have experience in planning, building, accepting and operating telecommunication networks during the period 1999 to 2004, and during that time I was an active participant in the North American optical networks market.

      Prior to forming CS Hawthorn, I worked for Alcatel and over the past 18 years I have worked in the telecommunications industry in various capacities and for two of the major telecommunication equipment providers, Alcatel and Nortel.

      I have senior executive experience with Alcatel and a proven successful track record in the telecommunications sector in North America (Alcatel is a world leading telecommunications company with products and services spanning personal communications sets to telecommunication systems in international markets). Whilst working for Alcatel in 1999, I moved from Paris, France, to Dallas, Texas to direct the long haul DWDM business and to establish Alcatel as a major player in the North American Optical Networks market. One year later I was promoted to take over responsibility for all of the Optical Networking divisions in North America and, in addition, I was given responsibility for the Optical components division and the Wireless transport division (Microwave). At the peak of the market I had a 1.5B$ optical networking business and 10% market share in North America. At this time my business secured a number of nationwide network contracts from major carriers such as Sprint and I successfully built a number of networks that are in operation today. As an additional part of my responsibility I oversaw special teams looking at business opportunities beyond the traditional supply of equipment to the carriers. One such project was a collaboration with CityNet telecommunications (a company with technology to lay fiber into the sewers and prevent the disruption of traditional civil works associated with trenching and laying of fiber in major cities). This project examined the feasibility of building metropolitan area networks, connecting major buildings to central office co-location

B2069



sites, and as such the planning and logistics of building, and operating the network, formed a key part of the business plan.

Prior to working in the USA I was based in Paris, working for Alcatel at its headquarters, with the responsibility for corporate procurement of strategic technologies.

Prior to my assignment in Paris I had been working in the telecommunications industry on the design, manufacture, and installation of Submarine Networks (undersea telecommunication cables) for twelve years.

II    Statement of Conclusions

   i    In the time frame of 1999 to 2000, carriers held inventory to secure supply of equipment and to help mitigate the risks associated with network build out.

   ii    Vendor and technology substitution was possible but required planning and extra cost to operations.

   iii    Transactions at the end of a fiscal period were not uncommon and often resulted in favorable terms being offered to carriers by suppliers.

B2070



III    Introduction

I have been asked by counsel for Lucent Technologies to provide analysis on various issues relating to the deployment of telecommunication networks, including optical networks, in the time period 1999 to 2001. Included in these issues are the following

i       Network planning and build out

ii      Inventory

iii     Technology and the ability to substitute

iv      Vendor selection

v       Transactions and timing

In addressing these issues, counsel for Lucent has asked me to review the February 25, 2004, expert report of Mr. Robert E. Ott, of Kane Reece Associates. I have based the text of my report on my experience, as outlined above, in the optical networking sector from 1999 to 2004. Where pertinent I have made reference to Mr.Ott's report in dealing with the five issues above.

In the timeframe of 1999 to end of 2000, the market for telecom was exploding and spending on network infrastructure, and in particular Optical Networks, by carriers worldwide (a correlation to their forecast for traffic growth), grew in the order of 50%.[1] The growth of demand for long haul equipment (a subset of the Optical Network market) ran at twice this rate and nearly doubled between 1999 and 2000. Competition was fierce as new carriers challenged the existing carriers for customers and traffic growth was expected to deliver lower and lower costs to the end user. In 2001 the market collapsed and precipitated large downsizing within the industry, again the decline was rapid with the overall market dropping 65% by 2002 and the long haul equipment market dropped by 74% in the same period.[1]

[1]*Reference CIBC world markets report "Global Cap-ex 2004: Behind the Kimono" March 17 2004*

B2071



IV       Network planning and build out

Carriers looking to build a nationwide network prudently follow a number of detailed steps to ensure that their network is dimensioned correctly, on time, at the correct locations and cost effective. The process requires judgment on the size of the market that can be addressed, and ability to capture the percentage of addressable market targeted.  It is also a process that has a great deal of momentum built into it and, because of the complex dependencies during the end to end process, there are inherent barriers to changing the direction in a short time frame.

Below I will elaborate further on this complexity and detail some of the steps in this process.

i        Traffic flow

To dimension the network correctly a carrier will look to traffic flow patterns to determine the size of pipe needed between nodes in the network and the interface levels needed to hand off at the layers of the network. At points where traffic would be handed over to another carrier's network both the location and timely availability of connections have to be planned carefully. Efficiency in the network is critical to keeping the cost under control and so it is important not only to know the amount of traffic that will likely connect nodes in the network but also the granularity of the circuits that will be used.

B2072



ii    Infrastructure

Once a carrier has planned its traffic it must go about ensuring that the infrastructure is in place to deliver this traffic to the end user. In each layer of the network, infrastructure needs to be put in place in a timeframe that meets the end user's predicted demands. In the following paragraphs I will detail some of the logistical issues associated with infrastructure build at different network levels.

a    Customer premise

The premise would typically be a building and, to secure access to the building, a lease agreement (with the landlord) would be negotiated for all equipment either in the basement or on the roof. In addition to the lease described above, arrangements would be made for:

- Power, for equipment;
- wiring in the building to connect all equipment;
- Access to the equipment site for install, commissioning and maintenance.

b    Access aggregation point

These would typically be locations on a fiber ring that connected to a central office (CO) and were within close proximity to a group of end users. As with the customer premise it was usual for these locations to be third party owned, and maintained, and so lease agreements for space in the building for the equipment would need to be put in place. In addition to the lease described above, arrangements would need to be made for:

- Power, for equipment;
- wiring in the building to connect all equipment;
- Access to the equipment site for Install commissioning and maintenance;
- Connection to an optical ring (through basement) and leasing of fiber capacity back to CO.

B2073



c      CO

        CO sites would be the collection point for a series of access aggregation points to feed into. In some cases these would also be locations where equipment would be co-located with other carriers. In the co-location buildings it would be necessary to lease space for equipment (gateway, switch, router, etc.) where the building was owned and operated by a third-party. In these co-locations carriers would arrange for hand off points to the Public Switched Telephone Network and Internet network and this requires agreements to be in place to complete the work between carriers and the purchase of bandwidth from another carrier. In the case of a CO that acted as the gateway to the long distance network, leasing arrangements with the long haul fiber provider would need to be in place and the interconnect point made available.

        In each location a site specific design would be carried out to ensure that all services were available for the equipment and to ensure that the number of times a site would be visited would be kept to a minimum. From this site inspection a full Bill of Material (BOM) would be generated, including interconnect cables, etc., that would be used to ensure all equipment to complete a job would be available at the time of install.

d      Equipment

        The BOM generated for each site would be used to create a purchase order (PO) and as a check point for shipments. This PO would then create a demand within the manufacturing facility to produce equipment. At this point a delivery date would be given as an acknowledgement to the PO. Lead times for the manufacture of equipment inherent in the industry in the 1999 through 2000 timeframe were up to 30 weeks (from component purchase to equipment delivery) while there was an expectation from the customer carriers of only 7 weeks delivery on equipment after placement of order. As the industry became more and more competitive in 2000, major equipment suppliers took action to secure

B2074



volume supply of components to guard against lead times lengthening. Consequently, the manufacturing operation would launch at risk the procurement of parts and some manufacturing to enable the delivery expectations to be met. This risk production purchase was being done using the forecasts given by the carriers and internal and industry analysts.

Prior to shipment of the equipment it was typical to stage and test configurations. Critical at this point was the ship to address given by the carrier, which enabled delivery of the equipment to the end point. It was not unusual to find that site availability did not coincide with the shipment schedule or priority changes within the carrier necessitated the deployment to a new site.

e       Network management

In order to manage a network effectively, carriers deploy Operations Support Systems (OSS's), including network management, at central locations. These computer based platforms provide surveillance and fault location for networks and would normally handle the following functions of a carrier network:

- Billing;

- Revenue assurance and fraud management;

- EMS (element management system);

- Inventory management;

- Fault management;

- Performance monitoring;

- Service management;

- Service activation;

- Service provisioning.

To effectively construct such a system, integration with the equipment deployed in the field is critical. To ensure that full interoperability exists, extensive network tests are carried out in labs in a process that can take many months to complete.

B2075



Introducing a new piece of equipment into an existing network would normally require an upgrade to the release of the management system to handle the new equipment; this is a process that can take many months to develop and also requires close cooperation between the equipment vendors and management system.

f     Install

To install the network requires careful logistical planning by program management. Both carriers and suppliers spend a lot of effort to ensure that the risk involved in aligning these logistics is limited. Two examples of actions taken by both parties were as follows:

- Where possible standard configurations would be used to limit customization at a site and limit the risk of encountering new problems during install.

- Carriers would limit their exposure to logistical issues by having suppliers ship equipment to a warehouse prior to site availability and this ensured that work could start at a site as soon as they had secured the infrastructure (for example, fiber and real-estate).

On a typical installation job installers would travel to a site and receive the material for the job, install kits, etc., as well as the equipment. The installers would place and wire all equipment to the specification given and agreed by the customer, and have power available for the equipment to be switched on and tested.

Attainment of the network build dates was critical to all concerned. When delays occurred the emphasis was always placed on the supply base to hit the original plan, for the network build out or, at the minimum, improve on their performance. This was true regardless of the source of the delay and, as a supplier, I was requested to assist with logistical problems that were under the carrier's responsibility (such as location availability or fiber availability). Consequently, if schedules were at risk, a recovery plan was expected that would remove some or all of the delay and it was rare to see a significant delay declared and accepted without strenuous efforts to avoid such a delay.

B2076

g       Commissioning

Post install commissioning is the verification that the equipment is both configured and wired correctly and that there have been no failures of equipment during shipment or install. Depending on the site this can take four weeks or more to complete. Should any system level testing of circuits be needed then access to other sites has to be gained. This becomes more complex as networks are built in phases and traffic is applied to earlier deployments. Carriers are very protective of their network performance to existing customers and consequently it becomes a logistical issue to provide network tests when one site involved has live traffic. Ensuring that all of these dependencies line up is the job of project management, as is the responsibility of creating a recovery plan, as mentioned previously. However as the network grows there become many more uncontrolled dependencies that can adversely impact the timing of network availability.

II      Inventory

On page 14 of Mr. Ott's report, he draws the conclusion that it was not prudent business practice for a customer to hold inventory months ahead of planned install and that this prevented the customer from choosing newer technology. In my opinion, achieving this flexibility of supply was not feasible and the optical networks industry was not in the state that Mr.Ott alludes to.

Customers who were engaged in large network build outs planned and executed their build outs in a very meticulous manner. This was imperative to the carrier in order to manage the logistical complexities of building the network as set forth in my discussion on network build out.

In nationwide network build outs, carriers held inventory to buffer against supply issues and facilitate network deployment. The amount of inventory held would depend on the aggressiveness of their build plan, the more aggressive a plan being attempted the larger the inventory would be. In my experience there were a number of events that could impact a network build and these ranged from the failure to have equipment on time to not having the key to get into a location. The cost of deploying networks is substantial and actions were taken to ensure that as

B2077

much certainty as possible could be worked into the "ready for service" dates. Carriers negotiated bandwidth leasing agreements with each other at points where traffic was passed between one network and another. Failure to put the network in service at the time the agreement began resulted in costs being incurred for the lease without the ability to take revenue from customers.

In support of the observation I make, regarding the holding of inventory by major carriers, the events of 2001 to 2003 demonstrated both the extent of inventory held by carriers and the damaging effect on the suppliers. As the market slowed dramatically in 2001, carriers started to cancel orders for equipment and cut forecasts. In extreme cases the carrier would completely stop purchases on equipment. The inventory that they had held became more significant as the extent of the slow down became apparent and many carriers had been building with aggressive market forecasts. In at least one instance I found that a carrier had over one years worth of inventory, based on their revised forecasts post 2000, and this proved devastating to my business because I had relied on the take rate from the carriers to size my supply chain.

Three of my biggest customers AT&T, Sprint and Worldcom all had inventory and this magnified the slow down for suppliers like myself.

With the benefit of hindsight one could draw the conclusion that carriers should not have held inventory because the market growth was going to end. However, carriers and suppliers acted with the information available at the time and, as the growth in the market was predicted to continue for a number of years, the behavior of the carriers was commensurate with supporting rapid network build out. Consequently, my observation is that the major carriers ensured security of supply of equipment through inventory and therefore reduced the risk of late completion to networks.

III     Vendor selection and substitution

I have read Mr.Ott's report and I disagree with the conclusion he draws at page 25 that the equipment was readily available from several vendors. Although it is true that several vendors had the technology to build out the Winstar network, in my experience equipment vendor's supply chains were not flexible enough to deal with large changes to the demand in a timely fashion. In

B2078



1998 and in subsequent years the demand for optical networks grew at a pace that equipment providers found hard to keep up with, as described in the introduction.

In general major vendors were building capacity "in house" and as such a number of new facilities were built in that timeframe. However the capacity from these new facilities took time to come on line and in several cases production constraints were overcome just as the market fell in 2001. As pointed out by Mr.Ott on page 4 of his report, the number one supplier, Nortel, had had problems in the supply of equipment up until the middle of 2000 and had increased production capacity to overcome these issues. My experience, at the time, was that equipment vendors were constantly pressured to increase capacity and in my case I constructed a new facility for Optical Networks in the time frame discussed.

I would also point out that in the major complex networks that I was involved in, the vendor selection process was very detailed and meticulous. Buying decisions affected a company over a number of years and consequently these decisions were not taken lightly. Major carriers would typically proceed along the following steps.

1.  RFP/RFQ sent out to suppliers and responses evaluated, this is a process that could take several months to complete.

2.  Selected supplier begins test phase with customer to prove capability. This process again could take several months to complete, as the vendor had to configure and ship equipment to a lab and perform a test plan. In most cases this process was elongated due to the necessity for integrating the equipment with the network management system from the customer.

3.  The customer would then have to partition the network to allow for a second/replacement supplier to be integrated into the network in a manageable way.

4.  Contract negotiations and sign off of supply agreement between carrier and supplier would take place. This activity would happen during the test phase and provided no major issues arose between supplier and customer finished just after acceptance of the test phase.

B2079



5.  Customer operations staff would then be trained on the new equipment and depending on the size of the network and the size of the operations group this would last several weeks.

6.  At a point in this process a supplier had to start ramp up of production capacity of their equipment and in many cases this required adding to current capabilities or building new facilities. In the case of very large supply agreements for national networks it could take in excess of five or six months to move from standing start to full production.

In summary, my experience was that there were a number of very capable vendors around at the period in question and, given time, any one of these could have stepped up to supply a new nationwide network. However to accomplish this required time, money and effort. The cumulative effect of each of the steps set forward above could typically take a year or more and required the customer to take attention away from current builds to integrate a new plan. Although a carrier could short circuit the steps above, and shorten the selection process, this introduced risk. From my observation, the complexity and time taken to introduce an unplanned supplier created an added barrier to replacing the existing supplier because making the switch costs time and money.

IV      Technology substitution

Mr. Ott raises the issue of substituting technology in network builds. In particular I would like to address the quotes on page 24:

**"It would not be sensible to order equipment a year or more before it could be practically used"**

Rather,

**"It would have been a better course of action to thoroughly evaluate the economies and technical claims of alternative suppliers as one approached the real dates for deployment".**

This statement does not reflect the process by which a carrier selects technology and vendors for their network and does not reflect the behavior of the telecommunications industry from 1998 to 2000. Clearly network equipment choices made at the beginning of planning a

B2080

network in 1998 would look very different from the same exercise in 2001. Equipment advances moved at pace through 1999/2000 with a number of new entrants in the market. However, technology platform decisions are made when planning a network (as opposed to in hindsight) and represent a large investment for the carrier. Because this represented a major investment, carriers would typically request that upgrades be planned for the equipment platform and rolled out into the network as needed. The upgrade path for a platform would typically add hardware and software features to the existing product and provide carriers with more options to purchase from. Consequently, care was taken at the vendor selection phase by carriers to ensure that suppliers and their products could evolve with the networks. This represented another reason for carriers' reluctance to switch suppliers and remain with the equipment platforms over time.

In my experience, carriers continued to build with equipment many years after the first selection was made. Even today, carriers such as Sprint, AT&T, Verizon and SBC purchase equipment that was conceived in the 1990's.

It was not common for carriers to switch suppliers in the middle of a supply agreement to build out a network and it was very unusual for a carrier to make short term decisions on equipment supply based on the latest product on the market. Evaluations of new technology were generally directed at designs for the next generation of the network, and a carrier's current network build was the domain of the operations and deployment group. This was reflected by the fact that on several occasions, in my role as Group VP of Alcatel Optics, I tried to gain a foothold in a carrier as a second or substitute supplier and each time I was unsuccessful. The reasons given to me for my lack of success were the cost of introducing a new supplier through training, spares, network management, etc., and is reflected in the section I have written on vendor substitution.

B2081

V    Transactions and timing

During the period from 1999 to 2001, it was common for manufacturers of equipment to be focused on meeting revenue expectations and capturing market share. One way of achieving this was to secure an end of year deal or in the case of some vendors, an end of quarter deal. In my experience, in the industry, I was aware of these types of deals being done and, prior to the acquisition by Alcatel, DSC (Digital Switch Corporation) had gained a reputation for entering into quarterly deals. In talking with the sales force of the former DSC, I found that regularly entering into quarterly deals became a practice that customers would take advantage of and consequently the large quantity of sales orders would arrive at the end of that quarter.

In the case of an end of year deal, which I did enter into, a carrier would look at the capital expenditure left from the year's budget and spend the shortfall by extracting a favorable deal from one of their suppliers on products that they would deploy later. However, it was my experience that to secure any end of fiscal period transaction, purchasers would take advantage of the suppliers' need for revenue and market share and expect large concessions and as a vendor it would invariably lower the margin.

VI    Conclusions

i    In the time frame of 1999 to 2000, carriers held inventory to secure supply of equipment and to help mitigate the risks associated with network build out.

ii    Vendor and technology substitution was possible but required planning and extra cost to operations.

iii    Transactions at the end of a fiscal period were not uncommon and often resulted in favorable terms being offered to carriers by suppliers.

