# RICHARDS, LAYTON & FINGER

A PROFESSIONAL ASSOCIATION
ONE RODNEY SQUARE
920 NORTH KING STREET
WILMINGTON, DELAWARE 19801
(302) 651-7700
FAX (302) 651-7701
WWW.RLF.COM

DANIEL J. DEFRANCESCHI
DIRECTOR

DIRECT DIAL NUMBER
302-651-7816
DEFRANCESCHI@RLF.COM

August 30, 2006

**Via Hand Delivery**

The Honorable Joseph J. Farnan, Jr.
United States District Court
for the District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street, Room 4124
Lockbox 27
Wilmington, DE 19801

Re:   Shubert v. Lucent, No. 06-147

Dear Judge Farnan:

I am witting on behalf of Lucent Technologies, Inc., appellant in the above-captioned matter, to call this Court's attention to a recently-decided decision that bears on issues raised in this appeal. On August 28, 2006, the Third Circuit issued its decision in Scarborough v. Chase Manhattan Mortgage Corp., No. 04-4298. A copy of the opinion is enclosed. The discussion in the opinion of Section 506(a)(1) of the Bankruptcy Code, and the bifurcation of claims that are partially secured into secured and unsecured portions (see slip op. at 6), relates to points made in Lucent's opening briefs at pp. 43-44; the Trustee's responsive brief at pp. 40, 44, 46-47; and Lucent's reply brief at 16-17.

In addition, the court's reliance on the "plain meaning" of the Bankruptcy Code as a basis for reversing the district court's decision (see slip op. at 8-10, 15-16) relates to points made in Lucent's opening brief at 25, and its reply brief at 3-4.

Respectfully,

Daniel J. DeFranceschi/lma
Daniel J. DeFranceschi

DJD/JMM/lma
Enclosure

RLF1-3053495-1

The Honorable Joseph J. Farnan, Jr.
August 30, 2006
Page 2


cc:    Sheldon K. Rennie, Esq. (w/enc., via Hand Delivery)
       Michael G. Menkowitz, Esq. (w/enc., via Hand Delivery)
       Stephen M. Rathkopf, Esq. (w/enc., via First Class Mail)
       David R. King, Esq. (w/enc., via First Class Mail)
       Paul C. Saunders, Esq. (w/enc. via First Class Mail)
       Philip D. Anker, Esq. (w/enc. via First Class Mail)
       Craig T. Goldblatt, Esq. (w/enc. via First Class Mail)
       Jason M. Madron, Esq. (w/enc.)

RLF1-3053495-1

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-4298

IN RE: FRANCES SCARBOROUGH,

FRANCES SCARBOROUGH,
Appellant

v.

CHASE MANHATTAN MORTGAGE CORPORATION

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Misc. No. 03-mc-00228)
District Judge: James McGirr Kelly)

Argued July 27, 2006
Before: RENDELL, AMBRO and ROTH, Circuit Judges.

(Filed: August 28, 2006)

Frances Scarborough   [ARGUED]
5116 North Warnock Street
Philadelphia, PA 19141
   *Pro Se Litigant*

Scott F. Waterman
Black, Stranick & Waterman
327 West Front Street
P.O. Box 168
Media, PA 19063

Irwin Trauss   [ARGUED]
Philadelphia Legal Assistance
1424 Chestnut Street, 2nd Floor
Philadelphia, PA 19102
   *Counsel for Amicus-Appellant*
   *National Association of Consumer*
   *Bankruptcy Attorneys*

Kristina G. Murtha   [ARGUED]
Leslie E. Smilas-Puida
Goldbeck, McCafferty & McKeever
701 South Market Street
Mellon Independence Center, Suite 5000
Philadelphia, PA 19106
   *Counsel for Appellee*

OPINION OF THE COURT

RENDELL, Circuit Judge.

In this appeal, we must determine whether a mortgage on a multi-unit dwelling in which the debtor resides qualifies for the anti-modification protection afforded by 11 U.S.C. § 1322(b)(2). That provision protects a mortgagee from having its claim in a Chapter 13 bankruptcy proceeding modified if the mortgage is secured "only by a security interest in real property that is the debtor's principal residence." We conclude that a mortgage secured by property that includes, in addition to the debtor's principal residence, other income-producing rental property is secured by real property *other than* the debtor's principal residence and, thus, that modification of the mortgage is permitted. Consequently, we will reverse the order of the District Court affirming the order of the Bankruptcy Court and remand the case for further proceedings consistent with this opinion.

I.

