IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 7 |
| | : | |
| WINSTAR COMMUNICATIONS, INC., ET AL., | : | Bankruptcy Case NO. 01-01430-KJC |
| | : | |
| Debtors. | : | |
| | : | |
| LUCENT TECHNOLOGIES, INC., | : | |
| | : | Adversary No. 01-01063-KJC |
| Appellant, | : | |
| | : | |
| v. | : | Civil Action No. 06-147-JJF |
| | : | |
| CHRISTINE C. SHUBERT, CHAPTER 7 TRUSTEE, | : | |
| | : | |
| Appellee. | : | |

Paul C. Saunders, Esquire, Daniel Slifkin, Esquire and Michael A. Paskin, Esquire of CRAVATH, SWAINE & MOORE LLP, New York, New York.
Seth P. Waxman, Esquire, Craig Goldblatt, Esquire, Danielle Spinelli, Esquire and Michelle Glassman Bock, Esquire of WILMER CUTLER PICKERING HALE AND DORR LLP, Washington, DC.
Paul N. Heath, Esquire, Jason Michael Madron, Esquire, and Daniel J. DeFranceschi, Esquire of RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware.

Attorneys for Appellant.

David R. King, Esquire, Stephen M. Rathkopf, Esquire and Andrew C. Gold, Esquire of HERRICK, FEINSTEIN LLP, New York, New York.
Sheldon Kevin Rennie, Esquire of FOX ROTHSCHILD LLP, Wilmington, Delaware.

Attorneys for Appellee.

---

**MEMORANDUM OPINION**

April 26, 2007
Wilmington, Delaware

*Joseph J Farnan Jr.* (signature)

**Farnan, District Judge**

Pending before the Court is an appeal filed by Lucent Technologies, Inc. ("Lucent") from the December 28, 2005 Order of the United States Bankruptcy Court for the District of Delaware, entering judgment in favor of Christine C. Shubert (the "Trustee"). For the reasons set forth below, the Court will affirm the Bankruptcy Court's Order.

**I.   PARTIES' CONTENTIONS**

Lucent raises three issues on appeal. The Court has considered the parties' contentions concerning each issue and reached the following conclusions.

   A.   <u>Count X: Preference</u>

Lucent contends that the Bankruptcy Court erroneously awarded the Trustee the recovery of a preferential payment. Specifically, Lucent contends that the Bankruptcy Court erred in finding it was an insider of Winstar at the time of the transfer of the payment in question because Lucent did not exercise managerial control over Winstar. In this regard, Lucent contends that the Bankruptcy Court erred in drawing an adverse inference from the testimony of two former Lucent employees who invoked their rights under the Fifth Amendment. Additionally, Lucent contends that the payment at issue was not a transfer of Winstar's property because the funds were earmarked for Lucent. Finally, Lucent contends that the Bankruptcy Court erred in rejecting its new value defense.

In response, the Trustee contends that the Bankruptcy Court properly concluded that the elements of a preferential payment were met because Lucent was an insider under the statutory and non-statutory definitions, and the payment was a transfer of Winstar's property. The Trustee further contends that Lucent waived its earmarking defense by failing to raise it in its Answer or pretrial submissions and, in the alternative, that the Bankruptcy Court correctly found that the payment was not earmarked for Lucent. Finally, the Trustee contends that the Bankruptcy Court properly concluded that Lucent failed to meet its burden to prove it provided new value under Section 547(c)(4) of the Bankruptcy Code.

B.   Count XI: Equitable Subordination

Lucent contends that the Bankruptcy Court erroneously subordinated its claims against the Winstar estate by: 1) improperly determining that Lucent was an insider of Winstar; 2) applying the doctrine punitively rather than remedially by failing to quantify the harm; and 3) subordinating Lucent's claims to the interests of equity holders in contravention of Bankruptcy Code § 510(c).

In response, the Trustee contends that the Bankruptcy Court properly subordinated Lucent's claims because, regardless of whether Lucent is an insider, its conduct was sufficiently egregious to warrant a finding of inequitable conduct to justify subordination. The Trustee further contends that the Bankruptcy

2

Court adequately quantified the harm and Lucent failed to prove that the harm did not exceed the amount of escrowed funds. Additionally, the Trustee contends that the Bankruptcy Court correctly interpreted Section 510(c) to allow subordination of Lucent's claims to the interests of equity holders.