B2082

CS Hawthorn

Date:        March 30, 2004

Name:        Christopher Stark

Title:       President

Company:     CS Hawthorn

Signed:

B2083

# APPENDIX A

B2084

# Christopher D. Stark

8204 Bartley Circle
Plano, Texas 75025

chris.stark@sbcglobal.net

Home: 972 712 0968
Office: 972- 371-1305

## EXECUTIVE SUMMARY

Senior executive with a proven successful track record in technology based environments. Has a wealth of experience in the design and deployment of Telecommunication Network's. Demonstrated experience and expertise to take a company forward in even the most difficult of times. Competent in all facets of running a multi billion dollar company in both rapidly growing and declining markets. Excellent negotiator and has an ability to construct deals involving complex relationships.

## PROFESSIONAL EXPERIENCE

**CS Hawthorn** (Oct 2003 to present)
**President**
Formed a management consulting company to offer business strategy and marketing services to small companies. In the last four months has expanded experience into new business sectors such as automotive parts and control systems.

- Provided market placement and entrance strategies
- Pricing and competitive landscape analysis
- Introductions to Carrier customers and equipment vendors
- Due diligence services including
  - Purchase price analysis
  - Business plan development
  - Private equity funding introductions and assistance
  - Technical analysis of products
  - Organization strategy both pre and post acquisition
- Management team analysis

**Alcatel,** (1994 – 2003)
Alcatel is one of the world's leading telecommunications companies with products and services which span personnel communications sets to telecommunication systems in international markets.

**B2085**

# Christopher D. Stark

Page Two

**Group Vice President, Alcatel Optics, North America, Dallas, Texas** (2000 – 2003)
Responsible for the Optical Networks, Wireless Transport, Alcatel Optronics and Astral Point business units. Fully accountable to the CEO of Alcatel America and the President of Alcatel Optics Business Division for all operations in the North American market. Areas of responsibility included Market Penetration, restructuring, acquisitions, P&L, divestures and customer satisfaction in multi site and multi national environments.

- Achieved $1.5B revenue in North America.
- Grew the Optics to 13% of market share in 2001 which was the first time for double digit market share in many years.
- Retained market share gain during the market contraction of 80% in two years.
- Led the acquisition of Astral Point and negotiated other acquisitions.
- Ensured the healthy profitability of the wireless transport division.
- Developed the wireless market strategy for MMDS technology in broadband access.
- Divested manufacturing facilities and concurrently maintained output.
- Divested the optical components business to Sanmina.
- Divested product lines to legacy based companies.
- Turned a major quality issue with Verizon around and hit the goal of customer support.
- Effectively recruited, trained, managed and retained top-quality staff with an unsurpassed commitment to quality and professionalism, which directly impacted company image and customer loyalty.

**Vice President/GM, Intelligent Optical Networks Division,** North America, Dallas, Texas (1999 - 2000)

- Profit and loss responsibility for the leading optical technology products business with annual revenue of ~ $800m and a product and sector budget in excess of $100m annually.
- Achieved a significant win to build out the backbone network of Sprint and turned around failing product line.
- Built an operations organization and facility that quadrupled the capacity in one year.
- Doubled the sales of WDM in the USA and filled the capacity of the new facility in nine months

**Technology Marketing Director, Alcatel Telecom Corporate Office, Paris, France** (1998 - 1999)
Major responsibilities were to establish an advanced procurement organization across Alcatel that enabled the acquisition of advanced technologies at the earliest opportunity while managing the risks associated with such acquisitions.

**Technology Marketing Director (continued)**

- Performed supply base market assessment on technologies required by many business divisions of Alcatel (e.g. Optical, Semiconductor, Internet, electromechanical).
- Identified suitable supply infrastructures and negotiated frame agreements to secure supply cost, logistics and quality.
- Developed internal and external relationships with Marketing Directors, Chief Technical Officers, Chief Executives and Purchasing Directors.
- Managed the successful implementation of an Optical supply strategy for Alcatel Telecom and the acceptance by the board of a future business strategy for the Optoelectronics component manufacturer within Alcatel.
- This assignment ended after I was requested to come to the USA to run the Optical layer products.

B2086

# Christopher D. Stark
Page three

**Alcatel Submarine Networks**

**Terminal Development Manager – Greenwich, London, England** (1995 – 1998)
Responsible for all R&D activities on the development of land based transmission equipment. Responsible for the introduction of products into manufacture. Development team of ~80 engineers and an annual expense budget of £3 million.

**Advanced Product Development Manager – Greenwich, London/ Paris, France** (1994 – 1995)
Responsible for research and initial development of all products related to Submarine Systems. Prime interface for the activities in the Central Research Facility in Paris. Development team consisted of 12 engineers and was split between the U.K and France.

**STC Submarine Systems**

**Terminal Development Manager – Greenwich, London, England** (1991 – 1994)
Responsible for all development activities related to the terrestrial based transmission equipment. Development team of 40 engineers and an annual expense budget of £2 million.

**Southampton, Hampshire, England** (1986 to 1991)
Various positions and responsibilities form Graduate Engineer to Manager Systems Assembly and Test.

## TRAINING

**Alcatel Management Training Scheme**                                                1996 - Present
Completed the Alcatel management-training process for potential corporate executives

**STC Management Training**                                                           1989 - 1994
Member of the company management-training program that was facilitated the move from the Cable Development division to the Transmission Equipment division

## EDUCATION

Bsc (hons) Electrical and Electronic Engineering, Upper second class, Plymouth University 1986

## LANGUAGES

French - Good comprehension and capable of conversing, but not fluent

B2087

# Confidential

---

**From:**      Daniel_Csillag@lnotes5 bankofny com
**Sent:**      Wednesday, November 15, 2000 8 55 PM
**To:**        siddharth kasera@sfs siemens com
**Cc:**        Frubin@winstar com, kmonaco@winstar com
**Subject:**   Winstar Capital Corp  Amendment Request

  

Adobe Portable     Adobe Portable     Adobe Portable
  Document            Document            Document

```
> ----------
> From:    Daniel_Csillag@lnotes5.bankofny.com
[SMTP:DANIEL_CSILLAG@LNOTES5.BANKOFNY.COM]
> Sent:    Wednesday, November 15, 2000 8:55:01 PM
> To:      siddharth.kasera@sfs.siemens.com
> Cc:      Frubin@winstar.com; kmonaco@winstar.com
> Subject:     Winstar Capital Corp. Amendment Request
> Auto forwarded by a Rule
>
```
Attached please find an amendment request package with respect to the $1.15
Billion Senior Secured Credit Facilities for Winstar Capital Corp.   In
addition
to the amendment request, attached to this E-Mail are two NON-PUBᴏIC
projection
models (Base Case & Scaled Back).   If your institution is one that cannot
see
these projections, please delete the two projection files.

(See attached file: Microsoft Word - Amendment Letter 1.pdf)(See attached
file:
DebtModel.11.15.00_base.pdf)(See attached file:
DebtModel.11.15.00_Scaled_back.pdf)

The information in this e-mail, and any attachment therein, is confidential
and
for use by the addressee only. If you are not the intended recipient,
please
return the e-mail to the sender and delete it from your computer. Although
the
Bank of New York attempts to sweep e-mail and attachments for viruses, it
does
not guarantee that either are virus-free and accepts no liability for any
damage
sustained as a result of viruses.



DEFENDANT'S
EXHIBIT
721

1

Siemens ICN 02209

**B2088**

# Confidential

## BNY CAPITAL MARKETS, INC.

ONE WALL STREET, NEW YORK, N.Y. 10286

**Date:** November 15, 2000

**To:** Winstar Capital Corp ("Winstar" or the "Company") Lenders

**From:** BNY Capital Markets, Inc.

**RE:** Amendment No 2 Request

In order to allow Winstar to continue to focus on the execution of its business plan, including the expansion of its broadband network, products and services, it has entered into agreements (subject to final documentation and standard conditions precedent) that will provide it with approximately $1 02 billion in additional capital (the "Additional Capital"), of which $770 million is immediately available  The Additional Capital is comprised of a (i) $270 million private equity investment purchased by Microsoft Corporation, Compaq Computer Corporation, Credit Suisse First Boston Private Equity and Welsh, Carson, Anderson & Stowe VIII, L P  This investment is in the form of convertible preferred stock (the "Preferred Stock"), which converts into common stock initially at $25 per share and includes five-year warrants to purchase an aggregate of 4,590,000 shares of common stock at an initial exercise price of $25 per share; (ii) $500 million equipment leasing facility, of which $250 million is available immediately, with an affiliate of Cisco Systems Inc (the "Cisco Facility"), (iii) $50 million equipment leasing facility with Compaq Financial Services, Inc (the "Compaq Facility" and collectively with the Cisco Facility, the "Lease Facilities") and (iv) $200 million senior loan made by Siemens Financial Services, Inc. (the "Siemens Loan").

The Lease Facilities (i) are guaranteed by Winstar Communications, Inc and Winstar Capital Corp , (ii) have a tenor of 36 months, (iii) are structured as triple net leases, (iv) each have a special purpose vehicle as the borrower under such facility (which shall be wholly owned subsidiaries of Winstar Wireless, Inc ) and (v) provide the lessee with the option to purchase the equipment at the end of the lease term  The Cisco Facility will be predominantly used to finance the purchase of routers, hubs and other equipment enhancing the performance and capabilities at the edge of Winstar's network   The Compaq Facility will be predominantly used to finance the ongoing expansion and development of Winstar's rapidly growing Web hosting and application service provider infrastructure and offerings  The Cisco Facility is permitted under Section 8 02(a)(i)(E)(4) of the credit agreement and the Compaq Facility is permitted under Section 8 02(a)(i)(E)(3) of the credit agreement

The Siemens Loan will be structured as a new term loan ("Term Loan C") under the $1.15 billion senior credit facilities (the "Facilities"). As such, the Facilities shall be increased to $1.35 billion. The Term Loan C matures on December 31, 2007. All other terms of the Term Loan C are identical to those under the existing Term Loan B

In order to permit the Term Loan C, the consent of the Required Lenders (>50%) under the Facilities is required. Therefore, the Company requests a second amendment ("Amendment No. 2") to the Facilities to allow for the Term Loan C  Additionally, the company intends on utilizing up to $200 million of proceeds from the Additional Capital to repay outstandings under the credit agreement with Lucent Technologies, Inc ("Lucent")   Therefore, the Facilities will also be amended to allow for this prepayment, so long as such prepayment occurs no later than December 31, 2000  This prepayment makes up to an additional $200 million immediately available under the Lucent facility.  Winstar will still have a maximum available funding commitment of $1 0 billion under the Lucent facility

Winstar\Siemens Amendment\Amendment Letter 1

Siemens ICN 02210

# Confidential

Winstar Capital Corp.
Amendment No. 2 Request
November 15, 2000
Page 2

The Bank of New York, CIBC World Markets, Corp., Citicorp North America, Inc and Credit Suisse First Boston have approved Amendment No 2. Responses to Amendment No. 2 are requested by no later than 5·00 p m Eastern Time, Thursday, November 30, 2000 (the "Amendment Response Date"). An amendment fee equal to 0 125% will be paid to each Lender that executes Amendment No 2 by the Amendment Response Date based on each Lender's commitment amount on such date

A conference call will be held by the management of Winstar on Friday, November 17, 2000 at 11 30 a m Eastern Time to provide an update on the Company's operations and an overview of the Additional Capital    The teleconference can be accessed by dialing 1-888-282-0372 and providing the operator with the passcode, "WINSTAR" and the conference leader's name, "DANIEL CSILLAG"   A replay will be available from November 17, 2000 at 3 00 p m until December 1, 2000 at 5 00 p m. by dialing 1-800-867-1928   Additionally, a conference call will be held to discuss the enclosed financial projections   Details regarding this call will be forwarded to you shortly.

Attached is an amendment information package to assist you in your review   This contains (i) revised financial projections (the "Revised Projections") after giving effect to the Additional Capital which includes a summary comparing the Revised Projections with the projections contained in Winstar's Confidential Information Memorandum dated April 2000, (ii) financial projections representing a scaled back business plan assuming no additional sources of funding are obtained after giving effect to the Additional Capital, (iii) organizational charts detailing the company's domestic and international subsidiaries, and (iv) a Contact List   An execution copy of Amendment No. 2 will be forwarded to you shortly   If you have any questions, please feel free to speak with anyone on the Contact List   On behalf of Winstar, your timely response to this Amendment request and continued support of the Company is greatly appreciated

Winstar\Siemens Amendment\Amendment Letter 1

Siemens ICN 02211

B2090

# Confidential

---

### Winstar Capital Corp. Contact List

---

**BNY CAPITAL MARKETS, INC.**
**One Wall Street**
**New York, NY 10286**

| *Structured Finance, 18th Floor* | *Phone* | *Fax* |
|---|---|---|
| Jeffrey D. Landau, Managing Director<br>Email: jlandau@bankofny.com | (212) 635-8260 | (212) 635-8268 |
| Daniel J. Damon, Vice President<br>Email: ddamon@bankofny com | (212) 635-8402 | (212) 635-8268 |
| Daniel S. Csillag, Associate<br>Email: dcsillag@bankofny.com | (212) 635-1382 | (212) 635-8268 |
| Amy Prager, Analyst<br>Email: aprager@bankofny.com | (212) 635-1187 | (212) 635-8268 |

| *Loan Syndications and Trading, 18th Floor* | | |
|---|---|---|
| Glenn P Autorino, Managing Director<br>Email: gautorino@bankofny.com | (212) 635-8284 | (212) 635-8268 |
| Birgitta L Hanan, Vice President<br>Email: bhanan@bankofny.com | (212) 635-8255 | (212) 635-8268 |
| Anne M. Loring, Vice President<br>Email: aloring@bankofny.com | (212) 635-8269 | (212) 635-8268 |
| Janet L Wolff, Vice President<br>Email jwolff@bankofny.com | (212) 635-8538 | (212) 635-8268 |

| *Media & Telecommunications Division, 16th Floor* | *Phone* | *Fax* |
|---|---|---|
| Brendan T. Nedzi, Senior Vice President<br>Email: bnedzi@bankofny.com | (212) 635-8628 | (212) 635-8595 |
| Michael E. Masters, Assistant Treasurer<br>Email: mimasters@bankofny.com | (212) 635-8742 | (212) 635-8595 |

Siemens ICN 02212

**B2091**

# Confidential

---

### Winstar Capital Corp. Contact List

---

**WINSTAR COMMUNICATIONS, INC.**
**The Winstar Building**
**685 Third Avenue, 9th floor**
**New York, NY 10017**

|  | _Phone_ | _Fax_ |
|---|---|---|
| Frederic E Rubin, SVP and Treasurer<br>Email. frubin@winstar.com | (212) 792-9039 | (212) 584-4073 |
| Kenneth J. Zinghini, SVP and Corporate Counsel<br>Email: kzinghini@winstar.com | (212) 792-9015 | (212) 792-9622 |
| Kevin P. Monaco, Assistant Treasurer<br>Email: kmonaco@winstar.com | (212) 792-9061 | (212) 584-4073 |
| Matthew G Conroy, Senior Manager<br>Email: mconroy@winstar com | (212) 792-9318 | (212) 584-4073 |

**SULLIVAN & CROMWELL (BNY's Counsel)**
**125 Broad Street**
**New York, NY 10004**

|  | _Phone_ | _Fax_ |
|---|---|---|
| Eric Lindauer, Partner<br>Email lindauere@sullcrom com | (212) 558-3548 | (212) 558-3344 |
| Yogesh Rai, Associate<br>Email: raiy@sullcrom com | (212) 558-4615 | (212) 558-4812 |

Winstar\Siemens Amendment\Amendment Letter 1

Siemens ICN 02213

**B2092**

Confidential



Winstar Communications, Inc
Domestic Subsidiaries, 11/13/00

Siemens ICN 02214

* Except as noted, all subs are 100% owned
** Approx 5% owned by various investors
*** 33 33% owned by CBS Corporation
# To be merged out of existence eff 12/31/00,
bracketed items to be cleared with tax advisors

L Legal\General Corporate Matters\Corporate Governance\Corporate Structure\ORG CHART Domestic

# Confidential



○ 100% owned by WCI
○ Europe group
◉ Americas group
◉ Asia-Pacific group

Winter Communications, Inc. (WCI)
(Delaware)

International Subsidiaries, 11/10/00

WCI Capital Corp.
(Delaware)

Winstar Communications
of Canada, Inc.
(Canada)

Winstar Holding B.V.
(Netherlands)

Winstar International Inc.
(Delaware)

Winstar Puerto Rico, Inc.
(Puerto Rico)

Winstar Communications,
GMBH
(Germany)

## Winstar Europe, S.A.
(Belgium)

Tech-Net GMBH
(Germany)

Winstar de Mexico,
S.A. de C.V.
(Mexico)

Winstar Colombia, Ltda.
(Colombia)

Winstar Communications BV
(Netherlands)

95% **
Winstar Argentina S.A.
(Argentina)

WCI Gomez, S.A.
(Argentina)

Winstar Communications S.A.
(France)

Winstar de Venezuela C.A.
(Venezuela)

Winstar del Peru S.R.L.
(Peru)

Winstar Communications Ltd.
(United Kingdom)

Winstar Holdings
de Brasil Ltda.
(Brazil)

Winstar do Brasil Ltda.
(Brazil)

Winstar Communications S.A.
(Spain)

Winstar Communications
Co. Ltd.
(Thailand)

Winstar Communications S.A.
(Switzerland)

Winstar Australia PTY Ltd.
(Australia)

Winstar Hong Kong
NDMO Limited
(Hong Kong)

Winstar International
Hong Kong Holdings
(BVI) Limited
(British Virgin Islands)

75% *****
Winstar Hong Kong
(BVI) Limited
(British Virgin Islands)

Winstar Communications S.A.
(Belgium)

Winstar Asia NDMO
Pte., Ltd. ("Flowerfront")
(Singapore)

Winstar Communications
Hong Kong Limited
(Hong Kong)

35% ****
KDD Winstar Corporation
(Japan)

Winstar Communications
Singapore Pte Ltd
(Singapore)

Winstar Japan, Ltd.
(Japan)

*        Except as noted, all subs are 100% owned
**       5% owned by Spectrum Telecommunications Corp
***      60% owned by a non-affiliated Thai entity
****     55% owned by KDD Corp., 10% by Sumitomo
*****    25% owned by Hong Kong Land Holdings
         Limited, a non-affiliated entity
##       See corporate profile for number of shares held
         by minority holder(s)

*L: Legal\General Corporate Matters\Corporate Governance\Corporate Structure\ORG CHART International*

Siemens ICN 02215

B2094

# Confidential

### Adjustments—Bank Model March 2000 To November 2000

The November 2000 Model has been updated for actual results through the end of Q3-2000. In addition, the company has modified other parts of the March Model to better reflect the current business and market conditions, as well as updated with new schedules detailing the Network Channel SG&A and Headcount, and Unallocated SG&A and Headcount.