The facts relevant to this appeal are not in dispute. On May 10, 1988, Appellant Frances Scarborough signed a mortgage ("Mortgage") in favor of Meritor Savings Bank, granting a mortgage lien against her property located at 5116 North Warnock Street, Philadelphia, Pennsylvania ("Property"). The Mortgage secured a note to Meritor Savings Bank executed on the same date in the amount of $30,400.00. The parties agree that the Mortgage was thereafter assigned and that Chase

3

Manhattan Mortgage Corp. is the current holder of the Mortgage.

Scarborough sought protection under Chapter 13 of the Bankruptcy Code on October 31, 2001. In her proceedings, she filed a complaint seeking to bifurcate the claim of Chase Manhattan into a secured claim and an unsecured claim pursuant to 11 U.S.C. § 506(a) and to determine the correct amount of the mortgage arrearage. Scarborough subsequently filed an amended complaint to revise the alleged amounts of the secured and unsecured portions of Chase Manhattan's claim, and to bifurcate Chase Manhattan's lien on her residence to reflect the current market value of the property, with the remainder of the debt becoming unsecured. The Bankruptcy Court held a trial on this adversary proceeding and concluded that Scarborough was barred from bifurcating the secured claim of Chase Manhattan pursuant to the "anti-modification" provision of 11 U.S.C. § 1322(b)(2). The District Court affirmed the ruling of the Bankruptcy Court.

The form of the Mortgage is a "Pennsylvania – Single Family – FNMA/FHLMC Uniform Instrument," which contains a conveyance clause that grants the lender an interest in the Property, as well as "all the improvements now or hereafter erected on the [P]roperty, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the [P]roperty." On the same day that Scarborough executed the Mortgage, she also signed a "2-4 Family Rider (Assignment of Rents)" to "amend and supplement the Mortgage" and further secure her note to Meritor Savings Bank.

4

The Family Rider provides that "Borrower unconditionally assigns and transfers to Lender all rents and revenues of the Property" and that, "[u]pon Lender's request, Borrower shall assign to Lender all leases of the Property."

The Property is a two-story semi-detached residence that was converted to a multi-unit dwelling prior to Scarborough's purchase, with one apartment on the first floor and one apartment on the second floor. Scarborough lives on the first floor of the Property and rents the second floor apartment to a tenant pursuant to a lease agreement. She testified at trial that she purchased the Property with the intent of living in one unit and renting the other, and with a goal of eventually acquiring other investment properties. Scarborough further testified that she informed the bank she was buying the Property, in part, as an investment.

Scarborough testified at trial that the value of the Property was $13,000.00. Chase Manhattan submitted the City of Philadelphia's Board of Revision of Taxes Property Record, which listed the value of the Property as $26,500.00. Scarborough has appealed the Board of Revision of Taxes' valuation, but her appeal had not been decided as of the date of trial.

II.

The District Court had jurisdiction over Scarborough's appeal from the Bankruptcy Court pursuant to 28 U.S.C. § 158(a). We have jurisdiction under 28 U.S.C. § 158(d). Our standard of review is plenary because the issues before us

5

involve statutory interpretation and conclusions of law. *In re Cellnet Data Sys., Inc.*, 327 F.3d 242, 244 (3d Cir. 2003).

### III.

The normal rule in bankruptcy is that a claim that is secured by a lien on property is treated as a secured claim "only to the extent of the value of the property on which the lien is fixed." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 239 (1989). To the extent that the amount of the claim is greater than the value of the property, it is considered unsecured. 11 U.S.C. § 506(a)(1).[1] "Thus, a claim that is not

---

[1]Section 506(a)(1) states in pertinent part:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim.

6

fully collateralized can be modified, and the creditor said to be 'crammed down' to the value of the collateral." *In re Ferandos*, 402 F.3d 147, 151 (3d Cir. 2005).

Section 1322(b)(2) of the Bankruptcy Code carves out an exception to this general rule. That provision permits a debtor in a Chapter 13 case to "modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence*, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." 11 U.S.C. § 1322(b)(2) (emphasis added). The purpose of § 1322(b)(2) is "to encourage the flow of capital into the home lending market" by affording anti-modification protection to home mortgage lenders. *Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 331 (1993) (Stevens, J., concurring); *see also Ferandos*, 402 F.3d at 151 ("The legislative history of § 1322(b)(2) 'indicates that it was designed to protect and promote the increased production of homes and to encourage private individual ownership of homes . . . .'" (quoting *In re David*, 989 F.2d 208, 210 (6th Cir. 1993))).