    C.    Count VII: Breach of Subcontract

Lucent contends that the Bankruptcy Court erred in finding that the Subcontract between Lucent and Wireless was modified by the parties' course of conduct and breached by Lucent. Specifically, Lucent contends, for the first time on this appeal, that there was a waiver of the original Subcontract rather than a modification. Lucent further contends that even if there was no waiver, there was no modification by course of conduct because the Subcontract contained an enforceable express prohibition on oral modifications. Lucent contends that, even if the terms of the contract were modified, it did not breach the contract because Winstar made a request for a loan rather than submit a "Task Order" that would have given rise to Lucent's obligation to pay under the Subcontract. Additionally, Lucent argues in a footnote that the Bankruptcy Court erroneously determined that the subcontract issue was a core matter within its jurisdiction.

In response, the Trustee contends that the Bankruptcy Court correctly concluded that the contract was modified by the parties' course of conduct and, as modified, was breached by Lucent. Specifically, the Trustee contends that Lucent's waiver

3

argument is time-barred as it is raised for the first time here, and even if not barred, is not supported by the record evidence. The Trustee further contends that New York law allows a modification of a contract by course of conduct even where a "no oral modifications" clause is present.

## II. STANDARD OF REVIEW

The Court has jurisdiction to hear appeals from the Bankruptcy Court pursuant to 28 U.S.C. §158(a). The appellate responsibilities of this Court are further defined by the jurisdiction exercised by the Third Circuit, which focuses and reviews the Bankruptcy Court decision on a de novo basis in the first instance. Baroda Hiss Inv., Inc. v. Telegroup Inc., 281 F.3d 133, 136 (3d Cir. 2002).

## III. DISCUSSION

### A. Whether The Bankruptcy Court Erred In Awarding The Trustee Recovery Of The Preferential Payment

Section 547(b) of the Bankruptcy Code reads in pertinent part: "The trustee may avoid any transfer of an interest of the debtor in property. . made. . . between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider. . .." 11 U.S.C. § 547(b)(4)(b). The payment at issue is $188.2 million in proceeds from a loan made to Winstar by Siemens and transferred to Lucent the same day, more than ninety days but less than one year before Winstar's bankruptcy filing. Therefore, whether the Trustee may

4

avoid the payment of the Siemens loan made to Lucent hinges on Lucent's status as an insider of Winstar. Lucent contends that the Bankruptcy Court applied the wrong standard for determining insider status and erred in finding that the facts supported its conclusion.

After reviewing the decision of the Bankruptcy Court under a plenary standard of review, the Court concludes that the Bankruptcy Court correctly concluded that Lucent was an insider of Winstar. The relevant subsection of the Bankruptcy Code describes an insider as a "person in control of the debtor." 11 U.S.C. §101(31). However, Section 101(31) is not an exhaustive list and courts are left to determine whether a party is an insider on a case by case basis. As the Bankruptcy Court correctly points out, the legislative history of the Code defines an insider as "one who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arm's length with the debtor." Butler v. Shaw, 72 F.3d 437, 443 (4th Cir. 1996). Lucent cites In re Badger Freightways, Inc. for the proposition that insider status depends on a finding of managerial control. 106 B.R. 971, 980 (Bankr. N.D. Ill. 1989). However, the Court is not persuaded that case law in this Circuit supports Lucent's argument.