I.  **Financing** - The November 2000 Model has been updated to reflect the transactions announced on November 8, 2000. In addition, we have made further adjustments that impact the company's financing needs. These changes are as follows:

> Added the Term Loan C ($200MM)
> Added the Series H Preferred Stock ($270MM)
> Reduced the Second Round Financing in Q4-01 from $1.52B to $1.10B
> Accelerated the drawdown of the Lucent facility to reflect current levels.
> Removed International from the November 2000 Model as these subsidiaries are presently being treated as Unrestricted Subsidiaries
> Added the proceeds from the company's Direct Stock Purchase Program

II. **Network Channel** - The Network Channel model, which is the primary revenue driver in the Winstar Model, has been updated to reflect the company's position as of September 30, 2000, as well as our outlook for 2001.

A.  **Capital Expenditures** - We have modified prospectively our costs for building various network components to more accurately reflect our costs per our recent turnkey agreements with Lucent. This agreement will lower our cost to construct hubs sites and customer buildings over the next few years. The full impact of these lower costs is worked into the November 2000 Model beginning in Q1-01.

B.  **Revenue Analysis** - The November 2000 Model several modifications that impact the various revenue streams. The principal changes are as follows:

> Buildings lit additions – Fewer buildings were added in Q1-00. We have pushed incremental new adds out through Q1-02
> Building size – We have increased the size of our existing building universe to more accurately reflect the marketplace. This has resulted in an increase in overall average building size, square feet added, and total square feet added.
> Square feet per prospect – We have simplified this driver from the March 2000 Model. We now reflect more clearly the average space rented by our target customers to derive the number of customers in our target buildings.
> Large Account Solutions (LAS) revenues have been increases to better reflect the company's performance to date, the current backlog, and the 2001 outlook.
> MidCom revenues are reduced to zero earlier to reflect faster attrition.

Siemens ICN 02216

**B2095**

## Continued

**Winstar Communications, Inc.**

| | 2000 Q1 | Q2 | Q3 | Q4 | 2001 Q1 | Q2 | Q3 | Q4 | 2002 Q1 | Q2 | Q3 | Q4 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Phase I Financial Covenants** | | | | | | | | | | | | |
| **1. Minimum EBITDA Less Minimum EBITDA EBITDA** | | | | | | | | | | | | |
| Covenant | (24,315) | (25,630) | (2,050) | (3,125) | 8,304 | 24,155 | 32,509 | 66,549 | 91,395 | 114,274 | 135,000 | |
| $ Cushion | (43,000) | (38,000) | (38,010) | (17,000) | (9,600) | (5,000) | 1,000 | 28,000 | 44,000 | 60,000 | 76,000 | |
| $ Cushion | 17,685 | 13,382 | 24,364 | 13,867 | 17,804 | 19,155 | 16,509 | 38,549 | 47,395 | 54,274 | 59,000 | |
| **2. Minimum Revenue Revenues** | | | | | | | | | | | | |
| Revenues | 170,756 | 135,830 | 203,210 | 203,793 | 219,846 | 230,944 | 260,944 | 335,177 | 376,255 | 411,314 | 453,316 | |
| Covenant | 135,000 | 139,000 | 163,000 | 173,000 | 188,000 | 199,000 | 217,000 | 240,000 | 268,000 | 294,000 | 338,000 | |
| % Cushion | 26% | 21% | 15% | 15% | 16% | 16% | 24% | 18% | 29% | 29% | 25% | |
| $ Cushion | 41,756 | 34,630 | 38,210 | 30,793 | 41,846 | 61,944 | 63,834 | 95,177 | 108,255 | 117,314 | 125,330 | |
| **3. Maximum Capital Expenditures Capital Expenditures** | | | | | | | | | | | | |
| + Lease Acquisitions | 341,483 | 328,727 | 218,641 | 277,323 | 269,445 | 213,496 | 221,593 | 146,030 | 115,783 | 130,072 | 107,032 | |
| + Fiber Lease Payments | 32,000 | | 128,000 | | | | | | | | | |
| + Fiber Lease Additions | 20,513 | 21,743 | 35,307 | 37,144 | 33,312 | 31,643 | 31,894 | 32,225 | 32,555 | 33,483 | 33,210 | |
| | (72,559) | (41,254) | (53,658) | (46,545) | (61,245) | (19,050) | (72,145) | (72,419) | (72,419) | (72,419) | (72,419) | |
| Adjusted Capital Expenditures | 301,437 | 310,558 | 299,282 | 267,916 | 241,495 | 226,145 | 226,145 | 155,180 | 125,863 | 141,279 | 117,766 | |
| Adjusted Last Twelve Months Capital Expenditures | | | | 1,275,905 | | | | 961,616 | | | | 540,788 |
| Covenant | | | | 1,300,000 | | | | 1,150,000 | | | | 550,000 |
| Cushion % | | | | 1.9% | | | | 19.6% | | | | 1.7% |
| Cushion $ | | | | 24,195 | | | | 188,384 | | | | 9,212 |

Note: On any date that Winstar or its Subsidiaries receives net cash proceeds from permitted issuance of new debt or equity in excess of $1.5 billion, on a cumulative basis from closing, the Borrower may increase, the maximum Cash Capital Expenditures in any year or years by an aggregate amount equal to the amount of such net cash proceeds that exceed $1.5 billion, provided, further, that under no circumstances shall the maximum annual Cash Capital Expenditures covenant exceed (excluding carry over amounts) $1,000,000,000 for any year prior to and including 2001 and $1,000,000,000 in any year thereafter.

**Phase I Financial Covenants (con't)**

**4. Maximum Consolidated Senior Secured Debt (SSD) to Total Capitalization (TC)**

| Calculations: | | 2000 Q1 | Q2 | Q3 | Q4 | 2001 Q1 | Q2 | Q3 | Q4 | 2002 Q1 | Q2 | Q3 | Q4 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Bank Debt | A | 1,150,000 | 1,150,000 | 1,150,000 | 1,150,000 | 1,350,000 | 1,350,000 | 1,350,000 | 1,350,000 | 1,350,000 | 1,350,000 | 1,350,000 | |
| - Cash Balance (> $50mm) | B | 516,338 | 889,560 | 471,238 | 386,987 | 338,545 | (10,281) | 939,454 | 779,315 | 662,435 | 442,935 | 457,280 | |
| Adjusted Senior Secured Debt (A-B) | C | 633,762 | 474,768 | 963,883 | 1,011,455 | 1,414,469 | 396,544 | 570,385 | 707,565 | 837,831 | 932,720 | | |
| Lucent: | | | | | | | | | | | | | |
| Non Fiber Capital Leases | D | 248,058 | 496,136 | 596,116 | 786,116 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | |
| Total Other Sr Debt (D+E) | E | 20,724 | 58,267 | 55,224 | 138,324 | 157,116 | 207,014 | 272,375 | 300,149 | 317,445 | 312,443 | 330,277 | |
| | P | 267,072 | 554,383 | 651,409 | 904,460 | 1,157,210 | 1,207,014 | 1,232,519 | 1,274,377 | 1,300,145 | 1,317,445 | 1,330,277 | |
| Total Public Debt | G | 1,651,182 | 1,653,347 | 1,663,610 | 1,662,342 | 1,691,749 | 1,109,316 | 2,212,609 | 2,394,377 | 3,117,427 | 2,243,329 | 2,385,015 | |
| Total Adjusted Debt (C+F+G) | H | 2,572,416 | 3,082,590 | 3,173,571 | 3,519,756 | 3,859,540 | 4,177,019 | 3,015,851 | 4,143,409 | 4,335,519 | 4,496,055 | 4,618,012 | |

Siemens ICN 02217

11/15/00 8:43 PM

Confidential

Winstar Communications, Inc.

| | | 2000 | | | 2001 | | | | 2002 | | | 2003 |
| | | Q2 | Q3 | Q4 | Q1 | Q2 | Q3 | Q4 | Q1 | Q2 | Q3 | Q4 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| APIC (10Q + 4/2000) incl Common Stock at Par, Series D and other Preferreds | I | 2,187,931 | 2,187,931 | 2,187,931 | 2,403,881 | 2,513,881 | 2,543,881 | 2,573,881 | 3,145,631 | 3,175,631 | 3,205,631 | 3,215,631 |
| Equity Issuances | K | | | 295,950 | 30,000 | 30,000 | 30,000 | 571,750 | 10,000 | 30,000 | 30,000 | 10,000 |
| Positive Retained Earnings | L | | | | | | | | | | | |
| Total Equity (I+J+K+L) | M | 2,187,931 | 2,187,931 | 2,483,881 | 2,513,881 | 2,543,881 | 2,573,881 | 3,145,631 | 3,175,631 | 3,205,631 | 3,235,631 | 3,365,631 |
| Total Adjusted Total Capital (H+M) | N | 4,740,657 | 5,048,571 | 5,657,454 | 6,043,637 | 6,394,431 | 4,231,520 | 7,061,482 | 7,519,039 | 7,530,648 | 7,731,644 | 7,883,643 |
| **Covenant:** | | | | | | | | | | | | |
| Adjusted Senior Secured Debt/Adjusted TC | C/N | 13.3% | 14.1% | 15.9% | 15.9% | 15.9% | 18.5% | 8.5% | 7.3% | 9.4% | 10.9% | 11.7% |
| Covenant | | 25.0% | 25.0% | 25.0% | 25.0% | 25.0% | 25.0% | 25.0% | 25.0% | 25.0% | 25.0% | 25.0% |
| Cushion | | 11.7% | 8.2% | 9.5% | 9.1% | 9.3% | 6.5% | 19.5% | 17.2% | 16.6% | 14.1% | 13.3% |
| Maximum Adj. Sr. Secured Debt allowable under covenant | | 1,375,614 | 1,455,554 | 1,572,897 | 1,693,528 | 1,794,322 | 1,877,657 | 3,233,645 | 2,249,395 | 2,274,374 | 2,397,955 | 2,310,308 |
| Total Adj. Senior Secured Debt Outstanding | | 633,762 | 830,260 | 876,706 | 960,803 | 1,011,405 | 1,248,609 | 390,546 | 570,255 | 707,525 | 937,821 | 912,710 |
| Incremental Sr. Secured Debt Allowable under covenant | | 741,856 | 574,854 | 714,135 | 732,475 | 732,867 | 579,028 | 1,833,092 | 1,679,540 | 1,566,849 | 1,460,134 | 1,397,598 |

**Phase I Financial Covenants (con't)**

**5. Maximum Consolidated Total Debt (CTD) to Total Capitalization**

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Adjusted Debt (C+F+G) | H | 2,572,646 | 3,060,390 | 3,173,573 | 3,520,756 | 3,850,540 | 4,157,659 | 3,915,851 | 4,143,498 | 4,325,017 | 4,094,055 | 4,618,012 |
| Total Adjusted Capital (H+M) | N | 4,760,617 | 5,248,321 | 5,657,454 | 6,043,637 | 6,394,431 | 6,731,520 | 7,061,482 | 7,319,039 | 7,530,648 | 7,731,644 | 7,883,643 |
| Adjusted TDA/Adjusted TC | | 54.0% | 58.3% | 56.1% | 58.4% | 60.2% | 61.8% | 55.5% | 56.6% | 57.4% | 52.9% | 58.6% |
| Covenant | | 75.0% | 75.0% | 75.0% | 75.0% | 75.0% | 75.0% | 75.0% | 75.0% | 75.0% | 75.0% | 75.0% |
| Cushion | | 21.0% | 16.7% | 18.9% | 16.6% | 14.8% | 13.2% | 19.5% | 18.4% | 17.6% | 14.8% | 16.4% |
| Maximum Total Debt allowable under covenant | | 6,563,793 | 6,563,790 | 7,451,643 | 3,541,643 | 7,631,643 | 7,721,643 | 9,436,893 | 9,534,893 | 9,616,893 | 9,706,893 | 9,796,893 |
| Total Adjusted Debt Outstanding | | 3,572,686 | 3,060,390 | 3,173,553 | 3,520,756 | 3,850,540 | 4,157,659 | 3,915,851 | 4,143,498 | 4,325,017 | 4,094,055 | 4,618,012 |
| Incremental Total Debt Allowable under covenant | | 3,991,107 | 3,503,103 | 4,278,070 | 4,011,987 | 3,781,103 | 3,564,004 | 5,521,042 | 5,391,395 | 5,391,876 | 5,310,838 | 5,178,881 |

**6. Maximum Consolidated Senior Secured Debt to Gross PPAE**

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Adjusted Senior Secured Debt (A+B) | C | 633,761 | 830,360 | 876,761 | 960,053 | 1,011,485 | 1,248,609 | 390,546 | 570,255 | 707,525 | 937,821 | 912,710 |
| Gross PPAE | D | 2,577,356 | 2,890,943 | 3,109,383 | 3,386,706 | 3,656,151 | 3,869,647 | 4,091,240 | 4,217,270 | 4,332,055 | 4,484,027 | 4,591,059 |
| - Land | E | 249,068 | 494,116 | 598,134 | 794,116 | 1,002,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,002,000 | 1,000,000 |
| - Non Fiber Capital Leases | P | 39,724 | 15,347 | 55,364 | 108,224 | 157,316 | 207,014 | 229,324 | 279,277 | 309,145 | 317,485 | 326,277 |
| Adjusted Gross PPAE | | 3,209,564 | 3,316,690 | 2,457,881 | 2,483,244 | 2,496,835 | 2,663,633 | 2,838,916 | 2,938,894 | 3,022,910 | 3,166,542 | 3,264,781 |
| Adjusted Sr. Secured Debt/Adjusted Gross PPAE | C/P | 27.9% | 27.7% | 35.8% | 38.6% | 40.5% | 44.5% | 13.8% | 19.3% | 23.2% | 14.8% | 28.3% |
| Covenant | | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% |
| Cushion | | 22.1% | 22.3% | 14.2% | 11.2% | 9.5% | 3.1% | 36.2% | 30.7% | 26.8% | 13.5% | 21.7% |
| Maximum Sr. Secured Debt allowable under covenant | | 1,134,782 | 1,148,280 | 1,224,992 | 1,241,122 | 1,249,417 | 1,211,317 | 1,419,457 | 1,479,447 | 1,516,455 | 1,583,271 | 1,632,391 |
| Total Adjusted Senior Secured Debt Outstanding | | 633,762 | 830,060 | 878,762 | 960,053 | 1,011,405 | 1,248,609 | 390,546 | 570,255 | 707,525 | 937,821 | 912,720 |
| Incremental SSD Allowable under covenant | | 501,020 | 297,230 | 350,232 | 278,070 | 237,962 | 82,708 | 1,028,916 | 909,192 | 818,930 | 745,450 | 720,671 |

**Phase I Financial Covenants (con't)**

Siemens ICN 02218

11/15/00 6:43 PM

B2097

Confidential

# Winstar Communications, Inc.

|  |  | 2000 | | | | 2001 | | | | 2002 | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  |  | Q1 | Q2 | Q3 | Q4 | Q1 | Q2 | Q3 | Q4 | Q1 | Q2 | Q3 | Q4 |
| **7. Minimum Hubs** |  |  |  |  |  |  |  |  |  |  |  |  |  |
| Hubs - Domestic |  | 148 | 165 | 185 | 205 | 225 | 245 | 265 | 270 | 270 | 270 | 270 | 270 |
| Total Hubs |  | 148 | 165 | 185 | 205 | 225 | 245 | 265 | 270 | 270 | 270 | 270 | 270 |
| Coverage |  | 143 | 159 | 175 | 190 | 204 | 219 | 234 | 249 | 263 | 267 | 268 | 268 |
| Cushion % |  | 4% | 4% | 5% | 7% | 9% | 11% | 12% | 8% | 3% | 1% | 1% | 1% |
| Cushion # |  | 6 | 6 | 10 | 15 | 21 | 26 | 31 | 21 | 7 | 3 | 3 | 2 |
| **8. Minimum Buildings on-net** |  |  |  |  |  |  |  |  |  |  |  |  |  |
| Buildings - Domestic |  | 3,124 | 3,650 | 3,557 | 5,057 | 6,557 | 8,056 | 9,556 | 10,756 | 10,356 | 10,555 | 11,055 |  |
| Other "On-Net" Buildings |  | 0% | 945 | 1,322 | 1,852 | 1,852 | 1,852 | 1,852 | 926 | 926 | 926 | 926 |  |
| Total Buildings |  | 3,124 | 3,595 | 4,880 | 6,909 | 8,409 | 9,909 | 11,408 | 11,682 | 11,782 | 11,881 | 11,981 |  |
| Coverage Amount |  | 2,232 | 3,270 | 4,477 | 5,991 | 7,366 | 8,785 | 10,147 | 10,246 | 10,266 | 10,475 | 10,585 |  |
| Cushion % |  | 15.7% | 16.9% | 8.3% | 13.4% | 12.4% | 11.6% | 11% | 12.3% | 12.4% | 11.8% | 11.7% |  |
| Cushion # |  | 892 | 675 | 403 | 918 | 1,043 | 1,154 | 1,261 | 1,436 | 1,416 | 1,496 | 1,396 |  |