Scarborough argues there are two reasons that the anti-modification protection of § 1322(b)(2) does not apply here. First, she contends that the Mortgage and Family Rider grant Chase Manhattan an interest in collateral that is not real property, namely, rents derived from the Property. Second, she

---

11 U.S.C. § 506(a)(1).

7

argues that the anti-modification provision does not apply to a claim secured by a multi-unit property in which one unit is the debtor's principal residence and the other is an income-producing rental unit.

### A.

We have little trouble rejecting Scarborough's first argument based on our reasoning in *Ferandos*. We look to state law to determine whether rents are deemed to be real property. *Ferandos*, 402 F.3d at 155. Under Pennsylvania law, real property is defined to include rents. *See* 21 Pa. Cons. Stat. Ann. § 3 (West 2001); *In re Abruzzo*, 245 B.R. 201, 209 (Bankr. E.D. Pa. 1999), *vacated on other grounds,* 2000 WL 420635 (E.D. Pa. Apr. 10, 2000); *Marine Nat'l Bank v. Nw. Pennsylvania Bank & Trust Co.*, 454 A.2d 67, 70 (Pa. Super. Ct. 1982). "Accordingly, the grant of an interest in rents does not render the claim secured by anything other than the real property." *Ferandos*, 402 F.3d at 155. Thus, Chase Manhattan is not denied the protection of § 1322(b)(2) merely because it took an interest in rents derived from the Property.

### B.

Scarborough's second argument presents a question of first impression for our Court: whether a claim secured by an interest in real property that includes the debtor's principal residence *as well as* other income-producing rental property is "a claim secured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2). Based on the plain language of § 1322(b)(2), we conclude that

8

a creditor does not receive anti-modification protection for a claim secured by real property that includes both the debtor's principal residence and other rental property that is not the debtor's principal residence.

By using the word "is" in the phrase "real property that *is* the debtor's principal residence," Congress equated the terms "real property" and "principal residence." Put differently, this use of "is" means that the real property that secures the mortgage must *be only* the debtor's principal residence in order for the anti-modification provision to apply. We thus agree with the reasoning of the Bankruptcy Court for the District of Connecticut when it noted that § 1322(b)(2) "protects claims secured only by a security interest in real property that *is* the debtor's principal residence, not real property that *includes* or *contains* the debtor's principal residence, and not real property *on which the debtor resides*." *In re Adebanjo*, 165 B.R. 98, 104 (Bankr. D. Conn. 1994). A claim secured by real property that is, even in part, *not* the debtor's principal residence does not fall under the terms of § 1322(b)(2). Consequently, "real property which is designed to serve as the principal residence not only for the debtor's family but for other families is not encompassed by the clause." *Id.*; *see also In re Maddaloni*, 225 B.R. 277, 280 (D. Conn. 1998) ("[T]he use of 'is' without any modifier (*e.g.*, 'in whole' or 'in part') does not evince an intent by Congress to apply the antimodification provision to real property that includes, but is more than, a debtor's residence."); *In re McGregor*, 172 B.R. 718, 720 (Bankr. D. Mass. 1994) (relying on plain language of § 1322(b)(2) to permit modification of claim secured by "the debtor's residence and property which has 'inherently income producing' power"); *In*

9

*re Legowski*, 167 B.R. 711, 714 (Bankr. D. Mass. 1994) (same).

This analysis is consistent with our pattern in previous cases of reading § 1322(b)(2) literally and narrowly. "On the several occasions that we have had the opportunity to apply § 1322(b)(2), we have focused on the plain language of the section . . . ." *Ferandos*, 402 F.3d at 151; *see also id.* at 154 ("We note . . . that our Court's reasoning to date has followed what we might describe as a plain meaning approach to our application of [§ 1322(b)(2)]. That is, . . . we have read section 1322(b)(2) to mean what its language literally states . . . ."). Thus, we have repeatedly rejected a *de minimis* exception to § 1322(b)(2) and consistently held that a creditor who takes a security interest in *any* collateral that is not real property does not receive anti-modification protection. *See In re Johns*, 37 F.3d 1021, 1024 (3d Cir. 1994); *In re Hammond*, 27 F.3d 52, 56-57 (3d Cir. 1994); *Sapos v. Provident Inst. of Sav.*, 967 F.2d 918, 925 (3d Cir. 1992); *In re Wilson*, 895 F.2d 123, 128-29 (3d Cir. 1990). Likewise, we have eschewed reliance on legislative intent in analyzing § 1322(b)(2), *Ferandos*, 402 F.3d at 155, and have also held that the subjective intent of the parties is irrelevant under the provision, *Wilson*, 895 F.2d at 129.