After reviewing the Bankruptcy Court's reasoning, the Court concludes that the Bankruptcy Court thoroughly considered the facts and properly concluded that Lucent was an insider of

5

Winstar because the parties' relationship was more than a mere debtor-creditor relationship conducted at arm's length and sufficiently close to warrant such a finding. Specifically, the Bankruptcy Court found that throughout the course of the parties' relationship, Lucent controlled Winstar's purchasing decisions in order to inflate its own revenue, even when Winstar neither needed Lucent equipment or services. Additionally, the Bankruptcy Court found that communications showing that former Lucent employees William Plunkett and Deborah Harris were involved in the scheme to use Winstar as a captive buyer to inflate end-of-quarter revenues were sufficient corroborative evidence to support drawing an adverse inference from their Fifth Amendment responses to questions. With respect to the Siemens loan funds, the Bankruptcy Court found that Lucent demanded that Winstar agree to transfer the funds to Lucent or it would terminate negotiations for a necessary transition agreement and refuse further financing under the parties' credit agreement. In the circumstances, the Court cannot conclude that the Bankruptcy Court's findings were clearly erroneous. Thus, the Court concludes that the Bankruptcy Court correctly concluded that Lucent was an insider at the time of the transfer for purposes of Section 547(b).

With respect to Lucent's additional contentions, the Court cannot conclude that the Bankruptcy's findings were clearly erroneous. Specifically, the Bankruptcy Court found that the

Siemens loan funds were not earmarked for Lucent and thus, a transfer of Winstar's interest of property occurred when it paid the funds to Lucent. Additionally, after thoroughly analyzing the expert testimony regarding several different methods to determine insolvency, the Bankruptcy Court found that Winstar was insolvent on the date of the transfer to Lucent. Further, the Bankruptcy Court considered the facts and circumstances with respect to Lucent's new value defense and properly concluded that Lucent did not meet its burden to establish its defense pursuant to 11 U.S.C. § 547(g).

In sum, the Court concludes that the Bankruptcy Court's factual findings with respect to the preferential payment are supported by the record and are not clearly erroneous. Further, the Court concludes that the Bankruptcy Court correctly concluded as a matter of law that the elements of a preferential payment under Section 547(b) were met. Accordingly the decision of the Bankruptcy Court with regard to the preference judgment will be affirmed.

B. <u>Whether The Bankruptcy Court Erred In Subordinating Lucent's Claims</u>

Pursuant to Section 510(c) of the Bankruptcy Code, the Bankruptcy Court may, after notice and a hearing, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim under the principles of equitable subordination. 11 U.S.C. § 510(c). To apply equitable

7

subordination, three requirements must be met: 1) the claimant engaged in some type of inequitable conduct; 2) the misconduct resulted in injury to other creditors and conferred an unfair advantage on the claimant; and 3) equitable subordination of the claim is not inconsistent with the provisions of the Bankruptcy Code. Citicorp Venture Capital Corp. v. Committee of Creditors Holding Unsecured Claims, 160 F.3d 982, 989 (3d Cir. 1998) (citing In re Mobile Steel Co., 563 F.2d 692, 699-700 (5th Cir. 1977)). Where the creditor is not an insider, the party seeking to apply equitable subordination bears a higher burden of proof for which he must show that the creditor engaged in egregious conduct such as fraud, spoilation or overreaching. In re Epic Capital Corp., 307 B.R. 767, 772 (D. Del. 2004).

In reviewing equitable subordination decisions, the Third Circuit has applied a clearly erroneous standard to the Bankruptcy Court's findings of fact and a plenary standard to its legal conclusions. Id. at 771. Accordingly, the Court will review the Bankruptcy Court's legal conclusions under the de novo standard of review and its factual determinations under the clearly erroneous standard of review. Id.

In the circumstances, the Court cannot conclude that the Bankruptcy Court's findings were clearly erroneous. With respect to the first prong of the Mobile Steel test, Lucent contends that the Bankruptcy Court erroneously premised its conclusion on the determination that Lucent was an insider of Winstar. The

Bankruptcy Court determined that the same facts which led it to conclude that Lucent was an insider in the context of the preferential payment also supported its finding that Lucent engaged in inequitable conduct. The Bankruptcy Court went a step further, however, and analyzed the facts and circumstances of Lucent's conduct to conclude that, regardless of whether Lucent was an insider, its conduct was so egregious as to warrant equitable subordination. Thus, the Court concludes that Lucent's assertion that the Bankruptcy Court's conclusion was premised solely on the determination that Lucent was an insider is not supported by the record. Rather, the Bankruptcy Court correctly analyzed the Mobile Steel test for equitable subordination in both the context of insider and non-insider status and concluded that Lucent engaged in sufficient inequitable conduct.