## Phase II Financial Covenants

### 1. Cancel. Sr Debt to Cancel. Annualized EBITDA (Q1.01)

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| EBITDA | A |  |  |  |  |  |  |  |  |  |  |  |  |
| Annualized EBITDA (A*4) | B | (24,315) | (25,638) | (3,636) | (3,133) | 8,804 | 24,155 | 37,509 | 66,549 | 91,135 | 114,724 | 135,000 |  |
| | | (97,258) | (102,553) | (14,543) | (13,533) | 35,215 | 96,622 | 150,037 | 266,194 | 365,582 | 457,098 | 539,998 |  |
| Bank Debt | C | 1,150,000 | 1,150,000 | 1,350,000 | 1,350,000 | 1,350,000 | 1,350,000 | 1,350,000 | 1,350,000 | 1,350,000 | 1,350,000 | 1,350,000 |  |
| Lease | D | 248,588 | 496,116 | 596,136 | 786,136 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 |  |
| New Fiber Capital Leases | E | 34,324 | 58,247 | 55,264 | 108,324 | 197,316 | 207,014 | 251,295 | 278,377 | 320,145 | 315,485 | 330,217 |  |
| Total Senior Debt (C+D+E) | F | 1,433,820 | 1,704,363 | 2,001,400 | 2,254,460 | 2,575,316 | 2,557,014 | 2,601,295 | 2,628,377 | 2,650,145 | 2,667,485 | 2,680,217 |  |
| - Cash Balance (> $50MM) | G | 516,258 | 249,020 | 471,228 | 186,947 | 338,545 | 101,391 | 938,454 | 779,265 | 642,475 | 512,179 | 437,290 |  |
| Adjusted Senior Debt (F-G) | H | 917,564 | 1,455,343 | 1,530,163 | 1,867,513 | 2,168,771 | 2,455,623 | 1,642,842 | 1,444,831 | 2,007,670 | 2,155,306 | 2,323,937 |  |
| Adjusted Senior Debt/Annualized EBITDA | H/B |  |  |  |  |  |  |  |  |  |  |  |  |
| Covenant |  |  |  |  |  |  |  |  | 6.94 | 5.49 | 4.72 | 4.17 |  |
| Cushion |  |  |  |  |  |  |  |  | 12.50 | 10.00 | 9.10 | 7.50 |  |
| Incremental Debt Availability |  |  |  |  |  |  |  |  | 5.56 | 4.51 | 4.38 | 3.33 |  |
|  |  |  |  |  |  |  |  |  | 1,476,797 | 1,644,150 | 1,958,575 | 1,796,990 |  |

### 2. Cancel. Total Debt to Cancel. Annualized EBITDA (Q1.01)

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Senior Debt (C+D+E) | F | 1,477,802 | 1,704,363 | 2,001,400 | 2,254,460 | 2,575,316 | 2,517,014 | 2,602,295 | 2,632,377 | 2,652,145 | 2,667,492 | 2,680,277 |  |
| Total Public Debt | I | 1,631,122 | 1,833,547 | 1,663,410 | 1,683,343 | 1,681,769 | 1,702,014 | 2,271,000 | 2,334,777 | 2,317,347 | 2,340,730 | 2,345,015 |  |
| Total Debt (PM) | J | 3,018,924 | 3,539,610 | 3,664,810 | 3,936,703 | 4,185,085 | 4,259,030 | 4,873,305 | 4,921,154 | 4,967,492 | 5,008,224 | 5,045,292 |  |
| - Cash Balance (> $50MM) | K | 516,258 | 249,040 | 471,228 | 398,847 | 338,545 | 101,391 | 999,654 | 779,265 | 642,475 | 512,179 | 437,280 |  |
| Adjusted Total Debt (J+K) | J+K | 3,572,044 | 3,664,590 | 3,173,573 | 3,537,756 | 3,849,540 | 4,157,639 | 3,515,951 | 4,142,491 | 4,325,017 | 4,496,055 | 4,608,012 |  |
| EBITDA | A | (24,315) | (25,638) | (3,636) | (3,133) | 8,804 | 24,155 | 37,509 | 66,549 | 91,135 | 114,724 | 135,000 |  |
| Annualized EBITDA (A*4) | B | (97,258) | (102,553) | (14,543) | (11,422) | 35,215 | 96,622 | 150,037 | 266,194 | 365,582 | 457,098 | 539,998 |  |
| Adjusted Total Debt/Annualized EBITDA | K/B |  |  |  |  |  |  |  |  |  |  |  |  |

Siemens ICN 02219

11/16/00 6:43 PM

# Confidential

**Winstar Communications, Inc.**

Covenant

Cushion

Incremental Debt Availability

Phase II Financial Covenants (con't)

### 3. Consol. EBITDA to Consol. Cash Interest Expense (Q1.13)

| | | 2000 | | | 2001 | | | | 2002 | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Q2 | Q3 | Q4 | Q1 | Q2 | Q3 | Q4 | Q1 | Q2 | Q3 | Q4 |
| Interest Expense - Bank | L | 0 | 29,597 | 31,594 | 34,122 | 34,122 | 34,122 | 34,122 | 34,122 | 34,122 | 34,122 | 34,122 |
| Interest Expense - Lucent | M | 0 | 6,467 | 13,214 | 16,081 | 21,196 | 26,875 | 26,875 | 26,875 | 26,875 | 26,875 | 26,875 |
| Interest Expense - Non Phat Cap Lease | | 1,096 | 1,056 | 798 | 2,373 | 3,366 | 5,131 | 6,182 | 7,665 | 8,500 | 9,022 | 9,536 |
| Interest Expense + Public Debt & Def Fin Costs | | 71,209 | 52,002 | 52,649 | 52,692 | 57,237 | 60,102 | 64,419 | 72,186 | 79,563 | 82,233 | 81,663 |
| Consolidated Interest Expense (net of Start up lease) | | 73,004 | 89,742 | 103,345 | 111,338 | 118,772 | 126,489 | 137,237 | 147,799 | 149,349 | 150,314 | 152,175 |
| - Non Cash Interest net Def Fin Costs | | 22,412 | 22,329 | 22,315 | 22,310 | 22,556 | 23,237 | 22,517 | 23,462 | 23,210 | 23,272 | 23,229 |
| Total Adjusted Interest Expense (L+M) | N | 50,416 | 70,951 | 79,200 | 88,100 | 94,166 | 99,751 | 109,640 | 119,356 | 149,977 | 120,482 | 120,644 |
| Last Twelve Month Adj. Int Exp (current + prior 3 qtrs) | O | | | 143,727 | 216,453 | 330,823 | 356,481 | 398,363 | 431,653 | 441,727 | 449,438 | 489,644 |
| EBITDA | | | (24,315) | (1,636) | (1,133) | 8,604 | 24,155 | 37,509 | 66,549 | 91,395 | 114,274 | 135,000 |
| Last Twelve Month EBITDA (current + prior 3 qtrs) | A | (24,315) | (25,670) | (85,199) | (56,721) | (33,603) | 24,191 | 67,235 | 137,017 | 219,609 | 309,728 | 407,218 |
| Last Twelve Month EBITDA/Last Twelve Month Interest | P | | | | | | | | | | | |
| Covenant | P/O | | | | | | | | | | | |
| Cushion | | | | | | | | | | | | |

### 4. Consol. EBITDA to Consol. Debt Service (Q1.02)

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Adjusted Interest Expense (see above) | N | 50,416 | 70,951 | 79,200 | 86,105 | 92,166 | 99,751 | 109,640 | 119,356 | 119,977 | 120,482 | 120,644 |
| + Equipment Lease Payments | Q | 3,890 | 3,063 | 2,982 | 6,940 | 11,008 | 15,502 | 20,718 | 23,919 | 24,233 | 33,660 | 37,208 |
| + Debt Repayment - Bank | R | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| + Debt Repayment - Lucent | S | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Adjusted Debt Service (N+Q+R+S) | T | 154,589 | 74,366 | 82,542 | 93,045 | 103,674 | 115,054 | 130,319 | 143,375 | 144,211 | 153,142 | 158,054 |
| Last Twelve Month Debt Service (current + prior 3 qtrs) | U | | | | | | | | | | | |
| EBITDA | | (24,315) | (25,603) | (1,636) | (1,133) | 8,604 | 24,155 | 37,509 | 66,549 | 91,395 | 114,274 | 135,000 |
| Last Twelve Month EBITDA (current + prior 3 qtrs) | A | | | (85,199) | (56,721) | (33,603) | 24,191 | 67,235 | 137,017 | 219,609 | 309,728 | 407,218 |
| Last Twelve Month EBITDA/Last Twelve Month Debt Svc | P/U | | | | | | | | | | | |
| Covenant | | | | | | | | | | | | |
| Cushion | | | | | | | | | | | | |

### Phase II Financial Covenants (con't)

### 5. Minimum Capital Expenditures

Capital Expenditures
+ Leases Acquisitions
+ Fiber Lease Payments
+ Fiber Lease Additions
Adjusted Capital Expenditures

Adjusted Last Twelve Months Capital Expenditures

11/16/00 6:43 PM

Siemens ICN 02220

**B2099**

Confidential



Winstar Communications, Inc.

Comcast
Cables %
Cables $

|  | 2000 | | | | 1993 | | | | | 2003 | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  | Q3 | Q3 | Q4 | Q1 | Q2 | Q3 | Q4 | Q1 | Q1 | Q3 | Q4 |

11/15/00 6:43 PM

Siemens ICN 02221

# Confidential

Siemens ICN 02222

## Winstar Communications, Inc.

### Phase I Financial Covenants

#### 1. Maximum EBITDA Loss/Minimum EBITDA

| | 2003 Q4 | 2004 Q4 | 2005 Q4 | 2006 Q4 | 2007 Q4 | 2008 Q4 | 2009 Q4 |
|---|---|---|---|---|---|---|---|
| EBITDA | 234,136 | 331,995 | 434,651 | 494,251 | 522,070 | 552,124 | 587,166 |
| Covenant | | | | | | | |
| $ Cushion | | | | | | | |

#### 2. Minimum Revenues

| | 2003 Q4 | 2004 Q4 | 2005 Q4 | 2006 Q4 | 2007 Q4 | 2008 Q4 | 2009 Q4 |
|---|---|---|---|---|---|---|---|
| Revenues | 620,466 | 797,459 | 985,663 | 1,108,101 | 1,189,060 | 1,243,216 | 1,392,989 |
| Covenant | | | | | | | |
| % Cushion | | | | | | | |
| $ Cushion | | | | | | | |

#### 3. Maximum Capital Expenditures

Capital Expenditures
+ License Acquisitions
+ Fiber Lease Payments
+ Fiber Lease Additions
Adjusted Capital Expenditures

Adjusted Last Twelve Months Capital Expenditures

Covenant

Cushion %

Cushion $

Note

### Phase I Financial Covenants (cont'd)

#### 4. Maximum Consolidated Senior Secured Debt (USD) to Total Capitalization (TC)

**Calculation**

| | | 2003 Q4 | 2004 Q4 | 2005 Q4 | 2006 Q4 | 2007 Q4 | 2008 Q4 | 2009 Q4 |
|---|---|---|---|---|---|---|---|---|
| **Bank Debt** | A | 1,250,000 | 1,242,500 | 1,035,250 | 712,250 | | | |
| - Cash Balance (> $500MM) | B | 205,342 | 409,435 | 395,601 | 646,455 | 1,200,616 | 2,931,669 | 4,946,441 |
| Adjusted Senior Secured Debt (A-B) | C | 1,044,658 | 833,065 | 647,649 | 61,295 | | | |
| **Leases** | | | | | | | | |
| Non Fiber Capital Leases | D | 1,000,000 | 1,000,000 | 500,000 | | | | |
| Total Other Sr. Debt (D+E) | E | 244,839 | 97,915 | 73,895 | 13,888 | 13,888 | 13,888 | 13,888 |
| | F | 1,244,839 | 1,097,915 | 522,856 | 13,888 | 13,888 | 13,888 | 13,888 |
| **Total Public Debt** | G | 2,671,261 | 2,594,317 | 2,633,532 | 2,633,532 | 2,633,532 | 2,595,547 | 2,305,547 |
| Total Adjusted Debt (C+F+G) | H | 4,760,659 | 4,525,272 | 3,804,010 | 2,704,715 | 2,647,420 | 2,322,435 | 2,322,435 |

11/15/00 6:43 PM

Confidential

Siemens ICN 02223

Winstar Communications, Inc.

| | | 2003 Q4 | 2004 Q4 | 2005 Q4 | 2006 Q4 | 2007 Q4 | 2008 Q4 | 2009 Q4 |
|---|---|---|---|---|---|---|---|---|
| APIC (10Q - 6/30/00) incl Common Stock at Par, Sr and D incl other Preferred | I | 3,355,631 | 3,473,631 | 3,718,028 | 4,266,500 | 5,004,748 | 5,922,690 | 6,894,613 |
| Equity Issuances | K | 30,000 | 30,000 | 30,000 | | | | |
| Portion Retained Earnings | L | | | 97,698 | 169,443 | 210,828 | 252,974 | 155,549 |
| Total Adjusted Total Capital (I8+M) | M | 3,385,631 | 3,503,631 | 3,845,727 | 4,435,944 | 5,215,576 | 6,180,663 | 7,050,162 |
| Total Adjusted Total Capital (I8+M) | N | 8,146,200 | 8,030,901 | 7,660,716 | 7,144,659 | 7,864,795 | 8,503,099 | 9,372,597 |
| **Covenant** | | | | | | | | |
| Adjusted Senior Secured Debt/Adjusted TC | CN | | | | | | | |
| **Covenant** | | | | | | | | |
| Cushion | | | | | | | | |
| Maximum Adj Sr Secured Debt allowable under covenant | | | | | | | | |
| Total Adj Senior Secured Debt Outstanding | | | | | | | | |
| Incremental Sr Secured Debt Allowable under covenant | | | | | | | | |
| Phase I Financial Covenants (con't) | | | | | | | | |
| **5. Maximum Consolidated Total Debt (TD) to Total Capitalization** | | | | | | | | |
| Total Adjusted Debt (O+P+Q) | M | | | | | | | |
| Total Adjusted Capital (I8+M) | N | | | | | | | |
| Adjusted TD/Adjusted TC | M/N | | | | | | | |
| **Covenant** | | | | | | | | |
| Cushion | | | | | | | | |
| Maximum Total Debt Allowable under covenant | | | | | | | | |
| Total Adjusted Debt Outstanding | | | | | | | | |
| Incremental Total Debt Allowable under covenant | | | | | | | | |
| **6. Maximum Consolidated Senior Secured Debt to Gross PP&E** | | | | | | | | |
| Adjusted Senior Secured Debt (A+B) | C | | | | | | | |
| Gross PP&E | O | 4,516,392 | 5,192,175 | 5,543,277 | 5,595,906 | 5,931,443 | 6,010,699 | 6,305,341 |
| - Leases | D | 1,000,000 | 1,000,000 | 900,000 | | | | |
| - Non Floor Capital Leases | E | 344,659 | 97,925 | 73,833 | 13,888 | 13,883 | 13,388 | 13,398 |
| Adjusted Gross PP&E | P | 3,591,733 | 4,094,250 | 4,320,444 | 5,586,018 | 5,917,596 | 6,066,311 | 6,291,455 |
| Adjusted Sr Secured Debt/Adjusted Gross PP&E | O/P | | | | | | | |
| **Covenant** | | | | | | | | |
| Cushion | | | | | | | | |
| Maximum Sr Secured Debt allowable under covenant | | | | | | | | |
| Total Adjusted Senior Secured Debt Outstanding | | | | | | | | |
| Incremental SSD Allowable under covenant | | | | | | | | |
| Phase I Financial Covenants (con't) | | | | | | | | |

11/15/00 9 43 PM

B2102

## Confidential

Siemens ICN 02224

**Winstar Communications, Inc.**

| | | 2003 Q4 | 2004 Q4 | 2005 Q4 | 2006 Q4 | 2007 Q4 | 2008 Q4 | 2009 Q4 |
|---|---|---|---|---|---|---|---|---|
| **2. Minimum Hubs** | | | | | | | | |
| Hubs - Domestic | | 270 | 270 | 270 | 270 | 270 | 270 | 270 |
| Total Hubs | | 270 | 270 | 270 | 270 | 270 | 270 | 270 |
| Covenant | | | | | | | | |
| Cushion % | | | | | | | | |
| Cushion # | | | | | | | | |
| **3. Minimum Buildings on-net** | | | | | | | | |
| Buildings - Domestic | | 11,453 | 11,851 | 12,250 | 12,648 | 13,046 | 13,445 | 13,843 |
| Other "On-Net" Buildings | | n/a | n/a | n/a | n/a | n/a | n/a | n/a |
| Total Buildings | | 11,453 | 11,851 | 12,250 | 12,648 | 13,046 | 13,445 | 13,843 |
| Covenant Amount | | | | | | | | |
| Cushion % | | | | | | | | |
| Cushion # | | | | | | | | |