Where the anti-modification protection of § 1322(b)(2) is at issue, our sole concerns are (1) whether the claim is secured only by real property, and (2) whether the real property is the debtor's principal residence. Just as a creditor who takes *any* interest in personal property forfeits the benefit of § 1322(b)(2), so does a creditor whose claim is secured by *any* real property that is not the debtor's principal residence. If a mortgage includes language that "is effective to grant an interest

10

in such collateral, the mortgagee is at its peril in not deleting it." *Ferandos*, 402 F.3d at 155.

One objection to this reading of § 1322(b)(2) is that "a debtor could easily sidestep the . . . home mortgage exception by adding a second living unit to the property on the eve of the commencement of his Chapter 13 proceeding." *In re Bulson*, 327 B.R. 830, 846 (Bankr. W.D. Mich. 2005); *see also In re Guilbert*, 176 B.R. 302, 305 (D.R.I. 1995) (arguing that, under the approach we adopt, "homeowners poised to file for protection under Chapter 13 would, as a matter of course, seek temporary tenants prior to their filing"). However, for purposes of § 1322(b)(2), the critical moment is when the creditor takes a security interest in the collateral. "It is at that point in time that the underwriting decision is made and it is therefore at that point in time that the lender must know whether the loan it is making may be subject to modification in a Chapter 13 proceeding at some later date." *Bulson*, 327 B.R. at 846.

We have noted that, when considering whether a mortgagee has taken a security interest in any property other than real property, we look to the terms of the mortgage. *See Ferandos*, 402 F.3d at 155 ("[T]he language [of the mortgage] and its effect [are] key . . . ."); *Wilson*, 895 F.2d at 129 ("Having listed personal property as collateral, [the creditor] has a secured interest in it."). Similarly, here, we look to the character of the collateral at the time of the mortgage transaction. When a mortgagee takes an interest in real property that includes, by its nature at the time of transaction, income-producing rental property, the mortgage is also secured by property that is not the debtor's principal residence and the claim may be modified in

11

a debtor's later Chapter 13 proceeding. A mortgage secured by an interest in a multi-unit dwelling, one unit of which will be used to generate income, falls within this category of modifiable claims.[2]

There is no question in the instant case that the Mortgage and Family Rider granted Chase Manhattan an interest in real property that was not the debtor's residence. Chase Manhattan cannot, and does not, claim surprise, as it was well aware that

---

[2]For purposes of bankruptcy cases commenced after October 17, 2005, a "debtor's principal residence" is defined as "a residential structure, including incidental property, without regard to whether that structure is attached to real property." Bankruptcy Abuse Prevention and Consumer Protection Act, Pub. L. 109-8, § 306(c) (2005) (codified at 11 U.S.C. § 101(13A)). In such cases, "incidental property" includes "property commonly conveyed with a principal residence in the area where the real property is located." *Id.* (codified at 11 U.S.C. § 101(27A)). We need not decide whether a rental unit located in a multi-unit dwelling could fit within this definition of "incidental property," and therefore be part of a debtor's principal residence under 11 U.S.C. § 101(13A). Because Scarborough commenced the instant case four years prior to their effective date, these statutory definitions do not apply here. *See* Bankruptcy Abuse Prevention and Consumer Protection Act § 1501(a). Consequently, we leave for another day the question of whether, or how, the Bankruptcy Abuse Prevention and Consumer Protection Act altered the scope of the anti-modification provision of § 1322(b)(2).

the Property was a multi-unit dwelling and that Scarborough would occupy only one of the units while she rented the other. This was precisely why Chase Manhattan required Scarborough to execute the Family Rider, which included an assignment of leases and an assignment of rents. We have no hesitation in concluding that Chase Manhattan's claim is not "secured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2).

We recognize that other courts have found the language of § 1322(b)(2) to be less than clear. Most notably, the Court of Appeals for the First Circuit concluded that "[t]he 'plain meaning' approach to § 1322(b)(2) appears . . . to be, in the end, inconclusive." *Lomas Mortgage, Inc. v. Louis*, 82 F.3d 1, 4 (1st Cir. 1996); *see also Bulson*, 327 B.R. at 839 ("Congress left undefined the phrase 'real property that is the debtor's principal residence.'"). Accordingly, the *Lomas* Court turned to legislative history for guidance in interpreting § 1322(b)(2). Although we do not believe that the text of § 1322(b)(2) is ambiguous, and therefore need not rely on legislative history to resolve this case, the reasoning of *Lomas* further bolsters our conclusion that Chase Manhattan should not receive anti-modification protection.