With respect to the second prong of the Mobile Steel test, Lucent contends that the Bankruptcy Court erred in applying the doctrine of equitable subordination punitively by not tailoring the relief to identifiable harm. Specifically, Lucent contends that the Bankruptcy Court erred because the damages cited do not constitute the type of harm that justifies subordination, the harm to the bankruptcy estate from the payment of the Siemens loan to Lucent was remedied by the preference judgment, and the Bankruptcy Court failed to quantify the harm in proportion to the remedy. The doctrine of equitable subordination is remedial and is intended to offset specific harm caused the debtor or other

creditors by the claimant's inequitable conduct. In re SubMicron Systems Corp, 432 F.3d 448, 462 (3d Cir. 2006). However, although a bankruptcy court should identify the nature and extent of the injury to determine the proportionality of the remedy, quantification of harm is not always feasible nor is it required in every case. In re Mid-American Waste Sys., 284 B.R. 53, 47-48 (Bankr. D. Del. 2002); Citicorp, 160 F.3d at 991. The Bankruptcy Court considered, apart from the preferential payment itself, the interest paid by Winstar on unnecessary equipment, storage costs and insurance costs for equipment purchased to generate revenue for Lucent, the below-cost sale price for Lucent equipment in Winstar's inventory, and Lucent's deliberate delay in sending the refinancing notice despite its knowledge of Winstar's financial situation. The Court cannot agree with Lucent's characterization of its conduct as not injurious to Winstar or other creditors or not the type of harm that could justify equitable subordination. The Court concludes that, in determining the extent of equitable subordination warranted in the circumstances, the Bankruptcy Court thoroughly analyzed the facts and correctly concluded that Winstar and its creditors were substantially harmed by and Lucent substantially benefitted from Lucent's inequitable conduct.

With respect to the third prong of the Mobile Steel test, Lucent contends that Section 510(c) does not allow the Bankruptcy Court to subordinate its claims as a creditor to the interests of equity holders. The Court is not aware of any Third Circuit

precedent directly addressing this point. As the Trustee correctly points out, at least one appellate court has concluded that subordination of a claim to an equity interest is consistent with the Bankruptcy Code. In re Lifschultz Fast Freight, 132 F.3d 339, 342 (7th Cir. 1997).[1] Further, the Third Circuit has opined that the doctrine of equitable subordination was intended by Congress to allow for flexible application by the courts and that equitable subordination is a remedy that requires the Court to balance the equities of a claim on a case-by-case basis. In re Burden, 917 F.2d 115, 120 (3d Cir. 1990). Additionally, the purpose of equitable subordination is to preclude a creditor from participating in the distribution of the debtor's estate at the same level as the creditors or claimants for whom his conduct has injured. See In re Mid-American Waste Sys., 284 B.R. at 73. Thus, in the circumstances here, the Court concludes that the Bankruptcy Court properly considered and weighed the equities in order to conclude that, because of the nature and extent of Lucent's inequitable conduct, Lucent's claims should be subordinated to the holders of equity interest.

In sum, the Court concludes that the Bankruptcy Court's factual findings regarding Lucent's status as an insider and the extent of harm caused by Lucent's inequitable conduct are

---

[1] The Court acknowledges that some authority counsels that claims may only be subordinated to claims and not interests. Collier on Bankruptcy § 510.05 (15th ed. 2006). However, the same authority also recognizes the Seventh Circuit's conclusion in In re Lifschultz. See Id. at FN 5.

supported by the record and are not clearly erroneous. Further, the Court concludes that the Bankruptcy Court correctly concluded as a matter of law that the facts and equities in this case warrant application of the doctrine to subordinate Lucent's claims to those of other creditors and the interests of equity holders. Accordingly the decision of the Bankruptcy Court with respect to equitable subordination will be affirmed.