**Phase II Financial Covenants**

**1. Consol. Sr Debt to Consol. Annualized EBITDA (O.1.1)**

| | | 2003 Q4 | 2004 Q4 | 2005 Q4 | 2006 Q4 | 2007 Q4 | 2008 Q4 | 2009 Q4 |
|---|---|---|---|---|---|---|---|---|
| EBITDA | | | | | | | | |
| Annualized EBITDA (A*4) | A | 224,136 | 331,925 | 434,651 | 494,251 | 522,070 | 552,124 | 587,366 |
| | B | 936,543 | 1,317,698 | 1,734,644 | 1,977,004 | 2,018,281 | 2,202,497 | 2,349,464 |
| Bank Debt | C | 1,350,000 | 1,242,500 | 1,001,250 | 732,250 | | | |
| Lucent | D | 1,000,000 | 1,000,000 | 500,000 | | | | |
| Non Fiber Capital Leases | E | 244,632 | 97,955 | 73,821 | 13,888 | 13,888 | 13,888 | 13,888 |
| Total Senior Debt (C+D+E) | F | 2,594,632 | 2,340,455 | 1,556,073 | 746,138 | 13,888 | 13,888 | 13,888 |
| - Cash Balance (F $50/60/0) | G1 | 305,342 | 609,453 | 385,601 | 661,455 | 1,100,616 | 1,751,669 | 4,065,661 |
| Adjusted Senior Debt (F-G) | | 2,289,298 | 1,910,990 | 1,170,477 | 75,183 | | | |
| Adjusted Senior Debt/Annualized EBITDA | M/B | 2.44 | 1.45 | 0.67 | 0.04 | | | |
| Covenant | | 4.00 | 3.50 | 3.50 | 3.50 | 3.50 | | |
| Cushion | | 1.56 | 2.05 | 2.83 | 3.46 | 3.50 | | |
| Incremental Debt Availability | | 1,456,873 | 2,715,954 | 4,914,637 | 6,844,330 | 7,303,594 | | |

**1. Consol. Total Debt to Consol. Annualized EBITDA (O.1.2)**

| | | 2003 Q4 | 2004 Q4 | 2005 Q4 | 2006 Q4 | 2007 Q4 | 2008 Q4 | 2009 Q4 |
|---|---|---|---|---|---|---|---|---|
| Total Senior Debt (C+D+E) | F | 2,594,632 | 2,340,455 | 1,556,073 | 746,138 | 13,888 | 13,888 | 13,888 |
| Total Public Debt | I | 2,471,361 | 2,594,325 | 2,633,552 | 2,633,172 | 2,633,532 | 2,308,347 | 2,308,347 |
| Total Debt (F+I) | J | 5,066,000 | 4,934,707 | 4,189,611 | 3,370,170 | 2,647,420 | 2,322,435 | 2,322,435 |
| Cash Balance (F $50/60/0) | G | 305,342 | 609,453 | 385,601 | 661,455 | 1,200,616 | 2,521,669 | 4,065,661 |
| Adjusted Total Debt (J-G) | K | 4,760,659 | 4,515,372 | 3,804,010 | 2,708,715 | 1,443,804 | | |
| EBITDA | | | | | | | | |
| Annualized EBITDA (A*4) | A | 224,136 | 331,925 | 434,651 | 494,251 | 522,070 | 552,124 | 587,366 |
| | B | 936,543 | 1,327,698 | 1,734,644 | 1,977,004 | 2,038,281 | 2,202,497 | 2,349,464 |
| Adjusted Total Debt/Annualized EBITDA | K/B | 5.08 | 3.41 | 2.19 | 1.37 | 0.64 | | |

11/15/00 8:43 PM

B2103

Confidential

Winstar Communications, Inc.

| | | 2003 Q4 | 2004 Q4 | 2005 Q4 | 2006 Q4 | 2007 Q4 | 2008 Q4 | 2009 Q4 |
|---|---|---|---|---|---|---|---|---|
| Covenant | | 9.00 | 6.00 | 5.00 | 5.00 | 5.00 | | |
| Cushion | | 3.93 | 3.50 | 2.81 | 3.63 | 4.26 | | |
| Incremental Debt Availability | | 3,664,535 | 3,440,517 | 4,880,516 | 7,176,343 | 9,037,602 | | |

**Phase II Financial Covenants (cont'd)**

**3. Consol. EBITDA to Consol. Cash Interest Expense (Q1-10)**

| | | 2003 Q4 | 2004 Q4 | 2005 Q4 | 2006 Q4 | 2007 Q4 | 2008 Q4 | 2009 Q4 |
|---|---|---|---|---|---|---|---|---|
| Interest Expense - Bank | | | | | | | | |
| Interest Expense - Lucent | | 34,122 | 32,173 | 27,020 | 20,578 | | | |
| Interest Expense - Non Fiber Cap. Lease | | 28,475 | 26,475 | 16,797 | 3.59 | | | |
| Interest Expense - Fiber Debt & Oth. Fin. Cost | | 7,604 | 3,203 | 624 | | | | |
| Consolidated Interest Expense (net of Over cap Inter) | | 81,546 | 80,238 | 54,518 | 54,680 | 104,837 | 101,837 | 111,006 |
| - Non Cash Interest incl. Def Fee Costs | L | 154,967 | 152,910 | 139,599 | 122,558 | 103,455 | 101,837 | 111,006 |
| Total Adjusted Interest Expense (L-M) | M | 25,709 | 9,185 | 1,862 | 185 | 728 | 152 | 0 |
| | N | 129,258 | 143,729 | 137,908 | 121,703 | 104,703 | 101,235 | 111,006 |
| Last Twelve Month Adj. Int. Exp. (current + prior 3 qtrs) | O | 485,401 | 559,064 | 574,238 | 511,494 | 434,066 | 404,594 | 434,046 |
| EBITDA | A | 234,136 | 331,925 | 434,651 | 494,251 | 522,070 | 552,126 | 587,266 |
| Last Twelve Month EBITDA (current + prior 3 qtrs) | P | 783,549 | 1,181,349 | 1,581,834 | 1,907,235 | 2,034,909 | 2,151,388 | 2,380,088 |
| Last Twelve Month EBITDA/Last Twelve Month Interest | P/O | 1.62 | 2.11 | 2.75 | 3.73 | 4.68 | | |
| Covenant | | 0.75 | 1.25 | 1.75 | 2.25 | 2.50 | | |
| Cushion | | 0.88 | 0.86 | 1.00 | 1.48 | 2.18 | | |

**4. Consol. EBITDA to Consol. Debt Service (Q1-10)**

| | | 2003 Q4 | 2004 Q4 | 2005 Q4 | 2006 Q4 | 2007 Q4 | 2008 Q4 | 2009 Q4 |
|---|---|---|---|---|---|---|---|---|
| Total Adjusted Interest Expense (see above) | N | 118,167 | 148,729 | 137,908 | 121,703 | 104,703 | 101,235 | 111,006 |
| + Equipment Lease Payments | Q | 40,181 | 29,667 | 12,000 | | | | |
| + Debt Repayments - Bank | R | | | 178,875 | 65,000 | | | |
| + Debt Repayments - Lucent | S | 66,750 | 119,811 | 125,000 | 125,000 | | | |
| Total Adjusted Debt Service (N+Q+R+S) | T | 225,297 | 298,208 | 453,783 | 311,703 | 104,703 | 101,235 | 111,006 |
| Last Twelve Month Debt Service (current + prior 3 qtrs) | U | 773,559 | 916,000 | 1,499,584 | 1,742,187 | 436,066 | 404,594 | 434,046 |
| EBITDA | A | 234,136 | 331,925 | 434,651 | 494,251 | 522,070 | 552,126 | 587,266 |
| Last Twelve Month EBITDA (current + prior 3 qtrs) | P | 783,549 | 1,181,349 | 1,581,834 | 1,907,235 | 2,034,909 | 2,151,388 | 2,380,088 |
| Last Twelve Month EBITDA/Last Twelve Month Debt Src | P/U | 1.01 | 1.29 | 1.05 | 1.09 | 4.68 | | |
| Covenant | | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | | |
| Cushion | | 0.01 | 0.29 | 0.05 | 0.09 | 3.68 | | |

**Phase II Financial Covenants (cont'd)**

**5. Minimum Capital Expenditure**

| | | 2003 Q4 | 2004 Q4 | 2005 Q4 | 2006 Q4 | 2007 Q4 | 2008 Q4 | 2009 Q4 |
|---|---|---|---|---|---|---|---|---|
| Capital Expenditures | | | | | | | | |
| + License Acquisitions | | 60,582 | 59,720 | 79,782 | 57,270 | 55,931 | 56,047 | |
| + Fiber Lease Payments | | 33,365 | 33,365 | 33,365 | 7,895 | 7,895 | 7,895 | 7,895 |
| + Fiber Lease Additions | | | | | | | | |
| Adjusted Capital Expenditures | | 93,948 | 93,085 | 113,148 | 65,165 | 64,476 | 63,942 | 7,895 |
| Adjusted Last Twelve Months Capital Expenditure | | 399,243 | 374,453 | 390,090 | 271,648 | 240,797 | 226,323 | 31,581 |

11/15/2002 6:43 PM

Siemens ICN 02225

B2104

Confidential

Siemens ICN 02226

Winstar Communications, Inc.

| | 2003 Q4 | 2004 Q4 | 2005 Q4 | 2006 Q4 | 2007 Q4 | 2008 Q4 | 2009 Q4 |
|---|---|---|---|---|---|---|---|
| Coverage | 400,000 | 400,000 | 400,000 | 400,000 | 400,000 | | |
| Cumulos % | 0.2% | 6.9% | 2.5% | 47.23% | 42.5% | | |
| Cumulos $ | 757 | 25,437 | 9,910 | 128,251 | 119,203 | | |

11/15/00 6:43 PM

B2105

Confidential

**Winstar Communications, Inc.**
**Key Assumptions / Drivers**

| | Amount | Rate | Fees & Expenses - % | Fees & Expenses - $M |
|---|---|---|---|---|
| **General Information** | | | | |
| Minimum Cash | 100,000 | 6.75% | | |
| Lucent Line Limit | 1,000,000 | 10.75% | 3.00% | $30,000 |
| Revolver | Unlimited | 10.50% | | |
| **Bank Facility** | | | | |
| Bank Line Limit | 1,350,000 | 10.50% | 2.53% | $34,438 |
| Term Loan C | 200,000 | 10.50% | | |
| **Series H Preferreds** | | | | |
| Dollars Raised | 270,000 | 12.50% | 1.50% | $4,050 |
| **Second Round Financing** | | | | |
| Cash Pay '11 | 550,000 | 12.50% | 2.50% | $13,750 |
| Equity Raised | 550,000 | | 1.50% | $8,250 |
| **DSPP Proceeds (until Q4 2000)** | 30,000 | | 0.00% | $0 |
| **Third Round Financing** | | | | |
| Cash Pay '15 | 0 | 12.50% | 2.50% | $0 |
| Equity Raised | 0 | | 1.50% | $0 |

11

Siemens ICN 02227

Confidential

## Winstar Communications, Inc.
### Annual Consolidated Summary Sheet

| | | | | | For Year Ended December 31, | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 |
| Revenues | $708,840 | $994,406 | $1,576,083 | $2,203,891 | $2,898,826 | $3,620,393 | $4,243,467 | $4,594,785 | $4,929,975 | $5,335,825 |
| Gross Profit | 337,980 | 520,632 | 939,757 | 1,435,754 | 1,891,413 | 2,552,488 | 3,019,534 | 3,245,530 | 3,457,243 | 3,702,113 |
| EBITDA | (85,199) | 67,335 | 407,218 | 783,549 | 1,182,249 | 1,581,854 | 1,907,235 | 2,038,569 | 2,151,288 | 2,280,888 |
| Depreciation & Amortization | 320,598 | 452,050 | 524,617 | 560,498 | 585,939 | 611,256 | 635,625 | 639,959 | 661,476 | 684,909 |
| EBIT | (405,797) | (384,714) | (117,399) | 223,052 | 596,419 | 970,598 | 1,271,610 | 1,379,010 | 1,489,811 | 1,595,979 |
| Interest Expense | 345,511 | 530,474 | 646,680 | 659,203 | 647,595 | 611,790 | 539,594 | 462,549 | 430,511 | 451,655 |
| Cash Interest Expense | 309,448 | 430,871 | 554,671 | 552,835 | 524,674 | 572,240 | 539,594 | 462,549 | 430,511 | 451,655 |
| Net Income to Common | (923,522) | (1,024,949) | (860,147) | (556,139) | (183,900) | 720,096 | 590,317 | 781,632 | 969,037 | 869,699 |
| | | | | | | | | | | |
| Total Assets | $4,789,697 | $6,024,396 | $5,680,480 | $5,412,350 | $5,385,551 | $5,148,698 | $5,169,001 | $5,482,377 | $6,397,550 | $7,582,267 |
| Cash and Equivalents | 521,238 | 1,009,454 | 477,280 | 355,342 | 459,435 | 435,601 | 711,435 | 1,353,616 | 2,571,669 | 4,096,461 |
| Total Debt | 4,027,022 | 5,313,986 | 5,506,135 | 5,416,137 | 5,207,556 | 4,348,286 | 3,512,960 | 2,781,992 | 2,440,683 | 2,430,673 |
| Preferred Equity | 200,046 | 200,046 | 200,001 | 200,001 | 200,001 | 200,001 | 200,001 | 200,001 | 200,001 | 200,001 |
| Common Equity | (72,778) | (206,695) | (910,973) | (1,203,372) | (1,113,108) | (659,055) | 156,032 | 1,127,082 | 2,393,114 | 3,381,427 |
| | | | | | | | | | | |
| Funds From Operations (FFO) | (549,173) | (244,452) | (105,767) | 226,133 | 660,801 | 1,036,517 | 1,398,359 | 1,622,681 | 1,819,189 | 1,764,789 |
| Net Working Capital | 29,240 | 9,502 | 50,804 | 52,233 | 70,109 | 84,997 | 88,752 | 78,627 | 59,598 | 34,913 |
| Capital Expenditures | 1,133,592 | 981,857 | 499,819 | 245,333 | 263,782 | 241,102 | 256,629 | 231,577 | 240,216 | 224,642 |
| Free Cash Flow | (2,210,173) | (1,367,145) | (752,268) | (65,594) | 335,616 | 734,666 | 1,111,180 | 1,373,129 | 1,599,360 | 1,534,804 |
| Cumulative Free Cash Flow | (2,210,173) | (3,577,317) | (4,339,585) | (4,395,179) | (4,059,563) | (3,304,897) | (2,193,717) | (820,588) | 738,772 | 2,273,576 |
| **FINANCIAL RATIOS** | | | | | | | | | | |
| Revenue Growth | 59.8% | 40.3% | 58.5% | 39.8% | 31.6% | 24.9% | 17.2% | 8.0% | 7.5% | 8.2% |
| Gross Margin | 47.7% | 52.4% | 59.6% | 65.1% | 68.7% | 70.5% | 71.2% | 70.8% | 70.1% | 69.4% |
| EBITDA Margin | (12.0%) | 6.8% | 25.8% | 35.6% | 40.8% | 43.7% | 44.9% | 44.5% | 43.6% | 42.7% |
| EBIT Margin | (57.2%) | (38.7%) | (7.4%) | 10.1% | 20.6% | 26.8% | 30.0% | 30.1% | 30.2% | 29.9% |
| Net Income Marg n | (131.0%) | (104.1%) | (54.6%) | (25.2%) | (6.3%) | 6.1% | 13.9% | 17.0% | 19.5% | 16.3% |
| EBIT / Average Assets | (10.4%) | (7.1%) | (2.0%) | 4.0% | 11.0% | 18.4% | 24.6% | 25.9% | 23.1% | 22.8% |
| Net Income / Average Common Equity | N/M | N/M | N/M | N/M | N/M | N/M | (261.0%) | 121.8% | 56.3% | 30.6% |
| CapEx / Revenues | 1.6x | 1.0x | 0.3x | 0.1x | 0.1x | 0.1x | 0.1x | 0.1x | 0.1x | 0x |
| CapEx / Depreciation & Amortization | 353.6% | 217.2% | 95.3% | 43.8% | 45.4% | 39.4% | 49.4% | 35.1% | 37.7% | 32.8% |
| Debt / Capitalization | 97.1% | 102.0% | 114.8% | 122.6% | 121.3% | 110.4% | 90.8% | 67.7% | 49.5% | 40.4% |
| EBITDA / Gross Int Exp | (24.7%) | 12.7% | 63.0% | 118.9% | 182.6% | 258.6% | N/M | N/M | N/M | N/M |
| EBITDA / Gross Cash Int Exp | (27.5%) | 14.9% | 73.4% | 141.7% | 225.3% | 276.3% | N/M | N/M | N/M | N/M |
| FFO / Gross Int Expense | (142.2%) | (46.1%) | (16.4%) | 38.9% | 103.1% | 169.4% | N/M | N/M | N/M | N/M |
| (EBITDA - CapEx) / Gross Interest Expense | (352.7%) | (172.4%) | (14.3%) | 8.1% | 141.5% | 219.1% | N/M | N/M | N/M | N/M |
| Debt / FFO | N/M | N/M | N/M | N/M | N/M | 419.9% | 251.2% | 171.4% | 134.2% | 177.7% |
| Debt / EBITDA | N/M | N/M | N/M | N/M | N/M | 274.9% | 184.2% | 136.4% | 113.5% | 106.6% |

12

Siemens ICN 02228

# Confidential

Winstar Communications, Inc.
EBITDA Contribution Analysis

For Year Ended December 31,

| | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 |
|---|---|---|---|---|---|---|---|---|---|---|
| **Revenue** | | | | | | | | | | |
| Network Channel | | | | | | | | | | |
| Professional Services | | | | | | | | | | |
| Web Hosting/ASP | | | | | | | | | | |
| New Media | | | | | | | | | | |
| Total Revenue | | | | | | | | | | |
| **COR** | | | | | | | | | | |
| Network Channel | | | | | | | | | | |
| Professional Services | | | | | | | | | | |
| Web Hosting/ASP | | | | | | | | | | |
| New Media | | | | | | | | | | |
| Total COR | | | | | | | | | | |
| Margin | | | | | | | | | | |
| **Gross Profit** | | | | | | | | | | |
| Network Channel | | | | | | | | | | |
| Professional Services | | | | | | | | | | |
| Web Hosting/ASP | | | | | | | | | | |
| New Media | | | | | | | | | | |
| Total Gross Margin | | | | | | | | | | |
| Margin | | | | | | | | | | |
| **SG&A** | | | | | | | | | | |
| Network Channel | | | | | | | | | | |
| Professional Services | | | | | | | | | | |
| Web Hosting/ASP | | | | | | | | | | |
| New Media | | | | | | | | | | |
| Unallocated SG&A | | | | | | | | | | |
| Total SG&A | | | | | | | | | | |
| Margin | | | | | | | | | | |
| **EBITDA** | | | | | | | | | | |
| Network Channel | | | | | | | | | | |
| Professional Services | | | | | | | | | | |
| Web Hosting/ASP | | | | | | | | | | |
| New Media | | | | | | | | | | |
| Unallocated EBITDA | | | | | | | | | | |
| Total EBITDA | | | | | | | | | | |
| Margin | | | | | | | | | | |