The *Lomas* Court resolved the textual ambiguity it perceived in § 1322(b)(2) by examining the legislative history of the Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, 108 Stat. 4106 (1994), which amended Chapter 11 of the Bankruptcy Code. *Lomas*, 82 F.3d at 6. Among the changes that the Act made to Chapter 11 was to add a home mortgage anti-modification provision that is identical to § 1322(b)(2). *See*

13

11 U.S.C. § 1123(b)(5) (permitting a Chapter 11 debtor to "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence"). With the addition of this provision, Congress sought to "conform[] the treatment of residential mortgages in [C]hapter 11 to that in [C]hapter 13." H.R. Rep. No. 835, at 46 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3354.

The House Judiciary Committee's Report on the Act stated that § 1123(b)(5) "does not apply to a commercial property, or to any transaction in which the creditor acquired a lien on property other than real property used as the debtor's residence." H.R. Rep. No 835, at 46. To support this proposition, the Committee cited *In re Ramirez*, 62 B.R. 668 (Bankr. S.D. Cal. 1986). *Id.* at 46 n.13. The *Lomas* Court believed that the reliance on *Ramirez* was significant because that case "squarely holds that the antimodification provision of § 1322(b)(2) does not apply to multi-unit houses where the security interest extends to the rental units." *Lomas*, 82 F.3d at 7; *see also Ramirez*, 62 B.R. at 669-70. The citation to *Ramirez* was a "clear expression of congressional intent" that anti-modification protection should not be afforded in Chapter 11 to mortgages on multi-unit dwellings. *Lomas*, 82 F.3d at 7. Because Congress intended to give the same anti-modification protection to residential mortgages in Chapter 11 as in Chapter 13, the *Lomas* Court concluded that this expression of legislative intent applied to § 1322(b)(2) as well as § 1123(b)(5). *Id.*

The Committee Report's citation to *Ramirez* undoubtedly

14

supports our conclusion that where a creditor's "security interest extends to . . . rental property[,]" the creditor's "claim is not secured only by property that is the debtor's principal residence." *Ramirez*, 62 B.R. at 670. Though we believe that the plain language of § 1322(b)(2) leads to this result, the legislative history on which *Lomas* relied is further evidence that our conclusion is consistent with congressional intent.

A handful of courts have found that the text of § 1322(b)(2) is clear, but that it clearly says the opposite of what we conclude, namely, that the word "is" means "includes." Under this reading, the anti-modification provision does not exclude other uses of the property besides the debtor's principal residence. *See In re Macaluso*, 254 B.R. 799, 800 (Bankr. W.D.N.Y. 2000) ("[T]he statute does not limit its application to property that is used *only* as a principal residence, but refers generally to any parcel of real property that the debtor uses for that purpose."); *Guilbert*, 176 B.R. at 306 ("[T]he language of § 1322(b)(2) 'does not say, nor does it in any way imply that if the debtor's principal residence is also used to house other tenants, paying or otherwise, that [the mortgagee's claim] may be open to modification by the home owner.'" (alteration in original) (quoting *In re Guilbert*, 165 B.R. 88, 89 (Bankr. D.R.I. 1994))).

Yet another line of decisions adopts a case-by-case approach to the issue of whether a mortgage receives anti-modification protection. In these cases, courts have employed a flexible, multi-factor test to determine whether the parties intended the loan to be residential or commercial in nature at the time it was made. Loans that are commercial in nature may be

15

modified, whereas residential loans may not. *See Litton Loan Servicing, LP v. Beamon*, 298 B.R. 508, 511-12 (N.D.N.Y. 2003); *In re Brunson*, 201 B.R. 351, 353 (Bankr. W.D.N.Y. 1996). Both the District Court and Bankruptcy Court followed this approach.

Our reasons for not adopting the positions expressed in these cases should be evident from our discussion above. In our view, the plain language of § 1322(b)(2) equates the real property that collateralizes a mortgage with a debtor's principal residence. Where a creditor takes an interest in real property that is *not* the debtor's principal residence, such as property that will be used as income-generating rental property, the anti-modification provision does not apply. We also believe that the multi-factor test introduces uncertainty and unpredictability to residential mortgage transactions because it requires courts to engage in a subjective, hindsight analysis as to the intent of the parties. Not only is such uncertainty harmful to the residential lending market, *see Bulson*, 327 B.R. at 842, it is unnecessary in light of the plain language of § 1322(b)(2).

IV.

A claim that is secured by any interest in personal property or real property that is not the debtor's principal residence may be modified in a Chapter 13 bankruptcy. Because Chase Manhattan took an interest in real property that was income-producing rental property, not Scarborough's principal residence, its claim can be modified. Accordingly, we will reverse the order of the District Court affirming the order of the Bankruptcy Court and remand the case for further

16

proceedings consistent with this opinion.

17