  C. <u>Whether The Bankruptcy Court Erred In Finding Lucent Breached The Subcontract</u>

  Because Lucent had not developed the competency to build the telecommunications network and deliver a turnkey operation to Winstar as the parties had originally intended in their original Supply Agreement, Lucent and Wireless, a wholly-owned subsidiary of Winstar, entered into a Subcontract in January 1999 for Wireless to build the telecommunications network and bill Lucent. According to the Subcontract, Winstar was to submit a "Task Order" to Lucent in accordance with the specific requirements as described in the Subcontract. Then, Wireless would perform the services described on the "Task Order."

  The Bankruptcy Court found that the parties ignored this Task Order requirement and proceeded with a "pass-through" arrangement by which, generally, Winstar sent a purchase order to Lucent for services, Lucent in turn sent a purchase order to Wireless reflecting Winstar's request, Wireless performed the services and sent Lucent an invoice, Lucent invoiced Winstar,

12

Winstar drew from its Credit Agreement with Lucent in order to pay Lucent, and finally, Lucent used this money to pay Wireless. The Bankruptcy Court found that the parties employed this procedure from around March 1999 through March 2001 when Lucent refused to pay for services already performed by Wireless. Lucent contends it did not pay because no Task Order was issued. The Bankruptcy Court concluded that, despite the presence of a "no oral modification clause" in the Subcontract, the Task Order requirement was modified by the parties' course of conduct. The Bankruptcy further concluded that Lucent breached the contract when it refused to pay for Wireless services performed.

After reviewing the decision of the Bankruptcy Court under a plenary standard of review, the Court concludes that the Bankruptcy Court correctly concluded that the "no oral modifications clause" was made unenforceable by the parties' course of conduct, that the Subcontract was modified, and that Lucent breached the Subcontract when it refused to pay Wireless in March 2001. Assuming arguendo that Lucent properly raises, for the first time before this Court, the contention that it waived the Task Order requirement, the Court is not persuaded by Lucent's argument that its conduct constituted a waiver rather than a modification and concludes that the Bankruptcy Court correctly analyzed this issue as a modification. Specifically, with respect to the conclusion that the parties' course of

13

conduct was sufficient under New York law to render the "no oral modifications clause" unenforceable and modify the Subcontract, the Court concludes that the Bankruptcy Court properly considered Lucent's history of not requiring Task Orders and its repeated but unenforced threats of paying "one last time" without requiring a Task Order. Particularly, the Court cannot conclude that the Bankruptcy Court erred in finding that it was not unreasonable for Winstar and Wireless to expect payment based on the history of the parties' transactions.

Further, the Court concludes that the Bankruptcy Court's conclusion that Lucent breached the Subcontract is not erroneous. Lucent contends that Winstar made a draw request under the Credit Agreement rather than a request in the nature of the parties' pass-through arrangement. However, the Bankruptcy Court properly considered the facts and circumstances surrounding a prior similar request which Lucent paid, and concluded that the request at issue gave rise to Lucent's obligation to pay. Additionally, the Court cannot conclude that the Bankruptcy Court erred in finding that a letter sent to Winstar by Lucent on September 27, 2000 and signed by Winstar did not change the terms of the arrangement because there was no mutual assent to do so. Thus, the Court concludes that the Bankruptcy Court's decision in this regard was not erroneous and agrees with the Bankruptcy Court that Lucent's refusal to pay Winstar's "Notice of Request for

Borrowing" of March 27, 2001 constituted a breach of the Subcontract.

Lastly, Lucent contends that the Subcontract issue is a non-core matter; thus raising an issue already addressed by this Court when it concluded that the Subcontract claim was part of the claims allowance process triable in equity in the context of denying Lucent's Motion To Withdraw The Reference (No. 04-928-JJF, D.I. 11). Further, the Bankruptcy Court concluded that regardless of the interpretation of this Court's above conclusion on the issue, it found that the Subcontract claim fell within its jurisdiction as a core matter. The Court finds no reason to alter its previous conclusion or that of the Bankruptcy Court.

In sum, the Court concludes that the Bankruptcy Court's factual findings and conclusions of law with respect to modification and breach of the Subcontract are supported by the record and not clearly erroneous. Accordingly, the Court will affirm the Bankruptcy Court's decision.

## IV. CONCLUSION

For the reasons discussed, the Court will affirm the December 28, 2005 Order of the Bankruptcy Court.

An appropriate Order will be entered.