13

Siemens ICN 02229

B2108

Confidential

**Winstar Communications, Inc.**
**Annual Consolidated Income Statement**

| (In thousands) | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | For Year Ended December 31, | | | | |
| **Revenue** | | | | | | | | | | |
| Core Telecom | $590,093 | $894,940 | $1,438,270 | $2,023,159 | $2,674,158 | $3,356,570 | $3,920,842 | $4,212,991 | $4,505,982 | $4,680,783 |
| Non - Core | 15,825 | 8,882 | 2,424 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Telecom | $605,918 | $903,822 | $1,440,694 | $2,023,159 | $2,674,158 | $3,356,570 | $3,920,842 | $4,212,991 | $4,505,982 | $4,680,783 |
| New Media | 102,923 | 90,584 | 135,390 | 179,735 | 224,686 | 263,822 | 322,625 | 371,785 | 423,993 | 475,092 |
| Total Revenue | $708,840 | $994,406 | $1,576,083 | $2,202,891 | $2,898,825 | $3,620,393 | $4,243,447 | $4,584,785 | $4,929,976 | $5,335,488 |
| **Cost of Revenue** | | | | | | | | | | |
| Core Telecom | $309,855 | $405,532 | $547,099 | $549,524 | $760,191 | $854,003 | $1,011,995 | $1,092,997 | $1,189,732 | $1,316,816 |
| Non - Core | 6,646 | 3,730 | 1,018 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Telecom | $316,502 | $409,263 | $548,117 | $549,524 | $760,191 | $854,003 | $1,011,995 | $1,092,997 | $1,189,732 | $1,316,816 |
| New Media | 54,358 | 64,511 | 68,209 | 117,613 | 147,253 | 173,902 | 212,338 | 246,258 | 282,990 | 317,896 |
| Total COR | $370,860 | $473,773 | $616,326 | $767,137 | $907,413 | $1,007,905 | $1,223,933 | $1,339,255 | $1,472,723 | $1,632,712 |
| Gross Profit | $337,980 | $520,632 | $959,757 | $1,435,754 | $1,991,413 | $2,532,488 | $3,019,554 | $3,245,530 | $3,457,253 | $3,702,113 |
| **SG&A Expense** | | | | | | | | | | |
| Telecom | $390,915 | $411,983 | $492,258 | $599,076 | $734,696 | $865,769 | $1,009,669 | $1,088,879 | $1,171,882 | $1,269,600 |
| New Media | 32,285 | 41,414 | 60,282 | 82,228 | 74,388 | 84,885 | 102,830 | 117,893 | 134,594 | 151,625 |
| Total SG&A | $423,180 | $453,397 | $552,539 | $682,204 | $809,084 | $970,654 | $5,112,299 | $1,206,561 | $1,306,959 | $1,421,225 |
| **EBITDA** | | | | | | | | | | |
| Telecom | ($101,499) | $82,576 | $410,319 | $783,656 | $1,179,302 | $1,576,798 | $1,899,378 | $2,031,115 | $2,144,368 | $2,275,347 |
| New Media | 16,300 | (15,340) | (3,101) | (107) | 3,047 | 5,036 | 7,857 | 7,854 | 6,800 | 5,541 |
| Total EBITDA | ($85,199) | $67,335 | $407,218 | $783,549 | $1,182,349 | $1,581,834 | $1,907,235 | $2,038,969 | $2,151,268 | $2,280,888 |
| Depreciation | $208,251 | $381,927 | $454,494 | $480,375 | $515,806 | $541,403 | $565,502 | $590,008 | $614,989 | $628,422 |
| Amortization | 52,346 | 70,123 | 70,123 | 70,123 | 70,123 | 70,123 | 24,569 | 65,273 | 45,447 | 46,467 |
| EBIT | ($405,797) | ($384,714) | ($117,399) | $223,052 | $595,419 | $970,308 | $1,317,610 | $1,375,010 | $1,488,611 | $1,595,979 |
| Interest (Income) | ($34,212) | ($324,522) | ($339,601) | ($412,398) | ($321,439) | ($125,535) | ($433,871) | ($355,769) | ($105,732) | 0 |
| Interest Exp - Existing and New Debt | 322,075 | 475,291 | 565,547 | 579,889 | 592,555 | 578,940 | 515,025 | 439,186 | 408,001 | 430,088 |
| Interest Exp - Capitalized Leases | 13,438 | 55,103 | 81,134 | 79,914 | 55,040 | 34,850 | 24,569 | 23,363 | 22,510 | 21,568 |
| Interest Exp (Income) - New Revolver | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Pre-Tax Income | ($717,097) | ($890,667) | ($724,276) | ($412,398) | ($328,737) | $384,054 | $765,887 | $970,280 | $1,166,032 | $1,334,544 |
| Other Income/ Expense | 18,482 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Extraordinary Loss on Debt Extinguishments | (108,804) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Pre-Tax Income After E I | ($803,419) | ($890,667) | ($724,276) | ($412,398) | ($328,737) | $384,054 | $765,887 | $970,280 | $1,166,032 | $1,334,544 |
| Income Taxes | (4,641) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 245,201 |
| Net Income | ($798,778) | ($890,667) | ($724,276) | ($412,398) | ($328,737) | $384,054 | $765,887 | $970,280 | $1,166,032 | $1,089,313 |
| Redemption Premium on Series C Pref | 23,998 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Preferred Dividends | 105,756 | 134,292 | 155,869 | 143,741 | 153,253 | 163,259 | 175,570 | 186,817 | 202,945 | 218,814 |
| Net Income to Common | ($928,532) | ($1,024,948) | ($880,147) | ($556,139) | ($482,990) | $230,096 | $590,317 | $781,632 | $963,047 | $869,499 |

14

Siemens ICN 02230

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| LUCENT TECHNOLOGIES INC., | ) | COMPLAINT |
| NINA AVERSANO, | ) | |
| JAY CARTER, | ) | JURY DEMANDED |
| ALICE LESLIE DORN, | ) | |
| WILLIAM PLUNKETT, | ) | |
| JOHN BRATTEN, | ) | |
| DEBORAH HARRIS, | ) | |
| CHARLES ELLIOTT, | ) | |
| VANESSA PETRINI, | ) | |
| MICHELLE HAYES-BULLOCK and | ) | |
| DAVID ACKERMAN, | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Securities and Exchange Commission (the "Commission") alleges:

**ADDRESSES OF THE PARTIES**

1.     The address of the Commission is 450 Fifth Street, N.W., Washington,

D.C.  The principal executive offices of Lucent Technologies Inc. ("Lucent") are located

in Murray Hill, New Jersey.  Nina Aversano resides in Kinnelon, New Jersey.  Jay Carter

resides in Far Hills, New Jersey.  Alice Leslie Dorn ("Leslie Dorn" or "Dorn") resides in

New York, New York.  William Plunkett resides in Little Rock, Arkansas.  John Bratten

resides in Alpharetta, Georgia.  Deborah Harris resides in Shaker Heights, Ohio.  Charles

Elliott resides in Roswell, Georgia.  Vanessa Petrini resides in Davidsonville, Maryland.

Michelle Hayes-Bullock resides in Orange, New Jersey.  David Ackerman resides in

McLean, Virginia.

## SUMMARY OF ALLEGATIONS

2.      Lucent fraudulently and improperly recognized approximately $1.148 billion dollars of revenue and $470 million in pre-tax income in violation of Generally Accepted Accounting Principles ("GAAP") during its fiscal year 2000 (October 1, 1999 to September 30, 2000). As a result, Lucent improperly overstated its pre-tax income for its fiscal year 2000 by 16 percent. $511 million of revenue and $91 million in pre-tax income were recognized prematurely in quarterly results during Lucent's fiscal year 2000. The remaining $637 million in revenue and $379 million in pre-tax income should not have been recognized at all during Lucent's fiscal year 2000. Lucent subsequently adjusted its results by $679 million in revenue prior to the filing of its Form 10-K for fiscal 2000.

3.      Lucent's violations of GAAP were due to the fraudulent and reckless actions of the defendants and were also the result of deficient internal controls that led to numerous accounting errors by others. In their drive to realize revenue, meet internal sales targets and/or obtain sales bonuses, Nina Aversano, Jay Carter, Leslie Dorn, William Plunkett, John Bratten, Deborah Harris, Charles Elliott, Vanessa Petrini, and Michelle Hayes-Bullock, in their respective capacities as officers, executives and employees of Lucent improperly granted, and/or failed to disclose, various side agreements, credits and other incentives (collectively "extra-contractual commitments") to induce Lucent's customers to purchase the company's products. These extra-contractual commitments were made in at least ten transactions in fiscal 2000, and Lucent violated GAAP by recognizing revenue on these transactions both in circumstances: (a)

2

B2111

where it could not be recognized under GAAP; and (b) by recording the revenue earlier than was permitted under GAAP.

4.      In carrying out their fraudulent conduct, these officers, executives and employees of Lucent violated and circumvented Lucent's internal accounting controls, falsified documents, hid side agreements with customers, failed to inform personnel in Lucent's corporate finance and accounting structure of the existence of the extra-contractual commitments or, in some instances, took steps to affirmatively mislead them.

5.      In addition to the fraudulent conduct by Lucent's own employees, David Ackerman, who at the time was an officer of Winstar Communications Inc. ("Winstar"), engaged in a scheme with William Plunkett that resulted in Lucent misrecording a software purchase by Winstar at the end of Lucent's fourth quarter of fiscal year 2000. His fraud included signing a document that disguised the timing of a side agreement in connection with that sale. By engaging in such conduct, Ackerman aided and abetted Lucent's fraud.

6.      In addition to the fraudulent conduct, Lucent improperly recorded other transactions as a result of its failure to maintain a system of internal accounting controls sufficient to provide reasonable assurances that the company's financial statements were prepared in conformity with GAAP.

7.      On November 21, 2000, Lucent announced that it had identified a revenue issue impacting $125 million of revenue in its fourth quarter of fiscal year 2000. Immediately following that announcement, Lucent's stock dropped approximately 16 percent. On December 21, 2000, Lucent announced that it had identified an additional $554 million in revenue issues and that its fiscal year 2000 revenue would be reduced by

3

a total of $679 million.  Immediately following that announcement, Lucent's stock dropped by approximately 13 percent.  $637 million of the $679 million of improperly recognized revenue identified by Lucent is included in the $1.148 billion dollars of improperly recognized revenue identified in paragraph two above.

## JURISDICTION

8.     The Commission brings this action pursuant to Section 21(d) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d)].

9.     This Court has jurisdiction over this action pursuant to Sections 21(d) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d) and 78aa].

10.     In connection with the transactions, acts, practices, and courses of business described in the complaint, the defendants, directly or indirectly, used the means or instrumentalities of interstate commerce, the mails, or the facilities of a national securities exchange.

## THE DEFENDANTS

11.     Lucent is a provider of communications networks for the world's largest communications service providers.  It designs and provides systems, services and software.  Lucent was incorporated in Delaware in November 1995, and was formed from the systems and technology units that were formerly a part of AT&T Corporation ("AT&T") and were spun off by AT&T on September 30, 1996.  Lucent's principal executive offices are located at 600 Mountain Avenue, Murray Hill, New Jersey 07974.

12.     Lucent is a public company whose securities are registered with the Commission pursuant to Section 12(b) of the Exchange Act and it is required to file

4

periodic reports with the Commission pursuant to Section 13 of that Act. Lucent's stock trades on the New York Stock Exchange under the symbol LU.

13.    Nina Aversano, age 59, was a corporate officer and President of Lucent's North American Sales and Service Provider Networks from 1998 to 2000. For fiscal year 2000, Aversano's area of responsibility accounted for approximately $26.5 billion, or 78%, of Lucent's total sales.

14.    Jay Carter, age 54, was a corporate officer and President of Lucent's AT&T customer business unit from July of 1997 to September of 2000, with global responsibility for sales and marketing of Lucent product to AT&T. From May to September of 2000, Carter reported directly to Aversano.

15.    Leslie Dorn, age 57, was Lucent's Vice President of Indirect Sales for North America (distributors) from November 1998 until approximately December 2000, and reported directly to Aversano.

16.    John Bratten, age 54, has been Lucent's sales Vice President for the BellSouth region since April 2000.

17.    William Plunkett, age 56, was Vice President for Lucent's Emerging Service Provider customer business unit, which included the Winstar account.

18.    Deborah Harris, age 48, was sales Vice President for the Winstar account within the Emerging Service Provider customer business unit from August 2000 until October 2001. Harris reported to Plunkett in September 2000.

19.    Michelle Hayes-Bullock, age 46, was a Lucent Finance Director with CFO responsibilities for the AT&T customer business unit from January 2000 to January 2001, and reported to Jay Carter through September 2000.

B2114

20.     Charles J. Elliott, age 61, was a Lucent Senior Manager with contract management responsibility for the BellSouth customer team from 1984 until August 2001.

21.     Vanessa Petrini, age 43, was Assistant Vice President for the Winstar Customer Team in September 2000, and reported directly to Harris.

22.     David Ackerman, age 59, was an officer of Winstar and Executive Vice President, Business Development and Strategic Planning from June 1994 until January 2001. He was responsible for corporate strategy and business development.

## DESCRIPTION OF LUCENT'S FRAUDULENT TRANSACTIONS

23.     Lucent knowingly or recklessly filed materially false financial statements with the Commission in Forms 10-Q for the first three quarters of its fiscal year 2000 and in a Form 8-K filed on October 24, 2000 with regard to its fourth quarter results. Lucent knowingly or recklessly misrepresented its revenues and pre-tax income as substantially greater than they were in these filings with the Commission and other public disclosures, including earnings releases and statements by senior management to shareholders. Additionally, Lucent failed to implement sufficient internal controls and procedures to ensure compliance with GAAP.

24.     The aggregate impact of the undisclosed accounting actions resulted, among other things, in Lucent:

      a.   Overstating its revenue in fiscal year 2000 by over $1 billion; and

      b.   Overstating its pre-tax income in fiscal year 2000 by approximately $470 million, or 16 percent.

6

**B2115**

**Distributor Transactions**
**Nina Aversano and Leslie Dorn**

25.    Starting at least as early as the first quarter of Lucent's fiscal year 2000 (October to December 1999), Aversano and Dorn engaged in a pattern and practice of orally granting Anixter International, Inc. ("Anixter") and Graybar Electric Company ("Graybar") (Lucent's top two distributors) certain rights and privileges beyond those contained in their respective distribution agreements with Lucent. These rights and privileges were granted both directly by Aversano and Dorn, and on occasion through their subordinates. The nature of these rights and privileges was such that it was improper under GAAP for Lucent to recognize revenue at the point of sale to the distributor.

26.    While the specific rights and privileges granted to Anixter and Graybar varied from transaction to transaction, the general nature of the agreements was that if these distributors took the product offered by Lucent they would not get hurt in a given transaction; that Lucent would assist them in moving the product to end-customers; and that Lucent would accept a return of the product if sales to the end-customers did not materialize.

27.    GAAP, as summarized in FASB Concepts Statement No. 5 ("CON 5"), prohibits recognition of revenue in financial statements unless and until it is realizable and earned. FASB Statement No. 48 ("FAS 48") identifies particular circumstances where claimed revenues may not be recognized because they are not sufficiently realizable or earned. In violation of these standards, Lucent improperly recognized revenue despite substantial evidence that the recorded amount was not realizable or

7

B2116

earned, or in circumstances where significant uncertainties remained regarding whether the amount was realizable and earned.

28.    Historically, those uncertainties were properly considered and reflected in Lucent's accounting by recording these transactions as consignment sales, with revenue deferred until resale by the distributor.  During Lucent's fiscal year 1999 until the end of its fiscal year 2000, Lucent modified its arrangements and recognized revenue upon delivery to the distributors.  By doing so, Lucent violated GAAP in several instances because the extra-contractual commitments resulted in significant uncertainties surrounding those transactions.

29.    Specifically, Aversano and Dorn protected the distributors from the substantive risks of a reseller by granting unrestricted product substitutions, pricing concessions, holding cost reimbursements, and remarketing assistance, thereby violating key conditions of revenue recognition in FAS 48 – such as paragraphs 6(a), 6(b), and 6(e).  In addition, in violation of another key condition for revenue recognition under FAS 48, Lucent was unable to estimate, or in any case did not estimate, reasonably likely product returns that would occur as a result of the undocumented return rights granted to distributors that went well beyond the product substitution levels stipulated in their distributor contracts.

30.    As described above, during Lucent's fiscal year 1999 until the end of its fiscal year 2000, Lucent modified its prior accounting policy and recognized revenue upon delivery to the distributors.  This change in accounting policy followed Aversano's request in approximately early 1999 that Anixter assist Lucent in developing an indirect sales model -- sales through distributors -- in the carrier telecommunications space, an

B2117

area where Lucent had previously sold its own product directly to end users – a direct sales model. The product lines Aversano sought to shift to an indirect sales model were comprised of sophisticated equipment such as telecommunication switches and optical products that are often manufactured specifically for an end user and are not readily saleable to other customers absent significant modification.

31.    A senior Anixter executive told Aversano that Lucent would need to provide significant assistance in connection with the transition to an indirect sales model. Aversano assured the senior Anixter executive that Anixter would not be burdened with the ultimate financial responsibility for those goods taken if the transition to an indirect model was not successful. From the assurances given by Aversano, the senior Anixter executive understood that Anixter would not get stuck with any inventory they took that was targeted to this new market.

32.    Consistent with what other Anixter executives were later told by Dorn, Aversano told the senior Anixter executive that if sales did not go through as contemplated, Lucent would substitute the product that Anixter bought for another product that its customer might need, Lucent would find other customers for Anixter to sell the Lucent product to and, if that did not work, Lucent would take the product back.

33.    In addition to the broad assurances given by Aversano to Anixter as described above, Aversano and Dorn also gave explicit extra-contractual assurances in connection with specific sales transactions. The transactions in which Aversano and Dorn granted Anixter and Graybar rights and privileges beyond those contained in their respective distribution agreements with Lucent include: (1) the sale to Anixter of approximately $335 million of product over the course of Lucent's fiscal years 1999 and

9

B2118

2000 for resale to MCI/Worldcom; (2) the sale to Anixter of approximately $38 million of 400G optical networking product at the end of Lucent's first quarter of fiscal year 2000; (3) the sale to Anixter of $89 million of product over the course of Lucent's second and third quarters of fiscal year 2000 for resale to ICG Communications, Inc. ("ICG"); (4) the sale to Graybar of approximately $250 million of product over the course of Lucent's first through third quarters of fiscal year 2000 for resale to U.S. West Communications, Inc. ("U.S. West"); and (5) the sale to Graybar of approximately $61 million of optical networking product in Lucent's third quarter of fiscal 2000 for resale to three competitive local exchange carriers identified by Lucent.

  34. Despite the fact that Aversano and Dorn knew, or were reckless in not knowing, that the verbal agreements entered into in connection with these transactions made revenue recognition improper under GAAP, they nevertheless failed to inform Lucent's CFO structure of the existence of those agreements. Moreover, on some occasions Aversano and Dorn affirmatively misrepresented facts to members of Lucent's CFO structure.

### The Fourth Quarter Sale

  35. The representations and misrepresentations Aversano and Dorn made in connection with the sale of approximately $110 million of product to Anixter at the end of Lucent's fourth quarter in September 2000 ("Fourth Quarter Sale") are typical of their pattern and practice described above. This sale is a portion of the $335 million of product sold to Anixter over the course of Lucent's fiscal years 1999 and 2000 for resale to MCI/Worldcom as described above.

<div align="center">10</div>

36.    In connection with the Fourth Quarter Sale, a senior Anixter executive told Aversano and Dorn that the exposure was too great on Anixter's part to take on any more Lucent product without additional assurances that Anixter would be able to redeploy the inventory to customers other than MCI/Worldcom, or that Anixter could return the product if necessary. In the presence of Dorn, Aversano assured the senior executive that this would not be an issue and that Lucent would not let Anixter down. In June 2000, in response to similar concerns expressed by Anixter executives in connection with an approximately $122 million dollar sale at the end of Lucent's third quarter of fiscal year 2000, Aversano gave similar assurances to Anixter executives in the presence of Dorn. As with the Fourth Quarter Sale, the product sold to Anixter in Lucent's third quarter was intended for resale to MCI/Worldcom.

37.    As part of the negotiations for the Fourth Quarter Sale, another senior Anixter executive requested that Aversano put the right of return for the product in writing. Aversano told him that she could not put it in writing, and instead orally represented to him that Lucent would take the product back if it didn't sell to MCI/WorldCom.

38.    While she would not put the right of return in writing, Aversano did execute a Letter of Understanding ("LOU") with Anixter on September 29, 2000 as part of the Fourth Quarter Sale. The LOU provided, among other things, that if after six months Anixter had not sold the equipment, it would have exclusive rights to sell it into certain markets. Lucent's Chief Accountant had seen drafts of the LOU that included provisions that are impermissible from a revenue recognition perspective, and explicitly

11

told Aversano that she could not agree to include such commitments. A right of return was among the impermissible provisions contained in drafts leading up to the LOU.

39.     Lucent's Chief Accountant was concerned about the fact that impermissible provisions had been included in drafts of the LOU, and, therefore, he later specifically asked Aversano if the executed LOU was in fact the entire agreement, and if there was anything else proposed. In response, Aversano falsely told the Chief Accountant that the LOU was indeed the full agreement between the parties, despite the fact that she had made the additional oral representations discussed above.

40.     In addition to her false representations to Lucent's Chief Accountant, on October 12, 2000, Aversano knowingly or recklessly executed a management representation letter for the fourth quarter of fiscal year 2000 which, among other things, falsely stated that her area of responsibility had no "(1) agreements to repurchase or accept returns of inventory sold to customers, including distributors, other than for restocking as provided in distributorship agreements or (2) future performance obligations, other than normal warranty obligations, with respect to inventory sold to customers, including distributors." Aversano knew that Lucent's auditor would rely on this false letter in connection with its review of Lucent's fourth quarter 2000 financial statements and in connection with its fiscal year end audit procedures.

41.     Dorn also made direct representations and commitments to Anixter executives in connection with the Fourth Quarter Sale and the other sales comprising the $335 million of product sold to Anixter over the course of Lucent's fiscal years 1999 and 2000 for resale to MCI/Worldcom as described above. Between the mid-first quarter of 1999 through October 2000, Dorn gave assurances to an Anixter executive on multiple

<center>12</center>

occasions that if a sale did not go through as contemplated, Lucent would substitute the product that Anixter bought for another product that its customer might need, Lucent would find other customers for Anixter to sell the Lucent product to and, if that did not work, Lucent would take the product back. At times, Dorn advised the Anixter executive that she needed to get Aversano's approval before making these commitments to Anixter. In addition, Dorn's assurances reflected the same assurances that Aversano made to an Anixter executive.

42.    Despite the numerous extra-contractual commitments made by Aversano and Dorn, when questioned by Lucent's Chief Accountant in the June to July 2000 timeframe, Dorn falsely told him that there were no verbal agreements or side deals that would indicate there were any rights of return above the 5 percent stock balancing provisions noted in the distributor agreement.

43.    In the October to November 2000 timeframe, Leslie Dorn acknowledged to a senior Anixter executive that commitments had been made to Anixter, and that if the equipment was not deployable elsewhere, Anixter was not going to have to continue to carry it.

### Optical Equipment Sale to Anixter

44.    As described above, at the end of Lucent's first quarter of fiscal year 2000, Lucent sold approximately $38 million of optical equipment to Anixter. In connection with this sale, Dorn represented to multiple Anixter executives that the product would move or that it could be returned to Lucent. Moreover, Dorn explicitly stated in connection with this sale that Aversano had authorized the right of return.

13

45.    Anixter was unable to sell a majority of this material, and Lucent paid holding fees to Anixter until the inventory was ultimately returned to Lucent in September of 2000.

### Sales to Anixter for resale to ICG

46.    In connection with these sales of product totaling approximately $89 million as described above, Dorn, at the direction of, or with the knowledge and approval of Aversano, gave an Anixter executive assurances that Anixter would not get hurt in these transactions – including the right to return the product if the sales did not work out. Additionally, Dorn agreed to provide Anixter with a holding fee to compensate Anixter for each day the resale to ICG was delayed beyond the projected resale dates, and to compensate it for any outstanding receivable balances from ICG.    Lucent ultimately agreed to make Anixter whole with regard to approximately $46 million in unpaid receivables it had from ICG.

### Sales to Graybar for resale to U.S. West

47.    In connection with the over $250 million in sales to Graybar for resale to U.S. West that occurred over the course of Lucent's first through third quarters of fiscal year 2000 as described above, Dorn made or authorized numerous specific representations to Graybar employees at the direction of, or with the knowledge and approval of Aversano. Similar to representations made to Anixter in connection with the Fourth Quarter Sale, Graybar executives were told by Dorn that the Lucent product would be off Graybar's books by the end of the year (December 31, 2000); that Lucent would reconfigure the Lucent product and arrange its sale to another regional bell

14

B2123

operating company if sales to U.S. West didn't work out; and that Graybar would not get hurt in the transactions.

48.    Nearly all of the product that Graybar purchased at the end of Lucent's second and third quarters of fiscal year 2000 was returned by Graybar to Lucent in December of 2000.

### Third Quarter Sale to Graybar

49.    As with the sales for U.S. West, in connection with the sale of approximately $61 million of Lucent optical networking product to Graybar at the end of Lucent's third quarter of fiscal year 2000 as described above, Dorn, at the direction of, or with the knowledge and approval of Aversano, represented to a Graybar executive that Graybar would not get hurt in the transaction, and that Lucent would help them sell the product to other customers if the transactions did not work out as contemplated.

50.    As presented by Dorn to the Graybar executive, the deal envisioned Graybar reselling Lucent's product to three competitive local exchange carriers that Lucent had already identified.  The transactions did not occur, and Graybar ultimately returned the product to Lucent in December 2000.

### Effect of Distributor Transactions on Lucent's Reported Financial Results

51.    Aversano and Dorn each acted with knowledge or recklessly engaged in the above described fraudulent conduct.  As a result of Aversano and Dorn's fraudulent conduct, Lucent violated GAAP by recognizing revenue at the point of sale on these transactions.  Aversano and Dorn knew, or were reckless in not knowing, that as a result

15

B2124

of the fraudulent conduct, Lucent filed materially misstated Forms 10-Q with the Commission for the first three quarters of its fiscal year 2000, and that revenue was improperly included in Lucent's October 23, 2000 unaudited financial statements that were filed with the Commission in a Form 8-K on October 24, 2000. In December 2000, Lucent ultimately agreed to take back $352 million in inventory that Anixter and Graybar had been unable to sell. In total, Aversano and Dorn's fraudulent conduct resulted in Lucent materially overstating its pre-tax income for fiscal year 2000 by approximately 7 percent.

### Winstar Software Pool Transaction
### William Plunkett, Deborah Harris, Vanessa Petrini, and David Ackerman

52.     In September 2000, William Plunkett negotiated, with the assistance of Lucent's Winstar sales team members Deborah Harris and Vanessa Petrini, the sale of $135 million worth of software in a software pool transaction with David Ackerman of Winstar. The software pool arrangement allowed Winstar to select software by September 29, 2001, and Lucent to recognize $135 million in revenue in its fiscal year ending September 30, 2000. After the parties agreed to and properly documented a $10 million credit, Lucent recognized $125 million on the software pool transaction in its 2000 fiscal year.

53.     This transaction was particularly important to Lucent because the entire amount of revenue was recorded as pre-tax income without any off-setting expense. However, such revenue was recognized in violation of GAAP due to actions of William Plunkett, Deborah Harris, Vanessa Petrini, and David Ackerman.

54.     In September 2000 during the negotiations for the software pool agreement, Ackerman told Plunkett that the pool of software to be purchased by Winstar

16

was worth only about $25 million to the company. As a result, and before committing to pay more than this amount, Ackerman needed additional value from Lucent. At that time, Ackerman understood Lucent's critical need to recognize revenue in its fiscal year ending September 30, 2000, and used that leverage to gain very favorable additional terms for Winstar. Responding to pressure from Lucent's senior management, including Aversano, to recognize revenue, Plunkett reached an agreement with Ackerman in which Winstar would pay Lucent $135 million for the software and the parties would separately document additional elements of the software pool transaction that would give Winstar additional value. The additional value came in the form of a $35 million credit to be applied to Winstar's future purchases, a $45 million credit expected to comprise substantially all the cost of a network integration laboratory for Winstar, and reduced pricing for Winstar on purchases of equipment for building and hub sites ("the side agreements").

55.    Before the parties signed the software pool agreement on September 29, 2000, Ackerman asked that Lucent put the side agreements in writing. Plunkett agreed to Ackerman's request. At that time, both Plunkett and Ackerman knew that the software pool agreement and the side agreements were elements of a single transaction.

56.    To ensure that Lucent's accountants would not deduct the value of Lucent's obligations documented in the side agreements from the $125 million Lucent would recognize on the software pool agreement in September 2000, Plunkett instructed Petrini to draft and post-date three letters documenting the side agreements with fictitious dates in October. The effect of the post-dated letters was to create the appearance that the side agreements were reached after September 30, 2000 and were not connected to the

17

software pool agreement. Petrini drafted and post-dated the letters as instructed and Plunkett signed the post-dated letters on September 29, 2000. Plunkett and Petrini kept the post-dated letters in their files, did not circulate them outside the sales team (except as to Ackerman), and did not make further copies.

57.    Ackerman received the three executed post-dated letters on September 29, 2000 and knew that they did not accurately portray the entire software pool transaction. Nevertheless, Ackerman agreed to Plunkett's post-dating of Lucent's obligations thereby creating the false appearance that they had been agreed to after September 30, 2000. Ackerman also counter-signed the letter dealing with reduced pricing on purchases of equipment for building and hub sites. Ackerman post-dated that letter October 20, 2000 and sent that executed letter back to Plunkett on September 29, 2000. All three letters were eventually resent to Ackerman at Winstar on their fictitiously stated dates in October 2000. Ackerman counter-signed the letter dealing with reduced pricing on purchases of equipment for building and hub sites again on October 20, faxed the letter to Plunkett, and destroyed the original post-dated letter.

58.    Deborah Harris understood that Winstar would not utilize the entire $135 million of software, and therefore Winstar wanted additional value in exchange for its agreement to pay $135 million for that software. During the negotiations for the software pool agreement, Petrini and Harris also knew that Lucent had agreed to provide the side agreements to Winstar and that the software pool agreement and the side agreements were elements of a single transaction. Petrini told Harris that Plunkett and Petrini had documented the side-agreements in post-dated letters. Petrini, Harris, Plunkett, and Ackerman knew, or were reckless in not knowing, that if the credits and discounts had

18

been properly recorded by Lucent in the same quarter that the software pool agreement was executed, Lucent would not have recognized $125 million on the transaction.

59.    On October 4, 2000, a member of Lucent's CFO structure with responsibility for Lucent's Winstar sales team emailed Harris and Petrini specifically requesting any information regarding discounts or incentives offered by Lucent to Winstar, other than the $10 million credit that had been properly documented. Despite knowing of the existence of the side agreements and the true nature of the concessions granted to Winstar, Harris and Petrini nevertheless failed to disclose the other aspects of the software pool agreement to the accountant.

### Effect of Winstar Software Pool Transaction on Lucent's Reported Financial Results

60.    By not taking the three credits and discounts into account, Lucent improperly recorded $125 million in revenue and pretax income in its fourth fiscal quarter of 2000 in violation of GAAP. That amount represented 26 percent of Lucent's pre-tax income for its fourth fiscal quarter 2000, and 4 percent of Lucent's pre-tax income for fiscal year 2000. That amount was included in Lucent's October 23, 2000 unaudited financial statements filed with the Commission on October 24, 2000 in a Form 8-K.

61.    Plunkett, Harris, Petrini, and Ackerman each acted with knowledge or recklessly engaged in the above described fraudulent conduct. Each knew, or was reckless in not knowing, that as a result of the fraudulent conduct, Lucent filed materially false financial statements with the Commission in the Form 8-K.

B2128

### AT&T Wireless Services Transaction
### Jay Carter and Michelle Hayes-Bullock

62.    Starting in approximately the summer of 1999, Lucent and AT&T
Wireless Services, Inc. ("AWS") began to negotiate a new business model known as
Voice Path Pricing ("VPP"). Under VPP, AWS would no longer pay Lucent for the
individual pieces of equipment that make up a telecommunications network as they had
done traditionally ("conventional pricing"). Instead, AWS would pay a price for each
voice path – in essence pay for each data/voice connection that could be handled on the
finished network.

63.    The parties initially anticipated VPP would take effect on April 1, 2000,
but the new contract was not ultimately signed until August 2000. While the VPP
agreement continued to be negotiated, Jay Carter authorized his subordinates to enter into
a verbal agreement with their AWS counterparts. Through that verbal agreement, Lucent
and AWS agreed that VPP would be retroactively applied to product purchased between
April 1, 2000 and the date the agreement was ultimately reached ("interim period"). As
part of this side agreement, any pricing differential between VPP and conventional
pricing for product purchased during the interim period would be adjusted through credits
via a "true-up" process once the VPP agreement was finalized. In effect, the parties
agreed to have VPP commence on April 1, 2000.

64.    Michelle Hayes-Bullock, who was the CFO for Lucent's AT&T customer
business unit, was aware that an oral side agreement had been entered into with AWS
because she had been explicitly told about it, both by a subordinate in the finance division
and by at least one of the sales executives who made the agreement on behalf of Lucent.
As CFO for Lucent's AT&T customer business unit, Hayes-Bullock was responsible for

20

B2129

ensuring that Lucent's financial statements complied with GAAP for transactions originating within that unit.

65.    During the interim period, Lucent provided AWS with switching equipment valued at $53 million under conventional pricing. The switching equipment was provided to AWS without a purchase order, and, as a result, appeared in certain internal Lucent reports as inventory that had been shipped but not invoiced. In order to recognize revenue on the switches, Carter instructed his subordinates to obtain a purchase order from AWS for the switches. AWS provided a purchase order at the end of Lucent's third quarter of fiscal year 2000 with the explicit understanding that – in conformity with the original oral understanding – Lucent would provide a credit for the invoiced amount and that AWS would ultimately pay the VPP price for the equipment.

66.    On June 30, 2000, at the end of Lucent's third quarter of fiscal year 2000, this switching equipment was invoiced under conventional pricing and Lucent violated GAAP by recognizing revenue and operating income in the amount of $53 million. Carter and Hayes-Bullock knew, or were reckless in not knowing, that Lucent's recognition of the revenue and operating income violated GAAP. Carter and Hayes-Bullock also took affirmative steps to mislead Lucent's Chief Accountant about the existence and nature of the side agreement with AWS.

67.    Despite her knowledge of the verbal side-agreement, Hayes-Bullock drafted, and/or assisted in drafting, a letter to Lucent's Chief Accountant that falsely suggested that there were no credit agreements with AWS. Carter executed versions of that letter on both September 8 and September 26, 2000.

21

B2130

68.    In the September 8, 2000 letter, Carter falsely represented that the June 30, 2000 invoice to AWS for the switches was "payable when due and that any credits earned will be applied against future purchase for wireless products." The September 26, 2000 letter distorted the truth even further, stating that "[i]f as in the past, Lucent were to offer AT&T credits in return for future volume purchases, they would be earned by AT&T when the volume commitments were achieved," – falsely suggesting Lucent had not even offered AWS an opportunity to earn credits.

69.    Under CON 5, before Lucent can recognize revenue in a given transaction, the revenue must be both realizable and earned. To be realizable, collection of the sales price must be reasonably assured. Moreover, notwithstanding the actual delivery and transfer of title to the switches, FAS 48 requires that the price AWS will ultimately pay be fixed and determinable.

70.    The result of the side agreement authorized by Carter was that the price AWS would ultimately pay for the switches was not fixed and determinable, because the ultimate price under VPP had not been determined. Further, Lucent could have no expectation that it would collect $53 million for the switching equipment because the parties had agreed AWS would receive an offsetting $53 million credit. Thus, collection of the sales prices was not reasonably assured, and CON 5's realizable criterion for revenue recognition was not met.

### Effect of AT&T Wireless Services Transaction
### on Lucent's Reported Financial Results

71.    Carter and Hayes-Bullock each acted with knowledge or recklessly engaged in the above described fraudulent conduct. As a result of their fraudulent conduct, Lucent materially overstated pre-tax income by $53 million, or 13 percent, in its

B2131

financial statements filed with the Commission in Form 10-Q for its third quarter of fiscal year 2000. Carter and Hayes-Bullock knew, or were reckless in not knowing, that, as a result of their fraudulent conduct, Lucent filed materially false financial statements with the Commission in Form 10-Q for its third quarter of fiscal year 2000.

### BellSouth Software Pooling Transaction
### John Bratten and Charles Elliott

72.     On September 30, 2000, Lucent and BellSouth Telecommunications, Inc. ("BellSouth") entered into a software pooling agreement, called LOA 105, which obligated BellSouth to pay Lucent $95 million by April 1, 2001 for software that it had to select by September 30, 2002. To induce BellSouth to enter into LOA 105, John Bratten agreed to provide BellSouth with a $20 million credit and a 2 percent price discount (valued at $1 million).

73.     Bratten failed to notify Lucent's CFO structure that he had agreed to the credit and discount as part of the software pooling transaction.

74.     In addition to not disclosing the credit and discount internally, on October 10, 2000, Bratten executed a letter to BellSouth that falsely represented that the credit and discount had been granted on that date rather than in September. The letter was drafted by Charles Elliott, who had been present during the final negotiations and knew that Bratten had granted the credit and discount in September as an inducement for BellSouth to enter into LOA 105.

75.     When questioned by members of Lucent's CFO structure - including the Chief Accountant - about the granting of the credit and price discount, Bratten and Elliott each initially maintained that the credit and discount were not connected to LOA 105 and had been granted in order to facilitate the execution of a new Global Purchase Agreement

23

B2132

with BellSouth. Bratten and Elliott ultimately admitted to Lucent's Chief Accountant that the credit and discount had been granted as part of LOA 105. However, those admissions came after Lucent had already included the full amount of revenue and operating income in a financial statement filed with the Commission.

### Effect of BellSouth Software Pooling Transaction on Lucent's Reported Financial Results

76.     Bratten and Elliott each acted with knowledge or recklessly engaged in the above described fraudulent conduct. As a result of their fraudulent conduct, Lucent violated GAAP by recording the entire $95 million as revenue and operating income from this transaction in its fourth quarter of fiscal year 2000. Lucent should only have recorded $74 million in total revenue and operating income due to the $20 million credit and 2 percent price discount (valued at $1 million). Bratten and Elliott's fraudulent conduct resulted in Lucent materially overstating pre-tax income by approximately 4 percent in its financial statements filed with the Commission in a Form 8-K on October 24, 2000. Bratten and Elliot knew, or were reckless in not knowing, that, as a result of their fraudulent conduct, Lucent filed materially false financial statements with the Commission in the Form 8-K.

### The Global Crossing Bill and Hold Transaction

77.     Lucent improperly recognized $58 million in revenue in March 2000 on the sale of optical networking equipment to Global Crossing Ltd. ("Global Crossing"). Lucent improperly characterized this transaction as a qualifying "bill and hold" transaction even though it did not in fact fulfill the requirements necessary under GAAP to allow revenue recognition on a bill and hold basis.

24

B2133

78.    In March 2000, Global Crossing agreed to purchase $58 million of optical networking equipment from Lucent by the end of the month -- which coincided with the end of Lucent's second quarter of fiscal year 2000.  Lucent did not, however, ship the equipment to Global Crossing or invoice Global Crossing for the equipment at that time. Instead, Lucent held the equipment in its warehouse and agreed to extend its payment terms to allow Global Crossing to pay for the equipment as it was installed into its network.

79.    GAAP allows revenue to be recognized on bill and hold transactions where the *buyer* requests the transaction on a bill and hold basis, and not where the seller induces the buyer to conduct the transaction as a bill and hold.  Here, Lucent, the seller, initiated the transaction.  Further, Lucent extended its normal billing terms to allow Global Crossing to pay for the equipment when it deployed the equipment in its network, indicating that Global Crossing did not need the equipment by March 31, 2000.

80.    As a result of a lack of sufficient internal controls, Lucent violated GAAP by recognizing $58 million of revenue in circumstances that failed to fulfill the requirements for revenue to be recognized on a bill and hold transaction.  The $58 million of revenue was improperly included in Lucent's Form 10-Q for the period ending March 31, 2000, and filed with the Commission on May 10, 2000.

### LTOS Transaction

81.    During Lucent's second quarter of fiscal year 2000, it sold equipment valued at approximately $90 million to Lucent Technologies of Shanghai, Ltd. ("LTOS") and recognized the full amount of revenue at that time.  However, the products had been

25

B2134

sold with unrestricted rights of return granted in a side-letter by Lucent's Vice President, Optical Network Group, China, to facilitate the establishment of that market.

82.    Due to a lack of sufficient internal controls, Lucent's CFO structure was unaware that LTOS had been granted a right of return in connection with the sale. As a result, Lucent violated GAAP by recognizing $90 million of revenue and $6 million of operating income in its second quarter of fiscal year 2000. These amounts were improperly included in Lucent's Form 10-Q for the period ending March 31, 2000, filed with the Commission on May 10, 2000. Lucent reversed the transaction in its fourth fiscal quarter of 2000, and therefore it was not included in Lucent's October 23, 2000 unaudited financial statements that were filed with the Commission in a Form 8-K on October 24, 2000.

### The Allegiance Telecom Transaction

83.    In September 2000, Allegiance Telecom, Inc. ("Allegiance") agreed to purchase $28 million worth of switching hardware and software from Lucent. On September 29, 2000, Allegiance sent Lucent a letter confirming receipt of the hardware, but did not confirm receipt of the software or installation of the hardware. Based on that letter, Lucent recognized $28 million in revenue on the transaction in its quarter ended September 30, 2000.

84.    The appropriate accounting treatment for the transaction was governed by Statement of Position 97-2, Software Revenue Recognition ("SOP 97-2"), since the transaction included the sale of software, as well as hardware and installation services. SOP 97-2 disallows revenue recognition on a multiple element arrangement, such as this

26

one, where certain elements have not been accepted and vendor specific objective evidence of the fair value of those elements has not been established.

85.    When Lucent recognized the revenue in September 2000, it had neither received an acceptance certificate for the software and installation services, nor did it have vendor specific objective evidence of the fair value of the software and installation services.   Because Lucent failed to fulfill all of the elements necessary for revenue recognition under SOP 97-2, it should have deferred recognition of any revenue on the transaction until all elements of the transaction were completed.

86.    Nevertheless, due to a lack of sufficient internal controls, Lucent violated GAAP by improperly recognizing $28 million in revenue from this transaction in its fourth quarter of fiscal year 2000.  That amount was included in Lucent's financial statements in a Form 8-K filed with the Commission on October 24, 2000.

## FIRST CLAIM FOR RELIEF

### Violation of Section 10(b) of the Exchange Act
### [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5]

87.    Paragraphs 1 through 86 are hereby realleged and incorporated herein by reference as if set forth fully.

88.    As set forth more fully above, defendants Lucent Technologies Inc., Nina Aversano, Jay Carter, Leslie Dorn, William Plunkett, John Bratten, Deborah Harris, Charles Elliott, Vanessa Petrini, and Michelle Hayes-Bullock, directly or indirectly, by use of the means or instrumentalities of interstate commerce, or of the mails, or of any facility of a national exchange, in connection with the purchase or sale of Lucent securities, have, with knowledge or recklessly, (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact or omitted to state

27

**B2136**

material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices, and courses of business which operate or would operate as a fraud or deceit upon any person.

89.    By reason of the foregoing, defendants Lucent Technologies Inc., Nina Aversano, Jay Carter, Leslie Dorn, William Plunkett, John Bratten, Deborah Harris, Charles Elliott, Vanessa Petrini, and Michelle Hayes-Bullock have violated Section 10(b) of the Exchange Act and Rule 10b-5.

90.    In addition, and, in the alternative, Nina Aversano, Jay Carter, Leslie Dorn, John Bratten, Charles Elliott, and Michelle Hayes-Bullock knowingly provided substantial assistance to Lucent in violation of Section 10(b) of the Exchange Act and Rule 10b-5 and are each liable as aiders and abetters of these violations.

## SECOND CLAIM FOR RELIEF

### Aiding and Abetting Violation of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] (Ackerman)

91.    Paragraphs 1 through 90 are hereby realleged and incorporated herein by reference as if set forth fully.

92.    As detailed above, David Ackerman acted with knowledge or recklessly, and thereby knowingly provided substantial assistance to Lucent in violation of Section 10(b) of the Exchange Act and Rule 10b-5.

93.    By reason of the foregoing, Ackerman aided and abetted Lucent's violation of Section 10(b) of the Exchange Act and Rule 10b-5.

## THIRD CLAIM FOR RELIEF

### Violation of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-11, and 13a-13

28

B2137

**[17 C.F.R. §§ 240.12b-20, 240.13a-11, and 240.13a-13]**

94.    Paragraphs 1 through 93 are hereby realleged and incorporated herein by reference as if set forth fully.

95.    By engaging in the conduct described above, Lucent filed materially false and misleading financial statements with the Commission in Forms 10-Q for the first three quarters of its fiscal year 2000 and in a Form 8-K filed on October 24, 2000 with regard to its fourth quarter results.

96.    By reason of the foregoing, Lucent violated Section 13(a) of the Exchange Act and Rules 12b-20, 13a-11, and 13a-13.

97.    By engaging in the conduct described above, Nina Aversano and Leslie Dorn caused Lucent to file materially false and misleading financial statements with the Commission in Forms 10-Q for the first two quarters of its fiscal year 2000; Nina Aversano, Leslie Dorn, Jay Carter, and Michelle Hayes-Bullock caused Lucent to file materially false and misleading financial statements with the Commission in a Form 10-Q for the third quarter of its fiscal year 2000; and Nina Aversano, Leslie Dorn, William Plunkett, John Bratten, Deborah Harris, Charles Elliott, Vanessa Petrini, and David Ackerman caused Lucent to file materially false and misleading financial statements with the Commission in a Form 8-K filed on October 24, 2000 with regard to its fourth quarter results.

98.    By reason of the foregoing, Nina Aversano, Jay Carter, Leslie Dorn, William Plunkett, John Bratten, Deborah Harris, Charles Elliott, Vanessa Petrini, Michelle Hayes-Bullock, and David Ackerman knowingly provided substantial assistance

29

B2138

to Lucent and each aided and abetted Lucent's violation of Section 13(a) of the Exchange Act and Rules 12b-20 and 13a-11.

99.    Additionally, by engaging in the conduct described above, Nina Aversano, Jay Carter, Leslie Dorn, and Michelle Hayes-Bullock knowingly provided substantial assistance to Lucent and each also aided and abetted Lucent's violation of Rule 13a-13 of the Exchange Act.

### FOURTH CLAIM FOR RELIEF

### Violation of Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act
### [15 U.S.C. §§ 78m(b)(2)(A) and 78m(b)(2)(B)]

100.    Paragraphs 1 through 99 are hereby realleged and incorporated herein by reference as if set forth fully.

101.    By engaging in the conduct described above, Lucent failed to keep books, records, and accounts which accurately and fairly reflected the transactions and disposition of its assets, in violation of Section 13(b)(2)(A) of the Exchange Act, and failed to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that Lucent's corporate transactions were executed in accordance with management's authorization and in a manner to permit the preparation of financial statements in conformity with generally accepted accounting principles in violation of Section 13(b)(2)(B) of the Exchange Act.

102.    By reason of the foregoing, Lucent violated Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act.

103.    By engaging in the conduct described above, Nina Aversano, Jay Carter, Leslie Dorn, William Plunkett, John Bratten, Deborah Harris, Charles Elliott, Vanessa Petrini, Michelle Hayes-Bullock, and David Ackerman aided and abetted Lucent's

B2139

failures to keep books, records, and accounts which accurately and fairly reflected the transactions and disposition of its assets, in violation of Section 13(b)(2)(A) of the Exchange Act, and further aided and abetted Lucent's failures to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that Lucent's corporate transactions were executed in accordance with management's authorization and in a manner to permit the preparation of financial statements in conformity with GAAP in violation of Section 13(b)(2)(B) of the Exchange Act.

104.   By reason of the foregoing, Nina Aversano, Jay Carter, Leslie Dorn, William Plunkett, John Bratten, Deborah Harris, Charles Elliott, Vanessa Petrini, Michelle Hayes-Bullock, and David Ackerman knowingly provided substantial assistance to Lucent and each aided and abetted Lucent's violation of Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act.

## FIFTH CLAIM FOR RELIEF

### Violation of Section 13(b)(5) of the Exchange Act
[15 U.S.C. § 78m(b)(5)] and Rule 13b2-1 [17 C.F.R. § 240.13b2-1]

105.   Paragraphs 1 through 104 are hereby realleged and incorporated herein by reference as if set forth fully.

106.   By engaging in the conduct described above, Nina Aversano, Jay Carter, Leslie Dorn, William Plunkett, John Bratten, Deborah Harris, Charles Elliott, Vanessa Petrini, and Michelle Hayes-Bullock each knowingly circumvented Lucent's system of internal accounting controls and each knowingly falsified, or caused to be falsified, Lucent's books and records.  In so doing, they each violated Section 13(b)(5) of the Exchange Act and Rule 13b2-1.

31

B2140

## SIXTH CLAIM FOR RELIEF

### Violation of Rule 13b2-2 [17 C.F.R. § 240.13b2-2]
### (Aversano)

107.    Paragraphs 1 through 106 are hereby realleged and incorporated herein by reference as if set forth fully.

108.    By engaging in the conduct described above, Nina Aversano directly or indirectly made or caused to be made materially false or misleading statements or omitted or caused others to omit to state material facts necessary in order to make statements made, in light of the circumstances under which such statements were made, not misleading to accountants in connection with audits or examinations of Lucent's required financial statements or in connection with the preparation and filing of documents and reports required to be filed with the Commission, in violation of Exchange Act Rule 13b2-2.

109.    By reason of the foregoing, Aversano violated Exchange Act Rule 13b2-2.

### PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court enter final judgments:

A.    Permanently restraining and enjoining Lucent Technologies Inc. from violating Sections 10(b), 13(a), 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act and Rules 10b-5, 12b-20, 13a-11, and 13a-13;

B.    Permanently restraining and enjoining Nina Aversano, Jay Carter, Leslie Dorn, John Bratten, Charles Elliott, and Michelle Hayes-Bullock from violating, or aiding and abetting violations of, Section 10(b) of the Exchange Act and Rule 10b-5, from violating Section 13(b)(5) of the Exchange Act and Rule 13b2-1, and from aiding

B2141

and abetting violations of Sections 13(a), 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act and Rules 12b-20 and 13a-11;

C.    Permanently restraining and enjoining William Plunkett, Deborah Harris, and Vanessa Petrini from violating Sections 10(b) and Section 13(b)(5) of the Exchange Act and Rules 10b-5 and Rule 13b2-1, and from aiding and abetting violations of Sections 13(a), 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act and Rules 12b-20 and 13a-11;

D.    Permanently restraining and enjoining Nina Aversano from violating Rule 13b2-2;

E.    Permanently restraining and enjoining Nina Aversano, Jay Carter, Leslie Dorn, and Michelle Hayes-Bullock from aiding and abetting violations of Rule 13a-13;

F.    Permanently restraining and enjoining David Ackerman from aiding and abetting violations of Sections 10(b), 13(a), 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act and Rules10b-5, 12b-20, and 13a-11;

G.    Pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. §78u(d)(2)], barring Nina Aversano, Jay Carter, William Plunkett, and Deborah Harris from acting as an officer or director of any issuer that has a class of securities registered under Section 12 of the Exchange Act [15 U.S.C. §78l] or that is required to file reports under Section 15(d) of the Exchange Act [15 U.S.C. §78o];

H.    Ordering Lucent Technologies Inc., Nina Aversano, Jay Carter, Leslie Dorn, William Plunkett, John Bratten, Deborah Harris, Charles Elliott, Vanessa Petrini, Michelle Hayes-Bullock, and David Ackerman to disgorge ill-gotten gains, with

33

prejudgment interest, including, but not limited to, salaries and other benefits wrongfully obtained as a result of their fraudulent conduct;

I.    Ordering Lucent Technologies Inc., Nina Aversano, Jay Carter, Leslie Dorn, William Plunkett, John Bratten, Deborah Harris, Charles Elliott, Vanessa Petrini, Michelle Hayes-Bullock, and David Ackerman to pay civil penalties pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. §78u(d)(3)]; and

J.    Granting such other additional relief as this Court may deem just and proper.

Dated: May 17, 2004                    Respectfully submitted,


_____
Mark A. Adler  MA8703
Paul R. Berger
Richard W. Grime
Charles E. Cain
Attorneys for Plaintiff
Securities and Exchange Commission
450 Fifth St., N.W.
Washington, D.C. 20549-0911
(202) 942-4770 (Adler)
(202) 942-9581 (Fax)

34

B2143